No. 24-13819-J

# In the United States Court of Appeals for the Eleventh Circuit

AMAZON.COM SERVICES, LLC,
*Petitioner-Cross-Respondent,*

v.

NATIONAL LABOR RELATIONS BOARD,
*Respondent-Cross-Petitioner.*

On Petition for Review and Cross-Application for Enforcement from the National Labor Relations Board
Agency Nos. 29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-292392, and 29-CA-295663

**PETITIONER-CROSS-RESPONDENT'S RESPONSE TO JURISDICTIONAL QUESTION**

| | |
|---|---|
| Amber Rogers | Elbert Lin |
| HUNTON ANDREWS KURTH LLP | Kurt G. Larkin |
| 1445 Ross Avenue, Suite 3700 | Kevin S. Elliker |
| Dallas, Texas 75202 | HUNTON ANDREWS KURTH LLP |
| Telephone: (214) 979-3000 | Riverfront Plaza, East Tower |
| Facsimile: (214) 880-0011 | 951 East Byrd Street |
| | Richmond, Virginia 23219 |
| | Telephone: (804) 788-8200 |
| | Facsimile: (804) 788-8218 |

*Counsel for Amazon.com Services LLC*

*Amazon.com Services LLC v. NLRB*, No. 24-13819-J

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1, Petitioner-Cross-Respondent Amazon.com Services LLC certifies that the Certificate of Interest Persons and Corporate Disclosure Statement submitted at Dkt. 3 is complete.

*/s/ Elbert Lin*
Elbert Lin

# INTRODUCTION

On December 2, 2024, the Court asked the parties to "address whether the November 13, 2024 Decision and Order of the National Labor Relations Board (the "Board") is final for purposes of Amazon's petition for review thereof." Dkt. 3-1. In particular, the Court inquired "whether the order is final, given that the Board ordered that 'complaint paragraphs 15(a) and 16(a) are severed and retained for further consideration.'" *Id.*

Petitioner-Cross-Respondent Amazon.com Services LLC ("Amazon") respectfully submits that the Board's November 13, 2024 Decision and Order (the "Order") is "final" under Section 10(f) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 160(f). The severed paragraphs pertain to an independent allegation, the disposition of which will not undermine the Order's legal conclusions and the consequences that flow from them. Indeed, the Board's cross-petition for enforcement reinforces the finality of the Order. The Board's severance of unrelated issues does not undermine this Court's jurisdiction.[1]

---

[1] The Order is attached to Amazon's Petition for Review at Dkt. 1-1. Citations to the Order refer to the pagination employed by the Board.

1

## BACKGROUND

In 2021 and 2022, employees at two of Amazon's Staten Island, New York facilities—a fulfillment center known as JFK8 and a storage center known as LDJ5—sought to unionize. *See* Order at 1. Some employees campaigned in support of the union. Amazon respected employees' right to organize, but, as is its right, expressed its view that a union was unnecessary. In accord with more than 75 years of Board precedent, the company expressed its views on unionization during mandatory informational meetings—sessions referred to by the Board as "captive audience" meetings. *See id.*

The General Counsel brought unfair labor practice charges against Amazon based on both the mandatory meetings occurring, statements that were made during them, and other employee interactions during the union campaign. Bound by the Board's precedent, the administrative law judge declined the General Counsel's request to find Amazon liable under the NLRA simply for holding mandatory meetings to discuss its views on organizing. *See* Order at 43. As to the other allegations, the ALJ issued a mixed decision, ruling nearly all the allegations were unfounded, while sustaining only two violations of the NLRA. *See id.* at 60. Both Amazon

and the General Counsel filed exceptions to the ALJ's decision to the Board.

In its Order, the Board agreed with the General Counsel and overturned its longstanding precedent on mandatory meetings. From now on, the Board held, an employer violates the NLRA "when it compels employees to attend a captive-audience meeting on pain of discipline or discharge." *Id.* at 1-2. The Board forged this new path notwithstanding the NLRA's express prohibition against the use of an employer's expression "of any views, argument, or opinion, or the dissemination thereof" as "evidence of an unfair labor practice" so long as the "*expression* contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c) (emphasis added).[2] The Board likewise downplayed First Amendment concerns by insisting its new rule "makes no distinctions based on viewpoint." Order at 23 (attempting to distinguish this Court's decision in *Honeyfund.com Inc. v. Governor, State of Florida*, 94 F.4th

---

[2] *See also NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969) (observing that under § 158(c) "an employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as the *communications* do not contain a 'threat of reprisal or force or promise of benefit'") (emphasis added).

3

1272 (11th Cir. 2024)). Instead, the Board wrote, the employer violates the NLRA by "requir[ing] employees to listen to its views—whatever they are." *Id.* at 24.

The Board recognized that its prior precedent "ha[d] been the law for more than 75 years" and therefore carried "strong employer reliance interests." *Id.* at 20. Imposing a new rule forbidding such meetings on Amazon "would be an injustice," the Board reasoned, "because [Amazon] would likely be judged to have committed an unfair labor practice based on conduct that was clearly lawful at the time it was undertaken." *Id.* The rule would therefore be imposed prospectively, "placing employers on notice that captive-audience meetings are no longer permissible." *Id.*

Along with its captive-audience holding, the Board found violations of the NLRA in three other circumstances. First, the Board concluded that Amazon discriminatorily enforced its solicitation policy against an organizing employee, who had violated rules against using company message boards to solicit signatures on petitions, and purportedly threatened her with "additional follow-up" for future violations of the policy. *See* Order at 2-5. Second, the Board found that Amazon improperly solicited grievances from employees during the organizing

4

campaign by reminding them of the company's long-running "open door" policy. *Id.* at 5-8. And third, the Board determined that Amazon threatened employees through statements by managers that wages and benefits would be frozen during the bargaining period. *Id.* at 1 n.3.

Although the Board proceedings against Amazon had been pending for more than three years, the Order severed and saved for further consideration a separate issue. The General Counsel also had alleged that Amazon violated the NLRA by promising to make improvements to its "Career Choice Program" if employees rejected the union. *See* Order at 54. The ALJ dismissed the allegation, concluding that Amazon had merely (and lawfully) reminded employees of a predetermined benefit that had been previously announced. *See id.* at 55. Without any explanation, the Board reversed the ALJ's conclusion, and "sever[ed] and retain[ed] the allegations regarding promised improvements to the Career Choice Program for further consideration." *Id.* at 1 n.5; *see also id.* at 25 (ordering the relevant complaint paragraphs 15(a) and 16(a) "severed and retained for further consideration").

Member Kaplan dissented on nearly all issues. He would not reverse the so-called "captive-audience" precedent, nor would he find a

5

violation of the NLRA in Amazon's response to the employee's violation of the company solicitation policy or the company's discussion of its open door policy. *Id.* at 26 & n.8. He also objected to the Board's decision to sever and retain the allegations regarding the Career Choice Program, which he would conclude did not demonstrate a violation of the NLRA. *Id.* at 27. As Member Kaplan explained,

> The alleged unfair labor practices took place in 2021, the judge addressed this issue in a carefully reasoned decision, the parties have thoroughly briefed this issue in good faith, and they have been waiting for the Board to decide it *for the last 3 years*. There is nothing complicated about this issue, which involves the application of well-settled legal principles to undisputed facts. Under these circumstances, it is a disservice to the parties and the public for the Board to force them to wait even longer for the issue to be resolved, without any valid justification.

*Id.* at 40 (emphasis in original). Despite these protestations, the Board never explained its decision to sever and retain the Career Choice Program allegations.

The Order ultimately concluded that Amazon violated Section 8(a) of the NLRA by (1) discriminatorily applying its solicitation policy and threatening the employee who violated the policy; (2) soliciting grievances and impliedly promising to address them; and (3) threatening

employees that it would withhold improvements to wages and benefits. *See* Order at 24. The Board ordered Amazon to cease and desist in those alleged violations, and required the company to publicly post and distribute a Board-drafted notice beginning: "The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice." *Id.* at 25, 61. The notice contains a hyperlink and a QR code to the Board's decision. *See id.* at 61.

Amazon timely petitioned for review of the Order with this Court on November 21, 2024. Dkt. 1. Twelve days later, the Board filed a Cross-Application for Enforcement of the Order. Dkt. 14-1.

## RESPONSE TO JURISDICTIONAL QUESTION

The Court's jurisdictional question asks whether the Order is "final" under the NLRA given the Board's severance and retention of the Career Choice Program allegations. The answer is yes.

Section 10(f) of the NLRA permits "[a]ny person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought" to seek review of the order in either the D.C. Circuit or in the circuit where the unfair labor practice is alleged to have occurred or the charged party "resides or transacts business." 29 U.S.C. § 160(f). Under

Section 10(e), the Board may similarly petition for enforcement of its orders, though venue is limited to a geographically relevant circuit. 29 U.S.C. § 160(e); *see NLRB v. Goya Foods of Fla.*, 525 F.3d 1117, 1129 n.16 (11th Cir. 2008) (explaining the difference between an aggrieved party's and the Board's choices of venue).[3]

Jurisdiction and venue are proper in this Circuit. Amazon is aggrieved by the Order, which finds the company in violation of the NLRA and imposes remedies for those alleged violations. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 210 (1965). Amazon, which has numerous facilities and thousands of employees in Alabama, Florida, and Georgia, "transacts business" in the Eleventh Circuit. *See Bally's Park Place, Inc. v. NLRB*, 546 F.3d 318, 321 (5th Cir. 2008) (considering whether a party

---

[3] Although Section 10(e) does not use the word "final," this Court has understood the finality requirement to apply to Board-filed applications for enforcement and aggrieved parties' petitions for review alike. *See NLRB v. Imperial House Condominium, Inc.*, 831 F.2d 999, 1002 (11th Cir. 1987) (observing that if an order "is not final, this [C]ourt is without jurisdiction" to review "the Board's application for enforcement" under Section 10(e)); *see also NLRB v. Siren Retail Corp.*, 99 F.4th 1118, 1122 (9th Cir. 2024) ("Although Section 10(e) does not explicitly limit appellate review of petitions for enforcement to 'final' Board orders, we have long held that only such orders are reviewable.").

8

maintains "some sort of physical presence" in the circuit); *Davlan Eng'g, Inc. v. NLRB*, 718 F.2d 102, 103 (4th Cir. 1983) (considering whether a party has "any employees situated here"). That leaves only consideration of whether the Order is "final" for purposes of judicial review. It is.

In *Bennett v. Spear*, 520 U.S. 154 (1997), the Supreme Court emphasized two conditions that must be met to consider agency action "final." First, the agency action "must mark the consummation" of its decision-making process and "not be of a merely tentative or interlocutory nature." *Id.* at 177 (internal quotations omitted). Second, the agency action "must be one by which rights or obligations have been determined or from which legal consequences will flow." *Id.* (internal quotations omitted). These considerations reflect "the 'pragmatic' approach" the Supreme Court has "long taken to finality." *U.S. Army Corps of Eng'rs v. Hawkes Co. 578* U.S. 590, 599 (2016).

The Order satisfies both *Bennett* conditions. The Order constitutes the "consummation" of the Board's process adjudicating the unfair labor practice charges against Amazon on several discrete allegations, "from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78. The Order obligates Amazon to post a notice stating the company "violated

9

Federal labor law" and to cease and desist from the particular actions deemed unlawful by the Board. It likewise gives notice to Amazon—and all other employers—that any future "captive audience" meetings will be considered violations of the NLRA.

These considerations adhere even though the Board severed and retained the allegations regarding the Career Choice Program. Those allegations, which are not challenged on review, concern Amazon's announcement of changes to its longstanding educational benefits program, a factual circumstance unrelated to the Board's unsevered conclusions that Amazon violated the NLRA. Whether or not the Board concludes the Career Choice Program allegations show a separate violation of the NLRA, that future decision will not affect the Order's conclusions and remedies for the other alleged violations. And it will not undo the Board's decision to reverse 75 years of precedent governing an employer's right to express its views on unionization to employees.

Although this Circuit has not applied the *Bennett* test to Board orders challenged under Section 10(f), precedent from other circuits is instructive. In similar circumstances, the D.C. Circuit has held that the Board's decision to sever an allegation for further consideration does not

make an order on other issues non-final. *Stephens Media, LLC v. NLRB*, 677 F.3d 1241, 1250 (D.C. Cir. 2012). So long as the order "establishes the rights and obligations of the [c]ompany and its employees" and "the severed issue is not intertwined with the findings" on review, the Board's decision to sever the issue removes it "from the realm of this case." *Id.* Other circuits have reached the same conclusion when "[n]othing in the order suggests that the severed issue … would have any effect on the Board's conclusion regarding the underlying charge." *Siren Retail Corp.*, 99 F.4th at 1123; *see also, e.g.*, *NLRB v. Blue Sch.*, No. 23-6305, 2024 WL 4746378, at *1 (2d Cir. 2024) (holding that Board severance of a remedy question did not undermine finality of underlying order for circuit-court review); *United Scrap Metal PA, LLC*, 116 F.4th 194, 197 (3d Cir. 2024) (same); *Longmont United Hosp. v. NLRB*, 70 F.4th 573, 578 (D.C. Cir. 2023) (same).[4]

Just so here. The Order establishes obligations for Amazon based on findings that are not "intertwined" with the Career Choice Program

---

[4] The Court recently heard oral arguments in *NLRB v. Arrmaz Products Inc.*, No. 23-10291 (11th Cir.), wherein an employer urged the Court to depart from the reasoning of the Second, Third, Ninth, and D.C. Circuits on the finality of a bargaining order from which the Board severed the question of a separate money remedy.

11

allegations. *Stephens Media*, 677 F.3d at 1250. There is no reason to think that the Board's decision on the severed issue will "have any effect" on the matters addressed in the Order. *Siren Retail*, 99 F.4th at 1123. The severed issue is simply removed "from the realm of this case." *Stephens Media*, 677 at 1250.

If any further confirmation of finality were needed, the Board's cross-application for enforcement provides it. *See* Dkt. 14-1. In its cross-application, the Board appropriately acknowledges that this Court has jurisdiction and is a proper venue to review the Order. *Id.* (stating that jurisdiction and venue are proper in this Court "under Section 10(e) and (f) of the Act"). The Board's invocation of this Court's enforcement authority under the NLRA leaves little doubt that the Board's decision-making process on the non-severed issues has concluded and "legal consequences will flow" from the Order. *Bennett*, 520 U.S. at 178.

## CONCLUSION

For these reasons, this Court has jurisdiction to review the Order under Section 10(f) of the NLRA, 29 U.S.C. § 160(f).

Respectfully submitted,

*/s/ Elbert Lin*

| | |
|---|---|
| Amber Rogers<br>HUNTON ANDREWS KURTH LLP<br>1445 Ross Avenue, Suite 3700<br>Dallas, Texas 75202<br>Telephone: (214) 979-3000<br>Facsimile: (214) 880-0011 | Elbert Lin<br>Kurt G. Larkin<br>Kevin S. Elliker<br>HUNTON ANDREWS KURTH LLP<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, Virginia 23219<br>Telephone: (804) 788-8200<br>Facsimile: (804) 788-8218 |

## CERTIFICATE OF SERVICE

I certify that the foregoing has been filed on this 16th day of December, 2024, using the Court's CM/ECF system, which will serve notice on all counsel of record.

                                          */s/ Elbert Lin*
                                          Elbert Lin