

United States Government

**NATIONAL LABOR RELATIONS BOARD**

**OFFICE OF THE GENERAL COUNSEL**

Washington, D.C.  20570

December 31, 2024

David J. Smith
Clerk of the Court
U.S. Court of Appeals
  for the Eleventh Circuit
56 Forsyth Street, NW
Atlanta, GA 30303

     Re:    *Amazon.com Services LLC v. National Labor Relations Board*
             11th Cir. No. 24-13819
             Board Case Nos. 29–CA–280153, 29–CA–286577, 29–CA–287614,
             29–CA–290880, 29–CA–292392 and 29–CA–295663

Dear Mr. Smith:

     I am enclosing a certified copy of the Agency Record in the above-

captioned case.

             Very truly yours,

             /s/ Ruth E. Burdick
             Ruth E. Burdick
             Deputy Associate General Counsel
             NATIONAL LABOR RELATIONS BOARD
             1015 Half Street, SE
             Washington, DC 20570-0001
             (202) 273-2960

Encl.

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

_____

|  |  |  |
|---|---|---|
| AMAZON.COM SERVICES LLC | ) | |
|  | ) | No. 24-13819 |
| Petitioner/Cross-Respondent | ) | |
|  | ) | |
| v. | ) | Board Case Nos. 29–CA–280153, |
|  | ) | 29–CA–286577, 29–CA–287614, |
| NATIONAL LABOR RELATIONS BOARD | ) | 29–CA–290880, 29–CA–292392 |
|  | ) | and 29–CA–295663 |
| Respondent/Cross-Petitioner | ) | |

_____ )

## CERTIFIED LIST OF THE NATIONAL LABOR RELATIONS BOARD

Pursuant to authority delegated in Section 102.115 of the National Labor

Relations Board's Rules and Regulations, 29 C.F.R. § 102.115, I certify that the

list below fully describes all papers and documents which constitute the record

before the Board in Amazon.com Services LLC, Board Case Nos. 29–CA–280153,

29–CA–286577, 29–CA–287614, 29–CA–290880, 29–CA–292392 and

29–CA–295663.

*Roxanne L. Rothschild*
_____
Roxanne L. Rothschild
Executive Secretary
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

December 31, 2024

# INDEX TO CERTIFIED LIST

VOLUME I   - Transcript of Hearing                                    Pages

                    Volume 1 (September 19, 2022)          1-149
                    Volume 2 (September 20, 2022)          150-285
                    Volume 3 (September 21, 2022)          286-325
                    Volume 4 (October 4, 2022)             326-407
                    Volume 5 (October 5, 2022)             408-456

VOLUME II  - Exhibits

                    General Counsel's Exhibits             457-1260
                       1-59[1]

                    Respondent's Exhibits                  1261-1276
                       1-5

VOLUME III - Pleadings

Date            Documents                                  Pages

08/06/22        Administrative Law Judge's Order Regarding    1277-1279
                Zoom Hearing

01/30/23        Administrative Law Judge's Decision           1280-1315

01/30/23        Order Transferring Proceeding to the National 1316-1317
                Labor Relations Board

02/24/23        General Counsel's Request for Extension of    1318
                Time to File Exceptions

02/24/23        Executive Secretary's Letter Granting General 1319
                Counsel's Request for Extension of Time to File
                Exceptions

---

[1] GC Exhibits 2-7, 8(b) and 52 are audio/video files and will be provided under separate cover.  GC Exhibits 8(a) and 21 were not entered.

# DOCUMENT INDEX (cont'd)

<u>VOLUME III</u> - Pleadings

| Date | Documents | Pages |
|------|-----------|-------|
| 03/30/23 | Respondent's (Amazon) Request for Extension of Time to File Cross-Exceptions and Answering Brief | 1320-1323 |
| 03/31/23 | General Counsel's Exceptions | 1324-1326 |
| 04/04/23 | Executive Secretary's Letter Granting Respondent's (Amazon) Request for Extension of Time to File Cross-Exceptions and Answering Brief | 1327 |
| 04/24/23 | Respondent's (Amazon) Request to Exceed Page Limits for Answering Brief | 1328-1331 |
| 04/24/23 | Executive Secretary's Letter Granting Respondent's (Amazon) Request to Exceed Page Limits | 1332 |
| 05/03/23 | Respondent's (Amazon) Cross-Exceptions | 1333-1338 |
| 05/05/23 | Respondent's (Amazon) Answering Brief | 1339-1413 |
| 05/19/23 | General Counsel's Reply Brief to Respondent's (Amazon) Answering Brief | 1414-1426 |
| 06/02/23 | Respondent's (Amazon) Reply to General Counsel's Answer to Cross-Exceptions | 1427-1442 |
| 11/13/24 | Decision and Order (373 NLRB No. 136) | 1443-1503 |

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

| | |
|---|---|
| AMAZON.COM SERVICES LLC | ) |
| | ) |
| | ) No. 24-13819 |
| Petitioner/Cross-Respondent | ) |
| | ) |
| v. | ) Board Case Nos. 29–CA–280153, |
| | ) 29–CA–286577, 29–CA–287614, |
| NATIONAL LABOR RELATIONS BOARD | ) 29–CA–290880, 29–CA–292392 |
| | ) and 29–CA–295663 |
| Respondent/Cross-Petitioner | ) |

_____ )

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2024, I electronically filed the

foregoing document with the Clerk of the Court for the United States Court of

Appeals for the Eleventh Circuit by using the CM/ECF system.  I certify that the

foregoing document was served on all parties or their counsel of record through the

appellate CM/ECF system.

/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, SE
Washington, DC  20570
(202) 273-2960

Dated at Washington, DC
this 31st day of December 2024

# VOLUME I

# TRANSCRIPT

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services LLC,      Case No.   29-CA-280153

           Respondent,

and

Dana Joann Miller, an      Case Nos.  29-CA-286577
Individual,                     29-CA-287614
                             29-CA-290880
         Charging Party,     29-CA-292392
and                           29-CA-295663

Amazon Labor Union,

         Charging Party.

_____

_____

Place: Brooklyn, New York (Via Zoom Videoconference)

Dates: September 19, 2022

Pages: 1 through 149

Volume: 1

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885

www.escribers.net | 800-257-0885

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**REGION 29**

| | |
|---|---|
| In the Matter of: | |
| AMAZON.COM SERVICES LLC, | Case No.   29-CA-280153 |
|          Respondent,<br>and | |
| DANA JOANN MILLER, AN<br>INDIVIDUAL, | Case Nos.  29-CA-286577<br>29-CA-287614 |
| | 29-CA-290880 |
|        Charging Party,<br>and | 29-CA-292392<br>29-CA-295663 |
| AMAZON LABOR UNION, | |
|        Charging Party. | |

The above-entitled matter came on for hearing, via Zoom
videoconference, pursuant to notice, before **BENJAMIN GREEN**,
Administrative Law Judge, at the National Labor Relations
Board, Region 29, 100 Myrtle Avenue, 5th Floor, Brooklyn, New
York 11201, on **Monday, September 19, 2022, 10:25 a.m.**

<pre>
1                    A P P E A R A N C E S

2    On behalf of the General Counsel:

3        EMILY CABRERA, ESQ.
         LYNDA TOOKER, ESQ.
4        THE NATIONAL LABOR RELATIONS BOARD
         Two Metro Tech Center North, 5th Floor
5        Brooklyn, NY 11201
         Tel. (718)765-6184
6
     On behalf of the Charging Party Union:
7
         RETU R. SINGLA, ESQ.
8        JULIEN, MIRER & SINGLA
         One Whitehall Street, 16th Floor
9        New York, NY 10004

10       SETH GOLDSTEIN, ESQ.
         LAW OFFICE OF SETH GOLDSTEIN
11       217 Hadley Drive
         Cherry Hill, NJ 08003
12

13   On Behalf of Dana Miller, an Individual:

14       DANA MILLER, PRO SE

15   On behalf of the Respondent Employer:

16       KURTIS POWELL, ESQ.
         JUAN ENJAMIO, ESQ.
17       HUNTON ANDREWS KURTH, LLP
         1111 Brickell Avenue
18       Miami, FL 33131

19

20

21

22

23

24

25
</pre>



1                              <u>I N D E X</u>

2

3   **<u>WITNESS</u>**          **<u>DIRECT</u>** **<u>CROSS</u>** **<u>REDIRECT</u>** **<u>RECROSS</u>** **<u>VOIR DIRE</u>**

4   Connor Spence             54      97

5   Dana Miller               111

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


www.escribers.net | 800-257-0885

<u>**E X H I B I T S**</u>

| EXHIBIT | IDENTIFIED | IN EVIDENCE |
|---|---|---|
| **General Counsel:** | | |
| GC-1(a) through 1(cc) | 7 | 7 |
| GC-9 | 58 | 59 |
| GC-10 | 72 | 74 |
| GC-11 | 76 | 77 |
| GC-12 | 85 | 86 |
| GC-13 | 91 | -- |
| GC-14 | 93 | 94 |
| GC-15 | 114 | 118 |
| GC-16 | 119 | 121 |
| GC-17 | 122 | 123 |
| GC-18 | 125 | 127 |
| GC-19 | 128 | 129 |
| GC-20 | 129 | 131 |
| GC-22 | 132 | 133 |
| GC-13 | 136 | 136 |
| GC-23 | 142 | 143 |
| GC-24 | 143 | 144 |
| GC-25 | 144 | 145 |
| GC-26 | 8 | -- |
| GC-27 | 39 | 43 |
| GC-28 | 41 | 43 |



| 1 | GC-29 | 41 | 43 |
| 2 | GC-30(a) through 30(c) | 63 | 65 |
| 3 | GC-31 | 65 | 66 |
| 4 | GC-32(a) through 32(b) | 67 | 68 |
| 5 | GC-32(b) | 67 | 68 |
| 6 | GC-33(a) through 33(b) | 68 | 69 |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1                    <u>P R O C E E D I N G S</u>

2          JUDGE GREEN:  Okay, this is a Zoom video trial before the

3   National Labor Relations Board in Amazon.com services, Dana

4   Joann Miller, and Amazon Labor Union.  The charges are --

5   numbers are listed on the complaint, which should be included

6   in the formal documents.

7          The administrative law judge is Benjamin Green.  Would the

8   parties like to state their appearance for the record,

9   beginning with the General Counsel?

10          MS. CABRERA:  Right.  Emily Cabrera and Lynda Tooker for

11   the General Counsel.

12          JUDGE GREEN:  Okay, and for the Respondent?

13          MR. POWELL:  Kurt Powell and Juan Enjamio for the

14   Respondent.

15          JUDGE GREEN:  Okay.  And for the Charging Party Union?

16          MS. SINGLA:  Retu Singla from The Law Firm of Julien,

17   Mirer & Singla for Charging Party.

18          JUDGE GREEN:  Okay.

19          And Mr. Goldstein, are you -- are you making an

20   appearance?

21          MR. GOLDSTEIN:  Yes.  Seth Goldstein for Amazon Labor

22   Union.

23          JUDGE GREEN:  Okay.  And it's my understanding that Ms.

24   Miller is not being represented in this matter?

25          MR. GOLDSTEIN:  That is correct.



1          JUDGE GREEN:  Okay.  And have the parties all seen the

2     formal papers?

3          MS. SINGLA:  The Charging Party has.

4          JUDGE GREEN:  Would the General Counsel like to offer

5     them?

6          MS. CABRERA:  Yes, absolutely.  We would like to offer

7     them as General Counsel's 1.

8          JUDGE GREEN:  Is there any objection from the Respondent?

9          MR. POWELL:  No, Your Honor.

10          JUDGE GREEN:  Okay, GC-1 is admitted.

11     **(General Counsel Exhibit Number 1(a) through 1(cc) Received**

12     **into Evidence)**

13          JUDGE GREEN:  Now, I know that we -- do we have any

14     preliminary matters other than the sub?

15          MS. CABRERA:  I do, Your Honor.  The first thing is, there

16     is a mistake on the further amended complaint.  There are two

17     paragraph 18s.  So we would just like to correct that by making

18     the first paragraph 18, paragraph 18A, and the second paragraph

19     18B.  I've put together like, a conformed complaint.  I wasn't

20     sure if Your Honor -- if Your Honor needed it, if you want it

21     as an exhibit, or if it's just enough for me to do it on the

22     record.  I leave that to you.

23          JUDGE GREEN:  So 18 and -- I see.  So everything --

24     listen, if you have -- if you have another one, sure, at some

25     point, let's -- let's put it in.



1    MS. CABRERA:  Okay, so then I will -- I'll mark it.  And I

2    don't know -- I mean, I confirmed that -- I can test it now.

3    JUDGE GREEN:  Extend it, or upload it into the --

4    MS. CABRERA:  Okay.

5    JUDGE GREEN:  -- SharePoint.

6    MS. CABRERA:  I'm going to mark it, Your Honor, as GC-26.

7    That's what we're up to in the marked exhibits.  The corrected

8    complaint.  And I'll send everybody a copy shortly.

9    **(General Counsel Exhibit Number 26 Marked for Identification)**

10    JUDGE GREEN:  Okay.  Was that --

11    MR. POWELL:  May I ask you -- ask you in terms of what --

12    what correction are you making?  You're -- you're modifying 18?

13    MS. CABRERA:  There's two paragraph 18s.  Yes, what we're

14    going to do is, the first paragraph 18 will be 18A, and the

15    second paragraph 18 will just be 18B.  So what --

16    MR. POWELL:  I've got it.  I've got it.

17    MS. CABRERA:  -- (indiscernible, simultaneous speech) big

18    A, because, you know, (audio interference) A has a little

19    (audio interference) --

20    MR. POWELL:  Thank you.  All right, understood.

21    MS. CABRERA:  Yeah.

22    The other thing, Your Honor, I wanted to just call your

23    attention to the fact that we might amend the complaint one

24    more time just to reflect the correct speaker.  And -- and Ms.

25    Tooker will tell me the paragraph.  I'm not sure what paragraph



1     that's in, but there just -- there might be an additional

2     amendment once we're able to identify the correct speaker in --

3          JUDGE GREEN:  Okay.

4          MS. CABRERA:  -- the paragraph.

5          MS. TOOKER:  It's paragraph 16.

6          MS. CABRERA:  Thank you.

7          MS. TOOKER:  And -- and it's also, I think, 6B.

8          JUDGE GREEN:  Do we know -- do we know who that is?

9          MS. TOOKER:  No, but we, in our off-the-record

10    conversation with Respondent have made them aware of the issue,

11    and they're looking into the identity of -- there were two

12    speakers during this meeting, and the statements that we are

13    alleging are unlawful are -- were made by the person whose name

14    we don't know, not by the -- the guy who was named, but also in

15    the meeting.

16         JUDGE GREEN:  Okay.  Anything else other than the

17    subpoenaed records?

18         MS. CABRERA:  Yes, Your Honor.  So Respondent has agreed

19    to I guess sti -- well, sti -- for short, stipulate, but I -- I

20    think they're going to amend their answer with regard to the

21    supervisory and agency status of two individuals.  Their names

22    are set forth in paragraph 5.  The first individual is Mike

23    Tanelli, and the second is Scott Taylor.  The way their answer

24    reads, it just was unclear whether or not they were admitting

25    the supervisory, the 2(11), as the agency 2(13) status of both



1    individuals.  And Respondent has indicated that they -- they do

2    admit that, the 2(11) status and the 2(13) status.  So I think

3    we have a stipulation, and I think they want to -- I guess

4    maybe amend their answer to reflect it.

5         JUDGE GREEN:  Okay.  I mean, would the Respondent just

6    like to confirm that stipulation?

7         MR. POWELL:  Yeah, we'll stipulate that, that's fine.

8         JUDGE GREEN:  Okay.

9         Anything else?

10        MR. POWELL:  I believe --

11        MS. TOOKER:  Yeah.  So there was also an additional

12   stipulation that we wanted to get on the record regarding

13   the -- the speakers for any meetings that happened on November

14   10th, 2021, at the JFK8 building.  So my understanding is that

15   Respondent is willing to stipulate that all speakers during

16   these meetings were agents of Respondent.

17        JUDGE GREEN:  So we're talking about just the meeting

18   November 10th, 2021?

19        MS. TOOKER:  Yes, Your Honor.  This is the one -- so we

20   have not identified the speaker as of yet for that meeting.

21        JUDGE GREEN:  Okay.

22        MS. TOOKER:  So yeah.

23        JUDGE GREEN:  Okay.  So --

24        MR. POWELL:  The meeting with -- we're -- we're talking

25   about the meeting for which there's an audio recording on



1    November 10th, right?

2       MS. TOOKER: Yes.

3       MR. POWELL: Yes, we would -- we would -- we would

4    stipulate to that.

5       JUDGE GREEN: Okay. Okay, so stipulated. Let me just ask

6    the parties -- well, I guess this is for the GC. Do we have an

7    audio recording of all the meetings where all the alleged

8    8(a)(1)s took place?

9       MS. TOOKER: Yes, Your Honor, and those recordings have

10    been pre-marked and uploaded to the -- the SharePoint.

11       JUDGE GREEN: Okay, so that's 1 through 8?

12       MS. TOOKER: Yes, Your Honor. Oh, 2 -- it's 2 through 8,

13    1's the formal papers.

14       JUDGE GREEN: Ex -- excuse me, right. 2 through 8. Okay.

15    And -- and is the General Counsel satisfied that those are --

16    those are fairly clear, there's no confusion about what's said

17    on those -- on those recordings?

18       MS. TOOKER: He -- they're -- they're generally pretty

19    clear recordings. Once in a while there's just a garbled word

20    because of, you know, people speaking garbled words sometimes.

21       JUDGE GREEN: My question is really, are we going to have

22    witnesses for these meetings given that we have recordings of

23    the meetings?

24       MS. TOOKER: Well, Your Honor, there are some -- some

25    additional points related to the meetings and their mandatory



1     nature that --

2         JUDGE GREEN:  No, no, that I understand.  I'm just

3     saying -- I'm just saying, am -- am I right that we're -- we're

4     not going to have witnesses just to duplicate what's on the

5     tapes?

6         MS. TOOKER:  No, Your Honor, I was not planning to ask the

7     witnesses to --

8         JUDGE GREEN:  Okay.

9         MS. TOOKER:  -- recite what was said.  I was however

10    planning to just play the portions of the meetings that we have

11    deemed unlawful, so that the Respondent is fully aware of

12    the -- the statements that we find are -- are at issue here.

13        JUDGE GREEN:  Okay.  Listen, that's fine.  The parties

14    don't -- you don't necessarily have to do that.  You know, the

15    parties can discuss that.  If you want to, that's fine, as long

16    as it doesn't take a huge amount of time.  But if the parties

17    are on the same page as to what's alleged to be unlawful, then

18    you don't need to have to do that.  But we'll take that when

19    the time comes.  So okay, so we have the stipulation regarding

20    the agency status of the speakers at the November 10th, 2021

21    meeting, correct?

22        MS. TOOKER:  Yes, Your Honor.

23        JUDGE GREEN:  Okay.  And is that it?  So do we move on to

24    subpoena paragraph 17 through 20?

25        MS. TOOKER:  I believe so.



1    JUDGE GREEN:  Okay.  And so off the record, in an email

2    last week, the Respondent indicated that there was something

3    that you wanted to say regarding these requests?  So if you

4    would like to discuss it, now is the time.

5    MR. POWELL:  Are we on the record?

6    JUDGE GREEN:  We are -- we are, yes.

7    MR. POWELL:  Okay, I couldn't -- I couldn't remember if we

8    actually -- we went on the record or not.  I apologize, Your

9    Honor.

10   JUDGE GREEN:  Yeah.

11   MR. POWELL:  So I believe we have resolved in conversation

12   that we had with counsel for General Counsel, requests 18 and

13   19.  So I do not believe those requests are at issue anymore.

14   And 20, actually, as well.  So the outstanding request where we

15   still have issues is request 17.

16   JUDGE GREEN:  Okay.  So that's the direction to employees

17   to attend meetings?

18   MR. POWELL:  Right.  And so what we have ag -- agreed to

19   produce is essentially any top-down direction or instructions

20   that were given to managers, to the extent they exist, about,

21   you know, employees, or getting employees to come to the small

22   group meetings.  What we have objected to based upon the burden

23   and a lack of proportionality between the -- the probative

24   value versus the -- the time and expense and burden of going to

25   get, is to go out to every supervisor and manager at both



1    facilities, which would be, you know, probably over 150 people,

2    and collecting ESI from all of them in the hopes that we might

3    find a stray email from a manager to an employee.

4         And let me explain to you why I'm saying stray.  The

5    employees at -- that were -- that were in the bargaining

6    unit -- so-called bargaining unit, do not have Amazon email

7    addresses.  And so typically, a manager would not be

8    communicating to them via email.  Counsel for General Counsel

9    said they understood anecdotally that some managers may have

10   personal email addresses of the employees and might communicate

11   to them that way.

12        You know, I can't say that that's not the case.  But what

13   I can say is that to go and find a one-off email from a

14   supervisor or manager that might address the issue of

15   attendance, if we can find it, would be a very, very large task

16   that would literally probably take us a couple of months.  Or

17   at least a month to get and would require a tremendous amount

18   of effort for almost no probative value, on a claim in an issue

19   that is perfectly lawful.

20        So we don't think we should be put in that burden.  At the

21   very least, I think what we would need -- you know, we should

22   do is see what our initial ESI search turns up in terms of the

23   instructions or directions that were given to managers, if any.

24   And then, you know, provide that to counsel for General Counsel

25   and if they continue to insist on more, then perhaps we bring



1     the issue to -- to you for final resolution at that time.

2          JUDGE GREEN:  Okay.  Am I right that for 17 -- for 17,

3     that the General Counsel wasn't asking for any -- at least any

4     texts from personal cell phones; is that right?

5          MS. TOOKER:  Yes, Your Honor.  Initially we were.  We

6     understood, you know, Respondent's issue with having to do that

7     search, and we've limited it in response to their concerns.

8     The -- I just want to speak briefly on the probative value

9     issue.  So there are certainly other subpoena paragraphs that

10    request the top-down instructions to managers related to the

11    mandatory nature of the meetings.  But we think that what was

12    actually said to the employees is the most probative evidence

13    of whether the meetings were mandatory or not.  And we also

14    take -- I mean, it seems to me -- and you know, we'll certainly

15    be presenting evidence in support of this, but it -- it seems

16    at this point, hav -- having the evidence that we have, that

17    it's -- Employer's -- the Respondent's position that these

18    meetings were not mandatory is not substantiated by any

19    evidence.  So the fact --

20         JUDGE GREEN:  Okay, let me just ask a couple of questions

21    about this.  So it -- it was really my understanding from the

22    conference call that the employer was taking the position that

23    these are not mandatory meetings because nobody was disciplined

24    for not coming.  And it -- it's -- you know, it -- is there

25    really any -- is there really any dispute that the -- that



1    supervisors and managers said, yeah, it's time for the meeting,

2    go to the meeting.  Is that -- is that disputed?

3         MS. TOOKER:  Well, I mean, we also are taking --

4         MR. POWELL:  No, Your Honor.  I mean --

5         MS. TOOKER:  -- the position that people were specifically

6    told that the meetings were mandatory, and they had to go.

7         JUDGE GREEN:  Okay.  Okay.  But --

8         MS. TOOKER:  Mandatory meetings.

9         JUDGE GREEN:  -- is that -- is that disputed?

10        MR. POWELL:  I don't know, Your Honor, because I don't

11   know what evidence they have.

12        JUDGE GREEN:  Okay.  And -- and what's your -- what is --

13   is what the General Counsel looking for basically what's in

14   personal emails?

15        MS. TOOKER:  Yeah.  There's also other methods that

16   employers -- the employer's representatives communicate with

17   employees.  There's an app, the Amazon A to Z app that I

18   understand that employer's -- the employer can use to

19   communicate with employees.  I understand that there's also

20   other methods that they use, including Chime.  But I've been

21   told by Respondent that those records are not maintained.

22   So --

23        JUDGE GREEN:  Okay, but the -- what -- what the -- what

24   the employer has, what the Respondent has, meaning what's in

25   your possession and control and not necessarily what's in --



1    what's in personal equipment, is -- does the employer -- does

2    the Respondent have a problem producing that, or is it -- is

3    your problem really that you don't want to go to supervisors

4    and managers and sift through their personal email?

5         MR. POWELL:  There's two issues.  So just to collect the

6    ESI, so in terms of things that are on Amazon's platform, we

7    understand that they've -- they've, you know, eliminated the

8    personal phone -- personal devices from their request, which

9    obviously helps a -- some.  But the process of just going out

10   to 100 -- you don't go out to them when -- when -- I'm not

11   meaning that physically.  But collecting the ESI from 120 to

12   150 or more custodians, that process alone takes weeks.  Then

13   we'd have to, you know, run search terms against the data, and

14   then we'd have to review from the system.  And that's going to

15   take, you know, at least one month to do that.

16        And again, we think the -- for very, very limited utility.

17   We're providing any documents that might exist from the top-

18   down instruction to the -- to the supervisors or managers.  So

19   let's say you've got a -- you know, an operations manager who

20   worked on a floor with supervisors, a certain portion of the

21   facility.  We have any -- we will -- we're searching for and

22   will produce any top-down directions and guidance that was

23   given to them.

24        There are no emails from -- on the Amazon email platform

25   from an Amazon address to an Amazon employee in the bargaining

1    unit, because those employees don't have Amazon email

2    addresses.  So to conduct a search would be a monumental task,

3    because we would have to look for either communications related

4    to attendance, which could bring up all kinds, you know,

5    essentially false hits.  And -- or we would have to look for

6    individual employees' personal email addresses, which would be

7    a massive undertaking, because you know, we don't even know

8    what email addresses are out there.  And we just think that

9    that process, compared to the limited probative value, does not

10   make sense --

11         JUDGE GREEN:  Okay.

12         MR. POWELL:  -- again, for an allegation that is perfectly

13   lawful.

14         JUDGE GREEN:  Listen, this isn't -- this isn't going to

15   happen.  There is not going to be any production to this effect

16   today, and it sounds like there's not going to be any

17   production to this effect next week.  I think that the

18   appropriate course to take is to get what you can get.  I -- I

19   wouldn't be surprised if it -- what you get renders any

20   additional information redundant, duplicative.  So why don't

21   we -- listen, why don't we stick a pin in this issue, and if we

22   get a couple of days into the hearing and you still want

23   this -- this evidence, then we can talk about it again.

24         So also, you know, if the parties want to -- if -- you

25   know, if you want to litigate the issue of -- of the



1    reasonableness of this type of search, that's something you --

2    you can do.  But in -- in the first instance, you know, I

3    wouldn't be surprised if you get sufficient evidence to

4    establish that -- what you want to establish.

5        MS. CABRERA:  Oh, I --

6        JUDGE GREEN:  Okay.

7        MS. CABRERA:  I'm sorry, Your Honor.  Just one -- one

8    point of clarification.  So is Respondent saying they're going

9    to turn over whatever they have for 17?

10       JUDGE GREEN:  They're -- they're going to turn over -- go

11   ahead, why don't you tell them again, Mr. Powell?

12       MS. CABRERA:  I just -- just to clarify, it wasn't that

13   clear.

14       MR. POWELL:  Yeah, we -- we're -- we're doing -- we're

15   doing the search of from the top-down instructions, like we've

16   previously agreed to discuss and agreed to, for some of the

17   other requests.  And we'll produce any such documents that were

18   top-down instructions or guidance given to managers about

19   attending the small group meetings.

20       MS. CABRERA:  But you don't have that today?

21       MR. POWELL:  No, we're still processing ESI.  We are -- we

22   have ESI.  We've collected ESI from approximately 25

23   individuals.  That process -- then we have -- you know, they

24   have to ingest the data, and then we'd have to run search terms

25   against it.  And that's all in process but it is not completed



1    at this point in time.  We haven't got all the documents

2    reviewed yet either.

3         JUDGE GREEN:  Have the parties consulted regarding the

4    terms -- the search terms?

5         MR. POWELL:  Counsel for General Counsel told us that we

6    should be able to come up with appropriate search terms, and so

7    that's what we've attempted to do --

8         JUDGE GREEN:  Okay.

9         MR. POWELL:  -- in presenting search terms against it.

10        JUDGE GREEN:  Okay.

11        MS. TOOKER:  Your Honor, but we said if, you know -- that

12   we weren't comfortable doing initial search terms because

13   we're, you know, not --

14        JUDGE GREEN:  Right.

15        MS. TOOKER:  -- we don't -- we can't interact with the

16   data sets.  But you know, to the extent that we need to consult

17   on it, or you know, try to work with them to narrow it, then

18   we're happy to do that.

19        JUDGE GREEN:  Right, presumably when the documents are

20   produced, there's also going to be a production of a list of

21   the search terms that -- search terms that were used to obtain

22   those documents?  I would imagine.  So that's -- that's what

23   I'd like to see.  So when you produce -- is that something that

24   can be done when you produce the documents, you also produce --

25        MR. POWELL:  Yes, Your Honor --



1      JUDGE GREEN:  Yeah.

2      MR. POWELL:  -- yeah, we can do that.

3      JUDGE GREEN:  And then if you -- listen, if you have an

4   issue -- the General Counsel has an issue with the search terms

5   that -- that were used, you can talk about it.

6      Anything else that has to be done?

7      MS. CABRERA:  Well, Your Honor, I don't know if this is an

8   appropriate time to talk about this, given we just received

9   some documents from Respondent.  But I think General Counsel is

10   just very concerned about the speed of the production, and what

11   it could mean for this hearing.  You know, we have experience

12   in prior litigation that it takes weeks for documents to get to

13   the General Counsel, which ends up necessitating very -- you

14   know, with -- with all the judge's, you know, limited

15   schedules, it -- it, you know, causes huge delays.  We're

16   talking months.  So I -- once we are able to take a look at the

17   documents, I do think we need to have a conversation for when

18   the remaining documents are going to be produced.  I just think

19   it's -- it's an issue that we -- we really need to address.

20      JUDGE GREEN:  Okay, listen.  I mean, we can talk about it.

21   But the bottom line is, you know, the Board has a broad

22   standard of discovery, and in the age of ESI, it's difficult to

23   produce these things in the time frame that -- that the GC asks

24   for.  And you know, the Respondent's only required to make a

25   reasonable and diligent search.  So you know, again, if you



1    want to di -- if you want to litigate the -- the reasonableness

2    or the diligence of the search, that -- that's something that

3    we can do.  I'd rather we don't have to do it.  But that's --

4    that's something we can do.

5        I mean, otherwise, I don't --

6        MR. POWELL:  And I can -- I can -- I can certainly address

7    that, Your Honor.  I mean, we have been diligent.  We did not

8    wait.  We started collecting -- you know, started the process

9    the week after we received the subpoena, and before the filing

10   of our petition to revoke.  We interviewed witnesses,

11   identified potential custodians, started the process of

12   collecting the ESI.  And you know, it just takes time to -- to

13   do that.  And the -- portions of this take time that are not

14   within our control to speed up.  You know, because it takes

15   time to capture the data, have that data ingested for ESI

16   processing.  And you know, that's done through a -- you know,

17   an expert service that you know, does that -- processes

18   electronic data for, you know, discovery, review, and

19   processing, and production.  And you know, it just takes -- it

20   takes the time that it takes.

21       So if Counsel for -- as we sort of said in our email to

22   you prior to the hearing, you know, the way to avoid this

23   problem is to serve the subpoena more than two to three weeks

24   in advance to the hearing.

25       MS. CABRERA:  Well, I mean, to respond to that, you know,



1    three weeks for, you know, one of the largest sort of

2    technology base employers, who has, you know, teams of

3    attorneys, you know, in the region's view, and the General

4    Counsel's view, is a reasonable period of time to search

5    electronic records.  But (indiscernible, simultaneous

6    speech) --

7        JUDGE GREEN:  Okay, but the bottom line is -- listen.  The

8    bottom line is that I'd like to see -- you know, the parties

9    are -- are under an order to consult regarding the production

10   of documents.  And I -- I'd like to see you all be on the same

11   page regarding how long that should take.  But if you're not,

12   you're not.  And then it's something that has to be litigated.

13   Like, there has to be witnesses, and there has to be evidence

14   presented regarding the reasonableness of the search.

15       If -- you know, if -- if you -- if the parties want to

16   spend their time doing that, you can do it.  There's not really

17   much I can do.  But it's not going to be resolved by me just

18   sitting here listening to the attorneys.

19       MS. CABRERA:  Well, I -- I -- I -- once we look at the

20   records, I mean, I think we -- at a minimum, do -- really do

21   need to figure out what the deadlines are here, because it just

22   (indiscernible, simultaneous speech) --

23       JUDGE GREEN:  There isn't -- no, no, it's not -- it's not

24   an issue with that.  It's really not -- the deadline is the

25   return date, which is the hearing date.  That -- that is the



1   deadline, and subpoenas are enforceable. And if you have a

2   late production of documents, you theoretically can go to the

3   district's board and enforce them -- the documents, enforce the

4   subpoena to get the documents, if you thought that that was

5   going to get it -- get it any earlier. The only issue is --

6   for us, is whether evidentiary sanctions are viable or required

7   in -- in lieu of late-produced documents. And that is -- and

8   we've been through this quite a few times at this point.

9   Not -- not just -- you know, not just the region, but also

10   these particular parties. If -- if there's a dispute regarding

11   late produced documents, then that's something that has to be

12   litigated, because you have to establish that -- you have to

13   establish that evidentiary sanctions are appropriate, or

14   perhaps the burdens on the Respondent once the documents are

15   late, to -- to prove that the -- the search was reasonable.

16      The Board actually hasn't been entirely clear on where the

17   burden -- burden lies. But it's a litigation, you see? It's

18   not something that I just listen to the lawyers and say, yeah,

19   okay, it's got to be done on -- on day 10, or I'm going to

20   app -- to approve sanctions. That's not the way this works.

21      MS. CABRERA: Okay, thank you, Your Honor.

22      JUDGE GREEN: So other than that, do we have anything else

23   before we want to move onto opening statements?

24      MS. CABRERA: Well, should -- I'm sorry. Should we

25   officially call for production at this juncture, or is that



1    sort of implicit?

2        JUDGE GREEN:  It's implied.  It's implied.  Listen, the --

3    the -- the subpoena is -- is producible.  It is returnable on

4    the first day of the hearing.  So the Respondent should produce

5    whatever information you have now.

6        MR. POWELL:  And we have, Your Honor.

7        JUDGE GREEN:  Okay.  So that has been produced in -- in

8    what form?

9        MR. POWELL:  We have uploaded documents to the SharePoint

10   site.  So we've sent a link -- I'm sorry, we sent a link, the

11   documents to counsel for General Counsel in response to the

12   subpoena.  They have those documents available to them through

13   that link.  And we will continue to produce documents in

14   response to the subpoena as the ESI review process is

15   completed.  And I can't give a specific time frame for that

16   sitting right now.  I'll need to confer on that while we're on

17   a break.  And I can get counsel for General Counsel as much

18   information as I can in terms of timing on that on the break.

19       JUDGE GREEN:  Okay.  listen, if the parties -- you know,

20   it seems like the lawyers should understand what was produced

21   when.  And if we can get a stipulation to that effect as we go

22   forward, that would probably be helpful.  And then the parties

23   can make whatever arguments they want regarding whether the

24   production was reasonable at the time it was produced.

25           I'm just saying -- and I've said this before the trial --



1    that it's not the type of thing that we want to spe -- be

2    spending a lot of time on, and we don't have to.  You know, if

3    the parties can be reasonable, and they can come to some kind

4    of, you know, agreement regarding whether this stuff is being

5    produced in a reasonable and timely manner, that's better than

6    having to litigate it.  But if we have to litigate it, we'll

7    litigate it.

8         MR. POWELL:  Yeah, and -- and to make it clear, we've

9    produced all of the non-ESI documents that were responsive to

10   the request.

11        JUDGE GREEN:  Okay.

12        MR. POWELL:  So if it's wasn't -- if it wasn't something

13   that required a search of ESI, and we were able to, you know,

14   go out and collect it and it was a non-ESI; we produced it --

15   we think we've done a full production of non-ESI documents that

16   were responsive to the subpoena.  It's -- the portion that

17   we're waiting on is the ESI, and as I said earlier, that part

18   just takes the time that it takes, and it's difficult to speed

19   it up.

20        JUDGE GREEN:  Okay, listen, I understand.  And the

21   Respondent -- I mean, just so you know, and you -- you can make

22   the decisions you want to make.  But since the -- since a

23   subpoena is returnable on the first day of the hearing, once

24   you get past the first day of the hearing, it does put you in

25   something of a risk in terms of evidentiary sanctions.  And



1    it's really not entirely clear on which party the burden lies

2    to prove that evidentiary sanctions are appropriate.  So if you

3    don't really get the okay from the General Counsel that you've

4    produced it in a timely manner, you might want to put on

5    evidence during your case as to why it was produced and when it

6    was produced.  Why it was produced when.  It's up to you,

7    obviously.  I'm just kind of telling you that, you know, to be

8    safe, you might want to do that.

9        Okay, so opening statements?  Are we ready for that?  All

10   right, so what -- yes?

11       MS. TOOKER:  Oh, Emily, did we want to look at the

12   documents that they gave us before?

13       MS. CABRERA:  Yeah, I was going to ask --

14       JUDGE GREEN:  Okay.

15       MS. CABRERA:  -- that, you know, whatever -- however

16   you -- you prefer, Your Honor.  Should we -- should we --

17       JUDGE GREEN:  No, that's fine.  We -- we can do that -- we

18   can do that first.  Do you -- do you have a sense of how long

19   you want to take for that?

20       MS. CABRERA:  We -- I haven't even opened their link.  I

21   don't know how much has been produced.

22       JUDGE GREEN:  Okay.

23       MS. CABRERA:  Maybe we can start with an hour?  And

24   then --

25       JUDGE GREEN:  Sure.



1    MS. CABRERA:  -- we need more we can come back, and --

2    JUDGE GREEN:  Okay, so it's around 11.  So we'll come back

3    at around 12?

4    MS. CABRERA:  Okay.

5    THE COURT REPORTER:  Before we go, I don't have access to

6    a SharePoint, so you could probably email me the -- the

7    exhibits.

8    MS. CABRERA:  Oh.

9    MR. POWELL:  The -- these are not exhibits.  This is just

10   a document.

11   THE COURT REPORTER:  No, no, I was talking to -- I was

12   talking to the General Counsel.

13   MS. CABRERA:  Yeah, we've got -- we had that GC-26, I

14   think that he sent.  I'm going to email that.  And we'll --

15   we'll copy the Respondent's counsel on the email, so everybody

16   has various email for future.

17   JUDGE GREEN:  Yeah, listen, I'll -- in the meantime, I'll

18   see if I can get access to -- well let's go off the record.

19   (Off the record at 10:57 a.m.)

20   JUDGE GREEN:  Okay, so why don't you take it away?

21   MS. CABRERA:  All right, okay, so we'll just start at

22   paragraph 1.  So we received the VOA posts both in a native

23   format and then also in PFD format.  Is there anything else

24   that's responsive to number 1, or is that it?

25   MR. ENJAMIO:  Nothing.



1      MS. CABRERA:  Okay.  Okay, paragraph 2, I guess same

2   question.  So we also asked for responses.  I saw that what you

3   provided had responses from management.  So just to clarify

4   though, as far as paragraph 2, there's nothing else that's

5   responsive, right?

6      MR. ENJAMIO:  There's nothing else that's responsive.

7      MS. CABRERA:  Okay, paragraph 3, I didn't see anything

8   responsive to that request, for any directions for employees to

9   remove any VOA posts for that same time period?

10     MR. ENJAMIO:  3, 4, 5, and 6, they're part of the ESI that

11  we're currently reviewing.

12     MS. CABRERA:  Oh, okay.  So 3, 4, 5, and 6, there's no

13  responsive documents yet?

14     MR. ENJAMIO:  That's part of the ESI that we are still

15  processing.

16     MS. CABRERA:  Okay.  And I'm sorry, you were -- you were

17  breaking up a little bit, Juan.  So it's 3 --

18     MR. ENJAMIO:  That's part of the ESI -- that is -- that is

19  part of the ESI review and production that was discussed this

20  morning.

21     MS. CABRERA:  Okay, and it's 3, 4, 5, and 6?

22     MR. ENJAMIO:  Relative to that category, yes.

23     MS. CABRERA:  Okay.  And with regard to 7 and 8 --

24     MR. ENJAMIO:  I'm sorry, I'm sorry.  There may be a do --

25  I believe there's one email that we produced that would be



1   responsive to at least one of those paragraphs.  But the --

2       MS. CABRERA:  Yeah, the email from Mike Tanelli?

3       MR. ENJAMIO:  -- (indiscernible, simultaneous speech).

4   Yes.

5       MS. CABRERA:  Okay, but there's still more to come, it's

6   not your sole production for any paragraph.

7       MR. ENJAMIO:  That's right, we're -- we're -- exactly.

8   ESI.

9       MR. POWELL:  We don't know if there's more to come.

10      MR. ENJAMIO:  Yeah, I mean, we -- we're searching the ESI

11  and reviewing it, yes.

12      MS. CABRERA:  Okay.  And res -- in response to paragraph 7

13  and 8, I saw two posts from November.  So I was wondering just

14  what your position is on that.  Because the two paragraphs, 7

15  and 8, ask for postings from May of '21.  So I just wanted to

16  know if those two posts are supposed to represent that, or

17  something else.

18      MR. POWELL:  I think we've produced in response to 7 and

19  8, all of the campaign materials and if there weren't (audio

20  interference) what we produced.

21      THE COURT REPORTER:  Uh, Mr. Powell, I'm having -- I'm

22  having -- I'm having trouble hearing you.

23      MR. POWELL:  Okay.  I believe in response to 7 and 8 we've

24  produced all of the written campaign materials that we have in

25  response to 7 and 8.



1      MS. CABRERA:  Okay.  I mean -- and this is a bit

2   unorthodox.  I can share my screen, but my question is about

3   the fact that the title of -- first of all, it's only two

4   postings.  And then the title of each posting is November 2021

5   campaign -- I guess communications, communications.  But it's

6   only two documents.  So the subpoena asked for postings from

7   May.  So I guess my question is to you, are you saying that

8   even though these are entitled November, that they would have

9   also been posted in May?

10     MR. POWELL:  I believe that's correct.  It was -- I mean,

11  I believe it was -- like, it might have been collected in

12  November.  Those were the postings that I think were (audio

13  interference) --

14     MS. CABRERA:  I'm sorry, Kurt, you cut out.

15     MR. POWELL:  Those are the postings that were within the

16  scope of your request and that we've produced.

17     MS. CABRERA:  Okay, I'm sorry to harp on it, but you know,

18  words matter.  So you're sa -- so your position is that these

19  two posts -- postings were posted in May?

20     MR. POWELL:  That -- that -- the period from May 1st to

21  May 31st.  And we've produced what we believe was posted during

22  that period within the scope of the request as you limited it

23  in our meet-and-confer conversation.

24     MS. CABRERA:  Well, what do you mean by that?

25     MR. POWELL:  You agreed to limit those requests to noticed



1     and messages regarding any communications with employees that

2     unionization will result in the loss of benefits, including the

3     right to directly address management about their workplace

4     issues and concerns.  That was the limitation that you set

5     forth --

6          MS. CABRERA:  Right.

7          MR. POWELL:  -- I believe in your petition, and in your

8     response to our petition to revoke.  And we've produced the

9     responsive documents consistent with that limitation.

10         MS. CABRERA:  So notwithstanding the fact that it says

11    November 2021, it is your position that those two postings are

12    the entirety of what was posted for the period May 1 to May

13    31st of 2021?

14         MR. POWELL:  That is my understanding.

15         MS. TOOKER:  Sorry to jump in here, Emily, but my

16    understanding of our limitation was that we were keeping

17    subparagraphs A, B, and C, which say, the Amazon Labor Union,

18    ALU, and union authorization cards, and instead of, for unions

19    in general, we were limited that to statements related to --

20    I -- I don't remember the exact verbiage, but about union dues,

21    and -- and -- and limiting your right to speak directly with

22    em -- the employer, which was a little bit different than how

23    Kurt characterized it.  So I just want to make sure that we're

24    all on the same page, that all documents that include mentions

25    of the Amazon Labor Union, ALU, and union authorization cards,



1   are all included in your production, as well as that other --

2   that other segment that you mentioned.

3   JUDGE GREEN:  Okay, I mean, I can tell you that's not how

4   I understood your petition.  Your -- your response.  It was

5   and, not -- it was and.  You know, I'm -- I'm -- I'm looking at

6   it.  I mean, you -- you -- you said you wouldn't -- you said in

7   the petition that you -- you weren't going to ask for documents

8   pertaining to unions in general.  But then you also said, and

9   you're limiting it -- you're seeking only notices and messages

10  regarding any communications to employees that unionization

11  will result in the loss of benefits including et cetera, et

12  cetera.

13  MS. TOOKER:  Okay.

14  JUDGE GREEN:  That's how I understood it.

15  MS. TOOKER:  Okay.  Emily, I'll -- I'll leave it to you --

16  MS. CABRERA:  Yes.

17  MS. TOOKER:  -- as to (indiscernible, simultaneous

18  speech).

19  MS. CABRERA:  Yeah, I mean, that's -- that -- that's not

20  what we meant.  But to be honest, I don't know that we need

21  anything else.  So is it -- I will put a pin in that.

22  JUDGE GREEN:  Okay.  I mean, I can tell you that I was

23  surprised --

24  MS. CABRERA:  Yes.

25  JUDGE GREEN:  -- to see the request, as it's not an



1    8(a)(3) case.  It's normal -- it's normal to have that sort

2    of -- that sort of request in an 8(a)(3) case.  It's less --

3    far less normal in an 8(a)(1).

4         MS. CABRERA:  Well, I mean, we're -- we're alleging that

5    some of the communications were unlawful, you know?  And --

6         JUDGE GREEN:  I understand.  Again, I understand how you

7    said it in the -- let me just tell you that, like, I haven't

8    addressed that.  I haven't addressed that.  I haven't addressed

9    any of the requests for pur -- for purposes of an order to

10   (audio interference).  Because the parties came to an

11   understanding.  I -- I thought the parties came to an

12   understanding.  If -- if that's not the case, we're going to

13   have to revisit -- we're going to have to revisit this issue,

14   because it's not at all clear to me that those documents are

15   relevant.

16        MS. CABRERA:  Okay.  No, I -- I understand, Your Honor.

17   But again, just to clarify, and I'll -- I'll look at the

18   complaints and get the exact paragraph numbers, but we allege

19   that certain posts that went up during that May -- the month of

20   May violated the Act.  In addition, we're seeking certain

21   remedies that relate to that posting, particularly given its

22   dissemination.  So that was the reason for, you know, seeking

23   all of the different posts that might have gone up, containing

24   what we believe is unlawful language.

25        JUDGE GREEN:  Okay.  And then we can talk about it if



1    the -- we can talk about it more if the parties don't have an

2    agreement.  But they -- if they don't --

3         MS. CABRERA:  Yeah, I -- I don't -- I don't --

4         JUDGE GREEN:  -- if they don't have an agreement, then

5    there's going to have to be a decision made by me on the

6    petition to revoke.

7         MS. CABRERA:  Yeah, I -- I don't know that we don't.  I

8    would like to take it back to regional management and come back

9    with a final --

10        JUDGE GREEN:  Okay.

11        MS. CABRERA:  -- the region's final position on that on 7

12   and 8.  But just to be clear, because I don't know that -- that

13   Kurt responded.

14        Kurt what -- was your reading of that paragraph, that we

15   were only seeking the limitation that -- that we set forth in

16   our responsive email?

17        MR. POWELL:  What I -- what I stated is the limitation

18   (audio interference) from your response to our petition to

19   revoke.  Our understanding was that you --

20        THE COURT REPORTER:  I don't know why I'm having trouble

21   hearing you, Mr. Powell.

22        MS. CABRERA:  Yeah.

23        THE COURT REPORTER:  You're muffled.

24        MS. CABRERA:  Yeah, Mr. Kurtis, you keep -- you keep

25   cutting out.  I don't know if it's your -- something's wrong



1    with your audio?

2        MR. POWELL:  I don't -- I don't know.  I'm going to try to

3    get closer to a mic if that improves things.  That better?

4        MS. CABRERA:  For now, yeah.

5        MR. POWELL:  Well, let me know if it continues to be a

6    problem, and we'll make a little other adjustment.  Anyway,

7    what I -- what I stated earlier is, the limitation was a quote

8    I believe from your response to our petition to revoke.  And

9    that's what we understood the limitation on those two requests

10   to be.

11       MS. CABRERA:  So but -- but let me just be a little bit

12   clearer.  So in paragraph 7, 8, there's an A, B, C, and D.  So

13   are you saying that the intention was to keep A, B, and C, and

14   only -- and -- and exchange the Unions in general language for

15   the limiting language that you identified before?  That was our

16   intention.  My only question is, did you limit your search to

17   just that limitation, or did you include also A, B, C -- A, B,

18   and C in your search -- or in the production, I should say?

19       MR. POWELL:  Let me confirm.  I will also put a pin in

20   that one and I will confirm for you --

21       MS. CABRERA:  Okay.

22       MR. POWELL:  -- what we have produced, out -- and we'll

23   just leave it at that, I will confirm.

24       MS. CABRERA:  Okay.

25       MS. TOOKER:  All right, so I'm going to take over.  We did



1    get documents responsive to 9 and 10.  We withdrew 11 pursuant

2    to our stipulation that we discussed earlier on the record.

3         Regarding 12, I see what are labelled as attendance

4    sheets.  Sorry, let me just -- yeah, so training, attendance,

5    with dates.  And it looks like those reflect each of the dates

6    of the meetings alleged in the -- the complaint.  I will note,

7    it looks like the November 10th and November 11th attendance

8    are combined into one document.  And just to confirm, there's

9    no -- there's no information about, like, the times of any of

10   the meetings.  It just looks like the attendance was kept

11   for -- I -- I assume that all the people on the list didn't go

12   to the same meeting together, but that they attended similar

13   meetings throughout that same day?  I mean, I can ask witnesses

14   about this, but that's what it looks like to me?

15        MR. POWELL:  I believe that's -- I believe that's correct,

16   yeah.  It was kept on a -- I believe it was kept (audio

17   interference), but it was kept on a daily basis.

18        MS. TOOKER:  Okay.

19        MR. POWELL:  Or with respect to a particular module.

20        MS. TOOKER:  Got it.  All right, and then regarding -- it

21   looks like the production for most part, for paragraphs 13 and

22   14 are together.  So it looks like we have PowerPoint

23   presentations, which would be responsive to 14, as well as

24   scripts and instructions that are included with the

25   PowerPoints.  Is that -- that's accurate, they -- and those are



1       the documents that are responsive to 13 and 14?

2           Oh, we lost you again, Kurt.

3           MR. POWELL:  That's correct.

4           MS. TOOKER:  Okay.  And so in addition to that, I -- a lot

5       of them -- sorry, a lot of them are labelled "SGMPPT".  Now,

6       I'm going to assume PPT is PowerPoint.  Do you guys know what

7       SGM is?

8           MR. POWELL:  Small group meeting.

9           MS. TOOKER:  Small group meetings, all right, thanks for

10      clearing that up.  And then -- all right, so in addition to

11      the -- what looks like combined PowerPoint and instructions

12      with scripts, we also have a document that is Taylor notes.

13      And I'm assuming those are Mr. Taylor's -- Scott Taylor's notes

14      related to the April 19th meeting?

15          MR. POWELL:  Yes.

16          MS. TOOKER:  Okay.  And then so for the rest of the

17      paragraphs, 15 through 20, based on our -- I -- I don't think

18      that there is anything responsive in the documents that you

19      provided, but I understand based on our earlier conversation

20      that you continue to conduct the ESI search and will be getting

21      those documents to us as soon as possible?

22          Uh, lost you again, Kurt.

23          MR. POWELL:  That is correct.

24          MS. TOOKER:  Okay.  All right.

25          And so I think that that's it, Emily, unless you had



1 anything else?  Okay then.

2   MS. CABRERA:  Thank you.  Nothing on clarifying what was

3 produced, what wasn't produced.

4   But Your Honor, I do want to put in -- offer to put in

5 some of the documents that we received from Respondent.

6   MR. POWELL:  Okay.

7   MS. CABRERA:  And I -- I guess now is a good time as any,

8 if the parties are amenable.

9   JUDGE GREEN:  Yes, if there's going to be an issue of

10 authenticity, and there shouldn't be, we might as well see if

11 we can stipulate to the introduction of some of these records.

12   MS. CABRERA:  And again, I will send around an email.

13   Barry, you still don't have access -- do you still -- do

14 you have access yet to the SharePoint?

15   THE COURT REPORTER:  No, I haven't gotten it.

16   MS. CABRERA:  Okay, so I'll send an email with all of

17 these exhibits to the parties shortly.

18   JUDGE GREEN:  Do you know what numbers they're going to

19 be?

20   MS. CABRERA:  Yep, I'll tell you right now.  Okay, so for

21 GC-27, I propose to put in the -- the VOA post that Respondent

22 provided in its production.  I'm going to -- we'll say 27(a)

23 will be the PDF version.  And 27(b) I'd like to just reserve

24 that Exhibit Number for -- Respondent also provided a native

25 format for those Voice of the Associates' posts.  I don't know



1      that we need it.  I just haven't had a chance to make sure that

2      each -- that the PDF matches the natives.

3           JUDGE GREEN:  Okay, but they're both going in as 27, one's

4      going to be (a), and one's going to be (b)?

5           MS. CABRERA:  Yeah.  I mean, I don't have to put 27(b) in

6      if --

7           JUDGE GREEN:  Yeah, okay, but --

8           MS. CABRERA:  -- if they match.  It's just to not overload

9      the record.  So I would propose that as 27(a).

10          JUDGE GREEN:  Do you -- does the Respondent know what

11     document that is, and do you have any objection to it?

12          MR. POWELL:  Can we have the references to make sure that

13     we know what they're talking about?

14          MS. CABRERA:  Sure, yep.  It's Amazon number --

15          JUDGE GREEN:  Sure.

16          MS. CABRERA:  -- let me just scroll up in this.  I'm

17     sorry, it kicked me off.  Let me head back into the link again.

18     It's a very annoying feature of these links that you guys give

19     us.  It kicks you off after a few minutes.  Okay, it's Amazon

20     number -- the PDF is 219.

21          MR. POWELL:  Sorry, Emily?

22          MS. CABRERA:  219.  Or I mean -- there's 000219, is the

23     number that you guys gave us.

24          MR. POWELL:  Can we go through all, and then we can make a

25     decision through the break to just follow up entirely --



1          JUDGE GREEN:  Yeah.

2          MR. POWELL:  -- or do you want to do them one by one?

3          JUDGE GREEN:  No, that's fine, we can do it that way.

4          MS. CABRERA:  Okay, so I'll just go through it quickly.  I

5     would also propose to put in as GC-28 the email from Mike

6     Tanelli to certain higher ups.  That is -- I have to get your

7     Amazon number, give me one second.  That is Amazon -- I think

8     there's four zeroes there, 93.

9          And then I would also propose to make GC-29 the FAQs to

10    the solicitation policy, which is Amazon number 2 -- four

11    zeroes, 23.  That's all I have for now.

12         JUDGE GREEN:  Do we know if there's going to be any

13    objection to the tapes, GC-2 through 8?

14         MR. POWELL:  Your Honor, we don't know at this point in

15    time.  It may depend on, you know, what portions of the -- of

16    the recordings --

17         JUDGE GREEN:  Okay.

18         MR. POWELL:  -- are being relied upon.  I don't anticipate

19    that we're going to have issues there, but it depends a little

20    bit on how things unfold, I suppose.

21         JUDGE GREEN:  Okay.  Okay, so and by -- and so is there --

22    and so why don't you take a moment, the Respondent, to look at

23    GC-27 through 29?

24         MS. CABRERA:  And I'll email them to everybody right now.

25         MR. POWELL:  Okay.  We'll just -- we're just going to go



1    on mute and go off camera, and then we'll come right back if

2    that's okay.

3         JUDGE GREEN:  Yep, yes.

4         MR. POWELL:  Thank you.

5    (Off the record at 1:38 p.m.)

6         JUDGE GREEN:  Okay, so any objection to GC-27 through 29?

7         MR. ENJAMIO:  Well, we have no objection to 27(a), and if

8    they want to introduce 27(b), we also have no -- what's been

9    labeled as 27(b), and we have no objection to that.

10        We have no objection to GC-28, the email.  And the only

11   thing we would say with respect to 29 is that those are the

12   FAQs for its solicitation policy that we have also produced.

13   That's Amazon 000022.  So we believe for purposes of

14   completeness, both documents should be introduced.  But with

15   that caveat, we have no objections.

16        MS. CABRERA:  So the reason that we haven't proposed the

17   solicitation policy is we believe that it's part of the larger

18   handbook, and we were waiting to hear from you guys as to

19   whether the handbook I sent you is acceptable.  So we'd like to

20   put the whole handbook in, including the solicitation policy.

21   So if you -- as soon as you guys get back to us on that, we're

22   happy to propose that as a GC exhibit as well.

23        MR. POWELL:  Okay, well we'll come back to you on that.  I

24   don't believe the version of the handbook that you sent to us

25   is the version that was in effect during the relevant time



1    period, and that's what we're trying to track down.

2         MS. CABRERA:  Got it.  I think that might be an issue.

3         JUDGE GREEN:  Okay.  So GC-27 and 28 are admitted.

4    **(General Counsel Exhibit Numbers 27 and 28 Received into**

5    **Evidence)**

6         JUDGE GREEN:  GC-29, it sounds like it's going to be

7    admitted.  That's going to be admitted as well.

8    **(General Counsel Exhibit Number 29 Received into Evidence)**

9         JUDGE GREEN:  And we might get the handbook, which will

10   contain the no solicitation clause.  But we have to find the

11   right version; am I right about that?

12        MS. CABRERA:  So it sounds like, Your Honor, yes.

13        MR. POWELL:  Yes, Your Honor.

14        JUDGE GREEN:  Yeah, okay.  By the way do people have

15   access to the -- did people manage to get access to the

16   SharePoint page?

17        MS. CABRERA:  Yes.

18        JUDGE GREEN:  Okay.

19        MS. CABRERA:  Oh, I'm sorry, Your Honor, I didn't

20   upload -- I -- I will upload these into the SharePoint page.

21        JUDGE GREEN:  It -- it doesn't matter.  We can do it by

22   SharePoint, we can do it by email; whatever people like better

23   is fine.

24        THE COURT REPORTER:  I haven't gotten it back yet.

25        JUDGE GREEN:  Okay, I sent them an email, we'll see.



1    Hopefully they'll get back to us.

2        MS. CABRERA:  Well, the good news is I don't think we're

3    closing today, so --

4        JUDGE GREEN:  Correct, I would imagine.

5        So we haven't yet gotten opening statements.  So is there

6    anything else we need to do?  Or shall we move on -- okay,

7    sounds like we're ready to move onto opening statements.

8        For the General Counsel, would you like to provide your

9    opening statement?

10        MS. TOOKER:  Yes, Your Honor, we would.

11        JUDGE GREEN:  Okay, whenever you're ready.

12        MS. TOOKER:  All right.  Thank you.

13        Good afternoon, Your Honor, and Counsel.  Your Honor, this

14    case involves Amazon the Respondent, which is the fifth largest

15    employer in the world, and the Amazon Labor Union, a grassroots

16    organization formed by current and former employees of

17    Respondent, and Respondent's coercive response in an effort by

18    the Union to organize the employees working for Respondent in

19    two of its Staten Island, New York, facilities.

20        Upon learning of its employees interest in joining the

21    Union, Respondent brought its incredible resources to there and

22    used all avenues available to convince employees not to sign

23    union authorization cards, and not to vote in favor of the

24    Union.  This include -- included stifling employee calls for

25    concerted activity on its Voice of Associates board, plastering



1    its anti-union message on walls, tables, bathroom stalls, and

2    the employees' personal cell phones, via its A to Z app, as

3    well as requiring employees to attend a seemingly endless

4    number of group meetings led by managers and labor consultants,

5    with the express purpose of convincing employees not to support

6    the Union, even where attending these meetings meant a loss of

7    employee productivity.

8        The evidence will show that Respondent repeatedly engaged

9    in violations of 8(a)(1) of Act during these vigorous anti-

10   union campaigns, resulting in fear and coercion amongst

11   employees subjected to this unlawful conduct.  Before I get

12   into the details of the General Counsel's allegations, I would

13   like to lay out some important dates related to the Union's

14   organizing effort.

15       In April 2021, the Amazon Labor Union put up a tent at the

16   bus stop near Respondent's Staten Island, New York, facility,

17   and began collecting union authorization cards from

18   Respondent's employees.

19       On October 25th, of 2021, the Union filed its first

20   representation petition with Region 29 of the NLRB, seeking to

21   represent Respondent's employees working at the company's

22   entire Staten Island, New York campus.  On November 19th of

23   2021, the Union withdrew that petition, and on December 22nd,

24   2021, it filed a second petition to represent just Respondent's

25   JFK8 employees.  JFK8 is the largest of the Staten Island



1    buildings, and then on February 3rd of 2022, the Union filed a

2    petition to represent the employees in one of the other

3    Respondent buildings in Staten Island called LBJ5.  At the end

4    of March 2022, a representation election was conducted among

5    the JFK8 employees, and a majority of the employees voted in

6    favor of the Union.  The Respondent continues to contest the

7    outcome of this election.  The representation election among

8    the LBJ5 employees was held at the end of April 2022 and the

9    Union lost this election.

10      So upon learning of the Union's campaign, Respondent began

11   to respond by stifling collective action on the VOA board and

12   by fostering unlawful messages about the significance of

13   signing a union authorization card.  So Respondent's Voice of

14   Associ -- of Associates Board, which we will refer to as the

15   VOA board, is a scrolling stream of employee comments and

16   management responses to those comments displayed on various

17   television screens throughout Respondent's, including JFK8 and

18   LBJ5.

19      Employees used the VOA board to express concerns about all

20   types of work-related problems and concerns.  But most

21   importantly, employees have commonly used the VOA board to

22   engage in Section 7 protected activities such as posting that

23   employees should vote for or against the ALU in its elections,

24   voicing common health and safety concerns, and even soliciting

25   for workers to come get vote no T-shirts.



1          However, and July 9th, 2021, when employee Dana Miller

2     utilized the VOA board to call for holiday pay for the newly

3     established Juneteenth federal holiday and encourage employees

4     to come to the Union's tent to sign a petition in support of

5     their holiday -- that holiday pay, Respondent removed her post

6     and silenced her voice.  Not only did Respondent remove the

7     post, but it went a step further and threatened Miller with

8     discipline if she tried to repost her Juneteenth call to

9     action, and it temporarily revoked her authorization to post on

10     the VOA board.

11          By this conduct, under current Board law, Respondent

12     disparately enforced it's no solic -- excuse me -- no

13     solicitation clause by permitting all of their Section 7 posts

14     but not Ms. Miller's Juneteenth post.  So disparate enforcement

15     violates Section 8(a)1 of the Act and Your Honor should find

16     that Respondent violated 8(a)1 by the disparate enforcement of

17     the solicitation rule by threatening Miller with discipline and

18     by temporarily revoking her permission to post on the VOA

19     board.

20          So in addition to silencing Miller's voice on the VOA

21     board, Respondent threatened employees in physical postings

22     placed around the JFK8 facility and in notifications sent to

23     employees' personal cell phones via the Amazon A to Z app.

24          During its campaign of intimidation and coercion,

25     Respondent told workers that signing a union authorization card



1    meant that employees would be legally bound, would lose their

2    right to speak for themselves, and would obligate workers to

3    pay the Union a monthly fee, all without any further

4    explanation of employees' rights.

5        These statements taken together made reasonable employees

6    understand that these coercive misstatements to mean that, by

7    signing an authorization card, they would automatically lose

8    their rights and benefits.  Consequently, Your Honor, should

9    find that the Respondent violated 8(a)1 by circulating these

10   coercive notices to employees.

11       After the Union began filing representation petitions,

12   Respondent began requiring employees to attend meetings wherein

13   Respondent could further indoctrinate employees with its anti-

14   union messaging.  The first meetings were held in November of

15   2021 after the petition was filed.  The meetings stopped after

16   the petition was withdrawn and then began again after the

17   additional petitions were filed and as the elections

18   approached.

19       In the weeks before the elections, Respondent held these

20   mandatory anti-union meetings all day, every day, and required

21   employees to attend multiple times in the same week, and

22   sometimes multiple times in one shift.  The General Counsel

23   will be arguing that Section 7 of the Act grants employees a

24   right to listen to as well as a right to refrain from listening

25   to Employer speech concerning employees' 8(a)1 -- excuse me --



1    concerning employees' Section 7 rights, including their right

2    to join a union, and that employers such as Respondent who

3    require employees to attend meetings and listen to Employer

4    speech concerning their Section 7 -- sorry -- concerning their

5    Section 7 rights is directly leveraging the employees'

6    dependence on their jobs, and therefore, coercing employees and

7    making them choose to relinquish their rights or to face the

8    consequences of defying their employer's instructions.

9         The evidence induced at this hearing will conclusively

10   show that employee attendance at Respondent's anti-union

11   meetings was mandatory, that employees were regularly told that

12   they -- that the meetings were mandatory.  Additionally, after

13   instructing employees to attend meetings, Respondent's managers

14   corralled employees and then herded them to the training rooms

15   to ensure that all employees attended the meetings.

16        Once employees arrived to the training rooms, their ID

17   badges were scanned so that Respondent could track meeting

18   attendance and ensure that all employees were exposed to its

19   anti-union messaging.  Respondent's employees attended the

20   meetings as they were instructed to do so because they knew

21   that defying Respondent's directives could result in

22   discipline, including termination for insubordination.

23        For these reasons, Counsel for the General Counsel will

24   urge Your Honor to find that Respondent violated Section 8(a)1

25   by requiring its employees to attend meetings for the purpose

1    of exposing its employees to its statements in opposition of

2    the Union.  The evidence will also show that during these

3    mandatory meetings, Respondent's agents made coercive

4    statements to employees.  We know about these statements

5    because employees in attendance recorded these meetings, so

6    there can be no dispute that the Respondent's agents made the

7    alleged statements.

8        In that regard, Respondent used the meetings held in late

9    2021 to unlawfully announce improvements to Respondent's

10   tuition benefit program, including expanded employee

11   eligibility and an increase in the percentage of the tuition

12   paid.  Respondent also used many of its mandatory meetings to

13   solicit grievances from employees and to encourage employees to

14   escalate their grievances to the highest levels of management

15   if they were not immediately addressed.

16       During multiple meetings, Respondent's agents made

17   unlawful statements about union dues and what would be required

18   if the Union were voted in.  Respondent stated that if

19   employees voted in the Union that all employees would be

20   obligated to pay union dues or a representation fee or that

21   such does or fees would be automatically deducted from

22   employees' paychecks.  Respondent unlawfully left out

23   significant details about dues payment, including that the

24   Union and Respondent would first have to enter into a

25   collective bargaining agreement with the Union's security



1    clause and that employees would have to authorize the Employer

2    to deduct dues or fees from their wages.

3        Instead of accurately conveying employees' rights of

4    payment, Respondent's agents told employees that they would be

5    fired if they did not pay the required dues or fees without

6    providing any additional information about employee rights and

7    the Employer and the Union's obligations related to the

8    security clause in the nonpayment of dues or fees.

9        In addition to these statements about dues, Respondent's

10   agents used these meetings to tell employees that if they

11   supported the Union, they would no longer be able to bring

12   their concerns directly to management, which constitutes a

13   threat of loss of benefits.  Respondent's agents told employees

14   that if they supported the Union, Respondent would not be able

15   to raise their wages and that their wages would be frozen,

16   despite the fact that Respondent has a practice of

17   automatically granting wage increases at certain intervals of

18   the employee's tenure.

19       Finally, during these mandatory meetings Respondent's

20   agents coerced employees by telling them that negotiations

21   would get start from minimum wage despite the fact that

22   Respon -- Respondent does not pay its employees minimum wage

23   but always more, and thereby coercing employees into believing

24   that a vote for the Union could result in wage reductions.  By

25   each one of these statements, Respondent threatened and/or

1    coerced employees in the exercise of their Section 7 rights,

2    and therefore, violated Section 8(a)1 of the Act.

3         To summarize, Your Honor, Counsel for the General Counsel

4    will be presenting evidence that Respondent violated 8(a)1 of

5    the Act by interfering and coercing employees in the exercise

6    of their Section 7 rights by, one, discriminatorily enfor --

7    enforcing its solicitation policy against Dana Miller's

8    protected, concerted VOA post about signing a petition in

9    support of a paid holiday, threatening her with discipline if

10   she reposted, and temporarily revoking her ability to post on

11   the VOA board.

12        Making -- so and number two would be threatening and --

13   excuse me -- making threatening and coercive statements to

14   employees in its written notices to employees.  Number three is

15   making threatening and coercive statements during meetings with

16   employees.  And finally, four, by requiring employees to attend

17   mandatory meetings for the purpose of exposing employees to its

18   coercive statements in opposition to the employee support of

19   the Union.

20        We ask you to find that Respondent violated the Act as

21   alleged in the amended consolidated complaint.

22        JUDGE GREEN:  Thank you.  So would the Union like to make

23   an opening statement or no?

24        MS. GOLDSTEIN:  No.  We'll just join with Counsel for the

25   General Counsel.  Thank you.



1      JUDGE GREEN:  Okay.  And would like -- would the

2   Respondent like to make an opening statement now or would you

3   like to defer to the start of your case?

4      MR. POWELL:  We will defer until the start of our case,

5   Your Honor.

6      JUDGE GREEN:  Okay.  Very good.  So as far as I can tell,

7   we're ready to take testimony unless there's something else the

8   General Counsel would like to do.

9      MS. CABRERA:  I don't think so, Your Honor.

10     JUDGE GREEN:  Okay.  So would you like to call your first

11  witness?

12     MS. CABRERA:  Sure thing.  General Counsel calls Connor

13  Spence.

14     JUDGE GREEN:  Okay.  So Mr. Spence, I see that you're on

15  call.  Could you start your video?

16     MR. SPENCE:  Yeah.  Could I have three minutes just to get

17  it set up in a private area and go to the bathroom?

18     JUDGE GREEN:  Yes.  Off the record.

19  (Off the record at 1:59 p.m.)

20     JUDGE GREEN:  And the General Counsel is calling as its

21  first witness Connor Spence.  So Mr. Spence, would you raise

22  your right hand?

23  Whereupon,

24                        **CONNOR SPENCE**

25  having been duly sworn, was called as a witness herein and was



1    examined and testified, telephonically as follows:

2        JUDGE GREEN:  Okay.  And are you currently alone in the

3    room?

4        THE WITNESS:  Yes.

5        JUDGE GREEN:  Okay.  So just make sure you don't

6    communicate with anybody other than people who are asking

7    questions on this call.  Don't use a phone or other handheld

8    device or talk to anybody in the location where you are.  Also,

9    please don't review any documents other than what is shown to

10   you by the person who's asking you questions, okay?

11       THE WITNESS:  Okay.

12       JUDGE GREEN:  Okay.  And please state and spell your name

13   to the record for the record.

14       THE WITNESS:  It's Connor Spence.  C-O-N-N-O-R

15   S-P-E-N-C-E.

16       JUDGE GREEN:  Okay.  Very good.

17       So whenever you're ready, for the General Counsel.

18                 **DIRECT EXAMINATION**

19   Q   BY MS. CABRERA:  Good afternoon, Mr. Spence.

20   A   Hi.

21   Q   Hi.  Mr. Spence, are you employed?

22   A   Yes.

23   Q   And by whom are you employed?

24   A   Amazon.

25   Q   Okay.  And what building do you work in?



1    A    I work at JFK8 in Staten Island.

2    Q    Okay.  And when did you start working for Amazon?

3    A    I originally started working for Amazon in August of 2017.

4    Q    Okay.  And in what building did you work in August?

5    A    It was a building called EWR4 in Robbinsville, New Jersey.

6    Q    Okay.  When did you start working at JFK8?

7    A    I started working at JFK8 in May of 2021.

8    Q    Okay.  And just to get your background, when you -- what

9    position did you work in in Robbinsville, New Jersey?

10   A    Primarily, I was a problem solver.

11   Q    And what does that mean?

12   A    In my department, I'm part of the team that handles

13   defective shipments, and also, I'm responsible for making sure

14   shipments are -- are packed and put on to the trucks in time to

15   get to the customer in time.

16   Q    Okay.  And you were a full-time employee when you worked

17   in Robbinsville?

18   A    Yes.

19   Q    Okay.  Now, at JFK8, in what position do you work?

20   A    Primarily, I'm a problem solver and a packer.

21   Q    Okay.  And just -- you explained what problem -- problem

22   solver is.  Can you explain what a packer is?

23   A    I take the items that the customer has ordered and I pack

24   them into a box to be placed on the line and sent out to the

25   customer.



1    Q    Okay.  And are you currently working a full-time schedule?

2    A    No.  Currently on part-time.  I transferred recently.

3    Q    Okay.  So when did you transfer to a part-time schedule?

4    A    Two or three weeks ago.

5    Q    And just to clarify, before that, what schedule -- what

6    kind of schedule were you working?

7    A    I was a full time.

8    Q    Mr. Spence, are you familiar with the Amazon Labor Union?

9    A    Yes.

10    Q    And what is it?

11    A    The Amazon Labor Union is a labor organization made up of

12    Amazon workers, you know, centered around, you know, demanding

13    better working conditions from our Employer through collective

14    bargaining.

15    Q    Mr. Spence, do you hold a position in the Amazon Labor

16    Union?

17    A    Yes.  Currently, I'm the secretary treasurer.

18    Q    Okay.  How did you get that position?

19    A    I was appointed into this position after the previous

20    treasurer stepped down.

21    Q    Okay.  And when were you appointed to that position?

22    A    In June of this year.

23    Q    Okay.  And prior to the secretary treasurer position, did

24    you hold any other positions with the Amazon Labor Union before

25    that?



1    A    Yes.  Previously, I was the vice president of membership.

2    Q    Okay.  And when did you become the vice president of

3    membership?

4    A    I was elected into that position in October of 2021.

5    Q    Okay.  In or around October of 2021, were other offices to

6    go -- were other officers elected?

7    A    Yes.  In October of 2021, we elected Christian Smalls as a

8    president.  I was elected vice president of membership.

9    Derrick Palmer was elected vice president of organizing.

10    Madeline Wesley was elected to be the treasurer.  And J.M.

11    Mutor (phonetic throughout) was elected to be the secretary.

12    Q    Okay.  And do those same individuals hold -- still hold

13    those positions?

14    A    No.

15    Q    Okay.  And how did those positions change?

16    A    Certain -- yeah, they -- they changed.  Certain people

17    stepped down and others were appointed into -- to fill the

18    vacancy in the -- on an interim basis.

19    Q    Okay.  Can you tell us what the officers of the Union --

20    who the officers of the Union are now?

21    A    Currently, the president is still Chris Smalls.  The

22    structure changed slightly.  We amended our Constitution.  So

23    there's one vice president now, which is Derrick Palmer, the

24    secretary treasurer, and we have an executive secretary,

25    Michelle Valentin Nieves.  And each building where we are



1    organizing in has a wor -- an organizing committee and a

2    committee has a chairperson, which is an officer.  At JFK,

3    there's currently no chairwoman.  In LBJ5, the chairwoman is

4    Kathleen Cole.  And in ALB1, the chairwoman is Heather Goodall

5    (phonetic throughout).

6    Q    Okay.  And you ment -- mentioned a Constitution and

7    bylaws.  When was that -- when was that adopted?

8    A    In October of 2021.

9    Q    I'm going to show you what's been marked as GC-9.

10        MS. CABRERA:  GC-9 is in SharePoint, and I can email it to

11   any party that doesn't have it.

12   Q    BY MS. CABRERA:  Okay.  Mr. Spence, can you see this

13   document?

14   A    Yes.

15   Q    Okay.  I'm going to scroll a little bit.  Do you recognize

16   this document?

17   A    Yeah.

18   Q    What is it?

19   A    That is the -- the Constitution and bylaws, one version of

20   it.

21   Q    Okay.  Is there another version?

22   A    It's been amended on occasion, so this one looks to be the

23   original one that was ratified in October of 2021.

24        MS. CABRERA:  Your Honor, I would -- I would offer at this

25   time GC-9.



1        JUDGE GREEN:  Any objection?

2        UNIDENTIFIED SPEAKER:  No, Your Honor.

3        JUDGE GREEN:  Okay.  GC-9 is admitted.

4    **(General Counsel Exhibit Number 9 Received into Evidence)**

5    Q    BY MS. CABRERA:  Now, Mr. Spence, can you tell us when the

6    ALU was formed?

7    A    We formally began our campaign to organize workers on

8    Staten Island on April 20th of 2021.  Prior to that, you know,

9    workers had been discussing and, you know, acting together,

10   forming a union for months before that.  So it's really hard to

11   pen pal -- pinpoint an exact date.  But yeah.  Formally, our

12   campaign started on April 20th of 2021.

13   Q    Okay.  And do you recall who formed the ALU?

14   A    It was Christian Smalls, Derrick Palmer, myself, Gerald

15   Bryson, Jordan Flowers (phonetic throughout), and a few others.

16   Q    Okay.  And the individuals that you just named, were they

17   or are they employees of Amazon?

18   A    They are current and former employees.

19   Q    Do you recall who are former employees?

20   A    Christian Smalls and Gerald Bryson.

21   Q    Okay.  And -- and how did the ALU form?

22   A    You know, workers -- Amazon workers like me and the

23   others, we came together and decided that if we wanted to

24   improve working conditions at Amazon, we should do it as an

25   organized collective and, you know, go through the process of



1    collective bargaining with the company to demand those

2    improvements.

3    Q    Okay.  Mr. Spence, do you recall there was an election at

4    JFK8, correct?

5    A    Correct.

6    Q    Okay.  And do you recall when that was?

7    A    It was in March of 2022.

8    Q    I'm calling your attention to the time between when the

9    ALU was formed in April of '21 to the date of the election.

10    Did employees participate in the ALU?

11    A    Yes.

12    Q    And how did they participate?

13    A    Well, the ALU was comprised entirely of employees, so

14    everything we did as far as getting authorization cards signed,

15    circulating petitions, meeting with management, engaging in

16    collective action, meeting weekly, these were all things that

17    were done by Amazon workers.

18    Q    Okay.  Keeping your attention on that same time period,

19    did the ALU holds meetings with employees?

20    A    Yes.

21    Q    How often?

22    A    Usually weekly.

23    Q    Now, did the ALU, at that same time period, the time

24    period between -- excuse me.

25    MS. CABRERA:  Strike that.



1    Q    BY MS. CABRERA:  When the Union was formed in April of

2    '21, did the Union have a headquarters?

3    A    The closest thing we had to a headquarters was the -- the

4    bus stop across the street from JFK8.  We set up a tent there

5    and tried to maintain it every single day, sometimes 24 hours.

6    Q    Okay.  And other than the tent, was anything at that bus

7    stop?

8    A    We had tables set up with literature.  We had containers

9    for, you know, our literature and what little Union property we

10   had.  That's where we signed the majority of our authorization

11   cards and, you know, some other things.  Speakers.  We would do

12   cookouts from the tent because we had food there as well.

13   Q    Okay.  Do you know what street that tent was on?

14   A    I don't know the name of the street.  It's the S40 bus

15   stop.  It's the street right in front of the building.

16   Q    Now, Mr. Spence, with regard to LBJ5, was there an

17   election at LBJ5?

18   A    Yes.

19   Q    And do you recall when that was?

20   A    That was in April of 2022.

21   Q    Now, do you know whether the Union had to file any

22   documents to get those elections conducted?

23   A    Yes.

24   Q    And what documents were the -- was --

25   A    Petitions for an election.



1      MS. CABRERA:  I'm going to ask my co-counsel to show the

2    witness, I guess, what will be marked as General Counsel's --

3    we're up to 30.  They will be the R case petitions.

4      MS. TOOKER:  Sorry.  Just getting them together right now.

5      MS. CABRERA:  Um-hum.

6      MR. TOOKER:  Okay.

7      MS. CABRERA:  So Ms. Tooker, if you could scroll a little

8    bit just so the witness can see.  This one looks like it's the

9    petition for -- does it say which location?  Am I missing it

10   here?  Lynda, do you know what -- what location is this one

11   for?

12     MR. TOOKER:  Sorry.  I was trying to figure out how to

13   unmute and screen share --

14     MS. CABRERA:  Oh.  Okay.

15     MR. TOOKER:  -- at the same time.  So -- so this is the --

16   this is all of the Staten Island.  So this the -- and so this

17   appears to have been filed on December -- or sorry -- October

18   25th of 2021.  And you can see the Unit description here is at

19   the Employer's Golf Avenue Staten Island, New York facility.

20   Is that the one you wanted, or did you want the JFK8?

21     MS. CABRERA:  I -- is it possible to put -- well, I guess,

22   we'll -- since you're -- we're doing it one at a time, I guess

23   we could just do it one at a time.  That's fine.

24     This is where we would, you know, ask the Respondent to

25   stipulate in the series of petitions.  I think it's three



1    petitions in total.  This one was withdrawn, and then there

2    were two others that resulted in the elections, which Mr.

3    Spence just testified to.  We can make them, you know, 30(a),

4    (b), and (c) for ease of the record.

5        So I guess my first -- you know, the first step in this

6    would be to ask Respondent if they would stipulate to just

7    putting in these petitions.

8        MR. POWELL:  I can't stipulate now because I don't know

9    what purpose -- for what purpose these would be offered.  I

10   mean, you know, I think your witness could probably carry it in

11   in terms of authenticity, but I' don't know what purpose it's

12   being offered for and I'm not willing to stipulate to its

13   admission, you know, because there may be other objections

14   beyond authenticity.

15       MS. CABRERA:  Okay.

16       JUDGE GREEN:  I'd assume that this --

17       MS. CABRERA:  Well --

18       JUDGE GREEN:  -- whole line of questioning is labor

19   organization status?

20       MS. CABRERA:  Yes, Your Honor.  And also just generally

21   setting up the time line for the Employer's campaign as well.

22   For the Union's campaign and the Employer's responsive

23   campaign.

24       JUDGE GREEN:  Okay.  So why don't we -- so why don't we

25   get the documents first?  I mean, is the Respondent familiar



1     with the three petitions?

2          MR. POWELL:  Yes, Your Honor.

3          JUDGE GREEN:  Okay.  And so we have no -- we have no

4     objection to authenticity.  So do you want to offer -- offer

5     them?

6          MS. CABRERA:  Yes, I would like to.

7          JUDGE GREEN:  Okay.

8          MR. POWELL:  If I could see each document that they're

9     planning -- or seeking to admit before we --

10         JUDGE GREEN:  Okay.

11         MR. POWELL:  -- stipulate to the authenticity of them.

12         JUDGE GREEN:  Sir, do you want to --

13         MR. TOOKER:  I can email right now.

14         JUDGE GREEN:  Okay.

15         MS. CABRERA:  I'm sorry, Lynda.  I didn't hear you.  So

16    you're going to email them?

17         MR. TOOKER:  Yep.

18         MS. CABRERA:  Okay.  Thanks.  Thank you very much.

19         MR. TOOKER:  No problem.

20         JUDGE GREEN:  Okay.  Let's go off the record briefly.

21    (Off the record at 2:24 p.m.)

22         JUDGE GREEN:  Does the Respondent have any objection to

23    GC-30?

24         MR. POWELL:  No, Your Honor.

25         JUDGE GREEN:  Okay.  GC-30 is admitted.



1  **(General Counsel Exhibit Numbers 30(a) through 30(c) Received**

2  **into Evidence)**

3      MS. CABRERA:  Thank you, Your Honor.  Just to clarify, it

4  38(a), (b), and (c).

5      JUDGE GREEN:  Right.

6                  <u>**RESUMED DIRECT EXAMINATION**</u>

7  Q    BY MS. CABRERA:  Okay.  Mr. Spence, I can pull the

8  petitions back up, but you're aware that there were three

9  different petitions:  one for all locations, one for JFK8, and

10 then one for LBJ5, correct?

11 A    Correct.

12 Q    Okay.  Do you know if all of those petitions resulted in

13 elections?

14 A    The first one did not.  The second two did.

15 Q    Okay.  So what, if anything, did you have to do with the

16 first petition?

17 A    The first petition, we withdrew it.

18     MS. CABRERA:  Okay.  I guess I'll mark -- Lynda, what are

19 we up to?  Are you going to do 31?

20     MR. TOOKER:  Yep.  I've marked it as 31, and I just sent

21 an email with Exhibit 31, 32, and 33.

22     MS. CABRERA:  Thank you.

23     MR. TOOKER:  All parties are written.

24     MS. CABRERA:  Okay, Your Honor.  So I'd like to mark as

25 General Counsel's 31 the order approving withdrawal of the



1    petition.  And I can have the witness, you know, take a look at

2    it and testify to it, but it's a standard Board-issued --

3    Regional-issued document documenting the withdrawal of the

4    first petition.  And I would offer it just for completeness

5    since we put the petition in.

6        JUDGE GREEN:  You're talking about -- so what -- according

7    to the email, I've not actually looked at it yet.  But It looks

8    like 31 is the RD order approving the withdrawal of the first

9    petition, a stipulated election agreement, and a signed stip.

10       MS. CABRERA:  Yes.  But I'm only -- right now -- I'll

11   go -- go through it piece by piece.  I'm just offering the --

12   the order approving withdrawal.

13       JUDGE GREEN:  Okay.  Any --

14       MS. CABRERA:  (Indiscernible, simultaneous speech) of 30,

15   it would be in the petition set forth in 30 (a), in Exhibit

16   30(a).

17       JUDGE GREEN:  Has the Respondent received that?

18       MR. POWELL:  I haven't, but I'm -- no.  She's got it on

19   screen, and I don't have any objection to 31 coming in.

20       JUDGE GREEN:  Okay.  31 -- GC-31 is admitted.

21   **(General Counsel Exhibit Number 31 Received into Evidence)**

22       MS. CABRERA:  Thank you.

23   Q    BY MS. CABRERA:  Now, Mr. Spence, do you know whether or

24   not the Union had to sign any documents to arrange the

25   elections at JFK8 and LBJ5?



 1    A    Yes.

 2    Q    And what documents were those?

 3    A    Stipulated election agreements.

 4    Q    Okay.  Well, I guess we'll start with -- with 30 -- excuse

 5    me -- with JFK8.  And I will mark that as -- it's been marked

 6    as GC Exhibit 32(a).  And Mr. Spence, can you see this

 7    document?

 8    A    Yes.

 9    Q    What is it?

10    A    This is a stipulated election agreement for -- this was

11    for the JFK8 election.

12    Q    Okay.  And this is the document you were just classifying

13    about?

14    A    Correct.

15         MS. CABRERA:  Okay.  And again, I mean, I -- I can

16    continue scrolling.  I mean, I would ask Respondent to

17    stipulate this is a document that they signed as well.

18         MR. TOOKER:  Emily, just so the record's clear, I -- I

19    marked 32(a) as the conformed copy and 32(b) as the Employer-

20    signed copy of the same document.

21         MS. CABRERA:  Oh.  Thank you.  Okay.  So I can -- I

22    will -- I just scrolled through the conformed copy.  I will now

23    pull up the lawyer-signed copy, which is GC-32(b).

24    Q    BY MS. CABRERA:  Okay.  Do you see that?  I'm going to

25    scroll to the end where a Ms. Amber Rogers signed on behalf of



1    the Employer.

2         MS. CABRERA:  So I would move 32(a) and 32(b) into

3    evidence.

4         JUDGE GREEN:  Any objection to General Counsel's Exhibit

5    32?

6         MR. POWELL:  No, Your Honor.

7         JUDGE GREEN:  Okay.  So 30 --GC-32(a) and (b) are

8    admitted.

9    **(General Counsel Exhibit Numbers 32(a) and 32(b) Received into**

10   **Evidence)**

11        MS. CABRERA:  Okay.  And now did the parties get the

12   email?  Because the next two exhibits are the exact same

13   exhibits -- type of exhibit for LBJ5.  33(a) --

14        MR. POWELL:  I have not received them, no.  Oh.  It just

15   came in.  Sorry.  Just came in.

16        MS. CABRERA:  Okay.  So 30 -- I've marked as General

17   Counsel's 33(a) the LBJ5 conformed stip -- stipulated election

18   agreement.  I'll pull that up so that everyone can see.  As you

19   can see, this is for LBJ5.  Okay.  And so everyone can see,

20   32 -- excuse me -- 33(b), here's the Employer-signed copy of

21   the LBJ5 stipulation.

22        MR. POWELL:  (Indiscernible, simultaneous speech)?

23        MS. CABRERA:  33(b) is the Employer-signed version of the

24   LBJ5 stip, which I have up on the screen now, if you don't mind

25   taking a look.  And again, signed by Amber Rogers on behalf of



1    the Employer.

2         So I would move 32 -- 33(a) and (b) into evidence.

3         JUDGE GREEN:  Any objections to GC-33?

4         MR. POWELL:  No, Your Honor.

5         JUDGE GREEN:  Okay.  So GC-33(a) and (b) are admitted

6    **(General Counsel Exhibit Numbers 33(a) and 33(b) Received into**

7    **Evidence)**

8         MS. CABRERA:  Thank you.

9         JUDGE GREEN:  Mr. Powell, we're probably going to have to

10   do something about your audio because sometimes I cannot hear

11   you or I don't hear you at all.

12        MR. POWELL:  Okay.  We'll -- we will try to work on that.

13   Can you hear me okay, yeah?  Yeah.

14        JUDGE GREEN:  It got better -- it got better right then.

15   I'm not sure what you did.

16        MR. POWELL:  Okay.  I'm not sure what I did, either.  I

17   was just trying to keep my voice --

18        UNIDENTIFIED SPEAKER:  Don't move.

19        MR. POWELL:  -- focused on the mic, yes.  I think -- I

20   think -- so if you see me looking down, it's because I'm

21   looking at the microphone.

22        JUDGE GREEN:  Okay.  Noted.

23        MR. POWELL:  Maybe that's what it takes.  I don't know.  I

24   apologize.  If we -- if we continue to have problems, I'll

25   bring our tech people and get it fixed -- fixed up.



1      JUDGE GREEN:  Okay.

2   Q   BY MS. CABRERA:  Okay.  So Mr. Spence, you recall that you

3   testified that you had worked in Robbinsville, New Jersey,

4   correct?

5   A   Correct.

6   Q   Okay.  And you said you started there in 2017.  When did

7   you leave Robbinsville?

8   A   In November of 2019.

9   Q   Okay.  And during that time period in New Jersey, did you

10  ever attend any group of meetings where any representative of

11  Amazon asked you what your work-related problems were?

12  A   No.

13      MR. POWELL:  Objection.  Relevance.  Different facility,

14  different time period.

15      JUDGE GREEN:  Right.  Why do we care?

16      MS. CABRERA:  Well, I'm just giving background, Your

17  Honor, for just how --

18      JUDGE GREEN:  Okay.

19      MS. CABRERA:  -- Amazon --

20      JUDGE GREEN:  Haven't we already done -- we already got

21  the question and answer, but it doesn't seem to be relevant to

22  me, so.

23      MS. CABRERA:  Okay.  I'll move on.

24      JUDGE GREEN:  Okay.

25  Q   BY MS. CABRERA:  Now, Mr. Spence, you testified that the



1    Union started its campaign in April of '21.  Do you recall that

2    testimony?

3    A    Yes.

4    Q    Okay.  And do you know did Amazon conduct its own

5    campaign?

6    A    Yes.

7    Q    When did you campaign start?

8    A    Approximately a week after we started our campaign, Amazon

9    started their own anti-union campaign.

10   Q    And what did the Employer's campaign consist of?

11   A    Amazon would communicate messages to my coworkers and

12   myself to dissuade us from organizing to -- to form a union.

13   And that was in the form of, you know, text messages, emails,

14   notifications on our employee app, the A to Z app.  They were

15   play slideshows on videos on TV screens along the main walkways

16   inside the buildings.

17        They would hold the mandatory meetings.  They would, in

18   some cases, even call workers.  They would put up signs on the

19   backroom tables and in the bathrooms.  They put up posters all

20   over the buildings.  And they would -- they had third-party

21   consultants and also managers go station to station and speak

22   with associates one-on-one directly to try to dissuade them

23   from supporting a union.

24        MR. POWELL:  Objection to the extent that that was hearsay

25   would move to strike on hearsay grounds in terms of generally



1    testifying to what conversations took place with other

2    associates.

3        MS. CABRERA:  I mean --

4        JUDGE GREEN:  Okay.  Listen, I'll -- I'll parse it.  I'll

5    parse it -- when it's time to come to writing a decision when I

6    need to.

7        MS. CABRERA:  I mean, he didn't testify to anything that

8    he claims was said at any meeting.  He was testifying to the

9    existence of meetings.

10       JUDGE GREEN:  Right.  It wasn't really clear to me that

11   that was based on something that somebody said to him, but I'll

12   look at the testimony closely if I have to.

13   Q    BY MS. CABRERA:  So Mr. Spence, starting with the notices

14   that you said were posted at the facility, where would you see

15   such notices?

16   A    Like I said, they would post signs inside the -- the

17   bathroom stalls, in plastic folders on the breakroom tables, on

18   TVs on the main walkways -- along the main walkways of the

19   building.  And also through text, email, and notification on

20   the VOA.

21       MS. CABRERA:  Okay.  I'm going to show the witness what's

22   been marked as General Counsel's 10.

23   Q    BY MS. CABRERA:  Mr. Spence, do you recognize this

24   document?

25   A    Yes.



1    Q    What is it?

2    A    This is one of the flyers that they placed along all the

3    breakroom tables during -- during the -- the campaign period.

4    Q    Okay.  And do you know what -- what type of document is

5    this?

6    A    This is, you know, the messaging from Amazon meant to

7    dissuade workers from supporting a union.

8    Q    Is it a photo?

9    A    Yeah.  This is a photo that I took of a flyer.

10   Q    Okay.  And what did you take the photo with?

11   A    My phone.

12   Q    Okay.  And do you still have that phone?

13   A    Yes.

14   Q    Okay.  Do you still have this photo?

15   A    Yes.

16   Q    Okay.  Is this the same photo that is currently on your

17   phone?

18   A    Yes.

19   Q    And Mr. Spence, do you recall when you saw this poster?

20   A    This was fairly early on in the campaign period, so I -- I

21   believe May or June.

22   Q    Of what year, sir?

23   A    Of 2021.

24        MS. CABRERA:  Okay.  I would offer GC-10.

25        JUDGE GREEN:  Any objection?



1    MR. POWELL:  No, Your Honor.

2    JUDGE GREEN:  Okay.  GC-10 is admitted.

3    **(General Counsel Exhibit Number 10 Received into Evidence)**

4    Q    BY MS. CABRERA:  Now, Mr. Spence, why did you take this

5    photo?

6    A    Well, through the course of my organizing and -- and

7    speaking to my coworkers about the Union, I had maybe dozens of

8    conversations suddenly come up where workers were expressing

9    concern to me about the fact that --

10    MR. POWELL:  Objection.  Hearsay.

11    JUDGE GREEN:  Okay.

12    MS. CABRERA:  May I be heard?

13    JUDGE GREEN:  Yes.

14    MS. CABRERA:  So Your Honor, it's -- my response would be

15    that it shows the state of -- the effect on the employees, the

16    effect of these postings on employees.  It shows their state of

17    mind when they saw these postings.  And part of the General

18    Counsel's case involves proof that these postings were, in

19    fact, coercive.  So we're not offering it for the truth, the

20    details or the truth of what was said by each worker, but just

21    to the fact that they felt coerced.

22    JUDGE GREEN:  No.  Listen, is it your position that this

23    post is unlawful?

24    MS. CABRERA:  Part of it, yes, Your Honor.

25    JUDGE GREEN:  You want to tell me which part?



1    MS. CABRERA:  Sure.  Bullet three.

2    JUDGE GREEN:  Bullet three.  Okay.  It isn't an objective

3    standard.  So we care when employees felt coerced, or no?

4    MS. CABRERA:  Well, Your Honor, it's -- it's what a

5    reasonable -- how a reasonable employee would interpret the

6    language and -- and whether or not a reasonable employee would

7    have been coerce -- coerced.  So I think it's relevant the fact

8    that individuals were coming up to Mr. Spence so concerned that

9    he decided to take photos of this.

10   JUDGE GREEN:  No.  I -- I really don't think we need it.

11   So sustained.  And I think it is hearsay.

12   MS. CABRERA:  Okay.

13   Q    BY MS. CABRERA:  Mr. Spence, with regard to notices that

14   went directly to workers, how were these notices sent to

15   workers?

16   A    Through text, email, and notification on the A to Z app.

17   Q    And what is the A to Z app?

18   A    It's an app that Amazon employees have access to that

19   allows them to do various H.R. functions like look at their

20   schedule, request time off, transfer shifts, and you can also

21   get notifications from the Employer through the app.

22   Q    Okay.  And where would such a notification appear if it

23   was sent to the employee?

24   A    Well, if you have the settings activated, the notification

25   would appear on your phone like any other notification.  If you



1    go into the app, there is a bell icon at the top that takes you

2    to the notification section where all the notifications are

3    listed.

4    Q    I'm going to show you what's been marked as General

5    Counsel's 11.  And Mr. Spence, I'm going to scroll down, if I

6    can.  There we go.  And just so can see, Mr. Spence, do you

7    recognize this document?

8    A    Yes.

9    Q    What is it?

10   A    This is a notification that was sent out on the A to Z app

11   to JFK8 workers.

12   Q    Okay.  And is this a photo?

13   A    Yeah.  It's a screenshot.

14   Q    Okay.  And who took this screenshot?

15   A    I did.

16   Q    Okay.  And was this a no -- who did this notification go

17   to?

18   A    Like, at the time, all current JFK8 employees, as far as I

19   know.

20   Q    Including yourself, correct?

21   A    Correct.

22   Q    Okay.  And what did you -- how did you take this photo?

23   A    I took a screenshot on my phone.

24   Q    And do you still have that phone?

25   A    Yes.



1   Q    Okay.  Do you still have this photo?

2   A    Yes.

3   Q    Okay.  And is this the same photo as the photo that is

4   still in your phone?

5   A    Yes.

6        MS. CABRERA:  Okay.  I would offer GC-11.

7        JUDGE GREEN:  Any objection?

8        MS. CABRERA:  No, Your Honor.

9        JUDGE GREEN:  GC-11 is admitted.

10   **(General Counsel Exhibit Number 11 Received into Evidence)**

11   Q    BY MS. CABRERA:  Now, Mr. Spence, going back to GC-10, and

12   I can pull that up -- I can pull that posting up again, if

13   you'd like.  Maybe that's just more convenient.

14        So Mr. Spence, you said that you saw this posting in or

15   around May of '21.  Did you see this posting just one time?

16   A    No.  This was posted more than once.

17   Q    Okay.  How often did you see this posting?

18   A    I saw it at least two or three times.

19   Q    Okay.  And over what time period?

20   A    Over a period of a few weeks or a few months.

21   Q    Okay.  And the -- 8 is the app notification contained in

22   GC-11.  Was that the only notification with that posting that

23   you received?

24   A    As -- as far as I can recall, yes.

25   Q    And just for clarity's sake, do you recall when you



1    received that GC-11?  I can pull it up again for you.  Do you

2    recall when you received this?

3    A    This was around the same time period.  I believe, May or

4    June.

5    Q    Of what year?

6    A    2021.

7    Q    Now, you also testified that part of the Employer's

8    campaign consisted of mandatory meetings.  What did you mean by

9    that?

10    A    There were points throughout 2021 and 2022 where Amazon

11    management started conducting mandatory meetings, about 50

12    people at a time.  They would have workers leave their stations

13    and go to a room where they would hold a presentation regarding

14    their stance on the Union, whether to -- they felt we should

15    not sign authorization cards or, later on, whether they felt we

16    should vote no in the election.

17    Q    Did you attend any of these meetings?

18    A    Yes.

19    Q    And how many?

20    A    Five or six.

21    Q    Do you recall when the first meeting you attended was?

22    A    I believe it was in October of 2021.

23    Q    And how did you know that you had to attend this meeting?

24    A    I was at my workstation, and a manager came to me and told

25    me that I was scheduled to attend a meeting and to go join a



1    group of employees in the -- the center of the department where

2    we'd be walked down to the meeting together.

3    Q    Okay.  Who was your manager?

4    A    It wasn't my manager.  It was a manager who I don't know

5    what they were.

6    Q    How'd you know they were a manager?

7    A    They were wearing a manager vest.  During that period --

8    during that time period, Amazon was bringing in managers from

9    outside facilities and, you know, from places all over the

10   country.  So I didn't know who they were.  After the election,

11   they left.  I never saw them again.

12   Q    What did the vest look like that you saw this manager

13   wearing?

14   A    They're yellow vests with kind of red stripes on them.

15   Q    Did the vest say anything?

16   A    I believe that say operations on the back.

17   Q    Did this manager tell you that your participation was

18   voluntary?

19   A    No.

20   Q    Now, after you were told to attend this meeting, where did

21   you go?

22   A    I was directed to go with a group of my coworkers to stand

23   in the -- in a large area in the center of our department.  And

24   then this person walked us all down as a group to a room near

25   the front of the building called the Day One Room where they



1    had about 50 chairs about six feet apart in front of a

2    projector screen.

3    Q    Now, you said you were waiting -- excuse me -- you met

4    with about 50 of your coworkers on the warehouse floor.  How

5    long were you waiting there before you went down to the

6    meeting?

7    A    Maybe about five minutes.  It was while they went to go

8    gather the rest of the workers who were also scheduled to be in

9    the meeting.

10   Q    Mr. Spence, did you think that you could refuse to go to

11   the meeting?

12   A    No.

13        MR. POWELL:  Objection.

14        JUDGE GREEN:  What's the objection?

15        MR. POWELL:  Speculation.  Yes, Your Honor.  Objection.

16   Calls for speculation.  He said, you know, it was what he

17   thought that's relevant --

18        JUDGE GREEN:  Okay.  I'm going to over -- I'm going to

19   overrule that, so you can answer.

20        THE WITNESS:  No.

21   Q    BY MS. CABRERA:  Now, Mr. Spence, when did you attend the

22   other meetings?

23   A    They stopped holding meetings, I believe, throughout

24   December and January, and then they started them up again in

25   February through March.  So I went several more times between



1    February and March.

2    Q    Okay.  And how did you know to go to these meetings?

3    A    The same thing.  A manager would come to me at my

4    workstation, tell me I was scheduled to attend this meeting,

5    and the -- I would go with a group of employees and be walked

6    over to this room where they would hold a presentation.

7    Q    And were you ever told that your participation was

8    voluntary?

9    A    No.

10   Q    Okay.  Mr. Spence, I'm going to shift gears a bit.  Have

11   you ever heard of the Voice of Associates board?

12   A    Yes.

13   Q    What is it?

14   A    It's kind of a digital bulletin board where associates can

15   post questions or comments or concerns, and management has to

16   respond to them.

17   Q    Okay.  And is this just one board?

18   A    No, it's -- inside the warehouse, there are several TVs

19   along the main walkways that display a scrolling feed of the

20   posts made to the VOA board.  Also, you can access it through

21   the A to Z app, and that's actually how you post to it.

22   Q    Okay.  Let's start with the television screens.  How many

23   screens display the Voice of the Associates board at JFK8?

24   A    I know of four, two on the first floor and two on the

25   third floor.  There might be more.



1    Q    Now, who is able to post on the VOA board?

2    A    All tier one and tier three associates, I believe.

3    Q    Okay.  And how did they post?

4    A    Through the A to Z app.  They can access it through there.

5    There might also be -- well, they can also go on the -- to the

6    web version A to Z.  And they might also be a kiosk in the

7    building that allows you to post directly to it.

8    Q    Okay.  And keeping your attention on the VOA boards at

9    JFK8, generally speaking, what kind of posts have you seen on

10   the VOA board at JFK8?

11   A    Associates will ask questions about, you know, certain

12   things that are going on in building, policies.  They'll make

13   complaints.  They'll post what their concerns are.  They'll

14   post just general kind of, like, shout-outs to people who are

15   going -- doing a good job.  They'll, you know, criticize

16   management if they're doing a bad job.  Also, you know, we'll

17   post a lot about the Union and messages that are, you know, for

18   the Union or against the Union.

19   Q    Mr. Spence, have you seen posts about health and safety

20   issues?

21   A    Yes.

22   Q    How often do you see such posts?

23   A    Fairly often.

24   Q    Like, how many times per week?

25   A    Let's say it -- let's put it like this.  If I look at it



1    once per week, I'll always see a health and safety post, at

2    least two or three on there.

3    Q   And what are -- what posts have you seen with -- regarding

4    health and safety?

5    A   So you know, for instance, in the summer there'll be a lot

6    of posts about how hot the building is.  You'll see posts about

7    work areas that need to be, you know, cleaned that are

8    cluttered because they're unsafe.  You'll see posts about --

9    just equipment that isn't working properly, things like that.

10    Q   Have you ever posted about health and safety?

11    A   I believe I have.  Yes.

12    Q   And why did you -- whatever --

13    MS. CABRERA:  Strike that.

14    Q   BY MS. CABRERA:  Do you recall what you posted about

15    health and safety?

16    A   I believe I posted about, you know, in the -- in the past

17    I posted about equipment that doesn't work properly.  And I

18    also post a lot about the -- the heat issue in the warehouse.

19    Q   And why did you choose to put a post about these

20    complaints on the VOA Board?

21    A   So that, you know, I could address my concern to

22    management and have other associates who, you know, share my

23    concern see it and agree with it.

24    Q   How do you know if an associate agrees with your post?

25    A   There is an option to kind of give the post a thumbs up



1    and that indicates that, you know, how many people are in

2    agreement with it.

3    Q    Now, just keeping your attention on your health and safety

4    posts, I guess I'll start with the post about equipment not

5    working.  Did you ever receive a response from management

6    telling you that you couldn't have that post on a VOA Board?

7    A    No.

8    Q    What about your posts about the summer and how hot it was?

9    Did you ever have a responsive post from management saying that

10   you couldn't have that post up?

11   A    No.

12   Q    Now, Mr. Spence, did you post about the Amazon labor

13   union?

14   A    Yes.

15   Q    And how often would you post about the Amazon labor union

16   on the VOA Board?

17   A    Every couple of weeks.

18   Q    And during what time period?

19   A    From the time period of the start of the campaign, April

20   2021, all the way up until the election at the end of March in

21   2022.

22   Q    What did you post about the Union?

23   A    I would post messages intended for my coworkers that were,

24   you know, critical of the policies and the -- the working

25   conditions at Amazon.  You know, I would try to, you know,



1     advertise, you know, the Union as a solution to these problems

2     and get my coworkers to support the Union.

3     Q     Did you ever post anything about the election?

4     A     Yes.

5     Q     I'm going to show you what's been marked as GC-12.

6           Mr. Spence, do you recognize this?

7     A     Yes.

8     Q     What is it?

9     A     This is a VOA post that I made.

10    Q     And you recall why you made it?

11    A     This was probably in February or March.

12    Q     Of what year?

13    A     2022.

14    Q     Okay.  And where it says at the top, "Connor" --

15    "SPConnor" --

16    A     Mm-hmm.

17    Q     What does that indicate?

18    A     That's my log in.  Every associate at Amazon has, like,

19    a -- like an Amazon log in -- username that is, like,

20    essentially their -- you know, their ID for everything.

21    Q     Mm-hmm.  And the plus one at the bottom of the post, what

22    does that mean?

23    A     That's -- when I was talking about, like, the thumbs up

24    feature.  That's, like, a plus one that somebody agreed with

25    what I said.



1    Q    Okay.  And then it says two people on the bottom; what

2    does that mean?

3    A    That means two people hit that that plus one button;

4    meaning two people agreed with what I said.

5    Q    Okay.

6        MS. CABRERA:  I would offer -- what did I say this was?

7        JUDGE GREEN:  12.

8        MS. CABRERA:  Thank you.  I offer GC-12.

9        JUDGE GREEN:  Any objection?

10        GC-12 is admitted.

11    **(General Counsel Exhibit Number 12 Received into Evidence)**

12    Q    BY MS. CABRERA:  And Mr. Spence, why did you put up this

13    post?

14    A    Because we were --

15        MR. POWELL:  I don't understand the relevance.  I mean,

16    the post speaks for itself.  I don't understand the relevance.

17        MS. CABRERA:  Just giving context.  It's his post.

18        JUDGE GREEN:  Okay.  But see, here's the thing.  I don't

19    see why we care.  I - I don't -- you know, if it's just going

20    to be one or two questions, it -- it really doesn't matter what

21    he thought -- why he did it.  It's -- right?  I mean, we're

22    just dealing with whether there was disparate enforcement of

23    this rule.  That's -- that's the only issue we're dealing with

24    on this, right?  I mean, if you're -- if you're alleging -- if

25    you're alleging disparate purpose, then the manager's position



1    might be relevant.  But first of all, I don't see that

2    you're -- you're alleging that, and Mr. Spence is not a

3    manager.

4        MS. CABRERA:  No, Your Honor.  But we are alleging that

5    Respondent disparately enforced a no solicitation clause

6    inasmuch as they permitted all kinds of Section 7 posts, posts

7    that, you know, solicited people to take action and do things,

8    and they disparately enforced that no solicitation policy

9    against Ms. Miller's post.  That's the General Counsel's

10    theory.

11        So this really -- again, it's just -- I understand the

12    document speaks for itself, but this goes towards showing the

13    collective nature and the Section 7 nature of these posts.

14        JUDGE GREEN:  Okay.  You know, that's fairly obvious.

15    Listen, I'll allow this one question.  You -- you've got one

16    question.  Let's try to keep it fairly brief.

17        MS. CABRERA:  It was only going to be one.

18    Q   BY MS. CABRERA:  Why did you post --

19        JUDGE GREEN:  Okay.

20    Q   BY MS. CABRERA:  Why did you put up this post, Mr. Spence?

21    A   We were about to have the Union election, and I wanted to

22    convince my coworkers to vote yes.

23    Q   Thank you.  Okay.  Was this the only vote yes post you put

24    up?

25    A   I don't think so.  I think I posted more than that.



1    Q    Do you recall how many you posted?

2    A    Two or three at least.

3    Q    Did anyone from management respond to any of those vote

4 yes posts stating that you could not post such a post on the

5 VOA Board?

6    A    No.

7    Q    Mr. Spence, do you know who Dana Miller is?

8    A    Yes.

9    Q    Who is she?

10    A    She's my coworker at JFK8.

11    Q    Now, calling your attention to June of 2021, do you recall

12 having any conversations with her about the Juneteenth holiday?

13    A    Yes.

14    Q    Okay.  And Mr. Spence, where did you speak with her?

15    A    Primarily at the Union tent across the street.  And also

16 sometimes in the workplace.

17    Q    And do you recall with any more specificity when your

18 first conversation with Ms. Miller took place?

19    A    It was sometime in June.

20    Q    Just to be clear, of what year?

21    A    Of 2021.

22    Q    Okay.  And what did you discuss with her about the

23 Juneteenth holiday?

24    A    Essentially, that we believe --

25       MR. POWELL:  Calls for hearsay.  Objection.  Calls for



1   hearsay to the extent that he's seeking to testify about what

2   Ms. Miller said to him, that's hearsay.

3        JUDGE GREEN:  Okay.

4        MS. CABRERA:  Your Honor, it -- yeah.

5        JUDGE GREEN:  It's overruled.  The witness has got to go

6   into whether it's protected, being conservative.

7   Q    BY MS. CABRERA:  So Mr. Spence, I think you can answer.

8   What did you discuss with her as far as the Juneteenth holiday?

9   A    Essentially, our belief that Amazon should recognize

10  Juneteenth as a holiday, which at that time they did not, and

11  that employees should be given the day off to observe that

12  holiday and be given holiday compensation.

13  Q    Okay.  After this discussion with Ms. Miller, did you

14  decide to take any action with regard to the Juneteenth

15  holiday?

16  A    Yeah.  We began to circulate a petition asking our

17  coworkers to sign a petition in support of a demand that Amazon

18  do exactly that, make Juneteenth a recognized holiday, and give

19  workers the day off, and give holiday compensation.  And I

20  believe also at that time, we were circulating a petition after

21  Juneteenth had -- had passed.  So one of the demands was

22  backpay for Juneteenth.

23  Q    You testified about a petition.  Did you do anything with

24  that petition?

25  A    Yes, we delivered the petition to the general manager,



1        Filepe Santos.

2        Q      And when was that?

3        A      That was, I -- I believe July 8th.

4        Q      And of what year?

5        A      2021.

6        Q      And where did you meet with him?

7        A      In his office.

8        Q      And what building is that in?

9        A      In JFK8.

10       Q      Okay.  And was anyone else present at this meeting?

11       A      Yeah.  An HR manager, Jenna (phonetic throughout).  I

12       don't know her last name.

13       Q      Okay.  So other than you, Mr. Santos, and Jenna from HR,

14       was anyone else present?

15       A      And Dana was there.

16       Q      Do you know her full name?  Just for the record?

17       A      Yeah.  Dana Miller.

18       Q      And what, if anything, did you do with the petition at

19       that meeting?

20       A      We brought it and handed it to Filepe.

21       Q      Did he accept it?

22       A      He -- we placed it on the table.  He looked at it.

23       Q      Did Mr. Santos say anything about the petition?

24       A      He essentially responded that Amazon has several holidays

25       which they do recognize.  He lifted -- listed them off.



1    Juneteenth is not one of them.  He doesn't know if there are

2    any plans for the company to recognize that holiday.  And that

3    was the most that he could do for us.

4    Q    How did the meeting end?

5    A    We left.

6    Q    Now, after this meeting, what, if anything, did you decide

7    to do?

8    A    We decided that we would post about the meeting on the VOA

9    Board.

10   Q    And who made the post?

11   A    Dana Miller.

12        MS. CABRERA:  I'm going to show the witness what's been

13   marked as GC-13.  Okay.  This is General Counsel's 13.

14        I'm not going to offer it yet.  We're going to have Dana

15   Miller testify, obviously.  But I just wanted the --

16        JUDGE GREEN:  Okay.

17        MS. CABRERA:  -- witness to just establish that this is

18   the post he's referring to.

19   Q    BY MS. CABRERA:  So Mr. Spence, do you recognize this?

20   A    Yes.

21   Q    And what is it?

22   A    This is the post on the VOA Board that Dana made regarding

23   our meeting with Filepe.

24   Q    Now, what, if anything, happened as a result of Ms. Miller

25   putting up this post?



1   A    The post was removed and --

2      MR. POWELL: Objection. Calls for speculation from this

3  witness.

4      MS. CABRERA: No, it doesn't. How?

5      JUDGE GREEN: You can ask why he thinks that.

6      MS. CABRERA: I'm sorry. I don't know if he finished

7  his -- his response.

8      JUDGE GREEN: Right. So --

9      MS. CABRERA: Can I ask him the rest?

10     JUDGE GREEN: I mean -- so Mr. Spence, I -- I heard you

11  say that you -- you thought the post was removed. Can you tell

12  us what made you think that?

13     THE WITNESS: Dana told me that the post was removed, and

14  I looked at the VOA Board and I saw that it wasn't there. And

15  she also communicated to me that management had come to her and

16  told her that it was removed and why they removed it.

17     MR. POWELL: Huge portions of that response is hearsay and

18  should be stricken from the record.

19     JUDGE GREEN: Okay.

20     MS. CABRERA: Okay. We're going to --

21     MR. POWELL: To the extent that they observed the VOA

22  Board, that's a different story, perhaps.

23     JUDGE GREEN: Okay.

24     MS. CABRERA: It's okay.

25     JUDGE GREEN: So --



1      MS. CABRERA:  You know what?  Ms. Miller will testify --

2      JUDGE GREEN:  Right.

3      MS. CABRERA:  -- for it.

4   Q   BY MS. CABRERA:  Mr. Spence, did you yourself post

5   anything on the VOA Board about Ms. Miller's situation?

6   A   Yes.

7      MS. CABRERA:  I'll show the witness what's been marked as

8   General Counsel's 14.

9      All right.  And one second.  Mr. Spence, scroll down so

10  you can see it better.  Let me know if you want me to go

11  slower.  This is page 1, and then here's page 2.  And forgive

12  me, I think the second page should have been page 1.

13     THE WITNESS:  Yeah, this is the first one.

14     MS. CABRERA:  Yeah.  Sorry about that.  Okay.

15  Q   BY MS. CABRERA:  So do you recognize this document?

16  A   Yes.

17  Q   What is it?

18  A   This is -- well, these are two VOA posts that I made back-

19  to-back regarding my understanding of Dana's situation.

20  Q   Okay.  And is -- are these photos?

21  A   These are screenshots.

22  Q   And who took them?

23  A   Can you scroll up?  These were taken by Dana.

24  Q   Okay.  But is this your name at the top?

25  A   Yeah.  I -- I made the post.  She viewed them and took the



1    screenshot.

2    MS. CABRERA:  Okay.  I would offer GC-13.  Excuse me.

3  Pardon me.  GC-14.

4    JUDGE GREEN:  Any objection?

5    MR. POWELL:  No, Your Honor.

6    JUDGE GREEN:  GC-14 is admitted.

7    **(General Counsel Exhibit Number 14 Received into Evidence)**

8  Q   BY MS. CABRERA:  Now, Mr. Spence, why did you post

9  these -- this post?

10  A   To call out --

11    MR. POWELL:  Same objection in terms of the why.  The

12  posts speak for themselves.  His purpose, or reason, or

13  rationale behind his post is not material or probative of any

14  issue in the case.

15    JUDGE GREEN:  Sustained.

16    MS. CABRERA:  Okay.  Your Honor, I think I might be done.

17  Can I have just five minutes to consult with my co-counsel?

18    JUDGE GREEN:  Yes.

19    THE COURT REPORTER:  Off the record.

20  (Off the record at 3:23 p.m.)

21    JUDGE GREEN:  Planning to do any more or no?

22    MS. CABRERA:  I have nothing further, Your Honor.

23    JUDGE GREEN:  Okay.

24    MR. POWELL:  And we request that Jencks material be

25  provided at this time.



1      MS. CABRERA:  Sure.  And I want to -- it's a little bit

2   complicated with Mr. Spence because we have a total of 12

3   affidavits from Mr. Spence.  Only one is directly related to

4   his testimony.  The other one I have redacted.  I redacted out

5   the irrelevant material, so I will turn two affidavits over to

6   Respondent.

7      That leaves ten that are related to other litigations and

8   don't have anything to do with the allegations in this case.

9   I'm happy to provide them to you, Your Honor, for in camera

10   review.  But you advise me, please.

11      JUDGE GREEN:  Okay.  Well, let me ask, does the Respondent

12   want me to do an in camera review with these affidavits?

13      MR. POWELL:  Your Honor, I don't know what redactions may

14   or may not have been made.  Why don't we get the two affidavits

15   that I guess counsel for General Counsel, is willing to turn

16   over at this point in time, and then we can provide a further

17   response to these if we think there may be any need for the

18   additional affidavits.

19      I don't know whether -- I don't know whether counsel for

20   General Counsel is saying that the remaining ten would be

21   redacted in total or not.  You know, it's difficult for me to

22   know because I don't know what those other ten may or may not

23   include.

24      MS. CABRERA:  Well -- well --

25      JUDGE GREEN:  My thought is --



1     MS. CABRERA:  I'm sorry to interrupt, Your Honor.  I was

2     just going to clarify in case I wasn't clear.  The other ten

3     affidavits do not contain any relevant information to this

4     proceeding.  The other affidavits were taken in connection with

5     other unrelated litigations.

6     JUDGE GREEN:  Okay.  So why don't you -- why not, for

7     now -- why don't you produce the two that you're willing to

8     produce?

9     MS. CABRERA:  Okay.  I'll do that.

10    JUDGE GREEN:  Do you know -- Mr. Powell, do you know

11    how -- about how long you'll -- you'll need?

12    MR. POWELL:  I don't before we take a look at the

13    affidavit, Your Honor.  You know, just depending how long the

14    affidavit is.

15    JUDGE GREEN:  Okay.  Why don't we check back in in about

16    15 minutes, at -- at 3:45.  If you need more time, let me --

17    let me know then.  Okay.  Off the record.

18    THE COURT REPORTER:  Off the record.

19    (Off the record at 3:29 p.m.)

20    JUDGE GREEN:  Okay.  So Mr. Spence, the -- you know what,

21    I -- I didn't ask, does the -- does the Union -- before we go

22    to cross-examination, does the Union have any questions for Mr.

23    Spence?

24    MS. SINGLA:  We do not.

25    JUDGE GREEN:  Okay.  So we're going to -- we're going to



1      have some cross-examination.

2          The Respondent's counsel will have some questions for you.

3      The same rules apply.  Okay?

4          Any time you're ready.

5          MR. POWELL:  Ready to begin, Your Honor.

6          JUDGE GREEN:  Yes.

7          MR. POWELL:  Thank you, Your Honor.

8          MR. POWELL:  Good afternoon, Mr. Spence.

9          THE WITNESS:  Good afternoon.  And I just want to say,

10     it's -- it's a little -- it's a little hard to hear you.

11         MR. POWELL:  Can you hear me better now?

12         THE WITNESS:  Yeah, that's a little better.

13         MR. POWELL:  Okay.  Let me know if you have any difficulty

14     hearing me or you need to repeat any questions.  I'll be happy

15     to do so.

16         THE WITNESS:  Okay.

17         MR. POWELL:  All right.

18                        **CROSS-EXAMINATION**

19     Q    BY MR. POWELL:   During your testimony on direct, you were

20     shown a document that was marked as General Counsel's Exhibit

21     9, the ALU Constitution.  Do you remember seeing that document?

22     A    Yes.

23     Q    And you testified that that document -- or that

24     Constitution had been amended at some point in time.  Is that

25     correct?



1    A    Yes.

2    Q    Do you know when that document was amended?

3         MS. CABRERA:  Objection to relevance.  Objection to

4    relevance.

5         JUDGE GREEN:  No.  Overruled.

6    A    I believe it was amended multiple times and re-ratified.

7    Once was in -- once was in April, and once was in -- sorry.

8    Sorry, no.  Once was in March, and once was in June.

9    Q    BY MR. POWELL:  Of 2022?

10   A    Of 2022.  Yes.

11   Q    And during your testimony, you -- you referenced, I guess,

12   the various ways that Amazon communicated to associates during

13   the course of the Union campaign.  Do you recall that

14   testimony?

15   A    Yes.

16   Q    And in those various communications, would it be accurate

17   that Amazon -- to say that Amazon encouraged associates to go

18   to the ALU and ask how they were going to accomplish certain

19   things that they had promised to employees?

20   A    I remember in early communications that they indicated

21   they had no obligation to talk to anybody from the ALU.

22   Q    Do you remember them encouraging employees to ask how --

23   to question how?

24   A    Later on, they said ask how in the presentations.

25   Q    With respect to the election that occurred at AL -- at



1    JFK8, I believe you testified that the Union won that election.

2    Is that what you just testified to?

3    A    Yes.

4    Q    Did you consider that result to be significant for the

5    workers at JFK8?

6    A    Yes.

7    Q    Did you consider the outcome of that election to be

8    binding on Amazon?

9    A    Yes.

10   Q    During the course of the campaign that lasted over the

11   year, would you say that there was ample time and opportunity

12   for both the ALU and Amazon to communicate their messages to

13   the associates at JFK8?

14   A    No, I would not.

15        MS. CABRERA:  Objection.  Vague.

16        JUDGE GREEN:  Okay.  I mean, maybe.  Okay.  If you

17   understand the question, you can answer it.  If you really

18   don't understand the question, you don't have to.  You can say

19   so.

20   A    I mean, to elaborate, I'll say that I do not believe the

21   Union had ample time, considering that we were full-time

22   employees, and we're not sufficiently given freedom, even

23   during our off hours, to talk to our coworkers about the Union.

24        Whereas Amazon had more than ample time to communicate

25   with employees outside of work, schedule meetings during work.



1    So I believe there was a disparity in the amount of time that

2    each side had.

3    Q    BY MR. POWELL:  Well, what are some of the ways that ALU

4    communicated to associates during the course of the Union

5    campaign?

6         MS. CABRERA:  Objection.  Relevance.

7         JUDGE GREEN:  Yeah.  What's the relevance?

8         MR. POWELL:  I'm was just following up on the answer that

9    he just gave.

10        JUDGE GREEN:  Okay.  Listen, we're not going to get into

11   that.  It -- it starts --

12        MR. POWELL:  That's all right.  I'll move on, Your Honor.

13   I'll move on.

14   Q    BY MR. POWELL:   Mr. -- Mr. Spence, if an employee came to

15   you and said -- an associate came to you and said, I'm

16   interested in joining the ALU, how do I join?  What would you

17   tell them to do?

18        MS. CABRERA:  Objection.  Speculation.

19        JUDGE GREEN:  Okay.  Did it happen?

20   Q    BY MR. POWELL:  Mr. Spence, has anybody ever come up to

21   you and -- and said they were interested in joining the ALU?

22   A    Yes.

23   Q    And what would you tell -- what did you tell them to do in

24   that instance?

25   A    I told them to -- I mean, it could be any number of



1    things.  I -- to gather information, we had, you know, a group

2    chat where workers who were interested in unionization could

3    keep in touch.  I invited them to our meetings, and I gave them

4    information and offered to have them sign an authorization

5    card.

6    Q    Based upon your role as an officer and somebody who's been

7    involved in the -- the ALU, I think you said since the outset

8    of the campaign, how does someone become a member of the ALU?

9         MS. CABRERA:  Objection to relevance.  What -- I

10   already --

11        JUDGE GREEN:  Okay.  I mean, this -- this -- this area of

12   inquiry was -- it -- it -- it -- we had some testimony

13   regarding it.  As a response to GC questions, I assumed, for

14   labor organization status.  Is that what we're dealing with

15   here?  That's what -- that's what I am -- it seems like you're

16   asking questions which are designed to go further into what the

17   GC was asking regarding labor organization status.  Is that a

18   contested issue today?  Is that something that we're -- we're

19   litigating?

20        MS. CABRERA:  It is, Your Honor.  Respondent knows this.

21        MR. POWELL:  I mean, I know -- I know that it wasn't

22   admitted in the -- in the answer.  But is it something that

23   we're actually litigating?

24        MS. CABRERA:  I mean, we have a number of election

25   petitions where the Employer has admitted to labor organization



1   status.

2       MR. POWELL:  Your Honor, the -- the question that I

3   asked -- and I'm not going to go very far into this, but those

4   kinds of questions were asked on direct.  I'm entitled to

5   cross-examine and explore the --

6       MS. CABRERA:  I didn't ask him --

7       MR. POWELL:  -- witness' direct testimony, and I won't

8   take up much time on that.

9       MS. CABRERA:  Yeah.

10      JUDGE GREEN:  Okay.

11      MS. CABRERA:  All right.  All right.  Judge, are you -- I

12  would like --

13      JUDGE GREEN:  No.  It's overruled.  Overruled.  We did go

14  there in -- in direct.  And so we're going to go there in

15  cross.  I'd like to keep it as short as possible; it seems like

16  there's not much real issue regarding labor organization status

17  but go ahead.

18      THE WITNESS:  Can you repeat the question?

19      MR. POWELL:  Yeah, sure.

20  Q   BY MR. POWELL:  So Mr. Spence, the question was, how does

21  someone become a member of the ALU, according to your

22  understanding?

23  A   Well, they inquire.  And then we have a -- kind of a -- an

24  internal database and, you know, internal communication

25  structure that you become added to, and that essentially



1    signifies membership.

2    Q   Does an -- does -- does it -- does someone who is wanting

3    to become a member sign anything to do so?

4    A   They sign an authorization card.

5    Q   You testified a bit in your direct testimony about going

6    to a meeting or meetings with a group of other associates

7    during the course of the Union campaign.  Do you recall that

8    testimony?

9    A   Yes.

10    Q   Did you go to every small group meeting that was held by

11    Amazon during the course of the Union campaign?

12    A   No.

13    Q   Did you ask any of your managers if those meetings were

14    mandatory?

15    A   Yes.

16    Q   You did?

17    A   Yes.

18    Q   And what were you -- what were you told?

19    A   At one point I asked, do I have to go?  And they said,

20    yes, everybody has to go.

21    Q   Were you aware of any employees who did not go to such a

22    meeting?

23    A   No.

24    Q   You testified during your -- your direct examination about

25    presenting Filepe, the general manager for JFK8, a petition



1  regarding the Juneteenth holiday.  Do you recall that

2  testimony?

3  A    Yes.

4  Q    You gave him that petition in a meeting?

5  A    Yes.

6  Q    And other than the conversation that you had with Mr. --

7  with Filepe Santos in that meeting, did you have any other --

8  was there any other discussions that you had with him or any

9  other member of management about the Juneteenth holiday

10 petition that you submitted to him that day?

11 A    I don't believe that I had any other discussions about it.

12 Q    Other Ms. Miller -- Dana Miller's Juneteenth petition,

13 have you ever seen any posts on the VOA Board about petitions

14 or solicitations for signatures on the VOA Board?

15 A    Not signatures specifically.

16 Q    During the small group meetings that Amazon conducted with

17 regard to the subject of unions, did you observe any of your

18 coworkers leave or walk out during these meetings?

19 A    No.

20 Q    What did you -- what did you observe your coworkers doing

21 during these meetings?

22 A    During these meetings, we entered the room, stayed for the

23 duration of the presentation, and then left when they told us

24 we could go back to work.

25 Q    Did the company administer any type of test or quiz to



1    assess whether or not you had listened or learned during that

2    meeting?

3    A    No.

4         MR. POWELL:  No further questions.

5         JUDGE GREEN:  Okay.  Is there going to be any redirect

6    from the General Counsel?

7         MS. CABRERA:  I don't have anything.

8         JUDGE GREEN:  Anything from the Union?

9         MS. SINGLA:  No.

10         JUDGE GREEN:  Okay. Thank you very much, Mr. Spence.

11    You're free to go.

12         THE WITNESS:  Thank you.

13         JUDGE GREEN:  Okay.  So do we have anything else for

14    today?

15         MS. CABRERA:  Your Honor, I do have another witness --

16         JUDGE GREEN:  Okay.

17         MS. CABRERA:  -- who is ready to go if Your Honor is

18    prepared to --

19         JUDGE GREEN:  Sure.

20         MS. CABRERA:  -- hear the witness?

21         JUDGE GREEN:  Who do you have?

22         MS. CABRERA:  I have Dana Miller.

23         JUDGE GREEN:  All right.  Off the record for a moment.

24    (Off the record at 4:38 p.m.)

25         JUDGE GREEN:  So we can go back on the record.



1      Okay.  So Ms. Miller, can you raise your right hand?  I'll

2   swear you in.

3   Whereupon,

4                       **DANA MILLER**

5   having been duly sworn, was called as a witness herein and was

6   examined and testified, telephonically as follows:

7      JUDGE GREEN:  Okay.  So are you alone in the room?

8      THE WITNESS:  Yes.

9      JUDGE GREEN:  Okay.  So please don't communicate with

10  anybody outside of this virtual hearing.  So just speak the

11  people who are asking you questions.  And don't use a phone or

12  other handheld devices to communicate with anybody else.  Also,

13  please don't look at any documents other than what's shown to

14  you on the screen.  Okay?

15     THE WITNESS:  Yes, sir.

16     JUDGE GREEN:  Okay.  And please state and spell your name

17  for the record.

18     THE WITNESS:  My name is Dana Joann Miller, D-A-N-A, and

19  then Joann, J-O-A-N-N, and then Miller like the beer,

20  M-I-L-L-E-R.

21     JUDGE GREEN:  Okay.  Thank you very much.

22     So whenever you're ready, General Counsel.

23     MS. CABRERA:  Hi, Ms. Miller.  Good afternoon.

24     MR. POWELL:  Your Honor, before Ms. Cabrera goes on, can I

25  just make a point clarification?  There are, maybe -- I don't



1    know if there are witnesses in the room.  And so we would

2    invoke the rule.  There -- there are at least one or two phones

3    that I cannot identify.  I don't know if they're parties, or

4    press, or something else.  So --

5        JUDGE GREEN:  Okay.  We don't have a sequestration order,

6    so -- so I haven't -- you know, I haven't given my

7    sequestration order speech.  Do you -- do you want a

8    sequestration order?  I mean, generally, it's -- it's asked for

9    at the start of the trial.

10       MR. POWELL:  Understand, Your Honor.  We did -- we would

11   like one.  We just request one.

12       JUDGE GREEN:  I mean, is there any objection from the

13   General Counsel to a sequestration order?

14       MS. CABRERA:  No, Your Honor.

15       JUDGE GREEN:  All right.  So let me just read my

16   directions on a sequestration order.  A sequestration order's

17   being issued in this proceeding.  All people who expect to be

18   called as witnesses in this proceeding, with certain

19   exceptions, may not be present during the hearing whenever

20   testimony is being taken.

21       The sequestration order also prohibits all witnesses from

22   discussing with any other witness or possible witness the

23   testimony they have already given or will give.  Likewise,

24   counsel for may not disclose to any witness the testimony of

25   any other witness.  Counsel may, however, inform his or her own



1      witness of the contents of the testimony given by any opposing

2      parties' witness to prepare to rebut that testimony.

3           It is counsel's responsibility to make sure that they and

4      their witnesses comply with the sequestration rule.

5           So do we know whether there's other witnesses in the

6      hearing room?

7           MS. CABRERA:  I don't believe so for the General Counsel,

8      but I would defer -- I would also defer to my co-counsel.

9           JUDGE GREEN:  Okay.  Before we get to -- okay.  Before we

10     get to that, let me ask for designation of representatives.

11     For the General Counsel, do you have somebody you want -- would

12     like to designate as a representative?

13          MS. CABRERA:  I -- so I guess Ms. Miller.

14          JUDGE GREEN:  Okay.

15          MS. CABRERA:  But I think because she's the Charging

16     Party --

17          JUDGE GREEN:  She's the Charging Party.

18          MS. CABRERA:  Yeah.  So --

19          JUDGE GREEN:  So she's entitled to be --

20          MS. CABRERA:  Yeah.  Other than that then, no.

21          JUDGE GREEN:  Yeah.  Okay.  How about the Charging Party,

22     Union?

23          MS. SINGLA:  Yeah.  The Charging Party would like to

24     designate Connor Spence as our party representative, but --

25          JUDGE GREEN:  Okay.



1      MS. SINGLA:  -- actually, away -- he had to attend to

2   something else right now.  And so for just the purposes of

3   completing today, we would like to designate Brett Daniels as

4   our party representative for just the hours that we have left

5   today.

6      JUDGE GREEN:  Okay.  I mean, listen.  The -- the -- the

7   truth is -- is that you're generally -- you might want to think

8   about that because it doesn't really help you for purposes of

9   credibility to have multiple witnesses in the room at the same

10   time.  You know, Mr. Daniels hears testimony and later

11   testifies to something that is corroborating.

12      MS. SINGLA:  I don't believe he's a subpoenaed witness,

13   Your Honor.

14      JUDGE GREEN:  Okay.  All right.  So then in that case

15   it's -- it's fine.

16      MS. SINGLA:  Yeah.  I wouldn't try to do something like

17   that.

18      JUDGE GREEN:  Okay.  And for the Respondent?

19      MR. ENJAMIO:  Your Honor, we will have Patrick Lattencall

20   (sic), so I don't believe --

21      MR. POWELL:  Tyler Bavowski.

22      MR. ENJAMIO:  Tyler Bavowski.  I'm sorry.  (Audio

23   interference).

24      JUDGE GREEN:  Bavowski.  Okay.

25      MR. ENJAMIO:  I've been talking to him so much today, I --



1     I got confused.  But we will have Tyler Bavowski --

2          JUDGE GREEN:  Yes.

3          MR. ENJAMIO:  -- join us at some point.

4          JUDGE GREEN:  Okay.

5          MS. SINGLA:  Is he a subpoenaed witness?  Do we know if

6     Mr. Bavowski is?

7          JUDGE GREEN:  Subpoenaed by whom?

8          MR. POWELL:  No, not that I'm aware of.

9          MS. CABRERA:  We haven't subpoenaed him.

10         MS. SINGLA:  Okay.

11         MR. ENJAMIO:  Okay.

12         JUDGE GREEN:  All right.  So Mr. Daniels just entered the

13    room.  The only person I see here who I believe is not an

14    attorney is Matt (phonetic throughout).  Do we know whether

15    Matt is a witness?

16         MS. CABRERA:  No.

17         JUDGE GREEN:  Okay.  All right.  While -- while we're

18    taking care of some -- some stuff, let me just clarify for

19    purposes of the last witness that Respondent did not request a

20    in-camera review of the seven affidavits that Mr. Spence

21    provided which were not produced.

22         MS. CABRERA:  It was actually ten, just -- if we're going

23    to be clear.  Sorry.  It was ten.

24         JUDGE GREEN:  Okay.

25         THE COURT REPORTER:  Could we go off the record for --



1    I -- I have to reboot my computer, the one that I'm recording

2    on, so I need to go off the record.

3        JUDGE GREEN:  Okay.  Off the record.

4    (Off the record at 5:15)

5        JUDGE GREEN:  So back on the record.  And I -- you know,

6    just -- just to finish up, does the Respondent -- I just wanted

7    to confirm that the Respondent wasn't asking for an in-camera

8    review of the -- the Connor Spence affidavits which weren't

9    produced.

10       MR. POWELL:  That's correct, Your Honor.

11       JUDGE GREEN:  Okay.  And so -- okay.  So why don't we

12   finally continue with the direct of Ms. Miller.

13       MS. CABRERA:  Okay.

14                    **DIRECT EXAMINATION**

15   Q    BY MS. CABRERA:  Ms. Miller, are you currently employed?

16   A    I am.

17   Q    And by whom?

18   A    Employed by Amazon.com.

19   Q    And in what warehouse do you work?

20   A    I work at the JFK8 facility in Staten Island, New York.

21   Q    Okay.  And when did you start working for Amazon?

22   A    It was July of 2020.

23   Q    And was it JFK8?

24   A    Yes.

25   Q    Okay.  What position do you work in?



1    A    I started off as a stower, and then I moved on to being an

2    amnesty tech -- robotics and damage processing, and an

3    occasional packer.

4    Q    Okay.  And then what duties --

5         MS. CABRERA:  Strike that.

6    Q    BY MS. CABRERA:  What's your position now?

7    A    I'm a stower/amnesty tech.

8    Q    Okay.  Can you just briefly describe what that means.

9    A    As a stower, I receive things -- items of merchandise.  I

10   take them out of the tub; I'll put them inside of a large pod,

11   and the pod will go off to a picker.

12   Q    Okay.  What about your duties as an amnesty tech, I think

13   you said?

14   A    As an amnesty tech, I work with robots.  So there's heavy

15   lifting involved.  I have to work with (audio interference)

16   robotics especially.  I wear a vest that protects me, so the

17   robots don't run into me.  The vest stops the robots

18   immediately within a certain area, and I'll collect items I'm

19   pulling out of these giant pods and out of the bins from the AR

20   floor.  (Audio interference) robots, too.

21   Q    What -- what do the robots do?

22   A    The robots are the drives.  They pick up the pod and then

23   they'll transport them to pickers and stowers.

24   Q    I'm sorry.  I -- I missed the word you said.  They pick up

25   what?



1    A    They'll lift a pod, and they will transport it to the

2    stowers and the pickers.

3    Q    Thank you.  Okay.  Ms. Miller, what is your current

4    schedule?

5    A    I work the donut shift.  It's Monday, Tuesday, Thursday,

6    Friday, full time.

7    Q    Okay.  Ms. Miller, are you familiar with the Amazon labor

8    union?

9    A    I am.

10   Q    And how are you familiar with them?

11   A    I used to organize with them.

12   Q    Okay.  And during what time period did you organize with

13   them?

14   A    It was from May -- I believe, it might've been -- I was

15   working with them in April.  But I believe it was from May

16   20 -- 2021 to just at the beginning of October '21.

17   Q    Okay.  And now, do you know whether or not at the time you

18   were organizing for the Union, was there any kind of a

19   headquarters -- did the Union have a headquarters?

20   A    We set up this tent that was at the bus stop right across

21   from the JFK8 facility.

22   Q    And do you recall which bus stop that was?

23   A    It was the Frank WP (phonetic) Boulevard bus stop,

24   s40/s90.

25   Q    Now, Ms. Miller, after the Union campaign began, did you



1    attend any group meetings in a room other than your workstation

2    where a representative of Amazon asked about your work-related

3    complaints?

4    A    Yes, I did.

5    Q    How many of these meetings did you attend?

6    A    I attended about five or six.

7    Q    And where were these meetings held?

8    A    Primarily, they were held in the Career Choice room -- the

9    Day 1 room, but mostly the Career Choice room, downstairs in

10   the main area.

11   Q    Okay.  And are the -- are those, like, conference rooms?

12   A    Yes.

13   Q    And so do you recall when the first of these meetings that

14   you attended -- do you recall when it was held?

15   A    It was sometime in October after the Union had said, oh,

16   we're going to file for an election.

17   Q    Okay.  How did you know that you had to go to this

18   meeting?

19   A    I knew my rights.  I knew I didn't have to go, but I chose

20   to go.  But there was a notification that was on my screen and

21   it said it was a mandatory educational meeting that I had to

22   attend.  It popped up every time that I -- that I was called.

23        MS. CABRERA:  In one second, I'm going to show the witness

24   what's been marked as General Counsel's 15.

25        My apologies.  I'm trying to size this.



1      JUDGE GREEN:  This is GC-15?

2      MS. CABRERA:  This is going to be GC-17 (sic).

3      JUDGE GREEN:  And that is not in the SharePoint, right?

4      MS. CABRERA:  It -- it should be.  Oh, I'm sorry.  No,

5  I -- I -- I don't think I uploaded it yet.

6      JUDGE GREEN:  Okay.

7      MS. CABRERA:  Let me double-check.  One second.

8      Lynda, do you have SharePoint open?  Think mine closed

9  down.

10      MS. TOOKER:  I'm looking now, so --

11      MS. CABRERA:  Okay.  Thank you.

12      MS. TOOKER:  15's not in here.

13      MS. CABRERA:  Okay, I'll -- I'll upload them and I'll

14  send -- you tell me, Your Honor, do you want me to stop and

15  send everybody an email?

16      JUDGE GREEN:  If everybody's got access to SharePoint,

17  whatever you -- what -- whatever you think is fastest.  It

18  seems like it's taking a little while for these emails to reach

19  Respondent's counsel, so if everybody has access to SharePoint,

20  that might be quicker.

21      MS. CABRERA:  Okay.  So if you can just give me, like,

22  three minutes, I'll upload all of these --

23      JUDGE GREEN:  Okay.

24      MS. CABRERA:  -- all of these to SharePoint.

25      JUDGE GREEN:  Off the record.



1    (Off the record at 5:35 p.m.)

2                    <u>**RESUMED DIRECT EXAMINATION**</u>

3    Q    BY MS. CABRERA:  Ms. Miller do you recognize this photo?

4    A    I do.

5    Q    What is it?

6    A    This is a photo of a notification that came across my

7    screen, telling me to report for mandatory training.

8    Q    Okay.  And when did you receive this notification?

9    A    Well, it should have been around the month of either Oc --

10   it's through -- October through March.  I believe that's when

11   they would've been -- but I feel the date of it is actually

12   very, very hard to see.  That's in the -- at the top of the

13   screen.

14   Q    Yeah.  I don't know if I can enlarge it 'cause I'm screen

15   sharing.  Or maybe I can.  Hold on.  Oh, boom.  Okay.

16   A    At the time --

17   Q    Yeah.

18   A    I see the time.

19   Q    Okay.  Did you -- I don't know how to go out of this now.

20   Oh, there it goes.

21        Who took this photo?

22   A    I did.

23   Q    And what did you take it with?  I took it with my cell

24   phone.

25   Q    Do you still have that cell phone?



1    A    I do.

2    Q    Do you still have this picture?

3    A    I do.

4         MS. CABRERA:  I would offer GC -- excuse me, 15.

5         JUDGE GREEN:  Any objection?

6         MR. ENJAMIO:  Your Honor, only to the extent that we're

7    not certain of about the date.  If we could -- if we could

8    identify the date range of the so-called meeting then it's not

9    relevant.

10        JUDGE GREEN:  I can't -- I can't hear you.

11        MR. ENJAMIO:  If it -- if it's outside the date of the

12   small group meeting -- the range of dates, then it is not

13   irrelevant.  We know that it talks about a training.  We don't

14   know what training it is.  So we need to identify that.  And we

15   need to identify the date.  I could not see the date on the

16   screenshot.

17        MS. CABRERA:  Well, if I may respond --

18        JUDGE GREEN:  I assume we're going to --

19        MS. CABRERA:  If I may respond, Your Honor.  Sorry.

20        JUDGE GREEN:  Yes.

21        MS. CABRERA:  I mean, we have her testimony on that.  She

22   testified --

23        JUDGE GREEN:  Right.

24        MS. CABRERA:  -- to what the date was when she received

25   this.



1    JUDGE GREEN:  Right.  And so I'm -- I'm going to allow it

2  to happen.  But yeah, it probably requires some additional

3  foundation to flesh it out.

4  **(General Counsel Exhibit Number 15 Received into Evidence)**

5    MS. CABRERA:  Okay.

6  Q    BY MS. CABRERA:  So Ms. Miller, do you recall when you

7  took this specific picture?

8  A    This would have been one of the earlier pictures that I

9  would have taken, so it should have been around

10  October/November.

11  Q    Of what year?

12  A    2021.

13  Q    Now, did you receive -- was this the only notification

14  like this that you received?

15  A    No, it wasn't.

16  Q    How many other notifications like this did you receive?

17  A    Every time I was called into those mandatory training

18  sessions, I received a notification.

19  Q    Did you receive this specific notification?

20  A    Yes, I did.

21  Q    And just looking at this picture, who did the notification

22  come from?

23  A    This notification came from the PA, our manager that was

24  in charge of the floor that day.

25  Q    Okay.  And it looks like this is a computer screen.



1    What's -- what computer is that?

2    A    This would be my personal screen at my station.

3    Q    Ms. Miller, you testified that the Union campaign began in

4    April of 2021.  Do you know -- did Amazon conduct its own

5    campaign?

6    A    Yes, they did.

7    Q    And when did that start?

8    A    I believe it was shortly after we had made our presence

9    known at the bus stop.  Then we had written letters and

10   notifications from Amazon.

11   Q    And do you recall, the -- maybe the month and the year

12   when you started to see those notifications?

13   A    I believe I saw them as early as -- I want to say March

14   2021.  But I can't recall.

15   Q    Okay.  And with regard to these notifications, what forms

16   did the notifications take?

17   A    Multiple ones.  Through email, we had these specific JFK8

18   insight emails that happened every week.  We'd have a letter

19   from the general manager about the ALU all the time.  We also

20   had notifications through our phone with the A to Z app.  They

21   were also posters.  There were TV screens that were displaying

22   messages about the Union, and asking questions, and what they

23   represented, and if they were even a credible union or not.

24   Q    Okay.  Going to show you what's been marked as General

25   Counsel's 16.



1     JUDGE GREEN:  So somebody came into the waiting room named

2    Camilla (phonetic throughout).  Do we know where -- no,

3    she's -- never mind.  Do we know whether that's a witness?

4     MS. CABRERA:  Not -- I don't believe for the General

5    Counsel.

6     JUDGE GREEN:  Okay.  I'm going to leave her there for the

7    moment.  Let's continue.

8     MS. CABRERA:  Okay.

9   Q   BY MS. CABRERA:  Ms. Miller, I'm going to show you what's

10   been marked as General Counsel's 16.  Do you recognize this?

11   A   I do.

12   Q   What is it?

13   A   This is a table display -- a table topper from Amazon.

14   Q   Okay.  And where did you see this?

15   A   I saw this in the main break room and in the satellite

16   break rooms all across the facility.

17   Q   Okay.  And did you take this photo?

18   A   I did.

19   Q   I think I can see you in a reflection there.  I'm going to

20   go to -- I'm going to go to page 2.  Do you recognize this?

21   A   I do.

22   Q   What is this?

23   A   This is a poster that was inside of the bathroom stalls.

24   Q   Okay.  And who took this photo?

25   A   I took the photo.



1    Q    Okay.  And do you still have both of these photos in your

2    phone?

3    A    I do.

4         MS. CABRERA:  I would offer GC-16.

5         JUDGE GREEN:  Any objection?

6         MR. POWELL:  No objection, Your Honor.

7         JUDGE GREEN:  And GC-16 is admitted.

8    **(General Counsel Exhibit Number 16 Received into Evidence)**

9    Q    BY MS. CABRERA:  And Ms. Miller, when do you -- when

10   did -- when did you take these photos?

11   A    I believe I took this photo either in May or June of 2020.

12   A    Okay.  And what about the photo on page 2?

13   A    That was definitely in June.

14   Q    Of what year?

15   A    Of 2021.

16   Q    Thank you.

17        MS. CABRERA:  Well, maybe I shouldn't have stopped screen

18   sharing.  I can pull it back if you need.

19   Q    BY MS. CABRERA:  Was this the only time that you saw these

20   posts posted at the JFK8 Facility?

21   A    No, that's not.

22   Q    How many times did you see these posters posted at the

23   JFK8 Facility.

24   A    Throughout the duration of the Union campaign?

25   Q    Okay.  Ms. Miller, are you familiar with the Voice of the



1    Associate Board?

2    A    I am.

3    Q    What is that?

4    A    It is an avenue that you can express your comments,

5    concerns, shout outs, invitations, whatever you want to say to

6    the associate in general or managers or ALU.

7    Q    And how does one post to the VOA board?

8    A    If you have the number, you can raise the post.

9    Originally there was a computer kiosk write the across the

10   department, the desk.  You can also go onto your cell phone.

11   Put in the AW and post that way. You can go to multiple

12   computers now and access your account, your AW APP issued by HR

13   and let's see.  I'm not sure and what else.

14   Q    Have you ever seen any posts on the VOA board where

15   employees agree with previous posts?

16   A    Yes.

17   Q    I'm going to show you what's been marked as General

18   Counsel's 17.

19        Okay.  Can you see this photo?

20   A    I do.

21   Q    What is it?

22   A    This is a VOA post from one of my former coworkers.

23   Q    Okay.  And did you take this photo?

24   A    I did.

25   Q    And did you take it with your cell phone that you still



1   have?

2   A   I did.  Yes, I did.

3   Q   And you still have this photo?

4   A   I do.  Just this one.

5   MS. CABRERA:  I would offer General Counsel's 17.

6   JUDGE GREEN:  Any objection?

7   MR. POWELL:  No objection, Your Honor.

8   JUDGE GREEN:  Okay.  GC-17 is admitted.

9   **(General Counsel Exhibit Number 17 Received into Evidence)**

10   MS. CABRERA:  Thank you.

11   Q   BY MS. CABRERA:  And just to clarify, Ms. Miller, you see

12   this thumbs up here with a six number by it?  What does that

13   mean?

14   A   Well, originally the VOA board had a thumbs up and thumbs

15   down.  It was meant to like or dislike a post.  And later on

16   they changed it to a plus sign and took away the dislike.

17   Q   Thank you.

18   THE COURT REPORTER:  I'm having trouble, still having

19   problems hearing the Respondents when they're replying to

20   whether or not they're objecting exhibits.

21   Q   BY MS. CABRERA:  Okay.  Now, Ms. Miller, where are the VOA

22   screens located?

23   A   They are located throughout the facility.  In the main

24   areas, specifically.

25   Q   About how many screens are there?



1    A    There's about six -- six to eight.

2    Q    And are they located on any particular floors?

3    A    Yes.  The main floor and the third floor.

4    Q    Ms. Miller, can you describe for us generally, other than

5    the post that we just saw, what other types of posts have you

6    seen on the VOA boards at JFK8?

7    A    Typical -- so I have seen a lot.  Health and safety

8    concerns.  I've seen shout outs to fellow associates and to

9    managers.  I've seen people say, vote for me for Amazon's Got

10   Talent, that kind of thing.  I've seen them ask questions, such

11   as were asked about fire drills and terrorism drills and

12   practice drills.

13   Q    Do you recall when you saw that vote for me post you just

14   testified to?

15   A    I believe that was in the fall of 2020.

16   Q    And do you recall what the vote was for.

17   A    Amazon ran a talent show and the person was asking their

18   fellow associates to vote for them and HR had replied, we wish

19   you the best, we'll be watching.

20   Q    Okay.  With regards to health and safety posts, what types

21   of posts have you seen about health and safety?

22   A    We were posting about fixing equipment that might have

23   been malfunctioning, broken down or needed to be replaced in

24   general.  Or health and safety concerns about dust.  And it

25   affected people's allergies, like getting into their eyes.



1    Dust around the fans that were going constantly.  And

2    maintenance and a lot of problems with roaches and

3    environmental problems with that.  The bathrooms.  General

4    things.  There was the heat in the warehouse as well -- people

5    were passing out.

6    Q    Let me show you what's been marked as General Counsel's

7    18.

8         Okay, I'll scroll slowly.  It's a four-page document.

9    This is page 2.  I'm going to page 3.  Is this one of your

10   posts?

11   A    Yes, it is.

12   Q    And here is page 4, is this also one of your posts?

13   A    It is.

14   Q    Okay.  Have you had a chance to look at them?

15   A    I have.

16   Q    Okay.  So what are these?

17   A    These are raising valid, very valid concerns about the

18   environment and public health.  So Jason's (phonetic

19   throughout) post -- he was advocating on behalf of himself to

20   get an accommodation approved.  I don't know if it ever was

21   approved or not.  It was an ongoing issue for months.

22        The second post was about an associate who was hit by a

23   car and died outside of the facility and whether we were going

24   to have a visual or any kind of grief counseling for that

25   associate or to even mention them in name in an email or



1    something because of his being employed.  And it wasn't being

2    addressed.

3        And the last two, I was speaking out on behalf of an

4    associate who is blind and who had no place to sit and eat

5    their lunch.  And so they went back to their station and sat.

6    And so it was an unsafe situation.  She sat there on the

7    ladder.  They didn't know what to do.  And so they couldn't

8    find a space to accommodate them.

9        And then that last post there is about gloves.  We handle

10   chemicals and unknown substances every day, especially in

11   damaged processing and in touching pretty gross stuff.  And

12   they were limiting the amount of gloves that associates could

13   get when originally it was, you could take as many as you

14   wanted.

15   Q    Okay.  Just to try to get a time frame here.  With regard

16   to the first post, there's a date here.  So this post is by

17   someone named Jason and the date there -- my question to you

18   is, what does that date indicate?

19   A    Well, this indicates, I would say, a beginning -- a

20   beginning of his complaint.

21   Q    Okay.  But in rela -- does this indicate the date that he

22   posted this?

23   A    Oh, yes, it does June 19th, 2021.

24   Q    And page, on page number 2, the date's not clear.  Do you

25   know when this post was posted?



1   A    I believe that that person met their end in November,

2   2021.

3   Q    Okay.  So with regard to this post, when do you think this

4   was posted?

5   A    This was definitely right after their death.  It was just

6   before Thanksgiving, 2021.

7   Q    Okay.  And you're post on page number 3, when do you think

8   this was posted?

9   A    This was posted, I believe in the summer of 2021.

10  Q    And the last one.

11  A    And the last one, this was during the late summer of 2021.

12  Q    Okay.  And did you take these photos?

13  A    I did.

14  Q    Okay.

15  MS. CABRERA:  I would offer GC-18.

16  JUDGE GREEN:  Any objections to GC-18?

17  MR. POWELL:  No objections from the Respondent's, Your

18  Honor.

19  JUDGE GREEN:  Okay  So GC-18 is admitted.  The Respondents

20  have no objection.

21  **(General Counsel Exhibit Number 18 Received into Evidence)**

22  MS. CABRERA:  Thank you.

23  Q    BY MS. CABRERA:  Ms. Miller, in response to these health

24  and safety posts contained in GC-18, do you recall seeing any

25  message from management that these posts were inappropriate?



1    A    No.  Not at all.

2    Q    Or any posts that they had to be -- these posts had to be

3    removed?

4    A    Not at all.

5    Q    With regard to the Amazon's Got Talent show post that you

6    testified about, do you recall seeing any message from

7    management saying that that post had to be removed?

8    A    No.

9    Q    Okay.  Ms. Miller, did you ever see any posts regarding

10   the Union election?

11   A    Yes.

12   Q    And what types of posts did you see?

13   A    I saw multiple posts.  People asking questions about it.

14   I saw people who were advocating for union and people who were

15   saying, don't vote any union.

16   Q    Okay.  I'm going to show you what's been marked as GC-19.

17        Okay, it's a 2-page document.  I'm going to scroll slowly

18   so you can see.

19        MS. CABRERA:  Actually, you know what, I think page 2

20   might already be into -- in evidence.  My apologies, I did put

21   those two in.

22   Q    BY MS. CABRERA:  Do you recognize these two documents?

23   A    I do.

24   Q    What are they?

25   A    They are associate's opinions of whether they would be



1    voting yes or no for the Union.

2    Q    Okay.  And who took these photos?

3    A    I did.

4         MS. CABRERA:  I would offer GC-19.

5         JUDGE GREEN:  Any objection?

6         MR. POWELL:  No objection, Your Honor.

7         JUDGE GREEN:  Okay.  GC-19 is admitted.

8    **(General Counsel Exhibit Number 19 Received into Evidence)**

9    Q    BY MS. CABRERA:  Ms. Miller, how many of these vote no and

10   vote yes posts did you see on the VOA board during the Union

11   campaign?

12   A    A lot, I would say hundreds.

13   Q    Do you ever recall seeing a response from management

14   saying that, these vote no or vote yes posts had to come down

15   from the VOA board?

16   A    Not at all, no.

17   Q    Ms. Miller, do you ever recall seeing any posts during the

18   Union campaign about employees distributing any materials to

19   other employees?

20   A    Yes.

21   Q    What do you recall seeing.

22   A    I recall seeing an employee exhibiting shirt that was a

23   vote no.  I recall seeing one employee, they had pins and

24   buttons and lanyards by the Union -- vote yes.

25   Q    I want to show you what's been marked as GC-20.



1    Can you see this?

2    A    I can.

3    Q    I'm going to scroll.  It's a two-page document.  So this

4    is one post.  And then there's another one further down on page

5    2.  Okay.  Do you recognize these two posts?

6    A    I do.

7    Q    And who took these photos?

8    A    I took them.

9    MS. CABRERA:  I would offer GC-20.

10    JUDGE GREEN:  Any objection?

11    MR. POWELL:  No objection, Your Honor (audio

12    interference).

13    JUDGE GREEN:  I'm sorry, I didn't hear that.

14    MR. POWELL:  Judge, can we see the date on that?  On the

15    top?

16    MS. CABRERA:  For sure.  Well, this one doesn't have a

17    date.  Looks like -- it just says today.  But the other one did

18    have a date.

19    Q    BY MS. CABRERA:  And I can ask you, Ms. Miller, with

20    regard to page 2 of GC-20, do you recall what date you took

21    this photo of the VOA board?

22    A    Of the second one?

23    Q    Um-hum.

24    A    I believe that might have been two days later but I do not

25    recall exactly.



1    Q    Two days later than what?

2    A    Two days later from March 20th, 2022.

3         JUDGE GREEN:  Okay.  So with that, is there any objection?

4         MR. POWELL:  No objection, Your Honor.

5         JUDGE GREEN:  Okay.  So GC-20 is admitted.

6    **(General Counsel Exhibit Number 20 Received into Evidence)**

7    Q    BY MS. CABRERA:  Okay.  With respect to GC-20, do you

8    recall seeing any message from management to this individual

9    saying that this post had to be removed?

10   A    No.  There was nothing like that.

11   Q    Now, you mentioned that you saw another post regarding

12   pins and buttons.

13   A    Yes.  I believe I saw that post -- I don't know if I still

14   have that in my possession.

15   Q    When do you recall seeing that?

16   A    That was during the Union campaign, around this time,

17   March of 2022.

18   Q    Do you recall what the post said?

19   A    I believe that they said something to the table, to the

20   tents -- the table at the tents where there would have shirts

21   ALU shirts and pins.

22   Q    And do you recall seeing any message from management in

23   response to that post that that post had to be removed.

24   A    No.  I don't recall that.

25   Q    Okay.  Ms. Miller, shifting gears a bit, calling your



1    attention to June of 2021, do you recall seeing any post on the

2    VOA board about the Juneteenth holiday?

3    A    Yes, I do recall it.

4    Q    And what did you see?

5    A    I saw multiple employees speaking out and asking if this

6    federal holidays would be recognized by Amazon.  If they would

7    be getting holiday pay for it.

8    Q    All right.  I'm going to show you what has been marked as

9    General Counsel's 22.

10        I recognize I skipped a number.  I don't have -- I'm not

11   going to offer 21 right now.  We're up to 22.

12        JUDGE GREEN:  Where is -- we're skipping 21?

13        MS. CABRERA:  Yes, Your Honor.

14        JUDGE GREEN:  Okay.

15   Q    BY MS. CABRERA:  Ms. Miller, I'm going to scroll.  That's

16   not it.  Sorry, this is the first page, okay?  I'm going to

17   scroll.  Okay.  Do you recognize these two pages?

18   A    I do.

19   Q    What are they?

20   A    They are employees voicing concerns about the federal

21   holiday that was just enacted and whether they were going to be

22   paid or not or given the day off to observe it.

23   Q    Okay.  And who took these photos?

24   A    I did.

25   Q    And are these some of the posts that you saw as you just



1    testified to regarding the Juneteenth holiday?

2    A    Yes.

3         MS. CABRERA:  I would offer GC-22.

4         JUDGE GREEN:  Any objection?

5         MR. POWELL:  No objection, Your Honor.

6         JUDGE GREEN:  Okay.  GC-22 is admitted.

7    **(General Counsel Exhibit Number 22 Received into Evidence)**

8    Q    BY MS. CABRERA:  Okay.  Ms. Miller, do you know whether

9    management responded to these posts?

10   A    They did.

11   Q    Juneteenth holiday?

12   A    They did.

13   Q    Okay.  And what was the response?

14   A    The response was that Amazon recognizes seven holidays

15   that are paid.  And Juneteenth was not of them at this time.

16        MS. CABRERA:  Okay.  After seeing these posts and

17   management's response, oh -- strike that.

18   Q    BY MS. CABRERA:  With regard to these posts contained in

19   General Counsel's 22, do you recall seeing any response from

20   management saying that these posts have to be removed?

21   A    No.

22   Q    So after seeing these posts and after seeing management's

23   response, what, if anything, did you decide to do?

24   A    After hearing multiple associates voicing concern over

25   this issue, I decided along with the ALU organizing committee



1    to present a petition to Felipe Santos voicing exactly this,

2    how many employees with signatures will back up their concern

3    about being paid for this holiday?

4    Q    Okay.  And did you present Mr. Santos with the petition?

5    A    We tried.  Yes, we did.

6    Q    And when was that?

7    A    That was -- our initial attempt was July 7.  He has an

8    open door policy.  But he wouldn't hear us that day so we

9    decided the next day, July 8th, 2021.

10   Q    Okay.  And where did you meet with him?

11   A    We met with him in his office?

12   Q    In what building.

13   A    In the JFK8 Facility.

14   Q    Okay.  And who was present for the meeting?

15   A    I myself was present, Connor Spence, Filipe Santos, and

16   Jenna (phonetic throughout), his assistant HR, I forgot her

17   title and I also forgot her last name.

18   Q    And did you present Mr. Santos with the petition?

19   A    We attempted to.  He fully understand it, but he would not

20   accept it.

21   Q    And did you say anything during this meeting?

22   A    I did.

23   Q    What did you say?

24   A    I told them that it was extremely important to acknowledge

25   the minorities that are -- in their pay, our coworkers.  It's a



1   very important observance that everyone is bringing to

2   attention.  And that we do deserve holiday pay and that now

3   that the government is acknowledging it, we would like him to

4   take steps to enact this observance.

5   Q    And did Mr. Santos respond?

6   A    He did.  He called attention to a prior meeting that I,

7   myself and Connor Spence were not involved in where there was

8   no petition but the same issue was thought up.  He said his

9   answer then is the same that he has now, even in light of

10  receiving the petition.  He would not, lift a finger, make a

11  phone call, or send an email to alert any of his superiors or

12  escalate the matter about this.

13  Q    How did this meeting end?

14  A    I took the petition back and left.

15       THE COURT REPORTER:  Let me go off for a second.

16       JUDGE GREEN:  Off the record.  Hold on one moment.

17  (Off the record at 5:15 p.m.)

18       JUDGE GREEN:  Okay.  Back on the record.

19                    **RESUMED DIRECT EXAMINATION**

20  Q    BY MS. CABRERA:  Okay.  All right.  Ms. Miller, after this

21  meeting with Mr. Santos on July 8th what, if anything, did you

22  decide to do?

23  A    So after meeting with Mr. Santos, I decided to post on the

24  VOA board what the ALU organizing committee had collectively

25  done and invite my fellow associates to attend to sign the



1   petition for holiday pay.

2   Q    I'm going to show you what I have marked as General

3   Counsel's 13.

4        Okay, Ms. Miller, do you recognize that?

5   A    I do.

6   Q    What is it?

7   A    This is my invitation on the VOA board.

8   Q    Okay.  And is this a photo?

9   A    It's a screen screenshot from my phone.

10  Q    And who took the photo?

11  A    I did.

12       MS. CABRERA:  And this is the post -- well, strike that.

13  Q    BY MS. CABRERA:  What date did you post this?

14  A    I posted that, I believe on 7 -- July 9th -- I believe,

15  July 9th, 2021.

16  Q    Okay.

17       MS. CABRERA:  I would offer General Counsel's 13.

18       JUDGE GREEN:  Any objection?

19       MR. POWELL:  No objection, Your Honor.

20       JUDGE GREEN:  Okay.  GC-13 is admitted.

21  **(General Counsel Exhibit Number 13 Received into Evidence)**

22  Q    BY MS. CABRERA:  Okay, Ms. Miller, what, if anything,

23  happened after you put up this post?

24  A    I was contacted by management.

25  Q    And by whom were you contacted?



1    A    I believe it was an HR representative who pulled me from

2    my position and told me to meet with Mike Tanelli in the

3    general manager's office.

4    Q    Okay.  And do you recall when that was?

5    A    I think it was a couple of days later from posting this.

6    Q    Okay.  And did you meet with Mr. Tanelli?

7    A    I did.

8    Q    Okay.  And where did you meet?

9    A    I met in Mr. in Felipe Santos' office.  And he was not

10   present at the time.  No one was.  Just me and Mike Tanelli.

11   Q    Okay.  Who spoke first?

12   A    He did.

13   Q    What, if anything, did he say?

14   A    He offered me a glass of water and I accepted.  And he

15   introduced himself.  And a bit of his background with Amazon.

16   And he invited me to share a little bit of my Amazonian

17   history, which I did.  And then he said that according to the

18   policy -- Amazon's policy of solicitation, my post would be

19   taken down.  And there wasn't much I could do about it.

20   Q    Okay.  And did you respond?

21   A    I did.  I had said -- I asked if he could me that policy

22   in writing.

23   Q    Did he?

24   A    He promised to that very same day, but he did not.

25   Q    Okay.  Did Mr. Tanelli say anything else?



1    A    He did.  He said that certain things are allowed on the

2    VOA board, but this constituted that something that wasn't.  So

3    it would be taken down.  And that I wasn't in trouble or

4    anything.  But -- but --

5        MR. POWELL: Your Honor -- Your Honor, I hate to interrupt

6    the witness, but we cannot hear her or understand.  We cannot

7    hear what she's saying.

8        JUDGE GREEN:  Okay.

9        UNIDENTIFIED SPEAKER:  I can hear her clearly.  I don't

10   know if it's --

11       MR. POWELL:  I mean, I'm not --

12       UNIDENTIFIED SPEAKER:  Yeah, we can hear Cabrera clearly.

13       MR. POWELL:  Yeah, I can hear -- clearly -- cannot -- so

14   if you can answer again, maybe

15       JUDGE GREEN:  Right.  I'm having a -- try to speak up, Ms.

16   Miller, because I'm -- I am having a little trouble hearing.

17   And then I can hear it, but it's low.  The volume is low.  So

18   why don't we try this one more time and try to speak up a

19   little bit and see if that helps.

20       THE WITNESS:  Okey-doke.

21       THE COURT REPORTER:  Also, I'm not sure who's speaking,

22   either Mr. Powell or -- because it's just Mr. Powell for there

23   is there but not -- it's not moving.

24       MS. CABRERA:  I think it's Mr. Enjamio.

25       THE COURT REPORTER:  Okay.  Because the video is not on so



1    I -- I don't know who is who speaking, so.

2        MR. POWELL:  My video is on.  Mr. Moxie, my video is on

3    and I'm the only one objecting or -- or talking --

4        MS. CABRERA:  Oh, but you know what it is -- I -- I think

5    for some reason, are you next to Kurt -- oh, no, there you are.

6    Because I think Kurt's -- Kurt, if you can unmute yourself,

7    just so Mr. Enjamio doesn't disappear.

8        MR. POWELL:  No, we're -- we're using the same -- we're

9    using the same room audio.

10       MS. CABRERA:  Oh.  Okay.  So should we just go back over

11   the meeting again?

12       MR. POWELL:  Yeah, yeah.  Yes.  And I apologize for

13   interrupting.  I just could not hear that --

14       JUDGE GREEN:  No, no, that's okay.  We want to know -- we

15   want you to be able to hear.

16       MS. CABRERA:  Yes.

17       MR. POWELL:  Yeah, okay.

18       JUDGE GREEN:  So we're on the record, right?

19       THE COURT REPORTER:  Yes.

20       JUDGE GREEN:  Okay.

21   Q    BY MS. CABRERA:  All right, Ms. Miller, so just try to

22   speak up as much as you can.  So we'll go back over the

23   meeting.  So you said, you testified it that it was you and Mr.

24   Tanelli in Felipe Santos' office a couple days after the July

25   9th post.  So if you could tell us who spoke first?



1    A    Mr. Tanelli spoke first.

2    Q    Yes.

3    A    He offered me a glass of water and I accepted.  And he

4    introduced himself and went over a summary of his time at

5    Amazon, an introduction.  And I introduced myself to introduce

6    myself and I did.  Wasn't much to it.  Okay.  And then he went

7    right into it and said that my VOA board post was against the

8    solicitation policy and that it would be taken down.

9    Q    Okay.  And then did you respond?

10   A    I did.

11   Q    And what did you say?

12   A    I said, why, and please show me that in writing.

13   Q    And did he show you any policy?

14   A    He did not.  He promised to that very same day, but he

15   did.

16   Q    Okay.  Did Mr. Tanelli say anything else about your post?

17   A    He did.

18   Q    What did he say?

19   A    He said he wasn't going to argue semantics about it.  And

20   I told him if we're going to use the wording of solicitation,

21   then we have to be very specific about things.  And he said,

22   uphold the law.

23   Q    And did he respond to that?

24   A    He was quiet when I said he could uphold the law.

25   Q    Now, did Mr. Tanelli say anything else about whether there



1    would be consequences if you posted again about the Juneteenth

2    petition or holiday?

3    A   Yes.  Actually, he said that it would be taken down.  I

4    said, well, I'm just going to put it back up.  And he said,

5    okay, well, they'll be further action taken if you do decide to

6    do that.  And I said, okay, well, what further action?  When

7    will I expect the policy to be shown to me in writing?  Then he

8    said -- that is when he said that very same day.

9    Q   Okay.  Ms. Miller, how did this meeting end?

10    A   I thanked him for the glass of water and I left.

11    Q   Now, do you know whether or not your July 9th, Juneteenth

12    posted had been taken down?

13    A   I checked, yes.  I checked the VOA board as soon as I left

14    the office and saw that it was -- it had been removed.

15    Q   Okay.  And what, if anything, did you do after seeing that

16    it had been removed?

17    A   I notified my organizing committee with the ALU and

18    requested assistance.  They said to put it right back up.  And

19    that is what I did.

20    Q   And when did you put it back out?

21    A   That same day.

22    Q   Okay.  And do you know whether or not that post was

23    removed.

24    A   It was.

25    Q   How do you know that?



1    A    I checked that same --

2    Q    When did you check?

3    A    That same day after my shift was over.

4    A    Okay.  And after seeing that it had been removed again,

5    what, if anything, did you do?

6    A    I attempted to post it one more time but I had been

7    blocked.  My permissions had been revoked.

8    Q    I show you what's been marked as General Counsel 23.

9         Okay, Ms. Miller, do you recognize this?

10   A    I do.

11   Q    What is it?

12   A    This is a screenshot of me trying to submit a comment on

13   the Voice of the Associate Board and failing to do so.

14   Q    Okay.  And is this a photo?

15   A    Yes.

16   Q    Who took this photo?

17   A    I did.

18   Q    Okay.  And when did you take this photo?

19   A    I took it the day that my permissions were taken away.

20   The day that I tried to repost my VOA board Juneteenth

21   petition.  I believe the date might have been July -- I want to

22   say 13th, but I'm not sure, 2021.

23   Q    Okay.

24        MS. CABRERA:  I would offer GC-23.

25        MR. POWELL:  No objection, Your Honor.



1       JUDGE GREEN:  Okay.  GC-23 is admitted.

2    **(General Counsel Exhibit Number 23 Received into Evidence)**

3    Q    BY MS. CABRERA:  Okay.  Just to be clear, Ms. Miller, were

4    you able to read posts?  Were you able to post anything that

5    night on the Voice of the Associate's Board?

6    A    No.  I was not.

7    Q    Did there come a time when your permissions were

8    reinstated on the VOA board?

9    A    Yes.  It was the next day.

10   Q    And how did you know?

11   A    I checked.

12   Q    Did you try to post the next day?

13   A    I did.  I sent it a tester post.

14   Q    Did you ever try to repost the July 9th, Juneteenth post

15   after your permissions had been restored?

16   A    Yes, I did.

17   Q    Now, after your permissions were restored, did you post

18   anything about the permissions having been revoked from you?

19   A    I did.

20   Q    Let me show you what's been marked as General Counsel's

21   Number 24.

22        Okay.  Do you recognize this?

23   A    I do.

24   Q    What is it?

25   A    This is a screenshot of another VOA board post talking



1    about the whole situation.  And making it known to other

2    associates, what had happened.

3    Q    And do you recall when you posted this.

4    A    This was after my tester post so it may have been July 14.

5    Q    Okay.  And who took this photo.

6    A    I did.

7         MS. CABRERA:  I would offer GC-24.

8         JUDGE GREEN:  Any objection?

9         MR. POWELL:  No objection, Your Honor.

10        JUDGE GREEN:  GC-24 is admitted.

11   **(General Counsel Exhibit Number 24 Received into Evidence)**

12   Q    BY MS. CABRERA:  Okay.  Ms. Miller -- thank you, Your

13   Honor.  Ms. Miller, did you ever receive a response on the VOA

14   board from Amazon?

15   A    I did.

16   Q    I'm going to show you what's been marked as General

17   Counsel's 25.

18        Do you recognize this?

19   A    Yes, I do.

20   Q    What is it?

21   A    This is an Amazon management's response to my VOA board

22   complaint about taking down my post and revoking my

23   permissions.

24   Q    Okay.  And who took this photo?

25   A    I did.



1    Q    Okay.

2    MS. CABRERA:  I would offer GC-25.

3    JUDGE GREEN:  Any objection?

4    MR. POWELL:  No objection, Your Honor.

5    JUDGE GREEN:  GC-25 is admitted.

6    **(General Counsel Exhibit Number 25 Received into Evidence)**

7    Q    BY MS. CABRERA:  Now, Ms. Miller, if you look at this

8    poster, it appears to be an owner's manual.  What is that?

9    A    That used to be inaccessible except for the Amazon network

10    being onsite.  But I believe, and maybe accessible now to

11    employees.  It's policy that Amazon, basically.

12    Q    Okay.  And is it available in the A to Z App?

13    A    I believe so, now it is, yes.

14    MS. CABRERA:  Your Honor, I think I might be done.  Can I

15    just have five minutes to consult with my co-counsel?

16    JUDGE GREEN:  Yes.  Off the record.

17    (Off the record at 5:35 p.m.)

18    JUDGE GREEN:  Okay.  So why don't we go back on the

19    record.  Does the General Counsel have any more questions?

20    MS. CABRERA:  Yeah.  Just two quick ones.

21    JUDGE GREEN:  Okay.

22    <u>**RESUMED DIRECT EXAMINATION**</u>

23    Q    BY MS. CABRERA:  Ms. Miller, you testified to attending a

24    series of meetings where you received this notification saying

25    that it was mandatory training; do recall that testimony.



1    A    Yes.

2    Q    Okay.  And you -- when you attended the meetings, what was

3    the subject matter of those meetings?

4    A    It was to inform Amazon associates, I would say, I would

5    word it as, the dangers of voting for a union.  To ask

6    questions about voting in a union.  And to approach management

7    for more information, if we had any additional questions.  They

8    would answer questions at the meeting.

9    Q    Okay.  And I believe you testified that you attended five

10    or six of those meetings; is that correct?

11    A    I did.

12    Q    Okay.  And the subject matter you've just described, was

13    that the subject of each of those five or six meetings.

14    A    Yes, it was.

15    Q    And finally, Ms. Miller, you also testified that you  --

16    you, yourself knew that you didn't have to go to these

17    meetings.  Do you remember that testimony.

18    A    Yes, I do.

19    Q    Okay.  Was that knowledge based on something that an

20    Amazon supervisor had told you?

21    A    No, it wasn't.  I looked up my rights on the NLRB website.

22    I also attended an NLRB seminar that was explaining things

23    about worker's rights and unionization and all kinds of things.

24    So I was aware of what I could do and what I couldn't do.

25    Q    Thank you.



1      MS. CABRERA:  I have nothing further, Your Honor.

2      JUDGE GREEN:  Okay.  Is the Union going to have any

3  questions?

4      MS. SINGLA:  No questions from the Union, Your Honor.

5      JUDGE GREEN:  Okay.  And is the Respondent going to have

6  questions?  We're not hearing it?

7      MR. POWELL:  Your Honor can you hear me now?

8      JUDGE GREEN:  Yes.

9      MR. POWELL:  We were muted.  I apologize for that.  Yes.

10  We will have questions.  And we request the Jencks statements

11  with respect to this witness and all Jenks materials with

12  respect to this witness.

13      JUDGE GREEN:  Okay.  Listen, it's 5:45.  I'm thinking we

14  should take this up tomorrow.  So what I am inclined to do

15  is -- is have you produce the Jencks materials -- is this a

16  similar situation where we can have some affidavits produced

17  and some not or all affidavits are going to be produced?

18      MS. CABRERA:  She only gave two so there's -- both

19  affidavits will produced and one of them will be redacted but

20  they'll both be produced.

21      JUDGE GREEN:  Based on what?

22      MS. CABRERA:  The fact that there's testimony and it's

23  related to a different case, unrelated -- unrelated to her

24  direct testimony.

25      JUDGE GREEN:  Okay.  If I understood Mr. Enjamio, he would



1    like me to -- so why don't you produce the unredacted document

2    to me for in-camera review.  And then we'll pick it up tomorrow

3    morning.

4        MS. CABRERA:  Okay.  And --

5        MR. POWELL:  Just to be clear, Your Honor, do we get --

6        MR. ENJAMIO:  Your Honor, will we be getting the redacted

7    versions or will we wait until tomorrow until you review them?

8        JUDGE GREEN:  Well, yes.  So you -- you're going to get --

9    you're going to get the two affidavits.  One apparently is

10   redacted.  I'm going to get the unredacted version and I'm

11   going to determine whether the information that's been redacted

12   relates to the matters at issue.  And if it -- if it does

13   relate, then you'll get an unredacted copy tomorrow.

14       MR. POWELL:  Understood, Your Honor.

15       JUDGE GREEN:  Okay.  So let's go off the record.

16   **(Whereupon, the hearing in the above-entitled matter was**

17   **recessed at 5:54 p.m. until Tuesday, September 20, 2022 at**

18   **10:00 a.m.)**

19

20

21

22

23

24

25



1 <u>C E R T I F I C A T I O N</u>

2 This is to certify that the attached proceedings, via Zoom

3 videoconference, before the National Labor Relations Board

4 (NLRB), Region 29, Case Numbers 29-CA-280153, 29-CA-286577, 29-

5 CA-287614, 29-CA-290880, 29-CA-292392, 29-CA-295663, Amazon.com

6 Services LLC and Amazon Labor Union and Dana Joann Miller, held

7 at the National Labor Relations Board, Region 29, Two Metro

8 Tech Center North, 5th Floor, Brooklyn, New York 11201, on

9 September 19, 2022, at 10:25 a.m. was held according to the

10 record, and that this is the original, complete, and true and

11 accurate transcript that has been compared to the reporting or

12 recording, accomplished at the hearing, that the exhibit files

13 have been checked for completeness and no exhibits received in

14 evidence or in the rejected exhibit files are missing.

15

16

17

18 _____

19 BARRINGTON MOXIE

20 Official Reporter

21

22

23

24

25



OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services LLC,      Case No.  29-CA-280153

           Respondent,

and

Dana Joann Miller, an     Case Nos.  29-CA-286577
Individual,                      29-CA-287614
                                29-CA-290880
            Charging Party,    29-CA-292392
and                              29-CA-295663

Amazon Labor Union,

           Charging Party.

_____

_____

Place: Brooklyn, New York (Via Zoom Videoconference)

Dates: September 20, 2022

Pages: 150 through 285

Volume: 2

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**REGION 29**

| | |
|---|---|
| In the Matter of: | |
| AMAZON.COM SERVICES LLC, | Case No.   29-CA-280153 |
| Respondent, | |
| and | |
| and | |
| DANA JOANN MILLER, AN INDIVIDUAL, | Case Nos.  29-CA-286577<br>29-CA-287614<br>29-CA-290880 |
| Charging Party, | 29-CA-292392 |
| and | 29-CA-295663 |
| AMAZON LABOR UNION, | |
| Charging Party. | |

The above-entitled matter came on for hearing, via Zoom videoconference, pursuant to notice, before **BENJAMIN GREEN**, Administrative Law Judge, at the National Labor Relations Board, Region 29, 100 Myrtle Avenue, 5th Floor, Brooklyn, NY 11201, on **Tuesday, September 20, 2022, 10:04 a.m.**

1 <u>A P P E A R A N C E S</u>

2 **On behalf of the General Counsel:**

3     **EMILY CABRERA, ESQ.**
    **LYNDA TOOKER, ESQ.**
4     THE NATIONAL LABOR RELATIONS BOARD
    Two Metro Tech Center North
5     5th Floor
    Brooklyn, NY 11201
6     Tel. (718)765-6184

7 **On behalf of the Charging Party Union:**

8     **RETU R. SINGLA, ESQ.**
    JULIEN, MIRER & SINGLA PLLC
9     One Whitehall Street, 16th Floor
    New York, NY 10004
10     Tel. (212)231-2355

11     **SETH GOLDSTEIN, ESQ.**
    LAW OFFICE OF SETH GOLDSTEIN
12     217 Hadley Dr.
    Cherry Hill, NJ 08003
13

    **On Behalf of Dana Miller, an Individual:**
14
    **DANA MILLER, PRO SE**
15

    **On behalf of the Respondent:**
16
    **KURT A. POWELL, ESQ.**
17     **JUAN ENJAMIO, ESQ.**
    **ALYSON BROWN, ESQ.**
18     **TYLER S. LAUGHINGHOUSE, ESQ.**
    HUNTON ANDREWS KURTH, LLP
19     1111 Brickell Avenue
    Miami, FL 33131
20     Tel. (404)888-4015

21

22

23

24

25



1               <u>I N D E X</u>

2

3    | **WITNESS** | **DIRECT** | **CROSS** | **REDIRECT** | **RECROSS** | **VOIR DIRE** |
|---|---|---|---|---|---|
4    | Dana Miller | | 154 | 182 | | |
5    | Derrick Palmer | 185 | 221 | | | |
6    | Michelle Valentin Nieves | 234 | 249 | | | |
7    | Madeline Wesley | 253 | 277 | 283 | | |

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


www.escribers.net | 800-257-0885

1 <u>E X H I B I T S</u>

2

3 | **EXHIBIT** | **IDENTIFIED** | **IN EVIDENCE** |
|---|---|---|
| 4 **General Counsel:** | | |
| 5    GC–3 | 195 | 201 |
| 6    GC–4 | 207 | 212 |
| 7    GC–5 | 244 | 245 |
| 8    GC–6 | 262 | 263 |
| 9    GC–8(b) | 274 | 274 |
| 10    GC–34 and G–35 | 201 | 202 |
| 11    GC–36 | 212 | 214 |
| 12    GC–37 | 212 | 214 |
| 13    GC–38 | 212 | 214 |
| 14    GC–39 | 246 | 247 |
| 15    GC–40 | 246 | 247 |
| 16    GC–41 | 263 | 263 |
| 17    GC–42 | 263 | 264 |
| 18    GC–43 | 274 | 275 |
| 19    GC–44 | 274 | 275 |
| 20 | | |
| 21 **Respondent:** | | |
| 22    R–1 | 223 | 224 |

23

24

25



1      <u>**P R O C E E D I N G S**</u>

2      JUDGE GREEN:  So we're back on the record.  Day 2,

3      September 20th, 2022 in Amazon.com Services Inc.  So we are

4      going to resume the testimony of Ms. Miller.

5      Ms. Miller, recall that you're still under oath and the

6      Respondent's counsel is going to have some questions for you.

7      Just recall, don't talk to anybody.  Don't communicate with

8      anybody either outside this -- this virtual hearing, by phone

9      or otherwise.  And don't refer to any documents that aren't

10     shown to you on the screen, unless you're directed to do so,

11     okay?

12     THE WITNESS:  I recall.

13     JUDGE GREEN:  Okay.  Thank you, very much.  So whenever

14     you're ready.

15     Whereupon,

16                          <u>**DANA J. MILLER**</u>

17     having been previously sworn, was called as a witness herein

18     and was examined and testified, telephonically as follows:

19                        <u>**CROSS-EXAMINATION**</u>

20     Q     BY MR. ENJAMIO:  Good morning, Ms. Miller.

21     A     Morning.

22     Q     As Judge Green said, I will be asking you some questions.

23     My name is Juan Enjamio.  I'm one of the attorneys for the

24     Respondent, for Amazon, and if I -- for whatever reason of any

25     kind, the microphone goes off and, you know, the quality goes



1    down and you cannot hear me, just let me know and I'll be more

2    than happy to rephrase the question.  Is that clear to you?

3    A    Okay.

4    Q    All right.  If you don't understand any of my questions,

5    let me know, okay?

6    A    Okay.

7    Q    Ms. Miller, you testified yesterday about a post referring

8    to Juneteenth that you posted on the Voice of the Associate,

9    the VOA, board on July 9th, 2021.  Recall that?

10   A    I do.

11   Q    Okay.  And that was the post that was removed by the

12   company, correct?

13   A    That's right.

14   Q    Now, in that post, Ms. Miller, you explicitly asked

15   associates to sign a petition, correct?

16   A    I invited them to.

17   Q    Yes.  And you -- you actually said that.  You said, sign a

18   petition, correct?

19   A    Yes.

20   Q    Okay.  And you met -- a few days later -- two or three

21   days later -- you met with Mike Tanelli from human resources,

22   correct?

23   A    That's right.

24   Q    Mr. Tanelli told you that the post that you had, the July

25   9th post, either had been removed or would be removed, correct?



1    A    He said it would be.

2    Q    That it would be removed, correct?

3    A    That's right.

4    Q    And he told you it would be removed because that post

5    violated the solicitation policy of the company, correct?

6    A    That's right.

7    Q    Okay.  That was the reason he gave you for the post being

8    removed, correct?

9    A    Yes, it is.

10   Q    Okay.  There was no other reason that he gave you?

11   A    No other reason.  Yeah, no.

12   Q    Now, Ms. Miller, you know that Amazon has a solicitation

13   policy, correct?

14   A    Yes.

15   Q    Okay.  And you have actually seen that solicitation

16   policy, correct?

17   A    Yes, I have.

18   Q    Okay.  And in fact, that policy was available to

19   associates through their A to Z app, correct?

20   A    Yes.

21   Q    Okay.  So at any time, you had access to that policy by

22   going on your A to Z app, correct?

23   A    No.

24   Q    Why not?

25   A    Well, at the time, you had to be onsite to go through that



1    kind of policy.  Saying, like, you had to look at that on their

2    site through their computers.

3    Q    Okay.  But you had -- you could do that?  You worked

4    onsite, correct?

5    A    Not every time, not any time, so at any point in time I

6    could not access it.

7    Q    Okay.  But when you were working, when you were onsite,

8    you could review the solicitation policy, right?

9    A    I could.  Yes.

10   Q    Okay.  And in fact, you had opportunities to review that

11   policy and you had seen it?

12   A    Yes.

13   Q    Okay.  And you know that one of the things, actions, that

14   is explicitly prohibited by that policy is asking other

15   associates to sign a petition, correct?

16   A    That supersedes the laws of the country?  Yes.

17   Q    Okay.  In fact, let me -- let me show you what has been

18   marked as GC -- the Government's Exhibit Number 29.  Can you

19   see, Ms. Miller, that this is called the solicitation policy

20   FAQ -- frequently asked questions, correct?

21   A    I can.

22        MS. CABRERA:  Your Honor, I --

23        MR. ENJAMIO:  This is the pol --

24        MS. CABRERA:  I'm sorry to -- I'm sorry to interrupt.  I

25   just want to make sure we're clear that the FAQs are separate



1    on -- are a separate document from the solicitation policy.  I

2    want to make sure that's -- that's clear.  This is not attached

3    to the actual solicitation policy.

4        JUDGE GREEN:  Listen, we can go into that.  If you think

5    it's unclear, you can go into that on redirect.

6    Q    BY MR. ENJAMIO:  Going back, Ms. Miller, have you ever

7    seen the solicitation policy FAQ --

8    A    No, I haven't.

9    Q    -- that's Exhibit 29?  All right.  Let me just walk you

10   down to -- if we could scroll down to see if this refreshes

11   your recollection.  You can go down to Number 3.  It says,

12   "What are the exceptions?"  That is, the exception -- oh, I

13   mean, I'm sorry -- if you go back to Number 1 -- I'm sorry --

14   it talks about one of the examples of actions that are

15   prohibited, correct?

16       MS. CABRERA:  Your Honor, I'm going to object --

17       MR. ENJAMIO:  I mean --

18       MS. CABRERA:  -- based on the fact that the document

19   speaks for itself and this witness has already testified that

20   she's never seen these FAQs.

21       JUDGE GREEN:  Well, I mean, it sounded like the question

22   was asked to see if Ms. Miller recalls having seen it.  I

23   mean -- right.  I don't want to just -- I don't want to just

24   have her read the -- read the documents, but if you -- if you

25   want to try and refresh her recollection that maybe she saw it.



1      MR. ENJAMIO:  Okay.  In fact, it's -- it's a government

2    exhibit, Your Honor, and I will ask just a couple of questions

3    from it.

4    Q    BY MR. ENJAMIO:  I want to direct your attention to the

5    third bullet point.  And if you see the third bullet point and

6    if you see there, it says that one of the actions that is

7    prohibited is asking for signatures on petitions, correct?

8    A    Yes.  It's unlawful, but yes.

9    Q    Okay.  And in fact, that's your recollection of what the

10   solicitation policy says, correct?

11   A    I did not see this at the time.

12   Q    Okay.

13        THE WITNESS:  Your Honor, I'm sorry, can we -- can we

14   scroll up a little bit because I can't -- it's just -- I

15   can't --

16        MR. ENJAMIO:  Of course.

17        JUDGE GREEN:  Yeah.  I didn't actually see that either.

18        MS. CABRERA:  Yeah.

19        JUDGE GREEN:  Which bullet point are you referring to?

20        MR. ENJAMIO:  The first bullet point under question number

21   1, Your Honor.

22        JUDGE GREEN:  Oh, okay.  Okay.

23        MR. ENJAMIO:  Third bullet point -- I'm sorry -- under

24   question number 1.

25        JUDGE GREEN:  Okay.  Gotcha.  Thank you.



1      MR. ENJAMIO:  Yeah.  The one that is highlighted.

2    Q    BY MR. ENJAMIO:  Ms. Miller, you know that this is the

3    type of -- this is explicitly what is prohibited under the

4    solicitation policy, correct?  Signatures on -- asking other

5    associates to sign petitions?

6    A    This is a new document that wasn't available at the time.

7    The policy was actually changed after I put in my affidavit.

8    Q    Okay.  But why don't we -- let me show you the policy for

9    solicitation -- the solicitation policy.

10   A    Of which date?

11   Q    The one that was produced to the government that was in

12   effect at that time.

13       MS. CABRERA:  I'm sorry, Juan, are you going to mark that?

14   Because we didn't put this in yet.

15       MR. ENJAMIO:  Well, I'm going to ask the qui -- the

16   witness questions.

17   Q    BY MR. ENJAMIO:  First, have you ever seen this policy

18   before?  The Amazon solicitation policy?

19   A    No, I haven't seen this page.

20   Q    Okay.  So you have never seen the solicitation policy that

21   prohibits associates from asking other associates to sign

22   petitions?

23   A    I have not seen this document before.

24   Q    I'm not asking you about this document.  I am asking you,

25   have you seen a solicitation policy that forbids associates



1    from asking other associates to sign a petition?

2    A    Not in those words.

3    Q    Okay.  What words do you recall?

4    A    No soliciting.

5    Q    And do you recall any of the examples that are in the

6    solicitation policy about what constitutes soliciting?

7    A    Examples on this page?  Besides petitions?

8    Q    Examples that -- I'm sorry, I didn't mean to interrupt

9    you.

10   A    Examples on this page?  No.

11   Q    Okay.  So let me ask you again, do you recall -- you told

12   us that you had seen the solicitation policy, correct?

13   A    Correct.

14   Q    And do you recall, in the solicitation policy of the

15   company, an explicit prohibition on associates asking other

16   associates to sign a petition?

17        MS. CABRERA:  Objection.  Asked and answered.

18        JUDGE GREEN:  Right.  I -- I -- you know, I'm going to

19   allow that.  I think we've had it multiple times, but I

20   think -- I'm still not 100 percent sure what the answer is.

21        What do you -- what do you recall about the no

22   solicitation policy?  At the time that you posted this post

23   regarding Juneteenth, what was your recollection at the time as

24   to what the no solicitation policy was?

25        THE WITNESS:  At the time, I recall it -- about two



1    sentences in the company policy form that mentioned no

2    soliciting with commercial materials on the property and no

3    soliciting with petitions.

4        JUDGE GREEN:  Okay.

5    Q    BY MR. ENJAMIO:  Ms. Miller, I just want to be clear on

6    one thing:  Do you -- are you denying that the company's

7    solicitation policy prohibits associates from asking other

8    associates to sign a petition?

9    A    Could you rephrase that?

10   Q    Absolutely.  Yes.  Is your testimony -- I just want to be

11   clear -- is your testimony that the solicitation policy says

12   nothing about associates, you know, asking other associates to

13   sign a petition?  Or is just that you don't recall that?

14       MS. CABRERA:  I'm going to raise an objection, Your Honor.

15   I just think the question is vague.

16       JUDGE GREEN:  Well, I mean, if you understand the

17   question, you can answer it.  But if you don't understand it,

18   then just say you don't really understand it.

19       THE WITNESS:  I don't really understand it.

20   Q    BY MR. ENJAMIO:  Okay.  You know what, let me ask you a

21   different question.  Let me just move on to a different subject

22   matter, okay?

23   A    Okay.

24   Q    Ms. Miller, you have posted many times on the VOA board,

25   correct?



1    A    Yes.

2    Q    In fact, it's fair to say you posted dozens of times.

3    A    Yes.

4    Q    And many of those posts were very critical of Amazon.

5    A    Not many.

6    Q    Some were very critical of Amazon.

7    A    In a way.

8    Q    Okay.  And some were pro-ALU, pro the Union, correct?

9    A    Some.

10   Q    Yes.  And you were advocating for the Union, asking

11   associates to vote for the Union in some of your posts,

12   correct?

13   A    No.

14   Q    And you were saying positive and very positive things

15   about the ALU in some of your posts, correct?

16   A    At one point.

17   Q    Yes.  And those would have been back in 2021, correct?

18   A    Yes.

19   Q    In fact, in the May, June, July time frame of 2021, you

20   were posting different posts saying positive things about the

21   ALU, correct?

22   A    Yes.

23   Q    Thank you.  In fact, do you recall posts such as, you

24   know, "HR at JFK8 silences voices but not the ALU."  Do you

25   recall posting something to that effect?



1    A    I did.

2    Q    Do you recall posting that the ALU brings fairness and

3    equality to the workplace.  Do you recall posting words to that

4    effect?

5    A    I do not.

6    Q    Okay.  That's fine.  And do you recall all the posts that

7    you made that, again, were pro-ALU, correct?

8    A    Some.

9    Q    And none of those posts, except the one asking associates

10   to sign a petition, were ever removed, correct?

11   A    Not that I can recall.

12   Q    Okay.  In fact, the only posts you ever had removed were

13   the posts, the identical posts that you posted on different

14   occasions, asking associates to sign a petition.  Isn't that

15   correct?

16   A    No.

17   Q    What other posts did you have removed?

18   A    I remember posts that went unanswered and that in a form

19   is a removal.

20   Q    Went unanswered?  But was it available to see on the

21   board?

22   A    Yes, it was.

23   Q    Good.  It was not hidden in any way?

24   A    As it goes unanswered, HR is obligated to respond to it

25   within 48 hours; so yes, it was hidden.



1    Q    Okay.  I get it.  If you were another associate on the

2    floor, you could see that post, correct?

3    A    Yes.

4    Q    Okay.  So the only post that was removed -- that could not

5    be seen by other associates was the post that asked associates

6    to sign a petition, correct?

7    A    Yes.

8    Q    And you were never disciplined for posting any other post,

9    or any post about the ALU, or any post critical of the company,

10   correct?

11   A    Not ever again after that one.

12   Q    After that July 9th post, correct?  That was the only --

13        JUDGE GREEN:  I'm sorry -- I'm sorry.  You have to answer

14   verbally so that we get it on the recording.  So rather than

15   nodding, just say yes.

16        MR. ENJAMIO:  Any time I interrupt you, Ms. Miller, just

17   let me know and I'll stop.

18        THE WITNESS:  Okay.

19        MR. ENJAMIO:  Okay.  All right.  I want to make sure you

20   are answering the questions -- that you have a chance to answer

21   the questions, okay?

22        THE WITNESS:  Okay.

23   Q    BY MR. ENJAMIO:  Now, you know, Ms. Miller, that there are

24   many other associates that posted on the VOA boards about the

25   ALU, correct?



1   A    Yes.

2   Q    You know that there are many other associates that ask

3   people on the ALU board -- that ask other associates to vote

4   for the ALU?

5   A    Yes.

6   Q    None of those posts were removed, correct?

7   A    To vote for the ALU?  Correct.  Yes.

8   Q    Yes.  "No", meaning they were not removed?

9   A    I recall one in particular being removed at the time.

10  Q    Which one?

11  A    It was a screenshot of a VOA board post that I noticed.

12  One person from the ALU was offering their services in case any

13  employees had any questions and they said they were available

14  and they gave their department, I believe.  And that post was

15  removed within a couple hours.  No one had a chance to see it.

16  Q    Do you recall who posted that?

17  A    I don't recall their login, but I do have it in my

18  records.

19  Q    Okay.  And do you recall the name of the associate?

20  A    No.  But that's in my records, too.

21  Q    I'm sorry, I didn't understand the last -- I could not

22  hear the last answer.

23  A    I said, no, but that's in my records, too.

24  Q    Okay.  And are those records you have with you today?

25  Like, on your phone or something like that?



1    A    Yes, but I am not allowed to look at my phone.

2    Q    Right.

3         JUDGE GREEN:  So listen, why don't we -- why don't we

4    continue on?

5         MR. ENJAMIO:  I'll move on, Your Honor.  I'll move on.

6    Q    BY MR. ENJAMIO:  Look, Ms. Miller, just going back to the

7    last point, there are a lot of ALU posts where associates ask

8    the -- other associates to vote for the ALU that remain up and

9    remain visible to all associates, correct?

10   A    Yes.

11   Q    And there are many posts that were very critical of Amazon

12   during all of that time -- let's say in May, June, July, August

13   of 2021, correct?

14   A    Some.  Yes.

15   Q    Okay.  And those posts were not removed, correct?

16   A    Correct.  Yes.

17   Q    In fact, other than that other post that you couldn't

18   identify the individual who posted or the date, the only post

19   that you recall being removed that dealt at all with the ALU or

20   anything like that or -- was the post where you signed -- where

21   you asked other associates to sign a petition?

22   A    I don't have full knowledge of the VOA board and I don't

23   monitor it 24/7, so the only post that I am aware of being

24   removed was my own.

25   Q    On VOA, there are other posts, like, other individuals,



1    including yourself, actually, on Juneteenth, correct?

2    A    Yes.

3    Q    And those posts were not hidden.  Those posts were not

4    removed, correct?

5    A    That's correct.

6    Q    Okay.  In fact, you testified yesterday that you and

7    Connor Spence actually went to the general manager's office and

8    you sent in a petition asking, you know, to make Juneteenth a

9    holiday, correct?  Remember that?

10   A    Yes.

11   Q    No one was disciplined for that?

12   A    No, we weren't.

13   Q    Now, you testified yesterday, Ms. Miller, about a time

14   that you tried to post and your post was revoked -- or not

15   revoked, I'm sorry -- you saw a sign or a message that said you

16   did not have the authority to post or something to that effect,

17   correct?

18   A    That's correct.  No permissions.

19   Q    No permission, that's right.  You recall that, right?  You

20   recall your -- your testimony about that?

21   A    Yes.

22   Q    Do you recall the date when you tried to post and you did

23   not -- and you were not allowed to?

24        MS. CABRERA:  Objection.  Just as to vagueness.

25        Are you talking about the day that she received that



1    notification that's contained in the General Counsel's exhibit?

2        MR. ENJAMIO:  Well, actually, why don't we pull the

3    General Counsel's exhibit.

4        MS. CABRERA:  Right.  It's in SharePoint.

5        UNIDENTIFIED SPEAKER:  Yeah.

6    Q    BY MR. ENJAMIO:  Ms. Miller, you recall this, correct?

7    A    I do.

8    Q    Okay.  Do you see that, at the top of the -- top of the

9    screenshot, it's 5:49 p.m., correct?

10   A    That's right.

11   Q    Okay.  Is this the time when you attempted to post, but

12   were not able to?

13   A    Yes.

14   Q    Okay.  And you took the screenshot immediately when you

15   made the attempt to post?

16   A    I did.

17   Q    Okay.  And now, do you recall the date when this happened?

18   A    I don't recall the exact date.

19   Q    Let me -- why don't I -- let me show you an affidavit that

20   you provided in this matter, just to see if it refreshes your

21   recollection about the date.

22   A    About that?  Uh-huh.

23   Q    Okay.  If you please, scroll down through the document.

24   And I'll ask you if you've seen this document before?

25   A    Yes.  I have.



1    Q    Okay.  Is this an affidavit that you signed?

2    A    It is.

3    Q    Okay.  And is that your signature -- you signed this

4    affidavit on or about, I believe, it was September of 2021,

5    correct?  Actually, it was August of 2021, correct?

6    A    Yes.  It is.

7    Q    Okay.  Now, that's when all of these facts that you've

8    been testifying about were a lot more fresh in your mind,

9    correct?

10   A    Correct.

11   Q    Right.  So let me just direct your attention to paragraph

12   6.  And see if it refreshes your recollection about the date

13   when these events happened.  And if you see, you had been

14   referring to -- and scroll up to paragraph 5 -- but you had

15   been referring to the VOA post that was removed.  Do you recall

16   that?  Do you see that?

17   A    I see that.

18   Q    Okay.  And then you say and I quote, "A few days later, on

19   July 12th, 2021, I was chimed, notified via text or instant

20   message, that Mike Tanelli, an HR business partner, wanted to

21   see me."  Do you see that?

22   A    I see that.

23   Q    Okay.  And you then go on to say that you went to the

24   general manager's office, correct?

25   A    That's right.  Correct.



1    Q    Okay.  So that -- so does that refresh your recollection

2    that you met with Mr. Tanelli on the 12th?

3    A    Yes, it does.  Thank you.

4    Q    Okay.  Now, you go on to say -- it goes on to paragraph

5    7 -- that on the 12th -- that is, on that same date, you

6    posted -- I believe it says here -- you posted it again,

7    correct?  You see that?

8    A    No.  I tried to post again.

9    Q    Okay.  And in fact, you saw that it was that date, on the

10   12th, when you tried to post and you saw the message that you

11   had -- that you just saw that you did not have the authority to

12   post, correct?

13   A    After I met with Mike Tanelli, I saw my post had been

14   taken down.  I put it up again and then it had been taken down

15   again after my shift.  That was at 5:49.

16   Q    Okay.  So it's on that date -- I just want to get the

17   date -- on December -- on July 12th, that you post, but were

18   not able to, correct?

19   A    That's right.

20   Q    Okay.  Do you recall making other posts -- posting other

21   posts to the VOA board on that day, on July 12th?

22   A    No.  I could not.

23   Q    Okay.  You don't have any recollection of that?

24   A    I recall that I did not have the ability to make any

25   posts.



1    Q    Okay.  Now, you then go on to say that the next day, July

2    13th, you checked to see if your permission was still revoked

3    and you were able to post, correct?

4    A    That is correct.

5    Q    Okay.  So I just want to make sure that we have the

6    chronology correct and this does refresh your recollection.  On

7    the 12th, you had the meeting with Mike Tanelli that you

8    testified about?

9    A    That is right.

10   Q    And it's that date -- later that date, I believe you

11   testified it was about 5:49, correct?  You tried to post and

12   you saw the message that you did not have permission, correct?

13   A    Yes.

14   Q    And then the very next day you tried to post and you were,

15   in fact, able to post again?

16   A    That's right.

17   Q    And you were able to post from that day on every other

18   time you attempted to post, correct?

19   A    With the exception of bad WI-FI, yes.

20   Q    Sure.  Now, do you recall what your shift was on that day?

21   A    I believe on that day --

22   Q    And I'm referring to the 12th, to be clear.

23   A    I don't recall what my shift was.

24   Q    Well, did you work in the morning?  Did you work in the

25   afternoon?



1    A    Well, normally, if I'm doing a sale shift (phonetic), it's

2    from 6:15 a.m. to 4:45 p.m.

3    Q    I'm sorry?  To what time?

4    A    4:45 p.m.

5    Q    Okay.  So you attempted to post and it was more than an

6    hour after your shift would have ended?

7    A    If I was working Amnesty that day, I would be in 6:15 a.m.

8    to 5:30/5:45 p.m.

9    Q    Okay.  Okay.  5:45.  Okay.  And you attempted to post

10   after your shift or while you were still working?

11   A    After my shift.

12   Q    Sure.  Did you sign out?  Is that how you end your shift?

13   A    You can sign out.

14   Q    Okay.  Is that what you would typically do?

15   A    Typically, yes.

16   Q    Sure.  Do you recall if on that date, you had already

17   signed out before you went to make that post?

18   A    I don't recall that.

19   Q    Okay.  Did you sometimes post by the way of the VOA board

20   during your work hours?

21   A    On my break, yes.

22   Q    Okay.  And you said -- I believe you testified

23   yesterday -- correct, me if I am wrong -- that you were able to

24   post through your A to Z app, correct?

25   A    Yes.



1    Q    And that was true back then -- back then, meaning July of

2    2021?

3    A    Yes.

4    Q    Okay.  And an associate can post through the A to Z app on

5    the VOA board while they're at their workstations while they're

6    working?

7    A    Yes.  They can.

8    Q    Okay.  By the way, did you attempt on the 12th -- did you

9    attempt to post at all after 5:49?

10   A    Yes.

11   Q    On that date, how many times did you attempt to post?

12   A    Maybe one other time.  Maybe twice.

13   Q    You said -- I'm sorry -- was that maybe one time or two

14   times?

15   A    Once or twice after I got home.

16   Q    After you got home?

17   A    Yes.

18   Q    Okay.  And did you talk to -- did you talk to anybody from

19   IT or from HR about why you were not able to post that night?

20   A    I did not have to.

21   Q    Okay.  Did you talk to anyone -- your manager, anyone in

22   the company asking:  why, what happened, why didn't you have

23   permission to post?

24   A    No.  The exhibit told me that I didn't have permission to

25   post.



1    Q    And again, just to be clear, the very next day you tried

2    to post and you were able to post?

3    A    Yes.

4    Q    Do you recall the first time on the 13th that you tried to

5    post?  At what time?

6    A    I don't recall the time.  I think it was earlier in the

7    day.

8    Q    Earlier in the day?

9    A    I believe so.

10   Q    Now, Ms. Miller, after that day, after the fo -- after the

11   12th, after your meeting with Mike Tanelli, you knew that that

12   post, the post asking associates to sign the petition had been

13   removed, correct?

14   A    Yes.

15   Q    And in fact, as you -- as you testified yesterday, Mike

16   Tanelli told you that if you attempted to post again, there

17   would be further action, correct?

18   A    Yes.

19   Q    That's when he told you there would be further actions,

20   when you told him that you would attempt to put the post --

21   that same post again, correct?

22   A    Yes.

23   Q    Now, you did, in fact, post the same post on different

24   occasions, right?

25   A    I did.



1    Q    And each one of those points -- the posts was removed,

2    correct?

3    A    No.

4    Q    Was it -- did it stay up sometimes?  That it's not

5    removed?

6    A    After I had my permissions restored, I put the post up

7    again.

8    Q    Yes, and was that post removed?

9    A    No.

10   Q    Do you -- I -- is your testimony that your post asking

11   other associates to sign a petition for Juneteenth, that that

12   post remained up on the -- available to other associates to

13   see?

14   A    After I was disciplined, and I put it up again, yes.

15   Q    And what was this discipline?  When you say "disciplined",

16   what discipline are you referring to?

17   A    Amazon does not revoke VOA board permissions.

18   Q    Okay.  Is that what you're referring to, the revocation

19   of -- of the -- the fact that -- or the tes -- or the -- or the

20   message that you received, that you didn't have permission on

21   that date?  Is that the discipline you referred to?

22   A    Yes.

23   Q    Is there any other discipline that you were ever issued

24   with respect to posting on the VOA board?

25   A    No.



1    Q    And Mike Tanelli told you explicitly that you should not

2    post that same post, that specific post, again, right?

3    A    Yes.

4    Q    Because it violated the solicitation policy, correct?

5    A    Yes.

6    Q    And you, in fact, reposted that post, that identical post,

7    on different occasions, right?

8    A    No.

9         MS. CABRERA:  Objection, Your Honor.  Just asked and

10   answered repeatedly.

11        MR. ENJAMIO:  I'm -- I'm leading --

12        JUDGE GREEN:  Yeah.

13        MR. ENJAMIO:  -- to something, Your Honor, and I'll be --

14   I'll be -- I'm actually going to the next question.

15        JUDGE GREEN:  Okay.

16   Q    BY MR. ENJAMIO:  Were you ever disciplined in any way for

17   posting that same post again?

18   A    I never posted that same post again.

19   Q    Okay.  Is it your testimony that you never posted the

20   identical post saying that -- asking associates to sign a

21   petition making Juneteenth a holiday, that that post, the post

22   that you posted on 7/9, on July 9th, is it your testimony that

23   that identical post, you never reposted again?

24   A    Yes.

25   Q    Okay.  Were you ever disciplined for posting anything



1    about anything about Juneteenth, about asking us that --

2    anything again after you posted?

3    A    No.

4    Q    After July 9th?  You weren't?

5    A    I was not dis (audio interference).

6    Q    You were not disciplined, right?

7    A    Not disciplined for altering that post.

8    Q    By the way, did you -- when you say you didn't post the

9    same identical post, did you reword it maybe with one or two

10   words?  Is that what you're saying?

11   A    Yes.

12   Q    Okay.  And what words did you change?

13   A    I believe the count of how many signatures.

14   Q    Okay.  But you did repost a post that was almost identical

15   to the post that you had posted on July 9th, correct?

16   A    Yes.

17   Q    And it was a post that kept asking associates to sign a

18   petition to make Juneteenth a holiday?

19   A    I invited the associates to.

20   Q    Exactly.  To sign a petition, right?

21   A    Yes.

22   Q    Okay.  And you were never disciplined for posting that

23   post on different occasions?

24   A    The altered post remained up.

25   Q    Ms. Miller, yesterday, you testified that you had gone to



1     these meetings or these trainings, remember that?

2     A    Yes.

3     Q    Okay.  And in the context of that, you mentioned that the

4     company said, if you have any questions to go ask the company,

5     or words to that effect; do you recall that?

6     A    Yes.

7     Q    Okay.  Now, during these meetings that you participated

8     in, you also heard the facilitator, the presenter, say that if

9     you had any questions, if you had any issues, to go do your own

10    research, right?  Or words to that effect; do you recall that?

11    A    Yes.

12    Q    And in fact, do you recall the facilitators and the

13    presenters asking you explicitly to go and ask the Union if you

14    had questions?

15    A    Yes.

16         MR. ENJAMIO:  Okay.  Your Honor, can I take two minutes?

17         JUDGE GREEN:  Sure.  Off the record.

18    (Off the record at 10:40 a.m.)

19         JUDGE GREEN:  Okay.  So I just have a couple of questions

20    for you, Ms. -- Ms. Miller.  So ultimately, am I correct that

21    on post, one of your -- at least one of your posts regarding

22    Juneteenth remained up on the VOA board; am -- am I right about

23    that?

24         THE WITNESS:  Yes.

25         JUDGE GREEN:  Okay.  And just for the parties, this is --



1      this is -- I'm going to have these posts, right?  Or these

2      posts might already be in evidence?  Okay.

3              MR. ENJAMIO:  Your Honor --

4              MS. CABRERA:  Well --

5              MR. ENJAMIO:  -- I don't -- yes, actually.  They would be,

6      because the -- the spreadsheet with all the posts from that

7      time are --

8              JUDGE GREEN:  Right.

9              MR. ENJAMIO:  -- already in evidence, yeah.

10             JUDGE GREEN:  Yeah.  That's what I thought.  I -- I

11     just --

12             MR. ENJAMIO:  Yeah.

13             JUDGE GREEN:  -- that's what I --

14             MR. ENJAMIO:  Yeah.  Yes.  Yes, Your Honor.

15             JUDGE GREEN:  All right.

16             MR. ENJAMIO:  You would have access to all the posts

17     from -- for anybody from May 1st to July 15th of that year --

18             JUDGE GREEN:  Okay.

19             MR. ENJAMIO:  -- of 2021.

20             JUDGE GREEN:  Great.  So let me just share my screen real

21     quick.  I -- I want to show you General Counsel's Exhibit 15.

22     It's the -- it's the message that you've got on (audio

23     interference).  Are you seeing that?  It's the message that

24     says, "hello.  It is time for a mandatory meeting"?

25             THE WITNESS:  Yes.



1       JUDGE GREEN:  So can you just tell me, after you rece --

2    I -- after you received this message for the first time, what

3    did you do?

4       THE WITNESS:  I followed the directions.

5       JUDGE GREEN:  So and what was that?

6       THE WITNESS:  I reported to a certain meeting area, and --

7    and there, we were are all led into the Career Choice room,

8    where we attended this mandatory training session about the

9    Union, and about Amazon benefits and what Amazon offers to

10   counter Union claims.

11       JUDGE GREEN:  Okay.  And do you know about how long that

12   meeting took?

13       THE WITNESS:  There was a Q and A session.  Sometimes the

14   meeting took 20 minutes, sometimes it took 30, and sometimes it

15   took 45.

16       JUDGE GREEN:  Okay.  And do you recall -- do you recall

17   there being any discussion in -- in really any of these

18   meetings following your receipt of that notice, which is

19   General Counsel's 15, do you recall any discussion of an

20   election?

21       THE WITNESS:  Yes.

22       JUDGE GREEN:  Was there any discussion of how the

23   presenter would like employees to vote?

24       THE WITNESS:  Yes.

25       JUDGE GREEN:  Okay.  And -- and what -- how did they want



1   the employees to vote?

2        THE WITNESS:  They -- whenever they presented something

3   that way, they would say, of course, we would want you to have

4   an immediate discussion with your managers, and have a one-on-

5   one communication with your managers.  We don't want a third-

6   party intermediary going in between it.  We would ask that you

7   would vote no, but do your research.  You know what's best for

8   yourself and for your family.  And we ask you to even go on the

9   NLRB website and ask questions from the Union committee, and --

10  so you can have a full understanding of what (audio

11  interference) work with.

12       JUDGE GREEN:  Okay.  Thank you very much.

13       So does the General Counsel have any redirect?

14       MS. CABRERA:  I have a couple of questions, Your Honor.

15  Can I just take five minutes to be able to --

16       JUDGE GREEN:  Yes.

17       MS. CABRERA:  -- consult with my co-counsel?

18       JUDGE GREEN:  Off the record.

19  (Off the record at 10:46 a.m.)

20       JUDGE GREEN:  Okay.  So any time you're ready, Ms.

21  Cabrera.

22       MS. CABRERA:  Yes.

23                     **REDIRECT EXAMINATION**

24  Q    BY MS. CABRERA:  Ms. Miller -- I don't see her here.

25       MS. CABRERA:  Is Ms. Miller still there?



          1     A     Yes.

          2           JUDGE GREEN:  Yes.

          3           MR. ENJAMIO:  Yes.

          4           MS. CABRERA:  I don't see her for some rea --

          5           JUDGE GREEN:  You have to --

          6           MS. CABRERA:  Oh, there you are.  Thank you.  Disappeared

          7     for a minute.

          8     Q     BY MS. CABRERA:  So just a quick question.  Do you know,

          9     are employees able to post on a VOA board after their shifts

         10     are over?

         11     A     Yes, they are.

         12     Q     Are -- are employees able to post from home

         13     (indiscernible, simultaneous speech) --

         14     A     Yes, they are.

         15     Q     Are -- are employees able to post before their shifts

         16     begin?

         17     A     Yes, they are.

         18           MS. CABRERA:  I have nothing further, Your Honor.

         19           JUDGE GREEN:  Okay.  Does -- is there any recross?

         20           MR. ENJAMIO:  No.  No, Your Honor.

         21           JUDGE GREEN:  Okay.  Thank you very much, Ms. Miller.

         22     You're free to go.

         23           THE WITNESS:  Do I have to go?

         24           JUDGE GREEN:  Well, I mean, that's really up to the Gen --

         25     is there --



1    MS. CABRERA:  So she's a party.

2    JUDGE GREEN:  -- chance she might be called on rebut --

3    oh, yeah.  That's right.  You're --

4    MS. CABRERA:  She's a party.

5    JUDGE GREEN:  -- a third party.  So yes, you can -- I keep

6    forgetting that.  You -- yes, you can stay.  Yes, you can stay.

7    So why don't we go off the record for just a minute?

8    (Off the record at 10:54 a.m.)

9    JUDGE GREEN:  Okay.  So would the General Counsel like to

10   call a witness?

11   MS. TOOKER:  Yes, Your Honor.  We'd like to call Derrick

12   Palmer.

13   JUDGE GREEN:  Okay.  Hello, Mr. Palmer.

14   MR. PALMER:  How you doing?

15   JUDGE GREEN:  So could you raise your right hand?

16   Whereupon,

17                        **DERRICK PALMER**

18   having been duly sworn, was called as a witness herein and was

19   examined and testified, telephonically as follows:

20   JUDGE GREEN:  Okay.  And are you alone in the room?

21   THE WITNESS:  Yes, I am.

22   JUDGE GREEN:  Okay.  So just please don't talk to anybody

23   other than the people who are asking questions in this virtual

24   hearing.  Either, you know, somebody who comes into the room or

25   by -- by I phone.  Also, please don't refer to any materials



1    other than what's shown to you by somebody on the screen.

2    Okay.

3        And could you state and spell your name for the record?

4        THE WITNESS:  I'm Derrick Palmer.  D-E-R-R-I-C-K, Palmer,

5    P-A-L-M-E-R.

6        JUDGE GREEN:  Okay.  Thank you very much.

7        So whenever you're ready, Ms. Tooker.

8                    **DIRECT EXAMINATION**

9    Q    BY MS. TOOKER:  Okay.  Mr. Palmer, are you currently

10   employed by Amazon.com Services, LLC?

11   A    Yes.

12   Q    Okay.  And when did you start working for Amazon?

13   A    On July 24th of 2015.

14   Q    And what facility do you currently work in?

15   A    JFK8, Staten Island, New York.

16   Q    And have you always worked for Amazon at the JFK8

17   facility?

18   A    No.  When I first started in July of 2015, I worked at

19   EWR4, in Robbinsville, New Jersey, and then transferred to JFK8

20   in October of 2018.

21   Q    And do you know when the JFK8 facility opened?

22   A    I believe September of 2018.

23   Q    What's your current position?

24   A    I'm the pack department, so I'm a packer.

25   Q    And what are your job responsibilities as a packer?



1    A    Packaging the items that come off the conveyor belt, so

2    that they're -- you know, they're packaged right and shipped

3    correctly to the customer.

4    Q    Okay.  And what is your current rate of pay?

5    A    $21.50 an hour.

6    Q    And since you've worked for Amazon, have you ever earned

7    minimum wage?

8    A    No, I have not.

9    Q    Okay.  Did you earn more or less than minimum wage when

10   you worked for Amazon?

11   A    More than minimum wage.

12   Q    Okay.  And do you know whether or not Amazon gives

13   automatic periodic raises to new employees?

14   A    I believe it's $0.25 for six months.  And then after

15   the -- a year, it's $0.50.

16   Q    Okay.  And is there a -- a time that these automatic

17   raises stopped?

18   A    Yes.  After your three mon -- your first three months

19   of -- I'm sorry.  Not three months, three years of employment

20   in Amazon.

21   Q    Okay.  So for the first three years, employees generally

22   receive automatic raises based on their time of employment with

23   Amazon?

24   A    Yes.

25   Q    Okay.  Are you familiar with the Amazon Labor Union?



1    A    Yes.  I'm the co-founder of Amazon Labor Union.

2    Q    Okay.  And do you currently hold a position with the

3    Amazon Labor Union?

4    A    Yes.  I'm interim vice president in Amazon Labor Union.

5    Q    And what's your pur -- your understanding of the purpose

6    of the Amazon Labor Union?

7    A    Oh, so that, you know, we can advocate for workers to, you

8    know, collective -- collectively bargain for them to get higher

9    wages and benefits, things of that nature.

10   Q    Okay.  And did you participate at all in the Amazon Labor

11   Union's organizing drive at the Amazon Staten Island facility?

12   A    Yes, I did.  Inside the facility, talking to workers on my

13   break times, getting authorization cards signed, you know,

14   in -- in break room areas, and also, on my days off and after

15   my shifts.

16   Q    And do you know when the ALU's organizing efforts began?

17   A    It began April 20th of 2021.

18   Q    Okay.  And how did they begin?

19   A    We -- we had a -- a table in a tent, and we set up right

20   outside the bus stop area of -- of -- directly across the

21   street from JFK8.

22   Q    Okay.  And how do employees participate in the Amazon

23   Labor Union?

24   A    Well, they would -- they would help us pass out T-shirts,

25   pamphlets, and just organize on the outside, at the tent area,



1    and also organize on the inside during their break times.

2    Q    Okay.  And during that time period, from April of 2021

3    through the election in March of -- the JFK8 election in March

4    of 2022, were there any employee meetings held by the Amazon

5    Labor Union?

6    A    Yes.  We held weekly Zoom call meetings.

7    Q    And these meetings were attended by employees?

8    A    Yes, they were.

9    Q    Okay.  And during your -- your role in the organizing

10   drive, did you have an opportunity to talk to the -- oh, we

11   lost the judge, I think.  Did you have an opportunity to

12   discuss employees' work-related concerns with them?

13   A    Yes, we did.

14   Q    Okay.  What sort of concerns did employees voice?

15   A    Well, their low wages, you know, the -- not getting the --

16   the benefits they feel they deserve.

17        MR. POWELL:  Objection.  Relevance.

18   A    Also, the work would get -- should I continue, or

19   (indiscernible, simultaneous speech) --

20        JUDGE GREEN:  Yeah.  Hol -- hold on.  I mean, well, why do

21   we need this?  Does it go to the -- I mean, does it go to the

22   protected nature of the posts?

23        MS. TOOKER:  No, this goes to the -- the 8(a)1 statements.

24   It's just --

25        JUDGE GREEN:  Okay.



1       MS. TOOKER:  -- background that will inform the 8(a)1

2   statement.

3       JUDGE GREEN:  Okay.  Overruled.

4       MR. POWELL:  But I -- Your Honor, I don't see how this

5   could possibly affect the -- the 8(a)1 statements.  I think

6   she's trying to get into subjective understanding and

7   subjective reactions to the alleged 8(a)1's, and I think it's

8   inappropriate and she's trying to do it through the back door.

9       JUDGE GREEN:  Yeah.  I mean, I can tell you that -- that

10  neither I nor the Board are going to consider the subjective

11  feelings of the individual employees in terms of how they react

12  to the -- the statements.

13      Listen, let's try to move it along.  There's -- you know,

14  there's really no debate at this point that there was an

15  organizing campaign and the -- the context in which these

16  statements were made, so we've already got quite a bit on it.

17  Let's -- you know, let's try to move through it as quickly as

18  we can.

19      MS. TOOKER:  Yep.  Just this one question, Your Honor.

20  Q   BY MS. TOOKER:  So I'm sorry, Mr. Palmer, if you could

21  just finish your -- your answer about the concerns raised by

22  the employees?

23  A   Yeah.  The concerns raised were about the working

24  conditions, about like, the heat, the dirty equipment, things

25  of that nature.  Also the low wages, not getting the wages that



1    they feel deserve, and you know, the benefits weren't up to

2    par.

3    Q    Okay.  And what, if any, response did Amazon have to the

4    Union's organizing efforts?

5    A    Well, they sent out text messages to workers through the A

6    to Z App, and they also sent these messages through -- and

7    also, in the bathrooms as well, the in -- they're called

8    installments, where they have updates about the company, but

9    they used that to -- said -- to tell workers not to sign all

10   position cards.

11   Q    Okay.  And when did you first start seeing these

12   installments and text messages, the -- the notifications that

13   you're speaking of?

14   A    I believe, late April.  No, I think -- I'm sorry.  Pardon

15   me.  It was in May, May of 2020.

16   Q    2021?

17   A    Yes.

18   Q    Okay.  Thank you.  Great.  Is there ever a time that you

19   attended a meeting held by Amazon regarding the Union?

20   A    Yes.  A captive audience meeting.

21   Q    Okay.  And when was the first time you attended such a

22   meeting?

23   A    I believe November of 2021.

24   Q    Okay.  And around November of 2021, approximately how many

25   of these meetings about the Union did you attend?



1    A    I did like about three a week.  Three meetings a week.

2    Q    Okay.  And this is just in October and November of 2021?

3    A    Yes.  In -- in November 2021.

4    Q    Okay.  All right.  And where were these meetings held?

5    A    They were held in the Day 1 room.

6    Q    Okay.  And how many employees, approximately, attend each

7    of these meetings?

8    A    It could be from -- I think around 50, I think was the

9    max.

10    Q    And who conducted these meetings?

11    A    The Labor -- I meant employee relations, what they call

12    them.

13    Q    Okay.  How did you know that they were employee relations

14    people?

15    A    Well, that's -- that's what they told us, they were

16    employee relations.

17    Q    Okay.  And what, in general, was the topic of these

18    meetings?

19    A    In general, my -- my interpretation was, like, anti-Union

20    or anti ALU meetings.  I felt like they were de -- designed to

21    discourage workers to sign all position cards, and ultimately

22    get involved with -- with the Union.

23    Q    Okay.  Did you attend a meeting held by Amazon related to

24    the Union on November 11th of 2021?

25    A    Yes, I did.



1    Q    Okay.  And where was this meeting held?

2    A    It was held in the Day -- Day 1 room.

3    Q    Okay.  And approximately how many employees attended that

4    meeting?

5    A    It was about 50 employees.

6    Q    Okay.  And who -- who were the presenters at this meeting?

7    A    I didn't get their names, but they were employee

8    relations.

9    Q    Okay.  Other than the approximately 50 employees and the

10   employee relations presenters, was there anybody else in the

11   room during this meeting?

12   A    No, there wasn't.

13   Q    Okay.  All right.  And what were you doing prior to

14   attending this meeting?

15   A    I was at the stand up area, I believe.

16   Q    What's a stand up area?

17   A    Well, every -- every department has a stand up area, where

18   they get their assignment for the day.  This is where the

19   manager will tell them, you know, what station they will be in

20   every single day.

21   Q    Okay.  And how did you learn that you were going to go to

22   this meeting?

23   A    A manager came up to me, and had a laptop in his -- in his

24   arms, and he was saying that -- that I need to go to this --

25   this meeting, a CA meeting.  And I told him I didn't go, and he



1    was just like, yeah, well you have to go.  It's a mandatory

2    meeting, and I said, okay.  All right.  And --

3    Q    Okay.  Do you know the name of this manager?

4    A    No.  I -- because he -- he didn't work at the JFK8

5    facility, or I had never seen him before, so I believe he

6    worked at a different site.

7    Q    Okay.  And how did know he was the manager?

8    A    He had on the vest that said -- the operations vest that

9    all the managers wear.

10   Q    Okay.  And what --

11   JUDGE GREEN:  Let me just ask -- I -- I'm sorry.  I didn't

12   hear the comment.  Did you -- when he -- when the manager first

13   came up to you and told you to go, what did you first say?

14   THE WITNESS:  Well, he said that -- well, he -- he asked

15   me, you know -- you know, did you go to the meeting today?  And

16   I was like, no.  And he's like, all right.  Well, you got to

17   go.  I was like, okay.  It's a mandatory meeting.

18   JUDGE GREEN:  Okay.

19   Q    BY MS. TOOKER:  Okay.  All right.  So sorry.  Do you

20   remember what his vest looked like?

21   A    Yes.  It was a -- a green vest, and they have, like,

22   reddish burgundy stripes on each side going through -- going up

23   and down the vest.

24   Q    Okay.  And does it say anything, or just those colors?

25   A    Those color, and it'll say "operations" on the back.



1    Q    Okay.  I'm sorry.  I think you said that.  I kind of

2    missed it.

3    A    That's fine.

4    Q    All right.  All right.  So -- so after being instructed

5    to, you went to this meeting?

6    A    Well, first, I had to wait at the stand-up area because he

7    had to gather up more associates first before we head down --

8    head -- headed down to the Day 1 room for the meeting.

9    Q    And how long did you wait at the stand-up area?

10   A    For probably, like, ten minutes.

11   Q    Okay.  And how did you get to the -- the room?

12   A    Well, he -- we were following him to the Day 1 room.

13   Q    Okay.  And who is "we"?

14   A    Myself and the group that he gathered, and -- and the

15   manager who told me I needed to go to the meeting.

16   Q    Okay.  What happened when you arrived at the Day 1 room?

17   A    Well, they -- they scanned our badges.  They had, like,

18   another manager on the outside, with, like, a table, and he,

19   like, scanned our badges as we entered the Day 1 room.

20   Q    Okay.  And -- well, after you had your badge scanned, what

21   did you do?

22   A    I just sat down in a chair.  They had chairs already laid

23   out for us.

24   Q    Okay.  And did you have an opportunity to record this

25   meeting?



1   A   Yes, I did.

2   Q   Okay.  And what did you use to record it?

3   A   Oh, I used my -- my phone to record it.

4   Q   Okay.  And --

5   A   With a voice memo.

6   Q   Okay.  When did you start recording?

7   A   When I -- when I walked in.

8   Q   Okay.

9   A   When the meeting started, that's when I re -- recorded.

10  Q   And when did you stop recording the -- the meeting?

11  A   When the meeting was -- was done.

12  Q   Okay.  And did you give this recording to anyone?

13  A   Yes.  I believe I gave it to Seth, attorney.

14  Q   Okay.  That's Seth Goldstein, the Union's attorney?

15  A   Yes, Seth Goldstein.

16  Q   Okay.  All right.  And did you alter the recording in any

17  way before you gave it to Mr. Goldstein?

18  A   No, I did not.

19      MS. TOOKER:  Okay.  All right.  All right.  So at this

20  point, Your Honor, I would like to play some small sections of

21  Res -- GC Exhibit 3.

22      JUDGE GREEN:  Do you know what the range, the time range

23  is, the section you're going to play?

24      MS. TOOKER:  I have the starting time.

25      JUDGE GREEN:  Okay.



1      MS. TOOKER:  Well, so first, I actually want to play the

2    beginning because there is an issue with the identification of

3    the speakers.

4      JUDGE GREEN:  Okay.

5      MS. TOOKER:  I think, as you will -- so first of all, I

6    need to figure out how I can play it and actually make it so

7    everyone can hear it.  So let's try to get that sorted out

8    first, and then we can --

9      JUDGE GREEN:  Okay.

10      MS. TOOKER:  Sorry.  I can't find it on my computer.

11    (Audio interference).  Oh, all right.  Sorry.  I opened it up

12    from SharePoint, which is not a way that I usually do that.  So

13    I'm just going to -- it's a little bit clunky to use that way,

14    so I'm just going to open it from my computer.

15      Okay.  Can people hear what are you playing, or no, not

16    yet?

17      JUDGE GREEN:  No, not yet.

18      MS. TOOKER:  All right.  I think I have to share screen

19    and then say something.  Tell Zoom that I want to share my

20    audio, too.

21      JUDGE GREEN:  Yeah, on the bottom left.  I -- I -- I

22    haven't really used it much, but at the bottom left when you go

23    to share screen, there's a share sound function.

24      MS. TOOKER:  Okay.  Got it.  All right.  So I'm going to

25    start just from the very beginning.



1    (Audio played at 11:32 a.m., ending at 11:32 a.m.)

2    Q    BY MS. TOOKER:  Okay.  Mr. Palmer, at the beginning of

3    this recording that I just played approximately 19 seconds of,

4    it seems that the presenters introduced themselves.  Although

5    the first presenter, it doesn't appear that we -- that the

6    recording includes his name.  Is that right?  Did -- did you

7    guys hear what I played?

8         JUDGE GREEN:  Yes, I did.  Did you all hear?

9         MR. POWELL:  Yes.

10        MS. SINGLA:  Yes.

11        JUDGE GREEN:  Okay.

12   Q    BY MS. TOOKER:  So the second presenter identifies himself

13   as Ron Edison, who, you know, we've talked about this

14   previously, that Ron Edison is identified as the speaker for

15   the 8(a)1s in the complaint.  However, we believe that it was

16   the first presenter who actually said most of the 8(a)1s.

17        JUDGE GREEN:  Do we have -- do we have an agreement as to

18   who the first presenter was?  Does the Respondent know that?

19   Have the parties been able to identify that person?

20        MR. ENJAMIO:  Your Honor, we -- on -- on this tape, if I

21   may address that, on this particular tape, we understood from

22   the complaint that Ron Edison was the person who made the

23   statements at issue.  Because that was what was playing.  When

24   I spoke to Ms. Tooker, to Lynda, I believe it was late last

25   week.  It could have been -- it could have Monday of this week.



1       She said that actually that they would go for the second

2       speaker.  So we believe we're very close to identifying that

3       person, and we'll probably have done identification during our

4       next break.  Just to confirm it.

5           And if there's another meeting just to finish that,

6       there's another meeting on the 10th where they the issue that

7       they were not identified.  We believe we have identified the

8       speaker and can get that information to Mr. Tooker.  I just

9       want to have one final confirmation.  I will get that to you,

10      Ms. Tooker, during lunchtime.

11          JUDGE GREEN:  Okay.

12          MS. TOOKER:  That -- that's great.  Thank you.  And -- and

13      Mr. Enjamio is correct.  It was just yesterday that I -- I

14      identified the issue with the -- the names of the speakers.  So

15      I appreciate your quick work on that.

16          But -- so I think that this is something really for this

17      witness to clear up.  So I'm glad that the Respondent is going

18      to be able to do that.

19          JUDGE GREEN:  Okay.

20          MS. TOOKER:  Okay.  So the next section that I'd like to

21      play is -- starts at 1:50.  Oh, too far.  Okay.  So I'm just

22      going to press play here.

23      (Audio played at 11:35 a.m., ending at 11:37 a.m.)

24          MS. TOOKER:  All right.  So that's the first part.  We are

25      alleging that the announcement of the improved benefit is an



1    unlawful statement.  So --

2         JUDGE GREEN:  Okay.  So that was -- that was time range,

3    and you could just call out the time range.  I have 1:50 and

4    3:37.

5         MS. TOOKER:  I have 1:50 and 3:46.

6         JUDGE GREEN:  Okay.

7         MS. TOOKER:  But -- so -- sure.  All right.  So the next

8    time range that we're looking at, it begins 4:50.  It's very

9    short, but I don't have an end time.  I will update you after

10   we play it.

11        All right.  I'm just going to start here at 4:39, but my

12   understanding is the statement is at 4:50.

13   (Audio played at 11:38 a.m., ending at 11:39 a.m.)

14        MS. TOOKER:  All right.  So that's 4:50 to 5:14.  We are

15   alleging -- so that is start of part of the unlawful

16   solicitation of grievances.  That's not the only part that

17   we're alleging, but they're taken together.  We think they're

18   in an unlawful solicitation.

19        So the next section that I'm going to play --

20   Q    BY MS. TOOKER:  Oh, and Mr. Palmer, I just wanted to ask

21   you, what is an AM?

22   A    An area manager.

23   Q    Okay.  Thank you.

24        MS. TOOKER:  All right.  So the next section is from 8

25   minutes to 9 minutes, and 52 seconds.



1    (Audio played at 11:40 a.m., ending at 11:42 a.m.)

2        All right.  So that's that section.  And we just have one

3    more section to go.

4        JUDGE GREEN:  Now, what -- what are -- what are you using

5    that for?

6        MS. TOOKER:  So that section was unlawful solicitation of

7    grievances.

8        JUDGE GREEN:  Okay.

9        MS. TOOKER:  We think the discussion related to it, you

10   know, giving grievance complaints to managers and escalation of

11   complaints.

12       JUDGE GREEN:  Yeah.  Yeah.

13       MS. TOOKER:  All right.  So the next section is 13:31 to

14   15:13.  Okay.  And I'll press play.

15   (Audio played at 11:42 a.m., ending at 11:44 a.m.)

16   Q    BY MS. TOOKER:  All right.  Mr. Palmer, there's an

17   additional voice in that portion of the recording, in addition

18   to the two presenters.  Can you identify that speaker for me?

19   A    That would be me.

20   Q    Okay.

21       MS. TOOKER:  All right.  So Your Honor, at this time, I

22   would offer General Counsel Exhibit 3 into the record.

23       JUDGE GREEN:  Any objection?

24       MR. POWELL:  No, Your Honor.

25       JUDGE GREEN:  Okay.  GC-3 is admitted.



1    **(General Counsel Exhibit Number 3 Received into Evidence)**

2    Q    BY MS. TOOKER:  Okay.  And Mr. Palmer, during this

3    meeting, was there any sort of visual aids that you were shown?

4    A    Yes.

5    Q    Okay.  And was that a PowerPoint presentation?

6    A    Yes.  A PowerPoint presentation.

7         MS. TOOKER:  So Your Honor, we received General Counsel

8    Exhibit 34, which is a PowerPoint presentation and script and

9    instruct -- instruction to the presenters from Respondent.  And

10   we also received General Counsel Exhibit 35, which is the

11   training attendance information for the November 10th and 11th

12   meetings.  And at this point, I would like to offer those into

13   evidence.

14        JUDGE GREEN:  Any objection?

15        MR. POWELL:  I would like to see the exhibits that they're

16   offering so that we can confirm that we're on the same page in

17   terms of what they actually are.

18        MS. TOOKER:  Of course.  They're in SharePoint.  They're

19   marked.

20        MR. POWELL:  We'll take a look here.

21        MS. TOOKER:  Okay.  Take your time.

22        MR. POWELL:  The November 11th meeting; is that correct?

23        MS. TOOKER:  Yes.  This is when they're talking about the

24   November 11th meeting, yes.

25        MR. POWELL:  I just estimating.  I'm trying (audio



1    interference) to get that document associated because that's

2    what we're looking

3        MS. TOOKER:  Okay.

4        JUDGE GREEN:  Was it they were different -- with their

5    different PowerPoints and scripts for different meetings?

6        MR. POWELL:  Yes.

7        JUDGE GREEN:  Okay.

8        MR. POWELL:  So we don't have any objection to the GC-34.

9        JUDGE GREEN:  Okay.

10       MR. POWELL:  The PowerPoint presentation and talking

11   points or script.  And GC-35 is the attendance records.  Yeah.

12   We don't have any objection to GC-35, either.

13       JUDGE GREEN:  Okay.  So GC-34 and 35 are admitted.

14   **(General Counsel Exhibit Number 34 and 35 Received into**

15   **Evidence)**

16       MS. TOOKER:  Okay.

17   Q    BY MS. TOOKER:  Mr. Palmer, in addition to the November

18   2021 meetings, were you also -- did you also attend meetings

19   hosted by Amazon about the Union in February and March of 2022?

20   A    Yes.

21   Q    Okay.  And so during February and March of 2022,

22   approximately how many meetings did you attend about the Union

23   that were hosted by Amazon?

24   A    I believe about three.  Three meetings a week.

25   Q    And where were these meetings held?



1    A    They were held in the Day 1 room.

2    Q    Approximately how many employees were at each meeting?

3    A    About 50.

4    Q    And who led these meetings?

5    A    The employee relations.

6    Q    Okay.  And the employee relations representatives who led

7    the meetings, do they usually work at JFK8?

8    A    No, they do not.

9    Q    Okay.  How do you know that?

10   A    Well, they have, like, they wear -- they wear suit and

11   ties, and they just -- they're not -- they don't work at Amazon

12   at all.

13        MR. POWELL:  Objection.  Calls for speculation.

14   Q    BY MS. TOOKER:  Had you ever seen -- can I --

15        JUDGE GREEN:  Yeah, go ahead.

16        MR. POWELL:  It's fine.

17        MS. TOOKER:  Yeah.

18   Q    BY MS. TOOKER:  Had you seen these employee relations

19   representatives prior to the Union organizing campaign?

20   A    No.  I have not.

21   Q    Have you seen them since the election at JFK8?

22   A    No.  I have not.

23   Q    Okay.  What, in general, was the topics of the meetings

24   that you attended?

25   A    I felt like -- I felt like they were anti ALU and anti-



1    union meetings.  And they were just pretty much designed to

2    discourage workers from signing all position cards or voting --

3    voting yes in favor of the ALU during election time.

4         MR. POWELL:  I'm going to object to that answer as

5    nonresponsive (audio interference) because it was his feeling.

6         JUDGE GREEN:  It was what?

7         MR. POWELL:  His feelings.  He said I feel like they were.

8    That would be --

9         JUDGE GREEN:  Okay.  I mean, listen.  We have the -- we

10   have the recording.  Right.

11        MS. TOOKER:  There will be a recording.

12        JUDGE GREEN:  Okay.  So I'm going to be relying on the

13   recording rather than what people testified to regarding what

14   was said.

15   Q    BY MS. TOOKER:  Okay.  All right.  And so when you -- how

16   were you instructed to attend these meetings?

17   A    The manager would come to me, you know, with a laptop and

18   say -- and asked me if I've attended one of the -- the CA

19   meetings.  And -- and if I say no, then they'll say, well, you

20   have to come to this meeting.  It's a mandatory meeting.

21   Q    Okay.  And did they always scan your badge when you

22   attended the meeting?

23   A    Yes.  So they always scanned our badges when we got to the

24   actual Day 1 room.  Sometimes they would either scan it, or

25   enter it manually on their laptop.



1    Q    Okay.  And when you say enter it manually, what are they

2    entering manually?

3    A    They'll enter our -- our log in.  So on our badge we have

4    first and last name, and then our actual log in, which every

5    associate has.  And they'll enter in on, like, I believe, like

6    a spread sheet.

7    Q    Okay.  Did you attend an Amazon meeting about the Union on

8    February 16th of 2022?

9    A    Yes, I did.

10   Q    Where was this meeting held?

11   A    The Day 1 room.

12   Q    How many employees attended?

13   A    I believe -- I believe that one was small.  I believe that

14   was like a 30 -- 30 people if that's the same one.

15   Q    Okay.  And do you know -- sorry.  Give me just a second.

16   Do you know of the presenter at the February 16th would be

17   Charlotte Bowers?

18   A    Yes, I believe that that's the -- I know she had like a

19   British accent.  I believe that was -- that's her name.

20   Q    All right.  And was there anybody in the room besides the

21   30 employees and Ms. Bowers?

22   A    No.

23   Q    Okay.  And how did you learn that you were supposed to go

24   to this meeting?

25   A    By the - the manager that came to me; approached me, at



1       the standup area.

2       Q    Okay.  And again, was this -- do you know the name of this

3       manager?

4       A    No.  He never identified himself.

5       Q    How did you know he was a manager?

6       A    He had -- the manager vest that said -- that said

7       operations on the back.

8       Q    Okay.  And what did he say to you about going to the

9       meeting?

10      A    Well, that they were mandatory meetings.  And everyone

11      needs to go to them.

12      Q    Okay.  And so what did you do; you were told to go to the

13      meeting?

14      A    Yes.  So I just -- I went to the meeting.

15      Q    Okay.  Did you go -- did you walk there by yourself?

16      A    No.  I'm sorry.  I walked with a group of associates.  We

17      gathered up associated after myself.  We waited for about ten

18      minutes.  And then we followed him down to the Day 1 room.

19      Q    Okay.  And him, that's the manager who told you to -- to

20      go to the meeting?

21      A    Yes.  Yes, the manager.

22      Q    Okay.  All right.  And what happened when you got to the

23      Day 1 room?

24      A    They scanned all of our badges.  Like a manager was

25      outside of the -- of the day room, scanned our badges.  And



1    then we all entered that room, and sat down, and waited for the

2    presentation to begin.

3    Q    Okay.  And did you have an opportunity to record to this

4    meeting?

5    A    Yes, I did.

6    Q    And when did you begin recording it?

7    A    When -- right before they started the presentation.

8    Q    Okay.  And when did you stop recording it?

9    A    After the presentation was done.

10    Q    Okay.  And did you give this recording to anyone?

11    A    Yes.  I gave it to Seth, my attorney.

12    Q    Okay.  And did you alter the recording at all before you

13    gave it to the Union's attorney, Mr. Goldstein?

14    A    No.  I did not.

15        MS. TOOKER:  All right.  Your Honor, I'd like to play some

16    sections of General Counsel Exhibit 4, which is in SharePoint.

17    And share screen.

18        Okay.  All right.  This first section that I'm going to

19    play is from 27 seconds to 1 minute and 41 seconds.

20    (Audio played at 11:56 a.m., ending at 11:57 a.m.)

21        MS. TOOKER:  All right.  And so we are alleging that the

22    statements contained in that section are a threat to withhold

23    or reduce wages as much as their -- they leave important

24    details regarding their due's payment.

25        All right.  All right.  So the next section begins at



1    7:46.

2    (Audio played at 11:58 a.m., ending at 12:01 p.m.)

3        MS. TOOKER:  Okay.  So that was 7:46 to 10:31.  All right.

4    I think I just have one more section here, and it is just about

5    a minute long

6        MR. POWELL:  Your Honor, if I may, just because I think,

7    in the prior portions of the recording, Counsel, General

8    Counsel did state what they considered to be unlawful in that

9    portion.  And I had difficulty hearing and understanding the

10   speaker on that portion of the recording, in particular.  So I

11   request that Counsel, General Counsel at least identify what it

12   is in that component of the recording that they're alleging to

13   be unlawful.

14       MS. TOOKER:  And there's an additional statement related

15   to paying union dues that we think is unlawful.  And I think

16   there is just some context in there, too, that we think forms

17   some of the other statements in the -- and makes them more

18   coercive.  All right.

19       MR. POWELL:  What portion of --

20       MS. TOOKER:  So --

21       MR. POWELL:  -- (indiscernible, simultaneous speech)

22   evidence are you -- are you talking about?

23       MS. TOOKER:  Sorry.  I'm just looking back at my notes

24   about what was said here.  Yeah -- no, I think it's just the

25   statement about the dues.  Sorry for the -- the misstate.  All



1     right.  Okay.  So the next section is 12:37.

2         And I just want to clarify that, you know, some of these

3     statements, especially the statements about the dues, part of

4     our allegation is a failure to accurately state, you know,

5     certain rights and privileges that employees have related to

6     paying dues.  So it's not just the statements, but the lack of

7     additional, correct information that we are saying that makes

8     it a misstatement of the law that is coercive.

9         JUDGE GREEN:  That was -- I mean, that's what the

10    brief -- that's what the brief is for.  You know, we're

11    basically going through this.  It's -- you know, I think the

12    Respondent wants it because they want more clarity on

13    why -- you know, what exactly is alleged to be unlawful.  And

14    since they want that, and the General Counsel wants to do it,

15    that's fine.  But I mean, ultimately, the parties are going to

16    have to brief this thing.

17        MS. TOOKER:  I agree, Your Honor.  I just didn't want to

18    misrepresent the General Counsel's position that -- you know,

19    that the other sections aren't going to be --  I mean, we have

20    to listen to it as a whole for the -- the missing information,

21    too.  And I just wanted to make sure that I was --

22        JUDGE GREEN:  Okay.

23        MS. TOOKER:  -- just saying that, that's all.  All right.

24    So 12:37 to 13:31.

25        MR. POWELL:  Your Honor, if I --



1        JUDGE GREEN:  Yep.

2        MR. POWELL:  -- if I may, I -- I just want to -- I want to

3    make a point of clarification, to make sure that I'm

4    understanding where we are.  So obviously, yes, the parties can

5    address issues in the brief.  But in order for us to address

6    the issues in the brief, we do need to have a definitive

7    understanding of what is being alleged that as unlawful

8    (indiscernible, simultaneous speech).

9        JUDGE GREEN:  No, with all due respect, that's -- that's

10   what the complaint is for, right?  So the complaint -- you have

11   the complaint, the -- the General Counsel puts on their

12   evidence.  The parties addressed it in the brief.

13       Now, if -- if the parties want to discuss it in -- for

14   purposes -- we -- it doesn't really have to be done on the

15   record.  It could have been done in advance of this hearing,

16   and it could be done after the hearing, and that -- that will

17   help you streamline your briefs.

18       But ultimately -- ultimately, it's -- you know,

19   the -- what I'm going to be looking at is the briefs.  And if

20   the General Counsel says something that's not entirely

21   consistent with the -- it says in this hearing something that's

22   not -- that's not entirely consistent with the briefs, it's

23   going to -- that's not going to be a waiver of the General

24   Counsel's ability to argue it.  I mean, understand that.

25       MR. POWELL:  All I'm asking for is to understand what the



1    General Counsel's allegations are.

2        JUDGE GREEN:  It's in the complaint.

3        MR. POWELL:  With respect to each specific port -- well,

4    the complaint's very vague, and --

5        JUDGE GREEN:  I understand.  That's -- I understand; lots

6    of employers complain about that, but that's the process that

7    we have.  Again, the -- the General Counsel's willing to do

8    this, and it's largely to your benefit and brief, you know,

9    that's -- that's fine.

10       MR. POWELL:  I don't have any objection.

11       JUDGE GREEN:  Right.

12       MR. POWELL:  I don't have any objection as long as

13   we're -- we're specifically identifying what it is they're

14   contending is unlawful, so --

15       JUDGE GREEN:  Well -- yeah, they can identify --

16       MR. POWELL:  -- that's all.

17       JUDGE GREEN:  -- what they want.  And they don't have to

18   identify anything if they don't want.  That's the way the

19   process goes.

20       MR. POWELL:  Thank you, Your Honor.

21       MS. TOOKER:  All right.  So we will now listen to 12:37 to

22   13:31.

23   (Audio played at 12:07 p.m., ending at 12:08 p.m.)

24       MS. TOOKER:  All right.  And so we are alleging that this

25   statement is -- sorry, basically the -- the minimum wage



1    statement is a -- is an 8(a)(1) -- 8(a)(1) statement akin to,

2    like, a bargaining from zero statement. All right. So that is

3    all for the recordings for this witness.

4        I would ask that -- let's see, I think we're -- it's

5    General Counsel Exhibit 4 be admitted into evidence.

6        MR. POWELL: No objection, Your Honor.

7        JUDGE GREEN: Okay. So GC-4 is admitted.

8    **(General Counsel Exhibit Number 4 Received into Evidence)**

9        MS. TOOKER: Okay. And next, I would like to also offer

10   another three documents that were provided, pursuant to the

11   subpoena, yesterday. The first is the GC-36, which is the

12   February 16th PowerPoint.

13       And again, this is a document that includes the

14   PowerPoint, given that the -- my understanding, it's the

15   PowerPoint given at the meeting, and also a descriptive

16   instructions for the presenters.

17       Again, these are all in SharePoint. And then, also,

18   General County Exhibit 37, which is the -- titled, "The

19   Charlotte Bowers Talking Points." And then, the General

20   Counsel Exhibit 38, which is the attendance for February 16th

21   meetings.

22       MR. POWELL: Those are not in SharePoint, as of right now

23   anyway.

24       MS. TOOKER: They're not?

25       MR. POWELL: 36, 37, and 38 are not showing in SharePoint



1    right now.

2         MS. TOOKER:  I'm sorry.

3         MR. POWELL:  If you want to put it up in SharePoint, we

4    can take a quick look at them, and -- I don't think we'll have

5    an objection.

6         JUDGE GREEN:  I think they are -- I think they are in

7    there.  I --

8         UNIDENTIFIED SPEAKER:  Yeah, they're in there.

9         JUDGE GREEN:  -- I've uploaded them.

10        MR. POWELL:  For some reason, we're not seeing them our

11   screen, maybe --

12        MS. TOOKER:  You have to refresh.

13        JUDGE GREEN:  Might need to refresh it.

14        MS. TOOKER:  Yeah, it's kind of annoying.

15        MR. POWELL:  Okay.  They just popped up.  They just popped

16   up.

17        JUDGE GREEN:  Okay.

18        MR. POWELL:  Your Honor, if we could just take a moment

19   off the record, to confirm that --

20        JUDGE GREEN:  Sure.

21        MR. POWELL:  -- they match up with the meeting in

22   question, and right back on.

23        JUDGE GREEN:  Off the record.

24   (Off the record at 12:11 p.m.)

25        JUDGE GREEN:  So Back on the record.  Okay.  So in the



1    off-the-record discussion, the Respondent has represented that

2    they have no objection to General Counsel's 36, 37, and 38, so

3    I'm admitting those exhibits into evidence.

4    **(General Counsel Exhibit Numbers 36, 37 and 38 Received into**

5    **Evidence)**

6        MS. TOOKER:  All right.

7                    <u>**RESUMED DIRECT EXAMINATION**</u>

8    Q    BY MS. TOOKER:  Mr. Palmer, did you ever hear any

9    employees tell any managers that they didn't want to go to the

10   meetings about the union?

11   A    Yes.

12   Q    And what, if anything, was the response from managers?

13   A    The response from management was that these are mandatory

14   meetings, and that you have to attend them.

15   Q    Okay.  And approximately how often did you hear from a

16   manager that these meetings were mandatory?

17   A    Every time.  Every time that I attended I -- I heard of a

18   worker who said that they didn't want to go, but they had to

19   go, because it was mandatory.

20   Q    Okay.  And again, how does ma -- the people who said that

21   the meetings were mandatory, do you know any of their names?

22   A    Davadi (phonetic), Brittany (phonetic), Stansay

23   (phonetic).  I mean, I could -- I can go on all day.

24   Q    Okay.  And Davadi, is that a first name or a last name?

25   A    It's a first name.



1    Q    Okay. And do you know what Davadi's position is?

2    A    Packer, like myself.

3    Q    Oh, no. I'm sorry. My question was, the manager who said

4    that the meetings were man --

5    A    Oh, I'm sorry.

6    Q    Yeah.

7    A    I'm sorry. I apologize.

8    Q    What are any of their names?

9    A    I apologize.

10    Q    That's okay.

11    A    The managers, I didn't know their names, because they

12    didn't work at JFK8. I apologize for that, sorry.

13    Q    No, I'm sorry for the confusion. So the managers who

14    didn't work at JFK8, but told you the meetings were mandatory,

15    how did you identify them as managers?

16    A    They all had the vests -- the manager's vest on, that said

17    "operation" on the back.

18    Q    Okay. Did you ever receive a recording of a meeting from

19    Michelle Valentin Nieves?

20    A    Yes, I did.

21    Q    Okay. And who is Michelle?

22    A    She's a worker at JFK8, and also a member of the ALU.

23    Q    Okay. And when you received this recording, what did you

24    do with that?

25    A    I sent it to Seth, my attorney.



1   Q    Okay.  And did you alter that recording in any way, when

2   you gave it to Seth?

3   A    No, I did not.

4   Q    Okay.  And was there only one recording that Michelle gave

5   you, or was it more than one?

6   A    I believe it was just that recording.

7   Q    Okay.  Was there any time that any supervisors or managers

8   from Amazon told you that the meetings about the union were

9   voluntary?

10  A    No.

11  Q    Okay.  Can you tell me what a GEMBA meeting is?

12  A    A GEMBA meeting is a meeting between a senior management,

13  a member of the HR, or senior manager from HR.  And they

14  usually -- it's usually one associate at this GEMBA meeting,

15  and they just ask them what they like or what they don't like

16  about Amazon.

17  Q    And just for the record --

18       JUDGE GREEN: Tell me how you're spelling that.

19       MS. TOOKER:  That's what we were going to do.

20       JUDGE GREEN:  Oh.

21  Q    BY MS. TOOKER:  Yeah, Mr. Palmer, how do you spell GEMBA?

22  A    GEMBA is G-E-M-B-A.

23  Q    Okay.  Do you know what that stands for?

24  A    To this day, I've been -- I've been seven years, and I

25  still don't know what it means.



1    Q    Okay.  And -- all right.  Have you ever attended any GEMBA

2    meetings?

3    A    Yes, I believe in -- one in, like, 2019.

4    Q    Okay.

5    A    At the end of 2019.

6    Q    Was that when you were working at JFK8?

7    A    Yes, when I was at JFK8.

8    Q    Okay.  And do you remember which manager you had that

9    meeting with in JFK8?

10   A    I'm not -- I don't remember the name.  But I do remember

11   it was a general manager and a member of HR.

12   A    I believe Tyler was there -- Tyler Bavowski (phonetic).  I

13   believe he was at that GEMBA, if I'm to mistaken.

14   Q    Okay.

15   A    Yeah.

16   Q    And the -- the managers that you met with, were -- did

17   they work out of JFK8, or from another Amazon location?

18   A    JFK8.

19   Q    Okay.  And so was there anybody else there besides you,

20   the -- Tyler, I think you said, and I think the -- an HR

21   manager?

22   A    Yeah, the general manager.  I forget who the general

23   manager was at the -- at that time period.

24   Q    Okay.  (Indiscernible, simultaneous speech) --

25   A    But besides that, I think, like, a member of, like, IT, I



1    believe, as well.

2    Q    Okay.  And the IT person, is that a regular employee, or a

3    supervisor?

4    A    A supervisor.

5    Q    All right.  And had you -- so you attended one GEMBA

6    meeting when you were working at JFK8?

7    A    Yes.

8    Q    And had you attended any other GEMBA meetings when you

9    worked at the New Jersey facility?

10   A    Yes, I attended one of those, as well.

11   Q    Okay.  All right.  And do you know whether or not GEMBA

12   meetings are mandatory?

13   A    No, those are voluntary meetings.

14   Q    Okay.  Have you ever attended a birthday roundtable?

15   A    No.  I mean, the birthday roundtables are, you know, just

16   designed for people's -- for everyone -- for everyone's

17   birthday -- well, it's supposed to be for everyone's birthday.

18   But unfortunately, I -- my birthday's in December, and we

19   didn't have those roundtables for workers' birthdays in

20   December, which kind of sucks, but -- you know.

21   Q    Prior to the union's organizing effort, had you ever

22   attended a large group meeting where -- where representatives

23   of Amazon that were not from you location asked employees about

24   improvements that they'd like to see in the workplace?

25   A    No, I didn't.



1    Q    All right.

2         MS. TOOKER:  Your Honor, I'd just like to consult briefly

3    with my co-counsel.  I might have just a few more questions.

4         JUDGE GREEN:  Okay.  Off the record.

5    (Off the record at 12:21 p.m.)

6         JUDGE GREEN:  And do we have anything more from the

7    General Counsel?

8         MS. TOOKER:  No further questions from General Counsel at

9    this time.

10        JUDGE GREEN:  Okay.  So are we going to have

11   questions -- cross from the Respondent?

12        MR. POWELL:  Yes, Your Honor.  We request the Jencks

13   materials at this time, including (audio interference).

14        JUDGE GREEN:  Sorry, you're cu -- yeah, you're cutting out

15   a little bit.

16        MR. POWELL:  Sorry.  Said we'd request the Jencks

17   materials affidavits, and any other, sort of, corresponding

18   state -- statements or communications regarding statements made

19   to the Board.

20        MS. TOOKER:  Your Honor, the only Jencks materials we have

21   for this witness are affidavits.  Like other witnesses, we have

22   some affidavits that are not relevant to Mr. Palmer's

23   testimony.  There are four affidavits that are relevant to his

24   testimony today.  Of the four, one is very minimally redacted.

25   The only things I've redacted are references to the number of



1    cards that were signed on a certain date.

2        So I'm happy -- I will provide this to Respondent now.

3    But to the extent that they, you know, have an issue with, I

4    think there -- hold on a second.  I have three affidavits that

5    are related to other matters, and not anything that was

6    testified to today.

7        JUDGE GREEN:  Okay.  So why don't you send the four

8    affidavits to the Respondent's counsel.  And send the three

9    additional affidavits to me, and I'll review them to determine

10   if they're relevant.

11       MS. TOOKER:  Yes, Your Honor.

12       MR. POWELL:  You're Honor, we're -- we're not making a

13   request for you to review the affidavits that are unrelated to

14   this proceeding, so I -- I don't want to, you know, cause you

15   to waste your time on that --

16       JUDGE GREEN:  Okay.

17       MR. POWELL:  -- (indiscernible, simultaneous speech) .

18       JUDGE GREEN:  Are we on the record?

19       THE COURT REPORTER:  Yeah, yeah.

20       JUDGE GREEN:  Barry?

21       THE COURT REPORTER:  Yeah.

22       JUDGE GREEN:  Okay.

23       THE COURT REPORTER:  Yeah, we are.

24       JUDGE GREEN:  All right.  Okay.  So -- okay.  so send over

25   the affidavits.  I don't know, why don't we take -- and how



1    long are the affidavits?

2        MS. TOOKER:  Some of them are lengthy, Your Honor.

3        JUDGE GREEN:  All right.  Well, why don't we come back

4    in -- well, what time is it?  It's actually 12:30.  I'm

5    thinking we should take the opportunity to have lunch.  And I'm

6    thinking, between the size of the affidavits and giving people

7    time for lunch, maybe just coming back at 2.  Okay.  So let's

8    go off the record.

9    (Off the record at 12:32 p.m.)

10       JUDGE GREEN:  All right.  Very good.  Any time you're

11   ready.

12       MR. POWELL:  Thank you, Your Honor.

13                   <u>**CROSS-EXAMINATION**</u>

14   Q    BY MR. POWELL:  Afternoon, Mr. Palmer.

15   A    Speak up a little bit, can't --

16   Q    Good afternoon, Mr. Palmer; can you hear me okay?

17   A    No.

18   Q    Can you hear me now?

19   A    Barely, but it's better.

20   Q    Okay.  All right.  I will try to move to a spot where you

21   can hear me clearly.  Can you hear me now?

22   A    Yeah, that's better.

23   Q    Okay.  Please let me know if at any point in time you

24   can't hear a question that I've asked, or if you need me to

25   repeat it, okay?



1  A    (Inaudible response).

2  Q    I didn't get your audio that time.

3  A    Yes.

4  Q    Okay.  Mr. Palmer, you testified on direct that you went

5  to a number of meetings that Amazon held, where the subject of

6  unions or unionization was discussed; do you recall that

7  testimony?

8  A    Yes.

9  Q    Did you go to every small group meeting that was scheduled

10 at JFK8?

11 A    Yes, for the ones that I was told to attend to, yeah.

12 Q    Okay.  Do you know if you missed any weeks of -- where a

13 small group meeting was presented?  Or a -- a meeting on the

14 topic of unionization was presented, and you did not attend?

15 A    I may have.

16 Q    Do you recall?

17 A    I may have.  I didn't go to every single meeting.  I mean,

18 I went to majority of the meetings.

19 Q    Okay.  Do you know of any employees who did not attend

20 such meetings?

21 A    I can't speak in other employees; I don't know.

22 Q    Well, you -- you spoke earlier about employees who did go

23 to meetings.  I'm asking if you know about employees who did

24 not go to meetings?

25 A    No.  I'm pretty sure everyone went to all the meetings.



1    Q    Now, you -- you testified earlier, I believe, that you

2    said you were a co-founder of the ALU; is that correct?

3    A    Yes.

4    Q    And that you were vice-president?  And if I -- I

5    understand correctly, you were the vice-president of

6    organizing, as your first officer position within the ALU; is

7    that correct?

8    A    Yes.

9    Q    And in the -- let's say April to June 2021 time frame, did

10   the ALU maintain a website?

11   A    We definitely had a -- a website.

12   Q    And were you familiar with that website?

13   A    Yeah, we -- I'm pretty sure we had a website at that time.

14   Q    I mean, did the ALU provide certain information about the

15   ALU and its mission or goals for purposes of the organization,

16   on that website?

17   A    Should of.

18   Q    Okay.  Let me show you a document.  Let me show you a

19   document.  We'll put it up on the screen.  And this -- this

20   is -- we'll mark it as Respondent's Exhibit 1, and it's up on

21   the SharePoint site.

22   A    Yes.

23   Q    There we go.  And we'll scroll through the document, to

24   give you an opportunity to look through it.  So we've got

25   various headings.  We'll go back up to the top.  What is the



1    Amazon labor union?  What is the benefit?  How does the union

2    work?  Can Amazon -- what are my rights?  Can Amazon fire me

3    for un -- unionizing?  Does this document look -- does

4    this -- based upon your review of this document, does this

5    reflect the content of the Amazon Labor Union website in 2021?

6    A    Yes, for the most part.

7    Q    Okay.

8         MR. POWELL:  I'd move for admission of Respondent's

9    Exhibit 1.

10        JUDGE GREEN:  Any objection?

11        MS. TOOKER:  I'm sorry.  I just need a minute to review

12   it, please.

13        JUDGE GREEN:  Okay.

14        MS. TOOKER:  No objection, Your Honor.

15        JUDGE GREEN:  Okay.  So Respondent's Exhibit 1 is

16   admitted.

17   **(Respondent Exhibit Number 1 Received into Evidence)**

18        MR. POWELL:  Thank you, Your Honor.

19   Q    BY MR. POWELL:  Okay.  As an officer and the

20   vice-president of organizing an ALU, can you tell me how

21   someone becomes a member of the ALU?

22   A    They have to -- think that they have to join our Zoom

23   calls and be part of our -- our organizing committee,

24   basically, to become a member.

25   Q    Do they have to sign anything to become a member?



1    A    No.

2    Q    Did you hear the question?

3    A    Yeah, I responded.  I said, no.

4    Q    Oh, I didn't hear your response.  So to become a member,

5    you don't have to sign anything?

6    A    No.

7    Q    Did -- did employees sign union authorization cards when

8    they became members?

9    A    They signed authorization cards to, pretty much, vote to

10   say that they want an election.

11   Q    So that's what you told the employees the union

12   authorization cards were for, so that they could vote in the

13   election?

14   A    Yes.

15   Q    Now, you testified earlier about individuals who came and

16   got you, or took you to the meetings that the company held on

17   the topic of unionization; do you recall that testimony?

18   A    Yep.

19   Q    I believe you said you did not know who these individuals

20   were, correct?

21   A    Said they're managers.  I clearly said that they were

22   managers.  I don't know their names, but they are managers,

23   just not managers at JFK8.

24   Q    You didn't -- you didn't know their names, correct?

25   A    I just said that.  I said that they're managers.



1    Q    You don't --

2    A    (Indiscernible, simultaneous speech) name is.

3    Q    You don't know what their specific position or title was,

4    correct?

5    A    No.  No, I never said that.  I said they are managers.

6    They have operation -- had "operation" on the back of their

7    vest, that means they are a manager.

8    Q    You know what their vest said; but other than that, you

9    don't know what position, title, or responsibilities any of

10   them had, correct?

11   A    No, I never said that.  I said that -- I clearly said

12   they're area managers -- they're managers.  Operations

13   (indiscernible, simultaneous speech) --

14   Q    You -- I don't think -- I don't think you're understanding

15   my question.  My question is, other than what you saw

16   from -- based -- other than the vest, you don't know what

17   position, title, or responsibilities any of these individuals

18   had, correct?

19   A    Think were on the same page here.  They're managers.  They

20   had the vest on.  I mean, I don't know what -- what duty.

21   Like, it doesn't matter, they're managers.  The duties of --

22   Q    Other than -- did you have any basis for concluding they

23   were managers, other than the vest that you saw them wearing

24   that day?

25   A    Besides them identifying themselves as managers, no.



1    Q    So you're saying they identified themselves as managers?

2    A    Yes.

3    Q    In what way?

4    A    I asked them, are you manager?  And they're like, yeah,

5    we're managers.  Said okay.  You work at a different site?

6    Yeah.  Okay.

7    Q    So you have a conversation?

8    A    Yeah, why wouldn't I ask them?  They're telling me --

9    they're -- they're telling me -- I'm walking with them

10   downstairs; I'm not going to ask them if they're a manager or

11   not?  That doesn't make sense.

12   Q    I just said -- I just asked if you had asked them, I

13   didn't -- okay.  Have you ever -- prior to -- you -- in -- in

14   your testimony, you mentioned that you had had a GEMBA meeting

15   with your supervisor or manager before; do you recall that

16   testimony?

17   A    It wasn't with my direct manager, but yes, I did have -- I

18   do recall it.

19   Q    And that was a meeting that was initiated, officially, by

20   the company, to meet with you, correct?  The GEMBA meeting.

21   A    I believe it's like a -- I guess, yeah.  But I mean, it's

22   like a random selection.  It's not like, you know, they were

23   looking for me.

24   Q    But you didn't really have a GEMBA meeting; the company

25   came to you and scheduled the GEMBA meeting with you, correct?



1    A    Yes.

2         JUDGE GREEN:  If you're done with R-1, you want to stop

3    sharing it?

4         MR. POWELL:  Yeah, that's fine; we're done with it for

5    now, sorry.

6         JUDGE GREEN:  Thank you.

7         MR. POWELL:  Just a minute, Your Honor.  I may be

8    finished.

9         JUDGE GREEN:  Okay.  Off the record.

10   (Off the record at 12:13 p.m.)

11                   **RESUMED CROSS-EXAMINATION**

12   Q    BY MR. POWELL:  Mr. Palmer, at the time you went to the

13   various com -- meetings that the company held on the topic of

14   unionization, did you any -- observe any of your coworkers

15   leave or walk out during the course of those meetings?

16        JUDGE GREEN:  Sorry.  Could you repeat that?  You kind of

17   cut out.  Mr. Palmer --

18        MR. POWELL:  Did you --

19        JUDGE GREEN:  -- could you repeat the answer?

20        THE WITNESS:  You asked -- can you just ask it again?

21   Sorry.

22   Q    BY MR. POWELL:  Yeah.  At the various meetings that you

23   attended, where the company discussed the topic of unions or

24   unionization, did you observe any employees leave or walk out

25   of the meetings at the beginning or during the meetings?



1    A    No.  I mean, just -- just to go to, like, the bathroom,

2    and then come back, that was it, not to actually leave the

3    meeting.

4    Q    Did you observe any of your coworkers sleeping during

5    these meetings?

6    A    Sleeping?  I'm going to be honest with you, I'm pretty

7    sure people were sleeping.  Very long meetings.

8    Q    So you think some people were sleeping in them?

9    A    I mean, not a lot, but I'm sure people would use that

10   opportunity to sleep.  You know, we're working ten hours a day.

11   Q    Did you observe people being on their phones during the

12   meetings?

13   A    I mean, I didn't see that.  I mean, I was -- I was mainly

14   focused on the speaker.

15   Q    And at any of these -- these meetings that you attended,

16   where the company addressed the topic of unions or

17   unionization, did the people in the room administer any kind of

18   test or quiz to assess whether you were listening?

19   A    Not that I recall.

20   Q    And during these meetings, was there anyone who was a

21   manager at JFK8 present in the room during -- when

22   the -- during the period of time the meeting was conducted?

23        MS. TOOKER:  Objection on --

24   A    Yes.

25        MS. TOOKER:  -- I -- I think it's not specific enough.



1    There -- he testified about a lot of meetings.

2    Q    BY MR. POWELL:  At any of the meetings which the

3    company -- that you attended, where the company discussed the

4    topic of unions or unionization, was there any manager of JFK8

5    present in the room during the meeting?

6    A    No, not that I recall.

7         MR. POWELL:  No further questions, Your Honor.

8         JUDGE GREEN:  Okay.  Thank you, very much.  Any redirect?

9         MS. TOOKER:  Your Honor, if I could just have two minutes

10   to consult my co-counsel.  I -- if we have redirect, it'll be

11   brief.

12        JUDGE GREEN:  Okay.  Off the record.

13   (Off the record at 2:16 p.m.)

14        JUDGE GREEN:  So why don't we go back on the record?

15        THE COURT REPORTER:  We -- we are.

16        MS. TOOKER:  I have no direct, Your Honor.

17        JUDGE GREEN:  Okay.  Thank you, very much.

18        So Mr. Palmer, you're free to go.  Thank you, very much.

19        THE WITNESS:  All right.  Thank you.

20        MS. TOOKER:  All right.  Your Honor, I'll have my next

21   witness sign on right now.

22        JUDGE GREEN:  Okay.  Probably just take a minute.  There

23   was a few other things that I wanted to just ask about.

24        JUDGE GREEN:  Okay.

25        MS. TOOKER:  Are we still on, or not anymore?



1          JUDGE GREEN:  We're -- we're currently off the -- well, I

2     think --

3          THE COURT REPORTER:  No, we're on.  We're on.

4          JUDGE GREEN:  Okay.  We're on the record.

5          MS. TOOKER:  Okay.  So I received an email over the break

6     from Mr. Enjamio.  And he notified us of the identity of the

7     speakers for the June -- or sorry, November 10th, 2021,

8     meeting, and the November 11th, 2021, meeting.  So I -- we can

9     either amend the complaint, or just stipulate to the identity

10    of the speakers.  However --

11         JUDGE GREEN:  I -- I don't think there's any problem with

12    just a -- just a stipulation to that effect, if the parties are

13    willing to do it.

14         MS. TOOKER:  Okay.

15         MR. POWELL:  That's fine.

16         MS. TOOKER:  All right.  So we understand that the speaker

17    for the small group meeting on November 10th, that is at issue,

18    was Michael Williams.

19         And Mr. Enjamio, maybe you can let us know whether the

20    Respondent is willing to stipulate that it -- it was an agent

21    related to his statements, the meeting?

22         MR. ENJAMIO:  Yes.

23         MS. TOOKER:  Okay.

24         MR. ENJAMIO:  We do.

25         MS. TOOKER:  And then, for November 11th, the meeting that



1    is in the record as General Counsel Exhibit 3, the second

2    speaker and that -- that recording, the name Mike Rebell.  And

3    again, we ask that Respondent stipulate that Mr. Rebell was an

4    agent, related to his statements in that recording.

5        MR. ENJAMIO:  For that purpose, yes.

6        MR. POWELL:  And just so the record's clear, I believe the

7    spelling of his last name -- just to make sure the Court

8    Reporter's got it correct.

9        MR. ENJAMIO:  It's R-E-B-E-L-L.

10       JUDGE GREEN:  Okay.

11       MS. TOOKER:  Thanks, sir.

12       JUDGE GREEN:  Okay.  So it's stipulated that Michael

13   Williams and Mike Rebell were 213 -- were agents under Section

14   213 of the Act, for purposes of their respective meetings,

15   right, that's the stipulation?

16       MS. TOOKER:  Yes, Your Honor.

17       MR. POWELL:  That's correct.

18       JUDGE GREEN:  Okay.

19       MS. TOOKER:  And I don't know if we want to do this on the

20   record or off the record, but I did want to check in with

21   Respondent, related to ongoing production, and that they have

22   been making efforts to produce more documents.

23       MR. POWELL:  We can go off the record and have a

24   conversation if you'd like, that's fine.

25       MS. TOOKER:  Okay.



1        JUDGE GREEN:  Okay.  So off the record.

2   (Off the record at 2:25 p.m.)

3        JUDGE GREEN:  Okay.  So Ms. Valentin Nieves, you're being

4   called as the next witness, by the General Counsel.  Could

5   you -- I'm going to swear you in; could you raise your right

6   hand?

7   Whereupon,

8                    **MICHELLE VALENTIN NIEVES**

9   having been duly sworn, was called as a witness herein and was

10  examined and testified, telephonically as follows:

11       JUDGE GREEN:  Okay.  Thank you.  So please -- are

12  you -- are you alone in the room?

13       THE WITNESS:  Yes.

14       JUDGE GREEN:  Okay, great.  So please, during your

15  testimony, don't talk to anybody else other than those of us

16  who are asking you questions, either in person or by phone, or

17  other handheld device.  Also, please don't look at any

18  documents that aren't shown to you over the screen, or which

19  you're not -- which you're not directed to look at.  Okay?

20       THE WITNESS:  Yes.

21       JUDGE GREEN:  Okay, great.  Okay.  So could you just state

22  and spell your name for the record?

23       THE WITNESS:  Michelle, M-I-C-H-E, double L, E, Valentin,

24  V-A-L-E-N-T-I-N, Nieves, N-I-E-V-E-S.

25       JUDGE GREEN:  Thank you.



1          Okay.  Whenever you're ready.

2          MS. TOOKER:  All right.  Thank you, Judge.

3                    **DIRECT EXAMINATION**

4     Q    BY MS. TOOKER:  Good afternoon, Ms. Valentin Nieves.

5     Thank you for being here with us.  I'm just going to have

6     you --

7     A    Hello.

8     Q    Good afternoon.  Thank you.  Just a few questions for you.

9     Are you currently employed by Amazon?

10    A    Yes.

11    Q    Okay.  And when did you start working for Amazon?

12    A    I started working for Amazon in April of 2019.

13    Q    Okay.  And what facility do you work in?

14    A    JFK8.

15    Q    Have you always worked in JFK8?

16    A    Yes.

17    Q    And what is your position?

18    A    I am a packer, and also a slam operator.

19    Q    Okay.  What does it mean to be a packer?

20    A    So we pack shipments into boxes, pretty much for -- for

21    the entire shift.

22    Q    Okay.  And what does it mean to be a slam operator?

23    A    So the slam operator runs the conveyors where the boxes

24    are put onto.  We also fix any shipments that have damaged

25    items or incorrect items.  And then, we re-label it, and we put



1    it back onto the conveyor.  And then, from there, it's put onto

2    the trucks.

3    Q    Okay.  And what's your current rate of pay?

4    A    Right now, I earned $21.50.

5    Q    Okay.  And was there ever a time that, when you worked for

6    Amazon, you earned minimum wage?

7    A    No.

8    Q    Okay.  Was it more or less that you earned?

9    A    More.

10    Q    Okay.  And do you know whether Amazon employees receive

11    automatic pay raises when they're first hired?

12    A    Automatically, I believe that the first pay raise kicks

13    in, I think, three months after hire.  I'm not -- I'm not

14    exactly sure, but I think it's three months.  I don't think

15    it's right away.

16    Q    But my question is whether you get pay raises just based

17    on the amount of time that you've worked for the company?

18    A    Yes.

19    Q    Okay.  All right.  Are you familiar with the Amazon Labor

20    Union?

21    A    Yes.

22    Q    Okay.  And have you ever held a position with the Amazon

23    Labor Union?

24    A    Yes.

25    Q    Okay.  And what is that position?



1    A    Right now, I'm the executive secretary.

2    Q    Okay.  And when did you become the executive secretary?

3    A    I would say about five months ago.

4    Q    Okay.  And have you had any other position with the Union?

5    A    I'm also an organizer for the Union.

6    Q    Okay.  And when did you start being an organizer for the

7    Union?

8    A    I'd say almost a year ago.

9    Q    Okay.  And what did you -- what did you do as an

10   organizer?

11   A    So as an organizer, I help conduct meetings.  I give out

12   literature.  And I speak to workers about unionizing in or

13   outside of the building.

14   Q    Okay.  And during your organizing efforts, did you

15   have -- did you ever speak to employees about their work

16   related concerns?

17   A    Yes.

18   Q    Okay.  And what are some of the concerns that employees

19   told you about?

20   A    The concerns are --

21        MR. POWELL:  Objection, Your Honor.  Relevancy.

22        JUDGE GREEN:  I'm sorry.  Was there a --

23        MR. POWELL:  Objection, Your Honor.  Relevancy.

24        JUDGE GREEN:  What's the relevance?

25        MS. TOOKER:  So again, this is just background information



1    that informs 8(a)(1) statements.

2         MR. POWELL:  Workers --

3         JUDGE GREEN:  Okay.

4         MR. POWELL:  -- concerns that were expressed during the

5    organizing drive is completely irrelevant and not probative to

6    anything relative to the alleged 8(a)(1) statements in this

7    case.

8         JUDGE GREEN:  Okay.  I mean, listen, I'm going to allow it

9    to the extent that it -- you know, it discusses that -- it was

10   during an organizing campaign.  But really, we don't need a

11   whole lot of this, because that's not disputed.

12   Q    BY MS. TOOKER:  You can -- so the -- the question was,

13   what -- what were the concerns that employees told you about?

14   A    The main concerns are pretty much the wages and the safety

15   conditions within the facility.

16   Q    Was there ever a time that you attended a meeting that was

17   held Amazon about the Union?

18   A    Yes.

19   Q    Okay.  And when was the first time that you attended such

20   a meeting?

21   A    The first time, I believe, was back in February.

22   Q    February of this year, 2022?

23   A    Yes.

24   Q    Okay.  And approximately how many meetings did you attend

25   in February 2022, through March, when the election was



1  conducted?

2  A    I'd say anywhere between seven and ten.

3  Q    Okay.  And where were these meetings held?

4  A    The meetings were held and the AFE 1, its main satellite

5  breakroom.

6  Q    Okay.  And is that room ever called the Day 1 room?

7  A    Some people call it the Day 1 room, yeah.

8  Q    Okay.  And how many employees were usually in these

9  meetings?

10  A    I'd say anywhere between 40 and 50.

11  Q    Okay.  And who spoke at these meetings?

12  A    I believe that it was some kind of a consultant.  But they

13  told us that they worked for Amazon, so they were

14  representatives of Amazon.

15  Q    Okay.  And besides the 40 or 50 workers and the

16  consultants who were speaking, was there anybody else in the

17  rooms during the meetings?

18  A    No.

19  Q    Okay.  And generally, what were the topics of the meetings

20  that you attended?

21  A    The topics of the meeting were about the Amazon Labor

22  Union and the upcoming vote of people either deciding to vote

23  to be unionized, or not deciding to vote to be unionized.

24  Q    Okay.  And as far as you know, what was Amazon's position

25  as to how employees should vote?



1   A    Well, we were repeatedly told to vote no, throughout all

2   of the meetings. So it was either said verbally, or they would

3   have some type of images on a projector, on a giant screen,

4   within the room, that constantly showed messages of vote no.

5   Q    Okay. And how long did these things actually last?

6   A    I'd say anywhere between a half an hour to 45 minutes.

7   Q    Okay. And generally, how were you informed that you

8   should attend these meetings?

9   A    So I would have a area manager come up to my station,

10   whether it was a packing station or the slam station, and say,

11   hey, are you Michelle? You're scheduled to go to a AR

12   training -- or a AR meeting, downstairs at AFE 1.

13   Q    Okay. And what happened -- what would usually happen

14   after they told you, you were scheduled to go to a meeting?

15   A    So they would round us up, because it was about 40 or 50

16   workers, from pack singles in our department. So they would

17   just round us up. That same area manager would then walk us

18   downstairs to AFE 1. So we would just fall, like, a line, and

19   just go downstairs to AFE 1, and the manager made sure that

20   everyone was there.

21   Q    How did you -- how did the managers make sure that

22   everyone was there?

23   A    So he would just -- he or she was just round us up and

24   make sure that everyone was there. He would take a head count

25   of the people that were there. Some workers would complain,



1   because they were repeatedly sent to these meetings.  And he

2   would repeat, several times, that it was mandatory that people

3   go to these AR trainings.

4   Q    Okay.  So do you remember the names of any of the managers

5   that told you to go to the trainings?

6   A    No, I don't.

7   Q    Okay.  And how did you know that they were managers?

8   A    With the managers outside of the building, they usually

9   wear, like, these bright neon vests.  They also walk around

10  with laptops or some kind of a radio, to keep communications

11  with the other managers inside of the facility.

12  Q    Okay.  Does anybody else in the facility wear a vest?

13  A    Yes.

14  Q    Okay.  So how do you distinguish managers from others in

15  vests?

16  A    Well, in the back of the best, it'll say, like -- pretty

17  much, it would say -- like, let's say a process assistant, so

18  that's, like, an assistant manager.  Operations is usually area

19  manager.  We have learning ambassadors that they help with

20  learning, and safety also.  So they work for the safety part of

21  the building.

22  Q    Okay.  So I think you said that the people who directed

23  you to go to the meetings were area managers?

24  A    Yes.  Yes.

25  Q    So how did you distinguish area managers from others with



1    vests?

2    A    Because their vest says operations on the back of it.

3    Q    Okay.

4    A    So that's usually an area manager.

5    Q    Okay.  When you were instructed to go to these meetings,

6    did you ever ask the manager's position?

7    A    No.

8    Q    Okay.  All right.  Did you attend a meeting on March 15th

9    of 2022?

10   A    Yes.

11   Q    Okay.  And where is that meeting?

12   A    That meeting was held in the AFE 1 breakroom, or I mean

13   satellite breakroom.

14   Q    Okay.  Is that the same room, just different names?

15   A    It's same room.  So it's the main satellite room.

16   Q    Okay.  And how many employees attended this meeting?

17   A    I would say anywhere between 40 to 50.

18   Q    Okay.  And who are the presenters at this meeting?

19   A    I believe the presenter was Eric (phonetic), and there was

20   a young woman with him.  I don't remember her name, though.

21   Q    Okay.  Was one of these two people the main speaker?

22   A    Yes.

23   Q    And who was that?

24   A    Eric.

25   Q    Okay.  Do you know Eric's last name?



1    A    No.

2    Q    Okay.  All right.  Do you remember what you were doing

3    before the meeting?

4    A    Before the meeting, I was running a slam line.  It's a

5    slam line in AFE 2; it's 504.

6    Q    Okay.  And how were you told that you needed to go to this

7    meeting?

8    A    So the area manager came to my station.  He asked me if I

9    was Michelle.  I said, yes, that I was.  He said, okay, you're

10   scheduled to go to a AR training downstairs in AFE 1.

11   Q    Okay.  And did you say anything in response?

12   A    No.

13   Q    Okay.  Specifically about this meeting, did anyone tell

14   you whether that meeting was mandatory or voluntary?

15   A    He said, repeatedly, that it was mandatory.  Because when

16   we went to -- there was a group of workers, so he usually would

17   take down a group of workers.  There was a lot of workers

18   complaining that they were just so sick and tired of going to

19   these meetings.

20        So you know, he would say, hey, you know, I understand

21   your guys frustration, but this is a mandatory meeting.  It is

22   mandatory, so you all need to go downstairs to the -- to AFE 1

23   training.

24   Q    Okay.  And do you recall the name of this manager?

25   A    No.



1    Q    Okay.  And you called him an area manager; how do you know

2    that he was an area manager?

3    A    He had on the bright neon vest, and the back of it, it

4    said "operations."

5    Q    Okay.  All right.  And did anyone -- so did you -- you

6    went to this meeting?

7    A    Yes.

8    Q    Did anyone walk with you from your station to the meeting?

9    A    The area manager did.

10    Q    Okay.  And any other employees?

11    A    All of the other employees that were scheduled to go.  So

12    it was a big -- a big group of us.  It was around 40 to 50

13    workers.

14    Q    Okay.  And what happened when you arrived at the AFE 1

15    breakroom?

16    A    So we all waited in line.  There was another manager who

17    would sit down at a desk and scan our badges.  The manager also

18    had a laptop that was attached to the badge.  So everyone would

19    be scanned in one-by-one, before they entered into the room.

20    Q    Okay.  And did you have an opportunity to record this

21    meeting?

22    A    Yes.

23    Q    Okay.  When did you begin recording the meeting?

24    A    At the beginning of the class.

25    Q    Okay.  And when did you stop recording the meeting?



1    A    I stopped recording the meeting at the ending of the

2    class, or when I was thrown out of the class.

3    Q    Okay.  So -- all right.  So did you stop before or after

4    you left the classroom?

5    A    Before, like, right when I walked towards the doors when

6    I -- I hit the button to not record anymore.

7    Q    Okay.  And what did you use to record the meeting?

8    A    My iPhone.

9    Q    Okay.  All right.  Okay.  And you said -- so what happened

10   during the meeting that led you to be kicked out?

11   A    During the meeting, I asked Eric --

12        MR. POWELL:  Objection, Your Honor.  This -- if she's

13   going to put the audio in; it'll speak for itself, just like

14   all of the other portions, the audio will --

15        JUDGE GREEN:  Is there some reason why we -- we need

16   testimony other than -- is it reflected in the audio.

17        MS. TOOKER:  It's reflected in the audo -- audio.

18        JUDGE GREEN:  Okay.

19        MS. TOOKER:  I can withdraw it, that's fine.

20   Q    BY MS. TOOKER:  All right.  So at this point, I'm going to

21   play some sections of General Counsel Exhibit 5.  All right.

22        MS. TOOKER:  All right.  So I'm going to start with minute

23   5 -- so 5:17.  Okay.  And we're going to go into -- until 6:38.

24   (Audio played at 2:56 p.m., ending at 2:57 p.m.)

25   Q    All right.  Ms. Valentin Nieves, there was another voice



1    besides Eric's on the tape.  Can you tell me who that was?

2    A    That was me.

3    Q    Okay.

4        MS. TOOKER:  All right.  So next, I am going -- so the

5    General Counsel is alleging that the statements related to dues

6    are unlawful.  We allege them as a threat to withhold wages and

7    benefits.  Wait.  Hold on.  Let me just make sure.  Yes.

8        All right.  The next section is -- oh, no, I'm sorry.  We

9    will enter them as a threat of discharge, the statements

10   related to the dues.

11       All right.  So the next section is 8:42 to 9:40.

12   (Audio played at 2:59 p.m., ending at 3:00 p.m.)

13       MS. TOOKER:  All right.  So that section, we are alleging

14   is a threat to withhold wage increases and benefits.

15       JUDGE GREEN:  What -- well -- I'm sorry -- what was the

16   end of that date -- that time range?  Do you know?

17       MS. TOOKER:  8:42 to 9:40.

18       JUDGE GREEN:  Thanks.

19       MS. TOOKER:  All right.  All right.  So at this time, I

20   would move -- sorry.  Let me just stop sharing.  I'm going to

21   move General Counsel Exhibit 5 into evidence.

22       JUDGE GREEN:  Any objection?

23       MR. POWELL:  No objection, Your Honor.

24       JUDGE GREEN:  Okay.  GC-5 is admitted.

25   **(General Counsel Exhibit Number 5 Received into Evidence)**



1      MS. TOOKER:  Okay.  Is it possible, we can just stipulate

2      that the Eric in the -- in the recording, is Eric Warrior

3      (phonetic throughout), as alleged in the complaint?

4      MR. POWELL:  That's fine.

5      MS. TOOKER:  Oh --

6      MR. POWELL:  We've admitted that -- I believe it -- I

7      believe we've made that admission in the -- in the answer to

8      the complaint.  It's fine.  We can stipulate that he was the

9      speaker -- Warrior was the speaker in the recording reflected

10     in GC-5.

11     MS. TOOKER:  All right.  Thank you.

12     All right.  So next, there's a few other General Counsel

13     exhibits that I would like to offer.  They are in SharePoint.

14     I added them over the break, so you might have to refresh.

15     It's General Counsel Exhibit 39 and General Counsel Exhibit 40.

16     General Counsel Exhibit 39 -- both were produced yesterday

17     pursuant to our subpoena.  39 appears to be the PowerPoint

18     presentation along with instructions and a script for the

19     presenters.  And General Counsel Exhibit 40 is the attendance

20     records for the March 15th meetings at JFK.

21     MR. POWELL:  Give us a moment to look at those and

22     confirm, and we'll be able to respond to the Court shortly.

23     JUDGE GREEN:  Okay.  Off the record.

24     (Off the record at 3:02 p.m.)

25     JUDGE GREEN:  So back on the record.



1      MS. TOOKER:  All right.

2      JUDGE GREEN:  Okay.  So hold on.  Let's just.

3      MS. TOOKER:  Oh, okay.  Sorry.

4      THE COURT REPORTER:  Your Honor, we are --

5      JUDGE GREEN:  We're on the record, right?

6      THE COURT REPORTER:  -- yeah.  We are.

7      JUDGE GREEN:  Yeah.  Okay.  So --

8      MR. POWELL:  We have no objection to GC-39 or GC-40.

9      JUDGE GREEN:  Okay.  So GC-39 and 40 are admitted.

10     **(General Counsel Exhibit Numbers 39 and 40 Received into**

11     **Evidence)**

12                    <u>**RESUMED DIRECT EXAMINATION**</u>

13     Q    BY MS. TOOKER:  All right.  Ms. Valentin Nieves, did any

14     manager or supervisor of Amazon ever tell you that the meetings

15     related to the Union were voluntary?

16     A    No.

17     Q    Okay.  And did any of your coworkers ever talk to you

18     about whether or not they considered the meetings mandatory?

19          MR. POWELL:  Objection.  Calls for hearsay.  Sounds like

20     it's being offered for the truth of the matter asserted.

21          JUDGE GREEN:  It does, so why is it that hearsay?  I mean,

22     let me tell you that I'm not going to accept -- I'm not going

23     consider it for that purpose.  You know, if you want to have

24     people say that they were told that it was mandatory, you have

25     to call those people.



1       MS. TOOKER:  Yeah.  All right.  We'll just leave it.  I'll

2    withdraw the question.

3       If I can just have two minutes off the record to review my

4    notes, Your Honor.  I might be done.

5       JUDGE GREEN:  Sure.  Off the record.

6    (Off the record at 3:05 p.m.)

7                     **RESUMED DIRECT EXAMINATION**

8    Q    BY MS. TOOKER:  All right.  Ms. Valentin Nieves, this --

9    prior to the Union's organizing campaign, were you ever -- did

10   you ever attend any large group meetings with Amazon managers

11   that were not from JFK8 where they asked you for feedback about

12   your terms and conditions of employment?

13   A    No.

14   Q    Okay.

15       MS. TOOKER:  That's all, Your Honor.

16       JUDGE GREEN:  Okay.  Thank you.

17       Is there going to be any cross-examination?

18       MR. POWELL:  I'm going to try to request the Jencks

19   materials at this point in time.  And yes, we'll have some

20   cross-examination.

21       JUDGE GREEN:  Okay.  So why don't we check back in in 15

22   minutes?

23       MS. TOOKER:  Okay.

24       JUDGE GREEN:  So 3:25.

25       Ms. Valentin Nieves, you can -- you can -- we're going to



1    be on break for 15 minutes at least, and you can do whatever

2    you want.  Just don't talk to anybody about your testimony or

3    the case while we're on the break, okay?

4         THE WITNESS:  Okay.

5         JUDGE GREEN:  All right.  Thank you very much.  Off the

6    record.

7    (Off the record at 3:09 p.m.)

8         JUDGE GREEN:  Okay.  And Ms. Valentin Nieves, the

9    Employer's attorneys are going to have a couple of questions

10   for you on cross-examination.  Okay.

11        THE WITNESS:  Okay.

12        JUDGE GREEN:  Whenever you're ready --

13                       **CROSS-EXAMINATION**

14   Q    BY MR. POWELL:  Good afternoon, Ms. -- Good afternoon, Ms.

15   Valentin Nieves.  My name is Kurt Powell, and I've got a few

16   questions to ask you regarding the testimony that you gave

17   earlier today.  Okay.

18   A    Okay.

19   Q    Can you hear me all right?

20   A    Yes.

21   Q    Okay.  Good.  So I believe you testified earlier that you

22   had been employed at the JFK8 facility since 2019 or so; is

23   that correct?

24   A    Yes.

25   Q    Okay.  And were you employed at the JFK8 facility in



1    November of 2021?

2    A    Yes.

3    Q    And did you -- were you working at the JFK facility during

4    November 20 -- 2021?

5    A    Yes.

6    Q    Did you go to any company meetings on the topic of unions

7    or unionization in November 2021?

8    A    Not that I remember.

9    Q    Now, you testified to certain meetings that you went to --

10   or the company held, and I think you referred to them as AR

11   meetings, or you said that the company referred to them as the

12   AR meetings.

13   A    Yes.

14   Q    Okay.  So I'm going to use the term AR meeting to refer to

15   the meetings that you testified to on direct, where the company

16   discussed the topic of unions or unionization.

17   A    Okay.

18   Q    All right.  So during the AR meetings that you attended in

19   February and March of 2022, during the presentations that were

20   given to you, was there a Power -- corresponding PowerPoint

21   slides that were shown on the screen?

22   A    Yes.

23   Q    And the speaker would be speaking off of the PowerPoint

24   slides that we're shown at the time?

25   A    Sometimes.  Each -- each class tended to be different



1    depending on who was leading the class.

2    Q    Now, during the time that -- that you were at these AR

3    meetings, was there ever a supervisor or manager from JFK8 in

4    the room during the meeting?

5    A    No.

6    Q    During these AR meetings that you attended, did you ever

7    see any employees sleeping during the meeting?

8    A    I'm sorry.  What was that?

9    Q    Did you see some employees sleeping during the AR meetings

10   that you attended?

11   A    No.

12   Q    Did you see some of your coworkers on their phones during

13   these meetings?

14   A    No.

15   Q    During these meetings, did the company or did the

16   facilitators administer any type of test or quiz to test your

17   knowledge based upon the presentation?

18   A    No.

19        MR. POWELL:  I don't have any other questions, Your Honor.

20        JUDGE GREEN:  Okay.  Thank you.

21        Any redirect?

22        MS. TOOKER:  No, Your Honor.

23        JUDGE GREEN:  Okay.

24        Okay.  Thank you very much, Ms. Valentin Nieves.  You are

25   free to go.



1    Ms. Miller, do you think you could just stop your video

2    feed?  It's a little icon in the bottom left-hand corner.

3    Thanks.

4        Okay.  So what else do we have?

5        MS. TOOKER:  We have one more witness, Your Honor.  And I

6    understand that she will be joining shortly.  I have asked her

7    to give me an ETA, but I think it might be a couple of minutes,

8    so maybe we can take a five minute break.

9        JUDGE GREEN:  Just who is it?

10        MS. TOOKER:  Her name is Madeline Wesley.

11        JUDGE GREEN:  Okay.

12        MS. TOOKER:  And I'll, in the meantime, upload the GC

13    exhibits related to her testimony too.

14        JUDGE GREEN:  Okay.  Let's go off the record.

15    (Off the record at 3:30 p.m.)

16        JUDGE GREEN:  So is the GC ready to call Ms. Wesley?

17        MS. TOOKER:  Yes, Your Honor.

18        JUDGE GREEN:  Okay.

19        So Ms. Wesley, if can unmute yourselves.

20        MS. WESLEY:  And then I'm going to swear you in, so raise

21    your right hand.

22    Whereupon,

23                          **MADELINE WESLEY**

24    having been duly sworn, was called as a witness herein and was

25    examined and testified, telephonically as follows:



1       JUDGE GREEN: Okay. Thank you. So are you alone in the

2  room?

3       THE WITNESS: Yes.

4       JUDGE GREEN: Okay. So please don't talk to anybody,

5  either in person or through a phone or handheld device. Also,

6  don't look at any documents other than what's shown to you on

7  the screen or when somebody directs you to look at. Okay.

8       THE WITNESS: All right.

9       JUDGE GREEN: And for the moment, please just state and

10  spell your name -- full name for the record.

11       THE WITNESS: Madeline Wesley, M-A-D-E-L-I-N-E

12  W-E-S-L-E-Y.

13       JUDGE GREEN: Okay.

14       MS. TOOKER: All right.

15       So Ms. Tooker, whenever you're ready.

16                 **DIRECT EXAMINATION**

17  Q   BY MS. TOOKER: Ms. Wesley, are you currently employed?

18  A   Yes.

19  Q   And who is your current employer?

20  A   Amazon.

21  Q   When did you start working for Amazon?

22  A   Around August of 2021.

23  Q   Okay. And which facility do you work in?

24  A   LDJ5.

25  Q   Okay. And where is that located?



1    A    Staten Island.

2    Q    And what's your current position?

3    A    I'm a learning ambassador and regular associate 21.

4    Q    What's a learning ambassador?

5    A    We help assist training new hires and training people in

6    different skills around the warehouse.

7    Q    Okay.  And when you're not a learning ambassador, what are

8    your job responsibilities?

9    A    The same as any other regular associate.  I load boxes

10   into carts and put -- load carts into trucks, regular support

11   center tasks.

12   Q    Okay.  So what's the difference in the LDJ5 facility

13   versus the JFK8?

14   A    So LDJ5 is a storage center, and JFK8 is a fulfillment

15   center.  So at JFK8, the boxes get packed up with items and

16   then they get sent to sort centers, and we basically sort them

17   from where they're go -- in the sort centers, we sort them

18   based on what delivery station they're going to next.

19   Q    Okay.  And what's your current pay rate?

20   A    18.80, an hour.

21   Q    Okay.  And was there ever a time that you worked for

22   Amazon and you were paid minimum wage?

23   A    No.  I started at 18.25.

24   Q    Okay.  And the wage increases that you've received since

25   you began working for Amazon, were those automatic?



1    A    Yes.

2    Q    Okay.  And were they based on the amount of time that you

3    had worked at Amazon.

4    A    Yes.

5    Q    Okay.  All right.  Are you familiar with the Amazon Labor

6    Union?

7    A    Yes.

8    Q    Have you ever held a position with the Amazon Labor Union?

9    A    Yes.

10   Q    What was that position?

11   A    I was secretary treasurer.

12   Q    Okay.  And for what time period were you a secretary

13   treasurer?

14   A    Around November 2021 to about May 2022.

15   Q    Okay.  And were you elected or appointed to that position?

16   A    I was elected.

17   Q    Okay.  All right.  Was there ever a time that you attended

18   meetings held by Amazon regarding the Union?

19   A    Yes.

20   Q    Okay.  And when was the first time that you attended this

21   type of meeting?

22   A    Around late October or early November of 2021.

23   Q    Okay.  And how many of these types of meetings did you

24   attend in October or November of 2021?

25   A    Around two.



1    Q    And where were these meetings held?

2    A    They were held in the training room, which is a room next

3    to the HR and management offices that the learning department

4    usually uses.

5    Q    Okay.  How many employees were in each of these meetings?

6    A    Anywhere between 10 and 20.

7    Q    Okay.  And who were the speakers at these meetings?

8    A    They were usually employee relations consultants.

9    Q    Okay.  And besides the 10 to 20 employees and the employee

10   relations consultants who were giving the presentation, was

11   there anybody else present in the rooms during these meetings?

12   A    Sometimes HR or management would be in the room.

13   Q    And what were the general topics of the October and

14   November meeting?

15   A    We -- they discussed what unions are.  They discussed the

16   collective -- the process of collective bargaining.  And they

17   discussed the Amazon Labor Union in general.

18   Q    Okay.  And did -- during these meetings in October and

19   November, did the presenters ask employees to do or not do

20   anything during the meetings?

21   A    They were telling people to, quote/unquote, protect (audio

22   interference) signature, and they were trying to discourage

23   people from signing authorization cards for the Union.

24   Q    Okay.  And so in general, for those two October and

25   November meetings that you attended, how was it that you were



1    told to go?

2    A    Usually a PA or a manager would approach come -- approach

3    me while I was working on the floor, sometimes HR, and they

4    would tell me that I was scheduled for a meeting and to go to

5    the training room at a certain time.

6    Q    Okay.  What's a PA?

7    A    A process assistant.  It's a tier three associate.  They

8    are in the bargaining unit at JFK8, and they weren't able to

9    vote in the election at LDJ5.  But they're -- they're like mid-

10   level management.

11   Q    Okay.  And you said the other people who were directing

12   you to attend these meetings were managers or HR

13   representatives?

14   A    Yes.

15   Q    Okay.  So the managers or HR representatives who directed

16   you to go to these meetings, did they usually work in LDJ5?

17   A    Most of the time.  And -- during the October, November

18   period, yes.

19   Q    Okay.  So how did you identify them as managers or HR

20   representatives?

21   A    They wear distinct colored vests.  The managers wear --

22   have red stripes on their vests, and HR has a purple stripe on

23   their vest.

24   Q    Did any of the managers, process assistants, or HR

25   representatives who told you to go to the meetings in October



1  or November tell you that those meetings were voluntary?

2  A    No.

3  Q    Okay.  All right.  And did there come a time that their --

4  that Amazon stopped holding meetings about the Union?

5  A    There was a brief time where the meetings stopped when the

6  ALU had -- we had to withdraw our petition for election in,

7  like, mid-November, and they didn't start up again until late

8  December, early January.

9  Q    So now, for the time period beginning late December, early

10  January, December 2021, January 2022, through the election in

11  April, approximately how many meetings hosted by Amazon about

12  the Union did you attend?

13  A    Around ten.

14  Q    Okay.  And where were these meetings held?

15  A    The training room.

16  Q    Okay.  And how many employees were at each of these

17  meetings?

18  A    About 10 to 20, sometimes a little less.

19  Q    And who conducted these meetings?

20  A    The employee relations consultants.

21  Q    Okay.  And other than the employees in the room and the

22  employee relations consultants, were there any managers in

23  the -- or, I guess there's -- were there -- was there anybody

24  else in the -- in the room for the meetings?

25  A    Sometimes HR or management would be in the room.



1  Q    Okay.  And generally, how were you informed that you

2  should attend these meetings in the January through April time

3  period?

4  A    So oftentimes a process assistant, a manager, or an HR

5  representative would come up to me while I was on the floor and

6  tell me I was scheduled for a meeting, or sometimes the

7  managers or the PAs would come around with, like, a badge

8  scanner, and they'd scan my badge, and they'd tell me whether

9  or not I had -- I was supposed to go to the meeting.

10  Q    Okay.  And so once you were informed that you were

11  supposed to go to a meeting, what did you do?

12  A    I -- I would go to the meetings.

13  Q    Okay.  Did you go by yourself or with other employees?

14  A    Sometimes other employees, yeah, if there were other

15  people in my -- in the area that I was working with who also

16  were supposed to go.

17  Q    Okay.  All right.  Were you ever escorted by any managers,

18  process assistants, or HR representatives to meetings?

19  A    Escorted to a meeting.  Yes.  Sometimes the -- the Pas, or

20  the managers, or HR reps would gather a group of people and

21  walk everybody over to the training room.

22  Q    Okay.  And so you said that you went to approximately ten

23  of these meetings.  Among those -- of those ten meetings,

24  approximately how many were you -- did you go with a group of

25  employees that was escorted to the meeting?



1    A    I don't remember.

2    Q    Okay.  Did you ever participate in the meetings when you

3    attended?

4    A    Yes.

5    Q    And in what way did you participate?

6    A    I would often raise my hand and ask questions or challenge

7    the information that was being presented by the employee

8    relations consultants.

9    Q    Okay.  And do you know whether you attended a meeting

10   hosted by Amazon about the Union on April 10th of 2022?

11   A    Yes.

12   Q    Okay.  And where was that meeting held?

13   A    The April 10th?  The training room.

14   Q    Okay.  And approximately how many employees attended that

15   meeting?

16   A    It was probably one of the more full ones, probably closer

17   to the 20 person range.

18   Q    Okay.  And other than the employees in the room, who --

19   who was in the room?

20   A    Employee relations consultant -- I believe it was Rebecca

21   Smith.

22   Q    Okay.  Anybody else?  Just Rebecca Smith?

23   A    I don't recall.  I think it was just Rebecca Smith.

24   Q    Okay.  And was Rebecca Smith the presenter for that

25   meeting?



1    A    I believe so.

2    Q    Okay.  Okay, and what were you doing before this April

3    10th, 2022 meeting?

4    A    I was probably working on the floor.

5    Q    Okay.  So what happened when you arrived at the training

6    room?

7    A    They scanned my badge, and I signed out.

8    Q    Okay.  And did you have an opportunity to record this

9    meeting?

10   A    Yes.

11   Q    What did you use to record it?

12   A    The voice memo app on my phone.

13   Q    Okay.  And when did you start recording?

14   A    While I was walking to the training room.

15   Q    And when did you stop recording?

16   A    When I was walking back to work from the training room.

17   Q    Okay.

18   A    After the meeting.

19   Q    All right, and did you provide a copy of this recording to

20   the National Labor Relations Board?

21   A    Yes.

22   Q    Okay.  Did you alter the recording in any way before you

23   provided it to the Board?

24   A    No.

25        MS. TOOKER:  Okay.  All right.  So at this time I would



1    like to play two sections from the -- from what's been marked

2    General Counsel Exhibit 6.

3          JUDGE GREEN:  Okay.  There's a Kathleen Cole in the

4    waiting room.  Is she anybody's witness?

5          MS. TOOKER:  She's not a witness I'm expecting.

6          JUDGE GREEN:  Okay.

7          MR. POWELL:  For us, Your Honor.

8          JUDGE GREEN:  Okay.

9          MS. TOOKER:  All right, so let me just share here.  All

10   right, so the first section that I will play is 9:40 to 11:33.

11   That's too far.  All right.

12   (Audio played at 3:56 p.m., ending at 3:58 p.m.)

13        MS. TOOKER:  All right, so we are alleging that the --

14   this statement is a threat to withhold wage increases and

15   improvements to working conditions.  All right, and so the

16   second section is 17:15 to 17:35.  Okay, I'm just going to

17   start here.  It's a little bit before, but it'll get it done.

18   All right, so 17:15 to 17:35 is the relevant section.

19   (Audio played at 3:59 p.m., ending at 3:59 p.m.)

20        MS. TOOKER:  Okay, so I think that we're not specifically

21   alleging that that was unlawful, just that it informs --

22   informs the previous discussion of status quo that we are

23   alleging is unlawful.

24        All right, so at this time, I would like to request that

25   General Counsel Exhibit 6 be admitted into evidence?



1      JUDGE GREEN:  Any objection?

2      MR. POWELL:  No, Your Honor.

3      JUDGE GREEN:  And GC-6 is admitted.

4    **(General Counsel Exhibit Number 6 Received into Evidence)**

5      MS. TOOKER:  Okay, and I would also like to offer -- let's

6    see.  Actually, first let me ask Ms. Wesley.

7    Q    BY MS. TOOKER:  During the April 10th meeting, was there

8    any PowerPoint presentations used?

9    A    Yes.

10      MS. TOOKER:  Okay.

11      And so at this time, I would like to offer General Counsel

12   Exhibit 41, which was provided yesterday pursuant to our

13   subpoena, and labelled that it was the PowerPoint presentation

14   script and instructions for presenters for the April 10th and

15   18th meetings.

16      JUDGE GREEN:  Any objection?

17      MR. POWELL:  No, Your Honor.

18      JUDGE GREEN:  Okay.  GC-41 is admitted.

19   **(General Counsel Exhibit Number 41 Received into Evidence)**

20      MS. TOOKER:  Okay.  And I would also like to offer GC-42,

21   which is the attendance records for the April 10th meeting, or

22   meetings.

23      JUDGE GREEN:  Any -- any objection?

24      MR. POWELL:  No, Your Honor.

25      JUDGE GREEN:  Okay.  GC-42 is admitted.



1    **(General Counsel Exhibit Number 42 Received into Evidence)**

2        MS. TOOKER:  Okay.  All right.

3    Q    BY MS. TOOKER:  All right, Ms. Wesley, did anything change

4    regarding the frequency or nature of Amazon's meetings about

5    the union in the week prior to the April election at LBJ5

6    A    Yes.

7    Q    Okay, what changed?

8    A    So instead of pulling some groups of employees to the

9    training room, what Amazon did the week right before the

10   election, was they shut down production for the entire facility

11   for about an hour of every single shift, and they told everyone

12   to go to an assem -- like, an assembly style meeting at the

13   back of the facility.

14   Q    Okay.  And did you attend a meeting on April 19th of 2022?

15   A    Yes.

16   Q    Okay.  And where was that meeting held?

17   A    That meeting was held at the back of the building where

18   the robots are.

19   Q    Okay.  And how many employees approximately attended this

20   meeting?

21   A    The entire shift was there.  It was about -- if I had to

22   guess, 200 employees.

23   Q    Okay.  And other than the approximately 200 employees in

24   the room, who -- who else was in the room?

25   A    It was, I believe, the entire staff, all the process



1    assistants, all the managers, all the HR representatives.

2    Scott Taylor, the general manager of the building, and a

3    corporate executive woman from Seattle.

4         JUDGE GREEN:  Okay.

5    Q    BY MS. TOOKER:  Okay, and who led this meeting?

6    A    It was Scott Taylor and the corporate executive woman from

7    Seattle.

8    Q    Okay.  And I'm sorry, what was Scott's position -- Scott's

9    position?

10   A    He's the general manager of LBJ5.

11   Q    Okay.  And what were you doing before this meeting

12   started?

13   A    I was working.

14   Q    Okay.  And how did you learn that you were supposed to go

15   to the meeting?

16   A    The belt stopped moving and the process assistant told

17   everyone to go to the back of the room, and where -- that was

18   where -- and then at the meeting, everyone had to have their

19   badges scanned to enter.

20   Q    Okay.  And did you discuss whether or not this meeting was

21   mandatory with anyone?

22   A    Yes.

23   Q    Okay.  And so who did you have this discussion with?

24   A    I approached a woman in a purple HR vest, and I asked her

25   if the meeting was mandatory, and she said, we would like



1    everyone to attend, yes.

2    Q    And do you know her name?

3    A    I believe her name is Brittany.

4    Q    Okay.  Do you know her last name?

5    A    I think it might be Clayton.

6    Q    All right, and did you have an opportunity to record this

7    meeting on April 19th?

8    A    Yes.

9    Q    Okay.  And when did you start recording it?

10   A    So I made two recordings.  The first one was when we

11   started walking when they shut down the conveyor belt, and I

12   started walking with a large group of employees over to the

13   back of the building.  However, we were sitting there waiting

14   for the presentation to start for, like, a few minutes.  So I

15   stopped the recording and started it again so that the file

16   would not be too large.

17   Q    Okay, so when you started the second recording, when

18   this -- was that before or after the meeting actually started?

19   A    It was before.

20   Q    And when did you stop recording the meeting?

21   A    When the meeting was over, while I was walking back.

22   Q    Okay.  And did you provide this recording to the National

23   Labor Relations Board?

24   A    Yes.

25   Q    Okay.  And did you alter the recording in any way before



1    you provided it to the National Labor Relations Board?

2    A    No.

3        MS. TOOKER:  Okay.  Ready -- Your Honor, at this time, I

4    would like to play a section of recording 8(b).

5        JUDGE GREEN:  Okay.

6        MS. TOOKER:  All right.  Screen -- okay, so the first

7    section that I'm going to play, I think actually -- the only

8    section I'm going to play is from 9:40 to 11:57.

9    (Audio played at 4:07 p.m., ending at 4:10 p.m.)

10        MS. TOOKER:  All right, so we are alleging that statement

11    to be a thread of loss of benefits.  All right.

12    Q    BY MS. TOOKER:  All right, Ms. Wesley, just going back to

13    the times that you were told to go to the meetings related to

14    the union, at the time that you were directed to go to the

15    meetings, were you ever told that these meetings were

16    voluntary?

17    A    There was one time.

18    Q    Okay.  And so sorry, that --

19    A    But at the time of going to the meetings, no.

20    Q    Okay, so just to clarify, at the time -- so when the

21    managers or process assistants or HR managers were telling you

22    it's -- you're -- you're on the schedule to go to the meeting,

23    or you need to attend the meeting, did -- at that time, did

24    anybody ever tell you it was voluntary?

25    A    No.



1    Q    Okay.  And was there any time that any manager or

2    supervisor told you that the meetings were voluntary?

3    A    Sorry, can you repeat the question?

4    Q    Yes.  Was there any time that any manager or supervisor

5    from Amazon told you that the meetings about the union were

6    voluntary?

7    A    There was one time an employee relations consultant told

8    me they were voluntary.

9    Q    Okay.  And do you remember which employee relations

10   consultant that was?

11   A    Rebecca Smith.

12   Q    Okay.  And do you remember when she said this to you?

13   A    It was during one of the meetings.

14   Q    Okay.  Approximately the time frame that that meeting

15   would have occurred in?

16   A    It would have occurred in the time frame from, like,

17   January to -- through April.

18   Q    Okay.  And so can you explain to us what happened before

19   she said this to you?

20   A    Yes.  It was in the middle of a meeting where there were

21   other employees sitting there listening.  I raised my hand, and

22   I told her that I felt like the meetings were coercive because

23   they were mandatory.  And she responded by saying that there

24   were -- that there were -- that they were not mandatory, that

25   they -- that people -- anyone could leave whenever they wanted



1    to.

2    Q    Okay.  And approximately how many employees were in

3    attendance at this meeting?

4    A    10 to 20 approximately.

5    Q    Okay.  And after she said that, did any of the employees

6    leave the meeting?

7    A    No.

8    Q    Okay.  Were there ever any meetings that you attended that

9    you were scanned at the end, like after -- both before and

10   after the meeting?

11   A    Yes.  They did scan badges after the meeting sometimes.

12   Q    Okay.  All right.  And was there any -- ever any time that

13   anybody told you that you were not allowed to attend a meeting?

14   A    There was one time where I got scanned into a meeting and

15   I sat down, and a man came and asked me to leave, stating that

16   I had already attended the meeting.

17   Q    Okay.  And how did you respond?

18   A    I told him I felt like I was being discriminated against

19   because I was often outspoken in these meetings in favor of the

20   union.  This was in front of other employees who were

21   witnessing the situation, and so he told me that he would sit

22   with me for the rest of the meeting, and then after the

23   meeting, I could tell him if I had already attended the meeting

24   or not.

25   Q    Okay.  And do you remember what role this person who told



1    you this had?

2    A    I don't remember.

3    Q    Okay.  All right, and do you know how often -- did -- that

4    you specifically observed, were there any employees who ever

5    were required to attend meetings multiple times in the same

6    week?

7    A    Yes.  I witnessed people attending meetings multiple times

8    in the same week.

9    Q    Okay.  And do you know if there was ever -- that you

10   specifically witnessed, did you see any employees who were --

11        MR. POWELL:  Relevancy.

12        JUDGE GREEN:  I'm sorry, what was that?

13        MR. POWELL:  What's the -- what's the relevancy of all of

14   this?

15        MS. TOOKER:  Of the frequency of people attending

16   meetings?

17        JUDGE GREEN:  Yes.

18        MS. TOOKER:  It -- so I think it goes to the overall

19   coercive impact of meetings.

20        JUDGE GREEN:  Okay, overruled.

21        MS. TOOKER:  Okay, all right.

22   Q    BY MS. TOOKER:  And did you ever observe any -- any other

23   employees who were required to attend the meetings regarding

24   the union more than once in the same shift?

25   A    Not in the same shift, but once in the same day, yes.



1    Q    Okay.

2         MR. POWELL:  Objection, calls for speculation.  Her

3    observations of people going to meetings doesn't establish that

4    they were required to go.  Perhaps they wanted to go to

5    multiple meetings.

6         JUDGE GREEN:  Yeah, but we can take things one at a --

7         MR. POWELL:  (Indiscernible, simultaneous speech) --

8         JUDGE GREEN:  We can take things one at a time.  If you

9    want to follow up with that, you can on cross.  It's overruled.

10   Q    BY MS. TOOKER:  Okay, do you know -- so the -- is there a

11   specific person that you're referring to who went to two

12   meetings in the same day?

13   A    There are many people who attended meetings in the same

14   day.

15   Q    Okay.  And do you have any specific knowledge about

16   whether those people were instructed to go to those two

17   different meetings in the same day, or whether they elected to

18   go to the two meetings in the same day?

19   A    No.  Often, employees would come up and complain to me and

20   ask me if they were required to go to meetings, and they would

21   tell me instances --

22        MR. POWELL:  Objection, totally hearsay.

23   A    -- where --

24        JUDGE GREEN:  Okay, so -- okay.  Continue the answer.  Go

25   ahead, continue the answer.



1    A    There were multiple instances.  They told me that there

2    were multiple -- multiple instances where they were forced to

3    go to a meeting in the same day, and that they were approaching

4    me because they did not like the frequency in which they were

5    having to go to meetings, and they asked a manager if they had

6    to go, and the manager would respond yes.

7         JUDGE GREEN:  Okay.  So it's the same -- that is valid

8    hearsay objection.  I'm not going to use it for the truth of

9    the matter, whether these people, you know, were called to the

10   meetings.

11        MS. TOOKER:  You -- Your Honor, if I can just be heard for

12   a minute on that?  We're still waiting on the attendance

13   records for all of the meetings that are responsive to -- I

14   forget whether it's --

15        JUDGE GREEN:  Okay.

16        MS. TOOKER:  -- (indiscernible, simultaneous speech) 18 or

17   19.  So to the extent that those records are produced later,

18   but -- they'll certain -- certainly show this.  But to the

19   extent that they're not, you know, we would ask that you rely

20   upon --

21        JUDGE GREEN:  Okay.

22        MS. TOOKER:  -- hearsay testimony.

23        JUDGE GREEN:  Okay, I'll consider that.

24        MS. TOOKER:  Okay.

25    Q    BY MS. TOOKER:  Did you ever receive a recording of a



1    meeting held by Amazon about the union from an employee by the

2    name of Ammanubia Lawrence?

3    A    Yes.

4    Q    Okay, and I'm just going to spell that name for the

5    record.  My -- I -- I believe it is spelled A, M like Mary, M

6    like Mary, A, N like Nancy, U, B like boy, I-A.  And that the

7    last name is Lawrence, normal spelling.  So did you provide

8    this recording to the National Labor Relations Board?

9    A    Yes.

10   Q    Okay.  And from the time that you received it from Ms.

11   Lawrence, and your providing it to the NLRB, did you modify the

12   recording in any way?

13   A    No.

14        MS. TOOKER:  Okay.  Your Honor, if I can just have two

15   minutes off the record to consult with cou -- with co-counsel,

16   I think we might be done for now.

17        JUDGE GREEN:  Okay, off the record.

18   (Off the record at 4:19 p.m.)

19        JUDGE GREEN:  Back on the record.

20                    **RESUMED DIRECT EXAMINATION**

21   Q    BY MS. TOOKER:  Okay, so Ms. Wesley, you testified earlier

22   about a man who told you to leave the meeting, and then told

23   you that he would sit with you for the entire meeting?

24   A    Yes.

25   Q    Did he in fact sit next to you the entire meeting?



1      A      He sat across the row.

2          MS. TOOKER:  Okay.  I don't think that I did this, but I

3      would like to offer General Counsel 8(b) into evidence.

4          JUDGE GREEN:  Okay, any objection?

5          MR. POWELL:  No, Your Honor.

6      **(General Counsel Exhibit Number 8(b) Received into Evidence)**

7          MS. TOOKER:  All right, and then there's also some

8      additional documents that were provided yesterday that relate

9      to the April 19th meeting.  I have marked them as General

10     Counsel Exhibit 43 and 44.  General Counsel Exhibit 43 was

11     labelled Scott Taylor notes.  And General Counsel Exhibit 44 is

12     the LBJ5 training attendance for April 19th.  I would request

13     that both are entered into evidence.

14         JUDGE GREEN:  Okay, any -- any objection?

15         MR. POWELL:  (Audio interference), Your Honor, on the

16     SharePoint.

17         JUDGE GREEN:  Oh.  Okay.  So did you -- I -- I missed

18     that, a little bit.  Did you say there's no objection to 43 and

19     44?

20         MS. TOOKER:  I think he said that they were conferring

21     the --

22         JUDGE GREEN:  Okay.

23         MS. TOOKER:  -- they were reviewing it on SharePoint.

24         MR. POWELL:  Yeah, we're just looking at the SharePoint to

25     confirm.



1       JUDGE GREEN:  Okay.

2       MR. POWELL:  Okay.  43 I have no objection.  For some

3  reason on GC-44, some Bates numbers are missing on 1 pages 1

4  through 5.  I don't know if it was something that happened in

5  terms of the imaging or copying, or whatever happened, but we

6  don't have any objection to it.  I just -- you know, we don't

7  have the same reference -- point of reference because the Bates

8  numbers appear to be missing.

9       MS. TOOKER:  I -- as far as I know, I downloaded it

10  straight from your product -- your production yesterday.  So --

11  but happy to fill --

12      MR. POWELL:  Well, we can deal -- we can deal with it off

13  the record if I think we need -- need to.  But we don't have

14  any objection to the -- to the exhibit as entered in here.

15      MS. TOOKER:  Okay.

16      MR. POWELL:  Just the details.

17      JUDGE GREEN:  Okay, so GC-43 and 44 are admitted.

18      **(General Counsel Exhibit Numbers 43 and 44 Received into**

19      **Evidence)**

20      JUDGE GREEN:  If you want to swap out the -- what we

21  currently have for one with the proper Bates stamps, we can do

22  that.

23      MS. TOOKER:  Okay.  I don't have any additional questions

24  at this time, Your Honor.

25      JUDGE GREEN:  Okay.



1        Is there going to be any cross?

2        MR. POWELL:  Yes, Your Honor.

3        JUDGE GREEN:  Okay.

4        MR. POWELL:  And we would -- we would request the Jencks

5    materials to be provided for this witness.

6        MS. TOOKER:  Okay.  There are two affidavits, and no

7    additional Jencks materials.  One of the affidavits

8    specifically relates to a matter that's still before the

9    region.  I -- so there is some significant redactions.  But

10   none of that is relevant to her -- Ms. Wesley's testimony

11   today.

12       JUDGE GREEN:  Okay.

13       MS. TOOKER:  So just --

14       JUDGE GREEN:  So would the Respondent like me to do an in-

15   camera -- in-camera review or -- of the second redacted

16   affidavit, or no?

17       MR. POWELL:  Your Honor, I don't believe that will be

18   necessary.  If we have any concerns upon seeing the redactions

19   in that affidavit, we will alert you.  But otherwise, I don't

20   think it's necessary.

21       JUDGE GREEN:  Okay.  okay, so why don't we go off for 15

22   minutes, go back on the record  at 4:45?

23       And Ms. Wesley, you can do whatever you want during the

24   break.  Just don't talk to anybody about your testimony, or

25   about the case, okay?



1          THE WITNESS:  Okay.

2          JUDGE GREEN:  And if you need more time, we'll revisit

3     that.

4          Okay, off the record.

5     (Off the record at 4:27 p.m.)

6          JUDGE GREEN:  Okay, so Ms. Wesley, the employer's attorney

7     is going to have some questions for you on cross-examination,

8     okay?

9          THE WITNESS:  Okay.

10         MR. POWELL:  Thank you, Your Honor.

11                         **CROSS-EXAMINATION**

12    Q    BY MR. POWELL:  Good afternoon, Ms. Wesley.  My name is

13    Kurt Powell; I'm representing Amazon in this matter, and I've

14    got a few questions to ask you related to the testimony that

15    you provided on direct examination for Ms. Tooker.

16    A    Okay.

17    Q    So you testified that you had been employed at the Amazon

18    LBJ5 facility since approximately August of 2021; is that

19    correct?

20    A    Yes.

21    Q    And based upon your experience there, approximately how

22    many employees are employed at LBJ5?

23    A    Currently, or during the election?

24    Q    During the election campaign.

25    A    About 1,600.



1    Q    In your testimony, you testified about Amazon

2    communicating to employees that they should protect their

3    signature, or testimony that -- your words to that effect.  Do

4    you recall that testimony?

5    A    Yes.

6    Q    And during Amazon's communications to associates regarding

7    that topic, Amazon encouraged employees to do their own

8    research, correct?

9    A    I don't recall.

10   Q    They encouraged employees to get the facts before they

11   signed anything, correct?

12   A    I don't recall.

13   Q    They directed people to the NLRB website to -- to get more

14   information if they had questions about what the law provided,

15   correct?

16   A    I don't recall that specifically.

17   Q    They advised employees to read a union authorization card

18   before they signed it, to make sure they understood what they

19   were signing, correct?

20   A    I -- I don't recall that.

21   Q    You testified during -- that -- during your testimony on

22   direct that at the various meetings that you attended regarding

23   union and unionization, that you -- you spoke of and offered

24   contrary views; is that correct?

25   A    Yes.



1    Q    And did you do so frequently?

2    A    Yes.

3    Q    And did anybody stop you from expressing those views

4    during these meetings?

5    A    Oftentimes they -- people would try to get me to stop

6    speaking.  Sometimes that did happen, yes.

7    Q    Who were these people?

8    A    The employee relations consultants.

9    Q    Just to say, we need to move -- move on?  Did they allow

10   you to speak, though?

11   A    They -- yeah, they would allow me to speak, but often they

12   would stop me, and then --

13   Q    And say, we need to continue to move on, as far as they

14   interrupted you?

15   A    -- or they would -- or they would tell me that I had to

16   ask questions individually in -- instead of in the meeting.

17   Q    And you testified to a number of recordings.  I guess two

18   recordings that you made.  Maybe three.  How many recordings

19   did you make of various meetings that you attended on the topic

20   of union -- unionization?

21   A    I don't remember the exact number.

22   Q    Can you give me an estimate?

23   A    Maybe approximately five?

24   Q    And you turned all of these recordings over to the NLRB;

25   is that correct?



1    A    I believe I retu -- I turned all of them in, yes.

2    Q    You testified earlier about a meeting that you attended

3    with Rebecca Smith in the January to April time frame where

4    Rebecca Smith told you that you didn't have to stay, that the

5    attendance at the meeting was voluntary.  Do you recall that

6    testimony?

7    A    Yeah.

8    Q    And do you recall when in the January to April time frame

9    that exchange between you and Ms. Smith at one of these

10   meetings occurred?

11   A    No, I don't recall the specific date.

12   Q    Do you recall if it was in the January time frame or in

13   the April time frame?  Can you put it -- put it -- can you put

14   it towards the beginning or the end, or you just don't recall

15   one way or the other?

16   A    Sorry, I don't remember.

17   Q    Did you tell others about the fact that Rebecca Smith had

18   told you that the meeting was voluntary?

19        MS. TOOKER:  Objection, relevance.

20        JUDGE GREEN:  Overruled.

21   Q    BY MR. POWELL:  Did you tell other employees about it?

22   A    I don't think so.

23   Q    You don't recall?

24   A    I don't really remember.

25   Q    Did you continue to go to these meetings after you were



1    informed that they were voluntary?

2    A    Yes.

3    Q    Why did you continue to go to them if you believed they

4    were voluntary?

5         MS. TOOKER:  Objection, relevance.

6         MR. POWELL:  I'll move on, that's fine.  I'll withdraw the

7    question.

8    Q    BY MR. POWELL:  During the small group meetings that you

9    attended with Rebecca Smith, did she give you any information

10   about her background and experience?

11   A    Maybe a little bit.

12   Q    Did she tell you that she had previously worked for the

13   Teamsters union?

14   A    I believe she did say that, yes.

15   Q    And she talked to you about her experience in collective

16   bargaining during the period of time that she was in the

17   Teamsters union?

18   A    I don't recall any specific information about that.

19   Q    At any of these meetings that you attended, where the

20   company conducted a meeting and discussed the topic of a union,

21   did the company administer any type of test or quiz to you to

22   test your knowledge of the information that had been provided

23   that session?

24   A    No.

25   Q    During any of these small group meetings that you attended



1    did you observe any of your coworkers sleeping during the

2    meetings?

3    A    I usually sat at the front; I don't know.  I don't think I

4    ever witnessed that.

5        MR. POWELL:  Just one second here.

6    Q    BY MR. POWELL:  To your knowledge, did you not go to any

7    of the -- in other words, did you fail to attend any of the

8    meetings that were conducted on the topic of unions or

9    unionization at the -- at the LBJ5 facility?

10   A    I don't know if I understand the question.

11   Q    Okay, let me rephrase it for you.  During the period of

12   time that the company was -- let's -- let's focus on the

13   January to April time frame.  Is it your understanding that the

14   company was presenting a different meeting on the topic of

15   unions on a weekly basis?

16   A    Yes.

17   Q    Did you go to every -- a meeting at least every week

18   during that time period?  Or were there some weeks when you

19   missed the meeting?

20   A    I don't specifically know.  There may have been a week

21   that I missed.

22   Q    Can you recall when that week would have been, or why?

23   A    Possibly -- possibly March.

24   Q    All right.  Did you receive any kind of communication from

25   the company about the fact that you had failed to attend that



1 meeting?

2 A I -- I don't know if I did miss a meeting, to be clear.

3 If I did, it would have been in March.

4 Q Okay.  Did you receive any kind of communication from the

5 company that you had failed to attend any meetings?

6 MR. POWELL:  No further questions, Your Honor.

7 JUDGE GREEN:  Okay.

8 Just a quick question.  Were you -- did you miss -- were

9 you at work and missed a meeting, or were you not at work?

10 THE WITNESS:  If I missed --

11 JUDGE GREEN:  Potentially.

12 THE WITNESS:  -- a meeting -- Yeah.  If I missed a

13 meeting, it would have probably been because I wasn't working.

14 JUDGE GREEN:  Okay.  You think you might have been off

15 from work for a week in March?

16 THE WITNESS:  Yes, that is very likely.

17 JUDGE GREEN:  Okay.

18 Is there any redirect?

19 MS. TOOKER:  Yeah, very briefly, Your Honor.

20        **REDIRECT EXAMINATION**

21 Q BY MS. TOOKER:  Were -- were there any times that you were

22 directed to go to a meeting while at work and did not attend

23 that meeting?

24 A No.

25 MS. TOOKER:  Okay, that's all, Your Honor.



1         JUDGE GREEN:  Okay.  Any recross?

2         MR. POWELL:  No, Your Honor.

3         JUDGE GREEN:  Okay, thank you very much, Ms. -- Ms.

4    Wesley.  You're free to go.

5         THE WITNESS:  All right, thank you, Your Honor.

6         JUDGE GREEN:  So is that we have for today?

7         MS. TOOKER:  Yes.  That's all for today, Your Honor.  I

8    did want to request if we could start a little bit earlier

9    tomorrow at 9:30, just to accommodate my first witness.

10        JUDGE GREEN:  Okay.

11        MS. TOOKER:  Like I said, I anticipate that we'll be done

12   with the two witness -- the two witnesses we have tomorrow are

13   the shortest of the witnesses.  So I anticipate (audio

14   interference) by lunchtime.

15        JUDGE GREEN:  Okay, yeah.  Okay.  Why don't we go off the

16   record.

17        **(Whereupon, the hearing in the above-entitled matter was**

18   **recessed at 5:11 p.m. until Wednesday, September 21, 2022 at**

19   **9:30 a.m.)**

20

21

22

23

24

25



1    <u>C E R T I F I C A T I O N</u>

2    This is to certify that the attached proceedings, via Zoom

3    videoconference, before the National Labor Relations Board

4    (NLRB), Region 29, Case Numbers 29-CA-280153, 29-CA-286577, 29-

5    CA-287614, 29-CA-290880, 29-CA-292392, 29-CA-295663, Amazon.com

6    Services LLC and Amazon Labor Union and Dana Joann Miller, held

7    at the National Labor Relations Board, Region 29, 100 Myrtle

8    Avenue, 5th Floor, Brooklyn, New York 11201, on September 20,

9    2022, at 10:04 a.m. was held according to the record, and that

10   this is the original, complete, and true and accurate

11   transcript that has been compared to the reporting or

12   recording, accomplished at the hearing, that the exhibit files

13   have been checked for completeness and no exhibits received in

14   evidence or in the rejected exhibit files are missing.

15

16

17

18   _____

19   BARRINGTON MOXIE

20   Official Reporter

21

22

23

24

25



OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services LLC,      Case No.   29-CA-280153

               Respondent,

and

Dana Joann Miller, an      Case Nos.  29-CA-286577
Individual,                      29-CA-287614
                              29-CA-290880
          Charging Party,   29-CA-292392
and                        29-CA-295663

Amazon Labor Union,

          Charging Party.

_____

_____

Place: Brooklyn, New York (Via Zoom Videoconference)

Dates: September 21, 2022

Pages: 286 through 325

Volume: 3

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**REGION 29**

| | |
|---|---|
| In the Matter of: | |
| AMAZON.COM SERVICES LLC, | Case No.   29-CA-280153 |
| Respondent, | |
| and | |
| and | |
| DANA JOANN MILLER, AN INDIVIDUAL, | Case Nos.  29-CA-286577 |
| | 29-CA-287614 |
| | 29-CA-290880 |
| Charging Party, | 29-CA-292392 |
| and | 29-CA-295663 |
| AMAZON LABOR UNION, | |
| Charging Party. | |

The above-entitled matter came on for hearing, via Zoom

videoconference, pursuant to notice, before **BENJAMIN GREEN**,

Administrative Law Judge, at the National Labor Relations

Board, Region 29, 100 Myrtle Avenue, 5th Floor, Brooklyn, NY

11201, on **Wednesday, September 21, 2022, 9:45 a.m.**

<div align="center"><strong>A P P E A R A N C E S</strong></div>

**On behalf of the General Counsel:**

    **EMILY CABRERA, ESQ.**
    **LYNDA TOOKER, ESQ.**
    THE NATIONAL LABOR RELATIONS BOARD
    Two Metro Tech Center North
    5th Floor
    Brooklyn, NY 11201
    Tel. (718)765-6184

**On behalf of the Charging Party Union:**

    **RETU R. SINGLA, ESQ.**
    JULIEN, MIRER & SINGLA PLLC
    One Whitehall Street, 16th Floor
    New York, NY 10004
    Tel. (212)231-2355

    **SETH GOLDSTEIN, ESQ.**
    LAW OFFICE OF SETH GOLDSTEIN
    217 Hadley Dr.
    Cherry Hill, NJ 08003

**On Behalf of Dana Miller, an Individual:**

    **DANA MILLER, PRO SE**

**On behalf of the Respondent:**

    **KURT A. POWELL, ESQ.**
    **JUAN ENJAMIO, ESQ.**
    **ALYSON BROWN, ESQ.**
    **TYLER S. LAUGHINGHOUSE, ESQ.**
    HUNTON ANDREWS KURTH, LLP
    1111 Brickell Avenue
    Miami, FL 33131
    Tel. (404)888-4015



1

<u>I N D E X</u>

2

3

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---------|--------|-------|----------|---------|-----------|
| Mani Lawrence | 290 | 299 | 302 | | |
| Janet Olmedo | 304 | 313 | 321 | 323 | |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**E X H I B I T S**</u>

| <u>**EXHIBIT**</u> | <u>**IDENTIFIED**</u> | <u>**IN EVIDENCE**</u> |
|---|---|---|
| **General Counsel:** | | |
| GC-2 | 309 | 310 |
| GC-7 | 295 | 297 |
| GC-45 | 297 | 298 |



1

2      THE COURT REPORTER:  On the record.

3      JUDGE GREEN:  Okay.  Let me just ping you to this room.

4                        **MANI LAWRENCE**

5  having been duly sworn, was called as a witness herein and was

6  examined and testified as follows:

7      JUDGE GREEN:  Okay.  Thank you, very much.  And could you

8  please state and spell your name for the record.

9      THE WITNESS:  Mani, M-A-N-I, Lawrence, L-A-W-R-E-N-C-E.

10     JUDGE GREEN:  Okay.  And are you alone in the room?

11     THE WITNESS:  Yes.

12     JUDGE GREEN:  Okay.  So please don't speak to anybody,

13 either there or on a -- using a phone or other handheld device.

14 Just talk to the people who are on this call and asking you

15 questions.  Also, please don't look at any documents other than

16 what might be shown to you over the screen or something that,

17 you know, one of the attorneys might direct you to look at,

18 okay?

19     THE WITNESS:  Okay.

20     JUDGE GREEN:  Okay.  Thank you, very much.  So the General

21 Counsel's Attorney is going to have some questions for you.

22                   **DIRECT EXAMINATION**

23 Q    BY MS. TOOKER:  All right.  Good morning, Ms. Lawrence.

24 Thank you for being with us today.

25 A    Hello.

   Q    Okay.  Can you tell me, have you ever worked for Amazon?



1

2  A    Yes.

3  Q    When did you start working for Amazon?

4  A    November of 2021.

5  Q    And what facility did you work in?

6  A    LDJ5.

7  Q    Do you still work for Amazon?

8  A    No.

9  Q    When did you stop working for Amazon?

10  A    June of 2022.

11  Q    And what was your position when you worked for Amazon?

12  A    Sorry, I'm trying to remember, like, what I was

13  specific -- it was, like, workhouse -- warehouse worker,

14  basically.

15  Q    Okay.  Well, why don't you just describe to me what your

16  day-to-day responsibilities were?

17  A    So I get there.  I'd get a scanner.  I'd go to a station,

18  which was usually jackpot, and we'd be moving boxes and then

19  sending them to trailers so the trailers can go take them to

20  other Amazon facilities.

21  JUDGE GREEN:  Now, Ms. Lawrence, we have -- the audio is

22  good and we can basically hear you, but if you could speak up

23  just a little bit, that would be helpful.

24  THE WITNESS:  Okay.

25  Q    BY MS. TOOKER:  All right.  And do you remember what your

pay rate was when you worked for Amazon?



1

2      A     It was $18.25 an hour.

3      Q     Okay.  And was that your pay rate the whole time that you

4      worked for Amazon?

5      A     Yes.

6      Q     Okay.  All right.  And was there ever a time that you

7      attended a meeting held by Amazon about the union?

8      A     Yes.

9      Q     Okay.  And when was the first time that you attended such

10     a meeting?

11     A     Maybe early April, late March of this year, 2022.

12     Q     Okay.  And do you remember approximately how many of these

13     type of meetings you attended?

14     A     About two or three.

15     Q     And where were these meetings held?

16     A     They were held in the facility in a room that was next to

17     AM CARE.  I forgot what they called it specifically.

18     Q     I'm sorry, it was next to what?

19     A     It was in a room next to AM CARE.

20     Q     AM CARE.  And about how many employees were in each of

21     these meetings?

22     A     About 20 to 25.

23     Q     And do you remember who led the meetings?

24     A     Usually, it was union -- union busters, if that's a good

25     word to call them.

       Q     Okay.  All right.  And did you attend a meeting on April



1

2      18th of 2022 regarding the union?

3      A     Yes, I did.

4      Q     Okay.  And do you remember specifically where that meeting

5      was held?

6      A     That was in the room next to AM CARE.

7      Q     Okay.  And do you remember how many employees were at this

8      meeting?

9      A     About the same, around 20 to 25.

10     Q     Okay.  And do you remember whether or not the presenter

11     for that day was Katie Lev?

12     A     Yes, I think it was.

13     Q     And what were you doing before you were -- you went to

14     this meeting?

15     A     I was working at jackpot on the other side of the

16     building.

17     Q     Okay.  And how did you learn that you were supposed to go

18     to this meeting?

19     A     A manager came around my area and was scanning badges to

20     see if we went to the meetings or not.  So he scanned my badge

21     and saw that I hadn't gone to many meetings at all and told me

22     I had to follow him.

23     Q     Okay.  Do you know the name of this manager?

24     A     No, I do not remember.

25     Q     Okay.  How did you know that this person was a manager?

       A     He had on a red vest.



Q    All right.  So the manager told you that you had to go
with him.  So what did -- after he told you that, did you have
any additional conversation?

A    No, not really.

Q    Okay.  And what did you do?

A    I followed him to the meeting and I -- I just followed
behind him as he gathered more people.

Q    Okay.  And what happened, if anything, when you arrived at
the meeting room?

A    We were greeted by the lady.  She was talking about the
union in the room.  And we were all told to sit down as they
scanned our badges.

Q    Okay.  And did you have the opportunity to record this
meeting?

A    Yes, I did.

Q    And what did you use to record it?

A    My phone.

Q    Okay.  And did you provide this recording to anyone in the
union?

A    Yes, I did.

Q    Okay.  Who did you provide it to?

A    I provided it to Mitch (phonetic) and Abby (phonetic).

Q    Okay.  All right.  When did you start working?

A    Towards the beginning of the meeting.

Q    And when did you stop recording?



1

2    A    As soon as I left out the door.

3    Q    Okay.  All right.  So Your Honor, at this point, we're

4    going to open up General Counsel Exhibit 7.

5        MS. TOOKER:  Okay.  All right.  So we can do this -- if --

6    we can sort of do this however we want.  This meeting is a

7    little bit different.  There's a pretty extensive discussion of

8    union security provisions.  And I think most of it, we just

9    consider context for the unlawful statements.  I can -- I

10    don't -- so, it's like a five-minute clip.  So I can play it so

11    everybody could hear it, or I can just tell you the times for

12    the recording and, you know, the nature of the violation that

13    we're alleging.

14        Mr. Powell or Mr. Enjamio, do you have a preference?  I

15    mean, we're sort of doing this for your benefit, so.

16        MR. ENJAMIO:  Your Honor, we don't have any objection to

17    General Counsel just identifying, essentially, the time period

18    and, you know, what in that section they're alleging as

19    unlawful.

20        JUDGE GREEN:  Great.

21        MS. TOOKER:  Okay.  So the time period is 14 minutes and

22    45 seconds to 19 minutes and 58 seconds.  And like I -- so we

23    have pled this as a threat to withhold or reduce wages and that

24    just relates to the statement regarding dues deduction.  So all

25    right.  And that there's no mention of employees signing

authorization cards in order to have dues deducted.



1

2      All right.  So the second alleged violation here is a much

3  shorter clip, so I'm just going to play that.  All right.  So

4  the time period -- the times that I have for this one are 2720

5  to 2850.  So I'll just play that real quick.

6  (Audio played at 9:56 a.m., ending at 9:57 a.m.)

7      MS. TOOKER:  All right.  And so counsel for the General

8  Counsel is alleging that the statement contained in that

9  section is a threat to withhold improvements to wages and

10  working conditions.

11  Q    BY MS. TOOKER:  All right.  Ms. Lawrence, did any managers

12  or supervisors tell you that the meeting on April 18th, 2022

13  was voluntary?

14  A    They made it seem like it was voluntary, but they were

15  also scanning our badges, so it was more of a thing where we

16  felt like we were obligated to go.

17  Q    When you say they made it seem like it was voluntary, how

18  did they do that?

19  A    Like, they would say did you guys go to the meeting?  Let

20  me scan your badge.  Then they would be like, hey, if you

21  didn't go to the meeting, that's okay.  There's other days that

22  you can go to the meeting.  So almost like it was voluntary,

23  but it -- they were still scanning our badges and saying you'd

24  go to another meeting, more than likely.

25  Q    Okay.  So they said that if you didn't go to the meeting

that day that you could go on a different day?



1

2      A      Yes.

3      Q      Okay.  Did they ever indicate to you that you didn't have

4      to go to any of the meetings at all?

5      A      No.

6      Q      Okay.

7             MS. TOOKER:  All right.  If I can just have a moment, Your

8      Honor, I think I'm about done.

9             JUDGE GREEN:  Okay.  Off the record.

10            THE COURT REPORTER:  We are off the record.

11     (Off the record at 9:59 a.m.)

12            JUDGE GREEN:  All right, we have everybody.  Okay.  So

13     back on the record.

14            THE COURT REPORTER:  We are on the record.

15            MS. TOOKER:  All right.  Your Honor, at this time, I would

16     like to offer General Counsel Exhibit 7 into evidence.

17            JUDGE GREEN:  Any objection?

18            MR. ENJAMIO:  No, Your Honor.

19            JUDGE GREEN:  Okay.  So GC-7 is admitted.

20     **(General Counsel Exhibit Number 7 Received into Evidence)**

21            MS. TOOKER:  Okay.  I have also marked and uploaded

22     General Counsel Exhibit 45 to the SharePoint site.  This is the

23     document that was produced by Respondents on Monday.  It is the

24     training attendance for April 18th.  So I would like to offer

25     General Counsel Exhibit 45 into evidence as well.

              JUDGE GREEN:  Any objections.



1

2        MR. ENJAMIO:  No objections.

3        JUDGE GREEN:  Okay.  So GC-45 is admitted.

4    **(General Counsel Exhibit Number 45 Received into Evidence)**

5        MS. TOOKER:  Okay.  I have no additional questions at this

6    time, Your Honor.

7        JUDGE GREEN:  Thank you.

8        So is there going to be any cross-examination?

9        MR. ENJAMIO:  Yes, Your Honor.  And we would request the

10   Jencks materials at this time.

11       MS. TOOKER:  Okay.  We have no Jencks materials for Ms.

12   Lawrence.

13       MR. ENJAMIO:  All right, Your Honor.  Then can we have

14   just a moment break to begin --

15       JUDGE GREEN:  Yeah.

16       MR. ENJAMIO:  -- the cross?  Five minutes.

17       JUDGE GREEN:  Okay.  So let's go off the record for five

18   minutes.  And if you need more time, let me know.

19       Ms. Lawrence, you can do whatever you want during these

20   off-the-record breaks.  Just make sure you're back in five

21   minutes and don't talk to anybody about the case or your

22   testimony.  Okay?

23       THE WITNESS:  Okay.

24       JUDGE GREEN:  Okay.  Thank you.

25       THE COURT REPORTER:  We are off the record.

     (Off the record at 10:02 a.m.)



1

2          THE COURT REPORTER:  On the record.

3          JUDGE GREEN:  Okay.  So Ms. Lawrence, Mr. Powell, the

4   company attorney is probably going to have some questions for

5   you.  Okay?

6          THE WITNESS:  Okay.

7                          **CROSS-EXAMINATION**

8   Q    BY MR. POWELL:  Good morning, Ms. Lawrence.  My name is

9   Kurt Powell.  I represent Amazon.  I'm going to ask you just a

10  few questions about the testimony that you've given here today.

11         I believe you testified, when you were answer questions

12  from Ms. Tooker, that the first time that you had attended a

13  meeting where the company discussed the topic of unionization

14  was in March or April 2022; is that correct?

15  A    Yes.

16  Q    And I assume then that prior to that time, you hadn't

17  received any kind of notification or anything to that effect

18  that you had failed to attend any prior meetings; is that

19  correct?

20  A    No.

21  Q    So it's correct you had not received any kind of

22  notification prior to that that you had failed to attend

23  meetings that had taken place prior to that; is that correct?

24  A    I -- I was told that I needed to go to the meetings, but I

25  knew what they were about, so I didn't really want to go to

them.



Q    Okay.  So you chose not to go to the earlier meetings,
then; is that right?

A    Yes.

Q    Okay.  And you didn't receive any kind of disciplinary
notice or warning as a result of that, correct?

A    No.

Q    Is that correct?

A    Oh, yes.  Sorry.

Q    Just wanted to make sure that we were clean in terms of my
question and your answer.  Okay.  At the meetings that you
did -- did you attend more than one meeting with -- where Katie
Lev was the facilitator or the presenter?

A    No.

Q    Okay.  In the meetings that you attended, was there
discussion by the employees in the room?

A    Yes, there was.

Q    And both employees who were in favor of the union and
those who were not in favor of the union expressed their
viewpoints during these meetings; is that accurate?

A    Yes.

Q    And the company didn't do anything to stop people from
expressing their viewpoints other than just sort of manage the
time of the meeting; is that accurate?

A    Yes.

Q    During the meetings that you attended, the small group



1

2    meetings or the meetings where the topic of unionization was

3    discussed, did you see other employees leave the meeting from

4    time to time?

5    A    No.

6    Q    Did you see employees on their phones or sleeping or not

7    paying attention from time to time during the meetings that you

8    attended?

9    A    Yes.

10   Q    Did the company administer any type of tests or quizzes to

11   ensure that you had learned the information that was presented

12   during the course of any of the meetings that you attended?

13   A    No.

14   Q    During the time that you were employed at Amazon, did you

15   receive any type of mandatory training in conjunction with your

16   employment?  Unrelated to the subject of unions?

17   A    Mandatory training, you said?

18   Q    Yes.

19   A    Yes, I did.

20   Q    Like safety training or something like that?

21   A    Yes.

22   Q    Did you -- do you know -- were you allowed to -- to work

23   in the facility if you had not completed that training?

24   A    Yes, I was.

25   Q    Okay.  Did you receive any kind of notification if you

hadn't completed that training?



1

2      A    Yes, I did.

3      Q    And that notification said that you needed to complete the

4      training?

5      A    Yes.

6      Q    I don't have any further questions.

7           JUDGE GREEN:  Thank you.  Is there any redirect.

8           MS. TOOKER:  We might have some redirect, Your Honor.  If

9      I can just have five minutes.

10          JUDGE GREEN:  Okay.

11          MS. TOOKER:  Yeah.

12          JUDGE GREEN:  So off the record for five minutes.

13          Same deal, Ms. Lawrence, just don't talk to anybody about

14     your -- the case or your testimony.  Okay?

15          THE WITNESS:  Okay.

16          THE COURT REPORTER:  We are off the record.

17     (Off the record at 10:13 a.m.)

18          THE COURT REPORTER:

19          JUDGE GREEN:  Is there any redirect?

20          MS. TOOKER:  Yes, Your Honor.  Very brief.

21          JUDGE GREEN:  Okay.

22                        <u>**REDIRECT EXAMINATION**</u>

23     Q    BY MS. TOOKER:  Ms. Lawrence, was there ever a time that

24     you were directed to go to a meeting about unions by an Amazon

25     manager or supervisor and you did not attend that meeting?

       A    Yes, there were multiple times where I kind of just

slithered away.

Q    Okay.

MS. TOOKER:  All right.  No further questions.

JUDGE GREEN:  Any recross.

MS. TOOKER:  Your Honor, if -- no questions at this time.

JUDGE GREEN:  Okay.  Ms. Lawrence, thank you very much. You're free to go.

THE WITNESS:  Thank you.  Have a good day.

JUDGE GREEN:  You too.

MS. TOOKER:  All right, Your Honor, we have one additional witness for today.  And I will just -- I understand that she's ready to go and I will just (audio interference).

MR. SPENCE:  She's getting set up in a private room now.

MS. TOOKER:  Okay.  Great.  And Conner, did you let her know she should sign in?

JUDGE GREEN:  Okay.  So we can go --

MR. SPENCE:  Yeah.  She has --

JUDGE GREEN:  -- off the record.

THE COURT REPORTER:  We are off the record.

(Off the record at 10:20 a.m.)

THE COURT REPORTER:  We are on the record.

JUDGE GREEN:  Okay.  So Ms. Olmedo, can you raise your right hand?  I'll swear you in.

THE WITNESS:  Yes.

Whereupon,



**JANET OLMEDO**

having been duly sworn, was called as a witness herein and was examined and testified as follows:

JUDGE GREEN: Thank you. So could you state and spell your full name?

THE WITNESS: Yes. My name is Janet Olmedo. Janet spelled J-A-N-E-T, Olmedo, O-L-M-E-D-O.

JUDGE GREEN: Okay. Thank you, very much. So are you alone in the room?

THE WITNESS: Yes, I am currently alone in the room.

JUDGE GREEN: Okay. So please don't talk to anybody other than those of us who are asking you questions in the virtual hearing. Don't talk to anybody who enters the room or use a phone or other handheld device to talk to anybody. Also, please don't look at any documents that aren't shown to you by one of us or that you are -- unless you're directed to do so. Okay? Thank you, very much.

So with that, any time you are ready, Ms. Tooker.

**DIRECT EXAMINATION**

Q    BY MS. TOOKER: All right. Good morning, Ms. Olmedo. Thank you for being with us today.

A    Good morning.

Q    Do you currently work for Amazon?

A    Yes. I currently work for Amazon.

Q    Okay. And when did you start working for Amazon?



1

2      A     I started November 2018.

3      Q     Okay.  And what facility do you work in?

4      A     I work at JFK8.

5      Q     What is your position?

6      A     I am a packer at Amazon.

7      Q     Okay.  And as a packer, what are your job

8 responsibilities?

9      A     I'm supposed to gather the customer's items and properly

10 package them in each, you know, box and ship them out.

11      Q     And what is your pay rate?

12      A     Currently, I'm at 21.50 an hour.

13      Q     Okay.  And do you remember what your starting salary was?

14      A     I believe it was 17.75.

15      Q     Okay.  Did you ever earn anything less than 17.75 when you

16 were working at Amazon?

17      A     No.

18      Q     Was there ever a time that you attended a meeting held by

19 Amazon regarding the union?

20      A     Yes.

21      Q     Okay.  And do you remember the first time you attended

22 such a meeting?

23      A     Yes, I believe it was in November 2021.

24      Q     Okay.  Do you remember specifically attending a meeting on

25 November 10th of 2021?

     A     Yes.  I (audio interference).



Q    Okay.  Do you know if that was the first meeting or was there a meeting before that?

A    No, that's the first meeting that -- that was started.

Q    Okay.  And do you remember where the meeting was held?

A    Yes, it was held in Amazon's Empire State Room.  That's one of their rooms where they hold most of their meetings for us workers.

Q    And approximately how many employees were in the meeting?

A    I would say, like, 50.

Q    50.  And other than the employees, who else was in that room for the meeting?

A    Other than employees, there were two -- two people that they say that came from other Amazons and they were union busters because they were talking about against the union.

Q    Okay.  And do you remember what you were doing before the meeting?

A    Yes.  Since it happened in the morning, we were all waiting to be assigned to our stations.  Like, every morning, we go in and we have -- we're already assigned stations, but this time, we weren't so we were all waiting around to be assigned to work.  And --

Q    And how did you find out about the meeting?

A    Because the managers, they started taking some groups and they told us that we have to go to a mandatory meeting.

Q    Okay.  And do you remember the names of the managers who



told you this?

A    Yes.  My manager at that time was Victoria Kipler, I
believe was her last name.

Q    Okay.  Do you know what -- at that time, do you know what
Victoria's position was?

A    Yeah.  She was a manager.

Q    Okay.  Okay.  All right.  So what happened after you were
told about the meeting?

A    After we were -- after the meeting, I asked, like if --
if -- you know, I said, do we have to go?  And -- well, she
told us that we have to go.  So after that, they escorted us --
they started taking us in small groups, around, like, ten
people, approximately, and they escorted to the Empire State
Room.

Q    And so how long did you wait before you were escorted to
the Empire State Room?

A    Well, shift starts, like, at 7:15.  And by the time we got
to the -- to the room, it was, like, around 9 a.m.  So I'm
guessing, like, over an hour we were waiting around.

Q    Okay.  And so you didn't do any work during this hour or
so?  You just waited around?

A    Yes.  We just waited around.

Q    Okay.  And when you said "we waited around", who else was
waiting around besides you?

A    All of the -- all my coworkers.



1

2    Q    Okay.  And so the coworkers, like, in your department or

3    the whole building or, what do --

4    A    In my (audio interference), yeah.

5    Q    Okay.  And approximately how many people were working in

6    your department that morning?

7    A    I would -- I would say, like, maybe 75 people that we --

8    are in the department now.

9    Q    Okay.  All right.  So you said around 9 a.m., you went to

10   the Empire State Room; what happened when you arrived at the

11   room?

12   A    Well, we arrived at -- at the room, like, my -- my group

13   of coworkers, we were waiting for the room to fill up with

14   other workers from, like, other departments, so they were

15   taking also -- from each department, they were also taking,

16   like, ten or so people into the room.  And once the room got

17   full, then that's when they started to introduce themselves,

18   and the meeting started.

19   Q    Okay.  And did anyone do anything to, like, take

20   attendance while you were there?

21   A    Yes.  Also before we actually went into the room, there

22   were these managers scanning our badges before going into the

23   room.

24   Q    Okay, all right.  And did you have an opportunity to

25   record this meeting?

     A    Yes, I did.



1

2      Q      Okay.  And what did you use to record it?

3      A      I used my iPhone to do a voice recording of the meeting.

4      Q      And when did you start recording?

5      A      I started recording until, like, after they had introduced

6      themselves.

7      Q      Okay.  And when did you stop recording?

8      A      I stopped when they had finished presenting, and like,

9      people were starting to have -- express their concerns.

10     Q      Okay.  All right.  And did you provide a copy of this

11     recording to the National Labor Relations Board?

12     A      Yes, I did.

13     Q      Okay.  And did you alter the recording in any way before

14     you provided it to the National Labor Relations Board?

15     A      No, not -- not at all.

16     Q      Okay, all right.

17            MS. TOOKER:  So at this time, I'm going to share with all

18     of you General Counsel Exhibit 2.  Come on.  All right.

19            So this first section is a little bit lengthy, but there's

20     a lot that happened, so I think we'll just listen to it.  It is

21     from 1 minute and 0 seconds to 5 minutes and 6 seconds.

22     (Audio played at 10:33 a.m., ending at 10:37 a.m.)

23            MS. TOOKER:  All right.  So we consider statements made

24     during that section both an unlawful announcement of benefits,

25     and an unlawful solicitation of grievances.

              All right, and then we have one more short section to



play.  All right, so this section -- this just starts at 15:52,

and I don't have an end time, but it's pretty short so, I'll

let you guys know the end time after we play it.

(Audio played at 10:38 a.m., ending at 10:38 a.m.)

MS. TOOKER:  All right.  So that, I think -- we think is

context to the unlawful solicitation of grievances.  And at

this time, I would like to offer General Counsel Exhibit 2 into

evidence.

JUDGE GREEN:  Any objection?

MR. POWELL:  No objection, Your Honor.

JUDGE GREEN:  Okay.  GC-2 is admitted.

**(General Counsel Exhibit Number 2 Received into Evidence)**

MS. TOOKER:  Thanks.

Q    BY MS. TOOKER:  Ms. Olmedo, did any manager or supervisor

of Amazon ever tell you that any of the meetings regarding the

union were voluntary?

A    No.

Q    Do you know what a birthday roundtable is?

A    Yes.

Q    Okay.  Have you ever been to one?

A    No, I have not been, so.

Q    Okay.  Can you tell me generally what you understand them

to be?

A    Yes.  A birthday roundtable is a type of meeting that

Amazon does every month for employees' birthdays, and they say

that that's an opportunity for you to talk to the general

manager or his assistant.

Q    Okay.  And do you know if these meetings are mandatory or

voluntary?

A    They are voluntary.

Q    Okay.  And you -- you said specifically you would talk to

the general manager or the assistant; are -- the general

manager and assistant, are they -- do they work at JFK8 or

other Amazon facilities?

A    I believe they work at JFK8.

Q    Okay, all right.  And so prior to the union campaign in

2021, had you ever attended a large group meeting hosted by

managers from outside of JFK8, wherein the managers asked

employees for feedback related to the employees' working

conditions?

A    Never.

      MS. TOOKER:  Your Honor, I think I might be done.  I just

want to have two minutes to consult with co-counsel.

      JUDGE GREEN:  Okay.  Off the record.

      THE COURT REPORTER:  We are off the record.

(Off the record at 10:44 a.m.)

      THE COURT REPORTER:  We are on the record.

      JUDGE GREEN:  Okay, and is there any more direct

examination?

      MS. TOOKER:  Just a little, Your Honor.



1

2          JUDGE GREEN:  Okay.

3                    **RESUMED DIRECT EXAMINATION**

4     Q    BY MS. TOOKER:  Ms. Olmedo, the speaker in the

5     presentation referred to Connections, can you tell us what

6     Connections is?

7     A    Yeah, so Connections are -- they are held at the beginning

8     of the shift when we first log into our station.  And when we

9     log in, we are asked, like, a couple questions, like, if we --

10    we find our work -- workspace clean and organized, where should

11    they clean, or do we have every -- our safety equipment with

12    us, provide -- that we haven't provided, and questions like --

13    of that matter.

14    Q    Okay.  And that -- how -- when was the first time that you

15    have seen Connections?

16    A    Since the first day I started.

17    Q    Okay.

18         MS. TOOKER:  No further questions, Your Honor.

19         JUDGE GREEN:  Okay.

20         Will there be any cross?

21         MR. ENJAMIO:  Yes, Your Honor (audio interference).  We

22    would request the Jencks (audio interference).

23         THE COURT REPORTER:  I'm sorry.  This is the court

24    reporter.  I'm having a terrible time hearing you.

25         MR. ENJAMIO:  Your Honor, can you hear me now?

           THE COURT REPORTER:  Yes, much better.  Thank you.



1

2          MR. ENJAMIO:  Okay, yeah.

3          Yes, Your Honor, we will have cross, and we will

4     request -- we request the Jencks affidavit or affidavits, and

5     the Jencks material.

6          MS. TOOKER:  Okay.  There are two affidavits, and no

7     additional Jencks material.  One of the affidavits is related

8     to a -- a separate ULP, and is largely redacted.  I'm happy to

9     send you both, and you can review them.

10          JUDGE GREEN:  Okay.  Let me know if you want to do -- me

11     to do an in-camera re -- in-camera review of the redacted

12     affidavit to determine its relevance.

13          MR. ENJAMIO:  We will let you know, Your Honor, if we need

14     that.

15          JUDGE GREEN:  Okay.  Thank you very much.  Off the record

16     for 15 minutes -- we'll go off the record for 15 minutes.

17     (Off the record at 10:46 a.m.)

18          THE COURT REPORTER:  We are on the record.

19          MR. ENJAMIO:  May I proceed, Your Honor?

20          JUDGE GREEN:  Yes.

21                         **CROSS-EXAMINATION**

22     Q    BY MR. ENJAMIO:  Good morning, Ms. Olmedo.

23     A    Good morning.

24     Q    My name is Juan Enjamio, and I am an attorney of -- for

25     the Respondent, for Amazon.  Can you hear me okay?

       A    Yes, I could hear you.



1

2    Q   Okay.  I'm going to ask you a few questions.  If you don't

3 hear me at any time, or you don't understand, let me know,

4 okay?

5    A   Okay, no problem.

6    Q   Ms. Olmedo, you testified during your direct about the

7 meeting that you went to on November 10th of 2021, correct?

8    A   Yes.

9    Q   Okay.  Now, just -- I want to be clear.  During that

10 meeting, when -- when -- when you were in the meeting, there

11 was no one from -- no manager from JFK8 at the meeting,

12 correct?

13    A   Correct.

14    Q   And there was no one from human resources, from HR, from

15 JFK8 at the meeting, correct?

16    A   Correct.

17    Q   Ms. Olmedo, are you a member of the ALU?

18    A   Yes, I am.

19    Q   Okay.  Have you ever had any role with the ALU?

20    MS. TOOKER:  Objection.

21    JUDGE GREEN:  Overruled.

22    MR. ENJAMIO:  I'm sorry, I didn't hear you.

23    JUDGE GREEN:  Meaning, do you have a position?  The

24 question is, do you have a position with the ALU?

25    THE WITNESS:  No, I don't.

   Q   BY MR. ENJAMIO:  Were you ever a member of the organizing



committee with the ALU?

MS. TOOKER:  Objection.

JUDGE GREEN:  Okay, sustained.

MR. ENJAMIO:  Okay.

Q    BY MR. ENJAMIO:  Now, Ms. Olmedo, when you went to the meeting on November 10th, where did you sit; towards the back of the room, towards the front of the room?

A    I sat in the middle.

Q    Okay.  Did you ever see anyone or all the other -- all -- all your colleagues, your -- your coworkers, do you see any of them on their phone or not paying attention during the meeting?

A    Majority were paying attention.

Q    Okay.  And some were not, right?

A    Yes, some were not.

Q    Okay.  And did you see anybody get up and leave during the meeting?

A    No.

Q    Did you -- did any of the speakers in that meeting admonish anyone for not paying attention?

A    No.

Q    Were you quizzed or asked questions after the fact to see if you had retained or learned anything that was said during the meeting?

A    No.

Q    Now, I believe you told us, correct me if I'm wrong, that



there was a question and answer session at the end of that
meeting, correct?

A    Well, it was just mostly workers expressing their concerns
about the meeting.

Q    Okay.  And they were free to express those concerns,
right?

A    Yes.

Q    No one told them not to speak, no one told them -- shut
them down, no one told them they could not express concerns
that they had, correct?

A    Yes.

Q    And in fact, they did do that?

A    Did what?

Q    They did express concerns?

A    Yes.  Yes.

Q    And during the meeting, during the presentations, the
facilitators, the speakers, told the associates to go find
facts, go do your own research, about the issues that were
raised both during the presentation, and during the question
and answer session, correct?

A    Yes.

Q    They even said, if you have questions, go talk to the
union about questions you have, right?

A    Yes.

Q    Now, I believe you have said that there were times in



which you raised concerns or problems that you had with

management, that you and other associates; is that correct?

A    Yes.

Q    Okay.  In what forums have you raised those concerns?

A    Through the Connections questions that they ask in the

morning, or in person.

Q    Okay.  And during all of those times when you've raised

concerns, have you ever been disciplined for having raised a

concern?

A    No.

Q    Have you ever been admonished in any way for raising a

concern about the company, or about your managers?

A    No.

Q    Okay.  In fact, a little earlier you talked about, during

your testimony, you talked about, for example, birthday

roundtables, right?

A    Yes.

Q    And as I understand it, these birthday roundtables are

opportunities to sit down with management and have an open

discussion, right?

A    Yes.

Q    Okay.  And workers, your peers, are free during those

meetings, during the -- those -- you know, those birthday

roundtables, to raise any concern they have?

A    Yes.



1

2    Q    That's part of the reason for those birthday roundtables,

3    correct?

4    A    Correct.

5    Q    And those birthday roundtables, where employees are

6    encouraged to raise concerns, have been going on since before

7    April of 2021?

8    A    Yes.

9    Q    Okay.  And are you familiar with the concept of GEMBA

10   meetings?

11   A    No.

12   Q    Okay.  You've never participated in one?

13   A    No.

14   Q    Okay.  Now, you also testified, I believe, about

15   Connections, right?

16   A    Yes.

17   Q    And Connections is a opportunity, as I think you told us,

18   a board where you actually -- or a screen where you are asked

19   questions about the company, right?

20   A    Yes.

21   Q    They are asked -- you are asked questions about concerns

22   you have about safety, correct?

23   A    Yes.

24   Q    About conditions in your workplace?

25   A    Yes.

     Q    Even questions about your manager, right?



1

2      A    Yes.

3      Q    Okay.  There are opportunities that you have, and other

4      associates have at JFK8, to express any concerns you have about

5      working conditions, about managers, about your supervisors,

6      right?

7      A    Yes.

8      Q    Okay.  And that opportunity in Connections to raise any of

9      those concerns or those issues, were available to you and your

10     peers prior to April of 2021, correct?

11     A    Yes.

12     Q    Okay.  This is not something that the company started

13     after the union started, correct?

14     A    Yes, correct.

15     Q    Okay.  Now, in fact, you're also familiar with the VOA

16     board, right; the Voice of Associates board?

17     A    Yes, I'm familiar with it.

18     Q    And that's another opportunity that you and your peers

19     have to raise concerns and issues that you have with the

20     company, right?

21     A    Yes.

22     Q    If you have issues about safety, about pay, about anything

23     like that, about your managers, you can express them in the VOA

24     board, right?

25     A    Yes.

       Q    And Ms. Olmedo, this is a board that any associate in the



1

2 workplace, any associate at JFK8, can actually see, right?

3 A    Yes.

4 Q    And managers or HR responds to those concerns, correct, on

5 the board?

6 A    Yes.

7 Q    And again, this is -- these boards were in place prior to

8 April 1 of 2021, correct?

9 A    Yes.

10 Q    Okay.  That is, long before the union came and started

11 organizing at JFK8, you as an associate at JFK8, had may

12 opportunities to raise concerns with management, correct?

13 A    Yes, but just because we had the opportunity to express

14 it, they weren't listening.

15 Q    Okay.  But management at JFK8 and HR at JFK8 provided you

16 with many different avenues, for many years, to express

17 concerns that you and your peers had about the company,

18 correct?

19 A    Correct.

20 Q    And prior to April of 2021, did you have or participate in

21 roundtables with work -- other workers and managers?

22 A    No, I didn't participate.

23 Q    Do you recall having round -- that management and Amazon

24 would have, prior to COVID, roundtable meetings with workers

25 about once a year?

A    Oh, yes, yes, I'm sorry.  Yes, those meetings.



1

2   Q    And again, this is just another opportunity to raise

3   issues, right?

4   A    Yes.

5   Q    And again, that was happening prior to April of 2021?

6   A    Yes, they have.

7   Q    Did the presenters at the November 10th meeting, did they

8   use a PowerPoint?

9   A    Yes, they did.

10  Q    And do you recall if they followed that PowerPoint?

11  A    Yeah, they were following the PowerPoint.

12  Q    Okay.

13       MR. ENJAMIO:  Your Honor, if I may have one minute off the

14  record?

15       JUDGE GREEN:  Yeah, off the record.

16       THE COURT REPORTER:  We are off the record.

17  (Off the record at 11:12 a.m.)

18       MR. ENJAMIO:  Your Honor, I have no further questions.

19       JUDGE GREEN:  Okay.

20       Any redirect from the General Counsel?

21       MS. TOOKER:  Yes, Your Honor.

22                   **REDIRECT EXAMINATION**

23  Q    BY MS. TOOKER:  Ms. Olmedo, in your cross-examination, you

24  referred to -- you were asked about roundtable meetings that

25  happened once a year.  Is that the same or different than the

birthday roundtables that we talked about?



1

2      A    That was different than the birthday roundtables.

3      Q    Okay.  And so what was the purpose of these roundtables?

4      A    They were mostly to express changes throughout the

5      company, like, if we were about to get a raise or some -- yeah,

6      it's mostly like updates on the -- that was -- that was going

7      to happen in the company.

8      Q    Okay.  So those were updates provided by management?

9      A    Yes.

10     Q    Okay.  And do you know whether or not managers from

11     outside of JFK8 attended these roundtable meetings?

12     A    No, I'm not sure.

13     Q    And --

14     A    It was mostly like the GM, so just the general manager of

15     JFK8, actually.

16     Q    Okay.  So the general manager of JFK8 was the person

17     speaking at the roundtable meetings?

18     A    Yes.

19     Q    Okay.  Was there employee participation in, like, you

20     know, questions and feedback from employees during these

21     meetings?

22     A    Yes.

23     Q    Okay.  What kind of employee participation was there?

24     A    It was mostly concerns on safety that they would have.

25     They would also have their questions on raises.

       Q    Okay.



1

2     A    And stuff.

3     Q    And were you required to attend these meetings?

4     A    Yes, we were also required to attend.

5     Q    Okay.  And you said that those were held annually, just

6     once a year?

7     A    Once a year.

8     Q    Okay.

9          MS. TOOKER:  No further questions.

10         JUDGE GREEN:  Okay.

11         Is there any re-cross?

12         MR. ENJAMIO:  Yes, I have very brief re-cross, Your Honor.

13         JUDGE GREEN:  Okay.

14                     **RECROSS-EXAMINATION**

15    Q    BY MR. ENJAMIO:  Ms. Olmedo, you said that during these

16    roundtables, one of the things the general manager talked about

17    were changes that were being implemented?

18    A    Yes.

19    Q    Okay, so there were changes maybe to benefits, or maybe

20    due to safety issues and things like that in the company at

21    JFK8?

22    A    Yes.

23    Q    Okay.  And they were being -- and the company, as you

24    know, prior to April of 2021, was making changes to the

25    operations, to benefits, with -- that the company was offering,

      that is something that had been going on prior to April of


www.escribers.net | 800-257-0885

1

2    2021, correct?

3    A    Yes.

4         MR. ENJAMIO:  I have no further questions, Your Honor.

5         JUDGE GREEN:  Any redirect?

6         MS. TOOKER:  No, Your Honor.

7         JUDGE GREEN:  Okay.

8         Thank you very much, Ms. Oleda -- Olmeda.  You're free to

9    go.

10        THE WITNESS:  Okay, thank you.

11        JUDGE GREEN:  Okay, so are we done for the day?

12        MS. TOOKER:  Yes, Your Honor.

13        JUDGE GREEN:  Okay.  And the General Counsel is not going

14   to rest.  We're going to be off until October 4th.  Do people

15   have a preference for starting at 9:30 or 10?  Okay, so we'll

16   start at 10.  That seemed to work for everybody.

17        Okay.  Is there anything else we need to do?  If -- if --

18   if something comes up, email me.  If we have to, we can have a

19   conference call in the interim.

20        MS. TOOKER:  All right.  Thank you, Your Honor.

21        JUDGE GREEN:  Okay, thank you very much.

22        MR. ENJAMIO:  Thank you, Your Honor.

23        JUDGE GREEN:  We'll go off the record.

24   **(Whereupon, the hearing in the above-entitled matter was**

25   **recessed at 11:18 a.m. until Tuesday, October 4, 2022 at 10:00**

     **a.m.)**



1

## <u>C E R T I F I C A T I O N</u>

2

This is to certify that the attached proceedings, via Zoom

3

videoconference, before the National Labor Relations Board

4

(NLRB), Region 29, Case Numbers 29-CA-280153, 29-CA-286577, 29-

5

CA-287614, 29-CA-290880, 29-CA-292392, 29-CA-295663, Amazon.com

6

Services LLC and Amazon Labor Union and Dana Joann Miller, held

7

at the National Labor Relations Board, Region 29, 100 Myrtle

8

Avenue, 5th Floor, Brooklyn, New York 11201, on September 21,

9

2022, at 9:38 a.m. was held according to the record, and that

10

this is the original, complete, and true and accurate

11

transcript that has been compared to the reporting or

12

recording, accomplished at the hearing, that the exhibit files

13

have been checked for completeness and no exhibits received in

14

evidence or in the rejected exhibit files are missing.

15

16

17

18

19

_____

LOISANN ABBOTT

20

Official Reporter

21

22

23

24

25



OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services, Inc.,          Case Nos.   29-CA-280153
                                                29-CA-286577
                    Respondent,                 29-CA-287614
                                                29-CA-290880
and                                             29-CA-292392

Amazon Labor Union,

          Charging Party,

and

Dana Joann Miller,

          An Individual.

_____

_____

Place: Brooklyn, New York

Dates: October 4, 2022

Pages: 326 through 407

Volume: 4

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**REGION 29**

| | |
|---|---|
| In the Matter of: | |
| AMAZON.COM SERVICES, INC., | Case Nos.  29-CA-280153 |
| | 29-CA-286577 |
| Respondent, | 29-CA-287614 |
| | 29-CA-290880 |
| and | 29-CA-292392 |
| | 29-CA-295663 |
| AMAZON LABOR UNION, | |
| Charging Party, | |
| and | |
| DANA JOANN MILLER, | |
| An Individual. | |

The above-entitled matter came on for hearing, pursuant to

notice, before **BENJAMIN GREEN**, Administrative Law Judge, at 100

Myrtle Avenue, 5th Floor, Brooklyn, New York 11201, on **Tuesday,**

**October 4, 2022, 10:04 a.m.**

1                    <u>A P P E A R A N C E S</u>

2    **On behalf of the Respondent:**

3         **JUAN ENJAMIO, ESQ.**
          **KURTIS POWELL, ESQ.**
4         **ALLYSON BROWN, ESQ.**
          HUNTON ANDREWS KURTH, LLP
5         1111 Brickell Avenue
          Miami, FL 33131
6
7    **On behalf of the Union:**

         **RETU R. SINGLA, ESQ.**
8        JULIEN, MIRER & SINGLA
         One Whitehall Street
9        16th Floor
         New York, NY 10004
10
         **SETH GOLDSTEIN, ESQ.**
11       LAW OFFICE OF SETH GOLDSTEIN
         217 Hadley Drive
12       Cherry Hill, NJ 08003

13   **On behalf of the General Counsel:**

14       **EMILY CABRERA, ESQ.**
         **LYNDA TOOKER, ESQ.**
15       THE NATIONAL LABOR RELATIONS BOARD, REGION 29
         Two Metro Tech Center North
16       5th Floor
         Brooklyn, NY 11201
17       Tel. 718-765-6184, C-202-679-2742

18

19

20

21

22

23

24

25



<u>I N D E X</u>

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| Dana Miller | 330 | | | | |
| Chaka Donaldson | 366 | 378 | | | 377 |
| Rebecca Smith | 396 | | | | |


www.escribers.net | 800-257-0885

1            <u>E X H I B I T S</u>

2

| EXHIBIT | IDENTIFIED | IN EVIDENCE |
|---|---|---|
| **General Counsel:** | | |
| GC-49 | 340 | 344 |
| GC-50 | 344 | 344 |
| GC-51 | 345 | 345 |
| GC-52 | 331 | 331 |
| GC-53 | 333 | 333 |
| **Respondent:** | | |
| R-4 | 403 | 404 |



<u>**P R O C E E D I N G S**</u>

1

2      JUDGE GREEN:  So who is the -- the witness?

3      MS. CABRERA:  So we are recalling Dana Miller.

4      JUDGE GREEN:  Oh, Dana Miller.  Thank you.

5      MS. CABRERA:  Yeah, for a very quick purpose.  We just

6  want to put one more exhibit in through her.

7      JUDGE GREEN:  Okay.  So let me rearrange my screens real

8  quick.

9      Ms. Miller, I'm going to -- where are you?  There you are.

10  Let me pin you to the screen.

11      MS. MILLER:  Yes.

12      JUDGE GREEN:  And I'm going to swear you in again, okay?

13  Raise your right hand.

14  Whereupon,

15                        <u>**DANA MILLER**</u>

16  having been previously sworn, was called as a witness herein

17  and was examined and testified, telephonically as follows:

18      JUDGE GREEN:  Okay, so thank you very much.  I already

19  gave you the instructions.  Don't look at anything over on your

20  side.  Don't talk to anybody.  Just talk to whoever's asking

21  you questions on this forum, and -- and only look at documents

22  that we show you, okay?

23      THE WITNESS:  Oh, okay.

24      JUDGE GREEN:  All right, so whenever you're ready, Ms.

25  Cabrera.



1       MS. CABRERA:  Thank you, Your Honor.

2       **DIRECT EXAMINATION**

3  Q   BY MS. CABRERA:  Good morning, Ms. Miller.  Do you recall

4  during your direct testimony, testifying about a meeting that

5  you had with Mike Tanelli on July -- on or about July 12th?

6  A   I do recall that.

7  Q   Okay.  Did you record that meeting?

8  A   Yes, I did.

9  Q   And how did you record it?

10  A   I recorded it on my --

11  Q   I'm sorry, you -- you cut out.

12  A   Sorry.  The hotel has bad Wi-Fi.  I recorded it on my

13  phone.

14  Q   Okay.  Do you still have that phone?

15  A   Yes, I do.

16  Q   And do you still have the recording on your phone?

17  A   Yes, I do.

18  Q   Okay.  Have you altered that recording in any way?

19  A   No.

20  Q   Okay, and did you give that recording to anyone?

21  A   I did.

22  Q   And who did you give it to?

23  A   I gave it to some -- Seth Goldstein.

24       JUDGE GREEN:  Okay, so -- yeah, that's the fire alarm,

25  so -- the fire alarm, so we're going to have to go off the



1    record.

2    (Off the record at 10:06 a.m.)

3        JUDGE GREEN:  Okay, during an off-the-record discussion,

4    the parties stipulated that General Counsel Exhibit 52 would be

5    entered into evidence, so GC-52 is admitted.

6    **(General Counsel Exhibit Number 52 Received into Evidence)**

7        MS. CABRERA:  Thank you, Your Honor.

8        JUDGE GREEN:  So what else do we have?

9        MS. TOOKER:  Well, we -- we do have -- we'd like to go

10   over the subpoena with Respondent.  There were some outstanding

11   responses we were waiting for so that we could, in one fell

12   swoop, go through the subpoena and get the Respondent's final

13   positions on each item.

14       JUDGE GREEN:  Okay.

15       MR. POWELL:  Your Honor --

16       JUDGE GREEN:  So --

17       MR. POWELL:  -- our first witness, Ms. Donaldson, has

18   actually been admitted.  We probably want to put her back in

19   the waiting room, just --

20       JUDGE GREEN:  Okay.  Let me see.  Oh, okay, CK, got it.

21       Okay, so Ms. Donaldson, we're going to put you back in the

22   waiting room, and we'll be with you, hopefully, pretty shortly.

23   Famous last words.

24       MS. DONALDSON:  All right.

25       JUDGE GREEN:  Okay.  All right, so -- okay, so you want to



1    just run through whatever you had, Ms. Cabrera?  We're on the

2    record.

3        MS. CABRERA:  We're on the record?

4        JUDGE GREEN:  We are.

5        MS. CABRERA:  Okay.

6        JUDGE GREEN:  Do you want to do it on the record?

7        MS. CABRERA:  If Respondent is ready to respond to the

8    paragraphs for which we didn't receive any documents, then I

9    have no problem being on the record right now.

10        JUDGE GREEN:  Okay, sounds like we should be on the

11    record.  So go ahead --

12        THE COURT REPORTER:  We -- we -- we -- we were on the

13    record; we're still on the record.

14        JUDGE GREEN:  I know.

15        MS. CABRERA:  Okay.  So just turning to the subpoena, Your

16    Honor, the General Counsel did not receive any responsive

17    documents to paragraphs 3, 4, 5, 8, or 19 and 20.  Ms. Tooker

18    will correct me if I'm misrepresenting that, but I believe

19    those are the numbered paragraphs for which the Respondent --

20        MS. TOOKER:  Act -- actually, I don't think the subpoena

21    is in the record.  So I think that in order for this

22    conversation to be meaningful, we either need to put the

23    subpoena in the record, or we need to read it into the record.

24    So --

25        JUDGE GREEN:  Well, don't read it into the record.  But we



1    can -- we can put it into the record.

2         MS. TOOKER:  Okay.  So we're on 53?

3         MS. CABRERA:  53.

4         MS. TOOKER:  Okay, so I can upload the subpoena into

5    SharePoint for everyone.

6         MS. CABRERA:  Thank you.

7         MS. TOOKER:  GC-53.

8         JUDGE GREEN:  Yeah, I'm pretty sure everybody has it,

9    right?  From the petition to revoke documents?  Yeah, it -- you

10   have to give it to Barry in -- in any event, so either you

11   email it to him or put it in SharePoint.

12        Okay, so --

13        MS. CABRERA:  Okay, well given that we're on GC-53, so

14   General Counsel would offer that into evidence.

15        JUDGE GREEN:  Any objection?

16        MR. POWELL:  No objection, Your Honor, sorry.

17        JUDGE GREEN:  Okay.  So GC-53 is admitted.

18   **(General Counsel Exhibit Number 53 Received into Evidence)**

19        MS. CABRERA:  Okay.  Thank you, Your Honor.

20        So we would just turn to Respondent for a response as to

21   those paragraphs that I just mentioned for which we didn't get

22   documents.  We would like to know whether or not there are, in

23   fact, no documents, or if there are perhaps documents to be

24   still produced.

25        MR. ENJAMIO:  We -- we addressed 3, 4, 5, which you



1    mentioned.  We either produced everything we have found or put

2    them with the privileged log in some fashion.  They --

3    everything that -- there were responsive documents, but they've

4    either been produced or put on the log.  We have not withheld

5    anything that is responsive to those documents -- to those

6    requests.

7        MS. CABRERA:  Okay, would you happen to know which items

8    on the privilege log respond to 3 through 5?

9        MR. ENJAMIO:  It's -- so the -- yeah, they would be -- 3

10   through 5 overlap a lot because they deal with communications

11   about removal or revocation of Dana Miller's post.  And they

12   would be the Chimes that -- I don't have the numbers in front

13   of me, but they would be, like -- they would be the Chimes that

14   deal with -- that we put on the privilege log -- the emails

15   that we put on the privilege log that you and I discussed

16   yesterday.  They would all be in some fashion responsive to one

17   or more of 3 through 5 -- I mean, 3 through 6.

18       MS. CABRERA:  Okay.  Your Honor, just, you know, letting

19   you know, we -- we will go through the privilege log and -- and

20   those Chime messages.

21       JUDGE GREEN:  Yeah.

22       MS. CABRERA:  We do have some issues with the -- with the

23   log.

24       JUDGE GREEN:  Okay.  So 8, 19, and 20?

25       MR. POWELL:  Yes -- yes, Your Honor.  On 8, we did produce



1    documents in response to request number 8.  They are page

2    numbers 575 to 582.  And I know those for sure, that those --

3    yeah, those documents were produced in response to request

4    number 8.  And that's all we had.

5         MS. CABRERA:  Okay.  So there were no -- there were no A

6    to Z notifications?

7         MR. POWELL:  No, we -- we have the -- the A to Z

8    notifications.  I think there were probably A -- A to Z

9    notifications that were similar in content to 575 to 80 -- to

10   whatever it was, 582.  But those notifications themselves were

11   not preserved or saved.

12        MS. CABRERA:  Oh, so you're saying that there were

13   notifications, but they no longer exist?

14        MR. POWELL:  Correct.  And -- and -- and I think the --

15   the statement of the content was essentially identical to the

16   documents -- you know, the documents, obviously in a different

17   format, but the -- the text was the same as the documents that

18   have been produced, and I don't have any problems stipulating

19   that, you know, the same content was distributed via the A to Z

20   app as well.

21        MS. CABRERA:  Okay.  Do you have an idea of how many

22   notifications went out?

23        MR. POWELL:  No, not specifically.

24        MS. CABRERA:  Do you have any idea of the time frame for

25   when the notifications went out?



1       MR. POWELL: It would have been the May time frame, the

2 (indiscernible) that that was the request. I think that was

3 the request; it was May, the period of May, yeah. May 2021.

4       MS. CABRERA: Right.

5       JUDGE GREEN: Well, I'm sorry, what type of notifications

6 were these?

7       MR. POWELL: These were just -- they were campaign --

8 union campaign statements similar to --

9       JUDGE GREEN: Okay.

10       MR. POWELL: -- statements that the company made in fliers

11 and posters regarding the -- the ALU, union dues, and sort of

12 other related campaign issues.

13       JUDGE GREEN: Okay.

14       MS. CABRERA: Okay. So Mr. Powell, when we -- the General

15 Counsel would like to put in those -- a number of those

16 notices, those postings, I guess we'll call them, to

17 differentiate them from the A to Z notifications. So if I'm

18 understanding you, you're willing to stipulate that in addition

19 to those postings that we're going to put in as additional GC

20 exhibits, in addition to the posting of that content, that

21 content was also sent to employees via -- via the A to Z app?

22       MR. POWELL: Correct.

23       MS. CABRERA: Okay. Okay, I guess we'll get to that

24 after.

25       JUDGE GREEN: Are those already marked? I noticed that



1     you put in GC-52.  So does that mean we have a GC-46 to 51?

2         MS. CABRERA:  Yes, Your Honor, and that's in SharePoint.

3     That would -- just so -- you know, just so you know, I would

4     be -- I'm going to be offering SGC-46, 47, and 48, three of the

5     physical postings that Respondent put up around the facility.

6     And I'll be asking Respondent to stipulate that they also sent

7     out these -- the content of these postings in notification form

8     on the A to Z app.

9         MR. POWELL:  And then for 19 and 20, there were no

10    responsive documents.

11        JUDGE GREEN:  Okay.

12        MS. TOOKER:  Okay.  And I think -- is this a good time

13    to -- Your Honor, we've reached a stipulation on -- a factual

14    stipulation that made the employer's production related to

15    paragraphs 15, 16, 17, and 18 unnecessary.  So --

16        JUDGE GREEN:  Okay.

17        MS. TOOKER:  -- so I think at this time, we can --

18        MS. CABRERA:  Oh, my God.  There was just a shooting

19    outside my window.  I'm sorry.

20        JUDGE GREEN:  Whoa.

21        MR. POWELL:  Oh my God.

22        MS. TOOKER:  Yeah, I heard the --

23        JUDGE GREEN:  Let's go off the record.

24    (Off the record at 10:40 a.m.)

25        JUDGE GREEN:  Okay, so we were waiting on a stipulation



1    that will make subpoena request 15, 16, and 17 unnecessary.

2        MS. TOOKER:  Yes.  And if you're ready, Your Honor, I can

3    read that stipulation into the record at this time.

4        JUDGE GREEN:  Okay, go ahead.

5        MS. TOOKER:  The parties hereby stipulate that on various

6    dates during the month of November 2021, and on various dates

7    during the period from February 2022 during April 2022, at its

8    JFK8 and LBJ5 facilities, Respondent required its employees to

9    attend mandatory meetings during which Respondent's agents

10   delivered information regarding the union election process and

11   delivered statements in opposition to the Union by presentation

12   and to the Union.

13       The -- the parties agree that this stipulation is for the

14   purpose of this case only.  And I think Respondent has

15   something to add.

16       MR. POWELL:  All right.  With -- we're -- we're making --

17   entering into that stipulation as stated by counsel for General

18   Counsel.  And then certainly, our position with that

19   stipulation doesn't preclude us from presenting evidence

20   regarding the lack of disciplinary action taken with regard to

21   attendance or nonattendance at these meetings.

22       JUDGE GREEN:  Okay.

23       MS. TOOKER:  And just to be clear, the -- the General

24   Counsel does take the position that such rele -- such evidence

25   would be irrelevant, but we can cross that bridge when we come



1    to it.

2        JUDGE GREEN:  Listen, well, I'm going to be allowing that.

3    You know, we're -- we're in -- we're in new territory with

4    mandatory meetings, which have been lawful for a long period of

5    time.  So you're putting this before the Board; we don't really

6    know what, if anything, they're going to consider relevant.  So

7    that -- that's going to come in.  And frankly, that's what I

8    thought the -- the defense was going to be after the conference

9    call we had.

10       So can -- can we just go off -- let's go off the record

11   for just one moment.

12   (Off the record at 11:12 a.m.)

13       MS. TOOKER:  So two -- two additional things.  I do want

14   to put some -- I'd like Respondent to stipulate to put -- to

15   putting some of the produced documents into the record.  I

16   don't know if you want to do that first, or if you want --

17       JUDGE GREEN:  Yes.

18       MS. CABRERA:  -- to go over the privileged stuff first.

19       JUDGE GREEN:  No, that's fine.

20       MS. CABRERA:  Okay.

21       JUDGE GREEN:  I mean, are we talking about 46 through 51?

22       MS. CABRERA:  Yes, Your Honor.

23       JUDGE GREEN:  Have you had --

24       MS. CABRERA:  So --

25       JUDGE GREEN:  Has the Respondent had an opportunity to



1    look at 46 through 51, GC-46 through 51?

2        MS. CABRERA:  Just to be clear, so it's clear on the

3    record, GC-46 is the don't be fooled posting.  GC-47 is the

4    protect your signature posting.  And GC-48 is the questions to

5    ask posting.

6        MR. POWELL:  We don't have any objections to those.

7        JUDGE GREEN:  Okay.  So 46 through 48 are admitted.

8        MS. CABRERA:  Okay.  And then just on --

9        MR. POWELL:  Okay.

10       MS. CABRERA:  -- those three items, pursuant to our

11   previous conversation, Mr. Powell, I would ask Respondent to

12   stipulate that in addition to the physical posting of those

13   exhibits, that those -- that the content of those exhibits were

14   also sent to employees via Respondent's A to Z app.

15       MR. POWELL:  During the month of May.

16       JUDGE GREEN:  Okay, so that's so stipul -- stipulated.

17       MS. CABRERA:  Okay.

18       MR. POWELL:  We are on the record, right, Your Honor?  I'm

19   sorry.

20       JUDGE GREEN:  Yes, yes, we are.

21       And 49 through 51?

22       MS. CABRERA:  Sure.  GC-**49** is a Chime chat between Mike

23   Tanelli and Anna Leornardi.  Your Honor, last -- yesterday

24   afternoon, I sent Respondent an email setting forth the names

25   of some of the individuals listed in some of these Chimes



1   because the -- the -- the Chime platform is I guess an internal

2   platform whereby Respondent's personnel can message --

3   instant -- kind of, like, instant message each other.  And each

4   of these documents contains a number of names, and I sent

5   Respondent a list of those names for clarification as to their

6   title and also their 211 or 213 status.  So I don't know -- I

7   sent it to them yesterday evening.  I don't know if they had a

8   chance to review it.  And if we could get some stipulations

9   with regard to tho -- the identity and status of the

10  individuals now or not.

11       MR. POWELL:  Yeah, we're getting that information.  I

12  mean, I don't know that we're ready to stipulate at this

13  moment, but we should pretty soon; that's right.  We're getting

14  that information ready.  I believe we've determined that --

15  that they were -- they were all section 211 or section 213

16  supervisors or agents.  I don't know that we've got their

17  position titles at the time.  But we have confirmed that all of

18  them were --

19       JUDGE GREEN:  Are we -- are we naming them now, or are you

20  just -- are these -- we're just saying that these are the

21  people who are in the Chimes messages?

22       MS. CABRERA:  We might as well -- I can -- I can name

23  them, certainly, for the purposes of GC-49.  We have Mike

24  Tanelli, who we've already stipulated is an HR business

25  partner, and I think we already have a -- an admission that



1    he's a 211 and 213.  But we also have an Anna Leornardi.  So we

2    need more information on her title if Mr. Powell is --

3        If what you're saying, Mr. Powell, is that the -- the

4    employer's willing to stipulate that they're -- you said agents

5    and supervisors?

6        MR. POWELL:  Yeah, they're -- they're -- they're -- well,

7    I -- I just said they're either -- they're agents or

8    supervisors, either 213 or 211.  I don't have the position

9    titles, but we're comfortable stipulating that they are either

10   Section 213 or --

11       MS. CABRERA:  Okay.  I mean, the cleanest way is if we can

12   get a -- a -- a written stipulation, or at least a stipulation

13   we can read on to the record.  Do you guys think you'll have

14   that today?

15       MR. POWELL:  Well, I'll try.  And again, we're not going

16   to object to their status.  And yeah, we'll get -- we -- we

17   will get, you know, some titles, and we can put in a written

18   stipulation or read a stipulation into the record on --

19       MS. CABRERA:  Okay.  So --

20       MR. POWELL:  (Indiscernible).

21       MS. CABRERA:  So -- okay.  So going back to GC-49, it's a

22   Chime chat between Mike Tanelli and Anna Leornardi.  I was not

23   given the native format.  I only have the PDF format.  And that

24   was something that Mr. Enjamio was going to look into to see if

25   the native format was available.



1    MR. ENJAMIO:  (Indiscernible).

2    MS. CABRERA:  I'm sorry, you cut out.

3    MR. ENJAMIO:  I need to confirm that on our next break, if

4    we have it.  I don't know, prob -- you know, we don't have a

5    problem.

6    MS. CABRERA:  Okay.  So for now, Your Honor, I'll put in

7    what they gave us, which is the PDF version.

8    MR. ENJAMIO:  Just -- just -- I'm sorry, Emily -- Ms.

9    Cabrera.  So GC -- GC-49 is the one that was redacted --

10    MS. CABRERA:  Yes.

11    MR. ENJAMIO:  -- that had it redacted?  Okay.  Yeah, the

12    reason we did not -- sorry.  The reason we did not produce

13    the -- the -- the native is that when you redact it, the

14    redacted version, we cannot produce the native.  We can produce

15    a -- if -- if something is un -- fully unredacted, then we can.

16    But to redact it, we cannot produce it in the native format.

17    MS. CABRERA:  Okay, so General Counsel has an issue

18    with -- with that particular redaction.  We're going to be

19    asking for in-camera inspection on that document at the

20    redacted portions, in addition to others, which I guess we can

21    get to.

22    MR. ENJAMIO:  Actually -- actually, maybe we could --

23    let -- let me just -- can we just address that right now?

24    MS. CABRERA:  Well, I mean, I have other privilege issues.

25    I -- I don't know what you want --



1    MR. ENJAMIO:  Okay, however you want to do it is fine with

2    me.  Yeah, however you want to do it is fine with us.  Why

3    don't we just go to GC-50 and 51 and then come back to that?

4    MS. CABRERA:  Okay.  Well regardless, I would offer GC --

5    I would like to put GC-49 in regardless.  If we are able to get

6    the --

7    MR. ENJAMIO:  Yeah.  No objection.

8    MS. CABRERA:  -- the native after we, you know, have our

9    privilege discussion, then we can make that, like, 49A, or

10   something like that.

11   MR. ENJAMIO:  Yeah, no objections.

12   JUDGE GREEN:  Okay, so GC-49 is admitted.

13   **(General Counsel Exhibit Number 49 Received into Evidence)**

14   MS. CABRERA:  Thank you.  Okay, GC-50 is a version of --

15   of a comment -- a VOA comment from Mr. Connor Spence that we

16   already have into the record.  But I wanted to put this one in

17   because it has the date.  And there was some confusion, I

18   think, or some question at the close of the last round of

19   testimony regarding the sequence of events when it came to the

20   meeting and some postings.  So I think it just helps inform the

21   dates -- the posts.  So I move for GC-50.

22   MR. ENJAMIO:  Yes, I need to take a look at it.  Give me

23   one second.  Okay.  Yeah, no objection, Your Honor.

24   JUDGE GREEN:  Okay, so GC-50 is admitted.

25   **(General Counsel Exhibit Number 50 Received into Evidence)**



1      MS. CABRERA:  Thank you.  And then finally, GC-**51** is

2   another Chime chat.  It has a number of different names.

3      JUDGE GREEN:  Retweeted.

4      MS. CABRERA:  Seth, do you want me to --

5      MR. ENJAMIO:  We have no -- we have no objection to that.

6      MS. CABRERA:  So I would offer it obviously pending

7   clarification on the titles and just the -- a stipulation on

8   the either 211 or 213 status of each individual on the Chime.

9      JUDGE GREEN:  Okay, so GC-51 is admitted.

10   **(General Counsel Exhibit Number 51 Received into Evidence)**

11      MS. CABRERA:  Okay, thank you, Your Honor.

12      MR. POWELL:  And Ms. Cabrera, just -- just -- you sent us

13   the email earlier with the list of names --

14      MS. CABRERA:  Um-hum.

15      MR. POWELL:  -- that list of names would encompass the

16   people both at issue both respect -- in respect to 49 and 51;

17   is that correct?

18      MS. CABRERA:  Yes, correct.

19      MR. POWELL:  Right.  I just wanted to make sure we had the

20   full list of who we were working to identify the position

21   titles.

22      MS. CABRERA:  Got it.

23      Your Honor, turning to the privilege issue as I indicated,

24   there are a number of items that appear on the privilege log

25   that the General Counsel would ask for an in-camera inspection



1    on, based on the fact that the communications are between --

2    are not between attorneys.  They're only between managerial

3    employees.  And based on the explanation in the privilege log,

4    it's unclear whether or not, you know, there -- there --

5    there's any indication that legal advice was being given,

6    discussed.  And there's just no way for us to tell that.  So we

7    would ask Your Honor to do an in-camera inspection.

8         I can go through the items, Your Honor, if you'd like.  I

9    don't know if you want to take a minute to pull up the

10   privilege log?

11        JUDGE GREEN:  So --

12        MR. ENJAMIO:  If we could also just --

13        JUDGE GREEN:  Yeah, go ahead.

14        MR. ENJAMIO:  Well, if we could just address some of those

15   documents, Ms. Cabrera.  So the one --

16        MS. CABRERA:  I'm -- I'm -- I'm sorry to interrupt when --

17   Mr. Enjamio --

18        MR. ENJAMIO:  Yes.

19        MS. CABRERA:  Should I forward --

20        MR. ENJAMIO:  It's all right.

21        MS. CABRERA:  -- the privilege log to Your Honor?  Because

22   I'm realizing that you don't have it.

23        JUDGE GREEN:  Yes.

24        MS. CABRERA:  Okay.  Okay, I just sent it.  All right, I

25   suppose we could start with GC-49, because that contains



1    redactions within the document.

2        MR. ENJAMIO:  So may I address that?  Because I think

3    there may be a way to short circuit that.

4        JUDGE GREEN:  Okay.

5        MR. ENJAMIO:  We -- we don't -- we don't have a prob --

6    our position is that it's a -- that was an almost verbatim -- a

7    verbatim replication of the -- I saw of -- of -- of the talking

8    points that were given by a lawyer.  But if we can stipulate or

9    agree on the record that our production of an unredacted

10   version of that document will not be used as a waiver of

11   attorney client privilege for any other purpose.  You know,

12   like that we are perfectly fine in producing the unredacted

13   version.

14       JUDGE GREEN:  Okay.

15       MS. CABRERA:  I'd like to consult with my cocounsel, but I

16   mean, I don't --

17       MR. ENJAMIO:  Yeah.

18       MS. CABRERA:  -- I don't think that should be a --

19       MR. ENJAMIO:  And let me just be clear because this may

20   be -- also be true.  I -- I don't want to be -- what I'm trying

21   to get at is, you know, we put in our privilege log the fact

22   that, you know, this is a -- you know, this is a -- you know,

23   talking points given by counsel.  I don't want -- you know, we

24   would produce the whole thing unredacted.  We just want to make

25   sure that that cannot be used later on in another case, or



1    even -- or even in this case to say, well, talking points

2    produced by -- you know, given by counsel are -- I even waived

3    the the privilege with respect to any other context.  That's

4    all I'm trying to get out of it.

5        MS. CABRERA:  Understood.

6        MR. ENJAMIO:  If that's clear.  Yeah.

7        MS. CABRERA:  Okay.

8        MS. TOOKER:  Mr. -- sorry, I just wanted to ask whether --

9    I mean, I think we went over a few documents, that this was an

10   issue -- or that privilege issues were raised yesterday.  Are

11   there any other documents that you're going to --

12       MR. ENJAMIO:  Yes.

13       MS. TOOKER:  -- produce?  Okay.

14       MR. ENJAMIO:  Yes.

15       MS. TOOKER:  Okay.

16       MR. ENJAMIO:  Ac -- actually, yes, and maybe I can just

17   address that right now.  So there were -- Ms. Cabrera and I

18   discussed -- I believe there were six Chimes, right, where we

19   had asserted privilege because these were conversations where

20   managers were to obtain information to get legal advice.

21   Again, subject to the same stipulation that we would -- that

22   that would not be used in another context, another case, or

23   even in this case in other context to say that we have -- that

24   I'm going to go ahead and waive attorney-client privilege.  We

25   are perfectly willing to produce those documents and they will



1    be, Ms. Cabrera identified at the same convention that we used

2    yesterday, 383764 --

3        MS. CABRERA:  Yes.

4        MR. ENJAMIO:  -- wait a minute.  64 sundrit (phonetic

5    throughout).

6        MS. CABRERA:  Uh-huh.

7        MR. ENJAMIO:  27993, 33483 and 18693.  Those, no problem

8    producing them unredacted subject to that stipulation.  There

9    is another one, which is 9124, that we would produce in the --

10   that's subject to the same agreement and stipulation, but for

11   that one, we would like to redact the nonresponsive portions

12   because we believe that it could be prejudicial or could be

13   used in other context.  I would be more than happy to provide

14   the unredacted version to Your Honor for, you know, reviewing

15   in camera, but that's the only document of all that we produced

16   that we would have redacted, you know, for irrelevant -- you

17   know, for something that -- for the portions that are

18   nonresponsive.  You know, so I think that's -- we've tried to

19   be judicious in the use of redactions.

20       We would provide it to Your Honor for in camera

21   inspection, it would be the parts that are nonresponsive.  In

22   the other documents, we're producing the nonresponsive either,

23   so we don't have this issue, but those parts that we're

24   redacting could be prejudicial or used in other contexts in

25   other cases or, you know in other allegations outside of this



1    case or -- or, you know, so we would -- we would produce it

2    redacted.  The redacted parts are all nonresponsive.

3    Obviously, we -- like I say, we're willing to -- you know, we

4    produce --

5        JUDGE GREEN:  Okay.  There's -- there's one -- am I right

6    that there's one outstanding document that's redacted and --

7    I'm sorry, what is that document?  Is it a Chime?

8        MS. CABRERA:  It's a Chime.

9        MR. ENJAMIO:  It is a Chime.  It's a Chime, Your Honor.

10   Everything else that we talked about are also Chimes that

11   the -- many of them are -- a lot of it is unre -- and -- and

12   many of them -- a lot of it is unresponsive, but we're not

13   going to be redacting those portions.

14       JUDGE GREEN:  Okay.

15       MR. ENJAMIO:  We don't think it's prejudicial in that way.

16       JUDGE GREEN:  Right.  So we had this issue in the last

17   Amazon case regarding Chimes.  I don't know if you're at all

18   familiar with it.

19       MR. ENJAMIO:  Somewhat.

20       JUDGE GREEN:  Yeah.  Chimes are more difficult, but

21   generally speaking, documents are either privileged or not

22   privileged as a -- as a whole.  You can't redact, like, a

23   document -- portions of documents on the grounds that they're

24   irrelevant.  But the problem with Chimes is you don't really

25   know what's the document and what's not the document.  You



1  know, is each indivi -- individual message the document or is

2  it the Chimes for an whole -- whole day is a document.  You

3  know, we had a hard time with it.

4      Why don't you -- if you're -- if you're both willing to

5  show me this one document in camera, why don't you -- why don't

6  you send that to me and then the GC can discuss whether they

7  want to enter into the stipulation, which will allow for the

8  production of -- to them of the unredacted versions of the

9  other documents.

10     MR. ENJAMIO:  And the other documents -- the other

11  documents were on the -- on the privilege level.  We're saying

12  we will produce the entire document --

13     JUDGE GREEN:  Right.

14     MR. ENJAMIO:  -- take them off the privilege log,

15  essentially.

16     JUDGE GREEN:  And so it's --

17     MR. ENJAMIO:  Pursuant to that stipulation.

18     JUDGE GREEN:  Right.

19     MR. ENJAMIO:  Yes.  And then --

20     MS. CABRERA:  And that's --

21     MR. ENJAMIO:  -- the only other thing that we would

22  have --

23     I'm sorry, Ms. Cabrera.  I'm sorry.

24     MS. CABRERA:  You're -- unless your adr -- you're going to

25  address the two emails, I guess?



1    MR. ENJAMIO:  I am.  There are also two emails, Your Honor

2    that are on the log.  Those are emails of -- you know, they --

3    I went back and looked at them after I spoke with Ms. Cabrera

4    yesterday.  They -- our position is that they're definitely

5    privileged because there's advice being given in those two

6    emails by lawyers.  I know, Ms. Cabrera, perhaps just from the

7    log, it shows that the lawyers are copied, but the lawyers are

8    actually participating, and they're actually being addressed.

9    We have no problem providing that -- those two emails to Your

10   Honor.

11        So the only things -- subject to our agreement, the only

12   things we're -- the stipulations, the only things that are at

13   issue that Your Honor would have to review are two emails --

14   they're not that long --

15        JUDGE GREEN:  Okay.

16        MR. ENJAMIO:  -- and one Chime message, which is also not

17   very long, where we would send you what we would, you know,

18   highlight what we would -- want -- want to redact, which is

19   totally nonresponsive and irrelevant to this case.

20        JUDGE GREEN:  Okay.

21        MR. ENJAMIO:  That's all that we would need to review.

22        JUDGE GREEN:  But you're saying the emails do actually

23   have -- they do actually have lawyers on the recipients or

24   the --

25        MR. ENJAMIO:  Yeah, I mean --



1       MS. CABRERA:  They're cc'd.

2       MR. ENJAMIO:  -- but they participate.

3       MS. CABRERA:  They're cc'd.

4       MR. ENJAMIO:  Yeah.

5       JUDGE GREEN:  Okay.

6       MR. ENJAMIO:  They are -- they are, in some parts, cc'd,

7  other parts, but they actually do respond and participate.  We

8  can give you the names of the lawyers so you could see that.

9       JUDGE GREEN:  Yes.

10       MR. ENJAMIO:  Your Honor?

11       JUDGE GREEN:  Yes.

12       MR. ENJAMIO:  -- in the email.

13       JUDGE GREEN:  Yeah, why don't you -- yeah, why don't you

14  do that.  Okay.  So let's go off record.

15  (Off the record at 11:33 a.m.)

16       MS. CABRERA:  Okay.  Your Honor, so you're going to be --

17       THE COURT REPORTER:  We're -- we're -- we're on record.

18       JUDGE GREEN:  Is that all we have?  Is that all we are

19  going to have from the -- from the GC?  Or just the --

20       MS. CABRERA:  Well, no.  We -- we've covered everything in

21  the privileged, I think.

22       THE COURT REPORTER:  We are now.

23       JUDGE GREEN:  Okay.  So I've conducted an off-the-record

24  in camera review of three documents.  Two were email chains.

25  Those were presented to me as -- as -- well, they're documents



numbered 4928 and 3364.  I'm going to confirm that those are

privileged and need not be produced.  The last document

produced to me for in-camera review was a redacted Chims -- no,

Chimes chain.  The document was identified as 9124 and I'm

confirming that the redactions are appropriate as not

responsive to the subpoenas.

So with that, that's the end of the in-camera review.  I

understand that there's a stipulation that General Counsel is

agreeing to enter into and with that stipulation certain

additional documents are going to be produced to the General

Counsel in unredacted form.

MS. CABRERA:  Yes, Your Honor.  Based on Mr. Enjamio's

request, the General Counsel is willing to stipulate that we

don't plan on using the production of the Chimes to claim any

type of waiver against Respondent in this proceeding.

MR. ENJAMIO:  With that, Your Honor, I can confirm that we

will produce the documents 3837, and this is the convention

that we've been using, 6400, 27993, 33483, and 18693 in totally

unredacted form, and 9124 in the redacted form that Your Honor

reviewed.

Ms. Cabrera, we'll produce those momentarily in PDF form,

which is what we have prepared.  We are getting the natives of

those -- of five of the -- the -- the one redacted, we cannot

get the native, but the other five we're getting the native and

we will be able to give that to you, we're hoping, later today.



1   But we will very soon get you the unredacted PDF versions of

2   all of that.

3       MS. CABRERA:  Okay.  And -- and I apologize.  I'm a bit

4   distracted by what happened earlier today, but did we -- what

5   did we say as to 2172?  And tho -- the redacted --

6       MR. ENJAMIO:  Yeah, no, I'm sorry.  We're -- subject to

7   the same stipulation, we're producing that in unredacted

8   format.  I am not 100 percent sure we have the Chime -- we have

9   the -- the --

10      MS. CABRERA:  The native?

11      MR. ENJAMIO:  -- version.  The native.  Yeah, yeah.  We're

12  also getting the native of that one, so we'll substitute it and

13  send you the native when we have it.

14      MS. CABRERA:  Okay.

15      MR. ENJAMIO:  Which we hope to do later today.

16      MS. CABRERA:  Okay.  So Your Honor, as soon as we can read

17  them and review them, General Counsel will make a determination

18  as to whether or not there's anything in addition that General

19  Counsel would like to put into the record.

20      JUDGE GREEN:  So I'm kind of inclined to take a lunch

21  here.  Why don't we just come back -- have lunch, come back at

22  1, and we'll either put in any additional documents that the

23  General Counsel wants to put in, or if you want to call

24  somebody else, we can do that.  Otherwise, the General Counsel

25  will rest and the Respondent will start its case.



1    MS. CABRERA:  Fair enough.

2    JUDGE GREEN:  Okay.  So off the record until 1:00.

3    (Off the record at 12:06 p.m.)

4    JUDGE GREEN:  All right.  So we're on the record, and the

5    GC has a question about GC-57.

6    MS. CABRERA:  Yes.  So just to clarify, the General

7    Counsel will be offering as additional exhibits GC-49-A, which

8    is the native unredacted version of GC-49.

9    MR. ENJAMIO:  We have no objection.

10    JUDGE GREEN:  Okay.  So GC-49-A is admitted.

11    **(General Counsel Exhibit Number 49-A Received into Evidence)**

12    MS. CABRERA:  We're offering, as GC-54, what was

13    previously identified by Respondent and their privilege log as

14    document 3837.  We would offer that.

15    MR. ENJAMIO:  No objection to that, Your Honor.

16    JUDGE GREEN:  Okay.  So GC-54 is admitted.

17    **(General Counsel Exhibit Number 54 Received into Evidence)**

18    MS. CABRERA:  As GC-55, we're offering the document that

19    was previously marked in Respondent's privilege log as 9124.

20    MR. ENJAMIO:  Redacted.

21    MS. CABRERA:  Redacted.

22    MR. ENJAMIO:  No exhibit on the redacted.  I mean, no

23    objection on the redacted.

24    MS. CABRERA:  Okay.

25    JUDGE GREEN:  Okay.  So GC-55 is admitted.



**(General Counsel Exhibit Number 55 Received into Evidence)**

MS. CABRERA:  And GC-56.  It was previously identified as document number 27993 in Respondent's privilege log.

MR. ENJAMIO:  No objection.

JUDGE GREEN:  Okay.  GC-56 is admitted.

**(General Counsel Exhibit Number 56 Received into Evidence)**

MS. CABRERA:  And finally, GC-57 was previously identified as document 33483 in Respondent's privilege log.  We would offer that.

MR. ENJAMIO:  No objection.

JUDGE GREEN:  Okay.  So GC-57 is admitted.

**(General Counsel Exhibit Number 57 Received into Evidence)**

MS. CABRERA:  Thank you.  I do have a question, though, about GC-57, if the party -- if Respondent could pull it up and take a look.

MR. ENJAMIO:  Pulling it up.  What -- what's the question?

MS. CABRERA:  Okay.  If you have it up in front of you.  So my question is this.  You can see in Ms. Sciurba's Chime, she's asking in bubble number 1, "Do we have the capability to flag a AA".  I just wanted to know what the AA stands for.

MR. ENJAMIO:  Amazon associate.

MS. CABRERA:  Okay.  Okay.  The other point I wanted to make is, given that we're putting in these additional documents, there might be a couple of additional names.  Mr. Enjamio and Mr. Powell, that I'd like to get their title and



1    their agency or you know, 211 or 213 status.  So I will send

2    you a follow up email with the additional names.  Okay.  Thank

3    you.

4        JUDGE GREEN:  Okay.  And with that, does the GC rest?

5        MS. TOOKER:  I think the only thing that we have

6    outstanding is the owner's manual.  And I think we're okay to

7    rest subject to the admission of the owner's manual when you

8    guys track down the appropriate version and that stipulation

9    regarding the 211s and 213s that Emily's giving you a list for.

10       MR. POWELL:  We don't have any objection to going ahead

11   and putting in the 2019 manual -- put into evidence if we --

12   because we don't have -- we're not going to -- learned that the

13   (indiscernible) solicitation policy is the same as the current

14   one.  What we haven't got is the one that's in --

15       MS. TOOKER:  Oh, we lost you there for a minute.

16       JUDGE GREEN:  When you said, "What we haven't".

17       MR. POWELL:  What we haven't got is the one that was in

18   effect -- we've got the current one and the 2019 one.  We don't

19   have the one that was in effect in 2021, but we've confirmed

20   that the solicitation policy, I don't think changed.  So we

21   don't have any objection to putting in the 2019.

22       MS. TOOKER:  Okay.  And it's possible that we're going to

23   be using it for other policies, like including the -- there's a

24   section on grounds for discipline that includes insubordination

25   that we might be using it for.  So to the extent that that's



1    changed in a -- was that the same at the -- at the time of the,

2    you know -- I mean, basically, in October, November of '21

3    through April of 2022, then, you know, you should let us know.

4         MR. POWELL:  Okay.  So why don't you go ahead and put in

5    the 2019, and then if we want to -- if you want to supplement

6    or add an exhibit when we obtain the 2021, that's fine.

7         MS. TOOKER:  Okay.  Let me just -- I -- I don't remember

8    if it's marked and in SharePoint or not.  Let me just double-

9    check here.

10        JUDGE GREEN:  I'm not seeing anything in order to respond.

11        MS. TOOKER:  Yeah, okay.  So it'll be GC-58.

12   **(General Counsel Exhibit Number 58 Marked for Identification)**

13        JUDGE GREEN:  Okay.  So that's going to be the 2019

14   employee manual?

15        MS. TOOKER:  Yes.  I had previously set this to

16   Respondents and will now upload it into SharePoint.

17        MR. POWELL:  No objection to --

18        JUDGE GREEN:  Okay.  So GC-8 (sic) will be admitted.

19   **(General Counsel Exhibit Number 58 Received into Evidence)**

20        MS. TOOKER:  58.

21        JUDGE GREEN:  It's 58, right?

22        MS. TOOKER:  Yeah, 58.

23        JUDGE GREEN:  Right.  After that, the 2021 manual will be

24   59 if we -- if and when we get it.

25        Okay.  So are we -- we're -- we're done for now with the



1    General Counsel's case, yes?

2        MS. CABRERA:  Yes, Your Honor.

3        JUDGE GREEN:  Okay.  So if I remember correctly, I don't

4    think the Respondent made an opening statement at the start of

5    the case.  Would you like to make one now or no?

6        MR. POWELL:  Your Honor, before we make an opening

7    statement, we would like to make a motion to dismiss the

8    captive audience allegations from the complaint.  The -- which

9    is paragraphs 13 and 14 and the associated remedial paragraphs

10   of 21 through 23 in the complaint.  Those paragraphs allege

11   that Amazon violated the Act by virtue of the fact that it

12   confected employee campaigning during paid work time of

13   associates, obviously commonly referred to as captive audience

14   meeting.

15       Simply put, that's what General Counsel has not presented

16   and could not possibly have presented any evidence to establish

17   that the mere holding of meetings violates the Act under

18   current Board law.  We believe that the dismissal of these

19   allegations is not only required under current law, but the

20   dismissal now will also serve the interest of justice and

21   judicial efficiency by helping streamline the remainder of this

22   case.

23       As I'm sure Your Honor is well aware, mandatory so-called

24   captive audience meetings are, in fact, lawful under existing

25   Board law.  The lawfulness of those meetings has been



1    recognized by the Board for over 70 years and is rooted in the

2    Employer's right to free speech under Section 8(c) of the Act

3    and the constItution.  Despite General Counsel's desire to

4    change that long-standing precedent and apply it retroactively

5    to Amazon, the law of the land remains that such meetings are

6    lawful, and unless and until that law is changed,

7    administrative law judges are obligated to continue to apply

8    existing Board law.

9        The legislative history of the Act make it absolutely

10   clear that Congress intended for employer -- to allow employers

11   to express their meaning in captive audience meetings.  The

12   legislative history of the Act explicitly shows that Congress

13   contemplated and rejected the compulsory audience doctrine,

14   which was espoused in Clark Truthers and its regularly relied

15   upon by the General Counsel now in an effort to change the law.

16       Further, the Board, in Babcock and Willcox, acknowledge

17   Congress' intent to overrule Clark Truthers by saying the

18   language of 8(c) and its Legislative history make it clear that

19   the doctrine of Clark Truthers case no longer exists as a basis

20   for finding unfair labor practices in circumstances such as

21   this right here discloses, which was the employer -- the

22   employer required its employees to attend and listen to the

23   speeches.

24       And numerous Board decisions since that Cox and Wilcox

25   have continued to reiterate that principle and recognize that

1    Section 8(c) was an inflection point in the interpretation of

2    the Act and that subsequent to 8(c) Clark Truthers, no longer

3    existed and that such captive audience meetings were then

4    lawful.

5        So by alleging that the captive audience meetings are

6    unlawful, General Counsel is seeking to read Section 8(c) out

7    of the Act to substitute an entirely new and nonexistent right

8    into Section 7 of the Act, the right to refrain from listening.

9    And the allegations of 13 and 14 of this complaint are contrary

10   to Act, contrary to the intent of Congress when they enacted

11   Section 8(c), and contrary to the consistent application of the

12   Act for over 70 years by the Board.  As such, we request that

13   these allegations be dismissed.

14       And we're happy to submit a short brief in support of it

15   if Your Honor would like.  I'm sure you're well aware of the

16   legal precedent on this but wanted to go ahead and make a

17   motion.

18       JUDGE GREEN:  Okay.  So you're right -- you know, you're

19   right that the captive audience meetings have been legal for --

20   since the -- the '50s, and I'm going to be applying current

21   law.  I'm not going to dismiss the case at this time.  I'm

22   going to wait to hear what the General Counsel has to say in

23   the briefs, but it -- you know, you should all know that -- and

24   I don't really think that General Counsel suggests otherwise --

25   that current law does not allow for these meetings being held



1  unlawful.  So that's how I plan to come out.  But I -- I'll

2  wait to have the briefs and then I'll deal with it in the

3  disposition.

4      MR. POWELL:  All right.  Thank you, Your Honor.  I'm now

5  prepared to make a brief opening statement, if you'd like, Your

6  Honor.

7      JUDGE GREEN:  Okay.

8      MR. POWELL:  And I will keep our -- my remarks brief.  As

9  the evidence will show, Amazon ran a lawful union campaign and

10  relied on long-standing Board precedenting to do so.  Amazon's

11  campaign was educational in nature, respected the right of

12  employees to choose, and it provided employees with accurate

13  information about unions, union dues, and the collective

14  bargaining process.  Amazon respected the employee's right to

15  vote whether or not they wanted to choose union representation.

16      Like many employers, Amazon communicated to its associates

17  in a number of ways:  through written materials, through

18  messages put on its A to Z App platform, and through the small

19  group meetings, which were also written records as captive

20  audience.  As the evidence will show, and we believe has

21  already shown in this case, all Amazons communications at issue

22  were lawful based upon existing law and the counsel for General

23  Counsel's attempt to change the law after the fact is an

24  unjustified attack on employer free speech under Section 8(c)

25  in the Constitution.



1      With regard to the captive audience matters, I've just

2   made and explained those in our motion to dismiss, so I won't

3   reiterate that now in our opening statement.

4      But finally then, with respect to the allegations of --

5   involving Dana Miller, the evidence will show that Ms. Miller's

6   post was removed because she violated the clear provision in

7   the company's solicitation policy, that an associate could not

8   use the Voice of the Associate Board via way to ask other

9   associates to sign petition.  And it wasn't because she engaged

10  in any kind of concerted protected activity.

11     The evidence will show that there was never any discipline

12  or threat of discipline and that her threat -- her -- her

13  authority or permissions to vote -- to post on the VOA Board

14  were never revoked.  Indeed, the evidence will show that she

15  posted many other times on the VOA Board, advocating for

16  promoting the ALU, and those posts were never hidden or

17  removed, that many other associates posted on the VOA Board

18  regarding the ALU and that those posts were never removed.

19     And the reason that those other posts were never removed

20  is because they did not violate the solicitation policy.  Ms.

21  Miller was never disciplined, she was never disciplinary --

22  reprimanded from a disciplinary perspective, and the evidence

23  will show that she was treated consistently as -- under

24  company's neutral solicitation policy and that no adverse

25  employment action of any kind was ever taken against her.



1        In sum, we believe this complaint is a misguided attempt

2    to change long-standing precedent that Amazon relied upon in

3    communications to its employees and that evidence will show

4    that Amazon acted lawfully and respectfully throughout its

5    campaign.  Thank you, Your Honor.

6        JUDGE GREEN:  Okay.  Thank you very much.  And with that,

7    would you like to call a witness?

8        MR. POWELL:  Sure, Your Honor.  We'd like to call Ms.

9    Donaldson, who's been very patient in the waiting room area.

10       JUDGE GREEN:  All right.  So Ms. Donaldson, if you can

11   start your video feed there.  Finally, we're ready for you.

12   Okay.  So I'm going to swear you in, so could you raise your

13   right hand?

14   Whereupon,

15                        **CHAKA DONALDSON**

16   having been duly sworn, was called as a witness herein and was

17   examined and testified, telephonically as follows:

18       JUDGE GREEN:  Okay.  And are you alone in the room?

19       THE WITNESS:  Yes, I am.

20       JUDGE GREEN:  Okay.  Great.  So please don't talk to

21   anybody who might enter the room or -- and also, don't

22   communicate with anybody by phone or other handheld device.

23   Also, don't look at anything that's not shown to you on the

24   screen, unless you're directed to by one of the lawyers or me.

25   Okay?



1      THE WITNESS:  I will.  I do have a question about that.

2  If someone like opens the door and comes in the room, can I

3  shush them away or --

4      JUDGE GREEN:  Yes, please.  Yeah.

5      THE WITNESS:  All right.

6      JUDGE GREEN:  Yes.  And please just state and spell your

7  name for the record.

8      THE WITNESS:  Sure.  My name is Chaka Donaldson.  My first

9  name is spelled C-H, A as in apple, K, A as in apple.  My last

10  name is spelled, D as in dog, O, N as in Nancy, A-L, D as in

11  dog, S as in Sam, O, N as in Nancy.

12      JUDGE GREEN:  Okay, great.  Okay.  Thank you.

13      So anytime you're ready.

14      MR. POWELL:  Okay.  Thank you, Your Honor.

15                      **DIRECT EXAMINATION**

16  Q    BY MR. POWELL:  Ms. Donaldson, where are you employed?

17  A    I'm employed by Amazon.

18  Q    And how long have you been employed by Amazon?

19  A    One year and 21 days.

20  Q    What positions have you held during that time period?

21  A    I am the principal of employee relations for AR East.  AR

22  stands for Amazon Robotics.

23  Q    And briefly describe what your duties entail in that role?

24  A    My duties entail looking at the employee experience for

25  those who are in Amazon Robotics buildings on the eastern



1    seaboard.  I am charged with, one, coaching managers and need

2    that our managers to be better at engagement with our

3    associates.  I sometimes help respond to union activity and

4    organizing campaigns.  I am also in charge of a team of

5    employee relations managers who work with our facilities on

6    employee relations issues.

7    Q    What role, if any, did you play with regard to the union

8    campaign at Amazon's JFK8 facility in Staten Island, New York?

9    A    I was the co-captain of Amazon's response to the petition

10   for representation.

11   Q    And what was the company's overall approach to the union

12   campaign in terms of communication to associates?

13   A    We took a multi-faceted approach to communicating with

14   associates.  So some of the methods we used were written, so

15   for example, we did table toppers, which are -- you know,

16   they're little eight-by-ten flyers that sit on top of tables.

17   We did installments.  Those are little flyers that are inside a

18   bathroom stall.  We used the A to Z App.  We used texts.  We

19   used posters on the wall.  We used a website.

20        We also had small group meetings where we would bring

21   associates together in small groups for the purposes of

22   educating them about the campaign, educating them about union

23   processes, sharing the company's position.  And also, we would

24   use our other types of -- what's a good way to put it --

25   interactions with associates.  So for example, we have a number



1    of policies that associates use to interact with us, and if --

2    if they had questions, we would talk with them about those.

3    Q    In terms of the -- the type of campaign that you conducted

4    at JFK8, so how would you describe that?

5    A    I would describe it as educational.  I would also describe

6    it as lawful.  It was our intent to run a lawful campaign at

7    all times.

8         MS. TOOKER:  Objection.

9         JUDGE GREEN:  Okay.  Overruled.  I'm not -- I'm not going

10   to take Ms. Donaldson word -- word -- Ms. Donaldson's word that

11   it's lawful.  I'll be making that decision myself.  But

12   overruled.

13   Q    BY MR. POWELL:  With regard to the small group meetings

14   for the -- which are sometimes referred to as captive audience

15   meetings.  I'll be referring to them as small group meetings

16   for the purpose of our questions here.  Did you attend any of

17   those meetings?

18   A    Yes.  I attended five to ten of them.

19   Q    And during the small group meetings that you attended,

20   what did you observe the associates doing during them?

21   A    Well, a lot of associates were following along with the

22   facilitative presentation, of course.  But other associates

23   were -- sometimes they would have conversations with each

24   other, they would be on their phones, some would, my opinion,

25   clearly not be paying attention.  And so it was a variety of



1    things that people were doing in the meetings.

2    Q    Did the company take any action -- facilitators take any

3    action during the meetings that you attended to address

4    associates who appeared not to be paying attention?

5    A    No.

6    Q    Did the company administer any type of tests or quizzes to

7    associates to assess the level of attentiveness that associates

8    had during the course of the meetings?

9    A    No.

10   Q    During the small group meetings that you attended, did

11   associates speak up from time to time?

12   A    Yes.  So associates would interact with the facilitators.

13   They would ask questions.  They would push back against the

14   facilitators.  They would also interact with each other during

15   the meetings.  When a -- when a presentation concluded, we

16   would let associates ask questions, and they would ask

17   questions of the facilitators and of each other, or they would

18   make statements about their feelings, pro union and pro

19   company.

20   Q    And did the company do anything to stop associates from

21   expressing their views during these meetings regardless of what

22   viewpoint they had?

23   A    No, we didn't.

24        MS. TOOKER:  Objection.  I mean, I think the question

25   should just be limited to the meetings that she attended.



1    MR. POWELL:  That's the frame of reference that I was

2    thinking about, yes.

3    MS. TOOKER:  Okay.

4    MR. POWELL:  With that -- with that understanding.

5    MS. TOOKER:  Okay.

6    A    No.

7    Q    BY MR. POWELL:  Ms. Donaldson, let me direct your

8    attention to small group meetings that took place on or about

9    February 6th.  Do you recall anything unusual occurring during

10   that time frame?

11   A    Yes.  That was the first day of small group meetings in

12   February.  And we had a group of associates who were, by their

13   clothing, ALU supporters, who interrupted a meeting and

14   occupied the meeting.

15   MS. TOOKER:  Objection.  Irrelevant.

16   JUDGE GREEN:  Overruled.

17   Q    BY MR. POWELL:  And briefly describe what occurred when

18   they occupied the meeting.  Explain a little bit what you mean

19   there.

20   MS. TOOKER:  Objection.

21   JUDGE GREEN:  Listen.  Let me explain how this is going to

22   work on this allegation.  You know, I've given the General

23   Counsel some leeway by not dismissing the case after the end of

24   the -- the GC's case.  I'm trying to give you -- both parties

25   some leeway to litigate an issue that really is not an issue



1      under current law.  So you got to put on your case and you can

2      decide what you think the Board will believe is relevant.  And

3      now the Respondent's going to have the same opportunity.

4           MS. TOOKER:  Okay.  Your Honor, I just want to say that

5      we'll have a standing objection related to the events of

6      February 6th that I think are going to be most of the -- her

7      testimony.

8           JUDGE GREEN:  Okay.

9           MS. TOOKER:  yeah.

10          JUDGE GREEN:  Okay.  So go ahead, Ms. -- Ms. Donaldson.

11     Q    BY MR. POWELL:  I believe the question was that -- for

12     asking you to briefly describe what happened on February 6th in

13     terms of, you used the terminology, they occupied the meeting.

14     So can you give a little more explanation of what you mean

15     there?

16     A    So a group of associates walked into the room during the

17     meeting.  They handed out flyers, and they sat down in the

18     meeting while the meeting was going on.  They were not a part

19     of the meeting, but they came into the room.  And when I say

20     occupy, the -- they sat down and they attempted to participate

21     in the meeting.

22     Q    And what ultimately happened as a result of their

23     occupying the meeting, to use your terminology?

24     A    Well, there was some discussion, and we were worried about

25     disruption -- further disruption to meetings.  And so several



1      meetings were cancelled over the course of the day.

2      Q    Based on your role as the co-captain of the JFK8 union

3      campaign, are you aware of any associates who either failed or

4      refused to attend any of the small group meetings that were

5      conducted?

6      A    Yes, I am.

7      Q    Did the company take any kind of disciplinary action with

8      regard to any associates who failed or refused to go to the

9      small group meetings?

10         MS. TOOKER:  Objection.  And I understand, Your Honor has

11     previously ruled on the relevance of the disciplinary issues

12     related to the failure to attend.  But again, I would just like

13     to state General Counsel's standing objection to the relevance

14     of such testimony and evidence.

15         JUDGE GREEN:  Okay.

16         MS. TOOKER:  Yep.

17         MR. POWELL:  So you can answer that question.

18         JUDGE GREEN:  (Indiscernible) that objection previously,

19     and the General Counsel's now got a standing objection.

20     A    No.  No one was disciplined.

21     Q    BY MR. POWELL:  Based upon your experience in employee

22     relations at Amazon, are you aware of any practices that Amazon

23     has used to seek out employee concerns and obtain employee

24     feedback?

25     A    Yes.  Amazon has several practices.  So for example, we



1    have the VOA, or it's called the Voice of the Associate Board.

2    It's a board that associates can post on, and they can get a

3    response from people in site leadership, so managers, HR,

4    safety, et cetera.

5        We also do what's called a GIMBA walk, right.  And so this

6    is where managers might walk around the facility with

7    associate, ask them for -- associates, ask them for ideas about

8    what -- how we can improve the facility, what we can do, what

9    are their pain points.

10       We also have an open door policy, so any associate can

11   approach a member of leadership.  So that can be the GM; it can

12   be an HR leader; it can be the safety manager.  They can

13   approach those folks and ask questions, give ideas.

14       And then every once in a while, Amazon will have a event

15   where they solicit ideas from an associate.  They'll take the

16   top of it -- top idea and implement it and perhaps give the

17   person a prize, like swag that's like a T-shirt or water

18   bottle, stuff like that.

19   Q    And to your knowledge how long -- were those practices all

20   in place prior to the advent of any union campaign at the JFK

21   facility?

22   A    Yes.

23       MS. TOOKER:  Objection.

24       JUDGE GREEN:  Overruled.

25   A    Yes.



1    Q    BY MR. POWELL:  Okay.  Now then, based upon your

2    experience at Amazon, are you familiar with a program referred

3    to as the career choice program?

4    A    Yes, I am.  The career choice program is a program that

5    associates can use to further their education.  It is a program

6    where Amazon provides funding to the associates for those

7    educational endeavors.

8    Q    And are you aware that certain changes to that program

9    were announced in 2021?

10    A    Yes.  Changes to the program were announced in late

11    September 2021.

12    Q    And  at that time, had there been any petition to an

13    election filed for -- at JFK8?

14    A    No.

15    Q    And do you know whether those changes were made for JFK8

16    employees only or did it apply to some broader group of

17    employees?

18    A    The changes applied Amazon-wide.  So it applied to -- not

19    only JFK8 and fulfillment centers, but also delivery stations,

20    every line of business that associates work in.  It was applied

21    to all of those people -- or to all of those facilities.

22    Q    All right.  We're going to show you a exhibit that has

23    been marked as Respondent's Exhibit 2.  This is -- well let me

24    let you look at the exhibit and we'll scrub it down and see if

25    you can identify it.



1    A    Yes, I -- I -- I recall this.

2    Q    And what is this document?

3         MS. TOOKER:  You stated that -- I'm sorry, can I just ask

4    a question, Court, of Mr. Powell really quick.  Is this in

5    SharePoint?

6         MR. POWELL:  It is, yes.

7         MS. TOOKER:  Okay.  Thank you.

8    Q    BY MR. POWELL:  Let's go back at the top of the document.

9    Okay.  Can you -- you said you recognize Respondent's Exhibit

10   2?

11   A    Yes, I do.

12   Q    And what is it?

13   A    It's an announcement about changes to the career choice

14   program.

15   Q    Okay.  When was this announcement made?

16   A    The one I saw was in late September 2021.  It looks -- it

17   looked exactly the same as this.

18        MR. POWELL:  All right.  I'll move for admission of

19   Respondent's Exhibit 2.

20        JUDGE GREEN:  Any objection?

21        MS. TOOKER:  No objection, Your Honor.

22        JUDGE GREEN:  Okay.  Card 2 is admitted.

23   **(Respondent Exhibit Number 2 Received into Evidence)**

24   Q    BY MR. POWELL:  Ms. Donaldson, are you aware that the

25   mechanisms for obtaining employee feedback were referred to in



1    small group meetings conducted in November of 2021?

2    A    Yes, they were.

3    Q    And were there any new programs or new mechanisms for

4    employee feedback announced or provided to employees during

5    that time period of the small group meetings?

6    A    No.  It was just a reminder of what was already available

7    to associates.

8    Q    And likewise, with the Career Choice program, were the

9    changes that had been announced in September communicated

10   during the small group meetings in November?

11   A    Yes, they were.

12   Q    And was there anything new in the information that was

13   communicated in small group meetings in November, from what had

14   been previously announced in September?

15   A    No.

16   Q    Ms. Donaldson, did the issue of -- did the topic of union

17   dues become an issue during the course of the union campaign at

18   JFK8?

19   A    Yes, it did.  It became an issue because, you know, the

20   ALU, the Amazon Labor Union, had been posting flyers and

21   handing out flyers to associates with lots of different -- I

22   don't want to say declarations, but lots of different

23   statements about what dues would be if -- if people became

24   members or if the -- if the ALU was voted into -- into JFK8.

25   When I -- I saw a number of flyers personally.  I saw things



1    that ranged from one percent to 250 to five dollars, and

2    associates would ask questions about -- about the -- about dues

3    and what -- how -- how dues were paid.

4    Q    Okay.  I'd like to show you a document that has been

5    marked as Respondent's Exhibit 3.  And can you identify this

6    document?

7    A    Yes, I can.  It is a flyer that Amazon put together.  It

8    ran on asset feeds, which are large screens, TV screens

9    throughout the facility that have Amazon information on them.

10   I think it was also a table topper as well.

11       MR. POWELL:  I move for admission of Respondent's Exhibit

12   3.

13       MS. TOOKER:  Just brief voir dire, Your Honor?

14       JUDGE GREEN:  Yeah.

15                    **VOIR DIRE EXAMINATION**

16   Q    BY MS. TOOKER:  Ms. Donaldson, during what period of time

17   was this posted on tables and the asset feed that you referred

18   to?

19   A    This was in late February, March period of -- of 2022.

20       MR. POWELL:  We would object to relevance, Your Honor,

21   in -- because the allegations related to Amazon's statements

22   about dues -- the written statements about dues are from 2021.

23   So I don't know what this is relevant to.

24       JUDGE GREEN:  Okay.

25       MR. POWELL:  Your Honor, I believe -- yeah, okay.



1      JUDGE GREEN:  I'm going to overrule it.  So G -- or R-3 is

2  admitted.

3  **(Respondent Exhibit Number 3 Received into Evidence)**

4      MR. POWELL:  I don't have any further questions as this

5  time, Your Honor.

6      JUDGE GREEN:  Okay.  Is there going to be any cross?

7      MS. TOOKER:  Yes, Your Honor.  I think we do have some

8  cross.  If we could just have about ten minutes to get

9  organized, I think that would expedite.

10      JUDGE GREEN:  Okay.  So let's go off the record.

11      So Ms. Donaldson, you can mute and stop your video.  We're

12  going to come back at -- in about ten minutes.  You can do

13  whatever you want during that time; just don't talk to anybody

14  about the case or your testimony.  Okay?

15      THE WITNESS:  Got it.  Thank you.

16      JUDGE GREEN:  Okay.

17  (Off the record at 1:57 p.m.)

18      JUDGE GREEN:  I think we have everybody.  So Ms.

19  Donaldson, the government attorney is going to have some

20  questions for you on cross-examination.  Okay.

21      So anyti --

22      THE WITNESS:  Okay.

23      JUDGE GREEN:  Anytime you're ready, Ms. Tooker.  We're

24  back on the record.

25                         <u>**CROSS-EXAMINATION**</u>



1    Q    BY MS. TOOKER:  Good afternoon, Ms. Donaldson.  Thank you

2    for being with us today.  My name is Linda Tooker, and I'm an

3    attorney for the National Labor Relations Board.  So I just

4    have some questions for you.  So first, you said that you've

5    worked for Amazon for one year and 21 days.  So that means you

6    started around mid-September of last year?

7    A    Yes.  I started on September 13th, 2021.

8    Q    Okay.  And so when you started, were you aware that there

9    was already an ongoing union organization -- organizing

10   campaign by the ALU at the JFK facility?

11   A    I was aware from news reports that there were -- there was

12   a group who was attempting to organize, yes.

13   Q    Okay.  And when you started at Amazon, was this something

14   that you were informed of by other Amazon managers?

15   A    Yes.

16   Q    Okay.  And when did you start working at the JFK facility

17   in your capacity as co-captain of the -- of response team?

18   A    That's an interesting question, actually.  I think it was

19   in October, late October -- mid to late October.

20   Q    And that's of 2021?

21   A    Yes.  Yes, 2021.

22   Q    Okay.  All right.  During your direct testimony, you

23   talked about gemba walks?

24   A    Uh-huh.

25   Q    Can you tell me what gemba means?



1    A    Oh.  No, actually, I can't.  You know it's a -- a Japanese

2    phrase is my understanding.  We use the term to -- you know in

3    every facility, it's just a -- a -- a method of understanding

4    problems and fixing them.

5    Q    Oh, okay.  So are you -- I assumed it was an acronym, but

6    it sounds like it's not.

7    A    No, it's not an acronym.

8    Q    Okay.  All right.  So have you ever participated in a

9    gemba walk?

10    A    Yes, I have.  As a observer.  I -- I -- I've walked a

11    gemba walk with site leadership, just to observe.

12    Q    Okay.  And are gemba walks generally conducted by managers

13    at the site that they're -- that they happen or from -- with

14    outside managers from other sites?

15    A    If a outside manager is visiting a site, they might

16    participate in a gemba walk.  Amazon frequently has managers

17    visit other sites for a multitude of reasons, but they are --

18    they are generally the people that work at the site.  And

19    it's -- it's not just operations managers; it's also safety

20    mangers or HR folks that do gemba walks.

21    Q    Okay.  And are gemba walks mandatory?

22    A    No.

23    Q    Okay.  So if an employee wanted to say, no, I'm not

24    interested in participating in a gemba walk today, that would

25    be acceptable?



1    A    Absolutely.

2    Q    Okay.  You also -- and -- and your knowledge of gemba

3    walks is from your employment in the last year and 21 days?

4    A    Yes.

5    Q    Okay.  So you don't have any direct knowledge about gemba

6    walks prior to your employment with Amazon?

7    A    Can you clarify the question?  I mean, I understood them

8    as something that happened, but I never participated in one,

9    no.

10    Q    Okay.  But you don't have any -- and so you wouldn't have

11    any direct knowledge that they happened before you got there?

12    A    No.

13    Q    Okay.  You also mentioned other events soliciting -- so

14    the -- sorry, I don't know the right way to characterize them,

15    I don't know if they have a name or not, but the events where

16    people get prizes for the top ideas.

17    A    Oh, yeah.  So that's -- you know, that's something that

18    somebody comes up with.  Like, I -- I've seen posters of them

19    in different facilities where it'll say, submit your idea and

20    we're going to implement the best one.  They might have

21    different names.  I can't think of one off the top of my head.

22    But they definitely happen.

23    Q    Okay.  So this isn't -- so it sounds like it's not a

24    meeting that people have; it's just a -- a kind of more of like

25    a survey or poll kind of thing?



1    A    Like a contest.  Like a fun, little contest where people

2    submit their ideas.

3    Q    Okay.

4         JUDGE GREEN:  I'm sorry, how do people submit their ideas?

5         THE WITNESS:  There might be a box where someone submits

6    them.  There might be an electronic way of submitting them,

7    like via email.  It just depends on the site and what the

8    contest is.

9         JUDGE GREEN:  Thank you.

10   Q    BY MS. TOOKER:  All right.  Are you familiar with -- so

11   first, let me ask.  Amazon has classified employees by tier; is

12   that right?

13   A    Yes.  Tier or level.

14   Q    Okay.  So the bargaining unit members at JFK -- the

15   petition for bargaining unit, what tier employees were those?

16   A    Tier 1 and tier 3.

17   Q    Okay.  Can you explain what a tier 1 employee is for me?

18   A    Sure.  A tier 1 employee is a warehouse employee.  They

19   could be employed in any number of paths.  I don't know if you

20   want to talk about paths, but path is the -- the work that

21   you're in.  So you could be in picking; you could be in

22   stowing; you could be in vendor returns, or ICQA, which is a --

23   a counting function.  Not accounting, but a space counting

24   function.  You could work in -- with the waste materials,

25   right.  So tier 1 associates are -- are warehouse, fulfillment



1     center employees.

2     Q    Okay.  And what's a tier 3 employee?

3     A    So a tier 3 is also a fulfillment center employee.  But

4     they're usually process assistants.  And so they are more

5     experienced employees who help run the floor as associates.

6     They're not supervisors or managers, but they have more

7     experience in the fulfillment centers and they -- they help

8     managers and they help associates -- their other assoc -- other

9     fulfillment center associates learn the floor, help them work.

10    But they -- they're the next level of associate -- fulfillment

11    center associate.

12    Q    Okay.  And are you familiar with Amazon's compensation

13    structure for tier 1 and tier 3 employees?

14    A    I am, yes.

15    Q    Okay.  And do you know whether -- specifically in the

16    Staten Island facility, whether employees are ever hired at

17    minimum wage?

18    A    No, they're not.

19         MR. POWELL:  Objection.  Beyond the scope of direct.

20         JUDGE GREEN:  Overruled.

21    Q    BY MS. TOOKER:  And are they hired at a higher level or

22    lower level than minimum wage?

23    A    They're hired at a higher level than minimum wage.

24    Q    Okay.  And do tier 1 or tier 3 employees receive regular

25    pay increases based on the amount of time that they've worked



for the employer?

A    Yes, they do.

MR. POWELL:  Objection, Your Honor.  Beyond the scope of direct again.

JUDGE GREEN:  Okay.  I'm going to allow it.

MS. TOOKER:  That's all I have on that.

MR. POWELL:  Okay.

JUDGE GREEN:  Okay.

Q    BY MS. TOOKER:  All right.  All right.  Ms. Donaldson, you testified on your direct about some small group meetings held, related to the Employer's campaign to, I think what you said was educate the employees about the union election and inform them about the Employer's position related to the Union.  Is that right?

A    Yes, I did.

Q    Okay.  And, the Employer's position, in general, was that they didn't think -- the Employer doesn't think the employees should join the Union; is that right?

A    Yes.  Amazon's position is that they -- we believe a direct relationship between the employee and the -- and Amazon is best.

Q    Okay.  So for the period in -- so November of 2021, do you know how -- so when did the meetings start?  Like, when did you first start having those meetings?

A    Within the last week in October, or maybe the first week



1    in November.  It was around that time.

2    Q    Okay.  And did you have -- did you hold these meetings

3    every day?

4    A    Almost -- yes, every day, I believe so.

5    Q    Okay.  And in that October-November time frame, was there

6    a time that you stopped holding the meetings?

7    A    There was a -- a time, I believe, where -- there was,

8    like, a day that we did not hold meetings.

9    Q    Okay.  But at some point, I think probably after the

10   petition was withdrawn, you stopped holding the meetings

11   altogether for people?

12   A    That's -- that's not true.  After -- oh, go ahead.

13   Q    No, please, explain.

14   A    After the petition was withdrawn, we thought it was

15   important to make sure that all associates had the same

16   infor -- information that we had given to associates before the

17   petition was withdrawn.  So we continued meetings until we

18   reached as many associates as we could.

19   Q    Okay.  And -- so when was that time that you felt you'd

20   reached as many associates as you could?

21   A    It was a few days after the petition -- I think the

22   petition was withdrawn on a Friday.  We had just started the

23   meetings, and it -- it was a few days later.  I think the

24   Wednesday after the petition was withdrawn was the last day

25   that we had them.  It -- relying on my memory.



1 Q Right.  So during that period of time, what, the last in

2 October, first week in November to a few days after the

3 petition was withdrawn, absent, it sounds like, one or two days

4 where meetings were not held, how -- when -- when in the

5 morning did meetings start to be held?

6 A They usually started 9 a.m. or so.

7 Q Okay.  And was there a time in the afternoon -- so sorry,

8 withdrawn.  How often were the meetings held?

9 A They were held every 45 minutes.  And you're talking about

10 the November time frame, correct?

11 Q Yes, I'm talking about the October-November 2021 time

12 frame.  That's right.

13 A Yeah.  They were held about every 45 minutes or so.

14 Q Okay.  And was there a time in the day that the meetings

15 stopped being held?

16 A Yes.  We would stop holding meetings when -- at end of

17 shift.

18 Q Okay.  And when is that?

19 A End of shift, it de -- well, it -- end of shift is

20 different for different groups, but we would stop holding them

21 around 4 p.m.

22 Q Okay.  And was there a time in the evening that you

23 started holding meetings again?

24 A Yes.

25 Q And when was that?



1    A    Around 7:00.

2    Q    Okay.  And at -- so 7 p.m., every 45 minutes, the meeting

3    started again.  And when -- was there a time that -- overnight

4    that they stopped?

5    A    Yes.  Again, around 4 a.m.

6    Q    Okay.  And so approximately how many meetings were held

7    each day in this October-November time frame?

8    A    About 50 meetings a day.

9    Q    Okay.  And where were the meetings held?

10   A    They were held in one of the training rooms in the

11   facility.

12   Q    Okay.  All right.  And so now, I just want to shift to the

13   February through the end-of-March time frame, so I think that

14   you mentioned a meeting on February 6th.  Was that the first

15   day of meetings in 2022?

16   A    Yes, it was.

17   Q    Okay.  All right.  And again, so what time in the morning

18   did the meetings start during this time frame?

19   A    Usually, around 8 a.m.

20   Q    Okay.  And did they, again, go until around 4 p.m.?

21   A    Yes.

22   Q    Okay.  And they started again at 7 p.m.?

23   A    Yes.

24   Q    And went until 4 a.m.?

25   A    Yes.



1  Q    Okay.  And were meetings held every day from February 6th

2  of 2022 until the week of the election?

3  A    No.

4  Q    Okay.  When did they end?

5  A    Well, overall, the meetings ended, I think, March 23rd or

6  so.  The first day of the election was March 25th, so I think

7  it was March 23rd.  There were times when we would not have

8  meetings for a day.  It would depend on, you know, what was

9  going on in the facility.  You know, sometimes if there were a

10  lot of new hires, we didn't have training rooms, or if there

11  was a holiday, like, we wouldn't have them.

12  Q    Okay.  So would it be fair to say that at least six days a

13  week, these meetings were conducted during the time frame that

14  we're talking about?

15  A    I think that's fair to say, yes.

16  Q    Okay.  All right.  And so how -- so employees were

17  instructed to go to these meetings; is that correct?

18  A    Yes.

19  Q    Okay.  And who was it who was doing -- who was making sure

20  that the employees were -- were going to the meetings?

21  A    Operations managers or area managers were tasked with

22  the -- with asking associates to come to the meetings.

23  Q    Okay.  And were these operations managers and area

24  managers employees who usually worked at the JFK8 Facility?

25  A    Some of them were, yes, and some of them were not.



1   Q    Okay.  Can you give -- so I guess --

2        MR. POWELL:  Your Honor, I'm going to objection to this

3   line of questioning.  We've got the stipulation in effect.  I

4   don't know what the purpose is.  I just think it's -- I'm not

5   exactly sure why this testimony is necessary or relevant in

6   light of the stipulation.  Figured you (indiscernible) --

7        JUDGE GREEN:  Yeah, I dis -- I would agree with that.

8        MR. POWELL:  -- proceeding.

9        JUDGE GREEN:  I thought we had resolved the mandatory

10  nature of these proc -- well, they're mandatory in the sense

11  that the Employer, if I'm correct, was stipulating that

12  employees were required to go or were told to go.

13       MS. TOOKER:  Ye -- yeah.  Your Honor, I -- I still think

14  that the -- the sort of circumstances surrounding employees

15  being lead to the meetings is relevant to the coercive nature

16  of the meetings.

17       JUDGE GREEN:  Oh.

18       MS. TOOKER:  So I -- I don't think that there'll be very

19  many questions to just --

20       JUDGE GREEN:  Okay.

21       MS. TOOKER:  -- get --

22       JUDGE GREEN:  Right.  I mean, we -- we got that in spades

23  in -- in the General Counsel's portion of the case, and you

24  know, it sounds to me like the Respondent isn't going to try to

25  rebut it.  So let's -- let's move through it as quickly as



1    possible.

2        MS. TOOKER:  Okay.  All right.

3    Q    BY MS. TOOKER:  So the managers who were tasked with

4    coordinating employees' attendance at these meetings, is there

5    a way that they were identified to, or recognizable to

6    employees as managers?

7    A    That's a -- that's a tough question.  I mean, everybody at

8    Amazon -- well, not everybody, but most people wear vests.  If

9    you're in operations, you wear a vest that's got orange on it.

10   If you are in PXT, which is HR, you've got a vest that's got

11   purple on it.  If you're safety, you've got lime green.  And so

12   those managers were wearing vests.

13   Q    And in Amazon, people would understand that the managers

14   who are wearing these vests had the authority to direct them

15   to -- to do things?

16   A    I mean, I -- I can't talk about what everybody

17   understands, but I think generally, yeah, I'd say that.

18   That's --

19   Q    All right.  And it's true that before the meetings were

20   conducted, employees had their badges scanned to keep track of

21   who was going to the meetings?

22   A    Yes.

23   Q    Okay.  Now, relating to the -- the content of the

24   meetings, the -- the content was changed periodically, right?

25   A    Yes.



1    Q    Okay.  So you know, let's just talk about the February and

2    March meetings.  So like, how -- and so was the -- the content

3    of the meetings kept consistent among different meetings for

4    any period of time?

5    A    I -- I'm not sure I understand what you're asking.  Can

6    you rephrase?

7    Q    Absolutely.  So I understand, and we have on the record

8    some PowerPoint slides with, you know, instructions for the

9    presenters that seems like, you know, this was -- the content

10   was prepared in advance for the -- the presenters to give to

11   the employees; is that right?

12   A    Yes.

13   Q    Okay.  And you were involved in the preparation of the

14   content of the meetings?

15   A    Yes.

16   Q    Okay.  And so was the same instructions and PowerPoint

17   presentations used during multiple meetings?

18   A    Yes.  I think -- I think I -- if I understand what you're

19   asking, we had a set of meetings would we use the same

20   PowerPoint for those -- that set of meetings; is that what

21   you're asking?

22   Q    Yeah.

23   A    Yes.

24   Q    Okay.  And so when you said you have a set of meetings, so

25   like, was that set for a single day, or like, how -- I guess --



1    I think you said before that you wanted to make sure that all

2    of the employees had the same information.  So I -- I guess my

3    question is, like, how -- how many days did it take of doing

4    approximately the same presentation to get to a place where the

5    employer decided that there was enough coverage of the

6    employees that they could move on to different subject?

7    A    So it depends.  Sometimes we would deal with that for a

8    week; sometimes we would do it for 10 days or 11 days.  It --

9    it depended on the content of the meeting, it also depended on

10   the week.

11   Q    Okay.  All right.  And I just want to go back to that

12   February 6th meeting for a second.  You testified on direct

13   that there were people whose clothing identified them as ALU

14   supporters who were -- I -- I don't remember exactly how you

15   characterized it, but they were -- they were in the meeting and

16   in -- in that instance, you and other managers asked them to

17   leave the meeting; is that right?

18   A    Oh, I used the phrase occupied.

19   Q    Yeah, okay.  Thank you.

20   A    So no.  We -- we did not ask them to leave the meeting,

21   actually.  Well, at least I didn't; no, I didn't.

22   Q    Okay.  All right.  So I believe in previous testimony

23   before the Board, you testified that -- I -- I'm looking for

24   it, I don't have it right here in front of me -- but that

25   another manager, while you were in the room, told employees who



1    were occupying the meetings that if they didn't leave, they

2    would be subject to discipline for insubordination.  Do you --

3    A    Yes.

4    Q    -- recall whether -- okay.  So do you remember who was it

5    who told the employees that they would be subject to discipline

6    if they did not leave the meeting room?

7    A    Yes, I do.

8    Q    Okay.  Who was that?

9    A    Filepe Santos.  He was the general manager of JFK8 at the

10   time.

11   Q    Okay.

12        JUDGE GREEN:  Were any of the employees actually

13   disciplined?

14        THE WITNESS:  The -- the employees were disciplined for

15   insubordination for refusing to leave the second meeting that I

16   attended, yes.

17        JUDGE GREEN:  Okay.

18   Q    BY MS. TOOKER:  Did you have any role in the -- the

19   employer's campaign related to the Union organizing drive at

20   the LDJ5 Facility?

21   A    I helped out at the facility, yes.

22   Q    Okay.  What sort of things did you help with?

23   A    I worked --

24        MR. POWELL:  I'm going to --

25   A    -- on the tent --



1    MR. POWELL:  -- object again.

2    A    -- outside.

3    MR. POWELL:  Beyond the scope -- I'm going to object

4    again.  Beyond the scope of direct.

5    JUDGE GREEN:  Yeah.  I don't see --

6    MR. POWELL:  We're going to be --

7    JUDGE GREEN:  -- the relevance.

8    MR. POWELL:  -- presenting a witness -- we're going to be

9    presenting a witness with respect to LDJ5.

10    MS. TOOKER:  Okay.  Yeah.  And it -- I mean, it sounds

11    like if it was just related to the tent, then I -- I don't have

12    any additional questions about that.

13    JUDGE GREEN:  Okay.

14    MS. TOOKER:  I -- I guess if -- if you could just allow me

15    one additional.

16    Q    BY MS. TOOKER:  Did -- were you involved related to the

17    meetings, the small group meetings that were conducted at LDJ5?

18    A    No.

19    Q    Okay.

20    MS. TOOKER:  Then nothing -- nothing more about that.

21    Your Honor, if I could just have two minutes to consult

22    with cocounsel.  I think I am --

23    JUDGE GREEN:  Okay.  Off the record

24    (Off the record at 2:33 p.m.)

25    MS. TOOKER:  Oh, Ms. Donaldson, if you wouldn't mind just



1    unmuting yourself.  Great.  Thanks.  All right.

2    Q    BY MS. TOOKER:  Now, with relation to the small group

3    meetings, how often were employees at JFK8 required to attend

4    these meetings?

5    A    They were required to attend one session or -- or one

6    topic.  So if a topic was one week, then once a week.  If it

7    was ten days, then, you know, one in the ten days.  It wasn't a

8    daily occurrence, and it wasn't even weekly at some points.

9    Q    Okay.  Is it possible that any employees -- any individual

10   employees were required to go to the same topic meeting more

11   than once?

12   A    Yeah.  I'm sure a mistake could be made and someone was

13   taken more than once, but generally, no.  Associates were only

14   supposed to attend the topic once.

15        MS. TOOKER:  Okay.  I don't have any further questions at

16   this time, Your Honor.

17        JUDGE GREEN:  Okay.  Ms. Donaldson, I just have one or two

18   questions for you.  I think you testified that some changes to

19   the Career Choice program were announced in 2021 before any

20   union petition was filed; am I right about that?

21        THE WITNESS:  Yes.

22        JUDGE GREEN:  And how was the -- how were those changes

23   announced?

24        THE WITNESS:  So they're announced multiple ways.

25   Associates would get an update in their A to Z app.  So again,



1    not knowing other testimony, A to Z is an app that associates

2    put on their phones.  They can get information about their

3    wages, their benefits, announcements both at the facility and

4    Amazon-network-wide.  And so they would get an announcement

5    there.  They could also, if they went on the, you know, on the

6    internet on the portal on inside Amazon, they would be able to

7    see those announcements there as well.

8         JUDGE GREEN:  And --

9         THE WITNESS:  And so --

10        JUDGE GREEN:  -- do you -- oh.

11        THE WITNESS:  Can I add one more thing?

12        JUDGE GREEN:  Yes.  Sure.

13        THE WITNESS:  And sometimes we, yeah, we post things in --

14   in facilities that will say, oh, changes to Career Choice, like

15   posters and stuff on the wall.  But I don't recall seeing those

16   at the JFK8 facility.

17        JUDGE GREEN:  Do you remember what the changes were?

18        THE WITNESS:  Yes.  So be -- before the changes, to be

19   eligible to participate in the program you had to have worked

20   at Amazon for a year.  That was changed so that it was 90 days

21   instead.  So after 90 days of employment, you could sign up for

22   the Career Choice program.  Another thing that was a change was

23   that they added programs to Career Choice.  And so prior to the

24   changes, a person could not use it for a GED; they couldn't use

25   it for ESL, right, so they would add -- those things were added



1    in as well.  And then there were changes to the amounts as

2    well, and I think they took cap off for how much you could

3    use --

4         JUDGE GREEN:  So was it --

5         THE WITNESS:  -- how -- how much money you could get.

6         JUDGE GREEN:  Okay.  So it was 100 percent?

7         THE WITNESS:  Yes.

8         JUDGE GREEN:  Okay.  All right.  No further questions from

9    me.

10        Is there any redirect from the Respondent?

11        MR. POWELL:  No, Your Honor.

12        JUDGE GREEN:  Okay.  Thank you very much, Ms. Donaldson.

13   You're free to go.

14        THE WITNESS:  Thank you.  Have a great day.

15        JUDGE GREEN:  You, too.

16        Okay.

17        MR. POWELL:  Your Honor, we are ready, assuming that she

18   is in the room, that a Rebecca Smith would be our next witness.

19   And -- and if she's not, I will call her.

20        JUDGE GREEN:  I don't think she's in the room.

21        MR. POWELL:  Okay.  Let me see if I can -- maybe just take

22   a -- I'll just go off -- why don't I go ahead and mute -- mute

23   while I get her in the room.

24        JUDGE GREEN:  Sure.  Off the record.

25   (Off the record at 2:39 p.m.)



1          JUDGE GREEN:  Calling Rebecca Smith as a witness.  Ms.

2     Smith, let me swear you in.  So raise your right hand.

3     Whereupon,

4                            **REBECCA SMITH**

5     having been duly sworn, was called as a witness herein and was

6     examined and testified as follows:

7          JUDGE GREEN:  Thank you.  And are you alone in the room?

8          THE WITNESS:  Yes, I am, Your Honor.

9          JUDGE GREEN:  Okay.  So please don't talk to anybody

10    during your testimony or communicate with anybody by phone or

11    other handheld device other than those of us who are talking to

12    you in this forum.  And also, don't look at any other

13    documents, other than what might be shown to you or what you

14    might be directed to look at by an attorney.  Okay?

15         THE WITNESS:  Okay.

16         JUDGE GREEN:  All right.  Thank you very much.

17         So any time you're ready, Mr. Powell.

18                       **DIRECT EXAMINATION**

19    Q    BY MR. POWELL:  Where -- where do you work?

20    A    Amazon.

21    Q    How long have you worked at Amazon?

22    A    Seven (indiscernible).

23         MS. TOOKER:  Sorry.  I didn't -- I'm having a little bit

24    of an issue with your audio.

25         MR. POWELL:  We're having trouble with your audio.  Yeah.



1   We're having trouble with your audio.  Mine, too.

2       THE WITNESS:  Okay.  I'll try my (indiscernible), but let

3   me see if that's better.

4       JUDGE GREEN:  It almost sounds like there might be another

5   device.  Are you -- you're not attending with two devices,

6   right?

7       THE WITNESS:  Yeah, I (indiscernible).

8       JUDGE GREEN:  You might have to try to sign out and sign

9   back in.

10      THE WITNESS:  Okay.  Give me one minute, please.  Thank

11  you.

12      JUDGE GREEN:  Okay.

13  (Off the record at 2:45 p.m.)

14      JUDGE GREEN:  Okay.  Go ahead.

15      THE WITNESS:  My name is Rebecca Smith.  That's spelled

16  R-E-B-E-C-C-A; last name is Smith, S-M-I-T-H.

17      JUDGE GREEN:  Okay.

18      MR. POWELL:  Okay.

19      JUDGE GREEN:  You cut out a little bit, Mr. Powell.

20      MR. POWELL:  Judge, can you hear me?  Judge, can you hear

21  me?

22      WITNESS:  I -- I can hear you.

23  Q    BY MR. POWELL:  Where do you work?

24  A    Amazon.

25  Q    And -- and how long have you employed at Amazon?



1    A    Since November 8th, 2021.

2    Q    And what position do hold at Amazon?

3    A    Employee relations manager.

4    Q    Okay.  Briefly describe your work experience prior to

5    coming to work for Amazon.

6    A    Back in the '90s, I worked in the warehouse and as a truck

7    driver, and then I started working with -- with and for the

8    Teamster Union, finished my career with the Teamsters Union as

9    executive direction of training in Nevada.  Then I started my

10    own consulting business; I worked doing management training and

11    campaign.  And then I accepted a position with Amazon.

12    Q    Did you personally facilitate any small group meetings at

13    the LDJ5 facility in 2022?

14    A    Yes, I did.

15    Q    And approximately how many small group meetings did you

16    facilitate to employees at LDJ5?

17    A    About 30 or more.

18    Q    At the small group meetings you facilitated, did any

19    employees ask if they could leave or if they had to attend the

20    meetings?

21    A    I had employees ask if they could leave.

22    Q    And how did you respond when this occurred?

23    A    I told them they could leave.

24    Q    Now, prior to your testimony here today, did you have an

25    opportunity to listen to a audio recording of a small group



1    meeting that you facilitated on April 10th, 2022, that's -- was

2    previously -- it's been marked and admitted into evidence as

3    General Counsel's Exhibit 6?

4    A    Yes, I did.

5    Q    I have just a couple of questions regarding that

6    recording.  Near the beginning of the recording you referred to

7    a book and to a doc -- a website but the audio is not

8    completely clear.  Do you know what book and what website you

9    were reefing to in that portion of the recording?

10   A    Yes.  The NLRB Guide to the NLRA and that they could

11   locate it at NLRB.gov.

12   Q    Okay.  And did you have the physical copy of the Guide to

13   the NLRA with you when you made the presentation in the small

14   group meeting?

15   A    Yes, I did.

16   Q    And did you refer to this Guide to the Nation Labor

17   Relations Act and to the NLRA.gov -- NLRB.gov website in the

18   other small group meetings that you facilitated?

19   A    I would start every meeting with that.

20   Q    Now, in the audio recording of the meeting that you

21   facilitated on April 10th, 20,000 -- or 2022, there are a

22   number of voices on the recording other than yours; is that

23   correct?

24   A    Yes, there is.

25   Q    And who are they; who are the other voices?



1    A    They were associates that worked at the warehouse.

2    Q    There were no managers or other facilitators speaking.  If

3    it's not your voice, it's the voice of Amazon associates

4    speaking?

5    A    Yes, sir.

6    Q    At one point in time in -- in the recording employees are

7    going back and forth, and I think at some point in time, you

8    say, ding, ding, ding, every -- everyone back in their corners.

9    Do you recall that in the recording?

10   A    Yes, I do.

11   Q    My question is this.  Was that type of interaction with

12   employees going back and forth and discussing the issues

13   something that was typical, unusual; how would you describe

14   that?

15   A    Typical.

16   Q    At the small group meetings that you facilitated, what did

17   you observe the employees doing during these meetings?

18   A    I had some employees that would sit in the back, prop

19   their chair against the wall, fall asleep.  Sometimes they

20   would be texting on their phones.  Some of them were watching,

21   I believe it was, basketball games on their phones.

22   Q    I understand some people also listened and -- and --

23   and -- and participated?

24   A    Sure.  Um-hum.

25   Q    And with respect to those employees who were not paying



1    attention, did you take any action to address that conduct or

2    behavior?

3    A    No.

4    Q    Did you wake up any associates who were sleeping?

5    A    No.

6    Q    Did you take any action to address associates who appeared

7    to be on their phones, or texting, or watching videos, or

8    anything like that?

9    A    No.

10    Q    Did you administer any type of test or quiz to access or

11    evaluate the level of attention on whether employees were

12    listening?

13    A    No.

14    Q    Let me show you an exhibit; we're going to show it on the

15    screen, a document marked as Respondent's Exhibit 4.  Can you

16    identify this document?

17    A    It was one of the -- the flyers or postings we had.

18    Q    So this was a flyer or a posting that was distributed to

19    the associates at the LDJ5 Facility; is that correct?

20    A    Yes.

21    Q    And would this have been distributed to them in the March

22    or April 2022 time frame?

23    A    Yes.

24        MR. POWELL:  I -- I -- I move for admissions of

25    Respondent's Exhibit 4.



1        JUDGE GREEN:  Any objection?

2        MS. TOOKER:  No objection.

3        JUDGE GREEN:  Okay.  R-4 is admitted.

4    **(Respondent Exhibit Number 4 Received into Evidence)**

5        MR. POWELL:  No further questions, Your Honor.

6        JUDGE GREEN:  Thank you.  Is there any -- going to be any

7    cross-examination?

8        MS. TOOKER:  Can I have about three minutes to consider

9    it, Your Honor?

10       JUDGE GREEN:  Sure.  Off the record.

11   (Off the record at 2:56 p.m.)

12       JUDGE GREEN:  So is there going to be any cross?

13       MS. TOOKER:  No, Your Honor.

14       JUDGE GREEN:  Okay.  Thank you very much, Ms. Smith.

15   You're free to go.

16       THE WITNESS:  Thank you, sir.  Have a great day.

17       JUDGE GREEN:  You, too.

18       And so what else are we going to have?

19       MR. ENJAMIO:  Your Honor, we -- can you hear me?

20       JUDGE GREEN:  Yes.

21       MR. ENJAMIO:  Okay.  We have two or three other witnesses,

22   but we won't -- we are not going to be able to put them on

23   until tomorrow morning.  We fully expect that we will be done,

24   you know, depending on cross, in the very early afternoon.

25       JUDGE GREEN:  Okay.  Is -- okay.  So that's fine.  Is



1  there anything else we have to do today while you have me here?

2      MR. ENJAMIO:  I don't think from the Respondent side.  I

3  will say to Ms. Cabrera and Ms. Tooker that we're getting the

4  names of -- and the titles, and if she doesn't have them, we'll

5  forward them to you.

6      MS. TOOKER:  Yeah.

7      MR. ENJAMIO:  But otherwise, that's all.

8      MS. TOOKER:  I'm going to send you a --

9      MR. ENJAMIO:  And we don't (indiscernible) --

10     MS. TOOKER:  -- follow up email, too, with additional

11  names.

12     JUDGE GREEN:  Okay.

13     MR. ENJAMIO:  Okay.

14     JUDGE GREEN:  So -- so we'll resume tomorrow at 10 and we

15  should finish.

16     MR. ENJAMIO:  Thank you, Your Honor.

17     JUDGE GREEN:  Okay.  Thank you --

18     MS. TOOKER:  Thank you.

19     JUDGE GREEN:  -- very much.

20  **(Whereupon, the hearing in the above-entitled matter was**

21  **recessed at 3:06 p.m. until Wednesday, October 5, 2022 at 10:00**

22  **a.m.)**

23

24

25



1        <u>C E R T I F I C A T I O N</u>

2    This is to certify that the attached proceedings before the

3    National Labor Relations Board (NLRB), Region 29, Case Numbers

4    29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-

5    292392, Amazon.com Services, Inc. and Amazon Labor Union and

6    Dana Joann Miller, held at the National Labor Relations Board,

7    Region 29, Two Metro Tech Center North, 5th Floor, Brooklyn,

8    New York 11201, on October 3, 2022, at 10:04 a.m. was held

9    according to the record, and that this is the original,

10   complete, and true and accurate transcript that has been

11   compared to the reporting or recording, accomplished at the

12   hearing, that the exhibit files have been checked for

13   completeness and no exhibits received in evidence or in the

14   rejected exhibit files are missing.

15

16

17

18   _____

     BARRINGTON MOXIE

19
     Official Reporter
20

21

22

23

24

25



OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

| | | |
|---|---|---|
| Amazon.com Services, Inc, | Case No. | 29-CA-280153 |
| | | 29-CA-286577 |
| Respondent, | | 29-CA-287614 |
| | | 29-CA-290880 |
| and | | 29-CA-292392 |

Amazon Labor Union,

       Charging Party,

and

Dana Joann Miller,

       an Individual.

_____

_____

Place: Brooklyn, New York (via Zoom Videoconference)

Dates: October 5, 2022

Pages: 408 through 456

Volume: 5

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885



www.escribers.net | 800-257-0885

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**REGION 29**

In the Matter of:

AMAZON.COM SERVICES LLC,                    Case No.    29-CA-280153

and

DANA JOANN MILLER, AN
INDIVIDUAL,

and                                          Case Nos.   29-CA-286577
                                                         29-CA-287614
AMAZON LABOR UNION.                                      29-CA-290880
                                                         29-CA-292392
                                                         29-CA-295663

The above-entitled matter came on for hearing via Zoom

videoconference, pursuant to notice, before **BENJAMIN GREEN**,

Administrative Law Judge, at the National Labor Relations

Board, Region 29, Two Metro Tech Center North, 5th Floor,

Brooklyn, NY 11201, on **Wednesday, October 5, 2022, 10:06 a.m.**

1                    <u>A P P E A R A N C E S</u>

2    **On behalf of the General Counsel:**

3         **EMILY CABRERA, ESQ.**
          **LYNDA TOOKER, ESQ.**
4         NATIONAL LABOR RELATIONS BOARD, REGION 29
          Two Metro Tech Center North
5         5th Floor
          Brooklyn, NY 11201
6         Tel. (718)765-6184

7    **On behalf of the Union:**

8         **RETU R. SINGLA, ESQ.**
          JULIEN, MIRER & SINGLA
9         One Whitehall Street
          16th Floor
10        New York, NY 10004

11        **SETH GOLDSTEIN, ESQ.**
          LAW OFFICE OF SETH GOLDSTEIN
12        217 Hadley Drive
          Cherry Hill, NJ 08003
13
     **On behalf of the Respondent:**
14
          **JUAN ENJAMIO, ESQ.**
15        **KURTIS POWELL, ESQ.**
          **ALLYSON BROWN, ESQ.**
16        **TYLER LAUGHINGHOUSE, ESQ.**
          HUNTON ANDREWS KURTH, LLP
17        1111 Brickell Avenue
          Miami, FL 33131
18

19

20

21

22

23

24

25



1                                   **I N D E X**

2

3   **WITNESS**           **DIRECT**   **CROSS**   **REDIRECT**   **RECROSS**   **VOIR DIRE**

4   Jenna Edwards           412         425

5   Ashley Corkery          441         448

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



<div align="center">

**E X H I B I T S**

</div>

| EXHIBIT | IDENTIFIED | IN EVIDENCE |
|---------|------------|-------------|
| **General Counsel:** | | |
| GC-59 | 453 | 454 |
| | | |
| **Respondent:** | | |
| R-5 | 422 | 424 |



www.escribers.net | 800-257-0885

1                                   <u>P R O C E E D I N G S</u>

2           JUDGE GREEN:  Okay.  So Ms. Edwards, could you raise your

3      right hand?  I'm going to swear you in.

4      Whereupon,

5                              <u>JENNA EDWARDS</u>

6      having been duly sworn, was called as a witness herein and was

7      examined and testified, telephonically as follows:

8           JUDGE GREEN:  And are you in the room alone?

9           THE WITNESS:  Yes.

10          JUDGE GREEN:  Okay.  So don't talk to anybody other than

11     those of us who are communicating with you on this Zoom format,

12     either in person or by phone or other handheld device.  Also,

13     please don't look at any materials other than what's shown to

14     you on the screen or if you're directed to do so by one of the

15     lawyers, okay?

16          THE WITNESS:  Okay.

17          JUDGE GREEN:  And please just state and spell your name

18     for the record.

19          THE WITNESS:  My name is Jenna Edwards, J-E-N-N-A,

20     E-D-W-A-R-D-S.

21          JUDGE GREEN:  Okay.  So whenever you're ready.

22                          <u>DIRECT EXAMINATION</u>

23     Q    BY MR. ENJAMIO:  Good morning, Ms. Edwards.

24     A    Good morning.

25     Q    Ms. Edwards, who is your current employer?



1    A    My current employer is Amazon.

2    Q    And where do you work?

3    A    I work at AMZL in central New Jersey.

4    Q    And what is your current position?

5    A    My current position is senior HR manager.

6    Q    And how long have you worked at that facility or in that

7    position where you work right now?

8    A    Yeah.  In this position, I have been in this role since

9    August 16th of this year.

10   Q    And where did you work before that?

11   A    Before this, I was at JFK8.

12   Q    How long have you worked for Amazon?

13   A    I've worked for Amazon a little over five years, since

14   August of 2017.

15   Q    What was your last position at JFK8 before you went to

16   this new position?

17   A    My last position was the senior HR manager.

18   Q    Now, when -- where did you work, Ms. Edwards, in the May

19   through July 2021 time frame?

20   A    I was at JFK8.

21   Q    And what was your position at that time?

22   A    My position was the senior HR manager.

23   Q    And what were your duties and responsibilities as the

24   senior HR manager at JFK8?

25   A    My duties and responsibilities were overseeing the entire



1    HR department, overseeing staffing, scheduling for the

2    building, as well as any investigations, escalations, things

3    like that.

4    Q    And when you say "the building", are you referring to JFK8

5    in Staten Island?

6    A    Yes.

7    Q    Who reported to you at that time?

8    A    The HR manager, Anna Leonardi.

9    Q    And who was the highest-ranking HR manager at the JFK8

10   site at that time, in July of 2021?

11   A    That would be myself.

12   Q    Ms. Edwards, are you familiar with what's referred to as

13   the VOA board, or the Voice of the Associate board?

14   A    Yes.

15   Q    And what is it?

16   A    The VOA board is a platform that we have to get feedback

17   from associates.  They can ask questions, provide feedback,

18   provide recognition to their managers or their peers.

19   Q    Who is authorized to post on the VOA board?

20   A    Any associate is able to post on the VOA board.

21   Q    Was that true in July of 2021?

22   A    Yes.

23   Q    And is anyone authorized or allowed to comment or respond

24   to a post on the VOA board?

25   A    Yes.  The senior HR, the senior managers of the building



1    would be able to comment on associate posts on the VOA board.

2    Q    And whom are the senior managers?  That is, what are their

3    positions?

4    A    It would be the general manager, assistant general

5    manager, myself, the HR manager, all the senior operations

6    managers, and then the site leader for this support department.

7    So like, the site leader for safety, the site leader for IT;

8    that would be who can respond.

9    Q    Ms. Edwards, are there any limitations to the subject

10   matter on which an associate is allowed to post on the VOA

11   board?

12   A    Yes.  Associates can't post profanity on the VOA board.

13   They also can't post anything about other associates or

14   managers that would be considered confidential, as well as any

15   solicitation.

16   Q    And was that true in July of 2021?

17   A    Yes.

18   Q    Now, did Amazon have a solicitation policy in July of

19   2021?

20   A    Yes.

21   Q    Okay.  So let me show you what has been previously marked

22   as GC-58.  And first, let me ask you if you've seen that

23   document before?

24   A    Yes.

25   Q    And what is that document?



1    A    This is a copy of our solicitation policy.

2    Q    Okay.  And is this the same solicitation policy that was

3    in effect at JFK8 in July of 2021?

4    A    Yes.

5    Q    Does this solicitation policy explicitly prohibit an

6    associate from signing a petition?  From asking other

7    associates to sign a petition?

8    A    Yes.

9    Q    Did associates have access to this policy back in July of

10   2021?

11   A    Yes, they did.

12   Q    And how did they access that policy?

13   A    Associates could access all the policies if they go on

14   their A to Z app and then they go -- that would take them to

15   Inside Amazon and they could access all of the policies that we

16   have at Amazon.

17   Q    Okay.  Now, Ms. Edwards, we talked about associates being

18   able to post on the VOA board, right?

19   A    Yes.

20   Q    Now, can a post by an associate be either removed or

21   hidden?

22   A    Yes.

23   Q    And was that true back in July of 2021?

24   A    Yup.

25   Q    And who is authorized -- or who was authorized in July of



1    2021 to remove or hide a post by an associate?

2    A    Yeah.  Anyone that I mentioned earlier that can respond --

3    had permission to respond to a post, could also remove a

4    post -- any senior leader in the building.

5    Q    So any of the senior leaders that could respond to a post,

6    right?

7    A    Yes.

8    Q    Okay.  And what is the effect of either removing or hiding

9    a post?  What happens when a post gets hidden or removed?

10   A    When a post is hidden, it can't be seen by the associate

11   population on the board.  So on the production floor, we have

12   TVs where it shows the VOA board, and if that post is hidden,

13   it wouldn't be visible to the associates.  However, like, on my

14   computer screen, I can still see -- that post would still show

15   up.

16   Q    So that's why you refer to it as being "hidden", correct?

17   A    Yes.

18   Q    Okay.  Now, can an associate remove his or her own post?

19   A    Yes.

20   Q    Okay.  And was that true back in July of 2021?

21   A    Yes.

22   Q    Did you, as an HR manager or the senior HR manager at

23   JFK8, play a role when an associate's post was hidden?

24   A    Yes.  I was part of that process.

25   Q    And what would your role be?



1    A    My role would be to determine whether or not the post

2    violated anything -- any policies and make the decision on

3    whether or not we should hide the post.

4    Q    And would you typically consult with others?

5    A    Yes.  Any time, we needed to, you know -- we had a post

6    that we would look at a little bit closer, we would get with

7    legal and ER to make that decision and determine if it did

8    violate any policies that we had.

9    Q    Ms. Edwards, do you recall an associate by the name of

10   Dana Miller?

11   A    Yes.

12   Q    Do you recall a post by Ms. Miller referencing Juneteenth?

13   A    Yes.

14   Q    Okay.  Let me show you a post that has been previously

15   marked as GC-13.  And just take a look at it.  Is this the post

16   that you recall?

17   A    Yes.

18   Q    Okay.  Do you recall what happened to this post?

19   A    Yes.  We made the decision to hide this post.

20   Q    Were you involved in the decision to hide the post?

21   A    Yes.

22   Q    Okay.  What was your involvement in the decision to hide

23   the post?

24   A    We looked at the post, spoke to our ER and legal teams as

25   we normally would to determine that it violated our



1    solicitation policy by asking associates for signatures on a

2    petition, so we did hide the post.

3    Q    Were you one of the decision makers in deciding to hide

4    the post?

5    A    Yes.

6    Q    And again, why was the post hidden?

7    A    Because it violated our solicitation policy by asking

8    associates to sign a petition.

9    Q    Was the post hidden for any other reason?

10    A    No, it was not.

11    Q    Was the post hidden because it referred to Juneteenth?

12    A    No.

13    Q    Was the post hidden because it asked that Juneteenth be

14    made a holiday?

15    A    No.

16    Q    Did anyone at Amazon take any action with respect to Ms.

17    Miller for making or posting this message, other than to hide

18    the post?

19    A    No.

20    Q    Did Amazon discipline Ms. Miller in any way for making

21    this post?

22    A    No, we did not.

23    Q    As the senior HR manager at JFK8, would you have become

24    aware of any discipline issued to Ms. Miller for making this

25    post?



1    A    Yes, I -- I would have been aware.

2    Q    And were you aware of any such discipline?

3    A    No.

4    Q    In fact, are you aware of Ms. Miller ever being

5    disciplined for making any posts?

6    A    No, she was not.

7    Q    Did you or anyone associated with Amazon revoke at any

8    time Ms. Miller's authority to post on the VOA board?

9    A    No, we did not.

10   Q    Do you recall discussing the possibility of perhaps

11   revoking her authority to post?

12   A    I believe it was discussed.  However, I was not part of

13   that conversation.

14   Q    Okay.  And are you aware of any decision ever made to

15   revoke her authority to post?

16   A    No, we did not take away her ability to post.

17   Q    Would you have been aware of any such decision?

18   A    Yes.

19   Q    In fact, did you or anyone at JFK8 have the ability to

20   prevent an associate from posting on the JFK -- on the VOA

21   board?

22   A    No, we do not have the ability to remove anybody's

23   permissions.

24   Q    Are you aware of any associate ever having had his or her

25   authority to post on the VOA board revoked at any time?



1    A    No, I'm not aware.

2    Q    Ms. Edwards, did Ms. Miller post the same -- almost the

3    same identical post at other times that was asking associates

4    to sign the petition regarding Juneteenth?

5    A    Yes.  I believe she posted it on there three times.

6    Q    Okay.  And what happened to those post when she reposted

7    them?

8    A    We decided to hide the posts.

9    Q    And why did you decide to hide those posts?

10   A    Because it violated our solicitation policy by asking

11   associates to sign a petition.

12   Q    Okay.  Did you or anyone at JFK8 revoke those identical

13   posts for any other reason?

14   A    No, we did not.

15   Q    Okay.  Ms. Edwards, do you recall Ms. Miller making other

16   posts on the VOA board?

17   A    Yes.

18   Q    Do you recall her making posts criticizing Amazon on

19   different occasions?

20   A    Yes.

21   Q    Do you recall her posting pro-ALU, pro-Union messages on

22   the VOA board on other occasions?

23   A    Yes.

24   Q    And were any of those posts ever hidden?

25   A    No, they were not.



1  Q    Was she ever disciplined for making any of those posts?

2  A    No, she was not.

3  Q    Do you recall during that time frame -- let's just say the

4  May, June, July 2021 time frame -- other associates making

5  pro-ALU posts?

6  A    Yes.

7  Q    I'm referring to posts on the VOA board.  Do you recall

8  that?

9  A    Yes.

10  Q    Were any of those posts ever hidden?

11  A    No, they were not.

12  Q    Was anyone ever disciplined for making a post promoting

13  the ALU during that time frame, to the best of your

14  recollection?

15  A    No, they were not.

16  Q    Ms. Miller -- Ms. Edwards, let me show you a document that

17  is -- and this document is in SharePoint.  Ms. Edwards, have

18  you seen this document before?

19  A    Yes.

20  Q    And what is this document?

21  A    This is a picture of MyTime, which is, you know, what we

22  use to track associate punches and their schedule.

23  Q    A document about each particular associate?

24  A    Yes.  This is Dana Miller, her time card.

25  Q    And what does this document show?



1  A    This shows her schedule from July 11th through July 17th

2  of 2021.

3  Q    And does it show her scheduled specifically between July

4  12th and July 13th of 2021?

5  A    Yes.

6  Q    And is this a document that is maintained by Amazon in the

7  ordinary course of business?

8  A    Yes, it is.

9  Q    Is this a true and correct copy of Ms. Miller's time

10  records for that time frame, July 12th, July 13th, July 14th of

11  2021?

12  A    Yes, it is.

13      MR. ENJAMIO:  Your Honor, at this time, we would like to

14  introduce it as Respondent's Exhibit Number 5.

15      JUDGE GREEN:  Any objection?

16      MS. CABRERA:  Yeah, as to relevance.  We're talking about

17  VOA posts and that's what the allegation involves, the -- the

18  posting of the Juneteenth post.  What does her schedule have to

19  do with anything?

20      MR. ENJAMIO:  Your Honor, the relevance is that we have --

21  we have already seen the record that was -- the screenshot that

22  Ms. Miller provided or introduced into evidence where she was

23  denied access because it was outside of her work time, her

24  scheduled shift.  So we're putting into evidence what her

25  scheduled shift is.  And we also have evidence of the record



1    about the significance of that.

2         JUDGE GREEN:  Okay.

3         MS. CABRERA:  Your Honor, if -- if I may, I think with all

4    due respect to Mr. Enjamio, that's a mischaracterization of

5    what the document actually shows.  Her permissions, when they

6    were revoked, didn't say anything about it was outside --

7    because it was outside of her work schedule.

8         JUDGE GREEN:  Okay.  So overruled.  I'm going to admit

9    the -- the document.  You know, that isn't exactly what the GC-

10   23 says, but if you're saying we're going to get evidence on

11   the relevance on this, I'll accept it.

12   **(Respondent Exhibit Number 5 Received into Evidence)**

13        MR. ENJAMIO:  Absolutely, Your Honor.  So can I just go

14   off the record for two minutes, Your Honor, at most?

15        JUDGE GREEN:  Yes, sure.  Off the record.

16   (Off the record at 10:23 a.m.)

17        JUDGE GREEN:  On the record.

18        MR. ENJAMIO:  Your Honor, I have no further questions.

19        JUDGE GREEN:  Okay.  Okay.  Any -- any cross?

20        MS. CABRERA:  I will have a few questions, Your Honor.

21   Not a lot, but could I have about 10, 15 minutes?

22        JUDGE GREEN:  Sure.  Let's come back at 10:40.

23        MS. CABRERA:  Okay.  Thank you.

24        JUDGE GREEN:  So Ms. Edwards, you can shut off your --

25   your video and do whatever you want, just don't talk to anybody



1    about your testimony or the case, okay, while we're on these

2    breaks.

3          THE WITNESS:  Okay.

4          JUDGE GREEN:  Thank you very much.  Off the record.

5    (Off the record at 10:25 a.m.)

6          JUDGE GREEN:  Okay.  And Ms. Edwards, the NLRB attorney is

7    going to have some questions for you on cross-examination,

8    okay?

9          THE WITNESS:  Okay.

10                        **CROSS-EXAMINATION**

11   Q    BY MS. CABRERA:  Hi, Ms. Edwards.  My name is Emily

12   Cabrera.  I'm at attorney with the National Labor Relations

13   Board.  Just going to ask you a few questions about the subject

14   matter of what you just testified about, okay?

15   A    Okay.

16   Q    The first thing I just want some clarification on is your

17   positions and some of the dates in which you served in these

18   positions.  So -- because I think it's a little bit unclear.  I

19   know that you testified that you worked at JFK8 as a senior HR

20   manager; is that correct?

21   A    Yes.

22   Q    Okay.  And for what period of time did you serve in that

23   position at JFK8?

24   A    Yes.  So I was at JFK8 since 2019, but in a different role

25   as a senior operations manager.  And when I came back from my



1    first maternity leave -- I came back in August of 2020 -- I

2    believe it was August 24th, 2020 -- and then I worked in that

3    role as a senior HR manager until November of 2021 when I went

4    out on maternity leave for my second child and then returned

5    April 18th of this year, 2022.

6    Q    Okay.  Thank you for that.  Excuse me, and then you said

7    you -- do you have a different position -- was there a

8    different position -- are you in a different position now in

9    April of 2022?

10   A    So August of this year, August 16th until now, I'm in my

11   new role at AMZL, a different business line within Amazon and

12   as a regional HR manager, a senior HR manager.

13   Q    Okay.  I believe you also testified that during the

14   relevant time period regarding Ms. Miller's post, you were the

15   head of the HR.  You were at the highest level -- you were the

16   highest level of HR at JFK8, correct?

17   A    Yes.

18   Q    Okay.  And you said that Anna Leonardi reported to you?

19   A    Yes.

20   Q    What was her title?

21   A    Her title was the human resources manager.

22   Q    So she was the number two in human resources?

23   A    Yes.  Uh-huh.

24   Q    Okay.  Who was below her?

25   A    So she had a few direct reports, which are senior



1    business -- HR business partners.  At that time, I believe she

2    had about five to six HR business partners that reported to

3    her.

4    Q    Do you remember who they were?

5    A    Yeah.  Tyler Grabowski was one of them.  Mike Tanelli was

6    one of them.  Juan Alvarez was one of them.

7    Q    Okay.  And is it fair to say that as the head of HR, you

8    were aware of the reports that were given by those HR business

9    managers to Ms. Leonardi?

10   A    Can you clarify, like, the reports?

11   Q    Sure.

12   A    I don't know which reports.

13   Q    So taking the Dana Miller situation, if -- if Mr.

14   Grabowski reported something to Ms. Leonardi, with regard to

15   that investigation, you would have been aware of that, correct?

16   A    In regards to the post?  I mean, I can't say for sure

17   without knowing exactly what it is, but for the most part, I

18   would say yes, I would be involved in any escalations within

19   the site.

20   Q    Did Ms. Leonardi generally report to you any things that

21   her lower-level -- that lower-level business partners reported

22   to her?

23   A    Yes, if she felt the need to loop me in or needed my help

24   in the decision-making process.

25   Q    Okay.  Now, Ms. Edwards, you testified that the problem



1    with Ms. Miller's post was that it asked people to sign a

2    petition.  Do you remember that testimony?

3    A    Yes.

4    Q    Okay.  But that wasn't entirely true; was it?

5    A    Uh --

6    Q    Isn't it true, Ms. Edwards, that you were personally

7    concerned because the posts -- you considered the post

8    antagonizing and trying to rally a group of people and you felt

9    that Amazon that should not stand for that?

10   A    I believe in a conversation we were discussing the

11   policies around the post and the solicitation policy, so when

12   the post happened that was part of the discussion.

13   Q    Okay.  So you did -- so you said that?

14   A    I believe so.  Yes.

15   Q    And during that same conversation, didn't you also say

16   that you were shocked that Stephanie was suggesting to even

17   remove a VOA comment?

18   A    Yes.  I believe that was part of the conversation.

19   Q    Okay.  And that's because VOA comments generally aren't

20   removed; isn't that correct?

21   A    We don't remove a large -- or hide a large part of VOA

22   comments unless they, you know, involve any profanity,

23   discussing other people, or anything violating one of our

24   policies such as the solicitation policy.

25   Q    In your experience at JFK8, have you ever heard of a VOA



1  post being removed?

2  A    At that point, not to my -- not to my knowledge.

3  Q    In fact, you said that in that conversation with the other

4  managers.  When -- when asked whether or not there was ever a

5  deleted post, you said, I don't think we ever did.  Isn't that

6  right?

7  A    I believe that's what was said.  Yes.

8  Q    Now, you testified that you would have been aware of

9  information given by the lower-level human resource business

10  partners, such as Mike Tanelli, to your second in command, Ms.

11  Leonardi, correct?

12  A    I said for the most part.  Without knowing exactly what it

13  is, for the most part, if it was escalated, yes, I would have

14  been involved.

15  Q    Okay.  So are you aware that he told -- excuse me one

16  second -- are you aware that Mr. Tanelli told Ms. Leonardi that

17  what he conveyed to Miller was that she couldn't use the VOA

18  board to sign people up for the Union?

19  A    I believe -- Mike Tanelli had a conversation with Dana

20  Miller explaining why her post was removed because of the

21  solicitation policy.  I do know that.

22  Q    Okay.  So are you aware that what he actually said to her

23  was that she couldn't have people signing up for the Union?

24      MR. ENJAMIO:  Objection, Your Honor.

25      MS. CABRERA:  If she knows.



1    MR. ENJAMIO:  We have a -- can you hear me?

2    JUDGE GREEN:  Yes.

3    MR. ENJAMIO:  Okay.  We have a recording that was put in

4    by the GC of exactly what Mr. Tanelli said to -- to Ms. Miller.

5    Ms. Edwards has no knowledge of this information.

6    JUDGE GREEN:  (Indiscernible, simultaneous speech) if we

7    have the recording?

8    MS. CABRERA:  I'm sorry, Your Honor, I couldn't hear you.

9    JUDGE GREEN:  Is there some reason why we need testimony

10   about it if we have the -- if we have the recording?

11   MS. CABRERA:  Well --

12   JUDGE GREEN:  Let me -- let me ask you:  just -- it's my

13   understanding that the allegation is discriminatory enforcement

14   of a no solicitation policy and not -- not the promulgation or

15   maintenance of a policy for a discriminatory purpose.  That

16   later allegation is not alleged.  Is that -- is that true?  Am

17   I right about that?  Is that what we're dealing with?

18   MS. CABRERA:  We are alleging disparate enforcement, Your

19   Honor.  But Your Honor did mention himself the question of why

20   the Miller post would have been objectionable to Respondent.

21   And so this testimony and this evidence will go toward, you

22   know, notwithstanding the fact that there may have been other

23   Union posts that were permitted, why this particular VOA post

24   was not permitted and why it was censored.

25   JUDGE GREEN:  Yeah.  So listen, I want it to be clear what



1    the allegation is.  I want the Region to be clear with the

2    Respondent as to what the allegation is because a

3    discriminatory enforcement case does not turn on purpose.  It

4    doesn't -- this testimony is not helpful for that.  If it's --

5    if you have that allegation, it's a different theory and a

6    different allegation, then you can do it, if you -- if that was

7    your intent to do it.  But you have to tell the Respondent what

8    your allegation is and what we're litigating here.  And me, as

9    well.

10        MS. CABRERA:  Your Honor, we -- we are alleging disparate

11   enforcement.

12        JUDGE GREEN:  Okay.  That's fine.

13        MS. CABRERA:  That's the allegation that --

14        JUDGE GREEN:  Okay.  All right.  Go ahead.  I don't want

15   it to be unclear when we come time for the briefs to be in.

16        MS. CABRERA:  Uh-huh.  Well, Your Honor, I -- General

17   Counsel also doesn't want some additional sort of extraneous

18   facts to go unanswered.

19        JUDGE GREEN:  I -- I think that we want to be, you know --

20   we don't want to be over-litigating cases.  If you have an

21   allegation, litigate it.  If you want a different allegation,

22   litigate that.  Let's -- let's continue.

23        MS. CABRERA:  Okay.  So am I allowed to ask that question,

24   Your Honor?

25        JUDGE GREEN:  Yeah.  The last question, yes.



1 Q   BY MS. CABRERA:  So Ms. Edwards, were you aware that

2 Tanelli told Ms. Leonardi that what he conveyed to Ms. Miller

3 was that he -- that she could not post her Juneteenth post --

4 excuse me --

5    MS. CABRERA:  Strike that.

6 Q   BY MS. CABRERA:  That Ms. Miller could not post anything

7 that asked employees to sign up with the Union?

8 A   I believe that Mike Tanelli told Dana why her post was

9 taken down because it violated the no solicitation policy.  So

10 that's the conversation I'm aware about.

11 Q   Okay.  That's what you know?  Okay.

12    Now, Ms. Edwards, you -- you testified that there was no

13 discipline issued to Ms. Miller.  Do you recall that?

14 A   Yes.

15 Q   Who is Christine Hernandez?

16 A   She is, right now, HR for a different building.  At the

17 time, she was our employee relations manager.

18 Q   Did she report to you?

19 A   No.

20 Q   Do you know who she reported to?

21 A   At the time, she reported to, I believe, Stephanie.

22 Q   And what's Stephanie's last name?

23 A   Sciurba.

24 Q   And to whom did Stephanie report?

25 A   I believe she reported to Barbara Russell.



1    Q    And who's that?

2    A    She would be one of the -- I believe, the director at the

3    time for employee relations.  I'm not 100 percent sure that's

4    who she reported to, though, to the best of my knowledge.

5    Q    I believe you testified on direct that with regard to

6    discipline, that you were aware that there was some discussion

7    about possible disciplines for Ms. Miller.  Do you recall that?

8    A    I didn't --

9    MR. ENJAMIO:  Objection, Your Honor.  That

10   mischaracterizes the testimony.

11   Q    BY MS. CABRERA:  Well, I'll just ask you:  Ms. Edwards,

12   did you testify that you were aware that there were

13   conversations about ways of -- whether or not there's any

14   conversations about disciplining Ms. Miller?

15   A    There was a conversation about VOA and removing posts, but

16   we did not discuss any -- to my knowledge -- anything about

17   disciplining anyone.

18   Q    Were you aware that Ms. Sciurba and Ms. Hernandez

19   discussed the possibility of having Ms. Miller -- Ms. Miller's

20   VOA posts be first reviewed by a manager before she was able to

21   post live?

22   A    I do not recall a conversation with Stephanie or Christine

23   about that, just that in a chat conversation with Christine,

24   but that's it.  With Christine and Stephanie, there was no

25   conversation at all, like, direct conversation that I recall.



1    Q   Okay.  But you're aware that they had a chat conversation

2    about that?

3    A   I believe Christine had.  I was not involved in the

4    conversation, but Christine mentioned something about the post

5    in a -- in a larger group chat.

6    Q   But specifically about perhaps having Miller's posts first

7    reviewed by a manager before she's able to post live?

8    A   Not her specifically, but we'd been having discussions

9    with reviewing a specific person's posts before they're able to

10    post.

11    Q   So the chat that you're referring to, do you recall the

12    two -- Hernandez and Sciurba -- discussing the possibility of

13    changing any associate's access to the VOA board?  Of first

14    having that person's posts reviewed by a manager before they're

15    able to post?

16    A   I believe Christine asked if there's a way to -- to remove

17    permissions from an associate, which there is -- there is no

18    way to do that, but I was not involved in that conversation.

19    Q   Okay.  Ms. Edwards, were you aware of a chat between Mr.

20    Grabowski and Ms. Leonardi in which Mr. Grabowski told Ms.

21    Leonardi that if Ms. Miller continued to post that Amazon would

22    continue to escalate?

23    A   No, I am not.

24    Q   Okay.  Ms. Edwards, I'd like to show you what's been

25    marked as General Counsel's 58.  I don't know if Ms. Tooker can



1    pull it up for me.

2        MS. TOOKER:  Yeah.  Give me just a second.

3        MS. CABRERA:  And if we could just forward to the, I

4    guess, code of conduct section.  Okay.  Forgive me, I have to

5    find it on here.  Thank you.

6    Q    BY MS. CABRERA:  So Ms. Edwards, can you see that

7    highlighted portion where it talks about insubordination as

8    being grounds for termination?

9    A    Yes.

10   Q    Do you know, was this policy in effect -- I'm going to

11   give you two time periods; the first time period I want to ask

12   you about is October to November of 2021.  Do you recall if

13   that policy was in effect at that time?

14       MR. ENJAMIO:  Your Honor, I object.  This has nothing to

15   do with Ms. Miller's case.  Ms. Miller posted in July and

16   everything that -- with respect to her happened in July.  There

17   is nothing about Ms. Miller's case which was the subject of the

18   testimony by Ms. Edwards that has anything to do with October.

19       MS. CABRERA:  If I may, Your Honor, Ms. Edwards was the

20   head of the HR at the time of the captive audience meetings as

21   well and we'd just like to ask her about this particular code

22   of conduct for those purposes.  It -- it speaks to the

23   potential discipline that was available during the captive

24   audience meeting which are alleged in the complaint.

25       JUDGE GREEN:  So what is -- I'm sorry, what is -- what is



1    the relevance of that?

2        MS. CABRERA:  Well, we're -- we were discussing and we're

3    going to be arguing that the captive audience meetings were

4    coercive and the fact that Respondent may not have chosen to

5    discipline anybody doesn't mean that employees didn't believe

6    that they could be disciplined had they failed to show up.  It

7    goes to the coercive nature.

8        JUDGE GREEN:  Okay.  Well, we have this in evidence so why

9    do we need testimony about it?

10       MS. CABRERA:  Your Honor, it literally was two questions.

11   I just wanted to make sure -- I wanted to know if she knew of

12   this particular -- this particular code of conduct was in place

13   at the time --

14       JUDGE GREEN:  Who --

15       MS. CABRERA:  -- of the captive audience meetings.

16       JUDGE GREEN:  I don't think it's disputed, but go ahead.

17   Q    BY MS. CABRERA:  So, yeah, Ms. Edwards, I just wanted to

18   know, do you know if this policy was in place in October,

19   November of 2021?

20   A    Yes.

21   Q    Yes, it was in place?

22   A    To the best of my knowledge, yeah, it was in place.  They

23   didn't update this at all.

24   Q    Okay.  And what about for the -- the period of February to

25   April 2022?



1   A    Yes, I believe the owner's manual says January and it was

2   last updated in 2019.  So I don't think there had been any

3   changes to it.

4        MS. CABRERA:  Your Honor, I think I might be done.  Can I

5   just have 60 seconds to speak to my cocounsel?

6        JUDGE GREEN:  Sure.  Off the record.

7   (Off the record at 11:02 a.m.)

8        JUDGE GREEN:  Okay.

9        MS. CABRERA:  Thank you.  I have nothing else, Your Honor.

10        JUDGE GREEN:  Okay.  Ms. Edwards, I just have a couple of

11   questions for you.  I believe that you testified that Amazon

12   hid Ms. Miller's posts all three times they were posted.  Am I

13   right about that?

14        THE WITNESS:  Yes.

15        JUDGE GREEN:  So I believe we had testimony from Ms.

16   Miller saying she had ultimately posted a Juneteenth post which

17   was not hidden or removed.  Is that your understanding or is it

18   your understanding that all her posts regarding Juneteenth were

19   hidden?

20        THE WITNESS:  It's my knowledge that we took the same

21   action every time she posted that same comment.

22        JUDGE GREEN:  Okay.  Would there be data or metadata

23   confirming that, or no?

24        THE WITNESS:  So we can pull historical data from the VOA

25   board since the launch of the building.  However, my access --



1     I do not have -- and I don't know if there's a way to pull if

2     it was hidden at one point or another. Yeah.

3     JUDGE GREEN: And let me just share with you General

4     Counsel's 23, GC Exhibit 23. Can you see that?

5     THE WITNESS: Yes.

6     JUDGE GREEN: So apparently, this is a notice that Ms.

7     Miller received when she tried to post to the VOA board. Do

8     you have any idea why she would have received this notice?

9     THE WITNESS: No -- no, I don't. We don't have any

10     ability to revoke permissions to post on the VOA board. I

11     don't know the technical ins and outs of the VOA board, but I

12     don't know the reason that that could have been.

13     JUDGE GREEN: Okay. Thank you very much. So that --

14     that's all I have for you.

15     Is there any redirect?

16     MR. ENJAMIO: No, Your Honor. No redirect.

17     MS. CABRERA: Your Honor, am I allowed to ask a question

18     from your question?

19     JUDGE GREEN: Yes.

20     **RESUMED CROSS-EXAMINATION**

21     Q    BY MS. CABRERA: Ms. Edwards, there is someone who is in

22     charge of the VOA -- all VOA posts, correct?

23     A    I mean, like in charge for the site or in Amazon?

24     Q    You tell me.

25     A    Can you rephrase the question?



1    Q    Sure.  So the VOA -- my -- isn't it true that there is

2    some either department or individual that actually oversees the

3    VOA platform?

4    A    I'm sure there's a program manager team that created the

5    VOA platform.

6    Q    Is there any kind of VOA administrator who oversees the

7    VOA boards?

8    A    No one specifically to my knowledge.  The administrator

9    would be, like, the site leaders who are in charge of

10   responding to the comments.

11   Q    Okay.  So is there any -- is there anyone else who might

12   be in charge of the VOA technology?  At any level, at the site

13   or at the national level?

14   A    Not at the site level.  Like, the technology, it would be

15   a program manager team, I'm sure, within Amazon.

16   Q    Are you familiar with that team?

17   A    Not directly.  I've never talked with anyone ever on the

18   team.

19        MS. CABRERA:  Okay.  That's all I have.

20        JUDGE GREEN:  Okay.

21        THE COURT REPORTER:  Can I get the correct spelling of

22   Stephanie's last name, please.  Ms. -- Ms. Edwards, do you know

23   how to spell it?

24        THE WITNESS:  Her last name spelling, I believe, it's

25   S-C-I-U-R-B-A or I-A.



1       THE COURT REPORTER:  Thank you.

2       THE WITNESS:  I'm not sure exactly what it is.

3       THE COURT REPORTER:  Thank you.

4       JUDGE GREEN:  So Mr. Enjamio, did -- did you have any

5  questions, redirect or follow up?

6       MR. ENJAMIO:  No, Your Honor.

7       JUDGE GREEN:  Thanks very much.

8       So Ms. Edwards, you're free to go.  Thank you very much.

9       THE WITNESS:  Okay.

10       JUDGE GREEN:  Okay.  So what do we have?

11       MR. ENJAMIO:  We have another witness that I believe is

12  logging on in about five minutes.

13       JUDGE GREEN:  Okay.  Off the record.

14  (Off the record at 11:10 a.m.)

15       JUDGE GREEN:  So Ms. Corkery, you're being called by the

16  Respondent by the witness.  If you could raise your right hand,

17  I'll swear you in.

18  Whereupon,

19                     **ASHLEY CORKERY**

20  having been duly sworn, was called as a witness herein and was

21  examined and testified, telephonically as follows:

22       JUDGE GREEN:  Okay.  And are you alone in the room?

23       THE WITNESS:  Yes, I am.

24       JUDGE GREEN:  Okay.  So please don't talk to anybody

25  either in person or by phone or by some other handheld device.



1    Also please don't look at any materials other than what might

2    be shown to you by one of the attorneys or something you're

3    directed to look at, okay?

4         THE WITNESS:  Understood.  Yes.

5         JUDGE GREEN:  And could you state and spell your name for

6    the record?

7         THE WITNESS:  Yes.  It's Ashley Corkery.  A-S-H-L-E-Y,

8    C-O-R-K-E-R-Y.

9         JUDGE GREEN:  Thank you.   Okay.  Any time you're ready.

10        MR. ENJAMIO:  Thank you, Your Honor.

11                      **DIRECT EXAMINATION**

12   Q    BY MR. ENJAMIO:  Good morning, Ms. Corkery.

13   A    Good morning.

14   Q    Ms. Corkery, who is your current employer?

15   A    Amazon.com.

16   Q    Where do you work?

17   A    I work in Seattle.

18   Q    And what is your current position?

19   A    I'm a product manager, technical.

20   Q    And what are your duties and responsibilities as the

21   product manager, technical.

22   A    So I'm responsible for two products in my current role.  I

23   create the strategy and the vision for those products.  So that

24   is defining longer term what the products and the experience

25   within the products look like and then I create a product road



1    map from that which our development team then builds and

2    creates the code for the software products.

3    Q    Okay.  What are the two products that you have

4    responsibility for?

5    A    Yeah.  So one's called Amazon Telebreaks (phonetic

6    throughout).  It is an employee engagement product where it

7    gives managers the ability to celebrate birthdays and work

8    anniversaries for their team.  And then the second product is

9    called MyVoice, it's a digital Voice of the Associate board and

10   it enables associates to engage with their site leadership

11   teams.

12   Q    And does that product, MyVoice -- is that known by any

13   other name?

14   A    Yeah.  There's a few names for it.  So it could be

15   MyVoice, Virtual Voice of the Associates or VVOA, or the Voice

16   of the Associate board or just VOA or VOA board.

17   Q    So we've been referring in the trial to the VOA board or

18   the Voice of the Associate board.  Is that the product that you

19   have responsibility for?

20   A    Yes.  Yeah, that's right.

21   Q    Ms. Corkery, when did you start working for Amazon?

22   A    March 2017.

23   Q    And what were your responsibilities in July of 2021?

24   A    In July 2021, I had just joined this current team that I'm

25   on now.  I joined the end of June.  So in July, I was deep-



1    diving these two new products that I took ownership for to

2    understand the products and how they worked and what the

3    experience was and understand what our users thought of them.

4    And from that, to create a strategy for how we would build and

5    develop these products over the next couple of years and create

6    a road map.

7    Q    Okay.  As part of your duties and responsibilities, do you

8    have personal knowledge of how the technical aspects of the VOA

9    board work?

10   A    Yes, I do.

11   Q    And was that true in July of 2021?

12   A    Yes, it was.

13   Q    Are you familiar with a site or a facility by the name of

14   JFK8 in Staten Island?

15   A    Yes, I am.

16   Q    Okay.  Now, let me ask you some questions about the board

17   and how it operated.  The -- how does an associate -- let's say

18   an associate at JFK8, how does an associate get access to post

19   on the VOA board?

20   A    So we create the board for a site and we set up the board

21   with the site name.  So let's say JFK8 is an example, we

22   created a board called JFK8, and then any associate who -- who

23   has JFK8 as their site location code in our PeopleSoft human

24   capital management system for personnel management -- anybody

25   who has JFK8 as their location code would automatically have



1    access to view and post on that JFK8 board.

2    Q    So does an associate gain access to posts of the VOA board

3    automatically when being hired or starting to work at JFK8?

4    A    Yes, exactly.  So a new hire, or maybe if an associate

5    transferred between sites, as soon as their location code

6    reflected JFK8, they automatically had -- would have had

7    access.

8    Q    And was that true in July of 2021?

9    A    Yes, it was.

10   Q    Now, Ms. Corkery, can an associate, let's say at JFK8,

11   post on the VOA board at any time?

12   A    Yes, they can.

13   Q    Okay.  And has that always been the case?

14   A    No.  When I joined this team in June of last year to go

15   over the products, there was a time restriction for when an

16   associate could access or post on the board.  And that was

17   restricted to their scheduled shift and one hour before and our

18   hour after their scheduled shift.

19   Q    Okay.  When did that change, that process or that

20   restriction change?

21   A    It changed over time and as we transitioned all boards and

22   sites, with the final change happening in March of 2022.  And I

23   started that process to change access to 24/7 access in

24   September of 2021.

25   Q    So you testified that now associates have access to the



1    board at all times, 24/7, correct?

2    A    Yes.  That's correct.

3    Q    Was that ever the case and was that the case before

4    September of 2021 in any of the sites that you're familiar

5    with?

6    A    No.  Not in the ones I'm familiar with.

7    Q    Okay.  And was that true of JFK8?  That is, that being

8    able to post at all times did not start until after September

9    of 2021, correct?

10   A    Yes.  Because I would have -- that was one of the things I

11   identified as one of the barriers to expansion when I joined

12   the team so we couldn't expand the product because of this

13   restriction.  And also associates had been asking to be able to

14   access it more often so it was one of the first items that I

15   added to change after joining the team.  So that work began in

16   September 2022 -- 2021, apologies.

17   Q    And you said it was one of the aspects that you wanted to

18   see changed.  What specifically are you referring to?

19   A    The time restriction.

20   Q    -- that you wanted to see changed?  I'm sorry?

21   A    Oh, sorry.  The time restriction.  So we would be able to

22   24/7 access.

23   Q    Okay.  So in July of 2021, was an associate limited in the

24   times that they could post on the VOA board at JFK8?

25   A    Yes.  They would have been limited to their scheduled



1    shift and one hour pre and post their shift time.

2    Q    Now, was that triggered by the scheduled shift or by the

3    time that they clocked in or clocked out?

4    A    No, just the scheduled shift.

5    Q    What would happen if an associate tried to post outside of

6    those time limitations?  That is, tried to post outside of the

7    one hour before and one hour after restriction?

8    A    They would receive a message within the product saying

9    that MyVoice was intended for working hours and that they did

10   not have the ability to view or post at that time that they

11   tried to access the system or post.

12   Q    Now, Ms. Corkery, would an associate -- could anyone at

13   JFK8 deny access to an associate on an individual basis, that

14   is access to post on the VOA board on an individual basis?

15   A    No.  There's no -- we don't have any mechanism in the

16   product, either last year or now, where we can restrict access

17   at an individual level.  So access is automatically granted

18   based on site location code.

19   Q    So even if on the site leadership level or anyone at the

20   site decided that they didn't want -- they didn't want an

21   associate posting on the VOA board, could they do that?

22   A    No.

23   Q    Could anyone on your team, for example, on the technical

24   team or at Amazon do that, prevent an associate from posting on

25   an individual basis?



1      A      No.

2      Q      Okay.  That is true today?

3      A      That's true today.  Yes.

4      Q      But was that true in July of 2021?

5      A      Yes.  It was.

6      Q      Okay.

7           MR. ENJAMIO:  I have no further questions, Your Honor.

8           JUDGE GREEN:  Okay.  Is there going to be any cross?

9           MS. CABRERA:  Very -- very limited, but can I just have

10     ten minutes?

11          JUDGE GREEN:  Okay.  So we'll go off the record for ten

12     minutes.

13          Ms. Corkery, you can close your video feed and mute, but

14     just don't talk during these breaks.  And we're going to come

15     back at 11:40.  Just don't talk to anybody about the case or

16     your testimony, okay?

17          THE WITNESS:  Okay.  Perfect.

18          JUDGE GREEN:  Okay.  Thank you very much.

19     (Off the record at 11:31 a.m.)

20          JUDGE GREEN:  On the record.

21          Ms. Corkery, the NLRB attorney is going to have some

22     questions for you on your cross-examination, okay?

23          THE WITNESS:  Okay.  Perfect.

24          JUDGE GREEN:  So any time you're ready.

25          MS. CABRERA:  Sure.



## CROSS-EXAMINATION

Q    BY MS. CABRERA:  Hi, Ms. Corkery.  My name is Emily
Cabrera.  I'm an attorney with the NLRB.  I have literally just
have a couple questions for you.

So you testified that prior to September of 2021, there
was a limitation, a temporal limitation, correct?  That
employees couldn't post after their shift, their scheduled
shift, has ended?  Do you remember that testimony?

A    Yes.  One hour after, but also one hour before.  Yes.

Q    An hour after and an hour before?  Okay.  Thank you.
Prior to the change, was there anything in writing that served
as guidance for workers as far as when they could post on the
VOA board?

A    There is when you're in the product.  There is a message
that says, MyVoice is intended to be used during working hours.
I'm pretty sure that's the wording.

Q    I see.  So that would have been a message that appeared
prior to September of '21?

A    Yes.  It actually still says that today, because we don't
require associates to use it, obviously, outside of their shift
or anything like that.

Q    Okay.  Now, when the change occurred -- I believe you said
the change occurred in September '21; is that correct?

A    Started.  We had a couple of thousand boards, so it
happened over time.



1   Q    Got it.  So it started September of '21?

2   A    Yes.  Correct.

3   Q    Do you know whether or not -- was there any notification

4   issued to workers about the change?

5   A    No, not to -- no.  Not from -- I should say, not from my

6   side.  If it were issued at the individual sites, I wouldn't

7   know about that, but from a product perspective, we did not

8   issue anything.

9   Q    Were there any kind of internal documents generated at

10  that time that would show that the change was beginning to take

11  place?

12  A    No.  We wouldn't have anything documented.  It would just

13  be a requirement that we would give to our development team to

14  make the change, but nothing would be documented from us.

15  Q    Okay.  And Ms. Corkery, I believe you testified that no

16  one at the site level would be able to restrict an associate's

17  access to VOA board.  Do you recall that testimony?

18  A    Yes, I do.

19  Q    Okay.  And I think you also testified that even in your

20  department -- no one from your department would be able to

21  restrict someone's access to the VOA board; is that correct?

22  A    It is correct.

23  Q    Okay.  Do you know whether or not there's anyone in all of

24  Amazon who would be able to restrict an employee -- an

25  associate's access to the VOA board?



1   A    Not to the VOA board that's set up the way that JFK8 is

2   set up.  We do have a smaller subset of boards that are set up

3   for very specific business lines.  So say, for example, our

4   customer service associates are located virtually usually and

5   so they can't use the site-based board where access is

6   automatically granted based on a site code.  So there are a

7   smaller, limited number of boards that don't conform to the

8   usual sites such as JFK8 where access is granted and separately

9   acts as what we would call at group level.  And so those can be

10  modified.

11  Q    Okay.  But it's your testimony that at JFK8, there is

12  no -- nobody in the whole company that has any ability to

13  restrict someone's access to the VOA board?

14  A    Yes, exactly.  Not at an individual level.

15  Q    What did you mean by that, "not at an individual level"?

16  A    You could only, for example, restrict the whole site or

17  maybe at a certain time.  Or if you were to remove the board,

18  it would restrict everybody's access to the site.

19  Q    Got it.  Okay.

20       MS. CABRERA:  I have nothing further, Your Honor.

21       JUDGE GREEN:  I just have a couple of questions.  You said

22  that when you -- when somebody goes on the site, they can see

23  language that says it's intended to be used during working

24  hours.  Is -- is that meant as a reassurance?  Basically,

25  you're not going to be -- if you're an employee, you're not



1   going to be disciplined for using this during working hours?

2   Is that the point of that language?

3        THE WITNESS:  No.  I -- well, I -- the intent is more

4   you're not required to use it at any point.  It is an optional

5   product that we offer if associates would like to use that

6   channel.

7        JUDGE GREEN:  Okay.  All right.  So I'm just going to --

8   we did this before, let's see if we can do it again.  Hold on

9   one moment.

10       THE WITNESS:  Okay.

11       JUDGE GREEN:  Just going to share this screen.  Can you

12  see that?

13       THE WITNESS:  Yes, I can.

14       JUDGE GREEN:  So we had testimony from an employee that

15  she received this notification, logged as GC Exhibit 23.  Do

16  you know why the employee would receive that notification in

17  red?

18       THE WITNESS:  Yeah.  You'd receive that notification if

19  you tried -- if you had already accessed the board and then you

20  took an action within the product.  So say for example, that

21  you clicked a button that initiated an action.  For example,

22  post and post a comment.  You would then get this message

23  telling you that you didn't have -- we would then check whether

24  you had access to the board at the time that you clicked the

25  button and you would get this message if you didn't have access



1   at the time that you took that action within the product.

2        JUDGE GREEN:  Would that happen for anybody -- so say,

3   somebody's an JFK8 employee trying to click -- click --

4        THE WITNESS:  Uh-huh.

5        JUDGE GREEN:  -- within the JFK8 VOA board.  Would it be

6   possible for such an employee to receive this notice?

7        THE WITNESS:  Currently, you can't receive it anymore.

8   Before, when there was the time restriction, you would have

9   just received it if it was outside of your shift schedule or

10  plus or minus one hour.  But you wouldn't receive it anymore

11  because now you can post at any time of the day.

12       JUDGE GREEN:  Okay.  All right.  No further questions.

13       Is there anything more from the Respondent?

14       MR. ENJAMIO:  No, Your Honor.  We have no other questions.

15       JUDGE GREEN:  From the General Counsel?

16       MS. CABRERA:  No, Your Honor.

17       JUDGE GREEN:  Okay.  Thank you very much, Ms. Corkery.

18  You're free to go.

19       THE WITNESS:  Okay.  Thank you.  Bye.

20       JUDGE GREEN:  Okay.  And so do we have anything more from

21  the Respondent?

22       MR. ENJAMIO:  Your Honor, if we could just have ten

23  minutes just to verify that we -- whether we have anything else

24  or not?  If that's okay.  And before that, I just want to

25  rebuttal, just for the record.  I don't know if Ms. Cabrera, or



1    Ms. Tooker have seen, we sent you the name that -- the

2    positions of all the people that you asked.  We sent you an

3    email earlier today, just want to make sure that you've seen

4    that.  And I believe that is the complete list.

5        JUDGE GREEN:  So are you going to want to put that in --

6    well, you're going to want to put a stipulation into the record

7    with those --

8        MS. CABRERA:  I'd like to.

9        MR. ENJAMIO:  We can read it.

10       MS. CABRERA:  If that's okay, I'll just read it.

11       JUDGE GREEN:  Yeah.  Or you could put the email in the --

12   in the record.  Whatever you want to do.

13       MS. CABRERA:  Well, whatever you prefer, Your Honor.

14       MS. TOOKER:  It might be easier with all the spellings if

15   the names just --

16       MS. CABRERA:  Yeah.

17       MS. TOOKER:  -- were documented.

18       JUDGE GREEN:  Okay.  So let's go off the record for ten

19   minutes.  We'll be back at 12.

20   (Off the record at 11:50 a.m.)

21       JUDGE GREEN:  Okay.  So we're just pulling up GC-59.  So

22   has the Respondent seen GC-59?  It's your email.  Do you have

23   any objection to it?

24       MR. POWELL:  No, Your Honor.

25       JUDGE GREEN:  Okay.  So GC-59 is admitted.



1    **(General Counsel Exhibit Number 59 Received into Evidence)**

2        JUDGE GREEN:  The Respondent is closing?

3        MS. CABRERA:  Just one -- two more things, Your Honor, on

4    that document, if -- if I may.  The document left off one of

5    the individuals for whom General Counsel was seeking a title.

6        JUDGE GREEN:  Okay.

7        MS. CABRERA:  And that was Stephanie Sciurba.  I'll spell

8    it for the record, S-T-E-P-H-A-N-I-E, last name S-C-I-U-R-B-A.

9    I think Respondent was going to stipulate that she is an

10   employee relations manager.

11       MR. ENJAMIO:  Yes.

12       MR. POWELL:  So stipulated.

13       MS. CABRERA:  Okay.  Thank you.  And with regard to GC-59

14   and Stephanie Sciurba, the Respondent indicated that they would

15   stipulate that these individuals are supervisors under 2 --

16   Section 2(11) of the Act and agents of Respondent under Section

17   2(13) of the Act.

18       MR. POWELL:  So stipulated.

19       MS. CABRERA:  Okay.  Thank you.

20       JUDGE GREEN:  Okay.  So is that all we have?

21       MS. CABRERA:  From the General Counsel?  Yes, Your Honor.

22       JUDGE GREEN:  Okay.  So briefs are going to be due on

23   November 9th, 2022.  That's the longest I can give you.  If

24   anybody wants an extension of that deadline, please send the

25   request through the website to associate -- New York Associate



1    Chief Judge Kenneth Chu.  And please include in that request

2    the other position of the other parties regarding the

3    extension.

4        Other than that, it's, you know, never too late to settle.

5    I don't think that the captive audience allegations are going

6    to settle, but perhaps, some of the other allegations might

7    settle.  And unless there is anything else anybody wants to do,

8    I'm going to close the record.

9        All right.  Very good.  So we'll go off the record and the

10   record is closed.

11       MS. CABRERA:  Thank you, Your Honor.

12       JUDGE GREEN:  Excellent.  Okay.  So good seeing you,

13   Barry.

14       THE COURT REPORTER:  Yeah, you, too.

15       JUDGE GREEN:  Thank you, everybody.

16       MS. CABRERA:  Thank you, Your Honor.

17   **(Whereupon, the hearing in the above-entitled matter was closed**

18   **at 1:05 p.m.)**

19

20

21

22

23

24

25



1  <u>C E R T I F I C A T I O N</u>

2  This is to certify that the attached proceedings before the

3  National Labor Relations Board (NLRB), Region 29, Case Numbers

4  29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-

5  292392, 29-CA-295663, Amazon.com Services LLC and Dana Joann

6  Miller, an Individual and Amazon Labor Union, held via Zoom

7  videoconference at the National Labor Relations Board, Region

8  29, Two Metro Tech Center North, 5th Floor, Brooklyn, NY 11201,

9  on October 5, 2022, at 10:06 a.m. was held according to the

10  record, and that this is the original, complete, and true and

11  accurate transcript that has been compared to the reporting or

12  recording, accomplished at the hearing, that the exhibit files

13  have been checked for completeness and no exhibits received in

14  evidence or in the rejected exhibit files are missing.

15

16

17

18  _____

19  BARRINGTON MOXIE

20  Official Reporter

21

22

23

24

25



# VOLUME II

# EXHIBITS

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

AMAZON.COM SERVICES LLC,          Case No.  29-CA-280153

and

DANA JOANN MILLER,
AN INDIVIDUAL,

and                               Case Nos. 29-CA-286577
                                            29-CA-287614
AMAZON LABOR UNION.                         29-CA-290880
                                            29-CA-292392
                                            29-CA-295663

———————————————————

———————————————————

GENERAL COUNSEL EXHIBITS

Place: Brooklyn, New York (via Zoom Videoconference)

Dates: October 5, 2022

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885



**INDEX AND DESCRIPTION OF FORMAL DOCUMENTS**
**GENERAL COUNSEL EXHIBIT NO. 1**
**DESCRIPTION**

**AMAZON.COM SERVICES, INC.**
**CASES 29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-292392, 29-CA-295663**

1(A) CHARGE IN CASE 29-CA-280153 FILED JULY 16, 2021.

1(B) DOCKET LETTER TO CHARGING PARTY IN CASE 29-CA-280153 DATED JULY 20, 2021.

1(C) DOCKET LETTER TO EMPLOYER WITH AFFIDAVIT OF SERVICE IN CASE 29-CA-280153 DATED JULY 20, 2021.

1(D) CHARGE IN CASE 29-CA-286577 FILED NOVEMBER 19, 2021.

1(E) DOCKET LETTER TO EMPLOYER WITH AFFIDAVIT OF SERVICE IN CASE 29-CA-286577 DATED NOVEMBER 22, 2021.

1(F) DOCKET LETTER TO CHARGING PARTY IN CASE 29-CA-286577 DATED NOVEMBER 22, 2021.

1(G) CHARGE IN CASE 29-CA-287614 FILED DECEMBER 13, 2021.

1(H) DOCKET LETTER TO EMPLOYER WITH AFFIDAVIT OF SERVICE IN CASE 29-CA-287614 DATED DECEMBER 14, 2021.

1(I) DOCKET LETTER TO CHARGING PARTY IN CASE 29-CA-287614 DATED DECEMBER 14, 2021.

1(J) CHARGE IN CASE 29-CA-290880 FILED FEBRUARY 17, 2022.

1(K) DOCKET LETTER TO EMPLOYER WITH AFFIDAVIT OF SERVICE IN CASE 29-CA-290880 DATED FEBRUARY 18, 2022.

1(L) DOCKET LETTER TO CHARGING PARTY IN CASE 29-CA-290880 DATED FEBRUARY 18, 2022.

1(M) CHARGE IN CASE 29-CA-292392 FILED MARCH 16, 2022.

1(N) DOCKET LETTER TO EMPLOYER WITH AFFIDAVIT OF SERVICE IN CASE 29-CA-292392 DATED MARCH 17, 2022.

1(O) DOCKET LETTER TO CHARGING PARTY IN CASE 29-CA-292392 DATED MARCH 17, 2022.

1(P) FIRST AMENDED CHARGE IN CASE 29-CA-292392 FILED APRIL 12, 2022.

1(Q) FIRST AMENDED CHARGE DOCKET LETTER TO CHARGED PARTY IN CASE 29-CA-292392 DATED APRIL 14, 2022.

459

EXHIBIT NO. GC-1(A-CC) RECEIVED x REJECTED _____

CASE NO 29-CA-280153 ET/AL CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 129 DATE: 09-19-2022 REPORTER: Barrington Moxie

1(R) FIRST AMENDED CHARGE DOCKET LETTER TO CHARGING PARTY IN CASE 29-CA-292392 DATED APRIL 14, 2022.

1(S) CHARGE IN CASE 29-CA-295663 FILED MAY 11, 2022.

1(T) DOCKET LETTER TO EMPLOYER WITH AFFIDAVIT OF SERVICE IN CASE 29-CA-295663 DATED MAY 12, 2022.

1(U) DOCKET LETTER TO CHARGING PARTY IN CASE 29-CA-295663 DATED MAY 12, 2022.

1(V) ORDER CONSOLIDATING CASES CONSOLIDATED COMPLAINT AND NOTICE OF HEARING IN CASES 29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-292392 DATED MAY 31, 2022.

1(W) AFFIDAVIT OF ORDER CONSOLIDATING CASES CONSOLIDATED COMPLAINT AND NOTICE OF HEARING IN CASES 29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-292392 DATED MAY 31, 2022.

1(X) ORDER FURTHER CONSOLIDATING CASES AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING IN CASES 29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-292392, 29-CA-295663 DATED AUGUST 11, 2022.

1(Y) AFFIDAVIT OF SERVICE ORDER FURTHER CONSOLIDATING CASES AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING IN CASES 29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-292392, 29-CA-295663 DATED AUGUST 11, 2022.

1(Z) ANSWER TO AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING IN CASES  29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-292392, 29-CA-295663 DATED AUGUST 25, 2022.

1(AA) ALJ ORDER ON HEARING FOR CASES 29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-292392, 29-CA-295663 DATED AUGUST 25, 2022.

1(BB) ALJ ORDER ON PETITION TO REVOKE FOR CASES 29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, 29-CA-292392, 29-CA-295663 DATED SEPTEMBER 7, 2022.

1(CC) INDEX AND DESCRIPTION OF FORMAL DOCUMENTS

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 29-CA-280153 | 7/16/2021 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| | |
|---|---|
| a. Name of Employer<br><br>Amazon.com Services, Inc. | b. Tel. No.<br>(855) 579-1766 |
| | c. Cell No.<br>(855) 579-1766 |
| | f. Fax No. |

| d. Address *(Street, city, state, and ZIP code)*<br><br>546 Gulf Avenue<br>NY Staten Island  10314 | e. Employer Representative<br><br>Felipe Santos<br>General Manager | g. e-Mail |
|---|---|---|
| | | h. Number of workers employed<br>5600 |

| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Business Services | j. Identify principal product or service<br>Package Delivery |
|---|---|

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* 1,3 of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

**--See additional page--**

| 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*<br>Dana Joann Miller                    Title: | |
|---|---|

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>23 Prospect Avenue<br>NY Staten Island 10301 | 4b. Tel. No.<br>(407) 233-8166 |
|---|---|
| | 4c. Cell No.<br>(407) 233-8166 |
| | 4d. Fax No. |
| | 4e. e-Mail<br>Danamoot@yahoo.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No.<br>(646) 460-1309 |
|---|---|
| By _____<br>*(signature of representative or person making charge)*   Title: Seth Lewis Goldstein Esq.<br>Senior Business Representative<br>*(Print/type name and title or office, if any)* | Office, if any, Cell No.<br>(646) 460-1309 |
| | Fax No. |
| 217 Hadleigh Drive<br>Address  Cherry Hill NJ 08003          07/16/2021 06:58:49 PM<br>*(date)* | e-Mail<br>sgold352002@icloud.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses of the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# Basis of the Charge

**8(a)(3)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) joined or supported a labor organization and in order to discourage union activities and/or membership.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Dana Miller | Took down postings and revoked permissions | 07/12/2021 |

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, discussing wages, hours, or other terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Dana Miller | Took down postings and revoked permissions | 07/12/2021 |

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prohibit employees from discussing wages, hours, or other terms or conditions of employment.

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining work rules that prevent or discourage employees from forming, joining, or supporting a labor organization.





UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579



Download
NLRB
Mobile App

Dana Joann Miller
23 Prospect Avenue
Staten Island, NY 10301

July 20, 2021

Re:    Amazon.com Services, Inc.
       Case 29-CA-280153

Dear Ms. Miller:

The charge that you filed in this case on July 16, 2021 has been docketed as case number 29-CA-280153. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney EMILY CABRERA whose telephone number is (718)765-6184.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. Because we seek to resolve labor disputes promptly, you should be ready to promptly present your affidavit(s) and other evidence. If you have not yet scheduled a date and time for the Board agent to take your affidavit, please contact the Board agent to schedule the affidavit(s). If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed without investigation.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control. Relevant information includes, but is not limited to, paper documents and all ESI

(e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

KATHY DREW-KING
Regional Director

cc:    Seth Lewis Goldstein, Senior Business
       Representative
       Law Offices of Seth Goldstein
       217 Hadleigh Drive
       Cherry Hill, NJ 08003



**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579



Download
NLRB
Mobile App

Felipe Santos, General Manager
Amazon.com Services, Inc.
546 Gulf Avenue
Staten Island, NY 10314

July 20, 2021

Re:     Amazon.com Services, Inc.
          Case 29-CA-280153

Dear Mr. Santos:

Enclosed is a copy of a charge that has been filed in this case. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:**  This charge is being investigated by Field Attorney EMILY CABRERA whose telephone number is (718)765-6184.

**Right to Representation:**  You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, [www.nlrb.gov](http://www.nlrb.gov), or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** We seek prompt resolutions of labor disputes. Therefore, I urge you or your representative to submit a complete written account of the facts and a statement of your position with respect to the allegations set forth in the charge as soon as possible. If the Board agent later asks for more evidence, I strongly urge you or your representative to cooperate fully by promptly presenting all evidence relevant to the investigation. In this way, the case can be fully investigated more quickly.

Full and complete cooperation includes providing witnesses to give sworn affidavits to a Board agent, and providing all relevant documentary evidence requested by the Board agent. Sending us your written account of the facts and a statement of your position is not enough to be considered full and complete cooperation. A refusal to fully cooperate during the investigation might cause a case to be litigated unnecessarily.

In addition, either you or your representative must complete the enclosed Commerce Questionnaire to enable us to determine whether the NLRB has jurisdiction over this dispute. If you recently submitted this information in another case, or if you need assistance completing the form, please contact the Board agent.

We will not honor requests to limit our use of position statements or evidence. Specifically, any material you submit may be introduced as evidence at a hearing before an administrative law judge regardless of claims of confidentiality. However, certain evidence produced at a hearing may be protected from public disclosure by demonstrated claims of confidentiality.

Further, the Freedom of Information Act may require that we disclose position statements or evidence in closed cases upon request, unless an exemption applies, such as those protecting confidential financial information or personal privacy interests.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to

your case has your preferred email address.  These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer.    If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request.  *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

KATHY DREW-KING
Regional Director

Enclosures:
1. Copy of Charge
2. Commerce Questionnaire

FORM NLRB-5081
(3-11)

**NATIONAL LABOR RELATIONS BOARD**

## QUESTIONNAIRE ON COMMERCE INFORMATION

**Please read carefully, answer all applicable items, and return to the NLRB Office. If additional space is required, please add a page and identify item number.**

| CASE NAME | CASE NUMBER |
| --- | --- |
| | 29-CA-280153 |

**1. EXACT LEGAL TITLE OF ENTITY (As filed with State and/or stated in legal documents forming entity)**

**2. TYPE OF ENTITY**

[ ] CORPORATION   [ ] LLC   [ ] LLP   [ ] PARTNERSHIP   [ ] SOLE PROPRIETORSHIP   [ ] OTHER (Specify )

**3. IF A CORPORATION or LLC**

| A. STATE OF INCORPORATION OR FORMATION | B. NAME, ADDRESS, AND RELATIONSHIP (e.g. parent, subsidiary) OF ALL RELATED ENTITIES |
| --- | --- |
| | |

**4. IF AN LLC OR ANY TYPE OF PARTNERSHIP, FULL NAME AND ADDRESS OF ALL MEMBERS OR PARTNERS**

**5. IF A SOLE PROPRIETORSHIP, FULL NAME AND ADDRESS OF PROPRIETOR**

**6. BRIEFLY DESCRIBE THE NATURE OF YOUR OPERATIONS** *(Products handled or manufactured, or nature of services performed).*

| 7A. PRINCIPAL LOCATION: | 7B. BRANCH LOCATIONS: |
| --- | --- |

**8. NUMBER OF PEOPLE PRESENTLY EMPLOYED**

| A. TOTAL: | B. AT THE ADDRESS INVOLVED IN THIS MATTER: |
| --- | --- |

**9. DURING THE MOST RECENT** *(Check the appropriate box):* [ ] CALENDAR   [ ] 12 MONTHS   or [ ] FISCAL YEAR *(FY DATES _____ )*

| | YES | NO |
| --- | --- | --- |
| A. Did you **provide services** valued in excess of $50,000 directly to customers outside your State? If no, indicate actual value. $_____ | | |
| B. If you answered no to 9A, did you **provide services** valued in excess of $50,000 to customers in your State who purchased goods valued in excess of $50,000 from directly outside your State? If no, indicate the value of any such services you provided. $_____ | | |
| C. If you answered no to 9A and 9B, did you **provide services** valued in excess of $50,000 to public utilities, transit systems, newspapers, health care institutions, broadcasting stations, commercial buildings, educational institutions, or retail concerns? If less than $50,000, indicate amount. $_____ | | |
| D. Did you **sell goods** valued in excess of $50,000 directly to customers located outside your State? If less than $50,000, indicate amount. $_____ | | |
| E. If you answered no to 9D, did you **sell goods** valued in excess of $50,000 directly to customers located inside your State who purchased other goods valued in excess of $50,000 from directly outside your State? If less than $50,000, indicate amount. $_____ | | |
| F. Did you **purchase and receive goods** valued in excess of $50,000 from directly outside your State? If less than $50,000, indicate amount. $_____ | | |
| G. Did you **purchase and receive goods** valued in excess of $50,000 from enterprises who received the goods directly from points outside your State? If less than $50,000, indicate amount. $_____ | | |
| H. **Gross Revenues** from all sales or performance of services *(Check the largest amount):* [ ] $100,000  [ ] $250,000  [ ] $500,000  [ ] $1,000,000 or more   If less than $100,000, indicate amount. | | |
| I. **Did you begin operations within the last 12 months?** If yes, specify date: _____ | | |

**10. ARE YOU A MEMBER OF AN ASSOCIATION OR OTHER EMPLOYER GROUP THAT ENGAGES IN COLLECTIVE BARGAINING?**

[ ] YES   [ ] NO   *(If yes, name and address of association or group).*

**11. REPRESENTATIVE BEST QUALIFIED TO GIVE FURTHER INFORMATION ABOUT YOUR OPERATIONS**

| NAME | TITLE | E-MAIL ADDRESS | TEL. NUMBER |
| --- | --- | --- | --- |
| | | | |

**12. AUTHORIZED REPRESENTATIVE COMPLETING THIS QUESTIONNAIRE**

| NAME AND TITLE *(Type or Print)* | SIGNATURE | E-MAIL ADDRESS | DATE |
| --- | --- | --- | --- |
| | | | |

### PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further a representation or unfair labor practice case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**AMAZON.COM SERVICES, INC.**

      Charged Party

      and

**DANA JOANN MILLER**

      Charging Party

**Case 29-CA-280153**

**AFFIDAVIT OF SERVICE OF CHARGE AGAINST EMPLOYER**

I, the undersigned employee of the National Labor Relations Board, state under oath that on July 20, 2021, I served the above-entitled document(s) by post-paid regular mail upon the following persons, addressed to them at the following addresses:

Felipe Santos, General Manager
Amazon.com Services, Inc.
546 Gulf Avenue
Staten Island, NY 10314

July 20, 2021

|  |  |
|---|---|
| | FREDA DEVONSHIRE, Designated |
| | Agent of NLRB |
| Date | Name |

| |
|---|
| /S/ FREDA DEVONSHIRE |
| Signature |

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case 29-CA-286577 | Date Filed 11/19/2021 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| | |
|---|---|
| a. Name of Employer<br><br>Amazon.com Services LLC | b. Tel. No. (855) 579-1766 |
| | c. Cell No. |
| | f. Fax No. |

| d. Address *(Street, city, state, and ZIP code)*<br><br>546 Gulf Avenue<br>NY Staten Island 10314 | e. Employer Representative<br><br>Felipe Santos<br>General Manager | g. e-Mail |
|---|---|---|
| | | h. Number of workers employed<br>7200 |

| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Others | j. Identify principal product or service<br>Various products and services |
|---|---|

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* 1 of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

| 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*<br>Connor Spence                                    Title:<br>Amazon Labor Union | |
|---|---|

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>67 Radford Street<br>NY Staten Island 10314 | 4b. Tel. No. (848) 210-0636 |
|---|---|
| | 4c. Cell No. (848) 210-0636 |
| | 4d. Fax No. |
| | 4e. e-Mail connorspence@amazonunion.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. (646) 460-1309 |
|---|---|
| By [signature]                    Seth Lewis Goldstein Esq.<br>                                   Title: Attorney<br>*(signature of representative or person making charge)*    *(Print/type name and title or office, if any)* | Office, if any, Cell No. (646) 460-1309 |
| | Fax No. |
| 217 Hadleigh Drive<br>Address  Cherry Hill NJ 08003            11/19/2021 07:46:33 AM<br>                                                *(date)* | e-Mail |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# Basis of the Charge

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by threatening to retaliate against employees if they joined or supported a union.

| Name of Employer's Agent/Representative who made the statement | Approximate date |
| --- | --- |
| Amazon.com Services LLC | 05/19/2021 |



**UNITED STATES GOVERNMENT**
## NATIONAL LABOR RELATIONS BOARD



REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579

Download
NLRB
Mobile App

Felipe Santos, General Manager
Amazon.com Services LLC
546 Gulf Avenue
Staten Island, NY 10314

November 22, 2021

Re: Amazon.com Services LLC
Case 29-CA-286577

Dear Mr. Santos:

Enclosed is a copy of a charge that has been filed in this case. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney EMILY CABRERA whose telephone number is (718)765-6184. If this Board agent is not available, you may contact Supervisory Attorney TARA O'ROURKE whose telephone number is (718)765-6213.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** We seek prompt resolutions of labor disputes. Therefore, I urge you or your representative to submit a complete written account of the facts and a statement of your position with respect to the allegations set forth in the charge as soon as possible. If the Board agent later asks for more evidence, I strongly urge you or your representative to cooperate fully by promptly presenting all evidence relevant to the investigation. In this way, the case can be fully investigated more quickly.

Full and complete cooperation includes providing witnesses to give sworn affidavits to a Board agent, and providing all relevant documentary evidence requested by the Board agent. Sending us your written account of the facts and a statement of your position is not

enough to be considered full and complete cooperation.  A refusal to fully cooperate during the investigation might cause a case to be litigated unnecessarily.

In addition, either you or your representative must complete the enclosed Commerce Questionnaire to enable us to determine whether the NLRB has jurisdiction over this dispute.  If you recently submitted this information in another case, or if you need assistance completing the form, please contact the Board agent.

We will not honor requests to limit our use of position statements or evidence. Specifically, any material you submit may be introduced as evidence at a hearing before an administrative law judge regardless of claims of confidentiality. However, certain evidence produced at a hearing may be protected from public disclosure by demonstrated claims of confidentiality.

Further, the Freedom of Information Act may require that we disclose position statements or evidence in closed cases upon request, unless an exemption applies, such as those protecting confidential financial information or personal privacy interests.

**Preservation of all Potential Evidence:**  Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control.  Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:**  All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format).  Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

Kathy Drew-King
Regional Director

Enclosures:
1. Copy of Charge
2. Commerce Questionnaire

FORM NLRB-5081
(3-11)

**NATIONAL LABOR RELATIONS BOARD**

# QUESTIONNAIRE ON COMMERCE INFORMATION

**Please read carefully, answer all applicable items, and return to the NLRB Office. If additional space is required, please add a page and identify item number.**

| CASE NAME | CASE NUMBER |
|---|---|
| | 29-CA-286577 |

**1. EXACT LEGAL TITLE OF ENTITY (As filed with State and/or stated in legal documents forming entity)**

**2. TYPE OF ENTITY**

[ ] CORPORATION    [ ] LLC    [ ] LLP    [ ] PARTNERSHIP    [ ] SOLE PROPRIETORSHIP     [ ] OTHER (Specify )

**3. IF A CORPORATION or LLC**

| A. STATE OF INCORPORATION OR FORMATION | B. NAME, ADDRESS, AND RELATIONSHIP (e.g. parent, subsidiary) OF ALL RELATED ENTITIES |
|---|---|
| | |

**4. IF AN LLC OR ANY TYPE OF PARTNERSHIP, FULL NAME AND ADDRESS OF ALL MEMBERS OR PARTNERS**

**5. IF A SOLE PROPRIETORSHIP, FULL NAME AND ADDRESS OF PROPRIETOR**

**6. BRIEFLY DESCRIBE THE NATURE OF YOUR OPERATIONS** *(Products handled or manufactured, or nature of services performed).*

| 7A. PRINCIPAL LOCATION: | 7B. BRANCH LOCATIONS: |
|---|---|
| | |

**8. NUMBER OF PEOPLE PRESENTLY EMPLOYED**

| A. TOTAL: | B. AT THE ADDRESS INVOLVED IN THIS MATTER: |
|---|---|
| | |

**9. DURING THE MOST RECENT** *(Check the appropriate box):* [ ] CALENDAR    [ ] 12 MONTHS    or [ ] FISCAL YEAR *(FY DATES _____)*

| | YES | NO |
|---|---|---|
| A. Did you **provide services** valued in excess of $50,000 directly to customers outside your State? If no, indicate actual value. $_____ | | |
| B. If you answered no to 9A, did you **provide services** valued in excess of $50,000 to customers in your State who purchased goods valued in excess of $50,000 from directly outside your State? If no, indicate the value of any such services you provided. $_____ | | |
| C. If you answered no to 9A and 9B, did you **provide services** valued in excess of $50,000 to public utilities, transit systems, newspapers, health care institutions, broadcasting stations, commercial buildings, educational institutions, or retail concerns? If less than $50,000, indicate amount. $_____ | | |
| D. Did you **sell goods** valued in excess of $50,000 directly to customers located outside your State? If less than $50,000, indicate amount. $_____ | | |
| E. If you answered no to 9D, did you **sell goods** valued in excess of $50,000 directly to customers located inside your State who purchased other goods valued in excess of $50,000 from directly outside your State? If less than $50,000, indicate amount. $_____ | | |
| F. Did you **purchase and receive goods** valued in excess of $50,000 from directly outside your State? If less than $50,000, indicate amount. $_____ | | |
| G. Did you **purchase and receive goods** valued in excess of $50,000 from enterprises who received the goods directly from points outside your State? If less than $50,000, indicate amount. $_____ | | |
| H. **Gross Revenues** from all sales or performance of services *(Check the largest amount)*: [ ] $100,000 [ ] $250,000 [ ] $500,000 [ ] $1,000,000 or more If less than $100,000, indicate amount. | | |
| I. **Did you begin operations within the last 12 months?** If yes, specify date: _____ | | |

**10. ARE YOU A MEMBER OF AN ASSOCIATION OR OTHER EMPLOYER GROUP THAT ENGAGES IN COLLECTIVE BARGAINING?**

[ ] YES    [ ] NO    *(If yes, name and address of association or group).*

**11. REPRESENTATIVE BEST QUALIFIED TO GIVE FURTHER INFORMATION ABOUT YOUR OPERATIONS**

| NAME | TITLE | E-MAIL ADDRESS | TEL. NUMBER |
|---|---|---|---|
| | | | |

**12. AUTHORIZED REPRESENTATIVE COMPLETING THIS QUESTIONNAIRE**

| NAME AND TITLE *(Type or Print)* | SIGNATURE | E-MAIL ADDRESS | DATE |
|---|---|---|---|
| | | | |

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further a representation or unfair labor practice case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

|  |  |
|---|---|
| **AMAZON.COM SERVICES LLC**<br><br>    Charged Party<br><br>    and<br><br>**AMAZON LABOR UNION**<br><br>    Charging Party | **Case 29-CA-286577** |

**AFFIDAVIT OF SERVICE OF CHARGE AGAINST EMPLOYER**

I, the undersigned employee of the National Labor Relations Board, state under oath that on November 22, 2021, I served the above-entitled document(s) by post-paid regular mail upon the following persons, addressed to them at the following addresses:

Felipe Santos, General Manager
Amazon.com Services LLC
546 Gulf Avenue
Staten Island, NY 10314

November 22, 2021

|  |  |
|---|---|
| | FREDA DEVONSHIRE, Designated Agent of NLRB |
| Date | Name |

|  |  |
|---|---|
| | /S/ FREDA DEVONSHIRE |
| | Signature |





UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579

Download
NLRB
Mobile App

Connor Spence
Amazon Labor Union
67 Radford Street
Staten Island, NY 10314

November 22, 2021

Re:     Amazon.com Services LLC
        Case 29-CA-286577

Dear Mr. Spence:

The charge that you filed in this case on November 19, 2021 has been docketed as case number 29-CA-286577. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney EMILY CABRERA whose telephone number is (718)765-6184. If this Board agent is not available, you may contact Supervisory Attorney TARA O'ROURKE whose telephone number is (718)765-6213.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. Because we seek to resolve labor disputes promptly, you should be ready to promptly present your affidavit(s) and other evidence. If you have not yet scheduled a date and time for the Board agent to take your affidavit, please contact the Board agent to schedule the affidavit(s). If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed without investigation.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to

take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

Kathy Drew-King
Regional Director

cc:    Seth Lewis Goldstein, Attorney
       Law Offices of Seth Goldstein
       217 Hadleigh Drive
       Cherry Hill, NJ 08003

FORM EXEMPT UNDER 44 U.S.C 3512

481

| INTERNET FORM NLRB-501 (2-08) | UNITED STATES OF AMERICA NATIONAL LABOR RELATIONS BOARD **CHARGE AGAINST EMPLOYER** | DO NOT WRITE IN THIS SPACE | |
|---|---|---|---|
| | | Case 29-CA-287614 | Date Filed 12/13/2021 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer Amazon.com Services LLC | | b. Tel. No. 855-579-1766 |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address (Street, city, state, and ZIP code) 546 Gulf Avenue Staten Island, NY 10314 | e. Employer Representative Felipe Santos General Manager | g. e-Mail |
| | | h. Number of workers employed Approximately 7,200 |
| i. Type of Establishment (factory, mine, wholesaler, etc.) Others | j. Identify principal product or service Various products and services | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list

subsections) _____ of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)
Within the previous six months, Amazon.com Services has compelled their employees to attend captive audience meetings which coerced, interfered, and restrained its employees in the exercise of their rights protected by Section 7 and violates Section 8(a)(1) of the Act.

We are requesting a 10(j) injunction and enhanced remedies.

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
Amazon Labor Union

| 4a. Address (Street and number, city, state, and ZIP code) 67 Radford Street Staten Island, New York 10314 | 4b. Tel. No. 848-210-0636 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail connor@amazonlaborunion.org |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization) Amazon Labor Union

| 6. DECLARATION I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. |
|---|---|
| By ___(signature)___ (signature of representative or person making charge) | Office, if any, Cell No. |
| Seth Goldstein, Attorney (Print/type name and title or office, if any) | Fax No. Same As Above |
| Address 217 Hadleigh Drive, Cherry Hill, New Jersey 08003 | 12/3/2021 (date) | e-Mail sgold352002@icloud.com12/320 |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579



Download
NLRB
Mobile App

Felipe Santos, General Manager
Amazon.com Services Inc.
546 Gulf Avenue
Staten Island, NY 10314

December 14, 2021

Re:  Amazon.com Services LLC
     Case 29-CA-287614

Dear Mr. Santos:

Enclosed is a copy of a charge that has been filed in this case.  This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:**  This charge is being investigated by Field Attorney EMILY CABRERA whose telephone number is (718)765-6184.  If this Board agent is not available, you may contact Supervisory Attorney TARA O'ROURKE whose telephone number is (718)765-6213.

**Right to Representation:**  You have the right to be represented by an attorney or other representative in any proceeding before us.  If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*.  This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board.  Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** We seek prompt resolutions of labor disputes.  Therefore, I urge you or your representative to submit a complete written account of the facts and a statement of your position with respect to the allegations set forth in the charge as soon as possible.  If the Board agent later asks for more evidence, I strongly urge you or your representative to cooperate fully by promptly presenting all evidence relevant to the investigation.  In this way, the case can be fully investigated more quickly.

Full and complete cooperation includes providing witnesses to give sworn affidavits to a Board agent, and providing all relevant documentary evidence requested by the Board agent.  Sending us your written account of the facts and a statement of your position is not

enough to be considered full and complete cooperation.  A refusal to fully cooperate during the investigation might cause a case to be litigated unnecessarily.

In addition, either you or your representative must complete the enclosed Commerce Questionnaire to enable us to determine whether the NLRB has jurisdiction over this dispute.  If you recently submitted this information in another case, or if you need assistance completing the form, please contact the Board agent.

We will not honor requests to limit our use of position statements or evidence. Specifically, any material you submit may be introduced as evidence at a hearing before an administrative law judge regardless of claims of confidentiality. However, certain evidence produced at a hearing may be protected from public disclosure by demonstrated claims of confidentiality.

Further, the Freedom of Information Act may require that we disclose position statements or evidence in closed cases upon request, unless an exemption applies, such as those protecting confidential financial information or personal privacy interests.

**Preservation of all Potential Evidence:**  Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control.  Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:**  All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format).  Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

Kathy Drew-King
Regional Director

Enclosures:
1. Copy of Charge
2. Commerce Questionnaire

FORM NLRB-5081
(3-11)

**NATIONAL LABOR RELATIONS BOARD**

## QUESTIONNAIRE ON COMMERCE INFORMATION

Please read carefully, answer all applicable items, and return to the NLRB Office. If additional space is required, please add a page and identify item number.

| CASE NAME | CASE NUMBER |
|---|---|
| | 29-CA-287614 |

**1. EXACT LEGAL TITLE OF ENTITY (As filed with State and/or stated in legal documents forming entity)**

**2. TYPE OF ENTITY**

[ ] CORPORATION    [ ] LLC    [ ] LLP    [ ] PARTNERSHIP    [ ] SOLE PROPRIETORSHIP    [ ] OTHER (Specify )

**3. IF A CORPORATION or LLC**

| A. STATE OF INCORPORATION OR FORMATION | B. NAME, ADDRESS, AND RELATIONSHIP (e.g. parent, subsidiary) OF ALL RELATED ENTITIES |
|---|---|
| | |

**4. IF AN LLC OR ANY TYPE OF PARTNERSHIP, FULL NAME AND ADDRESS OF ALL MEMBERS OR PARTNERS**

**5. IF A SOLE PROPRIETORSHIP, FULL NAME AND ADDRESS OF PROPRIETOR**

**6. BRIEFLY DESCRIBE THE NATURE OF YOUR OPERATIONS** *(Products handled or manufactured, or nature of services performed).*

| 7A. PRINCIPAL LOCATION: | 7B. BRANCH LOCATIONS: |
|---|---|

**8. NUMBER OF PEOPLE PRESENTLY EMPLOYED**

| A. TOTAL: | B. AT THE ADDRESS INVOLVED IN THIS MATTER: |
|---|---|

**9. DURING THE MOST RECENT** *(Check the appropriate box):* [ ] CALENDAR   [ ] 12 MONTHS   or  [ ] FISCAL YEAR  *(FY DATES _____ )*

| | YES | NO |
|---|---|---|
| A. Did you **provide services** valued in excess of $50,000 directly to customers outside your State? If no, indicate actual value. $_____ | | |
| B. If you answered no to 9A, did you **provide services** valued in excess of $50,000 to customers in your State who purchased goods valued in excess of $50,000 from directly outside your State? If no, indicate the value of any such services you provided. $_____ | | |
| C. If you answered no to 9A and 9B, did you **provide services** valued in excess of $50,000 to public utilities, transit systems, newspapers, health care institutions, broadcasting stations, commercial buildings, educational institutions, or retail concerns? If less than $50,000, indicate amount. $_____ | | |
| D. Did you **sell goods** valued in excess of $50,000 directly to customers located outside your State? If less than $50,000, indicate amount. $_____ | | |
| E. If you answered no to 9D, did you **sell goods** valued in excess of $50,000 directly to customers located inside your State who purchased other goods valued in excess of $50,000 from directly outside your State? If less than $50,000, indicate amount. $_____ | | |
| F. Did you **purchase and receive goods** valued in excess of $50,000 from directly outside your State? If less than $50,000, indicate amount. $_____ | | |
| G. Did you **purchase and receive goods** valued in excess of $50,000 from enterprises who received the goods directly from points outside your State? If less than $50,000, indicate amount. $_____ | | |
| H. **Gross Revenues** from all sales or performance of services *(Check the largest amount)*: [ ] $100,000  [ ] $250,000  [ ] $500,000  [ ] $1,000,000 or more   If less than $100,000, indicate amount. | | |
| I. **Did you begin operations within the last 12 months?** If yes, specify date: _____ | | |

**10. ARE YOU A MEMBER OF AN ASSOCIATION OR OTHER EMPLOYER GROUP THAT ENGAGES IN COLLECTIVE BARGAINING?**

[ ] YES   [ ] NO  *(If yes, name and address of association or group).*

**11. REPRESENTATIVE BEST QUALIFIED TO GIVE FURTHER INFORMATION ABOUT YOUR OPERATIONS**

| NAME | TITLE | E-MAIL ADDRESS | TEL. NUMBER |
|---|---|---|---|
| | | | |

**12. AUTHORIZED REPRESENTATIVE COMPLETING THIS QUESTIONNAIRE**

| NAME AND TITLE *(Type or Print)* | SIGNATURE | E-MAIL ADDRESS | DATE |
|---|---|---|---|
| | | | |

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further a representation or unfair labor practice case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**AMAZON.COM SERVICES LLC**

    Charged Party

    and

**AMAZON LABOR UNION**

    Charging Party

**Case 29-CA-287614**

**AFFIDAVIT OF SERVICE OF CHARGE AGAINST EMPLOYER**

I, the undersigned employee of the National Labor Relations Board, state under oath that on December 14, 2021, I served the above-entitled document(s) by post-paid regular mail upon the following persons, addressed to them at the following addresses:

Felipe Santos, General Manager
Amazon.com Services Inc.
546 Gulf Avenue
Staten Island, NY 10314

December 14, 2021

_____
Date

FREDA DEVONSHIRE, Designated
Agent of NLRB
_____
Name

/S/ FREDA DEVONSHIRE
_____
Signature

UNITED STATES GOVERNMENT
# NATIONAL LABOR RELATIONS BOARD

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579

Download
NLRB
Mobile App

Connor Spence
Amazon Labor Union
67 Radford Street
Staten Island, NY 10314

December 14, 2021

Re:     Amazon.com Services LLC
        Case 29-CA-287614

Dear Mr. Spence:

The charge that you filed in this case on December 13, 2021 has been docketed as case number 29-CA-287614. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney EMILY CABRERA whose telephone number is (718)765-6184. If this Board agent is not available, you may contact Supervisory Attorney TARA O'ROURKE whose telephone number is (718)765-6213.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. Because we seek to resolve labor disputes promptly, you should be ready to promptly present your affidavit(s) and other evidence. If you have not yet scheduled a date and time for the Board agent to take your affidavit, please contact the Board agent to schedule the affidavit(s). If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed without investigation.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to

take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

Kathy Drew-King
Regional Director

cc:     Seth Goldstein, Attorney
        217 Hadleigh Drive
        Cherry Hill, NJ 08003

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

490

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Tel. No. |
|---|---|
| AMAZON.COM SERVICES LLC | (206) 266-1000 |
| | c. Cell No. |
| | f. Fax. No. |

| d. Address (Street, city, state, and ZIP code) | e. Employer Representative | g. e-mail |
|---|---|---|
| 576 GULF AVE. STATEN ISLAND, NY 10303 | | |
| | | h. Number of workers employed 5000.00000000 |

| i. Type of Establishment (factory, mine, wholesaler, etc.) | j. Identify principal product or service |
|---|---|
| Warehousing | E-commerce shipping logistics |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and

(list subsections)   (1)                                                                of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the

meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Amazon has been engaging in coercive captive audience meetings and has been making unlawful statements in those meetings in violation of the NLRA.

As this is a part of Amazon's ongoing egregious unlawful practices, charging party requests 10(j) injunctive relief, enhanced remedies, and an immediate end to the captive audience meetings.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) |
|---|
| Amazon Labor Union |

| 4a. Address (Street and number, city, state, and ZIP code) | 4b. Tel. No. |
|---|---|
| 67 Radford St. Staten Island, NY 10314 | 4c. Cell No. (646) 460-1309 |
| | 4d. Fax No. |
| | 4e. e-mail sgold352002@icloud.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

| 6. DECLARATION I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. (646) 460-1309 |
|---|---|
| *Seth Goldstein* (Feb 17, 2022 15:26 EST) Seth Goldstein | Office, if any, Cell No. |
| (signature of representative or person making charge)   (Print/type name and title or office, if any) | Fax No. |
| Address 217 Hadley Dr., Cherry Hill, NJ 08003     Date 02/17/2022 | e-mail sgold352002@icloud.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579

Download
NLRB
Mobile App

February 18, 2022

Amazon.Com Services LLC
576 Gulf Avenue
Staten Island, NY 10303

Re:   Amazon.com Services LLC
Case 29-CA-290880

Dear Sir or Madam:

Enclosed is a copy of a charge that has been filed in this case. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney MATTHEW JACKSON whose telephone number is (718)765-6202. If this Board agent is not available, you may contact Supervisory Attorney TARA O'ROURKE whose telephone number is (718)765-6213.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, [www.nlrb.gov](www.nlrb.gov), or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** We seek prompt resolutions of labor disputes. Therefore, I urge you or your representative to submit a complete written account of the facts and a statement of your position with respect to the allegations set forth in the charge as soon as possible. If the Board agent later asks for more evidence, I strongly urge you or your representative to cooperate fully by promptly presenting all evidence relevant to the investigation. In this way, the case can be fully investigated more quickly.

Full and complete cooperation includes providing witnesses to give sworn affidavits to a Board agent, and providing all relevant documentary evidence requested by the Board agent. Sending us your written account of the facts and a statement of your position is not

enough to be considered full and complete cooperation. A refusal to fully cooperate during the investigation might cause a case to be litigated unnecessarily.

In addition, either you or your representative must complete the enclosed Commerce Questionnaire to enable us to determine whether the NLRB has jurisdiction over this dispute. If you recently submitted this information in another case, or if you need assistance completing the form, please contact the Board agent.

We will not honor requests to limit our use of position statements or evidence. Specifically, any material you submit may be introduced as evidence at a hearing before an administrative law judge regardless of claims of confidentiality. However, certain evidence produced at a hearing may be protected from public disclosure by demonstrated claims of confidentiality.

Further, the Freedom of Information Act may require that we disclose position statements or evidence in closed cases upon request, unless an exemption applies, such as those protecting confidential financial information or personal privacy interests.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

KATHY DREW-KING
Regional Director

Enclosures:
1. Copy of Charge
2. Commerce Questionnaire

FORM NLRB-5081
(3-11)

**NATIONAL LABOR RELATIONS BOARD**

# QUESTIONNAIRE ON COMMERCE INFORMATION

**Please read carefully, answer all applicable items, and return to the NLRB Office. If additional space is required, please add a page and identify item number.**

| CASE NAME | CASE NUMBER |
|---|---|
| | 29-CA-290880 |

**1. EXACT LEGAL TITLE OF ENTITY (As filed with State and/or stated in legal documents forming entity)**

**2. TYPE OF ENTITY**

[ ] CORPORATION    [ ] LLC    [ ] LLP    [ ] PARTNERSHIP    [ ] SOLE PROPRIETORSHIP    [ ] OTHER (Specify )

**3. IF A CORPORATION or LLC**

| A. STATE OF INCORPORATION OR FORMATION | B. NAME, ADDRESS, AND RELATIONSHIP (e.g. parent, subsidiary) OF ALL RELATED ENTITIES |
|---|---|

**4. IF AN LLC OR ANY TYPE OF PARTNERSHIP, FULL NAME AND ADDRESS OF ALL MEMBERS OR PARTNERS**

**5. IF A SOLE PROPRIETORSHIP, FULL NAME AND ADDRESS OF PROPRIETOR**

**6. BRIEFLY DESCRIBE THE NATURE OF YOUR OPERATIONS** *(Products handled or manufactured, or nature of services performed).*

| 7A. PRINCIPAL LOCATION: | 7B. BRANCH LOCATIONS: |
|---|---|

**8. NUMBER OF PEOPLE PRESENTLY EMPLOYED**

| A. TOTAL: | B. AT THE ADDRESS INVOLVED IN THIS MATTER: |
|---|---|

**9. DURING THE MOST RECENT** *(Check the appropriate box):* [ ] CALENDAR    [ ] 12 MONTHS    or [ ] FISCAL YEAR *(FY DATES _____ )*

| | YES | NO |
|---|---|---|
| A. Did you **provide services** valued in excess of $50,000 directly to customers outside your State? If no, indicate actual value. $_____ | | |
| B. If you answered no to 9A, did you **provide services** valued in excess of $50,000 to customers in your State who purchased goods valued in excess of $50,000 from directly outside your State? If no, indicate the value of any such services you provided. $_____ | | |
| C. If you answered no to 9A and 9B, did you **provide services** valued in excess of $50,000 to public utilities, transit systems, newspapers, health care institutions, broadcasting stations, commercial buildings, educational institutions, or retail concerns? If less than $50,000, indicate amount. $_____ | | |
| D. Did you **sell goods** valued in excess of $50,000 directly to customers located outside your State? If less than $50,000, indicate amount. $_____ | | |
| E. If you answered no to 9D, did you **sell goods** valued in excess of $50,000 directly to customers located inside your State who purchased other goods valued in excess of $50,000 from directly outside your State? If less than $50,000, indicate amount. $_____ | | |
| F. Did you **purchase and receive goods** valued in excess of $50,000 from directly outside your State? If less than $50,000, indicate amount. $_____ | | |
| G. Did you **purchase and receive goods** valued in excess of $50,000 from enterprises who received the goods directly from points outside your State? If less than $50,000, indicate amount. $_____ | | |
| H. **Gross Revenues** from all sales or performance of services *(Check the largest amount)*: [ ] $100,000  [ ] $250,000  [ ] $500,000  [ ] $1,000,000 or more   If less than $100,000, indicate amount. | | |
| I. **Did you begin operations within the last 12 months?**   If yes, specify date: _____ | | |

**10. ARE YOU A MEMBER OF AN ASSOCIATION OR OTHER EMPLOYER GROUP THAT ENGAGES IN COLLECTIVE BARGAINING?**

[ ] YES    [ ] NO  *(If yes, name and address of association or group).*

**11. REPRESENTATIVE BEST QUALIFIED TO GIVE FURTHER INFORMATION ABOUT YOUR OPERATIONS**

| NAME | TITLE | E-MAIL ADDRESS | TEL. NUMBER |
|---|---|---|---|

**12. AUTHORIZED REPRESENTATIVE COMPLETING THIS QUESTIONNAIRE**

| NAME AND TITLE *(Type or Print)* | SIGNATURE | E-MAIL ADDRESS | DATE |
|---|---|---|---|

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further a representation or unfair labor practice case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**AMAZON.COM SERVICES LLC**

    Charged Party

    and

**AMAZON LABOR UNION**

    Charging Party

**Case 29-CA-290880**

**AFFIDAVIT OF SERVICE OF CHARGE AGAINST EMPLOYER**

I, the undersigned employee of the National Labor Relations Board, state under oath that on February 18, 2022, I served the above-entitled document(s) by post-paid regular mail upon the following persons, addressed to them at the following addresses:

Amazon.Com Services LLC
576 Gulf Avenue
Staten Island, NY 10303

| February 18, 2022 | Linette Gayle, Designated Agent of NLRB |
|---|---|
| Date | Name |

*Linette Gayle*

Signature



UNITED STATES GOVERNMENT
# NATIONAL LABOR RELATIONS BOARD

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579



Download
NLRB
Mobile App

February 18, 2022

Amazon Labor Union
67 Radford Street
Staten Island, NY 10314

Re:     Amazon.com Services LLC
          Case 29-CA-290880

Dear Sir or Madam:

The charge that you filed in this case on February 17, 2022 has been docketed as case number 29-CA-290880.  This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:**  This charge is being investigated by Field Attorney MATTHEW JACKSON whose telephone number is (718)765-6202.  If this Board agent is not available, you may contact Supervisory Attorney TARA O'ROURKE whose telephone number is (718)765-6213.

**Right to Representation:**  You have the right to be represented by an attorney or other representative in any proceeding before us.  If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*.  This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board.  Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:**  As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. Because we seek to resolve labor disputes promptly, you should be ready to promptly present your affidavit(s) and other evidence.  If you have not yet scheduled a date and time for the Board agent to take your affidavit, please contact the Board agent to schedule the affidavit(s).  If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed without investigation.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

KATHY DREW-KING
Regional Director

cc:    Seth Lewis Goldstein, Senior Business
      representative
      Amazon Labor Union
      217 Hadley Dr.
      Cherry Hill, NJ 08003

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 29-CA-292392 | 3/16/2022 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Amazon.com Services LLC | | b. Tel. No.<br>(855) 579-1766 |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)*<br>546 Gulf Avenue<br><br>NY Staten island 10341 | e. Employer Representative<br><br>Felipe Santos<br>General Manager | g. e-mail |
| | | h. Number of workers employed<br>6000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Others | j. Identify principal product or service<br>Various services and products | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and

(list subsections) 3,1            of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the

meaning of the Act and the Postal Reorganization Act.

### 2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

| 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*<br>Connor Spence        Vice President<br>Amazon Labor Union | | |
|---|---|---|
| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>67 Radford Avenue<br>NY Staten Island 10341 | 4b. Tel. No.<br>(848) 210-0636 |
| | 4c. Cell No.<br>(848) 210-0636 |
| | 4d. Fax No. |
| | 4e. e-mail<br>sgold352002@icloud.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

Amazon Labor Union

### 6. DECLARATION
I declare that I have read the above charge and that the statements
are true to the best of my knowledge and belief.

| *(signature of representative or person making charge)* | Seth Lewis Goldstein Esq.<br>Attorney<br>*(Print/type name and title or office, if any)* | Tel. No.<br>(646) 646-1309 |
|---|---|---|
| | | Office, if any, Cell No.<br>(646) 460-1309 |
| | | Fax No. |
| Address   217 Hadleigh Drive<br>Cherry Hill NJ 08003 | Date 03/16/2022 08:07:40 AM | e-mail<br>sgold352002@icloud.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

# Basis of the Charge

**8(a)(3)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) joined or supported a labor organization and in order to discourage union activities and/or membership.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Michelle Valentin Nieves | Thrown out of captive audience meeting | 03/15/2022 |

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, discussing wages, hours, or other terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Michelle Valentine Nieves | Thrown out of captive audience meeting | 03/15/2022 |

**8(a)(1)**

Within the previous six-months, the Employer has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by threatening to retaliate against employees if they joined or supported a union.

| Name of Employer's Agent/Representative who made the statement | Approximate date |
|---|---|
| Amazon.com Services LLC | 03/15/2022 |



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD



REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579

Download
NLRB
Mobile App

Felipe Santos, General Manager
Amazon.com Services LLC
546 Gulf Avenue
Staten island, NY 10341

March 17, 2022

Re:    Amazon.com Services LLC
       Case 29-CA-292392

Dear Mr. Santos:

Enclosed is a copy of a charge that has been filed in this case. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney MATTHEW JACKSON whose telephone number is (718)765-6202. If this Board agent is not available, you may contact Supervisory Attorney TERRI A. CRAIG whose telephone number is (718)765-6174.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*. This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** We seek prompt resolutions of labor disputes. Therefore, I urge you or your representative to submit a complete written account of the facts and a statement of your position with respect to the allegations set forth in the charge as soon as possible. If the Board agent later asks for more evidence, I strongly urge you or your representative to cooperate fully by promptly presenting all evidence relevant to the investigation. In this way, the case can be fully investigated more quickly.

Full and complete cooperation includes providing witnesses to give sworn affidavits to a Board agent, and providing all relevant documentary evidence requested by the Board agent. Sending us your written account of the facts and a statement of your position is not

enough to be considered full and complete cooperation.  A refusal to fully cooperate during the investigation might cause a case to be litigated unnecessarily.

In addition, either you or your representative must complete the enclosed Commerce Questionnaire to enable us to determine whether the NLRB has jurisdiction over this dispute.  If you recently submitted this information in another case, or if you need assistance completing the form, please contact the Board agent.

We will not honor requests to limit our use of position statements or evidence. Specifically, any material you submit may be introduced as evidence at a hearing before an administrative law judge regardless of claims of confidentiality. However, certain evidence produced at a hearing may be protected from public disclosure by demonstrated claims of confidentiality.

Further, the Freedom of Information Act may require that we disclose position statements or evidence in closed cases upon request, unless an exemption applies, such as those protecting confidential financial information or personal privacy interests.

**Preservation of all Potential Evidence:**  Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control.  Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:**  All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format).  Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

KATHY DREW-KING
Regional Director

Enclosures:
1. Copy of Charge
2. Commerce Questionnaire

FORM NLRB-5081
(3-11)

**NATIONAL LABOR RELATIONS BOARD**

## QUESTIONNAIRE ON COMMERCE INFORMATION

**Please read carefully, answer all applicable items, and return to the NLRB Office. If additional space is required, please add a page and identify item number.**

| CASE NAME | CASE NUMBER |
|---|---|
| | 29-CA-292392 |

**1. EXACT LEGAL TITLE OF ENTITY (As filed with State and/or stated in legal documents forming entity)**

**2. TYPE OF ENTITY**

[ ] CORPORATION    [ ] LLC    [ ] LLP    [ ] PARTNERSHIP    [ ] SOLE PROPRIETORSHIP    [ ] OTHER (Specify )

**3. IF A CORPORATION or LLC**

| A. STATE OF INCORPORATION OR FORMATION | B. NAME, ADDRESS, AND RELATIONSHIP (e.g. parent, subsidiary) OF ALL RELATED ENTITIES |
|---|---|

**4. IF AN LLC OR ANY TYPE OF PARTNERSHIP, FULL NAME AND ADDRESS OF ALL MEMBERS OR PARTNERS**

**5. IF A SOLE PROPRIETORSHIP, FULL NAME AND ADDRESS OF PROPRIETOR**

**6. BRIEFLY DESCRIBE THE NATURE OF YOUR OPERATIONS** *(Products handled or manufactured, or nature of services performed).*

| 7A. PRINCIPAL LOCATION: | 7B. BRANCH LOCATIONS: |
|---|---|

**8. NUMBER OF PEOPLE PRESENTLY EMPLOYED**

| A. TOTAL: | B. AT THE ADDRESS INVOLVED IN THIS MATTER: |
|---|---|

**9. DURING THE MOST RECENT** *(Check the appropriate box):* [ ] CALENDAR    [ ] 12 MONTHS    or [ ] FISCAL YEAR *(FY DATES _____ )*

| | YES | NO |
|---|---|---|
| A. Did you **provide services** valued in excess of $50,000 directly to customers outside your State? If no, indicate actual value. $_____ | | |
| B. If you answered no to 9A, did you **provide services** valued in excess of $50,000 to customers in your State who purchased goods valued in excess of $50,000 from directly outside your State? If no, indicate the value of any such services you provided. $_____ | | |
| C. If you answered no to 9A and 9B, did you **provide services** valued in excess of $50,000 to public utilities, transit systems, newspapers, health care institutions, broadcasting stations, commercial buildings, educational institutions, or retail concerns? If less than $50,000, indicate amount. $_____ | | |
| D. Did you **sell goods** valued in excess of $50,000 directly to customers located outside your State? If less than $50,000, indicate amount. $_____ | | |
| E. If you answered no to 9D, did you **sell goods** valued in excess of $50,000 directly to customers located inside your State who purchased other goods valued in excess of $50,000 from directly outside your State? If less than $50,000, indicate amount. $_____ | | |
| F. Did you **purchase and receive goods** valued in excess of $50,000 from directly outside your State? If less than $50,000, indicate amount. $_____ | | |
| G. Did you **purchase and receive goods** valued in excess of $50,000 from enterprises who received the goods directly from points outside your State? If less than $50,000, indicate amount. $_____ | | |
| H. **Gross Revenues** from all sales or performance of services *(Check the largest amount)*: [ ] $100,000   [ ] $250,000   [ ] $500,000   [ ] $1,000,000 or more   If less than $100,000, indicate amount. | | |
| I. **Did you begin operations within the last 12 months?** If yes, specify date: _____ | | |

**10. ARE YOU A MEMBER OF AN ASSOCIATION OR OTHER EMPLOYER GROUP THAT ENGAGES IN COLLECTIVE BARGAINING?**

[ ] YES    [ ] NO   *(If yes, name and address of association or group).*

**11. REPRESENTATIVE BEST QUALIFIED TO GIVE FURTHER INFORMATION ABOUT YOUR OPERATIONS**

| NAME | TITLE | E-MAIL ADDRESS | TEL. NUMBER |
|---|---|---|---|

**12. AUTHORIZED REPRESENTATIVE COMPLETING THIS QUESTIONNAIRE**

| NAME AND TITLE *(Type or Print)* | SIGNATURE | E-MAIL ADDRESS | DATE |
|---|---|---|---|

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further a representation or unfair labor practice case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

# UNITED STATES OF AMERICA

# BEFORE THE NATIONAL LABOR RELATIONS BOARD

**AMAZON.COM SERVICES LLC**

    Charged Party

    and

**AMAZON LABOR UNION**

    Charging Party

**Case 29-CA-292392**

**AFFIDAVIT OF SERVICE OF CHARGE AGAINST EMPLOYER**

I, the undersigned employee of the National Labor Relations Board, state under oath that on March 17, 2022, I served the above-entitled document(s) by post-paid regular mail upon the following persons, addressed to them at the following addresses:

Felipe Santos, General Manager
Amazon.com Services LLC
546 Gulf Avenue
Staten island, NY 10341

March 17, 2022

| | |
|---|---|
| | FREDA DEVONSHIRE, Designated Agent of NLRB |
| Date | Name |
| | /S/ FREDA DEVONSHIRE |
| | Signature |



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 29
Two Metro Tech Center          Agency Website: www.nlrb.gov
Suite 5100                     Telephone: (718)330-7713
Brooklyn, NY 11201-3838        Fax: (718)330-7579



Download
NLRB
Mobile App

Connor Spence, Vice President
Amazon Labor Union                    March 17, 2022
67 Radford Avenue
Staten Island, NY 10341

                    Re:    Amazon.com Services LLC
                           Case 29-CA-292392

Dear Mr. Spence:

The charge that you filed in this case on March 16, 2022 has been docketed as case number 29-CA-292392.  This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:**  This charge is being investigated by Field Attorney MATTHEW JACKSON whose telephone number is (718)765-6202.  If this Board agent is not available, you may contact Supervisory Attorney TERRI A. CRAIG whose telephone number is (718)765-6174.

**Right to Representation:**  You have the right to be represented by an attorney or other representative in any proceeding before us.  If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*.  This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board.  Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:**  As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. Because we seek to resolve labor disputes promptly, you should be ready to promptly present your affidavit(s) and other evidence.  If you have not yet scheduled a date and time for the Board agent to take your affidavit, please contact the Board agent to schedule the affidavit(s).  If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed without investigation.

**Preservation of all Potential Evidence:** Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

KATHY DREW-KING
Regional Director

cc:    Seth Lewis Goldstein, Attorney
Law offices of Seth Goldstein
217 Hadleigh Drive
Cherry Hill, NJ 08003

 **Staples**

---

From: Seth GOLDSTEIN

To: Mat Jackson

Memo: AMAZON AMENDED CHARGE 29 CA 292392

510

Form NLRB - 501 (3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 29-CA-292392 | 4/12/2022 |

1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer <br> Amazon.com Services LLC | | b. Tel. No. <br> (855)579-1766 |
|---|---|---|
| | | c. Cell No. |
| d. Address (*Street, city, state, and ZIP code*) <br> 546 Gulf Avenue <br> Staten Island, NY 10341 | e. Employer Representative <br> Felipe Santos <br> General Manager | f. Fax No. |
| | | g. e-mail <br> Amber Rogers, Esq. <br> arogers@hunton.com <br><br> Kurt Larkin, Esq. <br> klarkin@hunton.com |
| | | h. Number of Workers Employed <br> Approx. 6,000 |
| i. Type of Establishment (*factory, mine, wholesaler, etc.*) <br> Warehouse and distribution center | j. Identify Principal Product or Service <br> Various retail products and services | |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (*set forth a clear and concise statement of the facts constituting the alleged unfair labor practices*)

See Attachment

| 3. Full name of party filing charge (*if labor organization, give full name, including local name and number*) <br> Amazon Labor Union | |
|---|---|
| 4a. Address (*Street and number, city, state, and ZIP code*) <br> 67 Radford Avenue, Staten Island, NY 10341 | 4b. Tel. No. <br> (848)210-0636 |
| | 4c. Cell No. <br> (848)210-0636 |
| | 4d. Fax No. |
| | 4e. e-mail <br> sgold352002@icloud.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (*to be filled in when charge is filed by a labor organization*)

| 6. DECLARATION <br> I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. <br><br> *(signature of representative or person making charge)*    Seth Lewis Goldstein, Esq. <br> *(Print/type name and title or office, if any)* | Tel. No. <br> (646) 646-1309 |
|---|---|
| | Office, if any, Cell No. <br> (646) 460-1309 |
| | Fax No. |
| Address:   67 Radford Avenue, Staten Island, NY 10341    Date: 4/12/22 | e-mail <br> sgold352002@icloud.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT

2. Basis of the Charge (*set forth a clear and concise statement of the facts constituting the alleged unfair labor practices*)

Within the past six months, including on about March 15, 2022, the above-named Employer required its employees at the "JFK8" Facility to attend mandatory meetings for the purpose of encouraging employees to reject union representation.

On about March 15, 2022, the above-named Employer threatened employees with unlawful discharge if they selected Amazon Labor Union ("Union") as their bargaining representative.

On about March 15, 2022, the above-named Employer threatened to withhold benefits from employees if they selected the Union as their bargaining representative.

On about March 15, 2022, the Employer interfered with, restrained and coerced employees in the exercise of their rights under the Act by expelling employee Michelle Valentin Nieves from a mandatory meeting because she expressed her views in support of the Union.



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579

Download
NLRB
Mobile App

Felipe Santos, General Manager
Amazon.com Services LLC
546 Gulf Avenue
Staten Island, NY 10341

April 14, 2022

Re:    Amazon.com Services LLC
       Case 29-CA-292392

Dear Mr. Santos:

Enclosed is a copy of the first amended charge that has been filed in this case.

**Investigator**:  This charge is being investigated by Field Attorney MATTHEW JACKSON whose telephone number is (718)765-6202.  If the agent is not available, you may contact Supervisory Attorney TERRI A. CRAIG whose telephone number is (718)765-6174.

**Presentation of Your Evidence:**  As you know, we seek prompt resolutions of labor disputes.  Therefore, I urge you or your representative to submit a complete written account of the facts and a statement of your position with respect to the allegations in the first amended charge as soon as possible.  If the Board agent later asks for more evidence, I strongly urge you or your representative to cooperate fully by promptly presenting all evidence relevant to the investigation.  In this way, the case can be fully investigated more quickly.

**Preservation of all Potential Evidence:**  Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control.  Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Procedures:**  Pursuant to Section 102.5 of the Board's Rules and Regulations, parties must submit all documentary evidence, including statements of position, exhibits, sworn statements, and/or other evidence, by electronically submitting (E-Filing) them through the Agency's web site (www.nlrb.gov).  You must e-file all documents electronically or provide a written statement explaining why electronic submission is not possible or feasible.   Failure to comply with Section 102.5 will result in rejection of your submission.  The Region will make its determination on the merits solely based on the evidence properly submitted. All evidence

submitted electronically should be in the form in which it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format). If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge.

If the Agency does not issue a formal complaint in this matter, parties will be notified of the Regional Director's decision by email. Please ensure that the agent handling your case has your current email address.

Very truly yours,

KATHY DREW-KING
Regional Director

Enclosure: Copy of first amended charge

cc:     KURT G. LARKIN, Esq.
        Hunton Andrews Kurth LLP
        Riverfront Plaza
        951 E. Byrd Street, Suite 700
        Richmond, VA 23219

        Amber M. Rogers, ESQ.
        HUNTON ANDREWS KURTH LLP
        HUNTON ANDREWS KURTH LLP
        1445 Ross Avenue, Suite 3700
        Dallas, TX 75202

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**AMAZON.COM SERVICES LLC**

Charged Party

and

**AMAZON LABOR UNION**

Charging Party

**Case 29-CA-292392**

**AFFIDAVIT OF SERVICE OF FIRST AMENDED CHARGE AGAINST EMPLOYER**

I, the undersigned employee of the National Labor Relations Board, being duly sworn, say that on April 14, 2022**,** I served the above-entitled document(s) by regular mail upon the following persons, addressed to them at the following addresses:

Felipe Santos, General Manager
Amazon.com Services LLC
546 Gulf Avenue
Staten island, NY 10341

KURT G. LARKIN, Esq.
Hunton Andrews Kurth LLP
Riverfront Plaza
951 E. Byrd Street, Suite 700
Richmond, VA 23219

Amber M. Rogers, ESQ.
HUNTON ANDREWS KURTH LLP
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, TX 75202

April 14, 2022

| | |
|---|---|
| Date | FREDA DEVONSHIRE, Designated Agent of NLRB |
| | Name |
| | /S/ FREDA DEVONSHIRE |
| | Signature |



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579

Download
NLRB
Mobile App

Connor Spence, Vice President
Amazon Labor Union
67 Radford Avenue
Staten Island, NY 10341

April 14, 2022

Re:  Amazon.com Services LLC
Case 29-CA-292392

Dear Mr. Spence:

We have docketed the first amended charge that you filed in this case.

**Investigator**:  This charge is being investigated by Field Attorney MATTHEW JACKSON whose telephone number is (718)765-6202.  If the agent is not available, you may contact Supervisory Attorney TERRI A. CRAIG whose telephone number is (718)765-6174.

**Presentation of Your Evidence:**  As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. If you have additional evidence regarding the allegations in the first amended charge and you have not yet scheduled a date and time for the Board agent to obtain that evidence, please contact the Board agent to arrange to present that evidence.  If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed.

**Preservation of all Potential Evidence:**  Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control.  Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Procedures:**  Pursuant to Section 102.5 of the Board's Rules and Regulations, parties must submit all documentary evidence, including statements of position, exhibits, sworn statements, and/or other evidence, by electronically submitting (E-Filing) them through the Agency's web site (www.nlrb.gov).  You must e-file all documents electronically or provide a written statement explaining why electronic submission is not possible or feasible.   Failure to comply with Section 102.5 will result in rejection of your submission.  The Region will make its

determination on the merits solely based on the evidence properly submitted. All evidence submitted electronically should be in the form in which it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format). If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge.

If the Agency does not issue a formal complaint in this matter, parties will be notified of the Regional Director's decision by email. Please ensure that the agent handling your case has your current email address.

Very truly yours,

KATHY DREW-KING
Regional Director

cc:    Seth Lewis Goldstein, Attorney
       Law offices of Seth Goldstein
       217 Hadleigh Drive
       Cherry Hill, NJ 08003

RECEIVED
By T. Fred  at 10:36 pm, May 10, 2022

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case 29-CA-295663 | Date Filed 5/11/2022 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

| 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT | |
|---|---|
| a. Name of Employer<br>Amazon.com Services LLC | b. Tel. No.<br>855-579-1766 |
| | c. Cell No. |
| | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)*<br>526 Gulf Avenue, LDJ5<br>Staten Island, NY 10314 | e. Employer Representative<br>Scott Tyler<br>General Manager | g. e-mail |
| | | h. Number of workers employed<br>1500 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Other | j. Identify principal product or service<br>Various products and services | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and

(list subsections)                                              of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the

meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*
1. Within the past six months, including April 2022, the above -named employer required its employees at "LDJ5" Facility to attend captive audience meetings for the purpose of encouraging employees to reject union representation.
2. Within the past six-months, including April 2022, the Vice President of "LDJ5" Facility of the above-named-employer threatened to withhold benefits from employees if they selected the union as their bargaining representative.
3. Within the past six-months, including April 2022, the Vice President of "LDJ5" Facility of the above-named-employer interfered with, restrained and coerced employees in the exercise of their rights under the Act by stating, "the union that you will have to pay" which is a misrepresentation of employee statutory rights under the Act.

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Amazon Labor Union

| 4a. Address *(Street and number, city, state, and ZIP code)*<br>Connor Spence<br>67 Radford Avenue<br>Staten Island, NY 10314 | 4b. Tel. No.<br>(848) 210-0636 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-mail<br>connor@amazonlaborunic |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

Amazon Labor Union

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements<br>are true to the best of my knowledge and belief. | Tel. No,<br>(646) 460-1309 |
|---|---|
| Seth Goldstein, Esq. | Office, if any, Cell No. |
| *(signature of representative or person making charge)*          *(Print/type name and title or office, if any)* | Fax No. |
| Address 217 Hadleigh Drive, Cherry Hill, NJ 08003    Date 5/7/2022 | e-mail<br>sethgoldstein68@gmail.cc |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.



**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579

Download
NLRB
Mobile App



Scott Tyler, General Manager
Amazon com Services LLC
526 Gulf Avenue
LDJ5
Staten Island, NY 10314

May 12, 2022

Re:     Amazon.com Services, LLC
          Case 29-CA-295663

Dear Mr. Tyler:

Enclosed is a copy of a charge that has been filed in this case. This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:** This charge is being investigated by Field Attorney MATTHEW JACKSON whose telephone number is (718)765-6202. If this Board agent is not available, you may contact Supervisory Attorney TERRI A. CRAIG whose telephone number is (718)765-6174.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance.* This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board. Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:** We seek prompt resolutions of labor disputes. Therefore, I urge you or your representative to submit a complete written account of the facts and a statement of your position with respect to the allegations set forth in the charge as soon as possible. If the Board agent later asks for more evidence, I strongly urge you or your representative to cooperate fully by promptly presenting all evidence relevant to the investigation. In this way, the case can be fully investigated more quickly.

Full and complete cooperation includes providing witnesses to give sworn affidavits to a Board agent, and providing all relevant documentary evidence requested by the Board

agent.  Sending us your written account of the facts and a statement of your position is not enough to be considered full and complete cooperation.  A refusal to fully cooperate during the investigation might cause a case to be litigated unnecessarily.

In addition, either you or your representative must complete the enclosed Commerce Questionnaire to enable us to determine whether the NLRB has jurisdiction over this dispute.  If you recently submitted this information in another case, or if you need assistance completing the form, please contact the Board agent.

We will not honor requests to limit our use of position statements or evidence. Specifically, any material you submit may be introduced as evidence at a hearing before an administrative law judge regardless of claims of confidentiality. However, certain evidence produced at a hearing may be protected from public disclosure by demonstrated claims of confidentiality.

Further, the Freedom of Information Act may require that we disclose position statements or evidence in closed cases upon request, unless an exemption applies, such as those protecting confidential financial information or personal privacy interests.

**Preservation of all Potential Evidence:**  Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control.  Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:**  All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format).  Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

KATHY DREW-KING
Regional Director

Enclosures:
1. Copy of Charge
2. Commerce Questionnaire

cc: Amber M. Rogers, Esq.
Hunton Andrews Kurth LLP
1445 Ross Avenue, Suite 3700
Dallas, TX 75202

Kurt G. Larkin, Esq.
Hunton Andrews Kurth LLP
951 E. Byrd Street
Suite 700
Richmond, VA 23219

FORM NLRB-5081
(3-11)

**NATIONAL LABOR RELATIONS BOARD**

# QUESTIONNAIRE ON COMMERCE INFORMATION

**Please read carefully, answer all applicable items, and return to the NLRB Office. If additional space is required, please add a page and identify item number.**

| CASE NAME | CASE NUMBER |
|---|---|
| | 29-CA-295663 |

**1. EXACT LEGAL TITLE OF ENTITY (As filed with State and/or stated in legal documents forming entity)**

**2. TYPE OF ENTITY**

[ ] CORPORATION    [ ] LLC    [ ] LLP    [ ] PARTNERSHIP    [ ] SOLE PROPRIETORSHIP    [ ] OTHER (Specify )

**3. IF A CORPORATION or LLC**

| A. STATE OF INCORPORATION OR FORMATION | B. NAME, ADDRESS, AND RELATIONSHIP (e.g. parent, subsidiary) OF ALL RELATED ENTITIES |
|---|---|
| | |

**4. IF AN LLC OR ANY TYPE OF PARTNERSHIP, FULL NAME AND ADDRESS OF ALL MEMBERS OR PARTNERS**

**5. IF A SOLE PROPRIETORSHIP, FULL NAME AND ADDRESS OF PROPRIETOR**

**6. BRIEFLY DESCRIBE THE NATURE OF YOUR OPERATIONS** *(Products handled or manufactured, or nature of services performed).*

| 7A. PRINCIPAL LOCATION: | 7B. BRANCH LOCATIONS: |
|---|---|
| | |

**8. NUMBER OF PEOPLE PRESENTLY EMPLOYED**

| A. TOTAL: | B. AT THE ADDRESS INVOLVED IN THIS MATTER: |
|---|---|

**9. DURING THE MOST RECENT** *(Check the appropriate box):* [ ] CALENDAR    [ ] 12 MONTHS    or [ ] FISCAL YEAR    *(FY DATES _____)*

| | YES | NO |
|---|---|---|
| A. Did you **provide services** valued in excess of $50,000 directly to customers outside your State? If no, indicate actual value. $_____ | | |
| B. If you answered no to 9A, did you **provide services** valued in excess of $50,000 to customers in your State who purchased goods valued in excess of $50,000 from directly outside your State? If no, indicate the value of any such services you provided. $_____ | | |
| C. If you answered no to 9A and 9B, did you **provide services** valued in excess of $50,000 to public utilities, transit systems, newspapers, health care institutions, broadcasting stations, commercial buildings, educational institutions, or retail concerns? If less than $50,000, indicate amount.  $_____ | | |
| D. Did you **sell goods** valued in excess of $50,000 directly to customers located outside your State? If less than $50,000, indicate amount.  $_____ | | |
| E. If you answered no to 9D, did you **sell goods** valued in excess of $50,000 directly to customers located inside your State who purchased other goods valued in excess of $50,000 from directly outside your State?  If less than $50,000, indicate amount. $_____ | | |
| F. Did you **purchase and receive goods** valued in excess of $50,000 from directly outside your State?  If less than $50,000, indicate amount.  $_____ | | |
| G. Did you **purchase and receive goods** valued in excess of $50,000 from enterprises who received the goods directly from points outside your State?  If less than $50,000, indicate amount. $_____ | | |
| H. **Gross Revenues** from all sales or performance of services *(Check the largest amount)*: [ ] $100,000  [ ] $250,000  [ ] $500,000  [ ] $1,000,000 or more  If less than $100,000, indicate amount. | | |
| I. **Did you begin operations within the last 12 months?**  If yes, specify date: _____ | | |

**10. ARE YOU A MEMBER OF AN ASSOCIATION OR OTHER EMPLOYER GROUP THAT ENGAGES IN COLLECTIVE BARGAINING?**

[ ] YES    [ ] NO    *(If yes, name and address of association or group).*

**11. REPRESENTATIVE BEST QUALIFIED TO GIVE FURTHER INFORMATION ABOUT YOUR OPERATIONS**

| NAME | TITLE | E-MAIL ADDRESS | TEL. NUMBER |
|---|---|---|---|
| | | | |

**12. AUTHORIZED REPRESENTATIVE COMPLETING THIS QUESTIONNAIRE**

| NAME AND TITLE *(Type or Print)* | SIGNATURE | E-MAIL ADDRESS | DATE |
|---|---|---|---|
| | | | |

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further a representation or unfair labor practice case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

| | |
|---|---|
| **AMAZON.COM SERVICES, LLC**<br><br>      Charged Party<br><br>      and<br><br>**AMAZON LABOR UNION**<br><br>      Charging Party | **Case 29-CA-295663** |

**AFFIDAVIT OF SERVICE OF CHARGE AGAINST EMPLOYER**

I, the undersigned employee of the National Labor Relations Board, state under oath that on May 12, 2022**,** I served the above-entitled document(s) by post-paid regular mail upon the following persons, addressed to them at the following addresses:

Scott Tyler, General Manager
Amazon com Services LLC
526 Gulf Avenue
LDJ5
Staten Island, NY 10314

Amber M. Rogers, Esq.
Hunton Andrews Kurth LLP
1445 Ross Avenue, Suite 3700
Dallas, TX 75202

Kurt G. Larkin, Esq.
Hunton Andrews Kurth LLP
951 E. Byrd Street
Suite 700
Richmond, VA 23219

May 12, 2022

| | |
|---|---|
|   | FREDA DEVONSHIRE, Designated<br>Agent of NLRB |
| Date | Name |
| | /S/ FREDA DEVONSHIRE |
| | Signature |



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579



Download
NLRB
Mobile App

Connor Spence
Amazon Labor Union
67 Radford Street
Staten Island, NY 10314

May 12, 2022

Re:     Amazon.com Services, LLC
        Case 29-CA-295663

Dear Mr. Spence:

The charge that you filed in this case on May 11, 2022 has been docketed as case number 29-CA-295663.  This letter tells you how to contact the Board agent who will be investigating the charge, explains your right to be represented, discusses presenting your evidence, and provides a brief explanation of our procedures, including how to submit documents to the NLRB.

**Investigator:**  This charge is being investigated by Field Attorney MATTHEW JACKSON whose telephone number is (718)765-6202.  If this Board agent is not available, you may contact Supervisory Attorney TERRI A. CRAIG whose telephone number is (718)765-6174.

**Right to Representation:**  You have the right to be represented by an attorney or other representative in any proceeding before us.  If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing *Form NLRB-4701, Notice of Appearance*.  This form is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

If you are contacted by someone about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the National Labor Relations Board.  Their knowledge regarding this proceeding was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Presentation of Your Evidence:**  As the party who filed the charge in this case, it is your responsibility to meet with the Board agent to provide a sworn affidavit, or provide other witnesses to provide sworn affidavits, and to provide relevant documents within your possession. Because we seek to resolve labor disputes promptly, you should be ready to promptly present your affidavit(s) and other evidence.  If you have not yet scheduled a date and time for the Board agent to take your affidavit, please contact the Board agent to schedule the affidavit(s).  If you fail to cooperate in promptly presenting your evidence, your charge may be dismissed without investigation.

**Preservation of all Potential Evidence:**  Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case, and to

take all steps necessary to avoid the inadvertent loss of information in your possession, custody or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, emails, and any data created by proprietary software tools) related to the above-captioned case.

**Prohibition on Recording Affidavit Interviews:** It is the policy of the General Counsel to prohibit affiants from recording the interview conducted by Board agents when subscribing Agency affidavits. Such recordings may impede the Agency's ability to safeguard the confidentiality of the affidavit itself, protect the privacy of the affiant and potentially compromise the integrity of the Region's investigation.

**Correspondence:** All documents submitted to the Region regarding your case MUST be filed through the Agency's website, www.nlrb.gov. This includes all formal pleadings, briefs, as well as affidavits, documentary evidence, and position statements. The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format).

If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the charge. If you cannot e-file your documents, you must provide a statement explaining why you do not have access to the means for filing electronically or why filing electronically would impose an undue burden.

In addition, this Region will be issuing case-related correspondence and documents, including complaints, compliance specifications, dismissal letters, deferral letters, and withdrawal letters, electronically to the email address you provide. Please ensure that you receive important case-related correspondence, please ensure that the Board Agent assigned to your case has your preferred email address. These steps will ensure that you receive correspondence faster and at a significantly lower cost to the taxpayer. If there is some reason you are unable to receive correspondence via email, please contact the agent assigned to your case to discuss the circumstances that prevent you from using email.

Information about the Agency, the procedures we follow in unfair labor practice cases and our customer service standards is available on our website, www.nlrb.gov or from an NLRB office upon your request. *NLRB Form 4541, Investigative Procedures* offers information that is helpful to parties involved in an investigation of an unfair labor practice charge.

We can provide assistance for persons with limited English proficiency or disability. Please let us know if you or any of your witnesses would like such assistance.

Very truly yours,

KATHY DREW-KING
Regional Director

cc:    Seth Goldstein, Esq.
       217 Hadleigh Drive
       Cherry Hill, NJ 08003

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**

**AMAZON.COM SERVICES INC.**

 **and**             **Case No. 29-CA-280153**

**DANA JOANN MILLER, an Individual**

 **and**            **Case Nos. 29-CA-286577**
                  **29-CA-287614**
**AMAZON LABOR UNION**       **29-CA-290880**
                  **29-CA-292392**

## ORDER CONSOLIDATING CASES, CONSOLIDATED COMPLAINT
## AND NOTICE OF HEARING

 This Order Consolidating Cases, Consolidated Complaint, and Notice of Hearing is based on the following charges, each alleging that Amazon.com Services, LLC ("Respondent") has engaged in unfair labor practices affecting commerce as set forth in the National Labor Relations Act ("Act"), 29 U.S.C. § 151 et seq.: a charge filed in Case No. 29-CA-280153 by Dana Joann Miller, an individual ("Charging Party Miller"); and charges filed in Case Nos. 29-CA-286577, 29-CA-287614, 29-CA-290880 and 29-CA-292392by Amazon Labor Union ("Union"). . Based thereon and pursuant to Section 102.33 and 102.45 of the Rules and Regulations of the National Labor Relations Board ("Board") and to avoid unnecessary costs or delay,

 **IT IS ORDERED THAT** Case Nos. 29-CA-280153, 29-CA-286577, 29-CA-287614, 29-CA-290880, and 29-CA-292392, are hereby consolidated.

 This Order Consolidating Cases, Consolidated Complaint, and Notice of Hearing is issued pursuant to Section 10(b) of the Act and Section 102.15 of the Board's Rules and Regulations and alleges that Respondent has violated the Act as described below.

1.    (a)    The charge in Case No. 29-CA-280153 was filed by Charging Party Miller on July 16, 2021, and a copy was served on Respondent by U.S. mail on July 20, 2021.

    (b)    The charge in Case No. 29-CA-286577 was filed by the Union on November 19, 2021, and a copy was served on Respondent by U.S. mail and email on November 22, 2021.

    (c)    The charge in Case No. 29-CA-287614 was filed by the Union on December 13, 2021, and a copy was served on Respondent by U.S. mail and email on December 14, 2021.

    (d)    The charge in Case No. 29-CA-290880 was filed by the Union on February 17, 2022, and a copy was served on Respondent by U.S. mail and email on February 18, 2022.

    (e)    The charge in Case No. 29-CA-292392 was filed by the Union on March 16, 2022, and a copy was served on Respondent by U.S. mail and email on March 17, 2022.

    (f)    The first amended charge in Case No. 29-CA-292392 was filed by the Union on April 12, 2022, and a copy was served on Respondent by U.S. mail and email on April 14, 2022.

2.    (a)    At all material times, Respondent, a Delaware limited liability company with a Fulfillment Center (the "JFK8 Facility") located in Staten Island, New York has been engaged in providing online retail sales throughout the United States.

    (b)    During the past twelve-month period, which period is representative of its operations in general, Respondent, in conducting its business operations described above in subparagraph 2(a), derived gross revenues in excess of $500,000 and purchased and received at its JFK8 Facility goods valued in excess of $5,000 directly from suppliers located outside the State of New York.

3.    At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

4.    At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

5. At all material times, Mike Tanelli held the position of Respondent's Human Resource Business Partner and has been a supervisor within the meaning of Section 2(11) of the Act and agent of Respondent within the meaning of Section 2(13) of the Act.

6.     On the dates set forth opposite their respective names, the following individuals were agents of Respondent, acting on its behalf, within the meaning of Section 2(13) of the Act:

(a)     Currently unidentified Male Employee Relations Agent – on or about November 10, 2021;

(b)     Ron Edison – on or about November 11, 2021;

(c)     Charlotte Bowers – on or about February 16, 2022; and

(d)     Eric Warrior – on or about March 15, 2022.

7.     On various dates since about May 2021, Respondent posted and/or distributed to JFK8 Facility employees written messages, which:

(a)     threatened employees with the loss of benefits if they chose to be represented by the Union; and

(b)     threatened to withhold or reduce employees' wages.

8.     On various dates since about May 2021, Respondent distributed to its employees via text message and/or the "Amazon A to Z" web application written messages, which:

(a)     threatened employees with the loss of benefits if they chose to be represented by the Union;

(b)     threatened to withhold or reduce employees' wages by stating that signing a Union authorization card may obligate employees to pay the Union a monthly fee deducted from their paychecks.

9.     About July 9, 2021, Respondent's employee Dana Miller concertedly complained to Respondent regarding employees' wages, hours, and working conditions by posting on Respondent's

Voice of the Associates ("VOA") Board  a demand that Respondent make the Juneteenth holiday a paid holiday and asking employees to sign a petition requesting Respondent to make Juneteenth a paid holiday.

10. Since on or about a date within the 10(b) period, a more specific date presently unknown, Respondent has maintained the following rule, in relevant part:

"The orderly and efficient operation of Amazon's business requires certain restrictions on solicitation of associates and the distribution of materials or information on company property. This includes solicitation via company bulletin boards or email or through other electronic communication media… Examples of prohibited solicitation include the sale of merchandise, products, or services (except as allowed on forsale@Amazon alias), soliciting for financial contributions, memberships, subscriptions, and signatures on petitions, or distributing advertisements or other commercial materials."

11. On or about July 12, 2021, Respondent engaged in the following conduct:

(a) discriminatorily enforced its "No Solicitation" rule, described above in paragraph 10, against Dana Miller;

(b) by HR Business Partner Mike Tanelli, in the office of the General Manager at JFK8, threatened Dana Miller with discipline for posting on the VOA Board regarding Amazon paying employees for the Juneteenth holiday;

(c) revoked Dana Miller's authorization to post on the VOA Board.

12. Respondent engaged in the conduct described above in paragraph 11 because Dana Miller engaged in the conduct described above in paragraph 9, and to discourage employees from engaging in these or other concerted activities.

13. On or about the following dates, Respondent required its JFK8 Facility employees to attend mandatory meetings for the purpose of exposing employees to Respondent's statements in opposition to the Union:

(a) November 10, 2021;

(b)     November 11, 2021;

(c)     February 16, 2022; and

(d)     March 15, 2022.

14.     On or about November 10, 2021, at the JFK8 Facility, Respondent, by an Unidentified Male Employee Relations Agent, during a mandatory meeting described above in paragraph 13(a):

(a)     promised employees improved benefits to discourage employees from selecting the Union as their collective-bargaining representative; and

(b)     solicited grievances from employees and promised to remedy those grievances to discourage employees from selecting the Union as their collective-bargaining representative.

15.     On or about November 11, 2021, at the JFK8 Facility, Respondent, by Ron Edison, during a mandatory meeting described above in paragraph 13(b):

(a)     promised employees improved benefits in order to discourage employees from selecting the Union as their collective-bargaining representative;

(b)     solicited grievances from employees and promised to remedy those grievances to discourage employees from selecting the Union as their collective-bargaining representative; and

(c)     threatened to withhold or reduce employees' wages by stating that the Union would charge employees dues, fees, fines and/or assessments in exchange for their representation.

16.     On or about February 16, 2022, at the JFK8 Facility, Respondent, by Charlotte Bowers, during a mandatory meeting described above in paragraph 13(c):

(a)     threatened to withhold or reduce employees' wages; and

(b)     threatened employees with the loss of existing wages and/or benefits if they select the Union as their collective-bargaining representative.

17.     On or about March 15, 2022, at the JFK8 Facility, Respondent, by Eric Warrior, during a mandatory meeting described above in paragraph 13(d):

(a)     threatened employees with unlawful discharge if they select the Union as their collective-bargaining representative; and

(b)     threatened to withhold wage increases and/or benefits from employees if they select the Union as their collective-bargaining representative.

18.     By the conduct described above in paragraphs 7, 8, and 11 through 17, Respondent has been interfering with, restraining and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

19.     The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

20.     As part of the remedy for the unfair labor practices alleged above in paragraphs 7, 8 and 11 through 17, the General Counsel seeks an order requiring that Respondent:

(a) physically post the Board's Notice to Employees ("Notice") in all locations where Respondent typically posts notices to employees at each of its facilities in Staten Island, New York, including in all employee bathrooms and bathroom stalls, and that Respondent electronically distribute the Notice by all methods that Respondent communicates with its employees, including but not limited to email, text message, social media, Voice of Associates (VOA) board, and web applications, including the Amazon A to Z app and "JFK8 inSites."  The physical and electronic Notice shall be in English and in Spanish and any other languages deemed necessary to apprise employees of their Section 7 rights;

(b) read the Notice, in English and Spanish and any other languages deemed necessary, in the presence of a Board agent and the Charging Parties, at a meeting(s) convened by Respondent for all employees at the JFK8 Facility; and

(c) with Region 29 of the Board, schedule mandatory training session(s) for all Respondent supervisors, managers, and agents (including third-party security personnel and all outside labor or management consultants) covering the rights guaranteed to employees under Section 7 of the Act and submit an attendance list to the Regional Director within 7 days of the training session(s).

(d) hand deliver and email to each supervisor, manager and agent regularly assigned to work at any of Respondent's facilities located in Staten Island, New York the signed Notice, along with written instructions, signed by the site manager for the facility at which each supervisor, manager or agent is regularly assigned to work, directing each supervisor, manager and agent to comply with the provisions of the Notice, and provide the Regional Director with written proof of compliance.

(e) Rescind the unlawfully-applied "No Solicitation" rule described above in paragraph 10 at all Respondent facilities where those policies are in effect and provide appropriate notification to all employees at those facilities of such recission. Should Respondent wish to reinstate the policies, Respondent must include a disclaimer that Respondent will not apply the policies to Section 7 activities.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Consolidated Complaint.  The answer must be **received by this office on or before June 14, 2022 or postmarked on or before June 13, 2022.**  Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website.  To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions.  Responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the

answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Consolidated Complaint are true.

Pursuant to Section 102.22 of the Board's Rules and Regulations, any request for an extension of time to file an answer must be filed by the close of business on June 14, 2022. This request should be in writing and addressed to the Regional Director of Region 29.

## **NOTICE OF HEARING**

PLEASE TAKE NOTICE THAT on **September 19, 2022**, at 10:00 a.m., and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board. At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Consolidated Complaint. Pursuant to the Board's rules at 102.35(c), due to "compelling circumstances" created by the current Coronavirus Disease (COVID-19) pandemic and CDC guidelines on mitigating the risk of contracting

Coronavirus, the trial in this matter may be conducted remotely by videoconference using Zoom technology. *See Morrison Healthcare*, 369 NLRB No. 76 (2020).

Details regarding how to connect to the hearing will follow. The parties are urged in the meantime to consult and cooperate with the Division of Judges or the assigned Judge regarding how the Judge will conduct the hearing, including how the parties will prepare witnesses, number and offer of documents and exhibits, and whether there will be public access to the hearing. The procedures to be followed at the hearing are described in the attached Form NLRB-4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**Dated: May 31, 2022**

KATHY DREW KING
REGIONAL DIRECTOR
NATIONAL LABOR RELATIONS BOARD
REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Attachments

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**
**NOTICE**

Case Nos.  29-CA-280153; 29-CA-286577;
               29-CA-287614; 29-CA-290880;
               29-CA-292392

      The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties.  On the contrary, it is the policy of this office to encourage voluntary adjustments.  The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

      An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.  However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated.  Postponements ***will not be granted*** unless good and sufficient grounds are shown ***and*** the following requirements are met:

    (1)  The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

    (2)  Grounds must be set forth in ***detail***;

    (3)  Alternative dates for any rescheduled hearing must be given;

    (4)  The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

    (5)  Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Felipe Santos, General Manager
Amazon.com Services, Inc.
546 Gulf Avenue
Staten Island, NY 10314

Kurt G. Larkin, Esq.
Hunton Andrews Kurth LLP
951 E. Byrd Street
Suite 700
Richmond, VA 23219

Amber M. Rogers, Esq.
Hunton Andrews Kurth LLP
1445 Ross Avenue, Suite 3700
Dallas, TX 75202

Seth Goldstein, Esq.
Local 153, Office and Professional
Employees International Union, AFL-CIO
265 West 14th Street, 6th Floor
New York City, NY 10011

Amazon.Com Services LLC
576 Gulf Avenue
Staten Island, NY 10303

Dana Joann Miller
23 Prospect Avenue
Staten Island, NY 10301

Seth Lewis Goldstein, Esq.,
Senior Business Representative
Law Offices of Seth Goldstein
217 Hadleigh Drive
Cherry Hill, NJ 08003

Retu R. Singla
Julien Mirer and Singla
1 Whitehall Street
16th Floor
New York, NY 10004

Connor Spence
Amazon Labor Union
67 Radford Street
Staten Island, NY 10314

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative**. If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**. The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.    BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.    DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence**: At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits: Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence.** If a copy of any exhibit is not available when the original is received, it will be the responsibility

of the party offering such exhibit to submit the copy to the ALJ before the close of hearing.  If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**:  An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation.  Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval.  Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion.  If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:**  You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing.  Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**:  Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ.  The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.    AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations.  Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:**  If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred.  You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request.  You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:**  In due course, the ALJ will prepare and file with the Board a decision in this matter.  Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision.  The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**:  The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections.  A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**

**AMAZON.COM SERVICES, INC.**

|  |  |
|---|---|
| **and** | **Case 29-CA-280153; 29-CA-286577;** |
| **AMAZON LABOR UNION AND** | **29-CA-287614; 29-CA-290880;** |
| **DANA JOANN MILLER** | **29-CA-292392** |

**AFFIDAVIT OF SERVICE OF:**
**Complaint and Notice of Hearing (with forms NLRB-4338 and NLRB-4668 attached)**

I, the undersigned employee of the National Labor Relations Board, being duly sworn, say that on May 31, 2022, I served the above-entitled document(s) by **e-issuance mail and regular mail,** as noted below, upon the following persons, addressed to them at the following addresses:

Felipe Santos, General Manager
Amazon.com Services, Inc. 546
Gulf Avenue
Staten Island, NY 10314

Kurt G. Larkin, Esq.
Hunton Andrews Kurth LLP
951 E. Byrd Street
Suite 700
Richmond, VA 23219
klarkin@hunton.com

Amber M. Rogers, Esq. Hunton
Andrews Kurth LLP 1445 Ross
Avenue, Suite 3700 Dallas, TX
75202
arogers@hunton.com

Seth Goldstein, Esq.
Local 153, Office and Professional
Employees International Union, AFL-CIO
265 West 14th Street, 6th Floor
New York City, NY 10011
sgold352002@icloud.com

Amazon.Com Services LLC
576 Gulf Avenue
Staten Island, NY 10303

Seth Lewis Goldstein, Esq.,
Senior Business Representative
Law Offices of Seth Goldstein
217 Hadleigh Drive
Cherry Hill, NJ 08003
sgold352002@icloud.com

Dana Joann Miller
23 Prospect Avenue
Staten Island, NY 10301
danamoot@yahoo.com

Retu R. Singla
Julien Mirer and Singla
1 Whitehall Street
16th Floor
New York, NY 10004
rsingla@workingpeopleslaw.com

Connor Spence
Amazon Labor Union
67 Radford Street
Staten Island, NY 10314
connor@amazonlaborunion.org

| May 31, 2022 | Samiayh Hassan-Ametov, Designated Agent of NLRB |
| --- | --- |
| Date | Name |

/s/ *Samiayh Hassan-Ametov*

Signature

**UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 29**

| | | | |
|---|---|---|---|
| AMAZON.COM SERVICES LLC, | ) | | |
| | ) | | |
| and | ) | Case No. | 29-CA-280153 |
| | ) | | |
| DANA JOAN MILLER, an | ) | | |
| Individual, | ) | | |
| | ) | Case Nos. | 29-CA-286577 |
| and | ) | | 29-CA-287614 |
| | ) | | 29-CA-290880 |
| AMAZON LABOR UNION | ) | | 29-CA-292392 |
| | ) | | |

## <u>AMAZON.COM SERVICES LLC'S ANSWER TO CONSOLIDATED COMPLAINT</u>

Pursuant to Section 102.20 of the Rules and Regulations of the National Labor Relations Board, Respondent Amazon.com Services LLC ("Amazon" or "Respondent"), by undersigned counsel, submits this Answer to the Order Consolidating Cases, Consolidated Complaint and Notice of Hearing ("Consolidated Complaint"), filed on May 31, 2022, and denies all allegations not expressly admitted herein that it committed unfair labor practices as set forth in the National Labor Relations Act, 29 U.S.C. § 151, *et seq*. ("the Act"). To the extent that the Consolidated Complaint's introduction or any introductory numbered paragraphs with subsequent subparts contains allegations and legal conclusions, they are denied.

Amazon objects to conducting the hearing in this matter remotely by videoconference in its entirety. Conducting the hearing in its entirely via remote videoconference is inconsistent with the NLRB's Rules and Regulations. Specifically, Section 102.35(c)(2) of the NLRB's Rules and Regulations states that the minimum safeguards required to ensure due process for any remote testimony **must** include the opportunity for a party representative to be present at the remote location. Moreover, Amazon would be deprived of its due process rights pursuant to the NLRB's

own precedent if it is not permitted to be in the room with a witness testifying via videoconference. *See, e.g.*, *DH Long Point Mgmt, LLC*, 369 NLRB No. 18, slip op. at 5, fn. 9 (2019) (ALJ found GC's motion set forth "the conditions in place to protect the integrity of the testimony" and the "appropriate safeguards," including opportunity for counsel or surrogates to be present at the videoconference site). The Board expresses a strong preference for live oral testimony so that not only the judge, but also "counsels are in the best position to observe the witness." *Oncor Elec. Delivery Co., LLC*, 364 NLRB No. 58 at *8 (2016) ("Clearly, the general principle is that testimony should be live, so that the judge and counsels are in the best position to observe the witness.")

Additionally, neither Region 29, nor any Board office, is operating under a mandatory telework directive. *See* https://www.nlrb.gov/field-office-status (last visited June 1, 2022). The Charging Parties (and the Amazon's witnesses) attend work in-person, and have done so during the duration of the pandemic. Finally, the NLRB's recent Advance Notice of Proposed Rulemaking seeking public comment on the NLRB's use of virtual hearings is a concession that its current Rules and Regulations, as written, do not contemplate that the hearing in this matter can be conducted remotely by videoconference in its entirety. *See* Use of Videoconference Technology To Conduct Unfair Labor Practice and Representation Case Proceedings, 86 FR 61090 (Nov. 5, 2021).

1.  (a)  Amazon admits the allegations in paragraph 1(a) of the Consolidated Complaint.

    (b)  Amazon admits the allegations in paragraph 1(b) of the Consolidated Complaint.

    (c)  Amazon admits the allegations in paragraph 1(c) of the Consolidated Complaint.

(d)    Amazon admits the allegations in paragraph 1(d) of the Consolidated Complaint.

(e)    Amazon admits the allegations in paragraph 1(e) of the Consolidated Complaint.

(f)    Amazon admits the allegations in paragraph 1(f) of the Consolidated Complaint.

2.    (a)    Amazon admits the allegations in paragraph 2(a) of the Consolidated Complaint.

(b)    Amazon admits the allegations in paragraph 2(b) of the Consolidated Complaint.

3.    Amazon admits the allegations in paragraph 3 of the Consolidated Complaint.

4.    Amazon is without sufficient information to admit or deny the allegations in paragraph 4 of the Consolidated Complaint. Thus, Amazon denies the allegations in paragraph 4 of the Consolidated Complaint.

5.    Amazon admits the allegations in paragraph 5 of the Consolidated Complaint.

6.    (a)    Amazon is without sufficient information to admit or deny the allegations in paragraph 6(a) of the Consolidated Complaint. Thus, Amazon denies the allegations in paragraph 6(a) of the Consolidated Complaint.

(b)    Amazon admits the allegations in paragraph 6(b) of the Consolidated Complaint.

(c)    Amazon admits the allegations in paragraph 6(c) of the Consolidated Complaint.

(d)     Amazon admits the allegations in paragraph 6(d) of the Consolidated Complaint.

7.      (a)     Amazon denies the allegations in paragraph 7(a) of the Consolidated Complaint.

(b)     Amazon denies the allegations in paragraph 7(b) of the Consolidated Complaint.

8.      (a)     Amazon denies the allegations in paragraph 8(a) of the Consolidated Complaint.

(b)     Amazon denies the allegations in paragraph 8(b) of the Consolidated Complaint.

9.      Amazon denies the allegations in paragraph 9 of the Consolidated Complaint.

10.     Amazon admits the allegations in paragraph 10 of the Consolidated Complaint.

11.     (a)     Amazon denies the allegations in paragraph 11(a) of the Consolidated Complaint.

(b)     Amazon denies the allegations in paragraph 11(b) of the Consolidated Complaint.

(c)     Amazon denies the allegations in paragraph 11(c) of the Consolidated Complaint.

12.     Amazon denies the allegations in paragraph 12 of the Consolidated Complaint.

13.     (a)     Amazon denies the allegations in paragraph 13(a) of the Consolidated Complaint.

(b)     Amazon denies the allegations in paragraph 13(b) of the Consolidated Complaint.

(c) Amazon denies the allegations in paragraph 13(c) of the Consolidated Complaint.

(d) Amazon denies the allegations in paragraph 13(d) of the Consolidated Complaint.

14. (a) Amazon denies the allegations in paragraph 14(a) of the Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 14(b) of the Consolidated Complaint.

15. (a) Amazon denies the allegations in paragraph 15(a) of the Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 15(b) of the Consolidated Complaint.

(c) Amazon denies the allegations in paragraph 15(c) of the Consolidated Complaint.

16. (a) Amazon denies the allegations in paragraph 16(a) of the Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 16(b) of the Consolidated Complaint.

17. (a) Amazon denies the allegations in paragraph 17(a) of the Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 17(b) of the Consolidated Complaint.

18. Amazon denies the allegations in paragraph 18 of the Consolidated Complaint.

19.     Amazon denies the allegations in paragraph 19 of the Consolidated Complaint.

20.     Amazon denies that it committed any unfair labor practices. Amazon further denies that the General Counsel and/or the General Counsel on behalf of Dana Miller and/or the Amazon Labor Union is entitled to any relief or remedy sought in paragraph 20 and any of its subparts of the Consolidated Complaint. Amazon further denies that Dana Miller and/or the Amazon Labor Union are entitled to any relief or remedy of any kind in this action. To the extent the General Counsel asserts any factual allegations in paragraph 20 of the Consolidated Complaint, they are denied.

## AFFIRMATIVE AND OTHER DEFENSES

Without waiving or excusing the burden of proof of the General Counsel, or admitting that Amazon has any burden of proof, Amazon hereby asserts the following affirmative or other defenses (some in the alternative) on the basis of the current Consolidated Complaint:

1.     The Consolidated Complaint should be dismissed because Amazon did not take any actions in violation of the Act and has acted at all relevant times in accordance with the Act and applicable NLRB precedent.

2.     The Consolidated Complaint should be dismissed because the allegations, even if true, do not establish a violation of the Act.

3.     The Consolidated Complaint should be dismissed because Amazon has not interfered with, restrained or coerced any employee in the exercise of any rights that they have under the Act.

4.     The Consolidated Complaint should be dismissed because Amazon maintains a lawful solicitation policy.

5.     The Consolidated Complaint should be dismissed because Miller's VOA posts constituted impermissible solicitation under Amazon's lawful solicitation policy.

6.      The Consolidated Complaint should be dismissed because Amazon took no adverse action against Miller.

7.      The Consolidated Complaint should be dismissed because Amazon enforces its solicitation policy non-discriminately.

8.      The Consolidated Complaint should be dismissed because the communications distributed by Amazon to employees in May of 2021 were lawful.

9.      The Consolidated Complaint should be dismissed because Amazon's small group meetings were lawful.

10.     The Consolidated Complaint should be dismissed because the alleged statements attributed to the facilitators of the small group meetings, even if true, were lawful.

11.     The Consolidated Complaint should be dismissed because Amazon's lawful actions were consistent with its past practices.

12.     The Consolidated Complaint should be dismissed pursuant to *Jefferson Chemical Co.*, 200 N.L.R.B. 992 (1972), because the General Counsel (i) knew or should have known about the unfair labor practices alleged in the above-captioned case prior to the close of trial in *Amazon.com Services LLC*, 29-CA-277198 *et. al.*, and (ii) chose not to incorporate the charges alleged in the above-captioned case with the charges in *Amazon.com Services LLC*, 29-CA-277198 *et. al*.

13.     The relief sought should be denied as inconsistent with the Act and unwarranted under the circumstances.

14.     The Consolidated Complaint has been issued, in whole or in part, without substantial justification.

15.     The Consolidated Complaint cannot be conducted remotely by videoconference in its entirety. Pursuant to Section 102.35(c)(2) of the NLRB's Rules and Regulations, Amazon must be permitted at the remote location during testimony.

16.     The Order sought by the General Counsel is not authorized by the National Labor Relations Act.

17. Any allegations not specifically admitted in any response are denied.

18. Amazon reserves the right to assert additional defenses during the course of this action.

**WHEREFORE**, Amazon respectfully requests that upon final disposition of this Consolidated Complaint, the Administrative Law Judge and the National Labor Relations Board find that Amazon did not violate the National Labor Relations Act in any of the ways alleged in the Consolidated Complaint, that Amazon receive an award of all allowable fees and expenses incurred in this proceeding, and grant such other and further relief, at law or in equity, to which Amazon shows itself to be justly entitled.

Respectfully submitted this 14th day of June, 2022.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*/s/ Amber M. Rogers*
Kurt Larkin
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
(T): 804-788-8200
(F): 804-788-8218
(E): klarkin@HuntonAK.com

Amber Rogers
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
(T): 214-979-3000
(F): 214-880-0011
(E): arogers@HuntonAK.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document was electronically

filed with the NLRB and was served this 14th day of June, 2022 to:

Retu R. Singla
Julien Mirer and Singla
1 Whitehall Street
16th Floor
New York, NY 10004
rsingla@workingpeopleslaw.com

Seth Goldstein
Law Offices of Seth Goldstein
217 Hadleigh Avenue
Cherry Hill, NJ 08003
Sgold352002@icloud.com

**Counsel for Charging Parties**

*/s/ Amber M. Rogers*
Amber M. Rogers

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**

**AMAZON.COM SERVICES INC.**

    **and**                                **Case No.  29-CA-280153**

**DANA JOANN MILLER, an Individual**

    **and**                              **Case Nos.  29-CA-286577**
                                                    **29-CA-287614**
**AMAZON LABOR UNION**                  **29-CA-290880**
                                                    **29-CA-292392**
                                                      **29-CA-295663**

## <u>ORDER FURTHER CONSOLIDATING CASES, AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING</u>

On May 31, 2022, a Consolidated Complaint and Notice of Hearing issued in Case Nos. 29-CA-286577, 29-CA-287614, 29-CA-290880 and 29-CA-292392 alleging that Amazon.com Services, LLC ("Respondent") had engaged in unfair labor practices that violate the National Labor Relations Act ("Act"), 29 U.S.C. § 151 et seq. Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board ("Board") and to avoid unnecessary costs or delay, **IT IS ORDERED THAT** those cases are further consolidated with Case No. 29-CA-295663, filed by Amazon Labor Union ("Union"), which alleges that Respondent has engaged in further unfair labor practices within the meaning of the Act.

This Amended Consolidated Complaint and Notice of Hearing, issued pursuant to Section 10(b) of the Act and Section 102.15 of the Board's Rules and Regulations, is based on these consolidated cases and alleges that Respondent has violated the Act as described below.

1.      (a)      The charge in Case No. 29-CA-280153 was filed by Charging Party Miller on July 16, 2021, and a copy was served on Respondent by U.S. mail on July 20, 2021.

           (b)      The charge in Case No. 29-CA-286577 was filed by the Union on November 19, 2021, and a copy was served on Respondent by U.S. mail and email on November 22, 2021.

(c)     The charge in Case No. 29-CA-287614 was filed by the Union on December 13, 2021, and a copy was served on Respondent by U.S. mail and email on December 14, 2021.

(d)     The charge in Case No. 29-CA-290880 was filed by the Union on February 17, 2022, and a copy was served on Respondent by U.S. mail and email on February 18, 2022.

(e)     The charge in Case No. 29-CA-292392 was filed by the Union on March 16, 2022, and a copy was served on Respondent by U.S. mail and email on March 17, 2022.

(f)     The first amended charge in Case No. 29-CA-292392 was filed by the Union on April 12, 2022, and a copy was served on Respondent by U.S. mail and email on April 14, 2022.

(g)     The charge in Case No. 29-CA-295663 was filed by the Union on May 11, 2022, and a copy was served on Respondent by U.S. mail and email on May 12, 2022.

2.     (a)     At all material times, Respondent, a Delaware limited liability company with a fulfillment center located at 546 Gulf Avenue in Staten Island, New York (the "JFK8 Facility") and a sortation center located at 526 Gulf Avenue in Staten Island, New York (the "LDJ5 Facility") has been engaged in providing online retail sales throughout the United States.

(b)     During the past twelve-month period, which period is representative of its operations in general, Respondent, in conducting its business operations described above in subparagraph 2(a), derived gross revenues in excess of $500,000 and purchased and received at its JFK8 Facility goods valued in excess of $5,000 directly from suppliers located outside the State of New York.

3.     At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

4.     At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

5.     At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

(a)     Mike Tanelli  – Human Resource Business Partner; and

        (b)       Scott Taylor – General Manager of LDJ5 Facility

6.      On the dates set forth opposite their respective names, the following individuals were agents of Respondent, acting on its behalf, within the meaning of Section 2(13) of the Act:

        (a)       Currently unidentified Male Employee Relations Agent – on or about November 10, 2021;

        (b)       Ron Edison – on or about November 11, 2021;

        (c)       Charlotte Bowers – on or about February 16, 2022;

        (d)       Eric Warrior – on or about March 15, 2022;

        (e)       Rebecca Smith – on or about April 10, 2022; and

        (f)       Katie Lev – on or about April 18, 2022

7.      On various dates since about May 2021, Respondent posted and/or distributed to JFK8 Facility employees written messages, which:

        (a)       threatened employees with the loss of benefits if they chose to be represented by the Union; and

        (b)       threatened to withhold or reduce employees' wages.

8.      On various dates since about May 2021, Respondent distributed to its employees via text message and/or the "Amazon A to Z" web application written messages, which:

        (a)       threatened employees with the loss of benefits if they chose to be represented by the Union;

        (b)       threatened to withhold or reduce employees' wages by stating that signing a Union authorization card may obligate employees to pay the Union a monthly fee deducted from their paychecks.

9.      About July 9, 2021, Respondent's employee Dana Miller concertedly complained to Respondent regarding employees' wages, hours, and working conditions by posting on Respondent's Voice of the Associates ("VOA") Board a demand that Respondent make the Juneteenth holiday a paid holiday and asking employees to sign a petition requesting Respondent to make Juneteenth a paid holiday.

10.     Since on or about a date within the 10(b) period, a more specific date presently unknown, Respondent has maintained the following rule, in relevant part:

"The orderly and efficient operation of Amazon's business requires certain restrictions on solicitation of associates and the distribution of materials or information on company property. This includes solicitation via company bulletin boards or email or through other electronic communication media… Examples of prohibited solicitation include the sale of merchandise, products, or services (except as allowed on forsale@Amazon alias), soliciting for financial contributions, memberships, subscriptions, and signatures on petitions, or distributing advertisements or other commercial materials."

11.     On or about July 12, 2021, Respondent engaged in the following conduct:

    (a)     discriminatorily enforced its "No Solicitation" rule, described above in paragraph 10, against Dana Miller;

    (b)     by HR Business Partner Mike Tanelli, in the office of the General Manager at JFK8, threatened Dana Miller with discipline for posting on the VOA Board regarding Amazon paying employees for the Juneteenth holiday;

    (c)     revoked Dana Miller's authorization to post on the VOA Board.

12.     Respondent engaged in the conduct described above in paragraph 11 because Dana Miller engaged in the conduct described above in paragraph 9, and to discourage employees from engaging in these or other concerted activities.

13.     On or about the following dates, at the JFK8 Facility, Respondent required its employees to attend mandatory meetings for the purpose of exposing employees to Respondent's statements in opposition to the Union:

    (a)     November 10, 2021;

    (b)     November 11, 2021;

    (c)     February 16, 2022; and

    (d)     March 15, 2022.

14.     On or about the following dates, at the LDJ5 Facility, Respondent required its employees to attend mandatory meetings for the purpose of exposing employees to Respondent's statements in opposition to the Union:

    (a)     April 10, 2022;

    (b)     April 18, 2022; and

    (c)     April 19, 2022.

15.     On or about November 10, 2021, at the JFK8 Facility, Respondent, by an Unidentified Male Employee Relations Agent, during a mandatory meeting described above in paragraph 13(a):

(a)     promised employees improved benefits to discourage employees from selecting the Union as their collective-bargaining representative; and

(b)     solicited grievances from employees and promised to remedy those grievances to discourage employees from selecting the Union as their collective-bargaining representative.

16.     On or about November 11, 2021, at the JFK8 Facility, Respondent, by Ron Edison, during a mandatory meeting described above in paragraph 13(b):

(a)     promised employees improved benefits in order to discourage employees from selecting the Union as their collective-bargaining representative;

(b)     solicited grievances from employees and promised to remedy those grievances to discourage employees from selecting the Union as their collective-bargaining representative; and

(c)     threatened to withhold or reduce employees' wages if employees supported the Union.

17.     On or about February 16, 2022, at the JFK8 Facility, Respondent, by Charlotte Bowers, during a mandatory meeting described above in paragraph 13(c):

(a)     threatened to withhold or reduce employees' wages if they chose to be represented by the Union; and

(b)     threatened employees with the loss of existing wages and/or benefits if they chose to be represented by the Union.

18.     On or about March 15, 2022, at the JFK8 Facility, Respondent, by Eric Warrior, during a mandatory meeting described above in paragraph 13(d):

(a)     threatened employees with unlawful discharge if they chose to be represented by the Union; and

(b)     threatened to withhold wage increases and/or benefits from employees if they chose to be represented by the Union.

18. On or about April 10, 2022, at the LDJ5 Facility, Respondent, by Rebecca Smith, during a mandatory meeting described above in paragraph 14(a), threatened to withhold improvements to employees' wages and/or working conditions if they chose the Union as their collective-bargaining representative.

19. On or about April 18, 2022, at the LDJ5 Facility, Respondent, by Katie Lev, during a mandatory meeting described above in paragraph 14(b):

      (a) threatened to withhold or reduce employees' wages if they chose to be represented by the Union; and

      (b) threatened to withhold improvements to employees' wages and/or working conditions if they chose to be represented by the Union.

20. On or about April 19, 2022, at the LDJ5 Facility, Respondent, by Scott Taylor, during a mandatory meeting described above in paragraph 14(c), threatened employees with the loss of benefits if they chose to be represented by the Union.

21. By the conduct described above in paragraphs 7, 8, and 11 through 20, Respondent has been interfering with, restraining and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

22. The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

23. As part of the remedy for the unfair labor practices alleged above in paragraphs 7, 8, and 11 through 20, the General Counsel seeks an order requiring that Respondent:

      (a) physically post the Board's Notice to Employees ("Notice") in all locations where Respondent typically posts notices to employees at each of its facilities in Staten Island, New York, including in all employee bathrooms and bathroom stalls, and that Respondent electronically distribute the Notice by all methods that Respondent communicates with its employees, including but not limited to email, text message, social media, Voice of Associates (VOA) board, and web applications, including the Amazon A to Z app and "JFK8 inSites." The physical and electronic Notice shall be in English and in Spanish and any other languages deemed necessary to apprise employees of their Section 7 rights;

(b) provide a duly-appointed Board agent access to enter each of Respondent's Staten Island, New York facilities for a period of sixty (60) days, at reasonable times and in a manner not to unduly interfere with the Respondent's operations, for the limited purpose of determining whether the Respondent is in compliance with the notice posting and distribution requirements.

(c) read the Notice, in English and Spanish and any other languages deemed necessary, in the presence of a Board agent and the Charging Parties, at a meeting(s) convened by Respondent for all employees at the JFK8 Facility; and

(d) with Region 29 of the Board, schedule mandatory training session(s) for all Respondent supervisors, managers, and agents (including third-party security personnel and all outside labor or management consultants) covering the rights guaranteed to employees under Section 7 of the Act and submit an attendance list to the Regional Director within 7 days of the training session(s).

(e) hand deliver and email to each supervisor, manager and agent regularly assigned to work at any of Respondent's facilities located in Staten Island, New York the signed Notice, along with written instructions, signed by the site manager for the facility at which each supervisor, manager or agent is regularly assigned to work, directing each supervisor, manager and agent to comply with the provisions of the Notice, and provide the Regional Director with written proof of compliance.

(f) Rescind the unlawfully-applied "No Solicitation" rule described above in paragraph 10 at all Respondent facilities where those policies are in effect and provide appropriate written and electronic notification to all employees at those facilities of such recission. Should Respondent wish to reinstate the policies, Respondent must include a disclaimer that Respondent will not apply the policies to Section 7 activities.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Consolidated Complaint.  The answer must be **received by this office on or before**

**August 25, 2022 or postmarked on or before August 24, 2022.**  Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website.  To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions. Responsibility for the receipt and usability of the answer rests exclusively upon the sender.  Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21.  If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Consolidated Complaint are true.

Pursuant to Section 102.22 of the Board's Rules and Regulations, any request for an extension of time to file an answer must be filed by the close of business on August 25, 2022.  This request should be in writing and addressed to the Regional Director of Region 29.

## NOTICE OF HEARING

PLEASE TAKE NOTICE THAT on **September 19, 2022**, at 10:00 a.m., and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor

Relations Board.  At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Consolidated Complaint.  Pursuant to the Board's rules at 102.35(c), due to "compelling circumstances" created by the current Coronavirus Disease (COVID-19) pandemic and CDC guidelines on mitigating the risk of contracting Coronavirus, thetrial in this matter may be conducted remotely by videoconference using Zoom technology. *See Morrison Healthcare*, 369 NLRB No. 76 (2020).

Details regarding how to connect to the hearing will follow. The parties are urged in the meantime to consult and cooperate with the Division of Judges or the assigned Judge regarding how the Judge will conduct the hearing, including how the parties will prepare witnesses, number and offer of documents andexhibits, and whether there will be public access to the hearing. The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**Dated:  August 11, 2022**

KATHY DREW-KING
REGIONAL DIRECTOR
NATIONAL LABOR RELATIONS BOARD
REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Attachments

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**

**AMAZON.COM SERVICES, INC.**

    **and**

**DANA JOANN MILLER, an Individual**

    **and**

**AMAZON LABOR UNION**

**Cases 29-CA-280153; 29-CA-286577; 29-CA-287614; 29-CA-290880; 29-CA-292392**

**AFFIDAVIT OF SERVICE OF: ORDER FURTHER CONSOLIDATING CASES, AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING (with forms NLRB-4338 and NLRB-4668 attached)**

I, the undersigned employee of the National Labor Relations Board, being duly sworn, say that on August 11, 2022, I served the above-entitled document(s) by **e-issuance** or **regular mail,** as noted below, upon the following persons, addressed to them at the following addresses:

Felipe Santos, General Manager
Amazon.com Services, Inc.
546 Gulf Avenue
Staten Island, NY 10314

klarkin@hunton.com
Kurt G. Larkin, Esq.
Hunton Andrews Kurth Llp
951 E. Byrd Street
Suite 700
Richmond, VA 23219

arogers@hunton.com
Amber M. Rogers, Esq.
Hunton Andrews Kurth LLP
1445 Ross Avenue, Suite 3700
Dallas, TX 75202

sgold352002@icloud.com
Seth Goldstein, Esq.
Local 153, Office and Professional
Employees International Union, AFL-CIO
265 West 14th Street, 6th Floor
New York City, NY 10011

Amazon.Com Services LLC
576 Gulf Avenue
Staten Island, NY 10303

danamoot@yahoo.com
Dana Joann Miller
23 Prospect Avenue
Staten Island, NY 10301

connor@amazonlaborunion.org
Connor Spence
Amazon Labor Union
67 Radford Street
Staten Island, NY 10314

rsingla@workingpeopleslaw.com
Retu Singla, Esq., Counsel
Julien, Mirer and Singla, PLLC
1 Whitehall Street
16th Floor
New York, NY 10008

sgold352002@icloud.com
Seth Lewis Goldstein, Esq., Attorney
Law offices of Seth Goldstein
217 Hadleigh Drive
Cherry Hill, NJ 08003

| August 11, 2022 | | FREDA DEVONSHIRE, Designated Agent of NLRB |
|---|---|---|
| Date | | Name |
| | | /S/ FREDA DEVONSHIRE |
| | | Signature |

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**
**NOTICE**

**Cases   29-CA-280153,   29-CA-286577;**
**29-CA-287614; 29-CA-290880; 29-CA-292392**

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties.  On the contrary, it is the policy of this office to encourage voluntary adjustments.  The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.  However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated.  Postponements ***will not be granted*** unless good and sufficient grounds are shown ***and*** the following requirements are met:

(1)  The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2)  Grounds must be set forth in ***detail***;

(3)  Alternative dates for any rescheduled hearing must be given;

(4)  The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5)  Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Felipe Santos, General Manager
Amazon.com Services, Inc.
546 Gulf Avenue
Staten Island, NY 10314

klarkin@hunton.com
Kurt G. Larkin, Esq.
Hunton Andrews Kurth Llp
951 E. Byrd Street
Suite 700
Richmond, VA 23219

arogers@hunton.com
Amber M. Rogers, Esq.
Hunton Andrews Kurth LLP
1445 Ross Avenue, Suite 3700
Dallas, TX 75202

sgold352002@icloud.com
Seth Goldstein, Esq.
Local 153, Office and Professional
Employees International Union, AFL-CIO
265 West 14th Street, 6th Floor
New York City, NY 10011

Amazon.Com Services LLC
576 Gulf Avenue
Staten Island, NY 10303

danamoot@yahoo.com
Dana Joann Miller
23 Prospect Avenue
Staten Island, NY 10301

connor@amazonlaborunion.org
Connor Spence
Amazon Labor Union
67 Radford Street
Staten Island, NY 10314

rsingla@workingpeopleslaw.com
Retu Singla, Esq., Counsel
Julien, Mirer and Singla, PLLC
1 Whitehall Street
16th Floor
New York, NY 10008

Amazon Labor Union
67 Radford Avenue
Staten Island, NY 10314

sgold352002@icloud.com
Seth Lewis Goldstein, Esq., Attorney
Law offices of Seth Goldstein
217 Hadleigh Drive
Cherry Hill, NJ 08003

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative**. If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**. The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.    BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:**  One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.    DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence**:  At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits:  Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence.**  If a copy of any exhibit is not available when the original is received, it will be the responsibility

of the party offering such exhibit to submit the copy to the ALJ before the close of hearing. If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**: An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation. Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval. Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion. If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:** You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing. Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**: Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ. The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.    AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations. Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:** If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred. You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request. You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:** In due course, the ALJ will prepare and file with the Board a decision in this matter. Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision. The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**: The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections. A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**

**AMAZON.COM SERVICES, INC.**

    **and**

**DANA JOANN MILLER, an Individual**

    **and**

**AMAZON LABOR UNION**

**Cases 29-CA-280153; 29-CA-286577; 29-CA-287614; 29-CA-290880; 29-CA-292392**

**AFFIDAVIT OF SERVICE OF: ORDER FURTHER CONSOLIDATING CASES, AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING (with forms NLRB-4338 and NLRB-4668 attached)**

I, the undersigned employee of the National Labor Relations Board, being duly sworn, say that on August 11, 2022, I served the above-entitled document(s) by **e-issuance** or **regular mail,** as noted below, upon the following persons, addressed to them at the following addresses:

Felipe Santos, General Manager
Amazon.com Services, Inc.
546 Gulf Avenue
Staten Island, NY 10314

klarkin@hunton.com
Kurt G. Larkin, Esq.
Hunton Andrews Kurth Llp
951 E. Byrd Street
Suite 700
Richmond, VA 23219

arogers@hunton.com
Amber M. Rogers, Esq.
Hunton Andrews Kurth LLP
1445 Ross Avenue, Suite 3700
Dallas, TX 75202

sgold352002@icloud.com
Seth Goldstein, Esq.
Local 153, Office and Professional
Employees International Union, AFL-CIO
265 West 14th Street, 6th Floor
New York City, NY 10011

Amazon.Com Services LLC
576 Gulf Avenue
Staten Island, NY 10303

danamoot@yahoo.com
Dana Joann Miller
23 Prospect Avenue
Staten Island, NY 10301

connor@amazonlaborunion.org
Connor Spence
Amazon Labor Union
67 Radford Street
Staten Island, NY 10314

rsingla@workingpeopleslaw.com
Retu Singla, Esq., Counsel
Julien, Mirer and Singla, PLLC
1 Whitehall Street
16th Floor
New York, NY 10008

sgold352002@icloud.com
Seth Lewis Goldstein, Esq., Attorney
Law offices of Seth Goldstein
217 Hadleigh Drive
Cherry Hill, NJ 08003

August 11, 2022

FREDA DEVONSHIRE, Designated
Agent of NLRB

_____
Date

_____
Name

/S/ FREDA DEVONSHIRE
_____
Signature

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**
**NOTICE**

**Cases   29-CA-280153,   29-CA-286577;
29-CA-287614; 29-CA-290880; 29-CA-292392**

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties.  On the contrary, it is the policy of this office to encourage voluntary adjustments.  The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.  However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated.  Postponements ***will not be granted*** unless good and sufficient grounds are shown ***and*** the following requirements are met:

(1)  The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2)  Grounds must be set forth in ***detail***;

(3)  Alternative dates for any rescheduled hearing must be given;

(4)  The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5)  Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Felipe Santos, General Manager
Amazon.com Services, Inc.
546 Gulf Avenue
Staten Island, NY 10314

klarkin@hunton.com
Kurt G. Larkin, Esq.
Hunton Andrews Kurth Llp
951 E. Byrd Street
Suite 700
Richmond, VA 23219

arogers@hunton.com
Amber M. Rogers, Esq.
Hunton Andrews Kurth LLP
1445 Ross Avenue, Suite 3700
Dallas, TX 75202

sgold352002@icloud.com
Seth Goldstein, Esq.
Local 153, Office and Professional
Employees International Union, AFL-CIO
265 West 14th Street, 6th Floor
New York City, NY 10011

Amazon.Com Services LLC
576 Gulf Avenue
Staten Island, NY 10303

danamoot@yahoo.com
Dana Joann Miller
23 Prospect Avenue
Staten Island, NY 10301

connor@amazonlaborunion.org
Connor Spence
Amazon Labor Union
67 Radford Street
Staten Island, NY 10314

rsingla@workingpeopleslaw.com
Retu Singla, Esq., Counsel
Julien, Mirer and Singla, PLLC
1 Whitehall Street
16th Floor
New York, NY 10008

Amazon Labor Union
67 Radford Avenue
Staten Island, NY 10314

sgold352002@icloud.com
Seth Lewis Goldstein, Esq., Attorney
Law offices of Seth Goldstein
217 Hadleigh Drive
Cherry Hill, NJ 08003

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative**. If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**. The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.    BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.    DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence**: At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits: Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence.** If a copy of any exhibit is not available when the original is received, it will be the responsibility

of the party offering such exhibit to submit the copy to the ALJ before the close of hearing. If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**: An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation. Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval. Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion. If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:** You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing. Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**: Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ. The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.    AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations. Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:** If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred. You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request. You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:** In due course, the ALJ will prepare and file with the Board a decision in this matter. Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision. The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**: The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections. A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**

| | | | |
|---|---|---|---|
| AMAZON.COM SERVICES LLC, | ) | | |
| | ) | | |
| and | ) | Case No. | 29-CA-280153 |
| | ) | | |
| DANA JOAN MILLER, an | ) | | |
| Individual, | ) | | |
| | ) | Case Nos. | 29-CA-286577 |
| and | ) | | 29-CA-287614 |
| | ) | | 29-CA-290880 |
| AMAZON LABOR UNION | ) | | 29-CA-292392 |
| | ) | | 29-CA-295663 |

## <u>AMAZON.COM SERVICES LLC'S ANSWER TO</u> <u>AMENDED CONSOLIDATED COMPLAINT</u>

Pursuant to Section 102.20 of the Rules and Regulations of the National Labor Relations Board, Respondent Amazon.com Services LLC ("Amazon"), by undersigned counsel, submits this Answer to the Order Further Consolidating Cases, Amended Consolidated Complaint and Notice of Hearing ("Consolidated Complaint"), filed on August 11, 2022, and denies all allegations not expressly admitted herein and expressly denies that it committed unfair labor practices as set forth in the National Labor Relations Act, 29 U.S.C. § 151, *et seq*. ("the Act"). To the extent that the Amended Consolidated Complaint's introduction or any introductory numbered paragraphs with subsequent subparts contains allegations and legal conclusions, they are denied.

Amazon objects to conducting the hearing in this matter remotely by videoconference in its entirety. Conducting the hearing in its entirety via remote videoconference is inconsistent with the NLRB's Rules and Regulations. Specifically, Section 102.35(c)(2) of the NLRB's Rules and Regulations states that the minimum safeguards required to ensure due process for any remote testimony **must** include the opportunity for a party representative to be present at the remote location. Moreover, Amazon would be deprived of its due process rights pursuant to the NLRB's

own precedent if it is not permitted to be in the room with a witness testifying via videoconference. *See, e.g.*, *DH Long Point Mgmt, LLC*, 369 NLRB No. 18, slip op. at 5, fn. 9 (2019) (ALJ found GC's motion set forth "the conditions in place to protect the integrity of the testimony" and the "appropriate safeguards," including opportunity for counsel or surrogates to be present at the videoconference site). The Board expresses a strong preference for live oral testimony so that not only the judge but also "counsels are in the best position to observe the witness." *Oncor Elec. Delivery Co.*, *LLC*, 364 NLRB No. 58 at *8 (2016) ("Clearly, the general principle is that testimony should be live, so that the judge and counsels are in the best position to observe the witness.")

Additionally, neither Region 29 nor any Board office is operating under a mandatory telework directive. *See* https://www.nlrb.gov/field-office-status (last accessed August 17, 2022). Amazon's witnesses attend work in-person, and have done so during the duration of the pandemic. Finally, the NLRB's recent Advance Notice of Proposed Rulemaking seeking public comment on the NLRB's use of virtual hearings is a concession that its current Rules and Regulations, as written, do not contemplate that the hearing in this matter can be conducted remotely by videoconference in its entirety. *See* Use of Videoconference Technology To Conduct Unfair Labor Practice and Representation Case Proceedings, 86 FR 61090 (Nov. 5, 2021).

1.  (a)  Amazon admits the allegations in paragraph 1(a) of the Amended Consolidated Complaint.

(b)  Amazon admits the allegations in paragraph 1(b) of the Amended Consolidated Complaint.

(c)  Amazon admits the allegations in paragraph 1(c) of the Amended Consolidated Complaint.

(d)  Amazon admits the allegations in paragraph 1(d) of the Amended Consolidated

Complaint.

(e) Amazon admits the allegations in paragraph 1(e) of the Amended Consolidated Complaint.

(f) Amazon admits the allegations in paragraph 1(f) of the Amended Consolidated Complaint.

(g) Amazon admits the allegations in paragraph 1(g) of the Amended Consolidated Complaint.

2. (a) Amazon admits the allegations in paragraph 2(a) of the Amended Consolidated Complaint.

(b) Amazon admits the allegations in paragraph 2(b) of the Amended Consolidated Complaint.

3. Amazon admits the allegations in paragraph 3 of the Amended Consolidated Complaint.

4. Amazon is without sufficient information to admit or deny the allegations in paragraph 4 of the Amended Consolidated Complaint. Thus, Amazon denies the allegations in paragraph 4 of the Amended Consolidated Complaint.

5. (a) Amazon admits that Mike Tanelli was employed by Amazon as a Human Resources Business Partner II from February 21, 2021 to April 9, 2022, and has been employed as a Senior Human Resources Business Partner from April 10, 2022 to present.

(b) Amazon admits the Scott Taylor has been employed as the Site Leader for LDJ5 from June 27, 2021 to present.

6. (a) Amazon is without sufficient information to admit or deny the allegations in paragraph 6(a) of the Amended Consolidated Complaint. Thus, Amazon denies the allegations in

paragraph 6(a) of the Amended Consolidated Complaint.

        (b)  Amazon admits the allegations in paragraph 6(b) of the Amended Consolidated Complaint.

        (c)  Amazon admits the allegations in paragraph 6(c) of the Amended Consolidated Complaint.

        (d)  Amazon admits the allegations in paragraph 6(d) of the Amended Consolidated Complaint.

        (e) Amazon admits the allegations in paragraph 6(e) of the Amended Consolidated Complaint.

        (f) Amazon admits the allegations in paragraph 6(f) of the Amended Consolidated Complaint.

7.     (a)  Amazon denies the allegations in paragraph 7(a) of the Amended Consolidated Complaint.

        (b)  Amazon denies the allegations in paragraph 7(b) of the Amended Consolidated Complaint.

8.     (a)  Amazon denies the allegations in paragraph 8(a) of the Amended Consolidated Complaint.

        (b)  Amazon denies the allegations in paragraph 8(b) of the Amended Consolidated Complaint.

9.     Amazon denies the allegations in paragraph 9 of the Amended Consolidated Complaint.

10.     Amazon admits the allegations in paragraph 10 of the Amended Consolidated Complaint.

11.	(a) Amazon denies the allegations in paragraph 11(a) of the Amended Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 11(b) of the Amended Consolidated Complaint.

(c) Amazon denies the allegations in paragraph 11(c) of the Amended Consolidated Complaint.

12.	Amazon denies the allegations in paragraph 12 of the Amended Consolidated Complaint.

13.	(a) Amazon denies the allegations in paragraph 13(a) of the Amended Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 13(b) of the Amended Consolidated Complaint.

(c) Amazon denies the allegations in paragraph 13(c) of the Amended Consolidated Complaint.

(d) Amazon denies the allegations in paragraph 13(d) of the Amended Consolidated Complaint.

14.	(a) Amazon denies the allegations in paragraph 14(a) of the Amended Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 14(b) of the Amended Consolidated Complaint.

(c) Amazon denies the allegations in paragraph 14(c) of the Amended Consolidated Complaint.

15.	(a) Amazon denies the allegations in paragraph 15(a) of the Amended Consolidated

Complaint.

(b) Amazon denies the allegations in paragraph 15(b) of the Amended Consolidated Complaint.

16.    (a)  Amazon denies the allegations in paragraph 16(a) of the Amended Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 16(b) of the Amended Consolidated Complaint.

(c)  Amazon denies the allegations in paragraph 16(c) of the Amended Consolidated Complaint.

17.    (a)  Amazon denies the allegations in paragraph 17(a) of the Amended Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 17(b) of the Amended Consolidated Complaint.

18.    (a)  Amazon denies the allegations in paragraph 18(a) of the Amended Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 17(b) of the Amended Consolidated Complaint.

18.    Amazon denies the allegations in paragraph 18 of the Amended Consolidated Complaint.[1]

19.    Amazon denies the allegations in paragraph 19(a) of the Amended Consolidated Complaint.

---

[1] The Amended Consolidated Complaint uses "Paragraph 18" twice, causing the numbering to be non-sequential.  For sake of clarity, Amazon recopies the numbered paragraph as they appear in the Amended Consolidated Complaint.

(b) Amazon denies the allegations in paragraph 19(b) of the Amended Consolidated Complaint.

20.     Amazon denies the allegations in paragraph 20 of the Amended Consolidated Complaint.

21.     Amazon denies the allegations in paragraph 21 of the Amended Consolidated Complaint.

22.     Amazon denies the allegations in Paragraph 22 of the Amended Consolidated Complaint.

23.     Amazon denies that it committed any unfair labor practices alleged in the Amended Consolidated Complaint. Amazon further denies that the General Counsel and/or the General Counsel on behalf of Dana Miller and/or the Amazon Labor Union is entitled to any relief or remedies sought in paragraph 22 and any of its subparts of the Amended Consolidated Complaint. Amazon further denies that Dana Miller and/or the Amazon Labor Union are entitled to any relief or remedy of any kind in this action. To the extent the General Counsel asserts any factual allegations in paragraph 22 of the Amended Consolidated Complaint, they are denied.

## AFFIRMATIVE AND OTHER DEFENSES

Without waiving or excusing the burden of proof of the General Counsel, or admitting that Amazon has any burden of proof, Amazon hereby asserts the following affirmative or other defenses (some in the alternative) on the basis of the current Amended Consolidated Complaint:

1.     The Amended Consolidated Complaint should be dismissed because Amazon did not take any actions in violation of the Act and has acted at all relevant times in accordance with the Act and applicable NLRB precedent.

2.     The Amended Consolidated Complaint should be dismissed because the allegations, even if true, do not establish a violation of the Act.

3.     The Amended Consolidated Complaint should be dismissed because Amazon has not interfered with, restrained or coerced any employee in the exercise of any rights that they have under the Act.

4.     The Amended Consolidated Complaint should be dismissed because all of the conduct alleged in the Amended Consolidated Complaint, including all of the statements that Amazon made to its employees concerning the subject matter at issue in the Amended Consolidated Complaint, is and was protected by the First Amendment of the United States Constitution.

5.     The Amended Consolidated Complaint should be dismissed because Amazon maintains a lawful solicitation policy.

6.     The Amended Consolidated Complaint should be dismissed because Miller's VOA posts constituted impermissible solicitation under Amazon's lawful solicitation policy.

7.     The Amended Consolidated Complaint should be dismissed because Amazon took no adverse action against Miller.

8.     The Amended Consolidated Complaint should be dismissed because Amazon enforces its lawful solicitation policy non-discriminatorily.

9.     The Amended Consolidated Complaint should be dismissed because the communications distributed by Amazon to employees in May of 2021 were lawful.

10.     The Amended Consolidated Complaint should be dismissed because all of Amazon's small group meetings were lawful.

11.     The Amended Consolidated Complaint should be dismissed because the alleged statements attributed to the facilitators of the small group meetings, even if true, were lawful.

12.    The Amended Consolidated Complaint should be dismissed because Amazon's lawful actions were consistent with its past practices.

13.    The Amended Consolidated Complaint should be dismissed pursuant to *Jefferson Chemical Co.*, 200 N.L.R.B. 992 (1972), because the General Counsel (i) knew or should have known about the unfair labor practices alleged in the above-captioned case prior to the close of trial in *Amazon.com Services LLC*, 29-CA-277198 *et. al.*, and (ii) chose not to incorporate the charges alleged in the above-captioned case with the charges in *Amazon.com Services LLC*, 29-CA-277198 *et. al.*

14.    The relief sought should be denied as inconsistent with the Act and unwarranted under the circumstances.

15.    The Amended Consolidated Complaint should be dismissed in whole or in part because allowing recovery or other relief would be unconstitutional in violation of due process rights set forth in the United States Constitution. Amazon has acted in full compliance with the Act and has relied on the current interpretation of the Act under existing Board precedent.  Any future or subsequent change in the law cannot and should not be applied retroactively with respect to any of the allegations set forth in the Amended Consolidated Complaint or as a basis to order any of the relief requested therein.

16.    The Amended Consolidated Complaint has been issued, in whole or in part, without substantial justification.

17.    The Amended Consolidated Complaint cannot be conducted remotely by videoconference in its entirety. Pursuant to Section 102.35(c)(2) of the NLRB's Rules and Regulations, Amazon must be permitted at the remote location during testimony.

18.    The Order sought by the General Counsel is not authorized by the Act.

19.     Any allegations not specifically admitted in any response are denied.

20.     The Amended Consolidated Complaint should be dismissed because Amazon's communications with its employees are protected by Section 8(c) of the Act.

21.     The Amended Consolidated Complaint should be dismissed because it improperly seeks to regulate Amazon's speech based on its content.

22.     The Amended Consolidated Complaint should be dismissed because the manner in which it seeks to regulate Amazon's speech is a prior restraint and not the least restrictive means to do so.

23.     The Amended Consolidated Complaint should be dismissed because violates Amazon's property rights under the U.S. Constitution

24.     The Amended Consolidated Complaint should be dismissed because it improperly seeks to compel certain speech from Amazon or, alternatively, to improperly restrain speech from Amazon.

25.     Amazon reserves the right to assert additional defenses during the course of this action.

**WHEREFORE**, Amazon respectfully requests that upon final disposition of this Amended Consolidated Complaint, the Administrative Law Judge and the National Labor Relations Board find that Amazon did not violate the National Labor Relations Act in any of the ways alleged in the Amended Consolidated Complaint, that Amazon receive an award of all allowable fees and expenses incurred in this proceeding, and grant such other and further relief, at law or in equity, to which Amazon shows itself to be justly entitled.

Respectfully submitted this 25th day of August, 2022.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*/s/ Kurtis A. Powell*
Juan C. Enjamio
333 SE 2nd Ave., Suite 2400
Miami, FL 33131
(T): (305) 810-1613
(E): jenjamio@huntonAK.com

Kurtis A. Powell
600 Peachtree Street, N.E., Suite 4100
Atlanta, GA 30308
(P): (404) 602-9071
(E): kpowell@huntonAK.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document was electronically

filed with the NLRB and was served this 25th day of August, 2022 to:

Retu R. Singla
Julien Mirer and Singla
1 Whitehall Street
16th Floor
New York, NY 10004
rsingla@workingpeopleslaw.com

Seth Goldstein
Law Offices of Seth Goldstein
217 Hadleigh Avenue
Cherry Hill, NJ 08003
Sgold352002@icloud.com

**Counsel for Charging Parties**

*/s/ Kurtis A. Powell*
Kurtis A. Powell

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**DIVISION OF JUDGES**
**NEW YORK BRANCH**

**AMAZON.COM SERVICES INC.**

      **and**                     **Case No. 29-CA-280153**

**DANA JOANN MILLER, an Individual**

      **and**                    **Case Nos.**   **29-CA-286577**
                                          **29-CA-287614**
**AMAZON LABOR UNION**                        **29-CA-290880**
                                          **29-CA-292392**
                                          **29-CA-295663**

<u>**ORDER ON HEARING**</u>

      The amended complaint in this case provides that the record will open on September 19, 2022 and the hearing may be conducted remotely by videoconference using Zoom technology. During a conference call, the Respondent requested an in-person hearing while the other parties requested a Zoom hearing. For the reasons discussed below, I am ordering that the hearing be conducted remotely by Zoom technology.

      The Centers for Disease Control and Prevention (CDC) has identified the COVID-19 community level in Kings County New York as high. This level triggers a masking requirement under the NLRB field office safety protocols and the masking of witnesses could impact credibility determinations. Further, I am not in a strong position to determine the safety or risk associated with an in-person hearing. I am not a medical expert or an expert in building ventilation. I do not know the age or underlying medical conditions of participants. Ultimately, I do not know the odds that an in-person hearing will result in a participant contracting COVID or that such an illness will have serious consequences (e.g., long COVID, hospitalization, or death).

      On the other side of the equation, I find the utility of an in-person hearing and difficulties associated with a virtual hearing less compelling. We have been holding Zoom hearings for over 2 years. Certainly, we have had problems in virtual hearings with audio, connectivity, and electronic documents. However, such problems have not proved insurmountable or particularly difficult to resolve. I have not found credibility determinations more difficult to make in virtual hearings than in-person hearings. Further, in-person hearings are not without inconveniences during as issues of masking, vaccination, testing, air ventilation/filtration, hygiene, and physical distancing must be accounted for. In this case, for example, the General Counsel has represented that Region 29 does not have a hearing room large enough to allow for social distancing.

      Ultimately, in my opinion, experience has taught us that virtual technology is a satisfactory method of holding hearings during an ongoing pandemic (particularly when the CDC has designated the community COVID level as high) and I will order the same.

The virtual hearing will be conducted in accordance with the following instructions.

## Zoom Invitations

Before the trial, I will send the parties a Zoom invitation on Microsoft Outlook. The parties may share the invitation with other participants. Participants will be placed in an online waiting room until they are admitted to the meeting.

## Responsibilities of Counsel, Witnesses, Interpreters, Waiting Room, and Breakout Rooms

Counsel will be responsible for ensuring that their witnesses have access to equipment, internet, and training necessary to fully participate in the Zoom video hearing. Although it is possible to access a Zoom meeting by a cellular connection, wi-fi generally provides a more stable connection. Accordingly, counsel and their witnesses should use a wi-fi connection to access the meeting. If counsel anticipates that their witnesses may have problems with equipment and/or an internet connection, the other parties and I should be notified ahead of time.

Subject to a potential sequestration order, the parties are not restricted from inviting individuals of their choosing to access the Zoom hearing. If a sequestration order is in place, counsel will be responsible for administering it.

Only one attorney for each party shall be unmuted at any given time in order to avoid extraneous sound and audio feedback (which occurs when two devices are unmuted and accessing the meeting from the same space). Further, in addition to being muted, the video feed of individuals other than myself, counsel, and the witness should be stopped. The Zoom video settings can be set to "hide non-video participants" (the video box of people who have stopped their video feed will be removed from the gallery view) in order to avoid confusion caused by having too many video participant boxes on the monitor.

Witnesses may not use virtual backgrounds. Other participants may use virtual backgrounds.

Witnesses shall not have any surreptitious communication with anyone or viewnon-exhibit materials while testifying. I will instruct each witness to that effect when I administer the oath.

The other parties and I must be notified in advance of the hearing if interpreters will be used. Interpreters should be prepared to provide consecutive translations as it is unlikely that simultaneous translation will be possible on the Zoom platform.

At my discretion, witnesses may be temporarily removed from the primary hearing room and returned to the waiting room if it is necessary to discuss an issueoutside the presence of the witness.

If counsel desire to consult with each other or speak with clients (other than a client on the witness stand), they may ask to be placed in a private breakout room. Conversations in a breakout room cannot be heard by people outside of it.

**Documents**

A SharePoint page will probably be made available for uploading documents into file folders and accessing those documents.  The parties may create and use electronic folders as they deem necessary.  Please note that I will not access or review documents before they are marked for use as exhibits.  If counsel would like additional people to have access to the SharePoint page, the names and email addresses of those individuals should be emailed to me.  Please be advised that some individuals have had difficulty gaining access to case SharePoint pages.  Therefore, the parties should be prepared to exchange documents by email or some other form of electronic transmission if necessary.

As it has been our experience that video hearings can be cumbersome with regard to the use and exchange of documents, it will be important for the parties to prepare and exchange documents in advance.  Accordingly, I strongly encourage the parties to exchange subpoenaed records and exhibits no later than September 16, 2022.  Exhibits need not be produced in advance if the introducing party has any reason to withhold them.  The purpose of this direction is to facilitate an efficient hearing and not to exclude documents because they have not been produced in advance of the hearing.

The Zoom "Share Screen" function will likely be used as the primary method of presenting exhibits to witnesses.  In doing so, counsel may find it helpful to give the witness control of the shared screen to scroll through the exhibit.  If counsel prefers a different method of presenting exhibits other than share screen, arrangements may be made to do so.

**Jencks Statements**

Jencks statements such as affidavits will not be produced by the General Counsel until a witness has been called by the General Counsel and testifies on directexamination.  Upon the conclusion of the hearing, Respondent's counsel **MUST** deleteall Jencks statements from their computers and represent that they have done so.

**Advance Notice of Difficulties**

I strongly encourage parties to be proactive in notifying each other and me of any technical difficulties or other issues they may encounter while preparing for trial.  In particular, Zoom participants sometimes struggle with connectivity and audio.  To establish a stable connection, it may be helpful to remain close to the router (perhaps tethering the computer to the router by wire), close unused applications, and/or limit the number of devices that are using the wireless network.  It will also be useful to test your computer speaker and microphone shortly before the trial.

It is so ORDERED.

Dated:      August 25, 2022
New York, New York

S/ *Benjamin W. Green*

_____
Benjamin W. Green
Administrative Law Judge

Served on counsel of the parties by email.

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**DIVISION OF JUDGES**
**NEW YORK BRANCH OFFICE**

**AMAZON.COM SERVICES LLC**

    **and**                                  **Case No.  29-CA-280153**

**DANA JOANN MILLER, an Individual**

    **and**                                  **Case Nos.  29-CA-286577**
                                                             **29-CA-287614**
**AMAZON LABOR UNION**                             **29-CA-290880**
                                                               **29-CA-292392**
                                                             **29-CA-295663**

<div align="center">

**ORDER**

</div>

The Associate Chief Administrative Law Judge has designated the above-captioned case to me for hearing, now scheduled to begin on September 19, 2022.

On September 6, 2022, the Respondent filed a petition to partially revoke General Counsel subpoena duces tecum B-1-1GUT50P (subpoena).[1]  The subpoena is dated August 25, 2022 and was enclosed with a letter to Respondent's counsel dated August 26, 2022.

Among other objections, the Respondent contends that the petition would require unduly burdensome and unreasonable searches of electronically stored information (ESI).  In addressing issues and resolving disputes involving the production of ESI, the Board has generally approved the use of *The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*.  See *UPMC*, 366 NLRB No. 185 at p. 1, fn. 3 (2018).  The Sedona Principles incorporate concepts of proportionality and emphasize good faith cooperation between the parties at an early stage in the litigation.

The Respondent and General Counsel are **ORDERED** to confer in good faith for the purpose of attempting to eliminate or narrow the scope of their subpoena disputes.  With regard to ESI, the parties may discuss the following topics: (i) custodians of ESI; (ii) identification of data sources, including sources not reasonably accessible; (iii) search terms and other methods of reducing volume; (iv) methods used by Respondent to identify responsive ESI; (v) types and production of metadata; and (vi) form for the production of information.

---

[1] Please be advised that subpoena requests are considered valid and in effect unless and until they are revoked.  Further, revocation should not be presumed.  Thus, a subpoenaed party should take all reasonable and appropriate steps to search for, identify, and prepare to disclose responsive non-privileged documents (and prepare a privilege log for privileged documents) while the petition to revoke is pending.

It is further **ORDERED** that any opposition to the Respondent's petition to partially revoke the subpoena shall be filed no later than **September 12, 2022.**

Dated, New York, New York, September 7, 2022.

S/ *Benjamin W. Green*
Benjamin W. Green
Administrative Law Judge

Served upon the parties by email.

# GENERAL COUNSEL
# EXHIBIT GC-2

**(All MP3, MP4, M4A and Excel Exhibits are Located on a Master USB (when Mailed) and E-Filed Individually)**

EXHIBIT NO. GC 2 RECEIVED X REJECTED _____

CASE NO 29-CA-280153 CASE NAME Amazon.com Services

NO OF PAGES 2 DATE: 9/21/22 REPORTER: L. Abbott

# GENERAL COUNSEL
# EXHIBIT GC-3

**(All MP3, MP4, M4A and Excel Exhibits are Located on a Master USB (when Mailed) and E-Filed Individually)**

EXHIBIT NO. GC-3 _____ RECEIVED ___x___ REJECTED _____

CASE NO 29-CA-280153 ET/AL _____ CASE NAME Amazon.Com Svs, LLC _____

NO OF PAGES 2 _____ DATE: 09-20-2022 _____ REPORTER: Barrington Moxie _____

# GENERAL COUNSEL
# EXHIBIT GC-4

**(All MP3, MP4, M4A and Excel Exhibits are Located on
a Master USB (when Mailed) and E-Filed Individually)**

EXHIBIT NO.___GC-4_____ RECEIVED ___x_____ REJECTED _____

CASE NO ___29-CA-280153 ET/AL_____ CASE NAME ___Amazon.Com Svs, LLC_____

NO OF PAGES ___2_____ DATE: ___09-20-2022_____ REPORTER: ___Barrington Moxie_____

# GENERAL COUNSEL EXHIBIT GC-5

**(All MP3, MP4, M4A and Excel Exhibits are Located on a Master USB (when Mailed) and E-Filed Individually)**

EXHIBIT NO. GC-5 RECEIVED x REJECTED _____

CASE NO 29-CA-280153 ET/AL CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 2 DATE: 09-20-2022 REPORTER: Barrington Moxie

# GENERAL COUNSEL
# EXHIBIT GC-6

**(All MP3, MP4, M4A and Excel Exhibits are Located on a Master USB (when Mailed) and E-Filed Individually)**

EXHIBIT NO. GC-6 _____ RECEIVED ___x____ REJECTED _____

CASE NO 29-CA-280153 ET/AL _____ CASE NAME Amazon.Com Svs, LLC _____

NO OF PAGES 2 _____ DATE: 09-20-2022 _____ REPORTER: Barrington Moxie _____

# GENERAL COUNSEL
# EXHIBIT GC-7

**(All MP3, MP4, M4A and Excel Exhibits are Located on a Master USB (when Mailed) and E-Filed Individually)**

EXHIBIT NO. GC 7 _____ RECEIVED X _____ REJECTED _____

CASE NO 29-CA-280153 _____ CASE NAME Amazon.com Services _____

NO OF PAGES 2 _____ DATE: 9/21/22 _____ REPORTER: L. Abbott _____

# EXHIBIT EXCLUDED

| | |
|---|---|
| Leading Case Number: | 29-CA-280153 |
| Leading Case Name: | Amazon.com Services LLC |
| Exhibit Number: | GC-8a |
| Description: | |

**The above-referenced exhibit is not included herein for the following reason:**

| | |
|---|---|
| 1. Exhibit Withdrawn: | |
| 2. Exhibit Rejected: | |
| 3. Other (Explain): | Not Offered |

| | |
|---|---|
| Exhibit Retained By: | Counsel |

Barrington Moxie, Court Reporter

# GENERAL COUNSEL EXHIBIT GC-8b

**(All MP3, MP4, M4A and Excel Exhibits are Located on a Master USB (when Mailed) and E-Filed Individually)**

601

EXHIBIT NO. GC-8b _____ RECEIVED ___x___ REJECTED _____

CASE NO 29-CA-280153 ET/AL _____ CASE NAME Amazon.Com Svs, LLC _____

NO OF PAGES 2 _____ DATE: 09-20-2022 _____ REPORTER: Barrington Moxie _____



# CONSTITUTION AND BY-LAWS

**2021**

GC-9                              x
EXHIBIT NO._____ RECEIVED _____ REJECTED _____

29-CA-280153 ET/AL              Amazon.Com Svs, LLC
CASE NO _____ CASE NAME _____

28              09-19-2022        Barrington Moxie
NO OF PAGES _____ DATE: _____ REPORTER: _____

**INDEX**

**Article 1 - Name & Nature**
Section 1.1 - Name
Section 1.2 - Operation
Section 1.3 - Headquarters
Section 1.4 - Jurisdiction
Section 1.5 - Objectives
Section 1.6 - Charter

**Article 2 - Membership**
Section 2.1 - Eligibility for Membership
Section 2.2 - Duties of Membership
Section 2.3 - Eligibility to Hold Office

**Article 3 - The Executive Board**
Section 3.1 - Executive Officers
Section 3.2 - Duties of President
Section 3.3 - Duties of Vice President of Organizing
Section 3.4 - Duties of Vice President of Membership
Section 3.5 - Duties of Treasurer
Section 3.6 - Duties of Secretary

**Article 4 - Workers' Committees**
Section 4.1 - The Workers' Committee and its Duties
Section 4.2 - Stewards
Section 4.3 - Committee Chairperson

**Article 5 - Nomination of Officers**
Section 5.1 - Nomination Procedure

**Article 6 - Elections**
Section 6.1 - Election Procedure
Section 6.2 - Challenging Conduct or Results

**Article 7 - Meetings**
Section 7.1 - General Membership Meetings
Section 7.2 - Worker's Committee Meetings

## Article 8 - Financial Aspects

Section 8.1 - Dues
Section 8.2 - Handling and Distribution
Section 8.3 - Compensation
Section 8.4 - Dissolution

## Article 9 - Charges and Grievances

Section 9.1 - Basis for Charges
Section 9.2 - Freedom of Deliberation and Assembly

## Article 10 - Trials and Appeals

Section 10.1 - Fair Treatment
Section 10.2 - Filing of Charges
Section 10.3 - Trial Board
Section 10.4 - Trial Procedure
Section 10.5 - Decisions and Penalties
Section 10.6 - Exhaustion of Remedies

## Article 11 - General Provisions

Section 11.1 - Recordkeeping
Section 11.2 - Election Influence
Section 11.3 - Political Contributions
Section 11.4 - Political Endorsements
Section 11.5 - Liability

## Article 12 - Amendments

Section 12.1 - Amendment Procedure

## Article 13 - Savings Clause

## Leadership Provision Antecedent to Initial Representation Election

# Article 1 - Name & Nature

## Section 1.1 - Name

This organization shall be known as the **AMAZON LABOR UNION**.

## Section 1.2 - Operation

This organization shall not operate for profit.

## Section 1.3 - Headquarters

The principal office of this Union shall be determined by the Executive Board. The executive board may change the location of the principal office. The Executive Board may also establish and maintain other offices at other locations.

## Section 1.4 - Jurisdiction

The jurisdiction of this Union shall be all employees of Amazon.com, Inc., it's subsidiaries, affiliates, or otherwise any employee whose circumstances and well-being are substantially connected to or affected by the business practices of Amazon.com, Inc.

## Section 1.5 - Objectives

(a). To improve the wages, benefits, working conditions, terms of employment, job security, and general welfare of its members and other workers.

(b). To organize unorganized workers.

(c).To be the mechanism by which our communities reclaim the stability and prosperity that has been extracted by exploitative business practices.

(d). To encourage all AMAZON LABOR UNION members without regard to race, creed, color, national origin, sex, gender identity, sexual orientation, or ancestry to share equally in the full benefits of union organization.

(e). To form an organization whose pillars are democracy, solidarity, and mutual aid.

(f). To provide our members the tools and the courage to live their dreams and achieve their real potential.

(g). To protect this Union from any and all corrupt influences and from undermining efforts of those who are opposed to the basic principles of our democracy and free and democratic unionism.

(h). To safeguard the democratic character of the labor movement.

(i). To advance the interests of the membership of the Union in the improvement of general economic and social conditions through engaging in legislative, political, education, civil, welfare, and other appropriate activities.

**Section 1.6 - Charter**

This Union is established and shall exist pursuant to this Constitution, and the Union shall at all times be subject to the Constitution, rules, regulations, policies, practices, lawful orders and decisions of said Union.

## Article 2 - Membership

### Section 2.1 - Eligibility for Membership

(a). Eligibility for membership in the Union shall be restricted to employees covered by a collective negotiated agreement between this Union and their employer.

(b). Terminated employees who are involved in investigations relating to wrongful termination maintain eligibility at the discretion of the Executive Board.

(c). Staff who are hired by the President for the purposes of facilitating union business shall be considered members of the union and pay dues accordingly.

(d). Laid off or furloughed workers maintain their eligibility and will see their dues obligations waived for the duration of their time out of work.

### Section 2.2 - Duties of Membership

(a). Members must abide by the Union Constitution, and the laws, rules, regulations, policies, lawful orders and decisions of the Union.

(b). Members shall refrain from conduct that would interfere with the performance of the Union's lawful and contractual obligations.

(c). Members shall comply with and honor the provisions of contracts entered into between the Union and the Employer.

(d). Members shall observe proper decorum in attending and participating in meetings and functions of the Union in accordance with such reasonable rules established by the Union and generally accepted by parliamentary rules of procedure pertaining to the conduct of meetings and functions.

(e). No member shall use vulgar or profane language towards any officer or member of the Union or make any slanderous statements or accusations toward any member or officer of the Union.

(f). No member shall engage in discrimination against a member or any other person having business with the union based on race, color, religion or creed,

national origin, age, disability, marital status, sex (including sexual harassment), sexual preference or orientation, gender identification or citizenship status.

(g). No member shall slander the Union or any officer or member thereof; attempt to cause secession by this Union; join an organization or Union antagonistic to the ideals of the Union; circulate false reports or gross and willful misrepresentations about the honesty of officers of Union; advocate or commit or incite an act or series of acts which would injure the best interests of the Union.

(h). Members shall not abuse or destroy Union property.

**Section 2.3 - Eligibility to Hold Office**

(a). A candidate for office must be a member in good standing.

(b). A candidate for office must have at least ninety (90) days of aggregate experience in a role or job function that is currently covered by a collective bargaining agreement.

(c).To be eligible for office, a member shall be required to attend at least two (2) meetings preceding the nomination meeting.

## Article 3 - The Executive Board

### Section 3.1 - Executive Officers

(a). The officers of this Union shall consist of a President, Vice President of Organizing, Vice President of Membership, Treasurer, and Secretary.

(b). The officers of this Union, along with the elected chairpersons of each workers' committee, shall constitute an Executive Board.

(c). All elected officers shall serve for a term of two (2) years.

(d). All vacancies of elective officers including but not limited to, resignation, removal, expulsion, suspension or for any other reason shall be filled by appointment by the President subject to the eligibility requirements of Article 2 and such appointed officers shall serve in the office for the balance of the unexpired term.

(e). The annual salary of Executive Board members shall be no more than the average salary of the membership.

### Section 3.2 - Duties of President

The President shall function as the chief executive officer of the Union and shall employ and direct all Union staff except as otherwise provided in this Constitution. The President shall establish the salary, expenses, allowances, and/or other remuneration of such employees and shall submit a report to the Executive Committee detailing the compensation of each employee. The Executive Committee shall ratify the compensation structure with such revisions as it sees fit. A copy of the report shall then be provided to Workers' Committee membership.

The President of the Union shall:

(a) Preside at all regular and special meetings of the Union and its Executive Board.

(b) Preside at all regular meetings of the Workers' Committees or allow the Vice President of Membership to act in their stead.

(c) Preserve order and enforce the Constitution and By-Laws of the Union.

(d) Be an ex-officio member of all committees, but shall have no vote at the meetings at which they preside.

(e) Have the authority to appoint special committees and direct union resources therewith, subject to approval by the Executive Board.

(f) Sign checks jointly with the Treasurer.

(g) Be at all times responsible to the Executive Board.

The laws of this Union, as contained in these By-Laws, shall be interpreted by the President.  Their decisions thereon shall be binding upon all individual members subject to appeal to the Union's Executive Board within seven (7) days of a determination or decision by the President.

## Section 3.3 - Duties of Vice President of Organizing

The Vice-President of Organizing shall assist the President, and in their absence or when called upon, shall preside at general or special meetings.  The Vice-President of Organizing shall succeed to the office of President if it becomes vacant.

The Vice-President of Organizing shall assist the President in all Union activities relating to organizing the unorganized, training and directing staff organizers, and mobilization of union membership towards service to the community.

## Section 3.4 - Duties of Vice President of Membership

The Vice-President of Membership shall assist the President, and in their absence or when called upon, shall preside at Workers' Committee meetings.

The Vice-President of Membership shall assist the President in all Union activities relating to engagement of rank-and-file membership, communication and interaction with organized workers, and the development of a culture of solidarity.

## Section 3.5 - Duties of Treasurer

The Treasurer shall be in charge of and preserve all monies, properties, securities, and other evidence of investment, books, documents, files and effects of the Union which shall at all times be subject to the inspection of the President and Executive Board and consistent with applicable law.  The Treasurer shall deposit the funds of the Union in banks and institutions insured by a United States Government Agency in the name of this Union.  The Treasurer may invest and expend the funds of the Union in accordance with these By-Laws and pursuant to the direction or resolution of the general membership or the Executive Board.  The Treasurer shall be required to provide for an audit of all books, accounts, records, and financial transactions of the Union on an annual basis by an accredited and independent auditing firm.

**Section 3.6 - Duties of Secretary**

The Secretary shall be responsible for all correspondence to and from the Union.  The Secretary will be responsible for all recordkeeping and required filings of the Union.

The Secretary shall be responsible for the keeping of minutes and attendance from any Union meeting of the rank-and-file membership, Workers' Committees, or Executive Board.

# Article 4 - Workers' Committees

## Section 4.1 - The Workers' Committee and its Duties

Each distinct building or workforce shall form from its rank-and-file membership a committee of stewards known as the Workers' Committee. Membership on this committee should strive to represent workers from every department and shift cohort.

Duties of this committee shall include:

(a). Discussing and voting on collective bargaining policy and strategy.

(b). Developing contract demands.

(c). Voting to bring forward a strike referendum.

(d). Voting to revise any aspect of union spending.

(e). Electing a Committee Chairperson to preside over meetings and serve on the Executive Board.

(f). Electing a Negotiation Subcommittee.

A quorum of the worker's committee necessitates a majority of active Stewards.

## Section 4.2 - Stewards

(a). Stewards shall be Union members in good standing elected by the membership. Stewards may be removed by the Executive board for cause, otherwise department coworkers may petition for their removal.

(b). Petitions for removal of a Steward must demonstrate signatures from fifteen (15) percent of the workers in the department that Steward represents, or five (5) workers from that department, whichever is greater. In all other cases, a majority petition is sufficient. The petition will be provided to the Secretary, at which point the Executive Board will vote upon the question of removal.

(c). Stewards shall not be considered officers of the Union.  Under no circumstances shall a Steward be permitted to receive or collect any moneys for or on behalf of the Union.

(d). Stewards are empowered to investigate and present grievances in accordance with the provisions of their collective bargaining agreements.

(e). The Stewards shall be empowered to transmit messages and information which shall originate with, and are authorized by the President of the Union, provided such messages and information, (i) have been reduced to writing, or (ii) if not reduced to writing, are of routine nature and do not involve work stoppages, slow downs, refusal to handle goods, or any other interference with the employer's business.

(f). The procedure for nominating and electing stewards shall be determined and facilitated by the Executive Board in accordance with the particular nuances of each department and workplace.

## Section 4.3 - Committee Chairperson

(a). A Committee Chairperson shall be elected by the Workers' Committee through a plurality vote.

(b). The Committee Chairperson is elected for a term of one (1) year.

(c). A candidate for committee chairperson must be an appointed Steward in good standing, and have at least ninety (90) days of experience in the unit their Workers' Committee represents.

(d). It is the duty of the Committee Chairperson to call to order and preside over any meetings of the Workers' Committee.

(e). The Committee Chairperson shall act as a member of the Executive Board.

# Article 5 - Nomination of Officers

## Section 5.1 - Nomination Procedure

(a). Nominations for the elective offices of the Union shall be held at a general membership meeting during the month of February every two (2) years.

(b). Not less than thirty (30) days prior to the membership meeting at which nominations will be made, notice thereof shall be posted in every work location, if applicable, and be communicated via normal digital channels. Such notice shall list the offices and positions to be filled and the time and place of such meeting. The notice may also contain the date, time and place at which elections will be held if there are any contests. The notice shall also state that, if there are no contests, a formal election will not be necessary, and announcements of the officers elected by acclamation will be posted on bulletin boards on the premises of employers where union members are employed as well as by normal digital channels.

(c). At the nomination meeting, a Judge of Elections shall be appointed by the President. The Judge of Elections shall not be candidate for office. The Judge of Elections shall possess all of the qualifications required of a candidate for office.

(d). A member in good standing who meets the requirements of eligibility hereinbefore provided, may be nominated for office in the Union.

(e). Nominations must be put forth by a member in good standing, and seconded by another member in good standing.

(f). The member must be present to accept their nomination.

(g). No member shall be eligible to be a candidate for office if the member is not nominated for said office.

(h). Before nominations are closed, the Judge of Elections shall determine if any candidate is not eligible for office as hereinbefore provided.

(i). The Judge of Elections shall prepare the official ballot, if there is a contest and an election is necessary. In the preparation of the official ballot, the Judge of Elections shall consult the Vice President of Membership and obtain from them

the list of candidates for each office or elective position; the official ballot shall then be prepared pursuant to said data, with the names of the candidates listed in the order in which they were nominated.

(j). In the event there is no contest for any office and the uncontested candidate for such office is found to be properly qualified, the Judge of Elections shall certify that there is no need for a secret ballot election with regard to said office and the nominee shall be declared duly elected.

(k). Any member who is notified in writing that they is ineligible to be a candidate for office by the Judges of Election, may, within seven (7) days after receipt of the notice, appeal the ruling to the Executive Board who shall decide such appeal within fourteen (14) days after receipt thereof.  The decision of the Executive Board shall be made within sixty (60) days after receipt of the appeal, and the decision of the Executive Board shall be final.

# Article 6 - Elections

## Section 6.1 - Election Procedure

(a). The election of officers shall take place at a meeting of the organization following the month when nominations were made, but at least thirty (30) days following the date of the nomination meeting.

(b). Elections shall be by secret ballot among the members entitled to vote and the balloting shall be held at such places and at such times as may be determined by the Executive Board. No absentee ballots shall be permitted. Members will not be permitted to write in the names of persons who were not nominated.

(c). Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots.  Observers must be members of this Union.

(d). The votes cast for each candidate shall be counted separately and published separately to the membership.  Publication may be in writing or orally, at or prior to, the regular membership meeting following the date of election.  The ballots and other records pertaining to the election shall be preserved for at least one year.

(e). In the event that there is no contest for any office, then the Secretary shall declare that such nominee has been duly elected to office and no election shall be required as to that office.

## Section 6.2 - Challenging Conduct or Results

Any member who was entitled to vote may challenge the conduct or result of an election by writing a letter within seven (7) days of the election to the incumbent Secretary to such effect.  Such letter must contain at least the following:  (i)  A statement to the effect that they was eligible to vote in the election; (ii) A statement showing whether they did or did not vote in the election; (iii)  A statement indicating whether their challenge is directed to the conduct of the election or the results, or both; (iv) A statement showing whether their challenge is directed to all persons elected or to less than all: (v)  If less than all, a specification of the ones subject to their challenge;

(vi) a full statement of all facts upon which they relies in support of their challenge;  (vii) A full statement of how the facts upon which they relies may have affected the outcome of the election; and (viii)  A full statement of the relief which they seeks.

Upon receipt of the letter referred to above, the incumbent Secretary shall promptly send a copy thereof to the incumbent President of the Union and request that the President, or a person or persons designated by the President, investigate the facts, hear the statements and contentions of all interested members, and render a decision in the matter.  Any decision so rendered shall be final and binding upon this Union and all of its members.

## Article 7 - Meetings

### Section 7.1 - General Membership Meetings

General membership meetings shall be held at least four (4) times per year at a time and place determined by the President, but in no event less often than every four (4) months.

Special meetings of the members may be called by the President, and shall be called by the President upon written request of the majority of the Executive Board or upon written petition signed by ten (10) percent of the entire membership.  The written petition for a special meeting shall state the purpose for such meeting.  All members shall be notified of a special membership meeting by notice posted on regular places for Union notices on the premises where the Union members are employed and by normal digital means, at least five (5) days before the meeting.  The notice shall state the date, time, place and purpose for the special meeting.  No business shall be transacted at a special meeting other than that which is stated in the call of the meeting.

### Section 7.2 - Worker's Committee Meetings

Workers' Committee meetings should be held at least once per month at a time and place determined by the President. Fewer or more frequent meetings may be held at the discretion of the Executive Board.

## Article 8 - Financial Aspects

**Section 8.1 - Dues**

Dues amounts and payment frequency will be democratically voted upon by the membership.

(a). In the period preceding the initial election, dues will amount to five (5) dollars every two (2) weeks.

(b). Within sixty (60) days following a successful election, the President will appoint a committee to reassess the dues structure and propose a new amount and frequency to be voted upon by the membership.

**Section 8.2 - Handling and Distribution**

The Treasurer shall be the chief financial officer of the Union and shall receive and collect all monies now due the union, which monies shall be paid out only on the approval of the President.  All checks shall be co-signed by the Treasurer and President.

**Section 8.3 - Compensation**

Whenever a member of this organization loses time from work when engaged in activities on behalf of the Union, and suffers a loss of income as a result thereof, the member may be compensated for their loss and expenses, provided, however, the member must have been duly authorized to so serve and act and informed that they would be reimbursed in an amount which the Executive Board shall, in its sole discretion, agree upon.  Provided, further, neither compensation nor expenses shall be paid for attending membership meetings.

**Section 8.4 - Dissolution**

Upon dissolution of the Union, the Treasurer shall arrange for the timely payment of any and all outstanding bills and debt obligations due and owing by the Union.  Should any funds remain in the treasury after the satisfaction of all outstanding bills and debt obligations, all such remaining assets shall be donated to a bona fide charity chosen by the members.

## Article 9 - Charges and Grievances

### Section 9.1 - Basis for Charges

The basis for charges against officers and members of this organization for which they shall be required to stand trial as hereinafter provided shall consist of one or more of the following:

(a). Violation of any specific provisions of this Constitution and By-Laws or the failure to perform any of the duties specified hereunder.

(b). Violation of the responsibilities of members of this organization as an institution.

(c). Violation of the oath of office or membership.

(d). Gross disloyalty or conduct unbecoming a member.

(e). Gross negligence, inefficiency, nonfeasance, misfeasance, or malfeasance, which shall or threaten to hinder or impair the interests of the Union.

(f).  Misappropriation of union funds or property.

(g). Scandalous, libelous, profane or vulgar abuse of a fellow member or officer by written or oral communication.

(h). Abuse of a fellow member or officer in a union meeting place.

(i). Engaging in activity which tends to bring the Union into disrepute.

(j). Engaging in conduct or promoting activity which would interfere with the Union's enforcement of its lawful contractual obligations.

(k). Engaging in conduct which would interfere with the proper conduct of business of the Union.

(l). Failing to observe proper decorum in attending and participating in union meetings or functions in violation of reasonable rules established by the union

and generally accepted parliamentary rules of procedure pertaining to the conduct of meetings and functions.

(m). Committing or inspiring an act or series of acts which would injure the best interests of the Union.

## Section 9.2 - Freedom of Deliberation and Assembly

It is not intended that members be precluded from participating in any deliberations in an orderly manner, nor to meet and assemble freely with other members and to express any views, arguments or opinions; provided that such activities do not violate the responsibility of a member to the Union and the member's conduct does not interfere with the performance by the union of its legal and contractual obligations.

# Article 10 - Trials and Appeals

## Section 10.1 - Fair Treatment

Every member of this Union shall be entitled to fair, equal and impartial treatment in the application of its rules and laws and in the interpretation and application of its rules relating to offenses, trials and appeals. The fundamental principles of due process, notice, hearing and judgment shall be observed, without, however, requiring any technical formality such as is followed in courts of law and administrative bodies.

The provisions of this Article being guides for justice and fair play, to be administered by laboring men and women who are not trained in the law, deviations from these procedures which do not substantially affect substantive rights of the members shall not suffice to invalidate any of the charges, trials or appeals.

## Section 10.2 - Filing of Charges

When an officer or member in good standing prefers written charges against any other officer or member of the Union, the charges shall be in duplicate and be filed with the Secretary of the Union. The charges shall be signed by the person preferring the charges and shall specify the provisions of the constitution to be relied upon or the agreement or rules alleged to have been violated or must otherwise set forth the specific violations or wrongs charged and the approximate date on which it is alleged to have occurred.

The Secretary shall promptly notify the members of the Executive Board that charges have been filed and, after consultation with them, shall promptly set a date for a hearing and trial on said charges. Immediately thereafter, a copy of the charges shall be mailed to the accused, at their last known address. A written notice of the time and place where the hearing and trial will take place before the Trial Board, shall be mailed to the accused and to the charging party, not less than seven (7) days nor more than twenty (20) days before the date of said hearing and trial.

## Section 10.3 - Trial Board

The members of the Executive Board of the Union shall constitute the Trial Board; except that neither the charging party nor the accused nor any member directly interested or involved in the charges may sit as a member of the Trial Board.

(a). In such cases, the President of the Union shall appoint a substitute or substitutes from the members in good standing.  If the President is to be disqualified, then the Vice-President shall appoint a substitute or substitutes and if they are also to be disqualified, then the substitute shall be appointed by the remaining trial Board members.

(b). Where the charging party or the accused makes a request for a delay, the Trial Board may grant a postponement, for good cause shown.

## Section 10.4 - Trial Procedure

The hearing and trial shall be conducted in an orderly, fair and impartial manner and should assure the full presentation of all the facts to the Trial Board.

(a).  The burden of proof shall be on the charging party.  If the charging party fails to appear, the charges shall be dismissed.  If the accused fails to appear, the Trial Board shall proceed with the hearing and receive all the facts and evidence available.

(b).  The charging party shall first present whatever evidence they possess to substantiate their charges.  The accused shall have the right to be present throughout the trial and to cross-examine the charging party and any of their witnesses upon completion of their testimony.

(c).  After the evidence in support of the charges has been received, the accused shall present their defense.  The charging party shall have the right to cross-examine the accused and any of their witnesses upon completion of their testimony.

(e). The Trial Board shall record minutes of its meetings and proceedings and these minutes, together with any documents submitted, shall constitute the official record of the Trial Board.

Upon conclusion of the hearings, the Trial Board shall consider all of the evidence and arguments submitted and proceed to make its findings and decision by majority vote.  It shall prepare a report of said findings and decision, which shall be signed by all members of the Trial Board.  The Secretary  shall forthwith mail a copy of said report to the charging party and the accused at their last known addresses.

**Section 10.5 - Decisions and Penalties**

The decisions and penalties imposed upon any member or officer found guilty of any of the charges as to which they have been tried, may consist of a reprimand, fine, suspension, removal from office, suspension, or expulsion from membership, or order to do or perform or refrain from doing or performing specific acts, or any combination thereof.

**Section 10.6 - Exhaustion of Remedies**

No member shall bring or cause to be brought in any court, whether in law or equity, any action against the Union or their officers, representatives or employees, in any matter involving an issue arising out of or related to their membership, which is remediable within the framework of the Union Constitution without having first exhausted all of the remedies available under the aforesaid Constitution.  Any member who violates this reasonable obligation, may, if found guilty after notice and hearing in accordance with the provisions of the Constitution, be suspended or expelled.

## Article 11 - General Provisions

### Section 11.1 - Recordkeeping
The Secretary shall keep all union records other than election records for a period of not less than five (5) years.

### Section 11.2 - Election Influence
No monies of the organization shall be used by the Union for the purpose of influencing or assisting the election in the Union of any union officer.

### Section 11.3 - Political Contributions
No monies of the organization shall be used by the Union to further any political figure, including campaign contributions or donations to political parties, organizations, or funds.

### Section 11.4 - Political Endorsements
No political endorsements may be made in the name of the Union as a whole. Individual officers or members may privately endorse political candidates at their own discretion. Section 11.3 No loans shall be made from the Union treasury to any business enterprise.

### Section 11.5 - Liability
The opinion of any attorney, accountant, or other professional consultant or expert hired pursuant to this Constitution shall be full and complete authority and protection with respect to any action taken, suffered or omitted by the Executive Board or any member thereof in good faith and in accordance with such opinion.  Except for actions taken in bad faith, or constituting willful misconduct, the Executive Board, shall not be liable to any person or organization, for any action or omission by the Executive Board or any member in effectuation of the purposes and objects of this Constitution, and the interests of the members of this organization.

# Article 12 - Amendments

## Section 12.1 - Amendment Procedure

The within Constitution and By-Laws may be amended by the following procedure:

1. Any proposed amendment must be in writing and signed by any twenty (20) members in good standing and be submitted to the Secretary no later than sixty (60) days prior to the general or special meeting at which the proposed amendment will be acted upon.

2. The Secretary shall forthwith refer the proposed amendments to the members of the Executive Board of the Union.

3. The Executive Board shall discuss the proposed amendments at its next special or regular Board meeting.

4. The Executive Board shall take a vote on the proposed amendment and determine whether or not a majority are in favor thereof.

5. The Executive Board shall notify the Secretary of its vote either in favor of or against the proposed amendment and may accompany the result of their vote with a memorandum in support of the vote of acceptance or rejection.

6. The Secretary shall provide notices to be posted on all bulletin boards and places for union notices on the premises where union members are employed, notifying members of the proposed amendments, the vote of acceptance or rejection by the Executive Board and copies of the Executive Board's memorandum in support of its vote, together with notice of time and place of the general or special meeting at which the proposed amendments will be acted upon by the members in general or sectional meetings.

7. If the Executive Board votes in favor of adoption of the proposed amendments as provided for in (4) above, it shall require only a majority of the total vote cast by the members for the adoption of said proposed amendment. If the Executive Board votes against adoption of the proposed amendment, it shall require two-thirds (2/3) of the total votes cast by the members for adoption of the proposed amendment.

### Article 13 - Savings Clause

If any provision of the within Constitution and By-Laws is held to be invalid by operation of law or by any competent authority or tribunal, the remainder of the Constitution or the application of such provision to persons or circumstances other than those as to which it has been held illegal or invalid shall not be affected thereby.

If any provisions of this Constitution shall be found or declared to be illegal, invalid or inoperative, by any competent authority of the legislative, executive, judicial or administrative branch of a Federal, State or provincial government, the Executive Board is empowered to substitute during the period of its invalidity a provision which will meet the objections to its invalidity and which will be consistent with the intent and purpose of the invalid provision.

**Leadership Provision Antecedent to Initial Representation Election**

In the period immediately preceding the Certification of Results of the first Representation Election to be conducted by the NLRB concerning the AMAZON LABOR UNION, the following provision applies:

Interim leadership shall be elected by the general membership. Executive Board positions shall be accessible to candidates, and any member elected to these positions shall hold office until the conclusion of the first Representation Election.

## KNOW THE FACTS:

# WHAT IS THE ALU AND IS IT WORTH JOINING?

Trying to make sense of the Amazon Labor Union (ALU), what it is, and what it wants? Here are some facts:

**01**

**Is Amazon Labor Union (ALU) part of Amazon?**

No. The ALU is not part of Amazon. ALU has inexperienced leadership and zero experience negotiating for workers.

**02**

**Is ALU an official union?**

It hasn't filed any paperwork with the Department of Labor.

**03**

**What does signing a card mean?**

Union authorization cards are legally binding and authorize the union to act as your exclusive representative. You may be asked to physically sign a card or click a link that asks for your signature online. This means you give up the right to speak for yourself. Signing a union authorization card may also obligate you to pay the union a monthly fee.

*Whether you choose to speak with someone or not is entirely your choice.*
*You have the right to refuse to sign anything you are not comfortable signing.*

**amazon**

EXHIBIT NO.___GC-10_____ RECEIVED ___x____ REJECTED _____

CASE NO ___29-CA-280153 ET/AL____ CASE NAME ___Amazon.Com Svs, LLC____

NO OF PAGES ___2_____ DATE: ___09-19-2022___ REPORTER: ___Barrington Moxie____



**Protect Your Signature:** You do not have to share your personal information with anyone, **EVEN IF THEY APPEAR TO BE WEARING AN AMAZON VEST** — especially if it makes you feel uncomfortable. You also do not have to sign a union authorization card just because someone wearing an Amazon vest asks.

**Speak For Yourself:** Union authorization cards are **legally binding** and authorize the union to act as your exclusive representative. This means you give up the right to speak for yourself.

**Don't Sign Away Your Choices:** Signing a union authorization card may also obligate you to pay the union a monthly fee out of your paycheck.

**Protect Your Signature and Your Privacy.** Ask questions, do the research, and don't sign anything without reading it closely.

Your Amazon leaders want to continue working directly with you. Your voice and this work we're doing together matters to us.

Working together is best for our winning team. Please let your manager or HR know if you have any questions or concerns.

---

**CONTACT SUPPORT**

Talk with HR Chatbot

Contact ERC at 888-892-7180

**USEFUL LINKS**

Connections

GC-11

EXHIBIT NO._____ RECEIVED _____ REJECTED _____    x

29-CA-280153 ET/AL                    Amazon.Com Svs, LLC

CASE NO _____ CASE NAME _____

2          09-19-2022        Barrington Moxie

NO OF PAGES _____ DATE: _____ REPORTER: _____

 **my**Voice **amazon**

New Comment

VOA Board

 Dana

 Connor (spconnor)

Today, 9:36 AM

 ⊘ Open

We need a union because the turnover here is literally 150%. For every 2 jobs here 3 people get fired or quit. It's been the business model from the start. How do you expect workers here to feel valued when you treat them as just another material to be consumed? The pay raise caps after three years, the lack of internal promotion opportunities, the lack of bonuses, the lack of fair representation in meetings with HR, these are all things a union can fix to make Amazon a good, long-term middle class job that brings fulfillment to people's lives instead of exploiting them for profit. VOTE YES!!

Category:
Leaders/Mana

☐ Auto-scroll comments

Scroll Speed

+1

2 people

EXHIBIT NO. GC-12 _____ RECEIVED ___x___ REJECTED _____

CASE NO 29-CA-280153 ET/AL _____ CASE NAME Amazon.Com Svs, LLC _____

NO OF PAGES __2__ DATE: 09-19-2022 _____ REPORTER: Barrington Moxie _____



**my**Voice **amazon**　　New Comment　　VOA Board　　 Dana



## Dana (dmillrf)

Today, 3:19 PM

Edit

 Open

6/21/21: ALU AA's spoke to G.M. for holiday pay on Juneteenth. Dismissed, ALU put together a petition and is gathering signatures, over 50+ now! 7/8/21: Presented again, Felipe confirmed that he wouldn't use any energy/effort to make positive change for workers! So you're invited to come sign the petition for well-deserved holiday pay at the ALU tent, speak up for yourself and help make history!

☐ Auto-scroll comments

○——— Scroll Speed

Category:
Pay and Benefits/Time off

👍 0　👎 0

GC-13

EXHIBIT NO._____  RECEIVED _____  x  REJECTED _____

29-CA-280153 ET/AL                    Amazon.Com Svs, LLC

CASE NO _____ CASE NAME _____

2              09-19-2022          Barrington Moxie

NO OF PAGES _____ DATE: _____ REPORTER: _____



**my**Voice
**amazon** New Comment | VOA Board | Dana

---



**Connor (spconnor)**
Today, 11:51 AM

 ⊘ **Open**

I know it's pointless to argue with you on here. You can craft the perfect non-answer to dodge any criticism that comes your way. But workers are not going to tolerate this kind of hypocrisy. Amazon can't claim to value the voices of AAs while blatantly censoring black workers for speaking on the topic of race. Stop being a part of the problem and restore Dana's permissions.

Category:
Leaders/Manager/Culture

👍 2   👎 0

☐ Auto-scroll comments

○——— Scroll Speed

---



**Connor (spconnor)**
Today, 11:49 AM

EXHIBIT NO. GC-14 _____ RECEIVED ___x____ REJECTED _____

CASE NO 29-CA-280153 ET/AL _____ CASE NAME Amazon.Com Svs, LLC _____

NO OF PAGES 3 _____ DATE: 09-19-2022 _____ REPORTER: Barrington Moxie _____



**my**Voice · **amazon** · New Comment · VOA Board · 👤 Dana



### Connor (spconnor)
Today, 11:49 AM

 ⊘ Open

Felipe, I was disappointed to hear leadership's response to the petition for Juneteenth recognition, which was a refusal on your part to even advocate for what the workers want. But you all crossed the line by banning Dana Miller from posting about the it on the VOA board. It's unacceptable and disgusting for you to silence a black woman for speaking about the importance of Juneteenth. 1/

Category:
Leaders/Manager/Culture

👍 2   👎 0



☐ Auto-scroll comments

🔘────── Scroll Speed



### Dana (dmillrf)
Today, 11:43 AM



## Incoming Message

Hello! It is time for mandatory training. Please log out of your station, grab your belongings, and go to station 3360 to meet with the manager Julian. Thank you for your cooperation! -Management

Message from: surfdavi

Continue

GC-15

**EXHIBIT NO.**_____ **RECEIVED** _____ x **REJECTED** _____

29-CA-280153 ET/AL      Amazon.Com Svs, LLC

**CASE NO** _____ **CASE NAME** _____

2      09-19-2022      Barrington Moxie

**NO OF PAGES** _____ **DATE:** _____ **REPORTER:** _____

## KNOW THE FACTS:

# WHAT IS THE ALU AND IS IT WORTH JOINING?

Trying to make sense of the Amazon Labor Union (ALU), what it is, and what it wants? Here are some facts:

**01** **Is Amazon Labor Union (ALU) part of Amazon?**
No. The ALU is not part of Amazon. ALU has inexperienced leadership and zero experience negotiating for workers.

**02** **Is ALU an official union?**
It hasn't filed any paperwork with the Department of Labor.

**03** **What does signing a card mean?**
Union authorization cards are legally binding and authorize the union to act as your exclusive representative. You may be asked to physically sign a card or click a link that asks for your signature online. This means you give up the right to speak for yourself. Signing a union authorization card may also obligate you to pay the union a monthly fee.

Whether you choose to speak with someone or not is entirely your ch
You have the right to refuse to sign anything you are not comfortab

### SCAN TO SIGN

Sign your union authorization card online. Safe, secure, and discreet.

or visit amazonlaborunion.org/sign

 **amazon LABOR UNION**

644

GC-16                          x
EXHIBIT NO._____ RECEIVED _____ REJECTED _____

29-CA-280153 ET/AL            Amazon.Com Svs, LLC
CASE NO _____ CASE NAME _____

3              09-19-2022        Barrington Moxie
NO OF PAGES _____ DATE: _____ REPORTER: _____



## Prime Day: $10 for $10  prime day

Amazon is offering Prime members a $10 credit to spend on Prime Day when they purchase $10 in products from eligible small-business brands and artisans between June 7 and June 20. We're excited to do this again and thank you for your help in supporting small businesses.

Check Amazon.com for further details.

**sustainability**

JFK8 continues its commitment to sustainability by introducing bottle and can recycling. Beginning Monday 6/7 please use these collection bins located in all break areas for disposing of your recyclable cans and bottles.

Watch the video submissions from our Team
Click here!

**WATCH FULL VIDEO**

Be sure to scan and cast your vote for who you think earned the $500 prize and the chance to move onto the national level

**VOTE NOW**

# KNOW BEFORE YOU SIGN

**MAKE SURE YOU KNOW THE FACTS before you decide whether or not to sign a union card.**

Signing an authorization card may obligate you to pay the union a monthly fee. Authorization cards are legally binding and mean you give up the right to speak for yourself.

**Take your time. Do your research. Get the facts.**

amazon

**ASK HR OR YOUR MANAGER FOR MORE INFORMATION**

## READY TO ACCELERATE YOUR CAREER PATH?

COMING SOON TIER 3 MATRIX

The Tier 3 Matrix is a dynamic screening process that quantifies each Associate's experience and performance both on and off the production floor. JFK8 is looking for Associates that have demonstrated a commitment to safety, attendance, cross training as well as involvement in Affinity groups and Associate Committees. Help us continue growing our team of World Class Operators!

---

## inSTALLments

**June 4 – 11 2021**

### Inbound Nights

| Wk of 6/6 | Sun 6th | Mon 7th | Tue 8th | Wed 9th | Thu 10th | Fri 11th | Sat 12th |
|---|---|---|---|---|---|---|---|
| NA | 17:30 -4:15 | 17:30 -4:15 | 17:30 -4:15 | 17:30 -4:15 | | | |
| NA | 17:45 -4:30 | 17:45 -4:30 | 17:45 -4:30 | 17:45 -4:30 | | | |
| RT1 | | | | | 17:30 -6:00 | 17:30 -6:00 | 17:30 -6:00 |
| RT1 | 17:30 -4:15 | | | | 17:45 -6:15 | 17:45 -6:15 | 17:45 -6:15 |
| RT1 | 17:45 -4:30 | | | | 17:30 -6:00 | 17:30 -6:00 | 17:30 -6:00 |
| RT2 | | | | | 17:45 -6:15 | 17:45 -6:15 | 17:45 -6:15 |
| RT2 | 17:30 -4:15 | | | | 17:30 -6:00 | 17:30 -6:00 | 17:30 -6:00 |
| RT2 | 17:45 -4:30 | | | | 17:45 -6:15 | 17:45 -6:15 | 17:45 -6:15 |
| RT3 | | 17:30 -4:15 | | | 17:30 -6:00 | 17:30 -6:00 | 17:30 -6:00 |
| RT3 | | 17:45 -4:30 | | | 17:45 -6:15 | 17:45 -6:15 | 17:45 -6:15 |
| RT4 | | | 17:30 -4:15 | | 17:30 -6:00 | 17:30 -6:00 | 17:30 -6:00 |
| RT4 | | | 17:45 -4:30 | | 17:45 -6:15 | 17:45 -6:15 | 17:45 -6:15 |

Swap your shift and save your UPT, PTO, and/or Vacation!
Please go to the AtoZ zone to find our self-service Shift Swap kiosks

### New kicks, on us!

Step 1: Scan the QR code below
Step 2: Sign-in or create a Zappos account if you are a first time customer
Step 3: Use your amazon login
Step 4: Browse available shoes
Step 5: Add it to your cart
Step 6: "PROCEED TO CHECKOUT"
Step 7: Enter your shipping address
Step 8: All that's left is to place your order and await your delivery!

*Your $110 credit will reflect in the order summary (along with the 10% ...)

Zappos



myVoice
amazon New Comment · VOA Board · Dana



## Dayna (blodayna)

09/06/2021 11:01 AM

⊙ Closed

I do definitely agree with Jocelyn and jacks comments we should be notified in advance through text message/ emails/ installments by mangers for met or vet. People need time to prep in advance even if it's just and hour

Category:
Policies and Procedures

 👍 6   👎 0



## Abhishek (abhisahn)

09/06/2021 4:00 PM

[Sahni-SrO          dedication to fulfilling our customer promise. MET is determined based on customer demand and we will always do our best to give as much notice as

☐ Auto-scroll comments
 Scroll Speed

EXHIBIT NO._____GC-17_____ RECEIVED _____x__ REJECTED _____

CASE NO ____29-CA-280153 ET/AL____ CASE NAME ____Amazon.Com Svs, LLC____

NO OF PAGES ____2____ DATE: ___09-19-2022___ REPORTER: ____Barrington Moxie____



**my**Voice
**amazon** New Comment | VOA Board | Dana



Jason (vjasonm)
06/19/2021 5:07 PM

 ⊘ Open

Can we get my accomodation approved? I feel like I'm going to have to quite literally pass out, go into cardiac arrest or potentially die before management decides to say my accomodation is approved. What happens when SPo2 levels drop daily...the heart beats harder. Neurologically I'm not there, therefore I have to push my heart harder even further to maintain productivity and quality.

Category:
Security/Medical Concerns/Safety

👍 2    👎 0

☐ Auto-scroll comments

◯———— Scroll Speed

Jason (vjasonm)
06/19/2021 3:20 PM

GC-18

EXHIBIT NO._____  RECEIVED ____x____  REJECTED _____

29-CA-280153 ET/AL                    Amazon.Com Svs, LLC

CASE NO _____  CASE NAME _____

5                    09-19-2022              Barrington Moxie

NO OF PAGES _____  DATE: _____  REPORTER: _____



**my**Voice | New Comment | VOA Board | Dana
**amazon**



### Dayna (blodayna)

Today, 7:46 AM

 **Open**

My thought and prayers for the employee that passed away. Now that somebody died maybe there will be more surveillance, security, lighting patrolling or directing people into spots. This morning I came in the parking lot and I almost got hit I was approaching the turning lane and a black car sped past me and cut in front of totally unacceptable especially with the circumstances that just happened also there are major issues regarding Majuana as well smells so bad. Please address this ASAP issue our safety and health and well-being is at steakWe should have something to remember employee by.

Category:

Security/Medi  ☐ Auto-scroll comments

○——— Scroll Speed

 3   0



myVoice
amazon | New Comment | VOA Board | Dana



## Dana (dmillrf)

Today, 10:36 AM

Edit

 ⊘ Open

Thanks Michael, looking forward to seeing the sustainability idea at JFK8! Another one: the lack of available break space. Today a blind AA had nowhere to rest (on the South/West side) because all the tables were full. She had no choice but to eat at her station. It's not fair or sanitary. Might we stagger breaks again to thin the crowd, or create another area on A01 west? There's room.

Category:
Process Improvement Operations (i.e. WF, ACES, IT)

☐ Auto-scroll comments

○———— Scroll Speed

 0   0



**my**Voice New VOA
**amazon** Comment Board  Dana

Dana (dmillrf)

Today, 5:37 AM

Edit

⊘ Open

Felipe, how am I and everyone else supposed to find an area manager when they've got a job to do, as do we all? Waste company time walking around to find them and rack up TOT? What happens if i touch leaking products 2x, 3x during my shift? Which i do every day. And others too. Once again, this is not optional. You display a lack of basic common sense on this. GIVE US BACK THE GLOVES. Period.

Category:
Security/Medi

☐ Auto-scroll comments

◯────── Scroll Speed

 0  0

**my**Voice
**amazon**


New Comment    VOA Board    Dana



## Stephanie (lopzst)
03/22/2022 12:47 PM

⊘ Open

SHOUTOUT TO JODY FOR BEING A REAL ONE 😊😊 VOTE NO !!!!!!!

Category:
Teamwork


-1

8 people


Ri...
03...

☐ Auto-scroll comments
○—— Scroll Speed

⊘ Open

GC-19
EXHIBIT NO._____ RECEIVED _____ REJECTED _____ x

29-CA-280153 ET/AL                    Amazon.Com Svs, LLC
CASE NO _____ CASE NAME _____

3              09-19-2022        Barrington Moxie
NO OF PAGES _____ DATE: _____ REPORTER: _____



**my**Voice
**amazon**     New
Comment     VOA
Board        Dana

   **Connor (spconnor)**
Today, 9:36 AM

✅ **Open**

We need a union because the turnover here is literally 150%. For every 2 jobs here 3 people get fired or quit. It's been the business model from the start. How do you expect workers here to feel valued when you treat them as just another material to be consumed? The pay raise caps after three years, the lack of internal promotion opportunities, the lack of bonuses, the lack of fair representation in meetings with HR, these are all things a union can fix to make Amazon a good, long-term middle class job that brings fulfillment to people's lives instead of exploiting them for profit. VOTE YES!!

Category:
Leaders/Mana

☐ Auto-scroll comments

●——————  Scroll Speed

┌─────┐
│ **+1** │
└─────┘
2 people



**my**Voice

**amazon**    New Comment    VOA Board     Dana

---



## Jody (tredicij)
03/20/2022 4:43 PM

⊘ **Open**

Hello JFK* Fam. i gave out VOTE NO shirts today and im happy to see people wearing them & speaking up for their rights. I had to step it up & do something about this. i do not want the ALUs hand in my paycheck. Get a real job or take your union circus elsewhere. thank you

Category:
Engagement/Recognition

**-1**

7 people

☐ Auto-scroll comments

○———— Scroll Speed

---



## Shavida (shavid)
03/20/2022 4:02 PM

EXHIBIT NO. GC-20 _____ RECEIVED x _____ REJECTED _____

CASE NO 29-CA-280153 ET/AL _____ CASE NAME Amazon.Com Svs, LLC _____

NO OF PAGES 3 _____ DATE: 09-19-2022 _____ REPORTER: Barrington Moxie _____


0 people



## Jody (tredicij)

Today, 7:50 AM

 ⊘ **Open**

Good morning JFK8 Fam! I have more VOTE NO T Shirts in sizes L, XL & 2X today. Please come get one on the 1st floor South, break room during both breaks & represent YOUR VOICE. Thank you!

Category:
Teamwork


**-1**

3 people

☐ Auto-scroll comments

◉───── Scroll Speed



## Jason (jppinei)

Today, 12:49 AM

# EXHIBIT EXCLUDED

| | |
|---|---|
| Leading Case Number: | 29-CA-280153 |
| Leading Case Name: | Amazon.com Services LLC |
| Exhibit Number: | GC-21 |
| Description: | |

**The above-referenced exhibit is not included herein for the following reason:**

| | |
|---|---|
| 1. Exhibit Withdrawn: | |
| 2. Exhibit Rejected: | |
| 3. Other (Explain): | Not Offered |

| | |
|---|---|
| Exhibit Retained By: | Counsel |

Barrington Moxie, Court Reporter



**my**Voice
**amazon** | New Comment | VOA Board |  Dana

 **Dayna (blodayna)**
06/18/2021 11:19 AM

⊘ Open

Since Juneteenth is now a federal holiday shouldn't we get holiday pay as we do for all the other holidays . It's all over every news channel and in the papers as well that June 19 is now a federal holiday .

Category:
Pay and Benefits/Time off

 👍 6 ⠀ 👎 0

 **Jenna (prenjenn)**
06/18/2021 5:09 PM

☐ Auto-scroll comments

⚫──── Scroll Speed

[Jenna- Se⠀ ⠀you for your comment. The news of Juneteenth becoming a federal holiday is very recent, and at this point there has not been communication about

GC-22

EXHIBIT NO._____ RECEIVED _____ x REJECTED _____

29-CA-280153 ET/AL                    Amazon.Com Svs, LLC

CASE NO _____ CASE NAME _____

3            09-19-2022        Barrington Moxie

NO OF PAGES _____ DATE: _____ REPORTER: _____



**my**Voice
**amazon** New Comment | VOA Board |  Dana

---

Natalie (nmmonar)
06/18/2021 2:09 PM

 ⊘ Open

Most of your staffs are African American. No acknowledgement of Juneteenth, a federal holiday? Really JFK8???

Category:
Engagement/Recognition

 👍 5 | 👎 0

---

Jenna (prenjenn)
06/18/2021 6:14 PM

[Jenna- Se...      ☐ Auto-scroll comments
you for you...    ⚪────── Scroll Speed
Juneteenth...
is very recent, and at this point there has not been communication about whether this will be a paid holiday. We
will let you know as more information



**myVoice**

**amazon**  New Comment  VOA Board  Dana

⊗ **Failed to create comment: You do not have permission to view/post to this site**  ✕

⊗ **Failed to create comment: You do not have permission to view/post to this site**  ✕

# Voice of the Associate Board

Every Amazonian deserves a voice – and a manager or site leader will get back to you

*MyVoice is intended to be used during working hours.*

## New Comment

Select your site:

JFK8 ▼

Comment Category

GC-23

EXHIBIT NO._____ RECEIVED _____ X REJECTED _____

29-CA-280153 ET/AL                    Amazon.Com Svs, LLC

CASE NO _____ CASE NAME _____

2                    09-19-2022          Barrington Moxie

NO OF PAGES _____ DATE: _____ REPORTER: _____



**my**Voice **amazon**   New Comment   VOA Board    Dana

 **Dana (dmillrf)**
Today, 11:43 AM

[ Edit ]

⊘ Open

I put a petition up and was told it was solicitation and against policy. It wasn't. I wasn't shown that in writing (though requested), I was unfairly targeted and disciplined (as a black woman; they apologized to my white male comrade), and I wasn't made aware of the illegal repercussions they enforced (i tried to post it again and my permissions were taken away). HR silences voices, not the ALU.

Category:
Policies and Procedures

 0    0   ☐ Auto-scroll comments

○━━━━ Scroll Speed

 **Dana (dmillrf)**

EXHIBIT NO. _GC-24_____ RECEIVED ____x____ REJECTED _____

CASE NO _29-CA-280153 ET/AL_____ CASE NAME _Amazon.Com Svs, LLC_____

NO OF PAGES __2_____ DATE: _09-19-2022____ REPORTER: _Barrington Moxie_____

◀ Amazon A to Z ▪ | | 4:53 PM | 69% 🔋

🔒 my-voice.operations.a2z.com

 

**myVoice** | New Comment | VOA Board | Dana

[Anna - HRM] Hi Dana. The VOA Board is available for employees to communicate with site leadership to ask questions and raise concerns. It is not a forum for solicitation. We support employees' right to solicit in accordance with Amazon policy, which prohibits solicitation via company bulletin boards and other Company electronic communication methods. This includes the VOA boards. A copy of the policy can be found within the Amazon.com Owner's Manual accessed through the Code of Conduct link or Inside Amazon. Leadership explained this to you in person on July 12th. We have not and will not revoke anyone's ability to post on the VOA board however, we will continue to ensure that comments comply with Company policy. If you have additional questions about this we would be h ☐ Auto-scroll comments discuss.

Scroll Speed

EXHIBIT NO. `GC-25`_____ RECEIVED ____`x`____ REJECTED _____

CASE NO `29-CA-280153 ET/AL`_____ CASE NAME `Amazon.Com Svs, LLC`_____

NO OF PAGES `2`_____ DATE: `09-19-2022`_____ REPORTER: `Barrington Moxie`_____

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**

**AMAZON.COM SERVICES INC.**

**and**                                    **Case No. 29-CA-280153**

**DANA JOANN MILLER, an Individual**

**and**                                    **Case Nos. 29-CA-286577**
                                                     **29-CA-287614**
**AMAZON LABOR UNION**                       **29-CA-290880**
                                                  **29-CA-292392**
                                                     **29-CA-295663**

## ORDER FURTHER CONSOLIDATING CASES, AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

On May 31, 2022, a Consolidated Complaint and Notice of Hearing issued in Case Nos. 29-CA-286577, 29-CA-287614, 29-CA-290880 and 29-CA-292392 alleging that Amazon.com Services, LLC ("Respondent") had engaged in unfair labor practices that violate the National Labor Relations Act ("Act"), 29 U.S.C. § 151 et seq. Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board ("Board") and to avoid unnecessary costs or delay, **IT IS ORDERED THAT** those cases are further consolidated with Case No. 29-CA-295663, filed by Amazon Labor Union ("Union"), which alleges that Respondent has engaged in further unfair labor practices within the meaning of the Act.

This Amended Consolidated Complaint and Notice of Hearing, issued pursuant to Section 10(b) of the Act and Section 102.15 of the Board's Rules and Regulations, is based on these consolidated cases and alleges that Respondent has violated the Act as described below.

1

GC-26                              x
**EXHIBIT NO.**_____ **RECEIVED** _____ **REJECTED** _____

29-CA-280153 ET/AL              Amazon.Com Svs, LLC
**CASE NO** _____ **CASE NAME** _____

12              09-19-2022        Barrington Moxie
**NO OF PAGES** _____ **DATE:** _____ **REPORTER:** _____

1.  (a)  The charge in Case No. 29-CA-280153 was filed by Charging Party Miller on July 16, 2021, and a copy was served on Respondent by U.S. mail on July 20, 2021.

(b)  The charge in Case No. 29-CA-286577 was filed by the Union on November 19, 2021, and a copy was served on Respondent by U.S. mail and email on November 22, 2021.

(c)  The charge in Case No. 29-CA-287614 was filed by the Union on December 13, 2021, and a copy was served on Respondent by U.S. mail and email on December 14, 2021.

(d)  The charge in Case No. 29-CA-290880 was filed by the Union on February 17, 2022, and a copy was served on Respondent by U.S. mail and email on February 18, 2022.

(e)  The charge in Case No. 29-CA-292392 was filed by the Union on March 16, 2022, and a copy was served on Respondent by U.S. mail and email on March 17, 2022.

(f)  The first amended charge in Case No. 29-CA-292392 was filed by the Union on April 12, 2022, and a copy was served on Respondent by U.S. mail and email on April 14, 2022.

(g)  The charge in Case No. 29-CA-295663 was filed by the Union on May 11, 2022, and a copy was served on Respondent by U.S. mail and email on May 12, 2022.

2.  (a)  At all material times, Respondent, a Delaware limited liability company with a fulfillment center located at 546 Gulf Avenue in Staten Island, New York (the "JFK8 Facility") and a sortation center located at 526 Gulf Avenue in Staten Island, New York (the "LDJ5 Facility") has been engaged in providing online retail sales throughout the United States.

(b)  During the past twelve-month period, which period is representative of its operations in general, Respondent, in conducting its business operations described above in subparagraph 2(a), derived gross revenues in excess of $500,000 and purchased and received at its JFK8 Facility goods valued in excess of $5,000 directly from suppliers located outside the State of New York.

3. At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

4. At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

5. At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

     (a) Mike Tanelli – Human Resource Business Partner; and

     (b) Scott Taylor – General Manager of LDJ5 Facility

6. On the dates set forth opposite their respective names, the following individuals were agents of Respondent, acting on its behalf, within the meaning of Section 2(13) of the Act:

     (a) Currently unidentified Male Employee Relations Agent – on or about November 10, 2021;

     (b) Ron Edison – on or about November 11, 2021;

     (c) Charlotte Bowers – on or about February 16, 2022;

     (d) Eric Warrior – on or about March 15, 2022;

     (e) Rebecca Smith – on or about April 10, 2022; and

     (f) Katie Lev – on or about April 18, 2022

7. On various dates since about May 2021, Respondent posted and/or distributed to JFK8 Facility employees written messages, which:

     (a) threatened employees with the loss of benefits if they chose to be represented by the Union; and

     (b) threatened to withhold or reduce employees' wages.

8.      On various dates since about May 2021, Respondent distributed to its employees via text message and/or the "Amazon A to Z" web application written messages, which:

(a)      threatened employees with the loss of benefits if they chose to be represented by the Union;

(b)      threatened to withhold or reduce employees' wages by stating that signing a Union authorization card may obligate employees to pay the Union a monthly fee deducted from their paychecks.

9.      About July 9, 2021, Respondent's employee Dana Miller concertedly complained to Respondent regarding employees' wages, hours, and working conditions by posting on Respondent's Voice of the Associates ("VOA") Board a demand that Respondent make the Juneteenth holiday a paid holiday and asking employees to sign a petition requesting Respondent to make Juneteenth a paid holiday.

10.      Since on or about a date within the 10(b) period, a more specific date presently unknown, Respondent has maintained the following rule, in relevant part:

"The orderly and efficient operation of Amazon's business requires certain restrictions on solicitation of associates and the distribution of materials or information on company property. This includes solicitation via company bulletin boards or email or through other electronic communication media… Examples of prohibited solicitation include the sale of merchandise, products, or services (except as allowed on forsale@Amazon alias), soliciting for financial contributions, memberships, subscriptions, and signatures on petitions, or distributing advertisements or other commercial materials."

11.      On or about July 12, 2021, Respondent engaged in the following conduct:

(a)      discriminatorily enforced its "No Solicitation" rule, described above in paragraph 10, against Dana Miller;

(b)      by HR Business Partner Mike Tanelli, in the office of the General Manager at JFK8, threatened Dana Miller with discipline for posting on the VOA Board regarding Amazon paying employees for the Juneteenth holiday;

      (c)      revoked Dana Miller's authorization to post on the VOA Board.

12.      Respondent engaged in the conduct described above in paragraph 11 because Dana Miller engaged in the conduct described above in paragraph 9, and to discourage employees from engaging in these or other concerted activities.

13.      On or about the following dates, at the JFK8 Facility, Respondent required its employees to attend mandatory meetings for the purpose of exposing employees to Respondent's statements in opposition to the Union:

      (a)      November 10, 2021;

      (b)      November 11, 2021;

      (c)      February 16, 2022; and

      (d)      March 15, 2022.

14.      On or about the following dates, at the LDJ5 Facility, Respondent required its employees to attend mandatory meetings for the purpose of exposing employees to Respondent's statements in opposition to the Union:

      (a)      April 10, 2022;

      (b)      April 18, 2022; and

      (c)      April 19, 2022.

15.      On or about November 10, 2021, at the JFK8 Facility, Respondent, by an Unidentified Male Employee Relations Agent, during a mandatory meeting described above in paragraph 13(a):

      (a)      promised employees improved benefits to discourage employees from selecting the Union as their collective-bargaining representative; and

      (b)      solicited grievances from employees and promised to remedy those grievances to discourage employees from selecting the Union as their collective-bargaining representative.

16. On or about November 11, 2021, at the JFK8 Facility, Respondent, by Ron Edison, during a mandatory meeting described above in paragraph 13(b):

(a) promised employees improved benefits in order to discourage employees from selecting the Union as their collective-bargaining representative;

(b) solicited grievances from employees and promised to remedy those grievances to discourage employees from selecting the Union as their collective-bargaining representative; and

(c) threatened to withhold or reduce employees' wages if employees supported the Union.

17. On or about February 16, 2022, at the JFK8 Facility, Respondent, by Charlotte Bowers, during a mandatory meeting described above in paragraph 13(c):

(a) threatened to withhold or reduce employees' wages if they chose to be represented by the Union; and

(b) threatened employees with the loss of existing wages and/or benefits if they chose to be represented by the Union.

18(A). On or about March 15, 2022, at the JFK8 Facility, Respondent, by Eric Warrior, during a mandatory meeting described above in paragraph 13(d):

(a) threatened employees with unlawful discharge if they chose to be represented by the Union; and

(b) threatened to withhold wage increases and/or benefits from employees if they chose to be represented by the Union.

18(B). On or about April 10, 2022, at the LDJ5 Facility, Respondent, by Rebecca Smith, during a mandatory meeting described above in paragraph 14(a), threatened to withhold improvements to

employees' wages and/or working conditions if they chose the Union as their collective-bargaining representative.

19.     On or about April 18, 2022, at the LDJ5 Facility, Respondent, by Katie Lev, during a mandatory meeting described above in paragraph 14(b):

(a)     threatened to withhold or reduce employees' wages if they chose to be represented by the Union; and

(b)     threatened to withhold improvements to employees' wages and/or working conditions if they chose to be represented by the Union.

20.     On or about April 19, 2022, at the LDJ5 Facility, Respondent, by Scott Taylor, during a mandatory meeting described above in paragraph 14(c), threatened employees with the loss of benefits if they chose to be represented by the Union.

21.     By the conduct described above in paragraphs 7, 8, and 11 through 20, Respondent has been interfering with, restraining and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

22.     The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

23.     As part of the remedy for the unfair labor practices alleged above in paragraphs 7, 8, and 11 through 20, the General Counsel seeks an order requiring that Respondent:

(a) physically post the Board's Notice to Employees ("Notice") in all locations where Respondent typically posts notices to employees at each of its facilities in Staten Island, New York, including in all employee bathrooms and bathroom stalls, and that Respondent electronically distribute the Notice by all methods that Respondent communicates with its employees, including but not limited to email, text message, social media, Voice of Associates (VOA) board, and web applications, including the Amazon A to Z app and

"JFK8 inSites." The physical and electronic Notice shall be in English and in Spanish and any other languages deemed necessary to apprise employees of their Section 7 rights;

(b) provide that a duly-appointed Board agent access to enter each of Respondent's Staten Island, New York facilities for a period of sixty (6) days, at reasonable times and in a manner not to unduly interfere with the Respondent's operations, for the limited purpose of determining whether the Respondent is in compliance with the notice posting and distribution requirements.

(c) read the Notice, in English and Spanish and any other languages deemed necessary, in the presence of a Board agent and the Charging Parties, at a meeting(s) convened by Respondent for all employees at the JFK8 Facility; and

(d) with Region 29 of the Board, schedule mandatory training session(s) for all Respondent supervisors, managers, and agents (including third-party security personnel and all outside labor or management consultants) covering the rights guaranteed to employees under Section 7 of the Act and submit an attendance list to the Regional Director within 7 days of the training session(s).

(e) hand deliver and email to each supervisor, manager and agent regularly assigned to work at any of Respondent's facilities located in Staten Island, New York the signed Notice, along with written instructions, signed by the site manager for the facility at which each supervisor, manager or agent is regularly assigned to work, directing each supervisor, manager and agent to comply with the provisions of the Notice, and provide the Regional Director with written proof of compliance.

(f) Rescind the unlawfully-applied "No Solicitation" rule described above in paragraph 10 at all Respondent facilities where those policies are in effect and provide appropriate written and electronic notification to all employees at those facilities of such recission. Should Respondent wish to reinstate the policies, Respondent must include a disclaimer that Respondent will not apply the policies to Section 7 activities.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Consolidated Complaint. The answer must be **received by this office on or before August 25, 2022 or postmarked on or before August 24, 2022.** Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions. Responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Consolidated Complaint are true.

Pursuant to Section 102.22 of the Board's Rules and Regulations, any request for an extension of time to file an answer must be filed by the close of business on August 25, 2022. This request should be in writing and addressed to the Regional Director of Region 29.

## **NOTICE OF HEARING**

PLEASE TAKE NOTICE THAT on **September 19, 2022**, at 10:00 a.m., and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board. At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Consolidated Complaint. Pursuant to the Board's rules at 102.35(c), due to "compelling circumstances" created by the current Coronavirus Disease (COVID-19) pandemic and CDC guidelines on mitigating the risk of contracting Coronavirus, the trial in this matter may be conducted remotely by videoconference using Zoom technology. *See Morrison Healthcare*, 369 NLRB No. 76 (2020).

Details regarding how to connect to the hearing will follow. The parties are urged in the meantime to consult and cooperate with the Division of Judges or the assigned Judge regarding how the Judge will conduct the hearing, including how the parties will prepare witnesses, number and offer of documents and exhibits, and whether there will be public access to the hearing. The procedures to be followed at the hearing are described in the attached Form NLRB-4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**Dated:  August 11, 2022**

_____

KATHY DREW-KING
REGIONAL DIRECTOR
NATIONAL LABOR RELATIONS BOARD
REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Attachments

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-05-01 01:10:34.202000 | JFK8 | 1 | eikiok | Can anyone boost the wifi I can't click out on my device if it's 1/2 week. | | curlym | [Felipe - GM] Hello Edison, thank you for bringing this up. I would like to understand which specific area in the building is having wifi connectivity issues so we can have our IT team address. Your manager will partner with you as soon as possible and help resolve this concern. | Leaders/Manager/Culture | 2 | CLOSED | USA | | | N |
| 2021-05-02 20:50:20.359000 | JFK8 | 1 | pomom | Many times I have noticed while working as either Slow or Pick that whenever I made some sort of mistake, I would be unable to fix it. It would be helpful if there was some sort of option to correct a mistake on the system. Currently the system makes it difficult to deal with alot of issues when they pop up because these are things that are not planned for. | | tepcott | [Jamie-Senior HRM] Hi Carl, thanks for raising your concern. I will have Courtney follow up with you on Wednesday for additional details to better see how we can help. Updated: 5/1/21 - Hi Pomi, a Wednesday meeting up with you today. I appreciate the specific callouts. I will be escalating to our process engineering team to see if we can make adjustments based on your callouts. | Policies and Procedures | 2 | CLOSED | USA | | | N |
| 2021-05-03 11:59:55.411000 | JFK8 | 1 | caniheli | I am again deadly cross of current events, I need info about this Union Card nonsense. I just asked HR for days and they keep telling me by about it, and the Amazon Chime has got a make over with I feels being changed. This concerns me greatly. | | tepcott | [Jamie-Senior HRM] Hi Carl, thank you for your comment. In regards to the union authorization cards we want to ensure all associates are educated on the facts, which was shared through an A&Q notification last week. A union authorization card is a document signed by an employee that authorizes a union to negotiate employment terms and conditions on their behalf. We value the direct communication we have with our team. Thank you for taking time to speak with Tawana directly today regarding your concerns. Your senior leader, Scott, will follow up with you below once we connect with you personally. Updated : 5/4/21 - Hi Carl, it was nice to follow up with you yesterday around your concerns. | SAD | | CLOSED | USA | | | N |
| 2021-05-03 21:38:40.456000 | JFK8 | 1 | ragenuac | about 2-3 weeks ago I asked about the conveyor jams in po? - is it possible to lower its volume or ch cause dampener if that doesn't work. How can you take advantage of ear plugs? I noticed the sound system is being damaged and our painful for ears I understand that is a SAFETY feature but it really feels UNHEALTHY to work in a close to the siren any update on this case? | | tepcott | [Scott - Snr Ops] Hi Marcin, This concern was escalated to the RME team about 10 days ago. We are attempting to leverage the controller to help manage the volume of the alarms. We are also looking into using a physical sound dampener if that doesn't work. Your Area leader will follow up with you today to follow up in person and let you know exactly what the next steps are. Updated : 5/3/21 - Hi Marcin, I also want to reassure you in person. As shared our RME team is currently looking into lowering the sound or leveraging a dampener. | Process Improvement Operations (i.e. IRF, ACES, IT) | | CLOSED | USA | | 1 | N |
| 2021-05-11 32:53.008000 | JFK8 | 1 | tampmarij | Standup in picking is way to over crowded, vaccines haven't even been available on-site and yet standup looks like a coffee social. I understand what it get goals to normal but there's no reason we should be forced to crowd each other. We should be able to get our station and go to it when we come in. | | MJTH | [Scott - Snr Ops] Hi Jesse, thanks for raising this concern. Stand ups should only be hosted for a limited number of associates based on space to allow for social distancing. I will be following up with our leaders to remind them around this. I will be partnering with the team to evaluate the TV to allow for associates to get their station assignment without needing to disrupt the flow of stand up. Appreciate the callout. Updated : 5/3/21 - Hi Jesse, glad I was able to follow up in person. As shared we will be working to limit the number of associates attending stand up and to space out. | Security/Medical Concerns/Safety | | CLOSED | USA | | 1 | N |
| 2021-05-11 05:42.506000 | JFK8 | 1 | bikideyna | It's is really really hot like a sauna or oven in singles. where your going to pass out can you please do something about it more fans / lower ac to make cooler make or come up for yourself to see. | | SAD | fidagic | [DEV - Carrie] Hello Dwayne! Thank you for your comment. Our RME team discovered that there was a faulty evaporator on your HVAC system this morning causing the temperature to become elevated. The issue is now resolved and cooled air is blowing out of the vents! | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-05-13 18:06:36.896000 | JFK8 | 1 | ialrxnab | How can left me out off the clock when they that out bad saying I need to come use them on breaks or before my shift" yet they can retaliate at LEAST 3 times on video with evidence and have 0 consequences. Mind you, I pointed out a severe covid violation on video as well. If K8 claims to have Fired Chris, mails over covid violation, why does HR get to literally sit on take on the same policy? | | ethho | [Jamie-Senior HRM] Hi Jason, thank you for your comment. Safety is our top priority and our Covid guidelines are strictly enforced with everyone in the building. This includes social distancing and properly wearing a face mask while in/around the facility and work areas, even when consuming food or beverage. Your Leader, Business Partner, will be following up with you directly to address your specific concerns. Update 5/4/21: Thank you for taking the time to meet with Mike, HRBP to discuss your concerns. Please let us know if you have any additional questions or concerns. | Leaders/Manager/Culture | | CLOSED | USA | | | N |
| 2021-05-13 16:54.08.012000 | JFK8 | 1 | vjaicom | Not a Republican, will never be one. However when Tim Scott says discrimination won't be solved through more discrimination/reverse discrimination, what do all the red T-bone. Does discrimination stop by more? Absolutely. Against every rule who works here? Absolutely. This is primary... bathed in hypocrisy. "Vaccines are safe" why? "Government says they work". Well didn't see vaccines work too? | | premjano | [Jamie-Senior HRM] Hi Jason. At Amazon and JFK8 we are committed to providing a safe and respectful work environment for everyone that is free from all forms of harassment and discrimination and this strictly enforced. Starting tomorrow, 5/4, we will hold a free on-site vaccination event for all employees in accordance with CDC guidelines and recommendations. This is completely voluntary. Please see the A&Q notification you received for additional information on how to register and schedule an appointment if you are interested. Household/family members are also eligible to take part in this vaccination event if interested. Your senior leader, Scott, will be following up with you directly to address your concerns. Update 5/4/21: Thank you for taking the time to meet with the HRBP to discuss your concerns. Please let us know if you have any additional questions or concerns. | Leaders/Manager/Culture | 1 | CLOSED | USA | 6 | 0 | N |
| 2021-05-03 19:46:16.221000 | JFK8 | 1 | vjaicom | I am a clean up. I notice alot of issues coming upstairs. I know me and my fellow labor ops have called out issues like boxes being taped over 2-4 times. hazmats on top, etc. we are told they are being taken care of, but the situations keep happening with almost always the same area. No one is correcting the behavior and eventually it spreads because people like to copy. | | MJTH | [Jamie-Senior HRM] Hi Jason, thank you for your feedback. You are absolutely right, this concern should be addressed immediately with its proper practice. Fixing this behavior will allow for fewer kickouts and stoppages at SLAM. Our inbound leaders are currently looking at the root cause and have been onboarding quite heavily across all shifts to ensure that we have cross trained. As new associates come in, we have been onboarding quite heavily across all shifts to properly handle placement as we have been onboarding quite heavily. What training will be given to ensure proper handling? If you feel comfortable leaving your login? | Leaders/Manager/Culture | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-05-04 03:01:38.690000 | JFK8 | 1 | ANONYMOUS | Really need to do something about the temperature it's way too hot again . Come up by singles and see please its unsafe and unhealthy | | fidagic | [DEV - Carrie] Hi Jason, thank you for your feedback. Our RME team partnered with the HVAC vendor and this was resolved by the issue in the morning and it took some time for the units to bring the temperatures down. Our facilities team deployed individual station fans to Singles Line 1 and 2 and they will be continuing the deployment of fans to Line 3 over the next 24 hours. | Working Conditions/Facilities | 0 | CLOSED | USA | | | N |
| 2021-05-04 11:06:20.712000 | JFK8 | 1 | bikideyna | Really want to do something about the temperature again it's too hot again . Come up by singles and see please its unsafe and unhealthy | | fidagic | [Felipe - GM] Hello Mariuli, thank you for your feedback. Last night our AC unit did not kick in at the proper threshold, leading to an increase in temperature. Our base building team partnered with the vendor and this was resolved by the issue in the morning. We are actively monitoring temperature levels across the FC, so we can react immediately if this were to happen again. Also, I'd like to share that this week we received individual station fans for single stations to improve airflow and comfort. | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 4 | 0 | N |
| 2021-05-14 12:12:40.500000 | JFK8 | 1 | welnandi | I have on day something it's not that hard to turn the AC on up, stop giving us robot answers already. If safety is number one then help us. unless your waiting for someone to faint. | | SAD | usinkip | [Felipe - GM] Hello Marili, thank you for your feedback. Last night our AC unit did not kick in at the proper threshold, leading to an increase in temperature. Our base building team partnered with the vendor and this was resolved by the issue in the morning. We are actively monitoring temperature levels across the FC, so we can continue to share feedback or reassurance or any other condition within the site are a concern so we can help address immediately. | Security/Medical Concerns/Safety | 0 | CLOSED | USA | | | N |

Amazon_000219

GC-27(a)

EXHIBIT NO._____  RECEIVED _____ x REJECTED _____

29-CA-280153 ET/AL                    Amazon.Com Svs, LLC

CASE NO _____ CASE NAME _____

28            09-19-2022        Barrington Moxie

NO OF PAGES _____ DATE: _____ REPORTER: _____

Amazon_000220

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-05-04 13:28:40.185000 | JFK8 | 1 | vjazom | Good morning/top managers. Let's see how many of our rights you violate today while claiming you did nothing wrong. Does a single one of you take accountability for anything? I've never seen it. How many covid violations does HR get to commit consequence free today? | MEH | sunhitp | [Fridge - GM] Hello Jason, It was good getting to meet you yesterday... | Policies and Procedures | 1 | CLOSED | USA | 5 | 0 | N |
| 2021-05-04 14:49:13.272000 | JFK8 | 1 | ANONYMOUS | Hi. It'de nice to have dedicated monitors for the pay raise info. Right now it is buried with other information and takes a while to switch. I'd like to be able to check that info and be on my way and not waste my mask time. Thank you. | HAPPY | neihaisw | [Note - HRM] - Hello, thank you for your comment... | Pay and Benefits/Time off | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-04 17:47:46.814000 | JFK8 | 1 | hapdeda | I don't understand why everyone that has a accommodation they are honored. but not my accommodation I have explained for months and no one listens or seems to care what I have to say | SAD | sunhitp | [Note - HRM] - Hi Danielle, thank you for your comment. Tawana, Sr HRA, will follow up with you directly to further assist with your concern. Update - thank you for connecting with Jenna to discuss your accommodation... | Policies and Procedures | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-05-04 19:32:36.900000 | JFK8 | 1 | vjazom | HRM Jenna wants to comment on ALL of my VOA board posts. Said HRM is part of the problem. I've been waiting 2 weeks for you to provide your supervisors email and you absolutely refuse to follow open door policy. It's called open door for a reason, you get to meet in person and I get here on this VOA board. Are we going to keep breaking policy do follow open door policy? | MEH | sunhitp | [Note - HRM] - Hello Kevin, thank you for your comment... | Policies and Procedures | 0 | CLOSED | USA | 1 | 0 | Y |
| 2021-05-04 20:28:31.692000 | JFK8 | 1 | kbrabhim | i would like to talk to somebody about why I'm transfers keep disappearing off tz so that keep happen when I requested or prior to being here why is it happening now I have no time to speak to a manager ask for a dl as i know im not good handling | MEH | neihaisw | [Note - HRM] - Hello, thank you for your comment... Please let us know if you have any additional questions. Thank you! | Career/Advancement Opportunities/Training | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-04 21:18:30.291000 | JFK8 | 1 | ledporn | i enjoy reading this board, and seeing who gets answers and who you choose to skip over its very amusing. i made a comment about the building being way to hot earlier in the day. No robotic answer, someone posted maybe 30 minutes ago and they got an answer. great job. * clapping hands * | HAPPY | sunhitp | [Fridge - GM] Hello Nkesia, Please see my response to your comment below for more detail... | Transportation/Commute | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-04 21:18:30.291000 | JFK8 | 1 | wrinandi | Just an observation, everytime the site offers VFT/NBTs, i see some AA from other shift go straight to indirect role and coded themselves. I think they should do what they accepted in their VFT/NBTs and maybe thats one reason why some roles lack AAs. | SAD | taycitet | [Scott - Snr Ops] Hi Renee, I heard Kevin was able to follow up on your concerns. Thanks for response I encourage you to escalate directly to Kevin next time. | Leaders/Manager/Culture | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-05 00:16:23.159000 | JFK8 | 1 | raxmii | Still way to heavy associate at standup even after I mentioned it on Monday. we are 30 plus ppl deep being corralled together for know reason, there should be no more then 8-14 ppl at standup, which is what I was told by operations | SAD | taycitet | [Scott - Snr Ops] Hi Jose, thank you for your comment. You are absolutely right in regards to social distancing and we need to maintain it at all times. Different standups have different capacities identified by the floor markings... | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-05 11:21:16.534000 | JFK8 | 1 | damjmanj | Very disappointed with the DLS team not all of them but I spoke with. Some of them they really don't care. If an associate had a real surgery and because of the pain he /she can not speak. A member of the associate family answered the dls call. I confirmed all the information they asked for and they told me we can't continue the call with you. I called again and the other one helped me Contre. | SAD | taycitet | [Jenna- Senior HRM] Hi Ledjon, thank you for your comment. Stephanie, from the HR team will be following up with you directly to discuss your specific concerns regarding the Disability and Leave Services (DLS) team... | Policies and Procedures | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-05 14:46:11.998000 | JFK8 | 1 | ledporn | Policies are the same and not different for one manager and different for an other. So please in higher position make sure they know what they are doing. If they don't know their policy, they have to listen to their associate maybe he find because of the other people mistake. Really disappointed | SAD | pnenjenn | [Jenna- Senior HRM] Hi Nkesia, thank you for your comment... | Policies and Procedures | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-05 14:50:55.945000 | JFK8 | 1 | ledporn | Just an observation... | SAD | curlann | [Scott - Snr Ops] Hi Nkesia, Thank you for your feedback. Your safety is our top priority and in order to resolve this situation, our Ops team meets with our RME partners on a weekly basis to determine mechanical fixes to prevent jamming and slow downs on the SLAMs... | Policies and Procedures | 1 | CLOSED | USA | 0 | 0 | N |
| 2021-05-05 18:19:22.497000 | JFK8 | 1 | dliverst | i would like to circle back on the downstacking issue in AFE1. Today is an utter disaster. I think that having line straighteners will be a solution to the problem. That will help facilitate the line keep moving. It will be a win-win situation for all. It will also decrease the bandwidth of the Water Spiders, PAs, PGs and managers etc and there will be great synergy in AFE1. | HAPPY | fsiagic | [DS9x - Carol] Hello David! Thank you for your feedback... | Process Improvement Operations (i.e. WIP, ACES, IT) | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-05 20:28:08.896000 | JFK8 | 1 | jpoxleno | I really want to appreciate the great person who has been very genuine and shows support to every associate here, he been so patient regarding claiming our amazon pay. He been a LEADER since day one. His name is KEVIN, my amiable manager. Please guys, appreciate him for me anytime you come in contact with him. Thanks | HAPPY | taycitet | [Scott - Snr Ops] Hi Joshua, truly appreciate the positive recognition. Kevin is a valued member of our leadership team and it is good to hear this sentiment reinforced by his team members... | Engagement/Recognition | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-05 22:28:24.572000 | JFK8 | 1 | cyishell | i still don't understand why make the Chime private, it helps to make it access the work and keep us in the loop of whats happening at IFK8. My father said it best "Make the work come to you, and you'll make the work easier for yourself". | SAD | HAPPY | [Jenna- Senior HRM] Hi Joshua... | Working Conditions/Facilities | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-04 15:36:734000 | JFK8 | 1 | ANONYMOUS | i thought the speaker system was meant for positive reinforcement not demeaning workers. i would like to speak to whoever is running the system. I hope i can get help that the music is to loud and the higher ups are I speak with me. I am happy but its legitimately hurting my concerns and have an file to cover myself. | SAD | fsiagic | [DS9x - Carol] Hello! Thank you for your feedback. You are correct. Speaker systems should be used to keep the team up to date with quality and standard work updates, hourly/quarterly performance communication and for positive reinforcement... | Engagement/Recognition | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-06-12 03:52.916000 | JFK8 | 1 | hapdeda | | SAD | pnenjenn | [Jenna- Senior HRM] Hi... | Policies and Procedures | 0 | CLOSED | USA | 0 | 0 | N |

| Post Date (in tz) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | SIa in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-05-06 14:41:22 538000 | JF68 | 1 | mcnigzer | I just don't get how it makes sense to go to break at 10:30 then again 12:45... that's way too close doesn't seem fair like I've had a level 😐😐 | SAD | fluagc | [058 >... Carole] Hello George! Thank you for your feedback. The reason for the updated break schedule is due to a system staffing update. Staffing Command Center is a new network initiative to automate station assignments. This update will lead to a better overall experience for each of our teams as it will help ensure you never go to your assigned station and that someone else already there. As the change required break times to either start or end on a 15 minute window we needed to adjust our break schedule to prevent forced "tagouts" from occurring for individuals not at their assigned station. Additionally, the team took into account ensuring no overlap between Inbound and Outbound breaks to keep in mind break room capacity. Thank you in advance for helping ensure we are able to meet the needs of our customers! | Working Conditions/Facilities | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-05-06 16:55:57 225000 | JF68 | 1 | blodavna | Carole cr ops is amazing listens to everyone and makes sure everything is always taken care of and never see her with a frown she truly passionate no one is too big or small in her eyes , Jula Are great, wonderful at helping her for associates gets very picky plastcard feedback on the station getting solved ASAP. Never see her upset or always see her with a smile on her face. continued | SAD | sanfdp | [Felge - GM] Thank you for the positive shout outs, Dayra! Carole and Jula are awesome indeed :) Thank you Carole and Jula for driving a positive associate experience! | Engagement/Recognition | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-06 16:53:17 251000 | JF68 | 1 | blodavna | Shout out and compliments to Jenna, she's too cool she's for solving problems and doing things to timely and quick fashion . Also shout out to all the JF68 team for all we do all day every day | SAD | sanfdp | [Felge - GM] Thank you, Dayra, for the positive recognition for our HR team! Our HR team members do a phenomenal job helping our customer-associates and managers everyday, thank you! | Engagement/Recognition | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-07 04:31:48 645000 | JF68 | 1 | edduk | How come there's no more Taki snacks? Those snacks are delicious! | HAPPY | saefdas | [Ahmed - Proc Ops] Hi Edison, Thank you for the feedback. Due to pandemic reduced supply chain constraints delivery has been inconsistent. However our canteen staff confirmed that Taki snacks will be replenished by tomorrow in main break room. | Working Conditions/Facilities | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-07 04:32:37 449000 | JF68 | 1 | edduk | A metroaid machine in the bus stop is reasonable | HAPPY | saefdas | [Jenna - Senior HRM] Hi Edison, thank you for the comment. As previously mentioned, we did reach out to the MTA and they do not place metrocard machines outside of their properties (like subway stations, ferry terminals, etc.) however, the MTA does provide OMNY cards, which can be used either through a tap card (similar to the current MetroCard) or through a phone app. More information about OMNY cards can be found here: https://new.mta.info/system_modernization/omny I will have Christina from the HR team meet up with you today to discuss more detailed information and answer any questions you may have. Thank you! Update 5/10/21: Thank you for taking the time to speak with Christina. Please let us know if you have any additional questions. | Transportation/Commute | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-07 05:20:00 784000 | JF68 | 1 | ANONYMOUS | I been trying to get my merchandise from the swag store for about 3 weeks and every time I go there is nobody there these should be a better system for people to get their items and please do something about it don't just wait we are working on it because that's always the answer at JF6.8 | SAD | prenijams | [Jenna - Senior HRM] Hi, thank you for your comment. We do have our swag desk staffed with associates from the 10:30am. However, if no one is at the desk when you go to pick up swag, please go to the HR desk and someone will be able to help them order. In order for associates to begin to Chime on their mobile device, they require access to an Amazon computer that is connected to the Amazon internal network. Detailed instructions can be found on it.amazon.com (the link to the article is here: http://it.amazon.com/chime/getmobile-help-onboarding-chime-using-multi-factor-authentication). Please let me know if you have any additional questions or concerns. | Leaders/Manager/Culture | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-07 14:52:39 638000 | JF68 | 1 | cerkmub | Good Morning. I can't sign up for the vaccine, when trying to go through A to Z it doesn't work. Is Johnson & Johnson the only vaccine Amazon offering? Amazon keeps send out text messages about the vaccine but the link doesn't work. Thank You | HAPPY | nehavuw | [Jenna - Senior HRM] Hi, thank you for your comment. We do have our swag desk staffed with associates from the 10:30am. However, if no one is at the desk when you go to pick up swag, please go to the HR desk and someone will be able to take care of your question. We are making Moderna vaccines available at your site onsite. Should you decide to get the vaccine onsite or off-site. If Johnson & Johnson, which has been proven to safe by the CDC, does not happen to be your vaccine of choice, you can absolutely choose to receive another vaccine and take advantage of our appointment hours offered at the site. Please let us know if you have any additional questions. | Leaders/Manager/Culture | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-07 15:08:12 979000 | JF68 | 1 | cerkmub | Good Morning Felipe and Elliot. After whole lot of praying and mostly crying I finally got Amazon chime to work. Please advise what is the correct way to set up printing and sharing print across computers in the lab. We most use Amazon Wifi. If they accidentally log off they would have to restart the process over again. | HAPPY | ethho | [Jenna - Senior HRM] Hi, I am sorry that you still did not receive your swag and let go the ideal time to work on this is. In order for associates to begin to Chime on their mobile device, they require access to an Amazon computer that is connected to the Amazon internal network. Detailed instructions can be found on it.amazon.com (the link to the article is here: http://it.amazon.com/chime/getmobile) Please let me know if you have any additional questions or concerns. | Leaders/Manager/Culture | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-07 17:42:57 974000 | JF68 | 1 | ANONYMOUS | Stop (sing I went during my break to get my swag and nobody was there so I when to hr and they said thats not their job I was right like I said in my earlier statement JF.6 8 doesn't help the employees | SAD | prenijams | [Jenna - Senior HRM] Hi, I am sorry that you still did not receive your swag. We are always here to help and I am happy to personally assist with getting your swag. The HR team at the desk is also able to assist if there is no one at the swag desk. Please feel free to stop by the next time you need and we can make sure that you get the swag that you need. Thank you. | SAD | | CLOSED | USA | 0 | 0 | N |
| 2021-05-07 17:57:29 234000 | JF68 | 3 | lamilon | Is there a way for me to access my outlook emails outside of the internal network? I've attempted to before, and it does not seem like a straightforward process, even with my phone. | MTH | ethho | [Jenna - Senior HRM] Hi Liam, thanks for reaching out about this. You can find instructions to access your outlook emails outside of the internal network by searching for Amazon email outside of the network. You'll be able to access it here: https://it.amazon.com/help/articles/access-email-outside-the-amazon-network). You should be able to use the multi-factor authentication to log in with your email in a web browser. This site requires use of a computer or laptop to be accessed. Please let me know if you have any additional questions or concerns. | Policies and Procedures | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-08 10:09:26 300000 | JF68 | 1 | edduk | What Does PRN.I mean on the package? | MTH | tapicothi | [Zach-AGM] Hi Edison, the letters PRN.I stand for Pitney Bowes New Jersey which is one of the 3rd party shipping companies Amazon uses to help fulfill our customer packages. | Process Improvement Operations (i.e. WIP, AR/TS, IT) | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-05-08 13:09:34 311000 | JF68 | 1 | vpacorn | How is it Amazon can manage to have a useless fence put up but can't manage to refund the 401 k contributions ripped out of? All the facility did was make it harder to social distance and make it a lot more mild of an obstacle now the portable toilets that security has told day is and transfers to use instead of the bathroom inside are is awful. | MTH | zachnext | [Zach-AGM] Hi Jason, an HR leader will follow up with you on your most scheduled shift to make sure we understand your feedback and any other benefits Amazon offers so we can address it accordingly. The fence that was put up across the street was placed there by Matrix who is the landlord of this facility. In addition, JF68 has functioning and accessible restrooms at all times for all JF68 employees regardless of tenure. | Pay and Benefits/Time off | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-05-08 13:07:58 946000 | JF68 | 1 | vpacorn | I'm been told to access the computers to research policy on inside Amazon... while I'm not I.T. specialist, I'm pretty computer literate and like that into account. However, I'm using a desktop computer where concerns directly to a computer for proper functions. Agreed a big on, the amazing computers I'd assume the only ones with functionality are always taken because the others aren't operable | MTH | tapicothi | [Zach- Snr Ops] Hi Jason, thanks for raising this concern. Courtney, the OM on shift today will be following up shortly for details around the computer so we can partner with IT to get the mouse replaced. She will also partner with you to help with your access concerns. Again, you're encouraged to escalate concerns directly to a manager or leader in order to get the best response for the situation. Update 5/10/21: Courtney met up with you next and you are now able to log into the computers. Hard we were also able to get the missing mouse. | Leaders/Manager/Culture | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-05-09 22:03:46 382000 | JF68 | 1 | camhell | I wanted to talk to Toby, the JCGA bosses, boss.. But I was having a hard time trying to get a hold of him. I am very upset!!! This make the second time security won't let me break but a leader at the first desk I go on my I just break to find out that some one has stolen my lunch. This is ridiculous!!! I come in and work 10 hrs, 7 1/2 before lunch to find out that some one has stolen my lunch. Something has to be done about this because I am not the only one that this has happen to. RIDICULOUS!!!!! | MTH | tapicothi | [Zach- Snr Ops] Hi Barry, I am sorry to hear that this happened to you. An HR team member from the first place and that it has occurred more than once. I will have having a member of the leadership team follow up for details to ensure this does not happen again. Update 5/10/21: Diego was able to meet up with you to follow up. Please ensure we escalate in a timely manner to allow for accurate investigation. | Leaders/Manager/Culture | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-10 08:05:10 216000 | JF68 | 1 | megitec | | SAD | tapicothi | | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 4 | 0 | N |

Amazon_000221

Amazon_000222

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-05-10 03:33:12.830000 | JFK8 | 1 | ANONYMOUS | Hello. What is more accurate? Rate displayed by PAK kiosk or rates posted by AM/PA? I'm asking because my PAK rate is higher than what the leaders are posting on white board | HAPPY | prchtr | [Chris - Sr Ops] Great question! PAK is able to pull performance for different time periods: hourly, daily, and weekly. (On the main page of PAK, your performance for the current SHIFT period will show, which runs Wednesday to Wednesday. PAK should be a bit more accurate since it represents a longer period of time. The rates posted by your AM/PA represent that shift's performance until that point in time. (i.e. if you come in and the first 15 minutes of work is slow, but the last 2 hours is good, your PAK rate will be higher...) | Career/Advancement Opportunities/Training | 2 | CLOSED | USA | | | N |
| 2021-05-10 17:37:411000 | JFK8 | 1 | haydenda | Good morning, is the mask area being sanitized in the morning? I'm not being disinfected but only 2 days that's not fair it should be open so that we can have breakfast before the start of our shift especially if you have a long commute. | SAD | fleajqc | [Chris - Sr Ops] Thanks for the suggestion! It's definitely possible that other forms of virtual payment be explored in the future. Regardless, Diagecom working its way up to 15.00 is exciting for everyone watching! | Policies and Procedures | 1 | CLOSED | USA | | | N |
| 2021-05-10 22:36:421000 | JFK8 | 1 | ANONYMOUS | Amazon should accept dogecoin as payment, the customers would love it. As an investor, so would I 🙂 | | prchtr | [Jamie - Senior HRM] Hi Dawn, thank you for the comment. Many of our non-exempt employees are eligible to receive a payment of $40 and one day off (JPT or equivalent) per dose, regardless of where they get vaccinated, if they share this with us. Employees must log their vaccination dose(s) in A to Z within 21 days from your first notification and receive proof. More information can be found on our intranet here... | Policies and Procedures | | CLOSED | USA | 0 | | N |
| 2021-05-10 18:28:720000 | JFK8 | 1 | vjosom | Why are those not getting the 4 hours of PTO for doing the vaccine at JFK8 only those who did it offsite that's really not fair to the AA who did the vaccine onsite at JFK8 we should get that 4 hours of PTO it's only fair | | prprprn | [Zach-AGM] Thank you for taking the time to talk with Mike regarding your questions and concerns. Also, please feel free to speak with your manager directly for any time-sensitive concerns. If you need to speak with someone from HR, you may also do so at any time while on the clock. | Process Improvement Operations (i.e. WF, ACES, IT) | 0 | CLOSED | USA | 0 | | N |
| 2021-05-10 14:32:12.248000 | JFK8 | 1 | ANONYMOUS | Hi hi. Singles small (not mid) might need a refresher on what can be sent slot and what shouldn't. I'm seeing cereal boxes without even a PAU/D/T bag and boxes that can be easily opened. As also a customer I wouldn't be happy if my cereal box arrived like that. | | sunfdelp | [Felipe-EM] Hello, thank you for this feedback. You are definitely right, and thank you for bringing this up as it is an important question with customer facing implications. If your recommendation to pack stations mark "incorrect box recommendation" and put the item in a box that fits correctly, and protect the item. When this menu option is selected, this provides feedback to our data team to revise, and some times... | Process Improvement Operations (i.e. WF, ACES, IT) | 1 | CLOSED | USA | 0 | | N |
| 2021-05-10 18:13:51.462000 | JFK8 | 1 | biodayna | Can we bring back the item for outside co associate can sit outside with protection like stat last year . Also now that things are opening up again can we have the summer employee JFK8 388 again but of course sorry if possible | | prprprn | [Jamie- Senior HRM] Hi Diana, thank you for the comment. We do have a ticket put in to get this issue resolved. We do not have plans to bring the item back as we have increased our break room capacity at this time. We do not have approval to have a BBQ or any large gatherings. However, thank you for the suggestion and we will let you know if anything changes. | Leader/Manager/Culture | | CLOSED | USA | | | N |
| 2021-05-10 19:35:33.248000 | JFK8 | 1 | vjosom | What is the status or correction of the glitch causing numerous employees to have multiple duplicate UTD movement and standing in line? (Last comment on the: "numerous employees" I personally have lost 5 hours already today, that are in complete error | | prprprn | [Jamie- Senior HRM] Hi Dawn, thank you for the comment. We do have a ticket put in to get this issue resolved some IGSA associates into other paths given the limited stations that we will have during Prime Week. Toby will be helping us out with additional info... | Process Improvement Operations (i.e. WF, ACES, IT) | 1 | CLOSED | USA | 0 | | N |
| 2021-05-11 17:30:30.483000 | JFK8 | 1 | vjosom | I'd like to speak with an ops in my direct department about metrics. Also I come to work to work, not stand there 7 hours and spend hour ending in lopsided metric. I've asked for a path change but some of this multiple times. How does the site tell accommodations they have a role in KOA when all I do is stand there every day? I do move a lot... | | taysozt | [Mike- Senior Ops] Hi Jason, appreciate the call out. Given your schedule this is having a bigger impact on you as we're working at maximum station constraint. As we work towards Prime Week prep team will be cross training. Please follow up with you and provide insight on your questions. We are actively working on addressing the underlying issues. | Leader/Manager/Culture | 0 | CLOSED | USA | | | N |
| 2021-05-11 19:56:00.926000 | JFK8 | 1 | vjosom | I'm going to elaborate on a certain aspect of a previous post. I'm on a disability accommodation. I show up to work my full hours, it I can't be given an equal opportunity to perform the role as a singular associate, you can't saddle me with consequences that I should to those who are provided the opportunity especially when I never get a vertical coaching. Lot as is required | | prprprn | [Scott - Snr Ops] Hi Jason, thanks for providing the additional insight. I will partner with you next Monday when we are both back on site together. I will partner with HR as well to address concerns around the feedback and have it handled with more accommodations needs. Update 5/12/21 - Hi Jason, Today I informed me that Mike from HR about your questions around your accommodation. | Leader/Manager/Culture | 1 | CLOSED | USA | 3 | | N |
| 2021-05-12 22:00:42.845000 | JFK8 | 1 | dlinvent | Hi, my kids very much enjoyed drawing the Mother's Day poster. They want to know if there will be anything for is it a contest with a prize or just a fun activity for them? | | prprprn | [Jamie- Senior HRM] Hi David, thank you for your comment. I'm glad your kids enjoyed the Mother's Day sheet! And that is why we provide these printable family activity sheets (i.e. Mother's Day and there was no contest. However, we also have an activity packed off of #AtoZ which has all things around them. We also have details around the Mayo engagement calendar. To participate in this have your child or loved one draw a picture of your family on a My Family Picture Frame which can be picked up from the HR desk or Swag counter. Enter it via the #AtoZ... | Engagement/Recognition | 1 | CLOSED | USA | | | N |
| 2021-05-12 13:03:00.848000 | JFK8 | 1 | ANONYMOUS | On back half days ship dock, manager Sherman thinks he has all the power. Not a big fan of him. Also, he takes the staffing blow board WAY too seriously. Sometimes people need to be moved but he has so many issues with that. Also, he screams at employees a lot | | sunfdelp | [Felipe-EM] Hello, Camela! Thank you for your feedback and update on the issue. I have touched base with our facilities team. Jason was able to fix four of the smartvac sealers and determined that the rest were in need... | Leader/Manager/Culture | | CLOSED | USA | 2 | | N |
| 2021-05-13 17:53:41.602000 | JFK8 | 1 | carlenab | Good Afternoon This is my third time asking for Amazon to fix or replace the sealers in smart pack. I see the manager and up talking to the associate sealing the packs but they are very blurry machines everything else gets fixed fast. Can you just buy new sealers? Forbes says this is a billion dollar company. Don't send anyone up here to talk to me unless they know how to fix a sealer | | fleajqc | [Felipe- Sr Ops] Hi, thank you very much for your comment... | Working Conditions/Facilities | 1 | CLOSED | USA | | | N |

| Post Date (in csc) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-05-13 18:31:46.409000 | JFK8 | 1 | carlenab | Good morning. The other day this nice white guy I am not a racist approach me about sitting in the smoking area waiting on access a Rida. He said me that he is always waiting to leave and that the bench is out there. Anyone who is waiting on access a ride can have a sit. Please can you put a bench here as a ride sign? I don't smoke and don't like smelling the smoke. The smokers are kind and helpful people | HAPPY | jeetnp | [Joe - DM] Good Morning Carlena, Thank You for Chatting with me this morning. The bench is currently on order and we are waiting for it to arrive. When it gets in we will install the bench next to the Access-A-Ride signage outside the main entrance. We will also make sure that it is signed appropriately to adhere to Social Distancing guidelines. We will communicate with the team after it is installed. Thank You for being patient as we continue to make improvements everyday. | Leaders/Manager/Culture | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-05-13 21:48:08.989000 | JFK8 | 1 | carahell | I am now more confused about our SRC situation, one hand we're not counting fast enough, but on the other we're getting in early for picks weekly. I want a feeling this has something to do with human error in our area of ADANOTOW . I am sorry if I stepped on some toes, but I am concerned about progress. | M3H | taysjeft | [Scott - Sen Ops] Hi Cari, Erin is back on Sunday. I can have her follow-up with you then. If your concerns is not addressed then I can follow up with you on Monday. Updated - 5/17/21 - Hi Cari, I was informed that Toby was able to follow up and address your concerns. Please remember to escalate directly to your leaders for a faster response to your concerns in the future. | Working Conditions/Facilities | 1 | CLOSED | USA |  |  | N |
| 2021-05-13 22:44:16.487000 | JFK8 | 1 | edslok | How do providers get fulfilled in the fulfillment centers? I've been wondering that since I started working for the company. #curious | HAPPY | sanfdop | [Felipe - GM] Thank you for your question, Edson! Inventory is allocated for Amazon FCs based on projected demand of that particular site in the upcoming weeks. I leave a feeling this is something to do with human error in our area of ADANOTOW. once inventory is available for Amazon to fulfill customer orders, inventory is allocated based on forecasted as well as actual demand and it gets fulfilled from the FC. In case of pre-orders, the process is a similar one and is based on promise delivery dates. Please continue sharing these questions! | Leaders/Manager/Culture | 1 | CLOSED | USA |  |  | N |
| 2021-05-14 10:33.830000 | JFK8 | 1 | ANONYMOUS | I have both vaccine for the covid 19 and the CDC said I don't have to wear my mask any more but in Amazon I have to. I don't think is fair but I'll almost forgot I work for Amazon and Amazon those what ever they want what a great company | SAD | prenjern | [Jenna - Senior HRM] Hi there, thank you for your comment. The CDC did make a very positive announcement stating that fully vaccinated people can resume activities without wearing a face covering or physically distancing, except when required by federal, state, local, tribal, or territorial laws, rules, and regulations, including local business and workplace guidance. Our hope is to move quickly but safely on our return to normalcy. For now, Amazon's network-wide policies on face coverings will remain intact, which means face coverings and social distancing are still required. We will be sure to communicate if and when any of this changes. Thank you! | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-14 10:11.044000 | JFK8 | 1 | madereen | I am noticing more and more of my co-workers are becoming increasingly stressed and frustrated I myself included. Today I witnessed a coworker being belittled and the managers were the punched themselves in his head 3 times and screamed I just want an easy day. This is alarming and it makes me feel extremely uneasy. These mandatory extra hours every week is killing us. | SAD | prenjern | [Jenna - Senior HRM] Hi Amoth, thank you for the positive about out for the HR team! Edson and Sandreen are great and an extremely valuable part of our JFK8 team. I am glad they were able to assist you with career choice. Thank you Edson and Sandreen for all that you do on a daily basis! Please let us know if you have any other questions. Thanks! | Security/Medical Concerns/Safety | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-05-14 14:49:02.490000 | JFK8 | 1 | lanneth | I just wanted to say a big thank you to Edson and especially Sandreen the most helpful out of the HR team I was not understanding the career choice and how to apply to it so he kindly however Sandreen took her time with me and helped me out to a "" NOW this is what a GOOD H. team looks like. Thank You guys !!!! | HAPPY | prenjern | Thank you for your comment. We share your concern about drivers departing from the designated lanes of travel and driving up the stripped lines to bypass other traffic on the way to/from our building. Last week the JFK8 Safety team reached out to the management of the industrial complex to request the installation of safety measures to help regulate traffic and improve driver/pedestrian safety. We will pass your concern and work to install any measures without their approval. We will pursue this further in partnership with them. Thanks again. | Career/Advancement Opportunities/Training | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-05-08 13:42.956000 | JFK8 | 1 | ANONYMOUS | On the way out of the building when shift end some driver drive in between the lane to beat the light and the traffic this is illegal and dangerous as I have almost been in an accident in the past will like to see something done to prevent driver from driving in the opposite lane to beat the traffic light and avoid the car line. | SAD | prenjern | Thank you for your comment. We share your concern about drivers departing from the designated lanes of travel and driving up the stripped lines to bypass other traffic on the way to/from our building. Last week the JFK8 Safety team reached out to the management of the industrial complex to request the installation of safety measures to help regulate traffic and improve driver/pedestrian safety. We will pass your concern and work to install any measures without their approval. | Transportation/Commute | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-05-11 15:13.55:02.580000 | JFK8 | 1 | vjasonm | 3rd comment on a previous post . I asked expressly for a site level review on a certain matter not a centralized investigation team nor would I go forward with it. However, after being in an investigation I was told a centralized investigation by a phone carrier that this is common sense of a low level matter after speaking to an investigator. A question she posed brings me to a common sense revelation. Why is there no rotation in my department? Why does one set of typically associates stand by this same issue? | M3H | taysjeft | [Scott - Sen Ops] Hi Jason, I was informed that Toby partner with you tomorrow for more insight. Updated - 5/17/21 - Hi Jason, I was informed that Toby was able to follow up and address your concerns. I will reiterate a few points. Team is meeting daily to review staffing and we are now leveraging VTO to minimize impact to the team. Please remember to escalate directly to your leaders for a faster response to your concerns in the future. | Leaders/Manager/Culture | 1 | CLOSED | USA |  |  | N |
| 2021-05-04 17:17.000000 | JFK8 | 1 | ANONYMOUS | If you plan on starting a family and working from while pregnant I say DONT . It's so hard to get an accommodation . they send you around in circles from HR to ERC to your manager . They also write you up for something and everything get done in not just safe manner | SAD | prenjern | Hi, thank you for your comment. We take the safety of our team extremely seriously and it is our top focus. We have a robust process to follow Amazon's VPPE Mask requirements policy, which states that mask use is mandatory and that masks must meet the below criteria. We will also up our current mask audits to enforce our mask use on premises. Associates or others who bring their own cloth/reusable face coverings must ensure that it meets the below minimum requirements. As a minimum of two layers of material. A Fully cover the mouth and nose; and extend under the chin, and fit against both sides of the face so there are no gaps. Do Not have an exhalation valve or vent. All associates are eligible to apply for an accommodation and we want to ensure this is not a stressful process. We can definitely help! Please leave your login or come see a member of HR so we can work with you directly. Thank you! | Security/Medical Concerns/Safety | 1 | CLOSED | USA |  |  | N |
| 2021-05-16 06:35:17.022000 | JFK8 | 1 | durbenja | It's hilarious how you say you treat Covid seriously after over a year of it but y'all have people with gaiters on, masks not covering their nose, no masks at all, people going around shaking hands and etc. I'm still tick as to how are still associated gets a coaching for disciplinary only get a directed first write up? It's doubtful I have 180 hours in path even so, prove other employees haven't been given progressive discipline when they have more than 180 hours of PTO mixed. At least we are treated and both my senior ops show no regard to anything I say. One communicates for show the other sighs. | SAD | dmccross | [Felipe - GM] Hello Jason. I will come talk to you in person so I can better understand and address you concerns. [Zach-ASM] Hi Joseph, thanks for the comment. We recently found an opportunity with our HVAC system. That explains why the temperature on the 4th floor was higher during the day. We have a temporary machine that is running to keep the temperature cooler in the building. The tall nature of the machines cause the air circulation from the large overhead fan to not reach many of the stations. Now that we have had that installed. When you are in any of these mention areas, we can absolutely look to deploy in smartpac as well. We will find a place to mount them and order this week. | Leaders/Manager/Culture | 1 | CLOSED | USA | 5 | 0 | N |
| 2021-05-17 13:31:40.599000 | JFK8 | 1 | vjasonm | Is there a way to add fans to the smart pac area? The temperature has been increasing in the building. The tall nature of the machines cause the air circulation from the large overhead fan to not reach many of the stations plus the heat makes it extremely uncomfortable to work at for some. | M3H | dmccross | [Zach-ASM] Hi Joseph, thanks for the comment. We recently found an opportunity with our HVAC system. That explains why the temperature on the 4th floor was higher during the day. We have a temporary machine that is running to keep the temperature cooler in the building. The tall nature of the machines cause the air circulation from the large overhead fan to not reach many of the stations. Now that we have had that installed. When you are in any of these mention areas, we can absolutely look to deploy in smartpac as well. We will find a place to mount them and order this week. | Working Conditions/Facilities | 1 | CLOSED | USA |  |  | N |
| 2021-05-17 08:55.688000 | JFK8 | 1 | roznigr | Cantor or ops is amazing goes out of her way over and beyond to get things done and really cares about her associates ! We truly appreciate her and her valuable help. | SAD | zachreun | [Felipe - GM] Hello Rozana, thanks you for sharing this feedback. Candido and Jonny are amazing indeed :) Associates like them are part of why JFK8 is a great place to work. | Engagement/Recognition | 1 | CLOSED | USA |  |  | N |
| 2021-05-17 18:08:55.688000 | JFK8 | 1 | biodayna | There is a serious case of disrespect going on on ARE1. The disrespect that AAs are showing eachother with name calling is too much. It makes working here unbearable and sometimes I don't want to come in knowing I also have this hatred I'm getting. | SAD | sanfdop | [Felipe - GM] Thank you Biodayra, for the positive shout out. Candido and Jonny are amazing indeed :) Associates like them are part of why JFK8 is a great place to work. The behavior you describe is never acceptable. It should be disrespected and called names at any point during work or when at the facility. As per our conversation, please continue to report any incidents to our HR team, can conduct the investigation to eliminate and further occurrences. I encourage everyone to treat these concerns directly to your manager or operations manager in a timely manner to allow us to investigate properly. Thank you again. | Teamwork | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-05-18 07:27:59.074000 | JFK8 | 1 | ginisaag | There are plenty of leaks in SmartPac we all broken and not working at all and none of the bolts from facilities know how to repair the sealers but Jason and he's back half we need them in a great working conditions. Some stations in SmartPac not being used please receive issue ASAP | M3H | curliph | [Felipe - GM] Hello Danielle, thank you for sharing this feedback. Or, your Outbound Operations Manager, will partner with you to review the opportunities you have identified in our smart pac stations so we can get those resolved with our facilities team | Working Conditions/Facilities | 1 | CLOSED | USA |  |  | N |
| 2021-05-18 13:35:32.717000 | JFK8 | 1 | haydelda |  |  | sanfdop |  | Working Conditions/Facilities | 0 | CLOSED | USA |  |  | N |

Amazon_000223

Amazon_000224

| Post Date (in est) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-05-18 13:54:49.968000 | JFK8 | 1 | vipconn | What prevents labor sharing with other sites at full pay of course when certain depts are full? I'm fully trained in QA and those facilities do have a high need for people. Those facilities have an MTR program which means overstaffing is unlikely. Training other associates would not be difficult, dolphin is user friendly. No? I'm just standing here again. cuz effective is 13 people sitting here | MEH | sunkhp | [Felipe - GM] Hello Jason, it was good talking by you this morning. As we discussed, each site has a specific wage structure and if an associate transfers to a new location, that site's wage would be applicable. We currently do not have labor sharing opportunities with other sites, but if you are interested in permanently transferring to another site our HR team will be happy to partner with you on finding alternatives. | Process Improvement Operations (i.e. WF, ACES, IT) | 0 | CLOSED | USA |  |  | N |
| 2021-05-18 14:49:12.178000 | JFK8 | 1 | mospeter | A huge compliment to Manager Titan Macaranger for his great management skills and work ethic. He oversees the Pack Singles/Rebin area with dedication and knowledge. Titan will always provide positive feedback to his associates and this encourages us to do a better job. He truly cares about his associates and is outstanding at handling all the problems and challenges that come up daily. | HAPPY | zachnwc | [Zach-AGM] Thank you Peter for the awesome phone out! I could not agree more =). Great to see the positive recognition! | Leaders/Manager/Culture | 0 | CLOSED | USA |  |  | N |
| 2021-05-18 14:50:51.299000 | JFK8 | 1 | mospeter | Break rooms are way too crowded since all associates leave the same break times. Perhaps staggering times would help. | MEH | zachnwc | [Zach-AGM] Thank you for the comment Peter. We do still have 2 staggered breaks however there was a recent change that now extends other departments use to rotate associates automatically within the department. In order to accommodate the change, last week we added 40 seats. That now leaves 1 rest to emerge. We have also added microwaves to the training rooms that have been converted to break rooms. | Policies and Procedures | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-18 17:50:33.656000 | JFK8 | 1 | vipconn | Imagine as a manager you're standing in front of a judge in an aha hearing. Did he state he had severe arterial overhemoglobic desaturation? Or he had... Did he state this causes a cognitive deficit?...oh he did. Did he provide medical confirmation with an entire study metric?...oh he did. Doesn't your policy state if the disability is obvious that this isn't automatically necessary... ah it does. | MEH | sunkhp | [Jamie- Senior HRM] Hi, thank you for the comment. You are correct, an AtoZ notification was sent to all associates announcing that starting Monday, May 24, fully-vaccinated U.S. field Operations employees who are no longer be required to wear face coverings at work. To be eligible, you must be 14 or more days past your final dose of vaccine and have a copy of your vaccine card. You must enter your vaccine information in A to Z using the "COVID Vaccine Reporting" button at the top of the home page. For now the fully vaccinated employees will receive a green check mark screen in A to Z. Show your green check mark screen when you enter the building at the temperature check location. Yes, Social Distancing of 6ft is still required and enforced. All great questions! Please let us know if you have any other questions or concerns. Thank you! | Working Conditions/Facilities | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-20 19:12:23.551000 | JFK8 | 1 | ANONYMOUS | I heard that the mask policy is being updated, and will be effective starting Monday, May 24. With the updated policy, how would I/amazon/JFK8 move forward with verifying employees' vaccination status? I don't think we can rely on the honor system for this.) Are we also expected to continue to maintain social distancing? | SAD | prenjenn | [Jamie- Senior HRM] Thank you for the comment. You are correct, an AtoZ notification was sent to all associates announcing that starting Monday, May 24, fully-vaccinated... mark signifying you are vaccinated. This sticker will enable you to enter and exit without wearing a face covering. As a reminder, social distancing of 6ft is still required and enforced. Please let us know if you have any other questions or concerns. Thank you! | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-05-20 12:18:23.535000 | JFK8 | 1 | biodayna | Can we have maintenance look at all the stations a lot of them have broken scanners/ and scanner-mounting storage machines broken stations lights not working or falling over | MEH | fslagic | [Skip - GM] Hello Dayna. Thank you for the positive feedback! We can absolutely partner with facilities and singles leadership to go through each of the stations and compile a list of broken equipment. Or OAs/PAS Operations Managers will be the main point of contact for this initiative! | Security/Medical Concerns/Safety | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-05-20 15:37:36.402000 | JFK8 | 1 | biodayna | How is it going to work if you are vaccinated and you don't have to wear a mask how would we know and where would we be getting the sticker from. But we are still getting positive cases is how do we know when it's lifted or not | MEH | prenjenn | [Jamie- Senior HRM] Hi Dayna! Thank you for your questions. An AtoZ notification was sent to all associates announcing that starting Monday, May 24, fully-vaccinated U.S. field Operations employees will no longer be required to wear face coverings at work. To be eligible, you must be 14 or more days past your final dose of vaccine and have a copy of your vaccine card. You must enter your vaccine information in A to Z using the "COVID Vaccine Reporting" button at the top of the home page. For now the fully vaccinated employees will receive a green check mark screen in A to Z. Show your green check mark screen when you enter the building at the temperature check location. By early June, we'll provide a badge sticker to anyone who provided us with the green check mark signifying you are vaccinated. This sticker will... questions or concerns. Thank you! | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 1 | 1 | N |
| 2021-05-21 13:09:04.302000 | JFK8 | 1 | biodayna | Julia am is great she provides motivation and positive feedback to her associates and is very passionate about her job. | HAPPY | prenjenn | [Felipe - GM] Thank you, Dayna, for the positive shout out! Julia is awesome indeed :) | Engagement/Recognition | 4 | CLOSED | USA | 0 | 1 | N |
| 2021-05-21 12:50:10.347000 | JFK8 | 1 | gppabmn | Jenna whoever would we find the check mark on A toZ until we get the sticker and if it was already submitted do we have to summit it again | MEH | prenjenn | [Jenna- Senior HRM] Hi Gianna thank you for your comment. Once you upload your information on AtoZ you will get a green screen saying Thank you your submission you should not have to submit again. We will have leaders and members of HR team at the entrance starting Monday May 24th monitoring individuals entering the building... | Security/Medical Concerns/Safety | 0 | CLOSED | USA |  |  | N |
| 2021-05-21 14:04:00.096000 | JFK8 | 1 | gppabmn | The HR department here DOES NOT know what they're doing. There is always some miscommunication and back and forth with getting proper answers. I was an employee a couple of weeks back and needed an accommodation for the elevator/LOA and the HR team turned it into short term disability. I didn't ask for that. Tried to dispute it, nobody is listening. They are extremely stand-offish and uncaring!! | SAD | prenjenn | [Jenna- Senior HRM] Hi Giordyn, thank you for your comment. We will check the supply of our shirts from the vaccine event and look to get these distributed to associates who have been vaccinated. We will follow up with you to provide more details and make this happen. Thank you! Update 5/25: Thank you for taking the time to speak with me and glad we were able to get you your shirt! | Leaders/Manager/Culture | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-21 17:33:13.627000 | JFK8 | 1 | frajosti | Associates that were vaccinated on site received swag. I wasn't vaccinated on site but would like swag how can we make this happen? | MEH | frajosti | [ER - Carole] Hello Joselyn! Thank you for your feedback. Absolutely! Dr [IHO Ops Manager] will be reaching the initiative for singles area and each station on the end area at a disadvantage... | Policies and Procedures | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-05-21 17:35:44.380000 | JFK8 | 1 | frajosti | The individual fans in singles were a good addition however the stations on the end are at a disadvantage because they get broken equipment we have back mini this and make this happen. Thanks! Update 5/25: Thank you for taking the time to speak with me and the correct fan placement. Thanks. | MEH | fslagic | [ER - Carole] Hello Joselyn! Thank you for your feedback. Dr [IHO Ops Manager] is leading the initiative for singles area readiness and station design. He will be partnering with both facilities and singles leadership to address your concerns. Thank you! Update- Or is working with our RMT and BBM teams to secure new power strips to support every single station. | Working Conditions/Facilities | 3 | CLOSED | USA | 2 | 0 | N |
| 2021-05-21 21:00:31.930000 | JFK8 | 1 | frajosti | Half the lights in the stations in pack aren't able to be plugged in because the power strip is too far to plug it in or the lights just dont work can we look into getting them all fixed or putting an extension strip so they can be plugged in. | MEH | fslagic | [Jenna-Senior HRM] Hi Joselyn, thank you for the comment. Yes, we will definitely take a closer look at your swag, looks to make sure they are accurate. Chrstina from the HR team will follow up with you directly. Thank you! Update 5/25: Thanks you for taking the time to speak with me and glad we could address your concern. | Policies and Procedures | 3 | CLOSED | USA | 1 | 0 | N |
| 2021-05-23 24:31.507000 | JFK8 | 1 | edoak | if I order something can the art be it and have it sent to the locker outside the building, do I pick it up at the end of shift? I'm not sure about it. | HAPPY | grchhi | [Chris - Sr Ops] Hey Edison, great question! The Amazon Locker (named Expert) on the side of the building is accessible to any Amazon customer at any time! The team had this locker added to the building in early 2020 to allow team to be able to securely pick up any Amazon packages that they may have ordered at work. If you chose this location as your delivery point, simply scan the barcode given, and the locker will open to allow you to access your package. If you have any additional questions, feel free to reach out! | Leaders/Manager/Culture | 3 | CLOSED | USA | 1 | 0 | N |

Amazon_000225

| Post Date (in est) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-05-22 07:16:45.032000 | JFK8 | 1 | edskak | Is the $500 bonus for people who transfered in April too? | HAPPY | pregnyn | [Jenna - Senior HRM] Hi Edison, thank you for your comment. Yes, the $500 bonus is available to all T1 and T3 associates who are employed from May 23- July 16th. This bonus will be paid out by July 30th. Please let us know if you have any other questions. Thank you! | Pay and Benefits/Time off | 2 | CLOSED | USA |  |  | N |
| 2021-05-22 13:08:07.941000 | JFK8 | 1 | vjiosmn | In response to managements previous comments. I confirmed with DLS directly that a ADA violation has clearly occurred. If I've written up but not given the time regular associates are in the same role, write up needs to go or it's illegal discrimination based the lack of assignments being due to my schedule more often than not. Scott admitted this on the record. Cox admitted it to my Fave. |  | M3H | [Jenna - Senior HRM] Hi Jason. At Amazon and JFK8 we have a no discrimination policy. Sarah, PCII leader, and Mike from the HR team will be following up with you today to discuss your questions and concerns regarding your work assignments and current accommodation. Thank you. Update 5/25: Thank you for taking the time to speak with Mike yesterday. Please let us know if you have any additional questions or concerns. | Leaders/Manager/Culture | 2 | CLOSED | USA |  | 0 | N |
| 2021-05-22 13:12:31.996000 | JFK8 | 1 | vjiosmn | Additionally in continuance of my most recent post, specifically what Erin and Scott admitted is that my accomodation schedule impacts me more than other associates. I come in later, therefore there's less stations, less stations open and an error robo can't be afforded even potentially. This occurs, this facility knows it occurs, DLS says it's a violation. Continued ... 2/3 |  | pregnyn | [Jenna - Senior HRM] Hi Jason, please see my previous response. Sarah and Mike will follow up with you to address your specific questions and concerns. Thank you. Update 5/25: Thank you for taking the time to speak with Mike yesterday. Please let us know if you have any additional questions or concerns. | Leaders/Manager/Culture | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-05-22 13:13:57.129000 | JFK8 | 1 | vjiosmn | 3/3 I don't per se need a new accomodation, the management needs to follow the first accommodation according to policy and more importantly, according to federal law. |  | pregnyn | [Jenna - Senior HRM] Hi Jason, please see my previous responses. Sarah and Mike will follow up with you to address your specific questions and concerns. Thank you. Update 5/24: Thank you for taking the time to speak with Mike from the HR team about your questions and concerns. | Leaders/Manager/Culture | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-05-23 14:53:39.448000 | JFK8 | 1 | caynheli | Someone has got to stop taking the poles form the ARSAW stations, corrective action must be taken. |  | fixedeng | [Frank-Sr Ops] Carl, thanks for bringing this to our attention. Audits of all ARSAW stations will be conducted this evening to ensure all required equipment is on stations. Update 5/25/21 09:27hrs: Carl, an audit of all ARSAWs has been completed- stations missing poles have been identified and have been ordered. Again, thank you for bringing this to our attention. | Working Conditions/Facilities | 2 | CLOSED | USA |  | 0 | N |
| 2021-05-23 16:02:07.674000 | JFK8 | 1 | kucdaren | Just wanted to check and see if there has been any progress on the situation with VET notifications. I haven't heard anything for awhile and it's still not working. |  | pregnyn | [Jenna- Senior HRM] Hi Jason. We have a no discrimination and no retaliation policy at Amazon and JFK8. Sarah, PCII leader, and Mike from HR will be following up with you... Update 5/25: Thank you for your comment. Toby, PCII manager, and Tawana from the HR team will be following up with you to address your issues and concerns. We verified your Ab2 notifications. Thank you. Update 6/7/21: Hi Kenneth, your manager submitted a ticket to look into any other issues that may be impacting your notifications. Update 6/7/21: Hi Kenneth, your HR recently had been VET recently but please let us know if you are any issues moving forward. Thank you. | Policies and Procedures | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-05-23 16:20:48.555000 | JFK8 | 1 | vjiosmn | I'd like one unobstructed day to do my job with no retaliation, just one day without disability discrimination. This facility is horrible with workers rights, absolutely horrible. |  | M3H | [Jenna- Senior HRM] Hi Jason. We have a no discrimination and no retaliation policy at Amazon and JFK8. Sarah, PCII leader, and Mike from HR will be following up with you to discuss your concerns. Thank you. Update 5/24: Thank you for taking the time to speak with Mike from the HR team about your concerns. | Leaders/Manager/Culture | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-05-23 16:27:49.696000 | JFK8 | 1 | vjiosmn | Why would the associate with the least station time be pulled before associates with the most ... at the time? The law has a word for this, it's called retaliation. Not that managers at this amazon follow policy unless it fits them but there's also a company policy against it, falls under "favoritism". |  | pregnyn | [Jenna- Senior HRM] Hi Jason. Please see my previous responses. Sarah and Mike will be following up with you today to address your specific questions and concerns. Thank you. Update 5/24: Thank you for taking the time to speak with Mike from the HR team about your questions and concerns. | Leaders/Manager/Culture | 1 | CLOSED | USA |  | 0 | N |
| 2021-05-23 17:27:09.532000 | JFK8 | 1 | caynheli | Also, some of the computers for the brake room is acting weird, and when are the item booths being re plugged in. |  | pregnyn | [Jenna- Senior HRM] Hi Carl, thank you for your comment. I have reached out to the IT team to check the computers in the break room. In addition, we are working on connecting the item booths to power today. Update 5/25: We were able to look into both issues for you and had a technician connect them. Also, IT has checked on the computers in the break room and has fixed the issue. Thanks again for bringing this to our attention. | Working Conditions/Facilities | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-05-23 21:28:39.978000 | JFK8 | 1 | damjenan | Men's restroom on south side first floor by gate 1342 has mold growing visibly on the wall under the countertop. |  | sanldip | [Felipe - GM] Thank you, Jesse, for pointing this out. Our base building team is currently addressing this issue. Sparkling and Chalking of the restroom is taking place today and the restroom will be repainted tomorrow. Thank you for sharing this, please continue leaving similar feedback for us to keep JFK8 in perfect condition! | Security/Medical Concerns/Safety | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-05-24 12:45:50.981000 | JFK8 | 1 | carlehab | Good Morning Please Jenna when you have a chance can you chime me? I need to talk to you about a situation. I under that you're familiar with taking care of the people of Amazon. Thank you Black Lives Still Matter |  | sanldip | [Jenna- Senior HRM] Hi Carlena, thank you for your comment. I will follow up with you in person today. Thank you. Update 5/25: Thank you for taking the time to speak with me yesterday. Amanda or I will circle back with you by the end of the week once we have a resolution. Update 5/27: Thank you for taking the time to speak with Amanda. I am glad she was able to resolve your concerns. Please let us know if you have any other questions. | Leaders/Manager/Culture | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-24 13:05:39.398000 | JFK8 | 1 | carlehab | Good Morning. Thank you Joe and Jason for ordering a bench for people with disabilities that need to waiting for Access a Ride/family one hour/Don't get me stared on AAR :( The bench should be here soon right? Dragging chairs from the smoking area is killing my arms. :) Thank You again for Caring. Disabilities Lives Matter Too Stop Asian Hate Black Lives Still Matter |  | dmnocros | Hi, Carlena. The Access-A-Ride bench was ordered and it is currently in transit to JFK8. I just checked the tracking info and it is scheduled to arrive in about a week. We will install it as soon as it shows up. | Working Conditions/Facilities | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-24 13:25:10.899000 | JFK8 | 1 | hapdeinda | I never get my swag for not using (VP) what's going on it's a very long time since my swag bucks I have been waiting and why it take 4 to 6 weeks to get the swag when I order it on amazon I order from the swag buck for productivity, quality, and UPT this matter needs looked into that AA receive their swag bucks its only fair |  | sanldip | [Jenna - GM] Hello, thank you for sharing this question. VET opportunities are open for shifts and departments when additional staff to meet capacity is needed in order to meet customer demand. If no VET opportunities are open now, they are provided when... come to work, as long as they meet a minimum number of hours worked per month. It is important to note that the associates do not lose their benefits that but time associates do. If you have any additional questions regarding the swag program and would like to speak with a manager who can assist, please let us know. Thank you. | Policies and Procedures | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-24 14:46:07.876000 | JFK8 | 1 | ANONYMOUS | Is the entire FC getting any VET notif. or is it just part timers ? because honestly they took weekend vize for a reason, they dont want the FC to halve an VET be sent to everyone, I need some overtime BADLY |  | M3H | [Helper - GM] Hello, thank you for your comment... | Working Conditions/Facilities | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-05-24 17:37:33.030000 | JFK8 | 1 | carlehab | What is this area in New York that is opening in Amazon | HAPPY | fixedeng | [Frank-Sr Ops] Carl, thanks for reaching out. Amazon is growing throughout the greater NY metropolitan area in many different business area. If you are looking for a specific business unit let's connect tomorrow. | Career/Advancement Opportunities/Training | 1 | CLOSED | USA | 1 | 0 | N |

| Post Date (in utc) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-05-24 18:35:14.746000 | JFK8 | 1 | vjasonm | UIL1 in literal downtown Chicago a metro very similar to Manhattan or Industry City in Brooklyn has a metric. Wow what a revelation right? The revelation is they (except excess tot) NEVER use the metric to write anyone up, NEVER. NYC with it's higher population, has made these managers feel we are disposable and it needs to end. The anti union rhetoric is illegal in nature. So much abuse of rights | MEH | prenjenn | [Jenna- Senior HRM] Hi Jason. At Amazon and JFK8 we adhere to our policies and procedures and always ensure they are implemented fairly and consistently. We take pride in taking care of the needs of all associates and the intent of our conversations is always to identify and eliminate barriers. We encourage everyone to share with leaders if there is anything that is preventing them from working efficiently. We have implemented countless improvements at the site based on the feedback provided by associates, such as any stations not functioning, broken equipment, gaps in leadership coverage in certain areas, balancing cohorts and more. Your manager, Toby, will be following up with you to address your specific concerns around metrics regarding quality and productivity. In regards to our site communication, we want to ensure our associates are informed, know the facts and protect their information. Please let us know if you have any other questions or concerns. Thank you! Update: Thank you for taking the time to speak with Toby. Please let us know if you have any additional questions or concerns. | Leaders/Manager/Culture | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-05-24 21:49:23.906000 | JFK8 | 1 | rogomarc | PCF - 3rd & 4th floor on the North side (idk hows on the South) for past 3 weeks we are missing cups, plates, condiments, salt and pepper could somebody refill them thank you | SAD | franklug | [Frank-Sr Ops] Marcin, thank you for letting us know. We will be speaking to our third party vendor responsible to ensure all materials are always on hand. | Working Conditions/Facilities | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-05-26 13:41:27.648000 | JFK8 | 1 | granbret | Accept DOGECOIN before prime day, it would give Amazon a lot of attention. Exclusive discounts for DOGE hodlers. | HAPPY | zachmarc | [Zach-AGM] Thanks for the comment Brett. At this time, I do not know of any plans Amazon has on accepting other types of currency. I'll come follow up with you in person though as I also find cryptocurrency pretty fascinating. | Policies and Procedures | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-05-26 15:18:01.897000 | JFK8 | 1 | spconnor | Leadership needs to "know the facts" and stop intentionally spreading misinformation about the ALU. Stop painting us as outsiders. We are a committee of amazon workers exercising our LEGAL RIGHT to form a union. Management consistently puts profits over people. We are a democratically run organization of brilliant leaders at Amazon, and every time you attack us you are attacking your OWN WORKERS. | | sanfelip | [Felipe - GM] Thank you, Connor, for the feedback. I appreciate your passion and your point of view. We take extreme pride in having an open and direct relationship with every associate. Constant communication with our associates through events such as the VOA huddles, birthday round tables, and gemba walks, are all in place in order to ensure that we hear firsthand your feedback and address any opportunities. Your feedback helps us act on dozens of improvements every week. As a site, however, we have the responsibility to make sure our associates are informed about issues of importance. We feel strongly that associates deserve to hear from all sides, and get all of the facts, before forming an opinion about whether having a union would be in our best interest here at JFK8. We will continue to share facts so decisions can be freely made. But make no mistake: we respect all of our associates' right to choose for themselves. | Leaders/Manager/Culture | 0 | CLOSED | USA | 0 | 1 | N |
| 2021-05-26 15:21:12.140000 | JFK8 | 1 | spconnor | Stop trying to attack our volunteers as though they run our worker-led committee. We reserve the right to elect our own leadership and democratically decide the structure of our union. Stop attacking Chris Smalls, who you ILLEGALLY FIRED last year for protesting unsafe working conditions. He is a strong advocate, but he doesn't lead us. We lead ourselves. | | sanfelip | [Felipe - GM] Amazon has and continues to prioritize safety protocols during the pandemic. We have been following CDC recommendations since day 1, and have developed safety innovations in multiple practices that were later followed by several companies. While we welcome feedback from everyone, we do not condone when associates violate safety protocols and put others at risk. | Leaders/Manager/Culture | 0 | CLOSED | USA | 0 | 1 | N |
| 2021-05-26 15:23:10.707000 | JFK8 | 1 | spconnor | And you should all be ashamed of yourselves for bringing in union busters to divide workers with racist remarks. Why does Amazon always try to discredit black leaders who are critical of the company by using racial smears? You already smeared Chris Smalls as "not smart or articulate." How did that go? | | sanfelip | [Felipe - GM] We are proud of the group of associates and leaders that make part of JFK8. We value everyone's backgrounds and experiences, and have a responsibility to share facts and inform our employees on matters that impact their employment and experience here. We will continue sharing facts with associates so they can make a decision that is in their best interest. | Leaders/Manager/Culture | 0 | CLOSED | USA | 2 | 1 | N |
| 2021-05-26 15:26:11.504000 | JFK8 | 1 | spconnor | The fact that you spread so many lies about the ALU and attack your own workers just shows how afraid you are of our power. I'd love to hear you explain how using propaganda to manipulate workers is actually helping them. And I'd like Felipe to respond publicly. Don't bother coming to see me. | | sanfelip | [Felipe - GM] Thank you for the comment, Connor. We respect all of our associates' rights, and therefore we believe that it is in the best interest of our associates that we provide them with all available factual information before making any important decision that will impact their employment. The information we have provided about ALU (and which we would seek to provide about any union), is factual and provided to make sure our associates are fully informed. We believe that our associates should have all of the facts before making important decisions, and we will continue sharing facts. | Leaders/Manager/Culture | 0 | CLOSED | USA | 1 | 1 | N |
| 2021-05-27 12:22:36.503000 | JFK8 | 1 | haydenda | I wanna say thank you for all the brand new sealers in Smart Pac everything is the way it should be during our shift thanks again. | HAPPY | falugic | [OB Sr. - Carole] Hello Danielle! You are welcome! Glad to have made this happen and very excited that we were able to deploy new sealers! Thank you for the feedback! | Working Conditions/Facilities | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-05-27 13:01:37.973000 | JFK8 | 1 | haydenda | Good morning can you please place signs in all the restrooms All Employees Please Wash Your Hands When Leaving Restroom it's very unhealthy and unsanitary for you not to wash your hands when leaving the restroom bad enough you're still in a pandemic dealing with COVID so please can you place signs in the restrooms thank you very much. | SAD | dmccross | Danielle, thank you for your comment! We have network approved signage at our building, but some extra signs encouraging washing and hygiene can't hurt. We want to keep our associates safe. We will see if we have any signs on hand and if we don't we will buy them from our sign vendor. Thanks again for the recommendation! | Working Conditions/Facilities | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-05-27 18:39:38.562000 | JFK8 | 1 | dmillrf | Addressing a Union from the newsletter: Don't Unions need 30% of workers to vote for one before they can be legally recognized as a Union? So how would they be able to register without a vote? https://www.nlrb.gov/about-nlrb/rights-we-protect/the-law/employees/your-right-to-form-a-union | MEH | prenjenn | [Jenna-Senior HRM] Hi Dana, great question, thank you for asking. We'll have someone reach out to you individually to answer the question in more detail, but here is a brief explanation of the process. There are few steps in a process before a union is the exclusive representative for employees. The first step is what the union is undertaking right now, trying to get you to sign an authorization card, granting the union the right to be your exclusive legal representative. This is a legally binding document. If the union gets signed authorization cards from at least 30% of all employees in the bargaining unit they want to represent, they can then petition the NLRB for a vote. If it goes to a vote and at least 50% of all employees who vote actually vote for the union, then that union represents all employees in the union's proposed bargaining unit. This is why it is so important to understand exactly what you are signing, before you sign so you fully understand the impact. | Policies and Procedures | 1 | CLOSED | USA | | | N |
| 2021-05-28 09:57:46.424000 | JFK8 | 1 | dmillrf | Okay, so from this explanation and the National Labor Relations Board website, there is no legally binding document if there is no Union in place, so it's totally fine to sign a card saying that we want a chance to vote. Thanks! https://www.nlrb.gov/about-nlrb/rights-we-protect/the-law/employees/your-right-to-form-a-union | HAPPY | prenjenn | [Jenna- Senior HRM] Hi Dana, thank you for this question. Do not be misled by anyone who tells you that a union authorization card is not a legally binding document. We will have someone from the ER team follow up with you in person to help clarify any questions you may have so you can make an informed decision. Update: Thank you for taking the time to speak with someone from the ER team. Please let us know if you have any additional questions or concerns. | Policies and Procedures | 0 | CLOSED | USA | 1 | 1 | N |
| 2021-05-29 04:26:52.275000 | JFK8 | 1 | alimoss | Can I get Amazon delivery driver added to my resume here? My delivery person accidentally delivered a neighbors 10' gazebo to my house who lives 4 blocks away. I put the item in my car and dropped it off to them before coming to work on Friday. Have the pics in case anyone is interested in tracking it =) | HAPPY | sanfelip | [Felipe - GM] Anna, this is absolutely amazing, and the definition of customer obsession. Thank you for doing this and sharing this story with us :) Please come see me in the office the next time you come in to a flex shift, I would like to meet you and thank you in person! | Teamwork | 2 | CLOSED | USA | | | N |
| 2021-05-29 10:50:50.997000 | JFK8 | 1 | ledjonm | I thought that I was never going to write in this board any more but yesterday I received an email from JFK8 askhr inviting me to participate in a celebration about Rock team training completed This Rock team thing for me it been very but very annoying Please be professional and stop playing with people Don't bother to follow up with me Thank you | SAD | sanfelip | [Felipe - GM] Ledjon, I am sorry your experience with the Rock Team was not a positive one. I would like to understand what part of the training experience we could have acted on better, so that you and other associates going through the Rock Team training do not experience the barriers you did. If you don't mind sharing more details, our team will partner with you the next time you are on site so we can gather details. | Leaders/Manager/Culture | 2 | CLOSED | USA | | | N |
| 2021-05-30 15:30:32.096000 | JFK8 | 1 | spconnor | Completely empty responses, Felipe. Just because you call something a fact doesn't mean it is. Especially when your propaganda asks rhetorical questions you already know the answer to. Here are some actual facts: ALU is a new, worker-led, independent union that is run SOLELY by workers and not currently under the umbrella of any existing organization. | | sanfelip | [Felipe - GM] Connor, our phenomenal group of associates make JFK8 the network leading team it is, and we will keep our associates rightfully informed. We value our direct relationship with associates, and have taken hundreds of timely actions based on direct feedback from associates. We respect our associates' choice of deciding whether they would like to join a union or not join a union. The ALU has the right during this process to make promises, but promises are not guarantees. We provide the facts. We will continue to share the facts with our associates so everyone is fully informed before making a decision. | Leaders/Manager/Culture | 1 | CLOSED | USA | 2 | 1 | N |

Amazon_000227

| Post Date (in csc) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-05-30 15:32:34.831000 | IFK8 | 1 | spconnor | ALU has no need to file with the Department of Labor, only the NLRB. And you know that. There is no "president" of the ALU because we all democratically elect our leadership when the union is formed. Also, you seem to have a pretty low opinion of Amazon workers if you think we "have no experience" … | | sanfktp | [Felipe - GM] Thank you, Connor. Please see the response below. | Leader/Manager/Culture | | CLOSED | USA | 2 | 2 | N |
| 2021-05-30 15:56:58.487000 | IFK8 | 1 | spconnor | Why is the learning team being shown so much favoritism? I can't blame the new hires for being new but I can blame established associates for incorrectly trained new hires. I was illegally denied a slow transfer when I had hours of documented incorrect … | | sanfktp | [Felipe - GM] Jason, thank you for your feedback. Our HR team will partner with you today to better understand the concerns you mention regarding the onboarding process so we can address it promptly and discuss the transfer policy. | Leader/Manager/Culture | | CLOSED | USA | 1 | 2 | N |
| 2021-05-30 20:06:46.456000 | IFK8 | 1 | vjasom | we had to update more counts today than any day in my life working for amazon. When is it in ICQAs job description to retrieve every chute for every department who have their pods in disarray? I never hear of slow write ups… | | sanfktp | [Felipe - GM] Jason, thank you for your feedback. The intention behind the ICQA process paths is to identify bins that have potential defects, based on transactions performed by pick that suggest there is a missing item in a bin, or a piece of inventory… | Working Conditions/Facilities | | CLOSED | USA | | | N |
| 2021-05-30 20:09:06.138000 | IFK8 | 1 | vjasom | I'm Glad someone called out Felipe before me, I see no ownership EVER from him or other managers. All I hear is excuse after excuse, denial of legal rights and ZERO solution seeking communication. I, and most of us I'd assume don't see leadership from ANY manager here… | MEH | sanfktp | [Felipe - GM] Jason, thank you for your feedback and value our direct communication with all associates to address all concerns. Our leaders show ownership by seeking and valuing feedback and address any concern brought to their attention. We hold many avenues… | Working Conditions/Facilities | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-05-31 05:03:095000 | IFK8 | 1 | vjasom | 22?? This facility needs to honor basic rights! We have rights we don't use. As previously stated, while ALU perhaps isn't the option for everyone, I don't know anyone, at least anyone I'm aware of that doesn't support a union in general. We are being made… | MEH | prenjarn | [Jenna - Senior HRM] Hi Jason, please see the previous response. Someone from the HR team will follow up with you on the topics you discuss. Thank you. | Leader/Manager/Culture | | CLOSED | USA | | | N |
| 2021-05-31 40:55.380000 | IFK8 | 1 | vjasom | how does amazon ~ offer help? but then denies it? whats the point of that I put in a request for hardship ramp schedule accommodation and it got denied. I personally don't know why I even have a job here AMAZON!!! I should be no reason this happens. all info needed was on request!! CHILD CARE! thats all you need to know! Now help that I have put it on blast for the whole building to see! | | prenjarn | [Jenna - Senior HRM] Hi Maxell, We are happy to help and look into your accommodation request. however, the Site HR team does not approve or deny accommodation requests and these would need to go through the accommodations team. As mentioned we are more than happy to help assist with this process if you have any questions. Thank you for taking the time to speak with Marcus today regarding your specific concerns. Please let us know if there are any other questions you have. Thank you. | Leader/Manager/Culture | | CLOSED | USA | 4 | 0 | N |
| 2021-05-31 12:42:06.506000 | IFK8 | 1 | wetnandi | Corin as always!! I only take real action when we post up here, because you do not like being called out on it | | prenjarn | [Jenna - Senior HRM] Hi Maxell, please see previous response. Thank you. | Policies and Procedures | | CLOSED | USA | 4 | 0 | N |
| 2021-05-31 12:43:13.195000 | IFK8 | 1 | wetnandi | [previously deleted comment because I feared retaliation, GM himself said I'm good so I'm going to re-voice and repost in-updated version. The same EXACT HRM saying "we have an open door policy" on my posts has no issue… | SAD | prenjarn | [Jenna - Senior HRM] Hi Maxell, please see previous response. Thank you. | Policies and Procedures | | CLOSED | USA | 3 | 0 | N |
| 2021-05-31 21:56:21.391000 | IFK8 | 1 | vjasom | But since we're on the topic… please follow open door policy. It's been over a month since I asked for your superior in email. You still haven't got a reply back to mine. Have fixed for all to see. No following up needed, no HR run around. Please don't here, to all associates can see just how much management and HR doesn't… | | prenjarn | [Jenna - Senior HRM] Hi Jason, thank you for bringing this to our attention. I am sorry to hear that you have not received a response directly with our associates to address any concerns that are brought to your attention. Many leaders from the Ops team as well as the HR team have followed up with you… | Leader/Manager/Culture | | CLOSED | USA | | | N |
| 2021-05-31 12:59:18.147000 | IFK8 | 1 | vjasom | Good Morning, I hope you all had a great morning. I am still fighting to get my voice heard!! With gradually slow down because Thursday I meet with the EEOC. I will obtain a right to sue letter and I will hold managers accountable for every illegal behavior I've experienced over time… | | prenjarn | [Jenna - Senior HRM] Hi Jason, we are sorry to hear you're excited about the Access A Ride bench that we installed. We will be sure to pay attention to ensure that smokers are smoking in designated smoking areas. The bench and signage were placed in the designated smoking areas to create separation and also to make the bench area closer to the main entrance. I will come see you to see what other suggestions you have regarding the bench… | Leader/Manager/Culture | | CLOSED | USA | 1 | 0 | N |
| 2021-05-31 13:09:42.549000 | IFK8 | 1 | vjasom | Good Morning. Thank you for putting the bench behind the Access A Ride sign. Jason and Lynn and any other smoker is very happy that now we are trying to keep the smokers off the bench. (That's another story.) We need help with something else. | | jeetroy | [Joe - LPM] Hi Carlton - I am happy to hear you're excited about the Access A Ride bench that we installed. We will be sure to pay attention to ensure that smokers are smoking in designated smoking areas… update [6/4/21] [Joe PM] Thanks for meeting with me today, and just to follow up we have installed an order to deter… email a.odem1@amazon.com. Thank you. | Leader/Manager/Culture | | CLOSED | USA | 2 | 0 | N |
| 2021-05-31 14:30:15.878000 | IFK8 | 1 | carlenub | Good Morning for the last two weeks Access A Ride has been picking us up 2 to 3 hours late. Please can Amazon get in contact with Access A Ride so we can get the cars on time to work and home. Please discuss this with us. Amazon should tell AAR that our disabilities employees. Thank you | | prenjarn | [Jenna - Senior HRM] Hi Carlton, thank you for bringing this to our attention. I will reach out to Access A Ride and let them know how they operate. I spoke with them. Thank you. Update [6/4/21] I spoke with Access A Ride and let them know we had escalations at the ride with your schedule, so we are working directly on this. Please discuss this with us… | Transportation/Commute | | CLOSED | USA | 3 | 0 | N |
| 2021-05-31 14:31:53.828000 | IFK8 | 1 | carlenub | Good morning. Please can you all rethink the use of ear buds? I am going to tell you benefits of the ear buds. I hear no out loud when singing. Happy Employee Happy work and helps with anxiety. Please discuss this with Jeff before he retires in July. Stop saying it's a safety issue cause we wear ear plugs, you can't hear anything with those things in your ears. One bud one ear think about it? | HAPPY | zachmac | [Jenna - Senior HRM] Hi Carlton, currently one of the sites in the network will not use a initiative called FC music which has been deployed to stations in jFK, slow and court. Amazon has partnered with I heart radio to be able to provide a safe way to listen to music via the FCM speakers. Leadership is currently working to have an initiative in other areas of the building and is still being worked on. We will continue to provide the feedback regards and work together to creatively find a solution here. | Leader/Manager/Culture | 1 | CLOSED | USA | 4 | 0 | N |

Amazon_000228

| Post Date (in est) | Site | Job Level | Comment Author | Comments | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-05-31 19:39:34.206000 | JFK8 | 1 | rmjohnny | So it takes some glitzy gladiators to bring real ketchup?? These elementary school ketchup packets & Happy Memorial Day | MEH | zachmarc | [Zach-AGM] Hi Johnny, thank you for the feedback! We are happy to say we have partnered with our food vendor and they will be supplying us with HEINZ ketchup packets moving forward. | Working Conditions/Facilities | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-05-31 19:23:57.099000 | JFK8 | 1 | dmiltf | Can we please make the font size on this message board larger from here on in? Possibly a text measurement of 50-72. I don't wanna get TOT-ed trying to read it. | HAPPY | zachmarc | [Zach-AGM] Hi Dana, thank you for the feedback. We have now increased the size of the text on the VOA board! Please note that the VOA board is also accessible to all employees at all times on ASU. | Working Conditions/Facilities | 1 | CLOSED | USA | 5 | 0 | N |
| 2021-05-25 01:12.26.000 | JFK8 | 1 | ragonacc | Shifts in Amazon are 10h long so why payed for only 8h on holidays? | MEH | prerjenn | [Zach-AGM] Hi Dana, thank you for the comment. Jeffrey from the HR team will follow up with you on your next scheduled shift to go over what the issue may be. Thank you! Update 6/7/21. Thank you for speaking with Jeffrey from the HR team. Please let us know if you have any additional questions or concerns. | Pay and Benefits/Time off | 1 | CLOSED | USA | 1 | 3 | N |
| 2021-06-01 15:56:36.763000 | JFK8 | 1 | dmiltf | Thank you very much for increasing the size on ONE of the VOA boards, now could we increase the size of EVERY VOA board. As wherever a person is in the facility, they should be able to see it with multiple bodies stopped at one larger screen & not excluding workers with poor eyesight from having access to every conceivable available way to stay informed? | HAPPY | prerjenn | [Zach-AGM] Hi Dana, thank you again for the feedback. Every VOA board is updated with the increased font size. Please note that the VOA board is also accessible to all employees at all times on ASU. | Working Conditions/Facilities | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-01 18:24:37.336000 | JFK8 | 1 | frappel | Ever since last week after the maintenance was done on atax I'm not able to use clock punch on my phone it's very annoying please fix it. | MEH | prerjenn | [Jenna- Senior HRM] Hi Dana, thanks you for the comment. Jeffrey from the HR team will follow up with you on your next scheduled shift to go over what the issue may be. Thank you! Update 6/7/21. Thank you for speaking with Jeffrey from the HR team. Please let us know if you have any additional questions or concerns. | Policies and Procedures | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-01 20:58:45.924000 | JFK8 | 1 | rxoit | Hi. Can we please get the water Cooler by column H3 located in singles rinx fixed? Water not dispensing. Thank you. | MEH | saeidax | [Ahmed - Proc Ops] Hi Rob, Thanks for the feedback. I have reached to our maintenance team to get this water cooler fixed ASAP. Please update - Water cooler has been fixed. Thanks | Working Conditions/Facilities | 1 | CLOSED | USA | 1 | 1 | N |
| 2021-06-02 11:55:51.796000 | JFK8 | 1 | ragonacc | [Jenna- Senior HRM] Hi Marco thank you for the comment. We operate based on a 40 hour work week so holiday pay is 8 hours. - [A 40h work week divided by 4 days of work gives you 10h of work each week 5 days it would be 8h so again – we are we paid only for the 8hM we work 10h daily 4days in a week 7.5w using same hours in week overtime and 10% of extra pay? | SAD | prerjenn | [Jenna- Senior HRM] Hi Marco. We have many different schedules throughout the organization and holiday pay is consistent across all schedules, so that at every associate, regardless of schedule, get the same amount of holiday pay. In addition, if you work the holiday you will earn time and a half pay for all hours worked on that day. Please let me know if you have any additional questions. Thank you. | Pay and Benefits/Time off | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-02 13:22:06.002000 | JFK8 | 1 | ledpom | Felipe thank you for answering to my concern on 05/20/2021. As GM you are, I suggest you to be informed about my concern that I asked you before you answer me because you misunderstand my concern. I never started the ADU ticket and I don't believe any more for any TC to follow up with me. I know their answer. Thank you and I hope you change something in your leading on this building. | SAD | amostoon | [Anna - HRM] Hi Ledpom. I am glad you were able to speak with Felipe during the answer you. However I completely disagree with your comments regarding Amazon's treatment of associates. We treat all employees with dignity and respect, and we encourage associates to provide any concerns associated with them. We will continue to follow up with your questions about pursuing this anytime in the future. | Leader/Manager/Culture | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-02 16:41:47.557000 | JFK8 | 1 | depalmer | How does a billion dollar company have enough time to send discouraging ANTI-UNION messages about ALU though the messaging boards yet not enough time to address employees with disabilities and their concerns?? For those of us with disabilities and underlying health conditions like dirt? If you really cared about your associates you would let them decide whether they want a union or not | MEH | prerjenn | [Jenna- Senior HRM] Hi Derrick, thanks you for your feedback. You are certainly free to express your views; however I completely disagree with your comments regarding Amazon's treatment of associates. We treat all employees with dignity and respect, qualities that are embedded in our culture and the direct communication with our team so that we are able to address these ideas and suggestions. If you know of any associates who feel differently, we encourage them to reach out to us through any of these avenues. | Engagement/Recognition | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-17 10:43:119000 | JFK8 | 1 | depalmer | For a company that goes on & on about their concern with accommodations for associates with disabilities who've' tell they've been retaliated against because their age or health causes them to work at a slower pace than others, or you have problems about it when their age or health causes them to work at a slower pace than others, while not without prior warnings or terminations? Isolate that | MEH | prerjenn | [Jenna- Senior HRM] Hi Derrick, please see the previous response. We will have someone from the HR team follow up with you directly to address your specific concerns. Thank you. Update 6/4/21: Thank you for taking the time to speak with the HR team regarding your specific concerns. We appreciate the feedback and please let us know if you have any additional questions. | Security/Medical Concerns/Safety | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-06-02 18:01:10.700000 | JFK8 | 1 | dmiltf | We need new batteries for damage processes and problem solvers. We're waiting significant time out of every hour searching for a charger before we have to document the issue. I cannot imagine the amount of merchandise processed if that problem were eliminated. We additionally need color battery cables to our workspaces as well. Help us increase our potential! | HAPPY | fatagic | [Eli Sr - Carole] Hello Dana! Thank you for your comment and good feedback! BHO-HF2 Area Manager, Henry Yun, will be working with our IT Team to ensure we have enough batteries and charging locations for problem solvers. Update - Additional batteries deployed to charging locations. | Working Conditions/Facilities | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-02 12:00:24.880000 | JFK8 | 1 | haydenla | Rob Nicolli is amazing he helps associates with ease and fixes problems efficiently . He/management materials he's so helpful. He's hard working, kind engineering amazing | SAD | fatagic | [Eli Sr - Carole] Hello Danielle! Thank you for your comment. I have touched base with our singles teams to look around to make sure everything is working properly so nights shift leave everything alone thank you very much. | Engagement/Recognition | 0 | CLOSED | USA | 0 | 1 | N |
| 2021-06-02 12:02:17.750000 | JFK8 | 1 | biodanra | Good morning. Please can you fix the human elevator. Anzonians get tiery when you are working up the stairs | HAPPY | sanhbip | [Felipe - GM] Danra, it was great meeting you this morning. Thank you for the positive shout out to Rob! And thank you for making this a great experience. | Working Conditions/Facilities | 0 | CLOSED | USA | 0 | 2 | N |
| 2021-06-03 14:40:14.550000 | JFK8 | 1 | garmariqa | Greeting! With Prime Week approaching, I would just like to know if a schedule has been determined yet. In years past, we're there to provide work to added hours. As many of us want to plan accordingly for extended hours/days, it would be helpful to know sooner rather than later. Thank you in advance! | HAPPY | sanhbip | [Felipe - GM] Patricia, thank you for your feedback. We are currently finalizing the schedules for Prime Week as we learn more about the capacity needed for that week by shift/day for that week. There will be MET that week for most coworkers. We want to make sure that with all associates in advance as everyone has time to plan for this. | Working Conditions/Facilities | 0 | CLOSED | USA | 0 | 0 | N |

Amazon_000229

| Post Date (in zzz) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Six in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-03 15:41:10.436000 | JFE8 | 1 | farruks | There was a time when NY fulfillment but more pay rate then NJ fulfillment, but now NJ pay rate is almost the same because they had given huge increase to their Tier 1 pay rate, whereas NY - JFK8 has given less increase, which makes NY commute from NJ less attractive with huge tolls. Please consider the increase should be rational not bias. This makes Amazon contradicting its own principles. | | SAD | [Jenna- Senior HRM] Hi Farrukh, thank you for the comment. Every year Amazon conducts an annual wage review in the area, or node, which takes a number of factors into account including current pay in similar rates at different companies. Sometimes this information shows changes in the node and there may be an opportunity to adjust wages for a role, and other times we see that our base pay is still in the correct range. During Q2 of this year, we received an increase in our starting wage and increases in our step plan where all eligible associates received between a $0.50 and $1.50 increase. These adjustments vary by location and node, however, the base pay for Tier 1 roles is still significantly higher than other similar fulfillment centers in NJ. Please let me know if you have any additional questions. Thank you! | Pay and Benefits/Time off | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-06-03 17:40:24.344000 | JFE8 | 1 | carlenab | Good Afternoon Jenna Thank you speaking to Access a ride for the disabilities employees behalf. The situation got little bit better. It seem like every Friday we are all getting pick up very late. So we will see tomorrow if your word get through to Access a Ride... Disabilities Lives Matter Stop Asian Hate Black Lives Still Matter | HAPPY | prenjana | [Jenna- Senior HRM] Hi Carlena, you are welcome. We will explain any issues brought to our attention by Access a Ride so that they can ensure this feedback and hopefully make adjustments. Please continue to escalate directly to them as well anytime we do not see them able to make the corrections quick enough by escalating here and information. We are happy to help as always and please let us know if you have any other concerns. Thank you! | Leaders/Manager/Culture | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-03 18:16:50.666000 | JFE8 | 1 | carlenab | Good Afternoon Zachary So Is that a no on the sub bud? Did you see my benefit list? Can we bring our own small speaker! Amazon sell them? to our station? If we are not disturbing our other coworkers? unless they would like to hear some murder mystery from audible. (Amazon sell that too) So home listen to some audibles and think about it. I know I am pushin it :) | HAPPY | zachiwac | [Zach-HRM] Hi Carlena, unfortunately no, at this time there is no change to the current policy around music, whether it be via earbuds or small speaker. I appreciate the suggestions as often as this one. I assure you that we will continue to escalate and brainstorm solutions to be able to play music in the FC at all stations. When the day comes that we're able to allow this, I'll make sure to spread the word! As always, please let me know if you have any additional questions. | Leaders/Manager/Culture | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-04 13:21:47.829000 | JFE8 | 1 | dmitrif | 12/22/2020. There was a fire at JFK8. All safety evacuated. Not be min later, all directed back to work. Smoke rose to A04 and toward; there were breathing/respiratory difficulties, and eye irritation. Was encouraged to stick it out and keep working. Am thinking a Union would've pulled MTO to protect us. Can I FKB guarantee that if/when a similar situation happens again? | HAPPY | prenjana | [Jenna- Senior HRM] Hi Dimitri, Thanks again for the further details. Our IT team is in the process of auditing our carts and charging ports so defective batteries breaking themselves. To your point, each cart can hold 3 batteries in order to provide a spare and eliminate the need to look for a battery during a shift. We have also moved the amount of carts to provide a spare given this is an area of concern. The goal is to deploy enough so that the above is possible, and these are batteries on carts are charging at the same time. When these come in we'll communicate once they've been deployed. Thanks and have a great weekend! | Policies and Procedures | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-04 06:37:05.656000 | JFE8 | 1 | dmitrif | Thank you Carole! For batteries also, some damage processors and problem solvers take two on their carts to ensure at least one switch out. While this is good forward thinking, many of the chargers are left empty all day. To supply more in addition to the ones already on the floor would allow the need to police the employees on returning them to a paddy to charge. | HAPPY | | [Dora- Sr Ops] Hi Dmitri, Thanks for allocating as necessary, super important to ensure our sorters and palletizers can escalating to ensure it was functioning as necessary. I appreciate you doing this as well as those leaders for taking the step where I see it as well of commission. Please let me know if you have any additional questions. | Process Improvement Operations (i.e. WF, ACES, IT) | 2 | CLOSED | USA | 0 | 0 | N |
| 2021-06-04 19:44:38.565000 | JFE8 | 1 | dmitrif | The monitor for tune 127 in so backout of this building block is not working. How are we supposed to know with package hoes where if it's out of commission. Please fix it. | SAD | zachiwac | [Jenna- Senior HRM] Hi Dana, I think you misunderstood my previous response. We will always make decisions with the safety of our associates as our top focus and priority. With that being operational for our dock teams. This is just to make sure they are 100% confident prepared for this type of situation. If anyone feels unsafe at work or needs help we want you to immediately escalate to leadership. I am happy to speak with you further to address any specific questions or concerns we have escalated this. I'm sure after for taking the time to bring our concerns with me. Please let me know if you have any additional questions. | Policies and Procedures | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-04 21:36:30.835000 | JFE8 | 1 | rezagaur | Hi Jenna.... So basically there's long summer employees would be protected from smoke inhalation in another similar event with period always MTO but a few days event if the FDNY shutted the building if FKB would force to use our own time (PTO/UPT) to protect our lungs and every l2.5mm. Work Carolks, Aligning Benny. All have been extremely helpful in my growth here at Amazon. Taking the time to show me new things and pointing me in the right direction. Also giving me more responsibility and trusting that I will get it done properly. Please acknowledge them when you see them | HAPPY | | [Zach-HRM] Thank you George for that amazing shout out! Kudos to you as well as those leaders for taking the step where I see it as well about. I agree refer to shipments that are proposed during their first (day) shift and CART II will refer to shipments that are proposed during their second (night) shift. We have a system which will ensure we are banking our outgoing customer orders for first shift and the CART II work for second shift in the banking. Since both CART A and CART II go to the same building, they will end up in the same place, but it is the timing of the shipments that the A/B addresses. Hope that helped provide some more clarity, thanks! | Engagement/Recognition | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-05 09:58:18.808000 | JFE8 | 1 | edaok | The directed paddle button for 130 of ship dock is not there please fix it. | HAPPY | | [Dora- Sr Ops] Crushing it with some great questions Edison! Downtown delivery stations have different shifts just like we do. CART A will refer to shipments that are proposed during their first (day) shift and CART II will... the button has been raised a ticket dropped to get the button back is remove. We'll update once the problem has been resolved! Update - The button has been repaired! Thanks Edison, please escalate to your AM if you're seeing any other issues with the Directed Palletize station. | Process Improvement Operations (i.e. WF, ACES, IT) | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-05 22:33:34.827000 | JFE8 | 1 | edaok | What does cart A and Cart B mean in terms of outbound ship dock? | HAPPY | | [Dora- Sr Ops] Crushing it with some great questions Edison! Downtown delivery stations have different shifts just like we do. CART A will refer to shipments that are proposed during their first (day) shift and CART II will refer to shipments that are proposed during their second (night) shift. We have a system which will ensure we are banking our outgoing customer orders for first shift and the CART II work for second shift in the banking. Since both CART A and CART II go to the same building, they will end up in the same place, but it is the timing of the shipments that the A/B addresses. Hope that helped provide some more clarity, thanks! | | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-05 22:38:43.420000 | JFE8 | 1 | ANONYMOUS | When everything goes back to "normal" are our phones going to be taken away again? If so, would signing the union card stop that? I think it is very important that we have our cell phones. I have not signed a union card but I would if that would allow us to carry it. | SAD | prenjana | [Jenna-Senior HRM] Hi, thank you for your comment. Every associate has a right to sign a union card, or not to sign one, and Amazon will not interfere with that choice. However, you should know that while the Union can make promises about what it will do for you if you sign a card, they cannot guarantee any. All the law allows the Union to do is ask for changes. In a union negotiation, employees can keep what they have, get less, or get more. This union cannot force anyone to accept its demands. As always, profess your card, your signature and know all of the facts before you sign a union authorization card. If you have additional questions, please let us know. If you prefer not to identify yourself, that's okay. Our priority is making sure all of our associates know that they both about what it would mean to them in terms of either making a decision or the signing a union card—that could have legally binding consequences. | Security/Medical Concern/Safety | 1 | CLOSED | USA | 1 | 0 | N |

Amazon_000230

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-05 18:28:32.729000 | JFK8 | 1 | vjasonm | I'd like a copy (digital or otherwise) of every voice board comment I've made and it's reply. In addition I'll be requesting to go to arbitration with the EEOC on the whole and central investigation. Compliance with the law would be put forward my right to bring forth data to an agency requesting it. Mandating a court order or FOA request will only strengthen my complaint. | | MZH | preripm | [Jenna-Senior HRM] Hi Jason. We are happy to meet with you to address any specific concerns. Many leaders from the Ops team as well as the HR team have followed up with you directly to get more detail so we can support when you have comments on the VOA board. As mentioned previously, we have an open door policy and we directly work on our associates to address any concerns that are brought to our attention. However, if you feel you concerns are not being addressed by the site leaders or local team reach out to the Ethics line (877-781-2461) which is a neutral party operated line for use of employees don't feel comfortable speaking with their manager or local HR representative. Thank you. | Leader/Manager/Culture | 2 | CLOSED | USA | | | N |
| 2021-06-05 18:34:05.171000 | JFK8 | 1 | vjasonm | Last I checked last week I was top 25% minimum in quality for my department, my productivity at expense of my local health is also good. Only my Area manager (on though it is my duty of management or HR to either. Let's keep it, management doesn't like me or HR, that's okay, I'm not too fond of most of management or HR either. Let's keep it professional, please. Today is my tenure connected year date, I get to professional here though, follow the law and policy. I will not be spending off time calling ERC this needs to be fixed without me having to kick to it's wage itself. | | MZH | preripm | [Jenna-Senior HRM] Hi Jason. The VOA board is intended to bring any issues to our attention and it is not necessary to call out specific individual leaders. If you have specific concerns with a particular leader, please speak to your manager, a member of the HR team or if you do not feel comfortable with either you can always call the Ethics line (877-781-2461) which is a neutral party operated line for use of employees don't feel comfortable speaking with their manager or local HR representative. Erin is your direct manager and therefore the work yet. Thank you. | Leader/Manager/Culture | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-06-05 18:40:15.880000 | JFK8 | 1 | vjasonm | Lastly for today, why is my pay always different when I apply? Today is my tenure connected year date. I get to professional here though, follow the law and policy. I will not be spending off time calling ERC this needs to be fixed without me having to kick to it's wage itself. | | MZH | preripm | [Jenna-Senior HRM] Hi Jason. Thank you for speaking with Erin about your pay related concerns. I am glad that the issue have been resolved. In the future please come speak with HR directly so we can address it right away. Thank you. | Pay and Benefits/Time off | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-06-05 19:33:25.830000 | JFK8 | 3 | hanxoni | Hi ops team. Recently, I know that I can pick up my orders at Amazon hub Locker and at delivery station (DYHS). I think many AAs do not know that. When AAs will use this options, it will be help the sustainability. Also, at a same time I hope AAs can pick up their orders on time. Maybe, we do not need boxes or packaging bags for the orders. | | | prchtv | [Chris - Sr Ops] Hey Hanxoni! You are absolutely correct that the Amazon Locker onsite (named Export!) is an easy way for any associate or leader to get their packages delivered in a safe and effective location that they can grab on the way home from work so it was installed here for exactly this purpose, and I agree that we could be doing a better job in that area it's obvious many do not know about it. Thanks for bringing this from a sustainability standpoint eliminate additional miles driven to deliver these packages when many come from a business park themselves! Thank you for the feedback on how we can continue to communicate some of these great improvements we've been able to make for the team at JFK8. | Engagement/Recognition | 2 | CLOSED | USA | | | N |
| 2021-06-16 22:04:12.100000 | JFK8 | 1 | edisak | Some labels say Cycle-1 and Cycle-2 what does that mean. It's been bugging me for a lot. | | HsRPY | prchtv | [Chris - Sr Ops] Hey Edisak! This is actually extremely similar to the CART-A and CART-B learning, where it represents the downstream building's shifts that we'll process the customer shipments. Cycle 1 will refer to shipments that are processed during their first shift and Cycle2 will refer to shipments that are processed their second shift (we necessarily we aren't always stocking our docks between cycles). Here at JFK8 we are specific to Cart-1 and Cart-2 which is just a functional of downstream building shifts. Hope that helped. Don't replace a bit more, reach out if you have any other questions! | Leader/Manager/Culture | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-06-06 21:50:15.846000 | JFK8 | 1 | lmnb | It is ridiculously hot in the 3rd floor break room. It almost feels like the heat is on in there. can we get that checked out and fixed? | | HsRPY | swhktp | [Felipe - GM] Good morning Carl! Erin, your manager, will partner with you this morning to support you with the concern. Thanks for bringing this to the team. We hereby this was brought up to our attention and our base building maintenance team found a cooling unit that went out of order in that area. This was resolved and put back in operation by 4 pm. Please continue to share this feedback with your manager or through VOA so we can continue to take prompt action! | Working Conditions/Facilities | 2 | CLOSED | USA | 3 | | N |
| 2021-06-07 13:25:56.846000 | JFK8 | 1 | canifirell | I need to speak with Joseph Caucili of packing, its important to speak before working with him. | | HsRPY | swhktp | [Jenna-Senior HRM] Hi Jason. Amazon has in place and consistently adheres to its non discrimination and no retaliation policies. To be clear, we are not excluding or limiting your ability to post on the VOA board. We are happy to respond fully on the VOA because we need additional details to do so. If you have a specific concern with a specific member of the leadership team you can speak directly with HR or your manager, or as always you are happy to meet please call the Ethics line if you are more comfortable with either. If you would like to do so please reach out to your HR team and we are happy to help. Thanks for your feedback on how we can improve so you in-person to get details. If you have anything additional that you would like to discuss please see any of the previous mentioned avenues to communicate your concerns. | Leader/Manager/Culture | 2 | CLOSED | USA | | | N |
| 2021-06-07 21:59:23.265000 | JFK8 | 1 | vjasonm | Now I'm being told what I can and can't post on the voice board. If management is inefficient or practices discrimination behavior I have every right to state in a professional manner that they need to be more accountable and delay process. I'm pretty sure Bezos himself wouldn't care if anyone called him out on here. If you don't like my board post perhaps listen to my actual literal voice | | MZH | swhktp | [Jenna-Senior HRM] Hi Jason. As mentioned previously we can follow up with you in person to address your concerns. We take all employee health and safety concerns seriously and strive to address and remedy all requests for accommodations. Leaders from the Ops and HR teams are happy to meet with you to continue addressing these concerns. Please come see a member of the HR team directly if you have additional questions or need assistance. Thank you. Update 6/8/21: Thank you for taking time to speak with Mike from HR. Please let us know if you have any additional questions or concerns. | Leader/Manager/Culture | 2 | SUBMITTED | USA | 2 | 0 | N |
| 2021-06-23 17:29:51.825000 | JFK8 | 1 | vjasonm | PLEASE VOTE FOR ME in the amazon Got talent. Dwayne Handfield. my talent is songwriter/singer - view the Buttetin scan the qr code and select Dwayne Handfield. Thank You and God Bless You too! | | SAD | HsRPY | [Felipe -GM] Thank you, Dwayne for participating! Those guitar skills are very impressive :) best of luck in the competition! | Teamwork | 2 | CLOSED | USA | 3 | | N |
| 2021-06-23 15:25:05.616000 | JFK8 | 1 | handfd | In addition to my previous post, the managers ticket have ignored serious health concerns. EEOC policy (wp) if I take ANY action to prevent discrimination including usage of his board in specific manner I do, it's protested activity and to interfere is against the law. I suggest referencing their website | | HsRPY | HsRPY | [Jenna-HRM] Thank you for reaching out, I would like to work with you to get clarity on this. In order to deep better understand the requests, please come see a member of the HR team. We really want to help! Thank you. | Engagement/Recognition | 0 | CLOSED | USA | | | N |
| 2021-06-27 11:10:17.857000 | JFK8 | 1 | ANONYMOUS | There's too much ambiguity with the craft audits. No one really understands how each step connects and why they keep getting a rework? I feel like I'm doing it right so something is not communicated clearly. This will help develop "think big" leadership principle and help everyone understand the big picture of the entire process from start to finish. If you have any further questions regarding the Rework Trainer / Suggestions on ways we can improve our communication surrounding this, I can discuss further with you in person. | | HsRPY | samicm | [Jenna-HRM] Thank you for reaching out, I would like to work with you to get clarity on this. In order to deep better understand the request, please come see a member of the HR team. We really want to help! Thank you. | Policies and Procedures | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-08 15:15:51.718000 | JFK8 | 1 | dimitif | DLS is officially going to request expanded accommodation without further Dr input based on what? I'll tell you based on what, law policy and the EEOC charges I just brought against Amazon. It's beyond inhumane that I had to bring up charges to get Amazon to do it's part. I post on this voice board now, and previous to now not avoid in the building can say I haven't brought the issue up cost | | MZH | avsalem | [Jenna-Senior HRM] Hi Jason. We have spoken to you many times addressing concerns you have brought to our attention. We take all of our associates' health seriously and strive to address all associate requests for accommodation. The accommodations process is not handled by site HR, but separately by the accommodations team which may request specific information. That being said, we are more than happy to assist and support you with this process. At Amazon all employee concerns are proactively assessed with the feedback we receive via the VOA board meetings, round tables, engagements on the floor and direct communication with our team. It is unfortunate and evident you are not satisfied with our communication and response thus far. We will continue to connect with you to discuss your concerns further and help eliminate any confusion. Thank you. | Security/Medical Concerns/Safety | 2 | CLOSED | USA | 2 | 0 | N |

Amazon_000231

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | SLA in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-08 22:38:30.308000 | JFK8 | 1 | vassxm | 2/2 Therefore do not ever tell us we don't need a union or that "we care, you have a voice" Deceptive mechanisms, incessantly strong in all propaganda that attempts to belittle any efforts made to obtain reasonable rights. I had to get the literal Government involved and I will follow through entirely, all the suffering went through will not be forgotten just because the EEOC came in | MDH | pretsjenn | Jenna - Senior HRM/ Hi Jason. Please see previous response. Thank you. | Security/Medical Concerns/Safety | | CLOSED | USA | 1 | 1 | N |
| 2021-06-09 01:36:17.821000 | JFK8 | 1 | gorivaaj | (comment) | MDH | curlyjeh | please see previous response. | Policies and Procedures | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-06-10 04:25.583000 | JFK8 | 1 | gorivaaj | 1/2. There is no used in the computers this way if operations or PAs are just gonna choose whoever from walls that they are closing. I had an AA watch as the inducter across from them was asked and not themselves. Why are we doing specific people. That's unfair to the rest of us especially during labor share. We should be able to trust that our name is on the VTO computer list. | SAD | curlyjeh | Adina, thank you again for your time and willingness to listen to time. As always, you do bring a valid point/concern. I spoke with the OB team and set expectations around utilizing, leveraging pre-shift VTO. In addition, we will look to implement in shift VTO best practice that we will be effective and fair. I will use some of the ideas we discussed and bring them to senior and HR team to finalize and set clear, easy to execute and fair practice. Again thank you for your comments and please as always I feel me to discuss how to improve our Amazon. | Policies and Procedures | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-06-10 14:50:56.698000 | JFK8 | 1 | fraipol | I just got an update on vaccine verification & says we have to have the sticker by June 17th to continue working without a mask but it doesn't say how or where to obtain the sticker it only says you need the green check mark to get the sticker. Do we get it from security? HR? Where? | MDH | pretsjenn | Chris - Sr Ops/ Hey Jocelyn, thanks for the great question. We know some of these policy changes have been continual and really frustrating so we continue to take the guidance distated by CDC and state government. The sticker is the next phase of vaccination confirmation after Amazon employees have provided photo documentation. There is a A2 Account. Once sticker in building open near entrance and you will be given a sticker to show to continue without your mask. If you have any other questions, please reach out! | Policies and Procedures | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-06-10 23:02:32.020000 | JFK8 | 1 | rcclegor | How do you get selected for a VOA meeting? | HAPPY | pretsjenn | Jenna - Senior HRM/ Hi George, thanks for the great question. We will get you set up to come to the VOA board meeting during one of your next scheduled days. We look forward to meeting with you! Update 6/11/21 Thank you for attending the VOA board meeting this morning. Please let us know if you have any additional questions. | Career/Advancement Opportunities/Training | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-11 14:27:37.143000 | JFK8 | 1 | dmilf | Most def. Michael! Specifically for those who won't qualify for the rock team but NEED an even opener to perform better. those are people who should have preference, so they UNDERSTAND how each input/ quality of work affects the other. Cross training for that blocker would benefit Amazon and it's employees more. | HAPPY | sarirom | Thank you again for this feedback. Either myself or an Operations Manager from Inbound will be following up with you in-person on Monday to gain further insight on what we can do to improve this process to address the points that you highlighted. We look forward to it! | Career/Advancement Opportunities/Training | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-06-11 17:37:37.125000 | JFK8 | 1 | carkenab | Good afternoon. Can we have an international Lunch day? We have so many people from different countries. Everyone bring in food that represent their country. They could wear their colors, flags, games and etc. Maybe we can do this when Covid is over? I present the plans and Amazon execute the plans. Thank You | HAPPY | pretsjenn | Jenna - Senior HRM/ Hi Cariena, thank you for your comment. This is a great idea, however, due to restrictions still in place we will have to review this at a later date. Thank you for sharing and for also being willing to be part of the planning process. | Leader/Manager/Culture | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-06-11 17:53:08.554000 | JFK8 | 1 | carkenab | Good Afternoon. Please move the orange cones that in front of the access a side sign. The access a ride bus can't get close to the side walk. Why is them wont close to the side walk? I am guessing someone is parking and others don't speed? They go around it and still speed. P.S. Just need the cones moved. I Don't need to speak to anyone. Thank You | HAPPY | amralxon | Area (HRM) - Thank you for reaching out about this Carlena and it was great to meet you on Friday! The cones have been placed in front and relocated to allow the bus and flow of traffic to continue safely at the front of the building. This will allow the bus to park right next to the sidewalk. The speed bumps are intended to maintain the speed limit and allow for a safe flow of traffic throughout all areas of the parking lot. This is an important reminder that we in are responsible for slowing down when entering and exiting the building, including the parking lot. Please let a member of leadership know if you are being willing to be part of the situation that we address appropriately. Thank you for the feedback! | Transportation/Commute | 4 | CLOSED | USA | 1 | 0 | N |
| 2021-06-11 22:16:56.084000 | JFK8 | 1 | thomitha | Please add more Snapple Apple to the break room & vending machines. | HAPPY | zachnwc | [Admin] - Proc Ops/ Thank you for the feedback. We have reached out to our beverage vendor to make sure we continue to have Snapple Apple available in break rooms and vending machines. Thanks. | Working Conditions/Facilities | 3 | CLOSED | USA | 4 | 0 | N |
| 2021-06-12 08:07:26.000 | JFK8 | 1 | riojo | Amazon going rever? I have a 2 part question. Amazon being a global business and purchasing power, can there be a way that it can help its employees, those with this process? With the exception of one ops manager pitching out discounts and a fantastic idea if I may say. Amazon actually has the power and negotiation to make this process help me? You yourself told me "you need to get back on the floor or clock out" when I described intense pain being illegally pulled back on. My concern and complications such. | HAPPY | zachnwc | [Zach-ADH] Thanks for this feedback. I too have seen this occur. Safety is as always our number one value. We have partnered with the landlord of the Matrix to help in assisting with traffic control measures such as the ones we have installed in our own parking lot. We will follow up to make sure this gets completed in a street because that's getting out of hand. | Transportation/Commute | 2 | CLOSED | USA | 2 | 0 | N |
| 2021-06-12 11:08:36.457000 | JFK8 | 1 | ANONYMOUS | ...and because I can't see I was labor shared into a role that aggravated a serious skeletal deformity I've had since birth. The deformity is physically visible, you wouldn't assist me to that and and when I asked your supervisory tracker to make an accommodation request your team told me "All I'm going to say is the name is Derrick" cont 2/3 | HAPPY | amralxon | Area - HRM/ Hi Jason. We take all employee health concerns seriously and strive to address and engage all associate requests for accommodations. Although ESL the accommodations team, makes all decisions regarding accommodations if you have additional questions or need assistance with the process. In addition, we have an open door policy and work directly with our associates to address any concerns that are brought to our attention. However, if you feel your concerns are not being addressed by the associate speaking with their manager or local HR representative. Thank you. | Security/Medical Concerns/Safety | 3 | CLOSED | USA | 2 | 1 | N |
| 2021-06-12 13:00:21.180000 | JFK8 | 1 | vassxm | Senior HRM states "Happy to assist you with this process" With the exception of one ops manager pitching out discounts and a fantastic idea if I may say. Amazon actually has the power and negotiation to make this process help me? You yourself told me "you need to get back on the floor or clock out" when I described intense pain being illegally pulled back | MDH | amralxon | Area - HRM/ Hi Jason. Please see previous response. | Security/Medical Concerns/Safety | 3 | CLOSED | USA | 2 | 1 | N |
| 2021-06-12 13:04:24.16000 | JFK8 | 1 | vassxm | 1/3 Lastly. if EEOC fails to perform its proper legal obligation I doubt I'll be permitted to vote with and Ops management is given to all management if EO/LS fails to promptly follow the law" ... absolutely no where. I make the disability immune. No where in Amazon policy does it say or more importantly nowhere in the law that "immunity is given to all management if EO/LS fails to promptly follow the law" ... absolutely no where. I make the disability obsession" leadership principals | MDH | amralxon | Area (HRM) - Thank you so much for this positive recognition, Christie! We are so glad Rob was able to assist you with this! We're appreciative to have Rob on the team as he proves to consistently lead with the "customer obsession" leadership principals | Security/Medical Concerns/Safety | 3 | CLOSED | USA | 1 | 0 | N |
| 2021-06-13 08:10:74000 | JFK8 | 1 | widzohr | Just wanted to say thanks to Rob from HR Saturday evening. He helped me with my timecard issues professionally and quickly. He also gave me some advice on how to pick up VET from my old department. Thanks again! | HAPPY | amralxon | | Engagement/Recognition | 1 | CLOSED | USA | 1 | 0 | N |

| Post Date (in utc) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-13 02:27:45.352000 | JFK8 | 1 | ANONYMOUS | i'm writing this because since july 2020 to now, i helped about 5 people to apply to work at amazon, they got in and guess what? all of them are still here! but at that time it wasn't any reference $125 or $500 until about two month ago, it said amazon will pay me $500 if we are still employees after 60 days. i felt like that isn't fair that i didn't get paid back then so can i get paid now? | | prenjenn | [Jenna- Senior HRM] Thank you for reaching out! Sites are provided various programs, including employee referral bonus, at different times throughout the year based on hiring needs. In order to receive a specific bonus payout, you must meet all eligibility criteria at the time including an active referral bonus program, referral hire date, and referral tenure to name a few. There are all kinds of referral bonus options depending on job type and level as well. These can be referenced on a regular basis by reviewing amazondelivers.jobs. Thank you for encouraging others to join the JFK8 talent machine team and I encourage you to continue monitoring these programs through all communication channels such as ACID feeds, table toppers, and installments in order to take part in present and future programs. Please leave your login or come see a member of the HR team so we can get more details about your specific referrals. Thank you. | Engagement/Recognition | 3 | CLOSED | USA | | | N |
| 2021-06-13 05:05:24.462000 | JFK8 | 1 | ANONYMOUS | What does "Same-Auto" mean on the label? | HAPPY | prchri | [Chris - Sr Ops] Thanks for the question! If you see any mention of "SAME" on the label of a package it means that the shipment method of the customer package will ensure it arrives there within the same day. Often times if you order something on Amazon that says "next day" or "1 day" delivery, the way the order will get to you involves Amazon shipping it using same day processing. Feel free to ask any other questions if you have them! | Process Improvement Operations (i.e. WF, ACES, IT) | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-06-13 12:06:39.455000 | JFK8 | 1 | cnnovoa | As a problem solver for inbound, is there anyway we can fix the battery charging stations so I don't have to spend time looking for one that won't die an hour later? | MEH | sanicm | Hey Charlene, We are currently auditing all of our Problem solve equipment in inbound to see what needs repairs and if we need replacements for any of our existing carts (which it sounds like we do). We are working with our IT team to fix/replace the batteries and charging stations so that the team has the necessary equipment to do the job effectively. | Process Improvement Operations (i.e. WF, ACES, IT) | 2 | CLOSED | USA | 5 | 0 | N |
| 2021-06-13 18:37:42.779000 | JFK8 | 1 | joamacha | Following Charlene post, IT should be on top of PS Mobile Carts. Some of them are falling apart, we need to use tape to make the table to the right level, printers that doesn't work, laptop not working, missing/broken scanners or mouse. | SAD | sanicm | Hey Joao: Similar to the response below, we are working with local IT to inspect our PS equipment and put in repair requests for those that can be repaired and place an order for those carts that need replacement so that the team has the necessary equipment to perform the job. More to come once we complete this audit. | Process Improvement Operations (i.e. WF, ACES, IT) | 2 | CLOSED | USA | 2 | 0 | N |
| 2021-06-13 21:39:26.124000 | JFK8 | 1 | spconnor | Ariana Ovadia (ops) lied to me repeatedly about taking the literature, tried to hide it from me, wouldn't give it back until I threatened legal action, and then refused to tell me her name even as I asked multiple times. Not only is what she did illegal, it's honestly embarrassing behavior from an ops manager. You should all be ashamed of yourselves for the anti-union culture you've created. | | prenjenn | [Jenna-Senior HRM] Hi Connor. As you know, we do periodic walks of the building to ensure cleanliness. This includes gemba walks which are done throughout breakrooms, restrooms and other areas of the production floor. If there is any material that is not being used, trash, magazines, papers, etc, this is disposed of. In addition, the ABM cleaning crew periodically cleans all breakrooms before and after breaks, only leaving materials such as company table toppers, napkin holders, and cleaning wipes, in these areas. We have not, and will not, disturb associates who wish to distribute literature to one another in non-working areas of the plant on their non-working time. In regards to the union, we have only shared facts and feel strongly that associates deserve to hear from all sides before forming an opinion about whether having a union would be in our best interest here at JFK8. We will continue to share the facts with our associates so everyone is fully informed before making a decision. If you have additional questions or concerns, please feel free to speak with a member of the leadership team or HR. Thank you. | Leaders/Manager/Culture | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-06-13 21:43:37.917000 | JFK8 | 1 | spconnor | Last week, Tyler called me to HR in order to apologize for the incident where security illegally confiscated my union literature in the break room. I was assured what they did was against company policy and that I had every right to hand out that literature. So imagine my surprise when the same thing happened to me again but this time it was an ops manager who decided to break the law. | | prenjenn | [Jenna- Senior HRM] Hi Connor, please see the previous response. Thank you. | Leaders/Manager/Culture | 2 | CLOSED | USA | 3 | 0 | N |
| 2021-06-13 21:44:30.557000 | JFK8 | 1 | spconnor | Ariana Ovadia (ops) lied to me repeatedly about taking the literature, tried to hide it from me, wouldn't give it back until I threatened legal action, and then refused to tell me her name even as I asked multiple times. Not only is what she did illegal, it's honestly embarrassing behavior from an ops manager. You should all be ashamed of yourselves for the anti-union culture you've created. | | prenjenn | [Jenna- Senior HRM] Hi Connor, please see the previous response. Thank you. | Leaders/Manager/Culture | 2 | CLOSED | USA | 3 | 0 | N |
| 2021-06-13 21:50:21.054000 | JFK8 | 1 | spconnor | If I did any of that in the presence of anyone from the ops team, I'd be written up or terminated. How do you excuse this absolutely pathetic behavior? Don't bother giving me another pointless apology. Incidents like this are why no one trusts management or HR. And they shouldn't. You'll lie through your teeth to cover up your abuse of our rights. | | prenjenn | [Jenna- Senior HRM] Hi Connor, please see the previous response. Thank you. | Leaders/Manager/Culture | 2 | CLOSED | USA | 3 | 0 | N |
| 2021-06-14 03:36:28.195000 | JFK8 | 1 | vitshawn | I don't think it's fair on AFE2 that I work like crazy and I even pick up 12.5 hrs of VET and when VTO is offered that ppl that hardly do anything get offered the VTO first.. I never taken VTO for the year I've worked but the in the last week there has been VTO and I've actually put in for it but everybody else got it… | SAD | curlejm | [OB Sr. - Carole] Hello Shawn! Thank you for your comment. Our Outbound teams prioritize pre-shift VTO/VET when possible based on prior day planning for the next shift. If pre-shift opportunities do not fill, we will then turn to on-site instant vto. Opportunities are based on expected headcount and backlog by department. FHN Ops Manager, Andrew Grossman, will follow up with you in person on your next scheduled shift to better address your concerns. | Working Conditions/Facilities | 0 | CLOSED | USA | | | Y |
| 2021-06-14 07:23:04.575000 | JFK8 | 1 | ANONYMOUS | I think it's ridiculous everytime I come to use the break room near the main office to eat my lunch or snack all the seats and tables are filled with associates belongings. And the available seat or table is all the way in the back. Can someone do something about this please. It's becoming a nuisance I would like to eat my lunch in peace and not have to move anyone's belongings. | MEH | zachmarc | [Zach-AGM] Thank you for the feedback. It is our goal to provide a positive break experience which includes sufficient space for everyone. We have added around 300 seats in satellite break areas based on feedback that we have received. As far as leaving personal belongings, I agree that this should not be the case. The team will evaluate the situation and address all concerns so we have a clean, spacious area for anyone who wants to utilize during their breaks. | Leaders/Manager/Culture | 0 | CLOSED | USA | | | N |
| 2021-06-14 09:36:23.180000 | JFK8 | 1 | dmillrf | Recently the 1 riding elevator went out for hrs, stranding the disabled as well as AFMs, damage processors, problem solvers, I.T. and whomever needed wheels to do their job. In this multi-billion dollar company and with the amount of work JFK8 pulls in, what is the plan going forward for installing another elevator (or 3) as well as exit ramps on both sides of the warehouse for safety and dignity? | SAD | zachmarc | [Zach-AGM] Hi Dana, thank you for the feedback on the passenger elevator. Our BBM team was able to verify that the elevator is now in good working order. To prevent this issue from reoccurring, we have partnered with the elevator company to come on site monthly to conduct PMs (preventative maintenance). I would encourage anyone with carts/equipment to utilize the VRCs to send up their equipment vs taking it on the passenger elevator which may not be designed to handle bulky or heavy equipment. | Working Conditions/Facilities | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-06-14 15:13:43.930000 | JFK8 | 1 | ANONYMOUS | Today I read an article about how Amazon is selling anti-police and pro-antifa stuff. This is absolutely disgusting. I have never felt so ashamed to work for Amazon. I can't believe that Amazon is anti-police, whoever supports this should be ashamed. Brave men and women risk their lives everyday to keep us safe and this is how Amazon recognizes police, it's truly awful. | SAD | annaleon | [Anna - HRM] Amazon is, and always will be, committed to fostering a diverse and inclusive workplace. We believe this further enables us to deliver on our promise to our customers and positively influence the communities that we serve. Amazon doesn't tolerate harassment or discrimination of any kind. Our goal is to provide a safe and positive work environment. If you ever experience anything that makes you feel uncomfortable or unsafe at work, please report it immediately to your manager or HR immediately so we can address it. | Leaders/Manager/Culture | 2 | CLOSED | USA | | | N |

Amazon_000233

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-14 20:19:08.954000 | JFK8 | | vipcom | | MJH | amzalison | [Anna - HRM] Hi Jason. Many Operations leaders as well as members of the HR team have spoken to you many times addressing concerns you have brought to our attention… Thank you. | Security/Medical Concerns/Safety | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-06-14 20:15:26.006000 | JFK8 | 1 | vipcom | | MJH | amzalison | Please see previous response. | Leaders/Manager/Culture | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-06-14 20:40:56.741000 | JFK8 | 1 | vipcom | | MJH | amzalison | Please see previous response. | Leaders/Manager/Culture | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-06-14 20:46:33.500000 | JFK8 | 1 | vipcom | | MJH | amzalison | Please see previous response. | Leaders/Manager/Culture | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-06-14 21:24:59.332000 | JFK8 | 1 | vipcom | | MJH | amzalison | Please see previous response. | Leaders/Manager/Culture | 1 | CLOSED | USA | 5 | 0 | N |
| 2021-06-14 21:47:37.011000 | JFK8 | 1 | rqgotcarc | | MJH | prenpro | [Jenna - Senior HRM] Hi jason, thank you for your comment. We order new swag each month and just got our new inventory in. It will be displayed and available within the next few days. Thank you! | Working Conditions/Facilities | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-15 12:48:47.706000 | JFK8 | | carlenab | | SAD | zachmarc | [Jenna - Senior HRM] Hi jason, please see the previous response. Thank you. | Leaders/Manager/Culture | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-06-15 12:55:20.076000 | JFK8 | 1 | vipcom | | MJH | prenpro | [Jenna - Senior HRM] Hi Jason. Anna is the new Human Resources Manager (HRM) here at JFK8. We determine our hiring needs based on our business needs and ability to fulfill our customer promise… Thank you. | Leaders/Manager/Culture | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-15 12:30:30.076000 | JFK8 | 1 | vipcom | | MJH | prenpro | [Jenna - Senior HRM] Hi Jason, please see the previous response. Thank you. | Leaders/Manager/Culture | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-15 13:30:30.999000 | JFK8 | 1 | vipcom | | MJH | prenpro | Please see previous response. | Leaders/Manager/Culture | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-15 13:20:11.856000 | JFK8 | 1 | carlenab | | HAPPY | felajic | [DB-Carole] Hello Carlena! Thank you for your comment and for bringing this to our attention. We have extra fans on hand and we are working with safety and IBM to replace the broken fans at the smartpac stations. Thank you. P.S. Please fix the elevator! | Working Conditions/Facilities | 0 | CLOSED | USA | 5 | 0 | N |
| 2021-06-15 13:22:50.998000 | JFK8 | 1 | biodaeva | | MJH | felajic | [DB-Carole] Hello Dayra! Thank you for your comment. Dr Dan (HRD Ops) has partnered with our PARE team to purchase additional scanners to improve workflow… https://bt.amazon.com/0571663277. Our singles ABEs will be doing a secondary audit this week to track more recent issues. Thanks! | Working Conditions/Facilities | 1 | CLOSED | USA | 5 | 0 | N |
| 2021-06-15 23:09:01.630000 | JFK8 | 1 | vtishawn | | MJH | curlepm | Please see previous response. | Leaders/Manager/Culture | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-06-15 03:33:44.093000 | JFK8 | 1 | gomivag | | HAPPY | curlepm | [Adina thanks again for reaching out to us. As always, we are looking forward to have from all associates. You are definitely one of many associates that would like to see best vendor/machine… We are already working on the solution. I do not have details to share with you as of now, but as soon as we get confirmation and are secure vendor/vendors we will communicate to all associates. | Engagement/Recognition | 0 | CLOSED | USA | 4 | 0 | N |
| 2021-06-16 03:37:49.250000 | JFK8 | 1 | gomivag | | HAPPY | curlepm | Please see previous response. | Working Conditions/Facilities | 0 | CLOSED | USA | 4 | 0 | N |
| 2021-06-16 11:42:28.076000 | JFK8 | | ANONYMOUS | | SAD | amzalison | [Anna - HRM] Hi Kenya. The team attempted to call you today but was unable to reach you on the phone. Please check your personal email as the team reached out with additional information. You can also utilize HR Chatbot, HR Cares, or JFK8-HR@amazon.com to reach a member of HR. | Pay and Benefits/Time off | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-16 24:50.067000 | JFK8 | 1 | iipcloke | | MJH | amzalison | Please see previous response. | Pay and Benefits/Time off | 0 | CLOSED | USA | 2 | 0 | N |

Amazon_000234

| Post Date (in zzz) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-16 2:25:43 856000 | JFK8 | 1 | ANONYMOUS | Hi, On A to Z E says that I am scheduled to work today. When I chatted with the HR chat bot it said that I am scheduled to work today, but when I arrived I was told that I was pending a suspension. I need someone to give me a letter with the dates I am suspended and a reason why please. I have to show my friends why I am not at work during the hours I said I would be working. | MEH | amialison | Please see previous response. | Pay and Benefits/Time off | | CLOSED | USA | 0 | 0 | N |
| 2021-06-16 21:55:30 663000 | JFK8 | 1 | reestin | Concerning the A to Z App regarding our schedule, I have been informed that our schedule may shift around at times. I check my app every often but somehow I missed out on when the schedule shifted. An advanced notice would be nice being that it was applied on the second day of my work week and had not known. I travel so far and my commute time is crucial. Can't afford to use PTO and lose UPT. | MEH | amialison | [Jenna - HRM] Thank you for reaching out and bringing this to our attention, Selina. I'm glad the HR team was able to speak with you about this on site. I feel free to reach out to your manager or HR if you have any additional questions. | Policies and Procedures | 2 | CLOSED | USA | 0 | 0 | N |
| 2021-06-17 06:13:23 846000 | JFK8 | 1 | jasodeno | Not sure which category would qualify for.. Can we please get the elevator in the parking garage fixed? Please can someone ask the Pits that goes around with laptop checking the rates of pickers who totes with customers shipments dwells at the stations over 2hrs ? They are in rush mode of sending shipments to pickers at rate without regards to customer's order. I see why my orders from amazon doesn't deliver on agreed date. There's so much nonchalant attitude on part of Pits in charge of pickers. | MEH | sanktp | [Frank-PG Sr] Joshua, Thank you so much for escalating this issue. We will be partnering with Nights Leadership Team to review Standard Work to ensure we mitigate future misses. | Process Improvement Operations (i.e. WIF, ACES, IT) | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-06-17 13:31:40 807000 | JFK8 | 1 | hepdedia | How is that all the stalkers in Stow? Pay area are in a mess most and get the handles are all broken on them with tape on them so we don't get out and hurt on our hands seriously we all here are given adults would why you can't change the equipment on time. They are stow with the ease on moving or being rough on the equipment across all floors we need to be destroyed if you have a problem ask for a tote problem to be fixed or stow... | HAPPY | sanktp | Dana I will partner with our Procurement team to place an order for the booms needed to perform the floor blitz in order to keep our robotics floors clean. Thank you for addressing the need! | Working Conditions/Facilities | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-17 20:30:27 338000 | JFK8 | 1 | dimihf | Heyy, the AR Blitz team needs B-12 new small booms and dustpans to properly collect and dispose of the accumulated trash on our 4 floors. When our cleaning materials break/wear out, please ask it, if we haven't replaced the cleaning supplies in JFK8 in a year or more, we need to do better asap). | HAPPY | sanktp | Hey Dana - I understand your concern regarding the disabled which is why we have monthly preventative maintenance performed. But for the movement of PS carts, I/board typically sends them up the freight MC in between the pallets with the wheels locked which are sent up every 5 min on all four corners of the RSP. Aisle from routine scheduled preventative maintenance to ensure the elevators are consistently in service, what more do you suggest that we do in this situation? | Security/Medical Concerns/Safety | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-17 22:04:22 476000 | JFK8 | 1 | dimihf | Michael, the elevator response simply doesn't work/isn't good enough. No one uses the freight elevation unless they absolutely have to, because it's rightly being used for larger things that are transported. Have you personally walked the freight elevators? and seen what we have every day? And it doesn't address the standing of the disabled. So again (other than maintenance), what is the plan? | HAPPY | prtiri | [Chris - Sr Ops] Thanks for the time to speak with me earlier today! As we discussed, if you see any mention of "SPAM" on the label of a package it means that the shipment method of the customer has selected to ensure arrives within the same day. Often times if you order something on Amazon that says "next day" or "1 day" delivery, the way the order will get to you involves Amazon shipping it using same day processing. On top of that I was able to get some more information about which delivery options will before to Washington Heights. DN2 is the delivery station that would most often deliver to your neighborhood! However, if you order same or next day delivery, it may be delivered by LaserShip, a third party that Amazon works with at times in the city. | | | CLOSED | USA | 1 | 0 | N |
| 2021-06-17 22:08:02 238000 | JFK8 | 1 | edslak | What does "same aisle" mean on the label? | HAPPY | prtiri | Edison: Thank you for calling this out. The Outbound DM on shift has partnered with our maintenance team to secure the part needed for repairs to get this equipment returned to service. | | | CLOSED | USA | 1 | 0 | N |
| 2021-06-18 02:38:16 502000 | JFK8 | 1 | edslak | The cellars in the tops part of beginning area of 1W in ship dock isn't moving. | HAPPY | sanktp | [Zach-AGM] Hi Dana, thanks again for the feedback. The elevators and VRCs are operational, so but anyone who needs to use them can do so. We have worked with robotics so that we can maximize those area in operations and address any downtime promptly. However, if current equipment is not sufficient to address the need, we can work on coming up with a feasible solution such as when we launched the building and had to tear down the wall between the morgue room and the base room to make the elevators accessible. I'm with Dana and I will bring you some gloves. | Working Conditions/Facilities | 0 | CLOSED | USA | 7 | 0 | N |
| 2021-06-18 09:51:34 434000 | JFK8 | 1 | dimihf | Thanks for the cleaning equipment, Michael. For the elevators/ramps solution: let's spend a little money- make these 3-4 locked Halls more accessible. If the MFP gives installing difficulty accessing gloves and other PPE, I will have a member of the Safety team track you down on shift right now and bring you some gloves. | HAPPY | dincross | [Zach - Senior HRM] In Dana. Thank you for taking the time to speak with a they from the HR team regarding your request to work near you. We will ensure this is corrected moving forward. Please let us know if you have any additional questions. Thank you | Working Conditions/Facilities | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-06-18 17:53:43 628000 | JFK8 | 1 | dimihf | Since Juneteenth is now a federal holiday I shouldn't we get holiday pay as we did for all the other holidays . It's all over every news channel and in the papers as well that June 19 is now a federal holiday. | HAPPY | prarprano | [Jenna- Senior HRM] Hi Diana, thank you for your comment. The news of Juneteenth becoming a federal holiday is very recent, and at this point there has not been communication about whether this will be a paid holiday. We will get more information on this as it becomes available. If you have a scheduled shift and choose to take the day to reflect, you can use existing time off options, paid or unpaid, and record that via your normal time off reporting mechanism. Thank you. | Leaders/Manager/Culture | | CLOSED | USA | 3 | 0 | N |
| 2021-06-18 18:09:29 172000 | JFK8 | 1 | nmnoav | Most of your staffs are African American. No acknowledgement of Juneteenth, a Federal holiday ( #493??? Good Afternoon Please can do a better job promoting our affinity groups? You cannot or call and email Ask about the different groups. Contact the DEI Coordinator. The wrong way now Amazon's heritage calling or emailing us. Please should we with promoting the affinity groups. More people would join if they knew about these wonderful groups. Thank You | SAD | prarprano | [Jenna- Senior HRM] Hi Natalie, thank you for your comment. The news of Juneteenth becoming a federal holiday is very recent, and at this point there has not been communication about whether this will be a paid holiday. We will get more information on this as it becomes available. If you have a scheduled shift and choose to take the day to reflect, you can use existing time off options, paid or unpaid, and record that via your normal time off reporting mechanism. In addition, we encourage associates to wear each to honor of Juneteenth and highlighting key historical figures. In addition, we encourage associates to wear red in honor of Juneteenth and highlighting key historical figures in and sense the work will not receive 3 long leads. We will also have cookies in the breakroom. Thank you. | Engagement/Recognition | 0 | CLOSED | USA | 5 | 0 | N |
| 2021-06-18 15:56 329000 | JFK8 | 1 | cariernab | Good Afternoon Please can someone fix my schedule. The time that's on my schedule now is right time but after July 15th there's a new time. Please can you fix it for the whole year or until I die here to Amazon? The person that's fixing the schedule put in a wrong time giving me a map and forget about finishing the my schedule I don't need to speak anyone. Thank you | SAD | prarprano | [Jenna- HRM] Hi Carina! Thank you for your inquiry . We post information and updates around Affinity group activities on installments and entities . We look forward to touching base with you on site to gather more information on your recommendations! | Leaders/Manager/Culture | 0 | CLOSED | USA | 4 | 0 | N |

Amazon_000235

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-18 18:53:12.446000 | JFK8 | 1 | carlenab | Good Afternoon I never got any notification about a disabilities meeting yesterday at 8:15pm. This is what I am talking about. Amazon doesn't notify people of these meetings, which I would have attended a meeting if you stood up working for 11 hours? No,and don't be. Last meeting only day shift showed up. Night shift never knew about the meeting. Please update. Thank you. | | pregerns | Jenna - Senior HRM | Hi Carlena. Thank you for your comment and passion around Affinity groups. We post information and updates around Affinity group activities and meetings on Instamets and Inbars. We typically try to find a meeting time that works best for all shifts. We will reach out to you during your next scheduled shift to get suggestions you may have. Thank you. Update: Thank you for taking the time to speak with Kendra from the HR team. | Leaders/Manager/Culture | 0 | CLOSED | USA | 4 | 0 | N |
| 2021-06-18 22:06:37.229000 | JFK8 | 1 | mmmonai | At the end of today, our back half manager on the ship dock, Sherman came by and thanked the workers. It was the best part of my work day! It's rare to ever hear genuine gratitude from a team leader, but a little appreciation goes a long way. With all the managers on all the shifts, and in every department, would do this. Thank you, Sherman! | HAPPY | pregerns | Jenna - Senior HRM | Hi Naomi. Thank you for this positive call out for Sherman. That is great to hear and thank you Sherman for recognizing your team! | Leaders/Manager/Culture | 0 | CLOSED | USA | 5 | 0 | N |
| 2021-06-15 12:40:00.941000 | JFK8 | 1 | hepdenda | Good morning how is it that when the AA's are scheduled to work there are no stickers for their badges when they go through the imperative this made me not knowing where I stood it was it such a discomfort and it was imperative that we have stickers so that we know each and every AA has been fully vaccinated involved this too. | SAD | amabian | Jenna - HRM | Thank you for bringing this to your attention, Danielle. We have confirmed that the entrance is fully stocked with vaccine stickers. Starting June 17, fully-vaccinated employees must have the vaccine sticker on their badge in order to gain entry without a mask. | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 4 | 0 | N |
| 2021-06-19 02:07:52.250000 | JFK8 | 1 | hepdenda | Good morning is it possible make sure all equipment is ready for Prime Week all the the departments can't be productive and successful during Prime Week if all stations and equipment is not working properly or broken so can we ensure everything is working properly with having building closure. If maintenance is not properly done what's the point to waste time to close the building. | SAD | felagic | Jenna - HRM | Hello Danielle! Thank you for your comment! Leading up to Prime Week, our OB teams worked through the stations to ensure appropriate area and equipment readiness. Today, the OB Ops and I did another walk through the stations to identify and fix remaining areas of opportunity. Please continue to bring up any issues to your leadership. Thanks! | Working Conditions/Facilities | 3 | CLOSED | USA | 0 | 0 | N |
| 2021-06-19 20:16.127000 | JFK8 | 1 | vipsiom | Good morning all you will be happy to know that you have the convenience of receiving and picking up your packages at the Amazon Export Hub Locker located at 546 Gulf Avenue around the corner from the Recruiting Office so when you leave work just get your package and go please remember some take advantage of this great opportunity I love just get my package you receive a detailed email reply | HAPPY | amabian | Jenna - Senior HRM | Hi Jason, thank you for bringing this to your attention. As soon as we became aware of the broken restroom stall this was addressed and fixed by our maintenance team. Please feel free to bring any concerns directly to your manager so we can escalate immediately and get it fixed. We have an open door culture and welcome concerns. | Amazon Locker/Culture | 3 | CLOSED | USA | 4 | 0 | N |
| 2021-06-18 05:00.511000 | JFK8 | 1 | vipsiom | I love how the toilet on floor pre-N side is clogged and malfunctioning but if I go find another I have to do a duty grow man not more than 10 years younger than my manager's to explain that I was finding a bathroom. Is this a correctional Facility? Is such management activity appropriate? Do you respect your employees? I think the news on the urine bottles is all explanatory. | SAD | pregerns | Jenna - Senior HRM | Thank you for bringing this to your attention, Jason. We spoke to your manager and leadership about this situation. Leaders are expected to treat associates with dignity and respect. Your leaders will always communicate and work with you to see if there are any barriers that you are facing that we can help remove. Please let us know if you have any additional questions or concerns. | Leaders/Manager/Culture | 3 | CLOSED | USA | 4 | 0 | N |
| 2021-06-19 20:55.130000 | JFK8 | 1 | vipsiom | 463.3.2 is the NYC code that states no employee shall have to walk more than 500 ft for a bathroom. North side 1st floor is broken. I had to literally clock out to utilize the next closest one. How close and far must I go to take a piss?! | SAD | pregerns | Jenna - Senior HRM | Hi Jason. Please see the previous response. Thank you. | Policies and Procedures | 3 | CLOSED | USA | 4 | 0 | N |
| 2021-06-19 21:07:54.156000 | JFK8 | 1 | vipsiom | Can we get my accommodation approved? I feel like I'm going to have to quite literally pass out, go into cardiac arrest or potentially die before management decides to lay my accommodation is approved. What happens when the 5% I meet drop daily in the heart front bu harder. Neurologically I'm not there, therefore I have to push my heart harder even further to maintain productivity and quality. | HAPPY | amabian | Jenna - Senior HRM | Hi Jason, thank you for your concern. As we all employer health concerns seriously and the accommodation team will be following up with you to provide more detailed information on your accommodation. Thank you. Update: Thank you for working with Amanda from the HR team and taking time to speak with the accommodations team. | Security/Medical Concerns/Safety | 3 | CLOSED | USA | 3 | 0 | N |
| 2021-06-22 14:10.688000 | JFK8 | 1 | zachmarc | Did this company even take into consideration when hiring all the new staff that the MTA with cut backs couldn't handle the capacity? Is it too much for this insanely wealthy company to contribute to an articulated bus or two? Are we not worth the respect? I'd assume it's a day write off...the very public facts state that amazon loves these. | SAD | zachmarc | [Zach-AGM] Hi Jason. Thank you for the feedback. We work with the MTA on a regular basis and communicate to them when schedules change or if there expected to be additional headcount. A member from the HR team will follow-up with you directly to collect specific details regarding days and times your are commuting, and we can look into making any adjustments to the temperature concern please let us know so our Facilities team can monitor and adjust if necessary. | Transportation/Commute | 2 | CLOSED | USA | 4 | 0 | N |
| 2021-06-22 18:51.756000 | JFK8 | 1 | biodayna | It's really really hot in engine, even with the fans can make it cooler please | | samklip | [Felipe - OAE] Hello Danielle, our HR and Social Distancing team helped hand out Prime Day t-shirts last week, but we still have t-shirts on site! Please partner with your Area Manager or anyone from HR and we will get you one. Happy Prime Week! | Working Conditions/Facilities | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-06-21 16:32:03.042000 | JFK8 | 1 | hepdenda | Good afternoon when will they be handing Prime Day and I Got Vaccinated t-shirt to the Amazon Staff and AA's that didn't receive their t-shirts | | HAPPY | samklip | [Felipe - OAE] Danielle, our HR and Social Distancing team currently set to a max of 4 pairs per week per associate. If at any point during the shift gloves get damaged and there is need for an additional pair, any associate can request a replacement pair. | Engagement/Recognition | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-06-21 19:33:07.623000 | JFK8 | 1 | dimilif | Give out more gloves. This is not optional. We all encounter spilled chemicals regularly that are a danger to our skin cells, should have the quickest option available to change them and get back to work, not to mention the gloves get filthy every single day. If you want to cut costs, cut back on the A/C in the offices because the most glove inventory is 80/degrees. Reducing ability, please. | SAD | samklip | [Felipe - OAE] Joshua, thank you for your feedback. Absolutely, we all need to take care of equipment and the facility so we can keep JFK8 safe! However, if at any time equipment or any area on site is not operational, please communicate this concern immediately to your manager or through the VOA board so we can repair and provide a safe and positive experience to all associates and managers. | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-06-21 28:51.532000 | JFK8 | 1 | josodino | I saw some comments on clogged toilet. Please let's ask ourselves simple question. Who clogged the toilet? | SAD | samklip | [Felipe - OAE] Joshua, thank you for reaching out. We reached out to Access-A-Ride earlier this month to provide feedback. Access-A-Ride advised that associates are encouraged to submit feedback so that they can get specifics and follow up accordingly. I hope this helps! Update 6/23: We have reached out to Access-A-Ride to provide additional feedback but did not hear back from them on this on-going concern and we will continue to work on this together to get a resolution! | Working Conditions/Facilities | 0 | CLOSED | USA | 4 | 0 | N |
| 2021-06-21 22:16:05.780000 | JFK8 | 1 | carlenab | Good Morning Please can Jenna call Access-A-Ride again 18373527237 1, then 8. We are using here for 2 people admins to feel for our work bench since where we Stand it broken and you should fix the part where my gangstas outside voice. So Access a ride know that you're not playing games. Thank you | | amabian | Jenna - HRM | Hi Carlena, thank you for bringing this to your attention. We will check the link to ensure it is working properly. Also, I have made sure that you are signed up for the next time you are on shift in order to review emergency procedures and to share our recent training. | Leaders/Manager/Culture | 0 | CLOSED | USA | 5 | 0 | N |
| 2021-06-22 03:32:55.432000 | JFK8 | 1 | wiveis | After the evacuation a few weeks ago, it seems like many associates don't know the procedure. When will we go back to having scheduled fire drill? | | pregerns | Jenna-Senior HRM Hi Adina, thank you for bringing this to your attention. We will check the link to ensure it is working properly. Also, I have made sure that you are signed up for the next time you are on shift in order to review emergency procedures and to share our recent training. | Policies and Procedures | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-22 03:53:17.112000 | JFK8 | 1 | gorivaag | I would really like the session D ply birthday roundtable. But the link on the sheet take me to a page that says I cannot join because I am not the event operator | MEH | pregerns | Jenna-Senior HRM Hi Adina, thank you for bringing this to your attention. We will check the link to ensure it is working properly. Also, I have made sure that you are signed up for the next time you are on shift in order to look forward to seeing you then! | Engagement/Recognition | 0 | CLOSED | USA | 0 | 0 | N |

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-22 09:37:20 14200 | JFK8 | 1 | dmitrf | Felipe: how am I and everyone else supposed to find an area manager when they've got a job to do, as do we all? Waste company time walking around to find them and ask as TOTM what happens if I can't making products 2x. 3x during my shift? Which I do every day. And others too. Once again, this is not optional. You display a lack of basic common sense on this. GIVE US BACK THE GLOVES. Period | SAD | zachnwz | [Zach-ADM] Hi Dana . Thank you again for the feedback. Our procurement team is looking into paper straws that we can add to break rooms, so we can address this need while continuing with out sustainability efforts! We'll provide an update once we have a confirmation. Update: in order to address this while continuing with our sustainability efforts, we added reusable straws in our swag store, so any associate who would like one can get those there. With 2 swag bucks, which all associates get every month, you can get reusable straws Thank you for bringing this up as this will benefit several other associates as well | Security/Medical Concerns/Safety | | CLOSED | USA | 5 | 0 | |
| 2021-06-22 14:07:03 60000 | JFK8 | 1 | frajool | Can we please get straws in the break rooms I order alot and most times the places I order from forget the put straws. It would be greatly appreciated thanks ☺ | | sanhkp | Hi Jordan , please see Felipe's response below. | Process Improvement/Operations (i.e. WIP, ACES, IT) | 0 | CLOSED | USA | 2 | 0 | |
| 2021-06-22 18:58:18 87500 | JFK8 | 1 | frajool | Can we please get straws in the break rooms I order alot and most times the places I order from forget the put straws ☺ | MDH | zachnwz | Hi Jordan, please see Felipe's response below. | Security/Medical Concerns/Safety | | CLOSED | USA | | | Y |
| 2021-06-21 14:30:00 09000 | JFK8 | 1 | unlenuh | Good Morning. Ava What are you saying? Amazon can't help us with Access a Ride ? It's ok for your disable employees to wait two hours outside to go home ? After they worked for Amazon 11 hours stand up? I know I can't make a complaint to MTA about AAR for their disable employees? We all complain everyday nothing is done . Amazon has the power to help their disable employees. LIE it. | SAD | amxlabon | [Alex – HRM] Hi Carlina, it was a pleasure speaking with you this morning. Thank you for providing additional detail around your experience so that we can escalate these details directly to Access A Ride in order to help. We want you to be treated with the level of urgency and care that you deserve. Thank you. Update: (6/21) I spoke to the same team. I feel free to reach out with any other questions/concerns. Thank you! | Leaders/Manager/Culture | 0 | CLOSED | USA | 4 | 0 | N |
| 2021-06-22 15:15:25 30000 | JFK8 | 1 | dmitrf | 6/21/21: A woman was hit by a car (the driver left), came to the AUU tent for help, afraid to lose her job. SHE WAS HURT. AUU took her to amcare. Amcare/JHS refused to call police for over 40 min, urging her to sign papers! The AUU is cramped for medical care and get her emergency contact (he came right over). Is an employee [we've made the cut to the hospital as they denied her her rights] illegal | SAD | dmsrcess | [Dana – HRM] Hi there, thank you for your comment. The situation was handled and addressed by our safety team to ensure the associate was cared for and attended to. We will not disclose specific information about a case related to another associate for privacy purposes. If you have any other concerns or questions please feel free to speak to a member of the safety leadership team. Thank you. | Security/Medical Concerns/Safety | 1 | CLOSED | USA | 4 | 3 | N |
| 2021-06-22 15:42:45 50000 | JFK8 | 1 | haydenda | why are there no more wipes and sanitizers on the tables in the break rooms , though corona seems to be going away, these are important for general sanitising and safety. we all cannot line up at the sinks to wash our hands during the 20 min break just to have a snack. the sanitizer station around are also mostly empty | HAPPY | samicm | [Felipe - GM] Hello there, thank you for the feedback. We have shared this with our ABM and social-distancing teams and have adjusted staffing this morning so we can maintain sanitation supplies available for all departments and in the break rooms. Please continue sharing feedback to help us keep PRES safe! | Engagement/Recognition | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-23 10:25:53 33000 | JFK8 | 1 | oualliene | I would like to charge department . Right now I'm working as packer. I would like to change to picker. Packer department management is very worse. I am there was I no package to pack but the heater come and ask why I didn't pack alot. And also they have alot leaders but they are not hangover each other. Like only one too be alot father | SAD | amxlabon | [Alex – HRM] Hi there, thank you for reaching out! You can apply for an hourly internal transfer (HTS) through myUU. To view your current openings and how to apply, log into myUU, then click the "schedule" tab to view hourly internal transfers . This is reviewed on a bi-weekly basis and all notifications of review and approval will come with the manager and to partner additional inputs or partner additional questions about a department transfer . Feel free to leave your login or visit the HR desk for additional assistance. Thank you! | Leaders/Manager/Culture | 0 | CLOSED | USA | 4 | 0 | N |
| 2021-06-24 06:28:47 28600 | JFK8 | 1 | ANONYMOUS | I got a message about free donuts today in all the breakrooms and everyone goes on break today at 10. is the west side excluded from free first break donut day? Where can I find the donuts thank you ☐☐ | HAPPY | preges | [Jamie- Senior HRM] Hi Dana. This situation was handled and addressed by our safety team to ensure the associate was cared for and attended to. We always prioritize the safety of our team in any situation and follow our standard processes. I want to make it clear that we never refused to call an ambulance. We will not disclose specific information about a case related to another associate for privacy purposes. If you have any other concerns please speak to a member of the leadership team. Thank you. | Engagement/Recognition | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-24 09:13:87 17000 | JFK8 | 1 | dmitrf | Need to have more microwaves or stop unplugging . Waiting 15 minutes for a microwave when you only have a 30 minute break is ridiculous. Also can you please check the fastenal machines because there roof full or not working or say there offline when trying to get a kit and there once anywhere | SAD | preges | [John – Day HRM] Hi there, thank you for the feedback, I will follow up with you in person to understand exactly which areas of the building you are referring to so we can look to possibly add microwaves and ensure the fastenal machines are working properly. In addition, our T team looked at the fastenal machines that you mentioned and all are working aside from one which has a ticket for the vendor to come on site to repair . Thank you, and appreciate you bringing this to our attention. | Leaders/Manager/Culture | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-06-24 12:17:22 78200 | JFK8 | 1 | dmitrf | The only people who are inaccurate , inhumane and who acted criminally are the HR reps and amcare employees who REFUSED TO CALL AN AMBULANCE and tried to force this woman to do paperwork when she was HIT BY A CAR. For how long will you medical care withhold? I was there and escorted my coworker in personally, so how am I inaccurate? Tell me. I want your reasoning. Go. | SAD | dmsrcess | [Dana – HRM] Hi there, thank you for taking the time to speak to a member of the leadership team. Thank you. | Security/Medical Concerns/Safety | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-24 12:27:35 85300 | JFK8 | 1 | dmitrf | Another thing, Drew, you can't tell people how to feel. That's taking away their rights as well. And obviously there's something wrong with Amazon if we're greeted at amcare and they ALREADY KNEW ABOUT IT but didn't come out to help, and waited for 40 to bring her in. Don't respond to this one, I'll wait for your other response. | SAD | preges | Hi Dana, We continue to encourage associates to express their thoughts and concerns, and our response was not intended to instruct associates as to how they should feel. We are simply saying our associates will always be treated with urgency in situations of this sort. We would never refuse to call an ambulance. An associate should never fear reporting an injury in the event the experience for associates. | Leaders/Manager/Culture | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-24 12:47:93 93900 | JFK8 | 1 | edidok | Since there's so many people leaving when shift is over why not as for MTA for more buses. Cuz they're really packed!! | HAPPY | preges | [James- Senior HRM] Hi Edison, thank you for this feedback. We have regular communication with the MTA with any changes to schedules or our headcounts so we can provide them with this information. We will follow-up with you in person to understand specific details on days and times you are referring to. Thank you. Update (6/2): Thank you for speaking with me in person. I will provide feedback to the MTA regarding these days and times so they can make adjustments. Thank you. | Engagement/Recognition | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-05-01 02:00 66000 | JFK8 | 1 | edidok | The first floor main breakroom is out of Doritos Limón snacks. Please get more | | sanhkp | [Felipe – GM] Hi there, thanks for letting us know. We are partnering with the vendor to get all snacks replenished! Please continue this kind of feedback so we can promptly act on areas that improve the experience for associates. | Engagement/Recognition | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-05-06 39:18 55300 | JFK8 | 1 | edidok | The screens on panel lane 130 in outbound ship dock are not working. Please fix it | | privhc | [James- Senior HRM] Hi Edison, thanks for escalating! The team was able to ensure the TV screen on Lane 130 is fully functional and that all associates working on that lane are able to clearly read the scan points from the screen. Appreciate you letting the team know! | Working Conditions/Facilities | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-05-07 40:55 50700 | JFK8 | 1 | edidok | You guys should fix the toilets. I could tell that the flushing pressure is going down. | | sanhkp | [Felipe – GM] Thank you for the feedback, Edison! Our Facilities team is checking water pressure in the restrooms and will address any issues found. | Working Conditions/Facilities | 0 | CLOSED | USA | 1 | 0 | N |

Amazon_000236

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-25 10:47:15.096000 | JFK8 | 1 | haydenda | Good morning can someone please fix the refrigerator and soda machine on the 3rd floor Smart Foz satellite break room it has been broken for days that's unacceptable how are we supposed to keep our food cold or get anything to drink when we are thirsty and hot this shouldn't be especially if we have to stay hydrated during our entire shift please fix thank you. | SAD | sanfelip | [Felipe - (SAD) Danielle, I appreciate you bringing this up! Our facilities team will look into this refrigerator and will get it back in operation. | Working Conditions/Facilities | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-06-25 15:02:19.714000 | JFK8 | 1 | haydenda | Wanna thank my manager for having the refrigerator and soda machine fixed we sure can't then not working. | HAPPY | sanfelip | [Felipe - (SAD) Danielle, thank you for having brought this up so we had the opportunity to promptly address this for you and all other associates that use this break room. Please continue sharing feedback! | Working Conditions/Facilities | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-06-25 15:27:59.698000 | JFK8 | 1 | dmihf | Zachary, you want thousands of people every day going to swarm amazon and managers for gloves? How about we all just take our pallets of looking garbage to pour desk and drop them off so you can get the drift of how many gloves we need to work? Better yet, I just call OSHA. | SAD | zachmac | [Zach-ADA] Hi Dana. As previously mentioned, we will provide additional gloves to associates whenever needed. Each cleanup location has fastened machines as well as additional gloves in totes in case they are needed. If you have additional questions or concerns feel free to speak to any member of the leadership team. | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-06-25 17:48:48.176000 | JFK8 | 1 | vasconm | In ALL recent management replies to my comments here, name 1 issue that was resolved besides a toilet? Btw I had to use PTO to use the bathroom where's my refund? About the buses... my schedule doesn't change, so where everyone else's does, I get home much later in direct violation of my approved accommodation. In regards to vaccine accommodation, my write up was illegal, still is illegal I guess | MAD | prenjann | [Jenna- Senior HRM] Hi Jason. Amanda will continue to work with you and the accommodations team regarding your accommodation. In regards to your PTO, Amazon certainly does not expect associates to use their personal time for the restroom... my schedule doesn't change. For future reference, please know you do not need to punch out, but instead just let your manager know if there is an issue with equipment around so we can assure it gets fixed as soon as possible. Thank you. | Leaders/Manager/Culture | 2 | CLOSED | USA | 2 | 0 | N |
| 2021-06-25 17:49:52.148000 | JFK8 | 1 | vasconm | 2/2 working with Amanda however polite she may be is helping me in timely manner? She can't make any decisions herself besides the decision to hand the buck to a 2nd representative which to her credit was very kind of two yrs debt & kinda anti-productivity. My schedule doesn't change with ADA, it is not 48 hours, nor does my pto distribution because of such, creating a sick time barrier. Illegal | MAD | prenjann | [Jenna-Senior HRM] Hi Jason. Please see the previous response. | Leaders/Manager/Culture | 2 | CLOSED | USA | 2 | 0 | N |
| 2021-06-26 10:13:11.116000 | JFK8 | 1 | ANONYMOUS | Quintet watching back but since I mentioned the ... my pto WHICH IS NEVER answered and instead ONLY was strictly given unsolicited info about the union! SO WITHOUT PUTTING THAT IN THERE, Will our cellphones be taken away from us once everything goes back to "normal" because I think that would be horrible. It is impossible for our families to get in touch with us. We have lives, and they matter! | SAD | prenjann | [Jenna-Senior HRM] Hi Jason. Thank you for your comment. At this time we are not aware of any changes to Amazon's Cell Phone Use policy. Please leave your logic or speak to your leader or a member of the HR team so we can follow up with any other concerns or any additional questions you may have. Thank you. | Policies and Procedures | 0 | CLOSED | USA | 1 | 1 | N |
| 2021-06-26 21:34:00.149000 | JFK8 | 1 | vasconm | Are we really going to let them illegally tell us we can't take vacation? I'm not a lawyer but I have extensive experience and knowledge of the law, I'm not offering legal advice but a strong suggestion we ALL seek it. If this is about your business (speak and prime week), Amazon's vacation freeze policies are absolutely a joke however that doesn't reflect they have any knowledge. MTA and City law flat out do not permit the vacation freeze. I strongly urge ALL contd | MAD | prenjann | [Jenna-Senior HRM] Hi Jason. We had a vacation freeze for prime week from June 21st-June 29th which was communicated weeks in advance to our entire team. There are only a few times during the year where we have vacation freezes based on needs of the business (peak and prime week). Amazon's vacation freeze policies are consistent with applicable leave rules. We encourage all associates to use PTO or UPT if they need time off during this time. Thank you for taking the time to speak with myself and Amanda today regarding your concerns. | Leaders/Manager/Culture | 2 | CLOSED | USA | 1 | 2 | N |
| 2021-06-26 21:38:07.946000 | JFK8 | 1 | vasconm | 2/2 employees seek legal resource here. You will very quickly find out what I'm saying has a strong basis in truth. No action need be taken, just call the city and state agencies who are in charge of job leave compliance. From that point the decision on legal recourse is entirely your own. We have to hold MTA and General Managers accountable as they'll keep abusing us. | MAD | prenjann | [Jenna-Senior HRM] Hi Jason. Please see the previous response. Thank you. | Leaders/Manager/Culture | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-06-26 21:39:24.135000 | JFK8 | 1 | vasconm | 2/3... break room or if allen stood flat out WITHOUT ... I mean the company who let a goose get hit and rot in the grass, still rotting there, probably doesn't care. We all knew it'd be an employee next, sure enough scroll down... an insurance employee was next. Did they care about the employee more than anything the goose death, that rang about skip and boot liability, that's all they care about here. | MAD | prenjann | [Jenna-Senior HRM] Hi Jason. During the real estate transaction process Amazon's due diligence team reviews information and risk associated with the environment. This includes the history of the site, flood risk, seismic risk, and permitting risk. This process also includes an air analysis during the pre-construction phase. Amazon's Health and Safety team continues to comply with any necessary health and safety requirements to ensure associate safety. Regarding fire extinguishers, our building has fire extinguishers distributed throughout the building. All personnel can find the location of the extinguishers by looking for a painted red band on the support column. Our fire extinguishers are inspected annually by a certified portable fire extinguisher servicing company as required by local regulations. Someone form the HR team will be following up with you to confirm which door you'd prefer to use. As far as the goose, I'm not sure where this comes from but we did have a member of the HSE team address the turnstile fixed at the entrance. | Security/Medical Concerns/Safety | 3 | CLOSED | USA | 2 | 1 | N |
| 2021-06-27 12:41:49.540000 | JFK8 | 1 | ANONYMOUS | MTA is unaware of my and other associates disabilities on a large scale. Site management is not unaware. MTA strives to be fully ADA complaint. Amazon by not addressing complications amongst it's disabled associates suspended their authority in making a request for the MTA during Prime week with out ensuring we'll have equal access to the MTA under title IV guidelines. This violation is severe | SAD | prenjann | [Jenna-Senior HRM] Hello Jason. Safety is our top focus and priority within the building. We have an open door culture and encourage all associates to bring any issues to a member of the leadership team and we will be happy to discuss in more detail. Thank you. | Security/Medical Concerns/Safety | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-06-27 15:21:40.866000 | JFK8 | 1 | vasconm | It is Sundays riffs off day I have emailed and shined a few can someone possible answer thanks, point of the email and or chives is we dont have to stand on that line. | MAD | amialeon | [Jenna-Senior HRM] Hi Jason. As previously mentioned, Amanda will continue to work with you and the accommodations team regarding your accommodation. In regards to the MTA we have reached out to them to provide feedback on the days/times where you are seeing issues with bus schedules. For off-peak times buses run at least every 30 minutes. For peak times (start of shift, end of shift), buses run every few minutes. This information can be found on the MTA website (https://new.mta.info/document/7760). Please let us know if you have additional questions or concerns. Thank you. | Transportation/Commute | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-27 19:46:36.596000 | JFK8 | 1 | ANONYMOUS | I hadn't looked at my rates on the performance kiosk recently, because we have the FC games at the stations now and I am more busy than last period, much to the delight of the pack. But I looked today and I got 4%. That is not good, but it doesn't make sense with what I use as I'm working. I don't know if I should be worried, angry, or just my usual sad. Why is there this difference? | SAD | zachmac | [Anna - HRM] Hello, thank you for reaching out. HR is present on site 7 days a week from 6:00AM-2:00PM. I'm sorry to hear your rate is not quite in target. Get in touch with your manager and have someone during this time. HR can be found at our desk or you can reach out at JFK8HR@amazon.com, HR Cares through AtoZ, or by calling the ERC at 888-892-7180. Feel free to reach out to myself or a member of additional questions you may have on your specific requests and best understand how we can continue moving forward. Thank you for reaching out! | Process Improvement/Operations (i.e. WF, ACES, IT) | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-06-28 05:49:51.135000 | JFK8 | 1 | ghams | It is still really hot in the building. It shouldn't be 77-80 in the building when it's that temperature outside. It's supposed to be a heat wave this week. This is the 4th time I have address this in a two-3 week period and spoke with Felipe personally. Please address this ASAP and if you can pass out cold bottles of water and we did I. The summer when we launched | MAD | blssloya | [Anna - HRM] Sylvana, thank you for reaching out. The HR team along with our facilities and safety teams continue to monitor temperature in the building to ensure that all units are operating as intended. A few days ago we deployed 16 industrial fans in each corner to provide additional ventilation. Please continue to do during the summer months. Please continue sharing feedback! | Working Conditions/Facilities | 0 | CLOSED | USA | 2 | 0 | N |

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-28 13:42:49.022000 | JFK8 | 1 | vasconn | I respect my PA and most PAs I work with in general however being placed every day next to an armedy entry point because it's all that's available is again causing me undue hardship due to my schedule accommodation. It lowers my site, therefore it's ineffective as an accommodation to separately in a pattern (though I don't see the pa as doing deliberate negative action) please me in said stations | MJH | prenjenn | [Jenna - Senior HRM] Hi Diana. We always prioritize the safety of our team in any situation and follow our standard processes. This situation was handled and addressed by our safety team to ensure the associate was cared for and attended to. We will not disclose specific information about a case related to another associate for privacy purposes. If you have any other concerns or questions please feel free to speak to a member of the leadership team. Thank you. | Leaders/Manager/Culture | 0 | CLOSED | USA | | | N |
| 2021-06-28 15:40:05.686000 | JFK8 | 1 | dimitf | Okay, one more time. A coworker was hit by a car. ALU took her to Amcare. Amcare did NOT call an ambulance or ask for her emergency contact. ALU did. It took 40 min of arguing. We tried to make her fill out a form. I know, because you took my witness statement. Though you didn't bother to take my companions'. Associates here need to know what's gonna happen if they get hit as well. Safety? Please. | MJH | prenjenn | [Jenna-Senior HRM] Hi Diana. I am unsure of what you are asking here. Associates are encouraged to use the VOA buttons for any safety concerns and concerns. The leadership team is happy to answer any questions and concerns you may have. Thank you. | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 1 | 1 | N |
| 2021-06-23 15:44:13.329000 | JFK8 | 1 | dimitf | For thousands who work here, why are only a handful of voices posting? The math doesn't add up. What do you really think of the climate and culture here at JFK8? I'm guessing it doesn't even see my posts, for there should be at least 35 others speaking every day. How do you account for this imbalance of free speech? | SAD | prenjenn | [Jenna-Senior HRM] Hi Diana... | Teamwork | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-28 15:49:29.242000 | JFK8 | 1 | dimitf | I see you put the glove bins back, thanks! Btw, what's going on with the Bx6 Broom and Dustpan order? We just completed Prime and delivered items in 2 hrs, or 1 day. That doesn't add up if we can't even get our simple broom order delivered to our facility. | MJH | saricin | Hi Diana, thank you for the feedback. We have placed the order for the brooms and dustpans and will deploy them within the next few days. Thank you. | Working Conditions/Facilities | 1 | CLOSED | USA | | | N |
| 2021-06-23 11:48:04.749000 | JFK8 | 1 | cvelent | Today in aft jr was a disaster that I will not tolerate. The fact that I had to refit my station 3 times and wait almost 6 hours for a water spider to ever go near my station is uncalled for and the fact that I've mentioned it to two P/L's and all I got was we're short staffed is not an excuse. There needs to be more organization in front half of aft jr. | HAPPY | saripheli | [Jenna-AGM] Hi Carl, thanks for the update. Amazon is opening up facilities all across the NY Metropolitan area as we continue to grow, including Brooklyn! | Career/Advancement Opportunities/Training | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-23 12:50:42.566000 | JFK8 | 1 | cvelent | I have been meaning to tell you all that Redbook is getting an Amazon facility, which is going to be built where an old sugar factory use to be. So everyone... | MJH | saripheli | [Helper - GM] Christina, thank you for your feedback. I appreciate you sharing this experience so we can act on this and share your perspective with the rest of the team... | Career/Advancement Opportunities/Training | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-23 15:04:42.737000 | JFK8 | 1 | ANONYMOUS | I am still uncertain about ALU topic that keeps be hammering around. I know its bad, but there has to be some thing else to it. | MJH | prenjenn | [Chris - Sr Ops] Hello. Thank you for the feedback. The training program includes both in-App briefing which occurs on the tablet screen and in-person training from your ambassador. This allows time for the new trainee to learn the information... | Policies and Procedures | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-30 01:45:47.508000 | JFK8 | 1 | bladayna | Thank you Britney, Amanda, Diana, and Nathan for handling situations so well and know how to talk to people and handle things in a timely fashion. I come to work every day and know I have no issues to bring up the next work. | MJH | prenjenn | [Jenna - Senior HRM] Hi Dayna. Thank you for the positive feedback for the HR team! Great job Britney, Amanda, Diana and Nathan! | Engagement/Recognition | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-23 13:31:05.705000 | JFK8 | 1 | vasconn | Amazon says customer first. I was treated with no respect when the merchants, I have strong circumstantial evidence to indicate the purchase was made at Amazon as a taunt on to space. I've been in touch on the consumer end of the company and was given no recourse. Any other employer would have at least given direction | MJH | prohin | [Jenna-Senior HRM] Hi Diana. At Amazon customer service is a top priority. You can report any suspicious activity following this link https://account.status.amazon.com/report-unauthorized-activity. A member of the HR team will be following up with you to assist and help answer any additional questions or concerns you have. | Engagement/Recognition | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-06-23 13:34:33.796000 | JFK8 | 1 | vasconn | If it's ridiculous that I am yet again following up on here for something negative for once I wish it was positive but lately it's been impossible. Is the rate that I just put out for the last hour going to count towards my rate or someone else once I was signed in under another person because I don't park for others I come to work and do work for myself. I'm tired of having work count. | MJH | amsaloon | [Jenna-Senior HRM] Hi Diana. Consistent with our policy, Amazon, including JFK8, does not tolerate or permit any of its associates to suffer retaliation of any kind. We take extreme pride in having an open and direct relationship with our associates and feel comfortable expressing their opinions... | Security/Medical Concerns/Safety | 2 | CLOSED | USA | 1 | 0 | N |
| 2021-06-28 15:23:57.020000 | JFK8 | 1 | dimitf | Simply this, Jenna: if coworkers are asking others to post their concerns on the board; if people are being intimidated into not speaking up for fear of retaliation; if a woman would rather be hit by a car and not call the police for fear of losing her job; and if all are being fed false info, then how do you plan to change that I narrated? | SAD | prenjenn | [Jenna - Senior HRM] Hi Diana. Thank you for bringing this to our attention. We will reach out to the correct team to better understand if there was a change in the process. A member of the team will be touching base with you on your next shift to answer any other questions you have in the meantime. | Teamwork | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-06-29 18:56:52.238000 | JFK8 | 1 | vmchel | Hello myself and some Amazon Flex workers have not received our attendance emails in a few weeks , when will the emails be sent out again ? Thanks | SAD | prenjenn | [Jessie - HRM] Hi Michelle, thank you for bringing this to your attention and will not be impacted by someone else having inadvertently logged into the station you were working on yesterday. Anthony holiday, our Operations Manager, was reached out to... | Process Improvement Operations (i.e. WF, ACES, IT) | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-06-29 17:47.600000 | JFK8 | 1 | cvelent | Full of its ridiculous that i just put out for the last hour going to count... | SAD | prenjenn | [Jenna - Senior HRM] ... and can continue to give you additional feedback we can act on. | Engagement/Recognition | 1 | CLOSED | USA | 1 | | Y |

Amazon_000238

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-06-29 21:40:23.046000 | JFK8 | 1 | ANONYMOUS | 2/3 App sealed and tossed out.. my station should have not been changed last min especially after I refilled it myself an prepared it for myself, no one else. This is becoming an issue management thinking they can treat us with disrespect. I understand things may change and I should be flexible but it's really starting to turn me into a person I was never before and I don't like this change in attitude. | SAD | sahfelp | [Helpe - GM] Thank you for your feedback, please see my response below. | Engagement/Recognition | 1 | CLOSED | USA | | | |
| 2021-06-29 21:42.06.462000 | JFK8 | 1 | cvelet | 3/3 it's getting completely out of hand. Also I would really like a little more recognition and appreciation .. tired of people who do no work getting praised and I get nothing. | SAD | sahfelp | [Helpe - GM] Thank you, Christine, for your feedback! This week we added an associate recognition area in the front of the building. We had to where our Loss Prevention team is located. In this area we highlight associates that have gone above and beyond with their hard work. I encourage associates to let their AM or HR know if they would like to recognize someone so we can partner and leverage this new area to congratulate associates that are having incredible positive impact in our teams. | Engagement/Recognition | 1 | CLOSED | USA | | | Y |
| 2021-06-29 18:40.21.5000 | JFK8 | 1 | mmnonar | Your screen, in front of the old ones store,.. in PROMOTIONS, 358 Tier 1 > Tier 3, and 707 tier 3 > Level 4 | since 2018 1. How many of those workers were women and minorities? | MEH | prenjenn | [Helpe - Senior HRM] Hi Andrea. Thank you for your comment. While I am not at liberty to share demographic information pertaining to the leadership, we just posted our Tier 3 matrix so that all employees have access to this information as well as guidance on how to move from one Tier to 1 to 1. I am happy to discuss further. Please let us know if you have any additional questions. Thank you. | Career/Advancement Opportunities/Training | 2 | CLOSED | USA | | | N |
| 2021-06-29 22:03.20.832000 | JFK8 | 1 | mmnonar | Multiple water stations were out of water today. Many of the vending machines don't work ( they take your money though.). Multiple coffee machines offer poor coffee. The ice machines are always broken. If you had more consideration for your workers, these machines would be checked and maintained more often. It would be greatly appreciated. | MEH | sahfelp | [Helpe - GM] Hi Natalie, thank you for bringing this up. We conducted an audit of all break rooms and we found one coffee machine as well as one ice machine that were not working as expected. Both of them have now been repaired. Our Procurement team also audited water coolers and replaced three of them around the facility. Our team did not find vending machines not working correctly. We will partner with our team to get details of where the bad ones are and we can deploy /bets including walking the dock today and seeing what can be done to improve this situation. We have periodic audits and preventative maintenance of equipment however. If at any time in the future any of these pieces of equipment fail, let your manager know so we can get those repaired or share them in the HSA board with specific location information so we can promptly get those back in operation. | Working Conditions/Facilities | 1 | CLOSED | USA | 5 | 0 | N |
| 2021-06-30 16:55.37.9000 | JFK8 | 1 | egparine | How about some fans for the palette lanes and in wings on the outbound ship dock. We sweat too. | | zachmarc | [Zach-AGM] Hi Robert, thanks for your suggestion and going above and beyond to recognize your fellow team members. I am excited to share with you that we now have a large display up at the front of the building along the green aisle dedicated to recognizing associates from each department! Currently, we are unable to give out additional PTO however we do have swag, snappy and other ways to reward associates in addition to the recognition area. | Working Conditions/Facilities | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-06-30 17:59.52.307000 | JFK8 | 1 | ledporn | Hello, I was wondering if you could announce the employee of the month in each department. There is an AA who go above and beyond with their hard work. As reward you can give them some extra PTO. In end of the year there are too employee of the year. Thank you!!! | | zachmarc | [Jamie-Senior HRM] Hi Melissa. Thank you for your comment. Safety is our number one focus and priority in all of Amazon. There are currently many mechanisms that our delivery stations have in place to ensure safe driving by our Amazon vehicles. Thank you for sharing this information. Our loss prevention team is following up with our delivery station partners to ensure this is addressed. Please let us know if you have any other concerns or feedback. | Pay and Benefits/Time off | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-06-30 23:05.30.2000 | JFK8 | 1 | gsinaag | Can we get starbucks for amazon prime vans?! I say this because twice today coming to work, I was cut off by an amazon delivery van ... one who was driving on the shoulder to get around traffic, and almost side swiped coming into the lane. I have dash cam footage of it around 530pm. 3 AAs would not have made it in. The AAm the van, me, and a coworker I was carpooling. The Plate was 26523 NA | | prenjenn | [Jamie-Senior HRM] Hi Thomas. Thank you for your comment. PGIA will only be approved for Associates that are 15 or more consecutive calendar days. An employee must contact Disability and Leave Services (DLS) to request a PGIA at least 15 days in advance. More information can be found on Inside Amazon at https://inside.hr.amazon.dev/us/en/employment/policies/compliance/personal-leave-of-absence.html I will have a member of the HR team follow up with you directly to address your specific questions. Thank you. | Security/Medical Concerns/Safety | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-07-01 07:46.15.045000 | JFK8 | 1 | thsmtha | When will we be able to take a personal leave of absence for vacations again? I need some time away from this place for some peace of mind. | SAD | prenjenn | [Jamie-Senior HRM] Hi, thank you for your comment. We have an open ticket for this to be resolved for all up with you directly and ensure this has been corrected. Thank you. | Pay and Benefits/Time off | 1 | CLOSED | USA | | | N |
| 2021-07-01 08:12.25.902000 | JFK8 | 1 | ANONYMOUS | why is that in the latest weeks UPT time has been deducted out of nothing and we are forced to be calling HR to fix it? Every hour is needed to keep up so the time is corrected. Can this be fixed? Thanks | SAD | prenjenn | [Zach-AGM] Thank you for the comment. We double checked your comment. We do not currently have plans to install additional barriers in singles however we will follow up with the managers on each shift to coach all associates on cherry picking. Additionally, we have new staffing tool bags that will help us with rotating between the singles paths. Please feel free to leave your login or speak to your manager directly if you would like any additional follow up or information. | Process Improvement Operations (i.e. WF, ACES, LT) | 5 | CLOSED | USA | | | N |
| 2021-07-01 10:44.27.970000 | JFK8 | 1 | ANONYMOUS | Hi. Can we please get those dividers that were installed in singles mix also installed singles smalls to stop cherry picking? End of the two stations you get totes with 2-3 items because no one wants to walk. I don't understand why it's easier to pick 30 small than it takes of 3 pack large wrapping, it's hard on my hands for 4 days. We should be in equal amounts of wrist pain at EOS. Or rotate us? | MEH | sahfelp | [Zach-AGM] Hi Ashley, thank you for the comment. A few weeks ago we had uncovered some settings that we were able to adjust and have since lowered the set point of our AC system so it now kicks us on any time the outside temperature reaches 78 degrees or higher. We also bought additional fans for every slow pick/stow and pack singles stations. In addition, we deployed 16 large industrial fans throughout the floor, in each corner of the AR field. We are now looking to further improve the air flow and temperature by swapping out the filters of our HVAC units. Although, we are unable to make the building any cooler we are hoping these changes help make a delayed opening for nights. For Outbound, day shifts will be ending at 12 noon and night shift will begin at 11:30pm for shift 1 and 11:45 pm for shift 2. For inbound, day shift will end at 11:30 am and night shift will begin at 12:30am. | Process Improvement Operations (i.e. WF, ACES, LT) | 5 | CLOSED | USA | | | N |
| 2021-07-01 11:17.16.732000 | JFK8 | 1 | zachtmarc | Is 4th of July full day? I ask because AAs who use picture a ride I ordered the wrong one now I have to go pick it up tell them it's the wrong size and wait longer for it to be exchanged. It also shouldn't take so long for it to be fulfilled either | | zachmarc | [Zach-AGM] Hi Andy, thank you for your feedback. If you ordered the wrong size please let a member of the HR team follow up with you to get more details on your specific request. Thank you. Update 7/2/21: ... | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 4 | 0 | N |
| 2021-07-01 11:54.04.136000 | JFK8 | 1 | fixpoil | Can we work together to get the warehouse to an appropriate temperature for everyone. 79 degrees us all floors is excessive especially with it being 75 outdoors. I can't work with excessive heat all day. More bigger fans and preferably need to know before Saturday thanks 🙂 | SAD | prenjenn | [Zach-AGM] I totally lost my hair, based on your feedback and partnered with our Procurement team to look at different alternatives to solve this while continuing with our sustainability efforts. We decided to add reusable straws to our swag store, which associates will be able to get for 2 swag bucks. All associates receive at least 2 swag bucks per month, so anyone who would like to get those can do so. We have decided to stop providing the swag store as of this morning! This way we will be able to address this need while continuing our sustainability efforts. Please continue sharing feedback so we can keep improving JFK8! | Working Conditions/Facilities | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-07-01 11:55.02.649000 | JFK8 | 1 | fixpoil | I asked if straws could be added to break rooms.. any update? | | sahfelp | [Jamie-Senior HRM] Hi Ashley, thank you for your feedback ... | Policies and Procedures | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-07-01 11:56.45.890000 | JFK8 | 1 | fixpoil | It should be easier to cancel a swap order once it's done. I ordered the wrong size now I have to go pick it up tell them it's the wrong size and wait longer for it to be exchanged. It also shouldn't take so long for it to be fulfilled either | | prenjenn | [Jamie-Senior HRM] Hi Jocelyn! Yes, based on your feedback we will be instructing the wrong size pickups at a member of the HR team follow up with you to get more details on your specific request. Thank you for taking the time to meet with Stephanie from the HR team to resolve the issue. | Policies and Procedures | 0 | CLOSED | USA | 1 | 0 | N |

Amazon_000239

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-07-01 18:38:38.514000 | JFK8 | 1 | dmilif | Jema, you danced around the question and didn't answer it or address anything that's amiss. I write on the VOA board as everyone feels that they can, in the open, without discussing things with a manager who will not likely take responsibility for making any change. So, besides the ALU bringing fairness and equality, how will Amazon do so? | SAD | prangren | [Jema-Senior HRM] Hi Dana. Our team drives fairness and equality within the building every day. My response explains all the way that we do this through our direct communication with associates... Our direct communication allows us to address associate concerns immediately as they are brought to your attention. If you feel this is not happening and have a specific concern you would like addressed please speak to a member of the leadership team or HR. As previously mentioned, if you do not feel your issue is being addressed you can call the Ethics line (877-392-2162) which is a neutral party independent for cast if employees do not feel comfortable speaking with their leader or a member of HR. Thank you. | Teamwork | | CLOSED | USA | 2 | 0 | N |
| 2021-07-02 03:32:37.566000 | JFK8 | 1 | cruxet | I work in shift 1. We have roten stations with scanners that don't play nice to stations. Some stations are missing an 3rd scanner & require to be switched by robners while working. Some roten station have light delays that prohibit aju from making dept. rates. Some wall's have loose and weak wires. Watts 5-7-14- & 18. Heavy items sets off the light sensors. | MDH | fsiagc | [DB Sr. - Candid Hello Victoria! Thank you for your comment. You are absolutely correct that there are stations in #F15 with these mechanical issues. Our team made note of reoccurring issues, missing scanners, or faulty equipment during Prime Week and will be partnering with our RME team to resolve. Anthony Holiday (HHO Ops Manager) will be leading improvements. | Management | 3 | CLOSED | USA | 1 | 1 | N |
| 2021-07-02 03:55:43.419000 | JFK8 | 1 | cruxet | I work in sik 1. What are the dept. requirement for water spiders. We have an person who refills boxes in front of stations and the behind. My supervisor wate the aju to perform all the refills the same task and expects packers to sieze there own items. Which bring down pack rates. They need to be accountable to perform as well as all other dept's. | HAPPY | prangren | [DB Sr. - Candid Hello Victoria! Thank you for your comment. Waterspiders should be double filling the entire box site so that once you've worked through the first layer, the second is ready to push through to you without delay. Waterspiders also own supplying extra tape, spoos, dunnage, and labels on the back of the wall. If you are staffing zero per station, you will need two waterspiders. Ilene Ross (AM) will be following up with you in person to better address your concerns. Update: Thank you for taking the time to speak with Anthony regarding your concerns. Please let us know if you have any additional questions or concerns. | Working Conditions/Facilities | 3 | CLOSED | USA | 1 | 0 | N |
| 2021-07-02 04:08:18.083000 | JFK8 | 1 | cruxet | We have often and induct stations that the andon buttons don't work in sik 1. Associates wait a while sometimes for bathroom breaks and conveyor issues. Jam's to be resolved. | HAPPY | prangren | [Felipe - GM] Hello Jocelyn, thank you for your feedback. I am ans assured in place so we assure that they will not relight with conveyor or calling over a station, so they calls simple operate - Julia, your Area Manager, will partner with you to gather more feedback on the location of fans or other feedback you have around the station issue. | Security/Medical Concerns/Safety | 3 | CLOSED | USA | 1 | 0 | N |
| 2021-07-01 11:25:51.978000 | JFK8 | 1 | fsajoei | It's still way too hot even with station fans flows to the system working properly if internal temperatures are 78-80 degrees. Please look into this until it's fix properly and comfortable | | sanfelip | [Jema-Senior HRM] Hi Dayna, thank you for the comment. We will absolutely continue to work on solutions. We are currently swapping out filters in our HVAC system and adjusting BMS settings to see if that helps. We have also ordered portable cooling units that we will deploy around the station. | Working Conditions/Facilities | 0 | CLOSED | USA | 0 | 1 | N |
| 2021-07-12 20:14.796000 | JFK8 | 1 | biodayna | Shout out to Amanda and Christine in help for explaining things with care and treating everyone as equal and listening and being courteous... shout out to you're. Amazing and great woman with compassion for her job and assistance to associates. All day every day. | MDH | zacfrenxi | [Jema-Senior HRM] Hi Dayna. Thank you for your feedback and recognition for the team. I am glad they were able to support you and answer your questions. Great job Amanda, Christina and Lynne! We appreciate all you do on a daily basis! | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-07-12 50:15.200000 | JFK8 | 1 | biodayna | Big shout out to Julia Chan! I told her about an issue with my station this morning and was fixed in less than an hour. She's always willing and available to help when you need and with a smile. The best of the best we have here at JFK8 | HAPPY | prangren | [Felipe - GM] Thank you for the positive shout out, Jocelyn! And thank you, Julia for providing a great experience to your team :) | Engagement/Recognition | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-07-13 17:50.289000 | JFK8 | 1 | fsajoei | Good morning. I've had a locker assigned since October 2018, when we'd fully back to normal and phones are no longer allowed on the floor or will I still keep those same lockers? I'm asking because I take the bus and I'd have no where to leave my phone. Thank you. | HAPPY | sanfelip | [Jema-HRM] Hello. Thank you for reaching out. There are no current plans to change the Cell Phone policy at this time, however we will continue to share the most updated guidance throughout the site via TV Feeds, table toppers, installments, and A&O to name a few. As we move forward, we will also keep you updated on when phones will be allowed back onto the floor. Associates lockers will be reassigned to you once they are brought back. Amazon continues to follow all CDC guidelines as well as local and federal guidance around safety protocol. Thank you again for your inquiry! | Engagement/Recognition | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-07-20 01:01:21.748000 | JFK8 | 1 | edsiok | If there's another oppressive heatwave like 90 or 100 degrees ferenhight outside will the facility be cool enough to work? | HAPPY | zacfrenxi | [Zach-AGM] Hi Edson, thank you for the comment. In order to ensure the facility maintains a reasonable temperature we have purchased portable cooling units, are purchasing additional fans and are partnering with our BMM team as well as HVAC vendor to replace all filters there and every cooling unit is in good working order at all times. We will continue to monitor this multiple times a day. Please continue to escalate if you feel a station is too warm. | Working Conditions/Facilities | 2 | CLOSED | USA | 2 | 0 | N |
| 2021-07-22 14:08:11.379000 | JFK8 | 1 | ANONYMOUS | Most associates receive 90% base tomorrow plus holiday time. I receive 62.5% plus holiday. This is factoring in even for double pay. 62.5% v 90%. I don't need to discuss what happened in the leadership decision making in Pocket. I brought VET this week just mention, this is against the law by Prior with different intent. Won't to see which law I'll gladly provide | MDH | prangren | [Jema-Senior HRM] Hi Jason. For the July 4th holiday associates received double time for hours worked. We had an early VET on July 4th and that does start and delayed start for overnight associates. After that on the backside it enjoy the holiday pay. Full time associates on those nights would enjoy the capacity that we have each day and left off the week. Over the summer associates can explore to be eligible for additional VET opportunities are 1:1 loss team into additional departments, in order to be eligible for overtime. If you feel you need a transfer to a shift with higher VET need, which in this case would be night shift. If you have additional questions please feel free to speak with any member of the leadership team and we will help you find the best option for your needs. | Pay and Benefits/Time off | 3 | CLOSED | USA | 3 | 0 | N |
| 2021-07-22 22:59.867000 | JFK8 | 1 | edsiok | There's no more Doritos Limón. Please get more Doritos Limón | HAPPY | zacfrenxi | [Felipe - GM] Hello, thank you for sharing this question. VET/VTO opportunities are planned for based on the expected volume in each shift compared to the capacity that we have each day and left off the week. Over the summer associates can explore to be eligible for additional VET opportunities are 1:1 loss team into additional departments, in order to be eligible for larger pool VET need, which in this case would be night shift. If you have additional questions please feel free to speak with any member of the leadership team and we will help you find the best option for your needs. | Working Conditions/Facilities | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-07-05 10:22:21.175000 | JFK8 | 1 | edsiok | There hasn't been any VET for pick in two months. All we get is VTO, nearly every day. Is this going to continue, because I'd be glad to pick up additional hours if I does and I need to know soon | SAD | sanfelip | [Felipe - GM] Hello Edson, thank you for sharing this. VET/VTO opportunities are planned for based on the expected volume in each shift compared to the capacity that we have each day and left off the week. Over the summer associates can explore to be eligible for additional VET opportunities are 1:1 loss team into additional departments, in order to be eligible for larger pool VET need. | Policies and Procedures | 2 | CLOSED | USA | 2 | 0 | N |
| 2021-07-05 18:42.499000 | JFK8 | 1 | biodayna | I know entering and cleaning up after night shift when I'm sure they could have filled up station and cleaned up also there are no supplies. single pit in general labels has and this is on every day basis but this morning was worse then ever please address this ASAP | SAD | sanfelip | [Felipe - GM] Hello Dana, thank you for your feedback. I am sorry this was your experience today. We have been following this with our pack departments so that they are following cleaning feedback so we can improve your experience at JFK8. | Working Conditions/Facilities | 2 | CLOSED | USA | 2 | 0 | N |
| 2021-07-05 19:29:01.561000 | JFK8 | 1 | dampenunj | Curious as to why I keep getting written up every month for missing 3-4 items out of 10,000 plus items in a week. This is not how associate should be treated and not in any way how to motivate associate's. I can elaborate more but not on here. | SAD | sanfelip | [Felipe - GM] Good morning Joshua. Thanks for reaching out. The health and safety of everyone is always our top priority so I appreciate you escalating this. I verified with our ABM Manager and it is not standard work to use gloves when washing your hands. We will follow up with our entire ABM staff to ensure they are aware as well so this should not happen again. | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 1 | 0 | N |
| 2022-07-25 19:44.725000 | JFK8 | 1 | jasodeno | This is the second witnesses the cleaner using the brush for toilet to clean the hand washing sink. This doesn't add up. Please help us here our health matters a lot. Thanks and God bless | SAD | zacfrenxi | [Felipe - GM] Good morning Joshua. Thanks for reaching out. The health and safety of everyone is always our top priority so I appreciate you escalating this. I verified with our ABM Manager and it is not standard work to use gloves when washing your hands. We will follow up with our entire ABM staff to ensure they are aware as well so this should not happen again. | Leaders/Manager/Culture | 0 | CLOSED | USA | 6 | 0 | N |

Amazon_000240

Amazon_000241

| Post Date (in cst) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-02-06 14:41:53.336000 | JFK8 | 1 | biodavea | Please fix all the microwaves in the 3rd floor empire and Times Square break room. Not all of them are working and break 15 min for a microwave is crazy. Ashley pa in singles is great she is a great asset and goes around give singles makes sure everything good as smooth as possible keep the jobs it goes a good motivator up the great work Ashley | HAPPY | zachmarc | [Zach-AOM] Hi Robert, thanks for the comment and for bringing this to your attention. There a circuit breaker that needed to be reset. Our JOBM team was able to fix that issue and now all the microwaves are working again. Thank you again! | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-02-05 04:56.198000 | JFK8 | 1 | ncole | Good Morning! Can we please add chairs to the 3 of floor main break room and also Break Room A. Some of the tables are missing, one chair and other tables have no chairs. Thank you! | MEH | zachmarc | [Henry-HM] Hi Danielle, thank you for your comment. Your safety and security is our top focus and priority. Our loss prevention team has taken steps to have the turnstile serviced. We appreciate you calling it out so that we can remedy the issue. Thank you | Working Conditions/Facilities | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-02-06 19:02:26.808000 | JFK8 | 1 | haydenda | Good afternoon can someone please fix the second turnstile to the left it's hard to push in the morning thank you | SAD | carbenr | Our loss prevention team has taken steps to have the turnstile serviced. We appreciate you calling it out so that we can remedy the issue. Thank you | Working Conditions/Facilities | 0 | CLOSED | USA | 2 | 0 | N |
| 2022-02-07 16:54:47.719000 | JFK8 | 1 | ledjoon | I don't know what it the point. when you apply for a role, it says under consideration but never heard back for an interview date. if there is not a spot available then you should update the job finder so we know what happened with our application status. I have four area manager applications that are under consideration. Please update how do we know... | SAD | zachmarc | [Zach-AOM] Hi Joan, thank you for the feedback. I am proud to announce that we have just promoted more than 15 Tier 3 individuals to L4 Area Manager positions! The recent requisition for AM was opened incidentally to process the Tier 3 to L4 promotions. We apologize for any inconveniences this may have caused. We have also now put in place a change so that anyone who goes through the interview process will receive feedback right away. I appreciate your feedback as we are always open to new ideas to improve our process and communication. | Career/Advancement Opportunities/Training | 1 | CLOSED | USA | 4 | 1 | N |
| 2021-02-07 14:59:33.317000 | JFK8 | 1 | danejenunj | So now I am totally confused, now not only am I getting written up for miss picking 0.04% thats 4-10,000 items a week now I'm not fast enough with a pick rate of 350 per hour without trying. seems like you can't win around here at all. | SAD | forskiag | [Frank-PX] Sr GpsJ eksoj. Toby your Ops Manager will be partnering with you on Monday to discuss this issue. | Leaders/Manager/Culture | 1 | CLOSED | USA | 1 | 0 | N |
| 2022-02-07 18:02:28.140000 | JFK8 | 1 | roger.iarc | Again the refrigerators arent cleaned up properly, ag fridge on the northside of pof 1st floor smells like garbage, fridge on the 3rd floor in tqp big breakroom the same. Can the cleaning team really start to throw out stuff according to the dates and smell? people would learn than if they are not at home and just leave leftovers. Now I am going back to work, can we have this covid off now thank you. | SAD | sanhbkp | [Fridge - CuM] Hello Marcin. Thank you for bringing this up. We partnered with our JBM team yesterday and these fridges were deep cleaned. Also, the schedule for emptying fridges was reinforced so this does not reoccur. Thank you for sharing this, so keep JFK8 safe! | Security/Medical Concerns/Safety | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-02-07 20:28:39.420000 | JFK8 | 1 | danejenunj | Now I'm being told I have P-Tr items I was told (picked that I wasn't even assigned to pick. This is an ongoing issue and I don't understand why an a associate's are being blamed for things that we are not doing or are out of our control. | SAD | forskiag | [Frank-PX Sr GpsJ eksoj thank you for bringing this to our attention. I will have a member of the Quality Team touch base to gain better understanding of what is occurring. | Leaders/Manager/Culture | 1 | CLOSED | USA | 1 | 0 | N |
| 2020-07-08 03:58:18.096000 | JFK8 | 1 | aviadaon | If we do pack and sort competitions, can we do them for prizes not shoutouts. Shout outs should be a regular thing and recognizing everyone no reason we can't even have some dollar signs. No shade it feels depressing just shout outs. I do not want to push hard next time if we are just going to get a "shout out" and not even have our rate told. | SAD | | [Anna - HRM] Hi Adina, thank you for reaching out. Recognition is important and we appreciate the feedback on your experience. We strive to recognize employees in various different ways including raffle saves and positive peer feedback through the associate recognition area in the front of the building. This showcases the T3 Matrix where you can earn points to purchase items in the Swag Store as well. A member of the team will be reaching out to you on your department. I encourage you to also check out the new Career Development area in the front of the building. This is another great initiative where you can learn about quarterly opportunities and roadmaps. Specifically, being a top performer within your department is one way to gain points! Thank you! | Engagement/Recognition | 1 | CLOSED | USA | 3 | 1 | N |
| 2020-07-08 05:49.951000 | JFK8 | 3 | pleiefer | I remember back at launch people wanted to be top performers, had a sense of urgency, pride in their work and most of us tried to push each other to get better. Now all it is is run down and of what was once most people strive to do just enough to get by, refuse to go above when people need and help anywhere. I feel saddened by what culture at JFK8 has become. | SAD | sanhbkp | [Help HM] Hello Phil, I am sorry you feel this way. We are proud of countless examples of associates at this site going above and beyond to develop their peers and provide a positive experience for others. We recently created an associate recognition area at the front of the building where we are showcasing stories of some of those associates who exceptionally marked others' experiences. We also just recently announced 17 promotions from PA's that will soon take Area Manager roles. If you are interested in career development opportunities or options to recognize your current experience, to your Operations Manager will partner with you so we can help address any specific opportunities you've identified so we can continue to improve the associate experience. Also speaking with you about I tobkx in person. We will have leaders walk through singles to address any readiness at start on associate experience and development of ourselves. Don't hesitate to reach out through each station and identify missing magnets for t.comers after we spoke and a T1 to T1 has been submitted (https://t.amazon.com/0105bAf8701). We are also working with Facilities to get power drops to make sure we have enough power to/pods. Please learn more about https://t.amazon.com/0212ab3237. | Teamwork | 1 | CLOSED | USA | 6 | 1 | N |
| 2020-07-08 05:45.843000 | JFK8 | 1 | biodavea | How is that there is three one elevator when there should be a elevator one every side of the building especially for disabled the workers should use the freight elevator that's what breaks the elevator down please consider the disabled associates thank you | SAD | abhsahn | [Zach-AOM] Hi Danielle, thank you for your comment. We have partnered with the Safety go to review and prioritize your concern with elevators. I have partnered with Facilities and we're working to same most as possible. It takes a month. If the elevator is ever not working properly, please escalate so we can get it repaired as soon as possible. Your safety is our top priority... to your manager or any HR leader directly if you have any further specific concerns that we could help address. | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 3 | 0 | N |
| 2020-07-08 14:32:18.226000 | JFK8 | 1 | haydenda | Thanks for the reply about cherry pickers at singles small. There was no standup and none of the PA AM even mentioned it. It's ok, I understand that refitting a vending machine with donto tienin is more important than our well-being. | SAD | zachmarc | [Zach-AOM] Hi Ledjon, I want to start with the OB service team to help you address this. Also, please note our automated staffing system (JCC) is designed to rotate associates between stations so it should not feel like one person worked all shift in one area. Please reach out to your Operations Manager or manager directly so we can follow up and make sure we are fully addressing your concern. | Policies and Procedures | 1 | CLOSED | USA | 1 | 0 | N |
| 2021-07-08 19:05:37.714000 | JFK8 | 1 | ledjoon | [Each very rude singles know that in this building it's a lot of favoritism, corruption and who knows what else. But it's ok it makes us strong and push on to the right direction for our future. Thank you. Best of luck. | SAD | ANONYMOUS | [Each very Hello again thank you for bringing it on broken they are L801-41 and L801-43 near the vendor when I plugged my charger into the socket it didnt work to result didnt work. please fix it A AM II worked the other day. | Working Conditions/Facilities | 1 | CLOSED | USA | 3 | 0 | N |
| 2021-07-08 19:51:57.980000 | JFK8 | 1 | ledjoon | The electrical outlets in the 1st floor main breakroom are broken they are L801-41 and L801-43 near the vendor when I plugged my charger into the socket it didnt work to result didnt work. please fix it A AM II worked the other day. | SAD | zachmarc | [Zach-AOM] Hi Ledjon, please see my response below. | Career/Advancement Opportunities/Training | 0 | CLOSED | USA | 3 | 0 | N |
| 2021-07-09 21:16:40.502000 | JFK8 | 1 | edloak | [Each very I'm letting you know that in this building it's a lot of favoritism, corruption and who knows what else. | HAPPY | zachmarc | [Zach-AOM] Hi Edison, thanks for making us aware. Our RME team was able to root cause and fix this issue last night so all outlets should now be working again. | Working Conditions/Facilities | 1 | CLOSED | USA | 2 | 0 | N |

Amazon_000242

| Post Date (in US) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-02-09 01:32:30.481000 | JFK8 | 1 | e6iok | The screen for lane 130 in outbound ship dock is not on. Please fix it! I been asking you people to fix it since last week. | HAPPY | pytheii | Zkros – S+ Op1 Hey I6ion, thank you for bringing the issue to our attention again. The last time it was corrected it does not seem it only solved the issue that was causing the screen to stay powered. Myself and the IT team took a look at it this morning and uncovered that the cable management was causing the TV to unplug easily. They made some adjustments to ensure your printing is working and appeared to be back up and running. Appreciate you helping to ensure all equipment on the dock is functioning properly. If you have equipment issues in the future you can also escalate to your AM or PA and they will drop a trouble ticket to our fantastic IT team who will promptly respond within 24-hours and resolve any issues. Thanks! | Working Conditions/Facilities | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-02-09 11:25:57.727000 | JFK8 | 1 | kevnham | Hi, can we get more of those floor pads for the stations and each station checked between shifts for the floor pads. Hi everyone, thank you for asking us to address this. We have been since our floor and Operations Manager will be connecting with you this morning in order to resolve this issue. (Follow up) | franklaq | | Working Conditions/Facilities | 0 | CLOSED | USA | | | N |
| 2021-02-09 12:56:45.933000 | JFK8 | 1 | biodayna | Sanh Welcome super senior ops outbound. It was great chatting with you and discuss things. You and Julia truly know how to talk to associates address things and escalate things and looking out for your team also shout out to Andrea being able to manage to actually smiling when the weather is so nasty and contact and communication goes along way. Which you all do everyday | zachnarc | [Zach-AGM] Thank you Dayna for the shout out! I'd also like to give a warm welcome to Sahil! He helped to launch this facility and is ready to lead the pack. Thanks Amanda for continuing to support all of us here at JFK8 as well :) | Engagement/Recognition | 0 | CLOSED | USA | 2 | 0 | N |
| 2021-02-09 13:00:39.878000 | JFK8 | 1 | biodayna | Shout out to Jae Lenny Zakir... Arthur in lingerie for making our department run smoothly so it keeps you busy truly are rock stars all day everyday and always have a smile on your face keep smiling and being the amazing people you are | zachnarc | [Zach-AGM] Thanks again Dayna for this awesome shout out! Nice work to Lenny, Zakir, Arthur and all of our amazing, dedicated PAs here at JFK8. | Engagement/Recognition | 0 | CLOSED | USA | 1 | 0 | N |
| 2021-02-09 13:54:50.947000 | JFK8 | 1 | ANONYMOUS | Help me understand how your offering double pay for any hours worked over 40 per week. Seems like not offered any VTT yet everyday the people are coming in and VTO is offered. How is this fair? Can I VTT up to the full time people and they give me the half over hours. | zachnarc | [Zach-AGM] Thank you for the question. We are happy that we as a company can offer this additional compensation. Please check for opportunities again as we do currently have some VET opportunities in for singles for this weekend. VET is utilized based on business need, specifically when inbound backlog or customer demand exceeds what is forecasted. We also want to make sure we post enough opportunities to allow our flex associates the ability to pick up shifts, and work their required hours. | Pay and Benefits/Time off | 0 | CLOSED | USA | 0 | 0 | N |
| 2021-02-10 12:55:00.424000 | JFK8 | 1 | vjozom | 6210 271 ALOJAYI spoke to EX about the job for Juneteenth. Dismissed. ALU put together a petition and is gathering signatures, over 50+ now! 7/6/21: Presented again, Helpe confirmed that he wouldn't use any energy/effort to make positive change for workers! So you're invited to come sign the petition for well-deserved holiday pay in the ALU tent. speak up for yourself & help make history! | MJH | [Anna – HRM] Hi Dana , Thank you for the positive shout out! We are so thankful for Chris' leadership and to have him as an AM | Pay and Benefits/Time off | 3 | CLOSED | USA | 0 | 0 | Y |
| 2021-02-10 19:07:51.710000 | JFK8 | 1 | dimiti | Shout out to Chris Barone in Pick, a manager who really shows he loves his team, those kindly offered Skittles picks brought the energy back! And he thanks us too! | zachnarc | [Anna – HRM] Hi Dana , Thank you for the positive shout out! We are so thankful for Chris' leadership and to have him as an AM | Teamwork | 3 | CLOSED | USA | 4 | 0 | N |
| 2021-02-10 20:01:20.224000 | JFK8 | 1 | e6iok | The crew vending machine in the 1st floor main breakroom is out of order please fix it. | HAPPY | annaloxn | [Zach-AGM] Hi E6iok , thank you for notifying us of this. We have partnered with our vendor who is on site today working on this issue. The ice cream machine should be back to working order beyond of the day. | Working Conditions/Facilities | 3 | CLOSED | USA | 2 | 0 | N |
| 2021-02-12 01:55:50.814000 | JFK8 | 1 | vjozom | Bezos : Make Amazon Earth's best employer . Also Bezos : fair pay ? Let me transfer responsibility than build some space ships first , oh those rights I mentioned , um , look at my 40+ million dollar mansion stock, who has such a time-space? Meanwhile in HR/Ops : Bash the Union efforts, NY protection?? Laws ? Amazon-legal says we're good-Legal dept : We are the law | MJH | [Zach-AGM] Hi Bezos, thank you for the comment. We recently had a meeting with the President of US Connect to discuss prices and quality. We now have automated reports that generate alerting us to any price increases as well as an evaluation of prices compared to other nearby sites to make sure the prices are fair and consistent. Lastly, we are excited to be able to bring back our local food vendors! We can now enjoy other fresh and affordable options beyond what is provided in the marketplace | Pay and Benefits/Time off | 2 | CLOSED | USA | 0 | 1 | N |
| 2021-02-12 03:38:23.50.225000 | JFK8 | 1 | rogonarc | why tge hourl in tge breakroom is overpriced and so low quality it feels like vendors supplied it family dollar but the price tags on frozen wholefoods .eg 1 single string cheese in tge breakroom sum of vending machine cost 1.50$ meanwhile whole foods .10cts) cost 4.5.00 at the debit or area 1/2 their price since dear amazon few weeks ago you were savings us and our hard worked money from ALU UNION please save us from panels vending | SAD | zachnarc | [Zach-AGM] Hi Bezos, thank you for the comment. We recently had a meeting with the President of US Connect to discuss prices and quality. We now have automated reports that generate alerting us to any price increases as well as an evaluation of prices compared to other nearby sites to make sure the prices are fair and consistent. Lastly, we are excited to be able to bring back our local food vendors! We can now enjoy other fresh and affordable options beyond what is provided in the marketplace | Working Conditions/Facilities | 2 | CLOSED | USA | 3 | 0 | N |
| 2021-02-12 03:59:46.41.767000 | JFK8 | 1 | aiwamei | So I'm reading documents from back when I originally applied to Amazon. My former Ops manager Toby wasn't qualified to handle the upside process on my HR and I think every policy I have that's what I follow. Not honor policy meant here and have Felipe or the assistant General Manager review it as is the policy. Let's not twist or attempt to reword policy as HOM/GMs love to do on this board. | MJH | annaloxn | [Anna-HRM] Hi Jean . Thank you for your comment. We will follow up with you in person to better understand your situation. | Policies and Procedures | 2 | CLOSED | USA | 2 | 0 | N |
| 2021-02-12 11:13:09.42.091000 | JFK8 | 1 | vjozom | Was July 4Pm scheduled in any way designed so that employees weren't home in most cases with 90% off their base plus holiday ? No long worked to skating around the question answers here. Requesting a simple yes/no answer. Our AM when I'm legally denied to the opposing whole overtime pay will be in effect from July in holiday pay. Additionally, Amazon is excluding night workers from double pay on Independence Day | MJH | annaloxn | [Anna-HRM] Hi Jean , although July full time and reduced time hourly employees tier 1 through level 4 who worked on July 4th received double pay for hours worked that day, in addition to holiday pay. Additionally, Amazon is excluding night workers from double pay on Independence Day | Pay and Benefits/Time off | 2 | CLOSED | USA | 3 | 0 | N |
| 2021-02-12 11:13:15.33.482000 | JFK8 | 1 | vjozom | The new thing that they did to scan our badges in order to get into the station is really bad, first of all it is not for the current circumstances as of the covid-19 we stay at door waiting to scan our badges take a very long time. Incidentally we were about over 50 people waiting to take the numbers with not maintaining 6 feet at very small amount | SAD | zachnarc | [Zach-AGM] Hi Shawn thank you very much for this call out. I agree 100% that nobody should be running in the FC. While I appreciate everyone's efforts to work to make sure convenience keeps moving, safety will always be the underlying value. I'd like to ensure we understand the machine and in the station was designed to help expedite the process. In the past we were when we walk in (giant orange banner hanging) and was created with the thought that every employee who works here should take 8 seconds prior to doing anything and make sure we have the right task, awareness, and knowledge of equipment to safely do it. We can always add additional guidance into the process. Thanks to avoid anyone from having to run and get equipment needed to clear jams. | Security/Medical Concerns/Safety | 2 | CLOSED | USA | 6 | 0 | N |
| 2021-02-12 02:07:01.505000 | JFK8 | 1 | ANONYMOUS | I'm constantly seeing people turning though out the warehouse through out the shift, especially when there are jams. I think we should come up with something that would encourage people not to run. | | zachnarc | [Zach-AGM] Hi Shawn thank you very much for this call out. I agree 100% that nobody should be running in the FC. While I appreciate everyone's efforts to work to make sure convenience keeps moving, safety will always be the underlying value. | Working Conditions/Facilities | 2 | CLOSED | USA | 3 | 0 | N |
| 2021-02-12 12:07:18.124000 | JFK8 | 1 | ajaloupe | The second thing that it is not fair that a person come early and take a number in the last stations and a person come late and take in the beginning as the number crosses randomly. | | zachnarc | [Zach-AGM] Hi Antonio, thank you for the comment. I am glad you got to connect with your Ops Manager, Twanna. We appreciate the feedback and will continue to partner on new ways to improve our staffing process. | Working Conditions/Facilities | 0 | CLOSED | USA | 1 | 0 | N |

Amazon_000243

| Post Date (in csc) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020-01-12 12:55:37.500 | JFK8 | 1 | vpasom | These bathrooms have been looking very Port Authority bus terminal-like. Feces on the seats, blood on paper towels, etc. How do you make it worse? you take us all into that bathroom, we are people, we get herded into one bathroom. Speaking of bathroom problems, where's my 7 miss PTO refund I was promised? | MJH | annaleon | [Anna - HRM] Hi Jason. We met with our A&M leadership team today and verified all standard cleaning protocol is being adhered to. It is addressed so we have for any feedback in the specific locations you have this feedback on to ensure we're following up with you regarding the PTO time you have question about. | Working Conditions/Facilities | 1 | CLOSED | USA | 3 | 0 | N |
| 2020-07-12 14:07:07.027000 | JFK8 | 1 | sathenec | There seems to be a strong foul odor coming from the west side directly near material up area. It's disturbing everyone including myself on our lunch breaks. Can we find out what this is. It's been lingering since yesterday. Thank you so much | MJH | prithvi | [Chris - Sr Ops] Hey Ashley, thank you for escalating the concern! Our inbound team has been able to pinpoint the source of the odor to a pallet of damaged inventory and the SW corner which was in the process of being removed from the area and appropriately processed by the team. Thanks again for letting us know! | Working Conditions/Facilities | 0 | CLOSED | USA | 2 | 0 | N |
| 2020-01-12 14:47:54.546000 | JFK8 | 1 | vpasom | I'm so disappointed to have an expungement, OLS knows why, HR knows why. Nothing is expunged. Mind you I'm being permitted to draft my own EEOC charge, while not rare, it's not common either. What's uncommon is them making me take leave because they simply misapplied the believer more discrimination will occur between the time I get to write up the charge vs submission of it. Contd | MJH | annaleon | [Anna - HRM] Hi Jason. Amazon and JFK8 have a no discrimination policy. The site has worked closely with you and HR (or if you need to) to discuss any concerns. If you/share is specific and something you have along the way. An HR Business Partner will be following up with you on site to confirm additional details as well | Leader/Manager/Culture | 0 | CLOSED | USA | 0 | 0 | N |
| 2020-01-12 14:52:12.574000 | JFK8 | 1 | vpasom | 22 when the Government even remotely insinuates that more discrimination may occur there's obviously some kind of social cause. The assumption of more discrimination will occur, I'm also not a secret this facility has the absolute worst press coverage of any Amazon, who is that? So many awful articles, zero positive ones. Zero. Fix that maybe? Not possible? | MJH | annaleon | [Anna - HRM] Please see previous response | Leader/Manager/Culture | 1 | CLOSED | USA | | | N |
| 2020-01-12 15:06:03.159000 | JFK8 | 1 | biodavia | Microwaves in line square break room upper east of them are not working please fix them ASAP | SAD | zachhear | [Zach-AGM] Hi Dawna, thank you for bringing this to our attention. Our BRM team is looking into this right now and will fix within the hour! | Security/Medical Concerns/Safety | 0 | CLOSED | USA | 1 | 0 | N |
| 2020-01-12 16:02:05.354000 | JFK8 | 1 | vinchel | Hello I've previous comment has not addressed in regards to going over changing status?? If there has been a change no one to answer any other questions about our schedules fluctuate some of us have college classes, other jobs, kids etc. WE ARE NOT OCCUMMUNICATION FROM YOU | SAD | zachhear | [Chris - Sr Ops] Hey Jesse, really appreciate you reaching out regarding the EV charger cutout at the site and it was great speaking with you about it earlier. I discussed the site has been working with Greentola on a solution and the project has been successfully approved. As of now we're awaiting arrival of the chargers themselves which unfortunately are delayed due to the current electronics shortages worldwide. Current plan is to install the infrastructure towards the end of July and then complete the project once the chargers arrive (tentatively in August.) Thanks again! | Working Conditions/Facilities | 0 | CLOSED | USA | 0 | 0 | N |
| 2020-01-12 17:38:32.899000 | JFK8 | 1 | damjanurj | Was told by operations back in March that would be getting EV chargers here at JFK8, what is the time frame on this because again there are issues with the outlets in the parking garage" over loading of the circuit" | MJH | prithvi | [Chris - Sr Ops] Hey Jesse, really appreciate you reaching out regarding the EV charger cutout at the site and it was great speaking with you about it earlier. I discussed the site has been working with Greentola on a solution and the project has been successfully approved. As of now we're awaiting arrival of the chargers themselves which unfortunately are delayed due to the current electronics shortages worldwide. Current plan is to install the infrastructure towards the end of July and then complete the project once the chargers arrive (tentatively in August.) Thanks again! | Working Conditions/Facilities | 1 | CLOSED | USA | 1 | 0 | N |
| 2020-01-12 18:00:06.388000 | JFK8 | 1 | vinchel | EV charging continued, considering there's not many ppl here at JFK8 that have electric vehicles a simple temporary solution would be alternate side charging since there are 2 circuits for the outlets in the garage east side, west side, as long as both circuits are on which they are not at this time. | MJH | annaleon | [Anna - HRM] Hi Michelle, the jobteam has reached out to the central team responsible for this process and is working to determine what changed and how we can best move forward to close the gap. A member of the team will be reaching out to you today to address any specific questions you have about your time balance. Thank you! | Working Conditions/Facilities | 0 | CLOSED | USA | 1 | 0 | N |
| 2020-01-12 19:07:14.000 | JFK8 | 1 | dmitrif | 6/21/21 AJU AA's spoke to GSA for holiday payon Juneteenth. Dismissed, AJU put together a petition to get gathering signatures, over 50+ now! 7/8/21: Presented again, Felipe confirmed that he wouldn't use any energy/effort to make this positive change for workers! So you're invited to come sign the petition for well-deserved holiday pay at the AJU tent, speak up for yourself and help make history! | HAPPY | prijepin | [Anna - HRM] Hi Michelle. The jobteam has reached out to the central team responsible for this process and is working to determine what changed and how we can best move forward to close the gap. A member of the team will be reaching out to you today to address any specific questions you have about your time balance. Thank you! | Pay and Benefits/Time off | 18 | CLOSED | USA | 1 | 0 | N |
| 2020-01-12 21:27:00.416000 | JFK8 | 1 | vinchel | You literally copied & pasted the same exact response from my previous comment LOL if I keep posting about the same issue obviously relates to an ADA accommodation. I received no productive response, you could have at least switched up the verbage to make it seem like you cared! | MJH | annaleon | [Anna - HRM] Please see previous response | Policies and Procedures | 0 | CLOSED | USA | 0 | 0 | N |
| 2020-01-12 21:41:42.853000 | JFK8 | 1 | dmitrif | 6/21/21 AJU AA's spoke to GSA for holiday payon Juneteenth. Dismissed, AJU put together a petition to get gathering signatures, over 50+ now! 7/8/21: Presented again, Felipe confirmed that he wouldn't use any energy/effort to make this positive change for workers! So you're invited to come sign the petition for well-deserved holiday pay at the AJU tent, speak up for yourself and help make history! | HAPPY | prijepin | [Anna - HRM] Jason - All VOA comments are actioned appropriately, replied to on the board, and sometimes in person if necessary for additional follow up. The VOA board is one of the many platforms for associates to provide feedback to site leadership, however there are some topics - for example, accommodations relating to a medical condition - the team will partner with associate on the details of on the board in order to maintain associate confidentiality. | Pay and Benefits/Time off | 18 | CLOSED | USA | | | Y |
| 2020-01-12 34:35.589000 | JFK8 | 1 | vpasom | I've noticed unlike other employees my VOA comments don't ever get follow up or replies anymore, just more proof of the lack of interactive process. Interactive process is mostly a company policy EXCEPT when that interactive process relies on an ADA accommodation. I received no interaction with decision makers only advisors who severely misinterpreted company data in extreme negligence cont | MJH | annaleon | [Anna - HRM] Jason - All VOA comments are actioned appropriately, replied to on the board, and sometimes in person if necessary for additional follow up. The VOA board is one of the many platforms for associates to provide feedback to site leadership, however there are some topics - for example, accommodations relating to a medical condition - the team will partner with associate on the details of on the board in order to maintain associate confidentiality. | Leader/Manager/Culture | 0 | CLOSED | USA | 1 | 0 | N |
| 2020-01-12 39:03.464000 | JFK8 | 1 | vpasom | In regards to my ADA accommodation, which consisted of a role transfer. The evidence I have of this that is most clear. Returning my most obvious emails - that may evidence is that are top lost today my OSF HR data and declared it as pertinent to gauging PT qualification, unless they have worked in GSF they don't have the knowledge to legally make the decision without my input | MJH | annaleon | [Anna - HRM] Please see previous response | Leader/Manager/Culture | 1 | CLOSED | USA | 1 | 0 | N |
| 2020-01-13 14:38:55.985000 | JFK8 | 1 | gradnet | I understand that Amazon prohibits cell phones use in certain positions, but we should still be able to have our cell phones. Not to use them while working, but to use them on breaks. I feel safer with my phone and so do a lot of others. There's been absolutely no communication that I'm necessary to use of cell phones, but we should be able to have them with us. Taking them away is unnecessary. | MJH | zachhear | [Zach-AGM] Hi Brett, thank you for the comment. At this time, there has been no change to current cell phone policy. We will communicate any changes as we hear of them immediately through all of our available mechanisms. | Policies and Procedures | 0 | CLOSED | USA | 7 | 0 | N |
| 2020-01-13 15:29:25.000 | JFK8 | 1 | vpasom | HRM Anna states that on the two worked closely with me. I just addressed HR BP Mike, I had to request to speak to him. We discussed numerous communication gaps that I believe illustrate a very different picture. It's fully legal for me to advocate a boycott regardless of policy as a protected activity to ensure appropriate working conditions here. Please give HR to review | MJH | annaleon | [Anna - HRM] Jason: An HR Business Partner came to speak with you today to gather additional details from your perspective and to discuss any concerns you have. The accommodation team is working to further address any questions or concerns you have. The accommodation team leads accommodation requests, however the site will continue to support associates in any way we can. Associates safety and well-being are our top focus and priority - if you have a specific area or pertain, we encourage you to provide those details to the leadership team to review as we have in the past and will continue to do with it associate feedback. | Leader/Manager/Culture | 0 | CLOSED | USA | 2 | 0 | N |
| 2020-01-13 15:34:13.506000 | JFK8 | 1 | vpasom | 2/2 (cont)... my integrity, a boycott HR highly is concerned I'll use to encourage others to do what's necessary to ensure our lawful rights are followed. Again, to the end I'd advocate for such a measure as a tool to improve working conditions for all, it's a legally protected activity regardless of policy. You can't delegate any of us to be your customer. | MJH | annaleon | [Anna - HRM] Please see previous response | Leader/Manager/Culture | 1 | CLOSED | USA | 1 | 0 | N |

Amazon_000244

| Post Date (in csc) | Site | Job Level | Comment Author | Comment | Response Author | Emotions | Response | Category | Sla in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020-07-13 15:39:04.136000 | JFK8 | 1 | dimlrf | This one is not because HR tragedy tried to silence my voice by taking my VOA board permissions away. Am currently filing discrimination charges. Let's list it: a black woman forming a union speaks out about federal holiday pay. Grievances and she is the one who's told to file a petition? Totally legal. Trying to silence that? COMPLETELY illegal. ALLI provides a voice. Not Amazon. | annabon | [Anna - HRM] Hi Dana. The VOA Board is available for employees to communicate with the leadership team in accordance with Amazon policy, which prohibits solicitation via company bulletin boards and other Company electronic communication methods. This is the reason your access to the VOA board, which we believe was in violation of these policies, was removed. Amazon.com Owner's Manual accessed through the Code of Conduct link or Inside Amazon. Leadership explained this to you in person on July 12th. We have not and will not revoke anyone's ability to post on the VOA board however, we will continue to monitor the board for comments that are not in compliance with Company policy. If you have additional questions about this we would be happy to set up some time to discuss. | Policies and Procedures | 1 | CLOSED | USA | 2 | 2 | N |
| 2020-07-13 15:43:05.846000 | JFK8 | 1 | dimlrf | (put a petition) up and was told I was solicitation and against policy. It wasn't. I wasn't shown that in writing. (though requested) I was unfairly targeted and disciplined for speaking up when VOA cards are all about defending comrades), and I wasn't made aware of the illegal repercussions they enforced (I tried to post it again and my permission were removed. I'm suing them and filing EEOC. | annabon | [Anna - HRM] Please see previous response. | Policies and Procedures | 1 | CLOSED | USA | 1 | 2 | N |
| 2020-07-13 15:44:30.081000 | JFK8 | 1 | dimlrf | 6/21/21: ALI/AA's spoke to G.M. for holiday pay on Juneteenth. Dismissed, ALI put together a petition and is gathering signatures, over 50+ now (7/8/21). Presented again, then confirmed that he wouldn't use any illegal efforts to make positive change for workers for all of us, even after he sign the petition for well-deserved holiday pay at the ALU tent, speak up for yourself and help make history! | gregreyn | [Anna - HRM] Hi Connor. We have been asked about Juneteenth being a paid holiday, have escalated these questions to the appropriate parties, and have responded to each comment. The news of Juneteenth becoming a Federal holiday is a recent event and is being considered by Amazon at this time. We will continue to update site communications and any announcements as they are shared. All associates have access to the VOA board. Before posting on the VOA board, employees are required to review and confirm acknowledgement that the comment aligns with Amazon Company Policy as detailed in the Code of Conduct. Any comments that violate this policy may be removed. | Pay and Benefits/Time off | 17 | CLOSED | USA | | | Y |
| 2020-07-13 15:50:03.855000 | JFK8 | 1 | spozoror | Felipe, I was disappointed to hear leadership's response to the petition for Juneteenth recognition, which was a refusal on your part to even advocate for what the workers want. But you all crossed the line by banning Dana Miller from posting about the it on the VOA board. It's unacceptable and illegal by any comments that violate this policy may be removed. | annabon | [Anna - HRM] Please see previous response. | Leaders/Manager/Culture | | CLOSED | USA | 4 | 1 | N |
| 2020-07-13 15:51:32.386000 | JFK8 | 1 | spozoror | I know it's pointless to argue with you on here. You can craft the perfect non-answer to dodge any criticism that comes your way. But workers are not going to tolerate this kind of hypocrisy. Amazon can't claim to value the voices of AAs while blatantly censoring black workers for speaking on the topic of race. Stop being a part of the problem and restore Dana's permissions. | annabon | [Anna - HRM] Please see previous response. | Leaders/Manager/Culture | | CLOSED | USA | 3 | 1 | N |
| 2020-07-13 17:40:49.057000 | JFK8 | 1 | biodeyva | Shout out to Jenny pie in singles knowing how to present himself to associates and help them to do their best including them in things) and always doing it with a smile(am sure for his future) and to Manger Titan for always bringing the A game for always taking associates and helping them and making sure things are taking care off to the best of his ability definitely Leader to look up to in Future | annabon | [Anna - HRM] Thanks for the positive shout out Shaynal! Jenny and Titan are awesome, thanks for the recognizing and making sure to point out these great qualities to make sure it's a team effort and that improves the employee experience. | Engagement/Recognition | | CLOSED | USA | 1 | | N |
| 2020-07-13 17:56:18.297000 | JFK8 | 1 | vjascem | I'm just waiting for HR to find some for reaching reason to terminate me. Go ahead, do your best, Christiana R. Dorcely, Federal investigator is waiting on you to do exactly that. She's counting on more discrimination not less. Keep violating my rights so if you're not being allowed for everything you're doing and that HR/Ops office. | annabon | [Anna - HRM] Hi Jason, I am glad you were able to speak with the team directly to gain clarity on your concern. The site team will continue to work directly with associates on all concerns brought up for attention. This concern listed below will be marked as resolved. If you see an area or item lacking inventory please be sure to let us know so we can cascade that information to the team as well. The team aims to keep this fully stocked at all times and may occasionally swap out less popular items in order to continue providing new options. Thank you! | Leaders/Manager/Culture | | CLOSED | USA | 1 | | N |
| 2020-07-13 22:36:56.231000 | JFK8 | 1 | vjascem | (Unfair certain policy leadership.) I take ownership when I'm wrong, I'm cited out; the management data wow (my own data reflected what my comment said it reflected) but there ultimately was an engagement. The entire site of this story is why A took right involvement for anyone to give her the green light on the engagement. There should've never been a write up. | annabon | [Anna - HRM] Adina, thanks for highlighting this, I agree it's a great idea for sharing a motivating culture and making it fun. Holiday our nights ops will touch base with you tonight to talk more about this. | Leaders/Manager/Culture | 2 | CLOSED | USA | 1 | | N |
| 2020-07-14 03:00:04.565000 | JFK8 | 1 | gorivaaj | Its really cool that food vendors are back, but I've been cooler if flights/HR would be able to appreciate it as well but we are stuck 400 ideals, Come I can't get our name up until I miss those, not food guys and AR. Thanks, too I specially since the UCONNECT stuff isn't cooked so much anyway. | annabon | [Sahej - Sr Ops] Thanks for highlighting this. I agree, it's a great idea for sharing a motivating culture and making it fun. Holiday our nights ops will touch base with you tonight to talk more about this. | Working Conditions/Facilities | 1 | CLOSED | USA | 6 | | N |
| 2020-07-14 05:44:24.146000 | JFK8 | 1 | gorivaaj | I was thinking, can we bring back the AFE pack and cart wall fame boards. Where if you pack over 400 or induct over 1000, etc, you get your name up on it. I miss those as that really boards are what inspired me to have the ones that I do(But, I wanted to see my name up on the wall. | abhisahn | [Sahej - Sr Ops] Hello & team! We receive to highlight this concern with the department to correspond to our volume plan. Having said that, as a team, the aim is to make sure we are not having moves multiple times during a shift. If you are seeing this issue, please escalate to your Area Manager or leadership if we continue to see the issue. | Engagement/Recognition | | CLOSED | USA | 4 | | N |
| 2020-07-14 12:17:45.380000 | JFK8 | 1 | ANONYMOUS | I work on AFE2 but the PA's are always sending me to work in AFE1. It not that I have to much of an issue with that but it does get a bit tiring running up and down those red stairs all day. Am I suppose to follow those instructions and work in different parts of the building through out the day? | abhisahn | [Zach AGM] Hi Brett. This week we had our HVAC vendor on site to repair one of our compressors and are currently in the process of swapping out all of our filters which will improve the air flow and temperature in the building even if you feel any areas that are warmer than others, please escalate it to your leadership and let us know the exact location so we can better assist in addressing the issue. | Leaders/Manager/Culture | 1 | CLOSED | USA | | | N |
| 2020-07-14 17:47:17.556000 | JFK8 | 1 | gradriet | Lower the temperature, it's too hot | zachtvarc | [Zach AGM] Hi Robert, thank you for the question. The reason we are not currently putting in opportunities for morning VET is our current headcount meets or exceeds the amount of stations we have available. Over the course of the day, as people leave early, it provides us with an ability and a need to have some folks come in for morning VET to keep our stations staffed while there is a backlog of work available. Thanks for the positive shout out Shaynal! Appreciate all the efforts Eddie and Oscar put in to make us succeed as a team! | Leaders/Manager/Culture | 1 | CLOSED | USA | 2 | | N |
| 2020-07-15 14:49:49.601000 | JFK8 | 1 | ncolit | Hi! Is it possible, We can bring back stuff Day Morning - VET Opportunities for Full time Associates? This building the first 5 people Monday Tuesday and Wednesday from like 4:30 sometimes. Thanks. | zachtvarc | [Zach AGM] Hi Robert, thank you for the question... | Pay and Benefits/Time off | | CLOSED | USA | 5 | | N |
| 2020-07-15 14:57:41.330000 | JFK8 | 1 | biodeyva | Eddie and Oscar in singles are the best water spiders ever never ever have to get boxes or supplies when they spider on it. | abhisahn | Thanks for the positive shout out Shaynal! Appreciate all the efforts Eddie and Oscar put in to make us succeed as a team! | Engagement/Recognition | | CLOSED | USA | 2 | 1 | N |
| 2020-07-15 18:59:33.109000 | JFK8 | 1 | vrechel | We have to have metal detection with back up and our Cell phones will be taken in 3 weeks time from now, what actions are you taking to prevent crowding/confusion upon security check out ? an issue previously then what happen the security theatre for you're not actually are is us the building until going through is 2nd security check out for example stocking out at backpacks at 6:17 pm | annabon | [Anna - HRM] Hi Michelle. There are no recent updates or changes to the not screening process or the cell phone policy at this time. Safety is our #1 priority and the site will continue to maintain all enhanced safety measures in line with CDC recommended guidelines. We will continue to cascade all company wide updates to the site as soon as details become available to us. Thank you! | Security/Medical Concerns/Safety | | CLOSED | USA | 5 | | N |
| 2020-07-15 19:44:33.961000 | JFK8 | 1 | ANONYMOUS | Hello, I was just curious as to when we will be getting the $500 bonus ? Will it be this month or august? | annabon | Hello. The bonus will be paid out no later than July 30 for all eligible associates who were employed from May 23rd until July 24th. Please let us know if you have any further questions. Thank you! | Pay and Benefits/Time off | | CLOSED | USA | | | N |

Amazon_000245

| Post Date (in est) | Site | Job Level | Comment Author | Comment | Emotions | Response Author | Response | Category | SLA in days | Status | Country | Likes | Dislikes | Suppressed Comment? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021-07-15 20:56:47.741000 | JFK8 | 1 | dmitrf | 6/21/21: ALU AA's spoke to EGM. for holiday pay on Juneteenth. Dismissed. ALU put together a petition and is gathering signatures, over 60+ now! 7/8/21: Presented again. Felipe confirmed that he wouldn't use any energy/effort to make positive change for workers! So you're invited to come sign the petition for well-deserved holiday pay at the ALU tent, speak up for yourself and help make history! | HAPPY | prenjeru | [Anna - HRM] Hi Alexander : Amazon and JFK8 are committed to providing an inclusive workplace for all. Furthermore, employees may use the restroom that best matches their gender identify. The site will take this feedback to determine the best path forward for ensuring that options are available for all . A member of the team will be reaching out to gather additional insight as we work to solidify these plans. Thank you for your feedback Update 7/13: Thank you for taking the time to provide your feedback with the site HR team so that we can best take action and move forward! | Pay and Benefits/Time off | 15 | CLOSED | USA | | | Y |
| 2021-07-15 21:02:27.386000 | JFK8 | 1 | abreamei | (find it rather ironic that JFK8 is celebrating Non-Binary Awareness week, yet it doesn't have gender-neutral restrooms. Are there plans to introduce these facilities for our colleagues that don't identify as male or female? | MEH | annalean | | Working Conditions/Facilities | 1 | CLOSED | USA | 4 | 0 | N |
| 2021-07-15 21:06:23.976000 | JFK8 | 1 | dmitrf | Anna and all of HR: please google the words "Solicitation" and "policy", as well as the Bill of Rights of this country and the laws that govern us. There appears to be a disagreement in your collective understanding of human rights and dignity. Btw, thanks for the Brooms and dustpans. Our little prep time is considerably shortened and we restocked more merch, thereby saving this company money. | SAD | annalean | [Anna - HRM] Hi Dana. As previously discussed, we support employees' right to solicit in accordance with Amazon policy . Additional information about this can be found in the Amazon.com Owner's Manual within the Inside Amazon. You can access this policy on A to Z through the resources tab or on computer kiosks on site. We'd be more than happy to set up time for you to meet with a Senior Team member to discuss in further detail as well. I am glad we were able to quickly support in obtaining the additional supplies like brooms and dustpans! | Policies and Procedures | 1 | CLOSED | USA | 2 | 0 | N |
| 2021-07-15 21:09:03.241000 | JFK8 | 1 | dmitrf | 6/21/21: ALU AA's spoke to EGM. for holiday pay on Juneteenth. Dismissed. ALU put together a petition and is gathering signatures, over 60+ now! 7/8/21: Presented again. Felipe confirmed that he wouldn't use any energy/effort to make positive change for workers! So you're invited to come sign the petition for well-deserved holiday pay at the ALU tent, speak up for yourself and help make history! | HAPPY | prenjeru | | Pay and Benefits/Time off | 15 | CLOSED | USA | | | Y |
| 2021-07-15 21:52:20.830000 | JFK8 | 1 | carihell | I am still not feeling well about what happened at the KQA area where I felt I really disappointed on how they handle things over there, and that is why I left. | SAD | zachnaec | [Zach-AGM] Hi Carl, I am sorry you had that type of experience. I am glad you could catch up with Ben, one of the PVT Ops managers on this so. Please do not hesitate to reach out whenever you have a concern, real time so we can take action to address immediately. | Engagement/Recognition | 2 | CLOSED | USA | 2 | 0 | N |
| 2021-07-15 21:54:18.432000 | JFK8 | 1 | carihell | My new boss Joseph is a stand-up person, but we had numerous discussions on about advancements. I still want to join Loss prevention as a promotion, but I need some leadership training to be sure. I need help with this. | MEH | abhisahn | Salma [V-Ops]: Thank Carl for bringing this up. Joe is one of our many managers who were promoted internally from a Tier 1. All current openings and job qualifications can be found on JobFinder through AtoZ. The Loss Prevention team is also available at the front of the building to discuss details around roles and availability. I will have Joe reach out to you and go over the Tier 3 process and how to go about preparing for that. I appreciate that you want to grow just like many in our team at JFK8! | Career/Advancement Opportunities/Training | 1 | CLOSED | USA | 2 | 0 | N |

| | |
|---|---|
| **From:** | Tanelli, Mike <tanellm@amazon.com> |
| **Sent:** | Monday, July 12, 2021 3:39 PM |
| **To:** | Leonardi, Anna; Edwards, Jenna; Santos, Felipe; Marc, Zachary |
| **Subject:** | Conversation with Dana Miller - 7/12/21 |

Team,

Today I connected with Dana Miller regarding the comment she posted on the Voice of the Associate board last week regarding inviting individuals to the ALU tent to sign up to receive additional holiday pay. I explained the intention of the conversation and that Amazon's solicitation policy does not allow individuals to solicit information on the VOA board, union or non-union. Dana quickly stated she sees individuals commenting and soliciting on the board all the time and there is no follow up with them. I shared that this is not something she would be privy to regarding follow up for individuals that use the board for non-work related purposes. Dana continued to state this activity is protected and it violates her rights. I explained again that the comment was removed due to the verbiage she used and it violating the solicitation policy. Dana explained she would be reposting the comment – I then stated that this was a level setting conversation and while there would be no corrective action taken, that there would be additional follow up if she continued to solicit on the VOA board. Dana asked for this notice to be provided to her in writing as she would be connecting with her lawyer. I explained I would follow up with a copy of Amazon's solicitation policy. After continued back and forth, I explained to Dana that I would be ending the conversation but could answer or address any other concerns she had. After stating she didn't, went back to the floor to continue working.

Please let me know if additional information is needed.

Sincerely,

**Michael Tanelli**
**HR Business Partner, JFK8**
*North American Fulfillment*
**e:** tanellm@amazon.com



Amazon_000093

GC-28

**EXHIBIT NO.**_____ **RECEIVED** _____ x **REJECTED** _____

29-CA-280153 ET/AL                    Amazon.Com Svs, LLC

**CASE NO** _____ **CASE NAME** _____

2                    09-19-2022          Barrington Moxie

**NO OF PAGES** _____ **DATE:** _____ **REPORTER:** _____

**Solicitation Policy FAQ**

1. **What are some examples of solicitation that are prohibited, unless legally protected?**
   - The sale, advertisement, or marketing of things like merchandise, products, subscriptions, or services (except as allowed on for-sale@ alias).
   - Distributing advertisements, marketing communications, or other commercial materials.
   - Solicitation for financial or other contributions (e.g., money, time, services) for any cause, including a charity.
   - Solicitation for memberships, subscriptions, or signatures on petitions.
   - Distribution of literature or materials of any kind.
   - Organizing or seeking participation in political, charitable, or protest activities.
   - Encouraging others to sign up for a mailing or distribution list used for any of the above purposes.

2. **What is included in company property?**
   - All company property including meeting spaces, offices, cafes, lobbies, and outdoor areas.
   - All company equipment including bulletin boards, furniture, mail slots, elevators, and posters.
   - All company electronic systems including email, Phone Tool, Amazon Wiki, Chime, and calendaring.

3. **What are the exceptions?**

As exceptions to this policy, solicitation is permitted for:

   - Company-sponsored benefits (e.g., health plans and employee discount programs).
   - Company-sponsored business activities (e.g., internal marketing and advertising, company events, and learning activities).
   - Company-approved charitable causes.
   - Specific exceptions approved by Human Resources.
   - All legally protected activity as defined under local law.

4. **In the US, when is solicitation legally protected?**

In the US, solicitation is legally protected if it:

   - **Does NOT** use any company electronic systems (e.g., email, Phone Tool, Amazon Wiki, Chime, and calendaring), company equipment (e.g., bulletin boards, furniture, mail slots, elevators, and posters); *and*

   - Relates to terms and conditions of employment. Terms and conditions of employment include pay, work hours, benefits, and job duties. They do not include the products we sell, our customers, and non-work related social or political causes; *and*

   - Happens during non-working time.

Additionally, if solicitation involves distributing materials or literature, to be legally protected in the US, it must *also* occur outside working areas (spaces where work is done, as opposed to break rooms, cafes, etc.).

GC-29

**EXHIBIT NO.**_____ x **RECEIVED** _____ **REJECTED** _____

29-CA-280153 ET/AL      Amazon.Com Svs, LLC

**CASE NO** _____ **CASE NAME** _____

3      09-19-2022      Barrington Moxie

**NO OF PAGES** _____ **DATE:** _____ **REPORTER:** _____

**5.  What makes something company-sponsored or a company-approved charitable cause?**

Sponsorship from an Amazon business as approved by an Amazonian L8+.

**6.  How do I get approval by Human Resources?**

Submit a SIM here.  Include the details of the activity you would like to engage in, including what relation it bears to Amazon's business or goals. Exceptions are rare and must directly benefit Amazon's business.

**7.  What about solicitation by Amazon Affinity Groups?**

Affinity Group executive sponsors may approve exceptions for their group.

**8.  Am I responsible for ensuring that my visitors follow the Policy?**

Yes.

FORM NLRB-502 (RC)
(4-15)

714

UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD

**R C   P E T I T I O N**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case No. 29-RC-285057 | Date Filed 10/25/2021 |

*INSTRUCTIONS: Unless e-Filed using the Agency's website, www.nlrb.gov, submit an original of this Petition to an NLRB office in the Region in which the employer concerned is located. The petition must be accompanied by both a showing of interest (see 6b below) and a certificate of service showing service on the employer and all other parties named in the petition of: (1) the petition; (2) Statement of Position form (Form NLRB-505); and (3) Description of Representation Case Procedures (Form NLRB 4812). The showing of interest should only be filed with the NLRB and should not be served on the employer or any other party.*

1. **PURPOSE OF THIS PETITION: RC-CERTIFICATION OF REPRESENTATIVE** - A substantial number of employees wish to be represented for purposes of collective bargaining by Petitioner and Petitioner desires to be certified as representative of the employees. **The Petitioner alleges that the following circumstances exist and requests that the National Labor Relations Board proceed under its proper authority pursuant to Section 9 of the National Labor Relations Act.**

| **2a. Name of Employer** Amazon.com, Inc. | 2b. Address(es) of Establishment(s) involved *(Street and number, city, State, ZIP code)* 1200 12th Avenue South Suite 1200 WA Seattle 98144 | | |
|---|---|---|---|
| **3a. Employer Representative** – Name and Title | 3b. Address (If same as 2b – state same) 546 Gulf Avenue NY Staten Island 10314 | | |
| 3c. Tel. No. (206) 266-2335 | 3d. Cell No. | 3e. Fax No. (206) 266-7010 | 3f. E-Mail Address |
| 4a. Type of Establishment *(Factory, mine, wholesaler, etc.)* Consumer Goods | 4b. Principal product or service E-Commerce | | 5a. City and State where unit is located: Staten Island, NY |

| **5b. Description of Unit Involved** Included: Excluded: | **6a.** No. of Employees in Unit: 5500 |
|---|---|
| | **6b.** Do a substantial number (30% or more) of the employees in the unit wish to be represented by the Petitioner? Yes [ ● ] No [ ] |

| *Check One:* ○ 7a. Request for recognition as Bargaining Representative was made on (Date) _____ and Employer declined recognition on or about _____ (Date) *(If no reply received, so state).* |
|---|
| ○ 7b. Petitioner is currently recognized as Bargaining Representative and desires certification under the Act. |

| **8a. Name of Recognized or Certified Bargaining Agent (If none, so state).** | 8b. Address | |
|---|---|---|
| 8c. Tel. No. | 8d Cell No. | 8e. Fax No. |
| 8g. Affiliation, if any | 8h. Date of Recognition or Certification | 8f. E-Mail Address |
| | | 8i. Expiration Date of Current or Most Recent Contract, if any *(Month, Day, Year)* |

9. Is there now a strike or picketing at the Employer's establishment(s) involved? No    If so, approximately how many employees are participating? _____

*(Name of labor organization)* _____, has picketed the Employer since *(Month, Day, Year)* _____.

10. Organizations or individuals other than Petitioner and those named in items 8 and 9, which have claimed recognition as representatives and other organizations and individuals known to have a representative interest in any employees in the unit described in item 5b above. *(If none, so state)*

| 10a. Name | 10b. Address | 10c. Tel. No. | 10d. Cell No. |
|---|---|---|---|
| | | 10e. Fax No. | 10f. E-Mail Address |

| 11. **Election Details:** If the NLRB conducts an election in this matter, state your position with respect to any such election. | 11a. Election Type: ____ Manual ____ Mail ● Mixed Manual/Mail |
|---|---|
| 11b. Election Date(s): March 30, 2022 | 11c. Election Time(s): 12AM - 11:59 p.m. | 11d. Election Location(s): Employee Cafeteria |

| **12a. Full Name of Petitioner (including local name and number)** Chris Smalls Amazon Labor Union | 12b. Address *(street and number, city, state, and ZIP code)* 67 Redford St. NY Staten Island 10314 | | |
|---|---|---|---|
| 12c. Full name of national or international labor organization of which Petitioner is an affiliate or constituent *(if none, so state)* None | | | |
| 12d. Tel. No. (201) 283-6658 | 12e. Cell No. | 12f. Fax No. | 12g. E-Mail Address chrismalls21@gmail.com |

13. **Representative of the Petitioner who will accept service of all papers for purposes of the representation proceeding.**

| 13a. Name and Title Eric Milner Attorney Simon & Milner | 13b. Address *(street and number, city, state, and ZIP code)* 99 W. Hawthorne Ave. Suite 308 NY Valley Stream 11580 | | |
|---|---|---|---|
| 13c. Tel. No. (516) 561-6622 | 13d. Cell No. | 13e. Fax No. (516) 561-6828 | 13f. E-Mail Address emilner@simonandmilner.com |

I declare that I have read the above petition and that the statements are true to the best of my knowledge and belief.

| Name *(Print)* Eric Milner | Signature *Eric Milner* | Title Attorney | Date 10/25/2021 09:50:03 AM |
|---|---|---|---|

**WILLFUL FALSE STATEMENTS ON THIS PETITION CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

EXHIBIT NO. GC-30(a-c)_____ RECEIVED ___x_____ REJECTED _____

CASE NO 29-CA-280153 ET/AL_____ CASE NAME Amazon.Com Svs, LLC_____

NO OF PAGES ___7_____ DATE: 09-19-2022_____ REPORTER: Barrington Moxie_____

Attachment

Employees Included
All hourly full-time and regular part time fulfillment associates, process assistants, sortation associates and transportation associates employed at the Employer's Gulf Avenue, Staten Island, NY Facility

 Employees Excluded
Truck drivers, delivery associates, information technology employees, maintenance employees, engineering employees, security guards, loss prevention employees, on-site medical employees, office clerical employees, managerial employees, guards and supervisors as defined by the Act.

FORM NLRB-502 (RC)
(4-15)

UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD

**R C  P E T I T I O N**

| | DO NOT WRITE IN THIS SPACE | |
|---|---|---|
| Case No.<br>29-RC-288020 | | Date Filed<br>12/22/2021 |

**INSTRUCTIONS:** *Unless e-Filed using the Agency's website,* **www.nlrb.gov***, submit an original of this Petition to an NLRB office in the Region in which the employer concerned is located. The petition must be accompanied by both a showing of interest (see 6b below) and a certificate of service showing service on the employer and all other parties named in the petition of: (1) the petition; (2) Statement of Position form (Form NLRB-505); and (3) Description of Representation Case Procedures (Form NLRB 4812). The showing of interest should only be filed with the NLRB and should* **not** *be served on the employer or any other party.*

1. **PURPOSE OF THIS PETITION: RC-CERTIFICATION OF REPRESENTATIVE** - A substantial number of employees wish to be represented for purposes of collective bargaining by Petitioner and Petitioner desires to be certified as representative of the employees. **The Petitioner alleges that the following circumstances exist and requests that the National Labor Relations Board proceed under its proper authority pursuant to Section 9 of the National Labor Relations Act.**

| **2a. Name of Employer**<br>Amazon.com Services LLC | 2b. Address(es) of Establishment(s) involved *(Street and number, city, State, ZIP code)*<br>410 Terry Avenue N.<br>WA Seattle 98109 | |
|---|---|---|
| **3a. Employer Representative** – Name and Title<br>Amber Rogers Esq. | 3b. Address (If same as 2b – state same)<br>1445 Ross Avenue Suite 3700<br>TX Dallas 75202 | |

| 3c. Tel. No.<br>(214) 468-3308 | 3d. Cell No. | 3e. Fax No. | 3f. E-Mail Address<br>arogers@hunton.com |
|---|---|---|---|

| 4a. Type of Establishment *(Factory, mine, wholesaler, etc.)*<br>Consumer Goods | 4b. Principal product or service<br>E-Commerce | 5a. *City and State where unit is located:*<br>Staten Island. NY |
|---|---|---|

| **5b. Description of Unit Involved**<br>**Included:** | **6a.** No. of Employees in Unit:<br>5000 |
|---|---|
| **Excluded:** | **6b.** Do a substantial number (30% or more) of the employees in the unit wish to be represented by the Petitioner? Yes [ ● ] No [ ] |

| *Check One:* ○ 7a. Request for recognition as Bargaining Representative was made on (Date) _____ and Employer declined recognition on or about _____ (Date) *(If no reply received, so state).* |
|---|
| ○ 7b. Petitioner is currently recognized as Bargaining Representative and desires certification under the Act. |

| **8a. Name of Recognized or Certified Bargaining Agent *(If none, so state).*** | 8b. Address | |
|---|---|---|

| 8c. Tel No. | 8d Cell No. | 8e. Fax No. | 8f. E-Mail Address |
|---|---|---|---|

| 8g. Affiliation, if any | 8h. Date of Recognition or Certification | 8i. Expiration Date of Current or Most Recent Contract, if any *(Month, Day, Year)* |
|---|---|---|

9. Is there now a strike or picketing at the Employer's establishment(s) involved? No   If so, approximately how many employees are participating? _____

*(Name of labor organization)* _____, has picketed the Employer since *(Month, Day, Year)* _____.

10. Organizations or individuals other than Petitioner and those named in items 8 and 9, which have claimed recognition as representatives and other organizations and individuals known to have a representative interest in any employees in the unit described in item 5b above. *(If none, so state)*

| 10a. Name | 10b. Address | 10c. Tel. No. | 10d. Cell No. |
|---|---|---|---|
| | | 10e. Fax No. | 10f. E-Mail Address |

| 11. **Election Details:** If the NLRB conducts an election in this matter, state your position with respect to any such election. | 11a. Election Type: ____ Manual ____ Mail ● Mixed Manual/Mail |
|---|---|

| 11b. Election Date(s):<br>March 30, 2022 | 11c. Election Time(s):<br>12AM - 11:59PM | 11d. Election Location(s):<br>Employee Cafeteria |
|---|---|---|

| 12a. Full Name of Petitioner *(including local name and number)*<br>Chris Smalls<br>Amazon Labor Union | 12b. Address *(street and number, city, state, and ZIP code)*<br>67 Redford St.<br>NY Staten Island 10314 |
|---|---|
| 12c. Full name of national or international labor organization of which Petitioner is an affiliate or constituent *(if none, so state)*<br>None | |

| 12d. Tel. No.<br>(201) 283-6658 | 12e. Cell No. | 12f. Fax No. | 12g. E-Mail Address<br>chrismalls21@gmail.com |
|---|---|---|---|

13. **Representative of the Petitioner who will accept service of all papers for purposes of the representation proceeding.**

| 13a. Name and Title<br>Eric Milner Esq. Attorney<br>Simon & Milner, Esqs. | 13b. Address *(street and number, city, state, and ZIP code)*<br>99 W. Hawthorne Ave. Suite 308<br>NY Valley Stream 11580 |
|---|---|

| 13c. Tel. No.<br>(516) 561-6622 | 13d. Cell No. | 13e. Fax No.<br>(516) 561-6828 | 13f. E-Mail Address<br>emilner@simonandmilner.com |
|---|---|---|---|

I declare that I have read the above petition and that the statements are true to the best of my knowledge and belief.

| Name *(Print)*<br>Eric Milner Esq. | Signature *Eric Milner* | Title<br>Attorney | Date<br>12/22/2021 11:52:29 AM |
|---|---|---|---|

**WILLFUL FALSE STATEMENTS ON THIS PETITION CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq*. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

718

Attachment

| **DO NOT WRITE IN THIS SPACE** | |
|---|---|
| Case | Date Filed |

Employees Included
All hourly full-time and regular part-time fulfillment center associates employed at the JFK8 Building located at 546 Gulf Avenue, Staten Island, NY 10314.

Employees Excluded
Truck drivers, seasonal employees, temporary employees, clerical employees, professional employees, managerial employees, engineering employees, maintenance employees, robotics employees, information technology employees, delivery associates, security guards, loss prevention employees, on-site medical employees, guard and supervisors as defined by the Act.

FORM NLRB-502 (RC)
(2-18)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**RC PETITION**

| Case No. 29-RC-290053 | Date Filed 2/4/2022 |
|---|---|

**INSTRUCTIONS: Unless e-Filed using the Agency's website, www.nlrb.gov/, submit an original of this Petition to an NLRB office in the Region in which the employer concerned is located. The petition must be accompanied by both a showing of interest (see 6b below) and a certificate of service showing service on the employer and all other parties named in the petition of: (1) the petition; (2) Statement of Position form (Form NLRB-505); and (3) Description of Representation Case Procedures (Form NLRB 4812). The showing of interest should only be filed with the NLRB and should not be served on the employer or any other party.**

1. **PURPOSE OF THIS PETITION: RC-CERTIFICATION OF REPRESENTATIVE** - A substantial number of employees wish to be represented for purposes of collective bargaining by Petitioner and Petitioner desires to be certified as representative of the employees. **The Petitioner alleges that the following circumstances exist and requests that the National Labor Relations Board proceed under its proper authority pursuant to Section 9 of the National Labor Relations Act.**

| 2a. Name of Employer | 2b. Address(es) of Establishment(s) involved *(Street and number, city, State, ZIP code)* |
|---|---|
| Amazon.com Services LLC | 410 Terry Avenue N. WA Seattle 98109 |

| 3a. Employer Representative – Name and Title | 3b. Address (If same as 2b – state same) |
|---|---|
| Amber Rogers | 1445 Ross Avenue Suite 3700 TX Dallas 75202 |

| 3c. Tel. No. (214) 468-3308 | 3d. Cell No. | 3e. Fax No. | 3f. E-Mail Address arogers@hunton.com |
|---|---|---|---|

| 4a. Type of Establishment *(Factory, mine, wholesaler, etc.)* Consumer Goods | 4b. Principal product or service E-Commerce | 5a. *City and State where unit is located:* Staten Island. NY |
|---|---|---|

| 5b. Description of Unit Involved | 6a. No. of Employees in Unit: 1500 |
|---|---|
| Included: | |
| Excluded: | 6b. Do a substantial number (30% or more) of the employees in the unit wish to be represented by the Petitioner? Yes [ ● ] No [ ] |

*Check One:* [ ] 7a. Request for recognition as Bargaining Representative was made on (Date) _____ and Employer declined recognition on or about _____ (Date) *(If no reply received, so state).*

[ ] 7b. Petitioner is currently recognized as Bargaining Representative and desires certification under the Act.

| 8a. Name of Recognized or Certified Bargaining Agent *(If none, so state).* | 8b. Address |
|---|---|

| 8c. Tel No. | 8d Cell No. | 8e. Fax No. | 8f. E-Mail Address |
|---|---|---|---|

| 8g. Affiliation, if any | 8h. Date of Recognition or Certification | 8i. Expiration Date of Current or Most Recent Contract, if any *(Month, Day, Year)* |
|---|---|---|

9. Is there now a strike or picketing at the Employer's establishment(s) involved? No     If so, approximately how many employees are participating? _____

*(Name of labor organization)* _____, has picketed the Employer since *(Month, Day, Year)* _____.

10. Organizations or individuals other than Petitioner and those named in items 8 and 9, which have claimed recognition as representatives and other organizations and individuals known to have a representative interest in any employees in the unit described in item 5b above. *(If none, so state)*

| 10a. Name | 10b. Address | 10c. Tel. No. | 10d. Cell No. |
|---|---|---|---|
| | | 10e. Fax No. | 10f. E-Mail Address |

11. **Election Details:** If the NLRB conducts an election in this matter, state your position with respect to any such election.

11a. Election Type: [ ● ] Manual ___ Mail ___ Mixed Manual/Mail

| 11b. Election Date(s): May 23 - 27, 2022 | 11c. Election Time(s): 24 Hours per Day | 11d. Election Location(s): TBD |
|---|---|---|

| 12a. Full Name of Petitioner *(including local name and number)* Chris Smalls Amazon Labor Union | 12b. Address *(street and number, city, state, and ZIP code)* 67 Redford St. NY Staten Island 10314 |
|---|---|

12c. Full name of national or international labor organization of which Petitioner is an affiliate or constituent *(if none, so state)*
None

| 12d. Tel. No. (201) 283-6658 | 12e. Cell No. | 12f. Fax No. | 12g. E-Mail Address chrismalls21@gmail.com |
|---|---|---|---|

13. **Representative of the Petitioner who will accept service of all papers for purposes of the representation proceeding.**

| 13a. Name and Title Eric Milner Attorney Simon & Milner, Esqs. | 13b. Address *(street and number, city, state, and ZIP code)* 99 W. Hawthorne Ave. Suite 308 NY Valley Stream 11580 |
|---|---|

| 13c. Tel. No. (516) 561-6622 | 13d. Cell No. | 13e. Fax No. (516) 561-6828 | 13f. E-Mail Address emilner@simonandmilner.com |
|---|---|---|---|

I declare that I have read the above petition and that the statements are true to the best of my knowledge and belief.

| Name *(Print)* Eric Milner | Signature *Eric Milner* | Title Attorney | Date 02/02/2022 12:09:51 PM |
|---|---|---|---|

**WILLFUL FALSE STATEMENTS ON THIS PETITION CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

Please fill all necessary fields on the form PRIOR to digitally signing. To make changes after the form has been signed, right-click on the signature field and click "clear signature." Once complete, please sign the form.

720

Attachment

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|------|------------|
|      |            |

Employees Included
All hourly full-time and regular part-time fulfillment center associates employed at the LDJ5 Building located at 546 Gulf Avenue, Staten Island, NY 10314.

 Employees Excluded
Truck Drivers, seasonal employees, temporary employees, clerical employees, professional employees, managerial employees, engineering employees, maintenance employees, robotics employees, information technology employees, delivery associates, security guards, loss prevention employees, on-site medical employees, guards and supervisors as defined by the Act.

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**REGION 29**

**AMAZON.COM SERVICES, LLC.**

       **Employer**

    **and**                         **Case 29-RC-285057**

**AMAZON LABOR UNION**

       **Petitioner**

**ORDER APPROVING WITHDRAWAL OF PETITION WITHOUT PREJUDICE AND CANCELLING HEARING**

On October 25, 2021, Amazon Labor Union, herein called the Petitioner, filed a petition under Section 9(c) of the National Labor Relations Act, seeking to represent a unit of certain employees employed by Amazon.Com Services, LLC.

On October 25, 2021, the undersigned issued a Notice of Representation Hearing setting a hearing for November 15, 2021.  The Order provided that the Employer's Statement of Position was due on November 4, 2021, and that the Petitioner's Responsive Statement of Position was due on November 9, 2021.

On November 3, 2021, the undersigned issued an Order Rescheduling Hearing and Extending Time to File Statement of Position, which rescheduled the hearing to November 17, 2021, and extended the Employer's time to file a Statement of Position to November 8, 2021, and the Petitioner's time to file a Responsive Statement of Position to November 12, 2021.

On November 8, 2021, the undersigned issued a second Order Rescheduling Hearing and Extending Time to File Statement of Position, which rescheduled the hearing to November 22, 2021, and extended the Employer's time to file a Statement of Position to November 16, 2021, and the Petitioner's time to file a Responsive Statement of Position to November 18, 2021.

On November 12, 2021, the Petitioner requested permission to withdraw its petition.  The Employer does not object to the Petitioner's request to withdraw its petition.

I hereby approve the Petitioner's request to withdraw the petition in Amazon.com Services LLC, 29-RC-285057, without prejudice.  Accordingly,

EXHIBIT NO.___GC-31_____ RECEIVED ___x____ REJECTED _____

CASE NO ___29-CA-280153 ET/AL_____ CASE NAME ___Amazon.Com Svs, LLC_____

NO OF PAGES ___3_____ DATE: ___09-19-2022____ REPORTER: ___Barrington Moxie_____

**IT IS HEREBY ORDERED** that the hearing in the above-entitled matter scheduled for November 22, 2021 is **cancelled**.

Dated: November 12, 2021

_____
KATHY DREW-KING
REGIONAL DIRECTOR
NATIONAL LABOR RELATIONS BOARD
REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
# STIPULATED ELECTION AGREEMENT

**Amazon.com Services LLC**                    **Case 29-RC-288020**

The parties **AGREE AS FOLLOWS:**

    **1.  PROCEDURAL MATTERS.**  The parties waive their right to a hearing and agree that any notice of hearing previously issued in this matter is withdrawn, that the petition is amended to conform to this Agreement, and that the record of this case shall include this Agreement and be governed by the Board's Rules and Regulations.

    **2.  COMMERCE.**  Amazon.com Services LLC, herein called the Employer is engaged in commerce within the meaning of Section 2(6) and (7) of the National Labor Relations Act and a question affecting commerce has arisen concerning the representation of employees within the meaning of Section 9(c).

    The Employer, a Delaware limited liability company with a Fulfillment Center located at 546 Gulf Avenue, Staten Island, New York, herein called the JFK8 Facility, has been engaged in the retail sale of consumer products throughout the United States. During the past 12-month period, the Employer, in conducting its business operations, derived gross revenues in excess of $500,000 and purchased and received at its JFK8 Facility goods and supplies valued in excess of $5,000 directly from enterprises located outside the State of New York.

    **3.  LABOR ORGANIZATION.**  Amazon Labor Union, herein called the Petitioner, is an organization in which employees participate, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work and is a labor organization within the meaning of Section 2(5) of the Act.

    **4.  ELECTION.** A secret-ballot election under the Board's Rules and Regulations shall be held under the supervision of the Regional Director on the date and at the hours and places specified below.

        **DATE:**    **Friday, March 25, 2022;**
                          **Saturday, March 26, 2022;**
                          **Monday, March 28, 2022;**
                          **Tuesday, March 29, 2022; and**
                          **Wednesday, March 30, 2022**

        **HOURS:**  **8:00AM to 1:00PM and 8:00PM to 1:00AM**

        **PLACE:**  **In a tent located in the parking area of the Employer's facility at 546 Gulf Avenue**, Staten Island, NY

In addition, the election will be conducted consistent with the following safety protocols:

    (i) Provide a spacious polling area, sufficient to accommodate six (6) foot distancing, which will be marked on the floor with tape to insure separation for observers, Board Agents and voters;

GC-32(a-b)                                    x
EXHIBIT NO._____ RECEIVED _____ REJECTED _____

29-CA-280153 ET/AL              Amazon.Com Svs, LLC
CASE NO _____ CASE NAME _____

10              09-19-2022           Barrington Moxie
NO OF PAGES _____ DATE: _____ REPORTER: _____

(ii) Have separate tables spaced six (6) feet apart so Board Agent, observers, ballot booth and ballot box are at least six (6) feet apart;

(iii) Place markings on the floor to remind/enforce social distancing;

(iv) Provide sufficient disposable pencils without erasers for each voter to mark their ballot;

(v) Provide tape to seal challenge ballot envelopes;

(vi) Provide plexiglass barriers of sufficient size to protect the observers and Board Agent and to separate observers and the Board Agent from voters and each other, pre-election conference and ballot count attendees, as well as masks, hand sanitizer, gloves and wipes for observers;

(vii) Allow for an inspection of the polling area by video conference or in person, on **March 22, 2022, at 11:00AM**, or at least 24 hours prior to the election, so that the Board Agent and parties can view the polling area. A representative of Amazon Labor Union will be present during the walkthrough;

(viii) Ensure that, in accordance with CDC guidance, all voters, observers, party representatives, and other participants will wear CDC conforming masks in all phases of the election. The Employer will post signs in or immediately adjacent to the Notice of Election to notify voters, observers, party representatives and other participants of this requirement;

(ix) Provide the Region with required certification pre and post-vote regarding positive COVID-19 tests, if any.

(x) Prior to the date of the manual ballot election, the Regional Director may reassess the COVID-19 infection rates in Richmond County, NY. The Regional Director may, in accordance with guidance set forth in *Apsirus Keweenaw*, 370 NLRB No. 45 (2020), determine that the scheduled, manual ballot election cannot be safely conducted and the Regional Director may cancel, postpone, or order a mail ballot election. If the election is postponed or canceled, the Regional Director, in his or her discretion, may reschedule the date, time, place of the election, or method of the election.

**5. UNIT AND ELIGIBLE VOTERS.** The following unit is appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

Included: All hourly full-time and regular-part time fulfillment center associates employed at the Employer's JFK8 building located at 546 Gulf Avenue, Staten Island, New York.

Excluded: Truck drivers, seasonal employees, temporary employees, clerical employees, professional employees, managerial employees, engineering employees, maintenance employees, robotics employees, information technology employees, delivery associates, loss prevention employees, on-site medical employees, guards and supervisors as defined by the Act.

Employees will be called to vote according to a Release Schedule to be approved by the Regional Director. The Employer will post the Release Schedule alongside the Notice of Election. The parties understand that the Board agent conducting the election will not police the release schedule. The Board agent will allow any voter who is in line during the polling period to vote, regardless of whether they are voting according to the release schedule.

Those eligible to vote in the election are employees in the above unit who were employed during the **payroll period ending February 12, 2022**, including employees who did not work during that period because they were ill, on vacation, or were temporarily laid off.

Also eligible to vote are all employees in the unit who have worked an average of four (4) hours or more per week during the 13 weeks immediately preceding the eligibility date for the election.

Employees engaged in any economic strike, who have retained their status as strikers and who have not been permanently replaced are also eligible to vote. In addition, employees engaged in an economic strike which commenced less than 12 months before the election date, who have retained their status as strikers but who have been permanently replaced, as well as their replacements are eligible to vote. Employees who are otherwise eligible but who are in the military services of the United States may vote if they appear in person at the polls.

Ineligible to vote are (1) employees who have quit or been discharged for cause after the designated payroll period for eligibility, (2) employees engaged in a strike who have been discharged for cause since the commencement thereof and who have not been rehired or reinstated before the election date, and (3) employees engaged in an economic strike which began more than 12 months before the election date who have been permanently replaced.

      **6.  VOTER LIST.**  Within 2 business days after the Regional Director has approved this Agreement, the Employer must provide to the Regional Director and all of the other parties a voter list of the full names, work locations, shifts, job classifications, and contact information (including home addresses, available personal email addresses, and available personal home and cellular telephone numbers) of all eligible voters. The Employer must also include, in a separate section of that list, the same information for those individuals whom the parties have agreed should be permitted to vote subject to challenge. The list must be filed in common, everyday electronic file formats that can be searched. Unless otherwise agreed to by the parties, the list must be provided in a table in a Microsoft Word file (.doc or docx) or a file that is compatible with Microsoft Word (.doc or docx). The first column of the list must begin with each employee's last name and the list must be alphabetized (overall or by department) by last name. The font size of the list must be the equivalent of Times New Roman 10 or larger. That font does not need to be used but the font must be that size or larger. When feasible, the list must be filed electronically with the Regional Director and served electronically on the parties. The Employer must file with the Regional Director a certificate of service of the list on all parties.

      **7.  THE BALLOT.**  The ballots will be in English and Spanish and the Regional Director, in her discretion, will decide any other additional language(s) to be used on the election ballot. All parties should notify the Region as soon as possible of the need to have the Notice of Election and/or ballots translated.

The question on the ballot will be "Do you wish to be represented for purposes of collective bargaining by Amazon Labor Union?" The choices on the ballot will be "Yes" or "No".

      **8.  NOTICE OF ELECTION.**  The Notice of Election will be in English and Spanish, and the Regional Director, in her discretion, will decide any additional the language(s) to be used on the Notice of Election. The Employer must post copies of the Notice of Election in conspicuous places, including all places where notices to employees in the unit are customarily posted, including, but not limited to, on the Employer's bulletin boards, the Employer's Notification tab of AtoZ (to be re-posted at the beginning of March 22, 23, and 24, 2022) and on no fewer than five (5) of the Employer's electronic video displays, at least three (3) full working days prior to 12:01 a.m. of the day of the election. The Employer must also distribute the Notice of Election electronically, if the Employer customarily communicates with employees in the unit electronically. Failure to post or distribute the Notice of Election as required may be grounds for setting aside the election whenever proper and timely objections are filed.

**9. NOTICE OF ELECTION ONSITE REPRESENTATIVE.** The following individual will serve as the Employer's designated Notice of Election onsite representative: Felipe Santos, General Manager; P: 347-215-3436; 546 Gulf Avenue, Staten Island, NY.

**10. ACCOMMODATIONS REQUIRED.** All parties should notify the Region as soon as possible of any voters, potential voters, or other participants in this election who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.503, and who in order to participate in the election need appropriate auxiliary aids, as defined in 29 C.F.R. 100.503, and request the necessary assistance.

**11. OBSERVERS.** Each party may station three (3) authorized, nonsupervisory-employee observers at the polling places to assist in the election, to challenge the eligibility of voters, and to verify the tally.

**12. SHOWING OF IDENTIFICATION.** The parties have agreed that voters will be required to show identification, employer or government issued (i.e. driver's license) or any identification showing a picture and the full name of the individual, upon voting. If a voter fails to present identification, they will vote subject to challenge.

**13. TALLY OF BALLOTS.** The ballot count will be conducted on **Thursday, March 31, 2022**, at 10:00AM, and on consecutive days until the count is completed, at a Region 29 hearing room located at 2 MetroTech Center, Brooklyn, New York. All ballots cast will be comingled and counted, and a tally of ballots prepared and immediately made available to the parties.

**14. POSTELECTION AND RUNOFF PROCEDURES.** All procedures after the ballots are counted shall conform with the Board's Rules and Regulations.

| **Amazon.com Services LLC** | **Amazon Labor Union** |
|---|---|
| (Employer) | (Petitioner) |

By: /s/ Amber M. Rogers 2/16/2022
    (Signature)        (Date)

By: /s/ Eric M. Milner   02/16/2022
    (Signature)        (Date)

Print Name: _____

Print Name: _____

Recommended:  /s/ Ioulia Fedorova    2/17/2022
              IOULIA FEDOROVA, Field Examiner  (Date)

Date approved:   2/17/2022 _____

*[signature]*

**Regional Director, Region 29**
**National Labor Relations Board**

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
## STIPULATED ELECTION AGREEMENT

**Amazon.com Services LLC**                                    **Case 29-RC-288020**

The parties **AGREE AS FOLLOWS:**

    **1. PROCEDURAL MATTERS.** The parties waive their right to a hearing and agree that any notice of hearing previously issued in this matter is withdrawn, that the petition is amended to conform to this Agreement, and that the record of this case shall include this Agreement and be governed by the Board's Rules and Regulations.

    **2. COMMERCE.** Amazon.com Services LLC, herein called the Employer is engaged in commerce within the meaning of Section 2(6) and (7) of the National Labor Relations Act and a question affecting commerce has arisen concerning the representation of employees within the meaning of Section 9(c).

    The Employer, a Delaware limited liability company with a Fulfillment Center located at 546 Gulf Avenue, Staten Island, New York, herein called the JFK8 Facility, has been engaged in the retail sale of consumer products throughout the United States. During the past 12-month period, the Employer, in conducting its business operations, derived gross revenues in excess of $500,000 and purchased and received at its JFK8 Facility goods and supplies valued in excess of $5,000 directly from enterprises located outside the State of New York.

    **3. LABOR ORGANIZATION.** Amazon Labor Union, herein called the Petitioner, is an organization in which employees participate, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work and is a labor organization within the meaning of Section 2(5) of the Act.

    **4. ELECTION.** A secret-ballot election under the Board's Rules and Regulations shall be held under the supervision of the Regional Director on the date and at the hours and places specified below.

        **DATE:**    **Friday, March 25, 2022;**
                        **Saturday, March 26, 2022;**
                        **Monday, March 28, 2022;**
                        **Tuesday, March 29, 2022; and**
                        **Wednesday, March 30, 2022**

        **HOURS:**    **8:00AM to 1:00PM and 8:00PM to 1:00AM**

        **PLACE:**    **In a tent located in the parking area of the Employer's facility at 546 Gulf Avenue, Staten Island, NY**

    In addition, the election will be conducted consistent with the following safety protocols:

        (i) Provide a spacious polling area, sufficient to accommodate six (6) foot distancing, which will be marked on the floor with tape to insure separation for observers, Board Agents and voters;

Initials: AMR

(ii) Have separate tables spaced six (6) feet apart so Board Agent, observers, ballot booth and ballot box are at least six (6) feet apart;

(iii) Place markings on the floor to remind/enforce social distancing;

(iv) Provide sufficient disposable pencils without erasers for each voter to mark their ballot;

(v) Provide tape to seal challenge ballot envelopes;

(vi) Provide plexiglass barriers of sufficient size to protect the observers and Board Agent and to separate observers and the Board Agent from voters and each other, pre-election conference and ballot count attendees, as well as masks, hand sanitizer, gloves and wipes for observers.

(vii) Allow for an inspection of the polling area by video conference or in person, on **March 22, 2022, at 11:00AM**, or at least 24 hours prior to the election, so that the Board Agent and parties can view the polling area. A representative of Amazon Labor Union will be present during the walkthrough;

(viii) Ensure that, in accordance with CDC guidance, all voters, observers, party representatives, and other participants will wear CDC conforming masks in all phases of the election. The Employer will post signs in or immediately adjacent to the Notice of Election to notify voters, observers, party representatives and other participants of this requirement;

(ix) Provide the Region with required certification pre and post-vote regarding positive COVID-19 tests, if any.

(x) Prior to the date of the manual ballot election, the Regional Director may reassess the COVID-19 infection rates in Richmond County, NY. The Regional Director may, in accordance with guidance set forth in *Apsirus Keweenaw*, 370 NLRB No. 45 (2020), determine that the scheduled, manual ballot election cannot be safely conducted and the Regional Director may cancel, postpone, or order a mail ballot election. If the election is postponed or canceled, the Regional Director, in his or her discretion, may reschedule the date, time, place of the election, or method of the election.

    **5. UNIT AND ELIGIBLE VOTERS.** The following unit is appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

    Included: All hourly full-time and regular-part time fulfillment center associates employed at the Employer's JFK8 building located at 546 Gulf Avenue, Staten Island, New York.

    Excluded: Truck drivers, seasonal employees, temporary employees, clerical employees, professional employees, managerial employees, engineering employees, maintenance employees, robotics employees, information technology employees, delivery associates, loss prevention employees, on-site medical employees, guards and supervisors as defined by the Act.

Employees will be called to vote according to a Release Schedule to be approved by the Regional Director. The Employer will post the Release Schedule alongside the Notice of Election. The parties understand that the Board agent conducting the election will not police the release schedule. The Board agent will allow any voter who is in line during the polling period to vote, regardless of whether they are voting according to the release schedule.

Initials: AMR

Those eligible to vote in the election are employees in the above unit who were employed during the **payroll period ending February 12, 2022**, including employees who did not work during that period because they were ill, on vacation, or were temporarily laid off.

Also eligible to vote are all employees in the unit who have worked an average of four (4) hours or more per week during the 13 weeks immediately preceding the eligibility date for the election.

Employees engaged in any economic strike, who have retained their status as strikers and who have not been permanently replaced are also eligible to vote. In addition, employees engaged in an economic strike which commenced less than 12 months before the election date, who have retained their status as strikers but who have been permanently replaced, as well as their replacements are eligible to vote. Employees who are otherwise eligible but who are in the military services of the United States may vote if they appear in person at the polls.

Ineligible to vote are (1) employees who have quit or been discharged for cause after the designated payroll period for eligibility, (2) employees engaged in a strike who have been discharged for cause since the commencement thereof and who have not been rehired or reinstated before the election date, and (3) employees engaged in an economic strike which began more than 12 months before the election date who have been permanently replaced.

**6. VOTER LIST.** Within 2 business days after the Regional Director has approved this Agreement, the Employer must provide to the Regional Director and all of the other parties a voter list of the full names, work locations, shifts, job classifications, and contact information (including home addresses, available personal email addresses, and available personal home and cellular telephone numbers) of all eligible voters. The Employer must also include, in a separate section of that list, the same information for those individuals whom the parties have agreed should be permitted to vote subject to challenge. The list must be filed in common, everyday electronic file formats that can be searched. Unless otherwise agreed to by the parties, the list must be provided in a table in a Microsoft Word file (.doc or docx) or a file that is compatible with Microsoft Word (.doc or docx). The first column of the list must begin with each employee's last name and the list must be alphabetized (overall or by department) by last name. The font size of the list must be the equivalent of Times New Roman 10 or larger. That font does not need to be used but the font must be that size or larger. When feasible, the list must be filed electronically with the Regional Director and served electronically on the parties. The Employer must file with the Regional Director a certificate of service of the list on all parties.

**7. THE BALLOT.** The ballots will be in English and Spanish and the Regional Director, in her discretion, will decide any other additional language(s) to be used on the election ballot. All parties should notify the Region as soon as possible of the need to have the Notice of Election and/or ballots translated.

The question on the ballot will be "Do you wish to be represented for purposes of collective bargaining by Amazon Labor Union?" The choices on the ballot will be "Yes" or "No".

**8. NOTICE OF ELECTION.** The Notice of Election will be in English and Spanish, and the Regional Director, in her discretion, will decide any additional the language(s) to be used on the Notice of Election. The Employer must post copies of the Notice of Election in conspicuous places, including all places where notices to employees in the unit are customarily posted, including, but not limited to, on the Employer's bulletin boards, the Employer's Notification tab of AtoZ (to be re-posted at the beginning of March 22, 23, and 24, 2022) and on no fewer than five (5) of the Employer's electronic video displays, at least three (3) full working days prior to 12:01 a.m. of the day of the election. The Employer must also distribute the Notice of Election electronically, if the Employer customarily communicates with employees in the unit electronically. Failure to post or distribute the Notice of Election as required may be grounds for setting aside the election whenever proper and timely objections are filed.

Initials: AMR

**9. NOTICE OF ELECTION ONSITE REPRESENTATIVE.** The following individual will serve as the Employer's designated Notice of Election onsite representative: Felipe Santos, General Manager; P: 347-215-3436; 546 Gulf Avenue, Staten Island, NY.

**10. ACCOMMODATIONS REQUIRED.** All parties should notify the Region as soon as possible of any voters, potential voters, or other participants in this election who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.503, and who in order to participate in the election need appropriate auxiliary aids, as defined in 29 C.F.R. 100.503, and request the necessary assistance.

**11. OBSERVERS.** Each party may station three (3) authorized, nonsupervisory-employee observers at the polling places to assist in the election, to challenge the eligibility of voters, and to verify the tally.

**12. SHOWING OF IDENTIFICATION.** The parties have agreed that voters will be required to show identification, employer or government issued (i.e. driver's license) or any identification showing a picture and the full name of the individual, upon voting. If a voter fails to present identification, they will vote subject to challenge.

**13. TALLY OF BALLOTS.** The ballot count will be conducted on **Thursday, March 31, 2022**, at 10:00AM, and on consecutive days until the count is completed, at a Region 29 hearing room located at 2 MetroTech Center, Brooklyn, New York. All ballots cast will be comingled and counted, and a tally of ballots prepared and immediately made available to the parties.

**14. POSTELECTION AND RUNOFF PROCEDURES.** All procedures after the ballots are counted shall conform with the Board's Rules and Regulations.

| **Amazon.com Services LLC** | **Amazon Labor Union** |
|---|---|
| (Employer) | (Petitioner) |

By: _Amber M. Rogers_  2/16/2022     By: _____
    (Signature)    (Date)                (Signature)   (Date)

Print Name: _Amber M. Rogers_     Print Name: _____

Recommended: _____
    IOULIA FEDOROVA, Field Examiner  (Date)

Date approved: _____

_____
**Regional Director, Region 29**
**National Labor Relations Board**

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
# STIPULATED ELECTION AGREEMENT

**Amazon.com Services LLC**                                    **Case 29-RC-290053**

The parties **AGREE AS FOLLOWS:**

**1. PROCEDURAL MATTERS.** The parties waive their right to a hearing and agree that any notice of hearing previously issued in this matter is withdrawn, that the petition is amended to conform to this Agreement, and that the record of this case shall include this Agreement and be governed by the Board's Rules and Regulations.

**2. COMMERCE.** Amazon.com Services LLC, herein called the Employer is engaged in commerce within the meaning of Section 2(6) and (7) of the National Labor Relations Act and a question affecting commerce has arisen concerning the representation of employees within the meaning of Section 9(c).

The Employer, a Delaware limited liability company with a Fulfillment Center located at 526 Gulf Avenue, Staten Island, New York, herein called the LDJ5 Facility, has been engaged in the retail sale of consumer products throughout the United States. During the past 12-month period, the Employer, in conducting its business operations, derived gross revenues in excess of $500,000 and purchased and received at its LDJ5 Facility goods and supplies valued in excess of $5,000 directly from enterprises located outside the State of New York.

**3. LABOR ORGANIZATION.** Amazon Labor Union, herein called the Petitioner, is an organization in which employees participate, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work and is a labor organization within the meaning of Section 2(5) of the Act.

**4. ELECTION.** A secret-ballot election under the Board's Rules and Regulations shall be held under the supervision of the Regional Director on the date and at the hours and places specified below.

DATE:   **Monday, April 25, 2022;**
**Wednesday, April 27, 2022;**
**Thursday, April 28, 2022; and**
**Friday, April 29, 2022**

HOURS:   **4:30AM to 8:30AM;**
**2:00PM to 6:00PM; and,**
**8:00PM to 11:00PM**

PLACE:   **In a tent located in the parking area of the Employer's facility at 526 Gulf Avenue**, Staten Island, New York.

In addition, the election will be conducted consistent with the following safety protocols:

(i) Provide a spacious polling area, sufficient to accommodate six (6) foot distancing, which will be marked on the floor with tape to insure separation for observers, Board Agents and voters;

EXHIBIT NO. `GC-33(a-b)` _____ RECEIVED `x` _____ REJECTED _____

CASE NO `29-CA-280153 ET/AL` _____ CASE NAME `Amazon.Com Svs, LLC` _____

NO OF PAGES `9` _____ DATE: `09-19-2022` _____ REPORTER: `Barrington Moxie` _____

(ii) Have separate tables spaced six (6) feet apart so Board Agent, observers, ballot booth and ballot box are at least six (6) feet apart;

(iii) Place markings on the floor to remind/enforce social distancing;

(iv) Provide sufficient disposable pencils without erasers for each voter to mark their ballot;

(v) Provide tape to seal challenge ballot envelopes;

(vi) Provide plexiglass barriers of sufficient size to protect the observers and Board Agent and to separate observers and the Board Agent from voters and each other, pre-election conference and ballot count attendees, as well as masks, hand sanitizer, gloves and wipes for observers.

(vii) Allow for an inspection of the polling area by video conference or in person, on **Thursday, April 21, 2022, at 11:00AM**, or at least 24 hours prior to the election, so that the Board Agent and parties can view the polling area. A representative of Amazon Labor Union will be present during the walkthrough;

(viii) Ensure that, in accordance with CDC guidance, all voters, observers, party representatives, and other participants will wear CDC conforming masks in all phases of the election. The Employer will post signs in or immediately adjacent to the Notice of Election to notify voters, observers, party representatives and other participants of this requirement;

(ix) Provide the Region with required certification pre and post-vote regarding positive COVID-19 tests, if any.

(x) Prior to the date of the manual ballot election, the Regional Director may reassess the COVID-19 infection rates in Richmond County, NY. The Regional Director may, in accordance with guidance set forth in *Apsirus Keweenaw*, 370 NLRB No. 45 (2020), determine that the scheduled, manual ballot election cannot be safely conducted and the Regional Director may cancel, postpone, or order a mail ballot election. If the election is postponed or canceled, the Regional Director, in his or her discretion, may reschedule the date, time, place of the election, or method of the election.

5. **UNIT AND ELIGIBLE VOTERS.** The following unit is appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

Included: All hourly full-time and regular-part time fulfillment center associates employed at the Employer's LDJ5 building located at 526 Gulf Avenue, Staten Island, New York.

Excluded: Truck drivers, seasonal employees, temporary employees, clerical employees, professional employees, managerial employees, engineering employees, maintenance employees, robotics employees, information technology employees, delivery associates, loss prevention employees, on-site medical employees, guards and supervisors as defined by the Act.

Employees will be called to vote according to a Release Schedule to be approved by the Regional Director. The Employer will post the Release Schedule alongside the Notice of Election. The parties understand that the Board agent conducting the election will not police the release schedule. The Board agent will allow any voter who is in line during the polling period to vote, regardless of whether they are voting according to the release schedule.

Those eligible to vote in the election are employees in the above unit who were employed during the **payroll period ending March 12, 2022**, including employees who did not work during that period because they were ill, on vacation, or were temporarily laid off.

Also eligible to vote are all employees in the unit who have worked an average of four (4) hours or more per week during the 13 weeks immediately preceding the eligibility date for the election.

Employees engaged in any economic strike, who have retained their status as strikers and who have not been permanently replaced are also eligible to vote. In addition, employees engaged in an economic strike which commenced less than 12 months before the election date, who have retained their status as strikers but who have been permanently replaced, as well as their replacements are eligible to vote. Employees who are otherwise eligible but who are in the military services of the United States may vote if they appear in person at the polls.

Ineligible to vote are (1) employees who have quit or been discharged for cause after the designated payroll period for eligibility, (2) employees engaged in a strike who have been discharged for cause since the commencement thereof and who have not been rehired or reinstated before the election date, and (3) employees engaged in an economic strike which began more than 12 months before the election date who have been permanently replaced.

6.  **VOTER LIST.** Within 2 business days after the Regional Director has approved this Agreement, the Employer must provide to the Regional Director and all of the other parties a voter list of the full names, work locations, shifts, job classifications, and contact information (including home addresses, available personal email addresses, and available personal home and cellular telephone numbers) of all eligible voters. The Employer must also include, in a separate section of that list, the same information for those individuals whom the parties have agreed should be permitted to vote subject to challenge. The list must be filed in common, everyday electronic file formats that can be searched. Unless otherwise agreed to by the parties, the list must be provided in a table in a Microsoft Word file (.doc or docx) or a file that is compatible with Microsoft Word (.doc or docx). The first column of the list must begin with each employee's last name and the list must be alphabetized (overall or by department) by last name. The font size of the list must be the equivalent of Times New Roman 10 or larger. That font does not need to be used but the font must be that size or larger. When feasible, the list must be filed electronically with the Regional Director and served electronically on the parties. The Employer must file with the Regional Director a certificate of service of the list on all parties.

7.  **THE BALLOT.** The ballots will be in English and Spanish and the Regional Director, in her discretion, will decide any other additional language(s) to be used on the election ballot. All parties should notify the Region as soon as possible of the need to have the Notice of Election and/or ballots translated.

The question on the ballot will be "Do you wish to be represented for purposes of collective bargaining by Amazon Labor Union?" The choices on the ballot will be "Yes" or "No".

8.  **NOTICE OF ELECTION.** The Notice of Election will be in English and Spanish, and the Regional Director, in her discretion, will decide any additional the language(s) to be used on the Notice of Election. The Employer must post copies of the Notice of Election in conspicuous places, including all places where notices to employees in the unit are customarily posted, including, but not limited to, on the Employer's bulletin boards, the Employer's Notification tab of AtoZ (to be re-posted at the beginning of April 20, 21, and 22, 2022) and on no fewer than two (2) of the Employer's electronic video displays, at least three (3) full working days prior to 12:01 a.m. of the day of the election. The Employer must also distribute the Notice of Election electronically, if the Employer customarily communicates with employees in the unit electronically. Failure to post or distribute the Notice of Election as required may be grounds for setting aside the election whenever proper and timely objections are filed.

**9. NOTICE OF ELECTION ONSITE REPRESENTATIVE.** The following individual will serve as the Employer's designated Notice of Election onsite representative:

Khang Le, Senior Operations Manager, khangl@amazon.com; 609-705-3627

**10. ACCOMMODATIONS REQUIRED.** All parties should notify the Region as soon as possible of any voters, potential voters, or other participants in this election who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.503, and who in order to participate in the election need appropriate auxiliary aids, as defined in 29 C.F.R. 100.503, and request the necessary assistance.

**11. OBSERVERS.** Each party may station two (2) authorized, nonsupervisory-employee observers at the polling places to assist in the election, to challenge the eligibility of voters, and to verify the tally.

**12. SHOWING OF IDENTIFICATION.** The parties have agreed that voters will be required to show identification, employer or government issued (i.e. driver's license) or any identification showing a picture and the full name of the individual, upon voting. If a voter fails to present identification, they will vote subject to challenge.

**13. TALLY OF BALLOTS.** The ballot count will be conducted on **Monday, May 2, 2022**, at 10:00 AM, and on consecutive days until the count is completed, at a Region 29 hearing room located at 2 MetroTech Center, Brooklyn, New York. All ballots cast will be comingled and counted, and a tally of ballots prepared and immediately made available to the parties.

**14. POSTELECTION AND RUNOFF PROCEDURES.** All procedures after the ballots are counted shall conform with the Board's Rules and Regulations.

|  **Amazon.com Services LLC**  |  **Amazon Labor Union**  |
| :---: | :---: |
| (Employer) | (Petitioner) |

By: /s/ Amber Rogers  03/17/2022

(Signature)          (Date)

Print Name: _____

By: /s/ Eric Milner    03/17/2022

(Signature)          (Date)

Print Name: _____

Recommended:  /s/ Fedorova    03/17/2022

IOULIA FEDOROVA, Field Examiner  (Date)

Date approved:  March 18, 2022

**Regional Director, Region 29**
**National Labor Relations Board**

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
# STIPULATED ELECTION AGREEMENT

**Amazon.com Services LLC**                              **Case 29-RC-290053**

The parties **AGREE AS FOLLOWS:**

    **1. PROCEDURAL MATTERS.** The parties waive their right to a hearing and agree that any notice of hearing previously issued in this matter is withdrawn, that the petition is amended to conform to this Agreement, and that the record of this case shall include this Agreement and be governed by the Board's Rules and Regulations.

    **2. COMMERCE.** Amazon.com Services LLC, herein called the Employer is engaged in commerce within the meaning of Section 2(6) and (7) of the National Labor Relations Act and a question affecting commerce has arisen concerning the representation of employees within the meaning of Section 9(c).

    The Employer, a Delaware limited liability company with a Fulfillment Center located at 526 Gulf Avenue, Staten Island, New York, herein called the LDJ5 Facility, has been engaged in the retail sale of consumer products throughout the United States. During the past 12-month period, the Employer, in conducting its business operations, derived gross revenues in excess of $500,000 and purchased and received at its LDJ5 Facility goods and supplies valued in excess of $5,000 directly from enterprises located outside the State of New York.

    **3. LABOR ORGANIZATION.** Amazon Labor Union, herein called the Petitioner, is an organization in which employees participate, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work and is a labor organization within the meaning of Section 2(5) of the Act.

    **4. ELECTION.** A secret-ballot election under the Board's Rules and Regulations shall be held under the supervision of the Regional Director on the date and at the hours and places specified below.

        **DATE:**     **Monday, April 25, 2022;**
                        **Wednesday, April 27, 2022;**
                        **Thursday, April 28, 2022; and**
                        **Friday, April 29, 2022**

        **HOURS:**   **4:30AM to 8:30AM;**
                        **2:00PM to 6:00PM; and,**
                        **8:00PM to 11:00PM**

        **PLACE:**   **In a tent located in the parking area of the Employer's facility at 526 Gulf Avenue, Staten Island, New York.**

In addition, the election will be conducted consistent with the following safety protocols:

    (i) Provide a spacious polling area, sufficient to accommodate six (6) foot distancing, which will be marked on the floor with tape to insure separation for observers, Board Agents and voters;

Initials: _AMR_

(ii) Have separate tables spaced six (6) feet apart so Board Agent, observers, ballot booth and ballot box are at least six (6) feet apart;

(iii) Place markings on the floor to remind/enforce social distancing;

(iv) Provide sufficient disposable pencils without erasers for each voter to mark their ballot;

(v) Provide tape to seal challenge ballot envelopes;

(vi) Provide plexiglass barriers of sufficient size to protect the observers and Board Agent and to separate observers and the Board Agent from voters and each other, pre-election conference and ballot count attendees, as well as masks, hand sanitizer, gloves and wipes for observers.

(vii) Allow for an inspection of the polling area by video conference or in person, on **Thursday, April 21, 2022, at 11:00AM**, or at least 24 hours prior to the election, so that the Board Agent and parties can view the polling area. A representative of Amazon Labor Union will be present during the walkthrough;

(viii) Ensure that, in accordance with CDC guidance, all voters, observers, party representatives, and other participants will wear CDC conforming masks in all phases of the election. The Employer will post signs in or immediately adjacent to the Notice of Election to notify voters, observers, party representatives and other participants of this requirement;

(ix) Provide the Region with required certification pre and post-vote regarding positive COVID-19 tests, if any.

(x) Prior to the date of the manual ballot election, the Regional Director may reassess the COVID-19 infection rates in Richmond County, NY. The Regional Director may, in accordance with guidance set forth in *Apsirus Keweenaw*, 370 NLRB No. 45 (2020), determine that the scheduled, manual ballot election cannot be safely conducted and the Regional Director may cancel, postpone, or order a mail ballot election. If the election is postponed or canceled, the Regional Director, in his or her discretion, may reschedule the date, time, place of the election, or method of the election.

**5. UNIT AND ELIGIBLE VOTERS.** The following unit is appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

Included: All hourly full-time and regular-part time fulfillment center associates employed at the Employer's LDJ5 building located at 526 Gulf Avenue, Staten Island, New York.

Excluded: Truck drivers, seasonal employees, temporary employees, clerical employees, professional employees, managerial employees, engineering employees, maintenance employees, robotics employees, information technology employees, delivery associates, loss prevention employees, on-site medical employees, guards and supervisors as defined by the Act.

Employees will be called to vote according to a Release Schedule to be approved by the Regional Director. The Employer will post the Release Schedule alongside the Notice of Election. The parties understand that the Board agent conducting the election will not police the release schedule. The

Initials: _____

Board agent will allow any voter who is in line during the polling period to vote, regardless of whether they are voting according to the release schedule.

Those eligible to vote in the election are employees in the above unit who were employed during the **payroll period ending March 12, 2022**, including employees who did not work during that period because they were ill, on vacation, or were temporarily laid off.

Also eligible to vote are all employees in the unit who have worked an average of four (4) hours or more per week during the 13 weeks immediately preceding the eligibility date for the election.

Employees engaged in any economic strike, who have retained their status as strikers and who have not been permanently replaced are also eligible to vote. In addition, employees engaged in an economic strike which commenced less than 12 months before the election date, who have retained their status as strikers but who have been permanently replaced, as well as their replacements are eligible to vote. Employees who are otherwise eligible but who are in the military services of the United States may vote if they appear in person at the polls.

Ineligible to vote are (1) employees who have quit or been discharged for cause after the designated payroll period for eligibility, (2) employees engaged in a strike who have been discharged for cause since the commencement thereof and who have not been rehired or reinstated before the election date, and (3) employees engaged in an economic strike which began more than 12 months before the election date who have been permanently replaced.

**6. VOTER LIST.** Within 2 business days after the Regional Director has approved this Agreement, the Employer must provide to the Regional Director and all of the other parties a voter list of the full names, work locations, shifts, job classifications, and contact information (including home addresses, available personal email addresses, and available personal home and cellular telephone numbers) of all eligible voters. The Employer must also include, in a separate section of that list, the same information for those individuals whom the parties have agreed should be permitted to vote subject to challenge. The list must be filed in common, everyday electronic file formats that can be searched. Unless otherwise agreed to by the parties, the list must be provided in a table in a Microsoft Word file (.doc or docx) or a file that is compatible with Microsoft Word (.doc or docx). The first column of the list must begin with each employee's last name and the list must be alphabetized (overall or by department) by last name. The font size of the list must be the equivalent of Times New Roman 10 or larger. That font does not need to be used but the font must be that size or larger. When feasible, the list must be filed electronically with the Regional Director and served electronically on the parties. The Employer must file with the Regional Director a certificate of service of the list on all parties.

**7. THE BALLOT.** The ballots will be in English and Spanish and the Regional Director, in her discretion, will decide any other additional language(s) to be used on the election ballot. All parties should notify the Region as soon as possible of the need to have the Notice of Election and/or ballots translated.

The question on the ballot will be "Do you wish to be represented for purposes of collective bargaining by Amazon Labor Union?" The choices on the ballot will be "Yes" or "No".

**8. NOTICE OF ELECTION.** The Notice of Election will be in English and Spanish, and the Regional Director, in her discretion, will decide any additional the language(s) to be used on the Notice of Election. The Employer must post copies of the Notice of Election in conspicuous places, including all places where notices to employees in the unit are customarily posted, including, but not limited to, on the Employer's bulletin boards, the Employer's Notification tab of AtoZ (to be re-posted at the beginning of April 22, 23, and 24, 2022 and on no fewer than two (2) of the Employer's electronic video displays, at least three (3) full working days prior to 12:01 a.m. of the day of the election. The Employer must also distribute the Notice of Election electronically, if the Employer customarily communicates with employees in the unit electronically. Failure to post or distribute the

Initials: AMR

Notice of Election as required may be grounds for setting aside the election whenever proper and timely objections are filed.

**9. NOTICE OF ELECTION ONSITE REPRESENTATIVE.** The following individual will serve as the Employer's designated Notice of Election onsite representative:

Khang Le, Senior Operations Manager, khangl@amazon.com; 609-705-3627

**10. ACCOMMODATIONS REQUIRED.** All parties should notify the Region as soon as possible of any voters, potential voters, or other participants in this election who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.503, and who in order to participate in the election need appropriate auxiliary aids, as defined in 29 C.F.R. 100.503, and request the necessary assistance.

**11. OBSERVERS.** Each party may station two (2) authorized, nonsupervisory-employee observers at the polling places to assist in the election, to challenge the eligibility of voters, and to verify the tally.

**12. SHOWING OF IDENTIFICATION.** The parties have agreed that voters will be required to show identification, employer or government issued (i.e. driver's license) or any identification showing a picture and the full name of the individual, upon voting. If a voter fails to present identification, they will vote subject to challenge.

**13. TALLY OF BALLOTS.** The ballot count will be conducted on **Monday, May 2, 2022**, at 10:00 AM, and on consecutive days until the count is completed, at a Region 29 hearing room located at 2 MetroTech Center, Brooklyn, New York. All ballots cast will be comingled and counted, and a tally of ballots prepared and immediately made available to the parties.

**14. POSTELECTION AND RUNOFF PROCEDURES.** All procedures after the ballots are counted shall conform with the Board's Rules and Regulations.

| **Amazon.com Services LLC** | **Amazon Labor Union** |
|---|---|
| (Employer) | (Petitioner) |

By: _Amber Rogers_ _3/16/22_    By: _____
     (Signature)      (Date)            (Signature)      (Date)

Print Name: _Amber Rogers_    Print Name: _____

Recommended: _____
                    IOULIA FEDOROVA, Field Examiner (Date)

Date approved: _____

_____
**Regional Director, Region 29**
**National Labor Relations Board**

**One Team,
Working Together**

amazon

Privileged & Confidential

INSTRUCTIONS TO PRESENTER:

Thank the associates for attending.

Introduce yourself by giving your first name and how long you have worked at Amazon.

Let the audience know that you're a member of the Amazon Employee Relations Team – a group that goes around the country engaging with sites to enhance the associate experience and support Amazon's commitment to Strive to be the Earth's Best Employer.

GC-34

**EXHIBIT NO.**_____  **RECEIVED** _____  **REJECTED** _____

x

29-CA-280153 ET/AL                    Amazon.Com Svs, LLC

**CASE NO** _____ **CASE NAME** _____

16                09-20-2022         Barrington Moxie

**NO OF PAGES** _____ **DATE:** _____ **REPORTER:** _____

Move to next slide.

Amazon_000028

# Thank you!

**We want to thank each and every one of you for the amazing work you do every single day.**

**Together, we are… and will continue to be successful!**



Amazon_000029

# By The Numbers

- Figure 1

- Figure 2

- Figure 3

- Figure 4

- Figure 5

Placeholder for Leadership team picture
(if available)

amazon

Amazon_000030

# Why We Are Here



**To discuss:**

- We are one team at JFK8.

- The ways we work directly and together.

- Who is the ALU?

- What the ALU is asking you to sign.

- Our commitment you.

4    Privileged & Confidential

amazon

# We are One Team at JFK8

We have an amazing team, and we believe working directly together is the best way to improve the workplace and to respond to your feedback. Working directly together allows us to focus on:

 Our one team approach because it makes improvements happen quickly.

 Providing the programs and opportunities you care about most.

 Open-door avenues that give you direct access to management and HR.



Amazon_000032

# The Ways We Work Directly Together

We want to hear from you! Here's how you help us make our team better:

- **Speak With Your Manager:** Talking with your manager is the best way to give direct feedback and get answers to your questions.

- **Connections:** You know that daily question on your scanner? Your answers make a difference.

- **Gemba Walks:** Participate in a Gemba. Leaders love hearing ideas from the experts.

- **Birthday Roundtables:** This is time with Site Leadership to share your thoughts. You'll be invited around your birthday.

- **VOA Board:** You can also add your idea or question on the VOA board.



Amazon_000033

# Amazon And Third Parties

- We have an amazing workforce and our direct relationship with associates like you has been a key factor in our ability to deliver the best possible service globally for our customers.

- We continue to be a target for third parties that do not understand our pro-employee philosophy and seek to disrupt the direct relationship between Amazon and our associates.

- One such third party is the ALU. In these next few slides, let's take a closer look at what the ALU is, what the ALU is asking you to sign, and your rights if approached by the ALU.



Amazon_000034

## What Is The ALU?

- The ALU is not a part of Amazon and is not authorized to speak for Amazon.

- The ALU is a newly formed third-party group that wants to represent all associates at the four facilities on the Staten Island campus, even though it has no experience doing so.

- It would charge its members dues, fees, fines, and assessments in exchange for their representation.



Amazon_000035

# What The ALU Is Asking You To Sign

- You may be approached by an ALU organizer or an associate wearing a vest who could ask you to sign a something or fill out an online form.

- By signing either, you could be authorizing the ALU to speak for you. You could also be obligated to pay union dues. It's important you read everything closely.



**Electronic Card**

**Physical Card**

Amazon_000036

# You May Be Approached About ALU

 A co-worker or ALU organizer may want to speak with you about the ALU. Your participation in that conversation is always voluntary, even if that person is wearing an Amazon vest.

 If you are asked to sign something or fill out an online form, remember: both could be legally binding.

 The ALU can say or promise anything. It's important to read closely anything the ALU gives you to sign. They may tell you   it's for free food or other things, but you may be giving          up your voice and m obligate you to pay the ALU             a monthly fee.



Amazon_000037

# What To Do If You Are Approached

- You have the right to say, **"no thanks"** and **"I don't wish to be contacted again."**

- It's okay to take your time to get the facts before deciding whether or not to sign anything the ALU gives you.

- If you have any questions, contact your manager, Site Leader, or HR.



Amazon_000038

## Our Commitment To You

We are proud of the relationships we've established at JFK8 and we don't believe ALU would make us more successful or a stronger team.

We are committed to:

- Protecting your rights.

- Listening to you.

- Respecting your opinions.

- Being open and honest with you.



Amazon_000039

## We Hope That You Will

- Take your time to check the facts.

- Keep an open mind.

- Ask questions of your leadership team.

- Do your own research.

13    Privileged & Confidential



Amazon_000040



Amazon_000041

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Natal,John | 110490 | MCO Educational Series 10 | Class |
| Zaharopoulos,Georgeos | 110490 | MCO Educational Series 10 | Class |
| Redhead,Roger | 110490 | MCO Educational Series 10 | Class |
| Keel,Melody | 110490 | MCO Educational Series 10 | Class |
| DeCarlo,Stephen | 110490 | MCO Educational Series 10 | Class |
| Jones,Francis | 110490 | MCO Educational Series 10 | Class |
| Westlund,Jessica Ann | 110490 | MCO Educational Series 10 | Class |
| Davis,Clarise | 110490 | MCO Educational Series 10 | Class |
| Ike,Kenny | 110490 | MCO Educational Series 10 | Class |
| Tirado-Bonilla,Andres Alexis | 110490 | MCO Educational Series 10 | Class |
| Madusanka,Nipuna Madusanka | 110490 | MCO Educational Series 10 | Class |
| Thomas,Carlita | 110490 | MCO Educational Series 10 | Class |
| Rinehart,Micky | 110490 | MCO Educational Series 10 | Class |
| Abeykoon,Udeni | 110490 | MCO Educational Series 10 | Class |
| Despiau,Nick | 110490 | MCO Educational Series 10 | Class |
| Sims,Danelle | 110490 | MCO Educational Series 10 | Class |
| Haylock,Nicole Aretha | 110490 | MCO Educational Series 10 | Class |
| Ford,Shakia | 110490 | MCO Educational Series 10 | Class |
| sanguinetti,michael | 110490 | MCO Educational Series 10 | Class |
| Baltazar Navarrete,Rocio | 110490 | MCO Educational Series 10 | Class |
| Ramos,Conrado | 110490 | MCO Educational Series 10 | Class |
| Green,Matthew | 110490 | MCO Educational Series 10 | Class |
| Cioffi,Pasquale | 110490 | MCO Educational Series 10 | Class |
| Eller,Maria | 110490 | MCO Educational Series 10 | Class |
| Anderson,Tykeem M | 110490 | MCO Educational Series 10 | Class |
| Eller,Andrew C | 110490 | MCO Educational Series 10 | Class |
| Liew,Alvin | 110490 | MCO Educational Series 10 | Class |
| Banneheke,Chameen S | 110490 | MCO Educational Series 10 | Class |
| Sciortino,Patrick | 110490 | MCO Educational Series 10 | Class |
| Kanzler,Jean | 110490 | MCO Educational Series 10 | Class |
| Saunders,Rohan | 110490 | MCO Educational Series 10 | Class |
| Miles,Leeniyah S | 110490 | MCO Educational Series 10 | Class |
| Jayawardena,Sachin S | 110490 | MCO Educational Series 10 | Class |
| Hardison,Shenel | 110490 | MCO Educational Series 10 | Class |
| Maldonado,Bryan | 110490 | MCO Educational Series 10 | Class |
| Hinton,Swaine | 110490 | MCO Educational Series 10 | Class |
| Adjei,Bismark Kwaku | 110490 | MCO Educational Series 10 | Class |
| MENSAH,DAVID | 110490 | MCO Educational Series 10 | Class |
| Domeus,Madai | 110490 | MCO Educational Series 10 | Class |
| Blount,Richard | 110490 | MCO Educational Series 10 | Class |
| Garricks,Laurel | 110490 | MCO Educational Series 10 | Class |
| Perez,Lelissa Rafaela | 110490 | MCO Educational Series 10 | Class |
| Dunn,Lovell | 110490 | MCO Educational Series 10 | Class |
| Jimenez,Alanz | 110490 | MCO Educational Series 10 | Class |
| DIAZ,DOMINIQUE | 110490 | MCO Educational Series 10 | Class |
| Duffus,Kristina | 110490 | MCO Educational Series 10 | Class |
| Duffus,Kristina | 110490 | MCO Educational Series 10 | Class |
| Burns,Jared Brandon | 110490 | MCO Educational Series 10 | Class |

GC-35                                    x
EXHIBIT NO._____  RECEIVED _____ REJECTED _____

29-CA-280153 ET/AL                 Amazon.Com Svs, LLC
CASE NO _____ CASE NAME _____

118              09-20-2022        Barrington Moxie
NO OF PAGES _____ DATE: _____ REPORTER: _____

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lopez,Jonathan Bryce | 110490 | MCO Educational Series 10 | Class |
| Moctezuma,Victoria Mary | 110490 | MCO Educational Series 10 | Class |
| Daly,Adwyane | 110490 | MCO Educational Series 10 | Class |
| Kress,Kevin | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Diadina | 110490 | MCO Educational Series 10 | Class |
| Babb,Halle Nicole | 110490 | MCO Educational Series 10 | Class |
| Acosta,Wallington Alberto | 110490 | MCO Educational Series 10 | Class |
| Delacruz,Christian Jovanny | 110490 | MCO Educational Series 10 | Class |
| CAMPBELL,DOYEN | 110490 | MCO Educational Series 10 | Class |
| De Oliveira Francisco,Ruben F | 110490 | MCO Educational Series 10 | Class |
| Williams,Amerigo | 110490 | MCO Educational Series 10 | Class |
| Perez,Edwin Deadpool | 110490 | MCO Educational Series 10 | Class |
| Karliychuk,Iryna | 110490 | MCO Educational Series 10 | Class |
| Amos,Logan | 110490 | MCO Educational Series 10 | Class |
| Khalil,Maher | 110490 | MCO Educational Series 10 | Class |
| Mendenhall,Antoine James | 110490 | MCO Educational Series 10 | Class |
| Alam,Faisal Faisal | 110490 | MCO Educational Series 10 | Class |
| cardoso,jessica | 110490 | MCO Educational Series 10 | Class |
| Park,Robert | 110490 | MCO Educational Series 10 | Class |
| Shamku,Aida | 110490 | MCO Educational Series 10 | Class |
| Sherif,Masalan | 110490 | MCO Educational Series 10 | Class |
| Auyeung,Kam | 110490 | MCO Educational Series 10 | Class |
| Soteco,Vergel Gino | 110490 | MCO Educational Series 10 | Class |
| Yevdeyev,Yaakov | 110490 | MCO Educational Series 10 | Class |
| Coffey,Jessica Taylor | 110490 | MCO Educational Series 10 | Class |
| Oscar,Rodney | 110490 | MCO Educational Series 10 | Class |
| Nava,Javi | 110490 | MCO Educational Series 10 | Class |
| Bynoe,Sean | 110490 | MCO Educational Series 10 | Class |
| Wegener,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Bolanos,Alberto | 110490 | MCO Educational Series 10 | Class |
| lapinska,marta | 110490 | MCO Educational Series 10 | Class |
| Mendez,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Mendez,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Molina,Leonel A | 110490 | MCO Educational Series 10 | Class |
| Lawrence,Raymond | 110490 | MCO Educational Series 10 | Class |
| Dorsey,Dasir Khidar | 110490 | MCO Educational Series 10 | Class |
| Zaalman,Deborah | 110490 | MCO Educational Series 10 | Class |
| NISAR,Hassan | 110490 | MCO Educational Series 10 | Class |
| Miller,Brianna | 110490 | MCO Educational Series 10 | Class |
| Rivers,Izaiah | 110490 | MCO Educational Series 10 | Class |
| Brun,Emilio | 110490 | MCO Educational Series 10 | Class |
| jules charles,louna | 110490 | MCO Educational Series 10 | Class |
| Duncan,Tammy | 110490 | MCO Educational Series 10 | Class |
| Valentin,Yolanda | 110490 | MCO Educational Series 10 | Class |
| Howell,Shennel | 110490 | MCO Educational Series 10 | Class |
| Howell,Shennel | 110490 | MCO Educational Series 10 | Class |
| amazan,joseph Renard | 110490 | MCO Educational Series 10 | Class |
| Green,Demetria | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Fulmore,Henry | 110490 | MCO Educational Series 10 | Class |
| Banker,Nirav | 110490 | MCO Educational Series 10 | Class |
| Rebecca,Joancy | 110490 | MCO Educational Series 10 | Class |
| Feliciano,Justyn | 110490 | MCO Educational Series 10 | Class |
| Lugo-mora,Maria A | 110490 | MCO Educational Series 10 | Class |
| coromina,judy | 110490 | MCO Educational Series 10 | Class |
| Sepulveda,Barry | 110490 | MCO Educational Series 10 | Class |
| Fletcher Lawal,Faridah | 110490 | MCO Educational Series 10 | Class |
| Melendez,Isaiah | 110490 | MCO Educational Series 10 | Class |
| Ali,Tae | 110490 | MCO Educational Series 10 | Class |
| Itanola,Abiodun | 110490 | MCO Educational Series 10 | Class |
| pompeo,marc | 110490 | MCO Educational Series 10 | Class |
| Pettiford,Shalaka V | 110490 | MCO Educational Series 10 | Class |
| Pettiford,Shalaka V | 110490 | MCO Educational Series 10 | Class |
| Pettiford,Shalaka V | 110490 | MCO Educational Series 10 | Class |
| Maniscalco,Michael | 110490 | MCO Educational Series 10 | Class |
| Janjua,Ayesha | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Robi Joulaus | 110490 | MCO Educational Series 10 | Class |
| Rincon,Yefri | 110490 | MCO Educational Series 10 | Class |
| Zavala,Alvaro | 110490 | MCO Educational Series 10 | Class |
| Chillis,ChillB | 110490 | MCO Educational Series 10 | Class |
| SAHEED,ALLI | 110490 | MCO Educational Series 10 | Class |
| Laing,Mikael | 110490 | MCO Educational Series 10 | Class |
| Benoit,Jean-Joseph | 110490 | MCO Educational Series 10 | Class |
| Benoit,Jean-Joseph | 110490 | MCO Educational Series 10 | Class |
| Cedeno,Gabriella | 110490 | MCO Educational Series 10 | Class |
| Peh,Shelley Laifong | 110490 | MCO Educational Series 10 | Class |
| CAMPBELL,DARYLANN P | 110490 | MCO Educational Series 10 | Class |
| Sinclair,Kitt-Carson | 110490 | MCO Educational Series 10 | Class |
| Mostafa,Ahmed | 110490 | MCO Educational Series 10 | Class |
| Mostafa,Ahmed | 110490 | MCO Educational Series 10 | Class |
| Caballero,victor | 110490 | MCO Educational Series 10 | Class |
| Lai,Mike | 110490 | MCO Educational Series 10 | Class |
| Savary,Glorell | 110490 | MCO Educational Series 10 | Class |
| Kinard,Yuhurn Dion | 110490 | MCO Educational Series 10 | Class |
| Belmonte,Marisa Anne | 110490 | MCO Educational Series 10 | Class |
| Kragbe,Bogui | 110490 | MCO Educational Series 10 | Class |
| Smoak,Samuel R | 110490 | MCO Educational Series 10 | Class |
| Medina,Christopher Henry | 110490 | MCO Educational Series 10 | Class |
| Lopez,Michael h | 110490 | MCO Educational Series 10 | Class |
| Distefano,Robert Vincent | 110490 | MCO Educational Series 10 | Class |
| eminowon,rose | 110490 | MCO Educational Series 10 | Class |
| Coleman,waketa D | 110490 | MCO Educational Series 10 | Class |
| Alvarez,Miguel Oscar | 110490 | MCO Educational Series 10 | Class |
| Ramos,Anthony | 110490 | MCO Educational Series 10 | Class |
| Paz,Lourdes | 110490 | MCO Educational Series 10 | Class |
| Rosario,Yudelka | 110490 | MCO Educational Series 10 | Class |
| Luc,Ray | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gonzalez,Richard | 110490 | MCO Educational Series 10 | Class |
| Pincay,Laura | 110490 | MCO Educational Series 10 | Class |
| Benhachemi,Mohamed | 110490 | MCO Educational Series 10 | Class |
| alkali,simon | 110490 | MCO Educational Series 10 | Class |
| Saladino,Alex | 110490 | MCO Educational Series 10 | Class |
| Martin,Raymond | 110490 | MCO Educational Series 10 | Class |
| Caccese,John | 110490 | MCO Educational Series 10 | Class |
| Tucker,Michael | 110490 | MCO Educational Series 10 | Class |
| Huerta,Javier | 110490 | MCO Educational Series 10 | Class |
| Huerta,Javier | 110490 | MCO Educational Series 10 | Class |
| Lartey,Evans | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Rafael | 110490 | MCO Educational Series 10 | Class |
| Simmons,Steven | 110490 | MCO Educational Series 10 | Class |
| Bailey,Thaddeus | 110490 | MCO Educational Series 10 | Class |
| Odenore,Joshua | 110490 | MCO Educational Series 10 | Class |
| Odenore,Joshua | 110490 | MCO Educational Series 10 | Class |
| Odenore,Joshua | 110490 | MCO Educational Series 10 | Class |
| Rasool,Rahma | 110490 | MCO Educational Series 10 | Class |
| Rasool,Rahma | 110490 | MCO Educational Series 10 | Class |
| Miranda,Michael | 110490 | MCO Educational Series 10 | Class |
| Okeowo,Samuel Adebanjo | 110490 | MCO Educational Series 10 | Class |
| Vidals,Richard | 110490 | MCO Educational Series 10 | Class |
| Samios,Konstantine | 110490 | MCO Educational Series 10 | Class |
| Salazar,Diana | 110490 | MCO Educational Series 10 | Class |
| Johnson,Ryan | 110490 | MCO Educational Series 10 | Class |
| Mack,Haysha | 110490 | MCO Educational Series 10 | Class |
| Rosado,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Rivera,Christina M | 110490 | MCO Educational Series 10 | Class |
| Ratnavasagam,Muralitharan Murali | 110490 | MCO Educational Series 10 | Class |
| Pinkard,Lynn | 110490 | MCO Educational Series 10 | Class |
| Bonilla,Jemy | 110490 | MCO Educational Series 10 | Class |
| Rosenblum,Matthew L | 110490 | MCO Educational Series 10 | Class |
| Harris,Mark | 110490 | MCO Educational Series 10 | Class |
| Cocozza,Sean | 110490 | MCO Educational Series 10 | Class |
| Anderson,Willie | 110490 | MCO Educational Series 10 | Class |
| Jackson,Trinity | 110490 | MCO Educational Series 10 | Class |
| Ortega,P Polo | 110490 | MCO Educational Series 10 | Class |
| March,Wayne | 110490 | MCO Educational Series 10 | Class |
| Rochester,Olive Rose | 110490 | MCO Educational Series 10 | Class |
| Johnson,Gary | 110490 | MCO Educational Series 10 | Class |
| Ross,Gordon | 110490 | MCO Educational Series 10 | Class |
| hernandez,jose amado | 110490 | MCO Educational Series 10 | Class |
| Dekkaki,Tarek | 110490 | MCO Educational Series 10 | Class |
| hickey,thomas | 110490 | MCO Educational Series 10 | Class |
| hickey,thomas | 110490 | MCO Educational Series 10 | Class |
| Brown,Michael | 110490 | MCO Educational Series 10 | Class |
| Nelson,Brianna Lynn | 110490 | MCO Educational Series 10 | Class |
| Mohamad,Omar | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| OSIYEMI,OSIBAYO | 110490 | MCO Educational Series 10 | Class |
| Charpentier,Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Obeng Boateng,Laud | 110490 | MCO Educational Series 10 | Class |
| Rivera,Vicki | 110490 | MCO Educational Series 10 | Class |
| Oyegunle,Ademola O | 110490 | MCO Educational Series 10 | Class |
| Tompkins,Desiree | 110490 | MCO Educational Series 10 | Class |
| Griggs,Willie | 110490 | MCO Educational Series 10 | Class |
| Hye,Matthew | 110490 | MCO Educational Series 10 | Class |
| Miller,Aishia | 110490 | MCO Educational Series 10 | Class |
| Vidals-Perez,Nancy | 110490 | MCO Educational Series 10 | Class |
| Perez,Alexander | 110490 | MCO Educational Series 10 | Class |
| Janjua,Amina | 110490 | MCO Educational Series 10 | Class |
| Higgins,Kawan | 110490 | MCO Educational Series 10 | Class |
| Ambrose,Joelisa | 110490 | MCO Educational Series 10 | Class |
| Ambrose,Joelisa | 110490 | MCO Educational Series 10 | Class |
| Sargeant,Keymani | 110490 | MCO Educational Series 10 | Class |
| Henriquez,Amanda | 110490 | MCO Educational Series 10 | Class |
| Alexander,Latisha | 110490 | MCO Educational Series 10 | Class |
| Collymore,Herman | 110490 | MCO Educational Series 10 | Class |
| Li,Jose Antonio | 110490 | MCO Educational Series 10 | Class |
| De La Cruz,Ana M | 110490 | MCO Educational Series 10 | Class |
| taylor,tyrone dwight | 110490 | MCO Educational Series 10 | Class |
| taylor,tyrone dwight | 110490 | MCO Educational Series 10 | Class |
| Diaz,Mary | 110490 | MCO Educational Series 10 | Class |
| Azmy,Roumany | 110490 | MCO Educational Series 10 | Class |
| Martin,Dexter | 110490 | MCO Educational Series 10 | Class |
| Maitre,Turenne | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Luis | 110490 | MCO Educational Series 10 | Class |
| Dutan,Oscar | 110490 | MCO Educational Series 10 | Class |
| Silya,Saihou | 110490 | MCO Educational Series 10 | Class |
| Munoz,Rocio | 110490 | MCO Educational Series 10 | Class |
| Morris,Lesielle | 110490 | MCO Educational Series 10 | Class |
| Llivisaca,Alexander | 110490 | MCO Educational Series 10 | Class |
| Valois,Lester | 110490 | MCO Educational Series 10 | Class |
| Cedillo Martinez,Lucero | 110490 | MCO Educational Series 10 | Class |
| Lee,Yanis | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Alejandro | 110490 | MCO Educational Series 10 | Class |
| Perillo,Maximus | 110490 | MCO Educational Series 10 | Class |
| Glenn,Francine | 110490 | MCO Educational Series 10 | Class |
| vargas,marcos | 110490 | MCO Educational Series 10 | Class |
| Torres,Cristal | 110490 | MCO Educational Series 10 | Class |
| Dominguez,Asherree | 110490 | MCO Educational Series 10 | Class |
| Arcaro,Antonio | 110490 | MCO Educational Series 10 | Class |
| Tariq,Musarrat | 110490 | MCO Educational Series 10 | Class |
| Smith,Key K | 110490 | MCO Educational Series 10 | Class |
| Gomez,Cristian J | 110490 | MCO Educational Series 10 | Class |
| Valentine,Davia | 110490 | MCO Educational Series 10 | Class |
| Graves,Chuck | 110490 | MCO Educational Series 10 | Class |

Amazon_000250

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Carlson,Isaiah | 110490 | MCO Educational Series 10 | Class |
| Swann-Deleon,Keith | 110490 | MCO Educational Series 10 | Class |
| Burris,Edward | 110490 | MCO Educational Series 10 | Class |
| Okwuoha,Amanda | 110490 | MCO Educational Series 10 | Class |
| Florival,Melissa nehemie | 110490 | MCO Educational Series 10 | Class |
| Benedet,Joanna | 110490 | MCO Educational Series 10 | Class |
| Lalanne,Edwins | 110490 | MCO Educational Series 10 | Class |
| Vendrell,Glorimar | 110490 | MCO Educational Series 10 | Class |
| Haywood,Morissa | 110490 | MCO Educational Series 10 | Class |
| Best,Chris | 110490 | MCO Educational Series 10 | Class |
| Vialva-Hackney,Schlayna | 110490 | MCO Educational Series 10 | Class |
| Doumbia,Bazoumana | 110490 | MCO Educational Series 10 | Class |
| Tredici,Jody | 110490 | MCO Educational Series 10 | Class |
| Galletta,Liesl | 110490 | MCO Educational Series 10 | Class |
| Benoit,Yuliemmy | 110490 | MCO Educational Series 10 | Class |
| Diaz,Angel | 110490 | MCO Educational Series 10 | Class |
| ESTIME,Romane | 110490 | MCO Educational Series 10 | Class |
| Vazquez,Maria | 110490 | MCO Educational Series 10 | Class |
| Charlot,Samson | 110490 | MCO Educational Series 10 | Class |
| Charlot,Samson | 110490 | MCO Educational Series 10 | Class |
| bardales,lisbe | 110490 | MCO Educational Series 10 | Class |
| Ghebrial,Sherine | 110490 | MCO Educational Series 10 | Class |
| Olokunola,Ola | 110490 | MCO Educational Series 10 | Class |
| Bodden,Trevor | 110490 | MCO Educational Series 10 | Class |
| Ravonita,Ipuk | 110490 | MCO Educational Series 10 | Class |
| Chu,Lucy | 110490 | MCO Educational Series 10 | Class |
| iqbal,arif | 110490 | MCO Educational Series 10 | Class |
| Ellis,Shane | 110490 | MCO Educational Series 10 | Class |
| Ellis,Shane | 110490 | MCO Educational Series 10 | Class |
| Prince,Gwendolyn | 110490 | MCO Educational Series 10 | Class |
| Gerges,Kareem | 110490 | MCO Educational Series 10 | Class |
| Hamdan,Taha | 110490 | MCO Educational Series 10 | Class |
| Graves,Jamar | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Rel | 110490 | MCO Educational Series 10 | Class |
| amir,jahangir | 110490 | MCO Educational Series 10 | Class |
| Findley,Shara S | 110490 | MCO Educational Series 10 | Class |
| Garcia-Gutierrez,Fermin | 110490 | MCO Educational Series 10 | Class |
| Nunez,Evan | 110490 | MCO Educational Series 10 | Class |
| Kouris,Ellen John | 110490 | MCO Educational Series 10 | Class |
| Slade,Tamika | 110490 | MCO Educational Series 10 | Class |
| Tuttle,Carol A | 110490 | MCO Educational Series 10 | Class |
| Salomon,Lionel | 110490 | MCO Educational Series 10 | Class |
| Hedges,Allen | 110490 | MCO Educational Series 10 | Class |
| Castillo Pavia,Juan | 110490 | MCO Educational Series 10 | Class |
| garcia filpo,ismaury d | 110490 | MCO Educational Series 10 | Class |
| Benavidez,Miguel | 110490 | MCO Educational Series 10 | Class |
| Denoto,Rick A | 110490 | MCO Educational Series 10 | Class |
| Delicia-King,Sarah | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| King,Rauny moises | 110490 | MCO Educational Series 10 | Class |
| OKEREKE,BENSON CHIMEZIE | 110490 | MCO Educational Series 10 | Class |
| abdusi,herolina | 110490 | MCO Educational Series 10 | Class |
| Muthana,Nader | 110490 | MCO Educational Series 10 | Class |
| Musto,Peter | 110490 | MCO Educational Series 10 | Class |
| Robinson,Brendan | 110490 | MCO Educational Series 10 | Class |
| Beal,Remeeka | 110490 | MCO Educational Series 10 | Class |
| Kanevsky,Howard | 110490 | MCO Educational Series 10 | Class |
| Wah,Amos Konolaa | 110490 | MCO Educational Series 10 | Class |
| Jean Toussaint,Friedler | 110490 | MCO Educational Series 10 | Class |
| Rezil,Thaina | 110490 | MCO Educational Series 10 | Class |
| MartinezGarcia,Pedro | 110490 | MCO Educational Series 10 | Class |
| Holder,Shari | 110490 | MCO Educational Series 10 | Class |
| Devoll,Zane | 110490 | MCO Educational Series 10 | Class |
| Kristiansen,Angelica | 110490 | MCO Educational Series 10 | Class |
| Gill,Malik | 110490 | MCO Educational Series 10 | Class |
| Mitchell,Amaya | 110490 | MCO Educational Series 10 | Class |
| Waller,Michelle | 110490 | MCO Educational Series 10 | Class |
| Maldonado,Angelice | 110490 | MCO Educational Series 10 | Class |
| Himm,Rachel A | 110490 | MCO Educational Series 10 | Class |
| Williams,khadija | 110490 | MCO Educational Series 10 | Class |
| Adeniji,Lori?l | 110490 | MCO Educational Series 10 | Class |
| asprilla,rebekha | 110490 | MCO Educational Series 10 | Class |
| Martinez Diaz,Janet | 110490 | MCO Educational Series 10 | Class |
| Johnson,Hardwick | 110490 | MCO Educational Series 10 | Class |
| Lebron,Francis | 110490 | MCO Educational Series 10 | Class |
| Lobello,Kelly | 110490 | MCO Educational Series 10 | Class |
| French,Kasif | 110490 | MCO Educational Series 10 | Class |
| Shuffler,Sven Anthony | 110490 | MCO Educational Series 10 | Class |
| IROGO,Michel Olivier | 110490 | MCO Educational Series 10 | Class |
| Abdelreheem,Yousof | 110490 | MCO Educational Series 10 | Class |
| Abdelreheem,Yousof | 110490 | MCO Educational Series 10 | Class |
| Santana,Ebony Marie | 110490 | MCO Educational Series 10 | Class |
| Cousins,Destiny | 110490 | MCO Educational Series 10 | Class |
| Trzaskoma,Agnieszka | 110490 | MCO Educational Series 10 | Class |
| Buansi,Akwasi | 110490 | MCO Educational Series 10 | Class |
| Crespo,Manuela | 110490 | MCO Educational Series 10 | Class |
| Hairston,Jonathan Wavy | 110490 | MCO Educational Series 10 | Class |
| Haider,Faizan | 110490 | MCO Educational Series 10 | Class |
| Campbell,Deanna Syr?a | 110490 | MCO Educational Series 10 | Class |
| Carlo,Jalene | 110490 | MCO Educational Series 10 | Class |
| Lett,John | 110490 | MCO Educational Series 10 | Class |
| Voglezon,Dashawn | 110490 | MCO Educational Series 10 | Class |
| Henry,Christen | 110490 | MCO Educational Series 10 | Class |
| Saunders,Kevin | 110490 | MCO Educational Series 10 | Class |
| Elliott,Paul Andrew | 110490 | MCO Educational Series 10 | Class |
| Elder,Isaiah Christopher Jordan | 110490 | MCO Educational Series 10 | Class |
| James,Gregory Oswald | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Sanchez de Guzman,Saira | 110490 | MCO Educational Series 10 | Class |
| Ossman,Ahmed | 110490 | MCO Educational Series 10 | Class |
| Santero,Tabatha | 110490 | MCO Educational Series 10 | Class |
| Moncion,Alba | 110490 | MCO Educational Series 10 | Class |
| Abouhegab,Bryan | 110490 | MCO Educational Series 10 | Class |
| Yan-Gianna,Vivian | 110490 | MCO Educational Series 10 | Class |
| Peterson,Elisha | 110490 | MCO Educational Series 10 | Class |
| Hoo,Will | 110490 | MCO Educational Series 10 | Class |
| Brown,Estella F | 110490 | MCO Educational Series 10 | Class |
| Love,Cydkney | 110490 | MCO Educational Series 10 | Class |
| Mendoza Cruz,Janet | 110490 | MCO Educational Series 10 | Class |
| Pena Marte,Oscar Adolfo | 110490 | MCO Educational Series 10 | Class |
| Daniels,Dante | 110490 | MCO Educational Series 10 | Class |
| Johnson,Davon | 110490 | MCO Educational Series 10 | Class |
| Byrd,Kacia | 110490 | MCO Educational Series 10 | Class |
| Razk,Osama | 110490 | MCO Educational Series 10 | Class |
| Rasathurai,Sugathas | 110490 | MCO Educational Series 10 | Class |
| Sibera,Dinesha Sewwandi | 110490 | MCO Educational Series 10 | Class |
| Cohen,Matt | 110490 | MCO Educational Series 10 | Class |
| cupul,natalia e | 110490 | MCO Educational Series 10 | Class |
| cupul,natalia e | 110490 | MCO Educational Series 10 | Class |
| Nash,Lucille | 110490 | MCO Educational Series 10 | Class |
| Dervishaj,Ilirian | 110490 | MCO Educational Series 10 | Class |
| lucchese,joseph | 110490 | MCO Educational Series 10 | Class |
| DOMINGUEZ MENDOZA,ISMAEL | 110490 | MCO Educational Series 10 | Class |
| Racanello,Sirisak | 110490 | MCO Educational Series 10 | Class |
| Williams,Carmen | 110490 | MCO Educational Series 10 | Class |
| Ortega,Evelin | 110490 | MCO Educational Series 10 | Class |
| Pino,Alexis | 110490 | MCO Educational Series 10 | Class |
| Brar,Ilene | 110490 | MCO Educational Series 10 | Class |
| Heaven,Heaven | 110490 | MCO Educational Series 10 | Class |
| felix,kaylani | 110490 | MCO Educational Series 10 | Class |
| Roberts,Jordan Devon | 110490 | MCO Educational Series 10 | Class |
| Eloiymania,Megie | 110490 | MCO Educational Series 10 | Class |
| Costello,Tim | 110490 | MCO Educational Series 10 | Class |
| Lara Montalvo,Sonia | 110490 | MCO Educational Series 10 | Class |
| Comeforo,Joseph D | 110490 | MCO Educational Series 10 | Class |
| BONOLA RIVERA,VERONICA | 110490 | MCO Educational Series 10 | Class |
| Farina,Jennifer | 110490 | MCO Educational Series 10 | Class |
| Gonzales,Mae | 110490 | MCO Educational Series 10 | Class |
| Francis,Jocelyn | 110490 | MCO Educational Series 10 | Class |
| Frederick,Sylvie | 110490 | MCO Educational Series 10 | Class |
| Jasper,Rodwayne | 110490 | MCO Educational Series 10 | Class |
| Nicholson,Paris | 110490 | MCO Educational Series 10 | Class |
| Cashie,Gino | 110490 | MCO Educational Series 10 | Class |
| Dickerson,Gregory A | 110490 | MCO Educational Series 10 | Class |
| Demetrius,Alidia Bionca | 110490 | MCO Educational Series 10 | Class |
| dieng,babacar | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Hassan,Mona AbdElzaher | 110490 | MCO Educational Series 10 | Class |
| sosa,Wendy | 110490 | MCO Educational Series 10 | Class |
| Patel,Mit | 110490 | MCO Educational Series 10 | Class |
| Delancy,Kymmyka | 110490 | MCO Educational Series 10 | Class |
| Castillo,Nadine | 110490 | MCO Educational Series 10 | Class |
| Kariche,Abdelmalek | 110490 | MCO Educational Series 10 | Class |
| Khamis,Mohamed | 110490 | MCO Educational Series 10 | Class |
| Navarro,Snnyase Anaid | 110490 | MCO Educational Series 10 | Class |
| adeniran adegoke,moriamo victoria | 110490 | MCO Educational Series 10 | Class |
| Lopez,Pablo Luis | 110490 | MCO Educational Series 10 | Class |
| Albasir,Yousef | 110490 | MCO Educational Series 10 | Class |
| Gil,Erica Liliana | 110490 | MCO Educational Series 10 | Class |
| Amoah Yartey,Jaazmeen N | 110490 | MCO Educational Series 10 | Class |
| Byam,Letish | 110490 | MCO Educational Series 10 | Class |
| Foster,Nakeeyia | 110490 | MCO Educational Series 10 | Class |
| Fowler,Shawnetta | 110490 | MCO Educational Series 10 | Class |
| Noze,Magda | 110490 | MCO Educational Series 10 | Class |
| Laona,Anthony | 110490 | MCO Educational Series 10 | Class |
| Usman,Raja | 110490 | MCO Educational Series 10 | Class |
| Martinez,Anthony | 110490 | MCO Educational Series 10 | Class |
| Ginzburg,Maxim | 110490 | MCO Educational Series 10 | Class |
| Savateri,Regina | 110490 | MCO Educational Series 10 | Class |
| Savateri,Regina | 110490 | MCO Educational Series 10 | Class |
| Ambaiowei,Tunumubofa Segu | 110490 | MCO Educational Series 10 | Class |
| Orellana,Marissa | 110490 | MCO Educational Series 10 | Class |
| Przybyszewski,Danielle | 110490 | MCO Educational Series 10 | Class |
| Valdes Jimenez,Kevin | 110490 | MCO Educational Series 10 | Class |
| Brown,Reggie | 110490 | MCO Educational Series 10 | Class |
| Held,Cori | 110490 | MCO Educational Series 10 | Class |
| Olivares,Alex Paul | 110490 | MCO Educational Series 10 | Class |
| Reyna,Luis | 110490 | MCO Educational Series 10 | Class |
| Sciacchetano,Steven | 110490 | MCO Educational Series 10 | Class |
| Muruye,Gilbert | 110490 | MCO Educational Series 10 | Class |
| Fortuna,Jose | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Karina Karina | 110490 | MCO Educational Series 10 | Class |
| Candelario,Samuel | 110490 | MCO Educational Series 10 | Class |
| Ramsey,Richard Paul | 110490 | MCO Educational Series 10 | Class |
| Pacheco,Carmen | 110490 | MCO Educational Series 10 | Class |
| STEWART,ISAIAH | 110490 | MCO Educational Series 10 | Class |
| Estevez,Eduardo | 110490 | MCO Educational Series 10 | Class |
| Worme,terrell | 110490 | MCO Educational Series 10 | Class |
| Hettiarachchige Don,Pulasthi Pasan Hettiarachchi | 110490 | MCO Educational Series 10 | Class |
| Ferril,Rakeem | 110490 | MCO Educational Series 10 | Class |
| Farley,Yazmin | 110490 | MCO Educational Series 10 | Class |
| Kalo,Maria | 110490 | MCO Educational Series 10 | Class |
| Di Stefano,John C | 110490 | MCO Educational Series 10 | Class |
| Ogunbiyi,Dayo | 110490 | MCO Educational Series 10 | Class |
| Jean pierre,Jacques | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Paloli,Gary | 110490 | MCO Educational Series 10 | Class |
| Morocho,Michael | 110490 | MCO Educational Series 10 | Class |
| Nelson,Ryan | 110490 | MCO Educational Series 10 | Class |
| Wassif,Jessica | 110490 | MCO Educational Series 10 | Class |
| stanchich,linette | 110490 | MCO Educational Series 10 | Class |
| Hoey,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Roberts,Aujanae | 110490 | MCO Educational Series 10 | Class |
| Wylie,Felicia | 110490 | MCO Educational Series 10 | Class |
| Ramirez,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Acevedo,Virginia R | 110490 | MCO Educational Series 10 | Class |
| Acevedo,Virginia R | 110490 | MCO Educational Series 10 | Class |
| Walker,Trish | 110490 | MCO Educational Series 10 | Class |
| peralta,Julio | 110490 | MCO Educational Series 10 | Class |
| Husain,Tahir | 110490 | MCO Educational Series 10 | Class |
| Fuller,Dmari | 110490 | MCO Educational Series 10 | Class |
| Alonso,Noel | 110490 | MCO Educational Series 10 | Class |
| Soyelu Aro,Folarin | 110490 | MCO Educational Series 10 | Class |
| Tan,Yan | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Johnny | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Karoliyn | 110490 | MCO Educational Series 10 | Class |
| Kerr,Jaydontae | 110490 | MCO Educational Series 10 | Class |
| Burrja,Jurzan | 110490 | MCO Educational Series 10 | Class |
| Perard,Stanley | 110490 | MCO Educational Series 10 | Class |
| Poole,Keyshawn | 110490 | MCO Educational Series 10 | Class |
| Manu,Monica | 110490 | MCO Educational Series 10 | Class |
| Wann,Hadiatou | 110490 | MCO Educational Series 10 | Class |
| Noisette,Alexandra | 110490 | MCO Educational Series 10 | Class |
| Konate,Mona | 110490 | MCO Educational Series 10 | Class |
| Chen,Huanhua | 110490 | MCO Educational Series 10 | Class |
| Atkinson,Kayla | 110490 | MCO Educational Series 10 | Class |
| White,Zachary | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Luis Roberto | 110490 | MCO Educational Series 10 | Class |
| Watson,Noel | 110490 | MCO Educational Series 10 | Class |
| Au,Kai Ho | 110490 | MCO Educational Series 10 | Class |
| Melvin,Tasha | 110490 | MCO Educational Series 10 | Class |
| Terranova,Joseph | 110490 | MCO Educational Series 10 | Class |
| McCain,Robert | 110490 | MCO Educational Series 10 | Class |
| Leggett,Jared | 110490 | MCO Educational Series 10 | Class |
| ADOLPHE,WILBERT | 110490 | MCO Educational Series 10 | Class |
| Scott,Melshawn J | 110490 | MCO Educational Series 10 | Class |
| Hoggin,Alba | 110490 | MCO Educational Series 10 | Class |
| Diaz,Chantal | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Celia | 110490 | MCO Educational Series 10 | Class |
| Peralta,Esther | 110490 | MCO Educational Series 10 | Class |
| Yang,Andrew K | 110490 | MCO Educational Series 10 | Class |
| Walker,Tyrone | 110490 | MCO Educational Series 10 | Class |
| Stith,Maliek Ali | 110490 | MCO Educational Series 10 | Class |
| Ludena,Maria I | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Cortez,Daniel | 110490 | MCO Educational Series 10 | Class |
| nwaikpo,anthony | 110490 | MCO Educational Series 10 | Class |
| Santiago,miracle | 110490 | MCO Educational Series 10 | Class |
| Ambroise,Coucheny | 110490 | MCO Educational Series 10 | Class |
| Cobb,Jacqueline | 110490 | MCO Educational Series 10 | Class |
| Nettles,Lorando | 110490 | MCO Educational Series 10 | Class |
| Everett,Precious | 110490 | MCO Educational Series 10 | Class |
| Peterson,Derrick | 110490 | MCO Educational Series 10 | Class |
| Jaramillo,Rachael | 110490 | MCO Educational Series 10 | Class |
| Edwards-el,Ronald | 110490 | MCO Educational Series 10 | Class |
| Jackson,Faheem | 110490 | MCO Educational Series 10 | Class |
| Munasinghe,Nethmi | 110490 | MCO Educational Series 10 | Class |
| Diaz,Sofia | 110490 | MCO Educational Series 10 | Class |
| Ishan harsha,Hundun kutti hettige don | 110490 | MCO Educational Series 10 | Class |
| Smith,Brandon | 110490 | MCO Educational Series 10 | Class |
| BUNTIN,SALENA | 110490 | MCO Educational Series 10 | Class |
| Roperos,Jennifer | 110490 | MCO Educational Series 10 | Class |
| sanchez,john | 110490 | MCO Educational Series 10 | Class |
| Werts,Renee | 110490 | MCO Educational Series 10 | Class |
| Llaque,Israel | 110490 | MCO Educational Series 10 | Class |
| ladipo,oluwatoyin Aduragbemi | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Dennis | 110490 | MCO Educational Series 10 | Class |
| Kippings,Ricardo C | 110490 | MCO Educational Series 10 | Class |
| Kombila Ebotsi,Cedy Lewis | 110490 | MCO Educational Series 10 | Class |
| Mitchell,Miriam | 110490 | MCO Educational Series 10 | Class |
| Peters,Lekiyrah | 110490 | MCO Educational Series 10 | Class |
| Peters,Lekiyrah | 110490 | MCO Educational Series 10 | Class |
| Thompson,Niye Heaven | 110490 | MCO Educational Series 10 | Class |
| Mehany,Shenoda | 110490 | MCO Educational Series 10 | Class |
| Mehany,Shenoda | 110490 | MCO Educational Series 10 | Class |
| Olushesi,Tawakalitu | 110490 | MCO Educational Series 10 | Class |
| Santana Santos,Andry | 110490 | MCO Educational Series 10 | Class |
| Munoz,Katherine Katherine | 110490 | MCO Educational Series 10 | Class |
| Crapps,Autumn | 110490 | MCO Educational Series 10 | Class |
| Crapps,Autumn | 110490 | MCO Educational Series 10 | Class |
| Murillo,Yeny | 110490 | MCO Educational Series 10 | Class |
| Connor,Francis | 110490 | MCO Educational Series 10 | Class |
| Knowles,Malaysia | 110490 | MCO Educational Series 10 | Class |
| Knowles,Malaysia | 110490 | MCO Educational Series 10 | Class |
| Henao Duque,Soranny Andrea | 110490 | MCO Educational Series 10 | Class |
| Wilson,Shakima | 110490 | MCO Educational Series 10 | Class |
| Dabija,Vadim | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Dayse | 110490 | MCO Educational Series 10 | Class |
| ruci,ibrahim | 110490 | MCO Educational Series 10 | Class |
| Miller,Dwayne | 110490 | MCO Educational Series 10 | Class |
| Lugo,Joel | 110490 | MCO Educational Series 10 | Class |
| estevez,jorge | 110490 | MCO Educational Series 10 | Class |
| Aloysius,Celine | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gamarra,Paola | 110490 | MCO Educational Series 10 | Class |
| Gamarra,Paola | 110490 | MCO Educational Series 10 | Class |
| Gamarra,Paola | 110490 | MCO Educational Series 10 | Class |
| Oliveras,Reinaldo sr | 110490 | MCO Educational Series 10 | Class |
| Olayinka,Isaac | 110490 | MCO Educational Series 10 | Class |
| Guadarrama,Paula Andrea | 110490 | MCO Educational Series 10 | Class |
| Woo,Jae Woo | 110490 | MCO Educational Series 10 | Class |
| Hutchinson,Joeann | 110490 | MCO Educational Series 10 | Class |
| Torres,Christopher | 110490 | MCO Educational Series 10 | Class |
| Wilkinson,John | 110490 | MCO Educational Series 10 | Class |
| Olea,Joceline | 110490 | MCO Educational Series 10 | Class |
| Brooks owen,Patricia | 110490 | MCO Educational Series 10 | Class |
| Adeoye,Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Malcolm,Dwaine | 110490 | MCO Educational Series 10 | Class |
| Wright,Doran Edward | 110490 | MCO Educational Series 10 | Class |
| Nieves,Samuel Angel | 110490 | MCO Educational Series 10 | Class |
| Sholaja,OLUWADAMILOLA Oluwaseun | 110490 | MCO Educational Series 10 | Class |
| Licaj,Kastriot | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Damien | 110490 | MCO Educational Series 10 | Class |
| Powell,Peter | 110490 | MCO Educational Series 10 | Class |
| Henriquez De Crooke,Maria Altagracia | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Iyana | 110490 | MCO Educational Series 10 | Class |
| Almazo,Fernando | 110490 | MCO Educational Series 10 | Class |
| WoolfordDrakes,Danielle | 110490 | MCO Educational Series 10 | Class |
| Ramos,Ivan | 110490 | MCO Educational Series 10 | Class |
| Efraim,Erica Ann | 110490 | MCO Educational Series 10 | Class |
| Chango,Bryan | 110490 | MCO Educational Series 10 | Class |
| Ebigbo,Emeka S | 110490 | MCO Educational Series 10 | Class |
| Yasig,Maria | 110490 | MCO Educational Series 10 | Class |
| Connor,Jamal | 110490 | MCO Educational Series 10 | Class |
| Cantave,Marshall | 110490 | MCO Educational Series 10 | Class |
| Santapau,Christine | 110490 | MCO Educational Series 10 | Class |
| Fonseca,Steven Alonso | 110490 | MCO Educational Series 10 | Class |
| Sunair,Amna | 110490 | MCO Educational Series 10 | Class |
| Alsmadi,Mustafa | 110490 | MCO Educational Series 10 | Class |
| Vazquez,Nancy | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Jordany | 110490 | MCO Educational Series 10 | Class |
| Smith,Jennifer | 110490 | MCO Educational Series 10 | Class |
| rivera,dangelo | 110490 | MCO Educational Series 10 | Class |
| Stallings,Redrika | 110490 | MCO Educational Series 10 | Class |
| Pallani,Artur | 110490 | MCO Educational Series 10 | Class |
| Moulterie,Craig | 110490 | MCO Educational Series 10 | Class |
| Molina,Joseph | 110490 | MCO Educational Series 10 | Class |
| Abdul-Mateen,Bryanna Courtney | 110490 | MCO Educational Series 10 | Class |
| Lloyd,Daquan | 110490 | MCO Educational Series 10 | Class |
| McCarthy,Mark | 110490 | MCO Educational Series 10 | Class |
| mason,rondu | 110490 | MCO Educational Series 10 | Class |
| Cambrelen,Abraham | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Arika,Abdelhamid | 110490 | MCO Educational Series 10 | Class |
| Mema,Dawnmarie | 110490 | MCO Educational Series 10 | Class |
| Gazzillo,Nicholas Philip | 110490 | MCO Educational Series 10 | Class |
| Jones,Jerwayne | 110490 | MCO Educational Series 10 | Class |
| Munoz,Laura | 110490 | MCO Educational Series 10 | Class |
| Olmos,Evelio | 110490 | MCO Educational Series 10 | Class |
| Jordan,Olabisi | 110490 | MCO Educational Series 10 | Class |
| Shearin,Jaylee Marie | 110490 | MCO Educational Series 10 | Class |
| Louis,Richard | 110490 | MCO Educational Series 10 | Class |
| Mendoza,Cassio | 110490 | MCO Educational Series 10 | Class |
| Thomas,Kysandra | 110490 | MCO Educational Series 10 | Class |
| Cruz,Carlos | 110490 | MCO Educational Series 10 | Class |
| Hemmingstad,Charles | 110490 | MCO Educational Series 10 | Class |
| Velandres,Louis eros | 110490 | MCO Educational Series 10 | Class |
| Castillo,Jesus | 110490 | MCO Educational Series 10 | Class |
| Enemoh,Innocent | 110490 | MCO Educational Series 10 | Class |
| Mounier,David | 110490 | MCO Educational Series 10 | Class |
| Walker,Myron | 110490 | MCO Educational Series 10 | Class |
| Matthew,Jacklyn | 110490 | MCO Educational Series 10 | Class |
| Zahid,Nabeela | 110490 | MCO Educational Series 10 | Class |
| Zahid,Nabeela | 110490 | MCO Educational Series 10 | Class |
| GriggsHorlback,Ayanna | 110490 | MCO Educational Series 10 | Class |
| Padmore,Richard | 110490 | MCO Educational Series 10 | Class |
| Lyons,Shaquan | 110490 | MCO Educational Series 10 | Class |
| Castro,Emily | 110490 | MCO Educational Series 10 | Class |
| Boukhssibi,Rachid | 110490 | MCO Educational Series 10 | Class |
| Wilson,Tyrone | 110490 | MCO Educational Series 10 | Class |
| Aung,Hein H | 110490 | MCO Educational Series 10 | Class |
| Douglas,Brian | 110490 | MCO Educational Series 10 | Class |
| Riddick,Ethan | 110490 | MCO Educational Series 10 | Class |
| Perez Justo,Chelsea | 110490 | MCO Educational Series 10 | Class |
| Pelaketiya Hewage,Pamal Manjitha | 110490 | MCO Educational Series 10 | Class |
| Wells,Derek L | 110490 | MCO Educational Series 10 | Class |
| Wright,Javoni | 110490 | MCO Educational Series 10 | Class |
| Accra,Joshua | 110490 | MCO Educational Series 10 | Class |
| Della Rocca,Salvatore | 110490 | MCO Educational Series 10 | Class |
| Papalotzi,Edwin | 110490 | MCO Educational Series 10 | Class |
| haynes,jeanic | 110490 | MCO Educational Series 10 | Class |
| haynes,jeanic | 110490 | MCO Educational Series 10 | Class |
| Kaur,Amandeep | 110490 | MCO Educational Series 10 | Class |
| Aguilar,Walter | 110490 | MCO Educational Series 10 | Class |
| Robinson,Evelyn | 110490 | MCO Educational Series 10 | Class |
| hickey,matthew p | 110490 | MCO Educational Series 10 | Class |
| hickey,matthew p | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Carlos | 110490 | MCO Educational Series 10 | Class |
| Scarlett,Errol | 110490 | MCO Educational Series 10 | Class |
| Scarlett,Errol | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Jared Reinaldo | 110490 | MCO Educational Series 10 | Class |

Amazon_000258

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Sloan,Dominique | 110490 | MCO Educational Series 10 | Class |
| Morton,Aaron | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Jason | 110490 | MCO Educational Series 10 | Class |
| Nickels,George | 110490 | MCO Educational Series 10 | Class |
| Scherman,Rob | 110490 | MCO Educational Series 10 | Class |
| Felder,Keywan | 110490 | MCO Educational Series 10 | Class |
| Flores,Alexis | 110490 | MCO Educational Series 10 | Class |
| Blake,Akil | 110490 | MCO Educational Series 10 | Class |
| Pineda,Georgina | 110490 | MCO Educational Series 10 | Class |
| Ortega,Azhante | 110490 | MCO Educational Series 10 | Class |
| Greene,Norris | 110490 | MCO Educational Series 10 | Class |
| Taylor,Daniel | 110490 | MCO Educational Series 10 | Class |
| Suriel,Joshua | 110490 | MCO Educational Series 10 | Class |
| Fernando,Kumarawatthage Dinali | 110490 | MCO Educational Series 10 | Class |
| Adebiyi,Mistura Omotoyosi | 110490 | MCO Educational Series 10 | Class |
| Oneill,margaret | 110490 | MCO Educational Series 10 | Class |
| jimenez,craig | 110490 | MCO Educational Series 10 | Class |
| Thompson,Yessenia P | 110490 | MCO Educational Series 10 | Class |
| Tanchez,Beatriz | 110490 | MCO Educational Series 10 | Class |
| Sam,John | 110490 | MCO Educational Series 10 | Class |
| Anyama,Kenneth | 110490 | MCO Educational Series 10 | Class |
| Chavry,jefferson | 110490 | MCO Educational Series 10 | Class |
| Tabay,James | 110490 | MCO Educational Series 10 | Class |
| huang,Jay | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Clarice | 110490 | MCO Educational Series 10 | Class |
| StJulien,Makendie | 110490 | MCO Educational Series 10 | Class |
| lopez-salcido,Vanessa | 110490 | MCO Educational Series 10 | Class |
| Rosado,Zacariah Manuel | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Eli S | 110490 | MCO Educational Series 10 | Class |
| Rexach,Jovette | 110490 | MCO Educational Series 10 | Class |
| jackson,stephanie | 110490 | MCO Educational Series 10 | Class |
| Winston,Misha J | 110490 | MCO Educational Series 10 | Class |
| Morales,Anthony | 110490 | MCO Educational Series 10 | Class |
| Robinson,Douglas | 110490 | MCO Educational Series 10 | Class |
| HE,SiYan | 110490 | MCO Educational Series 10 | Class |
| Cross,Andre | 110490 | MCO Educational Series 10 | Class |
| Moreno,Kerlin | 110490 | MCO Educational Series 10 | Class |
| Henderson,Jazaih | 110490 | MCO Educational Series 10 | Class |
| Williams,Shamekia Renniqka | 110490 | MCO Educational Series 10 | Class |
| Adorno,Carlos | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Bryan | 110490 | MCO Educational Series 10 | Class |
| Maduba,Nonso | 110490 | MCO Educational Series 10 | Class |
| plasencia,marita | 110490 | MCO Educational Series 10 | Class |
| calagui,jerwin ramos | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Rogelio | 110490 | MCO Educational Series 10 | Class |
| Glover,Tanya A | 110490 | MCO Educational Series 10 | Class |
| Matheny,Maliek | 110490 | MCO Educational Series 10 | Class |
| welbeck,Odatefio | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Tolentino,Noel Gabriel | 110490 | MCO Educational Series 10 | Class |
| Asiedu,ivy | 110490 | MCO Educational Series 10 | Class |
| Coulibaly,Kadiatou | 110490 | MCO Educational Series 10 | Class |
| tapper,anthony | 110490 | MCO Educational Series 10 | Class |
| Matzel,Karen | 110490 | MCO Educational Series 10 | Class |
| Diagne,Sanghe | 110490 | MCO Educational Series 10 | Class |
| Fatogun,Oyeniyi | 110490 | MCO Educational Series 10 | Class |
| Altreche,Alexander | 110490 | MCO Educational Series 10 | Class |
| guaman,Evelyn | 110490 | MCO Educational Series 10 | Class |
| Delia,Katie | 110490 | MCO Educational Series 10 | Class |
| Vargas,Clarybel | 110490 | MCO Educational Series 10 | Class |
| Castillo,Abadesa L | 110490 | MCO Educational Series 10 | Class |
| Castellano,Robert Michael | 110490 | MCO Educational Series 10 | Class |
| Vera,Jeremy | 110490 | MCO Educational Series 10 | Class |
| Torres,Viktoria | 110490 | MCO Educational Series 10 | Class |
| Li,Michael Shun Cheung | 110490 | MCO Educational Series 10 | Class |
| Dyall,Amma Akua | 110490 | MCO Educational Series 10 | Class |
| Salerno,Caterina | 110490 | MCO Educational Series 10 | Class |
| Chamorro,Sergio D | 110490 | MCO Educational Series 10 | Class |
| Telford,Zola | 110490 | MCO Educational Series 10 | Class |
| Koulta,Hany | 110490 | MCO Educational Series 10 | Class |
| Hussain,Zafran | 110490 | MCO Educational Series 10 | Class |
| Middleton,Dietra | 110490 | MCO Educational Series 10 | Class |
| Adeyemo,Adebayo | 110490 | MCO Educational Series 10 | Class |
| Diep,Vi Kiet | 110490 | MCO Educational Series 10 | Class |
| Tan,Jian | 110490 | MCO Educational Series 10 | Class |
| Re,Eileen | 110490 | MCO Educational Series 10 | Class |
| Ellis,Anthony | 110490 | MCO Educational Series 10 | Class |
| Jerome,James | 110490 | MCO Educational Series 10 | Class |
| Walker,Corine | 110490 | MCO Educational Series 10 | Class |
| Taiwo,Eziaku Stella | 110490 | MCO Educational Series 10 | Class |
| Finkler,Dimitri | 110490 | MCO Educational Series 10 | Class |
| Jeanbaptiste,Peterson | 110490 | MCO Educational Series 10 | Class |
| Camejo-Coello,Liem | 110490 | MCO Educational Series 10 | Class |
| Shaffi,Aisha | 110490 | MCO Educational Series 10 | Class |
| Simmons,Khalique | 110490 | MCO Educational Series 10 | Class |
| Parchinsky,Joann M | 110490 | MCO Educational Series 10 | Class |
| Hyppolite,James | 110490 | MCO Educational Series 10 | Class |
| Vassell,Dwan R | 110490 | MCO Educational Series 10 | Class |
| Morissaint -Dorceus,Miguerlyne | 110490 | MCO Educational Series 10 | Class |
| Sallah,Kayi Dorcas | 110490 | MCO Educational Series 10 | Class |
| Awopeju,Esther | 110490 | MCO Educational Series 10 | Class |
| Hosang,Hason Phillip | 110490 | MCO Educational Series 10 | Class |
| Ulloa,Sade R | 110490 | MCO Educational Series 10 | Class |
| Irving,Andrew | 110490 | MCO Educational Series 10 | Class |
| Quinones,Cesar | 110490 | MCO Educational Series 10 | Class |
| Jackson,Walter | 110490 | MCO Educational Series 10 | Class |
| Wuttke,Jonathan | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Hasibo,Osama | 110490 | MCO Educational Series 10 | Class |
| Quinones,Edgar | 110490 | MCO Educational Series 10 | Class |
| Carranza,Jose | 110490 | MCO Educational Series 10 | Class |
| IVANITSKIY,Aleksey | 110490 | MCO Educational Series 10 | Class |
| bermudez,Eric | 110490 | MCO Educational Series 10 | Class |
| Brown,Jalani | 110490 | MCO Educational Series 10 | Class |
| Williams,Orlando | 110490 | MCO Educational Series 10 | Class |
| Charles,Marsha Kim | 110490 | MCO Educational Series 10 | Class |
| Vera,Jaime | 110490 | MCO Educational Series 10 | Class |
| Hass,Elida | 110490 | MCO Educational Series 10 | Class |
| Galvan,Heather | 110490 | MCO Educational Series 10 | Class |
| Varela,Jonathan Luis | 110490 | MCO Educational Series 10 | Class |
| Latif,Haroon | 110490 | MCO Educational Series 10 | Class |
| Campbell,Tira Daisy | 110490 | MCO Educational Series 10 | Class |
| Mejia,Jesus | 110490 | MCO Educational Series 10 | Class |
| Martinez,Andy | 110490 | MCO Educational Series 10 | Class |
| Valluzzi,Trisha | 110490 | MCO Educational Series 10 | Class |
| Revithas,Nicole | 110490 | MCO Educational Series 10 | Class |
| Griggs,Meghan | 110490 | MCO Educational Series 10 | Class |
| Lamas,Deomar | 110490 | MCO Educational Series 10 | Class |
| Cabrera,Juan Evangelista | 110490 | MCO Educational Series 10 | Class |
| Kamdem,Ivan Doris | 110490 | MCO Educational Series 10 | Class |
| Samuel,Livona Wendy | 110490 | MCO Educational Series 10 | Class |
| Jerome,Jabari | 110490 | MCO Educational Series 10 | Class |
| Jerome,Jabari | 110490 | MCO Educational Series 10 | Class |
| Reid,Andrea | 110490 | MCO Educational Series 10 | Class |
| Burns,Michael | 110490 | MCO Educational Series 10 | Class |
| Glenn,David | 110490 | MCO Educational Series 10 | Class |
| Boljevic,Arijeta | 110490 | MCO Educational Series 10 | Class |
| Omole,Olajumoke E | 110490 | MCO Educational Series 10 | Class |
| Maiello,Stephanie Taylor | 110490 | MCO Educational Series 10 | Class |
| Antenor,Rose | 110490 | MCO Educational Series 10 | Class |
| Soriano,Christian | 110490 | MCO Educational Series 10 | Class |
| Iacono,Tom | 110490 | MCO Educational Series 10 | Class |
| Soucy,Janelly | 110490 | MCO Educational Series 10 | Class |
| Ahmed,Daniyal | 110490 | MCO Educational Series 10 | Class |
| Martinez,Jane Evelyn | 110490 | MCO Educational Series 10 | Class |
| Zheng,David | 110490 | MCO Educational Series 10 | Class |
| Watts,Zachary S | 110490 | MCO Educational Series 10 | Class |
| Palafox,johana | 110490 | MCO Educational Series 10 | Class |
| Terry,William | 110490 | MCO Educational Series 10 | Class |
| Guzman Contreras,Rocio | 110490 | MCO Educational Series 10 | Class |
| Zaragoza,Juana | 110490 | MCO Educational Series 10 | Class |
| Cotton,Samantha | 110490 | MCO Educational Series 10 | Class |
| Brown,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Bowie,Nakia | 110490 | MCO Educational Series 10 | Class |
| Volpe,Matthew | 110490 | MCO Educational Series 10 | Class |
| Tate,Marvalyn | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| M,Phillip | 110490 | MCO Educational Series 10 | Class |
| Sallah,Isatou | 110490 | MCO Educational Series 10 | Class |
| Nazario Correa,Christian | 110490 | MCO Educational Series 10 | Class |
| Herman,Tara | 110490 | MCO Educational Series 10 | Class |
| Owens,Raven | 110490 | MCO Educational Series 10 | Class |
| Williams,Omar | 110490 | MCO Educational Series 10 | Class |
| Santos,George | 110490 | MCO Educational Series 10 | Class |
| Russell,Rhenardo | 110490 | MCO Educational Series 10 | Class |
| Barrios,Bryan | 110490 | MCO Educational Series 10 | Class |
| Flores,Carolina | 110490 | MCO Educational Series 10 | Class |
| Solari,Eddy J | 110490 | MCO Educational Series 10 | Class |
| LYRON,JOANE | 110490 | MCO Educational Series 10 | Class |
| Kancso,Eric | 110490 | MCO Educational Series 10 | Class |
| Olejarz,Robert | 110490 | MCO Educational Series 10 | Class |
| Bondswell,Rose-Marie | 110490 | MCO Educational Series 10 | Class |
| Peterson,Zion | 110490 | MCO Educational Series 10 | Class |
| Rosario,Yohanna | 110490 | MCO Educational Series 10 | Class |
| Starke,Chris | 110490 | MCO Educational Series 10 | Class |
| Rodney,Shermaine Damelea | 110490 | MCO Educational Series 10 | Class |
| Gray III,William Edward | 110490 | MCO Educational Series 10 | Class |
| Mbachu,Promise Chiagozie | 110490 | MCO Educational Series 10 | Class |
| Haynie,Leonard | 110490 | MCO Educational Series 10 | Class |
| Jacona,Joseph | 110490 | MCO Educational Series 10 | Class |
| Haywood,Gairy | 110490 | MCO Educational Series 10 | Class |
| Minteh,Basiru | 110490 | MCO Educational Series 10 | Class |
| Chan,John | 110490 | MCO Educational Series 10 | Class |
| X Carrera,Brandon | 110490 | MCO Educational Series 10 | Class |
| B,Taleah | 110490 | MCO Educational Series 10 | Class |
| Bourne,Eric Samuel | 110490 | MCO Educational Series 10 | Class |
| Bamba,Mory | 110490 | MCO Educational Series 10 | Class |
| Rowe,Veronica | 110490 | MCO Educational Series 10 | Class |
| Bagner,Tottianna Shardaye | 110490 | MCO Educational Series 10 | Class |
| Wong,Benny | 110490 | MCO Educational Series 10 | Class |
| Bacon,Grace-Charity Patricia | 110490 | MCO Educational Series 10 | Class |
| Narducci,Michael | 110490 | MCO Educational Series 10 | Class |
| Stone,Jordan | 110490 | MCO Educational Series 10 | Class |
| Trujillo,Maria | 110490 | MCO Educational Series 10 | Class |
| Pangborn,Damon Michael | 110490 | MCO Educational Series 10 | Class |
| Parris,Aubrey | 110490 | MCO Educational Series 10 | Class |
| Lopez,Sherry Ann | 110490 | MCO Educational Series 10 | Class |
| Diaz,Anuar | 110490 | MCO Educational Series 10 | Class |
| Olivier,Edwige | 110490 | MCO Educational Series 10 | Class |
| Olivier,Edwige | 110490 | MCO Educational Series 10 | Class |
| Sargeant,Ronald | 110490 | MCO Educational Series 10 | Class |
| Petrik,Amanda | 110490 | MCO Educational Series 10 | Class |
| Wright,Camesha | 110490 | MCO Educational Series 10 | Class |
| Wright,Camesha | 110490 | MCO Educational Series 10 | Class |
| pekmezi,ejona | 110490 | MCO Educational Series 10 | Class |

Amazon_000262

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Zhang,Tim | 110490 | MCO Educational Series 10 | Class |
| Papsodero,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Jones,Shannon Sheree | 110490 | MCO Educational Series 10 | Class |
| Telese,Nicholas | 110490 | MCO Educational Series 10 | Class |
| Valdez,David | 110490 | MCO Educational Series 10 | Class |
| Ferguson,Monique | 110490 | MCO Educational Series 10 | Class |
| Ojeh,Anthony | 110490 | MCO Educational Series 10 | Class |
| Hinds,Arthur Xavier | 110490 | MCO Educational Series 10 | Class |
| King,Daryl | 110490 | MCO Educational Series 10 | Class |
| Bivines,Isaac | 110490 | MCO Educational Series 10 | Class |
| Adeoye,Aderemi Sylvanus | 110490 | MCO Educational Series 10 | Class |
| Taylor,JusdenTaylor K | 110490 | MCO Educational Series 10 | Class |
| Johnson,Kim C. | 110490 | MCO Educational Series 10 | Class |
| Maza,Keyla | 110490 | MCO Educational Series 10 | Class |
| Sayfeddine,Baraa | 110490 | MCO Educational Series 10 | Class |
| Brooks,Jordan Christopher | 110490 | MCO Educational Series 10 | Class |
| Cole,Daniel | 110490 | MCO Educational Series 10 | Class |
| Castillo,Adonis | 110490 | MCO Educational Series 10 | Class |
| Smith,Sandy Edmonia | 110490 | MCO Educational Series 10 | Class |
| Diaz de Romero,Elsy | 110490 | MCO Educational Series 10 | Class |
| Hall-Hamilton,Andrea | 110490 | MCO Educational Series 10 | Class |
| Leroy,Nathaniel | 110490 | MCO Educational Series 10 | Class |
| Fisher,Jada | 110490 | MCO Educational Series 10 | Class |
| Conteh,Mahamadou | 110490 | MCO Educational Series 10 | Class |
| Conteh,Mahamadou | 110490 | MCO Educational Series 10 | Class |
| Valentine,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Valentine,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Soneda,Junko | 110490 | MCO Educational Series 10 | Class |
| Bowman,Kenya | 110490 | MCO Educational Series 10 | Class |
| Olivares,Carolina | 110490 | MCO Educational Series 10 | Class |
| Johnson,Kevin Winston | 110490 | MCO Educational Series 10 | Class |
| Tuffuor,Erica Nana | 110490 | MCO Educational Series 10 | Class |
| Rogan,Michael | 110490 | MCO Educational Series 10 | Class |
| Glenn,Tim | 110490 | MCO Educational Series 10 | Class |
| Lazenby,Tushawn | 110490 | MCO Educational Series 10 | Class |
| Subair,Halima | 110490 | MCO Educational Series 10 | Class |
| Blaise,carls hans Pascal | 110490 | MCO Educational Series 10 | Class |
| Charles,Holly | 110490 | MCO Educational Series 10 | Class |
| St Louis,Wilbins | 110490 | MCO Educational Series 10 | Class |
| GRZEGORSKI,MARIA | 110490 | MCO Educational Series 10 | Class |
| Bardales,Miriam Dessire | 110490 | MCO Educational Series 10 | Class |
| Marini,Cory | 110490 | MCO Educational Series 10 | Class |
| Zheng,DeFu | 110490 | MCO Educational Series 10 | Class |
| Providence,Herbert Randolph | 110490 | MCO Educational Series 10 | Class |
| Malaga,Antonio | 110490 | MCO Educational Series 10 | Class |
| Manu,Joseph Baffour | 110490 | MCO Educational Series 10 | Class |
| Uwaezuoke,Georgina Chioma | 110490 | MCO Educational Series 10 | Class |
| Garcia,Harry | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ellis,Siearra | 110490 | MCO Educational Series 10 | Class |
| Claudio,Derrick | 110490 | MCO Educational Series 10 | Class |
| Duncan,Barbara | 110490 | MCO Educational Series 10 | Class |
| Pina,Juan Jose | 110490 | MCO Educational Series 10 | Class |
| Mulaja,Alexandre | 110490 | MCO Educational Series 10 | Class |
| Mulaja,Alexandre | 110490 | MCO Educational Series 10 | Class |
| Bullock,Chrissy | 110490 | MCO Educational Series 10 | Class |
| Lock,Alexander | 110490 | MCO Educational Series 10 | Class |
| Walls,Mercedes | 110490 | MCO Educational Series 10 | Class |
| noze,ismael sebastien | 110490 | MCO Educational Series 10 | Class |
| Coleman,Tim | 110490 | MCO Educational Series 10 | Class |
| Green,Tyrell | 110490 | MCO Educational Series 10 | Class |
| Soratos,Mary Jane | 110490 | MCO Educational Series 10 | Class |
| Moussaoui,Hamid | 110490 | MCO Educational Series 10 | Class |
| Reyes Flores,Adianid m | 110490 | MCO Educational Series 10 | Class |
| Franco,Ezequiel | 110490 | MCO Educational Series 10 | Class |
| NWAYOR,BLESSING UCHE | 110490 | MCO Educational Series 10 | Class |
| safarov,timur | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Edwin | 110490 | MCO Educational Series 10 | Class |
| Cisneros,Henry | 110490 | MCO Educational Series 10 | Class |
| Rowland,Rell | 110490 | MCO Educational Series 10 | Class |
| Otuyelu,Ayomide | 110490 | MCO Educational Series 10 | Class |
| Baptiste smith,Gesselle | 110490 | MCO Educational Series 10 | Class |
| SMALL,AUBREY B | 110490 | MCO Educational Series 10 | Class |
| Mondo,Ricky Artavious | 110490 | MCO Educational Series 10 | Class |
| tucker,eric | 110490 | MCO Educational Series 10 | Class |
| Borjas,Richard | 110490 | MCO Educational Series 10 | Class |
| Ventura,Christ | 110490 | MCO Educational Series 10 | Class |
| Jackson,Leasia | 110490 | MCO Educational Series 10 | Class |
| Alfaro-Guzman,Daniel | 110490 | MCO Educational Series 10 | Class |
| Duke,Howard | 110490 | MCO Educational Series 10 | Class |
| MONTI,RAFI | 110490 | MCO Educational Series 10 | Class |
| Dangervil,Dangervil | 110490 | MCO Educational Series 10 | Class |
| Morris,Isaiah | 110490 | MCO Educational Series 10 | Class |
| Munga,Barbara Kissimba Kyungu | 110490 | MCO Educational Series 10 | Class |
| Rigor,Virgil Doma | 110490 | MCO Educational Series 10 | Class |
| Ruiz Rico,Janeth C | 110490 | MCO Educational Series 10 | Class |
| Lindell,Tyler | 110490 | MCO Educational Series 10 | Class |
| Guaman,Brian | 110490 | MCO Educational Series 10 | Class |
| Johnson,Valdeena | 110490 | MCO Educational Series 10 | Class |
| garvin,Malcolm | 110490 | MCO Educational Series 10 | Class |
| Villegas,Maria | 110490 | MCO Educational Series 10 | Class |
| Bouzidi,Hamza | 110490 | MCO Educational Series 10 | Class |
| Howard,Kendale | 110490 | MCO Educational Series 10 | Class |
| Getman,Art | 110490 | MCO Educational Series 10 | Class |
| Ventura,Ramon | 110490 | MCO Educational Series 10 | Class |
| Ventura,Ramon | 110490 | MCO Educational Series 10 | Class |
| Martinez,Moises | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| pearson,cheyenne | 110490 | MCO Educational Series 10 | Class |
| Holley,Manuel | 110490 | MCO Educational Series 10 | Class |
| Camacho,Jennifer | 110490 | MCO Educational Series 10 | Class |
| Fragosa,Thalia | 110490 | MCO Educational Series 10 | Class |
| Neri,Christian | 110490 | MCO Educational Series 10 | Class |
| Nowak,Michael | 110490 | MCO Educational Series 10 | Class |
| Whitehurst,Enijah Danisha | 110490 | MCO Educational Series 10 | Class |
| Jules,Wisgens | 110490 | MCO Educational Series 10 | Class |
| Jules,Wisgens | 110490 | MCO Educational Series 10 | Class |
| Ball,John | 110490 | MCO Educational Series 10 | Class |
| Yeboah,Nina | 110490 | MCO Educational Series 10 | Class |
| rosado,xiomara gianna | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Junior E | 110490 | MCO Educational Series 10 | Class |
| Imbro,Michael Anthony | 110490 | MCO Educational Series 10 | Class |
| Preito,Damion J | 110490 | MCO Educational Series 10 | Class |
| Mercedes,Zoraida | 110490 | MCO Educational Series 10 | Class |
| Suarez,Ariana | 110490 | MCO Educational Series 10 | Class |
| Noel,Tessage | 110490 | MCO Educational Series 10 | Class |
| Rosado,Jose | 110490 | MCO Educational Series 10 | Class |
| Vega Avila,Maria Narcisa | 110490 | MCO Educational Series 10 | Class |
| ruiz,hannah noel | 110490 | MCO Educational Series 10 | Class |
| Niang,Seydu | 110490 | MCO Educational Series 10 | Class |
| Johnson,Lashaye | 110490 | MCO Educational Series 10 | Class |
| velasco,reyna | 110490 | MCO Educational Series 10 | Class |
| Sewnanan,Jenny Sarasity | 110490 | MCO Educational Series 10 | Class |
| Senadi Pathirannahelage,Janith Rukshan | 110490 | MCO Educational Series 10 | Class |
| Ajala,Serah Serah | 110490 | MCO Educational Series 10 | Class |
| Ajala,Serah Serah | 110490 | MCO Educational Series 10 | Class |
| Elsaadany,Gamaleldin | 110490 | MCO Educational Series 10 | Class |
| Nieves,Terry | 110490 | MCO Educational Series 10 | Class |
| Chase,Chase | 110490 | MCO Educational Series 10 | Class |
| Yashouh,Fadi | 110490 | MCO Educational Series 10 | Class |
| Buchanan,Ruth | 110490 | MCO Educational Series 10 | Class |
| Ovbiye,Ejiro A Augustine | 110490 | MCO Educational Series 10 | Class |
| Bennett,Dashantea | 110490 | MCO Educational Series 10 | Class |
| Orellana,Kevin l | 110490 | MCO Educational Series 10 | Class |
| WANG,CHI FU | 110490 | MCO Educational Series 10 | Class |
| Jimenez,Vidal Isaias | 110490 | MCO Educational Series 10 | Class |
| Gayle,Jerome Jevaun | 110490 | MCO Educational Series 10 | Class |
| Ouedraogo,Fabrice | 110490 | MCO Educational Series 10 | Class |
| Atwi,Ahmad | 110490 | MCO Educational Series 10 | Class |
| Craigwell,Zaid I | 110490 | MCO Educational Series 10 | Class |
| Johnson,Malik Y | 110490 | MCO Educational Series 10 | Class |
| Johnson,Malik Y | 110490 | MCO Educational Series 10 | Class |
| Munga,Jan | 110490 | MCO Educational Series 10 | Class |
| Moore,Anthony | 110490 | MCO Educational Series 10 | Class |
| Petrano,Edwin | 110490 | MCO Educational Series 10 | Class |
| Whitted,Shante M | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Braham,Delroy | 110490 | MCO Educational Series 10 | Class |
| Cauldwell,Tarkysha Annette | 110490 | MCO Educational Series 10 | Class |
| Dickerson,Breanda Sha-teaya | 110490 | MCO Educational Series 10 | Class |
| Chan,Tom | 110490 | MCO Educational Series 10 | Class |
| Diallo,Abdoulaye | 110490 | MCO Educational Series 10 | Class |
| Haskins,Donnell Paul | 110490 | MCO Educational Series 10 | Class |
| Martinez Nunez,Mary E | 110490 | MCO Educational Series 10 | Class |
| Hossain,Sultana | 110490 | MCO Educational Series 10 | Class |
| Erdogan,Ilkin | 110490 | MCO Educational Series 10 | Class |
| Toledo,Maria | 110490 | MCO Educational Series 10 | Class |
| Volmar,Raphael | 110490 | MCO Educational Series 10 | Class |
| Canty,Ahkeem | 110490 | MCO Educational Series 10 | Class |
| Serifou,Fatimah Z | 110490 | MCO Educational Series 10 | Class |
| Jordan,Darian | 110490 | MCO Educational Series 10 | Class |
| Villanueva,Gerardo Andr?s | 110490 | MCO Educational Series 10 | Class |
| Adebisi,Adebanji | 110490 | MCO Educational Series 10 | Class |
| Adeyemo,Martin | 110490 | MCO Educational Series 10 | Class |
| Williams,Calvin Jordan | 110490 | MCO Educational Series 10 | Class |
| Ochoa,Christian | 110490 | MCO Educational Series 10 | Class |
| DeJesus Jr,Roberto | 110490 | MCO Educational Series 10 | Class |
| simmons,phillip | 110490 | MCO Educational Series 10 | Class |
| Negron,Jose | 110490 | MCO Educational Series 10 | Class |
| Diallo,Alpha | 110490 | MCO Educational Series 10 | Class |
| Uruchima,Nathalie | 110490 | MCO Educational Series 10 | Class |
| Grodzki,Krystian Robert | 110490 | MCO Educational Series 10 | Class |
| Nyima phuntsok,Fnu | 110490 | MCO Educational Series 10 | Class |
| Sereno,Salvatore | 110490 | MCO Educational Series 10 | Class |
| Alley,Christopher | 110490 | MCO Educational Series 10 | Class |
| Danevs,April | 110490 | MCO Educational Series 10 | Class |
| Jackson,Jaquinn | 110490 | MCO Educational Series 10 | Class |
| Castellano,Thomas | 110490 | MCO Educational Series 10 | Class |
| Marke,Adrian | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Abbie | 110490 | MCO Educational Series 10 | Class |
| Demirezen,Anthony | 110490 | MCO Educational Series 10 | Class |
| guthrie,javan | 110490 | MCO Educational Series 10 | Class |
| Kamel,Abram | 110490 | MCO Educational Series 10 | Class |
| Webster,Acquan | 110490 | MCO Educational Series 10 | Class |
| Vidal,Ivan | 110490 | MCO Educational Series 10 | Class |
| Lwin,Tint | 110490 | MCO Educational Series 10 | Class |
| Relerford,Valerie | 110490 | MCO Educational Series 10 | Class |
| Guerrero,Kenneth | 110490 | MCO Educational Series 10 | Class |
| lopez,jailene | 110490 | MCO Educational Series 10 | Class |
| Cooper,TaKaiya | 110490 | MCO Educational Series 10 | Class |
| Uchenna,Samuel | 110490 | MCO Educational Series 10 | Class |
| Gamez,Martin | 110490 | MCO Educational Series 10 | Class |
| Gamez,Martin | 110490 | MCO Educational Series 10 | Class |
| Lynch,Glennis | 110490 | MCO Educational Series 10 | Class |
| Vazquez,Naydene | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Urgiles,Iris | 110490 | MCO Educational Series 10 | Class |
| Konate,Mamadou | 110490 | MCO Educational Series 10 | Class |
| Joni,Shayed Ahmed | 110490 | MCO Educational Series 10 | Class |
| Santa Ballesteros,Luisa | 110490 | MCO Educational Series 10 | Class |
| Pena Perez,Andrio | 110490 | MCO Educational Series 10 | Class |
| Twana,Ann | 110490 | MCO Educational Series 10 | Class |
| Minaya,Isaura M | 110490 | MCO Educational Series 10 | Class |
| Taduran,Raymar | 110490 | MCO Educational Series 10 | Class |
| Abdul,Hassan Y | 110490 | MCO Educational Series 10 | Class |
| Archer,Michael | 110490 | MCO Educational Series 10 | Class |
| Hensley,Julius Patrick | 110490 | MCO Educational Series 10 | Class |
| Gainey,Colbert | 110490 | MCO Educational Series 10 | Class |
| Gainey,Colbert | 110490 | MCO Educational Series 10 | Class |
| Tulley,Geanna Jenniene | 110490 | MCO Educational Series 10 | Class |
| Candela,Annette M | 110490 | MCO Educational Series 10 | Class |
| Richards,Spencer Colatimus | 110490 | MCO Educational Series 10 | Class |
| Cannon,Aimee | 110490 | MCO Educational Series 10 | Class |
| Nunez Gonzales,Devora Estefania | 110490 | MCO Educational Series 10 | Class |
| Sillah,Mahamadou | 110490 | MCO Educational Series 10 | Class |
| Martinez,Isel | 110490 | MCO Educational Series 10 | Class |
| Toppins,Sakinah | 110490 | MCO Educational Series 10 | Class |
| Shehi,Erjon | 110490 | MCO Educational Series 10 | Class |
| HowardIV,William | 110490 | MCO Educational Series 10 | Class |
| Khoury,Mazen | 110490 | MCO Educational Series 10 | Class |
| French,Antonio | 110490 | MCO Educational Series 10 | Class |
| Abraham,Clayton | 110490 | MCO Educational Series 10 | Class |
| Richardson,Jabari | 110490 | MCO Educational Series 10 | Class |
| Herrera,Marisol | 110490 | MCO Educational Series 10 | Class |
| Almazo,Alberto | 110490 | MCO Educational Series 10 | Class |
| Longo,Joseph | 110490 | MCO Educational Series 10 | Class |
| Brown,Daniel | 110490 | MCO Educational Series 10 | Class |
| Hamer Jerrick,Vanessa N | 110490 | MCO Educational Series 10 | Class |
| Watson,Eon | 110490 | MCO Educational Series 10 | Class |
| Milas,Louie | 110490 | MCO Educational Series 10 | Class |
| Caban,Darlene | 110490 | MCO Educational Series 10 | Class |
| Zorrilla,Alexander | 110490 | MCO Educational Series 10 | Class |
| KIERNAN,JOHN J | 110490 | MCO Educational Series 10 | Class |
| Johnson,Andrew | 110490 | MCO Educational Series 10 | Class |
| Johnson,Andrew | 110490 | MCO Educational Series 10 | Class |
| Clowery,Thomas F. | 110490 | MCO Educational Series 10 | Class |
| sutton,junior | 110490 | MCO Educational Series 10 | Class |
| Salazar,Odalys | 110490 | MCO Educational Series 10 | Class |
| Torres McGrew,Julian | 110490 | MCO Educational Series 10 | Class |
| Wong,Wilson | 110490 | MCO Educational Series 10 | Class |
| Zubov,Sergei | 110490 | MCO Educational Series 10 | Class |
| Gill,Christopher | 110490 | MCO Educational Series 10 | Class |
| Brown,Alyxandria | 110490 | MCO Educational Series 10 | Class |
| Bickford,Edward | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| chang,clemente | 110490 | MCO Educational Series 10 | Class |
| Lesevic,Egzon | 110490 | MCO Educational Series 10 | Class |
| McVey,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Brown,Shaniqua | 110490 | MCO Educational Series 10 | Class |
| Allen,Antoinette | 110490 | MCO Educational Series 10 | Class |
| Abimbola,Abayomi Alawode | 110490 | MCO Educational Series 10 | Class |
| Zherka,Luljeta | 110490 | MCO Educational Series 10 | Class |
| Spann,Parris | 110490 | MCO Educational Series 10 | Class |
| Exantus,Kendler | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Angel | 110490 | MCO Educational Series 10 | Class |
| Daza,Aldo Camerino | 110490 | MCO Educational Series 10 | Class |
| Philippeaux,Kayla | 110490 | MCO Educational Series 10 | Class |
| Rofail,Malak | 110490 | MCO Educational Series 10 | Class |
| Ferguson,Victor | 110490 | MCO Educational Series 10 | Class |
| Johnson,Charles | 110490 | MCO Educational Series 10 | Class |
| Mashihi Mutondo,Mymy | 110490 | MCO Educational Series 10 | Class |
| Arteta,Yolanda Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Garcia,Jesus | 110490 | MCO Educational Series 10 | Class |
| van hetten,tahriq | 110490 | MCO Educational Series 10 | Class |
| Lorenzo,Dionila | 110490 | MCO Educational Series 10 | Class |
| Xu,LiTing | 110490 | MCO Educational Series 10 | Class |
| Altime,Jackson | 110490 | MCO Educational Series 10 | Class |
| jacob,adam j | 110490 | MCO Educational Series 10 | Class |
| Elgazar,Nanie | 110490 | MCO Educational Series 10 | Class |
| Smith,Thomas | 110490 | MCO Educational Series 10 | Class |
| Stetson,Douglas | 110490 | MCO Educational Series 10 | Class |
| AMBALI,KABIR | 110490 | MCO Educational Series 10 | Class |
| Ferrera,Denise | 110490 | MCO Educational Series 10 | Class |
| Nunez,Jennifer | 110490 | MCO Educational Series 10 | Class |
| Swinson,Tyrone | 110490 | MCO Educational Series 10 | Class |
| Rhall,Shawn | 110490 | MCO Educational Series 10 | Class |
| Reino Parra,Carmen Lucia | 110490 | MCO Educational Series 10 | Class |
| Owolabi,Sandra | 110490 | MCO Educational Series 10 | Class |
| Edwards,Shyan Rochell | 110490 | MCO Educational Series 10 | Class |
| Jones,Ken Kadeem | 110490 | MCO Educational Series 10 | Class |
| Lawrence,Patricia | 110490 | MCO Educational Series 10 | Class |
| Lawrence,Patricia | 110490 | MCO Educational Series 10 | Class |
| Newcombe,Cyirra | 110490 | MCO Educational Series 10 | Class |
| Lin,Johnny | 110490 | MCO Educational Series 10 | Class |
| Duncan,Rebecca Amber | 110490 | MCO Educational Series 10 | Class |
| Irick,Lanise | 110490 | MCO Educational Series 10 | Class |
| perez,alfred | 110490 | MCO Educational Series 10 | Class |
| Manna Marakkalage,Sunilaka Dinushan Cooray | 110490 | MCO Educational Series 10 | Class |
| Villaronga,Sharon | 110490 | MCO Educational Series 10 | Class |
| Mason,Isaiah | 110490 | MCO Educational Series 10 | Class |
| Moss,Marc | 110490 | MCO Educational Series 10 | Class |
| Simon,Enisy | 110490 | MCO Educational Series 10 | Class |
| Rutty,Neil | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Esperon,Joseph | 110490 | MCO Educational Series 10 | Class |
| Sibri,Christian | 110490 | MCO Educational Series 10 | Class |
| Rodney,Rodney | 110490 | MCO Educational Series 10 | Class |
| Conde,Ami | 110490 | MCO Educational Series 10 | Class |
| Taveras,Andres | 110490 | MCO Educational Series 10 | Class |
| Harris,Derrick | 110490 | MCO Educational Series 10 | Class |
| Canales,Tristan | 110490 | MCO Educational Series 10 | Class |
| Lee Sang,Dane | 110490 | MCO Educational Series 10 | Class |
| Dore,Don | 110490 | MCO Educational Series 10 | Class |
| Rosa,Roig | 110490 | MCO Educational Series 10 | Class |
| Lewis,Briana | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Dion | 110490 | MCO Educational Series 10 | Class |
| Eid,Mohamed | 110490 | MCO Educational Series 10 | Class |
| Fleurimond,Alexandra | 110490 | MCO Educational Series 10 | Class |
| Rustem,Emser | 110490 | MCO Educational Series 10 | Class |
| PERERA,PRIYAN Shanaka | 110490 | MCO Educational Series 10 | Class |
| Jubran,Jaber | 110490 | MCO Educational Series 10 | Class |
| McDowell,Dia | 110490 | MCO Educational Series 10 | Class |
| Flores,Marco Antonio | 110490 | MCO Educational Series 10 | Class |
| Simons,Ms Jinjaah | 110490 | MCO Educational Series 10 | Class |
| ekundayo,Trinovy | 110490 | MCO Educational Series 10 | Class |
| Esmail,Youssef Taha | 110490 | MCO Educational Series 10 | Class |
| FLOOD,KUSAWADEE HELEN | 110490 | MCO Educational Series 10 | Class |
| Hui,Emily | 110490 | MCO Educational Series 10 | Class |
| Khamphakdee,Jiraporn | 110490 | MCO Educational Series 10 | Class |
| Mckenzie,Christopher | 110490 | MCO Educational Series 10 | Class |
| Snyder,Hailee | 110490 | MCO Educational Series 10 | Class |
| alvarez,Evelin | 110490 | MCO Educational Series 10 | Class |
| Hodge,Aaliyah | 110490 | MCO Educational Series 10 | Class |
| Cintron,Steven | 110490 | MCO Educational Series 10 | Class |
| Espinal,Kelvin | 110490 | MCO Educational Series 10 | Class |
| Cuevas,Shyann | 110490 | MCO Educational Series 10 | Class |
| Fonseca,Carmelo | 110490 | MCO Educational Series 10 | Class |
| McKenna,Aaron Steve | 110490 | MCO Educational Series 10 | Class |
| Balderas,Joanna | 110490 | MCO Educational Series 10 | Class |
| Bah,Amadou | 110490 | MCO Educational Series 10 | Class |
| Johnson,Kimberly | 110490 | MCO Educational Series 10 | Class |
| Michelus,Kevin Charles | 110490 | MCO Educational Series 10 | Class |
| Arabi,Mohamed | 110490 | MCO Educational Series 10 | Class |
| Malone,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Ortiz Jr,Marcelino | 110490 | MCO Educational Series 10 | Class |
| Perkins,Kera K | 110490 | MCO Educational Series 10 | Class |
| Rich,Mari | 110490 | MCO Educational Series 10 | Class |
| Moreno,Alexis | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Jessica | 110490 | MCO Educational Series 10 | Class |
| Scott,William | 110490 | MCO Educational Series 10 | Class |
| colon,justin | 110490 | MCO Educational Series 10 | Class |
| Emmanuel,Christine A. | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Quintero,Samantha Jaquelin | 110490 | MCO Educational Series 10 | Class |
| Garcia,Ignacio Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Oladimeji,Temitope Rukayat | 110490 | MCO Educational Series 10 | Class |
| Amponsah,Hilda | 110490 | MCO Educational Series 10 | Class |
| Vilchis,Evelin | 110490 | MCO Educational Series 10 | Class |
| Ponce,Merli | 110490 | MCO Educational Series 10 | Class |
| Anthony,Demetrius | 110490 | MCO Educational Series 10 | Class |
| Adjodha,Nadine | 110490 | MCO Educational Series 10 | Class |
| Aurelus,Fabrice | 110490 | MCO Educational Series 10 | Class |
| Carter,Sahniya | 110490 | MCO Educational Series 10 | Class |
| Igbokweze,Lydia | 110490 | MCO Educational Series 10 | Class |
| Dungee,Timothy | 110490 | MCO Educational Series 10 | Class |
| Massalay,Sonnie | 110490 | MCO Educational Series 10 | Class |
| Massalay,Sonnie | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Florencia | 110490 | MCO Educational Series 10 | Class |
| Rivera,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Wright,Roy | 110490 | MCO Educational Series 10 | Class |
| Jordan,Arianna | 110490 | MCO Educational Series 10 | Class |
| Gomez,Elijah | 110490 | MCO Educational Series 10 | Class |
| Cisse,Morry | 110490 | MCO Educational Series 10 | Class |
| Black,Anthony K | 110490 | MCO Educational Series 10 | Class |
| Gomez,Marcus | 110490 | MCO Educational Series 10 | Class |
| Stell,Cory | 110490 | MCO Educational Series 10 | Class |
| Richardson,DVonte N | 110490 | MCO Educational Series 10 | Class |
| Lopez,Jessalyn L | 110490 | MCO Educational Series 10 | Class |
| Rivera,Shakeim | 110490 | MCO Educational Series 10 | Class |
| Minew,Elaine | 110490 | MCO Educational Series 10 | Class |
| Casseus,Francenol | 110490 | MCO Educational Series 10 | Class |
| Neri,Martin Leonardo | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Cazina | 110490 | MCO Educational Series 10 | Class |
| Cordova,Dennise | 110490 | MCO Educational Series 10 | Class |
| Evans,Demi | 110490 | MCO Educational Series 10 | Class |
| Franco,Jose | 110490 | MCO Educational Series 10 | Class |
| Franco,Jose | 110490 | MCO Educational Series 10 | Class |
| Braithwaite,Robert | 110490 | MCO Educational Series 10 | Class |
| Laguerre,Ivertown | 110490 | MCO Educational Series 10 | Class |
| Pacheco,Briana | 110490 | MCO Educational Series 10 | Class |
| Barker,Armstead | 110490 | MCO Educational Series 10 | Class |
| Barker,Armstead | 110490 | MCO Educational Series 10 | Class |
| Fludd,Jhansious | 110490 | MCO Educational Series 10 | Class |
| Sethunge Mudalige,Priyan K | 110490 | MCO Educational Series 10 | Class |
| Velez Conde,Stacey Alexandra | 110490 | MCO Educational Series 10 | Class |
| UMANAH,PRINCE | 110490 | MCO Educational Series 10 | Class |
| Helale,Gina | 110490 | MCO Educational Series 10 | Class |
| Flores,Lesley | 110490 | MCO Educational Series 10 | Class |
| Holland,Jamal | 110490 | MCO Educational Series 10 | Class |
| Nimr,Nermeen | 110490 | MCO Educational Series 10 | Class |
| Smith,Alissia | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Mckinnon,Mark | 110490 | MCO Educational Series 10 | Class |
| JO,JO | 110490 | MCO Educational Series 10 | Class |
| Sampson,Lansdale | 110490 | MCO Educational Series 10 | Class |
| Ashton,Josh | 110490 | MCO Educational Series 10 | Class |
| Munasinghe,Mahinda Palitha | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Shawn | 110490 | MCO Educational Series 10 | Class |
| Germano,Patricia | 110490 | MCO Educational Series 10 | Class |
| Velazquez,Paulina | 110490 | MCO Educational Series 10 | Class |
| Whidbee,Jamelle | 110490 | MCO Educational Series 10 | Class |
| BELLO,GANIYAT | 110490 | MCO Educational Series 10 | Class |
| Lopez,Stephanie | 110490 | MCO Educational Series 10 | Class |
| Nunez Mercedes,Fabricio | 110490 | MCO Educational Series 10 | Class |
| Garcia,Brant | 110490 | MCO Educational Series 10 | Class |
| Molina,Drina D | 110490 | MCO Educational Series 10 | Class |
| begum,shahnaj | 110490 | MCO Educational Series 10 | Class |
| Cruz Pontaza,Jaime | 110490 | MCO Educational Series 10 | Class |
| Younger,Eric | 110490 | MCO Educational Series 10 | Class |
| Margolies,Andrew | 110490 | MCO Educational Series 10 | Class |
| juarez,frank arlay | 110490 | MCO Educational Series 10 | Class |
| DEBROWN,TERRELL | 110490 | MCO Educational Series 10 | Class |
| Morris-Fields,Christian | 110490 | MCO Educational Series 10 | Class |
| Bamgboye,AHMED | 110490 | MCO Educational Series 10 | Class |
| Rivera,Matthew Andrew | 110490 | MCO Educational Series 10 | Class |
| Jefferson,Terence | 110490 | MCO Educational Series 10 | Class |
| Montalvo,Ernesto | 110490 | MCO Educational Series 10 | Class |
| Wilbekin,Eric | 110490 | MCO Educational Series 10 | Class |
| Raffington,Shevonese | 110490 | MCO Educational Series 10 | Class |
| Andujar,Robert | 110490 | MCO Educational Series 10 | Class |
| Medica,Ronella | 110490 | MCO Educational Series 10 | Class |
| Medica,Ronella | 110490 | MCO Educational Series 10 | Class |
| cuevas,elijah | 110490 | MCO Educational Series 10 | Class |
| Yamuca,Britney | 110490 | MCO Educational Series 10 | Class |
| Mitchell,Shamoi | 110490 | MCO Educational Series 10 | Class |
| Paredes,Jose Antonio | 110490 | MCO Educational Series 10 | Class |
| Neri,Omar | 110490 | MCO Educational Series 10 | Class |
| Gobrial,Yousstina | 110490 | MCO Educational Series 10 | Class |
| Milone,Joseph Thomas | 110490 | MCO Educational Series 10 | Class |
| Freire,Joseph | 110490 | MCO Educational Series 10 | Class |
| Williams,Sharon | 110490 | MCO Educational Series 10 | Class |
| Coleman,Michael | 110490 | MCO Educational Series 10 | Class |
| Mims,Chanel | 110490 | MCO Educational Series 10 | Class |
| Gausin,Daniel Alexander | 110490 | MCO Educational Series 10 | Class |
| Mighty,Shauna-Lee | 110490 | MCO Educational Series 10 | Class |
| Henen,Michael M | 110490 | MCO Educational Series 10 | Class |
| Khalifa,Wael | 110490 | MCO Educational Series 10 | Class |
| Casey,Joe | 110490 | MCO Educational Series 10 | Class |
| Menelas,Keven | 110490 | MCO Educational Series 10 | Class |
| jaikaran,madanlal Ricki | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gray,Armani Anthony | 110490 | MCO Educational Series 10 | Class |
| Kennedy,Queen | 110490 | MCO Educational Series 10 | Class |
| Mitchell,Tyrone | 110490 | MCO Educational Series 10 | Class |
| Bisumber,Malcolm | 110490 | MCO Educational Series 10 | Class |
| Silva,Celine | 110490 | MCO Educational Series 10 | Class |
| Gozon,Ronnie F | 110490 | MCO Educational Series 10 | Class |
| Esbrand,Darrel | 110490 | MCO Educational Series 10 | Class |
| Santos,Gerardo | 110490 | MCO Educational Series 10 | Class |
| Guadalupe,Edwin | 110490 | MCO Educational Series 10 | Class |
| Girgis,Antwan | 110490 | MCO Educational Series 10 | Class |
| Echavarria,Victor Manuel | 110490 | MCO Educational Series 10 | Class |
| Galloway,Leon | 110490 | MCO Educational Series 10 | Class |
| Moreau,Greger | 110490 | MCO Educational Series 10 | Class |
| Fluker,Christopher D | 110490 | MCO Educational Series 10 | Class |
| Rosa,Elijah | 110490 | MCO Educational Series 10 | Class |
| Hardy,Anandi | 110490 | MCO Educational Series 10 | Class |
| Kourkoumelis,Erika | 110490 | MCO Educational Series 10 | Class |
| Rodriguez Morales,Nanci | 110490 | MCO Educational Series 10 | Class |
| Goodman,Julie | 110490 | MCO Educational Series 10 | Class |
| Etienne,Jessica | 110490 | MCO Educational Series 10 | Class |
| garcia,kyle Neo | 110490 | MCO Educational Series 10 | Class |
| Raid,Polla | 110490 | MCO Educational Series 10 | Class |
| Smith,C | 110490 | MCO Educational Series 10 | Class |
| Scotti,Randolph | 110490 | MCO Educational Series 10 | Class |
| Ndulue,Raphael Chinenye | 110490 | MCO Educational Series 10 | Class |
| James-hutchinson,Rashid | 110490 | MCO Educational Series 10 | Class |
| Priego,George | 110490 | MCO Educational Series 10 | Class |
| Cadle,Darius | 110490 | MCO Educational Series 10 | Class |
| Perez,Miguel | 110490 | MCO Educational Series 10 | Class |
| prince,shenille | 110490 | MCO Educational Series 10 | Class |
| Jno Jules,Christy | 110490 | MCO Educational Series 10 | Class |
| MASTERJOSEPH,ALBERT | 110490 | MCO Educational Series 10 | Class |
| Garcia,Brittany Nicole | 110490 | MCO Educational Series 10 | Class |
| Desiderio,Andrew | 110490 | MCO Educational Series 10 | Class |
| Desiderio,Andrew | 110490 | MCO Educational Series 10 | Class |
| Oropeza,Julio | 110490 | MCO Educational Series 10 | Class |
| Vaughan,Earl Alexander | 110490 | MCO Educational Series 10 | Class |
| Madridejos,Precious Marie | 110490 | MCO Educational Series 10 | Class |
| TRIANTAFYLLOPOULOS,DEMITRA | 110490 | MCO Educational Series 10 | Class |
| Fallah Kamara,Agnes | 110490 | MCO Educational Series 10 | Class |
| Fallah Kamara,Agnes | 110490 | MCO Educational Series 10 | Class |
| Adams,Davon Anthony | 110490 | MCO Educational Series 10 | Class |
| GUTIERREZ,EDUARDO | 110490 | MCO Educational Series 10 | Class |
| Morocho,Jayden | 110490 | MCO Educational Series 10 | Class |
| Bouton,Joy | 110490 | MCO Educational Series 10 | Class |
| Garcia Rivera,Jesus | 110490 | MCO Educational Series 10 | Class |
| Montalva,Anthony | 110490 | MCO Educational Series 10 | Class |
| Navarro Falcon,Itzel Yoselin | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Adebiyi,Fuad | 110490 | MCO Educational Series 10 | Class |
| Collado,Joshua | 110490 | MCO Educational Series 10 | Class |
| Rosa de Guevara,Silvia Griselda | 110490 | MCO Educational Series 10 | Class |
| Valueva,Olga | 110490 | MCO Educational Series 10 | Class |
| Brigante,Michael | 110490 | MCO Educational Series 10 | Class |
| Winter,Jorge | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Samuel | 110490 | MCO Educational Series 10 | Class |
| Perez,Gus | 110490 | MCO Educational Series 10 | Class |
| Khadr,Adam | 110490 | MCO Educational Series 10 | Class |
| Mcfadden,Jamal | 110490 | MCO Educational Series 10 | Class |
| Stuart,Patrice | 110490 | MCO Educational Series 10 | Class |
| Dennis,Ramon | 110490 | MCO Educational Series 10 | Class |
| Caleca Jr,Peter Anthony | 110490 | MCO Educational Series 10 | Class |
| ogunboyo,kayode Ogunshola | 110490 | MCO Educational Series 10 | Class |
| Droughn,Dee L | 110490 | MCO Educational Series 10 | Class |
| Muniz,Christian | 110490 | MCO Educational Series 10 | Class |
| Liga,Christopher | 110490 | MCO Educational Series 10 | Class |
| Arce,Angel A | 110490 | MCO Educational Series 10 | Class |
| Hickson,Sharod | 110490 | MCO Educational Series 10 | Class |
| zhang,qi | 110490 | MCO Educational Series 10 | Class |
| zhang,qi | 110490 | MCO Educational Series 10 | Class |
| Jaimes Rodriguez,Brian | 110490 | MCO Educational Series 10 | Class |
| Medina,Justine | 110490 | MCO Educational Series 10 | Class |
| Wong,Brandon | 110490 | MCO Educational Series 10 | Class |
| Miller,Otage | 110490 | MCO Educational Series 10 | Class |
| Clerveau,Jorana | 110490 | MCO Educational Series 10 | Class |
| Frammosa,Thomas | 110490 | MCO Educational Series 10 | Class |
| Zavala,Zenllazett | 110490 | MCO Educational Series 10 | Class |
| Ibrahim,Romail | 110490 | MCO Educational Series 10 | Class |
| Andes,Dino | 110490 | MCO Educational Series 10 | Class |
| Kunasingam,Kowsikan | 110490 | MCO Educational Series 10 | Class |
| Canolli Uka,Vlore | 110490 | MCO Educational Series 10 | Class |
| Colvin,Michelle | 110490 | MCO Educational Series 10 | Class |
| Orona,Jose | 110490 | MCO Educational Series 10 | Class |
| Jean Baptiste,Roomel | 110490 | MCO Educational Series 10 | Class |
| Juarez,Ronald | 110490 | MCO Educational Series 10 | Class |
| Galy,Taras | 110490 | MCO Educational Series 10 | Class |
| Fiorenza,Joey | 110490 | MCO Educational Series 10 | Class |
| Barone,Kimberly Irene | 110490 | MCO Educational Series 10 | Class |
| merckel,richard | 110490 | MCO Educational Series 10 | Class |
| Simmons,Kiara | 110490 | MCO Educational Series 10 | Class |
| Yasin,Ismain | 110490 | MCO Educational Series 10 | Class |
| zapata,chase chase | 110490 | MCO Educational Series 10 | Class |
| Deeds,E | 110490 | MCO Educational Series 10 | Class |
| Pineda,Catherine Nirvana | 110490 | MCO Educational Series 10 | Class |
| Bertrand,Leann | 110490 | MCO Educational Series 10 | Class |
| Centeno,Carmen | 110490 | MCO Educational Series 10 | Class |
| Ulmer,Destiny | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Garcia,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Xiong,Melanie M | 110490 | MCO Educational Series 10 | Class |
| Plasencia,Edson H | 110490 | MCO Educational Series 10 | Class |
| Afolabi-Wakefield,Esther | 110490 | MCO Educational Series 10 | Class |
| Mack,Alajah | 110490 | MCO Educational Series 10 | Class |
| Planchet,Murlyne | 110490 | MCO Educational Series 10 | Class |
| Jones,Vada | 110490 | MCO Educational Series 10 | Class |
| Wilson,Lovely | 110490 | MCO Educational Series 10 | Class |
| Perez,Marlene | 110490 | MCO Educational Series 10 | Class |
| Andrejuk-Rys,Katarzyna | 110490 | MCO Educational Series 10 | Class |
| Garricks,Deon | 110490 | MCO Educational Series 10 | Class |
| lawal,Jamiu | 110490 | MCO Educational Series 10 | Class |
| Hernandez,shaun | 110490 | MCO Educational Series 10 | Class |
| Goodhope,Shamira | 110490 | MCO Educational Series 10 | Class |
| white,stephanie marie | 110490 | MCO Educational Series 10 | Class |
| Hench,Gary | 110490 | MCO Educational Series 10 | Class |
| Agbe,Gbolahan Akintoye | 110490 | MCO Educational Series 10 | Class |
| addison,jasmine | 110490 | MCO Educational Series 10 | Class |
| Capulong,Dindo Eulogio | 110490 | MCO Educational Series 10 | Class |
| Maddox,Micah T | 110490 | MCO Educational Series 10 | Class |
| Mendoza,Olivia | 110490 | MCO Educational Series 10 | Class |
| Rosa Severino,Marlenin | 110490 | MCO Educational Series 10 | Class |
| Gomez,Johnathan | 110490 | MCO Educational Series 10 | Class |
| Adams,Asia Glady | 110490 | MCO Educational Series 10 | Class |
| Guerrero,Jose Antonio | 110490 | MCO Educational Series 10 | Class |
| Miho,Enxhel | 110490 | MCO Educational Series 10 | Class |
| Azer,Marina | 110490 | MCO Educational Series 10 | Class |
| Montesano,Jessica L | 110490 | MCO Educational Series 10 | Class |
| Matthews,Tanica | 110490 | MCO Educational Series 10 | Class |
| Dimitri,Gaetano | 110490 | MCO Educational Series 10 | Class |
| Gillies,Melissa Minerva | 110490 | MCO Educational Series 10 | Class |
| Lowe,Randy | 110490 | MCO Educational Series 10 | Class |
| Boston,Fred | 110490 | MCO Educational Series 10 | Class |
| Lopez,Alicia | 110490 | MCO Educational Series 10 | Class |
| Hurdle,Michael | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Christian Angel | 110490 | MCO Educational Series 10 | Class |
| Del Maestro,Anthony Michael | 110490 | MCO Educational Series 10 | Class |
| Del Maestro,Anthony Michael | 110490 | MCO Educational Series 10 | Class |
| Acosta,Tyteanna | 110490 | MCO Educational Series 10 | Class |
| Phillips,Jelani | 110490 | MCO Educational Series 10 | Class |
| Grant,Rushel | 110490 | MCO Educational Series 10 | Class |
| Newman,Rechard | 110490 | MCO Educational Series 10 | Class |
| Gavilan,Julian E | 110490 | MCO Educational Series 10 | Class |
| Dudley,Sade | 110490 | MCO Educational Series 10 | Class |
| Liang,Bing Kun | 110490 | MCO Educational Series 10 | Class |
| Sorci,Paula | 110490 | MCO Educational Series 10 | Class |
| Charles,Amelie | 110490 | MCO Educational Series 10 | Class |
| Roman,Uriah | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Flores,Kiara | 110490 | MCO Educational Series 10 | Class |
| Huerta,Jason | 110490 | MCO Educational Series 10 | Class |
| Chausse,Jamie | 110490 | MCO Educational Series 10 | Class |
| robinson,dwayne | 110490 | MCO Educational Series 10 | Class |
| Ojo,Olubukola Margaret | 110490 | MCO Educational Series 10 | Class |
| Lurk,Nasir | 110490 | MCO Educational Series 10 | Class |
| Espinosa,Adrian | 110490 | MCO Educational Series 10 | Class |
| Delva,Dublin | 110490 | MCO Educational Series 10 | Class |
| Wilson,Dashaun Ornester | 110490 | MCO Educational Series 10 | Class |
| Stukes,Tamia | 110490 | MCO Educational Series 10 | Class |
| Cirello,Gabriella | 110490 | MCO Educational Series 10 | Class |
| Awuku,Alfred | 110490 | MCO Educational Series 10 | Class |
| Thambiah,Ketheeswarapaskaran | 110490 | MCO Educational Series 10 | Class |
| Okpalor,Bill | 110490 | MCO Educational Series 10 | Class |
| La,Jane | 110490 | MCO Educational Series 10 | Class |
| Valente,Joseph | 110490 | MCO Educational Series 10 | Class |
| Anderson,Dashaun | 110490 | MCO Educational Series 10 | Class |
| Powell,Edward | 110490 | MCO Educational Series 10 | Class |
| Boyd,Sanaya | 110490 | MCO Educational Series 10 | Class |
| CHEN,JIAJIAN | 110490 | MCO Educational Series 10 | Class |
| zammett,anina Latessha | 110490 | MCO Educational Series 10 | Class |
| Xhafaj,Alvi | 110490 | MCO Educational Series 10 | Class |
| Biniass,Hamza | 110490 | MCO Educational Series 10 | Class |
| Fuster,Maritza | 110490 | MCO Educational Series 10 | Class |
| Saruar,Md Ahsun | 110490 | MCO Educational Series 10 | Class |
| Smith,Lydia | 110490 | MCO Educational Series 10 | Class |
| alex,linu | 110490 | MCO Educational Series 10 | Class |
| GARCIA CRUZ,Josue | 110490 | MCO Educational Series 10 | Class |
| Welbeck,Maxwell | 110490 | MCO Educational Series 10 | Class |
| Prestileo,Steven | 110490 | MCO Educational Series 10 | Class |
| Ponce,Licsenia | 110490 | MCO Educational Series 10 | Class |
| Prince,Shane | 110490 | MCO Educational Series 10 | Class |
| Zayed,Alyyan | 110490 | MCO Educational Series 10 | Class |
| Droz,Michelle Annatilde | 110490 | MCO Educational Series 10 | Class |
| Orlando,Nancy | 110490 | MCO Educational Series 10 | Class |
| Ayala,Ethan Russell | 110490 | MCO Educational Series 10 | Class |
| thomas,ladae | 110490 | MCO Educational Series 10 | Class |
| Garcia,Denisse Andrea | 110490 | MCO Educational Series 10 | Class |
| Cruz,CARLOS A | 110490 | MCO Educational Series 10 | Class |
| Vidal,Lillian | 110490 | MCO Educational Series 10 | Class |
| Lovera,Cesar | 110490 | MCO Educational Series 10 | Class |
| Viruel,John | 110490 | MCO Educational Series 10 | Class |
| Littman,Kahil | 110490 | MCO Educational Series 10 | Class |
| Ng-Yau,Alexander | 110490 | MCO Educational Series 10 | Class |
| Marquez,Rex | 110490 | MCO Educational Series 10 | Class |
| Gerardo,Jose A | 110490 | MCO Educational Series 10 | Class |
| park,charles | 110490 | MCO Educational Series 10 | Class |
| Clairejus,Lancia | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ayala,Craig | 110490 | MCO Educational Series 10 | Class |
| Carranza,Elsi | 110490 | MCO Educational Series 10 | Class |
| Potes Gonzalez,Karen | 110490 | MCO Educational Series 10 | Class |
| Calderon,Angel R | 110490 | MCO Educational Series 10 | Class |
| Merillo,Anthony | 110490 | MCO Educational Series 10 | Class |
| Sirage,Keder | 110490 | MCO Educational Series 10 | Class |
| Abreu,Noemi | 110490 | MCO Educational Series 10 | Class |
| Abreu,Noemi | 110490 | MCO Educational Series 10 | Class |
| Rivera,Jennifer | 110490 | MCO Educational Series 10 | Class |
| Peters,Oluwaseyi | 110490 | MCO Educational Series 10 | Class |
| Jaramillo Calle,Freddy Eduardo | 110490 | MCO Educational Series 10 | Class |
| Olis,Edward | 110490 | MCO Educational Series 10 | Class |
| Pinder,Christine | 110490 | MCO Educational Series 10 | Class |
| Beaubrun St Jean,Vanessa | 110490 | MCO Educational Series 10 | Class |
| Calcagno,Kristen | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Ashley | 110490 | MCO Educational Series 10 | Class |
| Dass,Vennie Vennie | 110490 | MCO Educational Series 10 | Class |
| Davison,Marsel | 110490 | MCO Educational Series 10 | Class |
| Anderson,Natasha | 110490 | MCO Educational Series 10 | Class |
| Tucker,sade | 110490 | MCO Educational Series 10 | Class |
| CAMACHO LOPEZ,NANCY | 110490 | MCO Educational Series 10 | Class |
| Torres lopez,Adriana Raquel | 110490 | MCO Educational Series 10 | Class |
| Allen,Jamie | 110490 | MCO Educational Series 10 | Class |
| TAVERAS,EDILI | 110490 | MCO Educational Series 10 | Class |
| McKenna,Aisha | 110490 | MCO Educational Series 10 | Class |
| Borkowski,Jackie | 110490 | MCO Educational Series 10 | Class |
| KAMONI,CATE | 110490 | MCO Educational Series 10 | Class |
| Moncada,Catherine | 110490 | MCO Educational Series 10 | Class |
| Soto,Daniel | 110490 | MCO Educational Series 10 | Class |
| Zempoaltecatl,Emelyn | 110490 | MCO Educational Series 10 | Class |
| Francis,Benawyn | 110490 | MCO Educational Series 10 | Class |
| Mehmood,Haris | 110490 | MCO Educational Series 10 | Class |
| Myers,Brittany | 110490 | MCO Educational Series 10 | Class |
| Robinson,Darnell | 110490 | MCO Educational Series 10 | Class |
| Harvey,Mary | 110490 | MCO Educational Series 10 | Class |
| Rosado,Miguel | 110490 | MCO Educational Series 10 | Class |
| Beras,Penelope | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Ruber | 110490 | MCO Educational Series 10 | Class |
| Romero,Robert | 110490 | MCO Educational Series 10 | Class |
| Benn,Jaydon | 110490 | MCO Educational Series 10 | Class |
| Peralta,Kendra | 110490 | MCO Educational Series 10 | Class |
| Torija,Jennifer | 110490 | MCO Educational Series 10 | Class |
| Orahii,Iveren | 110490 | MCO Educational Series 10 | Class |
| Poventud,Christal | 110490 | MCO Educational Series 10 | Class |
| Hanse,Tyrese | 110490 | MCO Educational Series 10 | Class |
| NIEVES,VICTOR | 110490 | MCO Educational Series 10 | Class |
| Simmons,Liayana | 110490 | MCO Educational Series 10 | Class |
| Ricketts,Antione | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Jimenez,Nathaniel Joel | 110490 | MCO Educational Series 10 | Class |
| Beltre,Annie | 110490 | MCO Educational Series 10 | Class |
| Lavandier,Jose L | 110490 | MCO Educational Series 10 | Class |
| Green,Roger | 110490 | MCO Educational Series 10 | Class |
| Desrosiers,Luce Handie | 110490 | MCO Educational Series 10 | Class |
| Cherry,Benjamin | 110490 | MCO Educational Series 10 | Class |
| Moultrie,Jonetta | 110490 | MCO Educational Series 10 | Class |
| Bruzzese,Giro | 110490 | MCO Educational Series 10 | Class |
| Abrams Sr,Selwyn Stanford | 110490 | MCO Educational Series 10 | Class |
| Martinez,Jocelyn | 110490 | MCO Educational Series 10 | Class |
| Ayeni,Lyna Lyna | 110490 | MCO Educational Series 10 | Class |
| Bowers,Adrian | 110490 | MCO Educational Series 10 | Class |
| Bowers,Adrian | 110490 | MCO Educational Series 10 | Class |
| Gordon,Jasmine | 110490 | MCO Educational Series 10 | Class |
| Robinson,Darryl | 110490 | MCO Educational Series 10 | Class |
| Tejada,Carlos | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Natalia | 110490 | MCO Educational Series 10 | Class |
| Patala,John Steven | 110490 | MCO Educational Series 10 | Class |
| Mendoza,Kate | 110490 | MCO Educational Series 10 | Class |
| Torija Gutierrez,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Delicia,David | 110490 | MCO Educational Series 10 | Class |
| White,Lizzie | 110490 | MCO Educational Series 10 | Class |
| vega,angela a | 110490 | MCO Educational Series 10 | Class |
| Ali,Mohammed | 110490 | MCO Educational Series 10 | Class |
| Berrios,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Diaz,Maria Jose | 110490 | MCO Educational Series 10 | Class |
| Diaz,Maria Jose | 110490 | MCO Educational Series 10 | Class |
| Nielsen,Britney Christina | 110490 | MCO Educational Series 10 | Class |
| Ads,Ahmed | 110490 | MCO Educational Series 10 | Class |
| Wijesekara,Dhanushka Niranjith | 110490 | MCO Educational Series 10 | Class |
| Mendez,Adam | 110490 | MCO Educational Series 10 | Class |
| FIERRO GARCIA,SANTIAGO DAVID | 110490 | MCO Educational Series 10 | Class |
| Spielberg,Joseph | 110490 | MCO Educational Series 10 | Class |
| Gamboa,sharon | 110490 | MCO Educational Series 10 | Class |
| Pacora,kiara | 110490 | MCO Educational Series 10 | Class |
| Moncada,Paola | 110490 | MCO Educational Series 10 | Class |
| Gibbons,alex | 110490 | MCO Educational Series 10 | Class |
| Sowe,Cherno | 110490 | MCO Educational Series 10 | Class |
| CYRIL,JANICE | 110490 | MCO Educational Series 10 | Class |
| White,Steve | 110490 | MCO Educational Series 10 | Class |
| Balestrieri,John | 110490 | MCO Educational Series 10 | Class |
| Buchanan,Cynthia | 110490 | MCO Educational Series 10 | Class |
| Montalva Cacha,Jose | 110490 | MCO Educational Series 10 | Class |
| Brazoban,Ironeli | 110490 | MCO Educational Series 10 | Class |
| Louis-jeune,Bradley | 110490 | MCO Educational Series 10 | Class |
| Eronini,Serena | 110490 | MCO Educational Series 10 | Class |
| Applewhite,Joshua | 110490 | MCO Educational Series 10 | Class |
| Orellana,Josue Alejandro | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Griffith,Aaron | 110490 | MCO Educational Series 10 | Class |
| Lorenzana,Samantha | 110490 | MCO Educational Series 10 | Class |
| Murad,Lisa Rose | 110490 | MCO Educational Series 10 | Class |
| animashaun,Ishola | 110490 | MCO Educational Series 10 | Class |
| Flores,Erik | 110490 | MCO Educational Series 10 | Class |
| Abreu,Enmanuel | 110490 | MCO Educational Series 10 | Class |
| Turla,Rodney | 110490 | MCO Educational Series 10 | Class |
| OLAYINKA,AMANDA EMEM | 110490 | MCO Educational Series 10 | Class |
| Rivera,Lydia E | 110490 | MCO Educational Series 10 | Class |
| Maldonado,Shakyra | 110490 | MCO Educational Series 10 | Class |
| Akimov,Dmitrii | 110490 | MCO Educational Series 10 | Class |
| Lopez-basurto,Victor | 110490 | MCO Educational Series 10 | Class |
| Vazquez,Lixsi | 110490 | MCO Educational Series 10 | Class |
| Avila,Leslye | 110490 | MCO Educational Series 10 | Class |
| Avila,Leslye | 110490 | MCO Educational Series 10 | Class |
| mclean,kadicia | 110490 | MCO Educational Series 10 | Class |
| Swinton,Di-jon | 110490 | MCO Educational Series 10 | Class |
| Nieves,Benito | 110490 | MCO Educational Series 10 | Class |
| Iturbe,Dinora | 110490 | MCO Educational Series 10 | Class |
| Nicoletti,Robert John | 110490 | MCO Educational Series 10 | Class |
| Discar,John | 110490 | MCO Educational Series 10 | Class |
| Israeil,Fadi | 110490 | MCO Educational Series 10 | Class |
| Israeil,Fadi | 110490 | MCO Educational Series 10 | Class |
| Mcalmont,Derek | 110490 | MCO Educational Series 10 | Class |
| Plaza,Thomas | 110490 | MCO Educational Series 10 | Class |
| DeStefano,Michael | 110490 | MCO Educational Series 10 | Class |
| Jacovino,Brigette | 110490 | MCO Educational Series 10 | Class |
| Almazo,Jackie Citlali | 110490 | MCO Educational Series 10 | Class |
| smith,Kytreil | 110490 | MCO Educational Series 10 | Class |
| smith,Kytreil | 110490 | MCO Educational Series 10 | Class |
| Ellison,Markeith | 110490 | MCO Educational Series 10 | Class |
| codrington,kerry | 110490 | MCO Educational Series 10 | Class |
| Kosmala,Dorota | 110490 | MCO Educational Series 10 | Class |
| Adeyemo,Adedayo Oluwatimileyin | 110490 | MCO Educational Series 10 | Class |
| Tonto,Matilda | 110490 | MCO Educational Series 10 | Class |
| Nunez,Wanda | 110490 | MCO Educational Series 10 | Class |
| Robles,Daniel | 110490 | MCO Educational Series 10 | Class |
| John-Chance,Leaha | 110490 | MCO Educational Series 10 | Class |
| Ramos,Kaila | 110490 | MCO Educational Series 10 | Class |
| Gvildyte,Aurelija | 110490 | MCO Educational Series 10 | Class |
| Hannalla,safwat | 110490 | MCO Educational Series 10 | Class |
| Nieves,Crystal | 110490 | MCO Educational Series 10 | Class |
| Cabrera,Evelin | 110490 | MCO Educational Series 10 | Class |
| Reddin,April | 110490 | MCO Educational Series 10 | Class |
| Xhemollari,Ertugert | 110490 | MCO Educational Series 10 | Class |
| Cunningham,Cynthia | 110490 | MCO Educational Series 10 | Class |
| Lewis,Jacinda | 110490 | MCO Educational Series 10 | Class |
| Ratna.,K. | 110490 | MCO Educational Series 10 | Class |

Amazon_000278

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Alston,Shameese | 110490 | MCO Educational Series 10 | Class |
| Alston,Shameese | 110490 | MCO Educational Series 10 | Class |
| Pickering,Skye | 110490 | MCO Educational Series 10 | Class |
| Carmona,Nikolas | 110490 | MCO Educational Series 10 | Class |
| Murray,Jared | 110490 | MCO Educational Series 10 | Class |
| Caraballo,Jessica | 110490 | MCO Educational Series 10 | Class |
| Baez,Jim | 110490 | MCO Educational Series 10 | Class |
| Baird,David | 110490 | MCO Educational Series 10 | Class |
| Mosso,karina | 110490 | MCO Educational Series 10 | Class |
| Ceron,Luis | 110490 | MCO Educational Series 10 | Class |
| Ceron,Luis | 110490 | MCO Educational Series 10 | Class |
| Milo,Jared | 110490 | MCO Educational Series 10 | Class |
| Boateng,Philip | 110490 | MCO Educational Series 10 | Class |
| Gentles,Shanice | 110490 | MCO Educational Series 10 | Class |
| Masondo,Duduzile N | 110490 | MCO Educational Series 10 | Class |
| Stiebel,Maria | 110490 | MCO Educational Series 10 | Class |
| Vera,Jenifer Johana | 110490 | MCO Educational Series 10 | Class |
| Spencer,Natasha | 110490 | MCO Educational Series 10 | Class |
| Adeboye,Nafisat | 110490 | MCO Educational Series 10 | Class |
| Pierre,Clodin | 110490 | MCO Educational Series 10 | Class |
| Thomas,Yannick | 110490 | MCO Educational Series 10 | Class |
| Williams,Elijah | 110490 | MCO Educational Series 10 | Class |
| Bovell-Proffitt,Travis | 110490 | MCO Educational Series 10 | Class |
| Jean baptiste,Jacques Ralph | 110490 | MCO Educational Series 10 | Class |
| Murdah,James A | 110490 | MCO Educational Series 10 | Class |
| Sweeper,Samantha | 110490 | MCO Educational Series 10 | Class |
| Tellez,Mario A | 110490 | MCO Educational Series 10 | Class |
| Horton,Yolanda | 110490 | MCO Educational Series 10 | Class |
| Gannon,Thomas | 110490 | MCO Educational Series 10 | Class |
| Holley,Tiesha | 110490 | MCO Educational Series 10 | Class |
| Zhou,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Felix,Stewart Stewart | 110490 | MCO Educational Series 10 | Class |
| Agyemang,Randy | 110490 | MCO Educational Series 10 | Class |
| Nunez,Jose Miguel | 110490 | MCO Educational Series 10 | Class |
| Johnson,Jazmine | 110490 | MCO Educational Series 10 | Class |
| Johnson,Jazmine | 110490 | MCO Educational Series 10 | Class |
| Lee,Sean | 110490 | MCO Educational Series 10 | Class |
| bogat weathley,sharon | 110490 | MCO Educational Series 10 | Class |
| perry,timothy alfonzo | 110490 | MCO Educational Series 10 | Class |
| Khashan,Amgad Azmi Awad | 110490 | MCO Educational Series 10 | Class |
| Rivera,Christina | 110490 | MCO Educational Series 10 | Class |
| Panfilo-Lira,Yonathan | 110490 | MCO Educational Series 10 | Class |
| Best,Kevin | 110490 | MCO Educational Series 10 | Class |
| martinez,tristan ray | 110490 | MCO Educational Series 10 | Class |
| martinez,tristan ray | 110490 | MCO Educational Series 10 | Class |
| Fordjour,Francis Aboagye | 110490 | MCO Educational Series 10 | Class |
| Obdeus,Samantha | 110490 | MCO Educational Series 10 | Class |
| Mendez,George Michael | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Bristol,Dexter | 110490 | MCO Educational Series 10 | Class |
| Parker,Yasmeen Aaliyah-Marie | 110490 | MCO Educational Series 10 | Class |
| harp,nicole | 110490 | MCO Educational Series 10 | Class |
| Jiang,Xin | 110490 | MCO Educational Series 10 | Class |
| Morales,Rodel Velasco | 110490 | MCO Educational Series 10 | Class |
| Kuk,MiPokMinjung | 110490 | MCO Educational Series 10 | Class |
| Castellano,Sarah | 110490 | MCO Educational Series 10 | Class |
| Dasrath,Ramchand | 110490 | MCO Educational Series 10 | Class |
| Roberts,John Wendell | 110490 | MCO Educational Series 10 | Class |
| Zapata,Jason | 110490 | MCO Educational Series 10 | Class |
| Morris,Magdy | 110490 | MCO Educational Series 10 | Class |
| Olayinka,Idris Olakunle | 110490 | MCO Educational Series 10 | Class |
| Perez,Eleanor | 110490 | MCO Educational Series 10 | Class |
| Waithe,Tieisha | 110490 | MCO Educational Series 10 | Class |
| Cuevas,Hayley | 110490 | MCO Educational Series 10 | Class |
| palomo campos,pedro | 110490 | MCO Educational Series 10 | Class |
| Morales,Jessenia | 110490 | MCO Educational Series 10 | Class |
| Sibal,Christopher | 110490 | MCO Educational Series 10 | Class |
| Kien,Brian Hieu | 110490 | MCO Educational Series 10 | Class |
| Villegas,Giovanni | 110490 | MCO Educational Series 10 | Class |
| Cooper,Jacob | 110490 | MCO Educational Series 10 | Class |
| Cooper,Jacob | 110490 | MCO Educational Series 10 | Class |
| duncan,makaylah chanelle | 110490 | MCO Educational Series 10 | Class |
| Mon,Theingi Thet | 110490 | MCO Educational Series 10 | Class |
| Salu,Temi | 110490 | MCO Educational Series 10 | Class |
| Cardona,Anthony | 110490 | MCO Educational Series 10 | Class |
| Calixto,Noheli | 110490 | MCO Educational Series 10 | Class |
| KONE,SINDOU | 110490 | MCO Educational Series 10 | Class |
| Pippens,Monroe | 110490 | MCO Educational Series 10 | Class |
| coletti,nicole | 110490 | MCO Educational Series 10 | Class |
| Naselli,Nick Antonio | 110490 | MCO Educational Series 10 | Class |
| Javier,Mariana | 110490 | MCO Educational Series 10 | Class |
| Maldonado,Gensy Omar | 110490 | MCO Educational Series 10 | Class |
| Elsokary,Mohammed | 110490 | MCO Educational Series 10 | Class |
| Lampley,Monica | 110490 | MCO Educational Series 10 | Class |
| Arias,Marcia | 110490 | MCO Educational Series 10 | Class |
| Borja,Alonso E | 110490 | MCO Educational Series 10 | Class |
| Mikhail,Sameh | 110490 | MCO Educational Series 10 | Class |
| LEE,CHRISTOPHER | 110490 | MCO Educational Series 10 | Class |
| Williams,Messiah | 110490 | MCO Educational Series 10 | Class |
| Martinez,Jasmine | 110490 | MCO Educational Series 10 | Class |
| Coccaro,Joseph Michael | 110490 | MCO Educational Series 10 | Class |
| Vidal,Miguel | 110490 | MCO Educational Series 10 | Class |
| Wilson,Ebenezer Essilfie | 110490 | MCO Educational Series 10 | Class |
| Joseph,Terrell | 110490 | MCO Educational Series 10 | Class |
| Walker,Janet | 110490 | MCO Educational Series 10 | Class |
| DiCarlo,Tyla | 110490 | MCO Educational Series 10 | Class |
| Neil,Norman | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Olmedo,Janet | 110490 | MCO Educational Series 10 | Class |
| Pellegrino,Cryptid Lyn | 110490 | MCO Educational Series 10 | Class |
| Makar,Magdy | 110490 | MCO Educational Series 10 | Class |
| Loughery,Daniel | 110490 | MCO Educational Series 10 | Class |
| Pena,Jarelis | 110490 | MCO Educational Series 10 | Class |
| Mazzeo,Joseph | 110490 | MCO Educational Series 10 | Class |
| Ventura,Joel | 110490 | MCO Educational Series 10 | Class |
| Can,Emine | 110490 | MCO Educational Series 10 | Class |
| RANDAZZO,Gaspare | 110490 | MCO Educational Series 10 | Class |
| Alvarez,Luz Zeneyda | 110490 | MCO Educational Series 10 | Class |
| Witherspoon,Aja | 110490 | MCO Educational Series 10 | Class |
| Foster,Nicole | 110490 | MCO Educational Series 10 | Class |
| mejia,bryan | 110490 | MCO Educational Series 10 | Class |
| Bogle,Tiffany | 110490 | MCO Educational Series 10 | Class |
| Gubitosi,James | 110490 | MCO Educational Series 10 | Class |
| Gutierrez,Angel | 110490 | MCO Educational Series 10 | Class |
| Oshindele,Adeniyi | 110490 | MCO Educational Series 10 | Class |
| Virgin,Shannon | 110490 | MCO Educational Series 10 | Class |
| Perez,Lizmarie | 110490 | MCO Educational Series 10 | Class |
| Jones,Ali | 110490 | MCO Educational Series 10 | Class |
| Hines,Denee | 110490 | MCO Educational Series 10 | Class |
| Youla,Moussa | 110490 | MCO Educational Series 10 | Class |
| hernandez,Jaime | 110490 | MCO Educational Series 10 | Class |
| Colon Jr,Hector F | 110490 | MCO Educational Series 10 | Class |
| Robinson,Rey | 110490 | MCO Educational Series 10 | Class |
| russo,denise | 110490 | MCO Educational Series 10 | Class |
| Hargrove,Azure | 110490 | MCO Educational Series 10 | Class |
| Saunders,Samantha | 110490 | MCO Educational Series 10 | Class |
| Leclerc,Gleidy | 110490 | MCO Educational Series 10 | Class |
| Ali,Mohammad Ahasan | 110490 | MCO Educational Series 10 | Class |
| Isler,Chris | 110490 | MCO Educational Series 10 | Class |
| Gomez Guzman,Alexis | 110490 | MCO Educational Series 10 | Class |
| Solorzano,Alondra Belen | 110490 | MCO Educational Series 10 | Class |
| Centron,Emelita | 110490 | MCO Educational Series 10 | Class |
| Richardson,Tamara T | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Osvaldo Lorenzo | 110490 | MCO Educational Series 10 | Class |
| baldeh,ousman | 110490 | MCO Educational Series 10 | Class |
| Dickerson,Princess | 110490 | MCO Educational Series 10 | Class |
| Hamilton,Delitha | 110490 | MCO Educational Series 10 | Class |
| Ramos,Ariel | 110490 | MCO Educational Series 10 | Class |
| Nicholas,Jheri | 110490 | MCO Educational Series 10 | Class |
| Recinos,Veronica | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Sharon Maybelline | 110490 | MCO Educational Series 10 | Class |
| Miller,Paul | 110490 | MCO Educational Series 10 | Class |
| Pannasch,Daniel | 110490 | MCO Educational Series 10 | Class |
| Olmedo,Jessica | 110490 | MCO Educational Series 10 | Class |
| Owens,Thomas | 110490 | MCO Educational Series 10 | Class |
| Kamara,Natasha Caprice | 110490 | MCO Educational Series 10 | Class |

Amazon_000281

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Falcon,Sam | 110490 | MCO Educational Series 10 | Class |
| Baig,Muhammad A | 110490 | MCO Educational Series 10 | Class |
| Dawson,Octavia | 110490 | MCO Educational Series 10 | Class |
| Ulloa,Genesis | 110490 | MCO Educational Series 10 | Class |
| andrews,Trudie | 110490 | MCO Educational Series 10 | Class |
| Morina,Edmond | 110490 | MCO Educational Series 10 | Class |
| Morina,Edmond | 110490 | MCO Educational Series 10 | Class |
| Dauti,Dona | 110490 | MCO Educational Series 10 | Class |
| Montas,Roberto | 110490 | MCO Educational Series 10 | Class |
| Andron,Edward | 110490 | MCO Educational Series 10 | Class |
| Johnson,Toreron | 110490 | MCO Educational Series 10 | Class |
| Miscione,Joseph | 110490 | MCO Educational Series 10 | Class |
| badran,ahmed | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Hiberia | 110490 | MCO Educational Series 10 | Class |
| Marksman,Cuthbert | 110490 | MCO Educational Series 10 | Class |
| Pun,Fu Ling | 110490 | MCO Educational Series 10 | Class |
| Pittman,Aaron | 110490 | MCO Educational Series 10 | Class |
| Banievicz,Alexander | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Matthew | 110490 | MCO Educational Series 10 | Class |
| Laroche,Hermann | 110490 | MCO Educational Series 10 | Class |
| Montalvo,Janiece | 110490 | MCO Educational Series 10 | Class |
| Glenn,Marvin | 110490 | MCO Educational Series 10 | Class |
| Amiraly,Pendo | 110490 | MCO Educational Series 10 | Class |
| Brenes,Gabriel | 110490 | MCO Educational Series 10 | Class |
| Gustave,Merldon | 110490 | MCO Educational Series 10 | Class |
| Powers,Aneesa | 110490 | MCO Educational Series 10 | Class |
| Lam,Windy | 110490 | MCO Educational Series 10 | Class |
| Pina Feliz,Joel | 110490 | MCO Educational Series 10 | Class |
| Chan,Sup Mooi | 110490 | MCO Educational Series 10 | Class |
| Pecoraro,Robert | 110490 | MCO Educational Series 10 | Class |
| Speciale,Christina | 110490 | MCO Educational Series 10 | Class |
| Colon,Justice | 110490 | MCO Educational Series 10 | Class |
| Desronvil,Allex | 110490 | MCO Educational Series 10 | Class |
| Yusuf,Aziyah | 110490 | MCO Educational Series 10 | Class |
| Wagner,Sidney Marc | 110490 | MCO Educational Series 10 | Class |
| Cruz,Lizmarie | 110490 | MCO Educational Series 10 | Class |
| Gilmore,Kimberly | 110490 | MCO Educational Series 10 | Class |
| Bhuiyan,Mohammad | 110490 | MCO Educational Series 10 | Class |
| Suarez,Matthew | 110490 | MCO Educational Series 10 | Class |
| Watkins,Arric | 110490 | MCO Educational Series 10 | Class |
| Evans,Lupe | 110490 | MCO Educational Series 10 | Class |
| Balogun,Samusideen | 110490 | MCO Educational Series 10 | Class |
| Chen,Jingjing | 110490 | MCO Educational Series 10 | Class |
| Anwar,Khurshid Anwar | 110490 | MCO Educational Series 10 | Class |
| Quezada,Raysa | 110490 | MCO Educational Series 10 | Class |
| mubin,khurram | 110490 | MCO Educational Series 10 | Class |
| KEITA,MARIE | 110490 | MCO Educational Series 10 | Class |
| Bartuccelli,Deanna | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Thomas,April | 110490 | MCO Educational Series 10 | Class |
| Andersen,Kerri | 110490 | MCO Educational Series 10 | Class |
| Alawlaqi,Saleh | 110490 | MCO Educational Series 10 | Class |
| keita,oumou | 110490 | MCO Educational Series 10 | Class |
| ortiz,newton m | 110490 | MCO Educational Series 10 | Class |
| gamaralla gedara,sameera | 110490 | MCO Educational Series 10 | Class |
| Perea,April | 110490 | MCO Educational Series 10 | Class |
| Clarke,Gerard | 110490 | MCO Educational Series 10 | Class |
| valdez,Alexander | 110490 | MCO Educational Series 10 | Class |
| Middleton,Leandra | 110490 | MCO Educational Series 10 | Class |
| Kneeshaw,Ciara Aileen | 110490 | MCO Educational Series 10 | Class |
| Cuenca,Humberto | 110490 | MCO Educational Series 10 | Class |
| Baez,Erica M | 110490 | MCO Educational Series 10 | Class |
| Flaherty,Kevin | 110490 | MCO Educational Series 10 | Class |
| valentine,lonnie | 110490 | MCO Educational Series 10 | Class |
| Harrington,Deion | 110490 | MCO Educational Series 10 | Class |
| Harrington,Deion | 110490 | MCO Educational Series 10 | Class |
| Teixeira,Bernardo | 110490 | MCO Educational Series 10 | Class |
| Teixeira,Bernardo | 110490 | MCO Educational Series 10 | Class |
| Hamilton,Phillon | 110490 | MCO Educational Series 10 | Class |
| McNeill,Mamie C | 110490 | MCO Educational Series 10 | Class |
| Layana,Bertha | 110490 | MCO Educational Series 10 | Class |
| Myers III,Vincent | 110490 | MCO Educational Series 10 | Class |
| Asbell,Tevin | 110490 | MCO Educational Series 10 | Class |
| Overgaard,Eric | 110490 | MCO Educational Series 10 | Class |
| Uruchima,Isamar | 110490 | MCO Educational Series 10 | Class |
| Smith,Eric J | 110490 | MCO Educational Series 10 | Class |
| Dolah,A.Rod | 110490 | MCO Educational Series 10 | Class |
| Waithe,Teleisha | 110490 | MCO Educational Series 10 | Class |
| Riddick,Malachi | 110490 | MCO Educational Series 10 | Class |
| Petithomme,Widmia | 110490 | MCO Educational Series 10 | Class |
| Guzman,Davy Michael | 110490 | MCO Educational Series 10 | Class |
| Parker,Damion | 110490 | MCO Educational Series 10 | Class |
| Petion,Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Florestal,Gontrand Elister | 110490 | MCO Educational Series 10 | Class |
| Grogan,Jon | 110490 | MCO Educational Series 10 | Class |
| ibenegbu,Stanley | 110490 | MCO Educational Series 10 | Class |
| Fontanez,Hector | 110490 | MCO Educational Series 10 | Class |
| Cruz,Victoria | 110490 | MCO Educational Series 10 | Class |
| Smith,Jordan | 110490 | MCO Educational Series 10 | Class |
| Spence,Connor | 110490 | MCO Educational Series 10 | Class |
| Arice,Sherwin | 110490 | MCO Educational Series 10 | Class |
| Minnis,Tyrone | 110490 | MCO Educational Series 10 | Class |
| Daly,Angela K | 110490 | MCO Educational Series 10 | Class |
| Upson,Danay | 110490 | MCO Educational Series 10 | Class |
| Udoffia,Blessing | 110490 | MCO Educational Series 10 | Class |
| HART,ROBERT | 110490 | MCO Educational Series 10 | Class |
| Manrique,Melissa R | 110490 | MCO Educational Series 10 | Class |

Amazon_000283

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Zukowski,William | 110490 | MCO Educational Series 10 | Class |
| Scott,Gerard | 110490 | MCO Educational Series 10 | Class |
| Cipollone,Sandra Patricia | 110490 | MCO Educational Series 10 | Class |
| Gatto,Ronald | 110490 | MCO Educational Series 10 | Class |
| foster,Ricardo Carlos | 110490 | MCO Educational Series 10 | Class |
| Salas,Jose | 110490 | MCO Educational Series 10 | Class |
| Russo,Salvatore | 110490 | MCO Educational Series 10 | Class |
| Wilson,Brian | 110490 | MCO Educational Series 10 | Class |
| Sanders,Trinicia | 110490 | MCO Educational Series 10 | Class |
| Cortez,Jose | 110490 | MCO Educational Series 10 | Class |
| Cortez,Jose | 110490 | MCO Educational Series 10 | Class |
| Thompson,Manuel | 110490 | MCO Educational Series 10 | Class |
| McLymont,Cornelia | 110490 | MCO Educational Series 10 | Class |
| PEREZ,WERNER AGUSTIN | 110490 | MCO Educational Series 10 | Class |
| Reyes,Carmen M | 110490 | MCO Educational Series 10 | Class |
| Castillo,Jose | 110490 | MCO Educational Series 10 | Class |
| Valentin,Sandra | 110490 | MCO Educational Series 10 | Class |
| Cruz,Michael Adam | 110490 | MCO Educational Series 10 | Class |
| Lawson,Debbie | 110490 | MCO Educational Series 10 | Class |
| Garcia,Eugenia | 110490 | MCO Educational Series 10 | Class |
| Garcia,Eugenia | 110490 | MCO Educational Series 10 | Class |
| Staten-Wynn,Koran | 110490 | MCO Educational Series 10 | Class |
| Vann,Niesha | 110490 | MCO Educational Series 10 | Class |
| Aget,Chris | 110490 | MCO Educational Series 10 | Class |
| Krah,Jesse | 110490 | MCO Educational Series 10 | Class |
| CHIMEZIE,WISDOM | 110490 | MCO Educational Series 10 | Class |
| Boynes,Deija | 110490 | MCO Educational Series 10 | Class |
| Keefer,Phil | 110490 | MCO Educational Series 10 | Class |
| Zahorniak Sr,Michael Charles | 110490 | MCO Educational Series 10 | Class |
| Campbell,Katherine | 110490 | MCO Educational Series 10 | Class |
| Paez,Brendan | 110490 | MCO Educational Series 10 | Class |
| Luna,Adenauer | 110490 | MCO Educational Series 10 | Class |
| Williams,Javian | 110490 | MCO Educational Series 10 | Class |
| Williams,Javian | 110490 | MCO Educational Series 10 | Class |
| Trapasso,maureen | 110490 | MCO Educational Series 10 | Class |
| Bowman,Sam | 110490 | MCO Educational Series 10 | Class |
| Mikhail,Mina | 110490 | MCO Educational Series 10 | Class |
| Prestera,Matthew | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Daymaris | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Daymaris | 110490 | MCO Educational Series 10 | Class |
| Gikeneh,Alimami | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Oscar | 110490 | MCO Educational Series 10 | Class |
| Vixama,Caleb M | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Marcela | 110490 | MCO Educational Series 10 | Class |
| Baggot Jr,Thomas M | 110490 | MCO Educational Series 10 | Class |
| Olugbodi,Favour | 110490 | MCO Educational Series 10 | Class |
| Lima,Esteban | 110490 | MCO Educational Series 10 | Class |
| cateau,glendon | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Campbell,Jared | 110490 | MCO Educational Series 10 | Class |
| Burgess,Antila | 110490 | MCO Educational Series 10 | Class |
| Barber,Christina Marie | 110490 | MCO Educational Series 10 | Class |
| Meza,Jose A. | 110490 | MCO Educational Series 10 | Class |
| Smilyanets,Andriy | 110490 | MCO Educational Series 10 | Class |
| prasetya,Adrian | 110490 | MCO Educational Series 10 | Class |
| Triminio Paz,Lesly Anyel | 110490 | MCO Educational Series 10 | Class |
| Williams,Romario | 110490 | MCO Educational Series 10 | Class |
| Santiago,Tupac | 110490 | MCO Educational Series 10 | Class |
| Buduen Jr,Daniel | 110490 | MCO Educational Series 10 | Class |
| ko,Minjeong | 110490 | MCO Educational Series 10 | Class |
| Savoca,Michael | 110490 | MCO Educational Series 10 | Class |
| Morales,Christopher | 110490 | MCO Educational Series 10 | Class |
| Thomas,Donti | 110490 | MCO Educational Series 10 | Class |
| Canty,Laquana | 110490 | MCO Educational Series 10 | Class |
| Munoz,Louis | 110490 | MCO Educational Series 10 | Class |
| Campbell,tyrell nathan | 110490 | MCO Educational Series 10 | Class |
| Kakassy,Evan | 110490 | MCO Educational Series 10 | Class |
| Tavares,Rocky | 110490 | MCO Educational Series 10 | Class |
| Contreras,Mike Carlos | 110490 | MCO Educational Series 10 | Class |
| Daniel,Mark | 110490 | MCO Educational Series 10 | Class |
| Jimenez,Jose Manuel | 110490 | MCO Educational Series 10 | Class |
| Baron,Raquiel | 110490 | MCO Educational Series 10 | Class |
| Torres,Whitney | 110490 | MCO Educational Series 10 | Class |
| Coxaj depaz,Juan M | 110490 | MCO Educational Series 10 | Class |
| jarvis,Mia | 110490 | MCO Educational Series 10 | Class |
| Quartararo,Robert | 110490 | MCO Educational Series 10 | Class |
| Roman,Edwin | 110490 | MCO Educational Series 10 | Class |
| Mostafa,Esraa Mahmoud | 110490 | MCO Educational Series 10 | Class |
| Sutherland,Chris | 110490 | MCO Educational Series 10 | Class |
| gouda,veronica | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Andres | 110490 | MCO Educational Series 10 | Class |
| Bayensi,Joseph | 110490 | MCO Educational Series 10 | Class |
| Perdomo,Isamar | 110490 | MCO Educational Series 10 | Class |
| Clark,Philip | 110490 | MCO Educational Series 10 | Class |
| Pucci,Richard | 110490 | MCO Educational Series 10 | Class |
| Martinez,Zachary | 110490 | MCO Educational Series 10 | Class |
| Vazquez,Tony Alejandro | 110490 | MCO Educational Series 10 | Class |
| Ashman-Samuels,Chalese Julia | 110490 | MCO Educational Series 10 | Class |
| Schleifer,Tyler D | 110490 | MCO Educational Series 10 | Class |
| Rios,Carlos | 110490 | MCO Educational Series 10 | Class |
| Reyes,Martha | 110490 | MCO Educational Series 10 | Class |
| Reyes,Martha | 110490 | MCO Educational Series 10 | Class |
| Brown,Tracina | 110490 | MCO Educational Series 10 | Class |
| Santos,David | 110490 | MCO Educational Series 10 | Class |
| Reyes Morales,Maria | 110490 | MCO Educational Series 10 | Class |
| Mayorga,Lissette Lissette | 110490 | MCO Educational Series 10 | Class |
| Fuentes,Michael | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Williams,Jaquon | 110490 | MCO Educational Series 10 | Class |
| Webb,Ducky | 110490 | MCO Educational Series 10 | Class |
| Saab,Fatima | 110490 | MCO Educational Series 10 | Class |
| Babalola,Olufemi L | 110490 | MCO Educational Series 10 | Class |
| Siddiqui,Ibraheim | 110490 | MCO Educational Series 10 | Class |
| Siddiqui,Ibraheim | 110490 | MCO Educational Series 10 | Class |
| Martinez Claros,Angelica | 110490 | MCO Educational Series 10 | Class |
| Ortizlopez,Maribel | 110490 | MCO Educational Series 10 | Class |
| Rolon,Evelyn | 110490 | MCO Educational Series 10 | Class |
| Lessin,Erik John | 110490 | MCO Educational Series 10 | Class |
| Wainwright,Kimberly | 110490 | MCO Educational Series 10 | Class |
| Ousmaal,Hacene | 110490 | MCO Educational Series 10 | Class |
| Amin,Esther | 110490 | MCO Educational Series 10 | Class |
| Celli,James Michael | 110490 | MCO Educational Series 10 | Class |
| Dort,Marc | 110490 | MCO Educational Series 10 | Class |
| Calixto rosas,Adolph | 110490 | MCO Educational Series 10 | Class |
| Marku,Jasmina | 110490 | MCO Educational Series 10 | Class |
| Amuzie,Victor | 110490 | MCO Educational Series 10 | Class |
| Zuniga,Giovanne | 110490 | MCO Educational Series 10 | Class |
| Terrero,Felix | 110490 | MCO Educational Series 10 | Class |
| Galicia,Dominique | 110490 | MCO Educational Series 10 | Class |
| Nixon,Christina | 110490 | MCO Educational Series 10 | Class |
| Rivera,Vicky | 110490 | MCO Educational Series 10 | Class |
| Maghirang,Jerald | 110490 | MCO Educational Series 10 | Class |
| Ali,Elsiddig | 110490 | MCO Educational Series 10 | Class |
| Ali,Elsiddig | 110490 | MCO Educational Series 10 | Class |
| Nerestant,Jacqueline | 110490 | MCO Educational Series 10 | Class |
| Osuolale Alaka,Sunkanmi | 110490 | MCO Educational Series 10 | Class |
| Knowles,Patricia Verdell | 110490 | MCO Educational Series 10 | Class |
| Contreras,Gabriel | 110490 | MCO Educational Series 10 | Class |
| Gadsden,Brianna | 110490 | MCO Educational Series 10 | Class |
| Anam-etemfiok,Chinyere D | 110490 | MCO Educational Series 10 | Class |
| Aquino,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Paredes,Martha Lucia | 110490 | MCO Educational Series 10 | Class |
| Hassell,Gwendolyn F-A | 110490 | MCO Educational Series 10 | Class |
| Bello,Stephen | 110490 | MCO Educational Series 10 | Class |
| Von bracht Jr,Gerard | 110490 | MCO Educational Series 10 | Class |
| Shippley,Stephon | 110490 | MCO Educational Series 10 | Class |
| Chen,Evan | 110490 | MCO Educational Series 10 | Class |
| Tiu,Kleverson | 110490 | MCO Educational Series 10 | Class |
| Coppedge,Gary | 110490 | MCO Educational Series 10 | Class |
| Mathew,Aswin | 110490 | MCO Educational Series 10 | Class |
| navarro,Isabel Guadalupe | 110490 | MCO Educational Series 10 | Class |
| Ndoye,Ndeye Adama | 110490 | MCO Educational Series 10 | Class |
| Boudiaf,Ilyas | 110490 | MCO Educational Series 10 | Class |
| Catoire,Kevin | 110490 | MCO Educational Series 10 | Class |
| lugo,michael | 110490 | MCO Educational Series 10 | Class |
| Nwaiwu,CYRIACUS Emeka | 110490 | MCO Educational Series 10 | Class |

Amazon_000286

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Nwaiwu,CYRIACUS Emeka | 110490 | MCO Educational Series 10 | Class |
| Enriquez,David Patrick | 110490 | MCO Educational Series 10 | Class |
| Zhang,Yixiang | 110490 | MCO Educational Series 10 | Class |
| Lai,Percy | 110490 | MCO Educational Series 10 | Class |
| Resuta,Herman | 110490 | MCO Educational Series 10 | Class |
| Campbell,Tamia | 110490 | MCO Educational Series 10 | Class |
| Guzman,Estefany | 110490 | MCO Educational Series 10 | Class |
| Jackson,Reginald Kevin | 110490 | MCO Educational Series 10 | Class |
| Pizzuto,Anthony | 110490 | MCO Educational Series 10 | Class |
| Young,Rosario Katherine | 110490 | MCO Educational Series 10 | Class |
| vanMaanen,Brandon | 110490 | MCO Educational Series 10 | Class |
| Lopez,Victor Ruy | 110490 | MCO Educational Series 10 | Class |
| Chen,Kevin | 110490 | MCO Educational Series 10 | Class |
| Bordes,David | 110490 | MCO Educational Series 10 | Class |
| Walker,Charles Abraham | 110490 | MCO Educational Series 10 | Class |
| Alcide,Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Panzardi,Jonathan L | 110490 | MCO Educational Series 10 | Class |
| rivera,yonatan | 110490 | MCO Educational Series 10 | Class |
| White,Trimeshia | 110490 | MCO Educational Series 10 | Class |
| Kazmi,Syed Abbas | 110490 | MCO Educational Series 10 | Class |
| Jordan,Erik | 110490 | MCO Educational Series 10 | Class |
| Dejesus,Xariel Lee | 110490 | MCO Educational Series 10 | Class |
| Martinez,Melissa | 110490 | MCO Educational Series 10 | Class |
| Villanueva,Johann | 110490 | MCO Educational Series 10 | Class |
| Jackson,Taymek | 110490 | MCO Educational Series 10 | Class |
| Kearse,Leanette | 110490 | MCO Educational Series 10 | Class |
| Neri,Alicia | 110490 | MCO Educational Series 10 | Class |
| Moriah,Keyanna | 110490 | MCO Educational Series 10 | Class |
| Johnson,Jerdeani | 110490 | MCO Educational Series 10 | Class |
| Mclaughlin,Damian | 110490 | MCO Educational Series 10 | Class |
| McAlpine,Marcus | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Jose L | 110490 | MCO Educational Series 10 | Class |
| Derisse,Roody | 110490 | MCO Educational Series 10 | Class |
| Mendez,Jhoana | 110490 | MCO Educational Series 10 | Class |
| Rogers,Shaheim | 110490 | MCO Educational Series 10 | Class |
| Cisse,Vamory | 110490 | MCO Educational Series 10 | Class |
| Cisse,Vamory | 110490 | MCO Educational Series 10 | Class |
| Gil,Mary Leidy | 110490 | MCO Educational Series 10 | Class |
| Brown,Beyonce | 110490 | MCO Educational Series 10 | Class |
| Fazio,Thomas M | 110490 | MCO Educational Series 10 | Class |
| blaise,isaac | 110490 | MCO Educational Series 10 | Class |
| Yehia,Donna | 110490 | MCO Educational Series 10 | Class |
| Beninati,Vincent | 110490 | MCO Educational Series 10 | Class |
| Birnbaum,David B | 110490 | MCO Educational Series 10 | Class |
| Gray,Aron | 110490 | MCO Educational Series 10 | Class |
| Crespo,Melanie | 110490 | MCO Educational Series 10 | Class |
| Olivier,Klani | 110490 | MCO Educational Series 10 | Class |
| Prestigiacomo,Charles | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Walker,Everton | 110490 | MCO Educational Series 10 | Class |
| Felice,Francine | 110490 | MCO Educational Series 10 | Class |
| Felice,Francine | 110490 | MCO Educational Series 10 | Class |
| Dlimi,Mouhcine | 110490 | MCO Educational Series 10 | Class |
| Romero,Dulce Fabiola | 110490 | MCO Educational Series 10 | Class |
| Cabrera,Dulce | 110490 | MCO Educational Series 10 | Class |
| gavins,Jermaine | 110490 | MCO Educational Series 10 | Class |
| Hedges,Rasheen | 110490 | MCO Educational Series 10 | Class |
| Palomeque,Jessi | 110490 | MCO Educational Series 10 | Class |
| Miller,Shaaid | 110490 | MCO Educational Series 10 | Class |
| Rivera,John | 110490 | MCO Educational Series 10 | Class |
| Quezada,Rodenny | 110490 | MCO Educational Series 10 | Class |
| Kelly,Edison Galen | 110490 | MCO Educational Series 10 | Class |
| Lam,Hong | 110490 | MCO Educational Series 10 | Class |
| Kopetic,Anthony John | 110490 | MCO Educational Series 10 | Class |
| Castillo,Darian | 110490 | MCO Educational Series 10 | Class |
| Camacho,Jermain | 110490 | MCO Educational Series 10 | Class |
| Delice,Eric Kendall | 110490 | MCO Educational Series 10 | Class |
| GAMBOA STOKES,DENNIS A | 110490 | MCO Educational Series 10 | Class |
| Martinez Garcia,Josefina | 110490 | MCO Educational Series 10 | Class |
| Guo,Zebin | 110490 | MCO Educational Series 10 | Class |
| Gutierrez,orlando | 110490 | MCO Educational Series 10 | Class |
| Norris,Marwan Mike | 110490 | MCO Educational Series 10 | Class |
| Williams-Solana,Onosewa | 110490 | MCO Educational Series 10 | Class |
| Maldonado,Nicole | 110490 | MCO Educational Series 10 | Class |
| Habersham,Stephanie | 110490 | MCO Educational Series 10 | Class |
| Rentas,Guillermo | 110490 | MCO Educational Series 10 | Class |
| Tun,Zaw Yar Zar | 110490 | MCO Educational Series 10 | Class |
| Fox,Gabriel | 110490 | MCO Educational Series 10 | Class |
| Min,AyeChan | 110490 | MCO Educational Series 10 | Class |
| ORIAKHI,OSAGIE | 110490 | MCO Educational Series 10 | Class |
| Acevedo,Jinevea | 110490 | MCO Educational Series 10 | Class |
| Ciceron,Emmanuela | 110490 | MCO Educational Series 10 | Class |
| Atete,Kelvin Ogheneochuko | 110490 | MCO Educational Series 10 | Class |
| phillips,cleo | 110490 | MCO Educational Series 10 | Class |
| Degraffenreid,Kamal | 110490 | MCO Educational Series 10 | Class |
| Stubbs,Viviam | 110490 | MCO Educational Series 10 | Class |
| Alcaide,Lydia | 110490 | MCO Educational Series 10 | Class |
| Morales,Brandon Lee | 110490 | MCO Educational Series 10 | Class |
| MARTINEZ,JAY | 110490 | MCO Educational Series 10 | Class |
| MARTINEZ,JAY | 110490 | MCO Educational Series 10 | Class |
| Carlos,Reamil | 110490 | MCO Educational Series 10 | Class |
| Orta,Noralee | 110490 | MCO Educational Series 10 | Class |
| Billings,Minaya Dominique | 110490 | MCO Educational Series 10 | Class |
| Carranza,Jason | 110490 | MCO Educational Series 10 | Class |
| Clemons,Brenda Irish | 110490 | MCO Educational Series 10 | Class |
| Phillip,Don | 110490 | MCO Educational Series 10 | Class |
| Navarro,Cruz | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Saunders,Anthony | 110490 | MCO Educational Series 10 | Class |
| Rios,Bryan | 110490 | MCO Educational Series 10 | Class |
| OSAKWE,sam | 110490 | MCO Educational Series 10 | Class |
| Czeisler,Elan | 110490 | MCO Educational Series 10 | Class |
| hanley,sharla | 110490 | MCO Educational Series 10 | Class |
| Lee,Haewon | 110490 | MCO Educational Series 10 | Class |
| Clarke,Sade | 110490 | MCO Educational Series 10 | Class |
| Tetteh,George | 110490 | MCO Educational Series 10 | Class |
| Forde,Sherwayne | 110490 | MCO Educational Series 10 | Class |
| Nkromah,Kwesi | 110490 | MCO Educational Series 10 | Class |
| LEON DE LA TORRE,BELISARIO | 110490 | MCO Educational Series 10 | Class |
| Pimentel,Ambar M | 110490 | MCO Educational Series 10 | Class |
| Daley,Richard Anthony | 110490 | MCO Educational Series 10 | Class |
| Bernard,Deasahni Gimhanika | 110490 | MCO Educational Series 10 | Class |
| Ng,Theresa | 110490 | MCO Educational Series 10 | Class |
| Ramos,Joshua B | 110490 | MCO Educational Series 10 | Class |
| Minton,Sarah | 110490 | MCO Educational Series 10 | Class |
| Nankumba,hadija | 110490 | MCO Educational Series 10 | Class |
| Mian,Irfan | 110490 | MCO Educational Series 10 | Class |
| nardone,nicole cynthia | 110490 | MCO Educational Series 10 | Class |
| Pacheco,Christian | 110490 | MCO Educational Series 10 | Class |
| Lucas,luke | 110490 | MCO Educational Series 10 | Class |
| Francois,Mislande | 110490 | MCO Educational Series 10 | Class |
| Rivera,Edwin L | 110490 | MCO Educational Series 10 | Class |
| Asprilla Cardenas,Judith | 110490 | MCO Educational Series 10 | Class |
| Rosas,Martin | 110490 | MCO Educational Series 10 | Class |
| Diawara,Sidy | 110490 | MCO Educational Series 10 | Class |
| Yakoub,Fares | 110490 | MCO Educational Series 10 | Class |
| Ahmed,Fahim | 110490 | MCO Educational Series 10 | Class |
| Oluokun,Olukemi | 110490 | MCO Educational Series 10 | Class |
| Ware,Annette | 110490 | MCO Educational Series 10 | Class |
| Castaneda,Kenia | 110490 | MCO Educational Series 10 | Class |
| guzman rondon,ysabel | 110490 | MCO Educational Series 10 | Class |
| Sadler,Nick | 110490 | MCO Educational Series 10 | Class |
| Danesi,Jafar | 110490 | MCO Educational Series 10 | Class |
| Ramirez,Jessica | 110490 | MCO Educational Series 10 | Class |
| Sylvince,Bernadette | 110490 | MCO Educational Series 10 | Class |
| Melendez-Fuster,Nikole | 110490 | MCO Educational Series 10 | Class |
| OROPO,ABDUSALAM | 110490 | MCO Educational Series 10 | Class |
| Williams,Shawanda L | 110490 | MCO Educational Series 10 | Class |
| Norris,Chanell | 110490 | MCO Educational Series 10 | Class |
| Martinez,Michael | 110490 | MCO Educational Series 10 | Class |
| Fernandez,Henry | 110490 | MCO Educational Series 10 | Class |
| Smith,Samuel D | 110490 | MCO Educational Series 10 | Class |
| warsaw,megan | 110490 | MCO Educational Series 10 | Class |
| Arouif,Youssef | 110490 | MCO Educational Series 10 | Class |
| Cordero,Nayeli | 110490 | MCO Educational Series 10 | Class |
| Johnson,Michael | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Antoine,Venix | 110490 | MCO Educational Series 10 | Class |
| Gloria,Sergio | 110490 | MCO Educational Series 10 | Class |
| Jenkins,Theodore | 110490 | MCO Educational Series 10 | Class |
| Perera,Nilan | 110490 | MCO Educational Series 10 | Class |
| ESTEVE,Max A | 110490 | MCO Educational Series 10 | Class |
| Dennis,Hopeton | 110490 | MCO Educational Series 10 | Class |
| Chen,Ming | 110490 | MCO Educational Series 10 | Class |
| Jones,Ojay | 110490 | MCO Educational Series 10 | Class |
| PELUFFO,Cesar | 110490 | MCO Educational Series 10 | Class |
| garcia,yicel y | 110490 | MCO Educational Series 10 | Class |
| Aguilar,Alicia | 110490 | MCO Educational Series 10 | Class |
| Jones,Venessa | 110490 | MCO Educational Series 10 | Class |
| Villegas,Olayemi Olubusola | 110490 | MCO Educational Series 10 | Class |
| Sampson,Philmore | 110490 | MCO Educational Series 10 | Class |
| Benavides,Daniella | 110490 | MCO Educational Series 10 | Class |
| Cambria,Bartholomew | 110490 | MCO Educational Series 10 | Class |
| Knowles,Kalem | 110490 | MCO Educational Series 10 | Class |
| Voltaire,Jean | 110490 | MCO Educational Series 10 | Class |
| Voltaire,Jean | 110490 | MCO Educational Series 10 | Class |
| Suriadi,Sudimin | 110490 | MCO Educational Series 10 | Class |
| Alvarez,Elisha | 110490 | MCO Educational Series 10 | Class |
| Murphy,Ian | 110490 | MCO Educational Series 10 | Class |
| Gibson,Kiana | 110490 | MCO Educational Series 10 | Class |
| vemula,Vikram | 110490 | MCO Educational Series 10 | Class |
| vemula,Vikram | 110490 | MCO Educational Series 10 | Class |
| Mcdaniel,Tamia | 110490 | MCO Educational Series 10 | Class |
| Tapia,Eisten | 110490 | MCO Educational Series 10 | Class |
| Charles,Celassie | 110490 | MCO Educational Series 10 | Class |
| Davis,Jordan Anthony | 110490 | MCO Educational Series 10 | Class |
| Anthony,Ethan Christian | 110490 | MCO Educational Series 10 | Class |
| Bain,Desiree | 110490 | MCO Educational Series 10 | Class |
| Lawton,Herbert | 110490 | MCO Educational Series 10 | Class |
| Kazeem,Olabisi | 110490 | MCO Educational Series 10 | Class |
| Esposito,Vincent | 110490 | MCO Educational Series 10 | Class |
| Clarke,Antonnacio | 110490 | MCO Educational Series 10 | Class |
| Salva,Juan M | 110490 | MCO Educational Series 10 | Class |
| Batten,Tyron Jahlil | 110490 | MCO Educational Series 10 | Class |
| Mammeri,Menad | 110490 | MCO Educational Series 10 | Class |
| Lee,Jiinchan | 110490 | MCO Educational Series 10 | Class |
| Whitehead,Ja-Mel J | 110490 | MCO Educational Series 10 | Class |
| ELGHOBARY,OMER | 110490 | MCO Educational Series 10 | Class |
| De La Cruz,Arthur | 110490 | MCO Educational Series 10 | Class |
| Issa,Eslam Mohamed mabrouk | 110490 | MCO Educational Series 10 | Class |
| owusu,vivian | 110490 | MCO Educational Series 10 | Class |
| Hinton,Shamar Anthony | 110490 | MCO Educational Series 10 | Class |
| Dieng,Amadou | 110490 | MCO Educational Series 10 | Class |
| Rose,Nakuza | 110490 | MCO Educational Series 10 | Class |
| thein,samantha shwe | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Mejia,Richard | 110490 | MCO Educational Series 10 | Class |
| Powell,Kamerhon | 110490 | MCO Educational Series 10 | Class |
| Grispo,Michael | 110490 | MCO Educational Series 10 | Class |
| Jarrett,Robert Lincoln | 110490 | MCO Educational Series 10 | Class |
| Meissner,Davie | 110490 | MCO Educational Series 10 | Class |
| Monestime,Hans stephen | 110490 | MCO Educational Series 10 | Class |
| Torres,Joshua | 110490 | MCO Educational Series 10 | Class |
| Acosta,Jimmy Jr | 110490 | MCO Educational Series 10 | Class |
| Jean,Sammy | 110490 | MCO Educational Series 10 | Class |
| Rau Zelada,Mabel | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Lessly Jackeline | 110490 | MCO Educational Series 10 | Class |
| Baptiste,Kayla | 110490 | MCO Educational Series 10 | Class |
| Bellamy,Mateo | 110490 | MCO Educational Series 10 | Class |
| Phelps,Gabriel | 110490 | MCO Educational Series 10 | Class |
| rizkalla,Basem Boshra | 110490 | MCO Educational Series 10 | Class |
| Naji,Majed | 110490 | MCO Educational Series 10 | Class |
| sumo,mayama | 110490 | MCO Educational Series 10 | Class |
| SANYAOLU,RANMILOWOOLUWA | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Lance | 110490 | MCO Educational Series 10 | Class |
| Thomas,Kendra | 110490 | MCO Educational Series 10 | Class |
| Martin,Steven | 110490 | MCO Educational Series 10 | Class |
| Tye,Ekithia | 110490 | MCO Educational Series 10 | Class |
| Debrosse,Dawens | 110490 | MCO Educational Series 10 | Class |
| Johnson,Jamar | 110490 | MCO Educational Series 10 | Class |
| Aduamah,Stephen | 110490 | MCO Educational Series 10 | Class |
| Diaz,Nicholas | 110490 | MCO Educational Series 10 | Class |
| Prusak,Chester M | 110490 | MCO Educational Series 10 | Class |
| Prusak,Chester M | 110490 | MCO Educational Series 10 | Class |
| Velez,Evalise Lee | 110490 | MCO Educational Series 10 | Class |
| Perreira,Samuel Victor | 110490 | MCO Educational Series 10 | Class |
| Mei,Alexander | 110490 | MCO Educational Series 10 | Class |
| Sixon,Bryan Aguirre | 110490 | MCO Educational Series 10 | Class |
| Mallon,Daniel Joseph | 110490 | MCO Educational Series 10 | Class |
| King,Anthony | 110490 | MCO Educational Series 10 | Class |
| King,Anthony | 110490 | MCO Educational Series 10 | Class |
| Davis,Daquain | 110490 | MCO Educational Series 10 | Class |
| Tillock,Cleaster | 110490 | MCO Educational Series 10 | Class |
| Olugbode savage,Risikat | 110490 | MCO Educational Series 10 | Class |
| Alexander,Britney | 110490 | MCO Educational Series 10 | Class |
| Brisbane,Jeffrey | 110490 | MCO Educational Series 10 | Class |
| OLIVARES,LUCY | 110490 | MCO Educational Series 10 | Class |
| Francis,Daniel Junior | 110490 | MCO Educational Series 10 | Class |
| Mejia,Juan | 110490 | MCO Educational Series 10 | Class |
| Arquette-Cross,Ashton | 110490 | MCO Educational Series 10 | Class |
| Evans,Monique | 110490 | MCO Educational Series 10 | Class |
| Lopez,Angelo | 110490 | MCO Educational Series 10 | Class |
| Singleton,Isaiah | 110490 | MCO Educational Series 10 | Class |
| Pineiro,Bernadette | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gentile,Robert | 110490 | MCO Educational Series 10 | Class |
| OLAVARRIA,TIFFANY | 110490 | MCO Educational Series 10 | Class |
| Simmons,Tyler Phillip | 110490 | MCO Educational Series 10 | Class |
| Iziogba,Bennet | 110490 | MCO Educational Series 10 | Class |
| Quarshie,Vincent K | 110490 | MCO Educational Series 10 | Class |
| Vega,Timothy B | 110490 | MCO Educational Series 10 | Class |
| gill,rickford | 110490 | MCO Educational Series 10 | Class |
| Weatherhead,Chris | 110490 | MCO Educational Series 10 | Class |
| Islam,Md | 110490 | MCO Educational Series 10 | Class |
| Proctor,Jennia | 110490 | MCO Educational Series 10 | Class |
| Calimag,Enrico | 110490 | MCO Educational Series 10 | Class |
| Towler,Keith | 110490 | MCO Educational Series 10 | Class |
| Holden,Donna Marie | 110490 | MCO Educational Series 10 | Class |
| Zepherin,Crystal | 110490 | MCO Educational Series 10 | Class |
| James,Jovain | 110490 | MCO Educational Series 10 | Class |
| James,Jovain | 110490 | MCO Educational Series 10 | Class |
| King,Malachi | 110490 | MCO Educational Series 10 | Class |
| Altamirano,David | 110490 | MCO Educational Series 10 | Class |
| Cronin,Charice | 110490 | MCO Educational Series 10 | Class |
| Abraham,Matt | 110490 | MCO Educational Series 10 | Class |
| Smith,Alex | 110490 | MCO Educational Series 10 | Class |
| La Capra,Lisa | 110490 | MCO Educational Series 10 | Class |
| Tate,Mark Edward | 110490 | MCO Educational Series 10 | Class |
| Russo,Anthony | 110490 | MCO Educational Series 10 | Class |
| Shameseldin,Aeshah | 110490 | MCO Educational Series 10 | Class |
| Sarauw,Stanley | 110490 | MCO Educational Series 10 | Class |
| Botros,Abanoub | 110490 | MCO Educational Series 10 | Class |
| Drake,Melissa | 110490 | MCO Educational Series 10 | Class |
| Kopetic,Victoria | 110490 | MCO Educational Series 10 | Class |
| Charles,Windell | 110490 | MCO Educational Series 10 | Class |
| Fisher,Shawna | 110490 | MCO Educational Series 10 | Class |
| Matthews,Martha | 110490 | MCO Educational Series 10 | Class |
| Cruz,Luis A | 110490 | MCO Educational Series 10 | Class |
| Viruet,Alexis | 110490 | MCO Educational Series 10 | Class |
| Noel,Kayla | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Anderson | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Anderson | 110490 | MCO Educational Series 10 | Class |
| Moreno,Jaime | 110490 | MCO Educational Series 10 | Class |
| Holliday,Zaid | 110490 | MCO Educational Series 10 | Class |
| Bispham,Jazel | 110490 | MCO Educational Series 10 | Class |
| Ceron,Angelica Patricia | 110490 | MCO Educational Series 10 | Class |
| Jardine,Zanela Urcilla | 110490 | MCO Educational Series 10 | Class |
| Taveras,Roxanne | 110490 | MCO Educational Series 10 | Class |
| Porter,Tiffany | 110490 | MCO Educational Series 10 | Class |
| Lenahan,Loretta | 110490 | MCO Educational Series 10 | Class |
| Melendez,Suyapa | 110490 | MCO Educational Series 10 | Class |
| Palmer,Brianna Oconya | 110490 | MCO Educational Series 10 | Class |
| Mravlja,Michael | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Singh,Manpreet | 110490 | MCO Educational Series 10 | Class |
| Fumagalli,Linda | 110490 | MCO Educational Series 10 | Class |
| Di Paolo,Kate | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Rosalina | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Dalila | 110490 | MCO Educational Series 10 | Class |
| Blackett,Robert | 110490 | MCO Educational Series 10 | Class |
| Randall,Jack David | 110490 | MCO Educational Series 10 | Class |
| Swift,Joy | 110490 | MCO Educational Series 10 | Class |
| Naing,David | 110490 | MCO Educational Series 10 | Class |
| M,Tamie | 110490 | MCO Educational Series 10 | Class |
| Pizarro,Franciscas Cecilia | 110490 | MCO Educational Series 10 | Class |
| Thomas,Richard | 110490 | MCO Educational Series 10 | Class |
| Tapia,Brisa | 110490 | MCO Educational Series 10 | Class |
| Nicola,Martina | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Rjeen | 110490 | MCO Educational Series 10 | Class |
| Puckett,Tamara | 110490 | MCO Educational Series 10 | Class |
| McDougal,William | 110490 | MCO Educational Series 10 | Class |
| Sarkes,Atif | 110490 | MCO Educational Series 10 | Class |
| Timms,Duane Lamont | 110490 | MCO Educational Series 10 | Class |
| Pedersen,Steve | 110490 | MCO Educational Series 10 | Class |
| torres,neisha | 110490 | MCO Educational Series 10 | Class |
| Molina Jr,Benito | 110490 | MCO Educational Series 10 | Class |
| Martinez,Reymond | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Dilexi | 110490 | MCO Educational Series 10 | Class |
| Nogueras,Roberto | 110490 | MCO Educational Series 10 | Class |
| Bramwell,Carlos | 110490 | MCO Educational Series 10 | Class |
| Oliver,Luis Heriberto | 110490 | MCO Educational Series 10 | Class |
| Oliver,Luis Heriberto | 110490 | MCO Educational Series 10 | Class |
| Zumba,Maria | 110490 | MCO Educational Series 10 | Class |
| Black,Carl Cearl | 110490 | MCO Educational Series 10 | Class |
| amaya vargas,angela | 110490 | MCO Educational Series 10 | Class |
| Charlot,Jacqueline | 110490 | MCO Educational Series 10 | Class |
| Girgis,Remon Nabil | 110490 | MCO Educational Series 10 | Class |
| Allison,Jason Taylor | 110490 | MCO Educational Series 10 | Class |
| Franco,Yaquelin Celeste | 110490 | MCO Educational Series 10 | Class |
| Chan,Mingling | 110490 | MCO Educational Series 10 | Class |
| Taleus,Kelly | 110490 | MCO Educational Series 10 | Class |
| Jeselsohn,Mercedes B | 110490 | MCO Educational Series 10 | Class |
| Perez,Erick | 110490 | MCO Educational Series 10 | Class |
| Perez,Erick | 110490 | MCO Educational Series 10 | Class |
| Velasco,Angel | 110490 | MCO Educational Series 10 | Class |
| negron,omar | 110490 | MCO Educational Series 10 | Class |
| Santiago,Justin Rafael | 110490 | MCO Educational Series 10 | Class |
| Alexis,Alex | 110490 | MCO Educational Series 10 | Class |
| Doman,Densmore | 110490 | MCO Educational Series 10 | Class |
| campbell,dwayne k | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Rafael | 110490 | MCO Educational Series 10 | Class |
| Mizell,Taquan | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| McMillan,Mitchell | 110490 | MCO Educational Series 10 | Class |
| Mcclarin Truss,Elaina Elaina | 110490 | MCO Educational Series 10 | Class |
| Amato,Taylor | 110490 | MCO Educational Series 10 | Class |
| Byrum,Melissa N | 110490 | MCO Educational Series 10 | Class |
| Gracidas,Cristal | 110490 | MCO Educational Series 10 | Class |
| Pirro,Vivianne | 110490 | MCO Educational Series 10 | Class |
| Fajardo,Oscar | 110490 | MCO Educational Series 10 | Class |
| Melendez,Angela Marie | 110490 | MCO Educational Series 10 | Class |
| Scott,Rosemary | 110490 | MCO Educational Series 10 | Class |
| Bradford,Ashley | 110490 | MCO Educational Series 10 | Class |
| Cherry,Billy | 110490 | MCO Educational Series 10 | Class |
| De Leon,Nexcy | 110490 | MCO Educational Series 10 | Class |
| Pineda,David | 110490 | MCO Educational Series 10 | Class |
| Mills,John | 110490 | MCO Educational Series 10 | Class |
| greiss,bassem | 110490 | MCO Educational Series 10 | Class |
| Gartor,Markpa | 110490 | MCO Educational Series 10 | Class |
| Parker,Christian | 110490 | MCO Educational Series 10 | Class |
| Ordones,Stiven Ordones | 110490 | MCO Educational Series 10 | Class |
| Riaz,Faisal | 110490 | MCO Educational Series 10 | Class |
| Villalba,Perla | 110490 | MCO Educational Series 10 | Class |
| Lopez,Alex | 110490 | MCO Educational Series 10 | Class |
| Lino,Carlos David | 110490 | MCO Educational Series 10 | Class |
| Polius-White,Heidia | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Eric Jose | 110490 | MCO Educational Series 10 | Class |
| Connell,Terrence | 110490 | MCO Educational Series 10 | Class |
| Blocker,Shavone Latoya | 110490 | MCO Educational Series 10 | Class |
| cain,jeremy e | 110490 | MCO Educational Series 10 | Class |
| Garlisi,Chad | 110490 | MCO Educational Series 10 | Class |
| Pierre Toussaint,Esther | 110490 | MCO Educational Series 10 | Class |
| Giraldo,Mauricio | 110490 | MCO Educational Series 10 | Class |
| Amuzu,Precious yayra | 110490 | MCO Educational Series 10 | Class |
| Amuzu,Precious yayra | 110490 | MCO Educational Series 10 | Class |
| Robinson,Darius | 110490 | MCO Educational Series 10 | Class |
| MATOS,ARMANDO | 110490 | MCO Educational Series 10 | Class |
| Colin,Bryan | 110490 | MCO Educational Series 10 | Class |
| Limage,Renette | 110490 | MCO Educational Series 10 | Class |
| Vanderlaan,Rock | 110490 | MCO Educational Series 10 | Class |
| Tucker,Mariah | 110490 | MCO Educational Series 10 | Class |
| Diallo,Saliou Alpha | 110490 | MCO Educational Series 10 | Class |
| Diallo,Saliou Alpha | 110490 | MCO Educational Series 10 | Class |
| Johnson,Daryle | 110490 | MCO Educational Series 10 | Class |
| ahamed,khondoker | 110490 | MCO Educational Series 10 | Class |
| Figueroa,Melissa | 110490 | MCO Educational Series 10 | Class |
| Santiago,Mel | 110490 | MCO Educational Series 10 | Class |
| Johnson,Adina | 110490 | MCO Educational Series 10 | Class |
| Michel,Orgline | 110490 | MCO Educational Series 10 | Class |
| Pierresaint,Marvin | 110490 | MCO Educational Series 10 | Class |
| rahman,mahbubur | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| clemons,kwan | 110490 | MCO Educational Series 10 | Class |
| Rivera,Richard | 110490 | MCO Educational Series 10 | Class |
| ABOUAMIN,AHMED | 110490 | MCO Educational Series 10 | Class |
| Richardson,Stacy | 110490 | MCO Educational Series 10 | Class |
| PENG,KENTON | 110490 | MCO Educational Series 10 | Class |
| Hanifa,Mohamadu Rizan | 110490 | MCO Educational Series 10 | Class |
| Richards,Colson | 110490 | MCO Educational Series 10 | Class |
| louis,Tonnisha lorraine | 110490 | MCO Educational Series 10 | Class |
| Fleureus,Yvana | 110490 | MCO Educational Series 10 | Class |
| mucciariello,dylan | 110490 | MCO Educational Series 10 | Class |
| Thomas,Ira | 110490 | MCO Educational Series 10 | Class |
| Aguasvivas,Cleudy | 110490 | MCO Educational Series 10 | Class |
| Campbell-Sheriff,Zodia | 110490 | MCO Educational Series 10 | Class |
| Hoque,Stefon | 110490 | MCO Educational Series 10 | Class |
| Tartamella,Dominick | 110490 | MCO Educational Series 10 | Class |
| Gingo,Greggory Charles | 110490 | MCO Educational Series 10 | Class |
| Mejia,Eileen | 110490 | MCO Educational Series 10 | Class |
| Nassif,Wagdi Aziz | 110490 | MCO Educational Series 10 | Class |
| Weng,Ethan | 110490 | MCO Educational Series 10 | Class |
| Jones,Destiny | 110490 | MCO Educational Series 10 | Class |
| Osman,Nory | 110490 | MCO Educational Series 10 | Class |
| WALSH,RYAN | 110490 | MCO Educational Series 10 | Class |
| javaid,Yahya | 110490 | MCO Educational Series 10 | Class |
| Garcia,Mayra | 110490 | MCO Educational Series 10 | Class |
| Martinez,Jesus | 110490 | MCO Educational Series 10 | Class |
| Jackson,Tay | 110490 | MCO Educational Series 10 | Class |
| Herra,Gilbert | 110490 | MCO Educational Series 10 | Class |
| Duval,Jean | 110490 | MCO Educational Series 10 | Class |
| Mohan,Ruel | 110490 | MCO Educational Series 10 | Class |
| Maloloy-on,Joseph Raul | 110490 | MCO Educational Series 10 | Class |
| Martinez,Erickson | 110490 | MCO Educational Series 10 | Class |
| Sillah,Rammed | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Xavier | 110490 | MCO Educational Series 10 | Class |
| John,Taralyn O | 110490 | MCO Educational Series 10 | Class |
| Sanusi,Babajide Habib | 110490 | MCO Educational Series 10 | Class |
| Martinez,Awilmy | 110490 | MCO Educational Series 10 | Class |
| kuniqi,haldi | 110490 | MCO Educational Series 10 | Class |
| Escobar,Wendi | 110490 | MCO Educational Series 10 | Class |
| Ajibabi,Emily Onome | 110490 | MCO Educational Series 10 | Class |
| Jarrin,Carla Barbara | 110490 | MCO Educational Series 10 | Class |
| Watson,Tony | 110490 | MCO Educational Series 10 | Class |
| Thompson,Alexander Joseph | 110490 | MCO Educational Series 10 | Class |
| Sosa,Oliver | 110490 | MCO Educational Series 10 | Class |
| Lynch,Mary Katherine | 110490 | MCO Educational Series 10 | Class |
| HEWA ALANKARAGE,SAMANTHA | 110490 | MCO Educational Series 10 | Class |
| Pollydore,Haile | 110490 | MCO Educational Series 10 | Class |
| Reid,Tafari | 110490 | MCO Educational Series 10 | Class |
| Moran,Marisol | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Pierre,Alix | 110490 | MCO Educational Series 10 | Class |
| Sosa,Alexa | 110490 | MCO Educational Series 10 | Class |
| Alvarez,Reyna | 110490 | MCO Educational Series 10 | Class |
| Felipe Lucero,Erick | 110490 | MCO Educational Series 10 | Class |
| Barriento,Dayaniela | 110490 | MCO Educational Series 10 | Class |
| Smith,Jeffrey | 110490 | MCO Educational Series 10 | Class |
| Ventre,Anny | 110490 | MCO Educational Series 10 | Class |
| Agyemang,Kwabena | 110490 | MCO Educational Series 10 | Class |
| SOTO,DIANA | 110490 | MCO Educational Series 10 | Class |
| Achampong,Malachi | 110490 | MCO Educational Series 10 | Class |
| Manco,Sara | 110490 | MCO Educational Series 10 | Class |
| Gutierrez,rosario | 110490 | MCO Educational Series 10 | Class |
| Garcia,Leonardo Jesus | 110490 | MCO Educational Series 10 | Class |
| Hargrove,Clelle | 110490 | MCO Educational Series 10 | Class |
| Mack,Tyrell | 110490 | MCO Educational Series 10 | Class |
| Arizandieta Davila,Cecilia Isabel | 110490 | MCO Educational Series 10 | Class |
| Shahid,Hamza | 110490 | MCO Educational Series 10 | Class |
| Alkhan,Andre | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Ryan | 110490 | MCO Educational Series 10 | Class |
| Almanzar,Jhorlenny | 110490 | MCO Educational Series 10 | Class |
| Ellis,Disa | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Kemirt | 110490 | MCO Educational Series 10 | Class |
| Moye,Shakeen | 110490 | MCO Educational Series 10 | Class |
| Celisca,Kendia | 110490 | MCO Educational Series 10 | Class |
| ajewole,kehinde cyril | 110490 | MCO Educational Series 10 | Class |
| Villegas,Michael | 110490 | MCO Educational Series 10 | Class |
| Jackson,Alexandria | 110490 | MCO Educational Series 10 | Class |
| Alvarado,David | 110490 | MCO Educational Series 10 | Class |
| Dixon,Elijah | 110490 | MCO Educational Series 10 | Class |
| Mongelli,Vera | 110490 | MCO Educational Series 10 | Class |
| wilson,mario | 110490 | MCO Educational Series 10 | Class |
| Goumbala,Amy | 110490 | MCO Educational Series 10 | Class |
| Stokes,Elizabeth T | 110490 | MCO Educational Series 10 | Class |
| Omosebi,Oluwakemi | 110490 | MCO Educational Series 10 | Class |
| Yantz,Dru | 110490 | MCO Educational Series 10 | Class |
| fernando,Linadi | 110490 | MCO Educational Series 10 | Class |
| diaz,danny | 110490 | MCO Educational Series 10 | Class |
| Boulaich,Bilal | 110490 | MCO Educational Series 10 | Class |
| nesbitt,rolanda | 110490 | MCO Educational Series 10 | Class |
| Boakye,Yvonne | 110490 | MCO Educational Series 10 | Class |
| Soto,Maikor | 110490 | MCO Educational Series 10 | Class |
| bussey,Asia | 110490 | MCO Educational Series 10 | Class |
| Karim,Shaukatul | 110490 | MCO Educational Series 10 | Class |
| Karim,Shaukatul | 110490 | MCO Educational Series 10 | Class |
| Chappell,Quiana | 110490 | MCO Educational Series 10 | Class |
| dodo,sharafa A | 110490 | MCO Educational Series 10 | Class |
| Gilani,Masooma | 110490 | MCO Educational Series 10 | Class |
| fuchs,elizabeth catherine | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Harrell,Chiquita | 110490 | MCO Educational Series 10 | Class |
| Cruz,Joan | 110490 | MCO Educational Series 10 | Class |
| Braxton,Kent | 110490 | MCO Educational Series 10 | Class |
| Ehiosun,Ramsey Omonigho | 110490 | MCO Educational Series 10 | Class |
| Clark,CreTia | 110490 | MCO Educational Series 10 | Class |
| vasquez,jose | 110490 | MCO Educational Series 10 | Class |
| Reid,Zaquane | 110490 | MCO Educational Series 10 | Class |
| Carrube,Christina | 110490 | MCO Educational Series 10 | Class |
| Aburamilah,Tarek | 110490 | MCO Educational Series 10 | Class |
| Coleman,Ronnie | 110490 | MCO Educational Series 10 | Class |
| Walton,Jarel Malik | 110490 | MCO Educational Series 10 | Class |
| Phillip,Lisha | 110490 | MCO Educational Series 10 | Class |
| VANDENBURG,SHONELLE | 110490 | MCO Educational Series 10 | Class |
| JOSEPH,Jean Frantz | 110490 | MCO Educational Series 10 | Class |
| Yanni,Frank | 110490 | MCO Educational Series 10 | Class |
| Ezzat,Fahmy | 110490 | MCO Educational Series 10 | Class |
| Villalongo,Amarilis | 110490 | MCO Educational Series 10 | Class |
| Ahmed,Mashood | 110490 | MCO Educational Series 10 | Class |
| Ravenell,Keyuona | 110490 | MCO Educational Series 10 | Class |
| Carvajal,Jobhany | 110490 | MCO Educational Series 10 | Class |
| Vargas,Emanuel | 110490 | MCO Educational Series 10 | Class |
| Brown,Niquill | 110490 | MCO Educational Series 10 | Class |
| Edwards,Calvin | 110490 | MCO Educational Series 10 | Class |
| Telamour,Roodeline | 110490 | MCO Educational Series 10 | Class |
| Flanders,Kenyon | 110490 | MCO Educational Series 10 | Class |
| Lozada,Rocky Lizuanelle | 110490 | MCO Educational Series 10 | Class |
| Bame,Nevila | 110490 | MCO Educational Series 10 | Class |
| Powell,Yolanda | 110490 | MCO Educational Series 10 | Class |
| Murph,Zariah | 110490 | MCO Educational Series 10 | Class |
| James,Orel | 110490 | MCO Educational Series 10 | Class |
| posadas,conchita c | 110490 | MCO Educational Series 10 | Class |
| Rachell,Siobhan | 110490 | MCO Educational Series 10 | Class |
| Otero,Jason Alexander | 110490 | MCO Educational Series 10 | Class |
| Terrana,Anthony | 110490 | MCO Educational Series 10 | Class |
| Ward,Trier | 110490 | MCO Educational Series 10 | Class |
| Cometa,Marveluz | 110490 | MCO Educational Series 10 | Class |
| Cometa,Marveluz | 110490 | MCO Educational Series 10 | Class |
| michel,loumann | 110490 | MCO Educational Series 10 | Class |
| Williams,Danielle | 110490 | MCO Educational Series 10 | Class |
| Machuca,Lizbeth | 110490 | MCO Educational Series 10 | Class |
| Kaur,Amritpal | 110490 | MCO Educational Series 10 | Class |
| Lafleur,Phara | 110490 | MCO Educational Series 10 | Class |
| Ranthilaka Durayalage,Dilan Ariyawansha | 110490 | MCO Educational Series 10 | Class |
| Ranthilaka Durayalage,Dilan Ariyawansha | 110490 | MCO Educational Series 10 | Class |
| Robles,Gilberto | 110490 | MCO Educational Series 10 | Class |
| Vivar Flores,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Bennett,Ciarra Siamone | 110490 | MCO Educational Series 10 | Class |
| Tranquille,Emmanuel | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Duvell,Muzik | 110490 | MCO Educational Series 10 | Class |
| Rivera,Gabrielle | 110490 | MCO Educational Series 10 | Class |
| Ibrahim,Youssef | 110490 | MCO Educational Series 10 | Class |
| Kennedy,Apiphany | 110490 | MCO Educational Series 10 | Class |
| Adebowale,Shukura | 110490 | MCO Educational Series 10 | Class |
| Gerges,Elhamy | 110490 | MCO Educational Series 10 | Class |
| Brown,Hera | 110490 | MCO Educational Series 10 | Class |
| Broncano,Wilfredo | 110490 | MCO Educational Series 10 | Class |
| Campbell,Tevin Dwight | 110490 | MCO Educational Series 10 | Class |
| Alexander,Meshach | 110490 | MCO Educational Series 10 | Class |
| Mboto,Doris | 110490 | MCO Educational Series 10 | Class |
| rivera,romelo | 110490 | MCO Educational Series 10 | Class |
| Kabeera,Nagesh | 110490 | MCO Educational Series 10 | Class |
| CISSE,ABDOULAYE | 110490 | MCO Educational Series 10 | Class |
| Montealegre,Gabriela | 110490 | MCO Educational Series 10 | Class |
| Dean,Shawn | 110490 | MCO Educational Series 10 | Class |
| Guillaumette,Louisgene | 110490 | MCO Educational Series 10 | Class |
| Chase,Celine | 110490 | MCO Educational Series 10 | Class |
| Baltazar,Carlos | 110490 | MCO Educational Series 10 | Class |
| Chan Min,Aung | 110490 | MCO Educational Series 10 | Class |
| Flores ortiz,Elisabed | 110490 | MCO Educational Series 10 | Class |
| Torres,Melida | 110490 | MCO Educational Series 10 | Class |
| Clayton,Tiffany Evette | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Henry | 110490 | MCO Educational Series 10 | Class |
| Garcia,Justin | 110490 | MCO Educational Series 10 | Class |
| Velasquez,Miguel | 110490 | MCO Educational Series 10 | Class |
| Lopez,David | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Bryseyda | 110490 | MCO Educational Series 10 | Class |
| Wu,Christopher | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Yesenia | 110490 | MCO Educational Series 10 | Class |
| Martinez,Irvin Jogan | 110490 | MCO Educational Series 10 | Class |
| Bhatti,Bilal | 110490 | MCO Educational Series 10 | Class |
| Pitts,Michael Edward | 110490 | MCO Educational Series 10 | Class |
| Tran,Leloan | 110490 | MCO Educational Series 10 | Class |
| Oshunrinde,Adetomilola Adejoke | 110490 | MCO Educational Series 10 | Class |
| ABDOU,AHMED ABD EL SATTAR | 110490 | MCO Educational Series 10 | Class |
| Johnson,Jennifer | 110490 | MCO Educational Series 10 | Class |
| Perez,Krystal | 110490 | MCO Educational Series 10 | Class |
| Legrottaglie,Angel David | 110490 | MCO Educational Series 10 | Class |
| Cabrera,Ricardo | 110490 | MCO Educational Series 10 | Class |
| Awonaike,Stella | 110490 | MCO Educational Series 10 | Class |
| Wright,Marilyn | 110490 | MCO Educational Series 10 | Class |
| Dawkins,Dewayne | 110490 | MCO Educational Series 10 | Class |
| Clarke,Sandre | 110490 | MCO Educational Series 10 | Class |
| Acevedo,Victor | 110490 | MCO Educational Series 10 | Class |
| Palomeque,Lupe | 110490 | MCO Educational Series 10 | Class |
| Fatone,Jack | 110490 | MCO Educational Series 10 | Class |
| Aslam,Farhan | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Rey,Maria Vilma | 110490 | MCO Educational Series 10 | Class |
| KADRO,MUSTAFA | 110490 | MCO Educational Series 10 | Class |
| ENRIQUEZ,JENNIFER | 110490 | MCO Educational Series 10 | Class |
| Louissaint,Ashley | 110490 | MCO Educational Series 10 | Class |
| Cherry,Richard Q | 110490 | MCO Educational Series 10 | Class |
| Hatcher,Warren | 110490 | MCO Educational Series 10 | Class |
| Colao,James | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Jesus | 110490 | MCO Educational Series 10 | Class |
| Hiciano,Eridania | 110490 | MCO Educational Series 10 | Class |
| Brown,Kiante | 110490 | MCO Educational Series 10 | Class |
| Portillo,Briant | 110490 | MCO Educational Series 10 | Class |
| Baniqued,Jilden | 110490 | MCO Educational Series 10 | Class |
| Smith,Jessica W | 110490 | MCO Educational Series 10 | Class |
| Torrico,Guido D. | 110490 | MCO Educational Series 10 | Class |
| Thompson,Shamar | 110490 | MCO Educational Series 10 | Class |
| Diallo,Ibrahima | 110490 | MCO Educational Series 10 | Class |
| Peters,Deray | 110490 | MCO Educational Series 10 | Class |
| Carrero,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Famiglietti,Antonia Debra | 110490 | MCO Educational Series 10 | Class |
| Tunstall,Dominic | 110490 | MCO Educational Series 10 | Class |
| Jalloh,Ibrahima | 110490 | MCO Educational Series 10 | Class |
| Cardona G.,Yhonier | 110490 | MCO Educational Series 10 | Class |
| Chang Alzamora,Julio Paul | 110490 | MCO Educational Series 10 | Class |
| Merritt,Amanda | 110490 | MCO Educational Series 10 | Class |
| Derival,Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Uzoigwe,Francis | 110490 | MCO Educational Series 10 | Class |
| Awosika,Olowofela OLAGBAJE | 110490 | MCO Educational Series 10 | Class |
| Smalls,Devona | 110490 | MCO Educational Series 10 | Class |
| Smalls,Devona | 110490 | MCO Educational Series 10 | Class |
| Derat,Mikerline | 110490 | MCO Educational Series 10 | Class |
| Pena,Erica | 110490 | MCO Educational Series 10 | Class |
| Livingston,Jaylen | 110490 | MCO Educational Series 10 | Class |
| ugokwe,hilary | 110490 | MCO Educational Series 10 | Class |
| ugokwe,hilary | 110490 | MCO Educational Series 10 | Class |
| Felix,Brian | 110490 | MCO Educational Series 10 | Class |
| Figueroa,Jovani | 110490 | MCO Educational Series 10 | Class |
| Ciudad,Mathew | 110490 | MCO Educational Series 10 | Class |
| Martinez,Kedar | 110490 | MCO Educational Series 10 | Class |
| Ghobrial,Adel Guirguis | 110490 | MCO Educational Series 10 | Class |
| Ghobrial,Adel Guirguis | 110490 | MCO Educational Series 10 | Class |
| Molina,Tristan | 110490 | MCO Educational Series 10 | Class |
| Williams,Chaya | 110490 | MCO Educational Series 10 | Class |
| Khamidov,Lenny | 110490 | MCO Educational Series 10 | Class |
| Webb,NaAsia-Tatianna | 110490 | MCO Educational Series 10 | Class |
| Hutchinson,Renee | 110490 | MCO Educational Series 10 | Class |
| Scotto,Marcello | 110490 | MCO Educational Series 10 | Class |
| Bernacet,Jessica | 110490 | MCO Educational Series 10 | Class |
| Rincon,Juan | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Allen,Elijah | 110490 | MCO Educational Series 10 | Class |
| Estelly,James | 110490 | MCO Educational Series 10 | Class |
| Seale,Danielle | 110490 | MCO Educational Series 10 | Class |
| Lara,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Roldan,Carol O | 110490 | MCO Educational Series 10 | Class |
| Rivera,Nick | 110490 | MCO Educational Series 10 | Class |
| Matani,Abdelhalim | 110490 | MCO Educational Series 10 | Class |
| Perez,Jessica | 110490 | MCO Educational Series 10 | Class |
| Carmenatty,Carlos | 110490 | MCO Educational Series 10 | Class |
| Britton,Diania | 110490 | MCO Educational Series 10 | Class |
| Porter,Aaron | 110490 | MCO Educational Series 10 | Class |
| Reyes-Guerrero,Jessica | 110490 | MCO Educational Series 10 | Class |
| Foster-Roach,Sherlin Francis | 110490 | MCO Educational Series 10 | Class |
| Casilla,Benny Ruben | 110490 | MCO Educational Series 10 | Class |
| Hopkins,Tricia | 110490 | MCO Educational Series 10 | Class |
| Lam,Tim Chi | 110490 | MCO Educational Series 10 | Class |
| Ramirez,Alejandro | 110490 | MCO Educational Series 10 | Class |
| Hayat,Umer | 110490 | MCO Educational Series 10 | Class |
| Ahanaonu,solomon Ifeanyi | 110490 | MCO Educational Series 10 | Class |
| Frias,Juan | 110490 | MCO Educational Series 10 | Class |
| Sirage,Kareem | 110490 | MCO Educational Series 10 | Class |
| Kalonov,Abdurahim | 110490 | MCO Educational Series 10 | Class |
| Moore,Marcus Linus | 110490 | MCO Educational Series 10 | Class |
| Contreras,Melissa | 110490 | MCO Educational Series 10 | Class |
| Newman,Keyanna Lavina | 110490 | MCO Educational Series 10 | Class |
| Hagan,Michael | 110490 | MCO Educational Series 10 | Class |
| Xu,Ben | 110490 | MCO Educational Series 10 | Class |
| Serrano,Joe | 110490 | MCO Educational Series 10 | Class |
| Fadayini,Fiyinfoluwa | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Steph | 110490 | MCO Educational Series 10 | Class |
| Citarella,Denise Frances | 110490 | MCO Educational Series 10 | Class |
| Mohamed,Hasan | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Julia | 110490 | MCO Educational Series 10 | Class |
| Duffy,Brandon | 110490 | MCO Educational Series 10 | Class |
| Skeete,Andre | 110490 | MCO Educational Series 10 | Class |
| Domingo,Alfredo Diao | 110490 | MCO Educational Series 10 | Class |
| Duke,Chauncey | 110490 | MCO Educational Series 10 | Class |
| Sadiq,nour | 110490 | MCO Educational Series 10 | Class |
| vera,crystallee | 110490 | MCO Educational Series 10 | Class |
| Vaquero,Denise | 110490 | MCO Educational Series 10 | Class |
| Moncada,Tiago | 110490 | MCO Educational Series 10 | Class |
| Bangura,Bai | 110490 | MCO Educational Series 10 | Class |
| Okwuobasi,Ikechukwu | 110490 | MCO Educational Series 10 | Class |
| Derival,Gabriel | 110490 | MCO Educational Series 10 | Class |
| Lee,Bria | 110490 | MCO Educational Series 10 | Class |
| Jerome,Ronald Romeo | 110490 | MCO Educational Series 10 | Class |
| Ahiakpor,Ablavi Nadia Solange | 110490 | MCO Educational Series 10 | Class |
| Villegas,Chelsea | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Rivera,Jose | 110490 | MCO Educational Series 10 | Class |
| Wang,Ying | 110490 | MCO Educational Series 10 | Class |
| Figueroa Durand,Hida | 110490 | MCO Educational Series 10 | Class |
| Castellanos,Roberto | 110490 | MCO Educational Series 10 | Class |
| Suazo,Chloe | 110490 | MCO Educational Series 10 | Class |
| Genis,GENIS Genis | 110490 | MCO Educational Series 10 | Class |
| Carter,Wayne | 110490 | MCO Educational Series 10 | Class |
| Begum,Shmail | 110490 | MCO Educational Series 10 | Class |
| Bennett,Ahmed | 110490 | MCO Educational Series 10 | Class |
| Pena-Huerfano,Juan | 110490 | MCO Educational Series 10 | Class |
| Pacheco,Marichelia | 110490 | MCO Educational Series 10 | Class |
| Neyra,Giovanny | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Samuel | 110490 | MCO Educational Series 10 | Class |
| Lacroix,Jocy Florence | 110490 | MCO Educational Series 10 | Class |
| Colas,Johanne | 110490 | MCO Educational Series 10 | Class |
| Colas,Johanne | 110490 | MCO Educational Series 10 | Class |
| Garcia,Nephtali | 110490 | MCO Educational Series 10 | Class |
| Medina,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Ly,Thanh Sieu | 110490 | MCO Educational Series 10 | Class |
| nelson,donella | 110490 | MCO Educational Series 10 | Class |
| polanco,Danny B | 110490 | MCO Educational Series 10 | Class |
| Younes,Hassan | 110490 | MCO Educational Series 10 | Class |
| Morocho,Neal Fernando | 110490 | MCO Educational Series 10 | Class |
| Escobar Alfaro,Mario | 110490 | MCO Educational Series 10 | Class |
| Ebinum,Felix | 110490 | MCO Educational Series 10 | Class |
| Morales,Bryan J | 110490 | MCO Educational Series 10 | Class |
| Davis,Kyele Theodore | 110490 | MCO Educational Series 10 | Class |
| Ajayi,Benjamin | 110490 | MCO Educational Series 10 | Class |
| Olugbodi,Precious Ayomide | 110490 | MCO Educational Series 10 | Class |
| Greenaway,Tinea | 110490 | MCO Educational Series 10 | Class |
| Morales,Ernesto | 110490 | MCO Educational Series 10 | Class |
| Mendez,Matt | 110490 | MCO Educational Series 10 | Class |
| Myrick,Daquan | 110490 | MCO Educational Series 10 | Class |
| Lewis,Asha | 110490 | MCO Educational Series 10 | Class |
| Delbry,Jamie | 110490 | MCO Educational Series 10 | Class |
| Ghannami,Sylvana | 110490 | MCO Educational Series 10 | Class |
| Hermida,Diana Haidee | 110490 | MCO Educational Series 10 | Class |
| Guzman,Emary | 110490 | MCO Educational Series 10 | Class |
| Tas,Netasaliin | 110490 | MCO Educational Series 10 | Class |
| cochrane,shavon | 110490 | MCO Educational Series 10 | Class |
| Thompson,Tracylee | 110490 | MCO Educational Series 10 | Class |
| Collins,Nekkei | 110490 | MCO Educational Series 10 | Class |
| conner,Nasheed | 110490 | MCO Educational Series 10 | Class |
| Jacobs,Leonard | 110490 | MCO Educational Series 10 | Class |
| Prince-pottinger,seberna | 110490 | MCO Educational Series 10 | Class |
| AKINMUSAYO,ANUOLUWAPO | 110490 | MCO Educational Series 10 | Class |
| Tipismana Castillo,Carlos Alfonso | 110490 | MCO Educational Series 10 | Class |
| Victoriano,Eduardo | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Armento,John | 110490 | MCO Educational Series 10 | Class |
| Rincon,Yadira | 110490 | MCO Educational Series 10 | Class |
| Pan,Yi | 110490 | MCO Educational Series 10 | Class |
| Narcisso Hooker,Winfield Alexander | 110490 | MCO Educational Series 10 | Class |
| Fontanez,Jimmy | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Desiree | 110490 | MCO Educational Series 10 | Class |
| ortiz,crystal | 110490 | MCO Educational Series 10 | Class |
| Ferrara Jr,Sal | 110490 | MCO Educational Series 10 | Class |
| Foster,illy | 110490 | MCO Educational Series 10 | Class |
| Carter Rivers,Nyala S | 110490 | MCO Educational Series 10 | Class |
| Cummings,Sherman | 110490 | MCO Educational Series 10 | Class |
| Figueroa,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Paolino,Brianna | 110490 | MCO Educational Series 10 | Class |
| Vazquez,Emanuel | 110490 | MCO Educational Series 10 | Class |
| Santiago,John | 110490 | MCO Educational Series 10 | Class |
| Grau,Fernanda | 110490 | MCO Educational Series 10 | Class |
| Long,Jasmine | 110490 | MCO Educational Series 10 | Class |
| Abreu,Arianny | 110490 | MCO Educational Series 10 | Class |
| Cooke,Vince | 110490 | MCO Educational Series 10 | Class |
| PEREZ BRADY,JOHANNA | 110490 | MCO Educational Series 10 | Class |
| RAMOS,ISMAEL | 110490 | MCO Educational Series 10 | Class |
| Richardson,Matthew | 110490 | MCO Educational Series 10 | Class |
| Vittoriosa,Paul | 110490 | MCO Educational Series 10 | Class |
| Zhu,Ming | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Stevens | 110490 | MCO Educational Series 10 | Class |
| Cazares,Santiago | 110490 | MCO Educational Series 10 | Class |
| Harris,Simone | 110490 | MCO Educational Series 10 | Class |
| samaranayake,sasadaree | 110490 | MCO Educational Series 10 | Class |
| Mejia-Reyes,Juan | 110490 | MCO Educational Series 10 | Class |
| Mejia-Reyes,Juan | 110490 | MCO Educational Series 10 | Class |
| Handfield,Dwayne | 110490 | MCO Educational Series 10 | Class |
| Tatarka,Mary | 110490 | MCO Educational Series 10 | Class |
| Wawrzonek,Dorota H | 110490 | MCO Educational Series 10 | Class |
| Alexander,Dante Rob | 110490 | MCO Educational Series 10 | Class |
| Sisk,Dana | 110490 | MCO Educational Series 10 | Class |
| Cerero,Viridiana | 110490 | MCO Educational Series 10 | Class |
| Figueroa,Aaron | 110490 | MCO Educational Series 10 | Class |
| Morris,Cree summer | 110490 | MCO Educational Series 10 | Class |
| Siegel,Seth | 110490 | MCO Educational Series 10 | Class |
| Matias,Jesus M | 110490 | MCO Educational Series 10 | Class |
| Ocasio,Brianna | 110490 | MCO Educational Series 10 | Class |
| Ocasio,Brianna | 110490 | MCO Educational Series 10 | Class |
| Simmons,James Robert | 110490 | MCO Educational Series 10 | Class |
| Edwards Joseph,Inga | 110490 | MCO Educational Series 10 | Class |
| OHara,Joseph Patrick | 110490 | MCO Educational Series 10 | Class |
| Bailey,Eric Dee | 110490 | MCO Educational Series 10 | Class |
| Sellapperuma,Chamara Sasirini | 110490 | MCO Educational Series 10 | Class |
| JOHNSON,MALIK | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Mazile,Gercy | 110490 | MCO Educational Series 10 | Class |
| Stiebel,Emanuel Peter | 110490 | MCO Educational Series 10 | Class |
| Johnson,Dana | 110490 | MCO Educational Series 10 | Class |
| Green,Daniella | 110490 | MCO Educational Series 10 | Class |
| Gigliello,Matthew | 110490 | MCO Educational Series 10 | Class |
| Colon,Jorge L | 110490 | MCO Educational Series 10 | Class |
| Epstein,Blake | 110490 | MCO Educational Series 10 | Class |
| Jaleiba,Austine hamindu | 110490 | MCO Educational Series 10 | Class |
| Calliste,Candice | 110490 | MCO Educational Series 10 | Class |
| Bonilla,Jennifer | 110490 | MCO Educational Series 10 | Class |
| Gay,Antoinette Agatha | 110490 | MCO Educational Series 10 | Class |
| St. Hilaire,Junior Michel | 110490 | MCO Educational Series 10 | Class |
| Ferreira,Jorge Anthony | 110490 | MCO Educational Series 10 | Class |
| Sanders,Nijah | 110490 | MCO Educational Series 10 | Class |
| Long,Marcus | 110490 | MCO Educational Series 10 | Class |
| Hurtado,Ana | 110490 | MCO Educational Series 10 | Class |
| Hurtado,Ana | 110490 | MCO Educational Series 10 | Class |
| Porter,Jonte | 110490 | MCO Educational Series 10 | Class |
| Thomas-Watson,Sandra | 110490 | MCO Educational Series 10 | Class |
| Valentin,Alyssa Imani | 110490 | MCO Educational Series 10 | Class |
| Colas,Marceau | 110490 | MCO Educational Series 10 | Class |
| Issah,Barakisu | 110490 | MCO Educational Series 10 | Class |
| McBride,Elisa C | 110490 | MCO Educational Series 10 | Class |
| Colon,Christopher | 110490 | MCO Educational Series 10 | Class |
| Idrissi,Rim | 110490 | MCO Educational Series 10 | Class |
| Bourguillon,Christian | 110490 | MCO Educational Series 10 | Class |
| Hussain,Muhammad | 110490 | MCO Educational Series 10 | Class |
| Hayes,Dillon C | 110490 | MCO Educational Series 10 | Class |
| Suarez,Denis | 110490 | MCO Educational Series 10 | Class |
| Legere,Denise | 110490 | MCO Educational Series 10 | Class |
| Vitale,Shawn | 110490 | MCO Educational Series 10 | Class |
| Cooks,Darlene B | 110490 | MCO Educational Series 10 | Class |
| Pucciarelli,Nicholas | 110490 | MCO Educational Series 10 | Class |
| Obonaga,Charlie | 110490 | MCO Educational Series 10 | Class |
| Walcott,D'angelo | 110490 | MCO Educational Series 10 | Class |
| Lara,Angel | 110490 | MCO Educational Series 10 | Class |
| Allison,Alice | 110490 | MCO Educational Series 10 | Class |
| Zaid,Amani | 110490 | MCO Educational Series 10 | Class |
| Bristol,Akelia | 110490 | MCO Educational Series 10 | Class |
| Pinnock,Gary | 110490 | MCO Educational Series 10 | Class |
| Laureano,Rafael | 110490 | MCO Educational Series 10 | Class |
| Cartagena,Barbara Ellen | 110490 | MCO Educational Series 10 | Class |
| Cartagena,Barbara Ellen | 110490 | MCO Educational Series 10 | Class |
| Velez,Margaret | 110490 | MCO Educational Series 10 | Class |
| Calvanico,Louis | 110490 | MCO Educational Series 10 | Class |
| Calvanico,Louis | 110490 | MCO Educational Series 10 | Class |
| Jaco,Bryant | 110490 | MCO Educational Series 10 | Class |
| Ayala,Cynthia | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Doumbia,Moussa | 110490 | MCO Educational Series 10 | Class |
| Delacruz Wong,Christopher | 110490 | MCO Educational Series 10 | Class |
| Gomez,ALEX | 110490 | MCO Educational Series 10 | Class |
| Bhuiya,Kawsar | 110490 | MCO Educational Series 10 | Class |
| Garcia,Felipe J | 110490 | MCO Educational Series 10 | Class |
| Tavernier,Larry Valentine | 110490 | MCO Educational Series 10 | Class |
| Durant,Tanisha | 110490 | MCO Educational Series 10 | Class |
| Ajikobi,Adeyemi | 110490 | MCO Educational Series 10 | Class |
| Boatswain,Enrick | 110490 | MCO Educational Series 10 | Class |
| Singh,Sunny | 110490 | MCO Educational Series 10 | Class |
| Mensah,Stephanny | 110490 | MCO Educational Series 10 | Class |
| Martinez,Bradley | 110490 | MCO Educational Series 10 | Class |
| Bautista,Steven | 110490 | MCO Educational Series 10 | Class |
| Ndiaye,Seynabou | 110490 | MCO Educational Series 10 | Class |
| Zhou,Gary | 110490 | MCO Educational Series 10 | Class |
| Miller,Andy | 110490 | MCO Educational Series 10 | Class |
| Khine,Phone Aung | 110490 | MCO Educational Series 10 | Class |
| Kamal,AMANY | 110490 | MCO Educational Series 10 | Class |
| Belliard,Robert | 110490 | MCO Educational Series 10 | Class |
| campusano,David | 110490 | MCO Educational Series 10 | Class |
| Htun,Monmon | 110490 | MCO Educational Series 10 | Class |
| Frith,Shandel | 110490 | MCO Educational Series 10 | Class |
| Mendez,Teddy | 110490 | MCO Educational Series 10 | Class |
| Coles,Randolph | 110490 | MCO Educational Series 10 | Class |
| Francis,Benjamin | 110490 | MCO Educational Series 10 | Class |
| Mahida,Nelson | 110490 | MCO Educational Series 10 | Class |
| Dortilus,Kamora | 110490 | MCO Educational Series 10 | Class |
| Daise,Asja | 110490 | MCO Educational Series 10 | Class |
| Dhaiti,Kendersly | 110490 | MCO Educational Series 10 | Class |
| Portuhondo,Yaritza | 110490 | MCO Educational Series 10 | Class |
| Perez,Steven | 110490 | MCO Educational Series 10 | Class |
| Juarez,Kemberlin | 110490 | MCO Educational Series 10 | Class |
| Roman,Haydee | 110490 | MCO Educational Series 10 | Class |
| Amin,Shaimaa | 110490 | MCO Educational Series 10 | Class |
| baptiste,ariel | 110490 | MCO Educational Series 10 | Class |
| Escobar,Roy | 110490 | MCO Educational Series 10 | Class |
| Mckenzie,Malik | 110490 | MCO Educational Series 10 | Class |
| Flores,Jennifer | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,William Paul | 110490 | MCO Educational Series 10 | Class |
| Pierre Paul,joseph Georges | 110490 | MCO Educational Series 10 | Class |
| Ramunni,Justin | 110490 | MCO Educational Series 10 | Class |
| Zou,Ruzhen | 110490 | MCO Educational Series 10 | Class |
| Zou,Ruzhen | 110490 | MCO Educational Series 10 | Class |
| Aguilar,Fernando | 110490 | MCO Educational Series 10 | Class |
| Marthone,Rachelle | 110490 | MCO Educational Series 10 | Class |
| GLADDEN,DARRELL | 110490 | MCO Educational Series 10 | Class |
| Thompkins,Kai | 110490 | MCO Educational Series 10 | Class |
| Depaulis,Rainee Nicole | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Obasea,Olusegun | 110490 | MCO Educational Series 10 | Class |
| Vilchis,Lisett | 110490 | MCO Educational Series 10 | Class |
| Chowdhury,Eklas | 110490 | MCO Educational Series 10 | Class |
| Nash,Jake | 110490 | MCO Educational Series 10 | Class |
| Veras,Luisauris | 110490 | MCO Educational Series 10 | Class |
| Suarez,Maria | 110490 | MCO Educational Series 10 | Class |
| Ho,William | 110490 | MCO Educational Series 10 | Class |
| Grant,Emmanlyne | 110490 | MCO Educational Series 10 | Class |
| Beckford,Kwame Jamal | 110490 | MCO Educational Series 10 | Class |
| Chapan,Maria | 110490 | MCO Educational Series 10 | Class |
| Bridgemohan,Bajnath | 110490 | MCO Educational Series 10 | Class |
| Jacobo,Patricia | 110490 | MCO Educational Series 10 | Class |
| Belajonas,Nicholas T | 110490 | MCO Educational Series 10 | Class |
| Moore,Stacy Margaret | 110490 | MCO Educational Series 10 | Class |
| Megie,Gerald | 110490 | MCO Educational Series 10 | Class |
| RIOS,OMAR | 110490 | MCO Educational Series 10 | Class |
| Flores,Nickie | 110490 | MCO Educational Series 10 | Class |
| Corrales,Yamile | 110490 | MCO Educational Series 10 | Class |
| Lee,Derrick | 110490 | MCO Educational Series 10 | Class |
| Denny,Sonja | 110490 | MCO Educational Series 10 | Class |
| Dottin,Faith | 110490 | MCO Educational Series 10 | Class |
| Friscia,Kathleen | 110490 | MCO Educational Series 10 | Class |
| torres,alyssa | 110490 | MCO Educational Series 10 | Class |
| Aburamilah,Zakariyat | 110490 | MCO Educational Series 10 | Class |
| Onajoko,Olusola | 110490 | MCO Educational Series 10 | Class |
| Onajoko,Olusola | 110490 | MCO Educational Series 10 | Class |
| Laboy,Scott | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Stefanie | 110490 | MCO Educational Series 10 | Class |
| Marx,Eric | 110490 | MCO Educational Series 10 | Class |
| Garvin,Darnell | 110490 | MCO Educational Series 10 | Class |
| Reyes,Epifania | 110490 | MCO Educational Series 10 | Class |
| Matthews,Jayson | 110490 | MCO Educational Series 10 | Class |
| Youssef,Ahmed Saad | 110490 | MCO Educational Series 10 | Class |
| Thomas,Josselyn J | 110490 | MCO Educational Series 10 | Class |
| Griffin,Javiet | 110490 | MCO Educational Series 10 | Class |
| Cannon,Charles | 110490 | MCO Educational Series 10 | Class |
| Salazar,Karen | 110490 | MCO Educational Series 10 | Class |
| Vega,Cindy | 110490 | MCO Educational Series 10 | Class |
| Lai,Bo | 110490 | MCO Educational Series 10 | Class |
| GARUSINGHAGE,NIHAL SAMSON | 110490 | MCO Educational Series 10 | Class |
| GARUSINGHAGE,NIHAL SAMSON | 110490 | MCO Educational Series 10 | Class |
| Torija,Yadciri | 110490 | MCO Educational Series 10 | Class |
| Tran,Chi An | 110490 | MCO Educational Series 10 | Class |
| Caban,Christina | 110490 | MCO Educational Series 10 | Class |
| Williams,Phillip | 110490 | MCO Educational Series 10 | Class |
| Dragjoshi,Abdurrahman | 110490 | MCO Educational Series 10 | Class |
| Hernandez-Clusan,Wanda | 110490 | MCO Educational Series 10 | Class |
| Ames,Egypt | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Unda,Gladys M | 110490 | MCO Educational Series 10 | Class |
| Cenatiempo,Philip | 110490 | MCO Educational Series 10 | Class |
| Brooks,Rahjee Yanice | 110490 | MCO Educational Series 10 | Class |
| Henao,Anthony | 110490 | MCO Educational Series 10 | Class |
| Spearman,John | 110490 | MCO Educational Series 10 | Class |
| OYINLOYE,ADEYINKA | 110490 | MCO Educational Series 10 | Class |
| Anis,Mohammed T | 110490 | MCO Educational Series 10 | Class |
| Jean toussaint,OLDINE | 110490 | MCO Educational Series 10 | Class |
| Yang,Quankun | 110490 | MCO Educational Series 10 | Class |
| Singh,Cyn | 110490 | MCO Educational Series 10 | Class |
| Murphy,Rasheed | 110490 | MCO Educational Series 10 | Class |
| Gallo,Christopher | 110490 | MCO Educational Series 10 | Class |
| Knowles,Keith Owen | 110490 | MCO Educational Series 10 | Class |
| Vazquez,Timothy | 110490 | MCO Educational Series 10 | Class |
| Quick,Shaquana | 110490 | MCO Educational Series 10 | Class |
| Sow,Kadiatou | 110490 | MCO Educational Series 10 | Class |
| Gutter,Unique | 110490 | MCO Educational Series 10 | Class |
| Rojas,Cynthia | 110490 | MCO Educational Series 10 | Class |
| Silveira,Jordan Nicole | 110490 | MCO Educational Series 10 | Class |
| Flores,Michael | 110490 | MCO Educational Series 10 | Class |
| Bell,Devante | 110490 | MCO Educational Series 10 | Class |
| Nwuko,Ike | 110490 | MCO Educational Series 10 | Class |
| Fuller,Ryan | 110490 | MCO Educational Series 10 | Class |
| Kukulu,Jean Claude Ramazani | 110490 | MCO Educational Series 10 | Class |
| sherieff,shervin | 110490 | MCO Educational Series 10 | Class |
| Lewis,Kimyee | 110490 | MCO Educational Series 10 | Class |
| Neri,Selena Lizbeth | 110490 | MCO Educational Series 10 | Class |
| Roach,Horace Vincent | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Edwin | 110490 | MCO Educational Series 10 | Class |
| Gibbs,Khaliq | 110490 | MCO Educational Series 10 | Class |
| Hussain,Zuhaib | 110490 | MCO Educational Series 10 | Class |
| Beltre,Gisela | 110490 | MCO Educational Series 10 | Class |
| zephyrine,wade | 110490 | MCO Educational Series 10 | Class |
| Chiaccheri,Jenny | 110490 | MCO Educational Series 10 | Class |
| Campbell Jr,Demetrius Anthony | 110490 | MCO Educational Series 10 | Class |
| Gayle,Marcus | 110490 | MCO Educational Series 10 | Class |
| Parmar,Chetan | 110490 | MCO Educational Series 10 | Class |
| Adekunle,Olaide Sarah | 110490 | MCO Educational Series 10 | Class |
| torchiano,Curtis | 110490 | MCO Educational Series 10 | Class |
| Pipitone,Nat Giuseppe | 110490 | MCO Educational Series 10 | Class |
| Quezada,Luis Deurys | 110490 | MCO Educational Series 10 | Class |
| Quezada,Luis Deurys | 110490 | MCO Educational Series 10 | Class |
| preston,Sawyer Sawyer | 110490 | MCO Educational Series 10 | Class |
| Santiago Vidal,Milca | 110490 | MCO Educational Series 10 | Class |
| olmedo,Jerry | 110490 | MCO Educational Series 10 | Class |
| Reynolds,Angel | 110490 | MCO Educational Series 10 | Class |
| Torres,Marcus | 110490 | MCO Educational Series 10 | Class |
| Nielsen,Brian | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Chan,Chun | 110490 | MCO Educational Series 10 | Class |
| Ramirez,Pablo | 110490 | MCO Educational Series 10 | Class |
| Kong,Jackie | 110490 | MCO Educational Series 10 | Class |
| Chauca,David Michael | 110490 | MCO Educational Series 10 | Class |
| Amundsen,Angelica | 110490 | MCO Educational Series 10 | Class |
| Amundsen,Angelica | 110490 | MCO Educational Series 10 | Class |
| Bell,Deniesha | 110490 | MCO Educational Series 10 | Class |
| Mashack,Willie | 110490 | MCO Educational Series 10 | Class |
| Alfaro Guzman,Esmirna | 110490 | MCO Educational Series 10 | Class |
| Litto,Catherine | 110490 | MCO Educational Series 10 | Class |
| Wauchorpe,Martin Shomari | 110490 | MCO Educational Series 10 | Class |
| Garris,Gloria | 110490 | MCO Educational Series 10 | Class |
| Dampman,Jesse | 110490 | MCO Educational Series 10 | Class |
| JAMESON,DARREN Todd | 110490 | MCO Educational Series 10 | Class |
| Watson,Michael R | 110490 | MCO Educational Series 10 | Class |
| Lee,Stephanie | 110490 | MCO Educational Series 10 | Class |
| Forbes,D'vaughn Danielle | 110490 | MCO Educational Series 10 | Class |
| Hughes,Adrieanna | 110490 | MCO Educational Series 10 | Class |
| Wright,Darius | 110490 | MCO Educational Series 10 | Class |
| Nguemourou,Kadjilom | 110490 | MCO Educational Series 10 | Class |
| Johnson,Francis | 110490 | MCO Educational Series 10 | Class |
| Mendez,Jonathan Alexander | 110490 | MCO Educational Series 10 | Class |
| Adetunji,Aderonke | 110490 | MCO Educational Series 10 | Class |
| McQueen,Jordan | 110490 | MCO Educational Series 10 | Class |
| Otero,Brian | 110490 | MCO Educational Series 10 | Class |
| Almazo,Alexsandra | 110490 | MCO Educational Series 10 | Class |
| Perry,Ernest | 110490 | MCO Educational Series 10 | Class |
| Flores,Anthony | 110490 | MCO Educational Series 10 | Class |
| Jimenez,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Edwardsbrasso,Annakay | 110490 | MCO Educational Series 10 | Class |
| Alvarez,Marcus | 110490 | MCO Educational Series 10 | Class |
| Belmore,Aaron Joseph | 110490 | MCO Educational Series 10 | Class |
| Batson,Lloyd Samuel | 110490 | MCO Educational Series 10 | Class |
| Azevedo,Marcos | 110490 | MCO Educational Series 10 | Class |
| Hanna,Amir | 110490 | MCO Educational Series 10 | Class |
| Hanna,Amir | 110490 | MCO Educational Series 10 | Class |
| Umunna,Ogechi Yemah | 110490 | MCO Educational Series 10 | Class |
| Lee,Yin Wang | 110490 | MCO Educational Series 10 | Class |
| Acosta,Linda | 110490 | MCO Educational Series 10 | Class |
| Francois,Jeff | 110490 | MCO Educational Series 10 | Class |
| Turay,Fatima | 110490 | MCO Educational Series 10 | Class |
| Ajikobi,Olajide | 110490 | MCO Educational Series 10 | Class |
| Gray,Darius | 110490 | MCO Educational Series 10 | Class |
| Ioannu,George | 110490 | MCO Educational Series 10 | Class |
| Whittaker,Chanelle | 110490 | MCO Educational Series 10 | Class |
| Flores,Raymond jason | 110490 | MCO Educational Series 10 | Class |
| Charles,Mark | 110490 | MCO Educational Series 10 | Class |
| Paladino,Francis | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Habbas,Jihad | 110490 | MCO Educational Series 10 | Class |
| Moreno,Pedro | 110490 | MCO Educational Series 10 | Class |
| Jones,Lonell | 110490 | MCO Educational Series 10 | Class |
| Roy,Rechelle | 110490 | MCO Educational Series 10 | Class |
| Lamarre,Ritchlande | 110490 | MCO Educational Series 10 | Class |
| LaPietra,Chris | 110490 | MCO Educational Series 10 | Class |
| Thomas,Thalia | 110490 | MCO Educational Series 10 | Class |
| Chang,Sandra | 110490 | MCO Educational Series 10 | Class |
| Ostolaza,Christian | 110490 | MCO Educational Series 10 | Class |
| Littles,Daivina prasies | 110490 | MCO Educational Series 10 | Class |
| Kader,Abdul | 110490 | MCO Educational Series 10 | Class |
| Titus,John | 110490 | MCO Educational Series 10 | Class |
| bekhet,sameh | 110490 | MCO Educational Series 10 | Class |
| Galindo,Eli | 110490 | MCO Educational Series 10 | Class |
| Aldea,Patricia | 110490 | MCO Educational Series 10 | Class |
| ahmad,syed | 110490 | MCO Educational Series 10 | Class |
| Blue,Dawn Congetta | 110490 | MCO Educational Series 10 | Class |
| Otero,Alejandro | 110490 | MCO Educational Series 10 | Class |
| Jenkins,Rashard  Jenkins | 110490 | MCO Educational Series 10 | Class |
| Quick,Jasmeire | 110490 | MCO Educational Series 10 | Class |
| Dorcilien,Marck | 110490 | MCO Educational Series 10 | Class |
| Dorcilien,Marck | 110490 | MCO Educational Series 10 | Class |
| Pumalloclla,Elsa | 110490 | MCO Educational Series 10 | Class |
| DORDEVIC,NATASA | 110490 | MCO Educational Series 10 | Class |
| Mitchell,Alianna | 110490 | MCO Educational Series 10 | Class |
| Shaikh,Farrukh | 110490 | MCO Educational Series 10 | Class |
| Ramautar,Awinaash | 110490 | MCO Educational Series 10 | Class |
| Williams,Aarron | 110490 | MCO Educational Series 10 | Class |
| Arguta,Verkristofer | 110490 | MCO Educational Series 10 | Class |
| carbonell,nurat | 110490 | MCO Educational Series 10 | Class |
| Stewart,Manuel | 110490 | MCO Educational Series 10 | Class |
| Ortiz aponte,Paloma nilvett | 110490 | MCO Educational Series 10 | Class |
| Perez,allen Nelson | 110490 | MCO Educational Series 10 | Class |
| Cantirino,James | 110490 | MCO Educational Series 10 | Class |
| Henry,Tray | 110490 | MCO Educational Series 10 | Class |
| Calderone,Christine | 110490 | MCO Educational Series 10 | Class |
| serrano,ashley | 110490 | MCO Educational Series 10 | Class |
| Perez,Casidy | 110490 | MCO Educational Series 10 | Class |
| Gamboa,Jancy | 110490 | MCO Educational Series 10 | Class |
| Crosdale,Venisha | 110490 | MCO Educational Series 10 | Class |
| Lara,Cesar | 110490 | MCO Educational Series 10 | Class |
| Young,Scarlett | 110490 | MCO Educational Series 10 | Class |
| Zdunek,Mary B. | 110490 | MCO Educational Series 10 | Class |
| Gallagher,Kyle | 110490 | MCO Educational Series 10 | Class |
| Rengifo,Juzemar | 110490 | MCO Educational Series 10 | Class |
| Perez,Orlando | 110490 | MCO Educational Series 10 | Class |
| Robles,Paola | 110490 | MCO Educational Series 10 | Class |
| zamy,Esmeralda | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| hernandez,Sonny | 110490 | MCO Educational Series 10 | Class |
| Pope,Bryan | 110490 | MCO Educational Series 10 | Class |
| Vandyck,Yasmeen | 110490 | MCO Educational Series 10 | Class |
| Molina,Jayden | 110490 | MCO Educational Series 10 | Class |
| Jorge,Yahaira | 110490 | MCO Educational Series 10 | Class |
| Hilman,Jalani | 110490 | MCO Educational Series 10 | Class |
| Machado,Joao Ferreira | 110490 | MCO Educational Series 10 | Class |
| Osorio,Maria | 110490 | MCO Educational Series 10 | Class |
| Fantauzzi,Manjula | 110490 | MCO Educational Series 10 | Class |
| ERHABOR,JUSTIN USI | 110490 | MCO Educational Series 10 | Class |
| hemley,kemar | 110490 | MCO Educational Series 10 | Class |
| Justin,Judith | 110490 | MCO Educational Series 10 | Class |
| Molina,Mateo | 110490 | MCO Educational Series 10 | Class |
| Garces,Joseph | 110490 | MCO Educational Series 10 | Class |
| Morales,Maria Socorro | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Jomar | 110490 | MCO Educational Series 10 | Class |
| Michel,Ermionne | 110490 | MCO Educational Series 10 | Class |
| lysenko,alex | 110490 | MCO Educational Series 10 | Class |
| Elnahal,Omar | 110490 | MCO Educational Series 10 | Class |
| Dominguez,Ashley | 110490 | MCO Educational Series 10 | Class |
| Monchery,Adrius | 110490 | MCO Educational Series 10 | Class |
| Tarr,Sarah | 110490 | MCO Educational Series 10 | Class |
| Minkah,Nana | 110490 | MCO Educational Series 10 | Class |
| singh,satwinder | 110490 | MCO Educational Series 10 | Class |
| Garcia,Lizeth | 110490 | MCO Educational Series 10 | Class |
| Prieto,George | 110490 | MCO Educational Series 10 | Class |
| Anderson,Tamara | 110490 | MCO Educational Series 10 | Class |
| Assante,Jill-Marie | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Eloisanna | 110490 | MCO Educational Series 10 | Class |
| Henry,Angel | 110490 | MCO Educational Series 10 | Class |
| Yang,Gigi | 110490 | MCO Educational Series 10 | Class |
| Afolabi,Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Harjo,Jeremiah | 110490 | MCO Educational Series 10 | Class |
| Peralta,Vincent | 110490 | MCO Educational Series 10 | Class |
| Richardson,Winston | 110490 | MCO Educational Series 10 | Class |
| Mansaray,Sallieu | 110490 | MCO Educational Series 10 | Class |
| Mathew,Jincy | 110490 | MCO Educational Series 10 | Class |
| Quintero,Kevin Joel | 110490 | MCO Educational Series 10 | Class |
| Goodwine,Lamont | 110490 | MCO Educational Series 10 | Class |
| Diallo,Mouhamadou Abdoul Latif | 110490 | MCO Educational Series 10 | Class |
| Hall,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Ruangpracha,Julie | 110490 | MCO Educational Series 10 | Class |
| Keyes,Danesha | 110490 | MCO Educational Series 10 | Class |
| Uvietaire,Nathaniel | 110490 | MCO Educational Series 10 | Class |
| shomoye,wale | 110490 | MCO Educational Series 10 | Class |
| weh,alfreda | 110490 | MCO Educational Series 10 | Class |
| odufowora,Muyiwa | 110490 | MCO Educational Series 10 | Class |
| Bobadilla,Loyda | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lawson,Jerome | 110490 | MCO Educational Series 10 | Class |
| Lewis,Marquis | 110490 | MCO Educational Series 10 | Class |
| Elsakka,Bedour S | 110490 | MCO Educational Series 10 | Class |
| Lambe,Denise | 110490 | MCO Educational Series 10 | Class |
| Cheriyan,Allen Jacob | 110490 | MCO Educational Series 10 | Class |
| PERRY,JENNIFER | 110490 | MCO Educational Series 10 | Class |
| Casey,Celine A | 110490 | MCO Educational Series 10 | Class |
| Vivanco,Milagros | 110490 | MCO Educational Series 10 | Class |
| Ramirez,Jose | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Pamela | 110490 | MCO Educational Series 10 | Class |
| Caballero,Marco | 110490 | MCO Educational Series 10 | Class |
| Varughese,Samkutty | 110490 | MCO Educational Series 10 | Class |
| Miller,Dana Joann | 110490 | MCO Educational Series 10 | Class |
| SHOWAOLAFATIA,Nuratu Olaitan Apinkeola | 110490 | MCO Educational Series 10 | Class |
| SHOWAOLAFATIA,Nuratu Olaitan Apinkeola | 110490 | MCO Educational Series 10 | Class |
| Abis,Lincoln | 110490 | MCO Educational Series 10 | Class |
| Julus,Lovely | 110490 | MCO Educational Series 10 | Class |
| Marius,Tara | 110490 | MCO Educational Series 10 | Class |
| Lopez,Vanessa | 110490 | MCO Educational Series 10 | Class |
| Balogun,Akolade | 110490 | MCO Educational Series 10 | Class |
| Finau,Devon | 110490 | MCO Educational Series 10 | Class |
| Lopez,Angelica | 110490 | MCO Educational Series 10 | Class |
| Dickey,Shiquita Mona | 110490 | MCO Educational Series 10 | Class |
| Woglom Jr,Mark Charles | 110490 | MCO Educational Series 10 | Class |
| CORREA,Augusto | 110490 | MCO Educational Series 10 | Class |
| Cordero,Edgar | 110490 | MCO Educational Series 10 | Class |
| Scalici,Nicola | 110490 | MCO Educational Series 10 | Class |
| Kirton,Kenrick | 110490 | MCO Educational Series 10 | Class |
| Carvajal,Kim | 110490 | MCO Educational Series 10 | Class |
| Bautista,Kevin | 110490 | MCO Educational Series 10 | Class |
| Alreyashi,Yousef | 110490 | MCO Educational Series 10 | Class |
| Rosario,Delianna | 110490 | MCO Educational Series 10 | Class |
| Azeez,Waheed Olawale | 110490 | MCO Educational Series 10 | Class |
| Negron,Angelica | 110490 | MCO Educational Series 10 | Class |
| Guerrier,Caleb | 110490 | MCO Educational Series 10 | Class |
| Germain,Junia | 110490 | MCO Educational Series 10 | Class |
| Correa,Ramon A | 110490 | MCO Educational Series 10 | Class |
| Tolentino,Daniel Marsell | 110490 | MCO Educational Series 10 | Class |
| Ceballos,Adriana Lizeth | 110490 | MCO Educational Series 10 | Class |
| Young,Taquan | 110490 | MCO Educational Series 10 | Class |
| Frederick,Yvette | 110490 | MCO Educational Series 10 | Class |
| Frederick,Yvette | 110490 | MCO Educational Series 10 | Class |
| Frederick,Yvette | 110490 | MCO Educational Series 10 | Class |
| Joseph,David | 110490 | MCO Educational Series 10 | Class |
| Chase,Coletta Briana | 110490 | MCO Educational Series 10 | Class |
| Mason,wayne | 110490 | MCO Educational Series 10 | Class |
| Aviles,Jorge | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Irving Dereck | 110490 | MCO Educational Series 10 | Class |

Amazon_000310

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Hatchett,Rita Christina | 110490 | MCO Educational Series 10 | Class |
| Martinez,Carlos | 110490 | MCO Educational Series 10 | Class |
| Gorelov,Maksim O | 110490 | MCO Educational Series 10 | Class |
| blue,steven | 110490 | MCO Educational Series 10 | Class |
| Agard,Dwayne | 110490 | MCO Educational Series 10 | Class |
| Tartarashvili,Mamuka | 110490 | MCO Educational Series 10 | Class |
| Bastidas,Isaias | 110490 | MCO Educational Series 10 | Class |
| Montenegro,Marilyn | 110490 | MCO Educational Series 10 | Class |
| Unoh,Mary | 110490 | MCO Educational Series 10 | Class |
| Musallam,Oaday | 110490 | MCO Educational Series 10 | Class |
| Afsar,Umar | 110490 | MCO Educational Series 10 | Class |
| Wade,Will | 110490 | MCO Educational Series 10 | Class |
| Benjamin,Manal | 110490 | MCO Educational Series 10 | Class |
| DeLeon,Maritza | 110490 | MCO Educational Series 10 | Class |
| Begolli,Pranvera | 110490 | MCO Educational Series 10 | Class |
| Osei,Sarkodie | 110490 | MCO Educational Series 10 | Class |
| Zarate,Elena | 110490 | MCO Educational Series 10 | Class |
| Nottingham,Keisha | 110490 | MCO Educational Series 10 | Class |
| garcia,stephanie | 110490 | MCO Educational Series 10 | Class |
| Felder,Nick James | 110490 | MCO Educational Series 10 | Class |
| Bykov,Yelena | 110490 | MCO Educational Series 10 | Class |
| Hartley,Naeem | 110490 | MCO Educational Series 10 | Class |
| Dehaney,Jatana | 110490 | MCO Educational Series 10 | Class |
| Collins,Yakim Lamont | 110490 | MCO Educational Series 10 | Class |
| Virhuez,Kathia | 110490 | MCO Educational Series 10 | Class |
| Virhuez,Kathia | 110490 | MCO Educational Series 10 | Class |
| Gbandeba,Rynash | 110490 | MCO Educational Series 10 | Class |
| Mckoy,Ebonie | 110490 | MCO Educational Series 10 | Class |
| Jackson,Elbee | 110490 | MCO Educational Series 10 | Class |
| Dieujuste,Marlon | 110490 | MCO Educational Series 10 | Class |
| Ba,Moussa | 110490 | MCO Educational Series 10 | Class |
| Tutovic,Emina | 110490 | MCO Educational Series 10 | Class |
| Quinones,Jan jasper | 110490 | MCO Educational Series 10 | Class |
| Stanford,Corine | 110490 | MCO Educational Series 10 | Class |
| Atiya,Maged | 110490 | MCO Educational Series 10 | Class |
| DeVito,Jarett | 110490 | MCO Educational Series 10 | Class |
| martello,george | 110490 | MCO Educational Series 10 | Class |
| Torres,Alex | 110490 | MCO Educational Series 10 | Class |
| Rosario,Rosa Maria | 110490 | MCO Educational Series 10 | Class |
| Shaw,Malcolm | 110490 | MCO Educational Series 10 | Class |
| Molina,Brian | 110490 | MCO Educational Series 10 | Class |
| Sola,Leosney | 110490 | MCO Educational Series 10 | Class |
| Barhoum,Adam | 110490 | MCO Educational Series 10 | Class |
| Cabrera,Diana | 110490 | MCO Educational Series 10 | Class |
| Paulino,Marisol | 110490 | MCO Educational Series 10 | Class |
| Ughutevbe,Janet | 110490 | MCO Educational Series 10 | Class |
| Balderas Cuenca,Monce Daniela | 110490 | MCO Educational Series 10 | Class |
| Sylmetaj,Loretta | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Arulampalam,Dharmabalan | 110490 | MCO Educational Series 10 | Class |
| Vincent,Valarie | 110490 | MCO Educational Series 10 | Class |
| Hector,Hiram | 110490 | MCO Educational Series 10 | Class |
| Mitchell II,Frank | 110490 | MCO Educational Series 10 | Class |
| Diep,Wendy | 110490 | MCO Educational Series 10 | Class |
| Steo,John | 110490 | MCO Educational Series 10 | Class |
| Washington,Keayna | 110490 | MCO Educational Series 10 | Class |
| Washington,Keayna | 110490 | MCO Educational Series 10 | Class |
| Santiago,Aixa | 110490 | MCO Educational Series 10 | Class |
| Tittle,Nehemiah E | 110490 | MCO Educational Series 10 | Class |
| Figueroa,Samantha | 110490 | MCO Educational Series 10 | Class |
| Sando Sr,Geebah Yheah | 110490 | MCO Educational Series 10 | Class |
| Gaspar,Jessica | 110490 | MCO Educational Series 10 | Class |
| KHANAM,HAFIZA | 110490 | MCO Educational Series 10 | Class |
| Grant,Jayden | 110490 | MCO Educational Series 10 | Class |
| Guzman,Yomber | 110490 | MCO Educational Series 10 | Class |
| Foster,Isiah | 110490 | MCO Educational Series 10 | Class |
| Clezidor,Charline | 110490 | MCO Educational Series 10 | Class |
| Balaniuc,Daniela | 110490 | MCO Educational Series 10 | Class |
| Garcia,Loury | 110490 | MCO Educational Series 10 | Class |
| Candelario,Arlette | 110490 | MCO Educational Series 10 | Class |
| Tobish,Matthew | 110490 | MCO Educational Series 10 | Class |
| MUNRO,MARGARET M | 110490 | MCO Educational Series 10 | Class |
| Mejia,Seth | 110490 | MCO Educational Series 10 | Class |
| Flynch,Keshia | 110490 | MCO Educational Series 10 | Class |
| diop,alla | 110490 | MCO Educational Series 10 | Class |
| Wilson,Briana | 110490 | MCO Educational Series 10 | Class |
| Lash,Adrian | 110490 | MCO Educational Series 10 | Class |
| Nagbe,Rachel | 110490 | MCO Educational Series 10 | Class |
| Antonio,Alejandra | 110490 | MCO Educational Series 10 | Class |
| Maddocks,Antoinette | 110490 | MCO Educational Series 10 | Class |
| Almonte,Franyoli | 110490 | MCO Educational Series 10 | Class |
| Escalera,Victor | 110490 | MCO Educational Series 10 | Class |
| Adam,Malik | 110490 | MCO Educational Series 10 | Class |
| Wilcher,Pamela | 110490 | MCO Educational Series 10 | Class |
| Marana,Freddy | 110490 | MCO Educational Series 10 | Class |
| Chua,Ralph | 110490 | MCO Educational Series 10 | Class |
| Mitchell,Derrick | 110490 | MCO Educational Series 10 | Class |
| Selman,Janessa | 110490 | MCO Educational Series 10 | Class |
| Ly,Long | 110490 | MCO Educational Series 10 | Class |
| Senat,Sabrina | 110490 | MCO Educational Series 10 | Class |
| Ibidakpo,Karimou | 110490 | MCO Educational Series 10 | Class |
| Gil,Teresa | 110490 | MCO Educational Series 10 | Class |
| Xie,Junze | 110490 | MCO Educational Series 10 | Class |
| Briones,Jessica | 110490 | MCO Educational Series 10 | Class |
| Juan,Karina | 110490 | MCO Educational Series 10 | Class |
| Carrasquillo,John Charles | 110490 | MCO Educational Series 10 | Class |
| Jones,Randel | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Stevenson,Jaylen | 110490 | MCO Educational Series 10 | Class |
| Taskeen,Aqsa | 110490 | MCO Educational Series 10 | Class |
| Bernard,Chaka | 110490 | MCO Educational Series 10 | Class |
| Brown,Tamara | 110490 | MCO Educational Series 10 | Class |
| Brown,Tamara | 110490 | MCO Educational Series 10 | Class |
| Olvera Ram?rez,Hortensia | 110490 | MCO Educational Series 10 | Class |
| Zosayas,Idaly | 110490 | MCO Educational Series 10 | Class |
| Scott,Omowunmi Moses | 110490 | MCO Educational Series 10 | Class |
| Bonilla,Sandra | 110490 | MCO Educational Series 10 | Class |
| strother,eric | 110490 | MCO Educational Series 10 | Class |
| Sesay,Elizabeth Kathy | 110490 | MCO Educational Series 10 | Class |
| Cruz,Julio | 110490 | MCO Educational Series 10 | Class |
| Suarez,Cheryl | 110490 | MCO Educational Series 10 | Class |
| Trimmings,Jason D | 110490 | MCO Educational Series 10 | Class |
| Cepeda,Tamara | 110490 | MCO Educational Series 10 | Class |
| Henry,Carlos | 110490 | MCO Educational Series 10 | Class |
| yangapatty,raymond | 110490 | MCO Educational Series 10 | Class |
| Yonpuwel,mac Arthur JG | 110490 | MCO Educational Series 10 | Class |
| janis,joey | 110490 | MCO Educational Series 10 | Class |
| Hidalgo,Soraida | 110490 | MCO Educational Series 10 | Class |
| Hamilton,Hamood | 110490 | MCO Educational Series 10 | Class |
| Kavalerchik,Alex | 110490 | MCO Educational Series 10 | Class |
| Attallah,Rimon | 110490 | MCO Educational Series 10 | Class |
| Karagyozyan,Aghasi | 110490 | MCO Educational Series 10 | Class |
| Oguda,Dominic | 110490 | MCO Educational Series 10 | Class |
| Adepele,Olusegun olagoke | 110490 | MCO Educational Series 10 | Class |
| Walford,christopher | 110490 | MCO Educational Series 10 | Class |
| Garrison,Erick | 110490 | MCO Educational Series 10 | Class |
| Fonseca,Crystal | 110490 | MCO Educational Series 10 | Class |
| Conde,Ramata | 110490 | MCO Educational Series 10 | Class |
| Reid,Dennis Gasford | 110490 | MCO Educational Series 10 | Class |
| PINCAY,brandon L | 110490 | MCO Educational Series 10 | Class |
| Whiteside,Cynthia | 110490 | MCO Educational Series 10 | Class |
| Mitchell,Tiffany S | 110490 | MCO Educational Series 10 | Class |
| Eggleston,Vaughn | 110490 | MCO Educational Series 10 | Class |
| Beckmann,Kathy | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Marvin | 110490 | MCO Educational Series 10 | Class |
| Reinat,Elijah Robert | 110490 | MCO Educational Series 10 | Class |
| Columbia,Jaclyn | 110490 | MCO Educational Series 10 | Class |
| tadros,John | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Sindi | 110490 | MCO Educational Series 10 | Class |
| Iqbal,Ray Raza | 110490 | MCO Educational Series 10 | Class |
| Mastrangelo,Thomas John | 110490 | MCO Educational Series 10 | Class |
| Desiderio,Franchesca | 110490 | MCO Educational Series 10 | Class |
| Garcia,Esmeralda | 110490 | MCO Educational Series 10 | Class |
| Freeman,Jasmine Jessica | 110490 | MCO Educational Series 10 | Class |
| Haris,Muhammad | 110490 | MCO Educational Series 10 | Class |
| Johnson,Annie | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Thomas,Daniel | 110490 | MCO Educational Series 10 | Class |
| Chavez,Anthony Bernardo | 110490 | MCO Educational Series 10 | Class |
| Muraina,Bashiru | 110490 | MCO Educational Series 10 | Class |
| Antoine,Ralph | 110490 | MCO Educational Series 10 | Class |
| Sanchez-Tapia,Jailine | 110490 | MCO Educational Series 10 | Class |
| Jackson,Quaniesha | 110490 | MCO Educational Series 10 | Class |
| sola,steven | 110490 | MCO Educational Series 10 | Class |
| Tung,Mei | 110490 | MCO Educational Series 10 | Class |
| JOHNSON,ALICIA | 110490 | MCO Educational Series 10 | Class |
| ETCHISON,TIKIYA Evelyn | 110490 | MCO Educational Series 10 | Class |
| Donohue,Florence | 110490 | MCO Educational Series 10 | Class |
| Lesha,Dorjan | 110490 | MCO Educational Series 10 | Class |
| Alamo,Krystal | 110490 | MCO Educational Series 10 | Class |
| Romero,Terry | 110490 | MCO Educational Series 10 | Class |
| Antoine,Zaniyah | 110490 | MCO Educational Series 10 | Class |
| Antoine,Zaniyah | 110490 | MCO Educational Series 10 | Class |
| Sim,Chialonda | 110490 | MCO Educational Series 10 | Class |
| Ebel,Robert Joseph | 110490 | MCO Educational Series 10 | Class |
| Hillard,Angie | 110490 | MCO Educational Series 10 | Class |
| Crocker,Orin | 110490 | MCO Educational Series 10 | Class |
| Pepa,Jamama | 110490 | MCO Educational Series 10 | Class |
| Rojas,Jhoven | 110490 | MCO Educational Series 10 | Class |
| Portuhondo,Alberto Dejesus | 110490 | MCO Educational Series 10 | Class |
| Lefkowitz,Leanna | 110490 | MCO Educational Series 10 | Class |
| Feratovic,Ferid | 110490 | MCO Educational Series 10 | Class |
| Smith-Takacs,Michael | 110490 | MCO Educational Series 10 | Class |
| Nelson,Arthur Ernest | 110490 | MCO Educational Series 10 | Class |
| Spencer,Alexis | 110490 | MCO Educational Series 10 | Class |
| aquino,magali | 110490 | MCO Educational Series 10 | Class |
| Romano,Tabatha | 110490 | MCO Educational Series 10 | Class |
| Cortes,Edmundo | 110490 | MCO Educational Series 10 | Class |
| Jones,Cheryl | 110490 | MCO Educational Series 10 | Class |
| Khadgi,Rajeshowari | 110490 | MCO Educational Series 10 | Class |
| Roman,Marcus | 110490 | MCO Educational Series 10 | Class |
| Khadgi,Dil | 110490 | MCO Educational Series 10 | Class |
| Desiderio,Adam | 110490 | MCO Educational Series 10 | Class |
| Espadero,Cesar | 110490 | MCO Educational Series 10 | Class |
| leung,Heidi | 110490 | MCO Educational Series 10 | Class |
| Pierre Jean,Lena | 110490 | MCO Educational Series 10 | Class |
| Turner,Arthur | 110490 | MCO Educational Series 10 | Class |
| Azon,Alba | 110490 | MCO Educational Series 10 | Class |
| Mohamed,Mohamed Mostafa | 110490 | MCO Educational Series 10 | Class |
| Jorge,Manuela | 110490 | MCO Educational Series 10 | Class |
| Munoz,Mario | 110490 | MCO Educational Series 10 | Class |
| Galarza,Moises | 110490 | MCO Educational Series 10 | Class |
| Iwanowicz,Cezary | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Javier | 110490 | MCO Educational Series 10 | Class |
| Lunsford,Devon | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Servance,Denarius | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Daniel Alejandro | 110490 | MCO Educational Series 10 | Class |
| Smith,Amanda Marie | 110490 | MCO Educational Series 10 | Class |
| Jaquez,Liany | 110490 | MCO Educational Series 10 | Class |
| Cabera,Rassul | 110490 | MCO Educational Series 10 | Class |
| Cabera,Rassul | 110490 | MCO Educational Series 10 | Class |
| Toledo,Francisco Javier | 110490 | MCO Educational Series 10 | Class |
| Tatum,Tara | 110490 | MCO Educational Series 10 | Class |
| Hall,Tatiana | 110490 | MCO Educational Series 10 | Class |
| Reyes Esquivel,Alan | 110490 | MCO Educational Series 10 | Class |
| Malerva,Julio C | 110490 | MCO Educational Series 10 | Class |
| Jalloh,Mariama | 110490 | MCO Educational Series 10 | Class |
| Berko,Kingsley | 110490 | MCO Educational Series 10 | Class |
| Berko,Kingsley | 110490 | MCO Educational Series 10 | Class |
| acevedo,marialyn | 110490 | MCO Educational Series 10 | Class |
| Belton,Jon | 110490 | MCO Educational Series 10 | Class |
| John,Alvina | 110490 | MCO Educational Series 10 | Class |
| John,Alvina | 110490 | MCO Educational Series 10 | Class |
| Florival,Rebecca | 110490 | MCO Educational Series 10 | Class |
| Melendez Olan,Luis | 110490 | MCO Educational Series 10 | Class |
| blackwell,ashli | 110490 | MCO Educational Series 10 | Class |
| Viveros,Karolina | 110490 | MCO Educational Series 10 | Class |
| MARIN,KARLA | 110490 | MCO Educational Series 10 | Class |
| Palma,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Mohammed,Lalmani | 110490 | MCO Educational Series 10 | Class |
| Sealey,Malik Andrew | 110490 | MCO Educational Series 10 | Class |
| Alabi,Sodiq Adekunle | 110490 | MCO Educational Series 10 | Class |
| Williams,Mercedes | 110490 | MCO Educational Series 10 | Class |
| Jean Gilles,Wasiline | 110490 | MCO Educational Series 10 | Class |
| Pagan,Willmarie | 110490 | MCO Educational Series 10 | Class |
| Ackerson,Joseph | 110490 | MCO Educational Series 10 | Class |
| Cardona Moreno,Eliezer | 110490 | MCO Educational Series 10 | Class |
| Shaker,Moureen | 110490 | MCO Educational Series 10 | Class |
| Chilaka,Wilfred Uche | 110490 | MCO Educational Series 10 | Class |
| Bragg,Kiara | 110490 | MCO Educational Series 10 | Class |
| Yang,Ashley | 110490 | MCO Educational Series 10 | Class |
| EDJEMIN,EHUIE STANISLAS | 110490 | MCO Educational Series 10 | Class |
| Mclaurin,Raurice | 110490 | MCO Educational Series 10 | Class |
| Mantilla,Liliana D | 110490 | MCO Educational Series 10 | Class |
| villacis,johnny | 110490 | MCO Educational Series 10 | Class |
| Pierre,Brunia | 110490 | MCO Educational Series 10 | Class |
| Sawyers,Des | 110490 | MCO Educational Series 10 | Class |
| romero de la Rosa,cleismar | 110490 | MCO Educational Series 10 | Class |
| Brabham,Keira | 110490 | MCO Educational Series 10 | Class |
| kishchenko,sergei | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Sabrina | 110490 | MCO Educational Series 10 | Class |
| Kien,Brandon Sang | 110490 | MCO Educational Series 10 | Class |
| MARIN,MONICA | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Peek,Darryl David | 110490 | MCO Educational Series 10 | Class |
| montero,betania m | 110490 | MCO Educational Series 10 | Class |
| Flores,Allan | 110490 | MCO Educational Series 10 | Class |
| Cordero,Starky J | 110490 | MCO Educational Series 10 | Class |
| Torres,Marco | 110490 | MCO Educational Series 10 | Class |
| Watkins,Litoya | 110490 | MCO Educational Series 10 | Class |
| Watkins,Litoya | 110490 | MCO Educational Series 10 | Class |
| Vincent,Winston | 110490 | MCO Educational Series 10 | Class |
| Whitaker,Curtis | 110490 | MCO Educational Series 10 | Class |
| Mohamed,Rahma | 110490 | MCO Educational Series 10 | Class |
| Olguin Rodriguez,Llany | 110490 | MCO Educational Series 10 | Class |
| Detrixe,Xales | 110490 | MCO Educational Series 10 | Class |
| Michel,Samantha Lee | 110490 | MCO Educational Series 10 | Class |
| Noel,Kie | 110490 | MCO Educational Series 10 | Class |
| Stewart,Keith Stewart | 110490 | MCO Educational Series 10 | Class |
| McKenzie,Kevin Mohamid | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Yuliani | 110490 | MCO Educational Series 10 | Class |
| Dewidar,Mariam | 110490 | MCO Educational Series 10 | Class |
| Bradshaw,Keith | 110490 | MCO Educational Series 10 | Class |
| Klass,Nikida | 110490 | MCO Educational Series 10 | Class |
| Druda,Nicole | 110490 | MCO Educational Series 10 | Class |
| zhong,chuyi | 110490 | MCO Educational Series 10 | Class |
| Ayernor,Paul Kodjo | 110490 | MCO Educational Series 10 | Class |
| Ayernor,Paul Kodjo | 110490 | MCO Educational Series 10 | Class |
| Burgos,Andre | 110490 | MCO Educational Series 10 | Class |
| Torres,Joseph | 110490 | MCO Educational Series 10 | Class |
| Scannapieco,Linda | 110490 | MCO Educational Series 10 | Class |
| Sibri,Zayro | 110490 | MCO Educational Series 10 | Class |
| Iacona,Daniel L | 110490 | MCO Educational Series 10 | Class |
| Reyes,Addis | 110490 | MCO Educational Series 10 | Class |
| Mitchell,Leon | 110490 | MCO Educational Series 10 | Class |
| Hounnou,Honorat | 110490 | MCO Educational Series 10 | Class |
| BALANIUC,DAVID | 110490 | MCO Educational Series 10 | Class |
| Torres,Herman | 110490 | MCO Educational Series 10 | Class |
| Campbell,Donald J | 110490 | MCO Educational Series 10 | Class |
| Smalls,Kayshawn | 110490 | MCO Educational Series 10 | Class |
| ame,Drilon | 110490 | MCO Educational Series 10 | Class |
| Burnett,Tiara | 110490 | MCO Educational Series 10 | Class |
| Gonzalez Alvarado,Marvin Uriel | 110490 | MCO Educational Series 10 | Class |
| Swarnalatha,Ranasinghe Arachchige | 110490 | MCO Educational Series 10 | Class |
| Kingston,Arlene | 110490 | MCO Educational Series 10 | Class |
| Luzuriaga,Alexandra Alexandra | 110490 | MCO Educational Series 10 | Class |
| Rahman,Alve | 110490 | MCO Educational Series 10 | Class |
| Uraga,Yanill | 110490 | MCO Educational Series 10 | Class |
| Manolatos,Speros | 110490 | MCO Educational Series 10 | Class |
| Chan,Kimberly L | 110490 | MCO Educational Series 10 | Class |
| Toure,Mohamed | 110490 | MCO Educational Series 10 | Class |
| Decopain,Rachelle | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Cruz Konchakoska,Francisco | 110490 | MCO Educational Series 10 | Class |
| Sosa,April | 110490 | MCO Educational Series 10 | Class |
| Baez,Clainy | 110490 | MCO Educational Series 10 | Class |
| Guarneri,Richard | 110490 | MCO Educational Series 10 | Class |
| Mai,Anthony | 110490 | MCO Educational Series 10 | Class |
| Frederick,Anthony Jermain | 110490 | MCO Educational Series 10 | Class |
| Cruz,Marco Antonio | 110490 | MCO Educational Series 10 | Class |
| Felix,Eardley | 110490 | MCO Educational Series 10 | Class |
| Fiore,Michael | 110490 | MCO Educational Series 10 | Class |
| Molina,Samuel DAVID | 110490 | MCO Educational Series 10 | Class |
| Fray,NaKeesha | 110490 | MCO Educational Series 10 | Class |
| Khela,Mariman | 110490 | MCO Educational Series 10 | Class |
| Faruk,Omar | 110490 | MCO Educational Series 10 | Class |
| Calderon,krystel | 110490 | MCO Educational Series 10 | Class |
| Williams,Otis | 110490 | MCO Educational Series 10 | Class |
| hernandez,carlos | 110490 | MCO Educational Series 10 | Class |
| Nurse,Isaiah Jeremiah | 110490 | MCO Educational Series 10 | Class |
| Morgan,Jeniqua | 110490 | MCO Educational Series 10 | Class |
| Wilkins,Cyre | 110490 | MCO Educational Series 10 | Class |
| Flores,Samuel | 110490 | MCO Educational Series 10 | Class |
| Foster,Haribaldev | 110490 | MCO Educational Series 10 | Class |
| Santo,Daniel Michael | 110490 | MCO Educational Series 10 | Class |
| Reese,Felicia | 110490 | MCO Educational Series 10 | Class |
| Cruz,Allan | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Alvin Steven | 110490 | MCO Educational Series 10 | Class |
| Samuel,Emad | 110490 | MCO Educational Series 10 | Class |
| Williams,Shaniqua | 110490 | MCO Educational Series 10 | Class |
| Mirza,Nimra | 110490 | MCO Educational Series 10 | Class |
| Anani,Collins Kojo | 110490 | MCO Educational Series 10 | Class |
| Ruan,Sean | 110490 | MCO Educational Series 10 | Class |
| Voltaire,Carl Hans | 110490 | MCO Educational Series 10 | Class |
| Fernandez,Ada | 110490 | MCO Educational Series 10 | Class |
| Amaya,Catherine | 110490 | MCO Educational Series 10 | Class |
| Breja,Daniel | 110490 | MCO Educational Series 10 | Class |
| Garcia,Erick | 110490 | MCO Educational Series 10 | Class |
| pascoe,kamala | 110490 | MCO Educational Series 10 | Class |
| Suarez Jerez,Rosa Angelica A | 110490 | MCO Educational Series 10 | Class |
| Lara,Federico Junior | 110490 | MCO Educational Series 10 | Class |
| Jonas,Mike | 110490 | MCO Educational Series 10 | Class |
| Robinson,James | 110490 | MCO Educational Series 10 | Class |
| Anderson,Michelle | 110490 | MCO Educational Series 10 | Class |
| Musa,Abdallah | 110490 | MCO Educational Series 10 | Class |
| Quinn,Donna | 110490 | MCO Educational Series 10 | Class |
| Galindo,Zabai | 110490 | MCO Educational Series 10 | Class |
| terfie,helen | 110490 | MCO Educational Series 10 | Class |
| terfie,helen | 110490 | MCO Educational Series 10 | Class |
| Melbin,John | 110490 | MCO Educational Series 10 | Class |
| Charles,Jamil | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Joseph,Wilner | 110490 | MCO Educational Series 10 | Class |
| Babajide,Saheed S | 110490 | MCO Educational Series 10 | Class |
| Kalogeropoulos,Anastasios John | 110490 | MCO Educational Series 10 | Class |
| Ladepo,Taiwo Mubarakat | 110490 | MCO Educational Series 10 | Class |
| Miller,Dom | 110490 | MCO Educational Series 10 | Class |
| Butler,Bianca Jasmine | 110490 | MCO Educational Series 10 | Class |
| Aly,Mohamed | 110490 | MCO Educational Series 10 | Class |
| Jones,Bill | 110490 | MCO Educational Series 10 | Class |
| MAJEKODUNMI,ADEDAYO | 110490 | MCO Educational Series 10 | Class |
| TAMAYO,VICTOR Hugo | 110490 | MCO Educational Series 10 | Class |
| Pernicka,Jeffrey Lawrence | 110490 | MCO Educational Series 10 | Class |
| Aysha,Fawzy | 110490 | MCO Educational Series 10 | Class |
| esposito,Robert | 110490 | MCO Educational Series 10 | Class |
| esposito,Robert | 110490 | MCO Educational Series 10 | Class |
| Ramsey,Kenya | 110490 | MCO Educational Series 10 | Class |
| Terry,Tatyanna | 110490 | MCO Educational Series 10 | Class |
| Valentin,Michelle | 110490 | MCO Educational Series 10 | Class |
| Torres Mendoza,Ricardo | 110490 | MCO Educational Series 10 | Class |
| Perez,Eidder S | 110490 | MCO Educational Series 10 | Class |
| Ramales,Salma Vanessa | 110490 | MCO Educational Series 10 | Class |
| Juarez-Rivera,William | 110490 | MCO Educational Series 10 | Class |
| Gack,Mamadou | 110490 | MCO Educational Series 10 | Class |
| Graham,William | 110490 | MCO Educational Series 10 | Class |
| Wilson,Caneisha | 110490 | MCO Educational Series 10 | Class |
| Koko,Chrislove G | 110490 | MCO Educational Series 10 | Class |
| Suresh,Viraj | 110490 | MCO Educational Series 10 | Class |
| Alshayah,Mhd YASER | 110490 | MCO Educational Series 10 | Class |
| Gray,Kerry | 110490 | MCO Educational Series 10 | Class |
| boalds,phillip | 110490 | MCO Educational Series 10 | Class |
| Thomas,Traceyann | 110490 | MCO Educational Series 10 | Class |
| Balogun,Regina | 110490 | MCO Educational Series 10 | Class |
| Mcbeth,Michael | 110490 | MCO Educational Series 10 | Class |
| Cooley,Desmond | 110490 | MCO Educational Series 10 | Class |
| Pandolfo,Amanda | 110490 | MCO Educational Series 10 | Class |
| Dowling,Lucius Josiah | 110490 | MCO Educational Series 10 | Class |
| Shaker,Merna | 110490 | MCO Educational Series 10 | Class |
| Tovbis,Anatoliy | 110490 | MCO Educational Series 10 | Class |
| Tovbis,Anatoliy | 110490 | MCO Educational Series 10 | Class |
| Balogun,Talani | 110490 | MCO Educational Series 10 | Class |
| Randazzo,Deanna | 110490 | MCO Educational Series 10 | Class |
| Basil,David G | 110490 | MCO Educational Series 10 | Class |
| Lobasso,Angela | 110490 | MCO Educational Series 10 | Class |
| Simmons,Kenya | 110490 | MCO Educational Series 10 | Class |
| Callender,Jediah | 110490 | MCO Educational Series 10 | Class |
| Nicholas,Shaquan Dravante | 110490 | MCO Educational Series 10 | Class |
| Sooriyaarachchi,Kithsiri Ariyawansa | 110490 | MCO Educational Series 10 | Class |
| Kone,Amara | 110490 | MCO Educational Series 10 | Class |
| Dada - Burrell,Tawanna | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Hernandez,Kenia Maria | 110490 | MCO Educational Series 10 | Class |
| Flanders,Rhondell | 110490 | MCO Educational Series 10 | Class |
| Shuffler,Matthew Shemar | 110490 | MCO Educational Series 10 | Class |
| Guerrero,Michael | 110490 | MCO Educational Series 10 | Class |
| Sylla,Aicha | 110490 | MCO Educational Series 10 | Class |
| Kelly,Will John | 110490 | MCO Educational Series 10 | Class |
| H,Thanya | 110490 | MCO Educational Series 10 | Class |
| Bedzra,Kwadzo | 110490 | MCO Educational Series 10 | Class |
| Bedzra,Kwadzo | 110490 | MCO Educational Series 10 | Class |
| Castro,Benjamin | 110490 | MCO Educational Series 10 | Class |
| Castro,Benjamin | 110490 | MCO Educational Series 10 | Class |
| Thomas,Tony | 110490 | MCO Educational Series 10 | Class |
| Bangura,Aminata haja | 110490 | MCO Educational Series 10 | Class |
| ada,jamyla | 110490 | MCO Educational Series 10 | Class |
| Defoe,Hildred | 110490 | MCO Educational Series 10 | Class |
| Wood,Michaela Nicole | 110490 | MCO Educational Series 10 | Class |
| Santiago,Amanda | 110490 | MCO Educational Series 10 | Class |
| De La Cruz,Kevin | 110490 | MCO Educational Series 10 | Class |
| ALUTH-GAMARALALAGE,JANAKA BANDARA | 110490 | MCO Educational Series 10 | Class |
| Brooks,Rachel | 110490 | MCO Educational Series 10 | Class |
| giordano,albert | 110490 | MCO Educational Series 10 | Class |
| Campos,Irwin | 110490 | MCO Educational Series 10 | Class |
| Dominguez,Bryan | 110490 | MCO Educational Series 10 | Class |
| Lopez Castro,Pedro | 110490 | MCO Educational Series 10 | Class |
| Aguilar,Eliana | 110490 | MCO Educational Series 10 | Class |
| Navarro,Nadia Itzel | 110490 | MCO Educational Series 10 | Class |
| Jones,Royanna C | 110490 | MCO Educational Series 10 | Class |
| Holmon,Jason | 110490 | MCO Educational Series 10 | Class |
| Jordan,Felicia | 110490 | MCO Educational Series 10 | Class |
| Mariani,Maria | 110490 | MCO Educational Series 10 | Class |
| Peralta,Nicole | 110490 | MCO Educational Series 10 | Class |
| Nowak,Konrad | 110490 | MCO Educational Series 10 | Class |
| Morrison,Eric | 110490 | MCO Educational Series 10 | Class |
| Mateo,Nayelly | 110490 | MCO Educational Series 10 | Class |
| Rosario,Talisa | 110490 | MCO Educational Series 10 | Class |
| Madeo,Adam | 110490 | MCO Educational Series 10 | Class |
| Joseph,Tirzah | 110490 | MCO Educational Series 10 | Class |
| Kodituwakku,Sriyanthi | 110490 | MCO Educational Series 10 | Class |
| Fox,Christopher | 110490 | MCO Educational Series 10 | Class |
| Christian,Reena | 110490 | MCO Educational Series 10 | Class |
| Harper,Kenneth Joseph | 110490 | MCO Educational Series 10 | Class |
| Robinson,Lekeasha | 110490 | MCO Educational Series 10 | Class |
| Abreu,Ramon | 110490 | MCO Educational Series 10 | Class |
| Leonard,Michel-ange | 110490 | MCO Educational Series 10 | Class |
| Vuli,Rupeni | 110490 | MCO Educational Series 10 | Class |
| Barthelus,Emilie | 110490 | MCO Educational Series 10 | Class |
| Barthelus,Emilie | 110490 | MCO Educational Series 10 | Class |
| coleman,Nicole | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Pugh,Douglas | 110490 | MCO Educational Series 10 | Class |
| Sisodia,Leslie | 110490 | MCO Educational Series 10 | Class |
| Peterson,Elijah | 110490 | MCO Educational Series 10 | Class |
| Ipadeola,Bukola Basirat | 110490 | MCO Educational Series 10 | Class |
| Sibri,Juan Carlos | 110490 | MCO Educational Series 10 | Class |
| Harper,Faheem A. | 110490 | MCO Educational Series 10 | Class |
| Gaines,William | 110490 | MCO Educational Series 10 | Class |
| Carrasco,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Levine,Edward Jay | 110490 | MCO Educational Series 10 | Class |
| Gomez,Sean | 110490 | MCO Educational Series 10 | Class |
| Parker,Stephanie | 110490 | MCO Educational Series 10 | Class |
| Obiano,Peter | 110490 | MCO Educational Series 10 | Class |
| Joseph,Aviole | 110490 | MCO Educational Series 10 | Class |
| Mikhil,Michael | 110490 | MCO Educational Series 10 | Class |
| Mikhil,Michael | 110490 | MCO Educational Series 10 | Class |
| Kelmeris Jr,Victor | 110490 | MCO Educational Series 10 | Class |
| MyrthilChrisphonte,Nastassia | 110490 | MCO Educational Series 10 | Class |
| Coleman,Jeffrey | 110490 | MCO Educational Series 10 | Class |
| Thomas,Owen M | 110490 | MCO Educational Series 10 | Class |
| Thomas,Owen M | 110490 | MCO Educational Series 10 | Class |
| Thomas,Owen M | 110490 | MCO Educational Series 10 | Class |
| Williams,Sarah | 110490 | MCO Educational Series 10 | Class |
| Otutulord,Wasiu | 110490 | MCO Educational Series 10 | Class |
| Eller,Danielle | 110490 | MCO Educational Series 10 | Class |
| Lau,Tune | 110490 | MCO Educational Series 10 | Class |
| Altamirano,Carmen | 110490 | MCO Educational Series 10 | Class |
| Shaw,Savion | 110490 | MCO Educational Series 10 | Class |
| UFONDU,VICTORIA | 110490 | MCO Educational Series 10 | Class |
| Williams,Diamond | 110490 | MCO Educational Series 10 | Class |
| Vlastakis,Joann | 110490 | MCO Educational Series 10 | Class |
| Jean Toussaint,Shooseline | 110490 | MCO Educational Series 10 | Class |
| Sims,Aljhakwan | 110490 | MCO Educational Series 10 | Class |
| Khandaker,Sumaiya | 110490 | MCO Educational Series 10 | Class |
| Mendoza,Fernando Isaac | 110490 | MCO Educational Series 10 | Class |
| Jenkins,Jason | 110490 | MCO Educational Series 10 | Class |
| Maria,Katy | 110490 | MCO Educational Series 10 | Class |
| White,Kari | 110490 | MCO Educational Series 10 | Class |
| Kennedy,Jamaal Michael | 110490 | MCO Educational Series 10 | Class |
| Vicente,Reynelis | 110490 | MCO Educational Series 10 | Class |
| Maysonet,Linda | 110490 | MCO Educational Series 10 | Class |
| Zhao,Danny | 110490 | MCO Educational Series 10 | Class |
| Waters,Kenny | 110490 | MCO Educational Series 10 | Class |
| Waters,Kenny | 110490 | MCO Educational Series 10 | Class |
| Moody,Hailly | 110490 | MCO Educational Series 10 | Class |
| Peetey,Eric Bill | 110490 | MCO Educational Series 10 | Class |
| Thomas,Ashlyn Alize | 110490 | MCO Educational Series 10 | Class |
| Greatheart,Tiffany | 110490 | MCO Educational Series 10 | Class |
| Jelicks,Heather | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Wright,Wanda | 110490 | MCO Educational Series 10 | Class |
| padilla,Melissa | 110490 | MCO Educational Series 10 | Class |
| Dewindt,Natasha | 110490 | MCO Educational Series 10 | Class |
| Banjo,Toyosi Rachael | 110490 | MCO Educational Series 10 | Class |
| Matthews,Tatyana | 110490 | MCO Educational Series 10 | Class |
| Garcia,Neydi | 110490 | MCO Educational Series 10 | Class |
| Bejarano,Alex | 110490 | MCO Educational Series 10 | Class |
| Poliovkova,Lucia | 110490 | MCO Educational Series 10 | Class |
| Denicola,Susan | 110490 | MCO Educational Series 10 | Class |
| Dormond,Denise | 110490 | MCO Educational Series 10 | Class |
| Nebot Lopez,Yackisha | 110490 | MCO Educational Series 10 | Class |
| Merlo,Ginamarie | 110490 | MCO Educational Series 10 | Class |
| Unegbu,Chukwuma | 110490 | MCO Educational Series 10 | Class |
| Robinson,Shakena | 110490 | MCO Educational Series 10 | Class |
| Bobbsemple,Dawn | 110490 | MCO Educational Series 10 | Class |
| Noguera,Chad | 110490 | MCO Educational Series 10 | Class |
| Fuller,Alex | 110490 | MCO Educational Series 10 | Class |
| Banjo,Rapheal | 110490 | MCO Educational Series 10 | Class |
| Cabrera,Cynthia | 110490 | MCO Educational Series 10 | Class |
| Cocks,Nika | 110490 | MCO Educational Series 10 | Class |
| Rivera,Diana | 110490 | MCO Educational Series 10 | Class |
| Martinez,Dudley | 110490 | MCO Educational Series 10 | Class |
| Escalona,Matthew | 110490 | MCO Educational Series 10 | Class |
| Borkowski,Matthew | 110490 | MCO Educational Series 10 | Class |
| San Pablo,Gregorio | 110490 | MCO Educational Series 10 | Class |
| Pazos camacho,Omar eduardo | 110490 | MCO Educational Series 10 | Class |
| DeSouza,Eon | 110490 | MCO Educational Series 10 | Class |
| Frances,Maria | 110490 | MCO Educational Series 10 | Class |
| Dupuy,marc elie | 110490 | MCO Educational Series 10 | Class |
| rodriguez arredondo,edgar | 110490 | MCO Educational Series 10 | Class |
| Martinez,Jose | 110490 | MCO Educational Series 10 | Class |
| Rios,George C | 110490 | MCO Educational Series 10 | Class |
| Torres,Nicole | 110490 | MCO Educational Series 10 | Class |
| Palmieri,Anna | 110490 | MCO Educational Series 10 | Class |
| Martinez,William | 110490 | MCO Educational Series 10 | Class |
| Mohamed,Abdelrahman | 110490 | MCO Educational Series 10 | Class |
| Newton,P Kwamina | 110490 | MCO Educational Series 10 | Class |
| Williamson,Christy | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Alexis Oswaldo | 110490 | MCO Educational Series 10 | Class |
| Olea,Sabrina Daniela | 110490 | MCO Educational Series 10 | Class |
| Martinez,Jessica Mabel | 110490 | MCO Educational Series 10 | Class |
| Bazemore,Jayshawn | 110490 | MCO Educational Series 10 | Class |
| Villegas,Maliakah | 110490 | MCO Educational Series 10 | Class |
| Johnson,Jamel | 110490 | MCO Educational Series 10 | Class |
| Fredericks,Shakeera | 110490 | MCO Educational Series 10 | Class |
| Santiago,Isiah Kenneth | 110490 | MCO Educational Series 10 | Class |
| Vargas,Felipe | 110490 | MCO Educational Series 10 | Class |
| Lopez,Gabriel | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Jayasundara,Hemantha Pushpa Kumara | 110490 | MCO Educational Series 10 | Class |
| Crawford,Savannah | 110490 | MCO Educational Series 10 | Class |
| Marshall,Brittany | 110490 | MCO Educational Series 10 | Class |
| SESEBOR,FESTUS | 110490 | MCO Educational Series 10 | Class |
| AJIKOBI,Olufunmilayo | 110490 | MCO Educational Series 10 | Class |
| Dungca,JD | 110490 | MCO Educational Series 10 | Class |
| Tirado,Michael Joseph | 110490 | MCO Educational Series 10 | Class |
| Okunonke,Mike | 110490 | MCO Educational Series 10 | Class |
| Bessler,Thomas | 110490 | MCO Educational Series 10 | Class |
| denis,samanta | 110490 | MCO Educational Series 10 | Class |
| denis,samanta | 110490 | MCO Educational Series 10 | Class |
| Sinclair,Paul Jason | 110490 | MCO Educational Series 10 | Class |
| Alcantara,Wangel | 110490 | MCO Educational Series 10 | Class |
| Sassano,Dayna | 110490 | MCO Educational Series 10 | Class |
| Onyelo,Stanley Chidiebere | 110490 | MCO Educational Series 10 | Class |
| Brown Lopez,Jordan | 110490 | MCO Educational Series 10 | Class |
| Eric,Moon | 110490 | MCO Educational Series 10 | Class |
| Brito,Rosa | 110490 | MCO Educational Series 10 | Class |
| Zuniga,Brenda B | 110490 | MCO Educational Series 10 | Class |
| Kam,Henry | 110490 | MCO Educational Series 10 | Class |
| Pavia,Wilfredo | 110490 | MCO Educational Series 10 | Class |
| DUDLEY,JUSTIN | 110490 | MCO Educational Series 10 | Class |
| Dume,Sheyla | 110490 | MCO Educational Series 10 | Class |
| Merise,Kimberly | 110490 | MCO Educational Series 10 | Class |
| Spears,Isaiah | 110490 | MCO Educational Series 10 | Class |
| Coleman,Tiana | 110490 | MCO Educational Series 10 | Class |
| Oviahon,Osa | 110490 | MCO Educational Series 10 | Class |
| Oviahon,Osa | 110490 | MCO Educational Series 10 | Class |
| Alexander,Dominique | 110490 | MCO Educational Series 10 | Class |
| Basurto,Ismael | 110490 | MCO Educational Series 10 | Class |
| Soumahoro,Mory | 110490 | MCO Educational Series 10 | Class |
| Scott,Barry | 110490 | MCO Educational Series 10 | Class |
| Oretuga,Kehinde | 110490 | MCO Educational Series 10 | Class |
| Guamanquispe,Dindi Rose | 110490 | MCO Educational Series 10 | Class |
| De la rosa,Michael D | 110490 | MCO Educational Series 10 | Class |
| Gronock,Anthony | 110490 | MCO Educational Series 10 | Class |
| Torralba,Jacqueline | 110490 | MCO Educational Series 10 | Class |
| lopez,Marisol | 110490 | MCO Educational Series 10 | Class |
| PIMBLE,ALLAN | 110490 | MCO Educational Series 10 | Class |
| Grant,Anthony T | 110490 | MCO Educational Series 10 | Class |
| Davis,Levy | 110490 | MCO Educational Series 10 | Class |
| Sparendam,Mariah | 110490 | MCO Educational Series 10 | Class |
| ACESTE,KIM | 110490 | MCO Educational Series 10 | Class |
| Iorio,Anthony Louis | 110490 | MCO Educational Series 10 | Class |
| Spruill,Shae | 110490 | MCO Educational Series 10 | Class |
| Campbell,Sophia | 110490 | MCO Educational Series 10 | Class |
| Murray,Jaylene | 110490 | MCO Educational Series 10 | Class |
| Laventure,Dernella | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Younan,Mina | 110490 | MCO Educational Series 10 | Class |
| Iacono,Joseph Anthony | 110490 | MCO Educational Series 10 | Class |
| FERNANDEZ,ARIANA | 110490 | MCO Educational Series 10 | Class |
| Olivares,Nathaniel | 110490 | MCO Educational Series 10 | Class |
| Rivera,Keanu | 110490 | MCO Educational Series 10 | Class |
| Cregin,William James | 110490 | MCO Educational Series 10 | Class |
| williams,Aderonke | 110490 | MCO Educational Series 10 | Class |
| Mills,Amir | 110490 | MCO Educational Series 10 | Class |
| Simpkins,Gerald | 110490 | MCO Educational Series 10 | Class |
| Carballo Carballo,Ramon Luis | 110490 | MCO Educational Series 10 | Class |
| Pavia Ortiz,Jose Eduardo | 110490 | MCO Educational Series 10 | Class |
| Collaguazo,Miguel Estive | 110490 | MCO Educational Series 10 | Class |
| Mustafa,Ayata | 110490 | MCO Educational Series 10 | Class |
| Anger,Tyler | 110490 | MCO Educational Series 10 | Class |
| Sayre Carrero,Peter | 110490 | MCO Educational Series 10 | Class |
| Salem,Brenda | 110490 | MCO Educational Series 10 | Class |
| scott,kaila | 110490 | MCO Educational Series 10 | Class |
| Swary,Malia B | 110490 | MCO Educational Series 10 | Class |
| Soto Garay,Regina Juana | 110490 | MCO Educational Series 10 | Class |
| Rohr,Thomas | 110490 | MCO Educational Series 10 | Class |
| Cipolla,Joe | 110490 | MCO Educational Series 10 | Class |
| Carroll,John | 110490 | MCO Educational Series 10 | Class |
| NYABUTO,GEOFREY | 110490 | MCO Educational Series 10 | Class |
| Lee-Sang Richardson,Danielle | 110490 | MCO Educational Series 10 | Class |
| Villanueva Ortiz,Raquel | 110490 | MCO Educational Series 10 | Class |
| Meyers,Neko | 110490 | MCO Educational Series 10 | Class |
| Correa Silva,Bertha R. | 110490 | MCO Educational Series 10 | Class |
| Viray,Tristan | 110490 | MCO Educational Series 10 | Class |
| Dawkins,Jason | 110490 | MCO Educational Series 10 | Class |
| acosta,Matthew | 110490 | MCO Educational Series 10 | Class |
| Rizzo,Angela R | 110490 | MCO Educational Series 10 | Class |
| Varghese,Soman | 110490 | MCO Educational Series 10 | Class |
| Perera,Wijethunga | 110490 | MCO Educational Series 10 | Class |
| Leon,Matthew | 110490 | MCO Educational Series 10 | Class |
| Nsionu,Chima | 110490 | MCO Educational Series 10 | Class |
| Bailey,Amani | 110490 | MCO Educational Series 10 | Class |
| Doyle,Caitlyn | 110490 | MCO Educational Series 10 | Class |
| Coludro,Sharon | 110490 | MCO Educational Series 10 | Class |
| Spooner Oneal,Celestine | 110490 | MCO Educational Series 10 | Class |
| Aderibigbe,Christianah B | 110490 | MCO Educational Series 10 | Class |
| Mian,Asad | 110490 | MCO Educational Series 10 | Class |
| Buchanan,Conroy Anthony | 110490 | MCO Educational Series 10 | Class |
| Bundo,Anila | 110490 | MCO Educational Series 10 | Class |
| pierre,sherline | 110490 | MCO Educational Series 10 | Class |
| Kittrell,April | 110490 | MCO Educational Series 10 | Class |
| Sims,Christian | 110490 | MCO Educational Series 10 | Class |
| Aghayev,Rasim | 110490 | MCO Educational Series 10 | Class |
| Anthony,Taneke Angella | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Yani,Kerolos Samir | 110490 | MCO Educational Series 10 | Class |
| Rivadeneira,Carlos | 110490 | MCO Educational Series 10 | Class |
| Salmon,Kimberly Ann | 110490 | MCO Educational Series 10 | Class |
| Raheem,Sodiq | 110490 | MCO Educational Series 10 | Class |
| Dupree,Niger | 110490 | MCO Educational Series 10 | Class |
| Cirvello,Anthony | 110490 | MCO Educational Series 10 | Class |
| Navarro,Odalys | 110490 | MCO Educational Series 10 | Class |
| Messidor,Nehemie | 110490 | MCO Educational Series 10 | Class |
| Calderon,Christian | 110490 | MCO Educational Series 10 | Class |
| Augustin,Daunel | 110490 | MCO Educational Series 10 | Class |
| pondexter,jeffrey | 110490 | MCO Educational Series 10 | Class |
| Denham,Hope Maria | 110490 | MCO Educational Series 10 | Class |
| Igbinoba,Raechel | 110490 | MCO Educational Series 10 | Class |
| Beckham,Terrence | 110490 | MCO Educational Series 10 | Class |
| Bangura,Ibrahim | 110490 | MCO Educational Series 10 | Class |
| Zhao,Yan Ning | 110490 | MCO Educational Series 10 | Class |
| Davidson,Marcus | 110490 | MCO Educational Series 10 | Class |
| Maloloy-on,Margaret | 110490 | MCO Educational Series 10 | Class |
| Pineda,Roderick | 110490 | MCO Educational Series 10 | Class |
| sullivan,kimberly | 110490 | MCO Educational Series 10 | Class |
| Dolmo,Dolmo | 110490 | MCO Educational Series 10 | Class |
| Dolmo,Dolmo | 110490 | MCO Educational Series 10 | Class |
| Randall,Alonzo | 110490 | MCO Educational Series 10 | Class |
| Randall,Alonzo | 110490 | MCO Educational Series 10 | Class |
| Villani,Dominick Peter | 110490 | MCO Educational Series 10 | Class |
| Tsoy,Anton | 110490 | MCO Educational Series 10 | Class |
| Reyes Esquivel,Blanca | 110490 | MCO Educational Series 10 | Class |
| Hubert,Petra R. | 110490 | MCO Educational Series 10 | Class |
| Burgess,Ajani | 110490 | MCO Educational Series 10 | Class |
| Neri,Eva | 110490 | MCO Educational Series 10 | Class |
| Simpson,Clive Henry | 110490 | MCO Educational Series 10 | Class |
| Flores,Mauricio Angel | 110490 | MCO Educational Series 10 | Class |
| Bauldie-Reid,Nathaniel | 110490 | MCO Educational Series 10 | Class |
| Sheran,Brandon Ricardo | 110490 | MCO Educational Series 10 | Class |
| Horton,Cory | 110490 | MCO Educational Series 10 | Class |
| Arguelles Serrano,Yolanda | 110490 | MCO Educational Series 10 | Class |
| Aburamilah,Muhammad | 110490 | MCO Educational Series 10 | Class |
| Okwueze,Chioma | 110490 | MCO Educational Series 10 | Class |
| Isyss,Isyss Devanir | 110490 | MCO Educational Series 10 | Class |
| Villegas,Diana | 110490 | MCO Educational Series 10 | Class |
| Manns Elam,Khalilah | 110490 | MCO Educational Series 10 | Class |
| Quinche,Andres Dario | 110490 | MCO Educational Series 10 | Class |
| Hardney-Andrews,Symone | 110490 | MCO Educational Series 10 | Class |
| rogowski,marcin | 110490 | MCO Educational Series 10 | Class |
| Quaye,Alvin | 110490 | MCO Educational Series 10 | Class |
| Simbi,Jamaldin | 110490 | MCO Educational Series 10 | Class |
| CHAN,Kyle | 110490 | MCO Educational Series 10 | Class |
| Richardson,Charles | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Davids,Shundell | 110490 | MCO Educational Series 10 | Class |
| Wu,andrew | 110490 | MCO Educational Series 10 | Class |
| Maneiro,Casia | 110490 | MCO Educational Series 10 | Class |
| Egodage,Indeera Pramodh | 110490 | MCO Educational Series 10 | Class |
| Burns,Casheem | 110490 | MCO Educational Series 10 | Class |
| Pedras,Vanessa | 110490 | MCO Educational Series 10 | Class |
| Trost,Ryan | 110490 | MCO Educational Series 10 | Class |
| James,Annmarie | 110490 | MCO Educational Series 10 | Class |
| ANYANWU,KENNEDY chizitere | 110490 | MCO Educational Series 10 | Class |
| young,kasein | 110490 | MCO Educational Series 10 | Class |
| kuniqi,ildi | 110490 | MCO Educational Series 10 | Class |
| Bermudez-Boyce,Jasmine | 110490 | MCO Educational Series 10 | Class |
| Ali,Shamina | 110490 | MCO Educational Series 10 | Class |
| Mulrain,Joshua | 110490 | MCO Educational Series 10 | Class |
| Asare,Nathaniel Nartey | 110490 | MCO Educational Series 10 | Class |
| Anyia,Chidi | 110490 | MCO Educational Series 10 | Class |
| Daniels,Renee | 110490 | MCO Educational Series 10 | Class |
| MOORE,ALEXENDRIA | 110490 | MCO Educational Series 10 | Class |
| Perez,Derek | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Yma Sumac | 110490 | MCO Educational Series 10 | Class |
| Isaac,Therryb | 110490 | MCO Educational Series 10 | Class |
| Rendon,Jose | 110490 | MCO Educational Series 10 | Class |
| Santos,Anthony Justin | 110490 | MCO Educational Series 10 | Class |
| Kahawevidana,Don Pawan Akila | 110490 | MCO Educational Series 10 | Class |
| Quattlebaum,Qadirah | 110490 | MCO Educational Series 10 | Class |
| Bynum,Devon | 110490 | MCO Educational Series 10 | Class |
| Kassambara,Fatoumata | 110490 | MCO Educational Series 10 | Class |
| Casso,Shateek | 110490 | MCO Educational Series 10 | Class |
| Badillo,Ana | 110490 | MCO Educational Series 10 | Class |
| Lazo-Romero,Orla | 110490 | MCO Educational Series 10 | Class |
| Garrick,junie | 110490 | MCO Educational Series 10 | Class |
| Walden,Dwaine | 110490 | MCO Educational Series 10 | Class |
| Rady,Shawana | 110490 | MCO Educational Series 10 | Class |
| Rizk,Mostafa Gabr El-said | 110490 | MCO Educational Series 10 | Class |
| Mortimer,Dahlia | 110490 | MCO Educational Series 10 | Class |
| Ramey,Sandra | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Aaron A | 110490 | MCO Educational Series 10 | Class |
| yozzo,sharon | 110490 | MCO Educational Series 10 | Class |
| Weerasinghe,Deshani Yasodara | 110490 | MCO Educational Series 10 | Class |
| Jose,Alexandra | 110490 | MCO Educational Series 10 | Class |
| Crosdale,Brian | 110490 | MCO Educational Series 10 | Class |
| White,Vanessa | 110490 | MCO Educational Series 10 | Class |
| Philip-Essiet,Meralyne Tsela | 110490 | MCO Educational Series 10 | Class |
| Del Toro,RIchard | 110490 | MCO Educational Series 10 | Class |
| Naranjo,Zoila | 110490 | MCO Educational Series 10 | Class |
| Lin,An | 110490 | MCO Educational Series 10 | Class |
| Lima,Carla | 110490 | MCO Educational Series 10 | Class |
| Lima,Carla | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Payne,Stephen | 110490 | MCO Educational Series 10 | Class |
| Ahmed,Mohaiminul | 110490 | MCO Educational Series 10 | Class |
| Aly,Magda | 110490 | MCO Educational Series 10 | Class |
| Lopez,Luis | 110490 | MCO Educational Series 10 | Class |
| Horgan,Jeff | 110490 | MCO Educational Series 10 | Class |
| Berrios,David | 110490 | MCO Educational Series 10 | Class |
| Ledesma,Jiliana | 110490 | MCO Educational Series 10 | Class |
| THOMPSON,TAJUDEEN | 110490 | MCO Educational Series 10 | Class |
| HOSSAIN,MD ZAHED | 110490 | MCO Educational Series 10 | Class |
| Giraldo,Claudia | 110490 | MCO Educational Series 10 | Class |
| Jackson,Brooklyn | 110490 | MCO Educational Series 10 | Class |
| Cohen,Madison | 110490 | MCO Educational Series 10 | Class |
| Dieppa,David | 110490 | MCO Educational Series 10 | Class |
| Dedushaj,Fislind | 110490 | MCO Educational Series 10 | Class |
| Boyne,Yanique Meisha-Gaye | 110490 | MCO Educational Series 10 | Class |
| Maica,Danny | 110490 | MCO Educational Series 10 | Class |
| Beniquez,Chris | 110490 | MCO Educational Series 10 | Class |
| duhart,zaniya | 110490 | MCO Educational Series 10 | Class |
| Howe,Christopher | 110490 | MCO Educational Series 10 | Class |
| Alvarez,Carolyn | 110490 | MCO Educational Series 10 | Class |
| Mclean,Tahtien | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Rosali | 110490 | MCO Educational Series 10 | Class |
| Jean marie,Tarnisha | 110490 | MCO Educational Series 10 | Class |
| Villegas,Jose | 110490 | MCO Educational Series 10 | Class |
| Cruz,Lesly | 110490 | MCO Educational Series 10 | Class |
| Johnson,Sameer | 110490 | MCO Educational Series 10 | Class |
| Bouri,Adam | 110490 | MCO Educational Series 10 | Class |
| Terry,Isaiah Joseph | 110490 | MCO Educational Series 10 | Class |
| Mendoza,David | 110490 | MCO Educational Series 10 | Class |
| Vinson,Betty | 110490 | MCO Educational Series 10 | Class |
| Sison,Patricia Ann G | 110490 | MCO Educational Series 10 | Class |
| Cheng,Simon | 110490 | MCO Educational Series 10 | Class |
| Ngo,Tony | 110490 | MCO Educational Series 10 | Class |
| Danilov,Timur | 110490 | MCO Educational Series 10 | Class |
| Cintron,Justin | 110490 | MCO Educational Series 10 | Class |
| jonas,anthony g | 110490 | MCO Educational Series 10 | Class |
| Anglade,Frantzceska | 110490 | MCO Educational Series 10 | Class |
| drozdowski,Violetta | 110490 | MCO Educational Series 10 | Class |
| Adler,Viesturs | 110490 | MCO Educational Series 10 | Class |
| conteh,ismael | 110490 | MCO Educational Series 10 | Class |
| Black,Nephateria K | 110490 | MCO Educational Series 10 | Class |
| Chibeze,Landry Saint | 110490 | MCO Educational Series 10 | Class |
| valente,christine | 110490 | MCO Educational Series 10 | Class |
| Bennett,Kent | 110490 | MCO Educational Series 10 | Class |
| Bennett,Kent | 110490 | MCO Educational Series 10 | Class |
| Tran,VyToan | 110490 | MCO Educational Series 10 | Class |
| Gregory,Daria | 110490 | MCO Educational Series 10 | Class |
| Concepcion,Claudia | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Phillips,Simka | 110490 | MCO Educational Series 10 | Class |
| Cole,Morenike | 110490 | MCO Educational Series 10 | Class |
| Quintero,edwin | 110490 | MCO Educational Series 10 | Class |
| ormeno,maggie | 110490 | MCO Educational Series 10 | Class |
| Bartolomey,David James | 110490 | MCO Educational Series 10 | Class |
| Khanukayeva,Benjamin | 110490 | MCO Educational Series 10 | Class |
| Janik,Taisha | 110490 | MCO Educational Series 10 | Class |
| Evans,Tae | 110490 | MCO Educational Series 10 | Class |
| Garcia,Cesar | 110490 | MCO Educational Series 10 | Class |
| Kennedy,Tyrone | 110490 | MCO Educational Series 10 | Class |
| Cruz,Elijah | 110490 | MCO Educational Series 10 | Class |
| Senarath Appuhamilage,Amith | 110490 | MCO Educational Series 10 | Class |
| Gibbs,Edward | 110490 | MCO Educational Series 10 | Class |
| Fuentes,Carmen | 110490 | MCO Educational Series 10 | Class |
| Austria,Gerardo | 110490 | MCO Educational Series 10 | Class |
| roberts,mark | 110490 | MCO Educational Series 10 | Class |
| Perez Figueroa,Nilsa | 110490 | MCO Educational Series 10 | Class |
| Ajiboye,Emmanuel Sunday | 110490 | MCO Educational Series 10 | Class |
| Ware,Cleveland | 110490 | MCO Educational Series 10 | Class |
| Olisah,Chukwuemeka | 110490 | MCO Educational Series 10 | Class |
| Spall,Sierra | 110490 | MCO Educational Series 10 | Class |
| Cruz,Martin | 110490 | MCO Educational Series 10 | Class |
| Azer,Philopateer V | 110490 | MCO Educational Series 10 | Class |
| CAMPBELL,DYLAN CHRISTOPHER | 110490 | MCO Educational Series 10 | Class |
| Nunez,Jose | 110490 | MCO Educational Series 10 | Class |
| Maloum,Sandra | 110490 | MCO Educational Series 10 | Class |
| Vale,Alexa Rosa | 110490 | MCO Educational Series 10 | Class |
| ekladios,nerveen shohdy | 110490 | MCO Educational Series 10 | Class |
| Ramkisson,Peter | 110490 | MCO Educational Series 10 | Class |
| Pacheco,Dana | 110490 | MCO Educational Series 10 | Class |
| Quick,Shynia | 110490 | MCO Educational Series 10 | Class |
| Torres,Sandra | 110490 | MCO Educational Series 10 | Class |
| Eguzouwa,Joseph | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Brian | 110490 | MCO Educational Series 10 | Class |
| cisse,Soureya Soureya | 110490 | MCO Educational Series 10 | Class |
| Macjessie-Mbewe,Nyasha | 110490 | MCO Educational Series 10 | Class |
| Igweatu,Raluchi | 110490 | MCO Educational Series 10 | Class |
| Martin Jr,Reynold | 110490 | MCO Educational Series 10 | Class |
| Perez Medina,Ana | 110490 | MCO Educational Series 10 | Class |
| Krim,Aya | 110490 | MCO Educational Series 10 | Class |
| Ferrari,Alejandro | 110490 | MCO Educational Series 10 | Class |
| Tan,Shuwan | 110490 | MCO Educational Series 10 | Class |
| Cumberbatch,Robert | 110490 | MCO Educational Series 10 | Class |
| Ekeh,Chukwuemeka | 110490 | MCO Educational Series 10 | Class |
| Rochester,Ihesha Lotoya | 110490 | MCO Educational Series 10 | Class |
| Diop,Marema | 110490 | MCO Educational Series 10 | Class |
| Kennedy,Gerard | 110490 | MCO Educational Series 10 | Class |
| Aponte,Christina | 110490 | MCO Educational Series 10 | Class |

Amazon_000327

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lee,Susanl | 110490 | MCO Educational Series 10 | Class |
| Zegarra Carranza,Juan | 110490 | MCO Educational Series 10 | Class |
| Foster,Julian | 110490 | MCO Educational Series 10 | Class |
| Conde,Raymond | 110490 | MCO Educational Series 10 | Class |
| Monroig,Jorge | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,India Temia | 110490 | MCO Educational Series 10 | Class |
| Krivca,Ajdin | 110490 | MCO Educational Series 10 | Class |
| Karen,Dyer | 110490 | MCO Educational Series 10 | Class |
| KUNJU,SYMACHEN KUNJU- | 110490 | MCO Educational Series 10 | Class |
| Gracidas,Shadel | 110490 | MCO Educational Series 10 | Class |
| Almendaris,Rosio | 110490 | MCO Educational Series 10 | Class |
| Esguerra,Virgilio | 110490 | MCO Educational Series 10 | Class |
| Hillyer,Mark | 110490 | MCO Educational Series 10 | Class |
| Armstrong,alana | 110490 | MCO Educational Series 10 | Class |
| Young,Brian | 110490 | MCO Educational Series 10 | Class |
| Mujezic,Albina | 110490 | MCO Educational Series 10 | Class |
| Sejour,Judeline | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Hilda | 110490 | MCO Educational Series 10 | Class |
| Michael,Chima | 110490 | MCO Educational Series 10 | Class |
| Weitzman,Marc | 110490 | MCO Educational Series 10 | Class |
| McPherson,Marlon | 110490 | MCO Educational Series 10 | Class |
| Paz,Katherine | 110490 | MCO Educational Series 10 | Class |
| Platt,Torrell | 110490 | MCO Educational Series 10 | Class |
| Oden,Kelvin | 110490 | MCO Educational Series 10 | Class |
| Muftau,Lateef Abidoun | 110490 | MCO Educational Series 10 | Class |
| Goriva,Adina Sixta | 110490 | MCO Educational Series 10 | Class |
| Frias,Antolino | 110490 | MCO Educational Series 10 | Class |
| Zhuk,Katsiaryna | 110490 | MCO Educational Series 10 | Class |
| Jeganathan,THINUSAN | 110490 | MCO Educational Series 10 | Class |
| Lundi,Tyrell | 110490 | MCO Educational Series 10 | Class |
| Adjodha,Narine Narine | 110490 | MCO Educational Series 10 | Class |
| Lucien,John Kev | 110490 | MCO Educational Series 10 | Class |
| Alejo,Sofia | 110490 | MCO Educational Series 10 | Class |
| Jones,Chris | 110490 | MCO Educational Series 10 | Class |
| Janis,Veronica | 110490 | MCO Educational Series 10 | Class |
| Arroyo,Myrna Michelle | 110490 | MCO Educational Series 10 | Class |
| Ebrahim,Nermeen | 110490 | MCO Educational Series 10 | Class |
| Dunlap,Khaliid | 110490 | MCO Educational Series 10 | Class |
| Okeke,Francis | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Jhonnel | 110490 | MCO Educational Series 10 | Class |
| Davis,Audrey | 110490 | MCO Educational Series 10 | Class |
| kolawole,olajide | 110490 | MCO Educational Series 10 | Class |
| Alexander,Rashanda | 110490 | MCO Educational Series 10 | Class |
| Vollweiler,Matthew | 110490 | MCO Educational Series 10 | Class |
| Paulate,Elfrido | 110490 | MCO Educational Series 10 | Class |
| villamar,patricia | 110490 | MCO Educational Series 10 | Class |
| Turton,Morleen | 110490 | MCO Educational Series 10 | Class |
| Washington,Carl Allen | 110490 | MCO Educational Series 10 | Class |

Amazon_000328

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Aziz,Steven | 110490 | MCO Educational Series 10 | Class |
| Hamilton,Tiffany | 110490 | MCO Educational Series 10 | Class |
| Atancha,Julius | 110490 | MCO Educational Series 10 | Class |
| Hodges,David | 110490 | MCO Educational Series 10 | Class |
| Madawala,Sandra | 110490 | MCO Educational Series 10 | Class |
| Bari,Izel Eda | 110490 | MCO Educational Series 10 | Class |
| Quezada,Randy | 110490 | MCO Educational Series 10 | Class |
| jenkins,paul | 110490 | MCO Educational Series 10 | Class |
| Polanco,NaLiza | 110490 | MCO Educational Series 10 | Class |
| Olmedo,Cristian | 110490 | MCO Educational Series 10 | Class |
| Herman,Tyrone | 110490 | MCO Educational Series 10 | Class |
| Jalloh,Assie | 110490 | MCO Educational Series 10 | Class |
| Walcott,Terrace K. | 110490 | MCO Educational Series 10 | Class |
| Centron,Albet Aguila | 110490 | MCO Educational Series 10 | Class |
| Ghaly,Fawky Salah | 110490 | MCO Educational Series 10 | Class |
| Williams,Denishia | 110490 | MCO Educational Series 10 | Class |
| Montalvo,Andrea | 110490 | MCO Educational Series 10 | Class |
| Cruz,Lizbeth | 110490 | MCO Educational Series 10 | Class |
| Duvillage,Reginald | 110490 | MCO Educational Series 10 | Class |
| Duvillage,Reginald | 110490 | MCO Educational Series 10 | Class |
| Royster,Daniel | 110490 | MCO Educational Series 10 | Class |
| Gray,Collin | 110490 | MCO Educational Series 10 | Class |
| Semilia,Laine | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Anyel | 110490 | MCO Educational Series 10 | Class |
| Veloz,Jose F | 110490 | MCO Educational Series 10 | Class |
| Brown,Ronaldino | 110490 | MCO Educational Series 10 | Class |
| Adunia,Tonny | 110490 | MCO Educational Series 10 | Class |
| Perez Vergara,Daniela | 110490 | MCO Educational Series 10 | Class |
| Lowe,Dante t | 110490 | MCO Educational Series 10 | Class |
| Thompson Jr,Raul | 110490 | MCO Educational Series 10 | Class |
| Acuna,Bertha Felicitas | 110490 | MCO Educational Series 10 | Class |
| Dees,lateefah | 110490 | MCO Educational Series 10 | Class |
| guaraca,ana | 110490 | MCO Educational Series 10 | Class |
| Christie,Autroya | 110490 | MCO Educational Series 10 | Class |
| Doyal,Tunishia | 110490 | MCO Educational Series 10 | Class |
| Salazar,Ligia Elena | 110490 | MCO Educational Series 10 | Class |
| Gerrity,Egan | 110490 | MCO Educational Series 10 | Class |
| Kamara,Oumar | 110490 | MCO Educational Series 10 | Class |
| Ruiz Sosa,Alejandra | 110490 | MCO Educational Series 10 | Class |
| Baderin,Olushola | 110490 | MCO Educational Series 10 | Class |
| Tello,Olinda | 110490 | MCO Educational Series 10 | Class |
| KOMBUGE,YAHANI | 110490 | MCO Educational Series 10 | Class |
| ahamed,khandakar k | 110490 | MCO Educational Series 10 | Class |
| ahamed,khandakar k | 110490 | MCO Educational Series 10 | Class |
| Vince,Jean Wislley | 110490 | MCO Educational Series 10 | Class |
| Walker,Keyan | 110490 | MCO Educational Series 10 | Class |
| SEMPER,DEON | 110490 | MCO Educational Series 10 | Class |
| johnson,dario D | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Basurto,Armando | 110490 | MCO Educational Series 10 | Class |
| Caesar,Jay J. | 110490 | MCO Educational Series 10 | Class |
| Loria,Richard | 110490 | MCO Educational Series 10 | Class |
| Hesdra,Anthony | 110490 | MCO Educational Series 10 | Class |
| Imparato,Charles | 110490 | MCO Educational Series 10 | Class |
| Medina Toro,Marcela | 110490 | MCO Educational Series 10 | Class |
| Medina Toro,Marcela | 110490 | MCO Educational Series 10 | Class |
| Munaweera,Ajith Kumara | 110490 | MCO Educational Series 10 | Class |
| leon,pierre | 110490 | MCO Educational Series 10 | Class |
| Giusto,Patrick | 110490 | MCO Educational Series 10 | Class |
| Corinthian,Jr | 110490 | MCO Educational Series 10 | Class |
| Kissoon,Mahadeo | 110490 | MCO Educational Series 10 | Class |
| Kwaafo,Veronica A | 110490 | MCO Educational Series 10 | Class |
| Jackson,Whitney | 110490 | MCO Educational Series 10 | Class |
| Khan,Mahir | 110490 | MCO Educational Series 10 | Class |
| Pavia Castillo,Teresa | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Yesenia | 110490 | MCO Educational Series 10 | Class |
| Bellamy,Nikita Itisha | 110490 | MCO Educational Series 10 | Class |
| Kovos,Keanna Mari | 110490 | MCO Educational Series 10 | Class |
| Fajardo,Rodrigo | 110490 | MCO Educational Series 10 | Class |
| Cruz,Mauricio | 110490 | MCO Educational Series 10 | Class |
| Jurado-Chichay,Zinzuni | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Kianna | 110490 | MCO Educational Series 10 | Class |
| Akinbile,Aliyu A | 110490 | MCO Educational Series 10 | Class |
| archille,jonathan | 110490 | MCO Educational Series 10 | Class |
| Adediran,Iyanuoluwa | 110490 | MCO Educational Series 10 | Class |
| James,Hannah R | 110490 | MCO Educational Series 10 | Class |
| Holton,Arnold | 110490 | MCO Educational Series 10 | Class |
| Madahar,Lakhvir | 110490 | MCO Educational Series 10 | Class |
| Kirdahy,Diana | 110490 | MCO Educational Series 10 | Class |
| Wardak,Naveed | 110490 | MCO Educational Series 10 | Class |
| Bautista,kenny | 110490 | MCO Educational Series 10 | Class |
| gil,luzdilenia | 110490 | MCO Educational Series 10 | Class |
| Navarro Zeferino,Pedro | 110490 | MCO Educational Series 10 | Class |
| Ukpai,Chibuzo | 110490 | MCO Educational Series 10 | Class |
| Barrios,Rey | 110490 | MCO Educational Series 10 | Class |
| Ponce,Karen | 110490 | MCO Educational Series 10 | Class |
| Rivera,Nazin | 110490 | MCO Educational Series 10 | Class |
| Foster,Robert | 110490 | MCO Educational Series 10 | Class |
| Batista,Daniel | 110490 | MCO Educational Series 10 | Class |
| Olisemeka,Chukwudi | 110490 | MCO Educational Series 10 | Class |
| Mucha,Nick | 110490 | MCO Educational Series 10 | Class |
| Dhakal,Prakash | 110490 | MCO Educational Series 10 | Class |
| Pineda,Jimmy | 110490 | MCO Educational Series 10 | Class |
| Rivera,Ivan | 110490 | MCO Educational Series 10 | Class |
| Osher,Christopher Leon | 110490 | MCO Educational Series 10 | Class |
| Santamaria,John Anthony | 110490 | MCO Educational Series 10 | Class |
| Lopez,Lydia Shirley | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Medina,Hector | 110490 | MCO Educational Series 10 | Class |
| okpidama,Orode | 110490 | MCO Educational Series 10 | Class |
| Grindley,Junior | 110490 | MCO Educational Series 10 | Class |
| Hamilton,Lloyd | 110490 | MCO Educational Series 10 | Class |
| Aguirre,Antonella | 110490 | MCO Educational Series 10 | Class |
| Persaud,Ryan | 110490 | MCO Educational Series 10 | Class |
| Ramirez,Lidiana Nallely | 110490 | MCO Educational Series 10 | Class |
| Perkins,Derek Christian | 110490 | MCO Educational Series 10 | Class |
| williacy,Carla | 110490 | MCO Educational Series 10 | Class |
| williacy,Carla | 110490 | MCO Educational Series 10 | Class |
| Roche,Marcos | 110490 | MCO Educational Series 10 | Class |
| Maurasse,Jamel J | 110490 | MCO Educational Series 10 | Class |
| Gloria,Laura | 110490 | MCO Educational Series 10 | Class |
| Lindsay,Mark | 110490 | MCO Educational Series 10 | Class |
| OPIYO,VICTOR | 110490 | MCO Educational Series 10 | Class |
| James,Miama K | 110490 | MCO Educational Series 10 | Class |
| Hunter,Larry | 110490 | MCO Educational Series 10 | Class |
| Yens,Elias S | 110490 | MCO Educational Series 10 | Class |
| Cordero,Gabriel | 110490 | MCO Educational Series 10 | Class |
| colon,elissa | 110490 | MCO Educational Series 10 | Class |
| Castillo,Nicolas | 110490 | MCO Educational Series 10 | Class |
| Ferreira Santos,Indalecio Adelco | 110490 | MCO Educational Series 10 | Class |
| Okumu,Agnes | 110490 | MCO Educational Series 10 | Class |
| Castillo,Bryan | 110490 | MCO Educational Series 10 | Class |
| Castillo,Bryan | 110490 | MCO Educational Series 10 | Class |
| Lynch,Thomas | 110490 | MCO Educational Series 10 | Class |
| Kabba,Eburahema | 110490 | MCO Educational Series 10 | Class |
| Alarape,Suliat T | 110490 | MCO Educational Series 10 | Class |
| ASAD,YOUSEF | 110490 | MCO Educational Series 10 | Class |
| Mayellus,Carla | 110490 | MCO Educational Series 10 | Class |
| Randazzo,Eleonora | 110490 | MCO Educational Series 10 | Class |
| Dale,Christian Alexander | 110490 | MCO Educational Series 10 | Class |
| Medina,Marty | 110490 | MCO Educational Series 10 | Class |
| Bolarinwa,Omolabake | 110490 | MCO Educational Series 10 | Class |
| FOLEY,CHRIS K | 110490 | MCO Educational Series 10 | Class |
| Meegodage,Indika Danuruk Perera | 110490 | MCO Educational Series 10 | Class |
| Alcantaro,Dione Lorraine | 110490 | MCO Educational Series 10 | Class |
| Rivera,Amanda | 110490 | MCO Educational Series 10 | Class |
| Titus,Kristy | 110490 | MCO Educational Series 10 | Class |
| Britt,Tameka | 110490 | MCO Educational Series 10 | Class |
| Martinez,Daniel | 110490 | MCO Educational Series 10 | Class |
| Griffin,Javiell | 110490 | MCO Educational Series 10 | Class |
| Rahman,Mojibur | 110490 | MCO Educational Series 10 | Class |
| Huseyn,Vahid | 110490 | MCO Educational Series 10 | Class |
| Candelario,Mariana | 110490 | MCO Educational Series 10 | Class |
| Thom,Krissy Shontel | 110490 | MCO Educational Series 10 | Class |
| Muchrison,Gideon | 110490 | MCO Educational Series 10 | Class |
| Istamov,umar | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Metellus,Jennifer | 110490 | MCO Educational Series 10 | Class |
| Rondan,Lisset C | 110490 | MCO Educational Series 10 | Class |
| Risner,Olivia | 110490 | MCO Educational Series 10 | Class |
| Palumbo,Salvatore john | 110490 | MCO Educational Series 10 | Class |
| Williams,Adejumoke A | 110490 | MCO Educational Series 10 | Class |
| Jackson,Adisia | 110490 | MCO Educational Series 10 | Class |
| Danso,Mahamadou Musa | 110490 | MCO Educational Series 10 | Class |
| wijesekera,shirani | 110490 | MCO Educational Series 10 | Class |
| Harrell,Shashana | 110490 | MCO Educational Series 10 | Class |
| Vukel,Alexander | 110490 | MCO Educational Series 10 | Class |
| Olamiju,Racheal Oluseun | 110490 | MCO Educational Series 10 | Class |
| Elgamal,Mohamed | 110490 | MCO Educational Series 10 | Class |
| Rozon,Kimverly A | 110490 | MCO Educational Series 10 | Class |
| Soriano,Glad | 110490 | MCO Educational Series 10 | Class |
| Rettle,Corey Joseph | 110490 | MCO Educational Series 10 | Class |
| DeLucrezia,John J | 110490 | MCO Educational Series 10 | Class |
| Hector,Deborah | 110490 | MCO Educational Series 10 | Class |
| Hector,Deborah | 110490 | MCO Educational Series 10 | Class |
| Valdez,Jasily | 110490 | MCO Educational Series 10 | Class |
| Jacques,Hermann Fato | 110490 | MCO Educational Series 10 | Class |
| Wu,Thomas | 110490 | MCO Educational Series 10 | Class |
| Lopez,William | 110490 | MCO Educational Series 10 | Class |
| Jones,Shane | 110490 | MCO Educational Series 10 | Class |
| Varela,Edgar | 110490 | MCO Educational Series 10 | Class |
| Portillo,Alex | 110490 | MCO Educational Series 10 | Class |
| Mckay,Tayy | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Yul | 110490 | MCO Educational Series 10 | Class |
| richardson,hakeem | 110490 | MCO Educational Series 10 | Class |
| Kongaha,Shali G | 110490 | MCO Educational Series 10 | Class |
| Vazquez,Wil | 110490 | MCO Educational Series 10 | Class |
| Mcdonald,Christina | 110490 | MCO Educational Series 10 | Class |
| McIntyre,George | 110490 | MCO Educational Series 10 | Class |
| Collison,Ronald | 110490 | MCO Educational Series 10 | Class |
| Bernard,Destiny Mya | 110490 | MCO Educational Series 10 | Class |
| flores,angel | 110490 | MCO Educational Series 10 | Class |
| Giacona,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Castillo,Randy | 110490 | MCO Educational Series 10 | Class |
| Nicolas,Sandra | 110490 | MCO Educational Series 10 | Class |
| Castley,Christopher | 110490 | MCO Educational Series 10 | Class |
| Ahmed,Ali | 110490 | MCO Educational Series 10 | Class |
| Zakharyan,Artem | 110490 | MCO Educational Series 10 | Class |
| Perez,Madelyn E | 110490 | MCO Educational Series 10 | Class |
| Grullon,Ashley | 110490 | MCO Educational Series 10 | Class |
| Florestal,Roberson | 110490 | MCO Educational Series 10 | Class |
| Gernier,Fred Junior | 110490 | MCO Educational Series 10 | Class |
| Gernier,Fred Junior | 110490 | MCO Educational Series 10 | Class |
| Santana,Jose Guillermo | 110490 | MCO Educational Series 10 | Class |
| Candelario,Michael | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Said,Mokhtar | 110490 | MCO Educational Series 10 | Class |
| Chase,Jesse | 110490 | MCO Educational Series 10 | Class |
| Davis,Amanda | 110490 | MCO Educational Series 10 | Class |
| Moran,Jesus A | 110490 | MCO Educational Series 10 | Class |
| Gallo,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Miller,Sherill | 110490 | MCO Educational Series 10 | Class |
| Perozo,Jose | 110490 | MCO Educational Series 10 | Class |
| Perozo,Jose | 110490 | MCO Educational Series 10 | Class |
| santangelo,Jenn | 110490 | MCO Educational Series 10 | Class |
| KANG,HARRY | 110490 | MCO Educational Series 10 | Class |
| Girgis,Amir Reda | 110490 | MCO Educational Series 10 | Class |
| Colbert,Khalil | 110490 | MCO Educational Series 10 | Class |
| Guerrero,Brandon | 110490 | MCO Educational Series 10 | Class |
| Dikeocha,Marcus | 110490 | MCO Educational Series 10 | Class |
| Allums,Energy Obadiah | 110490 | MCO Educational Series 10 | Class |
| Gomes,Edwin | 110490 | MCO Educational Series 10 | Class |
| Santiago,Jason | 110490 | MCO Educational Series 10 | Class |
| Reyes,Christopher | 110490 | MCO Educational Series 10 | Class |
| burns,terrell | 110490 | MCO Educational Series 10 | Class |
| igwilloh,princess | 110490 | MCO Educational Series 10 | Class |
| morton,noel | 110490 | MCO Educational Series 10 | Class |
| Koura,Mohamed | 110490 | MCO Educational Series 10 | Class |
| LOCKETTCOVINGTON,LORESA D | 110490 | MCO Educational Series 10 | Class |
| Bautista,Juleisy A | 110490 | MCO Educational Series 10 | Class |
| Suarez,Melody | 110490 | MCO Educational Series 10 | Class |
| Brown,Comrad Mark | 110490 | MCO Educational Series 10 | Class |
| Goitia,Osweidy M | 110490 | MCO Educational Series 10 | Class |
| Lankakumar,Niroshan | 110490 | MCO Educational Series 10 | Class |
| Lash,Evan | 110490 | MCO Educational Series 10 | Class |
| Alario,Frank | 110490 | MCO Educational Series 10 | Class |
| Lanorith,Michael | 110490 | MCO Educational Series 10 | Class |
| Cometa,Pastor Samuel | 110490 | MCO Educational Series 10 | Class |
| Cometa,Pastor Samuel | 110490 | MCO Educational Series 10 | Class |
| Donegan,Jahsia | 110490 | MCO Educational Series 10 | Class |
| Shivers,Yasmen Chanaile | 110490 | MCO Educational Series 10 | Class |
| Kamara,Abdulai | 110490 | MCO Educational Series 10 | Class |
| Tejada,Lenore R | 110490 | MCO Educational Series 10 | Class |
| Shenouda,Randa | 110490 | MCO Educational Series 10 | Class |
| Nanayakkara,Hasith | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Guadalupe | 110490 | MCO Educational Series 10 | Class |
| Usmonov,Umidjon | 110490 | MCO Educational Series 10 | Class |
| Cai,Leo | 110490 | MCO Educational Series 10 | Class |
| Landazabal,Maria | 110490 | MCO Educational Series 10 | Class |
| Chambers,Britney | 110490 | MCO Educational Series 10 | Class |
| Ju,Ju | 110490 | MCO Educational Series 10 | Class |
| Khellawon,Brandon | 110490 | MCO Educational Series 10 | Class |
| Akeem,Jelani | 110490 | MCO Educational Series 10 | Class |
| Pardee,Kev | 110490 | MCO Educational Series 10 | Class |

Amazon_000333

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Robinson,Prynce | 110490 | MCO Educational Series 10 | Class |
| Bidetti,Anthony William | 110490 | MCO Educational Series 10 | Class |
| Threatt,Natavia | 110490 | MCO Educational Series 10 | Class |
| Zaniewska,Dorota | 110490 | MCO Educational Series 10 | Class |
| Ochili,Chikodi Josephine | 110490 | MCO Educational Series 10 | Class |
| Yepez,Joseph v | 110490 | MCO Educational Series 10 | Class |
| Palma,David | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Daisy | 110490 | MCO Educational Series 10 | Class |
| Cheese,Joshawn | 110490 | MCO Educational Series 10 | Class |
| Fuentes,Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Campbell,Brian | 110490 | MCO Educational Series 10 | Class |
| noze,walker | 110490 | MCO Educational Series 10 | Class |
| Tavarez,Carla | 110490 | MCO Educational Series 10 | Class |
| stafford,Aon joseph | 110490 | MCO Educational Series 10 | Class |
| Morris,Matt | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Sugeiry | 110490 | MCO Educational Series 10 | Class |
| AYALA,JOSE | 110490 | MCO Educational Series 10 | Class |
| Thomson,Imani | 110490 | MCO Educational Series 10 | Class |
| Thompson,Brittany | 110490 | MCO Educational Series 10 | Class |
| Floreal,Roody | 110490 | MCO Educational Series 10 | Class |
| Stewart,Unique | 110490 | MCO Educational Series 10 | Class |
| Monarrez,Natalie | 110490 | MCO Educational Series 10 | Class |
| Esposito,Victoria | 110490 | MCO Educational Series 10 | Class |
| harper,lanita | 110490 | MCO Educational Series 10 | Class |
| Francisco,Juliana | 110490 | MCO Educational Series 10 | Class |
| Mikhail,Abanoub Magdi | 110490 | MCO Educational Series 10 | Class |
| Mikhail,Abanoub Magdi | 110490 | MCO Educational Series 10 | Class |
| Fragosa,Martin | 110490 | MCO Educational Series 10 | Class |
| Barnett,Amanda Marie | 110490 | MCO Educational Series 10 | Class |
| Wohlmeyer,Helga Helga | 110490 | MCO Educational Series 10 | Class |
| Sosa,Yamileth | 110490 | MCO Educational Series 10 | Class |
| Animashaun,Gbolahan | 110490 | MCO Educational Series 10 | Class |
| McKenna,Danny A | 110490 | MCO Educational Series 10 | Class |
| Awais,muhammad | 110490 | MCO Educational Series 10 | Class |
| O,Gabe | 110490 | MCO Educational Series 10 | Class |
| Baker,Jordon | 110490 | MCO Educational Series 10 | Class |
| Williams,Anthony | 110490 | MCO Educational Series 10 | Class |
| Rivera,Gregory | 110490 | MCO Educational Series 10 | Class |
| Prussia,Brianna | 110490 | MCO Educational Series 10 | Class |
| Sylvince,Patrick | 110490 | MCO Educational Series 10 | Class |
| French,Monifa | 110490 | MCO Educational Series 10 | Class |
| Jimenez,Maya | 110490 | MCO Educational Series 10 | Class |
| Sligar,Hayley | 110490 | MCO Educational Series 10 | Class |
| Tran,Dinh Binh | 110490 | MCO Educational Series 10 | Class |
| Greene,Aminah | 110490 | MCO Educational Series 10 | Class |
| Brown,Teylor | 110490 | MCO Educational Series 10 | Class |
| Bilewu,Micheal | 110490 | MCO Educational Series 10 | Class |
| Muniz,Marcelo Andres | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gentner,Jessica | 110490 | MCO Educational Series 10 | Class |
| Stewart,Joe Ryan | 110490 | MCO Educational Series 10 | Class |
| Beard,Jessica | 110490 | MCO Educational Series 10 | Class |
| Bezinyan,Paul Rose | 110490 | MCO Educational Series 10 | Class |
| Smith,Roger | 110490 | MCO Educational Series 10 | Class |
| Samura,Samuel | 110490 | MCO Educational Series 10 | Class |
| Wiseman,Donna | 110490 | MCO Educational Series 10 | Class |
| bell,darius | 110490 | MCO Educational Series 10 | Class |
| Yorke,Tylique | 110490 | MCO Educational Series 10 | Class |
| Chenguiti,Nadia | 110490 | MCO Educational Series 10 | Class |
| Aya,Philip Joshua | 110490 | MCO Educational Series 10 | Class |
| Garcia,Yolanda | 110490 | MCO Educational Series 10 | Class |
| camara,Isatou | 110490 | MCO Educational Series 10 | Class |
| Cuccurullo,Vincent | 110490 | MCO Educational Series 10 | Class |
| Torija,Steven | 110490 | MCO Educational Series 10 | Class |
| Caldwell,Dominique | 110490 | MCO Educational Series 10 | Class |
| Lane,tyler shante | 110490 | MCO Educational Series 10 | Class |
| Vulovich,John | 110490 | MCO Educational Series 10 | Class |
| Bessent,Talib | 110490 | MCO Educational Series 10 | Class |
| Cullins,Dameek J | 110490 | MCO Educational Series 10 | Class |
| Okeke,Ukamaka | 110490 | MCO Educational Series 10 | Class |
| Delacruz,Jenny | 110490 | MCO Educational Series 10 | Class |
| Baez Colon,Cristian De Jesus | 110490 | MCO Educational Series 10 | Class |
| Imafidon,Oghogho | 110490 | MCO Educational Series 10 | Class |
| Charles,Francoise | 110490 | MCO Educational Series 10 | Class |
| Sala Holguin,Isidra | 110490 | MCO Educational Series 10 | Class |
| Rodrigues,Ethan | 110490 | MCO Educational Series 10 | Class |
| coles,mahogany | 110490 | MCO Educational Series 10 | Class |
| Reyna,Jeremiah | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Mike | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Heriberto | 110490 | MCO Educational Series 10 | Class |
| Nuga,Oludare | 110490 | MCO Educational Series 10 | Class |
| Saint-vil,Anne | 110490 | MCO Educational Series 10 | Class |
| Caba,Maria | 110490 | MCO Educational Series 10 | Class |
| quinteros,maria | 110490 | MCO Educational Series 10 | Class |
| Frazier,Terence | 110490 | MCO Educational Series 10 | Class |
| Greenfield,Rena-Maureen | 110490 | MCO Educational Series 10 | Class |
| Alexis,John | 110490 | MCO Educational Series 10 | Class |
| Laine,Rodney | 110490 | MCO Educational Series 10 | Class |
| Sims,Darnell | 110490 | MCO Educational Series 10 | Class |
| Azah,Francis Perry y | 110490 | MCO Educational Series 10 | Class |
| Meto,Ledjon | 110490 | MCO Educational Series 10 | Class |
| Made Abad,Darleen | 110490 | MCO Educational Series 10 | Class |
| Estelly,Jwana | 110490 | MCO Educational Series 10 | Class |
| Pemattu hewage,Tharindu D | 110490 | MCO Educational Series 10 | Class |
| Jabin,Sayema Akter | 110490 | MCO Educational Series 10 | Class |
| Pasquel,Sebastian | 110490 | MCO Educational Series 10 | Class |
| Rivera,Tihanna C | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Addison,Amanda Sweetie | 110490 | MCO Educational Series 10 | Class |
| Khilla,Mina N | 110490 | MCO Educational Series 10 | Class |
| Robinson,Daquann | 110490 | MCO Educational Series 10 | Class |
| Shehata,Atef I | 110490 | MCO Educational Series 10 | Class |
| Hutton,Delvantae | 110490 | MCO Educational Series 10 | Class |
| Jarvis,Alvere | 110490 | MCO Educational Series 10 | Class |
| Allard,Tonya | 110490 | MCO Educational Series 10 | Class |
| Albarracin,Ceferino | 110490 | MCO Educational Series 10 | Class |
| Chikh,Younes | 110490 | MCO Educational Series 10 | Class |
| Perez,Bryant | 110490 | MCO Educational Series 10 | Class |
| Prado,Sheyla | 110490 | MCO Educational Series 10 | Class |
| Okubanjo,Okubanjo | 110490 | MCO Educational Series 10 | Class |
| Lewis,Bridget Elaine | 110490 | MCO Educational Series 10 | Class |
| Brice,Ronald | 110490 | MCO Educational Series 10 | Class |
| Murray,Melvina | 110490 | MCO Educational Series 10 | Class |
| Lombardo,Diana | 110490 | MCO Educational Series 10 | Class |
| Rivera,Luis | 110490 | MCO Educational Series 10 | Class |
| Thomas,Zyria | 110490 | MCO Educational Series 10 | Class |
| Kwong,Andy | 110490 | MCO Educational Series 10 | Class |
| Zuluaga,Elisabeth | 110490 | MCO Educational Series 10 | Class |
| Colon,Sara | 110490 | MCO Educational Series 10 | Class |
| Luna Hernandez,Martha | 110490 | MCO Educational Series 10 | Class |
| Francois Baudelaire,Fonkou | 110490 | MCO Educational Series 10 | Class |
| Angrisani,Erik W | 110490 | MCO Educational Series 10 | Class |
| Smith,Alonzo D | 110490 | MCO Educational Series 10 | Class |
| Martinez,Manuel | 110490 | MCO Educational Series 10 | Class |
| Duxbury,Mike | 110490 | MCO Educational Series 10 | Class |
| Oliver,Tevhan | 110490 | MCO Educational Series 10 | Class |
| Hussein,Ahmed | 110490 | MCO Educational Series 10 | Class |
| pannullo,christopher | 110490 | MCO Educational Series 10 | Class |
| De La Cruz,Brianna | 110490 | MCO Educational Series 10 | Class |
| Sze,Chrissy | 110490 | MCO Educational Series 10 | Class |
| Wiggins,Dimitri I | 110490 | MCO Educational Series 10 | Class |
| Juarez,Miguel | 110490 | MCO Educational Series 10 | Class |
| Glave,Chad | 110490 | MCO Educational Series 10 | Class |
| Ramgeet,Keanu | 110490 | MCO Educational Series 10 | Class |
| Salafia,Amy | 110490 | MCO Educational Series 10 | Class |
| Salinas- Justo,Emily | 110490 | MCO Educational Series 10 | Class |
| Alafuonye,Ucheamaka Loveth | 110490 | MCO Educational Series 10 | Class |
| Butler,Antwan | 110490 | MCO Educational Series 10 | Class |
| Camacho,Junior | 110490 | MCO Educational Series 10 | Class |
| Cosme,Justin | 110490 | MCO Educational Series 10 | Class |
| Molano,Jeremy Jonathan | 110490 | MCO Educational Series 10 | Class |
| Roberts,Chris | 110490 | MCO Educational Series 10 | Class |
| Ocasio,Tania | 110490 | MCO Educational Series 10 | Class |
| Haynia,Joseph | 110490 | MCO Educational Series 10 | Class |
| Nembhard,Tyrese | 110490 | MCO Educational Series 10 | Class |
| Chan,Carman | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Colon,Lola | 110490 | MCO Educational Series 10 | Class |
| Smith,Sashana | 110490 | MCO Educational Series 10 | Class |
| Smith,Sashana | 110490 | MCO Educational Series 10 | Class |
| Torres,Dymond | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Israel | 110490 | MCO Educational Series 10 | Class |
| Lewis,Nicholas | 110490 | MCO Educational Series 10 | Class |
| Thompson,Peter H | 110490 | MCO Educational Series 10 | Class |
| Davis,Davon | 110490 | MCO Educational Series 10 | Class |
| Dumoy,Dior | 110490 | MCO Educational Series 10 | Class |
| Ibrahim,Magi | 110490 | MCO Educational Series 10 | Class |
| Aguilera,Timothy | 110490 | MCO Educational Series 10 | Class |
| Said,Hatem | 110490 | MCO Educational Series 10 | Class |
| Warsaw,Adam | 110490 | MCO Educational Series 10 | Class |
| Turano,Maryann | 110490 | MCO Educational Series 10 | Class |
| prado,aaron | 110490 | MCO Educational Series 10 | Class |
| Montes De Oca,Leslie | 110490 | MCO Educational Series 10 | Class |
| Martinez,Anthony | 110490 | MCO Educational Series 10 | Class |
| Sow,Mamadou | 110490 | MCO Educational Series 10 | Class |
| Moore,Javon | 110490 | MCO Educational Series 10 | Class |
| Joseph,Califa | 110490 | MCO Educational Series 10 | Class |
| Halpern,Kate | 110490 | MCO Educational Series 10 | Class |
| Backus,Quandell | 110490 | MCO Educational Series 10 | Class |
| Emery,Christian | 110490 | MCO Educational Series 10 | Class |
| Balderas,Hugo | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Christopher | 110490 | MCO Educational Series 10 | Class |
| Sosin,Fedor | 110490 | MCO Educational Series 10 | Class |
| ZARATE CAMACHO,JUAN DIEGO | 110490 | MCO Educational Series 10 | Class |
| Young,Andre | 110490 | MCO Educational Series 10 | Class |
| Brea,Catherine | 110490 | MCO Educational Series 10 | Class |
| Mohapeloa,Alice | 110490 | MCO Educational Series 10 | Class |
| Trombetta,George Michael | 110490 | MCO Educational Series 10 | Class |
| Patrick,Michael | 110490 | MCO Educational Series 10 | Class |
| Brooks,Martel | 110490 | MCO Educational Series 10 | Class |
| Dennis,Nicholas | 110490 | MCO Educational Series 10 | Class |
| Rivera,BJ | 110490 | MCO Educational Series 10 | Class |
| Thomas,Evon Roy | 110490 | MCO Educational Series 10 | Class |
| Kone,BOURAHIMA | 110490 | MCO Educational Series 10 | Class |
| alvarez,patricia | 110490 | MCO Educational Series 10 | Class |
| Leo,Cherry | 110490 | MCO Educational Series 10 | Class |
| Holmes-Adderley,Laurece | 110490 | MCO Educational Series 10 | Class |
| Hoo,Sydney Cerene | 110490 | MCO Educational Series 10 | Class |
| Brito,Jeremy | 110490 | MCO Educational Series 10 | Class |
| Calderaro,Rob | 110490 | MCO Educational Series 10 | Class |
| CARNEY,JOSEPH | 110490 | MCO Educational Series 10 | Class |
| Turner,Troy | 110490 | MCO Educational Series 10 | Class |
| lozano,edwing o | 110490 | MCO Educational Series 10 | Class |
| Trainer,Sean | 110490 | MCO Educational Series 10 | Class |
| Franco,Allen | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Johnson,Malachi | 110490 | MCO Educational Series 10 | Class |
| uske,taylor | 110490 | MCO Educational Series 10 | Class |
| Rugayan,Franz Inoncillo | 110490 | MCO Educational Series 10 | Class |
| Clerk,Deja | 110490 | MCO Educational Series 10 | Class |
| Abdallah,Ahmedessameldin | 110490 | MCO Educational Series 10 | Class |
| Colon,Luz | 110490 | MCO Educational Series 10 | Class |
| Olivares,Ana | 110490 | MCO Educational Series 10 | Class |
| Avila,Fernando Santiago | 110490 | MCO Educational Series 10 | Class |
| Gamble,Nicole | 110490 | MCO Educational Series 10 | Class |
| Castro,Tina Yolanda | 110490 | MCO Educational Series 10 | Class |
| Yannucci,Joseph | 110490 | MCO Educational Series 10 | Class |
| Dozier,Ayanna | 110490 | MCO Educational Series 10 | Class |
| Slade,Samuel | 110490 | MCO Educational Series 10 | Class |
| Ashterman,Claudia | 110490 | MCO Educational Series 10 | Class |
| Morales,Cristopher | 110490 | MCO Educational Series 10 | Class |
| Vidals,Carlos | 110490 | MCO Educational Series 10 | Class |
| Redondo,Fanery | 110490 | MCO Educational Series 10 | Class |
| Morales,Miguel | 110490 | MCO Educational Series 10 | Class |
| Brown,Rechardo Jearmane | 110490 | MCO Educational Series 10 | Class |
| Rivera,Justyne | 110490 | MCO Educational Series 10 | Class |
| Sanz,Bryan | 110490 | MCO Educational Series 10 | Class |
| Perez Jr,Angel Manuel | 110490 | MCO Educational Series 10 | Class |
| Crispin,Bolina wynter | 110490 | MCO Educational Series 10 | Class |
| Parkinson,Leshara | 110490 | MCO Educational Series 10 | Class |
| Soumare,Mame Farma | 110490 | MCO Educational Series 10 | Class |
| Aguirre,Rosa | 110490 | MCO Educational Series 10 | Class |
| Placide,Geraldine | 110490 | MCO Educational Series 10 | Class |
| Hill,Ricky | 110490 | MCO Educational Series 10 | Class |
| Denicia Juarez,Arisbeth | 110490 | MCO Educational Series 10 | Class |
| Brown,Davoun | 110490 | MCO Educational Series 10 | Class |
| Bailey,Christopher | 110490 | MCO Educational Series 10 | Class |
| mcrae,zenobia | 110490 | MCO Educational Series 10 | Class |
| mcrae,zenobia | 110490 | MCO Educational Series 10 | Class |
| Matos,Timothy | 110490 | MCO Educational Series 10 | Class |
| Aderemi-Ademefun,Babajide Ganiyu | 110490 | MCO Educational Series 10 | Class |
| Aderemi-Ademefun,Babajide Ganiyu | 110490 | MCO Educational Series 10 | Class |
| Dorelus,Jocelaine | 110490 | MCO Educational Series 10 | Class |
| Diaz,Delila | 110490 | MCO Educational Series 10 | Class |
| Reyes,Mario | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Jason | 110490 | MCO Educational Series 10 | Class |
| Urioso,Cesar | 110490 | MCO Educational Series 10 | Class |
| zhou,Ron | 110490 | MCO Educational Series 10 | Class |
| Liang,James | 110490 | MCO Educational Series 10 | Class |
| pillaga,Aida | 110490 | MCO Educational Series 10 | Class |
| pillaga,Aida | 110490 | MCO Educational Series 10 | Class |
| Ravelo,Brandell Rafael | 110490 | MCO Educational Series 10 | Class |
| Smith,Robin | 110490 | MCO Educational Series 10 | Class |
| Cepeda,Yarumi | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Hughes,Nicole | 110490 | MCO Educational Series 10 | Class |
| Okoro,Nen | 110490 | MCO Educational Series 10 | Class |
| Okoro,Nen | 110490 | MCO Educational Series 10 | Class |
| Zuniga,Kimberly | 110490 | MCO Educational Series 10 | Class |
| Colon,Hector | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Leticia Jisel | 110490 | MCO Educational Series 10 | Class |
| Osman,OZZY M | 110490 | MCO Educational Series 10 | Class |
| Isaacs,Armani | 110490 | MCO Educational Series 10 | Class |
| Rivera,emmanuel | 110490 | MCO Educational Series 10 | Class |
| giles,janee | 110490 | MCO Educational Series 10 | Class |
| Yapa,Kasun | 110490 | MCO Educational Series 10 | Class |
| Jayakodi Arachchige,Amith | 110490 | MCO Educational Series 10 | Class |
| Cetino-Garcia,Christina Julissa | 110490 | MCO Educational Series 10 | Class |
| Richardson,Nathaniel | 110490 | MCO Educational Series 10 | Class |
| Theophile,Wilkens | 110490 | MCO Educational Series 10 | Class |
| Ford-Mitchell,Geneva Latoya | 110490 | MCO Educational Series 10 | Class |
| Ibrahim,Mohamed | 110490 | MCO Educational Series 10 | Class |
| Pulido,Nancy Maricela | 110490 | MCO Educational Series 10 | Class |
| Collazo,Robert William | 110490 | MCO Educational Series 10 | Class |
| Abdulhameed,Hannah | 110490 | MCO Educational Series 10 | Class |
| Trump,Donald J | 110490 | MCO Educational Series 10 | Class |
| ilin,james | 110490 | MCO Educational Series 10 | Class |
| Latimer,Justin | 110490 | MCO Educational Series 10 | Class |
| Concepcion Cruz,Zulma | 110490 | MCO Educational Series 10 | Class |
| marca,monica | 110490 | MCO Educational Series 10 | Class |
| Dunac,Dayana | 110490 | MCO Educational Series 10 | Class |
| TUCKER,TEDDY | 110490 | MCO Educational Series 10 | Class |
| Touamane,Aziza | 110490 | MCO Educational Series 10 | Class |
| clifton,jania | 110490 | MCO Educational Series 10 | Class |
| Cruz,Adrian | 110490 | MCO Educational Series 10 | Class |
| Cruz,Adrian | 110490 | MCO Educational Series 10 | Class |
| Jondeker,Sebastian | 110490 | MCO Educational Series 10 | Class |
| Hines,Shaun | 110490 | MCO Educational Series 10 | Class |
| Dupuy,Dorissa | 110490 | MCO Educational Series 10 | Class |
| Williams,Samuel Darnel | 110490 | MCO Educational Series 10 | Class |
| Frank Sanchez,Michael Joshua | 110490 | MCO Educational Series 10 | Class |
| Nfonoyim,Lourine y | 110490 | MCO Educational Series 10 | Class |
| CHRISTIE,JOHN | 110490 | MCO Educational Series 10 | Class |
| Maury,Ruben | 110490 | MCO Educational Series 10 | Class |
| Olivier,Thalia | 110490 | MCO Educational Series 10 | Class |
| Brown,Gawayne | 110490 | MCO Educational Series 10 | Class |
| Lee,Yin Leung | 110490 | MCO Educational Series 10 | Class |
| Priestley,Jade | 110490 | MCO Educational Series 10 | Class |
| Martinez,Karen | 110490 | MCO Educational Series 10 | Class |
| Pouncey,Taurus | 110490 | MCO Educational Series 10 | Class |
| Vazquez,Janna Doreen | 110490 | MCO Educational Series 10 | Class |
| Russell,Novelette | 110490 | MCO Educational Series 10 | Class |
| Toussaint,Luckens | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ali,Iris | 110490 | MCO Educational Series 10 | Class |
| Ali,Iris | 110490 | MCO Educational Series 10 | Class |
| Taylor,Eboney | 110490 | MCO Educational Series 10 | Class |
| Fyffe,Rudolph | 110490 | MCO Educational Series 10 | Class |
| Pabon,Tyniqua | 110490 | MCO Educational Series 10 | Class |
| Deas,Mika | 110490 | MCO Educational Series 10 | Class |
| JOHNSON,Earl | 110490 | MCO Educational Series 10 | Class |
| Sidney,Karnelie | 110490 | MCO Educational Series 10 | Class |
| Rivera,Nelson | 110490 | MCO Educational Series 10 | Class |
| Brown,Precious | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Ryan | 110490 | MCO Educational Series 10 | Class |
| Decomme,Olssen | 110490 | MCO Educational Series 10 | Class |
| Fanous,Raafat A | 110490 | MCO Educational Series 10 | Class |
| Bhuiya,Mostafizur Rahman | 110490 | MCO Educational Series 10 | Class |
| Rojas,Benito | 110490 | MCO Educational Series 10 | Class |
| nottingham,Sharice | 110490 | MCO Educational Series 10 | Class |
| messado,anthony | 110490 | MCO Educational Series 10 | Class |
| Fusco,Catherine | 110490 | MCO Educational Series 10 | Class |
| Rabsatt Garcia,Martin | 110490 | MCO Educational Series 10 | Class |
| Spencer,Lorenzo | 110490 | MCO Educational Series 10 | Class |
| Hastings,Deavadi Devon | 110490 | MCO Educational Series 10 | Class |
| Rivera,Brandon Manuel | 110490 | MCO Educational Series 10 | Class |
| Gustave,Eutychus | 110490 | MCO Educational Series 10 | Class |
| bhagwandeen,spencer | 110490 | MCO Educational Series 10 | Class |
| Johnson,Zettanita | 110490 | MCO Educational Series 10 | Class |
| Gibson,Anita | 110490 | MCO Educational Series 10 | Class |
| porter,richard Keith | 110490 | MCO Educational Series 10 | Class |
| Parico,Gianpaulo | 110490 | MCO Educational Series 10 | Class |
| Igwilloh,Eugene | 110490 | MCO Educational Series 10 | Class |
| Hale,Leslie-ann | 110490 | MCO Educational Series 10 | Class |
| Rojas,Genesis Marleni | 110490 | MCO Educational Series 10 | Class |
| Robinson,Jay | 110490 | MCO Educational Series 10 | Class |
| Singleton,Tishaun | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Alexis | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Jeimy | 110490 | MCO Educational Series 10 | Class |
| Perera,Koswattage Sharma | 110490 | MCO Educational Series 10 | Class |
| Farraj,Siham | 110490 | MCO Educational Series 10 | Class |
| Jean-Toussaint,Yolanda | 110490 | MCO Educational Series 10 | Class |
| Julien,Kimna | 110490 | MCO Educational Series 10 | Class |
| Julien,Kimna | 110490 | MCO Educational Series 10 | Class |
| NGUYEN,THI HOANG THU | 110490 | MCO Educational Series 10 | Class |
| Summers,Jordan A | 110490 | MCO Educational Series 10 | Class |
| Joseph,Widler | 110490 | MCO Educational Series 10 | Class |
| Emmanuel,Vicky | 110490 | MCO Educational Series 10 | Class |
| Emmanuel,Vicky | 110490 | MCO Educational Series 10 | Class |
| Thomas,Errol Constantine | 110490 | MCO Educational Series 10 | Class |
| Brooks,Sissy | 110490 | MCO Educational Series 10 | Class |
| Brooks,Sissy | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Brooks,Sissy | 110490 | MCO Educational Series 10 | Class |
| Herring,Diamond | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Luz | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Luz | 110490 | MCO Educational Series 10 | Class |
| espinal,elian | 110490 | MCO Educational Series 10 | Class |
| Medina,kattya | 110490 | MCO Educational Series 10 | Class |
| Reid,Shanique | 110490 | MCO Educational Series 10 | Class |
| Cao,Tommy | 110490 | MCO Educational Series 10 | Class |
| Oo,Su Myat Noe | 110490 | MCO Educational Series 10 | Class |
| Kamara,Bai Lamin | 110490 | MCO Educational Series 10 | Class |
| Wright-Antoine,Anita | 110490 | MCO Educational Series 10 | Class |
| mariano,mario dela cruz | 110490 | MCO Educational Series 10 | Class |
| Brownlee,Nyeenya | 110490 | MCO Educational Series 10 | Class |
| Jimenez,Abigail | 110490 | MCO Educational Series 10 | Class |
| Corke,ECO | 110490 | MCO Educational Series 10 | Class |
| Roldant,Mia | 110490 | MCO Educational Series 10 | Class |
| Parada,Gloria Elsy | 110490 | MCO Educational Series 10 | Class |
| Anzalone,Albert | 110490 | MCO Educational Series 10 | Class |
| Pasmore,Lamar | 110490 | MCO Educational Series 10 | Class |
| Carrougher,Angela | 110490 | MCO Educational Series 10 | Class |
| Lack,Cj | 110490 | MCO Educational Series 10 | Class |
| Lovick,Jawaun | 110490 | MCO Educational Series 10 | Class |
| Ceron,Adriana | 110490 | MCO Educational Series 10 | Class |
| Santana,Yafreisy | 110490 | MCO Educational Series 10 | Class |
| August,Rawle | 110490 | MCO Educational Series 10 | Class |
| joseph,Japheth | 110490 | MCO Educational Series 10 | Class |
| joseph,Japheth | 110490 | MCO Educational Series 10 | Class |
| Vives,Judith | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Obelia | 110490 | MCO Educational Series 10 | Class |
| Ahmed,Chip | 110490 | MCO Educational Series 10 | Class |
| Ovalle,Leodoro | 110490 | MCO Educational Series 10 | Class |
| Sanni,Taibat | 110490 | MCO Educational Series 10 | Class |
| Oyola,Alex | 110490 | MCO Educational Series 10 | Class |
| Savino,Matthew Joseph | 110490 | MCO Educational Series 10 | Class |
| desilva,jerome | 110490 | MCO Educational Series 10 | Class |
| Cortes,Michael | 110490 | MCO Educational Series 10 | Class |
| Norman,Anthony | 110490 | MCO Educational Series 10 | Class |
| Ulysse,Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Consuegra,Freddy | 110490 | MCO Educational Series 10 | Class |
| Wedderburn,Arlene | 110490 | MCO Educational Series 10 | Class |
| Brown,Michael | 110490 | MCO Educational Series 10 | Class |
| Benitez,Janelle | 110490 | MCO Educational Series 10 | Class |
| Smith,Nia | 110490 | MCO Educational Series 10 | Class |
| Hill,Zaire Elajah | 110490 | MCO Educational Series 10 | Class |
| carrington,quran william | 110490 | MCO Educational Series 10 | Class |
| Kirkland,Latifah | 110490 | MCO Educational Series 10 | Class |
| Mohamed,Faten | 110490 | MCO Educational Series 10 | Class |
| Rahman,Khondoker | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Denard,Krys H. | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Paul | 110490 | MCO Educational Series 10 | Class |
| Oladimeji,Olawale Q | 110490 | MCO Educational Series 10 | Class |
| uddin,mahtab | 110490 | MCO Educational Series 10 | Class |
| GEORGE,THOMSON | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,papi david | 110490 | MCO Educational Series 10 | Class |
| Lionel,Brendon | 110490 | MCO Educational Series 10 | Class |
| Solomon,Jacob | 110490 | MCO Educational Series 10 | Class |
| evering,asia | 110490 | MCO Educational Series 10 | Class |
| Anthony,Jason | 110490 | MCO Educational Series 10 | Class |
| Israel,Garry | 110490 | MCO Educational Series 10 | Class |
| Rovito,Michael | 110490 | MCO Educational Series 10 | Class |
| Omosigho,Heather F | 110490 | MCO Educational Series 10 | Class |
| Lombardo,Paul | 110490 | MCO Educational Series 10 | Class |
| Riveron,Alinsson Alexander | 110490 | MCO Educational Series 10 | Class |
| nyamagwa,alice | 110490 | MCO Educational Series 10 | Class |
| Figueroa,Zoila | 110490 | MCO Educational Series 10 | Class |
| Clarke,Mario Okeino | 110490 | MCO Educational Series 10 | Class |
| Estudillo,Diana | 110490 | MCO Educational Series 10 | Class |
| Rivera,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Edu J | 110490 | MCO Educational Series 10 | Class |
| Gordon,Kimmi | 110490 | MCO Educational Series 10 | Class |
| Barker,Joe | 110490 | MCO Educational Series 10 | Class |
| sallo,leonard | 110490 | MCO Educational Series 10 | Class |
| O?Kieffe,Akaisa N | 110490 | MCO Educational Series 10 | Class |
| Shaon,Shahriar | 110490 | MCO Educational Series 10 | Class |
| Genis,David | 110490 | MCO Educational Series 10 | Class |
| Logan,Hunter | 110490 | MCO Educational Series 10 | Class |
| Worthington,Jasmyne | 110490 | MCO Educational Series 10 | Class |
| Marshall,Danielle | 110490 | MCO Educational Series 10 | Class |
| Abe,Oluwadamilare | 110490 | MCO Educational Series 10 | Class |
| Rodgers,Charisma | 110490 | MCO Educational Series 10 | Class |
| Mcneil,Kamein | 110490 | MCO Educational Series 10 | Class |
| Caldwell,Malik | 110490 | MCO Educational Series 10 | Class |
| Jubran,Fesal | 110490 | MCO Educational Series 10 | Class |
| Guzman,Josephine | 110490 | MCO Educational Series 10 | Class |
| Parent,Devlin | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Jaime | 110490 | MCO Educational Series 10 | Class |
| Martinez,Jeffrey | 110490 | MCO Educational Series 10 | Class |
| Elisa,Taiwo Rahman | 110490 | MCO Educational Series 10 | Class |
| Calixto,Jeovany | 110490 | MCO Educational Series 10 | Class |
| Olmedo,Delfina | 110490 | MCO Educational Series 10 | Class |
| THIRUNAVUKKARASU,RAJEEV | 110490 | MCO Educational Series 10 | Class |
| Taylor,Quenetta | 110490 | MCO Educational Series 10 | Class |
| Gannone,Beth | 110490 | MCO Educational Series 10 | Class |
| lawal,kazeem olaitan | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Juan | 110490 | MCO Educational Series 10 | Class |
| Serrano,Edwin | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Castro,Jose Luis | 110490 | MCO Educational Series 10 | Class |
| Mcphatter,Anthony L | 110490 | MCO Educational Series 10 | Class |
| FILS,KARL Evens Alexander | 110490 | MCO Educational Series 10 | Class |
| Christopher,Hess | 110490 | MCO Educational Series 10 | Class |
| Lebile,Lawrence | 110490 | MCO Educational Series 10 | Class |
| ibrahim,moustafa yehia | 110490 | MCO Educational Series 10 | Class |
| Amoo,Sukurat O. | 110490 | MCO Educational Series 10 | Class |
| Martinez,Rovelo | 110490 | MCO Educational Series 10 | Class |
| Redwood,Clint | 110490 | MCO Educational Series 10 | Class |
| Rosales,Magaly | 110490 | MCO Educational Series 10 | Class |
| Khalil,Ezak | 110490 | MCO Educational Series 10 | Class |
| Simon,Maxon | 110490 | MCO Educational Series 10 | Class |
| Garcia,Chrissy | 110490 | MCO Educational Series 10 | Class |
| Bristol,Dante | 110490 | MCO Educational Series 10 | Class |
| Ayandeji,Iyabo Christina | 110490 | MCO Educational Series 10 | Class |
| Spears,Nina | 110490 | MCO Educational Series 10 | Class |
| Pham,Tien Minh | 110490 | MCO Educational Series 10 | Class |
| Cordova,Matthew J | 110490 | MCO Educational Series 10 | Class |
| Pacheco,York | 110490 | MCO Educational Series 10 | Class |
| Giambrone,Michael Anthony | 110490 | MCO Educational Series 10 | Class |
| Walters,Anthony | 110490 | MCO Educational Series 10 | Class |
| Smalling,Dawn Fay | 110490 | MCO Educational Series 10 | Class |
| Quiles,Anthony | 110490 | MCO Educational Series 10 | Class |
| Bradshaw,DJ | 110490 | MCO Educational Series 10 | Class |
| Furman,Kevin | 110490 | MCO Educational Series 10 | Class |
| Sin,Jay | 110490 | MCO Educational Series 10 | Class |
| Almonte,Melary | 110490 | MCO Educational Series 10 | Class |
| Ospina,Carmen Elisa | 110490 | MCO Educational Series 10 | Class |
| Viviani,Eric | 110490 | MCO Educational Series 10 | Class |
| Viviani,Eric | 110490 | MCO Educational Series 10 | Class |
| Nieves,Susie | 110490 | MCO Educational Series 10 | Class |
| Edwards,Tony Gauntlette | 110490 | MCO Educational Series 10 | Class |
| Garcia,Matthew | 110490 | MCO Educational Series 10 | Class |
| Martinez,Anthony J | 110490 | MCO Educational Series 10 | Class |
| Mayo,Jason | 110490 | MCO Educational Series 10 | Class |
| Morales,Genevieve | 110490 | MCO Educational Series 10 | Class |
| Verdesoto,Irani | 110490 | MCO Educational Series 10 | Class |
| Batista,Rosmery | 110490 | MCO Educational Series 10 | Class |
| Stiebel,Samuel Stephen | 110490 | MCO Educational Series 10 | Class |
| Wu,Billy | 110490 | MCO Educational Series 10 | Class |
| Quiles,Alanna | 110490 | MCO Educational Series 10 | Class |
| Robinson,Maria M | 110490 | MCO Educational Series 10 | Class |
| Mohjazi,Nancy | 110490 | MCO Educational Series 10 | Class |
| Mohjazi,Nancy | 110490 | MCO Educational Series 10 | Class |
| Flores,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Ticas,Christiaan | 110490 | MCO Educational Series 10 | Class |
| SAIDERRAHMANI,MOHAMED | 110490 | MCO Educational Series 10 | Class |
| Pavia Ortiz,Jose | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| jean-charles,Claudine | 110490 | MCO Educational Series 10 | Class |
| Stewart,Nicole | 110490 | MCO Educational Series 10 | Class |
| Baptiste,Fred | 110490 | MCO Educational Series 10 | Class |
| DUNCAN,INDIRA | 110490 | MCO Educational Series 10 | Class |
| Ocasio,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Butler,Turnia | 110490 | MCO Educational Series 10 | Class |
| DeWhea,Sam Kai | 110490 | MCO Educational Series 10 | Class |
| Cordova,Juan Diego | 110490 | MCO Educational Series 10 | Class |
| Primero,Louie | 110490 | MCO Educational Series 10 | Class |
| Okeke,Jennifer Chimeluo | 110490 | MCO Educational Series 10 | Class |
| ponniah,christopher Kanishka | 110490 | MCO Educational Series 10 | Class |
| Camasca,Celia | 110490 | MCO Educational Series 10 | Class |
| BRINSON,ISAIAH | 110490 | MCO Educational Series 10 | Class |
| Mondesir,Frandy | 110490 | MCO Educational Series 10 | Class |
| Fernando,shivon | 110490 | MCO Educational Series 10 | Class |
| Zhang,Rui Hui | 110490 | MCO Educational Series 10 | Class |
| Jean Marie,Marie Carmelle | 110490 | MCO Educational Series 10 | Class |
| Coscia,Frank | 110490 | MCO Educational Series 10 | Class |
| Alhagaly,Ayman Asaad | 110490 | MCO Educational Series 10 | Class |
| Chadmum,Mirza | 110490 | MCO Educational Series 10 | Class |
| Chadmum,Mirza | 110490 | MCO Educational Series 10 | Class |
| Gooden,Dominique | 110490 | MCO Educational Series 10 | Class |
| pannilage,anoja | 110490 | MCO Educational Series 10 | Class |
| blanco,juan Jose | 110490 | MCO Educational Series 10 | Class |
| Rivera,Jenny | 110490 | MCO Educational Series 10 | Class |
| Gaston,Lourdemia | 110490 | MCO Educational Series 10 | Class |
| vaidya,Gopi | 110490 | MCO Educational Series 10 | Class |
| vaidya,Gopi | 110490 | MCO Educational Series 10 | Class |
| Sama,Mauro Mari J | 110490 | MCO Educational Series 10 | Class |
| gutierrez,alexandra | 110490 | MCO Educational Series 10 | Class |
| santiago,yesenia | 110490 | MCO Educational Series 10 | Class |
| Cardona,Yoselin | 110490 | MCO Educational Series 10 | Class |
| Garcia,Pablo | 110490 | MCO Educational Series 10 | Class |
| Segura,Stephanie | 110490 | MCO Educational Series 10 | Class |
| Smith,Phyllis | 110490 | MCO Educational Series 10 | Class |
| Rocco,Alexander | 110490 | MCO Educational Series 10 | Class |
| Gorbounov,Oleg | 110490 | MCO Educational Series 10 | Class |
| Ajayi,Ademola Taoreed | 110490 | MCO Educational Series 10 | Class |
| Destin,Richardson | 110490 | MCO Educational Series 10 | Class |
| Melo,Gloria | 110490 | MCO Educational Series 10 | Class |
| Jackson,Maria | 110490 | MCO Educational Series 10 | Class |
| Lomax,James | 110490 | MCO Educational Series 10 | Class |
| Davis,Jasmine | 110490 | MCO Educational Series 10 | Class |
| Venditti,Anthony | 110490 | MCO Educational Series 10 | Class |
| Zuniga,Freddy | 110490 | MCO Educational Series 10 | Class |
| Rudder,Jason W | 110490 | MCO Educational Series 10 | Class |
| Fernandez,Justin | 110490 | MCO Educational Series 10 | Class |
| Lee,Brandee | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lloyd,Dianna | 110490 | MCO Educational Series 10 | Class |
| Isaula,Christine | 110490 | MCO Educational Series 10 | Class |
| Shamku,Dash | 110490 | MCO Educational Series 10 | Class |
| Palafox,Jesus | 110490 | MCO Educational Series 10 | Class |
| Perry,Brandon | 110490 | MCO Educational Series 10 | Class |
| Gioeni,Joanne | 110490 | MCO Educational Series 10 | Class |
| Stropoli,Valerie | 110490 | MCO Educational Series 10 | Class |
| Asomaning,Robert | 110490 | MCO Educational Series 10 | Class |
| Youssef,Mina | 110490 | MCO Educational Series 10 | Class |
| Leary,Keimen | 110490 | MCO Educational Series 10 | Class |
| Vines,Johnathan | 110490 | MCO Educational Series 10 | Class |
| Onuigwe,Okwuchukwu Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Coates,Kenneth | 110490 | MCO Educational Series 10 | Class |
| MENSAH,DEBORAH | 110490 | MCO Educational Series 10 | Class |
| Spence,Dylan | 110490 | MCO Educational Series 10 | Class |
| Lynch,Chesmida | 110490 | MCO Educational Series 10 | Class |
| Mendez,Lissette | 110490 | MCO Educational Series 10 | Class |
| Jones,Tajjik | 110490 | MCO Educational Series 10 | Class |
| zacatenco,ruben | 110490 | MCO Educational Series 10 | Class |
| Doxen,Dailies | 110490 | MCO Educational Series 10 | Class |
| Salami,Habeeb | 110490 | MCO Educational Series 10 | Class |
| Cardona,Danny | 110490 | MCO Educational Series 10 | Class |
| Pena,Xavier | 110490 | MCO Educational Series 10 | Class |
| Bands,Jus | 110490 | MCO Educational Series 10 | Class |
| Abdullah,Tariq Zaid | 110490 | MCO Educational Series 10 | Class |
| Riddle,Augustus | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Katie | 110490 | MCO Educational Series 10 | Class |
| Ibitoye,Daniel | 110490 | MCO Educational Series 10 | Class |
| Pierce,Michael | 110490 | MCO Educational Series 10 | Class |
| Adam,Sarif | 110490 | MCO Educational Series 10 | Class |
| Stendardo,Vinnie | 110490 | MCO Educational Series 10 | Class |
| Lecorps,Oneil Carveer | 110490 | MCO Educational Series 10 | Class |
| Baker,Marguarite Giovanna | 110490 | MCO Educational Series 10 | Class |
| Rios,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Gassama,Mabintou | 110490 | MCO Educational Series 10 | Class |
| Dunn,Jahrel | 110490 | MCO Educational Series 10 | Class |
| Watson,Khaliq | 110490 | MCO Educational Series 10 | Class |
| Calumba,Emmelyn | 110490 | MCO Educational Series 10 | Class |
| Everett,Ariyon | 110490 | MCO Educational Series 10 | Class |
| Acevedo,Kevin | 110490 | MCO Educational Series 10 | Class |
| Haynie Sr,Adam Alonzo | 110490 | MCO Educational Series 10 | Class |
| meza,jorge luis | 110490 | MCO Educational Series 10 | Class |
| RetanaMartinez,Karin Lorena | 110490 | MCO Educational Series 10 | Class |
| Vanderpool,Dyzae | 110490 | MCO Educational Series 10 | Class |
| lipscomb,jayda | 110490 | MCO Educational Series 10 | Class |
| Vergara,Estrellita | 110490 | MCO Educational Series 10 | Class |
| Dungan,Jonathan G | 110490 | MCO Educational Series 10 | Class |
| Hylton,Andre | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Shambo,Jamal | 110490 | MCO Educational Series 10 | Class |
| Lynch,April | 110490 | MCO Educational Series 10 | Class |
| Samara,Abedalrahman | 110490 | MCO Educational Series 10 | Class |
| Cancel,Anabel | 110490 | MCO Educational Series 10 | Class |
| francis,ubong Michael | 110490 | MCO Educational Series 10 | Class |
| Da Cruz,Lucinda Antonio | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Giovanni Anthony | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Xavier Adonis | 110490 | MCO Educational Series 10 | Class |
| Certyl,Welda | 110490 | MCO Educational Series 10 | Class |
| Rivera,Briana | 110490 | MCO Educational Series 10 | Class |
| Adams,Bernadette | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Jazmin | 110490 | MCO Educational Series 10 | Class |
| Facey,Chevailli | 110490 | MCO Educational Series 10 | Class |
| Jean,Mireille | 110490 | MCO Educational Series 10 | Class |
| Johnson,Lacey Ann | 110490 | MCO Educational Series 10 | Class |
| Umesi,Chioma | 110490 | MCO Educational Series 10 | Class |
| Martinez,Carlos D | 110490 | MCO Educational Series 10 | Class |
| Senevirathne,Ravinath Kanchana | 110490 | MCO Educational Series 10 | Class |
| Arvelo,Emanuel Brandon | 110490 | MCO Educational Series 10 | Class |
| Cleto,Yeimy | 110490 | MCO Educational Series 10 | Class |
| Turner,Jamaal | 110490 | MCO Educational Series 10 | Class |
| Girges,Alaa Saad | 110490 | MCO Educational Series 10 | Class |
| Knight-Allder,Michael | 110490 | MCO Educational Series 10 | Class |
| EnriguesSandoval,Fernando | 110490 | MCO Educational Series 10 | Class |
| Castillo Pavia,Anayeli | 110490 | MCO Educational Series 10 | Class |
| Othman,Mohamed Ali Hassan | 110490 | MCO Educational Series 10 | Class |
| inoa,Edwin | 110490 | MCO Educational Series 10 | Class |
| Dinham-Heholt,Rickiesha | 110490 | MCO Educational Series 10 | Class |
| DEPRADINE,ASHLIE | 110490 | MCO Educational Series 10 | Class |
| Corprew,Laquan | 110490 | MCO Educational Series 10 | Class |
| Morales,Leslie Ann | 110490 | MCO Educational Series 10 | Class |
| Johnson,Ricardo | 110490 | MCO Educational Series 10 | Class |
| Garraway,Montay | 110490 | MCO Educational Series 10 | Class |
| Moran,Noel | 110490 | MCO Educational Series 10 | Class |
| Marquez,George | 110490 | MCO Educational Series 10 | Class |
| Zyskowska,Malgorzata | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Daniel | 110490 | MCO Educational Series 10 | Class |
| Bokhari,Ahmer M | 110490 | MCO Educational Series 10 | Class |
| Camacho,Stephanie | 110490 | MCO Educational Series 10 | Class |
| PERRY,JOSEPH M | 110490 | MCO Educational Series 10 | Class |
| Orahovac,Melisa | 110490 | MCO Educational Series 10 | Class |
| Sempertegui,Diana | 110490 | MCO Educational Series 10 | Class |
| Ciudad,Dennis | 110490 | MCO Educational Series 10 | Class |
| Issman,Jennifer | 110490 | MCO Educational Series 10 | Class |
| Nieves,Miguel | 110490 | MCO Educational Series 10 | Class |
| Zeferino,Josue | 110490 | MCO Educational Series 10 | Class |
| Hodelin,Michael john | 110490 | MCO Educational Series 10 | Class |
| Blake,Shanon Tamarley | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Orjuela,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Morales,Cory | 110490 | MCO Educational Series 10 | Class |
| lofters,christopher matthew | 110490 | MCO Educational Series 10 | Class |
| Ly,Thanh | 110490 | MCO Educational Series 10 | Class |
| Oluwashola,Michael | 110490 | MCO Educational Series 10 | Class |
| Oluwashola,Michael | 110490 | MCO Educational Series 10 | Class |
| Miller,Racquel | 110490 | MCO Educational Series 10 | Class |
| Garricks,Romario | 110490 | MCO Educational Series 10 | Class |
| Tejada,Junior | 110490 | MCO Educational Series 10 | Class |
| Britton,Chanda | 110490 | MCO Educational Series 10 | Class |
| Gaspar,Marco Antonio | 110490 | MCO Educational Series 10 | Class |
| Leehr,Mary C | 110490 | MCO Educational Series 10 | Class |
| Adeyemi,Adedeji Olanrewaju | 110490 | MCO Educational Series 10 | Class |
| Frank,Tracie Althea | 110490 | MCO Educational Series 10 | Class |
| Lannaman,Toniah | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Jaret | 110490 | MCO Educational Series 10 | Class |
| Newell,DeeJae | 110490 | MCO Educational Series 10 | Class |
| Fagone,Andrew | 110490 | MCO Educational Series 10 | Class |
| Colon,Tiffany | 110490 | MCO Educational Series 10 | Class |
| Alam,S M Zakaria | 110490 | MCO Educational Series 10 | Class |
| Gaeta,Dominic Joseph | 110490 | MCO Educational Series 10 | Class |
| Forgie-Turner,Petagay Oneika | 110490 | MCO Educational Series 10 | Class |
| OLAYINKA,MICHAEL o | 110490 | MCO Educational Series 10 | Class |
| Admettre,Sammabine | 110490 | MCO Educational Series 10 | Class |
| Kargbo,Lucretia | 110490 | MCO Educational Series 10 | Class |
| Cordero,Johnathan | 110490 | MCO Educational Series 10 | Class |
| Chu,Kevin | 110490 | MCO Educational Series 10 | Class |
| Santos,Dayana | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Alex Carrillo | 110490 | MCO Educational Series 10 | Class |
| James,Charisma | 110490 | MCO Educational Series 10 | Class |
| Albert,Alexis | 110490 | MCO Educational Series 10 | Class |
| Lubin,Tanisha Monique | 110490 | MCO Educational Series 10 | Class |
| Fabian,Jack | 110490 | MCO Educational Series 10 | Class |
| Leahy,Belkys | 110490 | MCO Educational Series 10 | Class |
| Lilley,Kayla | 110490 | MCO Educational Series 10 | Class |
| RAZON,ROSEMARIE Bedonio | 110490 | MCO Educational Series 10 | Class |
| jimenez,christian | 110490 | MCO Educational Series 10 | Class |
| Momodu,Anthony | 110490 | MCO Educational Series 10 | Class |
| Sidibe,Aly | 110490 | MCO Educational Series 10 | Class |
| Fragoso,Maria Silvia | 110490 | MCO Educational Series 10 | Class |
| GREAVES,NICHOLAS | 110490 | MCO Educational Series 10 | Class |
| Idheroma,Tyeisha | 110490 | MCO Educational Series 10 | Class |
| Dobreva,Snezhanka | 110490 | MCO Educational Series 10 | Class |
| Savino,Nick Vincent | 110490 | MCO Educational Series 10 | Class |
| Kalmar,Lashawn | 110490 | MCO Educational Series 10 | Class |
| Kobilov,Jakhongir | 110490 | MCO Educational Series 10 | Class |
| Castro,Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Pinero,Moses | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Holmes,David | 110490 | MCO Educational Series 10 | Class |
| ORiley,Robert | 110490 | MCO Educational Series 10 | Class |
| Ramos,miguel Jose | 110490 | MCO Educational Series 10 | Class |
| Diaz,Carlos E | 110490 | MCO Educational Series 10 | Class |
| Olmedo,Jose Guillermo | 110490 | MCO Educational Series 10 | Class |
| Ficci,Antonio | 110490 | MCO Educational Series 10 | Class |
| A,Karen | 110490 | MCO Educational Series 10 | Class |
| Mohammed,Jeremy | 110490 | MCO Educational Series 10 | Class |
| Garcia,Jessica | 110490 | MCO Educational Series 10 | Class |
| Fong,Wedance | 110490 | MCO Educational Series 10 | Class |
| Ramiro,Mark Anthony | 110490 | MCO Educational Series 10 | Class |
| Ashley,Ashley | 110490 | MCO Educational Series 10 | Class |
| Bute,Maude | 110490 | MCO Educational Series 10 | Class |
| A.,Javy | 110490 | MCO Educational Series 10 | Class |
| Emery,James Thomas | 110490 | MCO Educational Series 10 | Class |
| Davis Jr,Joe | 110490 | MCO Educational Series 10 | Class |
| Bravo,Rosa | 110490 | MCO Educational Series 10 | Class |
| Lucas,Luke | 110490 | MCO Educational Series 10 | Class |
| Karasoulis,Cashmeia | 110490 | MCO Educational Series 10 | Class |
| Karasoulis,Cashmeia | 110490 | MCO Educational Series 10 | Class |
| Mark,Wing Fai Wilson | 110490 | MCO Educational Series 10 | Class |
| moore,jerrell | 110490 | MCO Educational Series 10 | Class |
| Dibella,Christopher | 110490 | MCO Educational Series 10 | Class |
| Angel,Rudy Balmore | 110490 | MCO Educational Series 10 | Class |
| charrington,Kweisi | 110490 | MCO Educational Series 10 | Class |
| Yusuf,MasterMarquis | 110490 | MCO Educational Series 10 | Class |
| Morales,Angelo | 110490 | MCO Educational Series 10 | Class |
| Kennedy,Naomi Shaday | 110490 | MCO Educational Series 10 | Class |
| Hasan,Maymuna | 110490 | MCO Educational Series 10 | Class |
| Perez,Cristal | 110490 | MCO Educational Series 10 | Class |
| Alexander,Desteny | 110490 | MCO Educational Series 10 | Class |
| Donatien,Ian Anthony | 110490 | MCO Educational Series 10 | Class |
| Moran,Giovanni | 110490 | MCO Educational Series 10 | Class |
| Perez Rodriguez,Enrique | 110490 | MCO Educational Series 10 | Class |
| Castillo,Erick | 110490 | MCO Educational Series 10 | Class |
| Raja,Waleed | 110490 | MCO Educational Series 10 | Class |
| RIVAS DE RODRIGUEZ,YULEIDI | 110490 | MCO Educational Series 10 | Class |
| Nesbitt,Levontae | 110490 | MCO Educational Series 10 | Class |
| Truco,Constantine Fernando | 110490 | MCO Educational Series 10 | Class |
| Truco,Constantine Fernando | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Claudia | 110490 | MCO Educational Series 10 | Class |
| Duran,George | 110490 | MCO Educational Series 10 | Class |
| Lee,Denise | 110490 | MCO Educational Series 10 | Class |
| Hines,myasia | 110490 | MCO Educational Series 10 | Class |
| Lockett,Equasia | 110490 | MCO Educational Series 10 | Class |
| Ghebrial,Bahgat | 110490 | MCO Educational Series 10 | Class |
| Barcenas,AJ | 110490 | MCO Educational Series 10 | Class |
| Guyton,Robert | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gonzalez,Noelia | 110490 | MCO Educational Series 10 | Class |
| Breder,Anthony-Joseph | 110490 | MCO Educational Series 10 | Class |
| Anderson,Michael | 110490 | MCO Educational Series 10 | Class |
| Romero,Martin | 110490 | MCO Educational Series 10 | Class |
| Payne,Catherine | 110490 | MCO Educational Series 10 | Class |
| Payne,Catherine | 110490 | MCO Educational Series 10 | Class |
| Michelson,Tanor | 110490 | MCO Educational Series 10 | Class |
| Rivera,Christopher | 110490 | MCO Educational Series 10 | Class |
| Belgrave,Charity | 110490 | MCO Educational Series 10 | Class |
| Santana,Jose | 110490 | MCO Educational Series 10 | Class |
| Lorquet,Nolita | 110490 | MCO Educational Series 10 | Class |
| Hamdan,Kim | 110490 | MCO Educational Series 10 | Class |
| Ford,Anita | 110490 | MCO Educational Series 10 | Class |
| Grullon,Lumercy | 110490 | MCO Educational Series 10 | Class |
| Dyce,Davina | 110490 | MCO Educational Series 10 | Class |
| velez,tamara | 110490 | MCO Educational Series 10 | Class |
| Williams,Kristoff | 110490 | MCO Educational Series 10 | Class |
| Kurian,Johncy Mathew | 110490 | MCO Educational Series 10 | Class |
| O'Donnell,James | 110490 | MCO Educational Series 10 | Class |
| Are,Owolabi | 110490 | MCO Educational Series 10 | Class |
| Radcliffe,Gary | 110490 | MCO Educational Series 10 | Class |
| Thomason,Stephanie | 110490 | MCO Educational Series 10 | Class |
| pierre,jacques | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Jesus | 110490 | MCO Educational Series 10 | Class |
| Singh,Prabh Prem | 110490 | MCO Educational Series 10 | Class |
| Vasquez,Milagros | 110490 | MCO Educational Series 10 | Class |
| Cruz,JuanCarlos | 110490 | MCO Educational Series 10 | Class |
| Horovenko,Tamila | 110490 | MCO Educational Series 10 | Class |
| Fouche Hamilton,Norma | 110490 | MCO Educational Series 10 | Class |
| Andre,Narjla | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Donna | 110490 | MCO Educational Series 10 | Class |
| Mcintosh,Porcha | 110490 | MCO Educational Series 10 | Class |
| Morales,Michael | 110490 | MCO Educational Series 10 | Class |
| Elwishahi,Wael | 110490 | MCO Educational Series 10 | Class |
| missouri,derrick | 110490 | MCO Educational Series 10 | Class |
| Tompkins,Kimora | 110490 | MCO Educational Series 10 | Class |
| Maceda,Gabe | 110490 | MCO Educational Series 10 | Class |
| Lewis,John A | 110490 | MCO Educational Series 10 | Class |
| Oluwole,Olukayode | 110490 | MCO Educational Series 10 | Class |
| Sample,Devion | 110490 | MCO Educational Series 10 | Class |
| Monir,Mohammad Dobir | 110490 | MCO Educational Series 10 | Class |
| Oiro,Richard | 110490 | MCO Educational Series 10 | Class |
| Guzman,Humberto | 110490 | MCO Educational Series 10 | Class |
| Cadet,LaToya | 110490 | MCO Educational Series 10 | Class |
| Howard,Darkell | 110490 | MCO Educational Series 10 | Class |
| Bell,Quincy L | 110490 | MCO Educational Series 10 | Class |
| Bell,Quincy L | 110490 | MCO Educational Series 10 | Class |
| Edwards,NeAndre | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Dremlyuga,Evgeny | 110490 | MCO Educational Series 10 | Class |
| Clower,Bryant | 110490 | MCO Educational Series 10 | Class |
| Valerio,Christian | 110490 | MCO Educational Series 10 | Class |
| Noaman,Dalia | 110490 | MCO Educational Series 10 | Class |
| Yorke,Liv | 110490 | MCO Educational Series 10 | Class |
| Mastroguilio,Domenica | 110490 | MCO Educational Series 10 | Class |
| Kalellis,Robin B | 110490 | MCO Educational Series 10 | Class |
| Jules,Fabienne | 110490 | MCO Educational Series 10 | Class |
| Mangroo,Shaun N | 110490 | MCO Educational Series 10 | Class |
| Munoz,Citlaly | 110490 | MCO Educational Series 10 | Class |
| Munoz,Citlaly | 110490 | MCO Educational Series 10 | Class |
| Desir,Caleb | 110490 | MCO Educational Series 10 | Class |
| Wallerson,Akeem Shaquille | 110490 | MCO Educational Series 10 | Class |
| Villanueva,Jonathan E | 110490 | MCO Educational Series 10 | Class |
| Baldeh,Ebrima | 110490 | MCO Educational Series 10 | Class |
| Houdari,Mokhtaria | 110490 | MCO Educational Series 10 | Class |
| Maroney,SamanthaMarie frances | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Hilda Ivette | 110490 | MCO Educational Series 10 | Class |
| C.,Marsela | 110490 | MCO Educational Series 10 | Class |
| Brown,Vanessa Sheba | 110490 | MCO Educational Series 10 | Class |
| Thomas,Kenrick | 110490 | MCO Educational Series 10 | Class |
| Toledo,Herald John Acop | 110490 | MCO Educational Series 10 | Class |
| Galindo,Steven | 110490 | MCO Educational Series 10 | Class |
| Ruffin,Arthur J | 110490 | MCO Educational Series 10 | Class |
| Young,Jay | 110490 | MCO Educational Series 10 | Class |
| Carandang,Christine | 110490 | MCO Educational Series 10 | Class |
| Burgos,Santiago | 110490 | MCO Educational Series 10 | Class |
| Craig,Ramanda | 110490 | MCO Educational Series 10 | Class |
| Denny,Marcia | 110490 | MCO Educational Series 10 | Class |
| Helfer,Justin | 110490 | MCO Educational Series 10 | Class |
| bekheet,abanob | 110490 | MCO Educational Series 10 | Class |
| Thit,Khit | 110490 | MCO Educational Series 10 | Class |
| Cortes,Jose | 110490 | MCO Educational Series 10 | Class |
| jacques,vanessa | 110490 | MCO Educational Series 10 | Class |
| Wittick,Michael | 110490 | MCO Educational Series 10 | Class |
| Smalls,Kevin Richard | 110490 | MCO Educational Series 10 | Class |
| makar,gihan | 110490 | MCO Educational Series 10 | Class |
| Lewis Jr,Stephen | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Martin Antonio | 110490 | MCO Educational Series 10 | Class |
| Atwood,Julian | 110490 | MCO Educational Series 10 | Class |
| Burns,Alexander | 110490 | MCO Educational Series 10 | Class |
| Gomez,Osle | 110490 | MCO Educational Series 10 | Class |
| Carver,Chantia | 110490 | MCO Educational Series 10 | Class |
| Joseph,Michael Isaac | 110490 | MCO Educational Series 10 | Class |
| Zumba,Sandra | 110490 | MCO Educational Series 10 | Class |
| Galgan,Robert | 110490 | MCO Educational Series 10 | Class |
| Edelman,David | 110490 | MCO Educational Series 10 | Class |
| Joseph,Gelide | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Moran Parra,Lesly | 110490 | MCO Educational Series 10 | Class |
| Bojkovic,Nebije | 110490 | MCO Educational Series 10 | Class |
| Lovera,Germain | 110490 | MCO Educational Series 10 | Class |
| Flores,Jaime | 110490 | MCO Educational Series 10 | Class |
| Terrero,Felix | 110490 | MCO Educational Series 10 | Class |
| Fahem,George S | 110490 | MCO Educational Series 10 | Class |
| Prendergast,Mathilda | 110490 | MCO Educational Series 10 | Class |
| Brown,Travis | 110490 | MCO Educational Series 10 | Class |
| Santos,Greissy | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Merijoel | 110490 | MCO Educational Series 10 | Class |
| paulino,wendy | 110490 | MCO Educational Series 10 | Class |
| Simmons,Isaiah Thomas | 110490 | MCO Educational Series 10 | Class |
| Vittini,Gissell | 110490 | MCO Educational Series 10 | Class |
| Castillo,Sergio | 110490 | MCO Educational Series 10 | Class |
| Burrell,Shawnea | 110490 | MCO Educational Series 10 | Class |
| Ahouandogbo,Samuel | 110490 | MCO Educational Series 10 | Class |
| Go,Jay | 110490 | MCO Educational Series 10 | Class |
| Ocasio,Angel | 110490 | MCO Educational Series 10 | Class |
| Onofre Flores,Alexis | 110490 | MCO Educational Series 10 | Class |
| rennicks,ryan | 110490 | MCO Educational Series 10 | Class |
| rennicks,ryan | 110490 | MCO Educational Series 10 | Class |
| Testa,Randi | 110490 | MCO Educational Series 10 | Class |
| soriano,rodrigo | 110490 | MCO Educational Series 10 | Class |
| Santapola,Scott | 110490 | MCO Educational Series 10 | Class |
| Davidson,Zori | 110490 | MCO Educational Series 10 | Class |
| Martins,Thatyana | 110490 | MCO Educational Series 10 | Class |
| Anthony raj,Prasanthi Stefani | 110490 | MCO Educational Series 10 | Class |
| Hartley,Shane | 110490 | MCO Educational Series 10 | Class |
| Mayers,Peaches | 110490 | MCO Educational Series 10 | Class |
| Harrison,odisee | 110490 | MCO Educational Series 10 | Class |
| Belgrave,Kelsey | 110490 | MCO Educational Series 10 | Class |
| Khalid,Luqman | 110490 | MCO Educational Series 10 | Class |
| Fowler,Denham sherman | 110490 | MCO Educational Series 10 | Class |
| Lewis-Farrakhan,Davonia | 110490 | MCO Educational Series 10 | Class |
| Bayeme,Emmanuel | 110490 | MCO Educational Series 10 | Class |
| Green,Jorge | 110490 | MCO Educational Series 10 | Class |
| Ramsammy,Tyler | 110490 | MCO Educational Series 10 | Class |
| Klass,Georgeino | 110490 | MCO Educational Series 10 | Class |
| Persaud,Kathrine | 110490 | MCO Educational Series 10 | Class |
| Persaud,Kathrine | 110490 | MCO Educational Series 10 | Class |
| Thompson,Kathyann Lindyann | 110490 | MCO Educational Series 10 | Class |
| Solano,Victor Manuel | 110490 | MCO Educational Series 10 | Class |
| Pantoja,Reyna | 110490 | MCO Educational Series 10 | Class |
| Chiarello,Rosa | 110490 | MCO Educational Series 10 | Class |
| Johnson,Desiree | 110490 | MCO Educational Series 10 | Class |
| Iqbal,Shahid | 110490 | MCO Educational Series 10 | Class |
| Douglas,Tafari | 110490 | MCO Educational Series 10 | Class |
| Batz Alvarado,Fermin Ezequiel | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Paredes,Johan W | 110490 | MCO Educational Series 10 | Class |
| Ramos,Elijah | 110490 | MCO Educational Series 10 | Class |
| Mujungu,Flora Kemi | 110490 | MCO Educational Series 10 | Class |
| Barry,Thierno | 110490 | MCO Educational Series 10 | Class |
| Jackson,Brittany | 110490 | MCO Educational Series 10 | Class |
| Frias de Frias,Albanerys | 110490 | MCO Educational Series 10 | Class |
| Frias de Frias,Albanerys | 110490 | MCO Educational Series 10 | Class |
| Mcdonald,Quamahli | 110490 | MCO Educational Series 10 | Class |
| Cabrera,Joshua T | 110490 | MCO Educational Series 10 | Class |
| Sharma,Rahul | 110490 | MCO Educational Series 10 | Class |
| Mack,Robert | 110490 | MCO Educational Series 10 | Class |
| Samassa,Sirantou | 110490 | MCO Educational Series 10 | Class |
| abreu,Victor | 110490 | MCO Educational Series 10 | Class |
| Pannunzio,Stephen Ralph | 110490 | MCO Educational Series 10 | Class |
| Tun,Sai L | 110490 | MCO Educational Series 10 | Class |
| Muniz,Kevyn | 110490 | MCO Educational Series 10 | Class |
| Gordon,Marlon | 110490 | MCO Educational Series 10 | Class |
| angulo,tony | 110490 | MCO Educational Series 10 | Class |
| Reeves,Anthony Jordan | 110490 | MCO Educational Series 10 | Class |
| Cappello,Gabriela Lucia | 110490 | MCO Educational Series 10 | Class |
| smelava,alesia | 110490 | MCO Educational Series 10 | Class |
| Riad,Alaa | 110490 | MCO Educational Series 10 | Class |
| Howard,Dominic kowolo | 110490 | MCO Educational Series 10 | Class |
| Duff,Ann | 110490 | MCO Educational Series 10 | Class |
| Mendez,Jose | 110490 | MCO Educational Series 10 | Class |
| Ortega,Omar | 110490 | MCO Educational Series 10 | Class |
| kite,Brian | 110490 | MCO Educational Series 10 | Class |
| kite,Brian | 110490 | MCO Educational Series 10 | Class |
| bous,joseph adly | 110490 | MCO Educational Series 10 | Class |
| Saldana,Anastacio | 110490 | MCO Educational Series 10 | Class |
| Renaud,Kester | 110490 | MCO Educational Series 10 | Class |
| campusano,dewin | 110490 | MCO Educational Series 10 | Class |
| Fahmy,Mina | 110490 | MCO Educational Series 10 | Class |
| Michel,Buckley | 110490 | MCO Educational Series 10 | Class |
| Ramos,Montgomery | 110490 | MCO Educational Series 10 | Class |
| Diaz,Gisselle | 110490 | MCO Educational Series 10 | Class |
| Yabdayoui,Mohamed | 110490 | MCO Educational Series 10 | Class |
| Williams,Kenneth | 110490 | MCO Educational Series 10 | Class |
| Leon,Ariele | 110490 | MCO Educational Series 10 | Class |
| Leon,Ariele | 110490 | MCO Educational Series 10 | Class |
| Kirby,Nasir | 110490 | MCO Educational Series 10 | Class |
| Gomez,Yamileht | 110490 | MCO Educational Series 10 | Class |
| Hayden,Danielle | 110490 | MCO Educational Series 10 | Class |
| Ibarra,Diego Alejandro | 110490 | MCO Educational Series 10 | Class |
| Haddadi,Noufel | 110490 | MCO Educational Series 10 | Class |
| alimi,onuabuchi promise | 110490 | MCO Educational Series 10 | Class |
| Felix,Francisco | 110490 | MCO Educational Series 10 | Class |
| Eshingnwi,Amah Rosemary | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| munya,Prince | 110490 | MCO Educational Series 10 | Class |
| Nizami,Rija N | 110490 | MCO Educational Series 10 | Class |
| Owens,Keshawn Laj | 110490 | MCO Educational Series 10 | Class |
| Unda,Maria | 110490 | MCO Educational Series 10 | Class |
| Palmer,Derrick | 110490 | MCO Educational Series 10 | Class |
| Palmer,Derrick | 110490 | MCO Educational Series 10 | Class |
| Palmer,Derrick | 110490 | MCO Educational Series 10 | Class |
| pantoja zosayas,roman | 110490 | MCO Educational Series 10 | Class |
| Boyne,Monique Anna-kaye | 110490 | MCO Educational Series 10 | Class |
| Durand,Bene | 110490 | MCO Educational Series 10 | Class |
| DeVille,James | 110490 | MCO Educational Series 10 | Class |
| Russell,Michael | 110490 | MCO Educational Series 10 | Class |
| Charles,Erica | 110490 | MCO Educational Series 10 | Class |
| viola,charlie Micheal | 110490 | MCO Educational Series 10 | Class |
| Morales,Thalia | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Roberto | 110490 | MCO Educational Series 10 | Class |
| Johnson,Ryan | 110490 | MCO Educational Series 10 | Class |
| Taleus,Berkenson | 110490 | MCO Educational Series 10 | Class |
| Rhames,Ashley Nicole | 110490 | MCO Educational Series 10 | Class |
| Mejia,Elisa | 110490 | MCO Educational Series 10 | Class |
| Robinson,Pernell | 110490 | MCO Educational Series 10 | Class |
| Bishop,Nichole | 110490 | MCO Educational Series 10 | Class |
| Bishop,Nichole | 110490 | MCO Educational Series 10 | Class |
| Moscote,Karelis | 110490 | MCO Educational Series 10 | Class |
| King,Shara | 110490 | MCO Educational Series 10 | Class |
| lin,zhiyuan | 110490 | MCO Educational Series 10 | Class |
| Monroe,Kevin | 110490 | MCO Educational Series 10 | Class |
| Davis,Tamera | 110490 | MCO Educational Series 10 | Class |
| Johnson,Susan | 110490 | MCO Educational Series 10 | Class |
| Azeez,Shakirat | 110490 | MCO Educational Series 10 | Class |
| Billera,Michael | 110490 | MCO Educational Series 10 | Class |
| CatalinoRosario,Kevin | 110490 | MCO Educational Series 10 | Class |
| Desvarieux,Pierre Gerard | 110490 | MCO Educational Series 10 | Class |
| Soberano,Eileen | 110490 | MCO Educational Series 10 | Class |
| jean,christina | 110490 | MCO Educational Series 10 | Class |
| Thompson,Sukanya | 110490 | MCO Educational Series 10 | Class |
| Chestnut,Ramel Malik | 110490 | MCO Educational Series 10 | Class |
| Guaman,Lizbeth | 110490 | MCO Educational Series 10 | Class |
| Holder,Daniel Brandon | 110490 | MCO Educational Series 10 | Class |
| delpriore,rosa | 110490 | MCO Educational Series 10 | Class |
| Avila,Angeleah | 110490 | MCO Educational Series 10 | Class |
| Lewis,Shaquaya | 110490 | MCO Educational Series 10 | Class |
| Paulino,Justin | 110490 | MCO Educational Series 10 | Class |
| Rangel,Helly | 110490 | MCO Educational Series 10 | Class |
| Bravo,Cesar | 110490 | MCO Educational Series 10 | Class |
| Truscelli,Vincent Joseph | 110490 | MCO Educational Series 10 | Class |
| Oppong,David Hiawo | 110490 | MCO Educational Series 10 | Class |
| Dyer,Nikell | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Joseph,Walter | 110490 | MCO Educational Series 10 | Class |
| Charles,Timica | 110490 | MCO Educational Series 10 | Class |
| Useche,Ivy N | 110490 | MCO Educational Series 10 | Class |
| DiNapoli,Michael Vincent | 110490 | MCO Educational Series 10 | Class |
| Calfos,Kofoworola Olaide | 110490 | MCO Educational Series 10 | Class |
| Boylan,Jonell | 110490 | MCO Educational Series 10 | Class |
| Figueroa Fullins,Emmet | 110490 | MCO Educational Series 10 | Class |
| ndepo,assy | 110490 | MCO Educational Series 10 | Class |
| Graves,Tanijah | 110490 | MCO Educational Series 10 | Class |
| Ramos,Juan Alberto | 110490 | MCO Educational Series 10 | Class |
| Cooper,Jameel | 110490 | MCO Educational Series 10 | Class |
| Feng feng,Wenhao | 110490 | MCO Educational Series 10 | Class |
| Montedeocanegron,Kirsys Elizabeth | 110490 | MCO Educational Series 10 | Class |
| Martinez,Nidia | 110490 | MCO Educational Series 10 | Class |
| Bello,Imanol | 110490 | MCO Educational Series 10 | Class |
| Whiten-Bell,Ronique | 110490 | MCO Educational Series 10 | Class |
| Molina Lopez,Milton Hugo | 110490 | MCO Educational Series 10 | Class |
| Zhuno,Raquel | 110490 | MCO Educational Series 10 | Class |
| Jackson,Derrick | 110490 | MCO Educational Series 10 | Class |
| Elshabassy,Moe Ahmed | 110490 | MCO Educational Series 10 | Class |
| Flores-Hernandez,Jose | 110490 | MCO Educational Series 10 | Class |
| huw song,ying | 110490 | MCO Educational Series 10 | Class |
| BOURAIMA,Andrea | 110490 | MCO Educational Series 10 | Class |
| medrano heredia,ray ernesto | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Valeria Maria | 110490 | MCO Educational Series 10 | Class |
| Cruz,Juan | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Steven | 110490 | MCO Educational Series 10 | Class |
| Pena,Mereling | 110490 | MCO Educational Series 10 | Class |
| scott,deepak | 110490 | MCO Educational Series 10 | Class |
| Sow,Mariama | 110490 | MCO Educational Series 10 | Class |
| Chocianowski,Derrick | 110490 | MCO Educational Series 10 | Class |
| Barzola,Martha Patty | 110490 | MCO Educational Series 10 | Class |
| victor,christine | 110490 | MCO Educational Series 10 | Class |
| Esinaulo,Michael | 110490 | MCO Educational Series 10 | Class |
| Barrios,Alyssa | 110490 | MCO Educational Series 10 | Class |
| Walters,Shanai | 110490 | MCO Educational Series 10 | Class |
| Catapang,Rogelio | 110490 | MCO Educational Series 10 | Class |
| Stokes,Andrea | 110490 | MCO Educational Series 10 | Class |
| Lamb,Nicole | 110490 | MCO Educational Series 10 | Class |
| Villareal,Ernan | 110490 | MCO Educational Series 10 | Class |
| Adenekan,Oluwasola | 110490 | MCO Educational Series 10 | Class |
| Ijasuyi,Emmanuel Morenikeji | 110490 | MCO Educational Series 10 | Class |
| Mason,Dajah | 110490 | MCO Educational Series 10 | Class |
| Veras,Mark Simon | 110490 | MCO Educational Series 10 | Class |
| Adebisi,Pharez | 110490 | MCO Educational Series 10 | Class |
| Batista,Yasmin | 110490 | MCO Educational Series 10 | Class |
| Sinclair,Rondane | 110490 | MCO Educational Series 10 | Class |
| Bennett,Randall D | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Odubanjo,Oluseun A. | 110490 | MCO Educational Series 10 | Class |
| Adams de Jimenez,Nitzia | 110490 | MCO Educational Series 10 | Class |
| Jefferson,Letitia | 110490 | MCO Educational Series 10 | Class |
| Faulkner,Naylesha | 110490 | MCO Educational Series 10 | Class |
| Selby,Francine | 110490 | MCO Educational Series 10 | Class |
| Selby,Francine | 110490 | MCO Educational Series 10 | Class |
| Sevorwell,Anissa | 110490 | MCO Educational Series 10 | Class |
| Windom,Simone | 110490 | MCO Educational Series 10 | Class |
| Battle,Shakera | 110490 | MCO Educational Series 10 | Class |
| Solomon,John K | 110490 | MCO Educational Series 10 | Class |
| paredes,tania altagracia | 110490 | MCO Educational Series 10 | Class |
| Deka,Willio | 110490 | MCO Educational Series 10 | Class |
| Garcia,Suleima | 110490 | MCO Educational Series 10 | Class |
| stanton,kiana | 110490 | MCO Educational Series 10 | Class |
| Fibbio,Fred Anthony | 110490 | MCO Educational Series 10 | Class |
| Angueira,Alexandra | 110490 | MCO Educational Series 10 | Class |
| Martinez,Luis A | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Jovanni | 110490 | MCO Educational Series 10 | Class |
| Taylor,Danval | 110490 | MCO Educational Series 10 | Class |
| Ramirez,Keren | 110490 | MCO Educational Series 10 | Class |
| Martin-Mason,Deneen | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Richard | 110490 | MCO Educational Series 10 | Class |
| Griffiths,Iesha | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Jonathan | 110490 | MCO Educational Series 10 | Class |
| Jiang,Junwei | 110490 | MCO Educational Series 10 | Class |
| Ramirez,Yenifer | 110490 | MCO Educational Series 10 | Class |
| Goodridge,Kevin | 110490 | MCO Educational Series 10 | Class |
| Toussaint,Christopher | 110490 | MCO Educational Series 10 | Class |
| Floyd,William | 110490 | MCO Educational Series 10 | Class |
| Garzon Torres,Genesis Isamar | 110490 | MCO Educational Series 10 | Class |
| Tawadrous,Drew | 110490 | MCO Educational Series 10 | Class |
| Francis,Kevaughn | 110490 | MCO Educational Series 10 | Class |
| Dunn,Gina | 110490 | MCO Educational Series 10 | Class |
| Kassim,Tijani | 110490 | MCO Educational Series 10 | Class |
| Inniss,Jacques | 110490 | MCO Educational Series 10 | Class |
| Fredericks,Claimont | 110490 | MCO Educational Series 10 | Class |
| Damian,Sidney | 110490 | MCO Educational Series 10 | Class |
| Pavia Ballesteros,Ivett | 110490 | MCO Educational Series 10 | Class |
| Ouedraogo,Mariam | 110490 | MCO Educational Series 10 | Class |
| Hinckson,Shermaine | 110490 | MCO Educational Series 10 | Class |
| Gerges,Wagih | 110490 | MCO Educational Series 10 | Class |
| Gerges,Wagih | 110490 | MCO Educational Series 10 | Class |
| Dillon,Randy | 110490 | MCO Educational Series 10 | Class |
| milik,peter | 110490 | MCO Educational Series 10 | Class |
| Gunawardena,Sheran | 110490 | MCO Educational Series 10 | Class |
| Wright,Jakeir | 110490 | MCO Educational Series 10 | Class |
| DeMarco,Jessica Anne | 110490 | MCO Educational Series 10 | Class |
| Zayer,Sounia | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Mansy,Gisselle Wahid nasr | 110490 | MCO Educational Series 10 | Class |
| Collazos,Elizabeth Milagros | 110490 | MCO Educational Series 10 | Class |
| Collazos,Elizabeth Milagros | 110490 | MCO Educational Series 10 | Class |
| Bell,Hapiness | 110490 | MCO Educational Series 10 | Class |
| Licciardi,Anthony J | 110490 | MCO Educational Series 10 | Class |
| McLean,Ezra | 110490 | MCO Educational Series 10 | Class |
| Dawkins-Giles,Toy | 110490 | MCO Educational Series 10 | Class |
| Denicia-Juarez,Carlos Andres | 110490 | MCO Educational Series 10 | Class |
| Martin,Elijah | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Elvis C | 110490 | MCO Educational Series 10 | Class |
| Murray,Tahir | 110490 | MCO Educational Series 10 | Class |
| Joubert,Keanu Raul | 110490 | MCO Educational Series 10 | Class |
| Jean Marie,Michael | 110490 | MCO Educational Series 10 | Class |
| Ortiz,Yessenia | 110490 | MCO Educational Series 10 | Class |
| Crooke,Oliver | 110490 | MCO Educational Series 10 | Class |
| Crooke,Oliver | 110490 | MCO Educational Series 10 | Class |
| Parker,Michael | 110490 | MCO Educational Series 10 | Class |
| Williams,Clive Alejandro | 110490 | MCO Educational Series 10 | Class |
| Ellis,Shatera | 110490 | MCO Educational Series 10 | Class |
| santamaria,Daisy Paola | 110490 | MCO Educational Series 10 | Class |
| Dosunmu,Abdulwasiu Olakunle | 110490 | MCO Educational Series 10 | Class |
| Thi,A Myanmar Lat | 110490 | MCO Educational Series 10 | Class |
| Coti,Araceli | 110490 | MCO Educational Series 10 | Class |
| Moran,Carlos Anthony | 110490 | MCO Educational Series 10 | Class |
| Kamara,Zainab | 110490 | MCO Educational Series 10 | Class |
| Peras,Michael | 110490 | MCO Educational Series 10 | Class |
| Vega,Natalie | 110490 | MCO Educational Series 10 | Class |
| Sanchez,Frank | 110490 | MCO Educational Series 10 | Class |
| DEAS,OMANI S | 110490 | MCO Educational Series 10 | Class |
| Wells,Gene | 110490 | MCO Educational Series 10 | Class |
| Giordano,Thomas | 110490 | MCO Educational Series 10 | Class |
| Jessie,Vacher | 110490 | MCO Educational Series 10 | Class |
| Gunnell,Caesar | 110490 | MCO Educational Series 10 | Class |
| Peoples,Shaleek Montay | 110490 | MCO Educational Series 10 | Class |
| xie,guowei | 110490 | MCO Educational Series 10 | Class |
| Raucci,Pasquale | 110490 | MCO Educational Series 10 | Class |
| Smith,Lyric | 110490 | MCO Educational Series 10 | Class |
| Martinez,Melissa | 110490 | MCO Educational Series 10 | Class |
| Martinez,Melissa | 110490 | MCO Educational Series 10 | Class |
| Dickerson,Travis | 110490 | MCO Educational Series 10 | Class |
| Martinez,Luis | 110490 | MCO Educational Series 10 | Class |
| Gibbons,Kashiem | 110490 | MCO Educational Series 10 | Class |
| Smith,Gary | 110490 | MCO Educational Series 10 | Class |
| BARNES,NII AMARLAI | 110490 | MCO Educational Series 10 | Class |
| Avila,Anthony | 110490 | MCO Educational Series 10 | Class |
| Aburamileh,Fatma | 110490 | MCO Educational Series 10 | Class |
| piazza,kimMarie | 110490 | MCO Educational Series 10 | Class |
| piazza,kimMarie | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Roberts,Floyd | 110490 | MCO Educational Series 10 | Class |
| Wilson,Modupe Fatimo | 110490 | MCO Educational Series 10 | Class |
| Corporan,Darys N | 110490 | MCO Educational Series 10 | Class |
| Martins,Sonia | 110490 | MCO Educational Series 10 | Class |
| Ashour,Mahmoud | 110490 | MCO Educational Series 10 | Class |
| Peralta,Sara | 110490 | MCO Educational Series 10 | Class |
| Villegas,Max | 110490 | MCO Educational Series 10 | Class |
| Ruiz,Shawntay | 110490 | MCO Educational Series 10 | Class |
| Shupongpun,Pete | 110490 | MCO Educational Series 10 | Class |
| Coleman,Stacy | 110490 | MCO Educational Series 10 | Class |
| Jordan,Madriek | 110490 | MCO Educational Series 10 | Class |
| Delcid,Rita | 110490 | MCO Educational Series 10 | Class |
| Adebayo,Funmilayo | 110490 | MCO Educational Series 10 | Class |
| Hernandez,Juan Jose | 110490 | MCO Educational Series 10 | Class |
| Kimble,Khiry Malik | 110490 | MCO Educational Series 10 | Class |
| Crooke,Jeremias | 110490 | MCO Educational Series 10 | Class |
| Sow,Mahamad | 110490 | MCO Educational Series 10 | Class |
| Obioha,Victor | 110490 | MCO Educational Series 10 | Class |
| Pina,Anapatricia Carolina | 110490 | MCO Educational Series 10 | Class |
| Rusoff,Vincent Joseph | 110490 | MCO Educational Series 10 | Class |
| Torres,Edwin | 110490 | MCO Educational Series 10 | Class |
| Luna Hernandez,Marcela | 110490 | MCO Educational Series 10 | Class |
| Reddy,Geneva | 110490 | MCO Educational Series 10 | Class |
| Reddy,Geneva | 110490 | MCO Educational Series 10 | Class |
| Rivera,Michael | 110490 | MCO Educational Series 10 | Class |
| Fields,Tamika | 110490 | MCO Educational Series 10 | Class |
| bassimbo,mohamed | 110490 | MCO Educational Series 10 | Class |
| Paz,kimberlly | 110490 | MCO Educational Series 10 | Class |
| Macuil,Ricardo | 110490 | MCO Educational Series 10 | Class |
| Meyer,Kia | 110490 | MCO Educational Series 10 | Class |
| Diakhate,Mouhamadou | 110490 | MCO Educational Series 10 | Class |
| O'Brien,James | 110490 | MCO Educational Series 10 | Class |
| Axelrod,Melissa | 110490 | MCO Educational Series 10 | Class |
| Prince,Evans | 110490 | MCO Educational Series 10 | Class |
| Pugh,Jason | 110490 | MCO Educational Series 10 | Class |
| Perry,Natonya | 110490 | MCO Educational Series 10 | Class |
| Perry,Natonya | 110490 | MCO Educational Series 10 | Class |
| Deberry,Deshante | 110490 | MCO Educational Series 10 | Class |
| Davis,Brandon Joseph | 110490 | MCO Educational Series 10 | Class |
| Wattley,Xaviee | 110490 | MCO Educational Series 10 | Class |
| Brown,John | 110490 | MCO Educational Series 10 | Class |
| Romero,Daisy | 110490 | MCO Educational Series 10 | Class |
| Rosales,Monica | 110490 | MCO Educational Series 10 | Class |
| Sanjose,David | 110490 | MCO Educational Series 10 | Class |
| Sanjose,David | 110490 | MCO Educational Series 10 | Class |
| Lewis,Diamond | 110490 | MCO Educational Series 10 | Class |
| Kopetic,Josephine | 110490 | MCO Educational Series 10 | Class |
| Dixon,Headley | 110490 | MCO Educational Series 10 | Class |

Amazon_000357

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Guamanquispe,Johnny Steven | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Betzabeth | 110490 | MCO Educational Series 10 | Class |
| SESAY,ISATA | 110490 | MCO Educational Series 10 | Class |
| Campo,Hector | 110490 | MCO Educational Series 10 | Class |
| Schwartz,Igor | 110490 | MCO Educational Series 10 | Class |
| Damico,Brandon Scott | 110490 | MCO Educational Series 10 | Class |
| Garcia,John | 110490 | MCO Educational Series 10 | Class |
| Berentsen,Troy | 110490 | MCO Educational Series 10 | Class |
| Ramroop,Leon | 110490 | MCO Educational Series 10 | Class |
| guzman pinzon,yaneth n | 110490 | MCO Educational Series 10 | Class |
| Paci,Nicholas | 110490 | MCO Educational Series 10 | Class |
| Yearwood,Suzette Nichola Hamilton | 110490 | MCO Educational Series 10 | Class |
| Shaw,Will | 110490 | MCO Educational Series 10 | Class |
| Alberto,Andres E | 110490 | MCO Educational Series 10 | Class |
| Sedrak,Michael | 110490 | MCO Educational Series 10 | Class |
| S,Zequina N | 110490 | MCO Educational Series 10 | Class |
| Maglio,Gianna | 110490 | MCO Educational Series 10 | Class |
| Day,George | 110490 | MCO Educational Series 10 | Class |
| Noel,Mirlande | 110490 | MCO Educational Series 10 | Class |
| Sloan,Dedra | 110490 | MCO Educational Series 10 | Class |
| anzures,joshabet | 110490 | MCO Educational Series 10 | Class |
| McNab,Robert Charles | 110490 | MCO Educational Series 10 | Class |
| Xiao,Wilson | 110490 | MCO Educational Series 10 | Class |
| Vargas,Armando | 110490 | MCO Educational Series 10 | Class |
| Harris,Tyree | 110490 | MCO Educational Series 10 | Class |
| Turpin,Rayqwaun Tyrik | 110490 | MCO Educational Series 10 | Class |
| Cuenca,Juan | 110490 | MCO Educational Series 10 | Class |
| Ball,Floyd | 110490 | MCO Educational Series 10 | Class |
| Guzman,Marco A | 110490 | MCO Educational Series 10 | Class |
| hassan,sherif mohamed | 110490 | MCO Educational Series 10 | Class |
| Calagui,Jamico R | 110490 | MCO Educational Series 10 | Class |
| Cheng,Jeff | 110490 | MCO Educational Series 10 | Class |
| Rosendo,Myriam Fernanda | 110490 | MCO Educational Series 10 | Class |
| Ragusa,Rosie | 110490 | MCO Educational Series 10 | Class |
| Perry,Shantay | 110490 | MCO Educational Series 10 | Class |
| LaPorta,Lisa | 110490 | MCO Educational Series 10 | Class |
| Jegede,Ayodeji | 110490 | MCO Educational Series 10 | Class |
| Rosario,Perla | 110490 | MCO Educational Series 10 | Class |
| Menon,Ja Bawk | 110490 | MCO Educational Series 10 | Class |
| Balasuriya A.D,Dananjaya Chathuranga | 110490 | MCO Educational Series 10 | Class |
| Arcelin,Jovanny | 110490 | MCO Educational Series 10 | Class |
| David Martinez,david | 110490 | MCO Educational Series 10 | Class |
| Tahay,Yonatan | 110490 | MCO Educational Series 10 | Class |
| Everett,Robert | 110490 | MCO Educational Series 10 | Class |
| Rosen,Omario | 110490 | MCO Educational Series 10 | Class |
| Thomas,Farrd | 110490 | MCO Educational Series 10 | Class |
| Williams-Ganzy,Teari | 110490 | MCO Educational Series 10 | Class |
| Okyere,Joseph | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Rodriguez,Gabriel | 110490 | MCO Educational Series 10 | Class |
| Jimenez,John daniel Alina | 110490 | MCO Educational Series 10 | Class |
| Willis,RoseAnn | 110490 | MCO Educational Series 10 | Class |
| THARMALINGAM,BALAYOKI | 110490 | MCO Educational Series 10 | Class |
| Perkins,Arthur | 110490 | MCO Educational Series 10 | Class |
| Holguin,Joel | 110490 | MCO Educational Series 10 | Class |
| Gonzalez,Danny | 110490 | MCO Educational Series 10 | Class |
| Mahil,anwer elamin ali | 110490 | MCO Educational Series 10 | Class |
| Prater,Kareem | 110490 | MCO Educational Series 10 | Class |
| IOANNU,Konstadinos | 110490 | MCO Educational Series 10 | Class |
| Grant,Courtney F | 110490 | MCO Educational Series 10 | Class |
| Mattaliano,Salvatore | 110490 | MCO Educational Series 10 | Class |
| Ahouandogbo,Akpedje | 110490 | MCO Educational Series 10 | Class |
| Jeffrey,Eric | 110490 | MCO Educational Series 10 | Class |
| Chance,John | 110490 | MCO Educational Series 10 | Class |
| Lui,Kenneth | 110490 | MCO Educational Series 10 | Class |
| Hill,Lamya | 110490 | MCO Educational Series 10 | Class |
| Flores,Ana Silvia | 110490 | MCO Educational Series 10 | Class |
| Marrero,Maria | 110490 | MCO Educational Series 10 | Class |
| Nocerino,Danielle Marie | 110490 | MCO Educational Series 10 | Class |
| Sherif,Abdel | 110490 | MCO Educational Series 10 | Class |
| Jordan,Shonntay | 110490 | MCO Educational Series 10 | Class |
| Ushiro,Kodah | 110490 | MCO Educational Series 10 | Class |
| Hussain,Muhammad | 110490 | MCO Educational Series 10 | Class |
| Nieto,Vanesa | 110490 | MCO Educational Series 10 | Class |
| Florencio,Oscar | 110490 | MCO Educational Series 10 | Class |
| cuccurullo,ashley marie | 110490 | MCO Educational Series 10 | Class |
| Saracena,Andrea | 110490 | MCO Educational Series 10 | Class |
| Cibelli,Michelle | 110490 | MCO Educational Series 10 | Class |
| Vazquez Molina,Magali | 110490 | MCO Educational Series 10 | Class |
| Spruill,Alvena | 110490 | MCO Educational Series 10 | Class |
| Bello,Jose | 110490 | MCO Educational Series 10 | Class |
| Molina,Leisly | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Julissa | 110490 | MCO Educational Series 10 | Class |
| NESBITT,GAIL | 110490 | MCO Educational Series 10 | Class |
| Weerasinghe,Rayan Rayan | 110490 | MCO Educational Series 10 | Class |
| Reyes,Jean Carlos | 110490 | MCO Educational Series 10 | Class |
| Le,Khoa Tho | 110490 | MCO Educational Series 10 | Class |
| Vazquez,Rosa | 110490 | MCO Educational Series 10 | Class |
| Vythilengam,Michael Angel | 110490 | MCO Educational Series 10 | Class |
| McFadden,Najayah | 110490 | MCO Educational Series 10 | Class |
| Martinez,Jacquelyn | 110490 | MCO Educational Series 10 | Class |
| Reyes,Juan Carlos | 110490 | MCO Educational Series 10 | Class |
| Woods,Taleshia | 110490 | MCO Educational Series 10 | Class |
| Sierra,Justin | 110490 | MCO Educational Series 10 | Class |
| Dejesus,Wilfred R | 110490 | MCO Educational Series 10 | Class |
| Cooney,Justin | 110490 | MCO Educational Series 10 | Class |
| Ogwun,Ernest | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Mirzo,Faton | 110490 | MCO Educational Series 10 | Class |
| Feldman,Johanna Calumba | 110490 | MCO Educational Series 10 | Class |
| Neri,Adriana | 110490 | MCO Educational Series 10 | Class |
| Tobon,Jay Brian | 110490 | MCO Educational Series 10 | Class |
| Keyes,Saequan | 110490 | MCO Educational Series 10 | Class |
| nova,alicia | 110490 | MCO Educational Series 10 | Class |
| Denton,Dominique | 110490 | MCO Educational Series 10 | Class |
| R,Sebastian | 110490 | MCO Educational Series 10 | Class |
| Ashu,Julie | 110490 | MCO Educational Series 10 | Class |
| Williams,O-t | 110490 | MCO Educational Series 10 | Class |
| Juarez,Veronica Kimberly | 110490 | MCO Educational Series 10 | Class |
| CAMPOVERDE,MAYRA | 110490 | MCO Educational Series 10 | Class |
| CAMPOVERDE,MAYRA | 110490 | MCO Educational Series 10 | Class |
| reyes,daniela | 110490 | MCO Educational Series 10 | Class |
| Strickland,Enoch | 110490 | MCO Educational Series 10 | Class |
| Rivera,Anthony | 110490 | MCO Educational Series 10 | Class |
| Vilchis,Rochelle | 110490 | MCO Educational Series 10 | Class |
| Tapia,Briana | 110490 | MCO Educational Series 10 | Class |
| Garcia,Keila Brigitte | 110490 | MCO Educational Series 10 | Class |
| Warren,Allan | 110490 | MCO Educational Series 10 | Class |
| Scott,Timothy Denzel | 110490 | MCO Educational Series 10 | Class |
| Cheese,Oholando | 110490 | MCO Educational Series 10 | Class |
| Denora,Kyle | 110490 | MCO Educational Series 10 | Class |
| Molina Mendoza,Karen | 110490 | MCO Educational Series 10 | Class |
| Juarez,Gisselle Roseli | 110490 | MCO Educational Series 10 | Class |
| Carlson,Robert | 110490 | MCO Educational Series 10 | Class |
| Rodriguez,Giovanni | 110490 | MCO Educational Series 10 | Class |
| Emefiele,Felix Osar | 110490 | MCO Educational Series 10 | Class |
| goubran,Maged | 110490 | MCO Educational Series 10 | Class |
| Adoh,Djakaridja Ouattara | 110490 | MCO Educational Series 10 | Class |
| Irvine,Rebecca Nicole | 110490 | MCO Educational Series 10 | Class |
| Hamilton,Shantel | 110490 | MCO Educational Series 10 | Class |
| Jean Louis,Antoine Joachim | 110490 | MCO Educational Series 10 | Class |
| Mahmood,Qasim | 110490 | MCO Educational Series 10 | Class |
| McClendon,Deborah | 110490 | MCO Educational Series 10 | Class |
| K.,S. | 110490 | MCO Educational Series 10 | Class |
| Tran,TuyenDinh | 110490 | MCO Educational Series 10 | Class |
| Lund,Kenneth | 110490 | MCO Educational Series 10 | Class |
| White,Sierra | 110490 | MCO Educational Series 10 | Class |
| hoy,charles | 110490 | MCO Educational Series 10 | Class |
| Emsak,Matthew | 110490 | MCO Educational Series 10 | Class |
| Spivak,Maxim | 110490 | MCO Educational Series 10 | Class |
| Fu,Stephanie | 110490 | MCO Educational Series 10 | Class |
| nish,Jermaine | 110490 | MCO Educational Series 10 | Class |
| Tamay,Evelyn | 110490 | MCO Educational Series 10 | Class |
| Romero,Daniel | 110490 | MCO Educational Series 10 | Class |
| Wijesiri,Mithusha | 110490 | MCO Educational Series 10 | Class |
| Wijesiri,Mithusha | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gregoretti,Nick E | 110490 | MCO Educational Series 10 | Class |
| wilkerson,Wendy Elaine | 110490 | MCO Educational Series 10 | Class |
| Adeleye,Adebayo | 110490 | MCO Educational Series 10 | Class |
| delcid,Elsy C | 110490 | MCO Educational Series 10 | Class |
| Wernau,Matthew R | 110490 | MCO Educational Series 10 | Class |
| Ippolito,Milo | 110490 | MCO Educational Series 10 | Class |
| McGrier,Christopher | 110490 | MCO Educational Series 10 | Class |
| Holland-Ellegor,Skye | 110490 | MCO Educational Series 10 | Class |
| Muhammad,Isa | 110490 | MCO Educational Series 10 | Class |
| Muhammad,Isa | 110490 | MCO Educational Series 10 | Class |
| BROWN,DVASHAH | 110490 | MCO Educational Series 10 | Class |
| BROWN,DVASHAH | 110490 | MCO Educational Series 10 | Class |
| Akindutire,Ola | 110490 | MCO Educational Series 10 | Class |
| DK,Amir | 110490 | MCO Educational Series 10 | Class |
| Callinder,David Lloyd | 110490 | MCO Educational Series 10 | Class |
| abdushi,argtim | 110490 | MCO Educational Series 10 | Class |
| Ortega santos Sr,Eduardo A | 110490 | MCO Educational Series 10 | Class |
| Israel,Garnel | 110490 | MCO Educational Series 10 | Class |
| Israel,Garnel | 110490 | MCO Educational Series 10 | Class |
| Merard,Rolando | 110490 | MCO Educational Series 10 | Class |
| Perez,Luis | 110490 | MCO Educational Series 10 | Class |
| Lopez,Lillian | 110490 | MCO Educational Series 10 | Class |
| Diarra,Hassan | 110490 | MCO Educational Series 10 | Class |
| Schoentube,Steve | 110490 | MCO Educational Series 10 | Class |
| James,Jacqueline Chiquana | 110490 | MCO Educational Series 10 | Class |
| Ibrahim,Mostafa mahmoud | 110490 | MCO Educational Series 10 | Class |
| Ibrahim,Mostafa mahmoud | 110490 | MCO Educational Series 10 | Class |
| Johnson,Akiva | 110490 | MCO Educational Series 10 | Class |
| Saheed,Adams | 110490 | MCO Educational Series 10 | Class |
| Long,Sue M | 110490 | MCO Educational Series 10 | Class |
| Lawrence,Anneth | 110490 | MCO Educational Series 10 | Class |
| Cortes,Elmer | 110490 | MCO Educational Series 10 | Class |
| Marquez,Ferdinand | 110490 | MCO Educational Series 10 | Class |
| Perez Medina,Valentina | 110490 | MCO Educational Series 10 | Class |
| Perez Medina,Valentina | 110490 | MCO Educational Series 10 | Class |
| Perez Medina,Valentina | 110490 | MCO Educational Series 10 | Class |
| Monteith,Nickeda | 110490 | MCO Educational Series 10 | Class |
| Moore,Shirniece | 110490 | MCO Educational Series 10 | Class |
| Jubran,Monir | 110490 | MCO Educational Series 10 | Class |
| Malca,Anthony | 110490 | MCO Educational Series 10 | Class |
| Chery,Acaina | 110490 | MCO Educational Series 10 | Class |
| Evo,Nestor | 110490 | MCO Educational Series 10 | Class |
| MAC PHERSON,ALBERTO ALBERTO | 110490 | MCO Educational Series 10 | Class |
| Santos Alcala,Reinaldo | 110490 | MCO Educational Series 10 | Class |
| Jennings,Porsche | 110490 | MCO Educational Series 10 | Class |
| Lucero,Stephanie | 110490 | MCO Educational Series 10 | Class |
| Aybar Guzman,Adrialis | 110490 | MCO Educational Series 10 | Class |
| Wilson,Vaughn | 110490 | MCO Educational Series 10 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Matos,Megan | 110490 | MCO Educational Series 10 | Class |
| Ebisike,Linus A | 110490 | MCO Educational Series 10 | Class |
| Olsen,Ryan | 110490 | MCO Educational Series 10 | Class |
| Adelson,sondia | 110490 | MCO Educational Series 10 | Class |
| Adelson,sondia | 110490 | MCO Educational Series 10 | Class |
| M,Cat | 110490 | MCO Educational Series 10 | Class |
| Mangold,Howard a | 110490 | MCO Educational Series 10 | Class |
| Corneh,Nettee D . G | 110490 | MCO Educational Series 10 | Class |
| Cole,Vinnette L | 110490 | MCO Educational Series 10 | Class |
| Clarke,Dale | 110490 | MCO Educational Series 10 | Class |
| yin,yihua | 110490 | MCO Educational Series 10 | Class |
| D,Nessa | 110490 | MCO Educational Series 10 | Class |
| Pritchard,Kerri | 110490 | MCO Educational Series 10 | Class |
| Lue,Michael | 110490 | MCO Educational Series 10 | Class |
| Perkins,Keith | 110490 | MCO Educational Series 10 | Class |
| Afolabi,Oluwafemi Oladapo | 110490 | MCO Educational Series 10 | Class |
| Levine,Jake | 110490 | MCO Educational Series 10 | Class |
| Mitchell,Kayler | 110490 | MCO Educational Series 10 | Class |



INSTRUCTIONS TO **PRESENTER:**

Thanks for joining us today..

Introduce yourself by giving your **FIRST name** and how long you have worked at Amazon.

Let the audience know that you're a member of the Amazon Employee Relations Team and you're here to talk about an important topic today.

GC-36

**EXHIBIT NO.**_____  x **RECEIVED** _____ **REJECTED** _____

29-CA-280153 ET/AL               Amazon.Com Svs, LLC

**CASE NO** _____ **CASE NAME** _____

16            09-20-2022          Barrington Moxie

**NO OF PAGES** _____ **DATE:** _____ **REPORTER:** _____



**PRESENTER NOTE (NOT TO READ ALOUD)**: We are here to paint a picture for our associates. To ensure that they understand a union election will take place at JFK8 and understand how it works.

**PRESENTER TO READ:**

This session is part of an ongoing series to provide facts about unions and union elections.

Our intention is to help you ask, and answer, critical questions about the choice between union representation and continuing with our One Team relationship.

As a reminder, One Team isn't just a slogan, it is a commitment we make to each other and the power of One Team makes JFK8 a great place to work. We can continue to improve by working together directly, openly and honestly.



***PRESENTER TO READ:***

We're meeting with you again today as part of a series of meetings to provide you with the information you need to make a decision that's best for you in the upcoming election here at JFK8.

We appreciate your time; we are asking you for your time because we want to make sure you have **ALL OF** the facts to make an informed decision.

Thank you for your continued efforts that make JFK8 a great place to work and for your attention to this topic.

***Move to next slide***.

**What's Currently Happening At JFK8**

**We expect to have additional details regarding the election this week or next week.**

The National Labor Relations Board (NLRB) will be scheduling an election in the near future.

We are still awaiting details of when and how an election will take place, and we will keep you informed as we learn more in the coming days and weeks.

 **UNPACK IT**
GET THE FACTS ABOUT UNIONS

4 Privileged & Confidential

amazon STATEN ISLAND

**PRESENTER NOTE:**

**READ SLIDE ALOUD**

**READ THIS AFTER SLIDE**

What does this mean for you?

We are still awaiting the details of when and how an election will take place (including the voting method), and we will keep you updated in the coming days and weeks as we learn more. In the meantime, we want you to know that:

- We are committed to continuing to make JFK8 a great place to work.
- We will keep communicating directly with you. We believe our direct relationship between leaders and associates works best for everyone.
- We are proud of our amazing team at JFK8.

***Move to next slide***.

Amazon_000065



**PRESENTER READ BELOW:**

In order to prepare for an upcoming election, we want to keep you informed about how elections work and what you can expect. Let's talk a little about the election process.

Union elections are supervised by the National Labor Relations Board (NLRB), the government agency in charge of labor issues in the United States.

**READ SLIDE ALOUD – STEPS FROM LEFT TO RIGHT**.

***Move to next slide***.

Amazon_000066



**PRESENTER READ SLIDE ALOUD:**

*PRESENTER READ THIS NOW*

Let's break this down a little further… That means if only 100 people vote, and 51 vote in favor of joining a union, that small group of 51 people has just elected the union to represent thousands of employees, including those who didn't vote.

If elected, the union will represent all employees, not just those who voted.

All eligible associates should vote, or else you are letting someone else make the

Amazon_000067

decision for you.

**Move to the next slide.**

Amazon_000068



# Make Your Voice Heard

An election has significant and binding consequences if a union wins—therefore, it's **very important that you vote** when an election takes place.

Get all the facts before you decide how to vote.

UNPACK IT
GET THE FACTS ABOUT UNIONS

7 Privileged & Confidential

amazon STATEN ISLAND

**PRESENTER READ SLIDE ALOUD**

*READ BELOW NEXT:*

The choice you make will impact every Amazon employee, both today and for the foreseeable future.

You are making a choice not just for yourself and your family, but for your colleagues and likely the Amazon associates that work at JFK8 in the future.

We encourage you to be sure you have all the facts before you decide your vote.

We ask that you vote so your voice is heard. And vote NO.

**Not voting** only **helps the union get elected**.

*Move to next slide*.

Amazon_000069



**PRESENTER READ THE BELOW:**

Remember, you can still vote "no" to the union even if you signed an authorization card from the ALU.

Signing a card does not obligate you to vote "yes" to the union.

We encourage you to vote NO.

***Move to next slide***.

## What Happens If the ALU is Elected Here?



If the ALU wins, they will represent you—whether you voted for the union or not. Even if you didn't vote at all—they will be your representative.

*You can't opt out and __everyone__ must follow a contract once it's negotiated—even if you don't like what's in it.*



UNPACK IT
GET THE FACTS ABOUT UNIONS

9 Privileged & Confidential

amazon STATEN ISLAND

*READ SLIDE ALOUD*

Amazon_000071



**PRESENTER READ BELOW FIRST:**

Now let's talk a little deeper about union promises. When evaluating what the ALU and Amazon tell you, understand that statements and communications by a company are very carefully monitored.

**NEXT, READ BOX 1 and then add:**

Some of you have asked, the ALU is promising me $30 an hour, what is Amazon going to offer me?

The first thing you should know is that: the law does not give the company and the union the same rights when it comes to making promises during a union campaign.

Second, it is against the law for Amazon to make promises – or offer you something specific, like a raise – in order to convince you to vote against the union.

We have to keep the "status quo" – that means we have to keep everything the same during the election, and during negotiations if the union is voted in.

But the Union can make all kinds of promises—even promises it knows it cannot keep. That's just the way the law works.

The important thing for you to remember is that unions cannot guarantee improvements — in negotiations, neither side can force the other side into agreeing to something they don't want. And that means that no matter what the union says, they can't force Amazon to accept their proposals.

Remember to Ask **How**. Ask **how** they will keep their promises. And Ask **how** they can make guarantees.  The answer under the labor laws is: **they can't**.

Amazon_000073

## But Can the ALU Guarantee Its Promises?
### If the ALU is elected, it must negotiate with the company.

- With a union, terms and conditions of employment such as wages and benefits must be negotiated in good faith before changes can be made.
- This negotiation process is called collective bargaining. In negotiations, there are no guarantees.
- No one can predict the results of good-faith collective bargaining. You could end up with better, worse, or the same as you have today.

### *Ask "How?"*

 11 Privileged & Confidential 

**PRESENTER READ SLIDE AND STOP AFTER THE THIRD BULLET.**

**THEN ADD,**

That's why it is so important to ask questions of how the ALU will achieve what they may be promising to you. Ask "How?"

***Move to next slide.***

Amazon_000074

## Heads Up! Three Key Takeaways
**Remember, Amazon is committed to providing you information and respecting your right to decide.**

  

**Make sure you have the facts before making a decision** whether or not to support a union.

**Express Your Voice!** It's very important to vote when a union election takes place. Vote NO.

Unions can make a lot of promises to you, but there are **NO guarantees.**



12 Privileged & Confidential

**amazon** STATEN ISLAND

---

**READ THE BELOW FIRST:**

We know we are sharing a lot of information with you in a short period of time. We encourage you to talk with your managers, leaders, and HR/ER if you have any questions.

**READ THE SLIDE ALOUD:**

Thanks again for your time.

***Move to next slide***.

Amazon_000075

Thank You!
UNPACK IT
GET THE FACTS ABOUT UNIONS
13 Privileged & Confidential
amazon STATEN ISLAND



SLIDE 1

BREATHE

LOOK UP

Hi everyone, thank you for attending today's session!

My name is Charlotte and I have worked at Amazon for nearly 2 years now. As I'm sure you can hear I'm a little bit of a long way from home and I'm originally from the UK. This is my colleague Annie who is here to support me today in providing you all with some very important pieces of information.

We're part of the Amazon Employee Relations team to give you some important information and facts today.

We're here because the National Labor Relations Board (commonly referred to as the NLRB), who are the government agency in charge of labor issues in the United States, has decided that the ALU's petition at JFK8 is moving forward. There will likely be a union vote at some point in the near future at JFK8.

You may have heard conversations about some individuals who are advocating for representation by a group called the ALU and we're

EXHIBIT NO. GC-37 RECEIVED x REJECTED _____

CASE NO 29-CA-280153 ET/AL CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 15 DATE: 09-20-2022 REPORTER: Barrington Moxie

here today to ensure that you are armed with the full facts when making your decision if a vote does happen in the future.

We understand there is no ideal time for you to step away from your work, but we are asking you for your time because we want to make sure you have all of the facts which will you make an informed decision.

Slide 2:



INSTRUCTIONS TO PRESENTER:

**Presenter to Read:**

This session is part of our series to help unpack and provide facts about unions. Last week, we discussed "What is a union?, What is the ALU? And to do your own research."

To Recap, a union is an outside organization that wants to represent employees and speak on their behalf on all matters of their employment, including wages, benefits and work rules.

The ALU is a newly formed group that is trying to represent Amazon associates here at JFK8 in Staten Island. Please do not be misled by the name, The ALU has no affiliation with Amazon and they have no special access or influence with Amazon.

***Move to next slide***.

Slide 3



**PRESENTER NOTE:**

**READ SLIDE ALOUD**

**READ THIS AFTER SLIDE**

What does this mean for you?

We are still awaiting the details of when and how an election will take place (including the voting method), and we will keep you updated in the coming days and weeks as we learn more. In the meantime, we want you to know that:

- We are committed to continuing to make JFK8 a great place to work.

- We will keep communicating directly with you. We believe our direct relationship between leaders and associates works best for everyone.

- We are proud of our amazing team at JFK8.

***Move to next slide***.

Slide 4



We're meeting with you again today as part of a series of meetings to provide you with the information you need to make a decision that's best for you in the upcoming election here at JFK8.

We appreciate your time; we are asking you for your time because we want to make sure you have **ALL OF** the facts to make an informed decision.

Thank you for your continued efforts that make JFK8 a great place to work and for your attention to this topic.

Slide 5



We are here to paint a picture for our associates. To ensure that they understand a union election will take place at JFK8 and understand how it works.

This session is part of an ongoing series to provide facts about unions and union elections.

Our intention is to help you ask, and answer, critical questions about the choice between union representation and continuing with our One Team relationship.

As a reminder, One Team isn't just a slogan, it is a commitment we make to each other and the power of One Team makes JFK8 a great place to work. We can continue to improve by working together directly, openly and honestly.

Slide 5:



In order to prepare for an upcoming election, we want to keep you informed about how elections work and what you can expect. Let's talk a little about the election process.

Union elections are supervised by the National Labor Relations Board (NLRB), the government agency in charge of labor issues in the United States.

**READ SLIDE ALOUD – STEPS FROM LEFT TO RIGHT**.

Slide 6:



**Slide 7:**

*Read slide*

*READ THIS NOW*

Let's break this down a little further… That means if only 100 people vote, and 51 vote in favor of joining a union, that small group of 51 people has just elected the union to represent thousands of employees, including those who didn't vote.

If elected, the union will represent all employees, not just those who voted.

All eligible associates should vote, or else you are letting someone else make the decision for you.

Slide 8:

Amazon_000084



**READ SLIDE**

*READ BELOW NEXT:*

The choice you make will impact every Amazon employee, both today and for the foreseeable future.

You are making a choice not just for yourself and your family, but for your colleagues and likely the Amazon associates that work at JFK8 in the future.

We encourage you to be sure you have all the facts before you decide your vote.

We ask that you vote so your voice is heard. And vote NO.

**Not voting** only **helps the union get elected**.



**Slide 9:**

Remember, you can still vote "no" to the union even if you signed an authorization card from the ALU.

Signing a card does not obligate you to vote "yes" to the union.

We encourage you to vote NO.

Slide 10:





So now, let's go into a little bit more detail about union promises.

Slide 11:



**PRESENTER READ BELOW FIRST:**

Now let's talk a little deeper about union promises. When evaluating what the ALU and Amazon tell you, understand that statements and communications by a company are very carefully monitored.

**NEXT, READ BOX 1 and then add:**

Some of you have asked, the ALU is promising me $30 an hour, what is Amazon going to offer me?

The first thing you should know is that: the law does not give the company and the union the same rights when it comes to making promises during a union campaign.

Second, it is against the law for Amazon to make promises – or offer you something specific, like a raise – in order to convince you to vote against the union.

We have to keep the "status quo" – that means we have to keep everything the same during the election, and during negotiations if the union is voted in.

But the Union can make all kinds of promises—even promises it knows it cannot keep. That's just the way the law works.

The important thing for you to remember is that unions cannot guarantee improvements — in negotiations, neither side can force the other side into agreeing to something they don't want. And that means that no matter what the union says, they can't force Amazon to accept their proposals.

Remember to Ask **How**. Ask **how** they will keep their promises. And Ask **how** they can make guarantees.  The answer under the labor laws is: **they can't**.

Slide 12:



**But Can the ALU Guarantee Its Promises?**
**If the ALU is elected, it must negotiate with the company.**

- With a union, terms and conditions of employment such as wages and benefits must be negotiated in good faith before changes can be made.
- This negotiation process is called collective bargaining. In negotiations, there are no guarantees.
- No one can predict the results of good-faith collective bargaining. You could end up with better, worse, or the same as you have today.

*Ask "How?"*



UNPACK IT    11 Privileged & Confidential    amazon STATEN ISLAND

**PRESENTER READ SLIDE AND STOP AFTER THE THIRD BULLET.**

**THEN ADD,**

That's why it is so important to ask questions of how the ALU will achieve what they may be promising to you. Ask "How?"

***Move to next slide***.

Slide 13:



**READ THE BELOW FIRST:**

We know we are sharing a lot of information with you in a short period of time. We encourage you to talk with your managers, leaders, and HR/ER if you have any questions.

**READ THE SLIDE ALOUD:**

Thanks again for your time.

***Move to next slide***.

Slide 14:



| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Rosa,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Zuniga,Irving | 115237 | JFK8 Education Session Part 3 | Class |
| PINA ARIAS,EVELYN | 115237 | JFK8 Education Session Part 3 | Class |
| DeCarlo,Stephen | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Clarise | 115237 | JFK8 Education Session Part 3 | Class |
| Salifu,Abdul Rasheed | 115237 | JFK8 Education Session Part 3 | Class |
| martin-taylor,latoya | 115237 | JFK8 Education Session Part 3 | Class |
| martin-taylor,latoya | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Nigah Dante | 115237 | JFK8 Education Session Part 3 | Class |
| Tirado-Bonilla,Andres Alexis | 115237 | JFK8 Education Session Part 3 | Class |
| Abeykoon,Udeni | 115237 | JFK8 Education Session Part 3 | Class |
| Despiau,Nick | 115237 | JFK8 Education Session Part 3 | Class |
| Haylock,Nicole Aretha | 115237 | JFK8 Education Session Part 3 | Class |
| newcombe,justin | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez Lainez,Adrian | 115237 | JFK8 Education Session Part 3 | Class |
| sanguinetti,michael | 115237 | JFK8 Education Session Part 3 | Class |
| Ramos,Conrado | 115237 | JFK8 Education Session Part 3 | Class |
| salvatierra,frank | 115237 | JFK8 Education Session Part 3 | Class |
| Cioffi,Pasquale | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Marquis | 115237 | JFK8 Education Session Part 3 | Class |
| Colon,Hector | 115237 | JFK8 Education Session Part 3 | Class |
| Eller,Andrew C | 115237 | JFK8 Education Session Part 3 | Class |
| Audate,Judeline | 115237 | JFK8 Education Session Part 3 | Class |
| Banneheke,Chameen S | 115237 | JFK8 Education Session Part 3 | Class |
| Kanzler,Jean | 115237 | JFK8 Education Session Part 3 | Class |
| Kanzler,Jean | 115237 | JFK8 Education Session Part 3 | Class |
| Bouzidi,Khadidja | 115237 | JFK8 Education Session Part 3 | Class |
| Saunders,Rohan | 115237 | JFK8 Education Session Part 3 | Class |
| Tlatenchi,Jasmine | 115237 | JFK8 Education Session Part 3 | Class |
| Guillaume,Phiona | 115237 | JFK8 Education Session Part 3 | Class |
| Quinones,Akilah | 115237 | JFK8 Education Session Part 3 | Class |
| Kelley,Josh Elijah | 115237 | JFK8 Education Session Part 3 | Class |
| Hardison,Shenel | 115237 | JFK8 Education Session Part 3 | Class |
| Belony,Joel | 115237 | JFK8 Education Session Part 3 | Class |
| Maldonado,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Adjei,Bismark Kwaku | 115237 | JFK8 Education Session Part 3 | Class |
| MENSAH,DAVID | 115237 | JFK8 Education Session Part 3 | Class |
| Domeus,Madai | 115237 | JFK8 Education Session Part 3 | Class |
| Blount,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,Lelissa Rafaela | 115237 | JFK8 Education Session Part 3 | Class |
| Oxilien,Wilky | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Jonathan Bryce | 115237 | JFK8 Education Session Part 3 | Class |
| Moctezuma,Victoria Mary | 115237 | JFK8 Education Session Part 3 | Class |
| Kress,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Diadina | 115237 | JFK8 Education Session Part 3 | Class |
| Babb,Halle Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Acosta,Wallington Alberto | 115237 | JFK8 Education Session Part 3 | Class |
| Delacruz,Christian Jovanny | 115237 | JFK8 Education Session Part 3 | Class |
| James,Kayhlia Kimona | 115237 | JFK8 Education Session Part 3 | Class |

GC-38

EXHIBIT NO._____ RECEIVED _____ x REJECTED _____

29-CA-280153 ET/AL                    Amazon.Com Svs, LLC

CASE NO _____ CASE NAME _____

102                09-20-2022            Barrington Moxie

NO OF PAGES _____ DATE: _____ REPORTER: _____

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Steinman,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Merone,Jean nicaisse | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Amerigo | 115237 | JFK8 Education Session Part 3 | Class |
| Gilliard,Betty | 115237 | JFK8 Education Session Part 3 | Class |
| Amos,Logan | 115237 | JFK8 Education Session Part 3 | Class |
| Khalil,Maher | 115237 | JFK8 Education Session Part 3 | Class |
| Mendenhall,Antoine James | 115237 | JFK8 Education Session Part 3 | Class |
| cardoso,jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Olmedo,Sandra | 115237 | JFK8 Education Session Part 3 | Class |
| Habashy,George | 115237 | JFK8 Education Session Part 3 | Class |
| Shamku,Aida | 115237 | JFK8 Education Session Part 3 | Class |
| Sherif,Masalan | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Aj | 115237 | JFK8 Education Session Part 3 | Class |
| Auyeung,Kam | 115237 | JFK8 Education Session Part 3 | Class |
| Soteco,Vergel Gino | 115237 | JFK8 Education Session Part 3 | Class |
| Yevdeyev,Yaakov | 115237 | JFK8 Education Session Part 3 | Class |
| Coffey,Jessica Taylor | 115237 | JFK8 Education Session Part 3 | Class |
| toney nobrega,crystal | 115237 | JFK8 Education Session Part 3 | Class |
| Oscar,Rodney | 115237 | JFK8 Education Session Part 3 | Class |
| Carreon,Ricky | 115237 | JFK8 Education Session Part 3 | Class |
| Nava,Javi | 115237 | JFK8 Education Session Part 3 | Class |
| Nava,Javi | 115237 | JFK8 Education Session Part 3 | Class |
| Bynoe,Sean | 115237 | JFK8 Education Session Part 3 | Class |
| Basurto,Lionel | 115237 | JFK8 Education Session Part 3 | Class |
| Bolanos,Alberto | 115237 | JFK8 Education Session Part 3 | Class |
| Mendez,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Molina,Leonel A | 115237 | JFK8 Education Session Part 3 | Class |
| Celius,Goy | 115237 | JFK8 Education Session Part 3 | Class |
| Lawrence,Raymond | 115237 | JFK8 Education Session Part 3 | Class |
| Ramirez,Zoraida | 115237 | JFK8 Education Session Part 3 | Class |
| Zaalman,Deborah | 115237 | JFK8 Education Session Part 3 | Class |
| WATKINS,THERESA | 115237 | JFK8 Education Session Part 3 | Class |
| Dudley,Kirk Jamal | 115237 | JFK8 Education Session Part 3 | Class |
| Banker,Nirav | 115237 | JFK8 Education Session Part 3 | Class |
| Feliciano,Justyn | 115237 | JFK8 Education Session Part 3 | Class |
| Lugo-mora,Maria A | 115237 | JFK8 Education Session Part 3 | Class |
| Sepulveda,Barry | 115237 | JFK8 Education Session Part 3 | Class |
| Sepulveda,Barry | 115237 | JFK8 Education Session Part 3 | Class |
| Fletcher Lawal,Faridah | 115237 | JFK8 Education Session Part 3 | Class |
| Melendez,Isaiah | 115237 | JFK8 Education Session Part 3 | Class |
| Ali,Tae | 115237 | JFK8 Education Session Part 3 | Class |
| turner,lauren | 115237 | JFK8 Education Session Part 3 | Class |
| Itanola,Abiodun | 115237 | JFK8 Education Session Part 3 | Class |
| pompeo,marc | 115237 | JFK8 Education Session Part 3 | Class |
| Maniscalco,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Robi Joulaus | 115237 | JFK8 Education Session Part 3 | Class |
| Zavala,Alvaro | 115237 | JFK8 Education Session Part 3 | Class |
| Peh,Shelley Laifong | 115237 | JFK8 Education Session Part 3 | Class |
| Sinclair,Kitt-Carson | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Mostafa,Ahmed | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Malik | 115237 | JFK8 Education Session Part 3 | Class |
| Caballero,victor | 115237 | JFK8 Education Session Part 3 | Class |
| Caballero,victor | 115237 | JFK8 Education Session Part 3 | Class |
| Hunter,Ariana | 115237 | JFK8 Education Session Part 3 | Class |
| Fenner,Eric Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Lai,Mike | 115237 | JFK8 Education Session Part 3 | Class |
| Kinard,Yuhurn Dion | 115237 | JFK8 Education Session Part 3 | Class |
| Belmonte,Marisa Anne | 115237 | JFK8 Education Session Part 3 | Class |
| Curto,Lisa | 115237 | JFK8 Education Session Part 3 | Class |
| Kragbe,Bogui | 115237 | JFK8 Education Session Part 3 | Class |
| Smoak,Samuel R | 115237 | JFK8 Education Session Part 3 | Class |
| Medina,Christopher Henry | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Michael h | 115237 | JFK8 Education Session Part 3 | Class |
| eminowon,rose | 115237 | JFK8 Education Session Part 3 | Class |
| Coleman,waketa D | 115237 | JFK8 Education Session Part 3 | Class |
| Clark,Terica L | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Jesusa | 115237 | JFK8 Education Session Part 3 | Class |
| Rosario,Yudelka | 115237 | JFK8 Education Session Part 3 | Class |
| Luc,Ray | 115237 | JFK8 Education Session Part 3 | Class |
| Pincay,Laura | 115237 | JFK8 Education Session Part 3 | Class |
| Ford,Furquan | 115237 | JFK8 Education Session Part 3 | Class |
| McBride,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Caccese,John | 115237 | JFK8 Education Session Part 3 | Class |
| Huerta,Javier | 115237 | JFK8 Education Session Part 3 | Class |
| Blake,Isaac | 115237 | JFK8 Education Session Part 3 | Class |
| Simmons,Steven | 115237 | JFK8 Education Session Part 3 | Class |
| Bailey,Thaddeus | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Alesha | 115237 | JFK8 Education Session Part 3 | Class |
| Odenore,Joshua | 115237 | JFK8 Education Session Part 3 | Class |
| Grasso,Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Hueyopa,Cristhian | 115237 | JFK8 Education Session Part 3 | Class |
| Lewis,Thomas | 115237 | JFK8 Education Session Part 3 | Class |
| Rasool,Rahma | 115237 | JFK8 Education Session Part 3 | Class |
| Miranda,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Vidals,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Samios,Konstantine | 115237 | JFK8 Education Session Part 3 | Class |
| Cholula,Ezequiel | 115237 | JFK8 Education Session Part 3 | Class |
| Mack,Haysha | 115237 | JFK8 Education Session Part 3 | Class |
| Ratnavasagam,Muralitharan Murali | 115237 | JFK8 Education Session Part 3 | Class |
| Phillips,Savion | 115237 | JFK8 Education Session Part 3 | Class |
| Pinkard,Lynn | 115237 | JFK8 Education Session Part 3 | Class |
| Pagtalunan,Dexter | 115237 | JFK8 Education Session Part 3 | Class |
| Monds,Itonday | 115237 | JFK8 Education Session Part 3 | Class |
| Okyere,Othniel | 115237 | JFK8 Education Session Part 3 | Class |
| Rosenblum,Matthew L | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Trinity | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ortega,P Polo | 115237 | JFK8 Education Session Part 3 | Class |
| Anderson,Vytalia | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Gary | 115237 | JFK8 Education Session Part 3 | Class |
| Ross,Gordon | 115237 | JFK8 Education Session Part 3 | Class |
| KHURTSILAVA,Iiana | 115237 | JFK8 Education Session Part 3 | Class |
| hernandez,jose amado | 115237 | JFK8 Education Session Part 3 | Class |
| Mulia,John Stephen Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Darbouze,Rod | 115237 | JFK8 Education Session Part 3 | Class |
| hickey,thomas | 115237 | JFK8 Education Session Part 3 | Class |
| Bautista,Joe | 115237 | JFK8 Education Session Part 3 | Class |
| Saavedra,Sandra | 115237 | JFK8 Education Session Part 3 | Class |
| Snyder,Debra | 115237 | JFK8 Education Session Part 3 | Class |
| Rijos,Dy maira | 115237 | JFK8 Education Session Part 3 | Class |
| Conyers,Edward | 115237 | JFK8 Education Session Part 3 | Class |
| Martin,Jamel | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Jasmine | 115237 | JFK8 Education Session Part 3 | Class |
| CARRENARD,JEAN-MICHEL | 115237 | JFK8 Education Session Part 3 | Class |
| Donaldson,Emmanuel Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Washington,James | 115237 | JFK8 Education Session Part 3 | Class |
| OSIYEMI,OSIBAYO | 115237 | JFK8 Education Session Part 3 | Class |
| OSIYEMI,OSIBAYO | 115237 | JFK8 Education Session Part 3 | Class |
| Marin,Katherine | 115237 | JFK8 Education Session Part 3 | Class |
| Charpentier,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Vicki | 115237 | JFK8 Education Session Part 3 | Class |
| Tutiven,Catalina | 115237 | JFK8 Education Session Part 3 | Class |
| Tompkins,Desiree | 115237 | JFK8 Education Session Part 3 | Class |
| Griggs,Willie | 115237 | JFK8 Education Session Part 3 | Class |
| Hye,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Vidals-Perez,Nancy | 115237 | JFK8 Education Session Part 3 | Class |
| williams,jahkima | 115237 | JFK8 Education Session Part 3 | Class |
| Samaha,Basel | 115237 | JFK8 Education Session Part 3 | Class |
| Holliday,Nyesha | 115237 | JFK8 Education Session Part 3 | Class |
| Rawlins,Keeton | 115237 | JFK8 Education Session Part 3 | Class |
| Harris,Tyeshawn | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| De La Cruz,Ana M | 115237 | JFK8 Education Session Part 3 | Class |
| Hollins,Joy S | 115237 | JFK8 Education Session Part 3 | Class |
| taylor,tyrone dwight | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Mary | 115237 | JFK8 Education Session Part 3 | Class |
| Omar,M | 115237 | JFK8 Education Session Part 3 | Class |
| Stuart,Renaldo | 115237 | JFK8 Education Session Part 3 | Class |
| Phillips,Rishon | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Raniesha | 115237 | JFK8 Education Session Part 3 | Class |
| Tucker,Markita | 115237 | JFK8 Education Session Part 3 | Class |
| Azmy,Roumany | 115237 | JFK8 Education Session Part 3 | Class |
| Maitre,Turenne | 115237 | JFK8 Education Session Part 3 | Class |
| Dutan,Oscar | 115237 | JFK8 Education Session Part 3 | Class |
| forrest,diamond | 115237 | JFK8 Education Session Part 3 | Class |
| Silya,Saihou | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Rojas,Josh | 115237 | JFK8 Education Session Part 3 | Class |
| Sevilla,Selena | 115237 | JFK8 Education Session Part 3 | Class |
| vargas,marcos | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Cristal | 115237 | JFK8 Education Session Part 3 | Class |
| Dominguez,Asherree | 115237 | JFK8 Education Session Part 3 | Class |
| awaal,mohammad abdul | 115237 | JFK8 Education Session Part 3 | Class |
| Cardone,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Arcaro,Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Tariq,Musarrat | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Kayla | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Key K | 115237 | JFK8 Education Session Part 3 | Class |
| Wheeler,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Barragan,Leslie | 115237 | JFK8 Education Session Part 3 | Class |
| Rosales,Viviana | 115237 | JFK8 Education Session Part 3 | Class |
| Gadsden-Cruz,Qyanna | 115237 | JFK8 Education Session Part 3 | Class |
| Florival,Melissa nehemie | 115237 | JFK8 Education Session Part 3 | Class |
| Pierre Paul,Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Ramsay,Ian | 115237 | JFK8 Education Session Part 3 | Class |
| Lalanne,Edwins | 115237 | JFK8 Education Session Part 3 | Class |
| Lalanne,Edwins | 115237 | JFK8 Education Session Part 3 | Class |
| Vendrell,Glorimar | 115237 | JFK8 Education Session Part 3 | Class |
| mascarelli,nicholas | 115237 | JFK8 Education Session Part 3 | Class |
| Irving,Julius | 115237 | JFK8 Education Session Part 3 | Class |
| Vialva-Hackney,Schlayna | 115237 | JFK8 Education Session Part 3 | Class |
| Doumbia,Bazoumana | 115237 | JFK8 Education Session Part 3 | Class |
| Tredici,Jody | 115237 | JFK8 Education Session Part 3 | Class |
| richards,essence | 115237 | JFK8 Education Session Part 3 | Class |
| Pol,Rob | 115237 | JFK8 Education Session Part 3 | Class |
| Galletta,Liesl | 115237 | JFK8 Education Session Part 3 | Class |
| Benoit,Yuliemmy | 115237 | JFK8 Education Session Part 3 | Class |
| Leman,Sumarni | 115237 | JFK8 Education Session Part 3 | Class |
| Osorio Alvarez,Edward | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Patrick | 115237 | JFK8 Education Session Part 3 | Class |
| St Louis,Brea | 115237 | JFK8 Education Session Part 3 | Class |
| Agbaje,Olufemi | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Angel | 115237 | JFK8 Education Session Part 3 | Class |
| Perera,Neville | 115237 | JFK8 Education Session Part 3 | Class |
| Osher,Abraham Nicholas | 115237 | JFK8 Education Session Part 3 | Class |
| ESTIME,Romane | 115237 | JFK8 Education Session Part 3 | Class |
| Vazquez,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Reid,Cathy | 115237 | JFK8 Education Session Part 3 | Class |
| bardales,lisbe | 115237 | JFK8 Education Session Part 3 | Class |
| Bello,Justen | 115237 | JFK8 Education Session Part 3 | Class |
| Ravonita,Ipuk | 115237 | JFK8 Education Session Part 3 | Class |
| Avila,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| Moore,Ricky | 115237 | JFK8 Education Session Part 3 | Class |
| Ellis,Shane | 115237 | JFK8 Education Session Part 3 | Class |
| Irizarry,Marissa Lia | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Humberto | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Barnett,Sarah | 115237 | JFK8 Education Session Part 3 | Class |
| Samuel Jr,Boysing | 115237 | JFK8 Education Session Part 3 | Class |
| Samuel Jr,Boysing | 115237 | JFK8 Education Session Part 3 | Class |
| Gerges,Kareem | 115237 | JFK8 Education Session Part 3 | Class |
| Fullerton,Nathanael | 115237 | JFK8 Education Session Part 3 | Class |
| Booker,Bristal | 115237 | JFK8 Education Session Part 3 | Class |
| Clinton,Khaliq | 115237 | JFK8 Education Session Part 3 | Class |
| Clinton,Khaliq | 115237 | JFK8 Education Session Part 3 | Class |
| Graves,Jamar | 115237 | JFK8 Education Session Part 3 | Class |
| amir,jahangir | 115237 | JFK8 Education Session Part 3 | Class |
| Findley,Shara S | 115237 | JFK8 Education Session Part 3 | Class |
| Findley,Shara S | 115237 | JFK8 Education Session Part 3 | Class |
| Nunez,Evan | 115237 | JFK8 Education Session Part 3 | Class |
| Mosley,Brianna | 115237 | JFK8 Education Session Part 3 | Class |
| rose,eddy | 115237 | JFK8 Education Session Part 3 | Class |
| Khan,Basit | 115237 | JFK8 Education Session Part 3 | Class |
| Allali,Btissam | 115237 | JFK8 Education Session Part 3 | Class |
| Slade,Tamika | 115237 | JFK8 Education Session Part 3 | Class |
| Tuttle,Carol A | 115237 | JFK8 Education Session Part 3 | Class |
| OYALAJA,ADEKUNLE ELIJAH | 115237 | JFK8 Education Session Part 3 | Class |
| Briggs,Tony | 115237 | JFK8 Education Session Part 3 | Class |
| Burgos,Branden W | 115237 | JFK8 Education Session Part 3 | Class |
| Vega,Gabriel | 115237 | JFK8 Education Session Part 3 | Class |
| P,Jerome | 115237 | JFK8 Education Session Part 3 | Class |
| Christian,Emily | 115237 | JFK8 Education Session Part 3 | Class |
| Richardson,Stephon | 115237 | JFK8 Education Session Part 3 | Class |
| Landaverde,Mario R | 115237 | JFK8 Education Session Part 3 | Class |
| De La Cruz,Ivan Alberto | 115237 | JFK8 Education Session Part 3 | Class |
| garcia filpo,ismaury d | 115237 | JFK8 Education Session Part 3 | Class |
| Cabral Reyes,Alicia | 115237 | JFK8 Education Session Part 3 | Class |
| Criollo,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Hussein,Noura | 115237 | JFK8 Education Session Part 3 | Class |
| Benavidez,Miguel | 115237 | JFK8 Education Session Part 3 | Class |
| Acevedo,Joshua Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell,Tatyana | 115237 | JFK8 Education Session Part 3 | Class |
| Denoto,Rick A | 115237 | JFK8 Education Session Part 3 | Class |
| Delicia-King,Sarah | 115237 | JFK8 Education Session Part 3 | Class |
| Rhodes,Geo | 115237 | JFK8 Education Session Part 3 | Class |
| Rhodes,Geo | 115237 | JFK8 Education Session Part 3 | Class |
| Zavala-Tula,Adriana | 115237 | JFK8 Education Session Part 3 | Class |
| OKEREKE,BENSON CHIMEZIE | 115237 | JFK8 Education Session Part 3 | Class |
| abdusi,herolina | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Darryl | 115237 | JFK8 Education Session Part 3 | Class |
| Musto,Peter | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Brendan | 115237 | JFK8 Education Session Part 3 | Class |
| cruzado,angel | 115237 | JFK8 Education Session Part 3 | Class |
| Beal,Remeeka | 115237 | JFK8 Education Session Part 3 | Class |
| Kanevsky,Howard | 115237 | JFK8 Education Session Part 3 | Class |
| Jean Toussaint,Friedler | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Legrand,Shaneka M | 115237 | JFK8 Education Session Part 3 | Class |
| Holder,Shari | 115237 | JFK8 Education Session Part 3 | Class |
| Matthews,Diamond | 115237 | JFK8 Education Session Part 3 | Class |
| Matthews,Diamond | 115237 | JFK8 Education Session Part 3 | Class |
| Gargiulo,Salvatore | 115237 | JFK8 Education Session Part 3 | Class |
| Price,Justin | 115237 | JFK8 Education Session Part 3 | Class |
| Kristiansen,Angelica | 115237 | JFK8 Education Session Part 3 | Class |
| Leonard,Christina | 115237 | JFK8 Education Session Part 3 | Class |
| Rouse,Tanisha | 115237 | JFK8 Education Session Part 3 | Class |
| Gill,Malik | 115237 | JFK8 Education Session Part 3 | Class |
| Braithwaite,Imani Reed | 115237 | JFK8 Education Session Part 3 | Class |
| Aguirre,Noemi | 115237 | JFK8 Education Session Part 3 | Class |
| Aguirre,Noemi | 115237 | JFK8 Education Session Part 3 | Class |
| Diarrassouba,Djakaridja | 115237 | JFK8 Education Session Part 3 | Class |
| Cherry,Sarah | 115237 | JFK8 Education Session Part 3 | Class |
| Mitchell,Amaya | 115237 | JFK8 Education Session Part 3 | Class |
| MAPP,TYRIQ | 115237 | JFK8 Education Session Part 3 | Class |
| Louissaint,Wanchelove | 115237 | JFK8 Education Session Part 3 | Class |
| Waller,Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Asiedu,Josephine | 115237 | JFK8 Education Session Part 3 | Class |
| Himm,Rachel A | 115237 | JFK8 Education Session Part 3 | Class |
| Laprea,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| asprilla,rebekha | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez Diaz,Janet | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Hardwrick | 115237 | JFK8 Education Session Part 3 | Class |
| mutahar,khadejah | 115237 | JFK8 Education Session Part 3 | Class |
| Lerotholi,Bernadette | 115237 | JFK8 Education Session Part 3 | Class |
| Lerotholi,Bernadette | 115237 | JFK8 Education Session Part 3 | Class |
| Liqiania,Skye | 115237 | JFK8 Education Session Part 3 | Class |
| IROGO,Michel Olivier | 115237 | JFK8 Education Session Part 3 | Class |
| Christie,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Cissi,Kadeim | 115237 | JFK8 Education Session Part 3 | Class |
| Cissi,Kadeim | 115237 | JFK8 Education Session Part 3 | Class |
| Uzoagba,Godwin I | 115237 | JFK8 Education Session Part 3 | Class |
| Marrow,Mark | 115237 | JFK8 Education Session Part 3 | Class |
| Mana,Yasmine | 115237 | JFK8 Education Session Part 3 | Class |
| Trzaskoma,Agnieszka | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Gueye,Fallou | 115237 | JFK8 Education Session Part 3 | Class |
| Buansi,Akwasi | 115237 | JFK8 Education Session Part 3 | Class |
| Crespo,Manuela | 115237 | JFK8 Education Session Part 3 | Class |
| Estrada,Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Hairston,Jonathan Wavy | 115237 | JFK8 Education Session Part 3 | Class |
| Haider,Faizan | 115237 | JFK8 Education Session Part 3 | Class |
| Lett,John | 115237 | JFK8 Education Session Part 3 | Class |
| Rosales,Elga | 115237 | JFK8 Education Session Part 3 | Class |
| Henry,Christen | 115237 | JFK8 Education Session Part 3 | Class |
| Henry,Christen | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| appiah,mike | 115237 | JFK8 Education Session Part 3 | Class |
| Saunders,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Li,Tingfeng | 115237 | JFK8 Education Session Part 3 | Class |
| James,Gregory Oswald | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez de Guzman,Saira | 115237 | JFK8 Education Session Part 3 | Class |
| Ossman,Ahmed | 115237 | JFK8 Education Session Part 3 | Class |
| Santero,Tabatha | 115237 | JFK8 Education Session Part 3 | Class |
| perkins,jada | 115237 | JFK8 Education Session Part 3 | Class |
| Adeojo,Oluwagbenga Ibidapo | 115237 | JFK8 Education Session Part 3 | Class |
| Abouhegab,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Yan-Gianna,Vivian | 115237 | JFK8 Education Session Part 3 | Class |
| Peterson,Elisha | 115237 | JFK8 Education Session Part 3 | Class |
| verdiner,john | 115237 | JFK8 Education Session Part 3 | Class |
| Barragan,Jair | 115237 | JFK8 Education Session Part 3 | Class |
| Gaussaint,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Watley,Yakiva | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Estella F | 115237 | JFK8 Education Session Part 3 | Class |
| Lloyd,Ruebena | 115237 | JFK8 Education Session Part 3 | Class |
| Mendoza Cruz,Janet | 115237 | JFK8 Education Session Part 3 | Class |
| Pena Marte,Oscar Adolfo | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Davon | 115237 | JFK8 Education Session Part 3 | Class |
| Nieves,Tiffany | 115237 | JFK8 Education Session Part 3 | Class |
| Razk,Osama | 115237 | JFK8 Education Session Part 3 | Class |
| YE,JIEYI | 115237 | JFK8 Education Session Part 3 | Class |
| Cohen,Matt | 115237 | JFK8 Education Session Part 3 | Class |
| Ferreira,Margarita | 115237 | JFK8 Education Session Part 3 | Class |
| cupul,natalia e | 115237 | JFK8 Education Session Part 3 | Class |
| Nash,Lucille | 115237 | JFK8 Education Session Part 3 | Class |
| Olaleye,Monijesu | 115237 | JFK8 Education Session Part 3 | Class |
| Dervishaj,Ilirian | 115237 | JFK8 Education Session Part 3 | Class |
| DOMINGUEZ MENDOZA,ISMAEL | 115237 | JFK8 Education Session Part 3 | Class |
| Racanello,Sirisak | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Carmen | 115237 | JFK8 Education Session Part 3 | Class |
| Lugo,Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| Lugo,Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| Ortega,Evelin | 115237 | JFK8 Education Session Part 3 | Class |
| Brar,Ilene | 115237 | JFK8 Education Session Part 3 | Class |
| Cedeno,Emely | 115237 | JFK8 Education Session Part 3 | Class |
| page,lashana | 115237 | JFK8 Education Session Part 3 | Class |
| Eloiymania,Megie | 115237 | JFK8 Education Session Part 3 | Class |
| Lara Montalvo,Sonia | 115237 | JFK8 Education Session Part 3 | Class |
| Alcivar,Nydia Luisa | 115237 | JFK8 Education Session Part 3 | Class |
| Mcclinton,Cia | 115237 | JFK8 Education Session Part 3 | Class |
| BONOLA RIVERA,VERONICA | 115237 | JFK8 Education Session Part 3 | Class |
| Farina,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzales,Mae | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzales,Mae | 115237 | JFK8 Education Session Part 3 | Class |
| Francis,Jocelyn | 115237 | JFK8 Education Session Part 3 | Class |
| Frederick,Sylvie | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Nicholson,Paris | 115237 | JFK8 Education Session Part 3 | Class |
| Cashie,Gino | 115237 | JFK8 Education Session Part 3 | Class |
| Cambrelen,Aliza | 115237 | JFK8 Education Session Part 3 | Class |
| Hassan,Mona AbdElzaher | 115237 | JFK8 Education Session Part 3 | Class |
| Delancy,Kymmyka | 115237 | JFK8 Education Session Part 3 | Class |
| Castillo,Nadine | 115237 | JFK8 Education Session Part 3 | Class |
| Engebretsen,Rhiannon | 115237 | JFK8 Education Session Part 3 | Class |
| Benjamin,Damara | 115237 | JFK8 Education Session Part 3 | Class |
| Cambrelen,Amanda | 115237 | JFK8 Education Session Part 3 | Class |
| Kariche,Abdelmalek | 115237 | JFK8 Education Session Part 3 | Class |
| Khamis,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Jules,Jamie J | 115237 | JFK8 Education Session Part 3 | Class |
| Navarro,Snnyase Anaid | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Pablo Luis | 115237 | JFK8 Education Session Part 3 | Class |
| Albasir,Yousef | 115237 | JFK8 Education Session Part 3 | Class |
| Byam,Letish | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Foster,Nakeeyia | 115237 | JFK8 Education Session Part 3 | Class |
| Oxford,Clarence M | 115237 | JFK8 Education Session Part 3 | Class |
| Fowler,Shawnetta | 115237 | JFK8 Education Session Part 3 | Class |
| Noze,Magda | 115237 | JFK8 Education Session Part 3 | Class |
| Laona,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Usman,Raja | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Orellana,Marissa | 115237 | JFK8 Education Session Part 3 | Class |
| Przybyszewski,Danielle | 115237 | JFK8 Education Session Part 3 | Class |
| Valdes Jimenez,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Lugo,Gregory | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Reggie | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Aaliyah | 115237 | JFK8 Education Session Part 3 | Class |
| Held,Cori | 115237 | JFK8 Education Session Part 3 | Class |
| Titus,Sondra J | 115237 | JFK8 Education Session Part 3 | Class |
| Titus,Sondra J | 115237 | JFK8 Education Session Part 3 | Class |
| Sillah,Fatouma | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Tavejsha | 115237 | JFK8 Education Session Part 3 | Class |
| Martin,Diamond | 115237 | JFK8 Education Session Part 3 | Class |
| Muruye,Gilbert | 115237 | JFK8 Education Session Part 3 | Class |
| Fortuna,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| George,Reba | 115237 | JFK8 Education Session Part 3 | Class |
| Ramsey,Richard Paul | 115237 | JFK8 Education Session Part 3 | Class |
| STEWART,ISAIAH | 115237 | JFK8 Education Session Part 3 | Class |
| Estevez,Eduardo | 115237 | JFK8 Education Session Part 3 | Class |
| Worme,terrell | 115237 | JFK8 Education Session Part 3 | Class |
| Hettiarachchige Don,Pulasthi Pasan Hettiarachchi | 115237 | JFK8 Education Session Part 3 | Class |
| Ferril,Rakeem | 115237 | JFK8 Education Session Part 3 | Class |
| Patton-Villanueva,Yalicia Solei | 115237 | JFK8 Education Session Part 3 | Class |
| Kalo,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Di Stefano,John C | 115237 | JFK8 Education Session Part 3 | Class |
| Jean pierre,Jacques | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| eastman,romaine | 115237 | JFK8 Education Session Part 3 | Class |
| Paloli,Gary | 115237 | JFK8 Education Session Part 3 | Class |
| Nelson,Ryan | 115237 | JFK8 Education Session Part 3 | Class |
| Wassif,Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| stanchich,linette | 115237 | JFK8 Education Session Part 3 | Class |
| Lugo,Linda | 115237 | JFK8 Education Session Part 3 | Class |
| YUNUSAH,BALIKISU | 115237 | JFK8 Education Session Part 3 | Class |
| Ramsey,Jene Labella | 115237 | JFK8 Education Session Part 3 | Class |
| Ramirez,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Landestoy Mora,Socrates | 115237 | JFK8 Education Session Part 3 | Class |
| Hamlett,Keon | 115237 | JFK8 Education Session Part 3 | Class |
| Vanholt,Darius | 115237 | JFK8 Education Session Part 3 | Class |
| Miller,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Husain,Tahir | 115237 | JFK8 Education Session Part 3 | Class |
| Kittel,Jake | 115237 | JFK8 Education Session Part 3 | Class |
| Menequin,Danny | 115237 | JFK8 Education Session Part 3 | Class |
| Alonso,Noel | 115237 | JFK8 Education Session Part 3 | Class |
| Redman,Valerie | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Johnny | 115237 | JFK8 Education Session Part 3 | Class |
| Bahamou,Soumia | 115237 | JFK8 Education Session Part 3 | Class |
| TORRES,MIRTA | 115237 | JFK8 Education Session Part 3 | Class |
| Burrja,Jurzan | 115237 | JFK8 Education Session Part 3 | Class |
| Perard,Stanley | 115237 | JFK8 Education Session Part 3 | Class |
| Poole,Keyshawn | 115237 | JFK8 Education Session Part 3 | Class |
| Manu,Monica | 115237 | JFK8 Education Session Part 3 | Class |
| Arnaud,Felix | 115237 | JFK8 Education Session Part 3 | Class |
| Wann,Hadiatou | 115237 | JFK8 Education Session Part 3 | Class |
| Cain,George | 115237 | JFK8 Education Session Part 3 | Class |
| Chen,Huanhua | 115237 | JFK8 Education Session Part 3 | Class |
| hall,Nicholas | 115237 | JFK8 Education Session Part 3 | Class |
| White,Zachary | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Luis Roberto | 115237 | JFK8 Education Session Part 3 | Class |
| kamran,syed M | 115237 | JFK8 Education Session Part 3 | Class |
| joseph,keion | 115237 | JFK8 Education Session Part 3 | Class |
| Marcano,Carina | 115237 | JFK8 Education Session Part 3 | Class |
| Melvin,Tasha | 115237 | JFK8 Education Session Part 3 | Class |
| McCain,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| west,jason | 115237 | JFK8 Education Session Part 3 | Class |
| Leggett,Jared | 115237 | JFK8 Education Session Part 3 | Class |
| ADOLPHE,WILBERT | 115237 | JFK8 Education Session Part 3 | Class |
| Hoggin,Alba | 115237 | JFK8 Education Session Part 3 | Class |
| Guzman,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Chantal | 115237 | JFK8 Education Session Part 3 | Class |
| Peralta,Esther | 115237 | JFK8 Education Session Part 3 | Class |
| Yang,Andrew K | 115237 | JFK8 Education Session Part 3 | Class |
| Cortez,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,miracle | 115237 | JFK8 Education Session Part 3 | Class |
| Ambroise,Coucheny | 115237 | JFK8 Education Session Part 3 | Class |
| Nettles,Lorando | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Jaramillo,Rachael | 115237 | JFK8 Education Session Part 3 | Class |
| Olugbodi,Ojeniyi David | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Faheem | 115237 | JFK8 Education Session Part 3 | Class |
| Munasinghe,Nethmi | 115237 | JFK8 Education Session Part 3 | Class |
| Munasinghe,Nethmi | 115237 | JFK8 Education Session Part 3 | Class |
| Munasinghe,Nethmi | 115237 | JFK8 Education Session Part 3 | Class |
| Tine,Mohamed Amine | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Sofia | 115237 | JFK8 Education Session Part 3 | Class |
| Farrell,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Harrison,Christon | 115237 | JFK8 Education Session Part 3 | Class |
| Roperos,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| sanchez,john | 115237 | JFK8 Education Session Part 3 | Class |
| Werts,Renee | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell,Armani | 115237 | JFK8 Education Session Part 3 | Class |
| Llaque,Israel | 115237 | JFK8 Education Session Part 3 | Class |
| Siafa,Abraham | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Dennis | 115237 | JFK8 Education Session Part 3 | Class |
| Duvert,Proslyn Chris | 115237 | JFK8 Education Session Part 3 | Class |
| Kippings,Ricardo C | 115237 | JFK8 Education Session Part 3 | Class |
| Kombila Ebotsi,Cedy Lewis | 115237 | JFK8 Education Session Part 3 | Class |
| Kombila Ebotsi,Cedy Lewis | 115237 | JFK8 Education Session Part 3 | Class |
| Urgiles,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Thompson,Niye Heaven | 115237 | JFK8 Education Session Part 3 | Class |
| Sarveswaran,Archakan | 115237 | JFK8 Education Session Part 3 | Class |
| Cox,Shernell | 115237 | JFK8 Education Session Part 3 | Class |
| Mehany,Shenoda | 115237 | JFK8 Education Session Part 3 | Class |
| Crapps,Autumn | 115237 | JFK8 Education Session Part 3 | Class |
| Rios,Marilyn | 115237 | JFK8 Education Session Part 3 | Class |
| Gregory,Shaniece | 115237 | JFK8 Education Session Part 3 | Class |
| Henao Duque,Soranny Andrea | 115237 | JFK8 Education Session Part 3 | Class |
| Henao Duque,Soranny Andrea | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Shakima | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Shakima | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Shakima | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Alberto | 115237 | JFK8 Education Session Part 3 | Class |
| Monir,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Fratta,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| jeffreys,Lakei | 115237 | JFK8 Education Session Part 3 | Class |
| Matloob,Rizwana | 115237 | JFK8 Education Session Part 3 | Class |
| Emm,Luci | 115237 | JFK8 Education Session Part 3 | Class |
| Rosado,Joshua | 115237 | JFK8 Education Session Part 3 | Class |
| Aloysius,Celine | 115237 | JFK8 Education Session Part 3 | Class |
| Olayinka,Isaac | 115237 | JFK8 Education Session Part 3 | Class |
| Woo,Jae Woo | 115237 | JFK8 Education Session Part 3 | Class |
| Hutchinson,Joeann | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Wilkinson,John | 115237 | JFK8 Education Session Part 3 | Class |
| Brooks owen,Patricia | 115237 | JFK8 Education Session Part 3 | Class |
| Adeoye,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Sholaja,OLUWADAMILOLA Oluwaseun | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Rosa | 115237 | JFK8 Education Session Part 3 | Class |
| Agius,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Bradley,Imani | 115237 | JFK8 Education Session Part 3 | Class |
| Bradley,Imani | 115237 | JFK8 Education Session Part 3 | Class |
| Powell,Peter | 115237 | JFK8 Education Session Part 3 | Class |
| Chan,peggy | 115237 | JFK8 Education Session Part 3 | Class |
| Almazo,Fernando | 115237 | JFK8 Education Session Part 3 | Class |
| Ramos,Ivan | 115237 | JFK8 Education Session Part 3 | Class |
| McCray,Andre M | 115237 | JFK8 Education Session Part 3 | Class |
| Chango,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Ebigbo,Emeka S | 115237 | JFK8 Education Session Part 3 | Class |
| Couillard,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Cantave,Marshall | 115237 | JFK8 Education Session Part 3 | Class |
| Fonseca,Steven Alonso | 115237 | JFK8 Education Session Part 3 | Class |
| Sunair,Amna | 115237 | JFK8 Education Session Part 3 | Class |
| Vazquez,Nancy | 115237 | JFK8 Education Session Part 3 | Class |
| Sanders,Nehemiah | 115237 | JFK8 Education Session Part 3 | Class |
| Sanders,Nehemiah | 115237 | JFK8 Education Session Part 3 | Class |
| Tillman,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| rivera,dangelo | 115237 | JFK8 Education Session Part 3 | Class |
| Pallani,Artur | 115237 | JFK8 Education Session Part 3 | Class |
| Abdul-Mateen,Bryanna Courtney | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Desire Denise | 115237 | JFK8 Education Session Part 3 | Class |
| Lloyd,Daquan | 115237 | JFK8 Education Session Part 3 | Class |
| mason,rondu | 115237 | JFK8 Education Session Part 3 | Class |
| Gazzillo,Nicholas Philip | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Jerwayne | 115237 | JFK8 Education Session Part 3 | Class |
| Munoz,Laura | 115237 | JFK8 Education Session Part 3 | Class |
| Olmos,Evelio | 115237 | JFK8 Education Session Part 3 | Class |
| Shearin,Jaylee Marie | 115237 | JFK8 Education Session Part 3 | Class |
| Louis,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Mendoza,Cassio | 115237 | JFK8 Education Session Part 3 | Class |
| Hemmingstad,Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Roundtree,Jada | 115237 | JFK8 Education Session Part 3 | Class |
| Cotto,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Velandres,Louis eros | 115237 | JFK8 Education Session Part 3 | Class |
| Castillo,Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Enemoh,Innocent | 115237 | JFK8 Education Session Part 3 | Class |
| Capestany,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Falik,Aza | 115237 | JFK8 Education Session Part 3 | Class |
| Paz Lara,Dulce Paz Lara | 115237 | JFK8 Education Session Part 3 | Class |
| Mounier,David | 115237 | JFK8 Education Session Part 3 | Class |
| Walker,Myron | 115237 | JFK8 Education Session Part 3 | Class |
| Sadou,Farid | 115237 | JFK8 Education Session Part 3 | Class |
| Zahid,Nabeela | 115237 | JFK8 Education Session Part 3 | Class |
| Padmore,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Paulin,Nadege | 115237 | JFK8 Education Session Part 3 | Class |
| Lyons,Shaquan | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Boukhssibi,Rachid | 115237 | JFK8 Education Session Part 3 | Class |
| Boukhssibi,Rachid | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Tyrone | 115237 | JFK8 Education Session Part 3 | Class |
| Douglas,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Perez Justo,Chelsea | 115237 | JFK8 Education Session Part 3 | Class |
| Wells,Derek L | 115237 | JFK8 Education Session Part 3 | Class |
| Della Rocca,Salvatore | 115237 | JFK8 Education Session Part 3 | Class |
| Abualainain,Ahmed O | 115237 | JFK8 Education Session Part 3 | Class |
| Roseboro,Lindasia | 115237 | JFK8 Education Session Part 3 | Class |
| Ventura,Seth | 115237 | JFK8 Education Session Part 3 | Class |
| Meza,Nestor | 115237 | JFK8 Education Session Part 3 | Class |
| hickey,matthew p | 115237 | JFK8 Education Session Part 3 | Class |
| Scarlett,Errol | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Jared Reinaldo | 115237 | JFK8 Education Session Part 3 | Class |
| Sloan,Dominique | 115237 | JFK8 Education Session Part 3 | Class |
| Sloan,Dominique | 115237 | JFK8 Education Session Part 3 | Class |
| Morton,Aaron | 115237 | JFK8 Education Session Part 3 | Class |
| Nickels,George | 115237 | JFK8 Education Session Part 3 | Class |
| Acosta II,Angelo | 115237 | JFK8 Education Session Part 3 | Class |
| Felder,Keywan | 115237 | JFK8 Education Session Part 3 | Class |
| Felder,Keywan | 115237 | JFK8 Education Session Part 3 | Class |
| Pineda,Georgina | 115237 | JFK8 Education Session Part 3 | Class |
| Ortega,Azhantae | 115237 | JFK8 Education Session Part 3 | Class |
| Greene,Norris | 115237 | JFK8 Education Session Part 3 | Class |
| Taylor,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Fernando,Kumarawatthage Dinali | 115237 | JFK8 Education Session Part 3 | Class |
| Geara,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Oneill,margaret | 115237 | JFK8 Education Session Part 3 | Class |
| Thompson,Yessenia P | 115237 | JFK8 Education Session Part 3 | Class |
| Kwok,Kenny | 115237 | JFK8 Education Session Part 3 | Class |
| baez,carmen | 115237 | JFK8 Education Session Part 3 | Class |
| baez,carmen | 115237 | JFK8 Education Session Part 3 | Class |
| Anyama,Kenneth | 115237 | JFK8 Education Session Part 3 | Class |
| Bonilla,Johnny Fidel | 115237 | JFK8 Education Session Part 3 | Class |
| Vasquez,Clarice | 115237 | JFK8 Education Session Part 3 | Class |
| DAZA,ADRIANIS EDUARDO | 115237 | JFK8 Education Session Part 3 | Class |
| StJulien,Makendie | 115237 | JFK8 Education Session Part 3 | Class |
| Rexach,Jovette | 115237 | JFK8 Education Session Part 3 | Class |
| HE,SiYan | 115237 | JFK8 Education Session Part 3 | Class |
| Cross,Andre | 115237 | JFK8 Education Session Part 3 | Class |
| Ajagbe,Ismail | 115237 | JFK8 Education Session Part 3 | Class |
| Henderson,Jazaih | 115237 | JFK8 Education Session Part 3 | Class |
| Adade,Solomon | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Shamekia Renniqka | 115237 | JFK8 Education Session Part 3 | Class |
| Adorno,Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| Vasquez,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| plasencia,marita | 115237 | JFK8 Education Session Part 3 | Class |
| calagui,jerwin ramos | 115237 | JFK8 Education Session Part 3 | Class |
| Vasquez,Rogelio | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Glover,Tanya A | 115237 | JFK8 Education Session Part 3 | Class |
| Tolentino,Noel Gabriel | 115237 | JFK8 Education Session Part 3 | Class |
| Asiedu,ivy | 115237 | JFK8 Education Session Part 3 | Class |
| Owusu afriyie,Phillip | 115237 | JFK8 Education Session Part 3 | Class |
| Coulibaly,Kadiatou | 115237 | JFK8 Education Session Part 3 | Class |
| Dominguez,Sundjata | 115237 | JFK8 Education Session Part 3 | Class |
| Salley,Moneka | 115237 | JFK8 Education Session Part 3 | Class |
| Harris,Q | 115237 | JFK8 Education Session Part 3 | Class |
| tapper,anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Matzel,Karen | 115237 | JFK8 Education Session Part 3 | Class |
| Marinelli,Stephen | 115237 | JFK8 Education Session Part 3 | Class |
| McKenzie,Tamara | 115237 | JFK8 Education Session Part 3 | Class |
| Altreche,Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Delia,Katie | 115237 | JFK8 Education Session Part 3 | Class |
| Vargas,Clarybel | 115237 | JFK8 Education Session Part 3 | Class |
| Villegas,Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Viktoria | 115237 | JFK8 Education Session Part 3 | Class |
| waldo,janeice | 115237 | JFK8 Education Session Part 3 | Class |
| Escaleras rosario,Santiago | 115237 | JFK8 Education Session Part 3 | Class |
| Li,Michael Shun Cheung | 115237 | JFK8 Education Session Part 3 | Class |
| Telford,Zola | 115237 | JFK8 Education Session Part 3 | Class |
| Koulta,Hany | 115237 | JFK8 Education Session Part 3 | Class |
| Hussain,Zafran | 115237 | JFK8 Education Session Part 3 | Class |
| Middleton,Dietra | 115237 | JFK8 Education Session Part 3 | Class |
| Adeyemo,Adebayo | 115237 | JFK8 Education Session Part 3 | Class |
| Adeyemo,Adebayo | 115237 | JFK8 Education Session Part 3 | Class |
| Diep,Vi Kiet | 115237 | JFK8 Education Session Part 3 | Class |
| DeMoss,Khari | 115237 | JFK8 Education Session Part 3 | Class |
| Re,Eileen | 115237 | JFK8 Education Session Part 3 | Class |
| Ellis,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Jerome,James | 115237 | JFK8 Education Session Part 3 | Class |
| Walker,Corine | 115237 | JFK8 Education Session Part 3 | Class |
| Taiwo,Eziaku  Stella | 115237 | JFK8 Education Session Part 3 | Class |
| Finkler,Dimitri | 115237 | JFK8 Education Session Part 3 | Class |
| Ramirez,Maria Mercedes | 115237 | JFK8 Education Session Part 3 | Class |
| Meza,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Jeanbaptiste,Peterson | 115237 | JFK8 Education Session Part 3 | Class |
| Camejo-Coello,Liem | 115237 | JFK8 Education Session Part 3 | Class |
| Shaffi,Aisha | 115237 | JFK8 Education Session Part 3 | Class |
| Simmons,Khalique | 115237 | JFK8 Education Session Part 3 | Class |
| tavadze,lasha | 115237 | JFK8 Education Session Part 3 | Class |
| Vassell,Dwan R | 115237 | JFK8 Education Session Part 3 | Class |
| Jimenez,Alines | 115237 | JFK8 Education Session Part 3 | Class |
| Marcus,Tre | 115237 | JFK8 Education Session Part 3 | Class |
| Marcus,Tre | 115237 | JFK8 Education Session Part 3 | Class |
| Charlot,Jean | 115237 | JFK8 Education Session Part 3 | Class |
| Sallah,Kayi Dorcas | 115237 | JFK8 Education Session Part 3 | Class |
| Carrasquillo,Leslie | 115237 | JFK8 Education Session Part 3 | Class |
| Awopeju,Esther | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Hosang,Hason Phillip | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Walter | 115237 | JFK8 Education Session Part 3 | Class |
| Rattler,Tireek | 115237 | JFK8 Education Session Part 3 | Class |
| Hasibo,Osama | 115237 | JFK8 Education Session Part 3 | Class |
| Quinones,Edgar | 115237 | JFK8 Education Session Part 3 | Class |
| IVANITSKIY,Aleksey | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Jalani | 115237 | JFK8 Education Session Part 3 | Class |
| Charles,Marsha Kim | 115237 | JFK8 Education Session Part 3 | Class |
| Vera,Jaime | 115237 | JFK8 Education Session Part 3 | Class |
| Hass,Elida | 115237 | JFK8 Education Session Part 3 | Class |
| Varela,Jonathan Luis | 115237 | JFK8 Education Session Part 3 | Class |
| Latif,Haroon | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Andy | 115237 | JFK8 Education Session Part 3 | Class |
| Revithas,Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Griggs,Meghan | 115237 | JFK8 Education Session Part 3 | Class |
| Lamas,Deomar | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera,Juan Evangelista | 115237 | JFK8 Education Session Part 3 | Class |
| Kamdem,Ivan Doris | 115237 | JFK8 Education Session Part 3 | Class |
| Mohamed,Saleem | 115237 | JFK8 Education Session Part 3 | Class |
| Samuel,Livona Wendy | 115237 | JFK8 Education Session Part 3 | Class |
| Reid,Andrea | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Flaka | 115237 | JFK8 Education Session Part 3 | Class |
| Bellamy,Seaden | 115237 | JFK8 Education Session Part 3 | Class |
| Burns,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Boljevic,Arijeta | 115237 | JFK8 Education Session Part 3 | Class |
| Omole,Olajumoke E | 115237 | JFK8 Education Session Part 3 | Class |
| Soriano,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Soriano,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Iacono,Tom | 115237 | JFK8 Education Session Part 3 | Class |
| Soucy,Janelly | 115237 | JFK8 Education Session Part 3 | Class |
| Ahmed,Daniyal | 115237 | JFK8 Education Session Part 3 | Class |
| Zheng,David | 115237 | JFK8 Education Session Part 3 | Class |
| Palafox,johana | 115237 | JFK8 Education Session Part 3 | Class |
| Terry,William | 115237 | JFK8 Education Session Part 3 | Class |
| Guzman Contreras,Rocio | 115237 | JFK8 Education Session Part 3 | Class |
| Yens,Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Shaniah | 115237 | JFK8 Education Session Part 3 | Class |
| Bowie,Nakia | 115237 | JFK8 Education Session Part 3 | Class |
| Kozak,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| M,Phillip | 115237 | JFK8 Education Session Part 3 | Class |
| Nazario Correa,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Herman,Tara | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Omar | 115237 | JFK8 Education Session Part 3 | Class |
| Santos,George | 115237 | JFK8 Education Session Part 3 | Class |
| Santos,George | 115237 | JFK8 Education Session Part 3 | Class |
| Stumpf,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Russell,Rhenardo | 115237 | JFK8 Education Session Part 3 | Class |
| Russell,Rhenardo | 115237 | JFK8 Education Session Part 3 | Class |

Amazon_000377

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Barrios,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Carolina | 115237 | JFK8 Education Session Part 3 | Class |
| LYRON,JOANE | 115237 | JFK8 Education Session Part 3 | Class |
| Bondswell,Rose-Marie | 115237 | JFK8 Education Session Part 3 | Class |
| Rosario,Yohanna | 115237 | JFK8 Education Session Part 3 | Class |
| Lugo,Emanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Maurice,Nathan | 115237 | JFK8 Education Session Part 3 | Class |
| Rodney,Shermaine Damelea | 115237 | JFK8 Education Session Part 3 | Class |
| Jacona,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Haywood,Gairy | 115237 | JFK8 Education Session Part 3 | Class |
| X Carrera,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| B,Taleah | 115237 | JFK8 Education Session Part 3 | Class |
| B,Taleah | 115237 | JFK8 Education Session Part 3 | Class |
| B,Taleah | 115237 | JFK8 Education Session Part 3 | Class |
| Bourne,Eric Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Slizewski,Kenneth | 115237 | JFK8 Education Session Part 3 | Class |
| Rowe,Veronica | 115237 | JFK8 Education Session Part 3 | Class |
| Wong,Benny | 115237 | JFK8 Education Session Part 3 | Class |
| Narducci,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Reynoso,Nicholas Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Anuar | 115237 | JFK8 Education Session Part 3 | Class |
| Olivier,Edwige | 115237 | JFK8 Education Session Part 3 | Class |
| Sargeant,Ronald | 115237 | JFK8 Education Session Part 3 | Class |
| Petrik,Amanda | 115237 | JFK8 Education Session Part 3 | Class |
| Wright,Camesha | 115237 | JFK8 Education Session Part 3 | Class |
| Zhang,Tim | 115237 | JFK8 Education Session Part 3 | Class |
| Papsodero,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Telese,Nicholas | 115237 | JFK8 Education Session Part 3 | Class |
| Valdez,David | 115237 | JFK8 Education Session Part 3 | Class |
| Ferguson,Monique | 115237 | JFK8 Education Session Part 3 | Class |
| Hinds,Arthur Xavier | 115237 | JFK8 Education Session Part 3 | Class |
| Adeoye,Aderemi Sylvanus | 115237 | JFK8 Education Session Part 3 | Class |
| Brooks,Jordan Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Diagouraga,Moudima Y | 115237 | JFK8 Education Session Part 3 | Class |
| Cole,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Cole,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Cole,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Castillo,Adonis | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz de Romero,Elsy | 115237 | JFK8 Education Session Part 3 | Class |
| Hall-Hamilton,Andrea | 115237 | JFK8 Education Session Part 3 | Class |
| Fisher,Jada | 115237 | JFK8 Education Session Part 3 | Class |
| Conteh,Mahamadou | 115237 | JFK8 Education Session Part 3 | Class |
| Soneda,Junko | 115237 | JFK8 Education Session Part 3 | Class |
| Bowman,Kenya | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Kevin Winston | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Kevin Winston | 115237 | JFK8 Education Session Part 3 | Class |
| Moore,Marcus | 115237 | JFK8 Education Session Part 3 | Class |
| Subair,Halima | 115237 | JFK8 Education Session Part 3 | Class |
| Blaise,carls hans Pascal | 115237 | JFK8 Education Session Part 3 | Class |

Amazon_000378

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Kaba,Aboubacar | 115237 | JFK8 Education Session Part 3 | Class |
| De Los Santos,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Bardales,Miriam Dessire | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Yohan | 115237 | JFK8 Education Session Part 3 | Class |
| Marini,Cory | 115237 | JFK8 Education Session Part 3 | Class |
| Providence,Herbert Randolph | 115237 | JFK8 Education Session Part 3 | Class |
| Malaga,Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Manu,Joseph Baffour | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Kaela | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Harry | 115237 | JFK8 Education Session Part 3 | Class |
| Ellis,Siearra | 115237 | JFK8 Education Session Part 3 | Class |
| Duncan,Barbara | 115237 | JFK8 Education Session Part 3 | Class |
| Pina,Juan Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Stephanie | 115237 | JFK8 Education Session Part 3 | Class |
| Medina,Sandra | 115237 | JFK8 Education Session Part 3 | Class |
| Mulaja,Alexandre | 115237 | JFK8 Education Session Part 3 | Class |
| Mahagama Ralalage,Rajitha | 115237 | JFK8 Education Session Part 3 | Class |
| Lock,Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Spruill,Najee Armonie Ferguson | 115237 | JFK8 Education Session Part 3 | Class |
| Coleman,Tim | 115237 | JFK8 Education Session Part 3 | Class |
| Green,Tyrell | 115237 | JFK8 Education Session Part 3 | Class |
| Soratos,Mary Jane | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes Flores,Adianid m | 115237 | JFK8 Education Session Part 3 | Class |
| NWAYOR,BLESSING UCHE | 115237 | JFK8 Education Session Part 3 | Class |
| safarov,timur | 115237 | JFK8 Education Session Part 3 | Class |
| Macarthy,Willie | 115237 | JFK8 Education Session Part 3 | Class |
| Rowland,Rell | 115237 | JFK8 Education Session Part 3 | Class |
| Otuyelu,Ayomide | 115237 | JFK8 Education Session Part 3 | Class |
| Baptiste smith,Gesselle | 115237 | JFK8 Education Session Part 3 | Class |
| Mondo,Ricky Artavious | 115237 | JFK8 Education Session Part 3 | Class |
| Borjas,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Landrum,Amyah | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Leasia | 115237 | JFK8 Education Session Part 3 | Class |
| Duke,Howard | 115237 | JFK8 Education Session Part 3 | Class |
| MONTI,RAFI | 115237 | JFK8 Education Session Part 3 | Class |
| Rigor,Virgil Doma | 115237 | JFK8 Education Session Part 3 | Class |
| Guaman,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Valdeena | 115237 | JFK8 Education Session Part 3 | Class |
| Peters,Kesha Ovada | 115237 | JFK8 Education Session Part 3 | Class |
| Littman,Mychael L | 115237 | JFK8 Education Session Part 3 | Class |
| Pena,Briana Natasha | 115237 | JFK8 Education Session Part 3 | Class |
| Villegas,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Bouzidi,Hamza | 115237 | JFK8 Education Session Part 3 | Class |
| Getman,Art | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Moises | 115237 | JFK8 Education Session Part 3 | Class |
| pearson,cheyenne | 115237 | JFK8 Education Session Part 3 | Class |
| MARTI,DAVID | 115237 | JFK8 Education Session Part 3 | Class |
| Fragosa,Thalia | 115237 | JFK8 Education Session Part 3 | Class |
| Nowak,Michael | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ball,John | 115237 | JFK8 Education Session Part 3 | Class |
| Yeboah,Nina | 115237 | JFK8 Education Session Part 3 | Class |
| Yeboah,Nina | 115237 | JFK8 Education Session Part 3 | Class |
| rosado,xiomara gianna | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Junior E | 115237 | JFK8 Education Session Part 3 | Class |
| English,Aaliyaah keiko | 115237 | JFK8 Education Session Part 3 | Class |
| Calleja,Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Suarez,Ariana | 115237 | JFK8 Education Session Part 3 | Class |
| Santana,Nico Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| ruiz,hannah noel | 115237 | JFK8 Education Session Part 3 | Class |
| Peterson,Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Ajala,Serah Serah | 115237 | JFK8 Education Session Part 3 | Class |
| Elsaadany,Gamaleldin | 115237 | JFK8 Education Session Part 3 | Class |
| Nieves,Terry | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Montiyana YaShaye | 115237 | JFK8 Education Session Part 3 | Class |
| Bennett,Dashantea | 115237 | JFK8 Education Session Part 3 | Class |
| Dale,Natasha | 115237 | JFK8 Education Session Part 3 | Class |
| Dale,Natasha | 115237 | JFK8 Education Session Part 3 | Class |
| Orellana,Kevin I | 115237 | JFK8 Education Session Part 3 | Class |
| ocampo,jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Ouedraogo,Fabrice | 115237 | JFK8 Education Session Part 3 | Class |
| Joseph,Alphany Troi | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Malik Y | 115237 | JFK8 Education Session Part 3 | Class |
| Moore,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Braham,Delroy | 115237 | JFK8 Education Session Part 3 | Class |
| Cauldwell,Tarkysha Annette | 115237 | JFK8 Education Session Part 3 | Class |
| Forbes,Gentlefire | 115237 | JFK8 Education Session Part 3 | Class |
| Chan,Tom | 115237 | JFK8 Education Session Part 3 | Class |
| Diallo,Abdoulaye | 115237 | JFK8 Education Session Part 3 | Class |
| Haskins,Donnell Paul | 115237 | JFK8 Education Session Part 3 | Class |
| Watson,Malcolm | 115237 | JFK8 Education Session Part 3 | Class |
| Ferrugiaro,Nicholas | 115237 | JFK8 Education Session Part 3 | Class |
| Hossain,Sultana | 115237 | JFK8 Education Session Part 3 | Class |
| Toledo,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Volmar,Raphael | 115237 | JFK8 Education Session Part 3 | Class |
| Serifou,Fatimah Z | 115237 | JFK8 Education Session Part 3 | Class |
| Jordan,Darian | 115237 | JFK8 Education Session Part 3 | Class |
| Villanueva,Gerardo Andr?s | 115237 | JFK8 Education Session Part 3 | Class |
| Adebisi,Adebanji | 115237 | JFK8 Education Session Part 3 | Class |
| Ochoa,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| DeJesus Jr,Roberto | 115237 | JFK8 Education Session Part 3 | Class |
| Latimore,Valencia | 115237 | JFK8 Education Session Part 3 | Class |
| simmons,phillip | 115237 | JFK8 Education Session Part 3 | Class |
| Mclamb,Sandra | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Shakeema | 115237 | JFK8 Education Session Part 3 | Class |
| CLARKE,Williette | 115237 | JFK8 Education Session Part 3 | Class |
| Sereno,Salvatore | 115237 | JFK8 Education Session Part 3 | Class |
| Maldonado,WILLIAM | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Jaquinn | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| GUGLIADA,RICHARD | 115237 | JFK8 Education Session Part 3 | Class |
| Castellano,Thomas | 115237 | JFK8 Education Session Part 3 | Class |
| Marke,Adrian | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Roseanna | 115237 | JFK8 Education Session Part 3 | Class |
| Webster,Acquan | 115237 | JFK8 Education Session Part 3 | Class |
| Richards,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Vidal,Ivan | 115237 | JFK8 Education Session Part 3 | Class |
| Cooper,TaKaiya | 115237 | JFK8 Education Session Part 3 | Class |
| Uchenna,Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Pluck,Shaquille | 115237 | JFK8 Education Session Part 3 | Class |
| Gamez,Martin | 115237 | JFK8 Education Session Part 3 | Class |
| Vazquez,Naydene | 115237 | JFK8 Education Session Part 3 | Class |
| Urgiles,Iris | 115237 | JFK8 Education Session Part 3 | Class |
| Konate,Mamadou | 115237 | JFK8 Education Session Part 3 | Class |
| Konate,Mamadou | 115237 | JFK8 Education Session Part 3 | Class |
| Joni,Shayed Ahmed | 115237 | JFK8 Education Session Part 3 | Class |
| Pena Perez,Andrio | 115237 | JFK8 Education Session Part 3 | Class |
| Bassell,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Marshall,Cordarell | 115237 | JFK8 Education Session Part 3 | Class |
| Wellington,Gary | 115237 | JFK8 Education Session Part 3 | Class |
| Gallo,Josh | 115237 | JFK8 Education Session Part 3 | Class |
| Taduran,Raymar | 115237 | JFK8 Education Session Part 3 | Class |
| Raymond,Steven | 115237 | JFK8 Education Session Part 3 | Class |
| Modeste,Cherie | 115237 | JFK8 Education Session Part 3 | Class |
| Abdul,Hassan Y | 115237 | JFK8 Education Session Part 3 | Class |
| Obalawon,Oluwaseun | 115237 | JFK8 Education Session Part 3 | Class |
| Archer,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Hensley,Julius Patrick | 115237 | JFK8 Education Session Part 3 | Class |
| Gainey,Colbert | 115237 | JFK8 Education Session Part 3 | Class |
| Hall,Kalifa | 115237 | JFK8 Education Session Part 3 | Class |
| Cannon,Aimee | 115237 | JFK8 Education Session Part 3 | Class |
| Nunez Gonzales,Devora Estefania | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Isel | 115237 | JFK8 Education Session Part 3 | Class |
| Hasnath,Abul | 115237 | JFK8 Education Session Part 3 | Class |
| Pagan,Grace | 115237 | JFK8 Education Session Part 3 | Class |
| HowardIV,William | 115237 | JFK8 Education Session Part 3 | Class |
| HowardIV,William | 115237 | JFK8 Education Session Part 3 | Class |
| Khoury,Mazen | 115237 | JFK8 Education Session Part 3 | Class |
| Abraham,Clayton | 115237 | JFK8 Education Session Part 3 | Class |
| Muthunamagonnage,Maxie | 115237 | JFK8 Education Session Part 3 | Class |
| Herrera,Marisol | 115237 | JFK8 Education Session Part 3 | Class |
| Almazo,Alberto | 115237 | JFK8 Education Session Part 3 | Class |
| Shakeel,Arbab | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Watson,Eon | 115237 | JFK8 Education Session Part 3 | Class |
| Caban,Darlene | 115237 | JFK8 Education Session Part 3 | Class |
| Zorrilla,Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Clowery,Thomas F. | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Salazar,Odalys | 115237 | JFK8 Education Session Part 3 | Class |
| Torres McGrew,Julian | 115237 | JFK8 Education Session Part 3 | Class |
| Wong,Wilson | 115237 | JFK8 Education Session Part 3 | Class |
| colon,jareth | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Alyxandria | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez Balderas,Cecilia | 115237 | JFK8 Education Session Part 3 | Class |
| House Jr,Andre | 115237 | JFK8 Education Session Part 3 | Class |
| chang,clemente | 115237 | JFK8 Education Session Part 3 | Class |
| Lesevic,Egzon | 115237 | JFK8 Education Session Part 3 | Class |
| McVey,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Jones Jr,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Gyamfi,Andriana Yakoba | 115237 | JFK8 Education Session Part 3 | Class |
| Abimbola,Abayomi Alawode | 115237 | JFK8 Education Session Part 3 | Class |
| Burton,Sean | 115237 | JFK8 Education Session Part 3 | Class |
| Solano,Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Exantus,Kendler | 115237 | JFK8 Education Session Part 3 | Class |
| Mitchell,Shamel | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Angel | 115237 | JFK8 Education Session Part 3 | Class |
| Pannoh,Lucy | 115237 | JFK8 Education Session Part 3 | Class |
| Daza,Aldo Camerino | 115237 | JFK8 Education Session Part 3 | Class |
| Rofail,Malak | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Mashihi Mutondo,Mymy | 115237 | JFK8 Education Session Part 3 | Class |
| Arteta,Yolanda Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Lorenzo,Dionila | 115237 | JFK8 Education Session Part 3 | Class |
| Altime,Jackson | 115237 | JFK8 Education Session Part 3 | Class |
| Ponce,Amber | 115237 | JFK8 Education Session Part 3 | Class |
| jacob,adam j | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Thomas | 115237 | JFK8 Education Session Part 3 | Class |
| Francis,Tatyana | 115237 | JFK8 Education Session Part 3 | Class |
| Stetson,Douglas | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Shareema | 115237 | JFK8 Education Session Part 3 | Class |
| Chen,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Littlejohn,Rashid | 115237 | JFK8 Education Session Part 3 | Class |
| Morris,Michael Joshua | 115237 | JFK8 Education Session Part 3 | Class |
| Morris,Michael Joshua | 115237 | JFK8 Education Session Part 3 | Class |
| Palihawadana Arachchige,Prabath N P | 115237 | JFK8 Education Session Part 3 | Class |
| Edwards,Shyan Rochell | 115237 | JFK8 Education Session Part 3 | Class |
| Pichardo,Edward | 115237 | JFK8 Education Session Part 3 | Class |
| Ray,Darnell | 115237 | JFK8 Education Session Part 3 | Class |
| Sanders,Brianna | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Ken Kadeem | 115237 | JFK8 Education Session Part 3 | Class |
| Teozol,Luis | 115237 | JFK8 Education Session Part 3 | Class |
| Ruiz,Mario | 115237 | JFK8 Education Session Part 3 | Class |
| Newcombe,Cyirra | 115237 | JFK8 Education Session Part 3 | Class |
| Lin,Johnny | 115237 | JFK8 Education Session Part 3 | Class |
| George,Dawn Peterson | 115237 | JFK8 Education Session Part 3 | Class |
| Kaldas,Rogeh | 115237 | JFK8 Education Session Part 3 | Class |

Amazon_000382

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Duncan,Rebecca Amber | 115237 | JFK8 Education Session Part 3 | Class |
| Currie,Monique | 115237 | JFK8 Education Session Part 3 | Class |
| Jean-Louis,Cherubin | 115237 | JFK8 Education Session Part 3 | Class |
| Lee,Mell | 115237 | JFK8 Education Session Part 3 | Class |
| Amzza,Abdoul Latiph C | 115237 | JFK8 Education Session Part 3 | Class |
| Elsayed,Tarek | 115237 | JFK8 Education Session Part 3 | Class |
| perez,alfred | 115237 | JFK8 Education Session Part 3 | Class |
| Manna Marakkalage,Sunilaka Dinushan Cooray | 115237 | JFK8 Education Session Part 3 | Class |
| Moss,Marc | 115237 | JFK8 Education Session Part 3 | Class |
| THOMSON,MARYKUTTY | 115237 | JFK8 Education Session Part 3 | Class |
| Simon,Enisy | 115237 | JFK8 Education Session Part 3 | Class |
| Felder,Denise | 115237 | JFK8 Education Session Part 3 | Class |
| Ng,Kenneth | 115237 | JFK8 Education Session Part 3 | Class |
| Serrano,Samantha | 115237 | JFK8 Education Session Part 3 | Class |
| Rutty,Neil | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Adolfo | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Adolfo | 115237 | JFK8 Education Session Part 3 | Class |
| Esperon,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| D'Amico,Christy | 115237 | JFK8 Education Session Part 3 | Class |
| Sibri,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Platt,Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Conde,Ami | 115237 | JFK8 Education Session Part 3 | Class |
| Echeverria,Carolan | 115237 | JFK8 Education Session Part 3 | Class |
| Benrhazi,Noamane | 115237 | JFK8 Education Session Part 3 | Class |
| Woodley,Shaniqua | 115237 | JFK8 Education Session Part 3 | Class |
| Reynoso,Noemi | 115237 | JFK8 Education Session Part 3 | Class |
| Lee Sang,Dane | 115237 | JFK8 Education Session Part 3 | Class |
| Noel,Myko | 115237 | JFK8 Education Session Part 3 | Class |
| Rosa,Roig | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Dion | 115237 | JFK8 Education Session Part 3 | Class |
| Bodenarain,Ryan | 115237 | JFK8 Education Session Part 3 | Class |
| Baarimah,Abdullah | 115237 | JFK8 Education Session Part 3 | Class |
| Fleurimond,Alexandra | 115237 | JFK8 Education Session Part 3 | Class |
| Fleurimond,Alexandra | 115237 | JFK8 Education Session Part 3 | Class |
| Ozuna,Liana | 115237 | JFK8 Education Session Part 3 | Class |
| Rustem,Emser | 115237 | JFK8 Education Session Part 3 | Class |
| PERERA,PRIYAN Shanaka | 115237 | JFK8 Education Session Part 3 | Class |
| Kimble,Anna | 115237 | JFK8 Education Session Part 3 | Class |
| Romero,Damian | 115237 | JFK8 Education Session Part 3 | Class |
| McDowell,Dia | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Eli | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Eli | 115237 | JFK8 Education Session Part 3 | Class |
| ekundayo,Trinovy | 115237 | JFK8 Education Session Part 3 | Class |
| Brigido,Saul B | 115237 | JFK8 Education Session Part 3 | Class |
| Esmail,Youssef Taha | 115237 | JFK8 Education Session Part 3 | Class |
| Esmail,Youssef Taha | 115237 | JFK8 Education Session Part 3 | Class |
| Karabinech,Olga | 115237 | JFK8 Education Session Part 3 | Class |
| Karabinech,Olga | 115237 | JFK8 Education Session Part 3 | Class |
| FLOOD,KUSAWADEE HELEN | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lassiter,Irick | 115237 | JFK8 Education Session Part 3 | Class |
| Hui,Emily | 115237 | JFK8 Education Session Part 3 | Class |
| Armstrong,Tamia | 115237 | JFK8 Education Session Part 3 | Class |
| Mckenzie,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Glanville,Tyler | 115237 | JFK8 Education Session Part 3 | Class |
| Lewis,Amari | 115237 | JFK8 Education Session Part 3 | Class |
| Ogushi,Koichi | 115237 | JFK8 Education Session Part 3 | Class |
| Snyder,Hailee | 115237 | JFK8 Education Session Part 3 | Class |
| alvarez,Evelin | 115237 | JFK8 Education Session Part 3 | Class |
| Noel II,Tony | 115237 | JFK8 Education Session Part 3 | Class |
| Espinal,Kelvin | 115237 | JFK8 Education Session Part 3 | Class |
| McKenna,Aaron Steve | 115237 | JFK8 Education Session Part 3 | Class |
| Bah,Amadou | 115237 | JFK8 Education Session Part 3 | Class |
| Michelus,Kevin Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Pestano,Tiffany | 115237 | JFK8 Education Session Part 3 | Class |
| Malone,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz Jr,Marcelino | 115237 | JFK8 Education Session Part 3 | Class |
| Cerda,Mimi | 115237 | JFK8 Education Session Part 3 | Class |
| Westpoint,Ramallah | 115237 | JFK8 Education Session Part 3 | Class |
| Viruel,Juan | 115237 | JFK8 Education Session Part 3 | Class |
| Spence,Neckisha | 115237 | JFK8 Education Session Part 3 | Class |
| Perkins,Kera K | 115237 | JFK8 Education Session Part 3 | Class |
| Rich,Mari | 115237 | JFK8 Education Session Part 3 | Class |
| Omar,Imani | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Oneal,Donnisha E | 115237 | JFK8 Education Session Part 3 | Class |
| McDonald,Warren | 115237 | JFK8 Education Session Part 3 | Class |
| Cortez - Encarnacion,Araceli | 115237 | JFK8 Education Session Part 3 | Class |
| Florio,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| colon,justin | 115237 | JFK8 Education Session Part 3 | Class |
| colon,justin | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,andre | 115237 | JFK8 Education Session Part 3 | Class |
| Kamel,Hedra | 115237 | JFK8 Education Session Part 3 | Class |
| Quintero,Samantha Jaquelin | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Ignacio Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Amponsah,Hilda | 115237 | JFK8 Education Session Part 3 | Class |
| Sacramento,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Aurelus,Fabrice | 115237 | JFK8 Education Session Part 3 | Class |
| Dungee,Timothy | 115237 | JFK8 Education Session Part 3 | Class |
| Bastidas,Santiago | 115237 | JFK8 Education Session Part 3 | Class |
| Massalay,Sonnie | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Florencia | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Wright,Roy | 115237 | JFK8 Education Session Part 3 | Class |
| Jordan,Arianna | 115237 | JFK8 Education Session Part 3 | Class |
| Jordan,Arianna | 115237 | JFK8 Education Session Part 3 | Class |
| Gomez,Elijah | 115237 | JFK8 Education Session Part 3 | Class |
| Black,Anthony K | 115237 | JFK8 Education Session Part 3 | Class |
| Gomez,Marcus | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| burgos,juan | 115237 | JFK8 Education Session Part 3 | Class |
| Richardson,DVonte N | 115237 | JFK8 Education Session Part 3 | Class |
| Murray,Annecia V | 115237 | JFK8 Education Session Part 3 | Class |
| Trinkoff,Alyson | 115237 | JFK8 Education Session Part 3 | Class |
| Puma,Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Clarke,Jevoy Romario | 115237 | JFK8 Education Session Part 3 | Class |
| Minew,Elaine | 115237 | JFK8 Education Session Part 3 | Class |
| Casseus,Francenol | 115237 | JFK8 Education Session Part 3 | Class |
| Neri,Martin Leonardo | 115237 | JFK8 Education Session Part 3 | Class |
| Grenion Grossett,Key | 115237 | JFK8 Education Session Part 3 | Class |
| Vasquez,Cazina | 115237 | JFK8 Education Session Part 3 | Class |
| Cordova,Dennise | 115237 | JFK8 Education Session Part 3 | Class |
| Braithwaite,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Pacheco,Briana | 115237 | JFK8 Education Session Part 3 | Class |
| Duran,Franky | 115237 | JFK8 Education Session Part 3 | Class |
| Mohamed,Moataz | 115237 | JFK8 Education Session Part 3 | Class |
| Varney,Sheena | 115237 | JFK8 Education Session Part 3 | Class |
| Sethunge Mudalige,Priyan K | 115237 | JFK8 Education Session Part 3 | Class |
| Ramirez,Jose abel | 115237 | JFK8 Education Session Part 3 | Class |
| Velez Conde,Stacey Alexandra | 115237 | JFK8 Education Session Part 3 | Class |
| Navarro Espinoza,Luz | 115237 | JFK8 Education Session Part 3 | Class |
| Moragodage,Shane | 115237 | JFK8 Education Session Part 3 | Class |
| Helale,Gina | 115237 | JFK8 Education Session Part 3 | Class |
| SYMES,MIRTA | 115237 | JFK8 Education Session Part 3 | Class |
| Stanley,Jamel Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Lesley | 115237 | JFK8 Education Session Part 3 | Class |
| Holland,Jamal | 115237 | JFK8 Education Session Part 3 | Class |
| Fletcher,Ken | 115237 | JFK8 Education Session Part 3 | Class |
| Nimr,Nermeen | 115237 | JFK8 Education Session Part 3 | Class |
| Nimr,Nermeen | 115237 | JFK8 Education Session Part 3 | Class |
| Brabham,Isaiah | 115237 | JFK8 Education Session Part 3 | Class |
| Garzon,Ruddy | 115237 | JFK8 Education Session Part 3 | Class |
| Varsally,Basel | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Alissia | 115237 | JFK8 Education Session Part 3 | Class |
| Mckinnon,Mark | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Natalia Natalia | 115237 | JFK8 Education Session Part 3 | Class |
| Sampson,Lansdale | 115237 | JFK8 Education Session Part 3 | Class |
| Ashton,Josh | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Shawn | 115237 | JFK8 Education Session Part 3 | Class |
| Germano,Patricia | 115237 | JFK8 Education Session Part 3 | Class |
| Velazquez,Paulina | 115237 | JFK8 Education Session Part 3 | Class |
| Sandoval,Anselmo | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Brant | 115237 | JFK8 Education Session Part 3 | Class |
| Adams,Sahib Ibn | 115237 | JFK8 Education Session Part 3 | Class |
| OCAMPO,ABNERSON | 115237 | JFK8 Education Session Part 3 | Class |
| begum,shahnaj | 115237 | JFK8 Education Session Part 3 | Class |
| Vicente,Reyanys | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz Pontaza,Jaime | 115237 | JFK8 Education Session Part 3 | Class |
| Mark,Vianna | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ashiq,Ramiz | 115237 | JFK8 Education Session Part 3 | Class |
| Younger,Eric | 115237 | JFK8 Education Session Part 3 | Class |
| Morris-Fields,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Remache,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Wilbekin,Eric | 115237 | JFK8 Education Session Part 3 | Class |
| Rahamut,Aaliyah | 115237 | JFK8 Education Session Part 3 | Class |
| Raffington,Shevonese | 115237 | JFK8 Education Session Part 3 | Class |
| Raffington,Shevonese | 115237 | JFK8 Education Session Part 3 | Class |
| Andujar,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Alvarez,Corael | 115237 | JFK8 Education Session Part 3 | Class |
| Haddad,Maha | 115237 | JFK8 Education Session Part 3 | Class |
| Mitchell,Shamoi | 115237 | JFK8 Education Session Part 3 | Class |
| Weeks,Blair Morgan | 115237 | JFK8 Education Session Part 3 | Class |
| Paredes,Jose Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Matheson,Claymount | 115237 | JFK8 Education Session Part 3 | Class |
| Neri,Omar | 115237 | JFK8 Education Session Part 3 | Class |
| Gobrial,Yousstina | 115237 | JFK8 Education Session Part 3 | Class |
| Vila Jr,Rafael | 115237 | JFK8 Education Session Part 3 | Class |
| Milone,Joseph Thomas | 115237 | JFK8 Education Session Part 3 | Class |
| Scelzo,Vincent | 115237 | JFK8 Education Session Part 3 | Class |
| Freire,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Coleman,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Henen,Michael M | 115237 | JFK8 Education Session Part 3 | Class |
| Khalifa,Wael | 115237 | JFK8 Education Session Part 3 | Class |
| Khalifa,Wael | 115237 | JFK8 Education Session Part 3 | Class |
| Casey,Joe | 115237 | JFK8 Education Session Part 3 | Class |
| Deleon,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Mitchell,Tyrone | 115237 | JFK8 Education Session Part 3 | Class |
| Bisumber,Malcolm | 115237 | JFK8 Education Session Part 3 | Class |
| Silva,Celine | 115237 | JFK8 Education Session Part 3 | Class |
| Gozon,Ronnie F | 115237 | JFK8 Education Session Part 3 | Class |
| Kadejo,Eniola Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Echavarria,Victor Manuel | 115237 | JFK8 Education Session Part 3 | Class |
| Rosa,Elijah | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez Morales,Nanci | 115237 | JFK8 Education Session Part 3 | Class |
| Vernon,Adrian | 115237 | JFK8 Education Session Part 3 | Class |
| Vernon,Adrian | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| garcia,kyle Neo | 115237 | JFK8 Education Session Part 3 | Class |
| Raid,Polla | 115237 | JFK8 Education Session Part 3 | Class |
| Scotti,Randolph | 115237 | JFK8 Education Session Part 3 | Class |
| Ndulue,Raphael Chinenye | 115237 | JFK8 Education Session Part 3 | Class |
| Cadle,Darius | 115237 | JFK8 Education Session Part 3 | Class |
| Jno Jules,Christy | 115237 | JFK8 Education Session Part 3 | Class |
| MASTERJOSEPH,ALBERT | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Brittany Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Oropeza,Julio | 115237 | JFK8 Education Session Part 3 | Class |
| Clusan,Julio | 115237 | JFK8 Education Session Part 3 | Class |
| Adams,Davon Anthony | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Iddrisu,Adnan Abdul Razak | 115237 | JFK8 Education Session Part 3 | Class |
| Colon,Samantha | 115237 | JFK8 Education Session Part 3 | Class |
| Zavala,Montserrat | 115237 | JFK8 Education Session Part 3 | Class |
| Morocho,Jayden | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Donna | 115237 | JFK8 Education Session Part 3 | Class |
| Bouton,Joy | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia Rivera,Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Montalva,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Toussaint,Sherries | 115237 | JFK8 Education Session Part 3 | Class |
| Adebiyi,Fuad | 115237 | JFK8 Education Session Part 3 | Class |
| Valueva,Olga | 115237 | JFK8 Education Session Part 3 | Class |
| Beckles,Isiah | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,Gus | 115237 | JFK8 Education Session Part 3 | Class |
| Khadr,Adam | 115237 | JFK8 Education Session Part 3 | Class |
| Mcfadden,Jamal | 115237 | JFK8 Education Session Part 3 | Class |
| Stuart,Patrice | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Caleca Jr,Peter Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Ross,Monica | 115237 | JFK8 Education Session Part 3 | Class |
| Eiley,Brittany Marie | 115237 | JFK8 Education Session Part 3 | Class |
| Broccko,Roland | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Elijah | 115237 | JFK8 Education Session Part 3 | Class |
| Miller,Jason Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Droughn,Dee L | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Ivan | 115237 | JFK8 Education Session Part 3 | Class |
| Arce,Angel A | 115237 | JFK8 Education Session Part 3 | Class |
| Jaimes Rodriguez,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Dominguez,Itzel | 115237 | JFK8 Education Session Part 3 | Class |
| Medina,Justine | 115237 | JFK8 Education Session Part 3 | Class |
| Wong,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Clerveau,Jorana | 115237 | JFK8 Education Session Part 3 | Class |
| Andes,Dino | 115237 | JFK8 Education Session Part 3 | Class |
| Bryant,Olivia | 115237 | JFK8 Education Session Part 3 | Class |
| Bryant,Olivia | 115237 | JFK8 Education Session Part 3 | Class |
| Noftell,Rose Lynn | 115237 | JFK8 Education Session Part 3 | Class |
| Kunasingam,Kowsikan | 115237 | JFK8 Education Session Part 3 | Class |
| Canolli Uka,Vlore | 115237 | JFK8 Education Session Part 3 | Class |
| Kelly,Lorenzo | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Durant,George | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera Rodriguez,Mercio Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Orona,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Jean Baptiste,Roomel | 115237 | JFK8 Education Session Part 3 | Class |
| Galy,Taras | 115237 | JFK8 Education Session Part 3 | Class |
| Fiorenza,Joey | 115237 | JFK8 Education Session Part 3 | Class |
| merckel,richard | 115237 | JFK8 Education Session Part 3 | Class |
| Simmons,Kiara | 115237 | JFK8 Education Session Part 3 | Class |
| Er,Angela | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Er,Angela | 115237 | JFK8 Education Session Part 3 | Class |
| Allen,Judyann | 115237 | JFK8 Education Session Part 3 | Class |
| zapata,chase chase | 115237 | JFK8 Education Session Part 3 | Class |
| Deeds,E | 115237 | JFK8 Education Session Part 3 | Class |
| Saif,Yaz | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Amanda | 115237 | JFK8 Education Session Part 3 | Class |
| LAURIANO,JENNY T. | 115237 | JFK8 Education Session Part 3 | Class |
| Jimenez,Miguel | 115237 | JFK8 Education Session Part 3 | Class |
| Centeno,Carmen | 115237 | JFK8 Education Session Part 3 | Class |
| Ulmer,Destiny | 115237 | JFK8 Education Session Part 3 | Class |
| Xiong,Melanie M | 115237 | JFK8 Education Session Part 3 | Class |
| Plasencia,Edson H | 115237 | JFK8 Education Session Part 3 | Class |
| Reynolds,Patrick | 115237 | JFK8 Education Session Part 3 | Class |
| Planchet,Murlyne | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Vada | 115237 | JFK8 Education Session Part 3 | Class |
| Allah,Tyshawn | 115237 | JFK8 Education Session Part 3 | Class |
| Andrejuk-Rys,Katarzyna | 115237 | JFK8 Education Session Part 3 | Class |
| Garricks,Deon | 115237 | JFK8 Education Session Part 3 | Class |
| lawal,Jamiu | 115237 | JFK8 Education Session Part 3 | Class |
| Goodhope,Shamira | 115237 | JFK8 Education Session Part 3 | Class |
| addison,jasmine | 115237 | JFK8 Education Session Part 3 | Class |
| Mccree,Valerie | 115237 | JFK8 Education Session Part 3 | Class |
| Maddox,Micah T | 115237 | JFK8 Education Session Part 3 | Class |
| Mendoza,Olivia | 115237 | JFK8 Education Session Part 3 | Class |
| Heckstall,Noel | 115237 | JFK8 Education Session Part 3 | Class |
| Gomez,Johnathan | 115237 | JFK8 Education Session Part 3 | Class |
| Adams,Asia Glady | 115237 | JFK8 Education Session Part 3 | Class |
| Miho,Enxhel | 115237 | JFK8 Education Session Part 3 | Class |
| Miho,Enxhel | 115237 | JFK8 Education Session Part 3 | Class |
| Miho,Enxhel | 115237 | JFK8 Education Session Part 3 | Class |
| Franco,Ricardo | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,DJ | 115237 | JFK8 Education Session Part 3 | Class |
| Matthews,Tanica | 115237 | JFK8 Education Session Part 3 | Class |
| Dimitri,Gaetano | 115237 | JFK8 Education Session Part 3 | Class |
| latham,sondra ann | 115237 | JFK8 Education Session Part 3 | Class |
| Boston,Fred | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Alicia | 115237 | JFK8 Education Session Part 3 | Class |
| Del Maestro,Anthony Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Newman,Rechard | 115237 | JFK8 Education Session Part 3 | Class |
| Gavilan,Julian E | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Liang,Bing Kun | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Kiara | 115237 | JFK8 Education Session Part 3 | Class |
| Hamilton,Oneisha | 115237 | JFK8 Education Session Part 3 | Class |
| Huerta,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Chausse,Jamie | 115237 | JFK8 Education Session Part 3 | Class |
| Ajayi,Adeyemisi A | 115237 | JFK8 Education Session Part 3 | Class |
| Ojo,Olubukola Margaret | 115237 | JFK8 Education Session Part 3 | Class |
| Espinosa,Adrian | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Murphy,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| Delva,Dublin | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Dashaun Ornester | 115237 | JFK8 Education Session Part 3 | Class |
| Cirello,Gabriella | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Joey | 115237 | JFK8 Education Session Part 3 | Class |
| Okpalor,Bill | 115237 | JFK8 Education Session Part 3 | Class |
| La,Jane | 115237 | JFK8 Education Session Part 3 | Class |
| La,Jane | 115237 | JFK8 Education Session Part 3 | Class |
| Valente,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Powell,Edward | 115237 | JFK8 Education Session Part 3 | Class |
| CHEN,JIAJIAN | 115237 | JFK8 Education Session Part 3 | Class |
| Salazar,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Gunewardena,Geethanjalee M | 115237 | JFK8 Education Session Part 3 | Class |
| Fuster,Maritza | 115237 | JFK8 Education Session Part 3 | Class |
| alex,linu | 115237 | JFK8 Education Session Part 3 | Class |
| Welbeck,Maxwell | 115237 | JFK8 Education Session Part 3 | Class |
| Bah,Mohammed | 115237 | JFK8 Education Session Part 3 | Class |
| Gardener,Kashema | 115237 | JFK8 Education Session Part 3 | Class |
| Prince,Shane | 115237 | JFK8 Education Session Part 3 | Class |
| Zayed,Alyyan | 115237 | JFK8 Education Session Part 3 | Class |
| Droz,Michelle Annatilde | 115237 | JFK8 Education Session Part 3 | Class |
| Miele,Joe | 115237 | JFK8 Education Session Part 3 | Class |
| Ayala,Ethan Russell | 115237 | JFK8 Education Session Part 3 | Class |
| thomas,ladae | 115237 | JFK8 Education Session Part 3 | Class |
| Cortes,Guadalupe Edna | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Denisse Andrea | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,CARLOS A | 115237 | JFK8 Education Session Part 3 | Class |
| Lovera,Cesar | 115237 | JFK8 Education Session Part 3 | Class |
| Viruel,John | 115237 | JFK8 Education Session Part 3 | Class |
| Littman,Kahil | 115237 | JFK8 Education Session Part 3 | Class |
| Marquez,Rex | 115237 | JFK8 Education Session Part 3 | Class |
| Sawhney,Vinney | 115237 | JFK8 Education Session Part 3 | Class |
| Gerardo,Jose A | 115237 | JFK8 Education Session Part 3 | Class |
| park,charles | 115237 | JFK8 Education Session Part 3 | Class |
| Clairejus,Lancia | 115237 | JFK8 Education Session Part 3 | Class |
| Ayala,Craig | 115237 | JFK8 Education Session Part 3 | Class |
| Carranza,Elsi | 115237 | JFK8 Education Session Part 3 | Class |
| Erfan,Mohammed | 115237 | JFK8 Education Session Part 3 | Class |
| Ishola-barnes,Abosede Oreoluwa | 115237 | JFK8 Education Session Part 3 | Class |
| Calderon,Angel R | 115237 | JFK8 Education Session Part 3 | Class |
| Abreu,Noemi | 115237 | JFK8 Education Session Part 3 | Class |
| Peters,Oluwaseyi | 115237 | JFK8 Education Session Part 3 | Class |
| Jaramillo Calle,Freddy Eduardo | 115237 | JFK8 Education Session Part 3 | Class |
| Pinder,Christine | 115237 | JFK8 Education Session Part 3 | Class |
| Burke,Jaheem | 115237 | JFK8 Education Session Part 3 | Class |
| Calcagno,Kristen | 115237 | JFK8 Education Session Part 3 | Class |
| charles,Ken | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Ashley | 115237 | JFK8 Education Session Part 3 | Class |
| Davison,Marsel | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Shakeel,Aqsa | 115237 | JFK8 Education Session Part 3 | Class |
| BAMBA,ISSOUFOU | 115237 | JFK8 Education Session Part 3 | Class |
| CAMACHO LOPEZ,NANCY | 115237 | JFK8 Education Session Part 3 | Class |
| Torres lopez,Adriana Raquel | 115237 | JFK8 Education Session Part 3 | Class |
| Torres lopez,Adriana Raquel | 115237 | JFK8 Education Session Part 3 | Class |
| Herrera,Edison | 115237 | JFK8 Education Session Part 3 | Class |
| Willis,Judith | 115237 | JFK8 Education Session Part 3 | Class |
| McKenna,Aisha | 115237 | JFK8 Education Session Part 3 | Class |
| Ellis,Nikoloi | 115237 | JFK8 Education Session Part 3 | Class |
| KAMONI,CATE | 115237 | JFK8 Education Session Part 3 | Class |
| Fofana,Namizata | 115237 | JFK8 Education Session Part 3 | Class |
| Moncada,Catherine | 115237 | JFK8 Education Session Part 3 | Class |
| Soto,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Mehmood,Haris | 115237 | JFK8 Education Session Part 3 | Class |
| Myers,Brittany | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Darnell | 115237 | JFK8 Education Session Part 3 | Class |
| Harvey,Mary | 115237 | JFK8 Education Session Part 3 | Class |
| Rosado,Miguel | 115237 | JFK8 Education Session Part 3 | Class |
| Singleton,Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Zahra,Liliana | 115237 | JFK8 Education Session Part 3 | Class |
| Peralta,Kendra | 115237 | JFK8 Education Session Part 3 | Class |
| Eugene,Kurone | 115237 | JFK8 Education Session Part 3 | Class |
| Torija,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Selena | 115237 | JFK8 Education Session Part 3 | Class |
| Hanse,Tyrese | 115237 | JFK8 Education Session Part 3 | Class |
| NIEVES,VICTOR | 115237 | JFK8 Education Session Part 3 | Class |
| Simmons,Liayana | 115237 | JFK8 Education Session Part 3 | Class |
| Ricketts,Antione | 115237 | JFK8 Education Session Part 3 | Class |
| Booker,Faith | 115237 | JFK8 Education Session Part 3 | Class |
| Lavandier,Jose L | 115237 | JFK8 Education Session Part 3 | Class |
| Bruzzese,Giro | 115237 | JFK8 Education Session Part 3 | Class |
| Abrams Sr,Selwyn Stanford | 115237 | JFK8 Education Session Part 3 | Class |
| Ayeni,Lyna Lyna | 115237 | JFK8 Education Session Part 3 | Class |
| Gordon,Jasmine | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Darryl | 115237 | JFK8 Education Session Part 3 | Class |
| Patala,John Steven | 115237 | JFK8 Education Session Part 3 | Class |
| Duncan,Kelvin | 115237 | JFK8 Education Session Part 3 | Class |
| Mendoza,Kate | 115237 | JFK8 Education Session Part 3 | Class |
| Torija Gutierrez,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| sethunge mudalige don,Anushka | 115237 | JFK8 Education Session Part 3 | Class |
| Elngaawy,Anna | 115237 | JFK8 Education Session Part 3 | Class |
| Hope,Mervin Tyrese | 115237 | JFK8 Education Session Part 3 | Class |
| Rajasekara,Anuradha | 115237 | JFK8 Education Session Part 3 | Class |
| Delicia,David | 115237 | JFK8 Education Session Part 3 | Class |
| Denis,Ralph | 115237 | JFK8 Education Session Part 3 | Class |
| vega,angela a | 115237 | JFK8 Education Session Part 3 | Class |
| vega,angela a | 115237 | JFK8 Education Session Part 3 | Class |
| Sisimit,Favio | 115237 | JFK8 Education Session Part 3 | Class |
| De Los Santos,Moises | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| De Los Santos,Moises | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Maria Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Nielsen,Britney Christina | 115237 | JFK8 Education Session Part 3 | Class |
| Moss,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Ads,Ahmed | 115237 | JFK8 Education Session Part 3 | Class |
| FIERRO GARCIA,SANTIAGO DAVID | 115237 | JFK8 Education Session Part 3 | Class |
| Spielberg,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Klinilk,Wada | 115237 | JFK8 Education Session Part 3 | Class |
| Medina,Hazel | 115237 | JFK8 Education Session Part 3 | Class |
| Clayburne,Shaquanza | 115237 | JFK8 Education Session Part 3 | Class |
| Moncada,Paola | 115237 | JFK8 Education Session Part 3 | Class |
| Gibbons,alex | 115237 | JFK8 Education Session Part 3 | Class |
| Daniels,Brett | 115237 | JFK8 Education Session Part 3 | Class |
| chambers-bandele,jendayi | 115237 | JFK8 Education Session Part 3 | Class |
| Sowe,Cherno | 115237 | JFK8 Education Session Part 3 | Class |
| CYRIL,JANICE | 115237 | JFK8 Education Session Part 3 | Class |
| Greaves,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Cannon,Gregory | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Angel | 115237 | JFK8 Education Session Part 3 | Class |
| Knight,Shakira | 115237 | JFK8 Education Session Part 3 | Class |
| Gromov,Sergei | 115237 | JFK8 Education Session Part 3 | Class |
| Gromov,Sergei | 115237 | JFK8 Education Session Part 3 | Class |
| Buchanan,Cynthia | 115237 | JFK8 Education Session Part 3 | Class |
| Pahua,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Usher,David | 115237 | JFK8 Education Session Part 3 | Class |
| Welch,Hasan | 115237 | JFK8 Education Session Part 3 | Class |
| Lombardi,Salvatore gus | 115237 | JFK8 Education Session Part 3 | Class |
| Montalva Cacha,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Brazoban,Ironeli | 115237 | JFK8 Education Session Part 3 | Class |
| Eronini,Serena | 115237 | JFK8 Education Session Part 3 | Class |
| Orellana,Josue Alejandro | 115237 | JFK8 Education Session Part 3 | Class |
| Lorenzana,Samantha | 115237 | JFK8 Education Session Part 3 | Class |
| Murad,Lisa Rose | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Marisol Natalia | 115237 | JFK8 Education Session Part 3 | Class |
| Washington Lampley,Tandicia | 115237 | JFK8 Education Session Part 3 | Class |
| Gofan,MarQuan | 115237 | JFK8 Education Session Part 3 | Class |
| Delicia,Cassandra | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Erik | 115237 | JFK8 Education Session Part 3 | Class |
| Turla,Rodney | 115237 | JFK8 Education Session Part 3 | Class |
| OLAYINKA,AMANDA EMEM | 115237 | JFK8 Education Session Part 3 | Class |
| OLAYINKA,AMANDA EMEM | 115237 | JFK8 Education Session Part 3 | Class |
| Akimov,Dmitrii | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez-basurto,Victor | 115237 | JFK8 Education Session Part 3 | Class |
| Vazquez,Lixsi | 115237 | JFK8 Education Session Part 3 | Class |
| Eisom,Stanley | 115237 | JFK8 Education Session Part 3 | Class |
| mclean,kadicia | 115237 | JFK8 Education Session Part 3 | Class |
| Nieves,Benito | 115237 | JFK8 Education Session Part 3 | Class |
| Nicoletti,Robert John | 115237 | JFK8 Education Session Part 3 | Class |
| Palaguachi,Angelica | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Israeil,Fadi | 115237 | JFK8 Education Session Part 3 | Class |
| Obong,Solomon | 115237 | JFK8 Education Session Part 3 | Class |
| Moran,Erica Marisol | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Jacovino,Brigette | 115237 | JFK8 Education Session Part 3 | Class |
| Vasquez,Yoori | 115237 | JFK8 Education Session Part 3 | Class |
| Almazo,Jackie Citlali | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Yaffa A | 115237 | JFK8 Education Session Part 3 | Class |
| Ellison,Markeith | 115237 | JFK8 Education Session Part 3 | Class |
| Arkliss,Temell | 115237 | JFK8 Education Session Part 3 | Class |
| Kosmala,Dorota | 115237 | JFK8 Education Session Part 3 | Class |
| Sidime,Alisar | 115237 | JFK8 Education Session Part 3 | Class |
| Lachapell,Claritza | 115237 | JFK8 Education Session Part 3 | Class |
| Tonto,Matilda | 115237 | JFK8 Education Session Part 3 | Class |
| Nunez,Wanda | 115237 | JFK8 Education Session Part 3 | Class |
| Robles,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Hannalla,safwat | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera,Evelin | 115237 | JFK8 Education Session Part 3 | Class |
| Xhemollari,Ertugert | 115237 | JFK8 Education Session Part 3 | Class |
| Merino,Christofer | 115237 | JFK8 Education Session Part 3 | Class |
| Barrios,David Benjamin | 115237 | JFK8 Education Session Part 3 | Class |
| Lewis,Jacinda | 115237 | JFK8 Education Session Part 3 | Class |
| Ratna.,K. | 115237 | JFK8 Education Session Part 3 | Class |
| Alston,Shameese | 115237 | JFK8 Education Session Part 3 | Class |
| Pickering,Skye | 115237 | JFK8 Education Session Part 3 | Class |
| Carmona,Nikolas | 115237 | JFK8 Education Session Part 3 | Class |
| Escobar,Eliud | 115237 | JFK8 Education Session Part 3 | Class |
| marceca,ugo | 115237 | JFK8 Education Session Part 3 | Class |
| Caraballo,Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Mosso,karina | 115237 | JFK8 Education Session Part 3 | Class |
| Ceron,Luis | 115237 | JFK8 Education Session Part 3 | Class |
| Boateng,Philip | 115237 | JFK8 Education Session Part 3 | Class |
| Gentles,Shanice | 115237 | JFK8 Education Session Part 3 | Class |
| Masondo,Duduzile N | 115237 | JFK8 Education Session Part 3 | Class |
| Odinga,Biston | 115237 | JFK8 Education Session Part 3 | Class |
| Stiebel,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Vera,Jenifer Johana | 115237 | JFK8 Education Session Part 3 | Class |
| Pan,Raymond | 115237 | JFK8 Education Session Part 3 | Class |
| Spencer,Natasha | 115237 | JFK8 Education Session Part 3 | Class |
| Adeboye,Nafisat | 115237 | JFK8 Education Session Part 3 | Class |
| Pierre,Clodin | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas,Yannick | 115237 | JFK8 Education Session Part 3 | Class |
| Norah,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Bovell-Proffitt,Travis | 115237 | JFK8 Education Session Part 3 | Class |
| Shonubi,Idris | 115237 | JFK8 Education Session Part 3 | Class |
| Atalla,Samer | 115237 | JFK8 Education Session Part 3 | Class |
| Murdah,James A | 115237 | JFK8 Education Session Part 3 | Class |
| Tellez,Mario A | 115237 | JFK8 Education Session Part 3 | Class |
| Horton,Yolanda | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Holley,Tiesha | 115237 | JFK8 Education Session Part 3 | Class |
| Zeferino Garcia,Yesica | 115237 | JFK8 Education Session Part 3 | Class |
| jean louis,nkrumah | 115237 | JFK8 Education Session Part 3 | Class |
| Ramos,Madeline | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Jazmine | 115237 | JFK8 Education Session Part 3 | Class |
| Shonibare,Bolade Adewale | 115237 | JFK8 Education Session Part 3 | Class |
| bogat weathley,sharon | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Christina | 115237 | JFK8 Education Session Part 3 | Class |
| Panfilo-Lira,Yonathan | 115237 | JFK8 Education Session Part 3 | Class |
| martinez,tristian ray | 115237 | JFK8 Education Session Part 3 | Class |
| Obdeus,Samantha | 115237 | JFK8 Education Session Part 3 | Class |
| Soto,Jose manuel | 115237 | JFK8 Education Session Part 3 | Class |
| Parker,Yasmeen Aaliyah-Marie | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Rodel Velasco | 115237 | JFK8 Education Session Part 3 | Class |
| Kuk,MiPokMinjung | 115237 | JFK8 Education Session Part 3 | Class |
| Castellano,Sarah | 115237 | JFK8 Education Session Part 3 | Class |
| Telesford,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Roberts,John Wendell | 115237 | JFK8 Education Session Part 3 | Class |
| Zapata,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Morris,Magdy | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,Eleanor | 115237 | JFK8 Education Session Part 3 | Class |
| Kunets,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| Stanley,Oshane | 115237 | JFK8 Education Session Part 3 | Class |
| Cuevas,Hayley | 115237 | JFK8 Education Session Part 3 | Class |
| palomo campos,pedro | 115237 | JFK8 Education Session Part 3 | Class |
| Melbourne,Tj | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Jessenia | 115237 | JFK8 Education Session Part 3 | Class |
| Lakeysha Harris-Ortega,Lakeysha | 115237 | JFK8 Education Session Part 3 | Class |
| Kien,Brian Hieu | 115237 | JFK8 Education Session Part 3 | Class |
| Cooper,Jacob | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Salu,Temi | 115237 | JFK8 Education Session Part 3 | Class |
| Buonincontri,Lynda | 115237 | JFK8 Education Session Part 3 | Class |
| KONE,SINDOU | 115237 | JFK8 Education Session Part 3 | Class |
| Knowles,Pauline | 115237 | JFK8 Education Session Part 3 | Class |
| coletti,nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Joseph,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Naselli,Nick Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Javier,Mariana | 115237 | JFK8 Education Session Part 3 | Class |
| Maldonado,Gensy Omar | 115237 | JFK8 Education Session Part 3 | Class |
| Lasalle,Shyasia | 115237 | JFK8 Education Session Part 3 | Class |
| Lampley,Monica | 115237 | JFK8 Education Session Part 3 | Class |
| Thompson,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Borja,Alonso E | 115237 | JFK8 Education Session Part 3 | Class |
| Mikhail,Sameh | 115237 | JFK8 Education Session Part 3 | Class |
| Vidal,Miguel | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Ebenezer Essilfie | 115237 | JFK8 Education Session Part 3 | Class |
| DiCarlo,Tyla | 115237 | JFK8 Education Session Part 3 | Class |
| Neil,Norman | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Olmedo,Janet | 115237 | JFK8 Education Session Part 3 | Class |
| Makar,Magdy | 115237 | JFK8 Education Session Part 3 | Class |
| Desvarieux,Dieumima | 115237 | JFK8 Education Session Part 3 | Class |
| Pena,Jarelis | 115237 | JFK8 Education Session Part 3 | Class |
| Ventura,Joel | 115237 | JFK8 Education Session Part 3 | Class |
| Aleski,Tammy | 115237 | JFK8 Education Session Part 3 | Class |
| Currie,Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| LaPiedra,John E | 115237 | JFK8 Education Session Part 3 | Class |
| RANDAZZO,Gaspare | 115237 | JFK8 Education Session Part 3 | Class |
| Hunter,Neville | 115237 | JFK8 Education Session Part 3 | Class |
| Zurek,Kamil Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Witherspoon,Aja | 115237 | JFK8 Education Session Part 3 | Class |
| Youmans,Shaquan | 115237 | JFK8 Education Session Part 3 | Class |
| Osundairo,Akeem Kareem | 115237 | JFK8 Education Session Part 3 | Class |
| mejia,bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Bogle,Tiffany | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Nairoby | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Nairoby | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Ali | 115237 | JFK8 Education Session Part 3 | Class |
| hernandez,Jaime | 115237 | JFK8 Education Session Part 3 | Class |
| Colon Jr,Hector F | 115237 | JFK8 Education Session Part 3 | Class |
| russo,denise | 115237 | JFK8 Education Session Part 3 | Class |
| russo,denise | 115237 | JFK8 Education Session Part 3 | Class |
| Fofana,Alhaji | 115237 | JFK8 Education Session Part 3 | Class |
| Hargrove,Azure | 115237 | JFK8 Education Session Part 3 | Class |
| Saunders,Samantha | 115237 | JFK8 Education Session Part 3 | Class |
| Ali,Mohammad Ahasan | 115237 | JFK8 Education Session Part 3 | Class |
| Ali,Mohammad Ahasan | 115237 | JFK8 Education Session Part 3 | Class |
| Isler,Chris | 115237 | JFK8 Education Session Part 3 | Class |
| Gomez Guzman,Alexis | 115237 | JFK8 Education Session Part 3 | Class |
| Solorzano,Alondra Belen | 115237 | JFK8 Education Session Part 3 | Class |
| Centron,Emelita | 115237 | JFK8 Education Session Part 3 | Class |
| Ruiz,Osvaldo Lorenzo | 115237 | JFK8 Education Session Part 3 | Class |
| baldeh,ousman | 115237 | JFK8 Education Session Part 3 | Class |
| Recinos,Veronica | 115237 | JFK8 Education Session Part 3 | Class |
| Miller,Paul | 115237 | JFK8 Education Session Part 3 | Class |
| Pannasch,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Olmedo,Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Kamara,Natasha Caprice | 115237 | JFK8 Education Session Part 3 | Class |
| Valero,Irvin Gustavo | 115237 | JFK8 Education Session Part 3 | Class |
| ch,amina | 115237 | JFK8 Education Session Part 3 | Class |
| ch,amina | 115237 | JFK8 Education Session Part 3 | Class |
| Kanlong,Washington Andres | 115237 | JFK8 Education Session Part 3 | Class |
| Edwards,Aiden | 115237 | JFK8 Education Session Part 3 | Class |
| Dawson,Octavia | 115237 | JFK8 Education Session Part 3 | Class |
| Ulloa,Genesis | 115237 | JFK8 Education Session Part 3 | Class |
| Morina,Edmond | 115237 | JFK8 Education Session Part 3 | Class |
| Ramsook,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Dauti,Dona | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Montas,Roberto | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Toreron | 115237 | JFK8 Education Session Part 3 | Class |
| Dargan,Yakiiya | 115237 | JFK8 Education Session Part 3 | Class |
| Miscione,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| badran,ahmed | 115237 | JFK8 Education Session Part 3 | Class |
| Marksman,Cuthbert | 115237 | JFK8 Education Session Part 3 | Class |
| El turk,Foursan | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Shakievia | 115237 | JFK8 Education Session Part 3 | Class |
| Rumolo,Nicholas | 115237 | JFK8 Education Session Part 3 | Class |
| Pun,Fu Ling | 115237 | JFK8 Education Session Part 3 | Class |
| Pittman,Aaron | 115237 | JFK8 Education Session Part 3 | Class |
| Pittman,Aaron | 115237 | JFK8 Education Session Part 3 | Class |
| Banievicz,Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez Alvarado,Miguel Angel | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez Alvarado,Miguel Angel | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Zandler,Erika | 115237 | JFK8 Education Session Part 3 | Class |
| Glenn,Marvin | 115237 | JFK8 Education Session Part 3 | Class |
| Hussen,Sameh | 115237 | JFK8 Education Session Part 3 | Class |
| Hussen,Sameh | 115237 | JFK8 Education Session Part 3 | Class |
| Amiraly,Pendo | 115237 | JFK8 Education Session Part 3 | Class |
| Brenes,Gabriel | 115237 | JFK8 Education Session Part 3 | Class |
| Lam,Windy | 115237 | JFK8 Education Session Part 3 | Class |
| Chan,Sup Mooi | 115237 | JFK8 Education Session Part 3 | Class |
| Speciale,Christina | 115237 | JFK8 Education Session Part 3 | Class |
| Desronvil,Allex | 115237 | JFK8 Education Session Part 3 | Class |
| Yusuf,Aziyah | 115237 | JFK8 Education Session Part 3 | Class |
| Wagner,Sidney Marc | 115237 | JFK8 Education Session Part 3 | Class |
| Gilmore,Kimberly | 115237 | JFK8 Education Session Part 3 | Class |
| Bhuiyan,Mohammad | 115237 | JFK8 Education Session Part 3 | Class |
| Suarez,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Watkins,Arric | 115237 | JFK8 Education Session Part 3 | Class |
| Balogun,Samusideen | 115237 | JFK8 Education Session Part 3 | Class |
| Chen,Jingjing | 115237 | JFK8 Education Session Part 3 | Class |
| Quezada,Raysa | 115237 | JFK8 Education Session Part 3 | Class |
| mubin,khurram | 115237 | JFK8 Education Session Part 3 | Class |
| KEITA,MARIE | 115237 | JFK8 Education Session Part 3 | Class |
| Jasper,Darella | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas,April | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Hilsia Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Tang,Szewai Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Alawlaqi,Saleh | 115237 | JFK8 Education Session Part 3 | Class |
| gamaralla gedara,sameera | 115237 | JFK8 Education Session Part 3 | Class |
| Perea,April | 115237 | JFK8 Education Session Part 3 | Class |
| valdez,Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Gupta,Prakhar | 115237 | JFK8 Education Session Part 3 | Class |
| sylla,brima | 115237 | JFK8 Education Session Part 3 | Class |
| Richardson,Nya Ashley | 115237 | JFK8 Education Session Part 3 | Class |
| Kneeshaw,Ciara Aileen | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Flaherty,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| valentine,lonnie | 115237 | JFK8 Education Session Part 3 | Class |
| Aforigho,Bose Faith | 115237 | JFK8 Education Session Part 3 | Class |
| Harrington,Deion | 115237 | JFK8 Education Session Part 3 | Class |
| Hamilton,Phillon | 115237 | JFK8 Education Session Part 3 | Class |
| Layana,Bertha | 115237 | JFK8 Education Session Part 3 | Class |
| Myers III,Vincent | 115237 | JFK8 Education Session Part 3 | Class |
| Asbell,Tevin | 115237 | JFK8 Education Session Part 3 | Class |
| Overgaard,Eric | 115237 | JFK8 Education Session Part 3 | Class |
| Uruchima,Isamar | 115237 | JFK8 Education Session Part 3 | Class |
| Lawrence,Danecka D | 115237 | JFK8 Education Session Part 3 | Class |
| Lara,Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Dolah,A.Rod | 115237 | JFK8 Education Session Part 3 | Class |
| Riddick,Malachi | 115237 | JFK8 Education Session Part 3 | Class |
| Petithomme,Widmia | 115237 | JFK8 Education Session Part 3 | Class |
| Parker,Damion | 115237 | JFK8 Education Session Part 3 | Class |
| Fonville,Andre | 115237 | JFK8 Education Session Part 3 | Class |
| Doumbia,Brahima | 115237 | JFK8 Education Session Part 3 | Class |
| Petion,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Florestal,Gontrand Elister | 115237 | JFK8 Education Session Part 3 | Class |
| Wilkins-Wilson,Jermaine | 115237 | JFK8 Education Session Part 3 | Class |
| Baron,Shabba Camala | 115237 | JFK8 Education Session Part 3 | Class |
| Rapino,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Victoria | 115237 | JFK8 Education Session Part 3 | Class |
| Arice,Sherwin | 115237 | JFK8 Education Session Part 3 | Class |
| Tompkins,Thomas | 115237 | JFK8 Education Session Part 3 | Class |
| Minnis,Tyrone | 115237 | JFK8 Education Session Part 3 | Class |
| Wright,Toenaejah | 115237 | JFK8 Education Session Part 3 | Class |
| alali,omran | 115237 | JFK8 Education Session Part 3 | Class |
| HART,ROBERT | 115237 | JFK8 Education Session Part 3 | Class |
| Manrique,Melissa R | 115237 | JFK8 Education Session Part 3 | Class |
| Roman,Ray | 115237 | JFK8 Education Session Part 3 | Class |
| Roman,Ray | 115237 | JFK8 Education Session Part 3 | Class |
| Febres,Guillermina | 115237 | JFK8 Education Session Part 3 | Class |
| Cipollone,Sandra Patricia | 115237 | JFK8 Education Session Part 3 | Class |
| Gatto,Ronald | 115237 | JFK8 Education Session Part 3 | Class |
| Salas,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Russo,Salvatore | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Adams,Daquan | 115237 | JFK8 Education Session Part 3 | Class |
| Zeev,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Sanders,Trinicia | 115237 | JFK8 Education Session Part 3 | Class |
| Douglas,Zechary | 115237 | JFK8 Education Session Part 3 | Class |
| McLymont,Cornelia | 115237 | JFK8 Education Session Part 3 | Class |
| PEREZ,WERNER AGUSTIN | 115237 | JFK8 Education Session Part 3 | Class |
| Kosar,Mustafa | 115237 | JFK8 Education Session Part 3 | Class |
| Ferrell,Tae | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Carmen M | 115237 | JFK8 Education Session Part 3 | Class |
| Worswick,sunny | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Castillo,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Michael Adam | 115237 | JFK8 Education Session Part 3 | Class |
| Vann,Niesha | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,evelyn | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,evelyn | 115237 | JFK8 Education Session Part 3 | Class |
| Cisse,moussa | 115237 | JFK8 Education Session Part 3 | Class |
| Taylor,Keeno | 115237 | JFK8 Education Session Part 3 | Class |
| Aget,Chris | 115237 | JFK8 Education Session Part 3 | Class |
| Krah,Jesse | 115237 | JFK8 Education Session Part 3 | Class |
| Forbes,Brennise | 115237 | JFK8 Education Session Part 3 | Class |
| Zahorniak Sr,Michael Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Luna,Adenauer | 115237 | JFK8 Education Session Part 3 | Class |
| Sbei,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Trapasso,maureen | 115237 | JFK8 Education Session Part 3 | Class |
| Mikhail,Mina | 115237 | JFK8 Education Session Part 3 | Class |
| Persichetty,Patricia | 115237 | JFK8 Education Session Part 3 | Class |
| Prestera,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Daymaris | 115237 | JFK8 Education Session Part 3 | Class |
| Gikeneh,Alimami | 115237 | JFK8 Education Session Part 3 | Class |
| Bumbrey,Harold | 115237 | JFK8 Education Session Part 3 | Class |
| Bunch,Alexandra | 115237 | JFK8 Education Session Part 3 | Class |
| Vixama,Caleb M | 115237 | JFK8 Education Session Part 3 | Class |
| Baggot Jr,Thomas M | 115237 | JFK8 Education Session Part 3 | Class |
| Olugbodi,Favour | 115237 | JFK8 Education Session Part 3 | Class |
| Lima,Esteban | 115237 | JFK8 Education Session Part 3 | Class |
| cateau,glendon | 115237 | JFK8 Education Session Part 3 | Class |
| Dupree,Tiesha | 115237 | JFK8 Education Session Part 3 | Class |
| Barber,Christina Marie | 115237 | JFK8 Education Session Part 3 | Class |
| Aybar,Karen Maited | 115237 | JFK8 Education Session Part 3 | Class |
| Meza,Jose A. | 115237 | JFK8 Education Session Part 3 | Class |
| prasetya,Adrian | 115237 | JFK8 Education Session Part 3 | Class |
| Triminio Paz,Lesly Anyel | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Romario | 115237 | JFK8 Education Session Part 3 | Class |
| Browne,Brianna | 115237 | JFK8 Education Session Part 3 | Class |
| Buduen Jr,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Juan | 115237 | JFK8 Education Session Part 3 | Class |
| Munoz,Louis | 115237 | JFK8 Education Session Part 3 | Class |
| Hart,Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Tavares,Rocky | 115237 | JFK8 Education Session Part 3 | Class |
| Daniel,Mark | 115237 | JFK8 Education Session Part 3 | Class |
| Baron,Raquiel | 115237 | JFK8 Education Session Part 3 | Class |
| jarvis,Mia | 115237 | JFK8 Education Session Part 3 | Class |
| Mostafa,Esraa Mahmoud | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Ricardo J | 115237 | JFK8 Education Session Part 3 | Class |
| sparacino,steven | 115237 | JFK8 Education Session Part 3 | Class |
| sparacino,steven | 115237 | JFK8 Education Session Part 3 | Class |
| Clark,Philip | 115237 | JFK8 Education Session Part 3 | Class |
| Oruc,Fatma | 115237 | JFK8 Education Session Part 3 | Class |
| Ashman-Samuels,Chalese Julia | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ameer,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| OWUSU,Nikkie | 115237 | JFK8 Education Session Part 3 | Class |
| Gordon,Sade | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Martha | 115237 | JFK8 Education Session Part 3 | Class |
| Mackay,Chasity | 115237 | JFK8 Education Session Part 3 | Class |
| Mackay,Chasity | 115237 | JFK8 Education Session Part 3 | Class |
| rivera,angelica | 115237 | JFK8 Education Session Part 3 | Class |
| Rios,Yesenia | 115237 | JFK8 Education Session Part 3 | Class |
| Rios,Yesenia | 115237 | JFK8 Education Session Part 3 | Class |
| Zhou,Liyan Nina | 115237 | JFK8 Education Session Part 3 | Class |
| Santos,David | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes Morales,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes Morales,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Fuentes,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Jawed,salim J | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Jaquon | 115237 | JFK8 Education Session Part 3 | Class |
| Varvarigos,Juan | 115237 | JFK8 Education Session Part 3 | Class |
| Noresca,Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Saab,Fatima | 115237 | JFK8 Education Session Part 3 | Class |
| Babalola,Olufemi L | 115237 | JFK8 Education Session Part 3 | Class |
| Mancuso,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,Welbis | 115237 | JFK8 Education Session Part 3 | Class |
| Masewge,Amila Sri Madusanka | 115237 | JFK8 Education Session Part 3 | Class |
| Vargas,Alejandro | 115237 | JFK8 Education Session Part 3 | Class |
| Wainwright,Kimberly | 115237 | JFK8 Education Session Part 3 | Class |
| Appiah,Louis | 115237 | JFK8 Education Session Part 3 | Class |
| Vazquez,Dulce | 115237 | JFK8 Education Session Part 3 | Class |
| Amin,Esther | 115237 | JFK8 Education Session Part 3 | Class |
| Celli,James Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Dort,Marc | 115237 | JFK8 Education Session Part 3 | Class |
| Pierre,Tyshawn | 115237 | JFK8 Education Session Part 3 | Class |
| Youngblood,Tremayne | 115237 | JFK8 Education Session Part 3 | Class |
| Calixto rosas,Adolph | 115237 | JFK8 Education Session Part 3 | Class |
| Marku,Jasmina | 115237 | JFK8 Education Session Part 3 | Class |
| Marku,Jasmina | 115237 | JFK8 Education Session Part 3 | Class |
| cruz,maria Esther | 115237 | JFK8 Education Session Part 3 | Class |
| Zuniga,Giovanne | 115237 | JFK8 Education Session Part 3 | Class |
| Terrero,Felix | 115237 | JFK8 Education Session Part 3 | Class |
| Ali,Elsiddig | 115237 | JFK8 Education Session Part 3 | Class |
| Osuolale Alaka,Sunkanmi | 115237 | JFK8 Education Session Part 3 | Class |
| Sharrock,Frankie | 115237 | JFK8 Education Session Part 3 | Class |
| Weerasinghe,Mohan | 115237 | JFK8 Education Session Part 3 | Class |
| Hanton,Elise | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Jordan | 115237 | JFK8 Education Session Part 3 | Class |
| Fadairo,Shola | 115237 | JFK8 Education Session Part 3 | Class |
| Gadsden,Brianna | 115237 | JFK8 Education Session Part 3 | Class |
| Odewale,Oluwadamilola | 115237 | JFK8 Education Session Part 3 | Class |
| Anzellotto,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Anzellotto,Michael | 115237 | JFK8 Education Session Part 3 | Class |

Amazon_000398

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Harris,Dani | 115237 | JFK8 Education Session Part 3 | Class |
| bradford,rushell | 115237 | JFK8 Education Session Part 3 | Class |
| Basurto,Braulio | 115237 | JFK8 Education Session Part 3 | Class |
| Evans,Mark | 115237 | JFK8 Education Session Part 3 | Class |
| Manel,Mangalika | 115237 | JFK8 Education Session Part 3 | Class |
| Harris,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Velez,Hebran | 115237 | JFK8 Education Session Part 3 | Class |
| Romero,Vanessa | 115237 | JFK8 Education Session Part 3 | Class |
| Anam-etemfiok,Chinyere D | 115237 | JFK8 Education Session Part 3 | Class |
| Swaby,Sevesha | 115237 | JFK8 Education Session Part 3 | Class |
| Aquino,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Avila,Robert Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Paredes,Martha Lucia | 115237 | JFK8 Education Session Part 3 | Class |
| Bello,Stephen | 115237 | JFK8 Education Session Part 3 | Class |
| Von bracht Jr,Gerard | 115237 | JFK8 Education Session Part 3 | Class |
| Shippley,Stephon | 115237 | JFK8 Education Session Part 3 | Class |
| Tiu,Kleverson | 115237 | JFK8 Education Session Part 3 | Class |
| Babes,Mr | 115237 | JFK8 Education Session Part 3 | Class |
| Coppedge,Gary | 115237 | JFK8 Education Session Part 3 | Class |
| MARMOLEJO,ALBERTO | 115237 | JFK8 Education Session Part 3 | Class |
| Ndoye,Ndeye Adama | 115237 | JFK8 Education Session Part 3 | Class |
| Ndoye,Ndeye Adama | 115237 | JFK8 Education Session Part 3 | Class |
| Gil,Steven | 115237 | JFK8 Education Session Part 3 | Class |
| savino,thomas | 115237 | JFK8 Education Session Part 3 | Class |
| lugo,michael | 115237 | JFK8 Education Session Part 3 | Class |
| Enriquez,David Patrick | 115237 | JFK8 Education Session Part 3 | Class |
| Castaneda,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell,Tamia | 115237 | JFK8 Education Session Part 3 | Class |
| Santos Luna,Jean | 115237 | JFK8 Education Session Part 3 | Class |
| Santos Luna,Jean | 115237 | JFK8 Education Session Part 3 | Class |
| McCray,Brittney | 115237 | JFK8 Education Session Part 3 | Class |
| Luna,Urbano | 115237 | JFK8 Education Session Part 3 | Class |
| Mcsam,Laniya | 115237 | JFK8 Education Session Part 3 | Class |
| hernandez,miguelina | 115237 | JFK8 Education Session Part 3 | Class |
| Gillard,Darance Luis | 115237 | JFK8 Education Session Part 3 | Class |
| Guzman,Estefany | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Reginald Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| skaf,bilal | 115237 | JFK8 Education Session Part 3 | Class |
| britt,Brandon James | 115237 | JFK8 Education Session Part 3 | Class |
| Young,Rosario Katherine | 115237 | JFK8 Education Session Part 3 | Class |
| Miller,Shameeka | 115237 | JFK8 Education Session Part 3 | Class |
| Montgomery,Annie | 115237 | JFK8 Education Session Part 3 | Class |
| Pereira,Peter | 115237 | JFK8 Education Session Part 3 | Class |
| Barbee,Erika | 115237 | JFK8 Education Session Part 3 | Class |
| Trelles,Daisy | 115237 | JFK8 Education Session Part 3 | Class |
| Chin,Derek | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell,Mikaela | 115237 | JFK8 Education Session Part 3 | Class |
| Alcantara,BRYAN | 115237 | JFK8 Education Session Part 3 | Class |
| Chhay,Eric | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ikram,Muhammed Asim | 115237 | JFK8 Education Session Part 3 | Class |
| Denis,Carmen | 115237 | JFK8 Education Session Part 3 | Class |
| Lozada,Grissel Ruiz | 115237 | JFK8 Education Session Part 3 | Class |
| Pierre,Johnny | 115237 | JFK8 Education Session Part 3 | Class |
| Alcide,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Saquan | 115237 | JFK8 Education Session Part 3 | Class |
| Brandon,Akeisha | 115237 | JFK8 Education Session Part 3 | Class |
| Panzardi,Jonathan L | 115237 | JFK8 Education Session Part 3 | Class |
| Aziz,Selim | 115237 | JFK8 Education Session Part 3 | Class |
| Aziz,Selim | 115237 | JFK8 Education Session Part 3 | Class |
| hossain,sheikh | 115237 | JFK8 Education Session Part 3 | Class |
| White,Trimeshia | 115237 | JFK8 Education Session Part 3 | Class |
| White,Trimeshia | 115237 | JFK8 Education Session Part 3 | Class |
| Almonte De La Rosa,Luis Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Puzhnyak,Yuriy | 115237 | JFK8 Education Session Part 3 | Class |
| Jordan,Erik | 115237 | JFK8 Education Session Part 3 | Class |
| Jaquez Uceta,Katherine | 115237 | JFK8 Education Session Part 3 | Class |
| Sierra,Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Dejesus,Xariel Lee | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Melissa | 115237 | JFK8 Education Session Part 3 | Class |
| Affissio,John Peter | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera,Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Taymek | 115237 | JFK8 Education Session Part 3 | Class |
| Kearse,Leanette | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Jerdeani | 115237 | JFK8 Education Session Part 3 | Class |
| Powell,Chapa | 115237 | JFK8 Education Session Part 3 | Class |
| Sylvain,Stanley | 115237 | JFK8 Education Session Part 3 | Class |
| Derisse,Roody | 115237 | JFK8 Education Session Part 3 | Class |
| almonte,jose luis | 115237 | JFK8 Education Session Part 3 | Class |
| Fenwick,Panjola | 115237 | JFK8 Education Session Part 3 | Class |
| Howard,Edward | 115237 | JFK8 Education Session Part 3 | Class |
| Mendez,Jhoana | 115237 | JFK8 Education Session Part 3 | Class |
| marsh,lynette | 115237 | JFK8 Education Session Part 3 | Class |
| Lombardi,Kaitlyn | 115237 | JFK8 Education Session Part 3 | Class |
| Rogers,Shaheim | 115237 | JFK8 Education Session Part 3 | Class |
| Hart,Alexis | 115237 | JFK8 Education Session Part 3 | Class |
| Vasquez,Jarin | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Beyonce | 115237 | JFK8 Education Session Part 3 | Class |
| mosley,sherri | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Joel | 115237 | JFK8 Education Session Part 3 | Class |
| Breaker,Keshawn | 115237 | JFK8 Education Session Part 3 | Class |
| SPRINKLE,Mario | 115237 | JFK8 Education Session Part 3 | Class |
| SPRINKLE,Mario | 115237 | JFK8 Education Session Part 3 | Class |
| Hassan,Mahmoud Ragab | 115237 | JFK8 Education Session Part 3 | Class |
| Birnbaum,David B | 115237 | JFK8 Education Session Part 3 | Class |
| Albasir,Ali Farris | 115237 | JFK8 Education Session Part 3 | Class |
| Crespo,Melanie | 115237 | JFK8 Education Session Part 3 | Class |
| Olivier,Klani | 115237 | JFK8 Education Session Part 3 | Class |
| Prestigiacomo,Charles | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Felice,Francine | 115237 | JFK8 Education Session Part 3 | Class |
| Dlimi,Mouhcine | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera,Deysi | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera,Deysi | 115237 | JFK8 Education Session Part 3 | Class |
| Romero,Dulce Fabiola | 115237 | JFK8 Education Session Part 3 | Class |
| gutierrez ordonez,marta | 115237 | JFK8 Education Session Part 3 | Class |
| Palomeque,Jessi | 115237 | JFK8 Education Session Part 3 | Class |
| njoku,stephanie | 115237 | JFK8 Education Session Part 3 | Class |
| Lam,Hong | 115237 | JFK8 Education Session Part 3 | Class |
| Castillo,Josue Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Castillo,Josue Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Irizarry,Luke | 115237 | JFK8 Education Session Part 3 | Class |
| Diallo,Amadou | 115237 | JFK8 Education Session Part 3 | Class |
| GAMBOA STOKES,DENNIS A | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez Garcia,Josefina | 115237 | JFK8 Education Session Part 3 | Class |
| Gutierrez,orlando | 115237 | JFK8 Education Session Part 3 | Class |
| Norris,Marwan Mike | 115237 | JFK8 Education Session Part 3 | Class |
| Bernard,Valerie | 115237 | JFK8 Education Session Part 3 | Class |
| Elvir,Erick | 115237 | JFK8 Education Session Part 3 | Class |
| Dessources,Abelard Lapointe | 115237 | JFK8 Education Session Part 3 | Class |
| James,Will | 115237 | JFK8 Education Session Part 3 | Class |
| caton,grace | 115237 | JFK8 Education Session Part 3 | Class |
| Barragan,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Tullock,Taneyah | 115237 | JFK8 Education Session Part 3 | Class |
| Sheikh,Muhammad Farhan | 115237 | JFK8 Education Session Part 3 | Class |
| Saeed,Ahmed | 115237 | JFK8 Education Session Part 3 | Class |
| sherif,essam | 115237 | JFK8 Education Session Part 3 | Class |
| roach,lincoln | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Justina | 115237 | JFK8 Education Session Part 3 | Class |
| Rentas,Guillermo | 115237 | JFK8 Education Session Part 3 | Class |
| Tun,Zaw Yar Zar | 115237 | JFK8 Education Session Part 3 | Class |
| Fox,Gabriel | 115237 | JFK8 Education Session Part 3 | Class |
| Min,AyeChan | 115237 | JFK8 Education Session Part 3 | Class |
| Atete,Kelvin Ogheneochuko | 115237 | JFK8 Education Session Part 3 | Class |
| phillips,cleo | 115237 | JFK8 Education Session Part 3 | Class |
| Degraffenreid,Kamal | 115237 | JFK8 Education Session Part 3 | Class |
| MARTINEZ,JAY | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Justine | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Alizet | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Taneesha | 115237 | JFK8 Education Session Part 3 | Class |
| Gustave,Lorna | 115237 | JFK8 Education Session Part 3 | Class |
| Gustave,Lorna | 115237 | JFK8 Education Session Part 3 | Class |
| Miller,Keeyona J | 115237 | JFK8 Education Session Part 3 | Class |
| Carlos,Reamil | 115237 | JFK8 Education Session Part 3 | Class |
| roman,camila | 115237 | JFK8 Education Session Part 3 | Class |
| Billings,Minaya Dominique | 115237 | JFK8 Education Session Part 3 | Class |
| Odewale,Oluwafemi | 115237 | JFK8 Education Session Part 3 | Class |
| Weaver-Moore,DreShon | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Andrea | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Peralta,Adolfo | 115237 | JFK8 Education Session Part 3 | Class |
| Guaman,Jennifer Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Saunders,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Pickett,Colleek E | 115237 | JFK8 Education Session Part 3 | Class |
| Rios,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| OSAKWE,sam | 115237 | JFK8 Education Session Part 3 | Class |
| Czeisler,Elan | 115237 | JFK8 Education Session Part 3 | Class |
| hanley,sharla | 115237 | JFK8 Education Session Part 3 | Class |
| Clarke,Sade | 115237 | JFK8 Education Session Part 3 | Class |
| Clarke,Sade | 115237 | JFK8 Education Session Part 3 | Class |
| Tetteh,George | 115237 | JFK8 Education Session Part 3 | Class |
| Forde,Sherwayne | 115237 | JFK8 Education Session Part 3 | Class |
| Ridley,Abdula | 115237 | JFK8 Education Session Part 3 | Class |
| Montes,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| LEON DE LA TORRE,BELISARIO | 115237 | JFK8 Education Session Part 3 | Class |
| EgbeHubbard,Sylvia Emiene | 115237 | JFK8 Education Session Part 3 | Class |
| Christopher Santos,Christopher v | 115237 | JFK8 Education Session Part 3 | Class |
| Pimentel,Ambar M | 115237 | JFK8 Education Session Part 3 | Class |
| Daley,Richard Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Bengochea,Luis | 115237 | JFK8 Education Session Part 3 | Class |
| Ng,Theresa | 115237 | JFK8 Education Session Part 3 | Class |
| adam,dorissa | 115237 | JFK8 Education Session Part 3 | Class |
| Minton,Sarah | 115237 | JFK8 Education Session Part 3 | Class |
| Moron villarroel,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Nankumba,hadija | 115237 | JFK8 Education Session Part 3 | Class |
| Mckinnon,Adrianna | 115237 | JFK8 Education Session Part 3 | Class |
| Mian,Irfan | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Ferney | 115237 | JFK8 Education Session Part 3 | Class |
| Carranza,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Skelly,Ashley | 115237 | JFK8 Education Session Part 3 | Class |
| Pacheco,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Marin,Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Choy,Jenar Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Quentin | 115237 | JFK8 Education Session Part 3 | Class |
| Lewis,John | 115237 | JFK8 Education Session Part 3 | Class |
| Pierre-Toussaint,David S | 115237 | JFK8 Education Session Part 3 | Class |
| Diawara,Sidy | 115237 | JFK8 Education Session Part 3 | Class |
| Cupid,Arron | 115237 | JFK8 Education Session Part 3 | Class |
| Ahmed,Fahim | 115237 | JFK8 Education Session Part 3 | Class |
| Oluokun,Olukemi | 115237 | JFK8 Education Session Part 3 | Class |
| Castaneda,Kenia | 115237 | JFK8 Education Session Part 3 | Class |
| Peralta,Jenniffer | 115237 | JFK8 Education Session Part 3 | Class |
| Mirzakhujaev,Ibrokhimkhuja | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Dorphus | 115237 | JFK8 Education Session Part 3 | Class |
| Danesi,Jafar | 115237 | JFK8 Education Session Part 3 | Class |
| Davidson-Decarish,Rose-Ann | 115237 | JFK8 Education Session Part 3 | Class |
| Ramirez,Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Aye,Yae | 115237 | JFK8 Education Session Part 3 | Class |
| Popal,Yasameen | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Melendez-Fuster,Nikole | 115237 | JFK8 Education Session Part 3 | Class |
| Wurie,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Freeman,Kayla | 115237 | JFK8 Education Session Part 3 | Class |
| OROPO,ABDUSALAM | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Fernandez,Henry | 115237 | JFK8 Education Session Part 3 | Class |
| warsaw,megan | 115237 | JFK8 Education Session Part 3 | Class |
| Caldwell,Romello | 115237 | JFK8 Education Session Part 3 | Class |
| Arouif,Youssef | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Antoine,Venix | 115237 | JFK8 Education Session Part 3 | Class |
| Gloria,Sergio | 115237 | JFK8 Education Session Part 3 | Class |
| Jenkins,Theodore | 115237 | JFK8 Education Session Part 3 | Class |
| Ramos,Edward | 115237 | JFK8 Education Session Part 3 | Class |
| Eustate Nunez,Jose Anneudy | 115237 | JFK8 Education Session Part 3 | Class |
| Phillips,Ezra | 115237 | JFK8 Education Session Part 3 | Class |
| Benitez,Maurice | 115237 | JFK8 Education Session Part 3 | Class |
| Saeed,Muhammad | 115237 | JFK8 Education Session Part 3 | Class |
| ESTEVE,Max A | 115237 | JFK8 Education Session Part 3 | Class |
| Chen,Ming | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Ojay | 115237 | JFK8 Education Session Part 3 | Class |
| Fludd,Shiheim | 115237 | JFK8 Education Session Part 3 | Class |
| PELUFFO,Cesar | 115237 | JFK8 Education Session Part 3 | Class |
| Combs,Dora | 115237 | JFK8 Education Session Part 3 | Class |
| Aguilar,Alicia | 115237 | JFK8 Education Session Part 3 | Class |
| Lamberti,Joshua | 115237 | JFK8 Education Session Part 3 | Class |
| Menequin,Miguel | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Venessa | 115237 | JFK8 Education Session Part 3 | Class |
| Villegas,Olayemi Olubusola | 115237 | JFK8 Education Session Part 3 | Class |
| Sampson,Philmore | 115237 | JFK8 Education Session Part 3 | Class |
| Benavides,Daniella | 115237 | JFK8 Education Session Part 3 | Class |
| Ezeh,Chibuike | 115237 | JFK8 Education Session Part 3 | Class |
| Cambria,Bartholomew | 115237 | JFK8 Education Session Part 3 | Class |
| Rashid,Abdullah | 115237 | JFK8 Education Session Part 3 | Class |
| Maloloy-on,Raffy | 115237 | JFK8 Education Session Part 3 | Class |
| Galicia,Yoselyn | 115237 | JFK8 Education Session Part 3 | Class |
| Nazario,Luis Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Mcdaniel,Tamia | 115237 | JFK8 Education Session Part 3 | Class |
| Singh,Roxy | 115237 | JFK8 Education Session Part 3 | Class |
| Tapia,Eisten | 115237 | JFK8 Education Session Part 3 | Class |
| Roye,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Charles,Celassie | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Jordan Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Mecca,Iasia | 115237 | JFK8 Education Session Part 3 | Class |
| Lawton,Herbert | 115237 | JFK8 Education Session Part 3 | Class |
| Kazeem,Olabisi | 115237 | JFK8 Education Session Part 3 | Class |
| Suleman,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Anthony,Jeremiah | 115237 | JFK8 Education Session Part 3 | Class |
| Salva,Juan M | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Mammeri,Menad | 115237 | JFK8 Education Session Part 3 | Class |
| Lee,Jiinchan | 115237 | JFK8 Education Session Part 3 | Class |
| Theivendram,Abishanth | 115237 | JFK8 Education Session Part 3 | Class |
| Whitehead,Ja-Mel J | 115237 | JFK8 Education Session Part 3 | Class |
| Whitehead,Ja-Mel J | 115237 | JFK8 Education Session Part 3 | Class |
| Humphrey,Herbert | 115237 | JFK8 Education Session Part 3 | Class |
| bennebri,youcef | 115237 | JFK8 Education Session Part 3 | Class |
| ELGHOBARY,OMER | 115237 | JFK8 Education Session Part 3 | Class |
| fitzgerald,tenarge | 115237 | JFK8 Education Session Part 3 | Class |
| De La Cruz,Arthur | 115237 | JFK8 Education Session Part 3 | Class |
| Issa,Eslam Mohamed mabrouk | 115237 | JFK8 Education Session Part 3 | Class |
| Hinton,Shamar Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| thein,samantha shwe | 115237 | JFK8 Education Session Part 3 | Class |
| Powell,Kamerhon | 115237 | JFK8 Education Session Part 3 | Class |
| Jarrett,Robert Lincoln | 115237 | JFK8 Education Session Part 3 | Class |
| Acosta,Jimmy Jr | 115237 | JFK8 Education Session Part 3 | Class |
| Senquiz,Ashley | 115237 | JFK8 Education Session Part 3 | Class |
| Mootoo,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Scarlett,Malachi | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Dwayne | 115237 | JFK8 Education Session Part 3 | Class |
| Laiton,Vanesa | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Lessly Jackeline | 115237 | JFK8 Education Session Part 3 | Class |
| Baptiste,Kayla | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Victoria | 115237 | JFK8 Education Session Part 3 | Class |
| Gilles,Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| tenempaguay,stephanie | 115237 | JFK8 Education Session Part 3 | Class |
| Mambuana,Mamie M | 115237 | JFK8 Education Session Part 3 | Class |
| Mambuana,Mamie M | 115237 | JFK8 Education Session Part 3 | Class |
| Bellamy,Mateo | 115237 | JFK8 Education Session Part 3 | Class |
| Peralta,Alan | 115237 | JFK8 Education Session Part 3 | Class |
| rizkalla,Basem Boshra | 115237 | JFK8 Education Session Part 3 | Class |
| rizkalla,Basem Boshra | 115237 | JFK8 Education Session Part 3 | Class |
| Fiumefreddo,Johnny | 115237 | JFK8 Education Session Part 3 | Class |
| Kabulov,Otabek | 115237 | JFK8 Education Session Part 3 | Class |
| HOSSAIN,MD | 115237 | JFK8 Education Session Part 3 | Class |
| Naji,Majed | 115237 | JFK8 Education Session Part 3 | Class |
| sumo,mayama | 115237 | JFK8 Education Session Part 3 | Class |
| sumo,mayama | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Lance | 115237 | JFK8 Education Session Part 3 | Class |
| Martin,Steven | 115237 | JFK8 Education Session Part 3 | Class |
| Tye,Ekithia | 115237 | JFK8 Education Session Part 3 | Class |
| Debrosse,Dawens | 115237 | JFK8 Education Session Part 3 | Class |
| Murray,Logan Jack | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Nicholas | 115237 | JFK8 Education Session Part 3 | Class |
| Prusak,Chester M | 115237 | JFK8 Education Session Part 3 | Class |
| Prusak,Chester M | 115237 | JFK8 Education Session Part 3 | Class |
| Perreira,Samuel Victor | 115237 | JFK8 Education Session Part 3 | Class |
| Velazquez,Nathaniel | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Walter | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Contreras,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Laboy Alvarez,Mayrelsy D | 115237 | JFK8 Education Session Part 3 | Class |
| Spataro,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Perry,Caleb | 115237 | JFK8 Education Session Part 3 | Class |
| Harris,Nadeen | 115237 | JFK8 Education Session Part 3 | Class |
| Tillock,Cleaster | 115237 | JFK8 Education Session Part 3 | Class |
| Olugbode savage,Risikat | 115237 | JFK8 Education Session Part 3 | Class |
| Saddick,Chasidy | 115237 | JFK8 Education Session Part 3 | Class |
| OLIVARES,LUCY | 115237 | JFK8 Education Session Part 3 | Class |
| Mejia,Juan | 115237 | JFK8 Education Session Part 3 | Class |
| Mincey,Wafee | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Marcus | 115237 | JFK8 Education Session Part 3 | Class |
| Ojo,Friday Eromosele | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Angelo | 115237 | JFK8 Education Session Part 3 | Class |
| Gentile,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Simmons,Tyler Phillip | 115237 | JFK8 Education Session Part 3 | Class |
| Simmons,Tyler Phillip | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera,Roberto | 115237 | JFK8 Education Session Part 3 | Class |
| Vega,Timothy B | 115237 | JFK8 Education Session Part 3 | Class |
| gill,rickford | 115237 | JFK8 Education Session Part 3 | Class |
| Ayala,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez Gonzalez,Joanny A | 115237 | JFK8 Education Session Part 3 | Class |
| Nzazi Mundele,Gabie | 115237 | JFK8 Education Session Part 3 | Class |
| Lawrence,Ciara | 115237 | JFK8 Education Session Part 3 | Class |
| Islam,Md | 115237 | JFK8 Education Session Part 3 | Class |
| Akram,Awais | 115237 | JFK8 Education Session Part 3 | Class |
| Calimag,Enrico | 115237 | JFK8 Education Session Part 3 | Class |
| Zepherin,Crystal | 115237 | JFK8 Education Session Part 3 | Class |
| James,Jovain | 115237 | JFK8 Education Session Part 3 | Class |
| King,Malachi | 115237 | JFK8 Education Session Part 3 | Class |
| Nelson,Kenya Jay | 115237 | JFK8 Education Session Part 3 | Class |
| BELBAKI,MOHAMED | 115237 | JFK8 Education Session Part 3 | Class |
| Howells,David Vincent | 115237 | JFK8 Education Session Part 3 | Class |
| Cronin,Charice | 115237 | JFK8 Education Session Part 3 | Class |
| Abraham,Matt | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| Hedges,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Henry | 115237 | JFK8 Education Session Part 3 | Class |
| Drake,Melissa | 115237 | JFK8 Education Session Part 3 | Class |
| Charles,Windell | 115237 | JFK8 Education Session Part 3 | Class |
| Fisher,Shawna | 115237 | JFK8 Education Session Part 3 | Class |
| Hamed,Marwa | 115237 | JFK8 Education Session Part 3 | Class |
| Matthews,Martha | 115237 | JFK8 Education Session Part 3 | Class |
| Viruet,Alexis | 115237 | JFK8 Education Session Part 3 | Class |
| Viruet,Alexis | 115237 | JFK8 Education Session Part 3 | Class |
| Noel,Kayla | 115237 | JFK8 Education Session Part 3 | Class |
| Castillo,Chris | 115237 | JFK8 Education Session Part 3 | Class |
| Ajayi,Idowu | 115237 | JFK8 Education Session Part 3 | Class |
| Moreno,Jaime | 115237 | JFK8 Education Session Part 3 | Class |

Amazon_000405

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Moreno Antonio,Jovita | 115237 | JFK8 Education Session Part 3 | Class |
| Bispham,Jazel | 115237 | JFK8 Education Session Part 3 | Class |
| Ceron,Angelica Patricia | 115237 | JFK8 Education Session Part 3 | Class |
| Jardine,Zanela Urcilla | 115237 | JFK8 Education Session Part 3 | Class |
| Porter,Tiffany | 115237 | JFK8 Education Session Part 3 | Class |
| Melendez,Suyapa | 115237 | JFK8 Education Session Part 3 | Class |
| Mravlja,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Melaysia | 115237 | JFK8 Education Session Part 3 | Class |
| Fumagalli,Linda | 115237 | JFK8 Education Session Part 3 | Class |
| Ataque,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Ataque,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Di Paolo,Kate | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Dalila | 115237 | JFK8 Education Session Part 3 | Class |
| Randall,Jack David | 115237 | JFK8 Education Session Part 3 | Class |
| Naing,David | 115237 | JFK8 Education Session Part 3 | Class |
| M,Tamie | 115237 | JFK8 Education Session Part 3 | Class |
| Pizarro,Franciscas Cecilia | 115237 | JFK8 Education Session Part 3 | Class |
| Aguirre,Leslie | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Franco | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Franco | 115237 | JFK8 Education Session Part 3 | Class |
| Alvarez,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Sarkes,Atif | 115237 | JFK8 Education Session Part 3 | Class |
| Pedersen,Steve | 115237 | JFK8 Education Session Part 3 | Class |
| Foster,Paul | 115237 | JFK8 Education Session Part 3 | Class |
| Molina Jr,Benito | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Reymond | 115237 | JFK8 Education Session Part 3 | Class |
| Ayad,Ghada | 115237 | JFK8 Education Session Part 3 | Class |
| Machado-Cortes,Vyron | 115237 | JFK8 Education Session Part 3 | Class |
| mangappullyage don,nadish | 115237 | JFK8 Education Session Part 3 | Class |
| Bramwell,Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| Marin,Leslie | 115237 | JFK8 Education Session Part 3 | Class |
| Oliver,Luis Heriberto | 115237 | JFK8 Education Session Part 3 | Class |
| Zumba,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| amaya vargas,angela | 115237 | JFK8 Education Session Part 3 | Class |
| Ajayi,Kehinde V | 115237 | JFK8 Education Session Part 3 | Class |
| Murray,Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Girgis,Remon Nabil | 115237 | JFK8 Education Session Part 3 | Class |
| Franco,Yaquelin Celeste | 115237 | JFK8 Education Session Part 3 | Class |
| Chan,Mingling | 115237 | JFK8 Education Session Part 3 | Class |
| grant,odarie | 115237 | JFK8 Education Session Part 3 | Class |
| F Navarro,David | 115237 | JFK8 Education Session Part 3 | Class |
| F Navarro,David | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,Erick | 115237 | JFK8 Education Session Part 3 | Class |
| Velasco,Angel | 115237 | JFK8 Education Session Part 3 | Class |
| negron,omar | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Justin Rafael | 115237 | JFK8 Education Session Part 3 | Class |
| campbell,dwayne k | 115237 | JFK8 Education Session Part 3 | Class |
| McMillan,Mitchell | 115237 | JFK8 Education Session Part 3 | Class |
| Mcclarin Truss,Elaina Elaina | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Byrum,Melissa N | 115237 | JFK8 Education Session Part 3 | Class |
| Pirro,Vivianne | 115237 | JFK8 Education Session Part 3 | Class |
| Fajardo,Oscar | 115237 | JFK8 Education Session Part 3 | Class |
| Pineda,David | 115237 | JFK8 Education Session Part 3 | Class |
| Mills,John | 115237 | JFK8 Education Session Part 3 | Class |
| greiss,bassem | 115237 | JFK8 Education Session Part 3 | Class |
| greiss,bassem | 115237 | JFK8 Education Session Part 3 | Class |
| Gartor,Markpa | 115237 | JFK8 Education Session Part 3 | Class |
| Peralta lora,Soranlly D | 115237 | JFK8 Education Session Part 3 | Class |
| Parker,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Riaz,Faisal | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| Lino,Carlos David | 115237 | JFK8 Education Session Part 3 | Class |
| Blocker,Shavone Latoya | 115237 | JFK8 Education Session Part 3 | Class |
| cain,jeremy e | 115237 | JFK8 Education Session Part 3 | Class |
| Danforth,Shawn | 115237 | JFK8 Education Session Part 3 | Class |
| West,Zearl | 115237 | JFK8 Education Session Part 3 | Class |
| Dutan,Jaquelin | 115237 | JFK8 Education Session Part 3 | Class |
| chasi,bertha | 115237 | JFK8 Education Session Part 3 | Class |
| Pierre Toussaint,Esther | 115237 | JFK8 Education Session Part 3 | Class |
| Giraldo,Mauricio | 115237 | JFK8 Education Session Part 3 | Class |
| Amuzu,Precious yayra | 115237 | JFK8 Education Session Part 3 | Class |
| Herrin,Jason Cory | 115237 | JFK8 Education Session Part 3 | Class |
| Villon,Adrian | 115237 | JFK8 Education Session Part 3 | Class |
| Bhatti,Muhammad | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Darius | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Darius | 115237 | JFK8 Education Session Part 3 | Class |
| MATOS,ARMANDO | 115237 | JFK8 Education Session Part 3 | Class |
| Colin,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Limage,Renette | 115237 | JFK8 Education Session Part 3 | Class |
| Tucker,Mariah | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Daryle | 115237 | JFK8 Education Session Part 3 | Class |
| ahamed,khondoker | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Mel | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Mel | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Adina | 115237 | JFK8 Education Session Part 3 | Class |
| Pantoja Ramos,Daisy | 115237 | JFK8 Education Session Part 3 | Class |
| Pierresaint,Marvin | 115237 | JFK8 Education Session Part 3 | Class |
| Khalaf,Odday | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Nazim,Mohammad | 115237 | JFK8 Education Session Part 3 | Class |
| Oyediran,Adeoye Oladipupo | 115237 | JFK8 Education Session Part 3 | Class |
| Santana,Steven Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Marcelo,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Khaled,Helena | 115237 | JFK8 Education Session Part 3 | Class |
| Richardson,Stacy | 115237 | JFK8 Education Session Part 3 | Class |
| Olasupo,Ayodeji | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Carlton | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| PENG,KENTON | 115237 | JFK8 Education Session Part 3 | Class |
| Hanifa,Mohamadu Rizan | 115237 | JFK8 Education Session Part 3 | Class |
| De Paula,Marcos | 115237 | JFK8 Education Session Part 3 | Class |
| Richards,Colson | 115237 | JFK8 Education Session Part 3 | Class |
| Fleureus,Yvana | 115237 | JFK8 Education Session Part 3 | Class |
| Sharofidinov,Afzal | 115237 | JFK8 Education Session Part 3 | Class |
| Colon,Krystal | 115237 | JFK8 Education Session Part 3 | Class |
| Aguasvivas,Cleudy | 115237 | JFK8 Education Session Part 3 | Class |
| Aguasvivas,Cleudy | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell-Sheriff,Zodia | 115237 | JFK8 Education Session Part 3 | Class |
| Chakma,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| Parker,Adrian | 115237 | JFK8 Education Session Part 3 | Class |
| Tartamella,Dominick | 115237 | JFK8 Education Session Part 3 | Class |
| bailey,chenoah Lachasse | 115237 | JFK8 Education Session Part 3 | Class |
| Mejia,Eileen | 115237 | JFK8 Education Session Part 3 | Class |
| Nassif,Wagdi Aziz | 115237 | JFK8 Education Session Part 3 | Class |
| Weng,Ethan | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Destiny | 115237 | JFK8 Education Session Part 3 | Class |
| Osman,Nory | 115237 | JFK8 Education Session Part 3 | Class |
| Ajala,Adeola | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Mayra | 115237 | JFK8 Education Session Part 3 | Class |
| Moreno,Romeo | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Herra,Gilbert | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Lyanna | 115237 | JFK8 Education Session Part 3 | Class |
| Duval,Jean | 115237 | JFK8 Education Session Part 3 | Class |
| Morillo,Antony | 115237 | JFK8 Education Session Part 3 | Class |
| Maloloy-on,Joseph Raul | 115237 | JFK8 Education Session Part 3 | Class |
| Jenkins,Tyquan | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Erickson | 115237 | JFK8 Education Session Part 3 | Class |
| Peters,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Xavier | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Ulises | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Awilmy | 115237 | JFK8 Education Session Part 3 | Class |
| kuniqi,haldi | 115237 | JFK8 Education Session Part 3 | Class |
| Malave,Jeydie Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Jordan,Nykeisha | 115237 | JFK8 Education Session Part 3 | Class |
| Gbor,Emeline | 115237 | JFK8 Education Session Part 3 | Class |
| Ajibabi,Emily Onome | 115237 | JFK8 Education Session Part 3 | Class |
| Grishchenko,Elena | 115237 | JFK8 Education Session Part 3 | Class |
| Gordon,Sonya | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Juwan | 115237 | JFK8 Education Session Part 3 | Class |
| Sosa,Oliver | 115237 | JFK8 Education Session Part 3 | Class |
| Sosa,Oliver | 115237 | JFK8 Education Session Part 3 | Class |
| Lynch,Mary Katherine | 115237 | JFK8 Education Session Part 3 | Class |
| Akter,Aiysha | 115237 | JFK8 Education Session Part 3 | Class |
| HEWA ALANKARAGE,SAMANTHA | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Pollydore,Haile | 115237 | JFK8 Education Session Part 3 | Class |
| Downer,Yonic | 115237 | JFK8 Education Session Part 3 | Class |
| Flores Ortiz,Gessica | 115237 | JFK8 Education Session Part 3 | Class |
| Moran,Marisol | 115237 | JFK8 Education Session Part 3 | Class |
| Pierre,Alix | 115237 | JFK8 Education Session Part 3 | Class |
| Alvarez,Reyna | 115237 | JFK8 Education Session Part 3 | Class |
| Felipe Lucero,Erick | 115237 | JFK8 Education Session Part 3 | Class |
| Lattimore,James | 115237 | JFK8 Education Session Part 3 | Class |
| Barriento,Dayaniela | 115237 | JFK8 Education Session Part 3 | Class |
| Lanza,mike | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Jeffrey | 115237 | JFK8 Education Session Part 3 | Class |
| Ventre,Anny | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Justin | 115237 | JFK8 Education Session Part 3 | Class |
| Agyemang,Kwabena | 115237 | JFK8 Education Session Part 3 | Class |
| SOTO,DIANA | 115237 | JFK8 Education Session Part 3 | Class |
| Habib Joe,Kouakou Boitrin | 115237 | JFK8 Education Session Part 3 | Class |
| Achampong,Malachi | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Aaron | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Leonardo Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Mack,Tyrell | 115237 | JFK8 Education Session Part 3 | Class |
| Arizandieta Davila,Cecilia Isabel | 115237 | JFK8 Education Session Part 3 | Class |
| Vasquez,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Alkhan,Andre | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Ryan | 115237 | JFK8 Education Session Part 3 | Class |
| Marcial,Evirson Esteban | 115237 | JFK8 Education Session Part 3 | Class |
| Moye,Shakeen | 115237 | JFK8 Education Session Part 3 | Class |
| Moye,Shakeen | 115237 | JFK8 Education Session Part 3 | Class |
| Dorvil,Richy | 115237 | JFK8 Education Session Part 3 | Class |
| Celisca,Kendia | 115237 | JFK8 Education Session Part 3 | Class |
| Ahmad,Zeshan | 115237 | JFK8 Education Session Part 3 | Class |
| ajewole,kehinde cyril | 115237 | JFK8 Education Session Part 3 | Class |
| Villegas,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Alexandria | 115237 | JFK8 Education Session Part 3 | Class |
| Alvarado,David | 115237 | JFK8 Education Session Part 3 | Class |
| Dixon,Elijah | 115237 | JFK8 Education Session Part 3 | Class |
| Mongelli,Vera | 115237 | JFK8 Education Session Part 3 | Class |
| wilson,mario | 115237 | JFK8 Education Session Part 3 | Class |
| Mcbride,Patricia L | 115237 | JFK8 Education Session Part 3 | Class |
| Medina,Iovanny | 115237 | JFK8 Education Session Part 3 | Class |
| Matos,Nerys | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Reggie jerome | 115237 | JFK8 Education Session Part 3 | Class |
| Omosebi,Oluwakemi | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Andrew J | 115237 | JFK8 Education Session Part 3 | Class |
| Rescalvo,David | 115237 | JFK8 Education Session Part 3 | Class |
| vann,Shameul | 115237 | JFK8 Education Session Part 3 | Class |
| Bright,Al | 115237 | JFK8 Education Session Part 3 | Class |
| Cardosa,Nelba | 115237 | JFK8 Education Session Part 3 | Class |
| nesbitt,rolanda | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Selena | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Boakye,Yvonne | 115237 | JFK8 Education Session Part 3 | Class |
| Perrott,Celia | 115237 | JFK8 Education Session Part 3 | Class |
| Soto,Maikor | 115237 | JFK8 Education Session Part 3 | Class |
| Karim,Shaukatul | 115237 | JFK8 Education Session Part 3 | Class |
| dodo,sharafa A | 115237 | JFK8 Education Session Part 3 | Class |
| Balderas,Jonatan | 115237 | JFK8 Education Session Part 3 | Class |
| Harrell,Chiquita | 115237 | JFK8 Education Session Part 3 | Class |
| Daley,Most | 115237 | JFK8 Education Session Part 3 | Class |
| Luong,Kien Q | 115237 | JFK8 Education Session Part 3 | Class |
| Braxton,Kent | 115237 | JFK8 Education Session Part 3 | Class |
| Asamoah,Princess | 115237 | JFK8 Education Session Part 3 | Class |
| Burgos,Cristian | 115237 | JFK8 Education Session Part 3 | Class |
| Martin,Joe | 115237 | JFK8 Education Session Part 3 | Class |
| Mercado,Mark | 115237 | JFK8 Education Session Part 3 | Class |
| Amunikoro,Monsurat | 115237 | JFK8 Education Session Part 3 | Class |
| Avendano,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Figueroa,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Coleman,Ronnie | 115237 | JFK8 Education Session Part 3 | Class |
| Walton,Jarel Malik | 115237 | JFK8 Education Session Part 3 | Class |
| Phillip,Lisha | 115237 | JFK8 Education Session Part 3 | Class |
| Phillip,Lisha | 115237 | JFK8 Education Session Part 3 | Class |
| JOSEPH,Jean Frantz | 115237 | JFK8 Education Session Part 3 | Class |
| Yanni,Frank | 115237 | JFK8 Education Session Part 3 | Class |
| Ezzat,Fahmy | 115237 | JFK8 Education Session Part 3 | Class |
| martinez,veronica | 115237 | JFK8 Education Session Part 3 | Class |
| Vivar,Magaly | 115237 | JFK8 Education Session Part 3 | Class |
| Ahmed,Mashood | 115237 | JFK8 Education Session Part 3 | Class |
| Carvajal,Jobhany | 115237 | JFK8 Education Session Part 3 | Class |
| Ray,Zaqwayvis | 115237 | JFK8 Education Session Part 3 | Class |
| Flanders,Kenyon | 115237 | JFK8 Education Session Part 3 | Class |
| Butler,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Lozada,Rocky Lizuanelle | 115237 | JFK8 Education Session Part 3 | Class |
| San Miguel,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Bame,Nevila | 115237 | JFK8 Education Session Part 3 | Class |
| Powell,Yolanda | 115237 | JFK8 Education Session Part 3 | Class |
| Murph,Zariah | 115237 | JFK8 Education Session Part 3 | Class |
| James,Orel | 115237 | JFK8 Education Session Part 3 | Class |
| keely,steve | 115237 | JFK8 Education Session Part 3 | Class |
| Forbes,Kalisha | 115237 | JFK8 Education Session Part 3 | Class |
| Bowen,Shawn | 115237 | JFK8 Education Session Part 3 | Class |
| Rachell,Siobhan | 115237 | JFK8 Education Session Part 3 | Class |
| Otero,Jason Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Otero,Jason Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Fowler,Lloyd | 115237 | JFK8 Education Session Part 3 | Class |
| Caballero,Charytin | 115237 | JFK8 Education Session Part 3 | Class |
| Cometa,Marveluz | 115237 | JFK8 Education Session Part 3 | Class |
| Rahman,Mohidur | 115237 | JFK8 Education Session Part 3 | Class |
| Lacroix,Kymani | 115237 | JFK8 Education Session Part 3 | Class |
| Marte,Kenny | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| michel,loumann | 115237 | JFK8 Education Session Part 3 | Class |
| Machuca,Lizbeth | 115237 | JFK8 Education Session Part 3 | Class |
| Lafleur,Phara | 115237 | JFK8 Education Session Part 3 | Class |
| Castaldi,Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Robles,Gilberto | 115237 | JFK8 Education Session Part 3 | Class |
| Vivar Flores,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Nurse,Gabriel | 115237 | JFK8 Education Session Part 3 | Class |
| Tranquille,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Gabrielle | 115237 | JFK8 Education Session Part 3 | Class |
| Mohansingh,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Ibrahim,Youssef | 115237 | JFK8 Education Session Part 3 | Class |
| Marong,Momodou | 115237 | JFK8 Education Session Part 3 | Class |
| Gerges,Elhamy | 115237 | JFK8 Education Session Part 3 | Class |
| Broncano,Wilfredo | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell,Tevin Dwight | 115237 | JFK8 Education Session Part 3 | Class |
| Alexander,Meshach | 115237 | JFK8 Education Session Part 3 | Class |
| Kabeera,Nagesh | 115237 | JFK8 Education Session Part 3 | Class |
| CISSE,ABDOULAYE | 115237 | JFK8 Education Session Part 3 | Class |
| Guillaumette,Louisgene | 115237 | JFK8 Education Session Part 3 | Class |
| Guillaumette,Louisgene | 115237 | JFK8 Education Session Part 3 | Class |
| Fernandez,Roiny | 115237 | JFK8 Education Session Part 3 | Class |
| Montanez,Gertrudis | 115237 | JFK8 Education Session Part 3 | Class |
| Baltazar,Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Melida | 115237 | JFK8 Education Session Part 3 | Class |
| Frankel,Jack | 115237 | JFK8 Education Session Part 3 | Class |
| Spencer,Rashawn | 115237 | JFK8 Education Session Part 3 | Class |
| Velasquez,Miguel | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Yesenia | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Irvin Jogan | 115237 | JFK8 Education Session Part 3 | Class |
| Bhatti,Bilal | 115237 | JFK8 Education Session Part 3 | Class |
| Pitts,Michael Edward | 115237 | JFK8 Education Session Part 3 | Class |
| Tran,Leloan | 115237 | JFK8 Education Session Part 3 | Class |
| ABDOU,AHMED ABD EL SATTAR | 115237 | JFK8 Education Session Part 3 | Class |
| Rolland,Hakeem | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| Legrottaglie,Angel David | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera,Ricardo | 115237 | JFK8 Education Session Part 3 | Class |
| Ndoye,Adama | 115237 | JFK8 Education Session Part 3 | Class |
| Clarke,Sandre | 115237 | JFK8 Education Session Part 3 | Class |
| Palomeque,Lupe | 115237 | JFK8 Education Session Part 3 | Class |
| Fatone,Jack | 115237 | JFK8 Education Session Part 3 | Class |
| Aslam,Farhan | 115237 | JFK8 Education Session Part 3 | Class |
| Rey,Maria Vilma | 115237 | JFK8 Education Session Part 3 | Class |
| KADRO,MUSTAFA | 115237 | JFK8 Education Session Part 3 | Class |
| ENRIQUEZ,JENNIFER | 115237 | JFK8 Education Session Part 3 | Class |
| Louissaint,Ashley | 115237 | JFK8 Education Session Part 3 | Class |
| Ajibose,Adewale Adelanwa | 115237 | JFK8 Education Session Part 3 | Class |
| Hatcher,Warren | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Belisle,Shannelly | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell,Malcolm | 115237 | JFK8 Education Session Part 3 | Class |
| Colao,James | 115237 | JFK8 Education Session Part 3 | Class |
| Vasquez,Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Hall,Dwight | 115237 | JFK8 Education Session Part 3 | Class |
| Vargas,Grethel | 115237 | JFK8 Education Session Part 3 | Class |
| Baniqued,Jilden | 115237 | JFK8 Education Session Part 3 | Class |
| Palermo,Geneva | 115237 | JFK8 Education Session Part 3 | Class |
| Palermo,Geneva | 115237 | JFK8 Education Session Part 3 | Class |
| Diallo,Ibrahima | 115237 | JFK8 Education Session Part 3 | Class |
| Carrero,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Tunstall,Dominic | 115237 | JFK8 Education Session Part 3 | Class |
| Bamba,Vazoumana | 115237 | JFK8 Education Session Part 3 | Class |
| Jalloh,Ibrahima | 115237 | JFK8 Education Session Part 3 | Class |
| Jalloh,Ibrahima | 115237 | JFK8 Education Session Part 3 | Class |
| Cardona G.,Yhonier | 115237 | JFK8 Education Session Part 3 | Class |
| Chang Alzamora,Julio Paul | 115237 | JFK8 Education Session Part 3 | Class |
| Merritt,Amanda | 115237 | JFK8 Education Session Part 3 | Class |
| Derival,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| dunkley,claudine | 115237 | JFK8 Education Session Part 3 | Class |
| Awosika,Olowofela OLAGBAJE | 115237 | JFK8 Education Session Part 3 | Class |
| Beteta,Nicolas | 115237 | JFK8 Education Session Part 3 | Class |
| Pena,Erica | 115237 | JFK8 Education Session Part 3 | Class |
| Salas,Salvin | 115237 | JFK8 Education Session Part 3 | Class |
| ugokwe,hilary | 115237 | JFK8 Education Session Part 3 | Class |
| Felix,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Ciudad,Mathew | 115237 | JFK8 Education Session Part 3 | Class |
| Vargas,Victor | 115237 | JFK8 Education Session Part 3 | Class |
| Vargas,Victor | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Kedar | 115237 | JFK8 Education Session Part 3 | Class |
| Mariani,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Amar,Binetou | 115237 | JFK8 Education Session Part 3 | Class |
| Ghobrial,Adel Guirguis | 115237 | JFK8 Education Session Part 3 | Class |
| Molina,Tristan | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Chaya | 115237 | JFK8 Education Session Part 3 | Class |
| Hutchinson,Renee | 115237 | JFK8 Education Session Part 3 | Class |
| Bernacet,Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Rincon,Juan | 115237 | JFK8 Education Session Part 3 | Class |
| Allen,Elijah | 115237 | JFK8 Education Session Part 3 | Class |
| Seale,Danielle | 115237 | JFK8 Education Session Part 3 | Class |
| Lara,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Matani,Abdelhalim | 115237 | JFK8 Education Session Part 3 | Class |
| Arifi,Mohammad | 115237 | JFK8 Education Session Part 3 | Class |
| Lushaj,Aldijana | 115237 | JFK8 Education Session Part 3 | Class |
| Carmenatty,Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| Elmsalekaty,Walaa | 115237 | JFK8 Education Session Part 3 | Class |
| Olateru-Olagbegi,Adeniyi | 115237 | JFK8 Education Session Part 3 | Class |
| Foster-Roach,Sherlin Francis | 115237 | JFK8 Education Session Part 3 | Class |
| Casilla,Benny Ruben | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Matos,Carrie | 115237 | JFK8 Education Session Part 3 | Class |
| Lam,Tim Chi | 115237 | JFK8 Education Session Part 3 | Class |
| Fernandez,Keyla | 115237 | JFK8 Education Session Part 3 | Class |
| Ramos,Alan | 115237 | JFK8 Education Session Part 3 | Class |
| Hayat,Umer | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Jesenia | 115237 | JFK8 Education Session Part 3 | Class |
| Colon,Maggie | 115237 | JFK8 Education Session Part 3 | Class |
| Kalonov,Abdurahim | 115237 | JFK8 Education Session Part 3 | Class |
| Moore,Marcus Linus | 115237 | JFK8 Education Session Part 3 | Class |
| Alaur,Lahab | 115237 | JFK8 Education Session Part 3 | Class |
| McLeish,Doretha | 115237 | JFK8 Education Session Part 3 | Class |
| Meredith,Zipporah | 115237 | JFK8 Education Session Part 3 | Class |
| Borgella,Phero | 115237 | JFK8 Education Session Part 3 | Class |
| Findley,Esther | 115237 | JFK8 Education Session Part 3 | Class |
| robinson,mayara | 115237 | JFK8 Education Session Part 3 | Class |
| OLAYIWOLE,SAMUEL | 115237 | JFK8 Education Session Part 3 | Class |
| Newman,Keyanna Lavina | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Xavier | 115237 | JFK8 Education Session Part 3 | Class |
| Spruell,Chislon | 115237 | JFK8 Education Session Part 3 | Class |
| Crawford-Stephens,Vivette | 115237 | JFK8 Education Session Part 3 | Class |
| Gayed,Youssef | 115237 | JFK8 Education Session Part 3 | Class |
| Olango,Ayessa Joan Tura | 115237 | JFK8 Education Session Part 3 | Class |
| Xu,Ben | 115237 | JFK8 Education Session Part 3 | Class |
| Fadayini,Fiyinfoluwa | 115237 | JFK8 Education Session Part 3 | Class |
| Miller,Alfred | 115237 | JFK8 Education Session Part 3 | Class |
| Miller,Alfred | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Steph | 115237 | JFK8 Education Session Part 3 | Class |
| Citarella,Denise Frances | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Julia | 115237 | JFK8 Education Session Part 3 | Class |
| Duffy,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Duffy,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| vera,crystallee | 115237 | JFK8 Education Session Part 3 | Class |
| Vaquero,Denise | 115237 | JFK8 Education Session Part 3 | Class |
| Bangura,Bai | 115237 | JFK8 Education Session Part 3 | Class |
| Okwuobasi,Ikechukwu | 115237 | JFK8 Education Session Part 3 | Class |
| Haynes,Destiny | 115237 | JFK8 Education Session Part 3 | Class |
| Santyous,Bishoy Rafaat | 115237 | JFK8 Education Session Part 3 | Class |
| Jean louis,Dayana | 115237 | JFK8 Education Session Part 3 | Class |
| Mikhail,Remon N | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Nicole R | 115237 | JFK8 Education Session Part 3 | Class |
| Derival,Gabriel | 115237 | JFK8 Education Session Part 3 | Class |
| Delmas-Talley,Sarai | 115237 | JFK8 Education Session Part 3 | Class |
| Lee,Bria | 115237 | JFK8 Education Session Part 3 | Class |
| Valles,Yvelisse | 115237 | JFK8 Education Session Part 3 | Class |
| Valles,Yvelisse | 115237 | JFK8 Education Session Part 3 | Class |
| Jerome,Ronald Romeo | 115237 | JFK8 Education Session Part 3 | Class |
| Quezada,Francisco | 115237 | JFK8 Education Session Part 3 | Class |
| Matthews,Tiaura | 115237 | JFK8 Education Session Part 3 | Class |
| Dugue,Justiny | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| cocone,miguel | 115237 | JFK8 Education Session Part 3 | Class |
| Fernando,Malmalabaduge Raji | 115237 | JFK8 Education Session Part 3 | Class |
| Villegas,Chelsea | 115237 | JFK8 Education Session Part 3 | Class |
| Wang,Ying | 115237 | JFK8 Education Session Part 3 | Class |
| Sanders,Emma | 115237 | JFK8 Education Session Part 3 | Class |
| Figueroa Durand,Hida | 115237 | JFK8 Education Session Part 3 | Class |
| Castellanos,Roberto | 115237 | JFK8 Education Session Part 3 | Class |
| Hecker,Ivan | 115237 | JFK8 Education Session Part 3 | Class |
| Burney,Theus N | 115237 | JFK8 Education Session Part 3 | Class |
| Begum,Shmail | 115237 | JFK8 Education Session Part 3 | Class |
| Bennett,Ahmed | 115237 | JFK8 Education Session Part 3 | Class |
| Pacheco,Marichelia | 115237 | JFK8 Education Session Part 3 | Class |
| Lacroix,Jocy Florence | 115237 | JFK8 Education Session Part 3 | Class |
| Colas,Johanne | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Nephtali | 115237 | JFK8 Education Session Part 3 | Class |
| Green,Dominique | 115237 | JFK8 Education Session Part 3 | Class |
| Tzaquitzalcutz,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Ly,Thanh Sieu | 115237 | JFK8 Education Session Part 3 | Class |
| polanco,Danny B | 115237 | JFK8 Education Session Part 3 | Class |
| Morocho,Neal Fernando | 115237 | JFK8 Education Session Part 3 | Class |
| Lebron,Lizette | 115237 | JFK8 Education Session Part 3 | Class |
| Escobar Alfaro,Mario | 115237 | JFK8 Education Session Part 3 | Class |
| Escobar Alfaro,Mario | 115237 | JFK8 Education Session Part 3 | Class |
| Ebinum,Felix | 115237 | JFK8 Education Session Part 3 | Class |
| Ebinum,Felix | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Bryan J | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Julissa | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Kyele Theodore | 115237 | JFK8 Education Session Part 3 | Class |
| Ajayi,Benjamin | 115237 | JFK8 Education Session Part 3 | Class |
| Olugbodi,Precious Ayomide | 115237 | JFK8 Education Session Part 3 | Class |
| Greenaway,Tinea | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Ernesto | 115237 | JFK8 Education Session Part 3 | Class |
| Mendez,Matt | 115237 | JFK8 Education Session Part 3 | Class |
| Delbry,Jamie | 115237 | JFK8 Education Session Part 3 | Class |
| Wong,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Guzman,Emary | 115237 | JFK8 Education Session Part 3 | Class |
| cochrane,shavon | 115237 | JFK8 Education Session Part 3 | Class |
| Lindsay,Kareem Rahine | 115237 | JFK8 Education Session Part 3 | Class |
| Thompson,Tracylee | 115237 | JFK8 Education Session Part 3 | Class |
| Taylor,Infinite | 115237 | JFK8 Education Session Part 3 | Class |
| Collins,Nekkei | 115237 | JFK8 Education Session Part 3 | Class |
| Jacobs,Leonard | 115237 | JFK8 Education Session Part 3 | Class |
| Prince-pottinger,seberna | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Joshua | 115237 | JFK8 Education Session Part 3 | Class |
| AKINMUSAYO,ANUOLUWAPO | 115237 | JFK8 Education Session Part 3 | Class |
| Victoriano,Eduardo | 115237 | JFK8 Education Session Part 3 | Class |
| Rincon,Yadira | 115237 | JFK8 Education Session Part 3 | Class |
| Pan,Yi | 115237 | JFK8 Education Session Part 3 | Class |
| Narciso Hooker,Winfield Alexander | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Fontanez,Jimmy | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Desiree | 115237 | JFK8 Education Session Part 3 | Class |
| ortiz,crystal | 115237 | JFK8 Education Session Part 3 | Class |
| Mir,Edgar | 115237 | JFK8 Education Session Part 3 | Class |
| Grasso,Gianna marie | 115237 | JFK8 Education Session Part 3 | Class |
| Cona,Vanessa | 115237 | JFK8 Education Session Part 3 | Class |
| Cummings,Sherman | 115237 | JFK8 Education Session Part 3 | Class |
| villarreal,hector | 115237 | JFK8 Education Session Part 3 | Class |
| Figueroa,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,John | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,John | 115237 | JFK8 Education Session Part 3 | Class |
| Abreu,Arianny | 115237 | JFK8 Education Session Part 3 | Class |
| Cooke,Vince | 115237 | JFK8 Education Session Part 3 | Class |
| PEREZ BRADY,JOHANNA | 115237 | JFK8 Education Session Part 3 | Class |
| Richardson,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Zhu,Ming | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Stevens | 115237 | JFK8 Education Session Part 3 | Class |
| samaranayake,sasadaree | 115237 | JFK8 Education Session Part 3 | Class |
| Mejia-Reyes,Juan | 115237 | JFK8 Education Session Part 3 | Class |
| Thorne,Renaldo | 115237 | JFK8 Education Session Part 3 | Class |
| Tatarka,Mary | 115237 | JFK8 Education Session Part 3 | Class |
| Wawrzonek,Dorota H | 115237 | JFK8 Education Session Part 3 | Class |
| Wawrzonek,Dorota H | 115237 | JFK8 Education Session Part 3 | Class |
| Alexander,Dante Rob | 115237 | JFK8 Education Session Part 3 | Class |
| Luc,Hugues | 115237 | JFK8 Education Session Part 3 | Class |
| Sisk,Dana | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Tiffany | 115237 | JFK8 Education Session Part 3 | Class |
| Figueroa,Aaron | 115237 | JFK8 Education Session Part 3 | Class |
| Dasalla,Clyde Liam | 115237 | JFK8 Education Session Part 3 | Class |
| TAYLOR,TYRONE | 115237 | JFK8 Education Session Part 3 | Class |
| OHara,Joseph Patrick | 115237 | JFK8 Education Session Part 3 | Class |
| Sellapperuma,Chamara Sasirini | 115237 | JFK8 Education Session Part 3 | Class |
| Stiebel,Emanuel Peter | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Dana | 115237 | JFK8 Education Session Part 3 | Class |
| Colon,Jorge L | 115237 | JFK8 Education Session Part 3 | Class |
| Epstein,Blake | 115237 | JFK8 Education Session Part 3 | Class |
| Jaleiba,Austine hamindu | 115237 | JFK8 Education Session Part 3 | Class |
| Jaleiba,Austine hamindu | 115237 | JFK8 Education Session Part 3 | Class |
| Bonilla,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| Romero,Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| Hussein,Ran | 115237 | JFK8 Education Session Part 3 | Class |
| Gay,Antoinette Agatha | 115237 | JFK8 Education Session Part 3 | Class |
| St. Hilaire,Junior Michel | 115237 | JFK8 Education Session Part 3 | Class |
| Sanders,Nijah | 115237 | JFK8 Education Session Part 3 | Class |
| Long,Marcus | 115237 | JFK8 Education Session Part 3 | Class |
| Hurtado,Ana | 115237 | JFK8 Education Session Part 3 | Class |
| Porter,Jonte | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas-Watson,Sandra | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,CC | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Alozie,Princess | 115237 | JFK8 Education Session Part 3 | Class |
| Colas,Marceau | 115237 | JFK8 Education Session Part 3 | Class |
| Colon,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| morales,olga | 115237 | JFK8 Education Session Part 3 | Class |
| Idrissi,Rim | 115237 | JFK8 Education Session Part 3 | Class |
| Bourguillon,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Hussain,Muhammad | 115237 | JFK8 Education Session Part 3 | Class |
| Legere,Denise | 115237 | JFK8 Education Session Part 3 | Class |
| Cooks,Darlene B | 115237 | JFK8 Education Session Part 3 | Class |
| Pucciarelli,Nicholas | 115237 | JFK8 Education Session Part 3 | Class |
| Obonaga,Charlie | 115237 | JFK8 Education Session Part 3 | Class |
| Obonaga,Charlie | 115237 | JFK8 Education Session Part 3 | Class |
| Walcott,D'angelo | 115237 | JFK8 Education Session Part 3 | Class |
| Clarke,David | 115237 | JFK8 Education Session Part 3 | Class |
| Mounier,Ana | 115237 | JFK8 Education Session Part 3 | Class |
| Allison,Alice | 115237 | JFK8 Education Session Part 3 | Class |
| Koroma,Ballay | 115237 | JFK8 Education Session Part 3 | Class |
| Bristol,Akelia | 115237 | JFK8 Education Session Part 3 | Class |
| Laureano,Rafael | 115237 | JFK8 Education Session Part 3 | Class |
| Cartagena,Barbara Ellen | 115237 | JFK8 Education Session Part 3 | Class |
| Velez,Margaret | 115237 | JFK8 Education Session Part 3 | Class |
| Calvanico,Louis | 115237 | JFK8 Education Session Part 3 | Class |
| Jaco,Bryant | 115237 | JFK8 Education Session Part 3 | Class |
| Doumbia,Moussa | 115237 | JFK8 Education Session Part 3 | Class |
| Delacruz Wong,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Gomez,ALEX | 115237 | JFK8 Education Session Part 3 | Class |
| Khaled,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| Bhuiya,Kawsar | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Felipe J | 115237 | JFK8 Education Session Part 3 | Class |
| barrett,shakina | 115237 | JFK8 Education Session Part 3 | Class |
| Ajikobi,Adeyemi | 115237 | JFK8 Education Session Part 3 | Class |
| Ajikobi,Adeyemi | 115237 | JFK8 Education Session Part 3 | Class |
| GOMEZ MARTINEZ,WENDY | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Bradley | 115237 | JFK8 Education Session Part 3 | Class |
| Bautista,Steven | 115237 | JFK8 Education Session Part 3 | Class |
| Ndiaye,Seynabou | 115237 | JFK8 Education Session Part 3 | Class |
| Zhou,Gary | 115237 | JFK8 Education Session Part 3 | Class |
| Khine,Phone Aung | 115237 | JFK8 Education Session Part 3 | Class |
| Mcmeans,Terrell | 115237 | JFK8 Education Session Part 3 | Class |
| Nivar veloz,Aldo Sebastian | 115237 | JFK8 Education Session Part 3 | Class |
| Htun,Monmon | 115237 | JFK8 Education Session Part 3 | Class |
| callen,frank | 115237 | JFK8 Education Session Part 3 | Class |
| Francis,Benjamin | 115237 | JFK8 Education Session Part 3 | Class |
| Ferguson,Mervin | 115237 | JFK8 Education Session Part 3 | Class |
| cisse,Saheikhtijan | 115237 | JFK8 Education Session Part 3 | Class |
| Frith,Dacia | 115237 | JFK8 Education Session Part 3 | Class |
| Mujumder,Mossarrup | 115237 | JFK8 Education Session Part 3 | Class |
| Serrano,Briana Julia | 115237 | JFK8 Education Session Part 3 | Class |
| Portuhondo,Yaritza | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Juarez,Kemberlin | 115237 | JFK8 Education Session Part 3 | Class |
| Roman,Haydee | 115237 | JFK8 Education Session Part 3 | Class |
| Amin,Shaimaa | 115237 | JFK8 Education Session Part 3 | Class |
| Escobar,Roy | 115237 | JFK8 Education Session Part 3 | Class |
| Mckenzie,Malik | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| Some,Gourbangdome R. Anne | 115237 | JFK8 Education Session Part 3 | Class |
| Alvarez,Julio | 115237 | JFK8 Education Session Part 3 | Class |
| Zou,Ruzhen | 115237 | JFK8 Education Session Part 3 | Class |
| Stevenson,Anitra | 115237 | JFK8 Education Session Part 3 | Class |
| Marthone,Rachelle | 115237 | JFK8 Education Session Part 3 | Class |
| GLADDEN,DARRELL | 115237 | JFK8 Education Session Part 3 | Class |
| Thompkins,Kai | 115237 | JFK8 Education Session Part 3 | Class |
| Depaulis,Rainee Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Paul | 115237 | JFK8 Education Session Part 3 | Class |
| Obasea,Olusegun | 115237 | JFK8 Education Session Part 3 | Class |
| Vilchis,Lisett | 115237 | JFK8 Education Session Part 3 | Class |
| Chowdhury,Eklas | 115237 | JFK8 Education Session Part 3 | Class |
| Veras,Luisauris | 115237 | JFK8 Education Session Part 3 | Class |
| Suarez,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Ho,William | 115237 | JFK8 Education Session Part 3 | Class |
| Beckford,Kwame Jamal | 115237 | JFK8 Education Session Part 3 | Class |
| Bridgemohan,Bajnath | 115237 | JFK8 Education Session Part 3 | Class |
| Jacobo,Patricia | 115237 | JFK8 Education Session Part 3 | Class |
| Megie,Gerald | 115237 | JFK8 Education Session Part 3 | Class |
| RIOS,OMAR | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Nickie | 115237 | JFK8 Education Session Part 3 | Class |
| Criollo mendoza,Joel | 115237 | JFK8 Education Session Part 3 | Class |
| Denny,Sonja | 115237 | JFK8 Education Session Part 3 | Class |
| Salgado,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Kamel,Gouzif | 115237 | JFK8 Education Session Part 3 | Class |
| Friscia,Kathleen | 115237 | JFK8 Education Session Part 3 | Class |
| Friscia,Kathleen | 115237 | JFK8 Education Session Part 3 | Class |
| Mills,Silvia | 115237 | JFK8 Education Session Part 3 | Class |
| Mills,Silvia | 115237 | JFK8 Education Session Part 3 | Class |
| Onajoko,Olusola | 115237 | JFK8 Education Session Part 3 | Class |
| Laboy,Scott | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Stefanie | 115237 | JFK8 Education Session Part 3 | Class |
| Marx,Eric | 115237 | JFK8 Education Session Part 3 | Class |
| Youssef,Ahmed Saad | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas,Josselyn J | 115237 | JFK8 Education Session Part 3 | Class |
| Cannon,Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Kamara,Jalon | 115237 | JFK8 Education Session Part 3 | Class |
| Vega,Cindy | 115237 | JFK8 Education Session Part 3 | Class |
| Lai,Bo | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Jerilin | 115237 | JFK8 Education Session Part 3 | Class |
| Powell,Shakeem | 115237 | JFK8 Education Session Part 3 | Class |
| Powell,Shakeem | 115237 | JFK8 Education Session Part 3 | Class |
| GARUSINGHAGE,NIHAL SAMSON | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Beeston,Anahya | 115237 | JFK8 Education Session Part 3 | Class |
| Tran,Chi An | 115237 | JFK8 Education Session Part 3 | Class |
| Dragjoshi,Abdurrahman | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez-Clusan,Wanda | 115237 | JFK8 Education Session Part 3 | Class |
| Waters,Jasmine | 115237 | JFK8 Education Session Part 3 | Class |
| Frontal,Ashly | 115237 | JFK8 Education Session Part 3 | Class |
| Michel diaz,Cheylina | 115237 | JFK8 Education Session Part 3 | Class |
| Gibson,Tara | 115237 | JFK8 Education Session Part 3 | Class |
| Henao,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Spearman,John | 115237 | JFK8 Education Session Part 3 | Class |
| Anis,Mohammed T | 115237 | JFK8 Education Session Part 3 | Class |
| Jean toussaint,OLDINE | 115237 | JFK8 Education Session Part 3 | Class |
| Yang,Quankun | 115237 | JFK8 Education Session Part 3 | Class |
| Fuentes,Jocelyn | 115237 | JFK8 Education Session Part 3 | Class |
| Risk,Adolfo Jorge | 115237 | JFK8 Education Session Part 3 | Class |
| Newcomen,Matt John | 115237 | JFK8 Education Session Part 3 | Class |
| Gallo,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Fatima,Fozia | 115237 | JFK8 Education Session Part 3 | Class |
| Romero,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Quick,Shaquana | 115237 | JFK8 Education Session Part 3 | Class |
| Sow,Kadiatou | 115237 | JFK8 Education Session Part 3 | Class |
| Gutter,Unique | 115237 | JFK8 Education Session Part 3 | Class |
| Rojas,Cynthia | 115237 | JFK8 Education Session Part 3 | Class |
| Moronta,Crisleydy Del pilar | 115237 | JFK8 Education Session Part 3 | Class |
| Silveira,Jordan Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| snyder,brianna | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Fuller,Ryan | 115237 | JFK8 Education Session Part 3 | Class |
| gordon,jayvon | 115237 | JFK8 Education Session Part 3 | Class |
| Kukulu,Jean Claude Ramazani | 115237 | JFK8 Education Session Part 3 | Class |
| sherieff,shervin | 115237 | JFK8 Education Session Part 3 | Class |
| Roach,Horace Vincent | 115237 | JFK8 Education Session Part 3 | Class |
| Gibbs,Khaliq | 115237 | JFK8 Education Session Part 3 | Class |
| Hussain,Zuhaib | 115237 | JFK8 Education Session Part 3 | Class |
| Beltre,Gisela | 115237 | JFK8 Education Session Part 3 | Class |
| zephyrine,wade | 115237 | JFK8 Education Session Part 3 | Class |
| Parmar,Chetan | 115237 | JFK8 Education Session Part 3 | Class |
| Adekunle,Olaide Sarah | 115237 | JFK8 Education Session Part 3 | Class |
| waymer,brittney | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Isaiah | 115237 | JFK8 Education Session Part 3 | Class |
| Penglase,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Lee,Donte | 115237 | JFK8 Education Session Part 3 | Class |
| Bustillo,Victor | 115237 | JFK8 Education Session Part 3 | Class |
| Ramirez,Pablo | 115237 | JFK8 Education Session Part 3 | Class |
| Kong,Jackie | 115237 | JFK8 Education Session Part 3 | Class |
| Chauca,David Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Amundsen,Angelica | 115237 | JFK8 Education Session Part 3 | Class |
| Bell,Deniesha | 115237 | JFK8 Education Session Part 3 | Class |
| Garris,Gloria | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Dampman,Jesse | 115237 | JFK8 Education Session Part 3 | Class |
| Watson,Michael R | 115237 | JFK8 Education Session Part 3 | Class |
| Lee,Stephanie | 115237 | JFK8 Education Session Part 3 | Class |
| Forbes,D'vaughn Danielle | 115237 | JFK8 Education Session Part 3 | Class |
| Wright,Darius | 115237 | JFK8 Education Session Part 3 | Class |
| Sempertegui,Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Ramcharitar,Devon | 115237 | JFK8 Education Session Part 3 | Class |
| Nguemourou,Kadjilom | 115237 | JFK8 Education Session Part 3 | Class |
| Mendez,Jonathan Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Dodo,Roseline | 115237 | JFK8 Education Session Part 3 | Class |
| Adetunji,Aderonke | 115237 | JFK8 Education Session Part 3 | Class |
| McQueen,Jordan | 115237 | JFK8 Education Session Part 3 | Class |
| Avendano,Bianca | 115237 | JFK8 Education Session Part 3 | Class |
| Otero,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Almazo,Alexsandra | 115237 | JFK8 Education Session Part 3 | Class |
| Perry,Ernest | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Jimenez,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Chen,Timothy | 115237 | JFK8 Education Session Part 3 | Class |
| Chen,Timothy | 115237 | JFK8 Education Session Part 3 | Class |
| Jamaleddine,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Alvarez,Marcus | 115237 | JFK8 Education Session Part 3 | Class |
| Belmore,Aaron Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Blakney,Bianca A | 115237 | JFK8 Education Session Part 3 | Class |
| Batson,Lloyd Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Hanna,Amir | 115237 | JFK8 Education Session Part 3 | Class |
| Lee,Yin Wang | 115237 | JFK8 Education Session Part 3 | Class |
| Bevers,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Ajikobi,Olajide | 115237 | JFK8 Education Session Part 3 | Class |
| Ioannu,George | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Armani | 115237 | JFK8 Education Session Part 3 | Class |
| Stephens,Taron | 115237 | JFK8 Education Session Part 3 | Class |
| Griss,Edward | 115237 | JFK8 Education Session Part 3 | Class |
| Whittaker,Chanelle | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Raymond jason | 115237 | JFK8 Education Session Part 3 | Class |
| McCauley,Zaire | 115237 | JFK8 Education Session Part 3 | Class |
| Charles,Mark | 115237 | JFK8 Education Session Part 3 | Class |
| Navarro Espinoza,Gabriela | 115237 | JFK8 Education Session Part 3 | Class |
| Roy,Rechelle | 115237 | JFK8 Education Session Part 3 | Class |
| Lamarre,Ritchlande | 115237 | JFK8 Education Session Part 3 | Class |
| LaPietra,Chris | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas,Thalia | 115237 | JFK8 Education Session Part 3 | Class |
| Chang,Sandra | 115237 | JFK8 Education Session Part 3 | Class |
| Littles,Daivina prasies | 115237 | JFK8 Education Session Part 3 | Class |
| Kader,Abdul | 115237 | JFK8 Education Session Part 3 | Class |
| Titus,John | 115237 | JFK8 Education Session Part 3 | Class |
| bekhet,sameh | 115237 | JFK8 Education Session Part 3 | Class |
| Galindo,Eli | 115237 | JFK8 Education Session Part 3 | Class |
| Aldea,Patricia | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| ahmad,syed | 115237 | JFK8 Education Session Part 3 | Class |
| Jenkins,Rashard  Jenkins | 115237 | JFK8 Education Session Part 3 | Class |
| NARCISSE,SHILLER | 115237 | JFK8 Education Session Part 3 | Class |
| Mitchell,Alianna | 115237 | JFK8 Education Session Part 3 | Class |
| Harley,Ronnie | 115237 | JFK8 Education Session Part 3 | Class |
| Ramautar,Awinaash | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Aarron | 115237 | JFK8 Education Session Part 3 | Class |
| Fox,David | 115237 | JFK8 Education Session Part 3 | Class |
| carbonell,nurat | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz aponte,Paloma nilvett | 115237 | JFK8 Education Session Part 3 | Class |
| Cantirino,James | 115237 | JFK8 Education Session Part 3 | Class |
| Henry,Tray | 115237 | JFK8 Education Session Part 3 | Class |
| Calderone,Christine | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,Casidy | 115237 | JFK8 Education Session Part 3 | Class |
| Gamboa,Jancy | 115237 | JFK8 Education Session Part 3 | Class |
| Crosdale,Venisha | 115237 | JFK8 Education Session Part 3 | Class |
| Lara,Cesar | 115237 | JFK8 Education Session Part 3 | Class |
| Young,Scarlett | 115237 | JFK8 Education Session Part 3 | Class |
| Zdunek,Mary B. | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,Orlando | 115237 | JFK8 Education Session Part 3 | Class |
| Robles,Paola | 115237 | JFK8 Education Session Part 3 | Class |
| Vandyck,Yasmeen | 115237 | JFK8 Education Session Part 3 | Class |
| Molina,Jayden | 115237 | JFK8 Education Session Part 3 | Class |
| Machado,Joao Ferreira | 115237 | JFK8 Education Session Part 3 | Class |
| Osorio,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Fantauzzi,Manjula | 115237 | JFK8 Education Session Part 3 | Class |
| hemley,kemar | 115237 | JFK8 Education Session Part 3 | Class |
| Justin,Judith | 115237 | JFK8 Education Session Part 3 | Class |
| Jenkins,Fredrick | 115237 | JFK8 Education Session Part 3 | Class |
| Molina,Mateo | 115237 | JFK8 Education Session Part 3 | Class |
| Garces,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Maria Socorro | 115237 | JFK8 Education Session Part 3 | Class |
| Michel,Ermionne | 115237 | JFK8 Education Session Part 3 | Class |
| Michel,Ermionne | 115237 | JFK8 Education Session Part 3 | Class |
| lysenko,alex | 115237 | JFK8 Education Session Part 3 | Class |
| Dominguez,Ashley | 115237 | JFK8 Education Session Part 3 | Class |
| valmont,jean guerdy | 115237 | JFK8 Education Session Part 3 | Class |
| Rayford,Ely | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Lizeth | 115237 | JFK8 Education Session Part 3 | Class |
| Assante,Jill-Marie | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Eloisanna | 115237 | JFK8 Education Session Part 3 | Class |
| Harjo,Jeremiah | 115237 | JFK8 Education Session Part 3 | Class |
| Peralta,Vincent | 115237 | JFK8 Education Session Part 3 | Class |
| Mathew,Jincy | 115237 | JFK8 Education Session Part 3 | Class |
| Mcfarlane Jr,Chuchi | 115237 | JFK8 Education Session Part 3 | Class |
| Mcfarlane Jr,Chuchi | 115237 | JFK8 Education Session Part 3 | Class |
| Diallo,Mouhamadou Abdoul Latif | 115237 | JFK8 Education Session Part 3 | Class |
| Hall,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Kanoute,Haby | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| odufowora,Muyiwa | 115237 | JFK8 Education Session Part 3 | Class |
| Bobadilla,Loyda | 115237 | JFK8 Education Session Part 3 | Class |
| Bernard,Kumar | 115237 | JFK8 Education Session Part 3 | Class |
| Bernard,Kumar | 115237 | JFK8 Education Session Part 3 | Class |
| Lambe,Denise | 115237 | JFK8 Education Session Part 3 | Class |
| Lee,Jen | 115237 | JFK8 Education Session Part 3 | Class |
| Cheriyan,Allen Jacob | 115237 | JFK8 Education Session Part 3 | Class |
| PERRY,JENNIFER | 115237 | JFK8 Education Session Part 3 | Class |
| Zevan,Nyi | 115237 | JFK8 Education Session Part 3 | Class |
| de alwis,surath | 115237 | JFK8 Education Session Part 3 | Class |
| Bravo-Meehan,Roisin | 115237 | JFK8 Education Session Part 3 | Class |
| Vivanco,Milagros | 115237 | JFK8 Education Session Part 3 | Class |
| Abdellah,Saber | 115237 | JFK8 Education Session Part 3 | Class |
| Ramirez,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Labad,Zekharie | 115237 | JFK8 Education Session Part 3 | Class |
| Caballero,Marco | 115237 | JFK8 Education Session Part 3 | Class |
| Varughese,Samkutty | 115237 | JFK8 Education Session Part 3 | Class |
| SHOWAOLAFATIA,Nuratu Olaitan Apinkeola | 115237 | JFK8 Education Session Part 3 | Class |
| Rahman,Farjana | 115237 | JFK8 Education Session Part 3 | Class |
| Abis,Lincoln | 115237 | JFK8 Education Session Part 3 | Class |
| Marius,Tara | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Jonathon | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Vanessa | 115237 | JFK8 Education Session Part 3 | Class |
| Alvarenga,Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Henry,Jigi | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz Rodriguez,Gabriella | 115237 | JFK8 Education Session Part 3 | Class |
| Colon,Kaylin | 115237 | JFK8 Education Session Part 3 | Class |
| Finau,Devon | 115237 | JFK8 Education Session Part 3 | Class |
| CORREA,Augusto | 115237 | JFK8 Education Session Part 3 | Class |
| Cordero,Edgar | 115237 | JFK8 Education Session Part 3 | Class |
| Catala,Bobbi | 115237 | JFK8 Education Session Part 3 | Class |
| Salazar,Cecilia | 115237 | JFK8 Education Session Part 3 | Class |
| Scalici,Nicola | 115237 | JFK8 Education Session Part 3 | Class |
| Jiminian,Lia Tais | 115237 | JFK8 Education Session Part 3 | Class |
| Suero,Wanda Sulenny | 115237 | JFK8 Education Session Part 3 | Class |
| Celli,Christina Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Inkabi,Tatiana | 115237 | JFK8 Education Session Part 3 | Class |
| Kirton,Kenrick | 115237 | JFK8 Education Session Part 3 | Class |
| Carvajal,Kim | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Percy Ivan | 115237 | JFK8 Education Session Part 3 | Class |
| morales,Doris | 115237 | JFK8 Education Session Part 3 | Class |
| Hilaire,Mericka Geraldina | 115237 | JFK8 Education Session Part 3 | Class |
| Alreyashi,Yousef | 115237 | JFK8 Education Session Part 3 | Class |
| Alreyashi,Yousef | 115237 | JFK8 Education Session Part 3 | Class |
| Rosario,Delianna | 115237 | JFK8 Education Session Part 3 | Class |
| Azeez,Waheed Olawale | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Dee | 115237 | JFK8 Education Session Part 3 | Class |
| Germain,Junia | 115237 | JFK8 Education Session Part 3 | Class |
| Tolentino,Daniel Marsell | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ceballos,Adriana Lizeth | 115237 | JFK8 Education Session Part 3 | Class |
| Young,Taquan | 115237 | JFK8 Education Session Part 3 | Class |
| paul,Levelyne | 115237 | JFK8 Education Session Part 3 | Class |
| Joseph,David | 115237 | JFK8 Education Session Part 3 | Class |
| Chase,Coletta Briana | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| blue,steven | 115237 | JFK8 Education Session Part 3 | Class |
| Coriolan,Simone | 115237 | JFK8 Education Session Part 3 | Class |
| Fernando,Anjanpalage Nuwantha Dinushan | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Angel R | 115237 | JFK8 Education Session Part 3 | Class |
| Agard,Dwayne | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Shauntai | 115237 | JFK8 Education Session Part 3 | Class |
| Tovar,Yolanda Luz | 115237 | JFK8 Education Session Part 3 | Class |
| Bastidas,Isaias | 115237 | JFK8 Education Session Part 3 | Class |
| Montenegro,Marilyn | 115237 | JFK8 Education Session Part 3 | Class |
| Gravely,Jeffre | 115237 | JFK8 Education Session Part 3 | Class |
| Alcis,Lissage | 115237 | JFK8 Education Session Part 3 | Class |
| Benjamin,Manal | 115237 | JFK8 Education Session Part 3 | Class |
| DeLeon,Maritza | 115237 | JFK8 Education Session Part 3 | Class |
| Osei,Sarkodie | 115237 | JFK8 Education Session Part 3 | Class |
| Zarate,Elena | 115237 | JFK8 Education Session Part 3 | Class |
| Bykov,Yelena | 115237 | JFK8 Education Session Part 3 | Class |
| Collins,Yakim Lamont | 115237 | JFK8 Education Session Part 3 | Class |
| Arteca,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| reid,stanford Marcus | 115237 | JFK8 Education Session Part 3 | Class |
| Mckoy,Ebonie | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera,Ines A | 115237 | JFK8 Education Session Part 3 | Class |
| Ba,Moussa | 115237 | JFK8 Education Session Part 3 | Class |
| Quinones,Jan jasper | 115237 | JFK8 Education Session Part 3 | Class |
| Quinones,Jan jasper | 115237 | JFK8 Education Session Part 3 | Class |
| Stanford,Corine | 115237 | JFK8 Education Session Part 3 | Class |
| singleton,steven | 115237 | JFK8 Education Session Part 3 | Class |
| Atiya,Maged | 115237 | JFK8 Education Session Part 3 | Class |
| Andrew,josh | 115237 | JFK8 Education Session Part 3 | Class |
| Dambreville,Niasia | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Joshua Lewis | 115237 | JFK8 Education Session Part 3 | Class |
| martello,george | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| Harris,Curtann | 115237 | JFK8 Education Session Part 3 | Class |
| Trucios,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| valentin,luis | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Dennisha | 115237 | JFK8 Education Session Part 3 | Class |
| Fox,Justin | 115237 | JFK8 Education Session Part 3 | Class |
| Velasco,Gonzalo | 115237 | JFK8 Education Session Part 3 | Class |
| Shaw,Malcolm | 115237 | JFK8 Education Session Part 3 | Class |
| Estime,Inanie | 115237 | JFK8 Education Session Part 3 | Class |
| Barhoum,Adam | 115237 | JFK8 Education Session Part 3 | Class |
| Ughutevbe,Janet | 115237 | JFK8 Education Session Part 3 | Class |
| Luckey,Stefona | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Arulampalam,Dharmabalan | 115237 | JFK8 Education Session Part 3 | Class |
| Uzodimma,Onyeka | 115237 | JFK8 Education Session Part 3 | Class |
| Hector,Hiram | 115237 | JFK8 Education Session Part 3 | Class |
| Diep,Wendy | 115237 | JFK8 Education Session Part 3 | Class |
| Steo,John | 115237 | JFK8 Education Session Part 3 | Class |
| Washington,Keayna | 115237 | JFK8 Education Session Part 3 | Class |
| Valenciano,Justen | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Aixa | 115237 | JFK8 Education Session Part 3 | Class |
| moore,Immanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Winstead,Lynette | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Karina P | 115237 | JFK8 Education Session Part 3 | Class |
| Gaspar,Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| McLeod,Alhaylah | 115237 | JFK8 Education Session Part 3 | Class |
| hollaway,ciara | 115237 | JFK8 Education Session Part 3 | Class |
| Barrios,Irma | 115237 | JFK8 Education Session Part 3 | Class |
| Foster,Isiah | 115237 | JFK8 Education Session Part 3 | Class |
| Janapa,Sahana Akter | 115237 | JFK8 Education Session Part 3 | Class |
| Candelario,Arlette | 115237 | JFK8 Education Session Part 3 | Class |
| Candelario,Arlette | 115237 | JFK8 Education Session Part 3 | Class |
| Walton,Shaylia | 115237 | JFK8 Education Session Part 3 | Class |
| Flynch,Keshia | 115237 | JFK8 Education Session Part 3 | Class |
| diop,alla | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Briana | 115237 | JFK8 Education Session Part 3 | Class |
| Nagbe,Rachel | 115237 | JFK8 Education Session Part 3 | Class |
| Antonio,Alejandra | 115237 | JFK8 Education Session Part 3 | Class |
| Maddocks,Antoinette | 115237 | JFK8 Education Session Part 3 | Class |
| Maddocks,Antoinette | 115237 | JFK8 Education Session Part 3 | Class |
| Marana,Freddy | 115237 | JFK8 Education Session Part 3 | Class |
| Chua,Ralph | 115237 | JFK8 Education Session Part 3 | Class |
| Mitchell,Derrick | 115237 | JFK8 Education Session Part 3 | Class |
| Mohottige Sr,Yasantha Ramesh | 115237 | JFK8 Education Session Part 3 | Class |
| Ly,Long | 115237 | JFK8 Education Session Part 3 | Class |
| Senat,Sabrina | 115237 | JFK8 Education Session Part 3 | Class |
| Ibidakpo,Karimou | 115237 | JFK8 Education Session Part 3 | Class |
| Juan,Karina | 115237 | JFK8 Education Session Part 3 | Class |
| Juan,Karina | 115237 | JFK8 Education Session Part 3 | Class |
| Summers,Kamel | 115237 | JFK8 Education Session Part 3 | Class |
| Ford,Earl Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Tamara | 115237 | JFK8 Education Session Part 3 | Class |
| Benjamin,andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Li,Wai | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Kenneth | 115237 | JFK8 Education Session Part 3 | Class |
| Jean,Dayan | 115237 | JFK8 Education Session Part 3 | Class |
| Olvera Ram?rez,Hortensia | 115237 | JFK8 Education Session Part 3 | Class |
| Zosayas,Idaly | 115237 | JFK8 Education Session Part 3 | Class |
| Scott,Omowunmi Moses | 115237 | JFK8 Education Session Part 3 | Class |
| Bonilla,Sandra | 115237 | JFK8 Education Session Part 3 | Class |
| Sesay,Elizabeth Kathy | 115237 | JFK8 Education Session Part 3 | Class |
| Suarez,Cheryl | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Aguilar,Alexa Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Hamilton,Hamood | 115237 | JFK8 Education Session Part 3 | Class |
| Attallah,Rimon | 115237 | JFK8 Education Session Part 3 | Class |
| Karagyozyan,Aghasi | 115237 | JFK8 Education Session Part 3 | Class |
| Eaddy,Donell | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| George,Shaday | 115237 | JFK8 Education Session Part 3 | Class |
| Baldwin,Wendy | 115237 | JFK8 Education Session Part 3 | Class |
| Adepele,Olusegun olagoke | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Aneudis | 115237 | JFK8 Education Session Part 3 | Class |
| knight,cedric | 115237 | JFK8 Education Session Part 3 | Class |
| Garrison,Erick | 115237 | JFK8 Education Session Part 3 | Class |
| Conde,Ramata | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Janet | 115237 | JFK8 Education Session Part 3 | Class |
| Buendia-Diaz,Jose Luis | 115237 | JFK8 Education Session Part 3 | Class |
| Reid,Dennis Gasford | 115237 | JFK8 Education Session Part 3 | Class |
| Ranaweera,Lulitha Sanjaya | 115237 | JFK8 Education Session Part 3 | Class |
| Andrew,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Owusu Antobre,Lewis | 115237 | JFK8 Education Session Part 3 | Class |
| PINCAY,brandon L | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia Moreno,Lucero | 115237 | JFK8 Education Session Part 3 | Class |
| Whiteside,Cynthia | 115237 | JFK8 Education Session Part 3 | Class |
| Jerez Abreu,luz | 115237 | JFK8 Education Session Part 3 | Class |
| Exume,Jehovahnia Angele | 115237 | JFK8 Education Session Part 3 | Class |
| Beckmann,Kathy | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Marvin | 115237 | JFK8 Education Session Part 3 | Class |
| Reinat,Elijah Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Sindi | 115237 | JFK8 Education Session Part 3 | Class |
| Desiderio,Franchesca | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Esmeralda | 115237 | JFK8 Education Session Part 3 | Class |
| Pollari,Lori Ann | 115237 | JFK8 Education Session Part 3 | Class |
| Freeman,Jasmine Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Manson,Taziah | 115237 | JFK8 Education Session Part 3 | Class |
| Haris,Muhammad | 115237 | JFK8 Education Session Part 3 | Class |
| Meade,John Carl | 115237 | JFK8 Education Session Part 3 | Class |
| gonzalez,Yesenia | 115237 | JFK8 Education Session Part 3 | Class |
| Muraina,Bashiru | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell,Quintell | 115237 | JFK8 Education Session Part 3 | Class |
| Maldonado,Ana | 115237 | JFK8 Education Session Part 3 | Class |
| Granados,Vanessa | 115237 | JFK8 Education Session Part 3 | Class |
| Antoine,Ralph | 115237 | JFK8 Education Session Part 3 | Class |
| Ramos,Johnaton | 115237 | JFK8 Education Session Part 3 | Class |
| King,Brianna M | 115237 | JFK8 Education Session Part 3 | Class |
| TOQUICA,JULIO | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez-Tapia,Jailine | 115237 | JFK8 Education Session Part 3 | Class |
| sola,steven | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Mary | 115237 | JFK8 Education Session Part 3 | Class |
| Parke,Tye | 115237 | JFK8 Education Session Part 3 | Class |
| ETCHISON,TIKIYA Evelyn | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Donohue,Florence | 115237 | JFK8 Education Session Part 3 | Class |
| Lesha,Dorjan | 115237 | JFK8 Education Session Part 3 | Class |
| Hidalgo,Emil | 115237 | JFK8 Education Session Part 3 | Class |
| Antoine,Zaniyah | 115237 | JFK8 Education Session Part 3 | Class |
| Toussaint,Sarah | 115237 | JFK8 Education Session Part 3 | Class |
| Louis Jacques,Pierre Socrates | 115237 | JFK8 Education Session Part 3 | Class |
| Sim,Chialonda | 115237 | JFK8 Education Session Part 3 | Class |
| Ebel,Robert Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Pristell,Arshad | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Keygeetiera E | 115237 | JFK8 Education Session Part 3 | Class |
| Rojas,Jhoven | 115237 | JFK8 Education Session Part 3 | Class |
| Portuhondo,Alberto Dejesus | 115237 | JFK8 Education Session Part 3 | Class |
| Lefkowitz,Leanna | 115237 | JFK8 Education Session Part 3 | Class |
| Bowen,Joel | 115237 | JFK8 Education Session Part 3 | Class |
| Feratovic,Ferid | 115237 | JFK8 Education Session Part 3 | Class |
| Arias,Inoel | 115237 | JFK8 Education Session Part 3 | Class |
| VanDyke,Latonia | 115237 | JFK8 Education Session Part 3 | Class |
| Medina,Cindy | 115237 | JFK8 Education Session Part 3 | Class |
| Giron Baez,nayeli | 115237 | JFK8 Education Session Part 3 | Class |
| aquino,magali | 115237 | JFK8 Education Session Part 3 | Class |
| Goines,Christopher R | 115237 | JFK8 Education Session Part 3 | Class |
| Breaker,Shamir | 115237 | JFK8 Education Session Part 3 | Class |
| Gloria,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Cortes,Edmundo | 115237 | JFK8 Education Session Part 3 | Class |
| Quisiguina,Erika Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Morris,Clint | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Cheryl | 115237 | JFK8 Education Session Part 3 | Class |
| Roman,Marcus | 115237 | JFK8 Education Session Part 3 | Class |
| Pope,Corbin | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Edwards,Karon Carmelita | 115237 | JFK8 Education Session Part 3 | Class |
| Mooney,Jordan | 115237 | JFK8 Education Session Part 3 | Class |
| Pierre Jean,Lena | 115237 | JFK8 Education Session Part 3 | Class |
| Azon,Alba | 115237 | JFK8 Education Session Part 3 | Class |
| dutan,wendy | 115237 | JFK8 Education Session Part 3 | Class |
| Vaquerano,Johanna | 115237 | JFK8 Education Session Part 3 | Class |
| Mohamed,Mohamed Mostafa | 115237 | JFK8 Education Session Part 3 | Class |
| Jorge,Manuela | 115237 | JFK8 Education Session Part 3 | Class |
| gerena castillo,luz | 115237 | JFK8 Education Session Part 3 | Class |
| Galarza,Moises | 115237 | JFK8 Education Session Part 3 | Class |
| ferguson,mariuwm elohiim | 115237 | JFK8 Education Session Part 3 | Class |
| Iwanowicz,Cezary | 115237 | JFK8 Education Session Part 3 | Class |
| Ansert,Michele | 115237 | JFK8 Education Session Part 3 | Class |
| Lunsford,Devon | 115237 | JFK8 Education Session Part 3 | Class |
| Marega,Kandioura | 115237 | JFK8 Education Session Part 3 | Class |
| Clemons,Cory Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Vasquez,Daniel Alejandro | 115237 | JFK8 Education Session Part 3 | Class |
| Jaquez,Liany | 115237 | JFK8 Education Session Part 3 | Class |
| Jaquez,Liany | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Cabera,Rassul | 115237 | JFK8 Education Session Part 3 | Class |
| Cabera,Rassul | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Naomi Gabriela | 115237 | JFK8 Education Session Part 3 | Class |
| Toledo,Francisco Javier | 115237 | JFK8 Education Session Part 3 | Class |
| Toledo,Francisco Javier | 115237 | JFK8 Education Session Part 3 | Class |
| Toledo,Francisco Javier | 115237 | JFK8 Education Session Part 3 | Class |
| Guaman,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Hall,Tatiana | 115237 | JFK8 Education Session Part 3 | Class |
| Hall,Tatiana | 115237 | JFK8 Education Session Part 3 | Class |
| Molina,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes Esquivel,Alan | 115237 | JFK8 Education Session Part 3 | Class |
| Malerva,Julio C | 115237 | JFK8 Education Session Part 3 | Class |
| Jalloh,Mariama | 115237 | JFK8 Education Session Part 3 | Class |
| Berko,Kingsley | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,John Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| acevedo,marialyn | 115237 | JFK8 Education Session Part 3 | Class |
| Schiraldi,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Schiraldi,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Belton,Jon | 115237 | JFK8 Education Session Part 3 | Class |
| Yeboah,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Melendez Olan,Luis | 115237 | JFK8 Education Session Part 3 | Class |
| Viveros,Karolina | 115237 | JFK8 Education Session Part 3 | Class |
| Palma,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Mohammed,Lalmani | 115237 | JFK8 Education Session Part 3 | Class |
| Sealey,Malik Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Alabi,Sodiq Adekunle | 115237 | JFK8 Education Session Part 3 | Class |
| Noelien,Camilla | 115237 | JFK8 Education Session Part 3 | Class |
| Awogbemi,Paul | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia Mejia,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Montalvo,Stephanie | 115237 | JFK8 Education Session Part 3 | Class |
| Rchich,Hind | 115237 | JFK8 Education Session Part 3 | Class |
| Dale,Marvin | 115237 | JFK8 Education Session Part 3 | Class |
| Ackerson,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Cardona Moreno,Eliezer | 115237 | JFK8 Education Session Part 3 | Class |
| Cardona Moreno,Eliezer | 115237 | JFK8 Education Session Part 3 | Class |
| Chilaka,Wilfred Uche | 115237 | JFK8 Education Session Part 3 | Class |
| Chilaka,Wilfred Uche | 115237 | JFK8 Education Session Part 3 | Class |
| Yang,Ashley | 115237 | JFK8 Education Session Part 3 | Class |
| EDJEMIN,EHUIE STANISLAS | 115237 | JFK8 Education Session Part 3 | Class |
| Mclaurin,Raurice | 115237 | JFK8 Education Session Part 3 | Class |
| Anang fio,Wendy | 115237 | JFK8 Education Session Part 3 | Class |
| Pina,Kyara | 115237 | JFK8 Education Session Part 3 | Class |
| Palin,Michael Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Leonardo Cosme,Juan A Alejandro | 115237 | JFK8 Education Session Part 3 | Class |
| villacis,johnny | 115237 | JFK8 Education Session Part 3 | Class |
| Wood,Alethea | 115237 | JFK8 Education Session Part 3 | Class |
| Sawyers,Des | 115237 | JFK8 Education Session Part 3 | Class |
| romero de la Rosa,cleismar | 115237 | JFK8 Education Session Part 3 | Class |
| Osabutey,Keren Sabukie | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Kien,Brandon Sang | 115237 | JFK8 Education Session Part 3 | Class |
| montero,betania m | 115237 | JFK8 Education Session Part 3 | Class |
| Fasano,Nicola | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Allan | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Larry | 115237 | JFK8 Education Session Part 3 | Class |
| Cordero,Starky J | 115237 | JFK8 Education Session Part 3 | Class |
| Cook,Marquis Dominic | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Marco | 115237 | JFK8 Education Session Part 3 | Class |
| Diallo,Oumar | 115237 | JFK8 Education Session Part 3 | Class |
| Watkins,Litoya | 115237 | JFK8 Education Session Part 3 | Class |
| Vincent,Winston | 115237 | JFK8 Education Session Part 3 | Class |
| Ambuldeniyage Don,Wijesinghe | 115237 | JFK8 Education Session Part 3 | Class |
| Tapia,Angel | 115237 | JFK8 Education Session Part 3 | Class |
| Benedetti,Jennifer Celine | 115237 | JFK8 Education Session Part 3 | Class |
| Rajeev,Layitha | 115237 | JFK8 Education Session Part 3 | Class |
| Whitaker,Curtis | 115237 | JFK8 Education Session Part 3 | Class |
| Gilmore,Dashawn | 115237 | JFK8 Education Session Part 3 | Class |
| Olguin Rodriguez,Llany | 115237 | JFK8 Education Session Part 3 | Class |
| Michel,Samantha Lee | 115237 | JFK8 Education Session Part 3 | Class |
| Noel,Kie | 115237 | JFK8 Education Session Part 3 | Class |
| Stringer,Boris | 115237 | JFK8 Education Session Part 3 | Class |
| McKenzie,Kevin Mohamid | 115237 | JFK8 Education Session Part 3 | Class |
| Criollo,josue | 115237 | JFK8 Education Session Part 3 | Class |
| Espinal,David | 115237 | JFK8 Education Session Part 3 | Class |
| Ayernor,Paul Kodjo | 115237 | JFK8 Education Session Part 3 | Class |
| stokes,michael | 115237 | JFK8 Education Session Part 3 | Class |
| Burgos,Andre | 115237 | JFK8 Education Session Part 3 | Class |
| Odewale,Olaoluwa Victor | 115237 | JFK8 Education Session Part 3 | Class |
| Osorio,Nesy | 115237 | JFK8 Education Session Part 3 | Class |
| Lucero,Melvyn | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| zimmerman,lauren | 115237 | JFK8 Education Session Part 3 | Class |
| Sibri,Zayro | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Addis | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Addis | 115237 | JFK8 Education Session Part 3 | Class |
| Ostreni,Vlorian | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Herman | 115237 | JFK8 Education Session Part 3 | Class |
| Cotton,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Mbayoh,Sylvester | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell,Donald J | 115237 | JFK8 Education Session Part 3 | Class |
| Aquino,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Lindsey,Jade | 115237 | JFK8 Education Session Part 3 | Class |
| Robles,Luis A | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Fernando | 115237 | JFK8 Education Session Part 3 | Class |
| Chakma,Pijum | 115237 | JFK8 Education Session Part 3 | Class |
| ame,Drilon | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Green,Yiya | 115237 | JFK8 Education Session Part 3 | Class |
| Burnett,Tiara | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gonzalez Alvarado,Marvin Uriel | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Alexis | 115237 | JFK8 Education Session Part 3 | Class |
| Cortez,Meynarda | 115237 | JFK8 Education Session Part 3 | Class |
| Aquino,Nancy A | 115237 | JFK8 Education Session Part 3 | Class |
| Doumbouya,Oumar | 115237 | JFK8 Education Session Part 3 | Class |
| Charlemagne,Dezz | 115237 | JFK8 Education Session Part 3 | Class |
| Oatis,Tyler | 115237 | JFK8 Education Session Part 3 | Class |
| Swarnalatha,Ranasinghe Arachchige | 115237 | JFK8 Education Session Part 3 | Class |
| Springer,Calvert | 115237 | JFK8 Education Session Part 3 | Class |
| Kingston,Arlene | 115237 | JFK8 Education Session Part 3 | Class |
| Luzuriaga,Alexandra Alexandra | 115237 | JFK8 Education Session Part 3 | Class |
| Chan,Kimberly L | 115237 | JFK8 Education Session Part 3 | Class |
| Toure,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz Konchakoska,Francisco | 115237 | JFK8 Education Session Part 3 | Class |
| Sosa,April | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Marco Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Felix,Eardley | 115237 | JFK8 Education Session Part 3 | Class |
| Fiore,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Newkirk,Deshaun | 115237 | JFK8 Education Session Part 3 | Class |
| Molina,Samuel DAVID | 115237 | JFK8 Education Session Part 3 | Class |
| Polo,Yelanis | 115237 | JFK8 Education Session Part 3 | Class |
| Khela,Mariman | 115237 | JFK8 Education Session Part 3 | Class |
| Faruk,Omar | 115237 | JFK8 Education Session Part 3 | Class |
| Faruk,Omar | 115237 | JFK8 Education Session Part 3 | Class |
| Rhett-Morgan,Bradley | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Otis | 115237 | JFK8 Education Session Part 3 | Class |
| Woffard,Vonnell | 115237 | JFK8 Education Session Part 3 | Class |
| Woffard,Vonnell | 115237 | JFK8 Education Session Part 3 | Class |
| Virella,Enrique | 115237 | JFK8 Education Session Part 3 | Class |
| Jeanty,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| VASQUEZ,MARLENE | 115237 | JFK8 Education Session Part 3 | Class |
| Luna guerrero,Martha | 115237 | JFK8 Education Session Part 3 | Class |
| Skaf,Hadi | 115237 | JFK8 Education Session Part 3 | Class |
| Morgan,Jeniqua | 115237 | JFK8 Education Session Part 3 | Class |
| Estrada,Dennis | 115237 | JFK8 Education Session Part 3 | Class |
| Estrada,Dennis | 115237 | JFK8 Education Session Part 3 | Class |
| Wilkins,Cyre | 115237 | JFK8 Education Session Part 3 | Class |
| Womiloju,Adebayo | 115237 | JFK8 Education Session Part 3 | Class |
| Foster,Haribaldev | 115237 | JFK8 Education Session Part 3 | Class |
| Santo,Daniel Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Reese,Felicia | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Alvin Steven | 115237 | JFK8 Education Session Part 3 | Class |
| Samuel,Emad | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Shaniqua | 115237 | JFK8 Education Session Part 3 | Class |
| Mirza,Nimra | 115237 | JFK8 Education Session Part 3 | Class |
| Anani,Collins Kojo | 115237 | JFK8 Education Session Part 3 | Class |
| Tomlin,Zari | 115237 | JFK8 Education Session Part 3 | Class |
| Lam,Devion | 115237 | JFK8 Education Session Part 3 | Class |
| Mejia,Jeremyah | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Nieves,Luis Javier | 115237 | JFK8 Education Session Part 3 | Class |
| Sosa,Johnny | 115237 | JFK8 Education Session Part 3 | Class |
| pascoe,kamala | 115237 | JFK8 Education Session Part 3 | Class |
| Suarez Jerez,Rosa Angelica A | 115237 | JFK8 Education Session Part 3 | Class |
| Jonas,Mike | 115237 | JFK8 Education Session Part 3 | Class |
| Camacho,Kayla | 115237 | JFK8 Education Session Part 3 | Class |
| Alvarez,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,James | 115237 | JFK8 Education Session Part 3 | Class |
| Arita,Sofy | 115237 | JFK8 Education Session Part 3 | Class |
| Arita,Sofy | 115237 | JFK8 Education Session Part 3 | Class |
| Musa,Abdallah | 115237 | JFK8 Education Session Part 3 | Class |
| Quinn,Donna | 115237 | JFK8 Education Session Part 3 | Class |
| Galindo,Zabai | 115237 | JFK8 Education Session Part 3 | Class |
| terfie,helen | 115237 | JFK8 Education Session Part 3 | Class |
| Melbin,John | 115237 | JFK8 Education Session Part 3 | Class |
| Kalogeropoulos,Anastasios John | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Diallo,Mamadou | 115237 | JFK8 Education Session Part 3 | Class |
| Butler,Bianca Jasmine | 115237 | JFK8 Education Session Part 3 | Class |
| Aly,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Gadson,Sweets | 115237 | JFK8 Education Session Part 3 | Class |
| Herrera,Jose Alejandro | 115237 | JFK8 Education Session Part 3 | Class |
| Anderson,Quan | 115237 | JFK8 Education Session Part 3 | Class |
| TAMAYO,VICTOR Hugo | 115237 | JFK8 Education Session Part 3 | Class |
| esposito,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Ramsey,Kenya | 115237 | JFK8 Education Session Part 3 | Class |
| Terry,Tatyanna | 115237 | JFK8 Education Session Part 3 | Class |
| Valentin,Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Correa,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| El Jaouhari,Hafid | 115237 | JFK8 Education Session Part 3 | Class |
| Gack,Mamadou | 115237 | JFK8 Education Session Part 3 | Class |
| Zhang,Junjie | 115237 | JFK8 Education Session Part 3 | Class |
| Graham,William | 115237 | JFK8 Education Session Part 3 | Class |
| Koko,Chrislove G | 115237 | JFK8 Education Session Part 3 | Class |
| Suresh,Viraj | 115237 | JFK8 Education Session Part 3 | Class |
| curiel,jorge | 115237 | JFK8 Education Session Part 3 | Class |
| curiel,jorge | 115237 | JFK8 Education Session Part 3 | Class |
| Gray,Kerry | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas,Traceyann | 115237 | JFK8 Education Session Part 3 | Class |
| Cooley,Desmond | 115237 | JFK8 Education Session Part 3 | Class |
| Pandolfo,Amanda | 115237 | JFK8 Education Session Part 3 | Class |
| Shaker,Merna | 115237 | JFK8 Education Session Part 3 | Class |
| Cabreja,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Tovbis,Anatoliy | 115237 | JFK8 Education Session Part 3 | Class |
| Balogun,Talani | 115237 | JFK8 Education Session Part 3 | Class |
| Randazzo,Deanna | 115237 | JFK8 Education Session Part 3 | Class |
| Randazzo,Deanna | 115237 | JFK8 Education Session Part 3 | Class |
| Lobasso,Angela | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Vangendren,Andre | 115237 | JFK8 Education Session Part 3 | Class |
| Simmons,Kenya | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Evelyn | 115237 | JFK8 Education Session Part 3 | Class |
| Callender,Jediah | 115237 | JFK8 Education Session Part 3 | Class |
| Alvarado,Immanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Sooriyaarachchi,Kithsiri Ariyawansa | 115237 | JFK8 Education Session Part 3 | Class |
| Barry,Aissatou | 115237 | JFK8 Education Session Part 3 | Class |
| Dada - Burrell,Tawanna | 115237 | JFK8 Education Session Part 3 | Class |
| Orowe,Faith | 115237 | JFK8 Education Session Part 3 | Class |
| Orowe,Faith | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Kenia Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Guerrero,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Sylla,Aicha | 115237 | JFK8 Education Session Part 3 | Class |
| Kelly,Will John | 115237 | JFK8 Education Session Part 3 | Class |
| H,Thanya | 115237 | JFK8 Education Session Part 3 | Class |
| Luperdi,Sergio | 115237 | JFK8 Education Session Part 3 | Class |
| Duncan,Keshaun | 115237 | JFK8 Education Session Part 3 | Class |
| Bangura,Aminata haja | 115237 | JFK8 Education Session Part 3 | Class |
| ada,jamyla | 115237 | JFK8 Education Session Part 3 | Class |
| Vilchis,Kelvin | 115237 | JFK8 Education Session Part 3 | Class |
| baig,Mirza T | 115237 | JFK8 Education Session Part 3 | Class |
| Galizia,Gianna | 115237 | JFK8 Education Session Part 3 | Class |
| Galizia,Gianna | 115237 | JFK8 Education Session Part 3 | Class |
| Defoe,Hildred | 115237 | JFK8 Education Session Part 3 | Class |
| Wood,Michaela Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Wood,Michaela Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| ALUTH-GAMARALALAGE,JANAKA BANDARA | 115237 | JFK8 Education Session Part 3 | Class |
| Brooks,Rachel | 115237 | JFK8 Education Session Part 3 | Class |
| Cordova,James | 115237 | JFK8 Education Session Part 3 | Class |
| Aguilar,Eliana | 115237 | JFK8 Education Session Part 3 | Class |
| Navarro,Nadia Itzel | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Royanna C | 115237 | JFK8 Education Session Part 3 | Class |
| Jordan,Felicia | 115237 | JFK8 Education Session Part 3 | Class |
| Ruiz,Karina | 115237 | JFK8 Education Session Part 3 | Class |
| Mcmillan,Judah | 115237 | JFK8 Education Session Part 3 | Class |
| Peralta,Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Minaya,Marcos | 115237 | JFK8 Education Session Part 3 | Class |
| Minaya,Marcos | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Xavier David | 115237 | JFK8 Education Session Part 3 | Class |
| colon,Leila | 115237 | JFK8 Education Session Part 3 | Class |
| Ford-Owens,Sara | 115237 | JFK8 Education Session Part 3 | Class |
| Christian,Reena | 115237 | JFK8 Education Session Part 3 | Class |
| Harper,Kenneth Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Ross,Shanece | 115237 | JFK8 Education Session Part 3 | Class |
| Leonard,Michel-ange | 115237 | JFK8 Education Session Part 3 | Class |
| VALCOURT,Joel | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Reina | 115237 | JFK8 Education Session Part 3 | Class |
| Ipadeola,Bukola Basirat | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Oralis | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Sibri,Juan Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| Harper,Faheem A. | 115237 | JFK8 Education Session Part 3 | Class |
| Carrasco,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Butler,Malcolm | 115237 | JFK8 Education Session Part 3 | Class |
| Parker,Stephanie | 115237 | JFK8 Education Session Part 3 | Class |
| Obiano,Peter | 115237 | JFK8 Education Session Part 3 | Class |
| Olu-Hamilton,Zena | 115237 | JFK8 Education Session Part 3 | Class |
| Mikhil,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| DAWUD,ALI | 115237 | JFK8 Education Session Part 3 | Class |
| Lin,Joyce | 115237 | JFK8 Education Session Part 3 | Class |
| Ramirez,Gregory | 115237 | JFK8 Education Session Part 3 | Class |
| Alequin Sanchez,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Ruiz,Pete | 115237 | JFK8 Education Session Part 3 | Class |
| Otutulord,Wasiu | 115237 | JFK8 Education Session Part 3 | Class |
| Lau,Tune | 115237 | JFK8 Education Session Part 3 | Class |
| Altamirano,Carmen | 115237 | JFK8 Education Session Part 3 | Class |
| UFONDU,VICTORIA | 115237 | JFK8 Education Session Part 3 | Class |
| Purvis,Lashanda | 115237 | JFK8 Education Session Part 3 | Class |
| jubran,yanette | 115237 | JFK8 Education Session Part 3 | Class |
| Stephens,Kabrina L | 115237 | JFK8 Education Session Part 3 | Class |
| Mahmud,Faisal | 115237 | JFK8 Education Session Part 3 | Class |
| Lettsome,Shinnay | 115237 | JFK8 Education Session Part 3 | Class |
| Khandaker,Sumaiya | 115237 | JFK8 Education Session Part 3 | Class |
| Jenkins,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Maria,Katy | 115237 | JFK8 Education Session Part 3 | Class |
| White,Kari | 115237 | JFK8 Education Session Part 3 | Class |
| Santanello,Nino Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Raiola,Gerard | 115237 | JFK8 Education Session Part 3 | Class |
| Vicente,Reynelis | 115237 | JFK8 Education Session Part 3 | Class |
| Duncan,Rondell | 115237 | JFK8 Education Session Part 3 | Class |
| Beal,Elasia | 115237 | JFK8 Education Session Part 3 | Class |
| Zhao,Danny | 115237 | JFK8 Education Session Part 3 | Class |
| Chung,Stella | 115237 | JFK8 Education Session Part 3 | Class |
| Waters,Kenny | 115237 | JFK8 Education Session Part 3 | Class |
| Moody,Hailly | 115237 | JFK8 Education Session Part 3 | Class |
| Murphy,Tarell | 115237 | JFK8 Education Session Part 3 | Class |
| Peetey,Eric Bill | 115237 | JFK8 Education Session Part 3 | Class |
| Logan,Ronald | 115237 | JFK8 Education Session Part 3 | Class |
| Greatheart,Tiffany | 115237 | JFK8 Education Session Part 3 | Class |
| Hemenway,Parker | 115237 | JFK8 Education Session Part 3 | Class |
| Wright,Wanda | 115237 | JFK8 Education Session Part 3 | Class |
| Banjo,Toyosi Rachael | 115237 | JFK8 Education Session Part 3 | Class |
| Berry,Keisha | 115237 | JFK8 Education Session Part 3 | Class |
| Matthews,Tatyana | 115237 | JFK8 Education Session Part 3 | Class |
| Collazo,Peter | 115237 | JFK8 Education Session Part 3 | Class |
| Denicola,Susan | 115237 | JFK8 Education Session Part 3 | Class |
| Nebot Lopez,Yackisha | 115237 | JFK8 Education Session Part 3 | Class |
| Merlo,Ginamarie | 115237 | JFK8 Education Session Part 3 | Class |
| Unegbu,Chukwuma | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Robinson,Shakena | 115237 | JFK8 Education Session Part 3 | Class |
| Bobbsemple,Dawn | 115237 | JFK8 Education Session Part 3 | Class |
| Lucas,Justice | 115237 | JFK8 Education Session Part 3 | Class |
| Fuller,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| Banjo,Rapheal | 115237 | JFK8 Education Session Part 3 | Class |
| Banjo,Rapheal | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera,Cynthia | 115237 | JFK8 Education Session Part 3 | Class |
| Morgan,Troy | 115237 | JFK8 Education Session Part 3 | Class |
| Nickie,Jovan | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Karen | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Karen | 115237 | JFK8 Education Session Part 3 | Class |
| Buestan,Charlie | 115237 | JFK8 Education Session Part 3 | Class |
| Amoah,Moses | 115237 | JFK8 Education Session Part 3 | Class |
| Borkowski,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| San Pablo,Gregorio | 115237 | JFK8 Education Session Part 3 | Class |
| Pazos camacho,Omar eduardo | 115237 | JFK8 Education Session Part 3 | Class |
| Dupuy,marc elie | 115237 | JFK8 Education Session Part 3 | Class |
| rodriguez arredondo,edgar | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez Mateos,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Kurt,Raymond | 115237 | JFK8 Education Session Part 3 | Class |
| Palmieri,Anna | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,William | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,William | 115237 | JFK8 Education Session Part 3 | Class |
| Lightner,Myles | 115237 | JFK8 Education Session Part 3 | Class |
| Leonard,Joseph Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Mohamed,Abdelrahman | 115237 | JFK8 Education Session Part 3 | Class |
| Williamson,Christy | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Alexis Oswaldo | 115237 | JFK8 Education Session Part 3 | Class |
| Church,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Olea Garcia,Jesus Vidal | 115237 | JFK8 Education Session Part 3 | Class |
| Harris,Andre | 115237 | JFK8 Education Session Part 3 | Class |
| Cazares,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Budge,Patrick Russell | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Jessica Mabel | 115237 | JFK8 Education Session Part 3 | Class |
| Bennett,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Bazemore,Jayshawn | 115237 | JFK8 Education Session Part 3 | Class |
| Villegas,Maliakah | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Jamel | 115237 | JFK8 Education Session Part 3 | Class |
| Fredericks,Shakeera | 115237 | JFK8 Education Session Part 3 | Class |
| Santiago,Isiah Kenneth | 115237 | JFK8 Education Session Part 3 | Class |
| Duman,Cristian P | 115237 | JFK8 Education Session Part 3 | Class |
| Jayasundara,Hemantha Pushpa Kumara | 115237 | JFK8 Education Session Part 3 | Class |
| Marshall,Brittany | 115237 | JFK8 Education Session Part 3 | Class |
| Crews,Marvin | 115237 | JFK8 Education Session Part 3 | Class |
| Allen,Jeremiah | 115237 | JFK8 Education Session Part 3 | Class |
| AJIKOBI,Olufunmilayo | 115237 | JFK8 Education Session Part 3 | Class |
| Tirado,Michael Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Tirado,Michael Joseph | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Bessler,Thomas | 115237 | JFK8 Education Session Part 3 | Class |
| Moquete,Cristal | 115237 | JFK8 Education Session Part 3 | Class |
| denis,samanta | 115237 | JFK8 Education Session Part 3 | Class |
| Sinclair,Paul Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Copeland,Jamel A | 115237 | JFK8 Education Session Part 3 | Class |
| garner,kathy | 115237 | JFK8 Education Session Part 3 | Class |
| Alcantara,Wangel | 115237 | JFK8 Education Session Part 3 | Class |
| Baksh,Reaz | 115237 | JFK8 Education Session Part 3 | Class |
| Sassano,Dayna | 115237 | JFK8 Education Session Part 3 | Class |
| Sassano,Dayna | 115237 | JFK8 Education Session Part 3 | Class |
| Onyelo,Stanley Chidiebere | 115237 | JFK8 Education Session Part 3 | Class |
| Vazquez molina,Karla | 115237 | JFK8 Education Session Part 3 | Class |
| Preston,Takiyah L | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Zuniga,Brenda B | 115237 | JFK8 Education Session Part 3 | Class |
| DE-SILVA,SEEKKUGE SURANGA | 115237 | JFK8 Education Session Part 3 | Class |
| Dume,Sheyla | 115237 | JFK8 Education Session Part 3 | Class |
| Izzolo,Ashley | 115237 | JFK8 Education Session Part 3 | Class |
| Coleman,Tiana | 115237 | JFK8 Education Session Part 3 | Class |
| Basurto,Ismael | 115237 | JFK8 Education Session Part 3 | Class |
| Santana,Angel | 115237 | JFK8 Education Session Part 3 | Class |
| Gallegos,Maria Victoria | 115237 | JFK8 Education Session Part 3 | Class |
| kay,justin | 115237 | JFK8 Education Session Part 3 | Class |
| Guamanquispe,Dindi Rose | 115237 | JFK8 Education Session Part 3 | Class |
| Then Lugo,Eli | 115237 | JFK8 Education Session Part 3 | Class |
| Then Lugo,Eli | 115237 | JFK8 Education Session Part 3 | Class |
| De la rosa,Michael D | 115237 | JFK8 Education Session Part 3 | Class |
| Hunt,Damale | 115237 | JFK8 Education Session Part 3 | Class |
| lopez,Marisol | 115237 | JFK8 Education Session Part 3 | Class |
| Sparendam,Mariah | 115237 | JFK8 Education Session Part 3 | Class |
| ACESTE,KIM | 115237 | JFK8 Education Session Part 3 | Class |
| Iorio,Anthony Louis | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell,Sophia | 115237 | JFK8 Education Session Part 3 | Class |
| Laventure,Dernella | 115237 | JFK8 Education Session Part 3 | Class |
| salazar,Isamar | 115237 | JFK8 Education Session Part 3 | Class |
| Younan,Mina | 115237 | JFK8 Education Session Part 3 | Class |
| Taylor,Tyesha | 115237 | JFK8 Education Session Part 3 | Class |
| Iacono,Joseph Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| FERNANDEZ,ARIANA | 115237 | JFK8 Education Session Part 3 | Class |
| Chen,Meng | 115237 | JFK8 Education Session Part 3 | Class |
| Ojeda,Bernardo | 115237 | JFK8 Education Session Part 3 | Class |
| Mejia,Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Victoria Mary | 115237 | JFK8 Education Session Part 3 | Class |
| Godfrey,Jacyn-Lee | 115237 | JFK8 Education Session Part 3 | Class |
| Gabr,Amro Wafik | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Keanu | 115237 | JFK8 Education Session Part 3 | Class |
| Cregin,William James | 115237 | JFK8 Education Session Part 3 | Class |
| Foster,Tavia | 115237 | JFK8 Education Session Part 3 | Class |
| Simpkins,Gerald | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Davidson,Shaun L | 115237 | JFK8 Education Session Part 3 | Class |
| Collaguazo,Miguel Estive | 115237 | JFK8 Education Session Part 3 | Class |
| Javate,Adrian | 115237 | JFK8 Education Session Part 3 | Class |
| Lema,Jessica Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Lema,Jessica Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Sayre Carrero,Peter | 115237 | JFK8 Education Session Part 3 | Class |
| scott,kaila | 115237 | JFK8 Education Session Part 3 | Class |
| Rohr,Thomas | 115237 | JFK8 Education Session Part 3 | Class |
| Pedersen,William | 115237 | JFK8 Education Session Part 3 | Class |
| Carroll,John | 115237 | JFK8 Education Session Part 3 | Class |
| NYABUTO,GEOFREY | 115237 | JFK8 Education Session Part 3 | Class |
| Villanueva Ortiz,Raquel | 115237 | JFK8 Education Session Part 3 | Class |
| Meyers,Neko | 115237 | JFK8 Education Session Part 3 | Class |
| Andino,Shenice | 115237 | JFK8 Education Session Part 3 | Class |
| Carrion,Shayla | 115237 | JFK8 Education Session Part 3 | Class |
| acosta,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Pauley,Darnell | 115237 | JFK8 Education Session Part 3 | Class |
| Rizzo,Angela R | 115237 | JFK8 Education Session Part 3 | Class |
| Varghese,Soman | 115237 | JFK8 Education Session Part 3 | Class |
| Perera,Wijethunga | 115237 | JFK8 Education Session Part 3 | Class |
| Lewin,Reyon | 115237 | JFK8 Education Session Part 3 | Class |
| Doyle,Caitlyn | 115237 | JFK8 Education Session Part 3 | Class |
| yassa,marian | 115237 | JFK8 Education Session Part 3 | Class |
| Mian,Asad | 115237 | JFK8 Education Session Part 3 | Class |
| Buchanan,Conroy Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Shanese Nari | 115237 | JFK8 Education Session Part 3 | Class |
| Bishai,Alber Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Kittrell,April | 115237 | JFK8 Education Session Part 3 | Class |
| Aghayev,Rasim | 115237 | JFK8 Education Session Part 3 | Class |
| Yani,Kerolos Samir | 115237 | JFK8 Education Session Part 3 | Class |
| Salmon,Kimberly Ann | 115237 | JFK8 Education Session Part 3 | Class |
| Dupree,Niger | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez Jumelles,Alan Aristides | 115237 | JFK8 Education Session Part 3 | Class |
| Messidor,Nehemie | 115237 | JFK8 Education Session Part 3 | Class |
| Calderon,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| pondexter,jeffrey | 115237 | JFK8 Education Session Part 3 | Class |
| pondexter,jeffrey | 115237 | JFK8 Education Session Part 3 | Class |
| Ramirez Jr,Angel | 115237 | JFK8 Education Session Part 3 | Class |
| Bak,Slawomir Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Kabba,Isaibu | 115237 | JFK8 Education Session Part 3 | Class |
| Zhao,Yan Ning | 115237 | JFK8 Education Session Part 3 | Class |
| sullivan,kimberly | 115237 | JFK8 Education Session Part 3 | Class |
| Villani,Dominick Peter | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes Esquivel,Blanca | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,MELANIE | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Ana | 115237 | JFK8 Education Session Part 3 | Class |
| Hubert,Petra R. | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Jose Alberto | 115237 | JFK8 Education Session Part 3 | Class |
| Neri,Eva | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Neri,Eva | 115237 | JFK8 Education Session Part 3 | Class |
| Simpson,Clive Henry | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Mauricio Angel | 115237 | JFK8 Education Session Part 3 | Class |
| Bauldie-Reid,Nathaniel | 115237 | JFK8 Education Session Part 3 | Class |
| Sheran,Brandon Ricardo | 115237 | JFK8 Education Session Part 3 | Class |
| Lloyd,Tiajah Daviyan | 115237 | JFK8 Education Session Part 3 | Class |
| Lloyd,Tiajah Daviyan | 115237 | JFK8 Education Session Part 3 | Class |
| Philips,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Nieves,Audeli | 115237 | JFK8 Education Session Part 3 | Class |
| Aburamilah,Muhammad | 115237 | JFK8 Education Session Part 3 | Class |
| Robertson,Elason | 115237 | JFK8 Education Session Part 3 | Class |
| Robertson,Elason | 115237 | JFK8 Education Session Part 3 | Class |
| Nupur,Rezwana Nupur | 115237 | JFK8 Education Session Part 3 | Class |
| Quinche,Andres Dario | 115237 | JFK8 Education Session Part 3 | Class |
| Hardney-Andrews,Symone | 115237 | JFK8 Education Session Part 3 | Class |
| Quaye,Alvin | 115237 | JFK8 Education Session Part 3 | Class |
| CHAN,Kyle | 115237 | JFK8 Education Session Part 3 | Class |
| Davids,Shundell | 115237 | JFK8 Education Session Part 3 | Class |
| Egodage,Indeera Pramodh | 115237 | JFK8 Education Session Part 3 | Class |
| James,Annmarie | 115237 | JFK8 Education Session Part 3 | Class |
| Bryant,Jayla | 115237 | JFK8 Education Session Part 3 | Class |
| Bermudez-Boyce,Jasmine | 115237 | JFK8 Education Session Part 3 | Class |
| allen,mikalann A | 115237 | JFK8 Education Session Part 3 | Class |
| Mulrain,Joshua | 115237 | JFK8 Education Session Part 3 | Class |
| Anyia,Chidi | 115237 | JFK8 Education Session Part 3 | Class |
| Daniels,Renee | 115237 | JFK8 Education Session Part 3 | Class |
| MOORE,ALEXENDRIA | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,Derek | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,Derek | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Yma Sumac | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Kiana | 115237 | JFK8 Education Session Part 3 | Class |
| Isaac,Therryb | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Sequana | 115237 | JFK8 Education Session Part 3 | Class |
| Rendon,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Kahawevidana,Don Pawan Akila | 115237 | JFK8 Education Session Part 3 | Class |
| Quattlebaum,Qadirah | 115237 | JFK8 Education Session Part 3 | Class |
| Badillo,Ana | 115237 | JFK8 Education Session Part 3 | Class |
| Noncilus,Jean louis | 115237 | JFK8 Education Session Part 3 | Class |
| martinez,wendy daniela | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Shanique | 115237 | JFK8 Education Session Part 3 | Class |
| Walden,Dwaine | 115237 | JFK8 Education Session Part 3 | Class |
| Rady,Shawana | 115237 | JFK8 Education Session Part 3 | Class |
| yozzo,sharon | 115237 | JFK8 Education Session Part 3 | Class |
| Jose,Alexandra | 115237 | JFK8 Education Session Part 3 | Class |
| Erazo,Juan Erazo | 115237 | JFK8 Education Session Part 3 | Class |
| White,Vanessa | 115237 | JFK8 Education Session Part 3 | Class |
| Philip-Essiet,Meralyne Tsela | 115237 | JFK8 Education Session Part 3 | Class |
| Naranjo,Zoila | 115237 | JFK8 Education Session Part 3 | Class |
| Naranjo,Zoila | 115237 | JFK8 Education Session Part 3 | Class |

Amazon_000435

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lin,An | 115237 | JFK8 Education Session Part 3 | Class |
| Lima,Carla | 115237 | JFK8 Education Session Part 3 | Class |
| Payne,Stephen | 115237 | JFK8 Education Session Part 3 | Class |
| Payne,Stephen | 115237 | JFK8 Education Session Part 3 | Class |
| Greer,Vonciel | 115237 | JFK8 Education Session Part 3 | Class |
| Berrios,David | 115237 | JFK8 Education Session Part 3 | Class |
| Ledesma,Jiliana | 115237 | JFK8 Education Session Part 3 | Class |
| Polin,Eric | 115237 | JFK8 Education Session Part 3 | Class |
| Giraldo,Claudia | 115237 | JFK8 Education Session Part 3 | Class |
| Cohen,Madison | 115237 | JFK8 Education Session Part 3 | Class |
| Dedushaj,Fislind | 115237 | JFK8 Education Session Part 3 | Class |
| shahzad,Qamar | 115237 | JFK8 Education Session Part 3 | Class |
| Maica,Danny | 115237 | JFK8 Education Session Part 3 | Class |
| Beniquez,Chris | 115237 | JFK8 Education Session Part 3 | Class |
| Beniquez,Chris | 115237 | JFK8 Education Session Part 3 | Class |
| Humphery,Lonasia | 115237 | JFK8 Education Session Part 3 | Class |
| Bryant,Jeffery | 115237 | JFK8 Education Session Part 3 | Class |
| Jean marie,Tarnisha | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Lesly | 115237 | JFK8 Education Session Part 3 | Class |
| Terry,Isaiah Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Negron,Ismael | 115237 | JFK8 Education Session Part 3 | Class |
| Vinson,Betty | 115237 | JFK8 Education Session Part 3 | Class |
| Crispin,Modesto | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Ali | 115237 | JFK8 Education Session Part 3 | Class |
| Sison,Patricia Ann G | 115237 | JFK8 Education Session Part 3 | Class |
| Cheng,Simon | 115237 | JFK8 Education Session Part 3 | Class |
| Ngo,Tony | 115237 | JFK8 Education Session Part 3 | Class |
| Danilov,Timur | 115237 | JFK8 Education Session Part 3 | Class |
| Cintron,Justin | 115237 | JFK8 Education Session Part 3 | Class |
| Anglade,Frantzceska | 115237 | JFK8 Education Session Part 3 | Class |
| drozdowski,Violetta | 115237 | JFK8 Education Session Part 3 | Class |
| khela,hany | 115237 | JFK8 Education Session Part 3 | Class |
| conteh,ismael | 115237 | JFK8 Education Session Part 3 | Class |
| Chibeze,Landry Saint | 115237 | JFK8 Education Session Part 3 | Class |
| Tran,VyToan | 115237 | JFK8 Education Session Part 3 | Class |
| Concepcion,Claudia | 115237 | JFK8 Education Session Part 3 | Class |
| Molina,Jocelyn | 115237 | JFK8 Education Session Part 3 | Class |
| Phillips,Simka | 115237 | JFK8 Education Session Part 3 | Class |
| Bulathsinhalage,Judvin Emilson | 115237 | JFK8 Education Session Part 3 | Class |
| Bulathsinhalage,Judvin Emilson | 115237 | JFK8 Education Session Part 3 | Class |
| Quintero,edwin | 115237 | JFK8 Education Session Part 3 | Class |
| RODRIGUEZ,MAIGUALIDA C | 115237 | JFK8 Education Session Part 3 | Class |
| Trimble,Javin | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Cesar | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Wendy | 115237 | JFK8 Education Session Part 3 | Class |
| Kennedy,Tyrone | 115237 | JFK8 Education Session Part 3 | Class |
| Senarath Appuhamilage,Amith | 115237 | JFK8 Education Session Part 3 | Class |
| Touray,Youssuf | 115237 | JFK8 Education Session Part 3 | Class |
| Gibbs,Edward | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Austria,Gerardo | 115237 | JFK8 Education Session Part 3 | Class |
| roberts,mark | 115237 | JFK8 Education Session Part 3 | Class |
| Ajiboye,Emmanuel Sunday | 115237 | JFK8 Education Session Part 3 | Class |
| Ware,Cleveland | 115237 | JFK8 Education Session Part 3 | Class |
| CAMPBELL,DYLAN CHRISTOPHER | 115237 | JFK8 Education Session Part 3 | Class |
| Feucht,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Berad,Vitthal Laxman | 115237 | JFK8 Education Session Part 3 | Class |
| Ramkisson,Peter | 115237 | JFK8 Education Session Part 3 | Class |
| Pacheco,Dana | 115237 | JFK8 Education Session Part 3 | Class |
| Quick,Shynia | 115237 | JFK8 Education Session Part 3 | Class |
| Ocasio,Dinorah | 115237 | JFK8 Education Session Part 3 | Class |
| cisse,Soureya Soureya | 115237 | JFK8 Education Session Part 3 | Class |
| Macjessie-Mbewe,Nyasha | 115237 | JFK8 Education Session Part 3 | Class |
| Duarte,Kenneth | 115237 | JFK8 Education Session Part 3 | Class |
| Krim,Aya | 115237 | JFK8 Education Session Part 3 | Class |
| Tan,Shuwan | 115237 | JFK8 Education Session Part 3 | Class |
| Parham,Shyaisia | 115237 | JFK8 Education Session Part 3 | Class |
| Diop,Marema | 115237 | JFK8 Education Session Part 3 | Class |
| Kennedy,Gerard | 115237 | JFK8 Education Session Part 3 | Class |
| Lee,Susanl | 115237 | JFK8 Education Session Part 3 | Class |
| Zegarra Carranza,Juan | 115237 | JFK8 Education Session Part 3 | Class |
| Foster,Julian | 115237 | JFK8 Education Session Part 3 | Class |
| Monroig,Jorge | 115237 | JFK8 Education Session Part 3 | Class |
| Karen,Dyer | 115237 | JFK8 Education Session Part 3 | Class |
| KUNJU,SYMACHEN KUNJU- | 115237 | JFK8 Education Session Part 3 | Class |
| KUNJU,SYMACHEN KUNJU- | 115237 | JFK8 Education Session Part 3 | Class |
| Almendaris,Rosio | 115237 | JFK8 Education Session Part 3 | Class |
| Armstrong,alana | 115237 | JFK8 Education Session Part 3 | Class |
| Young,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Sejour,Judeline | 115237 | JFK8 Education Session Part 3 | Class |
| Grant,Caleb | 115237 | JFK8 Education Session Part 3 | Class |
| Grant,Caleb | 115237 | JFK8 Education Session Part 3 | Class |
| Grant,Caleb | 115237 | JFK8 Education Session Part 3 | Class |
| Weitzman,Marc | 115237 | JFK8 Education Session Part 3 | Class |
| Paz,Katherine | 115237 | JFK8 Education Session Part 3 | Class |
| Platt,Torrell | 115237 | JFK8 Education Session Part 3 | Class |
| Muftau,Lateef Abidoun | 115237 | JFK8 Education Session Part 3 | Class |
| Goriva,Adina Sixta | 115237 | JFK8 Education Session Part 3 | Class |
| Frias,Antolino | 115237 | JFK8 Education Session Part 3 | Class |
| Jeganathan,THINUSAN | 115237 | JFK8 Education Session Part 3 | Class |
| Adjodha,Narine Narine | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Justina Angelique | 115237 | JFK8 Education Session Part 3 | Class |
| Alejo,Sofia | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Chris | 115237 | JFK8 Education Session Part 3 | Class |
| Arroyo,Myrna Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Ebrahim,Nermeen | 115237 | JFK8 Education Session Part 3 | Class |
| Dunlap,Khaliid | 115237 | JFK8 Education Session Part 3 | Class |
| Okeke,Francis | 115237 | JFK8 Education Session Part 3 | Class |
| Richardson,Shatema | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Davis,M | 115237 | JFK8 Education Session Part 3 | Class |
| kolawole,olajide | 115237 | JFK8 Education Session Part 3 | Class |
| Alexander,Rashanda | 115237 | JFK8 Education Session Part 3 | Class |
| Paulate,Elfrido | 115237 | JFK8 Education Session Part 3 | Class |
| Paulate,Elfrido | 115237 | JFK8 Education Session Part 3 | Class |
| Obierika,Uchenna | 115237 | JFK8 Education Session Part 3 | Class |
| Obierika,Uchenna | 115237 | JFK8 Education Session Part 3 | Class |
| Washington,Carl Allen | 115237 | JFK8 Education Session Part 3 | Class |
| Hamilton,Tiffany | 115237 | JFK8 Education Session Part 3 | Class |
| Atancha,Julius | 115237 | JFK8 Education Session Part 3 | Class |
| Madawala,Sandra | 115237 | JFK8 Education Session Part 3 | Class |
| Spence,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Humbert,Mervin | 115237 | JFK8 Education Session Part 3 | Class |
| Hairston,Leroy | 115237 | JFK8 Education Session Part 3 | Class |
| Olmedo,Cristian | 115237 | JFK8 Education Session Part 3 | Class |
| Herman,Tyrone | 115237 | JFK8 Education Session Part 3 | Class |
| Jalloh,Assie | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Shahin,AKM | 115237 | JFK8 Education Session Part 3 | Class |
| Hassan,Ahmed | 115237 | JFK8 Education Session Part 3 | Class |
| Ghaly,Fawky Salah | 115237 | JFK8 Education Session Part 3 | Class |
| Zeanalabdeen,Rabaa Aladawia | 115237 | JFK8 Education Session Part 3 | Class |
| Evans,Egypt | 115237 | JFK8 Education Session Part 3 | Class |
| Montalvo,Andrea | 115237 | JFK8 Education Session Part 3 | Class |
| Gray,Collin | 115237 | JFK8 Education Session Part 3 | Class |
| Mahmoud,Amal M | 115237 | JFK8 Education Session Part 3 | Class |
| Adunia,Tonny | 115237 | JFK8 Education Session Part 3 | Class |
| Acuna,Bertha Felicitas | 115237 | JFK8 Education Session Part 3 | Class |
| Dees,lateefah | 115237 | JFK8 Education Session Part 3 | Class |
| guaraca,ana | 115237 | JFK8 Education Session Part 3 | Class |
| Christie,Autroya | 115237 | JFK8 Education Session Part 3 | Class |
| Doyal,Tunishia | 115237 | JFK8 Education Session Part 3 | Class |
| Nasser,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Salazar,Ligia Elena | 115237 | JFK8 Education Session Part 3 | Class |
| Gerrity,Egan | 115237 | JFK8 Education Session Part 3 | Class |
| Marma,Uchingnu | 115237 | JFK8 Education Session Part 3 | Class |
| Tran,Thomas | 115237 | JFK8 Education Session Part 3 | Class |
| Ruiz Sosa,Alejandra | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Martina | 115237 | JFK8 Education Session Part 3 | Class |
| Cabrera,Maritza Araceli | 115237 | JFK8 Education Session Part 3 | Class |
| Tello,Olinda | 115237 | JFK8 Education Session Part 3 | Class |
| ahamed,khandakar k | 115237 | JFK8 Education Session Part 3 | Class |
| ahamed,khandakar k | 115237 | JFK8 Education Session Part 3 | Class |
| Vince,Jean Wislley | 115237 | JFK8 Education Session Part 3 | Class |
| Walker,Keyan | 115237 | JFK8 Education Session Part 3 | Class |
| Basurto,Armando | 115237 | JFK8 Education Session Part 3 | Class |
| Caesar,Jay J. | 115237 | JFK8 Education Session Part 3 | Class |
| Preddie,Kerone | 115237 | JFK8 Education Session Part 3 | Class |
| Loria,Richard | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Hesdra,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Imparato,Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Medina Toro,Marcela | 115237 | JFK8 Education Session Part 3 | Class |
| Ramos,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Munaweera,Ajith Kumara | 115237 | JFK8 Education Session Part 3 | Class |
| foster,ksean | 115237 | JFK8 Education Session Part 3 | Class |
| Giusto,Patrick | 115237 | JFK8 Education Session Part 3 | Class |
| webster,john giovanni | 115237 | JFK8 Education Session Part 3 | Class |
| Kwaafo,Veronica A | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Whitney | 115237 | JFK8 Education Session Part 3 | Class |
| Khan,Mahir | 115237 | JFK8 Education Session Part 3 | Class |
| Pavia Castillo,Teresa | 115237 | JFK8 Education Session Part 3 | Class |
| Bellamy,Nikita Itisha | 115237 | JFK8 Education Session Part 3 | Class |
| Kovos,Keanna Mari | 115237 | JFK8 Education Session Part 3 | Class |
| Fajardo,Rodrigo | 115237 | JFK8 Education Session Part 3 | Class |
| Suarez,Joel | 115237 | JFK8 Education Session Part 3 | Class |
| Jurado-Chichay,Zinzuni | 115237 | JFK8 Education Session Part 3 | Class |
| Gooding,Chetney | 115237 | JFK8 Education Session Part 3 | Class |
| archille,jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| James,Hannah R | 115237 | JFK8 Education Session Part 3 | Class |
| Kirdahy,Diana | 115237 | JFK8 Education Session Part 3 | Class |
| Kirdahy,Diana | 115237 | JFK8 Education Session Part 3 | Class |
| Knutsen,Loriann | 115237 | JFK8 Education Session Part 3 | Class |
| Wardak,Naveed | 115237 | JFK8 Education Session Part 3 | Class |
| Vukelic,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| cordero,amara | 115237 | JFK8 Education Session Part 3 | Class |
| Ukpai,Chibuzo | 115237 | JFK8 Education Session Part 3 | Class |
| Barrios,Rey | 115237 | JFK8 Education Session Part 3 | Class |
| Ponce,Karen | 115237 | JFK8 Education Session Part 3 | Class |
| Foster,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Hanif,Yasin | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Rodney | 115237 | JFK8 Education Session Part 3 | Class |
| Mucha,Nick | 115237 | JFK8 Education Session Part 3 | Class |
| Mucha,Nick | 115237 | JFK8 Education Session Part 3 | Class |
| Dhakal,Prakash | 115237 | JFK8 Education Session Part 3 | Class |
| Santos,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Medina,Hector | 115237 | JFK8 Education Session Part 3 | Class |
| okpidama,Orode | 115237 | JFK8 Education Session Part 3 | Class |
| Hamilton,Lloyd | 115237 | JFK8 Education Session Part 3 | Class |
| Aguirre,Antonella | 115237 | JFK8 Education Session Part 3 | Class |
| Prince,Rashawn | 115237 | JFK8 Education Session Part 3 | Class |
| Persaud,Ryan | 115237 | JFK8 Education Session Part 3 | Class |
| Valentin,Maria Elena | 115237 | JFK8 Education Session Part 3 | Class |
| Ramirez,Lidiana Nallely | 115237 | JFK8 Education Session Part 3 | Class |
| Perkins,Derek Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Perkins,Derek Christian | 115237 | JFK8 Education Session Part 3 | Class |
| williacy,Carla | 115237 | JFK8 Education Session Part 3 | Class |
| Maurasse,Jamel J | 115237 | JFK8 Education Session Part 3 | Class |
| Gloria,Laura | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lindsay,Mark | 115237 | JFK8 Education Session Part 3 | Class |
| Yens,Elias S | 115237 | JFK8 Education Session Part 3 | Class |
| Ferreira Santos,Indalecio Adelco | 115237 | JFK8 Education Session Part 3 | Class |
| Ferreira Santos,Indalecio Adelco | 115237 | JFK8 Education Session Part 3 | Class |
| Scott,Lamont | 115237 | JFK8 Education Session Part 3 | Class |
| Okumu,Agnes | 115237 | JFK8 Education Session Part 3 | Class |
| Perch,Cameron | 115237 | JFK8 Education Session Part 3 | Class |
| Castillo,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Nwaokolo oba,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Kabba,Eburahema | 115237 | JFK8 Education Session Part 3 | Class |
| ASAD,YOUSEF | 115237 | JFK8 Education Session Part 3 | Class |
| Randazzo,Eleonora | 115237 | JFK8 Education Session Part 3 | Class |
| Casaletto,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Maldonado,Sergio | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Angela | 115237 | JFK8 Education Session Part 3 | Class |
| Alcantaro,Dione Lorraine | 115237 | JFK8 Education Session Part 3 | Class |
| Titus,Kristy | 115237 | JFK8 Education Session Part 3 | Class |
| Hendrix,Dereck | 115237 | JFK8 Education Session Part 3 | Class |
| Griffin,Javiell | 115237 | JFK8 Education Session Part 3 | Class |
| Rahman,Mojibur | 115237 | JFK8 Education Session Part 3 | Class |
| Huseyn,Vahid | 115237 | JFK8 Education Session Part 3 | Class |
| Huseyn,Vahid | 115237 | JFK8 Education Session Part 3 | Class |
| Murphy,Elijah | 115237 | JFK8 Education Session Part 3 | Class |
| Palumbo,Salvatore john | 115237 | JFK8 Education Session Part 3 | Class |
| Palumbo,Salvatore john | 115237 | JFK8 Education Session Part 3 | Class |
| Myton,Aaliyah | 115237 | JFK8 Education Session Part 3 | Class |
| Pina,Karla | 115237 | JFK8 Education Session Part 3 | Class |
| Gill,Keith | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Tiara | 115237 | JFK8 Education Session Part 3 | Class |
| Mauceri,Corrado | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Adisia | 115237 | JFK8 Education Session Part 3 | Class |
| Lauria,Chris | 115237 | JFK8 Education Session Part 3 | Class |
| Hafez,Saly | 115237 | JFK8 Education Session Part 3 | Class |
| Danso,Mahamadou Musa | 115237 | JFK8 Education Session Part 3 | Class |
| wijesekera,shirani | 115237 | JFK8 Education Session Part 3 | Class |
| Harrell,Shashana | 115237 | JFK8 Education Session Part 3 | Class |
| odefunsho,olugbenga | 115237 | JFK8 Education Session Part 3 | Class |
| Vukel,Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Maldonado,Isabel | 115237 | JFK8 Education Session Part 3 | Class |
| Olamiju,Racheal Oluseun | 115237 | JFK8 Education Session Part 3 | Class |
| Elgamal,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Elgamal,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Rozon,Kimverly A | 115237 | JFK8 Education Session Part 3 | Class |
| Soriano,Glad | 115237 | JFK8 Education Session Part 3 | Class |
| Rettle,Corey Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Speede,Tatianna | 115237 | JFK8 Education Session Part 3 | Class |
| Hector,Deborah | 115237 | JFK8 Education Session Part 3 | Class |
| Valdez,Jasily | 115237 | JFK8 Education Session Part 3 | Class |
| Jacques,Hermann Fato | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Wu,Thomas | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Shane | 115237 | JFK8 Education Session Part 3 | Class |
| Mckay,Tayy | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Rubiel | 115237 | JFK8 Education Session Part 3 | Class |
| Kongaha,Shali G | 115237 | JFK8 Education Session Part 3 | Class |
| Kongaha,Shali G | 115237 | JFK8 Education Session Part 3 | Class |
| Benjamin,Larona O | 115237 | JFK8 Education Session Part 3 | Class |
| Mcdonald,Christina | 115237 | JFK8 Education Session Part 3 | Class |
| McIntyre,George | 115237 | JFK8 Education Session Part 3 | Class |
| Collison,Ronald | 115237 | JFK8 Education Session Part 3 | Class |
| Shannon,Quincy Miles | 115237 | JFK8 Education Session Part 3 | Class |
| Bernard,Destiny Mya | 115237 | JFK8 Education Session Part 3 | Class |
| Morales nestor,Ismaelda | 115237 | JFK8 Education Session Part 3 | Class |
| Giacona,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Castillo,Randy | 115237 | JFK8 Education Session Part 3 | Class |
| Nicolas,Sandra | 115237 | JFK8 Education Session Part 3 | Class |
| Perciballi,Edward T | 115237 | JFK8 Education Session Part 3 | Class |
| Vann,Dontae | 115237 | JFK8 Education Session Part 3 | Class |
| Ahmed,Ali | 115237 | JFK8 Education Session Part 3 | Class |
| Mooney,Nancy | 115237 | JFK8 Education Session Part 3 | Class |
| Gomez,Tulio | 115237 | JFK8 Education Session Part 3 | Class |
| Santana,Jose Guillermo | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Karen | 115237 | JFK8 Education Session Part 3 | Class |
| Chase,Jesse | 115237 | JFK8 Education Session Part 3 | Class |
| Moran,Jesus A | 115237 | JFK8 Education Session Part 3 | Class |
| Gallo,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Dey,Shanthanu | 115237 | JFK8 Education Session Part 3 | Class |
| Miller,Sherill | 115237 | JFK8 Education Session Part 3 | Class |
| KANG,HARRY | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Latoya | 115237 | JFK8 Education Session Part 3 | Class |
| Girgis,Amir Reda | 115237 | JFK8 Education Session Part 3 | Class |
| Colbert,Khalil | 115237 | JFK8 Education Session Part 3 | Class |
| Guerrero,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Dikeocha,Marcus | 115237 | JFK8 Education Session Part 3 | Class |
| Gomes,Edwin | 115237 | JFK8 Education Session Part 3 | Class |
| Jimenez,Demetrio A | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| burns,terrell | 115237 | JFK8 Education Session Part 3 | Class |
| igwilloh,princess | 115237 | JFK8 Education Session Part 3 | Class |
| morton,noel | 115237 | JFK8 Education Session Part 3 | Class |
| Bautista,Juleisy A | 115237 | JFK8 Education Session Part 3 | Class |
| Suarez,Melody | 115237 | JFK8 Education Session Part 3 | Class |
| Magnus,Kimberly | 115237 | JFK8 Education Session Part 3 | Class |
| Goitia,Osweidy M | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Cherritine | 115237 | JFK8 Education Session Part 3 | Class |
| Carmichael,Margaret | 115237 | JFK8 Education Session Part 3 | Class |
| Woldemariam,Worku Asfaw | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Ashley | 115237 | JFK8 Education Session Part 3 | Class |
| Lash,Evan | 115237 | JFK8 Education Session Part 3 | Class |

Amazon_000441

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Hyppolite,Jean | 115237 | JFK8 Education Session Part 3 | Class |
| Lanorith,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Cometa,Pastor Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Shivers,Yasmen Chanaile | 115237 | JFK8 Education Session Part 3 | Class |
| Kamara,Abdulai | 115237 | JFK8 Education Session Part 3 | Class |
| Tejada,Lenore R | 115237 | JFK8 Education Session Part 3 | Class |
| Cuenca,Elvia | 115237 | JFK8 Education Session Part 3 | Class |
| Shenouda,Randa | 115237 | JFK8 Education Session Part 3 | Class |
| Nanayakkara,Hasith | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Guadalupe | 115237 | JFK8 Education Session Part 3 | Class |
| Usmonov,Umidjon | 115237 | JFK8 Education Session Part 3 | Class |
| Lima,Sheyla Marleny | 115237 | JFK8 Education Session Part 3 | Class |
| Landazabal,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Chambers,Britney | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Anthoni | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Anthoni | 115237 | JFK8 Education Session Part 3 | Class |
| Pardee,Kev | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Prynce | 115237 | JFK8 Education Session Part 3 | Class |
| Bidetti,Anthony William | 115237 | JFK8 Education Session Part 3 | Class |
| Lewis,Trinity | 115237 | JFK8 Education Session Part 3 | Class |
| Codino,Ramon | 115237 | JFK8 Education Session Part 3 | Class |
| autrygrey,nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Ochili,Chikodi Josephine | 115237 | JFK8 Education Session Part 3 | Class |
| Yepez,Joseph v | 115237 | JFK8 Education Session Part 3 | Class |
| Guzman,Mario | 115237 | JFK8 Education Session Part 3 | Class |
| Dunbar,Med | 115237 | JFK8 Education Session Part 3 | Class |
| Cheese,Joshawn | 115237 | JFK8 Education Session Part 3 | Class |
| Fuentes,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Campbell,Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Awada,Ahmad | 115237 | JFK8 Education Session Part 3 | Class |
| Morris,Matt | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Sugeiry | 115237 | JFK8 Education Session Part 3 | Class |
| King,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Ramos-Griggs,Steph | 115237 | JFK8 Education Session Part 3 | Class |
| Floreal,Roody | 115237 | JFK8 Education Session Part 3 | Class |
| Enakhimion,Blessing Onolenese | 115237 | JFK8 Education Session Part 3 | Class |
| Enakhimion,Blessing Onolenese | 115237 | JFK8 Education Session Part 3 | Class |
| Bishop,Eugene | 115237 | JFK8 Education Session Part 3 | Class |
| Esposito,Victoria | 115237 | JFK8 Education Session Part 3 | Class |
| Mikhail,Abanoub Magdi | 115237 | JFK8 Education Session Part 3 | Class |
| Fragosa,Martin | 115237 | JFK8 Education Session Part 3 | Class |
| Serrano,Galy | 115237 | JFK8 Education Session Part 3 | Class |
| Walker,Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| lopez,joan | 115237 | JFK8 Education Session Part 3 | Class |
| Wohlmeyer,Helga Helga | 115237 | JFK8 Education Session Part 3 | Class |
| Zaman,Moriom | 115237 | JFK8 Education Session Part 3 | Class |
| Sylvince,Patrick | 115237 | JFK8 Education Session Part 3 | Class |
| French,Monifa | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Tran,Dinh Binh | 115237 | JFK8 Education Session Part 3 | Class |
| Muniz,Marcelo Andres | 115237 | JFK8 Education Session Part 3 | Class |
| Charlemagne,Jesse | 115237 | JFK8 Education Session Part 3 | Class |
| Samura,Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Wiseman,Donna | 115237 | JFK8 Education Session Part 3 | Class |
| Wiseman,Donna | 115237 | JFK8 Education Session Part 3 | Class |
| Macias,Steven | 115237 | JFK8 Education Session Part 3 | Class |
| Chenguiti,Nadia | 115237 | JFK8 Education Session Part 3 | Class |
| Aya,Philip Joshua | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Yolanda | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Yolanda | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Carmen | 115237 | JFK8 Education Session Part 3 | Class |
| Cullins,Dameek J | 115237 | JFK8 Education Session Part 3 | Class |
| Okeke,Ukamaka | 115237 | JFK8 Education Session Part 3 | Class |
| Okeke,Ukamaka | 115237 | JFK8 Education Session Part 3 | Class |
| Sala Holguin,Isidra | 115237 | JFK8 Education Session Part 3 | Class |
| Sala Holguin,Isidra | 115237 | JFK8 Education Session Part 3 | Class |
| Rodrigues,Ethan | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Mike | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Mike | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas,Getriel | 115237 | JFK8 Education Session Part 3 | Class |
| Nuga,Oludare | 115237 | JFK8 Education Session Part 3 | Class |
| Nuga,Oludare | 115237 | JFK8 Education Session Part 3 | Class |
| Santana,Edwin | 115237 | JFK8 Education Session Part 3 | Class |
| Caba,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| quinteros,maria | 115237 | JFK8 Education Session Part 3 | Class |
| Frazier,Terence | 115237 | JFK8 Education Session Part 3 | Class |
| Joseph,Francesca | 115237 | JFK8 Education Session Part 3 | Class |
| Alexis,John | 115237 | JFK8 Education Session Part 3 | Class |
| Laine,Rodney | 115237 | JFK8 Education Session Part 3 | Class |
| Azah,Francis Perry y | 115237 | JFK8 Education Session Part 3 | Class |
| Meto,Ledjon | 115237 | JFK8 Education Session Part 3 | Class |
| Estelly,Jwana | 115237 | JFK8 Education Session Part 3 | Class |
| Jabin,Sayema Akter | 115237 | JFK8 Education Session Part 3 | Class |
| Pasquel,Sebastian | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Tihanna C | 115237 | JFK8 Education Session Part 3 | Class |
| Addison,Amanda Sweetie | 115237 | JFK8 Education Session Part 3 | Class |
| Khilla,Mina N | 115237 | JFK8 Education Session Part 3 | Class |
| Khilla,Mina N | 115237 | JFK8 Education Session Part 3 | Class |
| Orta,Danie | 115237 | JFK8 Education Session Part 3 | Class |
| Hutton,Delvantae | 115237 | JFK8 Education Session Part 3 | Class |
| Albarracin,Ceferino | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas,December | 115237 | JFK8 Education Session Part 3 | Class |
| Germain,Odeline | 115237 | JFK8 Education Session Part 3 | Class |
| Chikh,Younes | 115237 | JFK8 Education Session Part 3 | Class |
| Prado,Sheyla | 115237 | JFK8 Education Session Part 3 | Class |
| Dougle,Ramon Paul | 115237 | JFK8 Education Session Part 3 | Class |
| Lewis,Bridget Elaine | 115237 | JFK8 Education Session Part 3 | Class |
| DelValle,Matthew | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| DelValle,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Lombardo,Diana | 115237 | JFK8 Education Session Part 3 | Class |
| Kwong,Andy | 115237 | JFK8 Education Session Part 3 | Class |
| Luna Hernandez,Martha | 115237 | JFK8 Education Session Part 3 | Class |
| Francois Baudelaire,Fonkou | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Alonzo D | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Manuel | 115237 | JFK8 Education Session Part 3 | Class |
| Duxbury,Mike | 115237 | JFK8 Education Session Part 3 | Class |
| Oliver,Tevhan | 115237 | JFK8 Education Session Part 3 | Class |
| Sze,Chrissy | 115237 | JFK8 Education Session Part 3 | Class |
| Juarez,Miguel | 115237 | JFK8 Education Session Part 3 | Class |
| Ramgeet,Keanu | 115237 | JFK8 Education Session Part 3 | Class |
| Salafia,Amy | 115237 | JFK8 Education Session Part 3 | Class |
| Alafuonye,Ucheamaka Loveth | 115237 | JFK8 Education Session Part 3 | Class |
| Butler,Antwan | 115237 | JFK8 Education Session Part 3 | Class |
| Camacho,Junior | 115237 | JFK8 Education Session Part 3 | Class |
| Cosme,Justin | 115237 | JFK8 Education Session Part 3 | Class |
| Adamu,Amadu | 115237 | JFK8 Education Session Part 3 | Class |
| Molano,Jeremy Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Ocasio,Tania | 115237 | JFK8 Education Session Part 3 | Class |
| Ocasio,Tania | 115237 | JFK8 Education Session Part 3 | Class |
| Haynia,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Wright,Rahshan | 115237 | JFK8 Education Session Part 3 | Class |
| Colon,Lola | 115237 | JFK8 Education Session Part 3 | Class |
| Colon,Lola | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Sashana | 115237 | JFK8 Education Session Part 3 | Class |
| Torres,Dymond | 115237 | JFK8 Education Session Part 3 | Class |
| Thompson,Peter H | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Davon | 115237 | JFK8 Education Session Part 3 | Class |
| bracey,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Cascante,Cynthia J. | 115237 | JFK8 Education Session Part 3 | Class |
| Said,Hatem | 115237 | JFK8 Education Session Part 3 | Class |
| Said,Hatem | 115237 | JFK8 Education Session Part 3 | Class |
| Said,Hatem | 115237 | JFK8 Education Session Part 3 | Class |
| Warsaw,Adam | 115237 | JFK8 Education Session Part 3 | Class |
| Turano,Maryann | 115237 | JFK8 Education Session Part 3 | Class |
| Menkarious,Dolagi | 115237 | JFK8 Education Session Part 3 | Class |
| Menkarious,Dolagi | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Sow,Mamadou | 115237 | JFK8 Education Session Part 3 | Class |
| Moore,Javon | 115237 | JFK8 Education Session Part 3 | Class |
| Joseph,Califa | 115237 | JFK8 Education Session Part 3 | Class |
| Emery,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Balderas,Hugo | 115237 | JFK8 Education Session Part 3 | Class |
| Quichimbo,Amanda | 115237 | JFK8 Education Session Part 3 | Class |
| Young,Andre | 115237 | JFK8 Education Session Part 3 | Class |
| Young,Andre | 115237 | JFK8 Education Session Part 3 | Class |
| Brea,Catherine | 115237 | JFK8 Education Session Part 3 | Class |
| Brea,Catherine | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Mohapeloa,Alice | 115237 | JFK8 Education Session Part 3 | Class |
| Trombetta,George Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Obonaga,Juan David | 115237 | JFK8 Education Session Part 3 | Class |
| Rozak,Jack | 115237 | JFK8 Education Session Part 3 | Class |
| Dennis,Nicholas | 115237 | JFK8 Education Session Part 3 | Class |
| alvarez,patricia | 115237 | JFK8 Education Session Part 3 | Class |
| Leo,Cherry | 115237 | JFK8 Education Session Part 3 | Class |
| Hoo,Sydney Cerene | 115237 | JFK8 Education Session Part 3 | Class |
| Calderaro,Rob | 115237 | JFK8 Education Session Part 3 | Class |
| CARNEY,JOSEPH | 115237 | JFK8 Education Session Part 3 | Class |
| mendez,elizabeth Ruth | 115237 | JFK8 Education Session Part 3 | Class |
| Turner,Troy | 115237 | JFK8 Education Session Part 3 | Class |
| lozano,edwing o | 115237 | JFK8 Education Session Part 3 | Class |
| Franco,Allen | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Malachi | 115237 | JFK8 Education Session Part 3 | Class |
| Melvin,Makayla | 115237 | JFK8 Education Session Part 3 | Class |
| uske,taylor | 115237 | JFK8 Education Session Part 3 | Class |
| Rugayan,Franz Inoncillo | 115237 | JFK8 Education Session Part 3 | Class |
| Abdallah,Ahmedessameldin | 115237 | JFK8 Education Session Part 3 | Class |
| Colon,Luz | 115237 | JFK8 Education Session Part 3 | Class |
| Olivares,Ana | 115237 | JFK8 Education Session Part 3 | Class |
| Castro,Tina Yolanda | 115237 | JFK8 Education Session Part 3 | Class |
| Yannucci,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Slade,Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| Ashterman,Claudia | 115237 | JFK8 Education Session Part 3 | Class |
| chiriboga,ernesto | 115237 | JFK8 Education Session Part 3 | Class |
| Bestani,Salim | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Rechardo Jearmane | 115237 | JFK8 Education Session Part 3 | Class |
| Urgiles,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Yasmin | 115237 | JFK8 Education Session Part 3 | Class |
| Uzodimma,Ginika Cosmas | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Justyne | 115237 | JFK8 Education Session Part 3 | Class |
| Hao Moses,Tingting | 115237 | JFK8 Education Session Part 3 | Class |
| Sanz,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Perez Jr,Angel Manuel | 115237 | JFK8 Education Session Part 3 | Class |
| Soumare,Mame Farma | 115237 | JFK8 Education Session Part 3 | Class |
| Aguirre,Rosa | 115237 | JFK8 Education Session Part 3 | Class |
| Placide,Geraldine | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Davoun | 115237 | JFK8 Education Session Part 3 | Class |
| Dorelus,Jocelaine | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Delila | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Mario | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| zhou,Ron | 115237 | JFK8 Education Session Part 3 | Class |
| Liang,James | 115237 | JFK8 Education Session Part 3 | Class |
| Ravelo,Brandell Rafael | 115237 | JFK8 Education Session Part 3 | Class |
| Cepeda,Yarumi | 115237 | JFK8 Education Session Part 3 | Class |
| Hughes,Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Reynoso,Enrique | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Perez,Monica Denise | 115237 | JFK8 Education Session Part 3 | Class |
| Zuniga,Kimberly | 115237 | JFK8 Education Session Part 3 | Class |
| Vasquez,Leticia Jisel | 115237 | JFK8 Education Session Part 3 | Class |
| raja,qurratulain | 115237 | JFK8 Education Session Part 3 | Class |
| Isaacs,Armani | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| young,Samantha | 115237 | JFK8 Education Session Part 3 | Class |
| Yapa,Kasun | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Tanya | 115237 | JFK8 Education Session Part 3 | Class |
| Dejoie,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| Jayakodi Arachchige,Amith | 115237 | JFK8 Education Session Part 3 | Class |
| Cetino-Garcia,Christina Julissa | 115237 | JFK8 Education Session Part 3 | Class |
| Georges,Vlady | 115237 | JFK8 Education Session Part 3 | Class |
| Ibrahim,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Pulido,Nancy Maricela | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Hillary | 115237 | JFK8 Education Session Part 3 | Class |
| Holder,Tony | 115237 | JFK8 Education Session Part 3 | Class |
| Abdulhameed,Hannah | 115237 | JFK8 Education Session Part 3 | Class |
| ruiz,jazreel | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Atajah | 115237 | JFK8 Education Session Part 3 | Class |
| Franco,Joseph Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| ilin,james | 115237 | JFK8 Education Session Part 3 | Class |
| johnson,andrew | 115237 | JFK8 Education Session Part 3 | Class |
| marca,monica | 115237 | JFK8 Education Session Part 3 | Class |
| Dunac,Dayana | 115237 | JFK8 Education Session Part 3 | Class |
| TUCKER,TEDDY | 115237 | JFK8 Education Session Part 3 | Class |
| clifton,jania | 115237 | JFK8 Education Session Part 3 | Class |
| Delvalle,Esther | 115237 | JFK8 Education Session Part 3 | Class |
| Moshreky,Mofeid | 115237 | JFK8 Education Session Part 3 | Class |
| Hines,Shaun | 115237 | JFK8 Education Session Part 3 | Class |
| Dupuy,Dorissa | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Samuel Darnel | 115237 | JFK8 Education Session Part 3 | Class |
| Frank Sanchez,Michael Joshua | 115237 | JFK8 Education Session Part 3 | Class |
| Nfonoyim,Lourine y | 115237 | JFK8 Education Session Part 3 | Class |
| CHRISTIE,JOHN | 115237 | JFK8 Education Session Part 3 | Class |
| CHRISTIE,JOHN | 115237 | JFK8 Education Session Part 3 | Class |
| CHRISTIE,JOHN | 115237 | JFK8 Education Session Part 3 | Class |
| kaddoura,zaki | 115237 | JFK8 Education Session Part 3 | Class |
| Olivier,Thalia | 115237 | JFK8 Education Session Part 3 | Class |
| Rosales,Victor | 115237 | JFK8 Education Session Part 3 | Class |
| Sanon,Bryan | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Gawayne | 115237 | JFK8 Education Session Part 3 | Class |
| Lee,Yin Leung | 115237 | JFK8 Education Session Part 3 | Class |
| Priestley,Jade | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Karen | 115237 | JFK8 Education Session Part 3 | Class |
| Vazquez,Janna Doreen | 115237 | JFK8 Education Session Part 3 | Class |
| Russell,Novelette | 115237 | JFK8 Education Session Part 3 | Class |
| Toussaint,Luckens | 115237 | JFK8 Education Session Part 3 | Class |
| Angulo Naranjo,Jazmin | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| robinson,corey | 115237 | JFK8 Education Session Part 3 | Class |
| JOHNSON,Earl | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Precious | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Ryan | 115237 | JFK8 Education Session Part 3 | Class |
| Decomme,Olssen | 115237 | JFK8 Education Session Part 3 | Class |
| simmons,Daquane | 115237 | JFK8 Education Session Part 3 | Class |
| Briones,Yeni | 115237 | JFK8 Education Session Part 3 | Class |
| Rojas,Benito | 115237 | JFK8 Education Session Part 3 | Class |
| Rojas,Benito | 115237 | JFK8 Education Session Part 3 | Class |
| messado,anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Estrella,Pedro | 115237 | JFK8 Education Session Part 3 | Class |
| Handy,Kymene | 115237 | JFK8 Education Session Part 3 | Class |
| Handy,Kymene | 115237 | JFK8 Education Session Part 3 | Class |
| Fusco,Catherine | 115237 | JFK8 Education Session Part 3 | Class |
| Rabsatt Garcia,Martin | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Brandon Manuel | 115237 | JFK8 Education Session Part 3 | Class |
| Gustave,Eutychus | 115237 | JFK8 Education Session Part 3 | Class |
| bhagwandeen,spencer | 115237 | JFK8 Education Session Part 3 | Class |
| Gibson,Anita | 115237 | JFK8 Education Session Part 3 | Class |
| porter,richard Keith | 115237 | JFK8 Education Session Part 3 | Class |
| porter,richard Keith | 115237 | JFK8 Education Session Part 3 | Class |
| Igwilloh,Eugene | 115237 | JFK8 Education Session Part 3 | Class |
| Rojas,Genesis Marleni | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Jay | 115237 | JFK8 Education Session Part 3 | Class |
| Singleton,Tishaun | 115237 | JFK8 Education Session Part 3 | Class |
| Gravesande,Rodlin | 115237 | JFK8 Education Session Part 3 | Class |
| Valdivieso,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Jeimy | 115237 | JFK8 Education Session Part 3 | Class |
| Perera,Koswattage Sharma | 115237 | JFK8 Education Session Part 3 | Class |
| Farraj,Siham | 115237 | JFK8 Education Session Part 3 | Class |
| Hom,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| NGUYEN,THI HOANG THU | 115237 | JFK8 Education Session Part 3 | Class |
| Summers,Jordan A | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas,Errol Constantine | 115237 | JFK8 Education Session Part 3 | Class |
| Brooks,Sissy | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Luz | 115237 | JFK8 Education Session Part 3 | Class |
| Cao,Tommy | 115237 | JFK8 Education Session Part 3 | Class |
| Corke,ECO | 115237 | JFK8 Education Session Part 3 | Class |
| Ceville,Roslyn | 115237 | JFK8 Education Session Part 3 | Class |
| Pasmore,Lamar | 115237 | JFK8 Education Session Part 3 | Class |
| Lack,Cj | 115237 | JFK8 Education Session Part 3 | Class |
| Lovick,Jawaun | 115237 | JFK8 Education Session Part 3 | Class |
| Ceron,Adriana | 115237 | JFK8 Education Session Part 3 | Class |
| Shelton,Jalen | 115237 | JFK8 Education Session Part 3 | Class |
| Santana,Julio | 115237 | JFK8 Education Session Part 3 | Class |
| joseph,Japheth | 115237 | JFK8 Education Session Part 3 | Class |
| Vives,Judith | 115237 | JFK8 Education Session Part 3 | Class |
| Philbert,Malakai | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Obelia | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ahmed,Chip | 115237 | JFK8 Education Session Part 3 | Class |
| Sanni,Taibat | 115237 | JFK8 Education Session Part 3 | Class |
| Savino,Matthew Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Ulysse,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Consuegra,Freddy | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Benitez,Janelle | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Nia | 115237 | JFK8 Education Session Part 3 | Class |
| Mohamed,Faten | 115237 | JFK8 Education Session Part 3 | Class |
| Rahman,Khondoker | 115237 | JFK8 Education Session Part 3 | Class |
| Denard,Krys H. | 115237 | JFK8 Education Session Part 3 | Class |
| Oladimeji,Olawale Q | 115237 | JFK8 Education Session Part 3 | Class |
| uddin,mahtab | 115237 | JFK8 Education Session Part 3 | Class |
| GEORGE,THOMSON | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,papi david | 115237 | JFK8 Education Session Part 3 | Class |
| ajdari,Joanna | 115237 | JFK8 Education Session Part 3 | Class |
| Israel,Garry | 115237 | JFK8 Education Session Part 3 | Class |
| Oladosu,Felix | 115237 | JFK8 Education Session Part 3 | Class |
| nyamagwa,alice | 115237 | JFK8 Education Session Part 3 | Class |
| Figueroa,Zoila | 115237 | JFK8 Education Session Part 3 | Class |
| Clarke,Mario Okeino | 115237 | JFK8 Education Session Part 3 | Class |
| Estudillo,Diana | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Gordon,Kimmi | 115237 | JFK8 Education Session Part 3 | Class |
| Barker,Joe | 115237 | JFK8 Education Session Part 3 | Class |
| sallo,leonard | 115237 | JFK8 Education Session Part 3 | Class |
| sallo,leonard | 115237 | JFK8 Education Session Part 3 | Class |
| O?Kieffe,Akaisa N | 115237 | JFK8 Education Session Part 3 | Class |
| usher,colan charles | 115237 | JFK8 Education Session Part 3 | Class |
| Shaon,Shahriar | 115237 | JFK8 Education Session Part 3 | Class |
| Worthington,Jasmyne | 115237 | JFK8 Education Session Part 3 | Class |
| Rodgers,Charisma | 115237 | JFK8 Education Session Part 3 | Class |
| Caldwell,Malik | 115237 | JFK8 Education Session Part 3 | Class |
| Jubran,Fesal | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Jaime | 115237 | JFK8 Education Session Part 3 | Class |
| Prophete,Wendly Jean | 115237 | JFK8 Education Session Part 3 | Class |
| Butler,Tanea | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,takera | 115237 | JFK8 Education Session Part 3 | Class |
| Olmedo,Delfina | 115237 | JFK8 Education Session Part 3 | Class |
| THIRUNAVUKKARASU,RAJEEV | 115237 | JFK8 Education Session Part 3 | Class |
| Gannone,Beth | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Juan | 115237 | JFK8 Education Session Part 3 | Class |
| FILS,KARL Evens Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Christopher,Hess | 115237 | JFK8 Education Session Part 3 | Class |
| Covington,Devon Rick | 115237 | JFK8 Education Session Part 3 | Class |
| Cheung,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Amoo,Sukurat O. | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Rovelo | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Chrissy | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Antwi Boasiako,Pierre Owusu | 115237 | JFK8 Education Session Part 3 | Class |
| Bristol,Dante | 115237 | JFK8 Education Session Part 3 | Class |
| Ayandeji,Iyabo Christina | 115237 | JFK8 Education Session Part 3 | Class |
| Spears,Nina | 115237 | JFK8 Education Session Part 3 | Class |
| Pham,Tien Minh | 115237 | JFK8 Education Session Part 3 | Class |
| Elnahal,Kareem | 115237 | JFK8 Education Session Part 3 | Class |
| Elnahal,Kareem | 115237 | JFK8 Education Session Part 3 | Class |
| Tobias,Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Pacheco,York | 115237 | JFK8 Education Session Part 3 | Class |
| Fraga,Meziane | 115237 | JFK8 Education Session Part 3 | Class |
| Giambrone,Michael Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Walters,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Smalling,Dawn Fay | 115237 | JFK8 Education Session Part 3 | Class |
| Bradshaw,DJ | 115237 | JFK8 Education Session Part 3 | Class |
| Sin,Jay | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Wady | 115237 | JFK8 Education Session Part 3 | Class |
| Ospina,Carmen Elisa | 115237 | JFK8 Education Session Part 3 | Class |
| Edwards,Tony Gauntlette | 115237 | JFK8 Education Session Part 3 | Class |
| Edwards,Tony Gauntlette | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Anthony J | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Genevieve | 115237 | JFK8 Education Session Part 3 | Class |
| Verdesoto,Irani | 115237 | JFK8 Education Session Part 3 | Class |
| Batista,Rosmery | 115237 | JFK8 Education Session Part 3 | Class |
| Cacciamani,Jenny | 115237 | JFK8 Education Session Part 3 | Class |
| Stiebel,Samuel Stephen | 115237 | JFK8 Education Session Part 3 | Class |
| Wu,Billy | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Maria M | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Ticas,Christiaan | 115237 | JFK8 Education Session Part 3 | Class |
| Deliotte,Gabrielle | 115237 | JFK8 Education Session Part 3 | Class |
| Wiggins,Maya | 115237 | JFK8 Education Session Part 3 | Class |
| DeWhea,Sam Kai | 115237 | JFK8 Education Session Part 3 | Class |
| Cordova,Juan Diego | 115237 | JFK8 Education Session Part 3 | Class |
| Primero,Louie | 115237 | JFK8 Education Session Part 3 | Class |
| Okeke,Jennifer Chimeluo | 115237 | JFK8 Education Session Part 3 | Class |
| Nicholas,Jean | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Zollen S | 115237 | JFK8 Education Session Part 3 | Class |
| BRINSON,ISAIAH | 115237 | JFK8 Education Session Part 3 | Class |
| Zhang,Rui Hui | 115237 | JFK8 Education Session Part 3 | Class |
| Jean Marie,Marie Carmelle | 115237 | JFK8 Education Session Part 3 | Class |
| Moran,Eduardo | 115237 | JFK8 Education Session Part 3 | Class |
| Gooden,Dominique | 115237 | JFK8 Education Session Part 3 | Class |
| blanco,juan Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Jaimes,Justin | 115237 | JFK8 Education Session Part 3 | Class |
| Gaston,Lourdemia | 115237 | JFK8 Education Session Part 3 | Class |
| vaidya,Gopi | 115237 | JFK8 Education Session Part 3 | Class |
| gutierrez,alexandra | 115237 | JFK8 Education Session Part 3 | Class |
| gillenwater,cindy | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Kazantsev,Ivan | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Phyllis | 115237 | JFK8 Education Session Part 3 | Class |
| Gorbounov,Oleg | 115237 | JFK8 Education Session Part 3 | Class |
| Wilkes,Danny | 115237 | JFK8 Education Session Part 3 | Class |
| Ajayi,Ademola Taoreed | 115237 | JFK8 Education Session Part 3 | Class |
| Diamond,Aaliyah | 115237 | JFK8 Education Session Part 3 | Class |
| Destin,Richardson | 115237 | JFK8 Education Session Part 3 | Class |
| Ng,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Galvan Resendiz,Diana Laura | 115237 | JFK8 Education Session Part 3 | Class |
| Cassara,Andrew Jon | 115237 | JFK8 Education Session Part 3 | Class |
| Flemming,Guiseppe G | 115237 | JFK8 Education Session Part 3 | Class |
| Zuniga,Freddy | 115237 | JFK8 Education Session Part 3 | Class |
| Fernandez,Justin | 115237 | JFK8 Education Session Part 3 | Class |
| Dean,Jonathon | 115237 | JFK8 Education Session Part 3 | Class |
| Isaula,Christine | 115237 | JFK8 Education Session Part 3 | Class |
| Harrison,Jessica | 115237 | JFK8 Education Session Part 3 | Class |
| Perry,Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Gioeni,Joanne | 115237 | JFK8 Education Session Part 3 | Class |
| Ali,Kyra | 115237 | JFK8 Education Session Part 3 | Class |
| Youssef,Mina | 115237 | JFK8 Education Session Part 3 | Class |
| Sevilla,Mateo | 115237 | JFK8 Education Session Part 3 | Class |
| Onuigwe,Okwuchukwu Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Coates,Kenneth | 115237 | JFK8 Education Session Part 3 | Class |
| Quick,feeonna | 115237 | JFK8 Education Session Part 3 | Class |
| Spence,Dylan | 115237 | JFK8 Education Session Part 3 | Class |
| zacatenco,ruben | 115237 | JFK8 Education Session Part 3 | Class |
| Akinyoade,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Moreno,Mack | 115237 | JFK8 Education Session Part 3 | Class |
| Pena,Xavier | 115237 | JFK8 Education Session Part 3 | Class |
| Bands,Jus | 115237 | JFK8 Education Session Part 3 | Class |
| Abdullah,Tariq Zaid | 115237 | JFK8 Education Session Part 3 | Class |
| Riddle,Augustus | 115237 | JFK8 Education Session Part 3 | Class |
| Ruiz,Katie | 115237 | JFK8 Education Session Part 3 | Class |
| Ibitoye,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| DIAZ,GIOVANNA | 115237 | JFK8 Education Session Part 3 | Class |
| Pierce,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Adam,Sarif | 115237 | JFK8 Education Session Part 3 | Class |
| Lecorps,Oneil Carveer | 115237 | JFK8 Education Session Part 3 | Class |
| Rios,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Dunn,Jahrel | 115237 | JFK8 Education Session Part 3 | Class |
| Watson,Khaliq | 115237 | JFK8 Education Session Part 3 | Class |
| Watson,Khaliq | 115237 | JFK8 Education Session Part 3 | Class |
| Calumba,Emmelyn | 115237 | JFK8 Education Session Part 3 | Class |
| Acevedo,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| RetanaMartinez,Karin Lorena | 115237 | JFK8 Education Session Part 3 | Class |
| Coraza,Erick Rommel | 115237 | JFK8 Education Session Part 3 | Class |
| Vergara,Estrellita | 115237 | JFK8 Education Session Part 3 | Class |
| Dungan,Jonathan G | 115237 | JFK8 Education Session Part 3 | Class |
| Hylton,Andre | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Shambo,Jamal | 115237 | JFK8 Education Session Part 3 | Class |
| amendano,dayana | 115237 | JFK8 Education Session Part 3 | Class |
| Lynch,April | 115237 | JFK8 Education Session Part 3 | Class |
| Samara,Abedalrahman | 115237 | JFK8 Education Session Part 3 | Class |
| Da Cruz,Lucinda Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Da Cruz,Lucinda Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Xavier Adonis | 115237 | JFK8 Education Session Part 3 | Class |
| Certyl,Welda | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Jazmin | 115237 | JFK8 Education Session Part 3 | Class |
| Facey,Chevailli | 115237 | JFK8 Education Session Part 3 | Class |
| Jean,Mireille | 115237 | JFK8 Education Session Part 3 | Class |
| Umesi,Chioma | 115237 | JFK8 Education Session Part 3 | Class |
| Umesi,Chioma | 115237 | JFK8 Education Session Part 3 | Class |
| Torretta,Salvatore | 115237 | JFK8 Education Session Part 3 | Class |
| Arvelo,Emanuel Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| Girges,Alaa Saad | 115237 | JFK8 Education Session Part 3 | Class |
| Castillo Pavia,Anayeli | 115237 | JFK8 Education Session Part 3 | Class |
| Othman,Mohamed Ali Hassan | 115237 | JFK8 Education Session Part 3 | Class |
| inoa,Edwin | 115237 | JFK8 Education Session Part 3 | Class |
| Dinham-Heholt,Rickiesha | 115237 | JFK8 Education Session Part 3 | Class |
| DEPRADINE,ASHLIE | 115237 | JFK8 Education Session Part 3 | Class |
| Corprew,Laquan | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Leslie Ann | 115237 | JFK8 Education Session Part 3 | Class |
| Garraway,Montay | 115237 | JFK8 Education Session Part 3 | Class |
| Garraway,Montay | 115237 | JFK8 Education Session Part 3 | Class |
| Moran,Noel | 115237 | JFK8 Education Session Part 3 | Class |
| Marquez,George | 115237 | JFK8 Education Session Part 3 | Class |
| Zyskowska,Malgorzata | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Daniel | 115237 | JFK8 Education Session Part 3 | Class |
| Ayala,Dylan | 115237 | JFK8 Education Session Part 3 | Class |
| Bokhari,Ahmer M | 115237 | JFK8 Education Session Part 3 | Class |
| Camacho,Stephanie | 115237 | JFK8 Education Session Part 3 | Class |
| Sempertegui,Diana | 115237 | JFK8 Education Session Part 3 | Class |
| Ciudad,Dennis | 115237 | JFK8 Education Session Part 3 | Class |
| CHATFIELD,NATASHA B | 115237 | JFK8 Education Session Part 3 | Class |
| Paredes,Wilian | 115237 | JFK8 Education Session Part 3 | Class |
| Issman,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| Diawara,Assetou | 115237 | JFK8 Education Session Part 3 | Class |
| Delva,Paul | 115237 | JFK8 Education Session Part 3 | Class |
| Ly,Thanh | 115237 | JFK8 Education Session Part 3 | Class |
| Aly,Marawan | 115237 | JFK8 Education Session Part 3 | Class |
| quiles,justin | 115237 | JFK8 Education Session Part 3 | Class |
| Miller,Racquel | 115237 | JFK8 Education Session Part 3 | Class |
| Almeda,Micaela | 115237 | JFK8 Education Session Part 3 | Class |
| Tejada,Junior | 115237 | JFK8 Education Session Part 3 | Class |
| Britton,Chanda | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Angie | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Angie | 115237 | JFK8 Education Session Part 3 | Class |
| Leehr,Mary C | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Harvey,Dante | 115237 | JFK8 Education Session Part 3 | Class |
| Frank,Tracie Althea | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Jaret | 115237 | JFK8 Education Session Part 3 | Class |
| Fagone,Andrew | 115237 | JFK8 Education Session Part 3 | Class |
| Alam,S M Zakaria | 115237 | JFK8 Education Session Part 3 | Class |
| OLAYINKA,MICHAEL o | 115237 | JFK8 Education Session Part 3 | Class |
| Admettre,Sammabine | 115237 | JFK8 Education Session Part 3 | Class |
| Kargbo,Lucretia | 115237 | JFK8 Education Session Part 3 | Class |
| DeGroat,Michael DeGroat | 115237 | JFK8 Education Session Part 3 | Class |
| Cordero,Johnathan | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Jerome | 115237 | JFK8 Education Session Part 3 | Class |
| Chu,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Santos,Dayana | 115237 | JFK8 Education Session Part 3 | Class |
| Alonzo,Adrian | 115237 | JFK8 Education Session Part 3 | Class |
| Norman,Niasia C | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Alex Carrillo | 115237 | JFK8 Education Session Part 3 | Class |
| Lubin,Tanisha Monique | 115237 | JFK8 Education Session Part 3 | Class |
| Leahy,Belkys | 115237 | JFK8 Education Session Part 3 | Class |
| Vignapiano,Nicholas Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Lilley,Kayla | 115237 | JFK8 Education Session Part 3 | Class |
| Lilley,Kayla | 115237 | JFK8 Education Session Part 3 | Class |
| Phillips,Philbert | 115237 | JFK8 Education Session Part 3 | Class |
| RAZON,ROSEMARIE Bedonio | 115237 | JFK8 Education Session Part 3 | Class |
| jimenez,christian | 115237 | JFK8 Education Session Part 3 | Class |
| jimenez,christian | 115237 | JFK8 Education Session Part 3 | Class |
| Momodu,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Sidibe,Aly | 115237 | JFK8 Education Session Part 3 | Class |
| Fragoso,Maria Silvia | 115237 | JFK8 Education Session Part 3 | Class |
| GREAVES,NICHOLAS | 115237 | JFK8 Education Session Part 3 | Class |
| Idheroma,Tyeisha | 115237 | JFK8 Education Session Part 3 | Class |
| Kalmar,Lashawn | 115237 | JFK8 Education Session Part 3 | Class |
| THOMAS,SHELDON | 115237 | JFK8 Education Session Part 3 | Class |
| Mendez,Ruben | 115237 | JFK8 Education Session Part 3 | Class |
| Pinero,Moses | 115237 | JFK8 Education Session Part 3 | Class |
| Crisostomo,Edmun Alejandro | 115237 | JFK8 Education Session Part 3 | Class |
| Olmedo,Jose Guillermo | 115237 | JFK8 Education Session Part 3 | Class |
| Olmedo,Jose Guillermo | 115237 | JFK8 Education Session Part 3 | Class |
| Mohammed,Jeremy | 115237 | JFK8 Education Session Part 3 | Class |
| jolly,Christina | 115237 | JFK8 Education Session Part 3 | Class |
| jolly,Christina | 115237 | JFK8 Education Session Part 3 | Class |
| charles-marchan,bernadine | 115237 | JFK8 Education Session Part 3 | Class |
| charles-marchan,bernadine | 115237 | JFK8 Education Session Part 3 | Class |
| Russo,Gabriel | 115237 | JFK8 Education Session Part 3 | Class |
| Bute,Maude | 115237 | JFK8 Education Session Part 3 | Class |
| Amaro,Angie | 115237 | JFK8 Education Session Part 3 | Class |
| Davis Jr,Joe | 115237 | JFK8 Education Session Part 3 | Class |
| Bravo,Rosa | 115237 | JFK8 Education Session Part 3 | Class |
| Lucas,Luke | 115237 | JFK8 Education Session Part 3 | Class |
| Karasoulis,Cashmeia | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Tangchangya,Rozan | 115237 | JFK8 Education Session Part 3 | Class |
| Mark,Wing Fai Wilson | 115237 | JFK8 Education Session Part 3 | Class |
| charrington,Kweisi | 115237 | JFK8 Education Session Part 3 | Class |
| Yusuf,MasterMarquis | 115237 | JFK8 Education Session Part 3 | Class |
| Jones,Jermaine | 115237 | JFK8 Education Session Part 3 | Class |
| Kennedy,Naomi Shaday | 115237 | JFK8 Education Session Part 3 | Class |
| Polanco,Ryan | 115237 | JFK8 Education Session Part 3 | Class |
| Flaherty,Teagan | 115237 | JFK8 Education Session Part 3 | Class |
| Dennis,Charles Solomon | 115237 | JFK8 Education Session Part 3 | Class |
| Albarracin,Fanny | 115237 | JFK8 Education Session Part 3 | Class |
| Gallegos,John | 115237 | JFK8 Education Session Part 3 | Class |
| Raja,Waleed | 115237 | JFK8 Education Session Part 3 | Class |
| Wu,Jin | 115237 | JFK8 Education Session Part 3 | Class |
| RIVAS DE RODRIGUEZ,YULEIDI | 115237 | JFK8 Education Session Part 3 | Class |
| Nesbitt,Levontae | 115237 | JFK8 Education Session Part 3 | Class |
| Truco,Constantine Fernando | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Ramario Linton | 115237 | JFK8 Education Session Part 3 | Class |
| Zavala,Adrian | 115237 | JFK8 Education Session Part 3 | Class |
| Duran,George | 115237 | JFK8 Education Session Part 3 | Class |
| Zhang,Ruifeng | 115237 | JFK8 Education Session Part 3 | Class |
| Taylor,Naquan Jimmy | 115237 | JFK8 Education Session Part 3 | Class |
| Lockett,Equasia | 115237 | JFK8 Education Session Part 3 | Class |
| Barcenas,AJ | 115237 | JFK8 Education Session Part 3 | Class |
| Guyton,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Noelia | 115237 | JFK8 Education Session Part 3 | Class |
| Anderson,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Romero,Martin | 115237 | JFK8 Education Session Part 3 | Class |
| Payne,Catherine | 115237 | JFK8 Education Session Part 3 | Class |
| Rivera,Christopher | 115237 | JFK8 Education Session Part 3 | Class |
| Lorquet,Nolita | 115237 | JFK8 Education Session Part 3 | Class |
| Ford,Anita | 115237 | JFK8 Education Session Part 3 | Class |
| Grullon,Lumercy | 115237 | JFK8 Education Session Part 3 | Class |
| Rincon,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Lugo,Christina | 115237 | JFK8 Education Session Part 3 | Class |
| Kurian,Johncy Mathew | 115237 | JFK8 Education Session Part 3 | Class |
| Gardener-swaby,Rashema | 115237 | JFK8 Education Session Part 3 | Class |
| O'Donnell,James | 115237 | JFK8 Education Session Part 3 | Class |
| Harvey,Jasmine | 115237 | JFK8 Education Session Part 3 | Class |
| Radcliffe,Gary | 115237 | JFK8 Education Session Part 3 | Class |
| Majumder,Mehdi Hasan | 115237 | JFK8 Education Session Part 3 | Class |
| Elsebaei,Gihan | 115237 | JFK8 Education Session Part 3 | Class |
| Elsebaei,Gihan | 115237 | JFK8 Education Session Part 3 | Class |
| Ortiz,Jesus | 115237 | JFK8 Education Session Part 3 | Class |
| Singh,Prabh Prem | 115237 | JFK8 Education Session Part 3 | Class |
| Singh,Prabh Prem | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Dee | 115237 | JFK8 Education Session Part 3 | Class |
| Dubois,Oliver | 115237 | JFK8 Education Session Part 3 | Class |
| Elwishahi,Wael | 115237 | JFK8 Education Session Part 3 | Class |
| missouri,derrick | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Paniagua,Jay | 115237 | JFK8 Education Session Part 3 | Class |
| Rose,Jahsemi D | 115237 | JFK8 Education Session Part 3 | Class |
| Oluwole,Olukayode | 115237 | JFK8 Education Session Part 3 | Class |
| Sample,Devion | 115237 | JFK8 Education Session Part 3 | Class |
| Monir,Mohammad Dobir | 115237 | JFK8 Education Session Part 3 | Class |
| Oiro,Richard | 115237 | JFK8 Education Session Part 3 | Class |
| Cadet,LaToya | 115237 | JFK8 Education Session Part 3 | Class |
| henry,Liliana | 115237 | JFK8 Education Session Part 3 | Class |
| Bell,Quincy L | 115237 | JFK8 Education Session Part 3 | Class |
| Marcano,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Dremlyuga,Evgeny | 115237 | JFK8 Education Session Part 3 | Class |
| Baltazar,Andrea | 115237 | JFK8 Education Session Part 3 | Class |
| Valerio,Christian | 115237 | JFK8 Education Session Part 3 | Class |
| Noaman,Dalia | 115237 | JFK8 Education Session Part 3 | Class |
| Yorke,Liv | 115237 | JFK8 Education Session Part 3 | Class |
| Mastroguilio,Domenica | 115237 | JFK8 Education Session Part 3 | Class |
| Kalellis,Robin B | 115237 | JFK8 Education Session Part 3 | Class |
| Munoz,Citlaly | 115237 | JFK8 Education Session Part 3 | Class |
| Classe,Wandy | 115237 | JFK8 Education Session Part 3 | Class |
| Desir,Caleb | 115237 | JFK8 Education Session Part 3 | Class |
| Baldeh,Ebrima | 115237 | JFK8 Education Session Part 3 | Class |
| Houdari,Mokhtaria | 115237 | JFK8 Education Session Part 3 | Class |
| Sinclair,Eric | 115237 | JFK8 Education Session Part 3 | Class |
| Maroney,SamanthaMarie frances | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas,Kenrick | 115237 | JFK8 Education Session Part 3 | Class |
| Toledo,Herald John Acop | 115237 | JFK8 Education Session Part 3 | Class |
| Toussaint,Marc | 115237 | JFK8 Education Session Part 3 | Class |
| Young,Jay | 115237 | JFK8 Education Session Part 3 | Class |
| Reed,Bryant | 115237 | JFK8 Education Session Part 3 | Class |
| Carandang,Christine | 115237 | JFK8 Education Session Part 3 | Class |
| Burgos,Santiago | 115237 | JFK8 Education Session Part 3 | Class |
| Burgos,Santiago | 115237 | JFK8 Education Session Part 3 | Class |
| khamliche,imane | 115237 | JFK8 Education Session Part 3 | Class |
| Goodman,Tisha | 115237 | JFK8 Education Session Part 3 | Class |
| Denny,Marcia | 115237 | JFK8 Education Session Part 3 | Class |
| Denny,Marcia | 115237 | JFK8 Education Session Part 3 | Class |
| bekheet,abanob | 115237 | JFK8 Education Session Part 3 | Class |
| James,Imanee | 115237 | JFK8 Education Session Part 3 | Class |
| James,Imanee | 115237 | JFK8 Education Session Part 3 | Class |
| Najera Jimenez,Sofia | 115237 | JFK8 Education Session Part 3 | Class |
| Souza moura,carlos alberto de | 115237 | JFK8 Education Session Part 3 | Class |
| Sawaneh,Aboulihe Bangal | 115237 | JFK8 Education Session Part 3 | Class |
| makar,gihan | 115237 | JFK8 Education Session Part 3 | Class |
| Lewis Jr,Stephen | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Martin Antonio | 115237 | JFK8 Education Session Part 3 | Class |
| al smadi,mohammad | 115237 | JFK8 Education Session Part 3 | Class |
| Burns,Alexander | 115237 | JFK8 Education Session Part 3 | Class |
| Joseph,Michael Isaac | 115237 | JFK8 Education Session Part 3 | Class |
| Zumba,Sandra | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Edelman,David | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Marina | 115237 | JFK8 Education Session Part 3 | Class |
| Moran Parra,Lesly | 115237 | JFK8 Education Session Part 3 | Class |
| Bojkovic,Nebije | 115237 | JFK8 Education Session Part 3 | Class |
| Lovera,Germain | 115237 | JFK8 Education Session Part 3 | Class |
| jakoupe,eman | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Jaime | 115237 | JFK8 Education Session Part 3 | Class |
| Puson-Sala,Mary Jane | 115237 | JFK8 Education Session Part 3 | Class |
| Walker,Derrick | 115237 | JFK8 Education Session Part 3 | Class |
| Prendergast,Mathilda | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,Travis | 115237 | JFK8 Education Session Part 3 | Class |
| Santos,Greissy | 115237 | JFK8 Education Session Part 3 | Class |
| Santos,Greissy | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Merijoel | 115237 | JFK8 Education Session Part 3 | Class |
| paulino,wendy | 115237 | JFK8 Education Session Part 3 | Class |
| Castillo,Sergio | 115237 | JFK8 Education Session Part 3 | Class |
| Burrell,Shawnea | 115237 | JFK8 Education Session Part 3 | Class |
| Ocasio,Angel | 115237 | JFK8 Education Session Part 3 | Class |
| rennicks,ryan | 115237 | JFK8 Education Session Part 3 | Class |
| Testa,Randi | 115237 | JFK8 Education Session Part 3 | Class |
| soriano,rodrigo | 115237 | JFK8 Education Session Part 3 | Class |
| Davidson,Zori | 115237 | JFK8 Education Session Part 3 | Class |
| Anthony raj,Prasanthi Stefani | 115237 | JFK8 Education Session Part 3 | Class |
| Miller,Keeyone | 115237 | JFK8 Education Session Part 3 | Class |
| Hartley,Shane | 115237 | JFK8 Education Session Part 3 | Class |
| Mayers,Peaches | 115237 | JFK8 Education Session Part 3 | Class |
| Fowler,Denham sherman | 115237 | JFK8 Education Session Part 3 | Class |
| Kim,James | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Justin Joshua | 115237 | JFK8 Education Session Part 3 | Class |
| Lewis-Farrakhan,Davonia | 115237 | JFK8 Education Session Part 3 | Class |
| Bayeme,Emmanuel | 115237 | JFK8 Education Session Part 3 | Class |
| Livingstone,Jameliah | 115237 | JFK8 Education Session Part 3 | Class |
| Persaud,Kathrine | 115237 | JFK8 Education Session Part 3 | Class |
| Ezeh,Adaeze Pascaline | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Ricardo | 115237 | JFK8 Education Session Part 3 | Class |
| Batz Alvarado,Fermin Ezequiel | 115237 | JFK8 Education Session Part 3 | Class |
| Paredes,Johan W | 115237 | JFK8 Education Session Part 3 | Class |
| Ramos,Elijah | 115237 | JFK8 Education Session Part 3 | Class |
| Mujungu,Flora Kemi | 115237 | JFK8 Education Session Part 3 | Class |
| SOSA,FERNANDO | 115237 | JFK8 Education Session Part 3 | Class |
| Barry,Thierno | 115237 | JFK8 Education Session Part 3 | Class |
| Moore,Laquan | 115237 | JFK8 Education Session Part 3 | Class |
| Mcdonald,Quamahli | 115237 | JFK8 Education Session Part 3 | Class |
| Callender,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Mack,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Samassa,Sirantou | 115237 | JFK8 Education Session Part 3 | Class |
| abreu,Victor | 115237 | JFK8 Education Session Part 3 | Class |
| Pannunzio,Stephen Ralph | 115237 | JFK8 Education Session Part 3 | Class |
| Tun,Sai L | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Mason-Bovell,Akil | 115237 | JFK8 Education Session Part 3 | Class |
| Gordon,Marlon | 115237 | JFK8 Education Session Part 3 | Class |
| angulo,tony | 115237 | JFK8 Education Session Part 3 | Class |
| Omeire,Uloma | 115237 | JFK8 Education Session Part 3 | Class |
| Reeves,Anthony Jordan | 115237 | JFK8 Education Session Part 3 | Class |
| Cappello,Gabriela Lucia | 115237 | JFK8 Education Session Part 3 | Class |
| smelava,alesia | 115237 | JFK8 Education Session Part 3 | Class |
| Riad,Alaa | 115237 | JFK8 Education Session Part 3 | Class |
| Howard,Dominic kowolo | 115237 | JFK8 Education Session Part 3 | Class |
| Duff,Ann | 115237 | JFK8 Education Session Part 3 | Class |
| Mendez,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Ortega,Omar | 115237 | JFK8 Education Session Part 3 | Class |
| bous,joseph adly | 115237 | JFK8 Education Session Part 3 | Class |
| Diab,Judy | 115237 | JFK8 Education Session Part 3 | Class |
| Saldana,Anastacio | 115237 | JFK8 Education Session Part 3 | Class |
| Renaud,Kester | 115237 | JFK8 Education Session Part 3 | Class |
| Ramos,Montgomery | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz,Gisselle | 115237 | JFK8 Education Session Part 3 | Class |
| Yabdayoui,Mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Licari,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Kenneth | 115237 | JFK8 Education Session Part 3 | Class |
| Ettu,Abim | 115237 | JFK8 Education Session Part 3 | Class |
| Zelaya,Jeisil | 115237 | JFK8 Education Session Part 3 | Class |
| alimi,onuabuchi promise | 115237 | JFK8 Education Session Part 3 | Class |
| Felix,Francisco | 115237 | JFK8 Education Session Part 3 | Class |
| Eshingnwi,Amah Rosemary | 115237 | JFK8 Education Session Part 3 | Class |
| Nizami,Rija N | 115237 | JFK8 Education Session Part 3 | Class |
| Palmer,Derrick | 115237 | JFK8 Education Session Part 3 | Class |
| Harris,Dawud | 115237 | JFK8 Education Session Part 3 | Class |
| Aviles,Anna | 115237 | JFK8 Education Session Part 3 | Class |
| DeVille,James | 115237 | JFK8 Education Session Part 3 | Class |
| Nelson,Shontoine | 115237 | JFK8 Education Session Part 3 | Class |
| Pascal,Jamella | 115237 | JFK8 Education Session Part 3 | Class |
| viola,charlie Micheal | 115237 | JFK8 Education Session Part 3 | Class |
| Morales,Thalia | 115237 | JFK8 Education Session Part 3 | Class |
| Rodriguez,Roberto | 115237 | JFK8 Education Session Part 3 | Class |
| Johnson,Ryan | 115237 | JFK8 Education Session Part 3 | Class |
| Boone,Jahnaaman Evin | 115237 | JFK8 Education Session Part 3 | Class |
| Taleus,Berkenson | 115237 | JFK8 Education Session Part 3 | Class |
| Rhames,Ashley Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Robinson,Pernell | 115237 | JFK8 Education Session Part 3 | Class |
| King,Shara | 115237 | JFK8 Education Session Part 3 | Class |
| lin,zhiyuan | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Tamera | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Rondell | 115237 | JFK8 Education Session Part 3 | Class |
| Cooley-Howard,Shawntia | 115237 | JFK8 Education Session Part 3 | Class |
| James,Tevon | 115237 | JFK8 Education Session Part 3 | Class |
| Azeez,Shakirat | 115237 | JFK8 Education Session Part 3 | Class |
| Billera,Michael | 115237 | JFK8 Education Session Part 3 | Class |

Amazon_000456

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| CatalinoRosario,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| jean,christina | 115237 | JFK8 Education Session Part 3 | Class |
| mclemore,imani | 115237 | JFK8 Education Session Part 3 | Class |
| Thompson,Sukanya | 115237 | JFK8 Education Session Part 3 | Class |
| Holder,Daniel Brandon | 115237 | JFK8 Education Session Part 3 | Class |
| delpriore,rosa | 115237 | JFK8 Education Session Part 3 | Class |
| Coleman,Linda | 115237 | JFK8 Education Session Part 3 | Class |
| Avila,Angeleah | 115237 | JFK8 Education Session Part 3 | Class |
| Lewis,Shaquaya | 115237 | JFK8 Education Session Part 3 | Class |
| Castellanos,Randy | 115237 | JFK8 Education Session Part 3 | Class |
| Wright,Willie | 115237 | JFK8 Education Session Part 3 | Class |
| Dias,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Bravo,Cesar | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Phillips | 115237 | JFK8 Education Session Part 3 | Class |
| Truscelli,Vincent Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Oppong,David Hiawo | 115237 | JFK8 Education Session Part 3 | Class |
| Nayyar,Summy | 115237 | JFK8 Education Session Part 3 | Class |
| DiNapoli,Michael Vincent | 115237 | JFK8 Education Session Part 3 | Class |
| Calfos,Kofoworola Olaide | 115237 | JFK8 Education Session Part 3 | Class |
| Boylan,Jonell | 115237 | JFK8 Education Session Part 3 | Class |
| Graves,Tanijah | 115237 | JFK8 Education Session Part 3 | Class |
| LEE,George | 115237 | JFK8 Education Session Part 3 | Class |
| Cooper,Jameel | 115237 | JFK8 Education Session Part 3 | Class |
| Feng feng,Wenhao | 115237 | JFK8 Education Session Part 3 | Class |
| Montedeocanegron,Kirsys Elizabeth | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Nidia | 115237 | JFK8 Education Session Part 3 | Class |
| Bello,Imanol | 115237 | JFK8 Education Session Part 3 | Class |
| Rhooms,Tahau Alphonso | 115237 | JFK8 Education Session Part 3 | Class |
| Whiten-Bell,Ronique | 115237 | JFK8 Education Session Part 3 | Class |
| Molina Lopez,Milton Hugo | 115237 | JFK8 Education Session Part 3 | Class |
| Zhuno,Raquel | 115237 | JFK8 Education Session Part 3 | Class |
| Jackson,Derrick | 115237 | JFK8 Education Session Part 3 | Class |
| Elshabassy,Moe Ahmed | 115237 | JFK8 Education Session Part 3 | Class |
| Flores-Hernandez,Jose | 115237 | JFK8 Education Session Part 3 | Class |
| huw song,ying | 115237 | JFK8 Education Session Part 3 | Class |
| huw song,ying | 115237 | JFK8 Education Session Part 3 | Class |
| medrano heredia,ray ernesto | 115237 | JFK8 Education Session Part 3 | Class |
| Pena,Mereling | 115237 | JFK8 Education Session Part 3 | Class |
| scott,deepak | 115237 | JFK8 Education Session Part 3 | Class |
| Sow,Mariama | 115237 | JFK8 Education Session Part 3 | Class |
| Barzola,Martha Patty | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez Camano,Alexis | 115237 | JFK8 Education Session Part 3 | Class |
| victor,christine | 115237 | JFK8 Education Session Part 3 | Class |
| Edmonds,Jessica Rebecca | 115237 | JFK8 Education Session Part 3 | Class |
| Barrios,Alyssa | 115237 | JFK8 Education Session Part 3 | Class |
| Catapang,Rogelio | 115237 | JFK8 Education Session Part 3 | Class |
| Ijasuyi,Emmanuel Morenikeji | 115237 | JFK8 Education Session Part 3 | Class |
| Ijasuyi,Emmanuel Morenikeji | 115237 | JFK8 Education Session Part 3 | Class |
| Nkwocha,Clement | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Williams,Karimot | 115237 | JFK8 Education Session Part 3 | Class |
| Adebisi,Pharez | 115237 | JFK8 Education Session Part 3 | Class |
| Sinclair,Rondane | 115237 | JFK8 Education Session Part 3 | Class |
| Ozorio,Chrysmayry | 115237 | JFK8 Education Session Part 3 | Class |
| Odubanjo,Oluseun A. | 115237 | JFK8 Education Session Part 3 | Class |
| Adams de Jimenez,Nitzia | 115237 | JFK8 Education Session Part 3 | Class |
| Jefferson,Letitia | 115237 | JFK8 Education Session Part 3 | Class |
| Selby,Francine | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Dio | 115237 | JFK8 Education Session Part 3 | Class |
| Windom,Simone | 115237 | JFK8 Education Session Part 3 | Class |
| Ilagan,Patrick Jurgen | 115237 | JFK8 Education Session Part 3 | Class |
| Christy,Ketan | 115237 | JFK8 Education Session Part 3 | Class |
| paredes,tania altagracia | 115237 | JFK8 Education Session Part 3 | Class |
| Paladino III,Albert | 115237 | JFK8 Education Session Part 3 | Class |
| Butt,MUHAMMAD H | 115237 | JFK8 Education Session Part 3 | Class |
| Fibbio,Fred Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| Mendez,Iris Ariel | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Luis A | 115237 | JFK8 Education Session Part 3 | Class |
| Mormile,Somer | 115237 | JFK8 Education Session Part 3 | Class |
| Taylor,Danval | 115237 | JFK8 Education Session Part 3 | Class |
| Ruiz,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Quintero,Melisa | 115237 | JFK8 Education Session Part 3 | Class |
| DeLaCruz,Nicholas V | 115237 | JFK8 Education Session Part 3 | Class |
| Jiang,Junwei | 115237 | JFK8 Education Session Part 3 | Class |
| Goodridge,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| Saunders,Quran | 115237 | JFK8 Education Session Part 3 | Class |
| Floyd,William | 115237 | JFK8 Education Session Part 3 | Class |
| Garzon Torres,Genesis Isamar | 115237 | JFK8 Education Session Part 3 | Class |
| Francis,Kevaughn | 115237 | JFK8 Education Session Part 3 | Class |
| Dunn,Gina | 115237 | JFK8 Education Session Part 3 | Class |
| Kassim,Tijani | 115237 | JFK8 Education Session Part 3 | Class |
| Inniss,Jacques | 115237 | JFK8 Education Session Part 3 | Class |
| Monterroso,Ruben Angelo | 115237 | JFK8 Education Session Part 3 | Class |
| Pavia Ballesteros,Ivett | 115237 | JFK8 Education Session Part 3 | Class |
| Pavia Ballesteros,Ivett | 115237 | JFK8 Education Session Part 3 | Class |
| Valentine,Khiry | 115237 | JFK8 Education Session Part 3 | Class |
| Hinckson,Shermaine | 115237 | JFK8 Education Session Part 3 | Class |
| Adams,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Gerges,Wagih | 115237 | JFK8 Education Session Part 3 | Class |
| Dillon,Randy | 115237 | JFK8 Education Session Part 3 | Class |
| Abreu,Eneuri | 115237 | JFK8 Education Session Part 3 | Class |
| Rosas,Armando M | 115237 | JFK8 Education Session Part 3 | Class |
| Wright,Jakeir | 115237 | JFK8 Education Session Part 3 | Class |
| Mejia,Nalleli | 115237 | JFK8 Education Session Part 3 | Class |
| Cruz,Ales | 115237 | JFK8 Education Session Part 3 | Class |
| Pacelli,Mike Joseph | 115237 | JFK8 Education Session Part 3 | Class |
| Mansy,Gisselle Wahid nasr | 115237 | JFK8 Education Session Part 3 | Class |
| Collazos,Elizabeth Milagros | 115237 | JFK8 Education Session Part 3 | Class |
| Bell,Hapiness | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| McLean,Ezra | 115237 | JFK8 Education Session Part 3 | Class |
| McLean,Ezra | 115237 | JFK8 Education Session Part 3 | Class |
| Dawkins-Giles,Toy | 115237 | JFK8 Education Session Part 3 | Class |
| Martin,Elijah | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Elvis C | 115237 | JFK8 Education Session Part 3 | Class |
| Williams,Clive Alejandro | 115237 | JFK8 Education Session Part 3 | Class |
| Dosunmu,Abdulwasiu Olakunle | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Davon | 115237 | JFK8 Education Session Part 3 | Class |
| Thi,A Myanmar Lat | 115237 | JFK8 Education Session Part 3 | Class |
| Velasquez,Erika Cristal | 115237 | JFK8 Education Session Part 3 | Class |
| Isaac,Jamel Shaun | 115237 | JFK8 Education Session Part 3 | Class |
| YAUCH,CHRISTOPHER | 115237 | JFK8 Education Session Part 3 | Class |
| Marron,Peter | 115237 | JFK8 Education Session Part 3 | Class |
| Ray,Zane | 115237 | JFK8 Education Session Part 3 | Class |
| Peras,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| Vega,Natalie | 115237 | JFK8 Education Session Part 3 | Class |
| Steven Martinez,Steven | 115237 | JFK8 Education Session Part 3 | Class |
| Sanchez,Frank | 115237 | JFK8 Education Session Part 3 | Class |
| Gomez,Denis | 115237 | JFK8 Education Session Part 3 | Class |
| Wells,Gene | 115237 | JFK8 Education Session Part 3 | Class |
| Jessie,Vacher | 115237 | JFK8 Education Session Part 3 | Class |
| xie,guowei | 115237 | JFK8 Education Session Part 3 | Class |
| Green,Malayshia | 115237 | JFK8 Education Session Part 3 | Class |
| Raucci,Pasquale | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Lyric | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Lyric | 115237 | JFK8 Education Session Part 3 | Class |
| Martinez,Melissa | 115237 | JFK8 Education Session Part 3 | Class |
| Belk,Niamiani | 115237 | JFK8 Education Session Part 3 | Class |
| Kosim,Mahina | 115237 | JFK8 Education Session Part 3 | Class |
| Gibbons,Kashiem | 115237 | JFK8 Education Session Part 3 | Class |
| Rosales,Jennifer | 115237 | JFK8 Education Session Part 3 | Class |
| Smith,Gary | 115237 | JFK8 Education Session Part 3 | Class |
| Garris,Kayana | 115237 | JFK8 Education Session Part 3 | Class |
| Avila,Anthony | 115237 | JFK8 Education Session Part 3 | Class |
| piazza,kimMarie | 115237 | JFK8 Education Session Part 3 | Class |
| Roberts,Floyd | 115237 | JFK8 Education Session Part 3 | Class |
| Wilson,Modupe Fatimo | 115237 | JFK8 Education Session Part 3 | Class |
| Corporan,Darys N | 115237 | JFK8 Education Session Part 3 | Class |
| Davis,Hugh | 115237 | JFK8 Education Session Part 3 | Class |
| Nasr,Jihad Tanos | 115237 | JFK8 Education Session Part 3 | Class |
| Verneau,Wilgems | 115237 | JFK8 Education Session Part 3 | Class |
| Rosario,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Villegas,Max | 115237 | JFK8 Education Session Part 3 | Class |
| Ruiz,Shawntay | 115237 | JFK8 Education Session Part 3 | Class |
| Shupongpun,Pete | 115237 | JFK8 Education Session Part 3 | Class |
| Coleman,Stacy | 115237 | JFK8 Education Session Part 3 | Class |
| Jordan,Madriek | 115237 | JFK8 Education Session Part 3 | Class |
| Delcid,Rita | 115237 | JFK8 Education Session Part 3 | Class |
| Noguera,Erika | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Selmani,Esma | 115237 | JFK8 Education Session Part 3 | Class |
| Adebayo,Funmilayo | 115237 | JFK8 Education Session Part 3 | Class |
| Hernandez,Juan Jose | 115237 | JFK8 Education Session Part 3 | Class |
| Humphery,Brendasia | 115237 | JFK8 Education Session Part 3 | Class |
| Obioha,Victor | 115237 | JFK8 Education Session Part 3 | Class |
| Pina,Anapatricia Carolina | 115237 | JFK8 Education Session Part 3 | Class |
| Reddy,Geneva | 115237 | JFK8 Education Session Part 3 | Class |
| Cummins,Jonathan | 115237 | JFK8 Education Session Part 3 | Class |
| Gorski,Dawid | 115237 | JFK8 Education Session Part 3 | Class |
| Meyer,Kia | 115237 | JFK8 Education Session Part 3 | Class |
| Axelrod,Melissa | 115237 | JFK8 Education Session Part 3 | Class |
| Hough,Sakemah | 115237 | JFK8 Education Session Part 3 | Class |
| Pugh,Jason | 115237 | JFK8 Education Session Part 3 | Class |
| Perry,Natonya | 115237 | JFK8 Education Session Part 3 | Class |
| Perry,Natonya | 115237 | JFK8 Education Session Part 3 | Class |
| Wattley,Xaviee | 115237 | JFK8 Education Session Part 3 | Class |
| Danis,Madonise | 115237 | JFK8 Education Session Part 3 | Class |
| Brown,John | 115237 | JFK8 Education Session Part 3 | Class |
| Sempertegui,Paola | 115237 | JFK8 Education Session Part 3 | Class |
| Romero,Daisy | 115237 | JFK8 Education Session Part 3 | Class |
| Rosales,Monica | 115237 | JFK8 Education Session Part 3 | Class |
| Sanjose,David | 115237 | JFK8 Education Session Part 3 | Class |
| Sanjose,David | 115237 | JFK8 Education Session Part 3 | Class |
| Lewis,Diamond | 115237 | JFK8 Education Session Part 3 | Class |
| Dixon,Headley | 115237 | JFK8 Education Session Part 3 | Class |
| Guamanquispe,Johnny Steven | 115237 | JFK8 Education Session Part 3 | Class |
| Campo,Hector | 115237 | JFK8 Education Session Part 3 | Class |
| Schwartz,Igor | 115237 | JFK8 Education Session Part 3 | Class |
| Damico,Brandon Scott | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,John | 115237 | JFK8 Education Session Part 3 | Class |
| Yearwood,Suzette Nichola Hamilton | 115237 | JFK8 Education Session Part 3 | Class |
| Shaw,Will | 115237 | JFK8 Education Session Part 3 | Class |
| Alberto,Andres E | 115237 | JFK8 Education Session Part 3 | Class |
| Alberto,Andres E | 115237 | JFK8 Education Session Part 3 | Class |
| Sedrak,Michael | 115237 | JFK8 Education Session Part 3 | Class |
| S,Zequina N | 115237 | JFK8 Education Session Part 3 | Class |
| Day,George | 115237 | JFK8 Education Session Part 3 | Class |
| Clack,Deron | 115237 | JFK8 Education Session Part 3 | Class |
| Noel,Mirlande | 115237 | JFK8 Education Session Part 3 | Class |
| Choudhury,Shamsur | 115237 | JFK8 Education Session Part 3 | Class |
| McNab,Robert Charles | 115237 | JFK8 Education Session Part 3 | Class |
| Hall,Synobia E | 115237 | JFK8 Education Session Part 3 | Class |
| Harris,Tyree | 115237 | JFK8 Education Session Part 3 | Class |
| Turpin,Rayqwaun Tyrik | 115237 | JFK8 Education Session Part 3 | Class |
| powley,matthew clyde clyde | 115237 | JFK8 Education Session Part 3 | Class |
| hassan,sherif mohamed | 115237 | JFK8 Education Session Part 3 | Class |
| Acosta,Nogleidys | 115237 | JFK8 Education Session Part 3 | Class |
| Pena,Kelvin | 115237 | JFK8 Education Session Part 3 | Class |
| Rosendo,Myriam Fernanda | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ragusa,Rosie | 115237 | JFK8 Education Session Part 3 | Class |
| Perry,Shantay | 115237 | JFK8 Education Session Part 3 | Class |
| LaPorta,Lisa | 115237 | JFK8 Education Session Part 3 | Class |
| Menon,Ja Bawk | 115237 | JFK8 Education Session Part 3 | Class |
| Balasuriya A.D,Dananjaya Chathuranga | 115237 | JFK8 Education Session Part 3 | Class |
| Arcelin,Jovanny | 115237 | JFK8 Education Session Part 3 | Class |
| Tahay,Yonatan | 115237 | JFK8 Education Session Part 3 | Class |
| Everett,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| Thomas,Farrd | 115237 | JFK8 Education Session Part 3 | Class |
| Camacho,Dawn | 115237 | JFK8 Education Session Part 3 | Class |
| Obaseki,Tracy | 115237 | JFK8 Education Session Part 3 | Class |
| villa,shakespeare | 115237 | JFK8 Education Session Part 3 | Class |
| Peterson,Walker | 115237 | JFK8 Education Session Part 3 | Class |
| Nunez,Karina | 115237 | JFK8 Education Session Part 3 | Class |
| Willis,RoseAnn | 115237 | JFK8 Education Session Part 3 | Class |
| THARMALINGAM,BALAYOKI | 115237 | JFK8 Education Session Part 3 | Class |
| Perkins,Arthur | 115237 | JFK8 Education Session Part 3 | Class |
| Holguin,Joel | 115237 | JFK8 Education Session Part 3 | Class |
| Mahil,anwer elamin ali | 115237 | JFK8 Education Session Part 3 | Class |
| Grant,Courtney F | 115237 | JFK8 Education Session Part 3 | Class |
| Ahouandogbo,Akpedje | 115237 | JFK8 Education Session Part 3 | Class |
| Vergara,Luis | 115237 | JFK8 Education Session Part 3 | Class |
| Scaringella,Joseph Angelo | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Efren | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Efren | 115237 | JFK8 Education Session Part 3 | Class |
| Ouoba,Samuel | 115237 | JFK8 Education Session Part 3 | Class |
| cruz,Miko | 115237 | JFK8 Education Session Part 3 | Class |
| Jeffrey,Eric | 115237 | JFK8 Education Session Part 3 | Class |
| Chance,John | 115237 | JFK8 Education Session Part 3 | Class |
| Lui,Kenneth | 115237 | JFK8 Education Session Part 3 | Class |
| Flores,Ana Silvia | 115237 | JFK8 Education Session Part 3 | Class |
| Marrero,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Marrero,Maria | 115237 | JFK8 Education Session Part 3 | Class |
| Nocerino,Danielle Marie | 115237 | JFK8 Education Session Part 3 | Class |
| James,Shannel Everlina | 115237 | JFK8 Education Session Part 3 | Class |
| Purpura,Gregory | 115237 | JFK8 Education Session Part 3 | Class |
| Jean,Bensh Nahalda | 115237 | JFK8 Education Session Part 3 | Class |
| Romero,Christina | 115237 | JFK8 Education Session Part 3 | Class |
| Hussain,Muhammad | 115237 | JFK8 Education Session Part 3 | Class |
| Nieto,Vanesa | 115237 | JFK8 Education Session Part 3 | Class |
| Nieto,Vanesa | 115237 | JFK8 Education Session Part 3 | Class |
| Conteh,Alimamy | 115237 | JFK8 Education Session Part 3 | Class |
| Lundi,Jean Berlin | 115237 | JFK8 Education Session Part 3 | Class |
| cuccurullo,ashley marie | 115237 | JFK8 Education Session Part 3 | Class |
| Cibelli,Michelle | 115237 | JFK8 Education Session Part 3 | Class |
| Sall,Mohamedou | 115237 | JFK8 Education Session Part 3 | Class |
| Diaz Alvarez,Lily Elena | 115237 | JFK8 Education Session Part 3 | Class |
| Vazquez Molina,Magali | 115237 | JFK8 Education Session Part 3 | Class |
| Vazquez Molina,Magali | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Molina,Leisly | 115237 | JFK8 Education Session Part 3 | Class |
| NESBITT,GAIL | 115237 | JFK8 Education Session Part 3 | Class |
| NESBITT,GAIL | 115237 | JFK8 Education Session Part 3 | Class |
| Le,Khoa Tho | 115237 | JFK8 Education Session Part 3 | Class |
| Vazquez,Rosa | 115237 | JFK8 Education Session Part 3 | Class |
| McFadden,Najayah | 115237 | JFK8 Education Session Part 3 | Class |
| Reyes,Juan Carlos | 115237 | JFK8 Education Session Part 3 | Class |
| Woods,Taleshia | 115237 | JFK8 Education Session Part 3 | Class |
| Sierra,Justin | 115237 | JFK8 Education Session Part 3 | Class |
| Dejesus,Wilfred R | 115237 | JFK8 Education Session Part 3 | Class |
| Cooney,Justin | 115237 | JFK8 Education Session Part 3 | Class |
| Mirzo,Faton | 115237 | JFK8 Education Session Part 3 | Class |
| Feldman,Johanna Calumba | 115237 | JFK8 Education Session Part 3 | Class |
| Neri,Adriana | 115237 | JFK8 Education Session Part 3 | Class |
| Tobon,Jay Brian | 115237 | JFK8 Education Session Part 3 | Class |
| Keyes,Saequan | 115237 | JFK8 Education Session Part 3 | Class |
| Denton,Dominique | 115237 | JFK8 Education Session Part 3 | Class |
| R,Sebastian | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,Chasity | 115237 | JFK8 Education Session Part 3 | Class |
| CAMPOVERDE,MAYRA | 115237 | JFK8 Education Session Part 3 | Class |
| Perez,David | 115237 | JFK8 Education Session Part 3 | Class |
| reyes,daniela | 115237 | JFK8 Education Session Part 3 | Class |
| Idakwoji,Abu | 115237 | JFK8 Education Session Part 3 | Class |
| Strickland,Enoch | 115237 | JFK8 Education Session Part 3 | Class |
| Vilchis,Rochelle | 115237 | JFK8 Education Session Part 3 | Class |
| Bernard,Kurt | 115237 | JFK8 Education Session Part 3 | Class |
| Garcia,Keila Brigitte | 115237 | JFK8 Education Session Part 3 | Class |
| Carlson,Robert | 115237 | JFK8 Education Session Part 3 | Class |
| goubran,Maged | 115237 | JFK8 Education Session Part 3 | Class |
| Collins,Jalisa GAvona | 115237 | JFK8 Education Session Part 3 | Class |
| Irvine,Rebecca Nicole | 115237 | JFK8 Education Session Part 3 | Class |
| Hamilton,Shantel | 115237 | JFK8 Education Session Part 3 | Class |
| Jean Louis,Antoine Joachim | 115237 | JFK8 Education Session Part 3 | Class |
| Mahmood,Qasim | 115237 | JFK8 Education Session Part 3 | Class |
| Clarke,Lidea | 115237 | JFK8 Education Session Part 3 | Class |
| Tran,TuyenDinh | 115237 | JFK8 Education Session Part 3 | Class |
| Lund,Kenneth | 115237 | JFK8 Education Session Part 3 | Class |
| Sorrentino,Linda | 115237 | JFK8 Education Session Part 3 | Class |
| hoy,charles | 115237 | JFK8 Education Session Part 3 | Class |
| Emsak,Matthew | 115237 | JFK8 Education Session Part 3 | Class |
| Fu,Stephanie | 115237 | JFK8 Education Session Part 3 | Class |
| Tamay,Evelyn | 115237 | JFK8 Education Session Part 3 | Class |
| Barry,Djenabou | 115237 | JFK8 Education Session Part 3 | Class |
| Wijesiri,Mithusha | 115237 | JFK8 Education Session Part 3 | Class |
| KHEMIRI,Safia | 115237 | JFK8 Education Session Part 3 | Class |
| Gregoretti,Nick E | 115237 | JFK8 Education Session Part 3 | Class |
| wilkerson,Wendy Elaine | 115237 | JFK8 Education Session Part 3 | Class |
| Adeleye,Adebayo | 115237 | JFK8 Education Session Part 3 | Class |
| delcid,Elsy C | 115237 | JFK8 Education Session Part 3 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Wernau,Matthew R | 115237 | JFK8 Education Session Part 3 | Class |
| Resto,Kevin | 115237 | JFK8 Education Session Part 3 | Class |
| BROWN,DVASHAH | 115237 | JFK8 Education Session Part 3 | Class |
| Leiba,Kimberly | 115237 | JFK8 Education Session Part 3 | Class |
| Small,Wendy | 115237 | JFK8 Education Session Part 3 | Class |
| Akindutire,Ola | 115237 | JFK8 Education Session Part 3 | Class |
| Rosas,Viridiana | 115237 | JFK8 Education Session Part 3 | Class |
| Callinder,David Lloyd | 115237 | JFK8 Education Session Part 3 | Class |
| Ortega santos Sr,Eduardo A | 115237 | JFK8 Education Session Part 3 | Class |
| Israel,Garnel | 115237 | JFK8 Education Session Part 3 | Class |
| Merard,Rolando | 115237 | JFK8 Education Session Part 3 | Class |
| Lopez,Lillian | 115237 | JFK8 Education Session Part 3 | Class |
| Bryson,Zahliq | 115237 | JFK8 Education Session Part 3 | Class |
| Nunez,Bilmani | 115237 | JFK8 Education Session Part 3 | Class |
| James,Jacqueline Chiquana | 115237 | JFK8 Education Session Part 3 | Class |
| Ibrahim,Mostafa mahmoud | 115237 | JFK8 Education Session Part 3 | Class |
| Webs,Gabriel B | 115237 | JFK8 Education Session Part 3 | Class |
| Stroman,Alex | 115237 | JFK8 Education Session Part 3 | Class |
| Long,Sue M | 115237 | JFK8 Education Session Part 3 | Class |
| Lawrence,Anneth | 115237 | JFK8 Education Session Part 3 | Class |
| Cortes,Elmer | 115237 | JFK8 Education Session Part 3 | Class |
| Dutan,Jasmine | 115237 | JFK8 Education Session Part 3 | Class |
| Marquez,Ferdinand | 115237 | JFK8 Education Session Part 3 | Class |
| Gonzalez,DEBORA | 115237 | JFK8 Education Session Part 3 | Class |
| Jubran,Monir | 115237 | JFK8 Education Session Part 3 | Class |
| Holland,Alliyah Lafaye | 115237 | JFK8 Education Session Part 3 | Class |
| DORSEY,CRAIG | 115237 | JFK8 Education Session Part 3 | Class |
| MAC PHERSON,ALBERTO ALBERTO | 115237 | JFK8 Education Session Part 3 | Class |
| Jennings,Porsche | 115237 | JFK8 Education Session Part 3 | Class |
| Gary,Rodney | 115237 | JFK8 Education Session Part 3 | Class |
| Gary,Rodney | 115237 | JFK8 Education Session Part 3 | Class |
| Aybar Guzman,Adrialis | 115237 | JFK8 Education Session Part 3 | Class |
| Charpentier medor,Samara stecye | 115237 | JFK8 Education Session Part 3 | Class |
| Ebisike,Linus A | 115237 | JFK8 Education Session Part 3 | Class |
| Ebisike,Linus A | 115237 | JFK8 Education Session Part 3 | Class |
| Nieves,Frances | 115237 | JFK8 Education Session Part 3 | Class |
| Tompkins,Zarya | 115237 | JFK8 Education Session Part 3 | Class |
| Clarke,Dale | 115237 | JFK8 Education Session Part 3 | Class |
| Pritchard,Kerri | 115237 | JFK8 Education Session Part 3 | Class |
| Harper,Zane | 115237 | JFK8 Education Session Part 3 | Class |
| Afolabi,Oluwafemi Oladapo | 115237 | JFK8 Education Session Part 3 | Class |
| Levine,Jake | 115237 | JFK8 Education Session Part 3 | Class |

Amazon_000463



INSTRUCTIONS TO **PRESENTER:**

Thanks for joining us today..

Introduce yourself by giving your **FIRST name** and how long you have worked at Amazon.

Let the audience know that you're a member of the Amazon Employee Relations Team and you're here to talk about an important topic today.

Amazon_000044

EXHIBIT NO. GC-39        RECEIVED    x    REJECTED _____

CASE NO 29-CA-280153 ET/AL      CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 19    DATE: 09-20-2022    REPORTER: Barrington Moxie



**Last Week We Unpacked...**
*The Reality of Dues &
Union Life*

UNPACK IT
GET THE FACTS ABOUT UNIONS

GET INFORMED AT
UNPACKJFK8.COM

2 Privileged & Confidential

amazon STATEN ISLAND

INSTRUCTIONS TO PRESENTER:

**Presenter to Read:**

This session is part of our series to help unpack and provide facts about unions. To start, a quick recap from last week where discussed the reality of dues and the subject of union life.

As a reminder, the ALU has said it will take **union dues from each worker's paycheck.**Typically, dues cost hundreds of dollars every year.

Additionally, day-to-day workplace issues that are easily resolved in a simple conversation with your supervisor today **can become more time-consuming and involve the union.**

***Move to next slide***.

Amazon_000045



*READ THE SLIDE ALOUD **<u>INCLUDING THE NOTE AT THE BOTTOM</u>**:*

Our intention is to help you ask, and answer, critical questions about the choice between union representation and continuing with our One Team relationship.

As a reminder, One Team isn't just a slogan, it is a commitment we make to each other, and the power of One Team makes JFK8 a great place to work. We can continue to improve by working together directly, openly and honestly.

Move to next slide.

Amazon_000046

## Campaign Promises Are Not Guarantees
### Everything must be negotiated in collective bargaining.

- Some people think that if the union gets in, all of the union's promises automatically come true. It's not that simple.

- When a union is elected, it can't dictate changes at Amazon. It first has to negotiate with the company. This is called collective bargaining.

- A collective bargaining agreement, or CBA, is a "contract." This document says two sides AGREE on something.

- That means none of the ALU's promises can come true unless Amazon agrees to them.

 UNPACK IT
GET THE FACTS ABOUT UNIONS

GET INFORMED AT
UNPACKJFK8.COM

amazon STATEN ISLAND

*Presenter to start with:*

Last week we talked a little about union promises and to ask HOW they can guarantee them. This issue of promises vs. guarantees is important. The first thing you should know is that the law does not give the company and the union the same rights when it comes to making promises during a union campaign.

It is against the law for Amazon to make promises – or offer you something specific, like a raise – in order to convince you to vote against the union.

We have to keep the "status quo" – that means we have to keep everything the same during the election, and during negotiations if the union is voted in – pay, benefits, and work rules.

And when it comes to union promises, there are no guarantees. Unions really can't promise anything, they can only ask….and that process is called collective bargaining.

And a union promise can only happen if the company agrees to it.

Amazon_000047

**Presenter to read slide starting with the header.**

Amazon_000048



**Presenter to start with:**

We want to go over a couple of important things you need to know about collective bargaining.

**Then read #1.**

**Then add:**

That means that they must agree to meet at reasonable times, and TRY to reach agreement. The law doesn't say they HAVE to reach agreement, just that they TRY to.

Amazon_000049

**Then read #2 and then add:**

This is right out of the federal labor law. Neither side can ever be compelled to accept the other side's contract proposals.

**Then read #3 and add:**

Sometimes, this could take months or even years to complete this process.  Sometimes the two sides never agree.

**Then read #4 and add:**

What's a union shop clause, and why do unions ask for it? A union shop clause would require Amazon to fire you if you don't join the union and pay dues. What is dues check off? The process by which a union can request that their dues be automatically deducted from your paycheck if you provide written authorization for the Company to do

# SO.

We talked last week about dues...remember that dues paid by employees are the only source of funding for the union to pay its salaries and expenses.

These things may not mean anything to you, but they mean a lot to unions.

Amazon_000051

## Will the ALU's Priorities Match Yours?

Collective bargaining is like any negotiation. Sometimes you have to give a little to get a little – and what's important to you may not be important to someone else.



*A UNION CONTRACT COULD:*

- **Leave you with the SAME things you have now** – like vacation, paid parental leave, wages, health benefits, 401(k), Career Choice, and Resources for Living;
- **Give you MORE**; or
- **Leave you with LESS** of what you want.

 GET INFORMED AT
UNPACKJFK8.COM

**amazon** STATEN ISLAND

---

**Read the header and the first paragraph of the slide and then add:**

It is important to remember that negotiations are always a give and take – to give something, you give up something.   And here is why that matters….

What is important to the ALU may or may not be important to you. They may be willing to trade your priority for one of theirs.

Your #1 issue can be #13 for everyone else – or maybe your issue isn't listed at all. Unions have to balance the wants of the members (you have no way of knowing if your issue rise to the top in the balance?).

And in contract negotiation, sometimes you don't get everything you want. Neither side does. It's a give and take.

So all of the benefits you have today - things like vacation, paid parental leave, wages, health benefits, 401(k), Career Choice, and Resources for Living, among others.

Amazon_000052

Every single one of them would be on the table for negotiation. And the union decides what is important, and what they can give in exchange for something they want.  And whatever they decide, everyone must abide by.

**Direct attention to remainder of slide and read starting with "A union contract could"**

**Then add:**

I want to make something very clear to you.

Amazon can't predict the outcome of bargaining, and we are not suggesting that you will lose things in a negotiation.  What we are saying is that the union can't guarantee that you will GAIN anything either.

Amazon_000053

# What if the parties can't agree on a contract?

- If the parties can't agree on a contract, the union can call a strike.

- If there is strike, you will likely be expected to participate.

- You would not be paid by Amazon during the time you are on strike.



 GET INFORMED AT
UNPACKJFK8.COM

amazon STATEN ISLAND

Negotiating a contract, particularly a first contract can take a long time, months and sometimes years. And during negotiations there are typically no changes to wages, benefits or work rules.

And what happens if the parties can't agree on a contract.

***Read slide aloud.***

Amazon_000054

# Voting for a Union Contract

- If the parties do agree on the terms of a contract, it is typically put up for a ratification vote among the membership.

- We don't know what the ALU's contract ratification process will look like, because they haven't said anything about it.



 GET INFORMED AT
**UNPACKJFK8.COM**

amazon STATEN ISLAND

*Read slide aloud.*

Amazon_000055



## What If I Don't Like the Contract or the Union?

- **Everyone** is bound by the union contract, whether you agree with it or not. And whether you voted for it or not.

- With a union, there is usually **no such thing as a "test drive."** It isn't easy to vote a union out.



UNPACK IT
GET THE FACTS ABOUT UNIONS

GET INFORMED AT
UNPACKJFK8.COM

amazon STATEN ISLAND

**Read the slide aloud and then add:**

So what does this mean for you?

Voting out or "decertifying" a union after it has been elected is often a long and difficult process. There are lots of rules that the National Labor Relations Board (NLRB) has in order to decertify a union. To even get to a decertification vote, 30% of associates need to show support for it to occur. Plus, if the company and union reach a collective bargaining agreement, or contract, there can't be a vote to decertify the union during the

first three years except for a very specific 30-day window.

That's pretty complex, right? So, you should be absolutely sure you want the union to represent you when you vote in the election. And, if you have any doubts, we encourage you to vote NO.

Amazon_000057

# Recap: Three Key Takeaways



With a union, terms and conditions of employment must be negotiated in good faith before changes can be made. **This is called collective bargaining. In negotiations, there are no guarantees.**



While you may have priorities that you want to see in a contract, the union and its negotiating team may **have priorities that may be different from yours.**



Typically, even if you vote against a union contract during ratification, if it passes, **it applies to EVERYONE.**

 GET INFORMED AT UNPACKJFK8.COM          10 Privileged & Confidential          amazon STATEN ISLAND

*READ THIS FIRST:*

We know we are sharing a lot of information with you in a short period of time.

*READ THE SLIDE STARTING WITH THE BLUE TEXT*

Amazon_000058



*Presenter to transition by….*

*And finally,*

**Read the slide aloud.**

# TO LEARN MORE ABOUT THE UNION ELECTION VISIT:

## UNPACKJFK8.COM



 GET INFORMED AT
UNPACKJFK8.COM

amazon STATEN ISLAND



| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Zuniga,Irving | 115240 | JFK8 Education Session Part 5 | Class |
| PINA ARIAS,EVELYN | 115240 | JFK8 Education Session Part 5 | Class |
| Oliver Ramirez,Aide Vanessa | 115240 | JFK8 Education Session Part 5 | Class |
| DeCarlo,Stephen | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Francis | 115240 | JFK8 Education Session Part 5 | Class |
| Davis,Clarise | 115240 | JFK8 Education Session Part 5 | Class |
| Salifu,Abdul Rasheed | 115240 | JFK8 Education Session Part 5 | Class |
| martin-taylor,latoya | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Nigah Dante | 115240 | JFK8 Education Session Part 5 | Class |
| Tirado-Bonilla,Andres Alexis | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,Carlita | 115240 | JFK8 Education Session Part 5 | Class |
| Rinehart,Micky | 115240 | JFK8 Education Session Part 5 | Class |
| rodriguez,kimberly | 115240 | JFK8 Education Session Part 5 | Class |
| Abeykoon,Udeni | 115240 | JFK8 Education Session Part 5 | Class |
| newcombe,justin | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Tray | 115240 | JFK8 Education Session Part 5 | Class |
| salvatierra,frank | 115240 | JFK8 Education Session Part 5 | Class |
| Cioffi,Pasquale | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Marquis | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Erik | 115240 | JFK8 Education Session Part 5 | Class |
| Colon,Hector | 115240 | JFK8 Education Session Part 5 | Class |
| Audate,Judeline | 115240 | JFK8 Education Session Part 5 | Class |
| Banneheke,Chameen S | 115240 | JFK8 Education Session Part 5 | Class |
| Sciortino,Patrick | 115240 | JFK8 Education Session Part 5 | Class |
| Kanzler,Jean | 115240 | JFK8 Education Session Part 5 | Class |
| Guillaume,Phiona | 115240 | JFK8 Education Session Part 5 | Class |
| Maldonado,Bryan | 115240 | JFK8 Education Session Part 5 | Class |
| Adjei,Bismark Kwaku | 115240 | JFK8 Education Session Part 5 | Class |
| MENSAH,DAVID | 115240 | JFK8 Education Session Part 5 | Class |
| Blount,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Lelissa Rafaela | 115240 | JFK8 Education Session Part 5 | Class |
| Jimenez,Alanz | 115240 | JFK8 Education Session Part 5 | Class |
| Daly,Adwyane | 115240 | JFK8 Education Session Part 5 | Class |
| Babb,Halle Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Acosta,Wallington Alberto | 115240 | JFK8 Education Session Part 5 | Class |
| Delacruz,Christian Jovanny | 115240 | JFK8 Education Session Part 5 | Class |
| Steinman,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Merone,Jean nicaisse | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Andrae | 115240 | JFK8 Education Session Part 5 | Class |
| Gilliard,Betty | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Edwin | 115240 | JFK8 Education Session Part 5 | Class |
| Khalil,Maher | 115240 | JFK8 Education Session Part 5 | Class |
| Olmedo,Sandra | 115240 | JFK8 Education Session Part 5 | Class |
| Shamku,Aida | 115240 | JFK8 Education Session Part 5 | Class |
| Sherif,Masalan | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Aj | 115240 | JFK8 Education Session Part 5 | Class |
| Auyeung,Kam | 115240 | JFK8 Education Session Part 5 | Class |
| Nava,Javi | 115240 | JFK8 Education Session Part 5 | Class |

EXHIBIT NO. GC-40 RECEIVED x REJECTED _____

CASE NO 29-CA-280153 ET/AL CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 96 DATE: 09-20-2022 REPORTER: Barrington Moxie

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Basurto,Lionel | 115240 | JFK8 Education Session Part 5 | Class |
| Wegener,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Wegener,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Zheng,Anna | 115240 | JFK8 Education Session Part 5 | Class |
| Bolanos,Alberto | 115240 | JFK8 Education Session Part 5 | Class |
| Zimring,Charles | 115240 | JFK8 Education Session Part 5 | Class |
| Mendez,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Molina,Leonel A | 115240 | JFK8 Education Session Part 5 | Class |
| Celius,Goy | 115240 | JFK8 Education Session Part 5 | Class |
| Lawrence,Raymond | 115240 | JFK8 Education Session Part 5 | Class |
| Dorsey,Dasir Khidar | 115240 | JFK8 Education Session Part 5 | Class |
| Zaalman,Deborah | 115240 | JFK8 Education Session Part 5 | Class |
| NISAR,Hassan | 115240 | JFK8 Education Session Part 5 | Class |
| WATKINS,THERESA | 115240 | JFK8 Education Session Part 5 | Class |
| jules charles,Iouna | 115240 | JFK8 Education Session Part 5 | Class |
| Rebecca,Joancy | 115240 | JFK8 Education Session Part 5 | Class |
| Feliciano,Justyn | 115240 | JFK8 Education Session Part 5 | Class |
| Lugo-mora,Maria A | 115240 | JFK8 Education Session Part 5 | Class |
| coromina,judy | 115240 | JFK8 Education Session Part 5 | Class |
| Sepulveda,Barry | 115240 | JFK8 Education Session Part 5 | Class |
| Melendez,Isaiah | 115240 | JFK8 Education Session Part 5 | Class |
| Ali,Tae | 115240 | JFK8 Education Session Part 5 | Class |
| Maniscalco,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Maniscalco,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Rincon,Yefri | 115240 | JFK8 Education Session Part 5 | Class |
| Zavala,Alvaro | 115240 | JFK8 Education Session Part 5 | Class |
| SAHEED,ALLI | 115240 | JFK8 Education Session Part 5 | Class |
| Peh,Shelley Laifong | 115240 | JFK8 Education Session Part 5 | Class |
| CAMPBELL,DARYLANN P | 115240 | JFK8 Education Session Part 5 | Class |
| Sinclair,Kitt-Carson | 115240 | JFK8 Education Session Part 5 | Class |
| Mostafa,Ahmed | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Malik | 115240 | JFK8 Education Session Part 5 | Class |
| Caballero,victor | 115240 | JFK8 Education Session Part 5 | Class |
| Hunter,Ariana | 115240 | JFK8 Education Session Part 5 | Class |
| Fenner,Eric Bryan | 115240 | JFK8 Education Session Part 5 | Class |
| Kinard,Yuhurn Dion | 115240 | JFK8 Education Session Part 5 | Class |
| Belmonte,Marisa Anne | 115240 | JFK8 Education Session Part 5 | Class |
| Curto,Lisa | 115240 | JFK8 Education Session Part 5 | Class |
| Kragbe,Bogui | 115240 | JFK8 Education Session Part 5 | Class |
| Smoak,Samuel R | 115240 | JFK8 Education Session Part 5 | Class |
| Smoak,Samuel R | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Michael h | 115240 | JFK8 Education Session Part 5 | Class |
| eminowon,rose | 115240 | JFK8 Education Session Part 5 | Class |
| eminowon,rose | 115240 | JFK8 Education Session Part 5 | Class |
| Coleman,waketa D | 115240 | JFK8 Education Session Part 5 | Class |
| Paz,Lourdes | 115240 | JFK8 Education Session Part 5 | Class |
| Paz,Lourdes | 115240 | JFK8 Education Session Part 5 | Class |
| Meiman,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lebbad,Kim D | 115240 | JFK8 Education Session Part 5 | Class |
| Clark,Terica L | 115240 | JFK8 Education Session Part 5 | Class |
| Luc,Ray | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Ford,Furquan | 115240 | JFK8 Education Session Part 5 | Class |
| alkali,simon | 115240 | JFK8 Education Session Part 5 | Class |
| McBride,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Martin,Raymond | 115240 | JFK8 Education Session Part 5 | Class |
| Tucker,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Huerta,Javier | 115240 | JFK8 Education Session Part 5 | Class |
| Blake,Isaac | 115240 | JFK8 Education Session Part 5 | Class |
| Ibrahim,Martina | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Alesha | 115240 | JFK8 Education Session Part 5 | Class |
| Abidoye,Michelle | 115240 | JFK8 Education Session Part 5 | Class |
| Odenore,Joshua | 115240 | JFK8 Education Session Part 5 | Class |
| Grasso,Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| mogavero,robert | 115240 | JFK8 Education Session Part 5 | Class |
| Hueyopa,Cristhian | 115240 | JFK8 Education Session Part 5 | Class |
| Lewis,Thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Rasool,Rahma | 115240 | JFK8 Education Session Part 5 | Class |
| Miranda,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Vidals,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Samios,Konstantine | 115240 | JFK8 Education Session Part 5 | Class |
| Cholula,Ezequiel | 115240 | JFK8 Education Session Part 5 | Class |
| Cholula,Ezequiel | 115240 | JFK8 Education Session Part 5 | Class |
| Mack,Haysha | 115240 | JFK8 Education Session Part 5 | Class |
| Ratnavasagam,Muralitharan Murali | 115240 | JFK8 Education Session Part 5 | Class |
| Phillips,Savion | 115240 | JFK8 Education Session Part 5 | Class |
| Phillips,Savion | 115240 | JFK8 Education Session Part 5 | Class |
| Pagtalunan,Dexter | 115240 | JFK8 Education Session Part 5 | Class |
| Bonilla,Jemy | 115240 | JFK8 Education Session Part 5 | Class |
| Francisco,Stephany | 115240 | JFK8 Education Session Part 5 | Class |
| Monds,Itonday | 115240 | JFK8 Education Session Part 5 | Class |
| Okyere,Othniel | 115240 | JFK8 Education Session Part 5 | Class |
| Rosenblum,Matthew L | 115240 | JFK8 Education Session Part 5 | Class |
| Cocozza,Sean | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| Anderson,Willie | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Trinity | 115240 | JFK8 Education Session Part 5 | Class |
| Ortega,P Polo | 115240 | JFK8 Education Session Part 5 | Class |
| Ortega,P Polo | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Gary | 115240 | JFK8 Education Session Part 5 | Class |
| Fernandez,Ramon | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,William | 115240 | JFK8 Education Session Part 5 | Class |
| hickey,thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Snyder,Debra | 115240 | JFK8 Education Session Part 5 | Class |
| Martin,Jamel | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Jasmine | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Abraham,Adam Henry | 115240 | JFK8 Education Session Part 5 | Class |
| CARRENARD,JEAN-MICHEL | 115240 | JFK8 Education Session Part 5 | Class |
| Donaldson,Emmanuel Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Washington,James | 115240 | JFK8 Education Session Part 5 | Class |
| OSIYEMI,OSIBAYO | 115240 | JFK8 Education Session Part 5 | Class |
| Marin,Katherine | 115240 | JFK8 Education Session Part 5 | Class |
| Marin,Katherine | 115240 | JFK8 Education Session Part 5 | Class |
| Charpentier,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Vicki | 115240 | JFK8 Education Session Part 5 | Class |
| Tutiven,Catalina | 115240 | JFK8 Education Session Part 5 | Class |
| Tutiven,Catalina | 115240 | JFK8 Education Session Part 5 | Class |
| Tompkins,Desiree | 115240 | JFK8 Education Session Part 5 | Class |
| Hye,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Vidals-Perez,Nancy | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Janjua,Amina | 115240 | JFK8 Education Session Part 5 | Class |
| Samaha,Basel | 115240 | JFK8 Education Session Part 5 | Class |
| Rawlins,Keeton | 115240 | JFK8 Education Session Part 5 | Class |
| Harris,Tyeshawn | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Jennifer | 115240 | JFK8 Education Session Part 5 | Class |
| De La Cruz,Ana M | 115240 | JFK8 Education Session Part 5 | Class |
| De La Cruz,Ana M | 115240 | JFK8 Education Session Part 5 | Class |
| taylor,tyrone dwight | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz,Mary | 115240 | JFK8 Education Session Part 5 | Class |
| Stuart,Renaldo | 115240 | JFK8 Education Session Part 5 | Class |
| Phillips,Rishon | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Raniesha | 115240 | JFK8 Education Session Part 5 | Class |
| Tucker,Markita | 115240 | JFK8 Education Session Part 5 | Class |
| Azmy,Roumany | 115240 | JFK8 Education Session Part 5 | Class |
| Maitre,Turenne | 115240 | JFK8 Education Session Part 5 | Class |
| Dutan,Oscar | 115240 | JFK8 Education Session Part 5 | Class |
| forrest,diamond | 115240 | JFK8 Education Session Part 5 | Class |
| Silya,Saihou | 115240 | JFK8 Education Session Part 5 | Class |
| Morris,Lesielle | 115240 | JFK8 Education Session Part 5 | Class |
| Rojas,Josh | 115240 | JFK8 Education Session Part 5 | Class |
| Scott,Nakeda Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Perillo,Maximus | 115240 | JFK8 Education Session Part 5 | Class |
| Fung,Dalon | 115240 | JFK8 Education Session Part 5 | Class |
| Dominguez,Asherree | 115240 | JFK8 Education Session Part 5 | Class |
| Cardone,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Arcaro,Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Tariq,Musarrat | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Kayla | 115240 | JFK8 Education Session Part 5 | Class |
| Valentine,Davia | 115240 | JFK8 Education Session Part 5 | Class |
| Saah,Maron | 115240 | JFK8 Education Session Part 5 | Class |
| Barragan,Leslie | 115240 | JFK8 Education Session Part 5 | Class |
| Redzovic,Esmina | 115240 | JFK8 Education Session Part 5 | Class |
| Florival,Melissa nehemie | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lalanne,Edwins | 115240 | JFK8 Education Session Part 5 | Class |
| Irving,Julius | 115240 | JFK8 Education Session Part 5 | Class |
| Vialva-Hackney,Schlayna | 115240 | JFK8 Education Session Part 5 | Class |
| Doumbia,Bazoumana | 115240 | JFK8 Education Session Part 5 | Class |
| Tredici,Jody | 115240 | JFK8 Education Session Part 5 | Class |
| encarnacion,rayson | 115240 | JFK8 Education Session Part 5 | Class |
| richards,essence | 115240 | JFK8 Education Session Part 5 | Class |
| Pol,Rob | 115240 | JFK8 Education Session Part 5 | Class |
| Galletta,Liesl | 115240 | JFK8 Education Session Part 5 | Class |
| Leman,Sumarni | 115240 | JFK8 Education Session Part 5 | Class |
| Osorio Alvarez,Edward | 115240 | JFK8 Education Session Part 5 | Class |
| St Louis,Brea | 115240 | JFK8 Education Session Part 5 | Class |
| Agbaje,Olufemi | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz,Angel | 115240 | JFK8 Education Session Part 5 | Class |
| Perera,Neville | 115240 | JFK8 Education Session Part 5 | Class |
| ESTIME,Romane | 115240 | JFK8 Education Session Part 5 | Class |
| Vasquezfelder,Angela | 115240 | JFK8 Education Session Part 5 | Class |
| Reid,Cathy | 115240 | JFK8 Education Session Part 5 | Class |
| Jenkins,Deborah | 115240 | JFK8 Education Session Part 5 | Class |
| bardales,lisbe | 115240 | JFK8 Education Session Part 5 | Class |
| Bello,Justen | 115240 | JFK8 Education Session Part 5 | Class |
| Zayas,Harry Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Olokunola,Ola | 115240 | JFK8 Education Session Part 5 | Class |
| Ravonita,Ipuk | 115240 | JFK8 Education Session Part 5 | Class |
| Avila,Alex | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Luis A | 115240 | JFK8 Education Session Part 5 | Class |
| Ellis,Shane | 115240 | JFK8 Education Session Part 5 | Class |
| Castro,Johnathan | 115240 | JFK8 Education Session Part 5 | Class |
| Irizarry,Marissa Lia | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Humberto | 115240 | JFK8 Education Session Part 5 | Class |
| Barnett,Sarah | 115240 | JFK8 Education Session Part 5 | Class |
| Samuel Jr,Boysing | 115240 | JFK8 Education Session Part 5 | Class |
| Gerges,Kareem | 115240 | JFK8 Education Session Part 5 | Class |
| Hamdan,Taha | 115240 | JFK8 Education Session Part 5 | Class |
| Fullerton,Nathanael | 115240 | JFK8 Education Session Part 5 | Class |
| Booker,Bristal | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz,Rel | 115240 | JFK8 Education Session Part 5 | Class |
| Findley,Shara S | 115240 | JFK8 Education Session Part 5 | Class |
| Nunez,Evan | 115240 | JFK8 Education Session Part 5 | Class |
| Mosley,Brianna | 115240 | JFK8 Education Session Part 5 | Class |
| rose,eddy | 115240 | JFK8 Education Session Part 5 | Class |
| Khan,Basit | 115240 | JFK8 Education Session Part 5 | Class |
| Slade,Tamika | 115240 | JFK8 Education Session Part 5 | Class |
| Tuttle,Carol A | 115240 | JFK8 Education Session Part 5 | Class |
| OYALAJA,ADEKUNLE ELIJAH | 115240 | JFK8 Education Session Part 5 | Class |
| Briggs,Tony | 115240 | JFK8 Education Session Part 5 | Class |
| Frasier,Glenda | 115240 | JFK8 Education Session Part 5 | Class |
| Burgos,Branden W | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Schatzle,Kaili | 115240 | JFK8 Education Session Part 5 | Class |
| P,Jerome | 115240 | JFK8 Education Session Part 5 | Class |
| Christian,Emily | 115240 | JFK8 Education Session Part 5 | Class |
| Richardson,Stephon | 115240 | JFK8 Education Session Part 5 | Class |
| De La Cruz,Ivan Alberto | 115240 | JFK8 Education Session Part 5 | Class |
| garcia filpo,ismaury d | 115240 | JFK8 Education Session Part 5 | Class |
| Cabral Reyes,Alicia | 115240 | JFK8 Education Session Part 5 | Class |
| Criollo,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Hussein,Noura | 115240 | JFK8 Education Session Part 5 | Class |
| Benavidez,Miguel | 115240 | JFK8 Education Session Part 5 | Class |
| Hassan,Belal | 115240 | JFK8 Education Session Part 5 | Class |
| Acevedo,Joshua Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Campbell,Tatyana | 115240 | JFK8 Education Session Part 5 | Class |
| Delicia-King,Sarah | 115240 | JFK8 Education Session Part 5 | Class |
| abdusi,herolina | 115240 | JFK8 Education Session Part 5 | Class |
| Muthana,Nader | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Darryl | 115240 | JFK8 Education Session Part 5 | Class |
| Musto,Peter | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Brendan | 115240 | JFK8 Education Session Part 5 | Class |
| Jean Toussaint,Friedler | 115240 | JFK8 Education Session Part 5 | Class |
| Rezil,Thaina | 115240 | JFK8 Education Session Part 5 | Class |
| Legrand,Shaneka M | 115240 | JFK8 Education Session Part 5 | Class |
| Stovall,Destiny | 115240 | JFK8 Education Session Part 5 | Class |
| Matthews,Diamond | 115240 | JFK8 Education Session Part 5 | Class |
| Gargiulo,Salvatore | 115240 | JFK8 Education Session Part 5 | Class |
| Price,Justin | 115240 | JFK8 Education Session Part 5 | Class |
| Kristiansen,Angelica | 115240 | JFK8 Education Session Part 5 | Class |
| Leonard,Christina | 115240 | JFK8 Education Session Part 5 | Class |
| Rouse,Tanisha | 115240 | JFK8 Education Session Part 5 | Class |
| Braithwaite,Imani Reed | 115240 | JFK8 Education Session Part 5 | Class |
| Aguirre,Noemi | 115240 | JFK8 Education Session Part 5 | Class |
| Diarrassouba,Djakaridja | 115240 | JFK8 Education Session Part 5 | Class |
| Martin,Ebony | 115240 | JFK8 Education Session Part 5 | Class |
| Cherry,Sarah | 115240 | JFK8 Education Session Part 5 | Class |
| Mitchell,Amaya | 115240 | JFK8 Education Session Part 5 | Class |
| Louissaint,Wanchelove | 115240 | JFK8 Education Session Part 5 | Class |
| Asiedu,Josephine | 115240 | JFK8 Education Session Part 5 | Class |
| Maldonado,Angelice | 115240 | JFK8 Education Session Part 5 | Class |
| Himm,Rachel A | 115240 | JFK8 Education Session Part 5 | Class |
| Laprea,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,khadija | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez Diaz,Janet | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Hardwick | 115240 | JFK8 Education Session Part 5 | Class |
| mutahar,khadejah | 115240 | JFK8 Education Session Part 5 | Class |
| Lerotholi,Bernadette | 115240 | JFK8 Education Session Part 5 | Class |
| Liqiania,Skye | 115240 | JFK8 Education Session Part 5 | Class |
| Shuffler,Sven Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Christie,Christopher | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Samuel,Selassie-Omar | 115240 | JFK8 Education Session Part 5 | Class |
| Mana,Yasmine | 115240 | JFK8 Education Session Part 5 | Class |
| Mana,Yasmine | 115240 | JFK8 Education Session Part 5 | Class |
| Cousins,Destiny | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| Buansi,Akwasi | 115240 | JFK8 Education Session Part 5 | Class |
| Taynys,Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Crespo,Manuela | 115240 | JFK8 Education Session Part 5 | Class |
| Estrada,Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Lugo,Jackie | 115240 | JFK8 Education Session Part 5 | Class |
| Hairston,Jonathan Wavy | 115240 | JFK8 Education Session Part 5 | Class |
| Rosales,Elga | 115240 | JFK8 Education Session Part 5 | Class |
| Henry,Christen | 115240 | JFK8 Education Session Part 5 | Class |
| Saunders,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Li,Tingfeng | 115240 | JFK8 Education Session Part 5 | Class |
| James,Gregory Oswald | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez de Guzman,Saira | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez de Guzman,Saira | 115240 | JFK8 Education Session Part 5 | Class |
| Ossman,Ahmed | 115240 | JFK8 Education Session Part 5 | Class |
| Abouhegab,Bryan | 115240 | JFK8 Education Session Part 5 | Class |
| Yan-Gianna,Vivian | 115240 | JFK8 Education Session Part 5 | Class |
| Peterson,Elisha | 115240 | JFK8 Education Session Part 5 | Class |
| verdiner,john | 115240 | JFK8 Education Session Part 5 | Class |
| Barragan,Jair | 115240 | JFK8 Education Session Part 5 | Class |
| Gaussaint,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Watley,Yakiva | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Estella F | 115240 | JFK8 Education Session Part 5 | Class |
| Lloyd,Ruebena | 115240 | JFK8 Education Session Part 5 | Class |
| Novoa,Charlene | 115240 | JFK8 Education Session Part 5 | Class |
| Mendoza Cruz,Janet | 115240 | JFK8 Education Session Part 5 | Class |
| Pena Marte,Oscar Adolfo | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Davon | 115240 | JFK8 Education Session Part 5 | Class |
| Nieves,Tiffany | 115240 | JFK8 Education Session Part 5 | Class |
| Nieves,Tiffany | 115240 | JFK8 Education Session Part 5 | Class |
| Razk,Osama | 115240 | JFK8 Education Session Part 5 | Class |
| Rasathurai,Sugathas | 115240 | JFK8 Education Session Part 5 | Class |
| YE,JIEYI | 115240 | JFK8 Education Session Part 5 | Class |
| Cohen,Matt | 115240 | JFK8 Education Session Part 5 | Class |
| Ferreira,Margarita | 115240 | JFK8 Education Session Part 5 | Class |
| cupul,natalia e | 115240 | JFK8 Education Session Part 5 | Class |
| Nash,Lucille | 115240 | JFK8 Education Session Part 5 | Class |
| Olaleye,Monijesu | 115240 | JFK8 Education Session Part 5 | Class |
| DOMINGUEZ MENDOZA,ISMAEL | 115240 | JFK8 Education Session Part 5 | Class |
| Racanello,Sirisak | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Carmen | 115240 | JFK8 Education Session Part 5 | Class |
| Lugo,Carlos | 115240 | JFK8 Education Session Part 5 | Class |
| Ortega,Evelin | 115240 | JFK8 Education Session Part 5 | Class |
| Brar,Ilene | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Roberts,Jordan Devon | 115240 | JFK8 Education Session Part 5 | Class |
| Eloiymania,Megie | 115240 | JFK8 Education Session Part 5 | Class |
| Costello,Tim | 115240 | JFK8 Education Session Part 5 | Class |
| Lara Montalvo,Sonia | 115240 | JFK8 Education Session Part 5 | Class |
| Alcivar,Nydia Luisa | 115240 | JFK8 Education Session Part 5 | Class |
| Mcclinton,Cia | 115240 | JFK8 Education Session Part 5 | Class |
| Comeforo,Joseph D | 115240 | JFK8 Education Session Part 5 | Class |
| BONOLA RIVERA,VERONICA | 115240 | JFK8 Education Session Part 5 | Class |
| Farina,Jennifer | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzales,Mae | 115240 | JFK8 Education Session Part 5 | Class |
| Francis,Jocelyn | 115240 | JFK8 Education Session Part 5 | Class |
| Frederick,Sylvie | 115240 | JFK8 Education Session Part 5 | Class |
| Jasper,Rodwayne | 115240 | JFK8 Education Session Part 5 | Class |
| Nicholson,Paris | 115240 | JFK8 Education Session Part 5 | Class |
| Cashie,Gino | 115240 | JFK8 Education Session Part 5 | Class |
| Dickerson,Gregory A | 115240 | JFK8 Education Session Part 5 | Class |
| Hassan,Mona AbdElzaher | 115240 | JFK8 Education Session Part 5 | Class |
| Rafiq,Afan | 115240 | JFK8 Education Session Part 5 | Class |
| Delancy,Kymmyka | 115240 | JFK8 Education Session Part 5 | Class |
| Bartholomew,Akeem | 115240 | JFK8 Education Session Part 5 | Class |
| Engebretsen,Rhiannon | 115240 | JFK8 Education Session Part 5 | Class |
| Benjamin,Damara | 115240 | JFK8 Education Session Part 5 | Class |
| Cambrelen,Amanda | 115240 | JFK8 Education Session Part 5 | Class |
| Khamis,Mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Jules,Jamie J | 115240 | JFK8 Education Session Part 5 | Class |
| Navarro,Snnyase Anaid | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Crystal Lee-Ann | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Pablo Luis | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Pablo Luis | 115240 | JFK8 Education Session Part 5 | Class |
| Albasir,Yousef | 115240 | JFK8 Education Session Part 5 | Class |
| Albasir,Yousef | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Jefferson,Shawn | 115240 | JFK8 Education Session Part 5 | Class |
| Fowler,Shawnetta | 115240 | JFK8 Education Session Part 5 | Class |
| Laona,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Ginzburg,Maxim | 115240 | JFK8 Education Session Part 5 | Class |
| Orellana,Marissa | 115240 | JFK8 Education Session Part 5 | Class |
| Valdes Jimenez,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Reggie | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Aaliyah | 115240 | JFK8 Education Session Part 5 | Class |
| Held,Cori | 115240 | JFK8 Education Session Part 5 | Class |
| Titus,Sondra J | 115240 | JFK8 Education Session Part 5 | Class |
| Sillah,Fatouma | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Tavejsha | 115240 | JFK8 Education Session Part 5 | Class |
| Martin,Diamond | 115240 | JFK8 Education Session Part 5 | Class |
| Fortuna,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Nava,Angelo | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| George,Reba | 115240 | JFK8 Education Session Part 5 | Class |
| Ramsey,Richard Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Worme,terrell | 115240 | JFK8 Education Session Part 5 | Class |
| Patton-Villanueva,Yalicia Solei | 115240 | JFK8 Education Session Part 5 | Class |
| Kalo,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Genery,Mary Jo Ann | 115240 | JFK8 Education Session Part 5 | Class |
| Di Stefano,John C | 115240 | JFK8 Education Session Part 5 | Class |
| Jocelin,Leger | 115240 | JFK8 Education Session Part 5 | Class |
| Paloli,Gary | 115240 | JFK8 Education Session Part 5 | Class |
| Nelson,Ryan | 115240 | JFK8 Education Session Part 5 | Class |
| Wassif,Jessica | 115240 | JFK8 Education Session Part 5 | Class |
| Lugo,Linda | 115240 | JFK8 Education Session Part 5 | Class |
| ogunweolu,olumide | 115240 | JFK8 Education Session Part 5 | Class |
| YUNUSAH,BALIKISU | 115240 | JFK8 Education Session Part 5 | Class |
| Ramirez,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Acevedo,Virginia R | 115240 | JFK8 Education Session Part 5 | Class |
| Landestoy Mora,Socrates | 115240 | JFK8 Education Session Part 5 | Class |
| Hamlett,Keon | 115240 | JFK8 Education Session Part 5 | Class |
| Walker,Trish | 115240 | JFK8 Education Session Part 5 | Class |
| Vanholt,Darius | 115240 | JFK8 Education Session Part 5 | Class |
| Miller,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Husain,Tahir | 115240 | JFK8 Education Session Part 5 | Class |
| Kittel,Jake | 115240 | JFK8 Education Session Part 5 | Class |
| Kittel,Jake | 115240 | JFK8 Education Session Part 5 | Class |
| Kittel,Jake | 115240 | JFK8 Education Session Part 5 | Class |
| Menequin,Danny | 115240 | JFK8 Education Session Part 5 | Class |
| Alonso,Noel | 115240 | JFK8 Education Session Part 5 | Class |
| Redman,Valerie | 115240 | JFK8 Education Session Part 5 | Class |
| TORRES,MIRTA | 115240 | JFK8 Education Session Part 5 | Class |
| Burrja,Jurzan | 115240 | JFK8 Education Session Part 5 | Class |
| Perard,Stanley | 115240 | JFK8 Education Session Part 5 | Class |
| Arnaud,Felix | 115240 | JFK8 Education Session Part 5 | Class |
| Paul,Nathalie | 115240 | JFK8 Education Session Part 5 | Class |
| Wann,Hadiatou | 115240 | JFK8 Education Session Part 5 | Class |
| Cain,George | 115240 | JFK8 Education Session Part 5 | Class |
| Benvenuto lazurtegui,Beatriz | 115240 | JFK8 Education Session Part 5 | Class |
| Chen,Huanhua | 115240 | JFK8 Education Session Part 5 | Class |
| hall,Nicholas | 115240 | JFK8 Education Session Part 5 | Class |
| White,Zachary | 115240 | JFK8 Education Session Part 5 | Class |
| kamran,syed M | 115240 | JFK8 Education Session Part 5 | Class |
| joseph,keion | 115240 | JFK8 Education Session Part 5 | Class |
| Marcano,Carina | 115240 | JFK8 Education Session Part 5 | Class |
| Au,Kai Ho | 115240 | JFK8 Education Session Part 5 | Class |
| Melvin,Tasha | 115240 | JFK8 Education Session Part 5 | Class |
| McCain,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| west,jason | 115240 | JFK8 Education Session Part 5 | Class |
| west,jason | 115240 | JFK8 Education Session Part 5 | Class |
| Leggett,Jared | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| ADOLPHE,WILBERT | 115240 | JFK8 Education Session Part 5 | Class |
| Hoggin,Alba | 115240 | JFK8 Education Session Part 5 | Class |
| Hoggin,Alba | 115240 | JFK8 Education Session Part 5 | Class |
| Patterson,Teresa | 115240 | JFK8 Education Session Part 5 | Class |
| Guzman,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz,Chantal | 115240 | JFK8 Education Session Part 5 | Class |
| Yang,Andrew K | 115240 | JFK8 Education Session Part 5 | Class |
| Tommasi,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Cortez,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,miracle | 115240 | JFK8 Education Session Part 5 | Class |
| MacDonald,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Ambroise,Coucheny | 115240 | JFK8 Education Session Part 5 | Class |
| Nettles,Lorando | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Faheem | 115240 | JFK8 Education Session Part 5 | Class |
| Munasinghe,Nethmi | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz,Sofia | 115240 | JFK8 Education Session Part 5 | Class |
| Farrell,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Nina | 115240 | JFK8 Education Session Part 5 | Class |
| Harrison,Christon | 115240 | JFK8 Education Session Part 5 | Class |
| Roperos,Jennifer | 115240 | JFK8 Education Session Part 5 | Class |
| sanchez,john | 115240 | JFK8 Education Session Part 5 | Class |
| Werts,Renee | 115240 | JFK8 Education Session Part 5 | Class |
| Campbell,Armani | 115240 | JFK8 Education Session Part 5 | Class |
| Llaque,Israel | 115240 | JFK8 Education Session Part 5 | Class |
| Siafa,Abraham | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Dennis | 115240 | JFK8 Education Session Part 5 | Class |
| Duvert,Proslyn Chris | 115240 | JFK8 Education Session Part 5 | Class |
| Kippings,Ricardo C | 115240 | JFK8 Education Session Part 5 | Class |
| Davis,Kian | 115240 | JFK8 Education Session Part 5 | Class |
| Urgiles,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Sarveswaran,Archakan | 115240 | JFK8 Education Session Part 5 | Class |
| Cox,Shernell | 115240 | JFK8 Education Session Part 5 | Class |
| Mehany,Shenoda | 115240 | JFK8 Education Session Part 5 | Class |
| Santana Santos,Andry | 115240 | JFK8 Education Session Part 5 | Class |
| Gregory,Shaniece | 115240 | JFK8 Education Session Part 5 | Class |
| Henao Duque,Soranny Andrea | 115240 | JFK8 Education Session Part 5 | Class |
| Wilson,Shakima | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Alberto | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Dayse | 115240 | JFK8 Education Session Part 5 | Class |
| ruci,ibrahim | 115240 | JFK8 Education Session Part 5 | Class |
| Fratta,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| jeffreys,Lakei | 115240 | JFK8 Education Session Part 5 | Class |
| Miller,Dwayne | 115240 | JFK8 Education Session Part 5 | Class |
| Emm,Luci | 115240 | JFK8 Education Session Part 5 | Class |
| Rosado,Joshua | 115240 | JFK8 Education Session Part 5 | Class |
| GLOVER,TAJH | 115240 | JFK8 Education Session Part 5 | Class |
| Aloysius,Celine | 115240 | JFK8 Education Session Part 5 | Class |
| Hutchinson,Joeann | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Torres,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Torres,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Brooks owen,Patricia | 115240 | JFK8 Education Session Part 5 | Class |
| Malcolm,Dwaine | 115240 | JFK8 Education Session Part 5 | Class |
| Sholaja,OLUWADAMILOLA Oluwaseun | 115240 | JFK8 Education Session Part 5 | Class |
| Licaj,Kastriot | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Rosa | 115240 | JFK8 Education Session Part 5 | Class |
| Agius,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Henriquez De Crooke,Maria Altagracia | 115240 | JFK8 Education Session Part 5 | Class |
| Chan,peggy | 115240 | JFK8 Education Session Part 5 | Class |
| Almazo,Fernando | 115240 | JFK8 Education Session Part 5 | Class |
| WoolfordDrakes,Danielle | 115240 | JFK8 Education Session Part 5 | Class |
| Ramos,Ivan | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,Juan | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,Juan | 115240 | JFK8 Education Session Part 5 | Class |
| Chango,Bryan | 115240 | JFK8 Education Session Part 5 | Class |
| Ebigbo,Emeka S | 115240 | JFK8 Education Session Part 5 | Class |
| Cantave,Marshall | 115240 | JFK8 Education Session Part 5 | Class |
| Fonseca,Steven Alonso | 115240 | JFK8 Education Session Part 5 | Class |
| Sunair,Amna | 115240 | JFK8 Education Session Part 5 | Class |
| Alsmadi,Mustafa | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez,Nancy | 115240 | JFK8 Education Session Part 5 | Class |
| Sanders,Nehemiah | 115240 | JFK8 Education Session Part 5 | Class |
| Tillman,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Abdul-Mateen,Bryanna Courtney | 115240 | JFK8 Education Session Part 5 | Class |
| mason,rondu | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Jerwayne | 115240 | JFK8 Education Session Part 5 | Class |
| Olmos,Evelio | 115240 | JFK8 Education Session Part 5 | Class |
| Shearin,Jaylee Marie | 115240 | JFK8 Education Session Part 5 | Class |
| Louis,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Mendoza,Cassio | 115240 | JFK8 Education Session Part 5 | Class |
| Hemmingstad,Charles | 115240 | JFK8 Education Session Part 5 | Class |
| Cotto,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Velandres,Louis eros | 115240 | JFK8 Education Session Part 5 | Class |
| Castillo,Jesus | 115240 | JFK8 Education Session Part 5 | Class |
| Capestany,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Falik,Aza | 115240 | JFK8 Education Session Part 5 | Class |
| Paz Lara,Dulce Paz Lara | 115240 | JFK8 Education Session Part 5 | Class |
| Walker,Myron | 115240 | JFK8 Education Session Part 5 | Class |
| Matthew,Jacklyn | 115240 | JFK8 Education Session Part 5 | Class |
| Satchell,Kiyarra | 115240 | JFK8 Education Session Part 5 | Class |
| Sadou,Farid | 115240 | JFK8 Education Session Part 5 | Class |
| Zahid,Nabeela | 115240 | JFK8 Education Session Part 5 | Class |
| GriggsHorlback,Ayanna | 115240 | JFK8 Education Session Part 5 | Class |
| Padmore,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Paulin,Nadege | 115240 | JFK8 Education Session Part 5 | Class |
| Boukhssibi,Rachid | 115240 | JFK8 Education Session Part 5 | Class |
| Douglas,Brian | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Riddick,Ethan | 115240 | JFK8 Education Session Part 5 | Class |
| Perez Justo,Chelsea | 115240 | JFK8 Education Session Part 5 | Class |
| Wells,Derek L | 115240 | JFK8 Education Session Part 5 | Class |
| Della Rocca,Salvatore | 115240 | JFK8 Education Session Part 5 | Class |
| Abualainain,Ahmed O | 115240 | JFK8 Education Session Part 5 | Class |
| Roseboro,Lindasia | 115240 | JFK8 Education Session Part 5 | Class |
| Papalotzi,Edwin | 115240 | JFK8 Education Session Part 5 | Class |
| Meza,Nestor | 115240 | JFK8 Education Session Part 5 | Class |
| Kaur,Amandeep | 115240 | JFK8 Education Session Part 5 | Class |
| hickey,matthew p | 115240 | JFK8 Education Session Part 5 | Class |
| hickey,matthew p | 115240 | JFK8 Education Session Part 5 | Class |
| Scarlett,Errol | 115240 | JFK8 Education Session Part 5 | Class |
| Sloan,Dominique | 115240 | JFK8 Education Session Part 5 | Class |
| Morton,Aaron | 115240 | JFK8 Education Session Part 5 | Class |
| Acosta II,Angelo | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Alexis | 115240 | JFK8 Education Session Part 5 | Class |
| blume,natasha | 115240 | JFK8 Education Session Part 5 | Class |
| Pineda,Georgina | 115240 | JFK8 Education Session Part 5 | Class |
| Ortega,Azhantae | 115240 | JFK8 Education Session Part 5 | Class |
| Fernando,Kumarawatthage Dinali | 115240 | JFK8 Education Session Part 5 | Class |
| Geara,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Pruitt,Allen | 115240 | JFK8 Education Session Part 5 | Class |
| Oneill,margaret | 115240 | JFK8 Education Session Part 5 | Class |
| Thompson,Yessenia P | 115240 | JFK8 Education Session Part 5 | Class |
| baez,carmen | 115240 | JFK8 Education Session Part 5 | Class |
| Sam,John | 115240 | JFK8 Education Session Part 5 | Class |
| Bonilla,Johnny Fidel | 115240 | JFK8 Education Session Part 5 | Class |
| perillo,bailey | 115240 | JFK8 Education Session Part 5 | Class |
| Chavry,jefferson | 115240 | JFK8 Education Session Part 5 | Class |
| DAZA,ADRIANIS EDUARDO | 115240 | JFK8 Education Session Part 5 | Class |
| Khan,Rashed | 115240 | JFK8 Education Session Part 5 | Class |
| StJulien,Makendie | 115240 | JFK8 Education Session Part 5 | Class |
| lopez-salcido,Vanessa | 115240 | JFK8 Education Session Part 5 | Class |
| Rosado,Zacariah Manuel | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz,Eli S | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Douglas | 115240 | JFK8 Education Session Part 5 | Class |
| HE,SiYan | 115240 | JFK8 Education Session Part 5 | Class |
| Cross,Andre | 115240 | JFK8 Education Session Part 5 | Class |
| Moreno,Kerlin | 115240 | JFK8 Education Session Part 5 | Class |
| Henderson,Jazaih | 115240 | JFK8 Education Session Part 5 | Class |
| Adade,Solomon | 115240 | JFK8 Education Session Part 5 | Class |
| Maduba,Nonso | 115240 | JFK8 Education Session Part 5 | Class |
| plasencia,marita | 115240 | JFK8 Education Session Part 5 | Class |
| Glover,Tanya A | 115240 | JFK8 Education Session Part 5 | Class |
| Tolentino,Noel Gabriel | 115240 | JFK8 Education Session Part 5 | Class |
| Asiedu,ivy | 115240 | JFK8 Education Session Part 5 | Class |
| Owusu afriyie,Phillip | 115240 | JFK8 Education Session Part 5 | Class |
| Coulibaly,Kadiatou | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Cabrera Martinez,Jenifer | 115240 | JFK8 Education Session Part 5 | Class |
| Dominguez,Sundjata | 115240 | JFK8 Education Session Part 5 | Class |
| Salley,Moneka | 115240 | JFK8 Education Session Part 5 | Class |
| Harris,Q | 115240 | JFK8 Education Session Part 5 | Class |
| tapper,anthony | 115240 | JFK8 Education Session Part 5 | Class |
| tapper,anthony | 115240 | JFK8 Education Session Part 5 | Class |
| tapper,anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Matzel,Karen | 115240 | JFK8 Education Session Part 5 | Class |
| Marinelli,Stephen | 115240 | JFK8 Education Session Part 5 | Class |
| Marinelli,Stephen | 115240 | JFK8 Education Session Part 5 | Class |
| McBride,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| McKenzie,Tamara | 115240 | JFK8 Education Session Part 5 | Class |
| Altreche,Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| guaman,Evelyn | 115240 | JFK8 Education Session Part 5 | Class |
| Delia,Katie | 115240 | JFK8 Education Session Part 5 | Class |
| Delia,Katie | 115240 | JFK8 Education Session Part 5 | Class |
| Vargas,Clarybel | 115240 | JFK8 Education Session Part 5 | Class |
| Castillo,Abadesa L | 115240 | JFK8 Education Session Part 5 | Class |
| Villegas,Jesus | 115240 | JFK8 Education Session Part 5 | Class |
| Torres,Viktoria | 115240 | JFK8 Education Session Part 5 | Class |
| waldo,janeice | 115240 | JFK8 Education Session Part 5 | Class |
| waldo,janeice | 115240 | JFK8 Education Session Part 5 | Class |
| Li,Michael Shun Cheung | 115240 | JFK8 Education Session Part 5 | Class |
| Dyall,Amma Akua | 115240 | JFK8 Education Session Part 5 | Class |
| Salerno,Caterina | 115240 | JFK8 Education Session Part 5 | Class |
| Chamorro,Sergio D | 115240 | JFK8 Education Session Part 5 | Class |
| Perdikologos,Irene | 115240 | JFK8 Education Session Part 5 | Class |
| Telford,Zola | 115240 | JFK8 Education Session Part 5 | Class |
| Koulta,Hany | 115240 | JFK8 Education Session Part 5 | Class |
| Hussain,Zafran | 115240 | JFK8 Education Session Part 5 | Class |
| Middleton,Dietra | 115240 | JFK8 Education Session Part 5 | Class |
| Adeyemo,Adebayo | 115240 | JFK8 Education Session Part 5 | Class |
| Adeyemo,Adebayo | 115240 | JFK8 Education Session Part 5 | Class |
| Walker,Corine | 115240 | JFK8 Education Session Part 5 | Class |
| Walker,Corine | 115240 | JFK8 Education Session Part 5 | Class |
| Taiwo,Eziaku  Stella | 115240 | JFK8 Education Session Part 5 | Class |
| Acevedo,Bianey | 115240 | JFK8 Education Session Part 5 | Class |
| Finkler,Dimitri | 115240 | JFK8 Education Session Part 5 | Class |
| Ramirez,Maria Mercedes | 115240 | JFK8 Education Session Part 5 | Class |
| Meza,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Camejo-Coello,Liem | 115240 | JFK8 Education Session Part 5 | Class |
| Simmons,Khalique | 115240 | JFK8 Education Session Part 5 | Class |
| tavadze,lasha | 115240 | JFK8 Education Session Part 5 | Class |
| Espinozaguevara,Marissa Tania | 115240 | JFK8 Education Session Part 5 | Class |
| abdelaal,laila | 115240 | JFK8 Education Session Part 5 | Class |
| Marcus,Tre | 115240 | JFK8 Education Session Part 5 | Class |
| Carrasquillo,Leslie | 115240 | JFK8 Education Session Part 5 | Class |
| Carrasquillo,Leslie | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Awopeju,Esther | 115240 | JFK8 Education Session Part 5 | Class |
| Askandar,Mounir | 115240 | JFK8 Education Session Part 5 | Class |
| Wuttke,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Rattler,Tireek | 115240 | JFK8 Education Session Part 5 | Class |
| Quinones,Edgar | 115240 | JFK8 Education Session Part 5 | Class |
| IVANITSKIY,Aleksey | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Jalani | 115240 | JFK8 Education Session Part 5 | Class |
| Charles,Marsha Kim | 115240 | JFK8 Education Session Part 5 | Class |
| Vera,Jaime | 115240 | JFK8 Education Session Part 5 | Class |
| Hass,Elida | 115240 | JFK8 Education Session Part 5 | Class |
| Varela,Jonathan Luis | 115240 | JFK8 Education Session Part 5 | Class |
| Latif,Haroon | 115240 | JFK8 Education Session Part 5 | Class |
| Campbell,Tira Daisy | 115240 | JFK8 Education Session Part 5 | Class |
| Mejia,Jesus | 115240 | JFK8 Education Session Part 5 | Class |
| McDonald,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Andy | 115240 | JFK8 Education Session Part 5 | Class |
| Cabrera,Juan Evangelista | 115240 | JFK8 Education Session Part 5 | Class |
| Kamdem,Ivan Doris | 115240 | JFK8 Education Session Part 5 | Class |
| Mohamed,Saleem | 115240 | JFK8 Education Session Part 5 | Class |
| Mohamed,Saleem | 115240 | JFK8 Education Session Part 5 | Class |
| Jerome,Jabari | 115240 | JFK8 Education Session Part 5 | Class |
| Bellamy,Seaden | 115240 | JFK8 Education Session Part 5 | Class |
| Burns,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Glenn,David | 115240 | JFK8 Education Session Part 5 | Class |
| Omole,Olajumoke E | 115240 | JFK8 Education Session Part 5 | Class |
| Antenor,Rose | 115240 | JFK8 Education Session Part 5 | Class |
| Soriano,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Soriano,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Iacono,Tom | 115240 | JFK8 Education Session Part 5 | Class |
| Soucy,Janelly | 115240 | JFK8 Education Session Part 5 | Class |
| Witzleb,Gerhard | 115240 | JFK8 Education Session Part 5 | Class |
| Aguirre,Tina | 115240 | JFK8 Education Session Part 5 | Class |
| Ahmed,Daniyal | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Jane Evelyn | 115240 | JFK8 Education Session Part 5 | Class |
| Zheng,David | 115240 | JFK8 Education Session Part 5 | Class |
| Watts,Zachary S | 115240 | JFK8 Education Session Part 5 | Class |
| Palafox,johana | 115240 | JFK8 Education Session Part 5 | Class |
| Palafox,johana | 115240 | JFK8 Education Session Part 5 | Class |
| Terry,William | 115240 | JFK8 Education Session Part 5 | Class |
| Yens,Samuel | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Bowie,Nakia | 115240 | JFK8 Education Session Part 5 | Class |
| Kozak,Alex | 115240 | JFK8 Education Session Part 5 | Class |
| M,Phillip | 115240 | JFK8 Education Session Part 5 | Class |
| Nazario Correa,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Herman,Tara | 115240 | JFK8 Education Session Part 5 | Class |
| Owens,Raven | 115240 | JFK8 Education Session Part 5 | Class |
| Santos,George | 115240 | JFK8 Education Session Part 5 | Class |

Amazon_000477

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Russell,Rhenardo | 115240 | JFK8 Education Session Part 5 | Class |
| Barrios,Bryan | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Carolina | 115240 | JFK8 Education Session Part 5 | Class |
| Solari,Eddy J | 115240 | JFK8 Education Session Part 5 | Class |
| LYRON,JOANE | 115240 | JFK8 Education Session Part 5 | Class |
| LYRON,JOANE | 115240 | JFK8 Education Session Part 5 | Class |
| harrison,diamond Erika | 115240 | JFK8 Education Session Part 5 | Class |
| Wiscovitch,Elias Ailee | 115240 | JFK8 Education Session Part 5 | Class |
| Olejarz,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Bondswell,Rose-Marie | 115240 | JFK8 Education Session Part 5 | Class |
| Lugo,Emanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Maurice,Nathan | 115240 | JFK8 Education Session Part 5 | Class |
| Rodney,Shermaine Damelea | 115240 | JFK8 Education Session Part 5 | Class |
| Jacona,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Haywood,Gairy | 115240 | JFK8 Education Session Part 5 | Class |
| Minteh,Basiru | 115240 | JFK8 Education Session Part 5 | Class |
| X Carrera,Brandon | 115240 | JFK8 Education Session Part 5 | Class |
| B,Taleah | 115240 | JFK8 Education Session Part 5 | Class |
| Bourne,Eric Samuel | 115240 | JFK8 Education Session Part 5 | Class |
| Slizewski,Kenneth | 115240 | JFK8 Education Session Part 5 | Class |
| Rowe,Veronica | 115240 | JFK8 Education Session Part 5 | Class |
| Wong,Benny | 115240 | JFK8 Education Session Part 5 | Class |
| Rezeak,William | 115240 | JFK8 Education Session Part 5 | Class |
| Narducci,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Jakoupe,Mamdouh | 115240 | JFK8 Education Session Part 5 | Class |
| Olivier,Edwige | 115240 | JFK8 Education Session Part 5 | Class |
| Sargeant,Ronald | 115240 | JFK8 Education Session Part 5 | Class |
| Sargeant,Ronald | 115240 | JFK8 Education Session Part 5 | Class |
| Petrik,Amanda | 115240 | JFK8 Education Session Part 5 | Class |
| Wright,Camesha | 115240 | JFK8 Education Session Part 5 | Class |
| Zhang,Tim | 115240 | JFK8 Education Session Part 5 | Class |
| Papsodero,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Shannon Sheree | 115240 | JFK8 Education Session Part 5 | Class |
| Valdez,David | 115240 | JFK8 Education Session Part 5 | Class |
| King,Daryl | 115240 | JFK8 Education Session Part 5 | Class |
| machuca,jose o | 115240 | JFK8 Education Session Part 5 | Class |
| machuca,jose o | 115240 | JFK8 Education Session Part 5 | Class |
| machuca,jose o | 115240 | JFK8 Education Session Part 5 | Class |
| Maza,Keyla | 115240 | JFK8 Education Session Part 5 | Class |
| Brooks,Jordan Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Cole,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Sandy Edmonia | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz de Romero,Elsy | 115240 | JFK8 Education Session Part 5 | Class |
| Hall-Hamilton,Andrea | 115240 | JFK8 Education Session Part 5 | Class |
| Akinsanya,Ariyana | 115240 | JFK8 Education Session Part 5 | Class |
| Fisher,Jada | 115240 | JFK8 Education Session Part 5 | Class |
| Conteh,Mahamadou | 115240 | JFK8 Education Session Part 5 | Class |
| Soneda,Junko | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Johnson,Kevin Winston | 115240 | JFK8 Education Session Part 5 | Class |
| Tuffuor,Erica Nana | 115240 | JFK8 Education Session Part 5 | Class |
| Glenn,Tim | 115240 | JFK8 Education Session Part 5 | Class |
| Moore,Marcus | 115240 | JFK8 Education Session Part 5 | Class |
| Lazenby,Tushawn | 115240 | JFK8 Education Session Part 5 | Class |
| Bardales,Miriam Dessire | 115240 | JFK8 Education Session Part 5 | Class |
| Marini,Cory | 115240 | JFK8 Education Session Part 5 | Class |
| King,Roaul Theo | 115240 | JFK8 Education Session Part 5 | Class |
| Providence,Herbert Randolph | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Harry | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Harry | 115240 | JFK8 Education Session Part 5 | Class |
| Ellis,Siearra | 115240 | JFK8 Education Session Part 5 | Class |
| Claudio,Derrick | 115240 | JFK8 Education Session Part 5 | Class |
| DelRosario,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Duncan,Barbara | 115240 | JFK8 Education Session Part 5 | Class |
| Pina,Juan Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Medina,Sandra | 115240 | JFK8 Education Session Part 5 | Class |
| Mulaja,Alexandre | 115240 | JFK8 Education Session Part 5 | Class |
| Mahagama Ralalage,Rajitha | 115240 | JFK8 Education Session Part 5 | Class |
| Henry,Tatyanna | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Rob | 115240 | JFK8 Education Session Part 5 | Class |
| Soratos,Mary Jane | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes Flores,Adianid m | 115240 | JFK8 Education Session Part 5 | Class |
| NWAYOR,BLESSING UCHE | 115240 | JFK8 Education Session Part 5 | Class |
| NWAYOR,BLESSING UCHE | 115240 | JFK8 Education Session Part 5 | Class |
| safarov,timur | 115240 | JFK8 Education Session Part 5 | Class |
| Macarthy,Willie | 115240 | JFK8 Education Session Part 5 | Class |
| Cisneros,Henry | 115240 | JFK8 Education Session Part 5 | Class |
| Rowland,Rell | 115240 | JFK8 Education Session Part 5 | Class |
| Otuyelu,Ayomide | 115240 | JFK8 Education Session Part 5 | Class |
| Baptiste smith,Gesselle | 115240 | JFK8 Education Session Part 5 | Class |
| Mondo,Ricky Artavious | 115240 | JFK8 Education Session Part 5 | Class |
| Mondo,Ricky Artavious | 115240 | JFK8 Education Session Part 5 | Class |
| Mondo,Ricky Artavious | 115240 | JFK8 Education Session Part 5 | Class |
| Miele,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Demadet,Naquan | 115240 | JFK8 Education Session Part 5 | Class |
| Landrum,Amyah | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Leasia | 115240 | JFK8 Education Session Part 5 | Class |
| MONTI,RAFI | 115240 | JFK8 Education Session Part 5 | Class |
| Zheng,Eric | 115240 | JFK8 Education Session Part 5 | Class |
| Rigor,Virgil Doma | 115240 | JFK8 Education Session Part 5 | Class |
| Rigor,Virgil Doma | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz Rico,Janeth C | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz Rico,Janeth C | 115240 | JFK8 Education Session Part 5 | Class |
| Lindell,Tyler | 115240 | JFK8 Education Session Part 5 | Class |
| Peters,Kesha Ovada | 115240 | JFK8 Education Session Part 5 | Class |
| Littman,Mychael L | 115240 | JFK8 Education Session Part 5 | Class |
| Villegas,Maria | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Howard,Kendale | 115240 | JFK8 Education Session Part 5 | Class |
| Getman,Art | 115240 | JFK8 Education Session Part 5 | Class |
| Scott Coleman,Jasmine J | 115240 | JFK8 Education Session Part 5 | Class |
| Whitehurst,Enijah Danisha | 115240 | JFK8 Education Session Part 5 | Class |
| Suarez,Ariana | 115240 | JFK8 Education Session Part 5 | Class |
| Santana,Nico Samuel | 115240 | JFK8 Education Session Part 5 | Class |
| Santana,Nico Samuel | 115240 | JFK8 Education Session Part 5 | Class |
| Noel,Tessage | 115240 | JFK8 Education Session Part 5 | Class |
| Vega Avila,Maria Narcisa | 115240 | JFK8 Education Session Part 5 | Class |
| Peterson,Charles | 115240 | JFK8 Education Session Part 5 | Class |
| Niang,Seydu | 115240 | JFK8 Education Session Part 5 | Class |
| Isler,Linda Rose | 115240 | JFK8 Education Session Part 5 | Class |
| velasco,reyna | 115240 | JFK8 Education Session Part 5 | Class |
| Senadi Pathirannahelage,Janith Rukshan | 115240 | JFK8 Education Session Part 5 | Class |
| Ajala,Serah Serah | 115240 | JFK8 Education Session Part 5 | Class |
| Elsaadany,Gamaleldin | 115240 | JFK8 Education Session Part 5 | Class |
| Chase,Chase | 115240 | JFK8 Education Session Part 5 | Class |
| Bennett,Dashantea | 115240 | JFK8 Education Session Part 5 | Class |
| Dale,Natasha | 115240 | JFK8 Education Session Part 5 | Class |
| Orellana,Kevin l | 115240 | JFK8 Education Session Part 5 | Class |
| Overton,Constance | 115240 | JFK8 Education Session Part 5 | Class |
| Estevez Gonzalez,Juan Miguel | 115240 | JFK8 Education Session Part 5 | Class |
| Ouedraogo,Fabrice | 115240 | JFK8 Education Session Part 5 | Class |
| Joseph,Alphany Troi | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Malik Y | 115240 | JFK8 Education Session Part 5 | Class |
| Carregal,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Moore,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| grant,jada | 115240 | JFK8 Education Session Part 5 | Class |
| Braham,Delroy | 115240 | JFK8 Education Session Part 5 | Class |
| Cauldwell,Tarkysha Annette | 115240 | JFK8 Education Session Part 5 | Class |
| Forbes,Gentlefire | 115240 | JFK8 Education Session Part 5 | Class |
| Sidbury,Ravonie | 115240 | JFK8 Education Session Part 5 | Class |
| Chan,Tom | 115240 | JFK8 Education Session Part 5 | Class |
| Chan,Tom | 115240 | JFK8 Education Session Part 5 | Class |
| Diallo,Abdoulaye | 115240 | JFK8 Education Session Part 5 | Class |
| Velazquez,Erik | 115240 | JFK8 Education Session Part 5 | Class |
| Velazquez,Erik | 115240 | JFK8 Education Session Part 5 | Class |
| Haskins,Donnell Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Watson,Malcolm | 115240 | JFK8 Education Session Part 5 | Class |
| Ferrugiaro,Nicholas | 115240 | JFK8 Education Session Part 5 | Class |
| Hossain,Sultana | 115240 | JFK8 Education Session Part 5 | Class |
| Toledo,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Volmar,Raphael | 115240 | JFK8 Education Session Part 5 | Class |
| Adebisi,Adebanji | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Calvin Jordan | 115240 | JFK8 Education Session Part 5 | Class |
| DeJesus Jr,Roberto | 115240 | JFK8 Education Session Part 5 | Class |
| Latimore,Valencia | 115240 | JFK8 Education Session Part 5 | Class |
| simmons,phillip | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Johnson,Shakeema | 115240 | JFK8 Education Session Part 5 | Class |
| Nyima phuntsok,Fnu | 115240 | JFK8 Education Session Part 5 | Class |
| Sereno,Salvatore | 115240 | JFK8 Education Session Part 5 | Class |
| Maldonado,WILLIAM | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Jaquinn | 115240 | JFK8 Education Session Part 5 | Class |
| GUGLIADA,RICHARD | 115240 | JFK8 Education Session Part 5 | Class |
| Castellano,Thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Marke,Adrian | 115240 | JFK8 Education Session Part 5 | Class |
| Demirezen,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Kamel,Abram | 115240 | JFK8 Education Session Part 5 | Class |
| Kamel,Abram | 115240 | JFK8 Education Session Part 5 | Class |
| Kamel,Abram | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Roseanna | 115240 | JFK8 Education Session Part 5 | Class |
| Richards,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Vongnak,Pete | 115240 | JFK8 Education Session Part 5 | Class |
| Mack,Demani | 115240 | JFK8 Education Session Part 5 | Class |
| Guerrero,Kenneth | 115240 | JFK8 Education Session Part 5 | Class |
| lopez,jailene | 115240 | JFK8 Education Session Part 5 | Class |
| Cooper,TaKaiya | 115240 | JFK8 Education Session Part 5 | Class |
| Pluck,Shaquille | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Yahaira | 115240 | JFK8 Education Session Part 5 | Class |
| Lora Vargas,Lorna | 115240 | JFK8 Education Session Part 5 | Class |
| Lynch,Glennis | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez,Naydene | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez,Naydene | 115240 | JFK8 Education Session Part 5 | Class |
| Konate,Mamadou | 115240 | JFK8 Education Session Part 5 | Class |
| Joni,Shayed Ahmed | 115240 | JFK8 Education Session Part 5 | Class |
| Santa Ballesteros,Luisa | 115240 | JFK8 Education Session Part 5 | Class |
| Bassell,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Corona,Yoselin | 115240 | JFK8 Education Session Part 5 | Class |
| Marshall,Cordarell | 115240 | JFK8 Education Session Part 5 | Class |
| Wellington,Gary | 115240 | JFK8 Education Session Part 5 | Class |
| Jaco,Steven | 115240 | JFK8 Education Session Part 5 | Class |
| Gallo,Josh | 115240 | JFK8 Education Session Part 5 | Class |
| Taduran,Raymar | 115240 | JFK8 Education Session Part 5 | Class |
| Raymond,Steven | 115240 | JFK8 Education Session Part 5 | Class |
| Abdul,Hassan Y | 115240 | JFK8 Education Session Part 5 | Class |
| Obalawon,Oluwaseun | 115240 | JFK8 Education Session Part 5 | Class |
| Archer,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Mirza,Saif | 115240 | JFK8 Education Session Part 5 | Class |
| Gainey,Colbert | 115240 | JFK8 Education Session Part 5 | Class |
| Candela,Annette M | 115240 | JFK8 Education Session Part 5 | Class |
| Hall,Kalifa | 115240 | JFK8 Education Session Part 5 | Class |
| Cannon,Aimee | 115240 | JFK8 Education Session Part 5 | Class |
| Nunez Gonzales,Devora Estefania | 115240 | JFK8 Education Session Part 5 | Class |
| siad,mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Isel | 115240 | JFK8 Education Session Part 5 | Class |
| Hasnath,Abul | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Toppins,Sakinah | 115240 | JFK8 Education Session Part 5 | Class |
| Shehi,Erjon | 115240 | JFK8 Education Session Part 5 | Class |
| HowardIV,William | 115240 | JFK8 Education Session Part 5 | Class |
| Khoury,Mazen | 115240 | JFK8 Education Session Part 5 | Class |
| Capofarri,Nicholas | 115240 | JFK8 Education Session Part 5 | Class |
| Muthunamagonnage,Maxie | 115240 | JFK8 Education Session Part 5 | Class |
| Herrera,Marisol | 115240 | JFK8 Education Session Part 5 | Class |
| Shakeel,Arbab | 115240 | JFK8 Education Session Part 5 | Class |
| Caban,Darlene | 115240 | JFK8 Education Session Part 5 | Class |
| KIERNAN,JOHN J | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Andrew | 115240 | JFK8 Education Session Part 5 | Class |
| Clowery,Thomas F. | 115240 | JFK8 Education Session Part 5 | Class |
| Salazar,Odalys | 115240 | JFK8 Education Session Part 5 | Class |
| Salazar,Odalys | 115240 | JFK8 Education Session Part 5 | Class |
| Wong,Wilson | 115240 | JFK8 Education Session Part 5 | Class |
| Zubov,Sergei | 115240 | JFK8 Education Session Part 5 | Class |
| Gill,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Alyxandria | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Galdino | 115240 | JFK8 Education Session Part 5 | Class |
| Bickford,Edward | 115240 | JFK8 Education Session Part 5 | Class |
| Lesevic,Egzon | 115240 | JFK8 Education Session Part 5 | Class |
| McVey,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Gyamfi,Andriana Yakoba | 115240 | JFK8 Education Session Part 5 | Class |
| Gyamfi,Andriana Yakoba | 115240 | JFK8 Education Session Part 5 | Class |
| Gyamfi,Andriana Yakoba | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Shaniqua | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Shaniqua | 115240 | JFK8 Education Session Part 5 | Class |
| Abimbola,Abayomi Alawode | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Regina Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Burton,Sean | 115240 | JFK8 Education Session Part 5 | Class |
| Exantus,Kendler | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz,Angel | 115240 | JFK8 Education Session Part 5 | Class |
| Pannoh,Lucy | 115240 | JFK8 Education Session Part 5 | Class |
| Philippeaux,Kayla | 115240 | JFK8 Education Session Part 5 | Class |
| Ferguson,Victor | 115240 | JFK8 Education Session Part 5 | Class |
| Mashihi Mutondo,Mymy | 115240 | JFK8 Education Session Part 5 | Class |
| Lorenzo,Dionila | 115240 | JFK8 Education Session Part 5 | Class |
| 04,De Untouchable Jermain | 115240 | JFK8 Education Session Part 5 | Class |
| 04,De Untouchable Jermain | 115240 | JFK8 Education Session Part 5 | Class |
| Altime,Jackson | 115240 | JFK8 Education Session Part 5 | Class |
| jacob,adam j | 115240 | JFK8 Education Session Part 5 | Class |
| Stetson,Douglas | 115240 | JFK8 Education Session Part 5 | Class |
| Concepcion,Sherry | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Shareema | 115240 | JFK8 Education Session Part 5 | Class |
| Nunez,Jennifer | 115240 | JFK8 Education Session Part 5 | Class |
| Chen,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Rhall,Shawn | 115240 | JFK8 Education Session Part 5 | Class |
| Rhall,Shawn | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Bravo,Caitlin | 115240 | JFK8 Education Session Part 5 | Class |
| Bennett,M K | 115240 | JFK8 Education Session Part 5 | Class |
| Morris,Michael Joshua | 115240 | JFK8 Education Session Part 5 | Class |
| Reino Parra,Carmen Lucia | 115240 | JFK8 Education Session Part 5 | Class |
| Edwards,Shyan Rochell | 115240 | JFK8 Education Session Part 5 | Class |
| Pichardo,Edward | 115240 | JFK8 Education Session Part 5 | Class |
| Ray,Darnell | 115240 | JFK8 Education Session Part 5 | Class |
| Teozol,Luis | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz,Mario | 115240 | JFK8 Education Session Part 5 | Class |
| Lin,Johnny | 115240 | JFK8 Education Session Part 5 | Class |
| George,Dawn Peterson | 115240 | JFK8 Education Session Part 5 | Class |
| Kaldas,Rogeh | 115240 | JFK8 Education Session Part 5 | Class |
| Kaldas,Rogeh | 115240 | JFK8 Education Session Part 5 | Class |
| Duncan,Rebecca Amber | 115240 | JFK8 Education Session Part 5 | Class |
| Duncan,Rebecca Amber | 115240 | JFK8 Education Session Part 5 | Class |
| Currie,Monique | 115240 | JFK8 Education Session Part 5 | Class |
| Amzza,Abdoul Latiph C | 115240 | JFK8 Education Session Part 5 | Class |
| perez,alfred | 115240 | JFK8 Education Session Part 5 | Class |
| Manna Marakkalage,Sunilaka Dinushan Cooray | 115240 | JFK8 Education Session Part 5 | Class |
| THOMSON,MARYKUTTY | 115240 | JFK8 Education Session Part 5 | Class |
| Simon,Enisy | 115240 | JFK8 Education Session Part 5 | Class |
| Felder,Denise | 115240 | JFK8 Education Session Part 5 | Class |
| Serrano,Samantha | 115240 | JFK8 Education Session Part 5 | Class |
| D'Amico,Christy | 115240 | JFK8 Education Session Part 5 | Class |
| Sibri,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Platt,Michelle | 115240 | JFK8 Education Session Part 5 | Class |
| Echeverria,Carolan | 115240 | JFK8 Education Session Part 5 | Class |
| Taveras,Andres | 115240 | JFK8 Education Session Part 5 | Class |
| Taveras,Andres | 115240 | JFK8 Education Session Part 5 | Class |
| Benrhazi,Noamane | 115240 | JFK8 Education Session Part 5 | Class |
| Juarez Ramirez,Ernesto | 115240 | JFK8 Education Session Part 5 | Class |
| Lee Sang,Dane | 115240 | JFK8 Education Session Part 5 | Class |
| Dore,Don | 115240 | JFK8 Education Session Part 5 | Class |
| Noel,Myko | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Dion | 115240 | JFK8 Education Session Part 5 | Class |
| Bodenarain,Ryan | 115240 | JFK8 Education Session Part 5 | Class |
| Baarimah,Abdullah | 115240 | JFK8 Education Session Part 5 | Class |
| Fleurimond,Alexandra | 115240 | JFK8 Education Session Part 5 | Class |
| Rustem,Emser | 115240 | JFK8 Education Session Part 5 | Class |
| PERERA,PRIYAN Shanaka | 115240 | JFK8 Education Session Part 5 | Class |
| Jubran,Jaber | 115240 | JFK8 Education Session Part 5 | Class |
| Kimble,Anna | 115240 | JFK8 Education Session Part 5 | Class |
| Romero,Damian | 115240 | JFK8 Education Session Part 5 | Class |
| McDowell,Dia | 115240 | JFK8 Education Session Part 5 | Class |
| Kelly,Jamella Jewel | 115240 | JFK8 Education Session Part 5 | Class |
| Kelly,Jamella Jewel | 115240 | JFK8 Education Session Part 5 | Class |
| ekundayo,Trinovy | 115240 | JFK8 Education Session Part 5 | Class |
| Brigido,Saul B | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Esmail,Youssef Taha | 115240 | JFK8 Education Session Part 5 | Class |
| Lassiter,Irick | 115240 | JFK8 Education Session Part 5 | Class |
| Daourou,Elsa sanmaine | 115240 | JFK8 Education Session Part 5 | Class |
| Armstrong,Tamia | 115240 | JFK8 Education Session Part 5 | Class |
| Mckenzie,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Glanville,Tyler | 115240 | JFK8 Education Session Part 5 | Class |
| Lewis,Amari | 115240 | JFK8 Education Session Part 5 | Class |
| Snyder,Hailee | 115240 | JFK8 Education Session Part 5 | Class |
| alvarez,Evelin | 115240 | JFK8 Education Session Part 5 | Class |
| Espinal,Kelvin | 115240 | JFK8 Education Session Part 5 | Class |
| Espinal,Kelvin | 115240 | JFK8 Education Session Part 5 | Class |
| Cuevas,Shyann | 115240 | JFK8 Education Session Part 5 | Class |
| McKenna,Aaron Steve | 115240 | JFK8 Education Session Part 5 | Class |
| McKenna,Aaron Steve | 115240 | JFK8 Education Session Part 5 | Class |
| Michelus,Kevin Charles | 115240 | JFK8 Education Session Part 5 | Class |
| Arabi,Mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Pestano,Tiffany | 115240 | JFK8 Education Session Part 5 | Class |
| Malone,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Cerda,Mimi | 115240 | JFK8 Education Session Part 5 | Class |
| Westpoint,Ramallah | 115240 | JFK8 Education Session Part 5 | Class |
| Westpoint,Ramallah | 115240 | JFK8 Education Session Part 5 | Class |
| Viruel,Juan | 115240 | JFK8 Education Session Part 5 | Class |
| Spence,Neckisha | 115240 | JFK8 Education Session Part 5 | Class |
| Perkins,Kera K | 115240 | JFK8 Education Session Part 5 | Class |
| Rich,Mari | 115240 | JFK8 Education Session Part 5 | Class |
| Rich,Mari | 115240 | JFK8 Education Session Part 5 | Class |
| Omar,Imani | 115240 | JFK8 Education Session Part 5 | Class |
| Chrispin,Vanessa | 115240 | JFK8 Education Session Part 5 | Class |
| Chrispin,Vanessa | 115240 | JFK8 Education Session Part 5 | Class |
| McDonald,Warren | 115240 | JFK8 Education Session Part 5 | Class |
| colon,justin | 115240 | JFK8 Education Session Part 5 | Class |
| colon,justin | 115240 | JFK8 Education Session Part 5 | Class |
| Kamel,Hedra | 115240 | JFK8 Education Session Part 5 | Class |
| Quintero,Samantha Jaquelin | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Ignacio Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Fason,Tylisha | 115240 | JFK8 Education Session Part 5 | Class |
| Sacramento,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Aurelus,Fabrice | 115240 | JFK8 Education Session Part 5 | Class |
| Aurelus,Fabrice | 115240 | JFK8 Education Session Part 5 | Class |
| Dungee,Timothy | 115240 | JFK8 Education Session Part 5 | Class |
| Bastidas,Santiago | 115240 | JFK8 Education Session Part 5 | Class |
| Massalay,Sonnie | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Florencia | 115240 | JFK8 Education Session Part 5 | Class |
| Wright,Roy | 115240 | JFK8 Education Session Part 5 | Class |
| Jordan,Arianna | 115240 | JFK8 Education Session Part 5 | Class |
| Gomez,Elijah | 115240 | JFK8 Education Session Part 5 | Class |
| Black,Anthony K | 115240 | JFK8 Education Session Part 5 | Class |
| Gomez,Marcus | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| burgos,juan | 115240 | JFK8 Education Session Part 5 | Class |
| Richardson,DVonte N | 115240 | JFK8 Education Session Part 5 | Class |
| Trinkoff,Alyson | 115240 | JFK8 Education Session Part 5 | Class |
| Puma,Michelle | 115240 | JFK8 Education Session Part 5 | Class |
| Clarke,Jevoy Romario | 115240 | JFK8 Education Session Part 5 | Class |
| Casseus,Francenol | 115240 | JFK8 Education Session Part 5 | Class |
| Neri,Martin Leonardo | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Linda Yvette | 115240 | JFK8 Education Session Part 5 | Class |
| Vasquez,Cazina | 115240 | JFK8 Education Session Part 5 | Class |
| Cordova,Dennise | 115240 | JFK8 Education Session Part 5 | Class |
| Evans,Demi | 115240 | JFK8 Education Session Part 5 | Class |
| Pacheco,Briana | 115240 | JFK8 Education Session Part 5 | Class |
| Duran,Franky | 115240 | JFK8 Education Session Part 5 | Class |
| Varney,Sheena | 115240 | JFK8 Education Session Part 5 | Class |
| Harrison,Eli | 115240 | JFK8 Education Session Part 5 | Class |
| Navarro Espinoza,Luz | 115240 | JFK8 Education Session Part 5 | Class |
| Helale,Gina | 115240 | JFK8 Education Session Part 5 | Class |
| Holland,Jamal | 115240 | JFK8 Education Session Part 5 | Class |
| Garzon,Ruddy | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Alissia | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Alissia | 115240 | JFK8 Education Session Part 5 | Class |
| Mckinnon,Mark | 115240 | JFK8 Education Session Part 5 | Class |
| Sampson,Lansdale | 115240 | JFK8 Education Session Part 5 | Class |
| Munasinghe,Mahinda Palitha | 115240 | JFK8 Education Session Part 5 | Class |
| Germano,Patricia | 115240 | JFK8 Education Session Part 5 | Class |
| Whidbee,Jamelle | 115240 | JFK8 Education Session Part 5 | Class |
| Sandoval,Anselmo | 115240 | JFK8 Education Session Part 5 | Class |
| Padmore,Terry | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Brant | 115240 | JFK8 Education Session Part 5 | Class |
| Adams,Sahib Ibn | 115240 | JFK8 Education Session Part 5 | Class |
| OCAMPO,ABNERSON | 115240 | JFK8 Education Session Part 5 | Class |
| OCAMPO,ABNERSON | 115240 | JFK8 Education Session Part 5 | Class |
| Molina,Drina D | 115240 | JFK8 Education Session Part 5 | Class |
| Vicente,Reyanys | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz Pontaza,Jaime | 115240 | JFK8 Education Session Part 5 | Class |
| Mark,Vianna | 115240 | JFK8 Education Session Part 5 | Class |
| Younger,Eric | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez,joao | 115240 | JFK8 Education Session Part 5 | Class |
| juarez,frank arlay | 115240 | JFK8 Education Session Part 5 | Class |
| DEBROWN,TERRELL | 115240 | JFK8 Education Session Part 5 | Class |
| Morris-Fields,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Matthew Andrew | 115240 | JFK8 Education Session Part 5 | Class |
| Wilbekin,Eric | 115240 | JFK8 Education Session Part 5 | Class |
| Raffington,Shevonese | 115240 | JFK8 Education Session Part 5 | Class |
| Andujar,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Medica,Ronella | 115240 | JFK8 Education Session Part 5 | Class |
| cuevas,elijah | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Weeks,Blair Morgan | 115240 | JFK8 Education Session Part 5 | Class |
| Weeks,Blair Morgan | 115240 | JFK8 Education Session Part 5 | Class |
| Paredes,Jose Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Oladapo,MATTHEW | 115240 | JFK8 Education Session Part 5 | Class |
| Matheson,Claymount | 115240 | JFK8 Education Session Part 5 | Class |
| Neri,Omar | 115240 | JFK8 Education Session Part 5 | Class |
| Vila Jr,Rafael | 115240 | JFK8 Education Session Part 5 | Class |
| Milone,Joseph Thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Scelzo,Vincent | 115240 | JFK8 Education Session Part 5 | Class |
| Diggs,ShaeShae | 115240 | JFK8 Education Session Part 5 | Class |
| Freire,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Coleman,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Mims,Chanel | 115240 | JFK8 Education Session Part 5 | Class |
| Gausin,Daniel Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Khalifa,Wael | 115240 | JFK8 Education Session Part 5 | Class |
| Casey,Joe | 115240 | JFK8 Education Session Part 5 | Class |
| Deleon,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Gozon,Ronnie F | 115240 | JFK8 Education Session Part 5 | Class |
| Kadejo,Eniola Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Echavarria,Victor Manuel | 115240 | JFK8 Education Session Part 5 | Class |
| Galloway,Leon | 115240 | JFK8 Education Session Part 5 | Class |
| Moreau,Greger | 115240 | JFK8 Education Session Part 5 | Class |
| Fluker,Christopher D | 115240 | JFK8 Education Session Part 5 | Class |
| Kourkoumelis,Erika | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez Morales,Nanci | 115240 | JFK8 Education Session Part 5 | Class |
| Vernon,Adrian | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Carlos | 115240 | JFK8 Education Session Part 5 | Class |
| Etienne,Jessica | 115240 | JFK8 Education Session Part 5 | Class |
| garcia,kyle Neo | 115240 | JFK8 Education Session Part 5 | Class |
| Raid,Polla | 115240 | JFK8 Education Session Part 5 | Class |
| Gavin,Philip | 115240 | JFK8 Education Session Part 5 | Class |
| Gavin,Philip | 115240 | JFK8 Education Session Part 5 | Class |
| Scotti,Randolph | 115240 | JFK8 Education Session Part 5 | Class |
| Ndulue,Raphael Chinenye | 115240 | JFK8 Education Session Part 5 | Class |
| Jno Jules,Christy | 115240 | JFK8 Education Session Part 5 | Class |
| MASTERJOSEPH,ALBERT | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Brittany Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Oropeza,Julio | 115240 | JFK8 Education Session Part 5 | Class |
| Vaughan,Earl Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| TRIANTAFYLLOPOULOS,DEMITRA | 115240 | JFK8 Education Session Part 5 | Class |
| Adams,Davon Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Colon,Samantha | 115240 | JFK8 Education Session Part 5 | Class |
| Hanks,Travis | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Donna | 115240 | JFK8 Education Session Part 5 | Class |
| Bouton,Joy | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia Rivera,Jesus | 115240 | JFK8 Education Session Part 5 | Class |
| Larosa,Charles Ray | 115240 | JFK8 Education Session Part 5 | Class |
| Larosa,Charles Ray | 115240 | JFK8 Education Session Part 5 | Class |

Amazon_000486

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Toussaint,Sherries | 115240 | JFK8 Education Session Part 5 | Class |
| Adebiyi,Fuad | 115240 | JFK8 Education Session Part 5 | Class |
| Valueva,Olga | 115240 | JFK8 Education Session Part 5 | Class |
| Brigante,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Gus | 115240 | JFK8 Education Session Part 5 | Class |
| Khadr,Adam | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| Ross,Monica | 115240 | JFK8 Education Session Part 5 | Class |
| Broccko,Roland | 115240 | JFK8 Education Session Part 5 | Class |
| Miller,Jason Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz,Ivan | 115240 | JFK8 Education Session Part 5 | Class |
| Jaimes Rodriguez,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Dominguez,Itzel | 115240 | JFK8 Education Session Part 5 | Class |
| Wong,Brandon | 115240 | JFK8 Education Session Part 5 | Class |
| Ibrahim,Romail | 115240 | JFK8 Education Session Part 5 | Class |
| Andes,Dino | 115240 | JFK8 Education Session Part 5 | Class |
| Bryant,Olivia | 115240 | JFK8 Education Session Part 5 | Class |
| Frenk,Robinson | 115240 | JFK8 Education Session Part 5 | Class |
| Noftell,Rose Lynn | 115240 | JFK8 Education Session Part 5 | Class |
| Kunasingam,Kowsikan | 115240 | JFK8 Education Session Part 5 | Class |
| Canolli Uka,Vlore | 115240 | JFK8 Education Session Part 5 | Class |
| Colvin,Michelle | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Durant,George | 115240 | JFK8 Education Session Part 5 | Class |
| Cabrera Rodriguez,Mercio Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Orona,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Caban,J | 115240 | JFK8 Education Session Part 5 | Class |
| Galy,Taras | 115240 | JFK8 Education Session Part 5 | Class |
| Figueroa,Gladys Marie | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Destiny | 115240 | JFK8 Education Session Part 5 | Class |
| Simmons,Kiara | 115240 | JFK8 Education Session Part 5 | Class |
| Er,Angela | 115240 | JFK8 Education Session Part 5 | Class |
| zapata,chase chase | 115240 | JFK8 Education Session Part 5 | Class |
| Deeds,E | 115240 | JFK8 Education Session Part 5 | Class |
| Pineda,Catherine Nirvana | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,Amanda | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,Amanda | 115240 | JFK8 Education Session Part 5 | Class |
| LAURIANO,JENNY T. | 115240 | JFK8 Education Session Part 5 | Class |
| Byrd,Dante | 115240 | JFK8 Education Session Part 5 | Class |
| CAMACHO LOPEZ,MAGDA | 115240 | JFK8 Education Session Part 5 | Class |
| Centeno,Carmen | 115240 | JFK8 Education Session Part 5 | Class |
| Ulmer,Destiny | 115240 | JFK8 Education Session Part 5 | Class |
| Ocasio-Bailey,JoElla | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Afolabi-Wakefield,Esther | 115240 | JFK8 Education Session Part 5 | Class |
| Mack,Alajah | 115240 | JFK8 Education Session Part 5 | Class |
| Planchet,Murlyne | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Vada | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Allah,Tyshawn | 115240 | JFK8 Education Session Part 5 | Class |
| Andrejuk-Rys,Katarzyna | 115240 | JFK8 Education Session Part 5 | Class |
| Andrejuk-Rys,Katarzyna | 115240 | JFK8 Education Session Part 5 | Class |
| lawal,Jamiu | 115240 | JFK8 Education Session Part 5 | Class |
| Goodhope,Shamira | 115240 | JFK8 Education Session Part 5 | Class |
| Agbe,Gbolahan Akintoye | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Rosalina | 115240 | JFK8 Education Session Part 5 | Class |
| Adams,Asia Glady | 115240 | JFK8 Education Session Part 5 | Class |
| Miho,Enxhel | 115240 | JFK8 Education Session Part 5 | Class |
| Azer,Marina | 115240 | JFK8 Education Session Part 5 | Class |
| Franco,Ricardo | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,DJ | 115240 | JFK8 Education Session Part 5 | Class |
| Moon,Judine | 115240 | JFK8 Education Session Part 5 | Class |
| Matthews,Tanica | 115240 | JFK8 Education Session Part 5 | Class |
| Dimitri,Gaetano | 115240 | JFK8 Education Session Part 5 | Class |
| latham,sondra ann | 115240 | JFK8 Education Session Part 5 | Class |
| Boston,Fred | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Alicia | 115240 | JFK8 Education Session Part 5 | Class |
| Hurdle,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Del Maestro,Anthony Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Acosta,Tyteanna | 115240 | JFK8 Education Session Part 5 | Class |
| Phillips,Jelani | 115240 | JFK8 Education Session Part 5 | Class |
| Newman,Rechard | 115240 | JFK8 Education Session Part 5 | Class |
| Padilla,Ana Rosa | 115240 | JFK8 Education Session Part 5 | Class |
| Gavilan,Julian E | 115240 | JFK8 Education Session Part 5 | Class |
| Dudley,Sade | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Andrew | 115240 | JFK8 Education Session Part 5 | Class |
| Huerta,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| Chausse,Jamie | 115240 | JFK8 Education Session Part 5 | Class |
| Ojo,Olubukola Margaret | 115240 | JFK8 Education Session Part 5 | Class |
| Espinosa,Adrian | 115240 | JFK8 Education Session Part 5 | Class |
| Stukes,Tamia | 115240 | JFK8 Education Session Part 5 | Class |
| Cirello,Gabriella | 115240 | JFK8 Education Session Part 5 | Class |
| Thambiah,Ketheeswarapaskaran | 115240 | JFK8 Education Session Part 5 | Class |
| Okpalor,Bill | 115240 | JFK8 Education Session Part 5 | Class |
| La,Jane | 115240 | JFK8 Education Session Part 5 | Class |
| Valente,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Powell,Edward | 115240 | JFK8 Education Session Part 5 | Class |
| Biniass,Hamza | 115240 | JFK8 Education Session Part 5 | Class |
| Fuster,Maritza | 115240 | JFK8 Education Session Part 5 | Class |
| Saruar,Md Ahsun | 115240 | JFK8 Education Session Part 5 | Class |
| Saruar,Md Ahsun | 115240 | JFK8 Education Session Part 5 | Class |
| alex,linu | 115240 | JFK8 Education Session Part 5 | Class |
| Linton,Donnie | 115240 | JFK8 Education Session Part 5 | Class |
| Welbeck,Maxwell | 115240 | JFK8 Education Session Part 5 | Class |
| Bah,Mohammed | 115240 | JFK8 Education Session Part 5 | Class |
| Prince,Shane | 115240 | JFK8 Education Session Part 5 | Class |
| Droz,Michelle Annatilde | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Miele,Joe | 115240 | JFK8 Education Session Part 5 | Class |
| Ayala,Ethan Russell | 115240 | JFK8 Education Session Part 5 | Class |
| thomas,ladae | 115240 | JFK8 Education Session Part 5 | Class |
| Cortes,Guadalupe Edna | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,CARLOS A | 115240 | JFK8 Education Session Part 5 | Class |
| Vidal,Lillian | 115240 | JFK8 Education Session Part 5 | Class |
| Lovera,Cesar | 115240 | JFK8 Education Session Part 5 | Class |
| Littman,Kahil | 115240 | JFK8 Education Session Part 5 | Class |
| Ng-Yau,Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Sawhney,Vinney | 115240 | JFK8 Education Session Part 5 | Class |
| Gerardo,Jose A | 115240 | JFK8 Education Session Part 5 | Class |
| park,charles | 115240 | JFK8 Education Session Part 5 | Class |
| Clairejus,Lancia | 115240 | JFK8 Education Session Part 5 | Class |
| Ayala,Craig | 115240 | JFK8 Education Session Part 5 | Class |
| Carranza,Elsi | 115240 | JFK8 Education Session Part 5 | Class |
| Ishola-barnes,Abosede Oreoluwa | 115240 | JFK8 Education Session Part 5 | Class |
| Calderon,Angel R | 115240 | JFK8 Education Session Part 5 | Class |
| Merillo,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Abreu,Noemi | 115240 | JFK8 Education Session Part 5 | Class |
| Peters,Oluwaseyi | 115240 | JFK8 Education Session Part 5 | Class |
| Jaramillo Calle,Freddy Eduardo | 115240 | JFK8 Education Session Part 5 | Class |
| Pinder,Christine | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Albert | 115240 | JFK8 Education Session Part 5 | Class |
| Calcagno,Kristen | 115240 | JFK8 Education Session Part 5 | Class |
| charles,Ken | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Ashley | 115240 | JFK8 Education Session Part 5 | Class |
| Davison,Marsel | 115240 | JFK8 Education Session Part 5 | Class |
| Shakeel,Aqsa | 115240 | JFK8 Education Session Part 5 | Class |
| CAMACHO LOPEZ,NANCY | 115240 | JFK8 Education Session Part 5 | Class |
| CAMACHO LOPEZ,NANCY | 115240 | JFK8 Education Session Part 5 | Class |
| CAMACHO LOPEZ,NANCY | 115240 | JFK8 Education Session Part 5 | Class |
| Torres lopez,Adriana Raquel | 115240 | JFK8 Education Session Part 5 | Class |
| Allen,Jamie | 115240 | JFK8 Education Session Part 5 | Class |
| Cordero,Juni | 115240 | JFK8 Education Session Part 5 | Class |
| McKenna,Aisha | 115240 | JFK8 Education Session Part 5 | Class |
| KAMONI,CATE | 115240 | JFK8 Education Session Part 5 | Class |
| Soto,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Mehmood,Haris | 115240 | JFK8 Education Session Part 5 | Class |
| Myers,Brittany | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Darnell | 115240 | JFK8 Education Session Part 5 | Class |
| Harvey,Mary | 115240 | JFK8 Education Session Part 5 | Class |
| Rosado,Miguel | 115240 | JFK8 Education Session Part 5 | Class |
| Kuar,Kuulei | 115240 | JFK8 Education Session Part 5 | Class |
| Romero,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Singleton,Samuel | 115240 | JFK8 Education Session Part 5 | Class |
| Eugene,Kurone | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Selena | 115240 | JFK8 Education Session Part 5 | Class |
| Poventud,Christal | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Diaz,Lillian | 115240 | JFK8 Education Session Part 5 | Class |
| Hanse,Tyrese | 115240 | JFK8 Education Session Part 5 | Class |
| Ricketts,Antione | 115240 | JFK8 Education Session Part 5 | Class |
| perez,Marielle | 115240 | JFK8 Education Session Part 5 | Class |
| Booker,Faith | 115240 | JFK8 Education Session Part 5 | Class |
| Lavandier,Jose L | 115240 | JFK8 Education Session Part 5 | Class |
| Domond,Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Green,Roger | 115240 | JFK8 Education Session Part 5 | Class |
| Bruzzese,Giro | 115240 | JFK8 Education Session Part 5 | Class |
| Abrams Sr,Selwyn Stanford | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Jocelyn | 115240 | JFK8 Education Session Part 5 | Class |
| Ayeni,Lyna Lyna | 115240 | JFK8 Education Session Part 5 | Class |
| Bowers,Adrian | 115240 | JFK8 Education Session Part 5 | Class |
| Gordon,Jasmine | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Darryl | 115240 | JFK8 Education Session Part 5 | Class |
| Stanly,Stephy | 115240 | JFK8 Education Session Part 5 | Class |
| Patala,John Steven | 115240 | JFK8 Education Session Part 5 | Class |
| Duncan,Kelvin | 115240 | JFK8 Education Session Part 5 | Class |
| Mendoza,Kate | 115240 | JFK8 Education Session Part 5 | Class |
| Torija Gutierrez,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| sethunge mudalige don,Anushka | 115240 | JFK8 Education Session Part 5 | Class |
| Faltaoos,Olfat N | 115240 | JFK8 Education Session Part 5 | Class |
| Elngaawy,Anna | 115240 | JFK8 Education Session Part 5 | Class |
| Delicia,David | 115240 | JFK8 Education Session Part 5 | Class |
| Denis,Ralph | 115240 | JFK8 Education Session Part 5 | Class |
| vega,angela a | 115240 | JFK8 Education Session Part 5 | Class |
| Sisimit,Favio | 115240 | JFK8 Education Session Part 5 | Class |
| De Los Santos,Moises | 115240 | JFK8 Education Session Part 5 | Class |
| Fanit,Ali | 115240 | JFK8 Education Session Part 5 | Class |
| Moss,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Ads,Ahmed | 115240 | JFK8 Education Session Part 5 | Class |
| FIERRO GARCIA,SANTIAGO DAVID | 115240 | JFK8 Education Session Part 5 | Class |
| Spielberg,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Gibbons,alex | 115240 | JFK8 Education Session Part 5 | Class |
| Daniels,Brett | 115240 | JFK8 Education Session Part 5 | Class |
| CYRIL,JANICE | 115240 | JFK8 Education Session Part 5 | Class |
| Greaves,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Gentner,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Angel | 115240 | JFK8 Education Session Part 5 | Class |
| Knight,Shakira | 115240 | JFK8 Education Session Part 5 | Class |
| Gromov,Sergei | 115240 | JFK8 Education Session Part 5 | Class |
| Gromov,Sergei | 115240 | JFK8 Education Session Part 5 | Class |
| Buchanan,Cynthia | 115240 | JFK8 Education Session Part 5 | Class |
| Pahua,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Fekry,Medhat | 115240 | JFK8 Education Session Part 5 | Class |
| Usher,David | 115240 | JFK8 Education Session Part 5 | Class |
| Welch,Hasan | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lombardi,Salvatore gus | 115240 | JFK8 Education Session Part 5 | Class |
| Montalva Cacha,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Brazoban,Ironeli | 115240 | JFK8 Education Session Part 5 | Class |
| Eronini,Serena | 115240 | JFK8 Education Session Part 5 | Class |
| Eronini,Serena | 115240 | JFK8 Education Session Part 5 | Class |
| Lorenzana,Samantha | 115240 | JFK8 Education Session Part 5 | Class |
| Murad,Lisa Rose | 115240 | JFK8 Education Session Part 5 | Class |
| Washington Lampley,Tandicia | 115240 | JFK8 Education Session Part 5 | Class |
| Lagville,Dave | 115240 | JFK8 Education Session Part 5 | Class |
| Juarez,Juarez Enrique | 115240 | JFK8 Education Session Part 5 | Class |
| Gofan,MarQuan | 115240 | JFK8 Education Session Part 5 | Class |
| Delicia,Cassandra | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Erik | 115240 | JFK8 Education Session Part 5 | Class |
| Turla,Rodney | 115240 | JFK8 Education Session Part 5 | Class |
| OLAYINKA,AMANDA EMEM | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez,Lixsi | 115240 | JFK8 Education Session Part 5 | Class |
| Eisom,Stanley | 115240 | JFK8 Education Session Part 5 | Class |
| mclean,kadicia | 115240 | JFK8 Education Session Part 5 | Class |
| Nieves,Benito | 115240 | JFK8 Education Session Part 5 | Class |
| Iturbe,Dinora | 115240 | JFK8 Education Session Part 5 | Class |
| Nicoletti,Robert John | 115240 | JFK8 Education Session Part 5 | Class |
| Israeil,Fadi | 115240 | JFK8 Education Session Part 5 | Class |
| Obong,Solomon | 115240 | JFK8 Education Session Part 5 | Class |
| Carnegie,Kathy H | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Yaffa A | 115240 | JFK8 Education Session Part 5 | Class |
| Hughes,Chyna | 115240 | JFK8 Education Session Part 5 | Class |
| Arkliss,Temell | 115240 | JFK8 Education Session Part 5 | Class |
| Kosmala,Dorota | 115240 | JFK8 Education Session Part 5 | Class |
| Lachapell,Claritza | 115240 | JFK8 Education Session Part 5 | Class |
| Adeyemo,Adedayo Oluwatimileyin | 115240 | JFK8 Education Session Part 5 | Class |
| Tonto,Matilda | 115240 | JFK8 Education Session Part 5 | Class |
| Robles,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| John-Chance,Leaha | 115240 | JFK8 Education Session Part 5 | Class |
| Hannalla,safwat | 115240 | JFK8 Education Session Part 5 | Class |
| Cabrera,Evelin | 115240 | JFK8 Education Session Part 5 | Class |
| Xhemollari,Ertugert | 115240 | JFK8 Education Session Part 5 | Class |
| Barrios,David Benjamin | 115240 | JFK8 Education Session Part 5 | Class |
| Abdelmassih,Nashaat | 115240 | JFK8 Education Session Part 5 | Class |
| Ratna.,K. | 115240 | JFK8 Education Session Part 5 | Class |
| Pickering,Skye | 115240 | JFK8 Education Session Part 5 | Class |
| Carmona,Nikolas | 115240 | JFK8 Education Session Part 5 | Class |
| Murray,Jared | 115240 | JFK8 Education Session Part 5 | Class |
| Escobar,Eliud | 115240 | JFK8 Education Session Part 5 | Class |
| marceca,ugo | 115240 | JFK8 Education Session Part 5 | Class |
| Caraballo,Jessica | 115240 | JFK8 Education Session Part 5 | Class |
| Baird,David | 115240 | JFK8 Education Session Part 5 | Class |
| Mosso,karina | 115240 | JFK8 Education Session Part 5 | Class |
| Ceron,Luis | 115240 | JFK8 Education Session Part 5 | Class |

Amazon_000491

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gentles,Shanice | 115240 | JFK8 Education Session Part 5 | Class |
| spears,dondi | 115240 | JFK8 Education Session Part 5 | Class |
| spears,dondi | 115240 | JFK8 Education Session Part 5 | Class |
| Odinga,Biston | 115240 | JFK8 Education Session Part 5 | Class |
| Pan,Raymond | 115240 | JFK8 Education Session Part 5 | Class |
| Spencer,Natasha | 115240 | JFK8 Education Session Part 5 | Class |
| Adeboye,Nafisat | 115240 | JFK8 Education Session Part 5 | Class |
| Pierre,Clodin | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,Yannick | 115240 | JFK8 Education Session Part 5 | Class |
| Shonubi,Idris | 115240 | JFK8 Education Session Part 5 | Class |
| Atalla,Samer | 115240 | JFK8 Education Session Part 5 | Class |
| Murdah,James A | 115240 | JFK8 Education Session Part 5 | Class |
| Tellez,Mario A | 115240 | JFK8 Education Session Part 5 | Class |
| Horton,Yolanda | 115240 | JFK8 Education Session Part 5 | Class |
| Holley,Tiesha | 115240 | JFK8 Education Session Part 5 | Class |
| Zeferino Garcia,Yesica | 115240 | JFK8 Education Session Part 5 | Class |
| Zhou,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| jean louis,nkrumah | 115240 | JFK8 Education Session Part 5 | Class |
| Nunez,Jose Miguel | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Jazmine | 115240 | JFK8 Education Session Part 5 | Class |
| Lee,Sean | 115240 | JFK8 Education Session Part 5 | Class |
| Shonibare,Bolade Adewale | 115240 | JFK8 Education Session Part 5 | Class |
| bogat weathley,sharon | 115240 | JFK8 Education Session Part 5 | Class |
| perry,timothy alfonzo | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Christina | 115240 | JFK8 Education Session Part 5 | Class |
| Panfilo-Lira,Yonathan | 115240 | JFK8 Education Session Part 5 | Class |
| martinez,tristian ray | 115240 | JFK8 Education Session Part 5 | Class |
| Fordjour,Francis Aboagye | 115240 | JFK8 Education Session Part 5 | Class |
| Obdeus,Samantha | 115240 | JFK8 Education Session Part 5 | Class |
| Mendez,George Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Bristol,Dexter | 115240 | JFK8 Education Session Part 5 | Class |
| Parker,Yasmeen Aaliyah-Marie | 115240 | JFK8 Education Session Part 5 | Class |
| Parker,Yasmeen Aaliyah-Marie | 115240 | JFK8 Education Session Part 5 | Class |
| Crosbourne,Rochelle-Ann | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Rodel Velasco | 115240 | JFK8 Education Session Part 5 | Class |
| Kuk,MiPokMinjung | 115240 | JFK8 Education Session Part 5 | Class |
| Castellano,Sarah | 115240 | JFK8 Education Session Part 5 | Class |
| Zapata,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| Morris,Magdy | 115240 | JFK8 Education Session Part 5 | Class |
| Singleton,Taniah | 115240 | JFK8 Education Session Part 5 | Class |
| Olayinka,Idris Olakunle | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Eleanor | 115240 | JFK8 Education Session Part 5 | Class |
| Cuevas,Hayley | 115240 | JFK8 Education Session Part 5 | Class |
| Lakeysha Harris-Ortega,Lakeysha | 115240 | JFK8 Education Session Part 5 | Class |
| Kien,Brian Hieu | 115240 | JFK8 Education Session Part 5 | Class |
| Cooper,Jacob | 115240 | JFK8 Education Session Part 5 | Class |
| Toure,Chermo | 115240 | JFK8 Education Session Part 5 | Class |
| Grinage,Tawana A | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Salu,Temi | 115240 | JFK8 Education Session Part 5 | Class |
| Calixto,Noheli | 115240 | JFK8 Education Session Part 5 | Class |
| Calixto,Noheli | 115240 | JFK8 Education Session Part 5 | Class |
| KONE,SINDOU | 115240 | JFK8 Education Session Part 5 | Class |
| Knowles,Pauline | 115240 | JFK8 Education Session Part 5 | Class |
| Maldonado,Gensy Omar | 115240 | JFK8 Education Session Part 5 | Class |
| Borja,Alonso E | 115240 | JFK8 Education Session Part 5 | Class |
| Mikhail,Sameh | 115240 | JFK8 Education Session Part 5 | Class |
| LEE,CHRISTOPHER | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Messiah | 115240 | JFK8 Education Session Part 5 | Class |
| Akinyoade,Adenike Clementina | 115240 | JFK8 Education Session Part 5 | Class |
| Vidal,Miguel | 115240 | JFK8 Education Session Part 5 | Class |
| Wilson,Ebenezer Essilfie | 115240 | JFK8 Education Session Part 5 | Class |
| Sherief,Issam | 115240 | JFK8 Education Session Part 5 | Class |
| DiCarlo,Tyla | 115240 | JFK8 Education Session Part 5 | Class |
| Neil,Norman | 115240 | JFK8 Education Session Part 5 | Class |
| Mejias,Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Olmedo,Janet | 115240 | JFK8 Education Session Part 5 | Class |
| Makar,Magdy | 115240 | JFK8 Education Session Part 5 | Class |
| Loughery,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Loughery,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Aleski,Tammy | 115240 | JFK8 Education Session Part 5 | Class |
| Currie,Michelle | 115240 | JFK8 Education Session Part 5 | Class |
| Can,Emine | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarez,Luz Zeneyda | 115240 | JFK8 Education Session Part 5 | Class |
| Zurek,Kamil Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Youmans,Shaquan | 115240 | JFK8 Education Session Part 5 | Class |
| Osundairo,Akeem Kareem | 115240 | JFK8 Education Session Part 5 | Class |
| mejia,bryan | 115240 | JFK8 Education Session Part 5 | Class |
| Gutierrez,Angel | 115240 | JFK8 Education Session Part 5 | Class |
| Oshindele,Adeniyi | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Nairoby | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Ali | 115240 | JFK8 Education Session Part 5 | Class |
| Kandeh,Ibrahim | 115240 | JFK8 Education Session Part 5 | Class |
| Hines,Denee | 115240 | JFK8 Education Session Part 5 | Class |
| Asad,Abdelaziz | 115240 | JFK8 Education Session Part 5 | Class |
| Lawrence,Jamal | 115240 | JFK8 Education Session Part 5 | Class |
| hernandez,Jaime | 115240 | JFK8 Education Session Part 5 | Class |
| Colon Jr,Hector F | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Rey | 115240 | JFK8 Education Session Part 5 | Class |
| russo,denise | 115240 | JFK8 Education Session Part 5 | Class |
| russo,denise | 115240 | JFK8 Education Session Part 5 | Class |
| Fofana,Alhaji | 115240 | JFK8 Education Session Part 5 | Class |
| Hargrove,Azure | 115240 | JFK8 Education Session Part 5 | Class |
| Leclerc,Gleidy | 115240 | JFK8 Education Session Part 5 | Class |
| Ali,Mohammad Ahasan | 115240 | JFK8 Education Session Part 5 | Class |
| Isler,Chris | 115240 | JFK8 Education Session Part 5 | Class |
| Isler,Chris | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gomez Guzman,Alexis | 115240 | JFK8 Education Session Part 5 | Class |
| Centron,Emelita | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz,Osvaldo Lorenzo | 115240 | JFK8 Education Session Part 5 | Class |
| baldeh,ousman | 115240 | JFK8 Education Session Part 5 | Class |
| Hamilton,Delitha | 115240 | JFK8 Education Session Part 5 | Class |
| Recinos,Veronica | 115240 | JFK8 Education Session Part 5 | Class |
| Miller,Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Pannasch,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Owens,Thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Kamara,Natasha Caprice | 115240 | JFK8 Education Session Part 5 | Class |
| Prescod,Keisha | 115240 | JFK8 Education Session Part 5 | Class |
| Valero,Irvin Gustavo | 115240 | JFK8 Education Session Part 5 | Class |
| ch,amina | 115240 | JFK8 Education Session Part 5 | Class |
| Ford,sade | 115240 | JFK8 Education Session Part 5 | Class |
| Dawson,Octavia | 115240 | JFK8 Education Session Part 5 | Class |
| Ulloa,Genesis | 115240 | JFK8 Education Session Part 5 | Class |
| Morina,Edmond | 115240 | JFK8 Education Session Part 5 | Class |
| Dauti,Dona | 115240 | JFK8 Education Session Part 5 | Class |
| Montas,Roberto | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Toreron | 115240 | JFK8 Education Session Part 5 | Class |
| Dargan,Yakiiya | 115240 | JFK8 Education Session Part 5 | Class |
| Miscione,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| badran,ahmed | 115240 | JFK8 Education Session Part 5 | Class |
| Marksman,Cuthbert | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Keith | 115240 | JFK8 Education Session Part 5 | Class |
| El turk,Foursan | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Shakievia | 115240 | JFK8 Education Session Part 5 | Class |
| Rumolo,Nicholas | 115240 | JFK8 Education Session Part 5 | Class |
| Pun,Fu Ling | 115240 | JFK8 Education Session Part 5 | Class |
| Pittman,Aaron | 115240 | JFK8 Education Session Part 5 | Class |
| Banievicz,Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez Alvarado,Miguel Angel | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Hussen,Sameh | 115240 | JFK8 Education Session Part 5 | Class |
| Amiraly,Pendo | 115240 | JFK8 Education Session Part 5 | Class |
| Brenes,Gabriel | 115240 | JFK8 Education Session Part 5 | Class |
| Gustave,Merldon | 115240 | JFK8 Education Session Part 5 | Class |
| Chan,Sup Mooi | 115240 | JFK8 Education Session Part 5 | Class |
| Pecoraro,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Speciale,Christina | 115240 | JFK8 Education Session Part 5 | Class |
| Desronvil,Allex | 115240 | JFK8 Education Session Part 5 | Class |
| Yusuf,Aziyah | 115240 | JFK8 Education Session Part 5 | Class |
| Wagner,Sidney Marc | 115240 | JFK8 Education Session Part 5 | Class |
| Gilmore,Kimberly | 115240 | JFK8 Education Session Part 5 | Class |
| Bhuiyan,Mohammad | 115240 | JFK8 Education Session Part 5 | Class |
| Watkins,Arric | 115240 | JFK8 Education Session Part 5 | Class |
| Holmes,Shaquell | 115240 | JFK8 Education Session Part 5 | Class |
| Anwar,Khurshid Anwar | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Quezada,Raysa | 115240 | JFK8 Education Session Part 5 | Class |
| mubin,khurram | 115240 | JFK8 Education Session Part 5 | Class |
| Jasper,Darella | 115240 | JFK8 Education Session Part 5 | Class |
| Jasper,Darella | 115240 | JFK8 Education Session Part 5 | Class |
| Bartuccelli,Deanna | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez,Hilsia Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Tang,Szewai Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Clarke,Gerard | 115240 | JFK8 Education Session Part 5 | Class |
| Gupta,Prakhar | 115240 | JFK8 Education Session Part 5 | Class |
| sylla,brima | 115240 | JFK8 Education Session Part 5 | Class |
| Greene,Michelle | 115240 | JFK8 Education Session Part 5 | Class |
| Flaherty,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| valentine,lonnie | 115240 | JFK8 Education Session Part 5 | Class |
| valentine,lonnie | 115240 | JFK8 Education Session Part 5 | Class |
| Layana,Bertha | 115240 | JFK8 Education Session Part 5 | Class |
| Asbell,Tevin | 115240 | JFK8 Education Session Part 5 | Class |
| Overgaard,Eric | 115240 | JFK8 Education Session Part 5 | Class |
| Overgaard,Eric | 115240 | JFK8 Education Session Part 5 | Class |
| Uruchima,Isamar | 115240 | JFK8 Education Session Part 5 | Class |
| Kingsley Reyes,Raziet | 115240 | JFK8 Education Session Part 5 | Class |
| Dolah,A.Rod | 115240 | JFK8 Education Session Part 5 | Class |
| Riddick,Malachi | 115240 | JFK8 Education Session Part 5 | Class |
| Petithomme,Widmia | 115240 | JFK8 Education Session Part 5 | Class |
| Petithomme,Widmia | 115240 | JFK8 Education Session Part 5 | Class |
| Parker,Damion | 115240 | JFK8 Education Session Part 5 | Class |
| Petion,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Florestal,Gontrand Elister | 115240 | JFK8 Education Session Part 5 | Class |
| Wilkins-Wilson,Jermaine | 115240 | JFK8 Education Session Part 5 | Class |
| Baron,Shabba Camala | 115240 | JFK8 Education Session Part 5 | Class |
| Rapino,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Victoria | 115240 | JFK8 Education Session Part 5 | Class |
| Spence,Connor | 115240 | JFK8 Education Session Part 5 | Class |
| Arice,Sherwin | 115240 | JFK8 Education Session Part 5 | Class |
| Minnis,Tyrone | 115240 | JFK8 Education Session Part 5 | Class |
| Daly,Angela K | 115240 | JFK8 Education Session Part 5 | Class |
| Upson,Danay | 115240 | JFK8 Education Session Part 5 | Class |
| Williams Brown,Vazoni | 115240 | JFK8 Education Session Part 5 | Class |
| Williams Brown,Vazoni | 115240 | JFK8 Education Session Part 5 | Class |
| alali,omran | 115240 | JFK8 Education Session Part 5 | Class |
| HART,ROBERT | 115240 | JFK8 Education Session Part 5 | Class |
| Manrique,Melissa R | 115240 | JFK8 Education Session Part 5 | Class |
| Roman,Ray | 115240 | JFK8 Education Session Part 5 | Class |
| Febres,Guillermina | 115240 | JFK8 Education Session Part 5 | Class |
| Cipollone,Sandra Patricia | 115240 | JFK8 Education Session Part 5 | Class |
| Gatto,Ronald | 115240 | JFK8 Education Session Part 5 | Class |
| Salas,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Russo,Salvatore | 115240 | JFK8 Education Session Part 5 | Class |
| Wilson,Brian | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Wilson,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Wilson,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Adams,Daquan | 115240 | JFK8 Education Session Part 5 | Class |
| chesson,ian r | 115240 | JFK8 Education Session Part 5 | Class |
| PEREZ,WERNER AGUSTIN | 115240 | JFK8 Education Session Part 5 | Class |
| Kosar,Mustafa | 115240 | JFK8 Education Session Part 5 | Class |
| Ferrell,Tae | 115240 | JFK8 Education Session Part 5 | Class |
| Castillo,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Lewis,Joy | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Eugenia | 115240 | JFK8 Education Session Part 5 | Class |
| Vann,Niesha | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,evelyn | 115240 | JFK8 Education Session Part 5 | Class |
| Cisse,moussa | 115240 | JFK8 Education Session Part 5 | Class |
| Taylor,Keeno | 115240 | JFK8 Education Session Part 5 | Class |
| Kamath,Shashank | 115240 | JFK8 Education Session Part 5 | Class |
| Forbes,Brennise | 115240 | JFK8 Education Session Part 5 | Class |
| Keefer,Phil | 115240 | JFK8 Education Session Part 5 | Class |
| Zahorniak Sr,Michael Charles | 115240 | JFK8 Education Session Part 5 | Class |
| Campbell,Katherine | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Javian | 115240 | JFK8 Education Session Part 5 | Class |
| Sbei,Mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Sbei,Mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,leonardo | 115240 | JFK8 Education Session Part 5 | Class |
| Trapasso,maureen | 115240 | JFK8 Education Session Part 5 | Class |
| Ramirez,Elbalee | 115240 | JFK8 Education Session Part 5 | Class |
| Bowman,Sam | 115240 | JFK8 Education Session Part 5 | Class |
| Mikhail,Mina | 115240 | JFK8 Education Session Part 5 | Class |
| Gikeneh,Alimami | 115240 | JFK8 Education Session Part 5 | Class |
| Bumbrey,Harold | 115240 | JFK8 Education Session Part 5 | Class |
| Bunch,Alexandra | 115240 | JFK8 Education Session Part 5 | Class |
| Olugbodi,Favour | 115240 | JFK8 Education Session Part 5 | Class |
| cateau,glendon | 115240 | JFK8 Education Session Part 5 | Class |
| Campbell,Jared | 115240 | JFK8 Education Session Part 5 | Class |
| Barber,Christina Marie | 115240 | JFK8 Education Session Part 5 | Class |
| Aybar,Karen Maited | 115240 | JFK8 Education Session Part 5 | Class |
| Meza,Jose A. | 115240 | JFK8 Education Session Part 5 | Class |
| Smilyanets,Andriy | 115240 | JFK8 Education Session Part 5 | Class |
| prasetya,Adrian | 115240 | JFK8 Education Session Part 5 | Class |
| Fludd,Raheim | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,Juan | 115240 | JFK8 Education Session Part 5 | Class |
| Savoca,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Munoz,Louis | 115240 | JFK8 Education Session Part 5 | Class |
| Hart,Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Kakassy,Evan | 115240 | JFK8 Education Session Part 5 | Class |
| Tavares,Rocky | 115240 | JFK8 Education Session Part 5 | Class |
| Daniel,Mark | 115240 | JFK8 Education Session Part 5 | Class |
| Jimenez,Jose Manuel | 115240 | JFK8 Education Session Part 5 | Class |
| Baron,Raquiel | 115240 | JFK8 Education Session Part 5 | Class |

Amazon_000496

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Torres,Whitney | 115240 | JFK8 Education Session Part 5 | Class |
| Coxaj depaz,Juan M | 115240 | JFK8 Education Session Part 5 | Class |
| Mostafa,Esraa Mahmoud | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Ricardo J | 115240 | JFK8 Education Session Part 5 | Class |
| Oruc,Fatma | 115240 | JFK8 Education Session Part 5 | Class |
| Ashman-Samuels,Chalese Julia | 115240 | JFK8 Education Session Part 5 | Class |
| Ameer,Mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| OWUSU,Nikkie | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Martha | 115240 | JFK8 Education Session Part 5 | Class |
| Mackay,Chasity | 115240 | JFK8 Education Session Part 5 | Class |
| rivera,angelica | 115240 | JFK8 Education Session Part 5 | Class |
| Rios,Yesenia | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes Morales,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Mayorga,Lissette Lissette | 115240 | JFK8 Education Session Part 5 | Class |
| Jawed,salim J | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Jaquon | 115240 | JFK8 Education Session Part 5 | Class |
| Saab,Fatima | 115240 | JFK8 Education Session Part 5 | Class |
| Babalola,Olufemi L | 115240 | JFK8 Education Session Part 5 | Class |
| Martin,Jasmine | 115240 | JFK8 Education Session Part 5 | Class |
| Siddiqui,Ibraheim | 115240 | JFK8 Education Session Part 5 | Class |
| Germosen,Jamell G | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez Claros,Angelica | 115240 | JFK8 Education Session Part 5 | Class |
| Ortizlopez,Maribel | 115240 | JFK8 Education Session Part 5 | Class |
| Wainwright,Kimberly | 115240 | JFK8 Education Session Part 5 | Class |
| Iyalla,Ibrahim Abraham Tamonutonye | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez,Dulce | 115240 | JFK8 Education Session Part 5 | Class |
| Pierre,Tyshawn | 115240 | JFK8 Education Session Part 5 | Class |
| Youngblood,Tremayne | 115240 | JFK8 Education Session Part 5 | Class |
| Adeyemi-Felder,Briona | 115240 | JFK8 Education Session Part 5 | Class |
| Solomon,Diana | 115240 | JFK8 Education Session Part 5 | Class |
| ODULAJA,AYOBAMI FUNKE | 115240 | JFK8 Education Session Part 5 | Class |
| Calixto rosas,Adolph | 115240 | JFK8 Education Session Part 5 | Class |
| Marku,Jasmina | 115240 | JFK8 Education Session Part 5 | Class |
| cruz,maria Esther | 115240 | JFK8 Education Session Part 5 | Class |
| Zuniga,Giovanne | 115240 | JFK8 Education Session Part 5 | Class |
| Rowland,Naquasia | 115240 | JFK8 Education Session Part 5 | Class |
| Maghirang,Jerald | 115240 | JFK8 Education Session Part 5 | Class |
| Ali,Elsiddig | 115240 | JFK8 Education Session Part 5 | Class |
| Sharrock,Frankie | 115240 | JFK8 Education Session Part 5 | Class |
| Weerasinghe,Mohan | 115240 | JFK8 Education Session Part 5 | Class |
| Fadairo,Shola | 115240 | JFK8 Education Session Part 5 | Class |
| Gadsden,Brianna | 115240 | JFK8 Education Session Part 5 | Class |
| Odewale,Oluwadamilola | 115240 | JFK8 Education Session Part 5 | Class |
| Anzellotto,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| bradford,rushell | 115240 | JFK8 Education Session Part 5 | Class |
| bradford,rushell | 115240 | JFK8 Education Session Part 5 | Class |
| Evans,Mark | 115240 | JFK8 Education Session Part 5 | Class |
| Manel,Mangalika | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Harris,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Romero,Vanessa | 115240 | JFK8 Education Session Part 5 | Class |
| Anam-etemfiok,Chinyere D | 115240 | JFK8 Education Session Part 5 | Class |
| Aquino,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Avila,Robert Samuel | 115240 | JFK8 Education Session Part 5 | Class |
| Paredes,Martha Lucia | 115240 | JFK8 Education Session Part 5 | Class |
| Shippley,Stephon | 115240 | JFK8 Education Session Part 5 | Class |
| Tiu,Kleverson | 115240 | JFK8 Education Session Part 5 | Class |
| Babes,Mr | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Iliana | 115240 | JFK8 Education Session Part 5 | Class |
| Cartagena,David | 115240 | JFK8 Education Session Part 5 | Class |
| MARMOLEJO,ALBERTO | 115240 | JFK8 Education Session Part 5 | Class |
| navarro,Isabel Guadalupe | 115240 | JFK8 Education Session Part 5 | Class |
| Gil,Steven | 115240 | JFK8 Education Session Part 5 | Class |
| Boudiaf,Ilyas | 115240 | JFK8 Education Session Part 5 | Class |
| Short,Tiffany | 115240 | JFK8 Education Session Part 5 | Class |
| Jimenez,Alex | 115240 | JFK8 Education Session Part 5 | Class |
| Enriquez,David Patrick | 115240 | JFK8 Education Session Part 5 | Class |
| Zhang,Yixiang | 115240 | JFK8 Education Session Part 5 | Class |
| Morillo,Jorge | 115240 | JFK8 Education Session Part 5 | Class |
| Lai,Percy | 115240 | JFK8 Education Session Part 5 | Class |
| Castaneda,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Santos Luna,Jean | 115240 | JFK8 Education Session Part 5 | Class |
| McCray,Brittney | 115240 | JFK8 Education Session Part 5 | Class |
| McCray,Brittney | 115240 | JFK8 Education Session Part 5 | Class |
| Luna,Urbano | 115240 | JFK8 Education Session Part 5 | Class |
| Mcsam,Laniya | 115240 | JFK8 Education Session Part 5 | Class |
| hernandez,miguelina | 115240 | JFK8 Education Session Part 5 | Class |
| Gillard,Darance Luis | 115240 | JFK8 Education Session Part 5 | Class |
| Guzman,Estefany | 115240 | JFK8 Education Session Part 5 | Class |
| skaf,bilal | 115240 | JFK8 Education Session Part 5 | Class |
| Young,Rosario Katherine | 115240 | JFK8 Education Session Part 5 | Class |
| Young,Rosario Katherine | 115240 | JFK8 Education Session Part 5 | Class |
| Miller,Shameeka | 115240 | JFK8 Education Session Part 5 | Class |
| Barbee,Erika | 115240 | JFK8 Education Session Part 5 | Class |
| Trelles,Daisy | 115240 | JFK8 Education Session Part 5 | Class |
| Chin,Derek | 115240 | JFK8 Education Session Part 5 | Class |
| Chhay,Eric | 115240 | JFK8 Education Session Part 5 | Class |
| Ikram,Muhammed Asim | 115240 | JFK8 Education Session Part 5 | Class |
| Lozada,Grissel Ruiz | 115240 | JFK8 Education Session Part 5 | Class |
| Pierre,Johnny | 115240 | JFK8 Education Session Part 5 | Class |
| Alcide,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Brandon,Akeisha | 115240 | JFK8 Education Session Part 5 | Class |
| Brandon,Akeisha | 115240 | JFK8 Education Session Part 5 | Class |
| Samborska,Maggie | 115240 | JFK8 Education Session Part 5 | Class |
| Panzardi,Jonathan L | 115240 | JFK8 Education Session Part 5 | Class |
| Bazrouk,Yazeed Saleh | 115240 | JFK8 Education Session Part 5 | Class |
| Aziz,Selim | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| hossain,sheikh | 115240 | JFK8 Education Session Part 5 | Class |
| White,Trimeshia | 115240 | JFK8 Education Session Part 5 | Class |
| Almonte De La Rosa,Luis Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Jaquez Uceta,Katherine | 115240 | JFK8 Education Session Part 5 | Class |
| Sierra,Samuel | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Melissa | 115240 | JFK8 Education Session Part 5 | Class |
| Affissio,John Peter | 115240 | JFK8 Education Session Part 5 | Class |
| Cabrera,Jesus | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Taymek | 115240 | JFK8 Education Session Part 5 | Class |
| Kearse,Leanette | 115240 | JFK8 Education Session Part 5 | Class |
| Neri,Alicia | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Jerdeani | 115240 | JFK8 Education Session Part 5 | Class |
| Mclaughlin,Damian | 115240 | JFK8 Education Session Part 5 | Class |
| McAlpine,Marcus | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Jose L | 115240 | JFK8 Education Session Part 5 | Class |
| Powell,Chapa | 115240 | JFK8 Education Session Part 5 | Class |
| Sylvain,Stanley | 115240 | JFK8 Education Session Part 5 | Class |
| almonte,jose luis | 115240 | JFK8 Education Session Part 5 | Class |
| Mendez,Jhoana | 115240 | JFK8 Education Session Part 5 | Class |
| marsh,lynette | 115240 | JFK8 Education Session Part 5 | Class |
| Lombardi,Kaitlyn | 115240 | JFK8 Education Session Part 5 | Class |
| Rogers,Shaheim | 115240 | JFK8 Education Session Part 5 | Class |
| Hart,Alexis | 115240 | JFK8 Education Session Part 5 | Class |
| Vasquez,Jarin | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Beyonce | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Joel | 115240 | JFK8 Education Session Part 5 | Class |
| Breaker,Keshawn | 115240 | JFK8 Education Session Part 5 | Class |
| SPRINKLE,Mario | 115240 | JFK8 Education Session Part 5 | Class |
| Yehia,Donna | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Lateefe | 115240 | JFK8 Education Session Part 5 | Class |
| Albasir,Ali Farris | 115240 | JFK8 Education Session Part 5 | Class |
| Crespo,Melanie | 115240 | JFK8 Education Session Part 5 | Class |
| Jimenez bernal,Yanna maria | 115240 | JFK8 Education Session Part 5 | Class |
| Olivier,Klani | 115240 | JFK8 Education Session Part 5 | Class |
| Jefferson,Aj | 115240 | JFK8 Education Session Part 5 | Class |
| Felice,Francine | 115240 | JFK8 Education Session Part 5 | Class |
| Dlimi,Mouhcine | 115240 | JFK8 Education Session Part 5 | Class |
| Cabrera,Deysi | 115240 | JFK8 Education Session Part 5 | Class |
| Cabrera,Dulce | 115240 | JFK8 Education Session Part 5 | Class |
| gutierrez ordonez,marta | 115240 | JFK8 Education Session Part 5 | Class |
| Palomeque,Jessi | 115240 | JFK8 Education Session Part 5 | Class |
| Morissaint,Jean | 115240 | JFK8 Education Session Part 5 | Class |
| njoku,stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Lam,Hong | 115240 | JFK8 Education Session Part 5 | Class |
| Castillo,Josue Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Castillo,Josue Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Irizarry,Luke | 115240 | JFK8 Education Session Part 5 | Class |
| harris,autumn | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Martinez Garcia,Josefina | 115240 | JFK8 Education Session Part 5 | Class |
| Gutierrez,orlando | 115240 | JFK8 Education Session Part 5 | Class |
| Norris,Marwan Mike | 115240 | JFK8 Education Session Part 5 | Class |
| Orellana,Keily B | 115240 | JFK8 Education Session Part 5 | Class |
| Dessources,Abelard Lapointe | 115240 | JFK8 Education Session Part 5 | Class |
| James,Will | 115240 | JFK8 Education Session Part 5 | Class |
| caton,grace | 115240 | JFK8 Education Session Part 5 | Class |
| Barragan,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Tullock,Taneyah | 115240 | JFK8 Education Session Part 5 | Class |
| Sheikh,Muhammad Farhan | 115240 | JFK8 Education Session Part 5 | Class |
| Habersham,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Saeed,Ahmed | 115240 | JFK8 Education Session Part 5 | Class |
| sherif,essam | 115240 | JFK8 Education Session Part 5 | Class |
| roach,lincoln | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Justina | 115240 | JFK8 Education Session Part 5 | Class |
| Dunn,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Rentas,Guillermo | 115240 | JFK8 Education Session Part 5 | Class |
| Rentas,Guillermo | 115240 | JFK8 Education Session Part 5 | Class |
| Tun,Zaw Yar Zar | 115240 | JFK8 Education Session Part 5 | Class |
| Fox,Gabriel | 115240 | JFK8 Education Session Part 5 | Class |
| Min,AyeChan | 115240 | JFK8 Education Session Part 5 | Class |
| Acevedo,Jinevea | 115240 | JFK8 Education Session Part 5 | Class |
| Atete,Kelvin Ogheneochuko | 115240 | JFK8 Education Session Part 5 | Class |
| phillips,cleo | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Brandon Lee | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Taneesha | 115240 | JFK8 Education Session Part 5 | Class |
| Gustave,Lorna | 115240 | JFK8 Education Session Part 5 | Class |
| Miller,Keeyona J | 115240 | JFK8 Education Session Part 5 | Class |
| Bernardez,Aura | 115240 | JFK8 Education Session Part 5 | Class |
| roman,camila | 115240 | JFK8 Education Session Part 5 | Class |
| Billings,Minaya Dominique | 115240 | JFK8 Education Session Part 5 | Class |
| Carranza,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| Clemons,Brenda Irish | 115240 | JFK8 Education Session Part 5 | Class |
| Odewale,Oluwafemi | 115240 | JFK8 Education Session Part 5 | Class |
| Weaver-Moore,DreShon | 115240 | JFK8 Education Session Part 5 | Class |
| Saunders,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Pickett,Colleek E | 115240 | JFK8 Education Session Part 5 | Class |
| Rios,Bryan | 115240 | JFK8 Education Session Part 5 | Class |
| OSAKWE,sam | 115240 | JFK8 Education Session Part 5 | Class |
| Maldonado,Melissa | 115240 | JFK8 Education Session Part 5 | Class |
| hanley,sharla | 115240 | JFK8 Education Session Part 5 | Class |
| Forde,Sherwayne | 115240 | JFK8 Education Session Part 5 | Class |
| Ridley,Abdula | 115240 | JFK8 Education Session Part 5 | Class |
| Montes,Brandon | 115240 | JFK8 Education Session Part 5 | Class |
| LEON DE LA TORRE,BELISARIO | 115240 | JFK8 Education Session Part 5 | Class |
| EgbeHubbard,Sylvia Emiene | 115240 | JFK8 Education Session Part 5 | Class |
| Christopher Santos,Christopher v | 115240 | JFK8 Education Session Part 5 | Class |
| Pimentel,Ambar M | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Daley,Richard Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Bengochea,Luis | 115240 | JFK8 Education Session Part 5 | Class |
| Ng,Theresa | 115240 | JFK8 Education Session Part 5 | Class |
| adam,dorissa | 115240 | JFK8 Education Session Part 5 | Class |
| Ramos,Joshua B | 115240 | JFK8 Education Session Part 5 | Class |
| Minton,Sarah | 115240 | JFK8 Education Session Part 5 | Class |
| Moron villarroel,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Nankumba,hadija | 115240 | JFK8 Education Session Part 5 | Class |
| Hui,Chris Tin Ching | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Ferney | 115240 | JFK8 Education Session Part 5 | Class |
| Carranza,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Carranza,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Skelly,Ashley | 115240 | JFK8 Education Session Part 5 | Class |
| Marin,Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Lewis,John | 115240 | JFK8 Education Session Part 5 | Class |
| Diawara,Sidy | 115240 | JFK8 Education Session Part 5 | Class |
| Oluokun,Olukemi | 115240 | JFK8 Education Session Part 5 | Class |
| Castaneda,Kenia | 115240 | JFK8 Education Session Part 5 | Class |
| guzman rondon,ysabel | 115240 | JFK8 Education Session Part 5 | Class |
| Diallo,Mamadou | 115240 | JFK8 Education Session Part 5 | Class |
| Peralta,Jenniffer | 115240 | JFK8 Education Session Part 5 | Class |
| Mirzakhujaev,Ibrokhimkhuja | 115240 | JFK8 Education Session Part 5 | Class |
| Islam,Mohammad | 115240 | JFK8 Education Session Part 5 | Class |
| Moitey-Doku,Keith | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Dorphus | 115240 | JFK8 Education Session Part 5 | Class |
| Danesi,Jafar | 115240 | JFK8 Education Session Part 5 | Class |
| Davidson-Decarish,Rose-Ann | 115240 | JFK8 Education Session Part 5 | Class |
| Ramirez,Jessica | 115240 | JFK8 Education Session Part 5 | Class |
| Aye,Yae | 115240 | JFK8 Education Session Part 5 | Class |
| Phetiere,Joshua | 115240 | JFK8 Education Session Part 5 | Class |
| Melendez-Fuster,Nikole | 115240 | JFK8 Education Session Part 5 | Class |
| Freeman,Kayla | 115240 | JFK8 Education Session Part 5 | Class |
| encarnacion,leonard | 115240 | JFK8 Education Session Part 5 | Class |
| encarnacion,leonard | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| warsaw,megan | 115240 | JFK8 Education Session Part 5 | Class |
| Arouif,Youssef | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Kimberly | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Jenkins,Theodore | 115240 | JFK8 Education Session Part 5 | Class |
| Ramos,Edward | 115240 | JFK8 Education Session Part 5 | Class |
| Perera,Nilan | 115240 | JFK8 Education Session Part 5 | Class |
| Benitez,Maurice | 115240 | JFK8 Education Session Part 5 | Class |
| PELUFFO,Cesar | 115240 | JFK8 Education Session Part 5 | Class |
| Combs,Dora | 115240 | JFK8 Education Session Part 5 | Class |
| garcia,yicel y | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Aguilar,Alicia | 115240 | JFK8 Education Session Part 5 | Class |
| Menequin,Miguel | 115240 | JFK8 Education Session Part 5 | Class |
| Fragoso,Teresita Guadalupe | 115240 | JFK8 Education Session Part 5 | Class |
| Sampson,Philmore | 115240 | JFK8 Education Session Part 5 | Class |
| Bynoe,Ron | 115240 | JFK8 Education Session Part 5 | Class |
| Benavides,Daniella | 115240 | JFK8 Education Session Part 5 | Class |
| Cambria,Bartholomew | 115240 | JFK8 Education Session Part 5 | Class |
| Rashid,Abdullah | 115240 | JFK8 Education Session Part 5 | Class |
| Maloloy-on,Raffy | 115240 | JFK8 Education Session Part 5 | Class |
| Galicia,Yoselyn | 115240 | JFK8 Education Session Part 5 | Class |
| BERNAL,BORIS a | 115240 | JFK8 Education Session Part 5 | Class |
| BERNAL,BORIS a | 115240 | JFK8 Education Session Part 5 | Class |
| Nazario,Luis Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Mcdaniel,Tamia | 115240 | JFK8 Education Session Part 5 | Class |
| Mcdaniel,Tamia | 115240 | JFK8 Education Session Part 5 | Class |
| Singh,Roxy | 115240 | JFK8 Education Session Part 5 | Class |
| Tapia,Eisten | 115240 | JFK8 Education Session Part 5 | Class |
| Charles,Celassie | 115240 | JFK8 Education Session Part 5 | Class |
| Davis,Jordan Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Lawton,Herbert | 115240 | JFK8 Education Session Part 5 | Class |
| Clarke,Antonnacio | 115240 | JFK8 Education Session Part 5 | Class |
| Suleman,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Anthony,Jeremiah | 115240 | JFK8 Education Session Part 5 | Class |
| Batten,Tyron Jahlil | 115240 | JFK8 Education Session Part 5 | Class |
| Lee,Jiinchan | 115240 | JFK8 Education Session Part 5 | Class |
| Humphrey,Herbert | 115240 | JFK8 Education Session Part 5 | Class |
| bennebri,youcef | 115240 | JFK8 Education Session Part 5 | Class |
| ELGHOBARY,OMER | 115240 | JFK8 Education Session Part 5 | Class |
| ELGHOBARY,OMER | 115240 | JFK8 Education Session Part 5 | Class |
| fitzgerald,tenarge | 115240 | JFK8 Education Session Part 5 | Class |
| De La Cruz,Arthur | 115240 | JFK8 Education Session Part 5 | Class |
| thein,samantha shwe | 115240 | JFK8 Education Session Part 5 | Class |
| Mejia,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Powell,Kamerhon | 115240 | JFK8 Education Session Part 5 | Class |
| Acosta,Jimmy Jr | 115240 | JFK8 Education Session Part 5 | Class |
| Senquiz,Ashley | 115240 | JFK8 Education Session Part 5 | Class |
| Boseman,Char-Ann | 115240 | JFK8 Education Session Part 5 | Class |
| Scarlett,Malachi | 115240 | JFK8 Education Session Part 5 | Class |
| Laiton,Vanesa | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Lessly Jackeline | 115240 | JFK8 Education Session Part 5 | Class |
| Baptiste,Kayla | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Victoria | 115240 | JFK8 Education Session Part 5 | Class |
| Mambuana,Mamie M | 115240 | JFK8 Education Session Part 5 | Class |
| Bellamy,Mateo | 115240 | JFK8 Education Session Part 5 | Class |
| rizkalla,Basem Boshra | 115240 | JFK8 Education Session Part 5 | Class |
| Fiumefreddo,Johnny | 115240 | JFK8 Education Session Part 5 | Class |
| HOSSAIN,MD | 115240 | JFK8 Education Session Part 5 | Class |
| sumo,mayama | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ortiz,Lance | 115240 | JFK8 Education Session Part 5 | Class |
| Martin,Steven | 115240 | JFK8 Education Session Part 5 | Class |
| Tye,Ekithia | 115240 | JFK8 Education Session Part 5 | Class |
| Debrosse,Dawens | 115240 | JFK8 Education Session Part 5 | Class |
| Murray,Logan Jack | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz,Nicholas | 115240 | JFK8 Education Session Part 5 | Class |
| Prusak,Chester M | 115240 | JFK8 Education Session Part 5 | Class |
| Velazquez,Nathaniel | 115240 | JFK8 Education Session Part 5 | Class |
| Velazquez,Nathaniel | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Walter | 115240 | JFK8 Education Session Part 5 | Class |
| Belton,Chantanek | 115240 | JFK8 Education Session Part 5 | Class |
| Mallon,Daniel Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Contreras,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Laboy Alvarez,Mayrelsy D | 115240 | JFK8 Education Session Part 5 | Class |
| Spataro,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Harris,Nadeen | 115240 | JFK8 Education Session Part 5 | Class |
| Pambou,Mauricette | 115240 | JFK8 Education Session Part 5 | Class |
| Brisbane,Jeffrey | 115240 | JFK8 Education Session Part 5 | Class |
| Mejia,Juan | 115240 | JFK8 Education Session Part 5 | Class |
| Mincey,Wafee | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Marcus | 115240 | JFK8 Education Session Part 5 | Class |
| Evans,Monique | 115240 | JFK8 Education Session Part 5 | Class |
| Polkosnik,Grazyna | 115240 | JFK8 Education Session Part 5 | Class |
| Simmons,Tyler Phillip | 115240 | JFK8 Education Session Part 5 | Class |
| luna de felix,Maria Margarita | 115240 | JFK8 Education Session Part 5 | Class |
| Cabrera,Roberto | 115240 | JFK8 Education Session Part 5 | Class |
| Pena,Jazmin | 115240 | JFK8 Education Session Part 5 | Class |
| Pena,Jazmin | 115240 | JFK8 Education Session Part 5 | Class |
| gill,rickford | 115240 | JFK8 Education Session Part 5 | Class |
| gill,rickford | 115240 | JFK8 Education Session Part 5 | Class |
| Weatherhead,Chris | 115240 | JFK8 Education Session Part 5 | Class |
| Ayala,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Nzazi Mundele,Gabie | 115240 | JFK8 Education Session Part 5 | Class |
| Marino,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,Rashid | 115240 | JFK8 Education Session Part 5 | Class |
| Islam,Md | 115240 | JFK8 Education Session Part 5 | Class |
| Akram,Awais | 115240 | JFK8 Education Session Part 5 | Class |
| Calimag,Enrico | 115240 | JFK8 Education Session Part 5 | Class |
| Holden,Donna Marie | 115240 | JFK8 Education Session Part 5 | Class |
| Zepherin,Crystal | 115240 | JFK8 Education Session Part 5 | Class |
| James,Jovain | 115240 | JFK8 Education Session Part 5 | Class |
| King,Malachi | 115240 | JFK8 Education Session Part 5 | Class |
| Nelson,Kenya Jay | 115240 | JFK8 Education Session Part 5 | Class |
| BELBAKI,MOHAMED | 115240 | JFK8 Education Session Part 5 | Class |
| Howells,David Vincent | 115240 | JFK8 Education Session Part 5 | Class |
| Cronin,Charice | 115240 | JFK8 Education Session Part 5 | Class |
| Abraham,Matt | 115240 | JFK8 Education Session Part 5 | Class |
| Russo,Anthony | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Salas,Zayda Y | 115240 | JFK8 Education Session Part 5 | Class |
| Hedges,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Sarauw,Stanley | 115240 | JFK8 Education Session Part 5 | Class |
| Charles,Windell | 115240 | JFK8 Education Session Part 5 | Class |
| Feraud,Melo | 115240 | JFK8 Education Session Part 5 | Class |
| Fisher,Shawna | 115240 | JFK8 Education Session Part 5 | Class |
| Hamed,Marwa | 115240 | JFK8 Education Session Part 5 | Class |
| Greene,Shakaii | 115240 | JFK8 Education Session Part 5 | Class |
| Viruet,Alexis | 115240 | JFK8 Education Session Part 5 | Class |
| Brito,John | 115240 | JFK8 Education Session Part 5 | Class |
| Castillo,Chris | 115240 | JFK8 Education Session Part 5 | Class |
| Ajayi,Idowu | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Anderson | 115240 | JFK8 Education Session Part 5 | Class |
| Moreno,Jaime | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia Martinez,Ilse | 115240 | JFK8 Education Session Part 5 | Class |
| Moreno Antonio,Jovita | 115240 | JFK8 Education Session Part 5 | Class |
| Bispham,Jazel | 115240 | JFK8 Education Session Part 5 | Class |
| Espinal,Marielys | 115240 | JFK8 Education Session Part 5 | Class |
| Espinal,Marielys | 115240 | JFK8 Education Session Part 5 | Class |
| Jardine,Zanela Urcilla | 115240 | JFK8 Education Session Part 5 | Class |
| Fogle,Kayla | 115240 | JFK8 Education Session Part 5 | Class |
| Mravlja,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Fumagalli,Linda | 115240 | JFK8 Education Session Part 5 | Class |
| Ataque,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Di Paolo,Kate | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz,Dalila | 115240 | JFK8 Education Session Part 5 | Class |
| Randall,Jack David | 115240 | JFK8 Education Session Part 5 | Class |
| M,Tamie | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Nicola,Martina | 115240 | JFK8 Education Session Part 5 | Class |
| Aguirre,Leslie | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Franco | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Franco | 115240 | JFK8 Education Session Part 5 | Class |
| Sarkes,Atif | 115240 | JFK8 Education Session Part 5 | Class |
| Timms,Duane Lamont | 115240 | JFK8 Education Session Part 5 | Class |
| Foster,Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Molina Jr,Benito | 115240 | JFK8 Education Session Part 5 | Class |
| Ayad,Ghada | 115240 | JFK8 Education Session Part 5 | Class |
| Nogueras,Roberto | 115240 | JFK8 Education Session Part 5 | Class |
| Bramwell,Carlos | 115240 | JFK8 Education Session Part 5 | Class |
| Bramwell,Carlos | 115240 | JFK8 Education Session Part 5 | Class |
| Marin,Leslie | 115240 | JFK8 Education Session Part 5 | Class |
| Oliver,Luis Heriberto | 115240 | JFK8 Education Session Part 5 | Class |
| Zumba,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| amaya vargas,angela | 115240 | JFK8 Education Session Part 5 | Class |
| Ajayi,Kehinde V | 115240 | JFK8 Education Session Part 5 | Class |
| Ajayi,Kehinde V | 115240 | JFK8 Education Session Part 5 | Class |
| Azzolino,Joseph | 115240 | JFK8 Education Session Part 5 | Class |

Amazon_000504

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Bullock,Darell | 115240 | JFK8 Education Session Part 5 | Class |
| Murray,Charles | 115240 | JFK8 Education Session Part 5 | Class |
| Lin,Eric | 115240 | JFK8 Education Session Part 5 | Class |
| Girgis,Remon Nabil | 115240 | JFK8 Education Session Part 5 | Class |
| Franco,Yaquelin Celeste | 115240 | JFK8 Education Session Part 5 | Class |
| Chan,Mingling | 115240 | JFK8 Education Session Part 5 | Class |
| grant,odarie | 115240 | JFK8 Education Session Part 5 | Class |
| Bullock,Jessica | 115240 | JFK8 Education Session Part 5 | Class |
| F Navarro,David | 115240 | JFK8 Education Session Part 5 | Class |
| Velasco,Angel | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Rafael | 115240 | JFK8 Education Session Part 5 | Class |
| McMillan,Mitchell | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Mcclarin Truss,Elaina Elaina | 115240 | JFK8 Education Session Part 5 | Class |
| Arthurton,Bretana | 115240 | JFK8 Education Session Part 5 | Class |
| Byrum,Melissa N | 115240 | JFK8 Education Session Part 5 | Class |
| Gracidas,Cristal | 115240 | JFK8 Education Session Part 5 | Class |
| Pirro,Vivianne | 115240 | JFK8 Education Session Part 5 | Class |
| Fajardo,Oscar | 115240 | JFK8 Education Session Part 5 | Class |
| Bradford,Ashley | 115240 | JFK8 Education Session Part 5 | Class |
| Pineda,David | 115240 | JFK8 Education Session Part 5 | Class |
| Mills,John | 115240 | JFK8 Education Session Part 5 | Class |
| greiss,bassem | 115240 | JFK8 Education Session Part 5 | Class |
| Gartor,Markpa | 115240 | JFK8 Education Session Part 5 | Class |
| Gartor,Markpa | 115240 | JFK8 Education Session Part 5 | Class |
| Peralta lora,Soranlly D | 115240 | JFK8 Education Session Part 5 | Class |
| Parker,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Parker,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Alex | 115240 | JFK8 Education Session Part 5 | Class |
| Lino,Carlos David | 115240 | JFK8 Education Session Part 5 | Class |
| Lino,Carlos David | 115240 | JFK8 Education Session Part 5 | Class |
| Lino,Carlos David | 115240 | JFK8 Education Session Part 5 | Class |
| Blocker,Shavone Latoya | 115240 | JFK8 Education Session Part 5 | Class |
| cain,jeremy e | 115240 | JFK8 Education Session Part 5 | Class |
| Danforth,Shawn | 115240 | JFK8 Education Session Part 5 | Class |
| Danforth,Shawn | 115240 | JFK8 Education Session Part 5 | Class |
| Garlisi,Chad | 115240 | JFK8 Education Session Part 5 | Class |
| chasi,bertha | 115240 | JFK8 Education Session Part 5 | Class |
| Morazan Machuca,Lizette Beatriz Beatriz | 115240 | JFK8 Education Session Part 5 | Class |
| Pierre Toussaint,Esther | 115240 | JFK8 Education Session Part 5 | Class |
| Amuzu,Precious yayra | 115240 | JFK8 Education Session Part 5 | Class |
| Villon,Adrian | 115240 | JFK8 Education Session Part 5 | Class |
| Bhatti,Muhammad | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Darius | 115240 | JFK8 Education Session Part 5 | Class |
| MATOS,ARMANDO | 115240 | JFK8 Education Session Part 5 | Class |
| Limage,Renette | 115240 | JFK8 Education Session Part 5 | Class |
| Tucker,Mariah | 115240 | JFK8 Education Session Part 5 | Class |
| ahamed,khondoker | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Santiago,Mel | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Adina | 115240 | JFK8 Education Session Part 5 | Class |
| Pierresaint,Marvin | 115240 | JFK8 Education Session Part 5 | Class |
| Mills,Justin | 115240 | JFK8 Education Session Part 5 | Class |
| rahman,mahbubur | 115240 | JFK8 Education Session Part 5 | Class |
| Bandoo,Shemar | 115240 | JFK8 Education Session Part 5 | Class |
| Khalaf,Odday | 115240 | JFK8 Education Session Part 5 | Class |
| ABOUAMIN,AHMED | 115240 | JFK8 Education Session Part 5 | Class |
| Oyediran,Adeoye Oladipupo | 115240 | JFK8 Education Session Part 5 | Class |
| Khaled,Helena | 115240 | JFK8 Education Session Part 5 | Class |
| Richardson,Stacy | 115240 | JFK8 Education Session Part 5 | Class |
| Olasupo,Ayodeji | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Carlton | 115240 | JFK8 Education Session Part 5 | Class |
| PENG,KENTON | 115240 | JFK8 Education Session Part 5 | Class |
| Hanifa,Mohamadu Rizan | 115240 | JFK8 Education Session Part 5 | Class |
| De Paula,Marcos | 115240 | JFK8 Education Session Part 5 | Class |
| Richards,Colson | 115240 | JFK8 Education Session Part 5 | Class |
| Richards,Colson | 115240 | JFK8 Education Session Part 5 | Class |
| Aguasvivas,Cleudy | 115240 | JFK8 Education Session Part 5 | Class |
| Aguasvivas,Cleudy | 115240 | JFK8 Education Session Part 5 | Class |
| Aguasvivas,Cleudy | 115240 | JFK8 Education Session Part 5 | Class |
| Campbell-Sheriff,Zodia | 115240 | JFK8 Education Session Part 5 | Class |
| Hoque,Stefon | 115240 | JFK8 Education Session Part 5 | Class |
| Chakma,Alex | 115240 | JFK8 Education Session Part 5 | Class |
| Tartamella,Dominick | 115240 | JFK8 Education Session Part 5 | Class |
| Clark,Alicia | 115240 | JFK8 Education Session Part 5 | Class |
| Mejia,Eileen | 115240 | JFK8 Education Session Part 5 | Class |
| Nassif,Wagdi Aziz | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Destiny | 115240 | JFK8 Education Session Part 5 | Class |
| Osman,Nory | 115240 | JFK8 Education Session Part 5 | Class |
| Ajala,Adeola | 115240 | JFK8 Education Session Part 5 | Class |
| Moreno,Romeo | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Jesus | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Tay | 115240 | JFK8 Education Session Part 5 | Class |
| Palomba,John | 115240 | JFK8 Education Session Part 5 | Class |
| Herra,Gilbert | 115240 | JFK8 Education Session Part 5 | Class |
| Duval,Jean | 115240 | JFK8 Education Session Part 5 | Class |
| Morillo,Antony | 115240 | JFK8 Education Session Part 5 | Class |
| Maloloy-on,Joseph Raul | 115240 | JFK8 Education Session Part 5 | Class |
| Jenkins,Tyquan | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Erickson | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Erickson | 115240 | JFK8 Education Session Part 5 | Class |
| gillett,Elizabeth C | 115240 | JFK8 Education Session Part 5 | Class |
| gillett,Elizabeth C | 115240 | JFK8 Education Session Part 5 | Class |
| Peters,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Awilmy | 115240 | JFK8 Education Session Part 5 | Class |
| kuniqi,haldi | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Jordan,Nykeisha | 115240 | JFK8 Education Session Part 5 | Class |
| Gbor,Emeline | 115240 | JFK8 Education Session Part 5 | Class |
| Ajibabi,Emily Onome | 115240 | JFK8 Education Session Part 5 | Class |
| Grishchenko,Elena | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Juwan | 115240 | JFK8 Education Session Part 5 | Class |
| Paul,Odeen | 115240 | JFK8 Education Session Part 5 | Class |
| Sosa,Oliver | 115240 | JFK8 Education Session Part 5 | Class |
| Lynch,Mary Katherine | 115240 | JFK8 Education Session Part 5 | Class |
| Akter,Aiysha | 115240 | JFK8 Education Session Part 5 | Class |
| HEWA ALANKARAGE,SAMANTHA | 115240 | JFK8 Education Session Part 5 | Class |
| Pollydore,Haile | 115240 | JFK8 Education Session Part 5 | Class |
| Flores Ortiz,Gessica | 115240 | JFK8 Education Session Part 5 | Class |
| Moran,Marisol | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarez,Reyna | 115240 | JFK8 Education Session Part 5 | Class |
| Allen,Ladonna | 115240 | JFK8 Education Session Part 5 | Class |
| Lattimore,James | 115240 | JFK8 Education Session Part 5 | Class |
| Barriento,Dayaniela | 115240 | JFK8 Education Session Part 5 | Class |
| Lanza,mike | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Jeffrey | 115240 | JFK8 Education Session Part 5 | Class |
| Ventre,Anny | 115240 | JFK8 Education Session Part 5 | Class |
| Agyemang,Kwabena | 115240 | JFK8 Education Session Part 5 | Class |
| Habib Joe,Kouakou Boitrin | 115240 | JFK8 Education Session Part 5 | Class |
| Manco,Sara | 115240 | JFK8 Education Session Part 5 | Class |
| Gutierrez,rosario | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,Aaron | 115240 | JFK8 Education Session Part 5 | Class |
| Mack,Tyrell | 115240 | JFK8 Education Session Part 5 | Class |
| Arizandieta Davila,Cecilia Isabel | 115240 | JFK8 Education Session Part 5 | Class |
| Vasquez,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez,Sayra | 115240 | JFK8 Education Session Part 5 | Class |
| BrownThomas,Taliek | 115240 | JFK8 Education Session Part 5 | Class |
| Majeski,Torii Marie | 115240 | JFK8 Education Session Part 5 | Class |
| Alkhan,Andre | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Ryan | 115240 | JFK8 Education Session Part 5 | Class |
| Marcial,Evirson Esteban | 115240 | JFK8 Education Session Part 5 | Class |
| Moye,Shakeen | 115240 | JFK8 Education Session Part 5 | Class |
| Dorvil,Richy | 115240 | JFK8 Education Session Part 5 | Class |
| ajewole,kehinde cyril | 115240 | JFK8 Education Session Part 5 | Class |
| Villegas,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarado,David | 115240 | JFK8 Education Session Part 5 | Class |
| Dixon,Elijah | 115240 | JFK8 Education Session Part 5 | Class |
| Mongelli,Vera | 115240 | JFK8 Education Session Part 5 | Class |
| wilson,mario | 115240 | JFK8 Education Session Part 5 | Class |
| Mcbride,Patricia L | 115240 | JFK8 Education Session Part 5 | Class |
| Matos,Nerys | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Reggie jerome | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Reggie jerome | 115240 | JFK8 Education Session Part 5 | Class |
| Omosebi,Oluwakemi | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Andrew J | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Bassett,Luke | 115240 | JFK8 Education Session Part 5 | Class |
| vann,Shameul | 115240 | JFK8 Education Session Part 5 | Class |
| Kolton,Danielle | 115240 | JFK8 Education Session Part 5 | Class |
| Boulaich,Bilal | 115240 | JFK8 Education Session Part 5 | Class |
| Cardosa,Nelba | 115240 | JFK8 Education Session Part 5 | Class |
| Ekonomi,Anja | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Selena | 115240 | JFK8 Education Session Part 5 | Class |
| Boakye,Yvonne | 115240 | JFK8 Education Session Part 5 | Class |
| Soto,Maikor | 115240 | JFK8 Education Session Part 5 | Class |
| dodo,sharafa A | 115240 | JFK8 Education Session Part 5 | Class |
| Balderas,Jonatan | 115240 | JFK8 Education Session Part 5 | Class |
| Harrell,Chiquita | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Joan | 115240 | JFK8 Education Session Part 5 | Class |
| Tran,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Luong,Kien Q | 115240 | JFK8 Education Session Part 5 | Class |
| Braxton,Kent | 115240 | JFK8 Education Session Part 5 | Class |
| Asamoah,Princess | 115240 | JFK8 Education Session Part 5 | Class |
| Asamoah,Princess | 115240 | JFK8 Education Session Part 5 | Class |
| Ehiosun,Ramsey Omonigho | 115240 | JFK8 Education Session Part 5 | Class |
| Burgos,Cristian | 115240 | JFK8 Education Session Part 5 | Class |
| Martin,Joe | 115240 | JFK8 Education Session Part 5 | Class |
| Martin,Joe | 115240 | JFK8 Education Session Part 5 | Class |
| Martin,Joe | 115240 | JFK8 Education Session Part 5 | Class |
| Cody,Daquesha | 115240 | JFK8 Education Session Part 5 | Class |
| Avendano,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Jumelles,Lorena | 115240 | JFK8 Education Session Part 5 | Class |
| Walton,Jarel Malik | 115240 | JFK8 Education Session Part 5 | Class |
| Phillip,Lisha | 115240 | JFK8 Education Session Part 5 | Class |
| JOSEPH,Jean Frantz | 115240 | JFK8 Education Session Part 5 | Class |
| Yanni,Frank | 115240 | JFK8 Education Session Part 5 | Class |
| Ezzat,Fahmy | 115240 | JFK8 Education Session Part 5 | Class |
| Villalongo,Amarilis | 115240 | JFK8 Education Session Part 5 | Class |
| Vivar,Magaly | 115240 | JFK8 Education Session Part 5 | Class |
| Ahmed,Mashood | 115240 | JFK8 Education Session Part 5 | Class |
| Ray,Zaqwayvis | 115240 | JFK8 Education Session Part 5 | Class |
| Telamour,Roodeline | 115240 | JFK8 Education Session Part 5 | Class |
| Flanders,Kenyon | 115240 | JFK8 Education Session Part 5 | Class |
| Butler,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Butler,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Lozada,Rocky Lizuanelle | 115240 | JFK8 Education Session Part 5 | Class |
| Lozada,Rocky Lizuanelle | 115240 | JFK8 Education Session Part 5 | Class |
| San Miguel,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Bame,Nevila | 115240 | JFK8 Education Session Part 5 | Class |
| Murph,Zariah | 115240 | JFK8 Education Session Part 5 | Class |
| James,Orel | 115240 | JFK8 Education Session Part 5 | Class |
| keely,steve | 115240 | JFK8 Education Session Part 5 | Class |
| Forbes,Kalisha | 115240 | JFK8 Education Session Part 5 | Class |
| Rachell,Siobhan | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Otero,Jason Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Frazzer,Kayla | 115240 | JFK8 Education Session Part 5 | Class |
| Ward,Trier | 115240 | JFK8 Education Session Part 5 | Class |
| Fowler,Lloyd | 115240 | JFK8 Education Session Part 5 | Class |
| Fowler,Lloyd | 115240 | JFK8 Education Session Part 5 | Class |
| Caballero,Charytin | 115240 | JFK8 Education Session Part 5 | Class |
| Cometa,Marveluz | 115240 | JFK8 Education Session Part 5 | Class |
| Rahman,Mohidur | 115240 | JFK8 Education Session Part 5 | Class |
| Lacroix,Kymani | 115240 | JFK8 Education Session Part 5 | Class |
| michel,loumann | 115240 | JFK8 Education Session Part 5 | Class |
| Machuca,Lizbeth | 115240 | JFK8 Education Session Part 5 | Class |
| Machuca,Lizbeth | 115240 | JFK8 Education Session Part 5 | Class |
| Kaur,Amritpal | 115240 | JFK8 Education Session Part 5 | Class |
| Lafleur,Phara | 115240 | JFK8 Education Session Part 5 | Class |
| Castaldi,Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Robles,Gilberto | 115240 | JFK8 Education Session Part 5 | Class |
| Navarro vera,Jerry Aron | 115240 | JFK8 Education Session Part 5 | Class |
| Nurse,Gabriel | 115240 | JFK8 Education Session Part 5 | Class |
| Tranquille,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Gabrielle | 115240 | JFK8 Education Session Part 5 | Class |
| Mohansingh,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Marong,Momodou | 115240 | JFK8 Education Session Part 5 | Class |
| Marong,Momodou | 115240 | JFK8 Education Session Part 5 | Class |
| Gerges,Elhamy | 115240 | JFK8 Education Session Part 5 | Class |
| Broncano,Wilfredo | 115240 | JFK8 Education Session Part 5 | Class |
| Broncano,Wilfredo | 115240 | JFK8 Education Session Part 5 | Class |
| Broncano,Wilfredo | 115240 | JFK8 Education Session Part 5 | Class |
| Kabeera,Nagesh | 115240 | JFK8 Education Session Part 5 | Class |
| CISSE,ABDOULAYE | 115240 | JFK8 Education Session Part 5 | Class |
| Montealegre,Gabriela | 115240 | JFK8 Education Session Part 5 | Class |
| Guillaumette,Louisgene | 115240 | JFK8 Education Session Part 5 | Class |
| Montanez,Gertrudis | 115240 | JFK8 Education Session Part 5 | Class |
| Montanez,Gertrudis | 115240 | JFK8 Education Session Part 5 | Class |
| Torres,Melida | 115240 | JFK8 Education Session Part 5 | Class |
| Frankel,Jack | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Bryseyda | 115240 | JFK8 Education Session Part 5 | Class |
| Castillo,Jahaira | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez,Yesenia | 115240 | JFK8 Education Session Part 5 | Class |
| Bhatti,Bilal | 115240 | JFK8 Education Session Part 5 | Class |
| ABDOU,AHMED ABD EL SATTAR | 115240 | JFK8 Education Session Part 5 | Class |
| Rolland,Hakeem | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Jennifer | 115240 | JFK8 Education Session Part 5 | Class |
| Priego,Jackie | 115240 | JFK8 Education Session Part 5 | Class |
| Cabrera,Ricardo | 115240 | JFK8 Education Session Part 5 | Class |
| Ndoye,Adama | 115240 | JFK8 Education Session Part 5 | Class |
| Dawkins,Dewayne | 115240 | JFK8 Education Session Part 5 | Class |
| Clarke,Sandre | 115240 | JFK8 Education Session Part 5 | Class |
| Fatone,Jack | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Fredericks,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| Aslam,Farhan | 115240 | JFK8 Education Session Part 5 | Class |
| Rey,Maria Vilma | 115240 | JFK8 Education Session Part 5 | Class |
| KADRO,MUSTAFA | 115240 | JFK8 Education Session Part 5 | Class |
| Louissaint,Ashley | 115240 | JFK8 Education Session Part 5 | Class |
| Ajibose,Adewale Adelanwa | 115240 | JFK8 Education Session Part 5 | Class |
| Cherry,Richard Q | 115240 | JFK8 Education Session Part 5 | Class |
| Hatcher,Warren | 115240 | JFK8 Education Session Part 5 | Class |
| Campbell,Malcolm | 115240 | JFK8 Education Session Part 5 | Class |
| Hall,Dwight | 115240 | JFK8 Education Session Part 5 | Class |
| Vargas,Grethel | 115240 | JFK8 Education Session Part 5 | Class |
| Torrico,Guido D. | 115240 | JFK8 Education Session Part 5 | Class |
| Carrero,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Famiglietti,Antonia Debra | 115240 | JFK8 Education Session Part 5 | Class |
| Tunstall,Dominic | 115240 | JFK8 Education Session Part 5 | Class |
| Bamba,Vazoumana | 115240 | JFK8 Education Session Part 5 | Class |
| Jalloh,Ibrahima | 115240 | JFK8 Education Session Part 5 | Class |
| Cardona G.,Yhonier | 115240 | JFK8 Education Session Part 5 | Class |
| Merritt,Amanda | 115240 | JFK8 Education Session Part 5 | Class |
| Smalls,Devona | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Silicia | 115240 | JFK8 Education Session Part 5 | Class |
| Beteta,Nicolas | 115240 | JFK8 Education Session Part 5 | Class |
| Rexach,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Ciudad,Mathew | 115240 | JFK8 Education Session Part 5 | Class |
| Vargas,Victor | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Kedar | 115240 | JFK8 Education Session Part 5 | Class |
| Mariani,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Amar,Binetou | 115240 | JFK8 Education Session Part 5 | Class |
| Ghobrial,Adel Guirguis | 115240 | JFK8 Education Session Part 5 | Class |
| Molina,Tristan | 115240 | JFK8 Education Session Part 5 | Class |
| Khamidov,Lenny | 115240 | JFK8 Education Session Part 5 | Class |
| Hutchinson,Renee | 115240 | JFK8 Education Session Part 5 | Class |
| Scotto,Marcello | 115240 | JFK8 Education Session Part 5 | Class |
| Bernacet,Jessica | 115240 | JFK8 Education Session Part 5 | Class |
| Rincon,Juan | 115240 | JFK8 Education Session Part 5 | Class |
| Allen,Elijah | 115240 | JFK8 Education Session Part 5 | Class |
| Seale,Danielle | 115240 | JFK8 Education Session Part 5 | Class |
| Lara,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Roldan,Carol O | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Nick | 115240 | JFK8 Education Session Part 5 | Class |
| Matani,Abdelhalim | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Jessica | 115240 | JFK8 Education Session Part 5 | Class |
| Lushaj,Aldijana | 115240 | JFK8 Education Session Part 5 | Class |
| Porter,Aaron | 115240 | JFK8 Education Session Part 5 | Class |
| Elmsalekaty,Walaa | 115240 | JFK8 Education Session Part 5 | Class |
| Olateru-Olagbegi,Adeniyi | 115240 | JFK8 Education Session Part 5 | Class |
| Foster-Roach,Sherlin Francis | 115240 | JFK8 Education Session Part 5 | Class |
| Casilla,Benny Ruben | 115240 | JFK8 Education Session Part 5 | Class |

Amazon_000510

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Matos,Carrie | 115240 | JFK8 Education Session Part 5 | Class |
| Soto,Crystal Lee | 115240 | JFK8 Education Session Part 5 | Class |
| Ramos,Alan | 115240 | JFK8 Education Session Part 5 | Class |
| Hayat,Umer | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez,Jesenia | 115240 | JFK8 Education Session Part 5 | Class |
| Guzman,Yaneiris E | 115240 | JFK8 Education Session Part 5 | Class |
| Frias,Juan | 115240 | JFK8 Education Session Part 5 | Class |
| watkins,domenick | 115240 | JFK8 Education Session Part 5 | Class |
| watkins,domenick | 115240 | JFK8 Education Session Part 5 | Class |
| Heath,Lynnasya | 115240 | JFK8 Education Session Part 5 | Class |
| Moore,Marcus Linus | 115240 | JFK8 Education Session Part 5 | Class |
| Alaur,Lahab | 115240 | JFK8 Education Session Part 5 | Class |
| McLeish,Doretha | 115240 | JFK8 Education Session Part 5 | Class |
| Meredith,Zipporah | 115240 | JFK8 Education Session Part 5 | Class |
| Findley,Esther | 115240 | JFK8 Education Session Part 5 | Class |
| Findley,Esther | 115240 | JFK8 Education Session Part 5 | Class |
| OLAYIWOLE,SAMUEL | 115240 | JFK8 Education Session Part 5 | Class |
| Newman,Keyanna Lavina | 115240 | JFK8 Education Session Part 5 | Class |
| Del Toro II,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Spruell,Chislon | 115240 | JFK8 Education Session Part 5 | Class |
| Crawford-Stephens,Vivette | 115240 | JFK8 Education Session Part 5 | Class |
| Gayed,Youssef | 115240 | JFK8 Education Session Part 5 | Class |
| Olango,Ayessa Joan Tura | 115240 | JFK8 Education Session Part 5 | Class |
| Fadayini,Fiyinfoluwa | 115240 | JFK8 Education Session Part 5 | Class |
| Miller,Alfred | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz,Steph | 115240 | JFK8 Education Session Part 5 | Class |
| Citarella,Denise Frances | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Candy | 115240 | JFK8 Education Session Part 5 | Class |
| Mohamed,Hasan | 115240 | JFK8 Education Session Part 5 | Class |
| Duke,Chauncey | 115240 | JFK8 Education Session Part 5 | Class |
| Sadiq,nour | 115240 | JFK8 Education Session Part 5 | Class |
| vera,crystallee | 115240 | JFK8 Education Session Part 5 | Class |
| Vaquero,Denise | 115240 | JFK8 Education Session Part 5 | Class |
| Moncada,Tiago | 115240 | JFK8 Education Session Part 5 | Class |
| Bangura,Bai | 115240 | JFK8 Education Session Part 5 | Class |
| Haynes,Destiny | 115240 | JFK8 Education Session Part 5 | Class |
| Santyous,Bishoy Rafaat | 115240 | JFK8 Education Session Part 5 | Class |
| Jean louis,Dayana | 115240 | JFK8 Education Session Part 5 | Class |
| Mikhail,Remon N | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Nicole R | 115240 | JFK8 Education Session Part 5 | Class |
| Derival,Gabriel | 115240 | JFK8 Education Session Part 5 | Class |
| Lee,Bria | 115240 | JFK8 Education Session Part 5 | Class |
| Lee,Bria | 115240 | JFK8 Education Session Part 5 | Class |
| Valles,Yvelisse | 115240 | JFK8 Education Session Part 5 | Class |
| Toyo,Pacino | 115240 | JFK8 Education Session Part 5 | Class |
| Matthews,Tiaura | 115240 | JFK8 Education Session Part 5 | Class |
| cocone,miguel | 115240 | JFK8 Education Session Part 5 | Class |
| Fernando,Malmalabaduge Raji | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Wang,Ying | 115240 | JFK8 Education Session Part 5 | Class |
| Figueroa Durand,Hida | 115240 | JFK8 Education Session Part 5 | Class |
| Hecker,Ivan | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Keyshaune Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| abdelmaaboud,gamal | 115240 | JFK8 Education Session Part 5 | Class |
| Begum,Shmail | 115240 | JFK8 Education Session Part 5 | Class |
| Bennett,Ahmed | 115240 | JFK8 Education Session Part 5 | Class |
| Pena-Huerfano,Juan | 115240 | JFK8 Education Session Part 5 | Class |
| Lacroix,Jocy Florence | 115240 | JFK8 Education Session Part 5 | Class |
| Colas,Johanne | 115240 | JFK8 Education Session Part 5 | Class |
| Caines,Peter | 115240 | JFK8 Education Session Part 5 | Class |
| polanco,Danny B | 115240 | JFK8 Education Session Part 5 | Class |
| Younes,Hassan | 115240 | JFK8 Education Session Part 5 | Class |
| Morocho,Neal Fernando | 115240 | JFK8 Education Session Part 5 | Class |
| Escobar Alfaro,Mario | 115240 | JFK8 Education Session Part 5 | Class |
| Ebinum,Felix | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Julissa | 115240 | JFK8 Education Session Part 5 | Class |
| Davis,Kyele Theodore | 115240 | JFK8 Education Session Part 5 | Class |
| Ajayi,Benjamin | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Ernesto | 115240 | JFK8 Education Session Part 5 | Class |
| Delbry,Jamie | 115240 | JFK8 Education Session Part 5 | Class |
| Ghannami,Sylvana | 115240 | JFK8 Education Session Part 5 | Class |
| Westcott,Valerie | 115240 | JFK8 Education Session Part 5 | Class |
| Lindsay,Kareem Rahine | 115240 | JFK8 Education Session Part 5 | Class |
| Lindsay,Kareem Rahine | 115240 | JFK8 Education Session Part 5 | Class |
| Thompson,Tracylee | 115240 | JFK8 Education Session Part 5 | Class |
| Taylor,Infinite | 115240 | JFK8 Education Session Part 5 | Class |
| Collins,Nekkei | 115240 | JFK8 Education Session Part 5 | Class |
| Jacobs,Leonard | 115240 | JFK8 Education Session Part 5 | Class |
| Prince-pottinger,seberna | 115240 | JFK8 Education Session Part 5 | Class |
| AKINMUSAYO,ANUOLUWAPO | 115240 | JFK8 Education Session Part 5 | Class |
| Armento,John | 115240 | JFK8 Education Session Part 5 | Class |
| Rincon,Yadira | 115240 | JFK8 Education Session Part 5 | Class |
| Pan,Yi | 115240 | JFK8 Education Session Part 5 | Class |
| williams,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Fontanez,Jimmy | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Desiree | 115240 | JFK8 Education Session Part 5 | Class |
| Foster,illy | 115240 | JFK8 Education Session Part 5 | Class |
| Mir,Edgar | 115240 | JFK8 Education Session Part 5 | Class |
| Carter Rivers,Nyala S | 115240 | JFK8 Education Session Part 5 | Class |
| Guzman,Nancy | 115240 | JFK8 Education Session Part 5 | Class |
| Cona,Vanessa | 115240 | JFK8 Education Session Part 5 | Class |
| Cummings,Sherman | 115240 | JFK8 Education Session Part 5 | Class |
| villarreal,hector | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,John | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,John | 115240 | JFK8 Education Session Part 5 | Class |
| Abreu,Arianny | 115240 | JFK8 Education Session Part 5 | Class |
| PEREZ BRADY,JOHANNA | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Vittoriosa,Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Zhu,Ming | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Stevens | 115240 | JFK8 Education Session Part 5 | Class |
| samaranayake,sasadaree | 115240 | JFK8 Education Session Part 5 | Class |
| samaranayake,sasadaree | 115240 | JFK8 Education Session Part 5 | Class |
| samaranayake,sasadaree | 115240 | JFK8 Education Session Part 5 | Class |
| Mejia-Reyes,Juan | 115240 | JFK8 Education Session Part 5 | Class |
| Thorne,Renaldo | 115240 | JFK8 Education Session Part 5 | Class |
| Handfield,Dwayne | 115240 | JFK8 Education Session Part 5 | Class |
| Tatarka,Mary | 115240 | JFK8 Education Session Part 5 | Class |
| VIERNES,EUSTAQUIO AUSTRIA | 115240 | JFK8 Education Session Part 5 | Class |
| Wawrzonek,Dorota H | 115240 | JFK8 Education Session Part 5 | Class |
| Alexander,Dante Rob | 115240 | JFK8 Education Session Part 5 | Class |
| Luc,Hugues | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Tiffany | 115240 | JFK8 Education Session Part 5 | Class |
| Cerero,Viridiana | 115240 | JFK8 Education Session Part 5 | Class |
| Siegel,Seth | 115240 | JFK8 Education Session Part 5 | Class |
| Ocasio,Brianna | 115240 | JFK8 Education Session Part 5 | Class |
| Dasalla,Clyde Liam | 115240 | JFK8 Education Session Part 5 | Class |
| TAYLOR,TYRONE | 115240 | JFK8 Education Session Part 5 | Class |
| OHara,Joseph Patrick | 115240 | JFK8 Education Session Part 5 | Class |
| Sellapperuma,Chamara Sasirini | 115240 | JFK8 Education Session Part 5 | Class |
| Stiebel,Emanuel Peter | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Dana | 115240 | JFK8 Education Session Part 5 | Class |
| Green,Daniella | 115240 | JFK8 Education Session Part 5 | Class |
| Epstein,Blake | 115240 | JFK8 Education Session Part 5 | Class |
| Jaleiba,Austine hamindu | 115240 | JFK8 Education Session Part 5 | Class |
| Calliste,Candice | 115240 | JFK8 Education Session Part 5 | Class |
| Bonilla,Jennifer | 115240 | JFK8 Education Session Part 5 | Class |
| Romero,Carlos | 115240 | JFK8 Education Session Part 5 | Class |
| ROGERS-DAVID,CHARISSE | 115240 | JFK8 Education Session Part 5 | Class |
| Hussein,Ran | 115240 | JFK8 Education Session Part 5 | Class |
| St. Hilaire,Junior Michel | 115240 | JFK8 Education Session Part 5 | Class |
| Sanders,Nijah | 115240 | JFK8 Education Session Part 5 | Class |
| Long,Marcus | 115240 | JFK8 Education Session Part 5 | Class |
| Hurtado,Ana | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas-Watson,Sandra | 115240 | JFK8 Education Session Part 5 | Class |
| Carpio-Cardoso,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz,CC | 115240 | JFK8 Education Session Part 5 | Class |
| Alozie,Princess | 115240 | JFK8 Education Session Part 5 | Class |
| Colon,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Colon,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Bourguillon,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Hussain,Muhammad | 115240 | JFK8 Education Session Part 5 | Class |
| Giron,Leika | 115240 | JFK8 Education Session Part 5 | Class |
| Legere,Denise | 115240 | JFK8 Education Session Part 5 | Class |
| Cooks,Darlene B | 115240 | JFK8 Education Session Part 5 | Class |
| Pucciarelli,Nicholas | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Obonaga,Charlie | 115240 | JFK8 Education Session Part 5 | Class |
| Walcott,D'angelo | 115240 | JFK8 Education Session Part 5 | Class |
| Clarke,David | 115240 | JFK8 Education Session Part 5 | Class |
| Horton,Maceo | 115240 | JFK8 Education Session Part 5 | Class |
| Mounier,Ana | 115240 | JFK8 Education Session Part 5 | Class |
| Allison,Alice | 115240 | JFK8 Education Session Part 5 | Class |
| Koroma,Ballay | 115240 | JFK8 Education Session Part 5 | Class |
| Crishom,Hope | 115240 | JFK8 Education Session Part 5 | Class |
| Bristol,Akelia | 115240 | JFK8 Education Session Part 5 | Class |
| Pinnock,Gary | 115240 | JFK8 Education Session Part 5 | Class |
| Cartagena,Barbara Ellen | 115240 | JFK8 Education Session Part 5 | Class |
| Velez,Margaret | 115240 | JFK8 Education Session Part 5 | Class |
| Calvanico,Louis | 115240 | JFK8 Education Session Part 5 | Class |
| Delacruz Wong,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Delacruz Wong,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Gomez,ALEX | 115240 | JFK8 Education Session Part 5 | Class |
| Khaled,Alex | 115240 | JFK8 Education Session Part 5 | Class |
| Bhuiya,Kawsar | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Felipe J | 115240 | JFK8 Education Session Part 5 | Class |
| Ajikobi,Adeyemi | 115240 | JFK8 Education Session Part 5 | Class |
| GOMEZ MARTINEZ,WENDY | 115240 | JFK8 Education Session Part 5 | Class |
| Boatswain,Enrick | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Bradley | 115240 | JFK8 Education Session Part 5 | Class |
| Bautista,Steven | 115240 | JFK8 Education Session Part 5 | Class |
| Ndiaye,Seynabou | 115240 | JFK8 Education Session Part 5 | Class |
| Zhou,Gary | 115240 | JFK8 Education Session Part 5 | Class |
| Ridley,Jedidiah | 115240 | JFK8 Education Session Part 5 | Class |
| Belliard,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Diallo,Mamadou | 115240 | JFK8 Education Session Part 5 | Class |
| Mcmeans,Terrell | 115240 | JFK8 Education Session Part 5 | Class |
| campusano,David | 115240 | JFK8 Education Session Part 5 | Class |
| Htun,Monmon | 115240 | JFK8 Education Session Part 5 | Class |
| Htun,Monmon | 115240 | JFK8 Education Session Part 5 | Class |
| callen,frank | 115240 | JFK8 Education Session Part 5 | Class |
| Francis,Benjamin | 115240 | JFK8 Education Session Part 5 | Class |
| cisse,Saheikhtijan | 115240 | JFK8 Education Session Part 5 | Class |
| Mujumder,Mossarrup | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Keala | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Steven | 115240 | JFK8 Education Session Part 5 | Class |
| Juarez,Kemberlin | 115240 | JFK8 Education Session Part 5 | Class |
| Roman,Haydee | 115240 | JFK8 Education Session Part 5 | Class |
| Escobar,Roy | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Jennifer | 115240 | JFK8 Education Session Part 5 | Class |
| Some,Gourbangdome R. Anne | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,William Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,William Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarez,Julio | 115240 | JFK8 Education Session Part 5 | Class |
| Zou,Ruzhen | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Zou,Ruzhen | 115240 | JFK8 Education Session Part 5 | Class |
| Stevenson,Anita | 115240 | JFK8 Education Session Part 5 | Class |
| Aguilar,Fernando | 115240 | JFK8 Education Session Part 5 | Class |
| Marthone,Rachelle | 115240 | JFK8 Education Session Part 5 | Class |
| GLADDEN,DARRELL | 115240 | JFK8 Education Session Part 5 | Class |
| Thompkins,Kai | 115240 | JFK8 Education Session Part 5 | Class |
| Depaulis,Rainee Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Vilchis,Lisett | 115240 | JFK8 Education Session Part 5 | Class |
| Blossomgame,Ronald | 115240 | JFK8 Education Session Part 5 | Class |
| Veras,Luisauris | 115240 | JFK8 Education Session Part 5 | Class |
| Ho,William | 115240 | JFK8 Education Session Part 5 | Class |
| Chapan,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Bridgemohan,Bajnath | 115240 | JFK8 Education Session Part 5 | Class |
| RIOS,OMAR | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Nickie | 115240 | JFK8 Education Session Part 5 | Class |
| Salgado,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Dottin,Faith | 115240 | JFK8 Education Session Part 5 | Class |
| Kamel,Gouzif | 115240 | JFK8 Education Session Part 5 | Class |
| Friscia,Kathleen | 115240 | JFK8 Education Session Part 5 | Class |
| Mills,Silvia | 115240 | JFK8 Education Session Part 5 | Class |
| Mills,Silvia | 115240 | JFK8 Education Session Part 5 | Class |
| Onajoko,Olusola | 115240 | JFK8 Education Session Part 5 | Class |
| Laboy,Scott | 115240 | JFK8 Education Session Part 5 | Class |
| Marx,Eric | 115240 | JFK8 Education Session Part 5 | Class |
| Youssef,Ahmed Saad | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,Josselyn J | 115240 | JFK8 Education Session Part 5 | Class |
| Griffin,Javiet | 115240 | JFK8 Education Session Part 5 | Class |
| Cannon,Charles | 115240 | JFK8 Education Session Part 5 | Class |
| Kamara,Jalon | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Jerilin | 115240 | JFK8 Education Session Part 5 | Class |
| Powell,Shakeem | 115240 | JFK8 Education Session Part 5 | Class |
| Powell,Shakeem | 115240 | JFK8 Education Session Part 5 | Class |
| GARUSINGHAGE,NIHAL SAMSON | 115240 | JFK8 Education Session Part 5 | Class |
| Beeston,Anahya | 115240 | JFK8 Education Session Part 5 | Class |
| Tran,Chi An | 115240 | JFK8 Education Session Part 5 | Class |
| Caban,Christina | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Phillip | 115240 | JFK8 Education Session Part 5 | Class |
| Dragjoshi,Abdurrahman | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez-Clusan,Wanda | 115240 | JFK8 Education Session Part 5 | Class |
| Waters,Jasmine | 115240 | JFK8 Education Session Part 5 | Class |
| Frontal,Ashly | 115240 | JFK8 Education Session Part 5 | Class |
| Michel diaz,Cheylina | 115240 | JFK8 Education Session Part 5 | Class |
| Ames,Egypt | 115240 | JFK8 Education Session Part 5 | Class |
| Ames,Egypt | 115240 | JFK8 Education Session Part 5 | Class |
| Unda,Gladys M | 115240 | JFK8 Education Session Part 5 | Class |
| Cenatiempo,Philip | 115240 | JFK8 Education Session Part 5 | Class |
| Henao,Anthony | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Spearman,John | 115240 | JFK8 Education Session Part 5 | Class |
| OYINLOYE,ADEYINKA | 115240 | JFK8 Education Session Part 5 | Class |
| Anis,Mohammed T | 115240 | JFK8 Education Session Part 5 | Class |
| Jean toussaint,OLDINE | 115240 | JFK8 Education Session Part 5 | Class |
| Yang,Quankun | 115240 | JFK8 Education Session Part 5 | Class |
| Newcomen,Matt John | 115240 | JFK8 Education Session Part 5 | Class |
| Gallo,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Fatima,Fozia | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez,Timothy | 115240 | JFK8 Education Session Part 5 | Class |
| Romero,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Sow,Kadiatou | 115240 | JFK8 Education Session Part 5 | Class |
| Rojas,Cynthia | 115240 | JFK8 Education Session Part 5 | Class |
| Moronta,Crisleydy Del pilar | 115240 | JFK8 Education Session Part 5 | Class |
| snyder,brianna | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| sherieff,shervin | 115240 | JFK8 Education Session Part 5 | Class |
| Neri,Selena Lizbeth | 115240 | JFK8 Education Session Part 5 | Class |
| Roach,Horace Vincent | 115240 | JFK8 Education Session Part 5 | Class |
| Gibbs,Khaliq | 115240 | JFK8 Education Session Part 5 | Class |
| Beltre,Gisela | 115240 | JFK8 Education Session Part 5 | Class |
| zephyrine,wade | 115240 | JFK8 Education Session Part 5 | Class |
| Adekunle,Olaide Sarah | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Isaiah | 115240 | JFK8 Education Session Part 5 | Class |
| Penglase,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Reynolds,Angel | 115240 | JFK8 Education Session Part 5 | Class |
| Lee,Donte | 115240 | JFK8 Education Session Part 5 | Class |
| Bustillo,Victor | 115240 | JFK8 Education Session Part 5 | Class |
| Chauca,David Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Amundsen,Angelica | 115240 | JFK8 Education Session Part 5 | Class |
| Bell,Deniesha | 115240 | JFK8 Education Session Part 5 | Class |
| Mashack,Willie | 115240 | JFK8 Education Session Part 5 | Class |
| Litto,Catherine | 115240 | JFK8 Education Session Part 5 | Class |
| Wauchorpe,Martin Shomari | 115240 | JFK8 Education Session Part 5 | Class |
| Garris,Gloria | 115240 | JFK8 Education Session Part 5 | Class |
| Dampman,Jesse | 115240 | JFK8 Education Session Part 5 | Class |
| JAMESON,DARREN Todd | 115240 | JFK8 Education Session Part 5 | Class |
| Lee,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Forbes,D'vaughn Danielle | 115240 | JFK8 Education Session Part 5 | Class |
| Sempertegui,Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Sempertegui,Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Ramcharitar,Devon | 115240 | JFK8 Education Session Part 5 | Class |
| Nguemourou,Kadjilom | 115240 | JFK8 Education Session Part 5 | Class |
| Nguemourou,Kadjilom | 115240 | JFK8 Education Session Part 5 | Class |
| Mendez,Jonathan Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Adetunji,Aderonke | 115240 | JFK8 Education Session Part 5 | Class |
| McQueen,Jordan | 115240 | JFK8 Education Session Part 5 | Class |
| Avendano,Bianca | 115240 | JFK8 Education Session Part 5 | Class |
| Avendano,Bianca | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Avendano,Bianca | 115240 | JFK8 Education Session Part 5 | Class |
| Otero,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Almazo,Alexsandra | 115240 | JFK8 Education Session Part 5 | Class |
| Perry,Ernest | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Chen,Timothy | 115240 | JFK8 Education Session Part 5 | Class |
| Jamaleddine,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Jamaleddine,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Belmore,Aaron Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Hanna,Amir | 115240 | JFK8 Education Session Part 5 | Class |
| Lee,Yin Wang | 115240 | JFK8 Education Session Part 5 | Class |
| Ajikobi,Olajide | 115240 | JFK8 Education Session Part 5 | Class |
| Ioannu,George | 115240 | JFK8 Education Session Part 5 | Class |
| Joyner,Eugene | 115240 | JFK8 Education Session Part 5 | Class |
| Griss,Edward | 115240 | JFK8 Education Session Part 5 | Class |
| Whittaker,Chanelle | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Raymond jason | 115240 | JFK8 Education Session Part 5 | Class |
| McCauley,Zaire | 115240 | JFK8 Education Session Part 5 | Class |
| Charles,Mark | 115240 | JFK8 Education Session Part 5 | Class |
| Navarro Espinoza,Gabriela | 115240 | JFK8 Education Session Part 5 | Class |
| Moreno,Pedro | 115240 | JFK8 Education Session Part 5 | Class |
| Roy,Rechelle | 115240 | JFK8 Education Session Part 5 | Class |
| LaPietra,Chris | 115240 | JFK8 Education Session Part 5 | Class |
| Chang,Sandra | 115240 | JFK8 Education Session Part 5 | Class |
| Francis,Jevonte | 115240 | JFK8 Education Session Part 5 | Class |
| Littles,Daivina prasies | 115240 | JFK8 Education Session Part 5 | Class |
| Kader,Abdul | 115240 | JFK8 Education Session Part 5 | Class |
| Titus,John | 115240 | JFK8 Education Session Part 5 | Class |
| bekhet,sameh | 115240 | JFK8 Education Session Part 5 | Class |
| Aldea,Patricia | 115240 | JFK8 Education Session Part 5 | Class |
| ahmad,syed | 115240 | JFK8 Education Session Part 5 | Class |
| Blue,Dawn Congetta | 115240 | JFK8 Education Session Part 5 | Class |
| Jenkins,Rashard  Jenkins | 115240 | JFK8 Education Session Part 5 | Class |
| NARCISSE,SHILLER | 115240 | JFK8 Education Session Part 5 | Class |
| Dorcilien,Marck | 115240 | JFK8 Education Session Part 5 | Class |
| Pumalloclla,Elsa | 115240 | JFK8 Education Session Part 5 | Class |
| Mitchell,Alianna | 115240 | JFK8 Education Session Part 5 | Class |
| Shaikh,Farrukh | 115240 | JFK8 Education Session Part 5 | Class |
| Harley,Ronnie | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Aarron | 115240 | JFK8 Education Session Part 5 | Class |
| carbonell,nurat | 115240 | JFK8 Education Session Part 5 | Class |
| carbonell,nurat | 115240 | JFK8 Education Session Part 5 | Class |
| Stewart,Manuel | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz aponte,Paloma nilvett | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz aponte,Paloma nilvett | 115240 | JFK8 Education Session Part 5 | Class |
| Cushing,Shelby- Lynn | 115240 | JFK8 Education Session Part 5 | Class |
| Cantirino,James | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Henry,Tray | 115240 | JFK8 Education Session Part 5 | Class |
| Calderone,Christine | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Casidy | 115240 | JFK8 Education Session Part 5 | Class |
| Gamboa,Jancy | 115240 | JFK8 Education Session Part 5 | Class |
| Lara,Cesar | 115240 | JFK8 Education Session Part 5 | Class |
| Young,Scarlett | 115240 | JFK8 Education Session Part 5 | Class |
| Zdunek,Mary B. | 115240 | JFK8 Education Session Part 5 | Class |
| Rengifo,Juzemar | 115240 | JFK8 Education Session Part 5 | Class |
| Robles,Paola | 115240 | JFK8 Education Session Part 5 | Class |
| Vandyck,Yasmeen | 115240 | JFK8 Education Session Part 5 | Class |
| Osorio,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Fantauzzi,Manjula | 115240 | JFK8 Education Session Part 5 | Class |
| Justin,Judith | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Maria Socorro | 115240 | JFK8 Education Session Part 5 | Class |
| Michel,Ermionne | 115240 | JFK8 Education Session Part 5 | Class |
| Carrube,Tommy | 115240 | JFK8 Education Session Part 5 | Class |
| valmont,jean guerdy | 115240 | JFK8 Education Session Part 5 | Class |
| Tarr,Sarah | 115240 | JFK8 Education Session Part 5 | Class |
| singh,satwinder | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Lizeth | 115240 | JFK8 Education Session Part 5 | Class |
| Aponte,Mchezo | 115240 | JFK8 Education Session Part 5 | Class |
| Assante,Jill-Marie | 115240 | JFK8 Education Session Part 5 | Class |
| Yang,Gigi | 115240 | JFK8 Education Session Part 5 | Class |
| Yang,Gigi | 115240 | JFK8 Education Session Part 5 | Class |
| Harjo,Jeremiah | 115240 | JFK8 Education Session Part 5 | Class |
| Peralta,Vincent | 115240 | JFK8 Education Session Part 5 | Class |
| Mathew,Jincy | 115240 | JFK8 Education Session Part 5 | Class |
| Mcfarlane Jr,Chuchi | 115240 | JFK8 Education Session Part 5 | Class |
| Goodwine,Lamont | 115240 | JFK8 Education Session Part 5 | Class |
| Hall,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Hall,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Ruangpracha,Julie | 115240 | JFK8 Education Session Part 5 | Class |
| shomoye,wale | 115240 | JFK8 Education Session Part 5 | Class |
| odufowora,Muyiwa | 115240 | JFK8 Education Session Part 5 | Class |
| Bobadilla,Loyda | 115240 | JFK8 Education Session Part 5 | Class |
| Lawson,Jerome | 115240 | JFK8 Education Session Part 5 | Class |
| Bernard,Kumar | 115240 | JFK8 Education Session Part 5 | Class |
| Lee,Jen | 115240 | JFK8 Education Session Part 5 | Class |
| PERRY,JENNIFER | 115240 | JFK8 Education Session Part 5 | Class |
| Zevan,Nyi | 115240 | JFK8 Education Session Part 5 | Class |
| de alwis,surath | 115240 | JFK8 Education Session Part 5 | Class |
| Vivanco,Milagros | 115240 | JFK8 Education Session Part 5 | Class |
| Bello Jr,Kabir | 115240 | JFK8 Education Session Part 5 | Class |
| Abdellah,Saber | 115240 | JFK8 Education Session Part 5 | Class |
| Ramirez,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Labad,Zekharie | 115240 | JFK8 Education Session Part 5 | Class |
| Miller,Dana Joann | 115240 | JFK8 Education Session Part 5 | Class |
| SHOWAOLAFATIA,Nuratu Olaitan Apinkeola | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Abis,Lincoln | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Jonathon | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Vanessa | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarenga,Jesus | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz Rodriguez,Gabriella | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Angelica | 115240 | JFK8 Education Session Part 5 | Class |
| Dickey,Shiquita Mona | 115240 | JFK8 Education Session Part 5 | Class |
| CORREA,Augusto | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Jovan | 115240 | JFK8 Education Session Part 5 | Class |
| Dontas,Kylie | 115240 | JFK8 Education Session Part 5 | Class |
| Suero,Wanda Sulenny | 115240 | JFK8 Education Session Part 5 | Class |
| Celli,Christina Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Castillo,Braylin Manuel | 115240 | JFK8 Education Session Part 5 | Class |
| Inkabi,Tatiana | 115240 | JFK8 Education Session Part 5 | Class |
| Carvajal,Kim | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Percy Ivan | 115240 | JFK8 Education Session Part 5 | Class |
| Bautista,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Hilaire,Mericka Geraldina | 115240 | JFK8 Education Session Part 5 | Class |
| Alreyashi,Yousef | 115240 | JFK8 Education Session Part 5 | Class |
| Rosario,Delianna | 115240 | JFK8 Education Session Part 5 | Class |
| Azeez,Waheed Olawale | 115240 | JFK8 Education Session Part 5 | Class |
| Negron,Angelica | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Dee | 115240 | JFK8 Education Session Part 5 | Class |
| Germain,Junia | 115240 | JFK8 Education Session Part 5 | Class |
| Correa,Ramon A | 115240 | JFK8 Education Session Part 5 | Class |
| Tolentino,Daniel Marsell | 115240 | JFK8 Education Session Part 5 | Class |
| Ceballos,Adriana Lizeth | 115240 | JFK8 Education Session Part 5 | Class |
| Young,Taquan | 115240 | JFK8 Education Session Part 5 | Class |
| paul,Levelyne | 115240 | JFK8 Education Session Part 5 | Class |
| Chase,Coletta Briana | 115240 | JFK8 Education Session Part 5 | Class |
| Chacko,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Gorelov,Maksim O | 115240 | JFK8 Education Session Part 5 | Class |
| Gillies,Stephen | 115240 | JFK8 Education Session Part 5 | Class |
| blue,steven | 115240 | JFK8 Education Session Part 5 | Class |
| Coriolan,Simone | 115240 | JFK8 Education Session Part 5 | Class |
| Fernando,Anjanpalage Nuwantha Dinushan | 115240 | JFK8 Education Session Part 5 | Class |
| Allen,Tiera | 115240 | JFK8 Education Session Part 5 | Class |
| Tartarashvili,Mamuka | 115240 | JFK8 Education Session Part 5 | Class |
| Tovar,Yolanda Luz | 115240 | JFK8 Education Session Part 5 | Class |
| Bastidas,Isaias | 115240 | JFK8 Education Session Part 5 | Class |
| Montenegro,Marilyn | 115240 | JFK8 Education Session Part 5 | Class |
| Alcis,Lissage | 115240 | JFK8 Education Session Part 5 | Class |
| DeLeon,Maritza | 115240 | JFK8 Education Session Part 5 | Class |
| Begolli,Pranvera | 115240 | JFK8 Education Session Part 5 | Class |
| Osei,Sarkodie | 115240 | JFK8 Education Session Part 5 | Class |
| Zarate,Elena | 115240 | JFK8 Education Session Part 5 | Class |
| Nottingham,Keisha | 115240 | JFK8 Education Session Part 5 | Class |
| Arteca,Robert | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Mckoy,Ebonie | 115240 | JFK8 Education Session Part 5 | Class |
| Ba,Moussa | 115240 | JFK8 Education Session Part 5 | Class |
| Ba,Moussa | 115240 | JFK8 Education Session Part 5 | Class |
| Quinones,Jan jasper | 115240 | JFK8 Education Session Part 5 | Class |
| Atiya,Maged | 115240 | JFK8 Education Session Part 5 | Class |
| Andrew,josh | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez vargas,Aranzasu | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Joshua Lewis | 115240 | JFK8 Education Session Part 5 | Class |
| martello,george | 115240 | JFK8 Education Session Part 5 | Class |
| Trucios,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| valentin,luis | 115240 | JFK8 Education Session Part 5 | Class |
| Davis,Dennisha | 115240 | JFK8 Education Session Part 5 | Class |
| Fox,Justin | 115240 | JFK8 Education Session Part 5 | Class |
| Velasco,Gonzalo | 115240 | JFK8 Education Session Part 5 | Class |
| Shaw,Malcolm | 115240 | JFK8 Education Session Part 5 | Class |
| Estime,Inanie | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Molina,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Barhoum,Adam | 115240 | JFK8 Education Session Part 5 | Class |
| Paulino,Marisol | 115240 | JFK8 Education Session Part 5 | Class |
| Balderas Cuenca,Monce Daniela | 115240 | JFK8 Education Session Part 5 | Class |
| Sylmetaj,Loretta | 115240 | JFK8 Education Session Part 5 | Class |
| Arulampalam,Dharmabalan | 115240 | JFK8 Education Session Part 5 | Class |
| Hector,Hiram | 115240 | JFK8 Education Session Part 5 | Class |
| Steo,John | 115240 | JFK8 Education Session Part 5 | Class |
| Washington,Keayna | 115240 | JFK8 Education Session Part 5 | Class |
| Valenciano,Justen | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,Aixa | 115240 | JFK8 Education Session Part 5 | Class |
| Tittle,Nehemiah E | 115240 | JFK8 Education Session Part 5 | Class |
| McLeod,Alhaylah | 115240 | JFK8 Education Session Part 5 | Class |
| Guzman,Yomber | 115240 | JFK8 Education Session Part 5 | Class |
| hollaway,ciara | 115240 | JFK8 Education Session Part 5 | Class |
| Barrios,Irma | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Jazmon | 115240 | JFK8 Education Session Part 5 | Class |
| Balaniuc,Daniela | 115240 | JFK8 Education Session Part 5 | Class |
| Janapa,Sahana Akter | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Loury | 115240 | JFK8 Education Session Part 5 | Class |
| Candelario,Arlette | 115240 | JFK8 Education Session Part 5 | Class |
| Reynoso,Jelen | 115240 | JFK8 Education Session Part 5 | Class |
| milton,Brianna | 115240 | JFK8 Education Session Part 5 | Class |
| Tobish,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Mejia,Seth | 115240 | JFK8 Education Session Part 5 | Class |
| Walton,Shaylia | 115240 | JFK8 Education Session Part 5 | Class |
| Wilson,Briana | 115240 | JFK8 Education Session Part 5 | Class |
| Haymond,Shatia N | 115240 | JFK8 Education Session Part 5 | Class |
| Antonio,Alejandra | 115240 | JFK8 Education Session Part 5 | Class |
| Maddocks,Antoinette | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Orsborn,Branden Eugene | 115240 | JFK8 Education Session Part 5 | Class |
| Adam,Malik | 115240 | JFK8 Education Session Part 5 | Class |
| Wilcher,Pamela | 115240 | JFK8 Education Session Part 5 | Class |
| Chua,Ralph | 115240 | JFK8 Education Session Part 5 | Class |
| Mitchell,Derrick | 115240 | JFK8 Education Session Part 5 | Class |
| Ly,Long | 115240 | JFK8 Education Session Part 5 | Class |
| Dugbo,Richard S. | 115240 | JFK8 Education Session Part 5 | Class |
| Summers,Kamel | 115240 | JFK8 Education Session Part 5 | Class |
| Taskeen,Aqsa | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Tamara | 115240 | JFK8 Education Session Part 5 | Class |
| Benjamin,andrew | 115240 | JFK8 Education Session Part 5 | Class |
| Li,Wai | 115240 | JFK8 Education Session Part 5 | Class |
| Torres,Kenneth | 115240 | JFK8 Education Session Part 5 | Class |
| Jean,Dayan | 115240 | JFK8 Education Session Part 5 | Class |
| Zosayas,Idaly | 115240 | JFK8 Education Session Part 5 | Class |
| Sesay,Elizabeth Kathy | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Julio | 115240 | JFK8 Education Session Part 5 | Class |
| Suarez,Cheryl | 115240 | JFK8 Education Session Part 5 | Class |
| yangapatty,raymond | 115240 | JFK8 Education Session Part 5 | Class |
| Yonpuwel,mac Arthur JG | 115240 | JFK8 Education Session Part 5 | Class |
| Hamilton,Hamood | 115240 | JFK8 Education Session Part 5 | Class |
| Attallah,Rimon | 115240 | JFK8 Education Session Part 5 | Class |
| Douglas,Maliek | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Adepele,Olusegun olagoke | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Aneudis | 115240 | JFK8 Education Session Part 5 | Class |
| knight,cedric | 115240 | JFK8 Education Session Part 5 | Class |
| Fonseca,Crystal | 115240 | JFK8 Education Session Part 5 | Class |
| garcia,ana | 115240 | JFK8 Education Session Part 5 | Class |
| Conde,Ramata | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Janet | 115240 | JFK8 Education Session Part 5 | Class |
| Reid,Dennis Gasford | 115240 | JFK8 Education Session Part 5 | Class |
| Andrew,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia Moreno,Lucero | 115240 | JFK8 Education Session Part 5 | Class |
| Aponte,Louis A | 115240 | JFK8 Education Session Part 5 | Class |
| Whiteside,Cynthia | 115240 | JFK8 Education Session Part 5 | Class |
| Jerez Abreu,luz | 115240 | JFK8 Education Session Part 5 | Class |
| Exume,Jehovahnia Angele | 115240 | JFK8 Education Session Part 5 | Class |
| Reinat,Elijah Robert | 115240 | JFK8 Education Session Part 5 | Class |
| MORAN,ANTONIO | 115240 | JFK8 Education Session Part 5 | Class |
| Desiderio,Franchesca | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Esmeralda | 115240 | JFK8 Education Session Part 5 | Class |
| Pollari,Lori Ann | 115240 | JFK8 Education Session Part 5 | Class |
| Manson,Taziah | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Annie | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| gonzalez,Yesenia | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Nicholas | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Clark,Octavia | 115240 | JFK8 Education Session Part 5 | Class |
| Chavez,Anthony Bernardo | 115240 | JFK8 Education Session Part 5 | Class |
| Muraina,Bashiru | 115240 | JFK8 Education Session Part 5 | Class |
| Campbell,Quintell | 115240 | JFK8 Education Session Part 5 | Class |
| Maldonado,Ana | 115240 | JFK8 Education Session Part 5 | Class |
| King,Brianna M | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez-Tapia,Jailine | 115240 | JFK8 Education Session Part 5 | Class |
| sola,steven | 115240 | JFK8 Education Session Part 5 | Class |
| Tung,Mei | 115240 | JFK8 Education Session Part 5 | Class |
| rodriguez,alexandria | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Mary | 115240 | JFK8 Education Session Part 5 | Class |
| Donohue,Florence | 115240 | JFK8 Education Session Part 5 | Class |
| Hidalgo,Emil | 115240 | JFK8 Education Session Part 5 | Class |
| Romero,Terry | 115240 | JFK8 Education Session Part 5 | Class |
| Antoine,Zaniyah | 115240 | JFK8 Education Session Part 5 | Class |
| Toussaint,Sarah | 115240 | JFK8 Education Session Part 5 | Class |
| Sim,Chialonda | 115240 | JFK8 Education Session Part 5 | Class |
| Ebel,Robert Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Pristell,Arshad | 115240 | JFK8 Education Session Part 5 | Class |
| Crocker,Orin | 115240 | JFK8 Education Session Part 5 | Class |
| Rojas,Jhoven | 115240 | JFK8 Education Session Part 5 | Class |
| Portuhondo,Alberto Dejesus | 115240 | JFK8 Education Session Part 5 | Class |
| Bowen,Joel | 115240 | JFK8 Education Session Part 5 | Class |
| Feratovic,Ferid | 115240 | JFK8 Education Session Part 5 | Class |
| Arias,Inoel | 115240 | JFK8 Education Session Part 5 | Class |
| Nelson,Arthur Ernest | 115240 | JFK8 Education Session Part 5 | Class |
| VanDyke,Latonia | 115240 | JFK8 Education Session Part 5 | Class |
| Medina,Cindy | 115240 | JFK8 Education Session Part 5 | Class |
| Giron Baez,nayeli | 115240 | JFK8 Education Session Part 5 | Class |
| aquino,magali | 115240 | JFK8 Education Session Part 5 | Class |
| Goines,Christopher R | 115240 | JFK8 Education Session Part 5 | Class |
| Breaker,Shamir | 115240 | JFK8 Education Session Part 5 | Class |
| Romano,Tabatha | 115240 | JFK8 Education Session Part 5 | Class |
| Gloria,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Cortes,Edmundo | 115240 | JFK8 Education Session Part 5 | Class |
| Quisiguina,Erika Michelle | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Cheryl | 115240 | JFK8 Education Session Part 5 | Class |
| Roman,Marcus | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz,Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Edwards,Karon Carmelita | 115240 | JFK8 Education Session Part 5 | Class |
| Espadero,Cesar | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Jennifer Leigh | 115240 | JFK8 Education Session Part 5 | Class |
| Pierre Jean,Lena | 115240 | JFK8 Education Session Part 5 | Class |
| Azon,Alba | 115240 | JFK8 Education Session Part 5 | Class |
| dutan,wendy | 115240 | JFK8 Education Session Part 5 | Class |
| Vaquerano,Johanna | 115240 | JFK8 Education Session Part 5 | Class |
| McFarland,Andre | 115240 | JFK8 Education Session Part 5 | Class |
| McFarland,Andre | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Jorge,Manuela | 115240 | JFK8 Education Session Part 5 | Class |
| gerena castillo,luz | 115240 | JFK8 Education Session Part 5 | Class |
| Galarza,Moises | 115240 | JFK8 Education Session Part 5 | Class |
| Iwanowicz,Cezary | 115240 | JFK8 Education Session Part 5 | Class |
| Ansert,Michele | 115240 | JFK8 Education Session Part 5 | Class |
| Lunsford,Devon | 115240 | JFK8 Education Session Part 5 | Class |
| Clemons,Cory Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Jaquez,Liany | 115240 | JFK8 Education Session Part 5 | Class |
| Cabera,Rassul | 115240 | JFK8 Education Session Part 5 | Class |
| Torres,Naomi Gabriela | 115240 | JFK8 Education Session Part 5 | Class |
| Toledo,Francisco Javier | 115240 | JFK8 Education Session Part 5 | Class |
| Tatum,Tara | 115240 | JFK8 Education Session Part 5 | Class |
| Tatum,Tara | 115240 | JFK8 Education Session Part 5 | Class |
| Hall,Tatiana | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes Esquivel,Alan | 115240 | JFK8 Education Session Part 5 | Class |
| Molus,Ika | 115240 | JFK8 Education Session Part 5 | Class |
| Malerva,Julio C | 115240 | JFK8 Education Session Part 5 | Class |
| Jalloh,Mariama | 115240 | JFK8 Education Session Part 5 | Class |
| Berko,Kingsley | 115240 | JFK8 Education Session Part 5 | Class |
| acevedo,marialyn | 115240 | JFK8 Education Session Part 5 | Class |
| Belton,Jon | 115240 | JFK8 Education Session Part 5 | Class |
| John,Alvina | 115240 | JFK8 Education Session Part 5 | Class |
| Yeboah,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Viveros,Karolina | 115240 | JFK8 Education Session Part 5 | Class |
| Palma,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Mohammed,Lalmani | 115240 | JFK8 Education Session Part 5 | Class |
| Sealey,Malik Andrew | 115240 | JFK8 Education Session Part 5 | Class |
| Alabi,Sodiq Adekunle | 115240 | JFK8 Education Session Part 5 | Class |
| Noelien,Camilla | 115240 | JFK8 Education Session Part 5 | Class |
| Awogbemi,Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia Mejia,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Montalvo,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Fadairo,Olanrewaju | 115240 | JFK8 Education Session Part 5 | Class |
| Rchich,Hind | 115240 | JFK8 Education Session Part 5 | Class |
| Ackerson,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Ackerson,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Cardona Moreno,Eliezer | 115240 | JFK8 Education Session Part 5 | Class |
| Chilaka,Wilfred Uche | 115240 | JFK8 Education Session Part 5 | Class |
| Yang,Ashley | 115240 | JFK8 Education Session Part 5 | Class |
| EDJEMIN,EHUIE STANISLAS | 115240 | JFK8 Education Session Part 5 | Class |
| Mclaurin,Raurice | 115240 | JFK8 Education Session Part 5 | Class |
| Palin,Michael Andrew | 115240 | JFK8 Education Session Part 5 | Class |
| villacis,johnny | 115240 | JFK8 Education Session Part 5 | Class |
| romero de la Rosa,cleismar | 115240 | JFK8 Education Session Part 5 | Class |
| Osabutey,Keren Sabukie | 115240 | JFK8 Education Session Part 5 | Class |
| Bey,Kolaiah | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Sabrina | 115240 | JFK8 Education Session Part 5 | Class |
| Kien,Brandon Sang | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Peek,Darryl David | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Allan | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Larry | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Larry | 115240 | JFK8 Education Session Part 5 | Class |
| Cordero,Starky J | 115240 | JFK8 Education Session Part 5 | Class |
| Diallo,Oumar | 115240 | JFK8 Education Session Part 5 | Class |
| Watkins,Litoya | 115240 | JFK8 Education Session Part 5 | Class |
| Nantista,Ryan | 115240 | JFK8 Education Session Part 5 | Class |
| Vincent,Winston | 115240 | JFK8 Education Session Part 5 | Class |
| Vincent,Winston | 115240 | JFK8 Education Session Part 5 | Class |
| Benedetti,Jennifer Celine | 115240 | JFK8 Education Session Part 5 | Class |
| Rajeev,Layitha | 115240 | JFK8 Education Session Part 5 | Class |
| Whitaker,Curtis | 115240 | JFK8 Education Session Part 5 | Class |
| Mohamed,Rahma | 115240 | JFK8 Education Session Part 5 | Class |
| Olguin Rodriguez,Llany | 115240 | JFK8 Education Session Part 5 | Class |
| Detrixe,Xales | 115240 | JFK8 Education Session Part 5 | Class |
| Noel,Kie | 115240 | JFK8 Education Session Part 5 | Class |
| Nagawa,Mami | 115240 | JFK8 Education Session Part 5 | Class |
| Stringer,Boris | 115240 | JFK8 Education Session Part 5 | Class |
| Stewart,Keith Stewart | 115240 | JFK8 Education Session Part 5 | Class |
| McKenzie,Kevin Mohamid | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz,Benjamin | 115240 | JFK8 Education Session Part 5 | Class |
| Criollo,josue | 115240 | JFK8 Education Session Part 5 | Class |
| Espinal,David | 115240 | JFK8 Education Session Part 5 | Class |
| Dewidar,Mariam | 115240 | JFK8 Education Session Part 5 | Class |
| Bradshaw,Keith | 115240 | JFK8 Education Session Part 5 | Class |
| Klass,Nikida | 115240 | JFK8 Education Session Part 5 | Class |
| Druda,Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| stokes,michael | 115240 | JFK8 Education Session Part 5 | Class |
| Burgos,Andre | 115240 | JFK8 Education Session Part 5 | Class |
| Odewale,Olaoluwa Victor | 115240 | JFK8 Education Session Part 5 | Class |
| Osorio,Nesy | 115240 | JFK8 Education Session Part 5 | Class |
| Lucero,Melvyn | 115240 | JFK8 Education Session Part 5 | Class |
| Torres,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Sibri,Zayro | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Addis | 115240 | JFK8 Education Session Part 5 | Class |
| Ostreni,Vlorian | 115240 | JFK8 Education Session Part 5 | Class |
| Torres,Herman | 115240 | JFK8 Education Session Part 5 | Class |
| Cotton,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Campbell,Donald J | 115240 | JFK8 Education Session Part 5 | Class |
| Antico,Angelina | 115240 | JFK8 Education Session Part 5 | Class |
| Lindsey,Jade | 115240 | JFK8 Education Session Part 5 | Class |
| Lindsey,Jade | 115240 | JFK8 Education Session Part 5 | Class |
| Lindsey,Jade | 115240 | JFK8 Education Session Part 5 | Class |
| Smalls,Kayshawn | 115240 | JFK8 Education Session Part 5 | Class |
| Acosta,Reiny Vileisca | 115240 | JFK8 Education Session Part 5 | Class |
| Acosta,Reiny Vileisca | 115240 | JFK8 Education Session Part 5 | Class |
| Chakma,Pijum | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| ame,Drilon | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz,Andrew | 115240 | JFK8 Education Session Part 5 | Class |
| Dieujuste,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Green,Yiya | 115240 | JFK8 Education Session Part 5 | Class |
| Burnett,Tiara | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Alexis | 115240 | JFK8 Education Session Part 5 | Class |
| Cortez,Meynarda | 115240 | JFK8 Education Session Part 5 | Class |
| Aquino,Nancy A | 115240 | JFK8 Education Session Part 5 | Class |
| Doumbouya,Oumar | 115240 | JFK8 Education Session Part 5 | Class |
| Doumbouya,Oumar | 115240 | JFK8 Education Session Part 5 | Class |
| Charlemagne,Dezz | 115240 | JFK8 Education Session Part 5 | Class |
| Warren,Ramael | 115240 | JFK8 Education Session Part 5 | Class |
| Oatis,Tyler | 115240 | JFK8 Education Session Part 5 | Class |
| Swarnalatha,Ranasinghe Arachchige | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,JM | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,JM | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,JM | 115240 | JFK8 Education Session Part 5 | Class |
| Kingston,Arlene | 115240 | JFK8 Education Session Part 5 | Class |
| Luzuriaga,Alexandra Alexandra | 115240 | JFK8 Education Session Part 5 | Class |
| Chan,Kimberly L | 115240 | JFK8 Education Session Part 5 | Class |
| Toure,Mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Decopain,Rachelle | 115240 | JFK8 Education Session Part 5 | Class |
| Sosa,April | 115240 | JFK8 Education Session Part 5 | Class |
| Guarneri,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Mai,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Marco Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Felix,Eardley | 115240 | JFK8 Education Session Part 5 | Class |
| Fiore,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Newkirk,Deshaun | 115240 | JFK8 Education Session Part 5 | Class |
| Molina,Samuel DAVID | 115240 | JFK8 Education Session Part 5 | Class |
| Polo,Yelanis | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Telesforo | 115240 | JFK8 Education Session Part 5 | Class |
| Bottex,Claudel | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Otis | 115240 | JFK8 Education Session Part 5 | Class |
| Woffard,Vonnell | 115240 | JFK8 Education Session Part 5 | Class |
| Virella,Enrique | 115240 | JFK8 Education Session Part 5 | Class |
| Charles,Isaiah | 115240 | JFK8 Education Session Part 5 | Class |
| Castro,Karen | 115240 | JFK8 Education Session Part 5 | Class |
| Jeanty,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| VASQUEZ,MARLENE | 115240 | JFK8 Education Session Part 5 | Class |
| VASQUEZ,MARLENE | 115240 | JFK8 Education Session Part 5 | Class |
| Willock,Stephen | 115240 | JFK8 Education Session Part 5 | Class |
| Luna guerrero,Martha | 115240 | JFK8 Education Session Part 5 | Class |
| Nurse,Isaiah Jeremiah | 115240 | JFK8 Education Session Part 5 | Class |
| Skaf,Hadi | 115240 | JFK8 Education Session Part 5 | Class |
| Morgan,Jeniqua | 115240 | JFK8 Education Session Part 5 | Class |
| Estrada,Dennis | 115240 | JFK8 Education Session Part 5 | Class |
| Santo,Daniel Michael | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Reese,Felicia | 115240 | JFK8 Education Session Part 5 | Class |
| Reese,Felicia | 115240 | JFK8 Education Session Part 5 | Class |
| Sullivan,Kyle | 115240 | JFK8 Education Session Part 5 | Class |
| Samuel,Emad | 115240 | JFK8 Education Session Part 5 | Class |
| richardson,jaeda sarai | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Shaniqua | 115240 | JFK8 Education Session Part 5 | Class |
| Mirza,Nimra | 115240 | JFK8 Education Session Part 5 | Class |
| Ruan,Sean | 115240 | JFK8 Education Session Part 5 | Class |
| Lam,Devion | 115240 | JFK8 Education Session Part 5 | Class |
| Sosa,Johnny | 115240 | JFK8 Education Session Part 5 | Class |
| pascoe,kamala | 115240 | JFK8 Education Session Part 5 | Class |
| Suarez Jerez,Rosa Angelica A | 115240 | JFK8 Education Session Part 5 | Class |
| Jonas,Mike | 115240 | JFK8 Education Session Part 5 | Class |
| Camacho,Kayla | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarez,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarez,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Arita,Sofy | 115240 | JFK8 Education Session Part 5 | Class |
| Musa,Abdallah | 115240 | JFK8 Education Session Part 5 | Class |
| Galindo,Zabai | 115240 | JFK8 Education Session Part 5 | Class |
| terfie,helen | 115240 | JFK8 Education Session Part 5 | Class |
| Melbin,John | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Brandon | 115240 | JFK8 Education Session Part 5 | Class |
| Mercado,Justin Victor | 115240 | JFK8 Education Session Part 5 | Class |
| esposito,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Terry,Tatyanna | 115240 | JFK8 Education Session Part 5 | Class |
| Valentin,Michelle | 115240 | JFK8 Education Session Part 5 | Class |
| Correa,Jennifer | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Eidder S | 115240 | JFK8 Education Session Part 5 | Class |
| El Jaouhari,Hafid | 115240 | JFK8 Education Session Part 5 | Class |
| El Jaouhari,Hafid | 115240 | JFK8 Education Session Part 5 | Class |
| El Jaouhari,Hafid | 115240 | JFK8 Education Session Part 5 | Class |
| Juarez-Rivera,William | 115240 | JFK8 Education Session Part 5 | Class |
| Gack,Mamadou | 115240 | JFK8 Education Session Part 5 | Class |
| Graham,William | 115240 | JFK8 Education Session Part 5 | Class |
| Koko,Chrislove G | 115240 | JFK8 Education Session Part 5 | Class |
| Suresh,Viraj | 115240 | JFK8 Education Session Part 5 | Class |
| curiel,jorge | 115240 | JFK8 Education Session Part 5 | Class |
| Armentrout,Joshua | 115240 | JFK8 Education Session Part 5 | Class |
| shaw,larrel s | 115240 | JFK8 Education Session Part 5 | Class |
| Pandolfo,Amanda | 115240 | JFK8 Education Session Part 5 | Class |
| Shaker,Merna | 115240 | JFK8 Education Session Part 5 | Class |
| Shaker,Merna | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Andrew | 115240 | JFK8 Education Session Part 5 | Class |
| Tovbis,Anatoliy | 115240 | JFK8 Education Session Part 5 | Class |
| Torres Campbell,Venus | 115240 | JFK8 Education Session Part 5 | Class |
| Balogun,Talani | 115240 | JFK8 Education Session Part 5 | Class |
| Randazzo,Deanna | 115240 | JFK8 Education Session Part 5 | Class |
| Vangendren,Andre | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Vangendren,Andre | 115240 | JFK8 Education Session Part 5 | Class |
| Simmons,Kenya | 115240 | JFK8 Education Session Part 5 | Class |
| Dickerson,Janese | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Evelyn | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Evelyn | 115240 | JFK8 Education Session Part 5 | Class |
| Callender,Jediah | 115240 | JFK8 Education Session Part 5 | Class |
| Callender,Jediah | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarado,Immanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Sooriyaarachchi,Kithsiri Ariyawansa | 115240 | JFK8 Education Session Part 5 | Class |
| Barry,Aissatou | 115240 | JFK8 Education Session Part 5 | Class |
| Kone,Amara | 115240 | JFK8 Education Session Part 5 | Class |
| Dada - Burrell,Tawanna | 115240 | JFK8 Education Session Part 5 | Class |
| Dada - Burrell,Tawanna | 115240 | JFK8 Education Session Part 5 | Class |
| Orowe,Faith | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Kenia Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Guerrero,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Jordan,Latiesha | 115240 | JFK8 Education Session Part 5 | Class |
| Kelly,Will John | 115240 | JFK8 Education Session Part 5 | Class |
| Bedzra,Kwadzo | 115240 | JFK8 Education Session Part 5 | Class |
| Duncan,Keshaun | 115240 | JFK8 Education Session Part 5 | Class |
| Bangura,Aminata haja | 115240 | JFK8 Education Session Part 5 | Class |
| ada,jamyla | 115240 | JFK8 Education Session Part 5 | Class |
| Vilchis,Kelvin | 115240 | JFK8 Education Session Part 5 | Class |
| baig,Mirza T | 115240 | JFK8 Education Session Part 5 | Class |
| Galizia,Gianna | 115240 | JFK8 Education Session Part 5 | Class |
| Wood,Michaela Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,Amanda | 115240 | JFK8 Education Session Part 5 | Class |
| Brooks,Rachel | 115240 | JFK8 Education Session Part 5 | Class |
| Campos,Irwin | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Royanna C | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz,Karina | 115240 | JFK8 Education Session Part 5 | Class |
| Peralta,Nicole | 115240 | JFK8 Education Session Part 5 | Class |
| Minaya,Marcos | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez,Xavier David | 115240 | JFK8 Education Session Part 5 | Class |
| Joseph,Tirzah | 115240 | JFK8 Education Session Part 5 | Class |
| Joseph,Tirzah | 115240 | JFK8 Education Session Part 5 | Class |
| colon,Leila | 115240 | JFK8 Education Session Part 5 | Class |
| Harper,Kenneth Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Lekeasha | 115240 | JFK8 Education Session Part 5 | Class |
| Leonard,Michel-ange | 115240 | JFK8 Education Session Part 5 | Class |
| Barthelus,Emilie | 115240 | JFK8 Education Session Part 5 | Class |
| VALCOURT,Joel | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Reina | 115240 | JFK8 Education Session Part 5 | Class |
| Ipadeola,Bukola Basirat | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Oralis | 115240 | JFK8 Education Session Part 5 | Class |
| Sibri,Juan Carlos | 115240 | JFK8 Education Session Part 5 | Class |
| Gaines,William | 115240 | JFK8 Education Session Part 5 | Class |
| Carrasco,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Butler,Malcolm | 115240 | JFK8 Education Session Part 5 | Class |
| Rocamora,Peter John Jamore | 115240 | JFK8 Education Session Part 5 | Class |
| Obiano,Peter | 115240 | JFK8 Education Session Part 5 | Class |
| Olu-Hamilton,Zena | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Julissa | 115240 | JFK8 Education Session Part 5 | Class |
| MyrthilChrisphonte,Nastassia | 115240 | JFK8 Education Session Part 5 | Class |
| Lin,Joyce | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Sarah | 115240 | JFK8 Education Session Part 5 | Class |
| Mansha,Rukhia | 115240 | JFK8 Education Session Part 5 | Class |
| Mansha,Ayeshah | 115240 | JFK8 Education Session Part 5 | Class |
| Otutulord,Wasiu | 115240 | JFK8 Education Session Part 5 | Class |
| F,Kima | 115240 | JFK8 Education Session Part 5 | Class |
| Ward,Ron | 115240 | JFK8 Education Session Part 5 | Class |
| Altamirano,Carmen | 115240 | JFK8 Education Session Part 5 | Class |
| Shaw,Savion | 115240 | JFK8 Education Session Part 5 | Class |
| UFONDU,VICTORIA | 115240 | JFK8 Education Session Part 5 | Class |
| Padilla,Angelica | 115240 | JFK8 Education Session Part 5 | Class |
| Padilla,Angelica | 115240 | JFK8 Education Session Part 5 | Class |
| jubran,yanette | 115240 | JFK8 Education Session Part 5 | Class |
| Mahmud,Faisal | 115240 | JFK8 Education Session Part 5 | Class |
| Lettsome,Shinnay | 115240 | JFK8 Education Session Part 5 | Class |
| Khandaker,Sumaiya | 115240 | JFK8 Education Session Part 5 | Class |
| Mendoza,Fernando Isaac | 115240 | JFK8 Education Session Part 5 | Class |
| Maria,Katy | 115240 | JFK8 Education Session Part 5 | Class |
| Smirnov,Philipp | 115240 | JFK8 Education Session Part 5 | Class |
| Santanello,Nino Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Raiola,Gerard | 115240 | JFK8 Education Session Part 5 | Class |
| Vicente,Reynelis | 115240 | JFK8 Education Session Part 5 | Class |
| Duncan,Rondell | 115240 | JFK8 Education Session Part 5 | Class |
| Beal,Elasia | 115240 | JFK8 Education Session Part 5 | Class |
| Zhao,Danny | 115240 | JFK8 Education Session Part 5 | Class |
| Waters,Kenny | 115240 | JFK8 Education Session Part 5 | Class |
| Waters,Kenny | 115240 | JFK8 Education Session Part 5 | Class |
| Moody,Hailly | 115240 | JFK8 Education Session Part 5 | Class |
| Murphy,Tarell | 115240 | JFK8 Education Session Part 5 | Class |
| Peetey,Eric Bill | 115240 | JFK8 Education Session Part 5 | Class |
| Logan,Ronald | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Dewindt,Natasha | 115240 | JFK8 Education Session Part 5 | Class |
| Berry,Keisha | 115240 | JFK8 Education Session Part 5 | Class |
| Collazo,Peter | 115240 | JFK8 Education Session Part 5 | Class |
| Denicola,Susan | 115240 | JFK8 Education Session Part 5 | Class |
| Nebot Lopez,Yackisha | 115240 | JFK8 Education Session Part 5 | Class |
| Merlo,Ginamarie | 115240 | JFK8 Education Session Part 5 | Class |
| Unegbu,Chukwuma | 115240 | JFK8 Education Session Part 5 | Class |
| Bobbsemple,Dawn | 115240 | JFK8 Education Session Part 5 | Class |
| Cabrera,Cynthia | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Diana | 115240 | JFK8 Education Session Part 5 | Class |

Amazon_000528

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Juarez Torres,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Morgan,Troy | 115240 | JFK8 Education Session Part 5 | Class |
| Nickie,Jovan | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Karen | 115240 | JFK8 Education Session Part 5 | Class |
| Amoah,Moses | 115240 | JFK8 Education Session Part 5 | Class |
| Escalona,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Borkowski,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| San Pablo,Gregorio | 115240 | JFK8 Education Session Part 5 | Class |
| Pazos camacho,Omar eduardo | 115240 | JFK8 Education Session Part 5 | Class |
| DeSouza,Eon | 115240 | JFK8 Education Session Part 5 | Class |
| Dupuy,marc elie | 115240 | JFK8 Education Session Part 5 | Class |
| rodriguez arredondo,edgar | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Kurt,Raymond | 115240 | JFK8 Education Session Part 5 | Class |
| Palmieri,Anna | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,William | 115240 | JFK8 Education Session Part 5 | Class |
| Lightner,Myles | 115240 | JFK8 Education Session Part 5 | Class |
| Newton,P Kwamina | 115240 | JFK8 Education Session Part 5 | Class |
| Williamson,Christy | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Alexis Oswaldo | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Alexis Oswaldo | 115240 | JFK8 Education Session Part 5 | Class |
| Wake,Kyndell | 115240 | JFK8 Education Session Part 5 | Class |
| Wake,Kyndell | 115240 | JFK8 Education Session Part 5 | Class |
| Church,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Olea Garcia,Jesus Vidal | 115240 | JFK8 Education Session Part 5 | Class |
| Harris,Andre | 115240 | JFK8 Education Session Part 5 | Class |
| Cazares,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Budge,Patrick Russell | 115240 | JFK8 Education Session Part 5 | Class |
| Bennett,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Jamel | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Jamel | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Gabriel | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Gabriel | 115240 | JFK8 Education Session Part 5 | Class |
| Jayasundara,Hemantha Pushpa Kumara | 115240 | JFK8 Education Session Part 5 | Class |
| Marshall,Brittany | 115240 | JFK8 Education Session Part 5 | Class |
| Crews,Marvin | 115240 | JFK8 Education Session Part 5 | Class |
| Bessler,Thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Moquete,Cristal | 115240 | JFK8 Education Session Part 5 | Class |
| denis,samanta | 115240 | JFK8 Education Session Part 5 | Class |
| Hunte,Daryl Luke | 115240 | JFK8 Education Session Part 5 | Class |
| Copeland,Jamel A | 115240 | JFK8 Education Session Part 5 | Class |
| garner,kathy | 115240 | JFK8 Education Session Part 5 | Class |
| Alcantara,Wangel | 115240 | JFK8 Education Session Part 5 | Class |
| Baksh,Reaz | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz Jr,Edwin | 115240 | JFK8 Education Session Part 5 | Class |
| Gillis,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Sassano,Dayna | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez molina,Karla | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Preston,Takiyah L | 115240 | JFK8 Education Session Part 5 | Class |
| Watkins,Jewel | 115240 | JFK8 Education Session Part 5 | Class |
| Zuniga,Brenda B | 115240 | JFK8 Education Session Part 5 | Class |
| DE-SILVA,SEEKKUGE SURANGA | 115240 | JFK8 Education Session Part 5 | Class |
| Hazell,Vanessa | 115240 | JFK8 Education Session Part 5 | Class |
| Dume,Sheyla | 115240 | JFK8 Education Session Part 5 | Class |
| Merise,Kimberly | 115240 | JFK8 Education Session Part 5 | Class |
| Izzolo,Ashley | 115240 | JFK8 Education Session Part 5 | Class |
| Coleman,Tiana | 115240 | JFK8 Education Session Part 5 | Class |
| Alexander,Dominique | 115240 | JFK8 Education Session Part 5 | Class |
| Santana,Angel | 115240 | JFK8 Education Session Part 5 | Class |
| Corley,Jayshawn | 115240 | JFK8 Education Session Part 5 | Class |
| kay,justin | 115240 | JFK8 Education Session Part 5 | Class |
| Scott,Barry | 115240 | JFK8 Education Session Part 5 | Class |
| Oretuga,Kehinde | 115240 | JFK8 Education Session Part 5 | Class |
| Oretuga,Kehinde | 115240 | JFK8 Education Session Part 5 | Class |
| Guamanquispe,Dindi Rose | 115240 | JFK8 Education Session Part 5 | Class |
| Then Lugo,Eli | 115240 | JFK8 Education Session Part 5 | Class |
| Hunt,Damale | 115240 | JFK8 Education Session Part 5 | Class |
| Gronock,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| lopez,Marisol | 115240 | JFK8 Education Session Part 5 | Class |
| Sparendam,Mariah | 115240 | JFK8 Education Session Part 5 | Class |
| ACESTE,KIM | 115240 | JFK8 Education Session Part 5 | Class |
| Iorio,Anthony Louis | 115240 | JFK8 Education Session Part 5 | Class |
| salazar,Isamar | 115240 | JFK8 Education Session Part 5 | Class |
| Younan,Mina | 115240 | JFK8 Education Session Part 5 | Class |
| Marana,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Iacono,Joseph Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Crespo,Catya Gi | 115240 | JFK8 Education Session Part 5 | Class |
| Ojeda,Bernardo | 115240 | JFK8 Education Session Part 5 | Class |
| Mejia,Carlos | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Victoria Mary | 115240 | JFK8 Education Session Part 5 | Class |
| Godfrey,Jacyn-Lee | 115240 | JFK8 Education Session Part 5 | Class |
| Olivares,Nathaniel | 115240 | JFK8 Education Session Part 5 | Class |
| Hart,Kami L | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Keanu | 115240 | JFK8 Education Session Part 5 | Class |
| Guillen,Alvaro | 115240 | JFK8 Education Session Part 5 | Class |
| williams,Aderonke | 115240 | JFK8 Education Session Part 5 | Class |
| Simpkins,Gerald | 115240 | JFK8 Education Session Part 5 | Class |
| Davidson,Shaun L | 115240 | JFK8 Education Session Part 5 | Class |
| Pavia Ortiz,Jose Eduardo | 115240 | JFK8 Education Session Part 5 | Class |
| Anger,Tyler | 115240 | JFK8 Education Session Part 5 | Class |
| Javate,Adrian | 115240 | JFK8 Education Session Part 5 | Class |
| Lema,Jessica Jessica | 115240 | JFK8 Education Session Part 5 | Class |
| scott,kaila | 115240 | JFK8 Education Session Part 5 | Class |
| Rohr,Thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Carroll,John | 115240 | JFK8 Education Session Part 5 | Class |
| Villanueva Ortiz,Raquel | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Meyers,Neko | 115240 | JFK8 Education Session Part 5 | Class |
| lopez,zugeily | 115240 | JFK8 Education Session Part 5 | Class |
| lopez,zugeily | 115240 | JFK8 Education Session Part 5 | Class |
| Carrion,Shayla | 115240 | JFK8 Education Session Part 5 | Class |
| acosta,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Rizzo,Angela R | 115240 | JFK8 Education Session Part 5 | Class |
| Perera,Wijethunga | 115240 | JFK8 Education Session Part 5 | Class |
| Nsionu,Chima | 115240 | JFK8 Education Session Part 5 | Class |
| Lewin,Reyon | 115240 | JFK8 Education Session Part 5 | Class |
| Doyle,Caitlyn | 115240 | JFK8 Education Session Part 5 | Class |
| Bundo,Anila | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Shanese Nari | 115240 | JFK8 Education Session Part 5 | Class |
| Kittrell,April | 115240 | JFK8 Education Session Part 5 | Class |
| Sims,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Aghayev,Rasim | 115240 | JFK8 Education Session Part 5 | Class |
| Yani,Kerolos Samir | 115240 | JFK8 Education Session Part 5 | Class |
| Raheem,Sodiq | 115240 | JFK8 Education Session Part 5 | Class |
| Walker,Veronica | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez Jumelles,Alan Aristides | 115240 | JFK8 Education Session Part 5 | Class |
| Messidor,Nehemie | 115240 | JFK8 Education Session Part 5 | Class |
| pondexter,jeffrey | 115240 | JFK8 Education Session Part 5 | Class |
| Ramirez Jr,Angel | 115240 | JFK8 Education Session Part 5 | Class |
| Bak,Slawomir Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Kabba,Isaibu | 115240 | JFK8 Education Session Part 5 | Class |
| Maloloy-on,Margaret | 115240 | JFK8 Education Session Part 5 | Class |
| sullivan,kimberly | 115240 | JFK8 Education Session Part 5 | Class |
| Ustimenko,Olga | 115240 | JFK8 Education Session Part 5 | Class |
| Villani,Dominick Peter | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes Esquivel,Blanca | 115240 | JFK8 Education Session Part 5 | Class |
| Hubert,Petra R. | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Jose Alberto | 115240 | JFK8 Education Session Part 5 | Class |
| Wallace,Sabrina | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Mauricio Angel | 115240 | JFK8 Education Session Part 5 | Class |
| Philips,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Nieves,Audeli | 115240 | JFK8 Education Session Part 5 | Class |
| Robertson,Elason | 115240 | JFK8 Education Session Part 5 | Class |
| Hardney-Andrews,Symone | 115240 | JFK8 Education Session Part 5 | Class |
| Quaye,Alvin | 115240 | JFK8 Education Session Part 5 | Class |
| Wu,andrew | 115240 | JFK8 Education Session Part 5 | Class |
| Maneiro,Casia | 115240 | JFK8 Education Session Part 5 | Class |
| Egodage,Indeera Pramodh | 115240 | JFK8 Education Session Part 5 | Class |
| Egodage,Indeera Pramodh | 115240 | JFK8 Education Session Part 5 | Class |
| James,Annmarie | 115240 | JFK8 Education Session Part 5 | Class |
| Bryant,Jayla | 115240 | JFK8 Education Session Part 5 | Class |
| Bermudez-Boyce,Jasmine | 115240 | JFK8 Education Session Part 5 | Class |
| allen,mikalann A | 115240 | JFK8 Education Session Part 5 | Class |
| Anyia,Chidi | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Derek | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Rodriguez,Yma Sumac | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Kiana | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Sequana | 115240 | JFK8 Education Session Part 5 | Class |
| Rendon,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Rendon,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Santos,Anthony Justin | 115240 | JFK8 Education Session Part 5 | Class |
| Casso,Shateek | 115240 | JFK8 Education Session Part 5 | Class |
| Badillo,Ana | 115240 | JFK8 Education Session Part 5 | Class |
| Noncilus,Jean louis | 115240 | JFK8 Education Session Part 5 | Class |
| martinez,wendy daniela | 115240 | JFK8 Education Session Part 5 | Class |
| Lazo-Romero,Orla | 115240 | JFK8 Education Session Part 5 | Class |
| Rady,Shawana | 115240 | JFK8 Education Session Part 5 | Class |
| Rizk,Mostafa Gabr El-said | 115240 | JFK8 Education Session Part 5 | Class |
| Mortimer,Dahlia | 115240 | JFK8 Education Session Part 5 | Class |
| yozzo,sharon | 115240 | JFK8 Education Session Part 5 | Class |
| Pujols,Yorlenis | 115240 | JFK8 Education Session Part 5 | Class |
| Erazo,Juan Erazo | 115240 | JFK8 Education Session Part 5 | Class |
| Crosdale,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| White,Vanessa | 115240 | JFK8 Education Session Part 5 | Class |
| Naranjo,Zoila | 115240 | JFK8 Education Session Part 5 | Class |
| Lima,Carla | 115240 | JFK8 Education Session Part 5 | Class |
| Payne,Stephen | 115240 | JFK8 Education Session Part 5 | Class |
| Greer,Vonciel | 115240 | JFK8 Education Session Part 5 | Class |
| Ahmed,Mohaiminul | 115240 | JFK8 Education Session Part 5 | Class |
| Berrios,David | 115240 | JFK8 Education Session Part 5 | Class |
| Ledesma,Jiliana | 115240 | JFK8 Education Session Part 5 | Class |
| Polin,Eric | 115240 | JFK8 Education Session Part 5 | Class |
| Giraldo,Claudia | 115240 | JFK8 Education Session Part 5 | Class |
| Cohen,Madison | 115240 | JFK8 Education Session Part 5 | Class |
| shahzad,Qamar | 115240 | JFK8 Education Session Part 5 | Class |
| Beniquez,Chris | 115240 | JFK8 Education Session Part 5 | Class |
| Humphery,Lonasia | 115240 | JFK8 Education Session Part 5 | Class |
| Splatt,Patrick | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Rosali | 115240 | JFK8 Education Session Part 5 | Class |
| Jean marie,Tarnisha | 115240 | JFK8 Education Session Part 5 | Class |
| James,Kyle | 115240 | JFK8 Education Session Part 5 | Class |
| Bouri,Adam | 115240 | JFK8 Education Session Part 5 | Class |
| Terry,Isaiah Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Vinson,Betty | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Ali | 115240 | JFK8 Education Session Part 5 | Class |
| Sison,Patricia Ann G | 115240 | JFK8 Education Session Part 5 | Class |
| Cheng,Simon | 115240 | JFK8 Education Session Part 5 | Class |
| Ngo,Tony | 115240 | JFK8 Education Session Part 5 | Class |
| jonas,anthony g | 115240 | JFK8 Education Session Part 5 | Class |
| Anglade,Frantzceska | 115240 | JFK8 Education Session Part 5 | Class |
| drozdowski,Violetta | 115240 | JFK8 Education Session Part 5 | Class |
| Black,Nephateria K | 115240 | JFK8 Education Session Part 5 | Class |
| Chibeze,Landry Saint | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| valente,christine | 115240 | JFK8 Education Session Part 5 | Class |
| Onofre flores,Cristian | 115240 | JFK8 Education Session Part 5 | Class |
| Tran,VyToan | 115240 | JFK8 Education Session Part 5 | Class |
| Concepcion,Claudia | 115240 | JFK8 Education Session Part 5 | Class |
| Molina,Jocelyn | 115240 | JFK8 Education Session Part 5 | Class |
| Phillips,Simka | 115240 | JFK8 Education Session Part 5 | Class |
| Bulathsinhalage,Judvin Emilson | 115240 | JFK8 Education Session Part 5 | Class |
| Cole,Morenike | 115240 | JFK8 Education Session Part 5 | Class |
| Quintero,edwin | 115240 | JFK8 Education Session Part 5 | Class |
| ormeno,maggie | 115240 | JFK8 Education Session Part 5 | Class |
| RODRIGUEZ,MAIGUALIDA C | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Cesar | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Wendy | 115240 | JFK8 Education Session Part 5 | Class |
| Kennedy,Tyrone | 115240 | JFK8 Education Session Part 5 | Class |
| Austria,Gerardo | 115240 | JFK8 Education Session Part 5 | Class |
| Perez Figueroa,Nilsa | 115240 | JFK8 Education Session Part 5 | Class |
| Omifisoye,Adebola | 115240 | JFK8 Education Session Part 5 | Class |
| Ajiboye,Emmanuel Sunday | 115240 | JFK8 Education Session Part 5 | Class |
| Ware,Cleveland | 115240 | JFK8 Education Session Part 5 | Class |
| Olisah,Chukwuemeka | 115240 | JFK8 Education Session Part 5 | Class |
| CAMPBELL,DYLAN CHRISTOPHER | 115240 | JFK8 Education Session Part 5 | Class |
| Feucht,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Maloum,Sandra | 115240 | JFK8 Education Session Part 5 | Class |
| Cort,Melanie Ann | 115240 | JFK8 Education Session Part 5 | Class |
| Ramkisson,Peter | 115240 | JFK8 Education Session Part 5 | Class |
| Pacheco,Dana | 115240 | JFK8 Education Session Part 5 | Class |
| Quick,Shynia | 115240 | JFK8 Education Session Part 5 | Class |
| Eguzouwa,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| cisse,Soureya Soureya | 115240 | JFK8 Education Session Part 5 | Class |
| Macjessie-Mbewe,Nyasha | 115240 | JFK8 Education Session Part 5 | Class |
| Martin Jr,Reynold | 115240 | JFK8 Education Session Part 5 | Class |
| Krim,Aya | 115240 | JFK8 Education Session Part 5 | Class |
| Chakma..,Kumar.. | 115240 | JFK8 Education Session Part 5 | Class |
| Ferrari,Alejandro | 115240 | JFK8 Education Session Part 5 | Class |
| Ferrari,Alejandro | 115240 | JFK8 Education Session Part 5 | Class |
| Parham,Shyaisia | 115240 | JFK8 Education Session Part 5 | Class |
| Diop,Marema | 115240 | JFK8 Education Session Part 5 | Class |
| Lee,Susanl | 115240 | JFK8 Education Session Part 5 | Class |
| Zegarra Carranza,Juan | 115240 | JFK8 Education Session Part 5 | Class |
| Dia,Salimata | 115240 | JFK8 Education Session Part 5 | Class |
| Monroig,Jorge | 115240 | JFK8 Education Session Part 5 | Class |
| Karen,Dyer | 115240 | JFK8 Education Session Part 5 | Class |
| Almendaris,Rosio | 115240 | JFK8 Education Session Part 5 | Class |
| Balili,Cezar | 115240 | JFK8 Education Session Part 5 | Class |
| Armstrong,alana | 115240 | JFK8 Education Session Part 5 | Class |
| Young,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Mujezic,Albina | 115240 | JFK8 Education Session Part 5 | Class |
| Weitzman,Marc | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Oden,Kelvin | 115240 | JFK8 Education Session Part 5 | Class |
| Rashkevych,Mikhalo | 115240 | JFK8 Education Session Part 5 | Class |
| Goriva,Adina Sixta | 115240 | JFK8 Education Session Part 5 | Class |
| Frias,Antolino | 115240 | JFK8 Education Session Part 5 | Class |
| Adjodha,Narine Narine | 115240 | JFK8 Education Session Part 5 | Class |
| Aponte Fonfrias,Georgina Julia | 115240 | JFK8 Education Session Part 5 | Class |
| mcintyre,thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Justina Angelique | 115240 | JFK8 Education Session Part 5 | Class |
| Alejo,Sofia | 115240 | JFK8 Education Session Part 5 | Class |
| Arroyo,Myrna Michelle | 115240 | JFK8 Education Session Part 5 | Class |
| Ebrahim,Nermeen | 115240 | JFK8 Education Session Part 5 | Class |
| Okeke,Francis | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Jhonnel | 115240 | JFK8 Education Session Part 5 | Class |
| Alexander,Rashanda | 115240 | JFK8 Education Session Part 5 | Class |
| Vollweiler,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Paulate,Elfrido | 115240 | JFK8 Education Session Part 5 | Class |
| Obierika,Uchenna | 115240 | JFK8 Education Session Part 5 | Class |
| villamar,patricia | 115240 | JFK8 Education Session Part 5 | Class |
| Turton,Morleen | 115240 | JFK8 Education Session Part 5 | Class |
| Hamilton,Tiffany | 115240 | JFK8 Education Session Part 5 | Class |
| Atancha,Julius | 115240 | JFK8 Education Session Part 5 | Class |
| Madawala,Sandra | 115240 | JFK8 Education Session Part 5 | Class |
| Bari,Izel Eda | 115240 | JFK8 Education Session Part 5 | Class |
| Spence,Brandon | 115240 | JFK8 Education Session Part 5 | Class |
| Humbert,Mervin | 115240 | JFK8 Education Session Part 5 | Class |
| Hairston,Leroy | 115240 | JFK8 Education Session Part 5 | Class |
| Olmedo,Cristian | 115240 | JFK8 Education Session Part 5 | Class |
| Herman,Tyrone | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Charles | 115240 | JFK8 Education Session Part 5 | Class |
| Shahin,AKM | 115240 | JFK8 Education Session Part 5 | Class |
| Ghaly,Fawky Salah | 115240 | JFK8 Education Session Part 5 | Class |
| Zeanalabdeen,Rabaa Aladawia | 115240 | JFK8 Education Session Part 5 | Class |
| Evans,Egypt | 115240 | JFK8 Education Session Part 5 | Class |
| Royster,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Mahmoud,Amal M | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Anyel | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Ronaldino | 115240 | JFK8 Education Session Part 5 | Class |
| Adunia,Tonny | 115240 | JFK8 Education Session Part 5 | Class |
| Dees,lateefah | 115240 | JFK8 Education Session Part 5 | Class |
| guaraca,ana | 115240 | JFK8 Education Session Part 5 | Class |
| Nasser,Mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Salazar,Ligia Elena | 115240 | JFK8 Education Session Part 5 | Class |
| Gerrity,Egan | 115240 | JFK8 Education Session Part 5 | Class |
| Kamara,Oumar | 115240 | JFK8 Education Session Part 5 | Class |
| Tran,Thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Davis,Martina | 115240 | JFK8 Education Session Part 5 | Class |
| Cabrera,Maritza Araceli | 115240 | JFK8 Education Session Part 5 | Class |
| Tello,Olinda | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Nfonoyim,Nerise B | 115240 | JFK8 Education Session Part 5 | Class |
| ahamed,khandakar k | 115240 | JFK8 Education Session Part 5 | Class |
| Walker,Keyan | 115240 | JFK8 Education Session Part 5 | Class |
| Basurto,Armando | 115240 | JFK8 Education Session Part 5 | Class |
| Caesar,Jay J. | 115240 | JFK8 Education Session Part 5 | Class |
| Preddie,Kerone | 115240 | JFK8 Education Session Part 5 | Class |
| Loria,Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Hesdra,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Medina Toro,Marcela | 115240 | JFK8 Education Session Part 5 | Class |
| Ramos,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Oneal,diamond Infinity | 115240 | JFK8 Education Session Part 5 | Class |
| Oneal,diamond Infinity | 115240 | JFK8 Education Session Part 5 | Class |
| foster,ksean | 115240 | JFK8 Education Session Part 5 | Class |
| webster,john giovanni | 115240 | JFK8 Education Session Part 5 | Class |
| Kwaafo,Veronica A | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Whitney | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Whitney | 115240 | JFK8 Education Session Part 5 | Class |
| Pavia Castillo,Teresa | 115240 | JFK8 Education Session Part 5 | Class |
| Kovos,Keanna Mari | 115240 | JFK8 Education Session Part 5 | Class |
| Suarez,Joel | 115240 | JFK8 Education Session Part 5 | Class |
| Gooding,Chetney | 115240 | JFK8 Education Session Part 5 | Class |
| Anthony,Jaquan | 115240 | JFK8 Education Session Part 5 | Class |
| archille,jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Adediran,Iyanuoluwa | 115240 | JFK8 Education Session Part 5 | Class |
| Kirdahy,Diana | 115240 | JFK8 Education Session Part 5 | Class |
| Knutsen,Loriann | 115240 | JFK8 Education Session Part 5 | Class |
| Wardak,Naveed | 115240 | JFK8 Education Session Part 5 | Class |
| Vukelic,Alex | 115240 | JFK8 Education Session Part 5 | Class |
| Barrios,Rey | 115240 | JFK8 Education Session Part 5 | Class |
| Ponce,Karen | 115240 | JFK8 Education Session Part 5 | Class |
| Foster,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Olisemeka,Chukwudi | 115240 | JFK8 Education Session Part 5 | Class |
| Mucha,Nick | 115240 | JFK8 Education Session Part 5 | Class |
| Dhakal,Prakash | 115240 | JFK8 Education Session Part 5 | Class |
| Charles,Kizzy | 115240 | JFK8 Education Session Part 5 | Class |
| CARAIG,ANGELA | 115240 | JFK8 Education Session Part 5 | Class |
| Hamilton,Lloyd | 115240 | JFK8 Education Session Part 5 | Class |
| Persaud,Ryan | 115240 | JFK8 Education Session Part 5 | Class |
| Valentin,Maria Elena | 115240 | JFK8 Education Session Part 5 | Class |
| Gilbert,John | 115240 | JFK8 Education Session Part 5 | Class |
| Ramirez,Lidiana Nallely | 115240 | JFK8 Education Session Part 5 | Class |
| williacy,Carla | 115240 | JFK8 Education Session Part 5 | Class |
| Maurasse,Jamel J | 115240 | JFK8 Education Session Part 5 | Class |
| Gloria,Laura | 115240 | JFK8 Education Session Part 5 | Class |
| Yens,Elias S | 115240 | JFK8 Education Session Part 5 | Class |
| Ferreira Santos,Indalecio Adelco | 115240 | JFK8 Education Session Part 5 | Class |
| Scott,Lamont | 115240 | JFK8 Education Session Part 5 | Class |
| Okumu,Agnes | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Perch,Cameron | 115240 | JFK8 Education Session Part 5 | Class |
| ASAD,YOUSEF | 115240 | JFK8 Education Session Part 5 | Class |
| Randazzo,Eleonora | 115240 | JFK8 Education Session Part 5 | Class |
| Muhammad,Atiya | 115240 | JFK8 Education Session Part 5 | Class |
| Medina,Marty | 115240 | JFK8 Education Session Part 5 | Class |
| Maldonado,Sergio | 115240 | JFK8 Education Session Part 5 | Class |
| Maldonado,Sergio | 115240 | JFK8 Education Session Part 5 | Class |
| Meegodage,Indika Danuruk Perera | 115240 | JFK8 Education Session Part 5 | Class |
| Alcantaro,Dione Lorraine | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Amanda | 115240 | JFK8 Education Session Part 5 | Class |
| Herrera,Maggie | 115240 | JFK8 Education Session Part 5 | Class |
| Titus,Kristy | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Thom,Krissy Shontel | 115240 | JFK8 Education Session Part 5 | Class |
| Murphy,Elijah | 115240 | JFK8 Education Session Part 5 | Class |
| Muchrison,Gideon | 115240 | JFK8 Education Session Part 5 | Class |
| Palumbo,Salvatore john | 115240 | JFK8 Education Session Part 5 | Class |
| Myton,Aaliyah | 115240 | JFK8 Education Session Part 5 | Class |
| Davis,Tiara | 115240 | JFK8 Education Session Part 5 | Class |
| Mauceri,Corrado | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Adisia | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Adisia | 115240 | JFK8 Education Session Part 5 | Class |
| Lauria,Chris | 115240 | JFK8 Education Session Part 5 | Class |
| Danso,Mahamadou Musa | 115240 | JFK8 Education Session Part 5 | Class |
| wijesekera,shirani | 115240 | JFK8 Education Session Part 5 | Class |
| Harrell,Shashana | 115240 | JFK8 Education Session Part 5 | Class |
| Vukel,Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Vukel,Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Maldonado,Isabel | 115240 | JFK8 Education Session Part 5 | Class |
| Olamiju,Racheal Oluseun | 115240 | JFK8 Education Session Part 5 | Class |
| Elgamal,Mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Rozon,Kimverly A | 115240 | JFK8 Education Session Part 5 | Class |
| Rozon,Kimverly A | 115240 | JFK8 Education Session Part 5 | Class |
| Soriano,Glad | 115240 | JFK8 Education Session Part 5 | Class |
| Rettle,Corey Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Hector,Deborah | 115240 | JFK8 Education Session Part 5 | Class |
| Wu,Thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,William | 115240 | JFK8 Education Session Part 5 | Class |
| Varela,Edgar | 115240 | JFK8 Education Session Part 5 | Class |
| Portillo,Alex | 115240 | JFK8 Education Session Part 5 | Class |
| Mckay,Tayy | 115240 | JFK8 Education Session Part 5 | Class |
| richardson,hakeem | 115240 | JFK8 Education Session Part 5 | Class |
| Kongaha,Shali G | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez,Wil | 115240 | JFK8 Education Session Part 5 | Class |
| Benjamin,Larona O | 115240 | JFK8 Education Session Part 5 | Class |
| Mcdonald,Christina | 115240 | JFK8 Education Session Part 5 | Class |
| Collison,Ronald | 115240 | JFK8 Education Session Part 5 | Class |
| Bernard,Destiny Mya | 115240 | JFK8 Education Session Part 5 | Class |

Amazon_000536

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Morales nestor,Ismaelda | 115240 | JFK8 Education Session Part 5 | Class |
| Morales nestor,Ismaelda | 115240 | JFK8 Education Session Part 5 | Class |
| flores,angel | 115240 | JFK8 Education Session Part 5 | Class |
| Nicolas,Sandra | 115240 | JFK8 Education Session Part 5 | Class |
| Perciballi,Edward T | 115240 | JFK8 Education Session Part 5 | Class |
| Perciballi,Edward T | 115240 | JFK8 Education Session Part 5 | Class |
| Vann,Dontae | 115240 | JFK8 Education Session Part 5 | Class |
| Zakharyan,Artem | 115240 | JFK8 Education Session Part 5 | Class |
| Gomez,Tulio | 115240 | JFK8 Education Session Part 5 | Class |
| Gomez,Tulio | 115240 | JFK8 Education Session Part 5 | Class |
| Santana,Jose Guillermo | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Karen | 115240 | JFK8 Education Session Part 5 | Class |
| Chase,Jesse | 115240 | JFK8 Education Session Part 5 | Class |
| Dey,Shanthanu | 115240 | JFK8 Education Session Part 5 | Class |
| Miller,Sherill | 115240 | JFK8 Education Session Part 5 | Class |
| santangelo,Jenn | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Latoya | 115240 | JFK8 Education Session Part 5 | Class |
| Massaly,Dieneba | 115240 | JFK8 Education Session Part 5 | Class |
| Girgis,Amir Reda | 115240 | JFK8 Education Session Part 5 | Class |
| Colbert,Khalil | 115240 | JFK8 Education Session Part 5 | Class |
| Guerrero,Brandon | 115240 | JFK8 Education Session Part 5 | Class |
| Dikeocha,Marcus | 115240 | JFK8 Education Session Part 5 | Class |
| Gomes,Edwin | 115240 | JFK8 Education Session Part 5 | Class |
| Jimenez,Demetrio A | 115240 | JFK8 Education Session Part 5 | Class |
| Santiago,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| burns,terrell | 115240 | JFK8 Education Session Part 5 | Class |
| igwilloh,princess | 115240 | JFK8 Education Session Part 5 | Class |
| morton,noel | 115240 | JFK8 Education Session Part 5 | Class |
| Atlas,Sophia | 115240 | JFK8 Education Session Part 5 | Class |
| Koura,Mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Bautista,Juleisy A | 115240 | JFK8 Education Session Part 5 | Class |
| Bautista,Juleisy A | 115240 | JFK8 Education Session Part 5 | Class |
| Suarez,Melody | 115240 | JFK8 Education Session Part 5 | Class |
| Magnus,Kimberly | 115240 | JFK8 Education Session Part 5 | Class |
| Lerotholi,Katleho Prince | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Comrad Mark | 115240 | JFK8 Education Session Part 5 | Class |
| Goitia,Osweidy M | 115240 | JFK8 Education Session Part 5 | Class |
| Carmichael,Margaret | 115240 | JFK8 Education Session Part 5 | Class |
| Hyppolite,Jean | 115240 | JFK8 Education Session Part 5 | Class |
| Kosotiki,Ericka Y | 115240 | JFK8 Education Session Part 5 | Class |
| Lanorith,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Cometa,Pastor Samuel | 115240 | JFK8 Education Session Part 5 | Class |
| Shivers,Yasmen Chanaile | 115240 | JFK8 Education Session Part 5 | Class |
| Cuenca,Elvia | 115240 | JFK8 Education Session Part 5 | Class |
| Shenouda,Randa | 115240 | JFK8 Education Session Part 5 | Class |
| Nanayakkara,Hasith | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Guadalupe | 115240 | JFK8 Education Session Part 5 | Class |
| Usmonov,Umidjon | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lima,Sheyla Marleny | 115240 | JFK8 Education Session Part 5 | Class |
| Landazabal,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Chambers,Britney | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Anthoni | 115240 | JFK8 Education Session Part 5 | Class |
| Pardee,Kev | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Prynce | 115240 | JFK8 Education Session Part 5 | Class |
| Lewis,Trinity | 115240 | JFK8 Education Session Part 5 | Class |
| Codino,Ramon | 115240 | JFK8 Education Session Part 5 | Class |
| Zaniewska,Dorota | 115240 | JFK8 Education Session Part 5 | Class |
| Ochili,Chikodi Josephine | 115240 | JFK8 Education Session Part 5 | Class |
| Yepez,Joseph v | 115240 | JFK8 Education Session Part 5 | Class |
| Guzman,Mario | 115240 | JFK8 Education Session Part 5 | Class |
| Palma,David | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Daisy | 115240 | JFK8 Education Session Part 5 | Class |
| Clyburn,Juanita | 115240 | JFK8 Education Session Part 5 | Class |
| Fuentes,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Awada,Ahmad | 115240 | JFK8 Education Session Part 5 | Class |
| Tavarez,Carla | 115240 | JFK8 Education Session Part 5 | Class |
| Tavarez,Carla | 115240 | JFK8 Education Session Part 5 | Class |
| Morris,Matt | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Sugeiry | 115240 | JFK8 Education Session Part 5 | Class |
| Floreal,Roody | 115240 | JFK8 Education Session Part 5 | Class |
| Enakhimion,Blessing Onolenese | 115240 | JFK8 Education Session Part 5 | Class |
| Palmer,Trevor Roy | 115240 | JFK8 Education Session Part 5 | Class |
| Bishop,Eugene | 115240 | JFK8 Education Session Part 5 | Class |
| Esposito,Victoria | 115240 | JFK8 Education Session Part 5 | Class |
| Mikhail,Abanoub Magdi | 115240 | JFK8 Education Session Part 5 | Class |
| Serrano,Galy | 115240 | JFK8 Education Session Part 5 | Class |
| Walker,Jessica | 115240 | JFK8 Education Session Part 5 | Class |
| Wohlmeyer,Helga Helga | 115240 | JFK8 Education Session Part 5 | Class |
| Sosa,Yamileth | 115240 | JFK8 Education Session Part 5 | Class |
| Sosa,Yamileth | 115240 | JFK8 Education Session Part 5 | Class |
| Zaman,Moriom | 115240 | JFK8 Education Session Part 5 | Class |
| Baker,Jordon | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Prussia,Brianna | 115240 | JFK8 Education Session Part 5 | Class |
| Tran,Dinh Binh | 115240 | JFK8 Education Session Part 5 | Class |
| Greene,Aminah | 115240 | JFK8 Education Session Part 5 | Class |
| Bilewu,Micheal | 115240 | JFK8 Education Session Part 5 | Class |
| Muniz,Marcelo Andres | 115240 | JFK8 Education Session Part 5 | Class |
| Stewart,Joe Ryan | 115240 | JFK8 Education Session Part 5 | Class |
| Charlemagne,Jesse | 115240 | JFK8 Education Session Part 5 | Class |
| Samura,Samuel | 115240 | JFK8 Education Session Part 5 | Class |
| Wiseman,Donna | 115240 | JFK8 Education Session Part 5 | Class |
| Cira,Ilkiana | 115240 | JFK8 Education Session Part 5 | Class |
| Lane,tyler shante | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Carmen | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Cullins,Dameek J | 115240 | JFK8 Education Session Part 5 | Class |
| Okeke,Ukamaka | 115240 | JFK8 Education Session Part 5 | Class |
| Gentle,Gregory Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| izquierdo,Edward | 115240 | JFK8 Education Session Part 5 | Class |
| Sala Holguin,Isidra | 115240 | JFK8 Education Session Part 5 | Class |
| Rodrigues,Ethan | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Mike | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,Getriel | 115240 | JFK8 Education Session Part 5 | Class |
| Nuga,Oludare | 115240 | JFK8 Education Session Part 5 | Class |
| Caba,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Frazier,Terence | 115240 | JFK8 Education Session Part 5 | Class |
| Joseph,Francesca | 115240 | JFK8 Education Session Part 5 | Class |
| Greenfield,Rena-Maureen | 115240 | JFK8 Education Session Part 5 | Class |
| Meto,Ledjon | 115240 | JFK8 Education Session Part 5 | Class |
| Made Abad,Darleen | 115240 | JFK8 Education Session Part 5 | Class |
| Estelly,Jwana | 115240 | JFK8 Education Session Part 5 | Class |
| Jabin,Sayema Akter | 115240 | JFK8 Education Session Part 5 | Class |
| Addison,Amanda Sweetie | 115240 | JFK8 Education Session Part 5 | Class |
| Addison,Amanda Sweetie | 115240 | JFK8 Education Session Part 5 | Class |
| Hutton,Delvantae | 115240 | JFK8 Education Session Part 5 | Class |
| Hutton,Delvantae | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,December | 115240 | JFK8 Education Session Part 5 | Class |
| Chikh,Younes | 115240 | JFK8 Education Session Part 5 | Class |
| Okubanjo,Okubanjo | 115240 | JFK8 Education Session Part 5 | Class |
| Dougle,Ramon Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Brice,Ronald | 115240 | JFK8 Education Session Part 5 | Class |
| DelValle,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Askew,Tatiyanna | 115240 | JFK8 Education Session Part 5 | Class |
| Zuluaga,Elisabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Colon,Sara | 115240 | JFK8 Education Session Part 5 | Class |
| Francois Baudelaire,Fonkou | 115240 | JFK8 Education Session Part 5 | Class |
| Duxbury,Mike | 115240 | JFK8 Education Session Part 5 | Class |
| Sze,Chrissy | 115240 | JFK8 Education Session Part 5 | Class |
| Salafia,Amy | 115240 | JFK8 Education Session Part 5 | Class |
| Salafia,Amy | 115240 | JFK8 Education Session Part 5 | Class |
| Diop,Djadji | 115240 | JFK8 Education Session Part 5 | Class |
| Alafuonye,Ucheamaka Loveth | 115240 | JFK8 Education Session Part 5 | Class |
| Cosme,Justin | 115240 | JFK8 Education Session Part 5 | Class |
| Adamu,Amadu | 115240 | JFK8 Education Session Part 5 | Class |
| Molano,Jeremy Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Ocasio,Tania | 115240 | JFK8 Education Session Part 5 | Class |
| Towstik,Andrew Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Haynia,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Torres,Dymond | 115240 | JFK8 Education Session Part 5 | Class |
| Thompson,Peter H | 115240 | JFK8 Education Session Part 5 | Class |
| Davis,Davon | 115240 | JFK8 Education Session Part 5 | Class |
| Said,Hatem | 115240 | JFK8 Education Session Part 5 | Class |
| Said,Hatem | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Warsaw,Adam | 115240 | JFK8 Education Session Part 5 | Class |
| Turano,Maryann | 115240 | JFK8 Education Session Part 5 | Class |
| Moore,Javon | 115240 | JFK8 Education Session Part 5 | Class |
| Emery,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Balderas,Hugo | 115240 | JFK8 Education Session Part 5 | Class |
| Quichimbo,Amanda | 115240 | JFK8 Education Session Part 5 | Class |
| ZARATE CAMACHO,JUAN DIEGO | 115240 | JFK8 Education Session Part 5 | Class |
| Young,Andre | 115240 | JFK8 Education Session Part 5 | Class |
| Mohapeloa,Alice | 115240 | JFK8 Education Session Part 5 | Class |
| Patrick,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Brooks,Martel | 115240 | JFK8 Education Session Part 5 | Class |
| Dennis,Nicholas | 115240 | JFK8 Education Session Part 5 | Class |
| Wright,Malik | 115240 | JFK8 Education Session Part 5 | Class |
| Kone,BOURAHIMA | 115240 | JFK8 Education Session Part 5 | Class |
| alvarez,patricia | 115240 | JFK8 Education Session Part 5 | Class |
| Leo,Cherry | 115240 | JFK8 Education Session Part 5 | Class |
| Holmes-Adderley,Laurece | 115240 | JFK8 Education Session Part 5 | Class |
| Calderaro,Rob | 115240 | JFK8 Education Session Part 5 | Class |
| mendez,elizabeth Ruth | 115240 | JFK8 Education Session Part 5 | Class |
| Turner,Troy | 115240 | JFK8 Education Session Part 5 | Class |
| Melvin,Makayla | 115240 | JFK8 Education Session Part 5 | Class |
| Melvin,Makayla | 115240 | JFK8 Education Session Part 5 | Class |
| uske,taylor | 115240 | JFK8 Education Session Part 5 | Class |
| Avila,Fernando Santiago | 115240 | JFK8 Education Session Part 5 | Class |
| Ashterman,Claudia | 115240 | JFK8 Education Session Part 5 | Class |
| Bestani,Salim | 115240 | JFK8 Education Session Part 5 | Class |
| Redondo,Fanery | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Rechardo Jearmane | 115240 | JFK8 Education Session Part 5 | Class |
| Urgiles,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Yasmin | 115240 | JFK8 Education Session Part 5 | Class |
| Uzodimma,Ginika Cosmas | 115240 | JFK8 Education Session Part 5 | Class |
| Sanz,Bryan | 115240 | JFK8 Education Session Part 5 | Class |
| Soumare,Mame Farma | 115240 | JFK8 Education Session Part 5 | Class |
| Aguirre,Rosa | 115240 | JFK8 Education Session Part 5 | Class |
| Placide,Geraldine | 115240 | JFK8 Education Session Part 5 | Class |
| Denicia Juarez,Arisbeth | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Davoun | 115240 | JFK8 Education Session Part 5 | Class |
| Bailey,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Rodrigues,Victor | 115240 | JFK8 Education Session Part 5 | Class |
| mcrae,zenobia | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz,Delila | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Mario | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| Urioso,Cesar | 115240 | JFK8 Education Session Part 5 | Class |
| Liang,James | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Arelis | 115240 | JFK8 Education Session Part 5 | Class |
| pillaga,Aida | 115240 | JFK8 Education Session Part 5 | Class |
| Ravelo,Brandell Rafael | 115240 | JFK8 Education Session Part 5 | Class |

Amazon_000540

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Ruiz Andrade,Angelo | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz Andrade,Angelo | 115240 | JFK8 Education Session Part 5 | Class |
| Cepeda,Yarumi | 115240 | JFK8 Education Session Part 5 | Class |
| Okoro,Nen | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Monica Denise | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,Monica Denise | 115240 | JFK8 Education Session Part 5 | Class |
| Colon,Hector | 115240 | JFK8 Education Session Part 5 | Class |
| Vasquez,Leticia Jisel | 115240 | JFK8 Education Session Part 5 | Class |
| Isaacs,Armani | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Yapa,Kasun | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Tanya | 115240 | JFK8 Education Session Part 5 | Class |
| Dejoie,Alex | 115240 | JFK8 Education Session Part 5 | Class |
| Jayakodi Arachchige,Amith | 115240 | JFK8 Education Session Part 5 | Class |
| Cetino-Garcia,Christina Julissa | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Andrea | 115240 | JFK8 Education Session Part 5 | Class |
| Pulido,Nancy Maricela | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Hillary | 115240 | JFK8 Education Session Part 5 | Class |
| Holder,Tony | 115240 | JFK8 Education Session Part 5 | Class |
| Abdulhameed,Hannah | 115240 | JFK8 Education Session Part 5 | Class |
| ruiz,jazreel | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Atajah | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Atajah | 115240 | JFK8 Education Session Part 5 | Class |
| Trump,Donald J | 115240 | JFK8 Education Session Part 5 | Class |
| ilin,james | 115240 | JFK8 Education Session Part 5 | Class |
| johnson,andrew | 115240 | JFK8 Education Session Part 5 | Class |
| Concepcion Cruz,Zulma | 115240 | JFK8 Education Session Part 5 | Class |
| marca,monica | 115240 | JFK8 Education Session Part 5 | Class |
| Collins,Samantha | 115240 | JFK8 Education Session Part 5 | Class |
| Hines,Shaun | 115240 | JFK8 Education Session Part 5 | Class |
| Dupuy,Dorissa | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Samuel Darnel | 115240 | JFK8 Education Session Part 5 | Class |
| Frank Sanchez,Michael Joshua | 115240 | JFK8 Education Session Part 5 | Class |
| CHRISTIE,JOHN | 115240 | JFK8 Education Session Part 5 | Class |
| Cochran,MEEKA | 115240 | JFK8 Education Session Part 5 | Class |
| kaddoura,zaki | 115240 | JFK8 Education Session Part 5 | Class |
| Maury,Ruben | 115240 | JFK8 Education Session Part 5 | Class |
| Olivier,Thalia | 115240 | JFK8 Education Session Part 5 | Class |
| Sanon,Bryan | 115240 | JFK8 Education Session Part 5 | Class |
| Lozada,Jazmin | 115240 | JFK8 Education Session Part 5 | Class |
| Lozada,Jazmin | 115240 | JFK8 Education Session Part 5 | Class |
| Priestley,Jade | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Karen | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez,Janna Doreen | 115240 | JFK8 Education Session Part 5 | Class |
| Russell,Novelette | 115240 | JFK8 Education Session Part 5 | Class |
| Nizami,Unaiza | 115240 | JFK8 Education Session Part 5 | Class |
| Angulo Naranjo,Jazmin | 115240 | JFK8 Education Session Part 5 | Class |
| robinson,corey | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Delancey,Patrick Thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Fyffe,Rudolph | 115240 | JFK8 Education Session Part 5 | Class |
| Sidney,Karnelie | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Precious | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Ryan | 115240 | JFK8 Education Session Part 5 | Class |
| Decomme,Olssen | 115240 | JFK8 Education Session Part 5 | Class |
| simmons,Daquane | 115240 | JFK8 Education Session Part 5 | Class |
| Fanous,Raafat A | 115240 | JFK8 Education Session Part 5 | Class |
| Briones,Yeni | 115240 | JFK8 Education Session Part 5 | Class |
| Bhuiya,Mostafizur Rahman | 115240 | JFK8 Education Session Part 5 | Class |
| Rojas,Benito | 115240 | JFK8 Education Session Part 5 | Class |
| nottingham,Sharice | 115240 | JFK8 Education Session Part 5 | Class |
| messado,anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Estrella,Pedro | 115240 | JFK8 Education Session Part 5 | Class |
| Handy,Kymene | 115240 | JFK8 Education Session Part 5 | Class |
| Spencer,Lorenzo | 115240 | JFK8 Education Session Part 5 | Class |
| Hastings,Deavadi Devon | 115240 | JFK8 Education Session Part 5 | Class |
| Rivera,Brandon Manuel | 115240 | JFK8 Education Session Part 5 | Class |
| Gustave,Eutychus | 115240 | JFK8 Education Session Part 5 | Class |
| bhagwandeen,spencer | 115240 | JFK8 Education Session Part 5 | Class |
| porter,richard Keith | 115240 | JFK8 Education Session Part 5 | Class |
| Igwilloh,Eugene | 115240 | JFK8 Education Session Part 5 | Class |
| Rojas,Genesis Marleni | 115240 | JFK8 Education Session Part 5 | Class |
| Singleton,Tishaun | 115240 | JFK8 Education Session Part 5 | Class |
| Gravesande,Rodlin | 115240 | JFK8 Education Session Part 5 | Class |
| Gravesande,Rodlin | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Alexis | 115240 | JFK8 Education Session Part 5 | Class |
| Valdivieso,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez,Jeimy | 115240 | JFK8 Education Session Part 5 | Class |
| Perera,Koswattage Sharma | 115240 | JFK8 Education Session Part 5 | Class |
| Farraj,Siham | 115240 | JFK8 Education Session Part 5 | Class |
| Hom,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| NGUYEN,THI HOANG THU | 115240 | JFK8 Education Session Part 5 | Class |
| Summers,Jordan A | 115240 | JFK8 Education Session Part 5 | Class |
| Joseph,Widler | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,Errol Constantine | 115240 | JFK8 Education Session Part 5 | Class |
| Brooks,Sissy | 115240 | JFK8 Education Session Part 5 | Class |
| Ratliff,Aaron | 115240 | JFK8 Education Session Part 5 | Class |
| Medina,kattya | 115240 | JFK8 Education Session Part 5 | Class |
| Reid,Shanique | 115240 | JFK8 Education Session Part 5 | Class |
| Cao,Tommy | 115240 | JFK8 Education Session Part 5 | Class |
| Kamara,Bai Lamin | 115240 | JFK8 Education Session Part 5 | Class |
| mariano,mario dela cruz | 115240 | JFK8 Education Session Part 5 | Class |
| Corke,ECO | 115240 | JFK8 Education Session Part 5 | Class |
| Roldant,Mia | 115240 | JFK8 Education Session Part 5 | Class |
| Ceville,Roslyn | 115240 | JFK8 Education Session Part 5 | Class |
| Parada,Gloria Elsy | 115240 | JFK8 Education Session Part 5 | Class |
| Pasmore,Lamar | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lovick,Jawaun | 115240 | JFK8 Education Session Part 5 | Class |
| Ceron,Adriana | 115240 | JFK8 Education Session Part 5 | Class |
| Shelton,Jalen | 115240 | JFK8 Education Session Part 5 | Class |
| joseph,Japheth | 115240 | JFK8 Education Session Part 5 | Class |
| Philbert,Malakai | 115240 | JFK8 Education Session Part 5 | Class |
| Ahmed,Chip | 115240 | JFK8 Education Session Part 5 | Class |
| Ahmed,Chip | 115240 | JFK8 Education Session Part 5 | Class |
| Oyola,Alex | 115240 | JFK8 Education Session Part 5 | Class |
| Cortes,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Norman,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Ulysse,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Consuegra,Freddy | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Nia | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarez,Olga | 115240 | JFK8 Education Session Part 5 | Class |
| Mohamed,Faten | 115240 | JFK8 Education Session Part 5 | Class |
| Rahman,Khondoker | 115240 | JFK8 Education Session Part 5 | Class |
| GEORGE,THOMSON | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,papi david | 115240 | JFK8 Education Session Part 5 | Class |
| Lionel,Brendon | 115240 | JFK8 Education Session Part 5 | Class |
| Solomon,Jacob | 115240 | JFK8 Education Session Part 5 | Class |
| evering,asia | 115240 | JFK8 Education Session Part 5 | Class |
| Israel,Garry | 115240 | JFK8 Education Session Part 5 | Class |
| Omosigho,Heather F | 115240 | JFK8 Education Session Part 5 | Class |
| Lombardo,Paul | 115240 | JFK8 Education Session Part 5 | Class |
| nyamagwa,alice | 115240 | JFK8 Education Session Part 5 | Class |
| Figueroa,Zoila | 115240 | JFK8 Education Session Part 5 | Class |
| Aguirre Camara,Edgar | 115240 | JFK8 Education Session Part 5 | Class |
| Clarke,Mario Okeino | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Edu J | 115240 | JFK8 Education Session Part 5 | Class |
| Gordon,Kimmi | 115240 | JFK8 Education Session Part 5 | Class |
| sallo,leonard | 115240 | JFK8 Education Session Part 5 | Class |
| O?Kieffe,Akaisa N | 115240 | JFK8 Education Session Part 5 | Class |
| Shaon,Shahriar | 115240 | JFK8 Education Session Part 5 | Class |
| Worthington,Jasmyne | 115240 | JFK8 Education Session Part 5 | Class |
| Rodgers,Charisma | 115240 | JFK8 Education Session Part 5 | Class |
| Caldwell,Malik | 115240 | JFK8 Education Session Part 5 | Class |
| Caldwell,Malik | 115240 | JFK8 Education Session Part 5 | Class |
| Jubran,Fesal | 115240 | JFK8 Education Session Part 5 | Class |
| Guzman,Josephine | 115240 | JFK8 Education Session Part 5 | Class |
| Guzman,Josephine | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz,Jaime | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Jeffrey | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,takera | 115240 | JFK8 Education Session Part 5 | Class |
| Olmedo,Delfina | 115240 | JFK8 Education Session Part 5 | Class |
| THIRUNAVUKKARASU,RAJEEV | 115240 | JFK8 Education Session Part 5 | Class |
| Gannone,Beth | 115240 | JFK8 Education Session Part 5 | Class |
| Serrano,Edwin | 115240 | JFK8 Education Session Part 5 | Class |
| Mcphatter,Anthony L | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| FILS,KARL Evens Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Guillen,Jhenny | 115240 | JFK8 Education Session Part 5 | Class |
| Cheung,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Amoo,Sukurat O. | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Rovelo | 115240 | JFK8 Education Session Part 5 | Class |
| DINORCIA,Matthew J | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Chrissy | 115240 | JFK8 Education Session Part 5 | Class |
| Antwi Boasiako,Pierre Owusu | 115240 | JFK8 Education Session Part 5 | Class |
| Ayandeji,Iyabo Christina | 115240 | JFK8 Education Session Part 5 | Class |
| Spears,Nina | 115240 | JFK8 Education Session Part 5 | Class |
| Pham,Tien Minh | 115240 | JFK8 Education Session Part 5 | Class |
| Elnahal,Kareem | 115240 | JFK8 Education Session Part 5 | Class |
| Pacheco,York | 115240 | JFK8 Education Session Part 5 | Class |
| Fraga,Meziane | 115240 | JFK8 Education Session Part 5 | Class |
| Giambrone,Michael Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Quiles,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Quiles,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Bradshaw,DJ | 115240 | JFK8 Education Session Part 5 | Class |
| Podeszwa,Lisa | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Wady | 115240 | JFK8 Education Session Part 5 | Class |
| Ospina,Carmen Elisa | 115240 | JFK8 Education Session Part 5 | Class |
| Nieves,Susie | 115240 | JFK8 Education Session Part 5 | Class |
| Edwards,Tony Gauntlette | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Morales,Genevieve | 115240 | JFK8 Education Session Part 5 | Class |
| Verdesoto,Irani | 115240 | JFK8 Education Session Part 5 | Class |
| Batista,Rosmery | 115240 | JFK8 Education Session Part 5 | Class |
| Cacciamani,Jenny | 115240 | JFK8 Education Session Part 5 | Class |
| Stiebel,Samuel Stephen | 115240 | JFK8 Education Session Part 5 | Class |
| Wu,Billy | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Maria M | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Ticas,Christiaan | 115240 | JFK8 Education Session Part 5 | Class |
| Pavia Ortiz,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Deliotte,Gabrielle | 115240 | JFK8 Education Session Part 5 | Class |
| DUNCAN,INDIRA | 115240 | JFK8 Education Session Part 5 | Class |
| Wiggins,Maya | 115240 | JFK8 Education Session Part 5 | Class |
| Primero,Louie | 115240 | JFK8 Education Session Part 5 | Class |
| Okeke,Jennifer Chimeluo | 115240 | JFK8 Education Session Part 5 | Class |
| Nicholas,Jean | 115240 | JFK8 Education Session Part 5 | Class |
| BRINSON,ISAIAH | 115240 | JFK8 Education Session Part 5 | Class |
| Fernando,shivon | 115240 | JFK8 Education Session Part 5 | Class |
| Zhang,Rui Hui | 115240 | JFK8 Education Session Part 5 | Class |
| Jean Marie,Marie Carmelle | 115240 | JFK8 Education Session Part 5 | Class |
| Jean Marie,Marie Carmelle | 115240 | JFK8 Education Session Part 5 | Class |
| pannilage,anoja | 115240 | JFK8 Education Session Part 5 | Class |
| blanco,juan Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Jaimes,Justin | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Jaimes,Justin | 115240 | JFK8 Education Session Part 5 | Class |
| Gaston,Lourdemia | 115240 | JFK8 Education Session Part 5 | Class |
| vaidya,Gopi | 115240 | JFK8 Education Session Part 5 | Class |
| Sama,Mauro Mari J | 115240 | JFK8 Education Session Part 5 | Class |
| gutierrez,alexandra | 115240 | JFK8 Education Session Part 5 | Class |
| gillenwater,cindy | 115240 | JFK8 Education Session Part 5 | Class |
| Kazantsev,Ivan | 115240 | JFK8 Education Session Part 5 | Class |
| Segura,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Gorbounov,Oleg | 115240 | JFK8 Education Session Part 5 | Class |
| Wilkes,Danny | 115240 | JFK8 Education Session Part 5 | Class |
| Pimentel,Arianny Mariel | 115240 | JFK8 Education Session Part 5 | Class |
| Diamond,Aaliyah | 115240 | JFK8 Education Session Part 5 | Class |
| Destin,Richardson | 115240 | JFK8 Education Session Part 5 | Class |
| Ng,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| Melo,Gloria | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Cassara,Andrew Jon | 115240 | JFK8 Education Session Part 5 | Class |
| Flemming,Guiseppe G | 115240 | JFK8 Education Session Part 5 | Class |
| Venditti,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Zuniga,Freddy | 115240 | JFK8 Education Session Part 5 | Class |
| Fernandez,Justin | 115240 | JFK8 Education Session Part 5 | Class |
| Dean,Jonathon | 115240 | JFK8 Education Session Part 5 | Class |
| Lloyd,Dianna | 115240 | JFK8 Education Session Part 5 | Class |
| Isaula,Christine | 115240 | JFK8 Education Session Part 5 | Class |
| Harrison,Jessica | 115240 | JFK8 Education Session Part 5 | Class |
| Palafox,Jesus | 115240 | JFK8 Education Session Part 5 | Class |
| Perry,Brandon | 115240 | JFK8 Education Session Part 5 | Class |
| Vazquez,jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Gioeni,Joanne | 115240 | JFK8 Education Session Part 5 | Class |
| Youssef,Mina | 115240 | JFK8 Education Session Part 5 | Class |
| Leary,Keimen | 115240 | JFK8 Education Session Part 5 | Class |
| Sevilla,Mateo | 115240 | JFK8 Education Session Part 5 | Class |
| Onuigwe,Okwuchukwu Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Coates,Kenneth | 115240 | JFK8 Education Session Part 5 | Class |
| MENSAH,DEBORAH | 115240 | JFK8 Education Session Part 5 | Class |
| Quick,feeonna | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Tajjik | 115240 | JFK8 Education Session Part 5 | Class |
| Jones,Tajjik | 115240 | JFK8 Education Session Part 5 | Class |
| Moreno,Mack | 115240 | JFK8 Education Session Part 5 | Class |
| Abdullah,Tariq Zaid | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz,Katie | 115240 | JFK8 Education Session Part 5 | Class |
| Ibitoye,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| DIAZ,GIOVANNA | 115240 | JFK8 Education Session Part 5 | Class |
| Adam,Sarif | 115240 | JFK8 Education Session Part 5 | Class |
| Vasquez,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Vasquez,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Rios,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Dunn,Jahrel | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Watson,Khaliq | 115240 | JFK8 Education Session Part 5 | Class |
| Acevedo,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| meza,jorge luis | 115240 | JFK8 Education Session Part 5 | Class |
| SEMBENE,EL HADJI | 115240 | JFK8 Education Session Part 5 | Class |
| SEMBENE,EL HADJI | 115240 | JFK8 Education Session Part 5 | Class |
| RetanaMartinez,Karin Lorena | 115240 | JFK8 Education Session Part 5 | Class |
| Vergara,Estrellita | 115240 | JFK8 Education Session Part 5 | Class |
| Dungan,Jonathan G | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Andres | 115240 | JFK8 Education Session Part 5 | Class |
| Hylton,Andre | 115240 | JFK8 Education Session Part 5 | Class |
| Shambo,Jamal | 115240 | JFK8 Education Session Part 5 | Class |
| Diomande,Malaeja | 115240 | JFK8 Education Session Part 5 | Class |
| Lynch,April | 115240 | JFK8 Education Session Part 5 | Class |
| Cancel,Anabel | 115240 | JFK8 Education Session Part 5 | Class |
| Da Cruz,Lucinda Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Da Cruz,Lucinda Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| Certyl,Welda | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Lacey Ann | 115240 | JFK8 Education Session Part 5 | Class |
| Torretta,Salvatore | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Carlos D | 115240 | JFK8 Education Session Part 5 | Class |
| Girges,Alaa Saad | 115240 | JFK8 Education Session Part 5 | Class |
| EnriguesSandoval,Fernando | 115240 | JFK8 Education Session Part 5 | Class |
| Dinham-Heholt,Rickiesha | 115240 | JFK8 Education Session Part 5 | Class |
| DEPRADINE,ASHLIE | 115240 | JFK8 Education Session Part 5 | Class |
| DEPRADINE,ASHLIE | 115240 | JFK8 Education Session Part 5 | Class |
| Corprew,Laquan | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Ricardo | 115240 | JFK8 Education Session Part 5 | Class |
| Garraway,Montay | 115240 | JFK8 Education Session Part 5 | Class |
| Garraway,Montay | 115240 | JFK8 Education Session Part 5 | Class |
| Moran,Noel | 115240 | JFK8 Education Session Part 5 | Class |
| Marquez,George | 115240 | JFK8 Education Session Part 5 | Class |
| Zyskowska,Malgorzata | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Daniel | 115240 | JFK8 Education Session Part 5 | Class |
| Ayala,Dylan | 115240 | JFK8 Education Session Part 5 | Class |
| Bokhari,Ahmer M | 115240 | JFK8 Education Session Part 5 | Class |
| Camacho,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Camacho,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| PERRY,JOSEPH M | 115240 | JFK8 Education Session Part 5 | Class |
| Orahovac,Melisa | 115240 | JFK8 Education Session Part 5 | Class |
| CHATFIELD,NATASHA B | 115240 | JFK8 Education Session Part 5 | Class |
| Paredes,Wilian | 115240 | JFK8 Education Session Part 5 | Class |
| Issman,Jennifer | 115240 | JFK8 Education Session Part 5 | Class |
| Nieves,Miguel | 115240 | JFK8 Education Session Part 5 | Class |
| Hodelin,Michael john | 115240 | JFK8 Education Session Part 5 | Class |
| Delva,Paul | 115240 | JFK8 Education Session Part 5 | Class |
| Ly,Thanh | 115240 | JFK8 Education Session Part 5 | Class |
| quiles,justin | 115240 | JFK8 Education Session Part 5 | Class |
| Almeda,Micaela | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Rodriguez,Angie | 115240 | JFK8 Education Session Part 5 | Class |
| Leehr,Mary C | 115240 | JFK8 Education Session Part 5 | Class |
| Hyacinth,Jeaunik | 115240 | JFK8 Education Session Part 5 | Class |
| Frank,Tracie Althea | 115240 | JFK8 Education Session Part 5 | Class |
| Alam,S M Zakaria | 115240 | JFK8 Education Session Part 5 | Class |
| Alam,S M Zakaria | 115240 | JFK8 Education Session Part 5 | Class |
| Admettre,Sammabine | 115240 | JFK8 Education Session Part 5 | Class |
| Campbell,arthur | 115240 | JFK8 Education Session Part 5 | Class |
| DeGroat,Michael DeGroat | 115240 | JFK8 Education Session Part 5 | Class |
| Cordero,Johnathan | 115240 | JFK8 Education Session Part 5 | Class |
| Chu,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Santos,Dayana | 115240 | JFK8 Education Session Part 5 | Class |
| Norman,Niasia C | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Alex Carrillo | 115240 | JFK8 Education Session Part 5 | Class |
| Fabian,Jack | 115240 | JFK8 Education Session Part 5 | Class |
| Vignapiano,Nicholas Charles | 115240 | JFK8 Education Session Part 5 | Class |
| Hightower,Kaseem | 115240 | JFK8 Education Session Part 5 | Class |
| Lilley,Kayla | 115240 | JFK8 Education Session Part 5 | Class |
| Phillips,Philbert | 115240 | JFK8 Education Session Part 5 | Class |
| RAZON,ROSEMARIE Bedonio | 115240 | JFK8 Education Session Part 5 | Class |
| jimenez,christian | 115240 | JFK8 Education Session Part 5 | Class |
| Sidibe,Aly | 115240 | JFK8 Education Session Part 5 | Class |
| Sidibe,Aly | 115240 | JFK8 Education Session Part 5 | Class |
| Savino,Nick Vincent | 115240 | JFK8 Education Session Part 5 | Class |
| Kalmar,Lashawn | 115240 | JFK8 Education Session Part 5 | Class |
| THOMAS,SHELDON | 115240 | JFK8 Education Session Part 5 | Class |
| Mendez,Ruben | 115240 | JFK8 Education Session Part 5 | Class |
| Diaz,Carlos E | 115240 | JFK8 Education Session Part 5 | Class |
| Olmedo,Jose Guillermo | 115240 | JFK8 Education Session Part 5 | Class |
| Mohammed,Jeremy | 115240 | JFK8 Education Session Part 5 | Class |
| jolly,Christina | 115240 | JFK8 Education Session Part 5 | Class |
| charles-marchan,bernadine | 115240 | JFK8 Education Session Part 5 | Class |
| Ashley,Ashley | 115240 | JFK8 Education Session Part 5 | Class |
| Bute,Maude | 115240 | JFK8 Education Session Part 5 | Class |
| Amaro,Angie | 115240 | JFK8 Education Session Part 5 | Class |
| Davis Jr,Joe | 115240 | JFK8 Education Session Part 5 | Class |
| Bravo,Rosa | 115240 | JFK8 Education Session Part 5 | Class |
| Miu,Brian | 115240 | JFK8 Education Session Part 5 | Class |
| Lucas,Luke | 115240 | JFK8 Education Session Part 5 | Class |
| Li,Mindy | 115240 | JFK8 Education Session Part 5 | Class |
| Karasoulis,Cashmeia | 115240 | JFK8 Education Session Part 5 | Class |
| Karasoulis,Cashmeia | 115240 | JFK8 Education Session Part 5 | Class |
| Mark,Wing Fai Wilson | 115240 | JFK8 Education Session Part 5 | Class |
| charrington,Kweisi | 115240 | JFK8 Education Session Part 5 | Class |
| Yusuf,MasterMarquis | 115240 | JFK8 Education Session Part 5 | Class |
| Kennedy,Naomi Shaday | 115240 | JFK8 Education Session Part 5 | Class |
| Donatien,Ian Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| Polanco,Ryan | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Flaherty,Teagan | 115240 | JFK8 Education Session Part 5 | Class |
| Dennis,Charles Solomon | 115240 | JFK8 Education Session Part 5 | Class |
| Albarracin,Fanny | 115240 | JFK8 Education Session Part 5 | Class |
| Gallegos,John | 115240 | JFK8 Education Session Part 5 | Class |
| Raja,Waleed | 115240 | JFK8 Education Session Part 5 | Class |
| Wu,Jin | 115240 | JFK8 Education Session Part 5 | Class |
| Fredericks,Nichole | 115240 | JFK8 Education Session Part 5 | Class |
| RIVAS DE RODRIGUEZ,YULEIDI | 115240 | JFK8 Education Session Part 5 | Class |
| Nesbitt,Levontae | 115240 | JFK8 Education Session Part 5 | Class |
| Truco,Constantine Fernando | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Claudia | 115240 | JFK8 Education Session Part 5 | Class |
| Wilson,Ramario Linton | 115240 | JFK8 Education Session Part 5 | Class |
| Zavala,Adrian | 115240 | JFK8 Education Session Part 5 | Class |
| Lee,Denise | 115240 | JFK8 Education Session Part 5 | Class |
| Taylor,Naquan Jimmy | 115240 | JFK8 Education Session Part 5 | Class |
| Hines,myasia | 115240 | JFK8 Education Session Part 5 | Class |
| Lockett,Equasia | 115240 | JFK8 Education Session Part 5 | Class |
| Barcenas,AJ | 115240 | JFK8 Education Session Part 5 | Class |
| Guyton,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Noelia | 115240 | JFK8 Education Session Part 5 | Class |
| Anderson,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| joseph,shawn | 115240 | JFK8 Education Session Part 5 | Class |
| Romero,Martin | 115240 | JFK8 Education Session Part 5 | Class |
| Payne,Catherine | 115240 | JFK8 Education Session Part 5 | Class |
| Belgrave,Charity | 115240 | JFK8 Education Session Part 5 | Class |
| Prudencio,Jose Luis | 115240 | JFK8 Education Session Part 5 | Class |
| Lorquet,Nolita | 115240 | JFK8 Education Session Part 5 | Class |
| Ford,Anita | 115240 | JFK8 Education Session Part 5 | Class |
| Dyce,Davina | 115240 | JFK8 Education Session Part 5 | Class |
| velez,tamara | 115240 | JFK8 Education Session Part 5 | Class |
| Lugo,Christina | 115240 | JFK8 Education Session Part 5 | Class |
| Kurian,Johncy Mathew | 115240 | JFK8 Education Session Part 5 | Class |
| Gardener-swaby,Rashema | 115240 | JFK8 Education Session Part 5 | Class |
| O'Donnell,James | 115240 | JFK8 Education Session Part 5 | Class |
| Harvey,Jasmine | 115240 | JFK8 Education Session Part 5 | Class |
| Thomason,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Ortiz,Jesus | 115240 | JFK8 Education Session Part 5 | Class |
| Singh,Prabh Prem | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Dee | 115240 | JFK8 Education Session Part 5 | Class |
| Harris,Krishna | 115240 | JFK8 Education Session Part 5 | Class |
| Harris,Krishna | 115240 | JFK8 Education Session Part 5 | Class |
| Horovenko,Tamila | 115240 | JFK8 Education Session Part 5 | Class |
| Fouche Hamilton,Norma | 115240 | JFK8 Education Session Part 5 | Class |
| Fouche Hamilton,Norma | 115240 | JFK8 Education Session Part 5 | Class |
| Dubois,Oliver | 115240 | JFK8 Education Session Part 5 | Class |
| Paniagua,Jay | 115240 | JFK8 Education Session Part 5 | Class |
| Oluwole,Olukayode | 115240 | JFK8 Education Session Part 5 | Class |
| Oiro,Richard | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Cadet,LaToya | 115240 | JFK8 Education Session Part 5 | Class |
| Marcano,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Dremlyuga,Evgeny | 115240 | JFK8 Education Session Part 5 | Class |
| Baltazar,Andrea | 115240 | JFK8 Education Session Part 5 | Class |
| Valerio,Christian | 115240 | JFK8 Education Session Part 5 | Class |
| Noaman,Dalia | 115240 | JFK8 Education Session Part 5 | Class |
| Noaman,Dalia | 115240 | JFK8 Education Session Part 5 | Class |
| Guzman,Steven | 115240 | JFK8 Education Session Part 5 | Class |
| Mastroguilio,Domenica | 115240 | JFK8 Education Session Part 5 | Class |
| Kalellis,Robin B | 115240 | JFK8 Education Session Part 5 | Class |
| Belton,Enoch | 115240 | JFK8 Education Session Part 5 | Class |
| Artis,James | 115240 | JFK8 Education Session Part 5 | Class |
| Artis,James | 115240 | JFK8 Education Session Part 5 | Class |
| Jules,Fabienne | 115240 | JFK8 Education Session Part 5 | Class |
| Mangroo,Shaun N | 115240 | JFK8 Education Session Part 5 | Class |
| Munoz,Citlaly | 115240 | JFK8 Education Session Part 5 | Class |
| Classe,Wandy | 115240 | JFK8 Education Session Part 5 | Class |
| Villanueva,Jonathan E | 115240 | JFK8 Education Session Part 5 | Class |
| Houdari,Mokhtaria | 115240 | JFK8 Education Session Part 5 | Class |
| Sinclair,Eric | 115240 | JFK8 Education Session Part 5 | Class |
| Gordon,Shaquan Tyreek | 115240 | JFK8 Education Session Part 5 | Class |
| Maroney,SamanthaMarie frances | 115240 | JFK8 Education Session Part 5 | Class |
| Chisolm,Shaquaeja | 115240 | JFK8 Education Session Part 5 | Class |
| Chisolm,Shaquaeja | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,Kenrick | 115240 | JFK8 Education Session Part 5 | Class |
| Toledo,Herald John Acop | 115240 | JFK8 Education Session Part 5 | Class |
| Toussaint,Marc | 115240 | JFK8 Education Session Part 5 | Class |
| Ruffin,Arthur J | 115240 | JFK8 Education Session Part 5 | Class |
| Young,Jay | 115240 | JFK8 Education Session Part 5 | Class |
| Reed,Bryant | 115240 | JFK8 Education Session Part 5 | Class |
| Burgos,Santiago | 115240 | JFK8 Education Session Part 5 | Class |
| khamliche,imane | 115240 | JFK8 Education Session Part 5 | Class |
| khamliche,imane | 115240 | JFK8 Education Session Part 5 | Class |
| Denny,Marcia | 115240 | JFK8 Education Session Part 5 | Class |
| bekheet,abanob | 115240 | JFK8 Education Session Part 5 | Class |
| Thit,Khit | 115240 | JFK8 Education Session Part 5 | Class |
| Smalls,Kevin Richard | 115240 | JFK8 Education Session Part 5 | Class |
| Sawaneh,Aboulihe Bangal | 115240 | JFK8 Education Session Part 5 | Class |
| Lewis Jr,Stephen | 115240 | JFK8 Education Session Part 5 | Class |
| Lewis Jr,Stephen | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Martin Antonio | 115240 | JFK8 Education Session Part 5 | Class |
| al smadi,mohammad | 115240 | JFK8 Education Session Part 5 | Class |
| Burns,Alexander | 115240 | JFK8 Education Session Part 5 | Class |
| Joseph,Michael Isaac | 115240 | JFK8 Education Session Part 5 | Class |
| Zumba,Sandra | 115240 | JFK8 Education Session Part 5 | Class |
| Galgan,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Edelman,David | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Marina | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Moran Parra,Lesly | 115240 | JFK8 Education Session Part 5 | Class |
| Lovera,Germain | 115240 | JFK8 Education Session Part 5 | Class |
| jakoupe,eman | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Keron | 115240 | JFK8 Education Session Part 5 | Class |
| Puson-Sala,Mary Jane | 115240 | JFK8 Education Session Part 5 | Class |
| Walker,Derrick | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Travis | 115240 | JFK8 Education Session Part 5 | Class |
| Brown,Travis | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,Merijoel | 115240 | JFK8 Education Session Part 5 | Class |
| paulino,wendy | 115240 | JFK8 Education Session Part 5 | Class |
| Simmons,Isaiah Thomas | 115240 | JFK8 Education Session Part 5 | Class |
| Vittini,Gissell | 115240 | JFK8 Education Session Part 5 | Class |
| Burrell,Shawnea | 115240 | JFK8 Education Session Part 5 | Class |
| Feliciano,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| rennicks,ryan | 115240 | JFK8 Education Session Part 5 | Class |
| soriano,rodrigo | 115240 | JFK8 Education Session Part 5 | Class |
| Santapola,Scott | 115240 | JFK8 Education Session Part 5 | Class |
| Hartley,Shane | 115240 | JFK8 Education Session Part 5 | Class |
| Mayers,Peaches | 115240 | JFK8 Education Session Part 5 | Class |
| Khalid,Luqman | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Justin Joshua | 115240 | JFK8 Education Session Part 5 | Class |
| Lewis-Farrakhan,Davonia | 115240 | JFK8 Education Session Part 5 | Class |
| Bayeme,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Persaud,Kathrine | 115240 | JFK8 Education Session Part 5 | Class |
| Thompson,Kathyann Lindyann | 115240 | JFK8 Education Session Part 5 | Class |
| Solano,Victor Manuel | 115240 | JFK8 Education Session Part 5 | Class |
| Pantoja,Reyna | 115240 | JFK8 Education Session Part 5 | Class |
| Chiarello,Rosa | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Ricardo | 115240 | JFK8 Education Session Part 5 | Class |
| Batz Alvarado,Fermin Ezequiel | 115240 | JFK8 Education Session Part 5 | Class |
| Paredes,Johan W | 115240 | JFK8 Education Session Part 5 | Class |
| Ramos,Elijah | 115240 | JFK8 Education Session Part 5 | Class |
| SOSA,FERNANDO | 115240 | JFK8 Education Session Part 5 | Class |
| Barry,Thierno | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Brittany | 115240 | JFK8 Education Session Part 5 | Class |
| Frias de Frias,Albanerys | 115240 | JFK8 Education Session Part 5 | Class |
| Moore,Laquan | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Yesenia | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Yesenia | 115240 | JFK8 Education Session Part 5 | Class |
| Mcdonald,Quamahli | 115240 | JFK8 Education Session Part 5 | Class |
| Mcdonald,Quamahli | 115240 | JFK8 Education Session Part 5 | Class |
| Callender,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Samassa,Sirantou | 115240 | JFK8 Education Session Part 5 | Class |
| abreu,Victor | 115240 | JFK8 Education Session Part 5 | Class |
| Pannunzio,Stephen Ralph | 115240 | JFK8 Education Session Part 5 | Class |
| Tun,Sai L | 115240 | JFK8 Education Session Part 5 | Class |
| Mason-Bovell,Akil | 115240 | JFK8 Education Session Part 5 | Class |
| angulo,tony | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Eubanks,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Omeire,Uloma | 115240 | JFK8 Education Session Part 5 | Class |
| Reeves,Anthony Jordan | 115240 | JFK8 Education Session Part 5 | Class |
| Cappello,Gabriela Lucia | 115240 | JFK8 Education Session Part 5 | Class |
| smelava,alesia | 115240 | JFK8 Education Session Part 5 | Class |
| Riad,Alaa | 115240 | JFK8 Education Session Part 5 | Class |
| Howard,Dominic kowolo | 115240 | JFK8 Education Session Part 5 | Class |
| Mendez,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Ortega,Omar | 115240 | JFK8 Education Session Part 5 | Class |
| Saldana,Anastacio | 115240 | JFK8 Education Session Part 5 | Class |
| Fahmy,Mina | 115240 | JFK8 Education Session Part 5 | Class |
| Ramos,Montgomery | 115240 | JFK8 Education Session Part 5 | Class |
| Yabdayoui,Mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Licari,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Kenneth | 115240 | JFK8 Education Session Part 5 | Class |
| Hayden,Danielle | 115240 | JFK8 Education Session Part 5 | Class |
| Ettu,Abim | 115240 | JFK8 Education Session Part 5 | Class |
| Ettu,Abim | 115240 | JFK8 Education Session Part 5 | Class |
| Ibarra,Diego Alejandro | 115240 | JFK8 Education Session Part 5 | Class |
| Ampe Mohottoge Dona,Manori Dilhani | 115240 | JFK8 Education Session Part 5 | Class |
| Ampe Mohottoge Dona,Manori Dilhani | 115240 | JFK8 Education Session Part 5 | Class |
| Zelaya,Jeisil | 115240 | JFK8 Education Session Part 5 | Class |
| alimi,onuabuchi promise | 115240 | JFK8 Education Session Part 5 | Class |
| Eshingnwi,Amah Rosemary | 115240 | JFK8 Education Session Part 5 | Class |
| munya,Prince | 115240 | JFK8 Education Session Part 5 | Class |
| Barruos,Elsa | 115240 | JFK8 Education Session Part 5 | Class |
| lamont,Emmanuel | 115240 | JFK8 Education Session Part 5 | Class |
| Palmer,Derrick | 115240 | JFK8 Education Session Part 5 | Class |
| pantoja zosayas,roman | 115240 | JFK8 Education Session Part 5 | Class |
| Collymore,Jalen | 115240 | JFK8 Education Session Part 5 | Class |
| Pascal,Jamella | 115240 | JFK8 Education Session Part 5 | Class |
| Charles,Erica | 115240 | JFK8 Education Session Part 5 | Class |
| viola,charlie Micheal | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Ryan | 115240 | JFK8 Education Session Part 5 | Class |
| Boone,Jahnaaman Evin | 115240 | JFK8 Education Session Part 5 | Class |
| Boone,Jahnaaman Evin | 115240 | JFK8 Education Session Part 5 | Class |
| Taleus,Berkenson | 115240 | JFK8 Education Session Part 5 | Class |
| Mejia,Elisa | 115240 | JFK8 Education Session Part 5 | Class |
| Robinson,Pernell | 115240 | JFK8 Education Session Part 5 | Class |
| King,Shara | 115240 | JFK8 Education Session Part 5 | Class |
| lin,zhiyuan | 115240 | JFK8 Education Session Part 5 | Class |
| Monroe,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Davis,Tamera | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Rondell | 115240 | JFK8 Education Session Part 5 | Class |
| Billera,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| CatalinoRosario,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Soberano,Eileen | 115240 | JFK8 Education Session Part 5 | Class |
| jean,christina | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Chestnut,Ramel Malik | 115240 | JFK8 Education Session Part 5 | Class |
| Chestnut,Ramel Malik | 115240 | JFK8 Education Session Part 5 | Class |
| Guaman,Lizbeth | 115240 | JFK8 Education Session Part 5 | Class |
| Holder,Daniel Brandon | 115240 | JFK8 Education Session Part 5 | Class |
| delpriore,rosa | 115240 | JFK8 Education Session Part 5 | Class |
| Avila,Angeleah | 115240 | JFK8 Education Session Part 5 | Class |
| Avila,Angeleah | 115240 | JFK8 Education Session Part 5 | Class |
| Lewis,Shaquaya | 115240 | JFK8 Education Session Part 5 | Class |
| Castellanos,Randy | 115240 | JFK8 Education Session Part 5 | Class |
| Castellanos,Randy | 115240 | JFK8 Education Session Part 5 | Class |
| Wright,Willie | 115240 | JFK8 Education Session Part 5 | Class |
| Dias,Maria | 115240 | JFK8 Education Session Part 5 | Class |
| Bravo,Cesar | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Phillips | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Phillips | 115240 | JFK8 Education Session Part 5 | Class |
| Truscelli,Vincent Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Oppong,David Hiawo | 115240 | JFK8 Education Session Part 5 | Class |
| Calfos,Kofoworola Olaide | 115240 | JFK8 Education Session Part 5 | Class |
| Figueroa Fullins,Emmet | 115240 | JFK8 Education Session Part 5 | Class |
| ndepo,assy | 115240 | JFK8 Education Session Part 5 | Class |
| Ramos,Juan Alberto | 115240 | JFK8 Education Session Part 5 | Class |
| Feng feng,Wenhao | 115240 | JFK8 Education Session Part 5 | Class |
| Montedeocanegron,Kirsys Elizabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Nidia | 115240 | JFK8 Education Session Part 5 | Class |
| Bello,Imanol | 115240 | JFK8 Education Session Part 5 | Class |
| Rhooms,Tahau Alphonso | 115240 | JFK8 Education Session Part 5 | Class |
| Urbina Morales,Pedro | 115240 | JFK8 Education Session Part 5 | Class |
| Whiten-Bell,Ronique | 115240 | JFK8 Education Session Part 5 | Class |
| Molina Lopez,Milton Hugo | 115240 | JFK8 Education Session Part 5 | Class |
| Zhuno,Raquel | 115240 | JFK8 Education Session Part 5 | Class |
| Jackson,Derrick | 115240 | JFK8 Education Session Part 5 | Class |
| Elshabassy,Moe Ahmed | 115240 | JFK8 Education Session Part 5 | Class |
| Flores-Hernandez,Jose | 115240 | JFK8 Education Session Part 5 | Class |
| huw song,ying | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Steven | 115240 | JFK8 Education Session Part 5 | Class |
| Pena,Mereling | 115240 | JFK8 Education Session Part 5 | Class |
| scott,deepak | 115240 | JFK8 Education Session Part 5 | Class |
| scott,deepak | 115240 | JFK8 Education Session Part 5 | Class |
| Chocianowski,Derrick | 115240 | JFK8 Education Session Part 5 | Class |
| Barzola,Martha Patty | 115240 | JFK8 Education Session Part 5 | Class |
| GAMBOA, JOHN  ARCY | 115240 | JFK8 Education Session Part 5 | Class |
| victor,christine | 115240 | JFK8 Education Session Part 5 | Class |
| Barrios,Alyssa | 115240 | JFK8 Education Session Part 5 | Class |
| Catapang,Rogelio | 115240 | JFK8 Education Session Part 5 | Class |
| Ijasuyi,Emmanuel Morenikeji | 115240 | JFK8 Education Session Part 5 | Class |
| Nkwocha,Clement | 115240 | JFK8 Education Session Part 5 | Class |
| Veras,Mark Simon | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Karimot | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Williams,Karimot | 115240 | JFK8 Education Session Part 5 | Class |
| Edwards-Dutchin,Tristan Carlyle | 115240 | JFK8 Education Session Part 5 | Class |
| Sinclair,Rondane | 115240 | JFK8 Education Session Part 5 | Class |
| Ozorio,Chrysmayry | 115240 | JFK8 Education Session Part 5 | Class |
| Guillen,Sugeily | 115240 | JFK8 Education Session Part 5 | Class |
| Odubanjo,Oluseun A. | 115240 | JFK8 Education Session Part 5 | Class |
| Jefferson,Letitia | 115240 | JFK8 Education Session Part 5 | Class |
| Selby,Francine | 115240 | JFK8 Education Session Part 5 | Class |
| Sevorwell,Anissa | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez,Dio | 115240 | JFK8 Education Session Part 5 | Class |
| Ilagan,Patrick Jurgen | 115240 | JFK8 Education Session Part 5 | Class |
| Christy,Ketan | 115240 | JFK8 Education Session Part 5 | Class |
| paredes,tania altagracia | 115240 | JFK8 Education Session Part 5 | Class |
| Paladino III,Albert | 115240 | JFK8 Education Session Part 5 | Class |
| Paladino III,Albert | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Luis A | 115240 | JFK8 Education Session Part 5 | Class |
| Mormile,Somer | 115240 | JFK8 Education Session Part 5 | Class |
| Griffiths,Iesha | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Chihab,Mohammed | 115240 | JFK8 Education Session Part 5 | Class |
| Quintero,Melisa | 115240 | JFK8 Education Session Part 5 | Class |
| Quintero,Melisa | 115240 | JFK8 Education Session Part 5 | Class |
| greene,Shakirat | 115240 | JFK8 Education Session Part 5 | Class |
| DeLaCruz,Nicholas V | 115240 | JFK8 Education Session Part 5 | Class |
| Ramirez,Yenifer | 115240 | JFK8 Education Session Part 5 | Class |
| Goodridge,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Goodridge,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Garzon Torres,Genesis Isamar | 115240 | JFK8 Education Session Part 5 | Class |
| Francis,Kevaughn | 115240 | JFK8 Education Session Part 5 | Class |
| Dunn,Gina | 115240 | JFK8 Education Session Part 5 | Class |
| Inniss,Jacques | 115240 | JFK8 Education Session Part 5 | Class |
| Fredericks,Claimont | 115240 | JFK8 Education Session Part 5 | Class |
| Pavia Ballesteros,Ivett | 115240 | JFK8 Education Session Part 5 | Class |
| Valentine,Khiry | 115240 | JFK8 Education Session Part 5 | Class |
| Adams,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Gerges,Wagih | 115240 | JFK8 Education Session Part 5 | Class |
| Dillon,Randy | 115240 | JFK8 Education Session Part 5 | Class |
| Abreu,Eneuri | 115240 | JFK8 Education Session Part 5 | Class |
| Wright,Jakeir | 115240 | JFK8 Education Session Part 5 | Class |
| Mejia,Nalleli | 115240 | JFK8 Education Session Part 5 | Class |
| Cruz,Ales | 115240 | JFK8 Education Session Part 5 | Class |
| Pacelli,Mike Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Mansy,Gisselle Wahid nasr | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Joanna | 115240 | JFK8 Education Session Part 5 | Class |
| McLean,Ezra | 115240 | JFK8 Education Session Part 5 | Class |
| Dawkins-Giles,Toy | 115240 | JFK8 Education Session Part 5 | Class |
| Denicia-Juarez,Carlos Andres | 115240 | JFK8 Education Session Part 5 | Class |
| Parker,Michael | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Williams,Clive Alejandro | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,Clive Alejandro | 115240 | JFK8 Education Session Part 5 | Class |
| Dosunmu,Abdulwasiu Olakunle | 115240 | JFK8 Education Session Part 5 | Class |
| Davis,Davon | 115240 | JFK8 Education Session Part 5 | Class |
| Thi,A Myanmar Lat | 115240 | JFK8 Education Session Part 5 | Class |
| Shokry,Marina | 115240 | JFK8 Education Session Part 5 | Class |
| Isaac,Jamel Shaun | 115240 | JFK8 Education Session Part 5 | Class |
| jean,alix | 115240 | JFK8 Education Session Part 5 | Class |
| Briggs,Victor | 115240 | JFK8 Education Session Part 5 | Class |
| Marron,Peter | 115240 | JFK8 Education Session Part 5 | Class |
| Ray,Zane | 115240 | JFK8 Education Session Part 5 | Class |
| Vega,Natalie | 115240 | JFK8 Education Session Part 5 | Class |
| Steven Martinez,Steven | 115240 | JFK8 Education Session Part 5 | Class |
| Sanchez,Frank | 115240 | JFK8 Education Session Part 5 | Class |
| Gomez,Denis | 115240 | JFK8 Education Session Part 5 | Class |
| Wells,Gene | 115240 | JFK8 Education Session Part 5 | Class |
| Jessie,Vacher | 115240 | JFK8 Education Session Part 5 | Class |
| xie,guowei | 115240 | JFK8 Education Session Part 5 | Class |
| Green,Malayshia | 115240 | JFK8 Education Session Part 5 | Class |
| Raucci,Pasquale | 115240 | JFK8 Education Session Part 5 | Class |
| Smith,Lyric | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Melissa | 115240 | JFK8 Education Session Part 5 | Class |
| Dickerson,Travis | 115240 | JFK8 Education Session Part 5 | Class |
| Kosim,Mahina | 115240 | JFK8 Education Session Part 5 | Class |
| Rosales,Jennifer | 115240 | JFK8 Education Session Part 5 | Class |
| BARNES,NII AMARLAI | 115240 | JFK8 Education Session Part 5 | Class |
| Avila,Anthony | 115240 | JFK8 Education Session Part 5 | Class |
| piazza,kimMarie | 115240 | JFK8 Education Session Part 5 | Class |
| piazza,kimMarie | 115240 | JFK8 Education Session Part 5 | Class |
| Corporan,Darys N | 115240 | JFK8 Education Session Part 5 | Class |
| Nasr,Jihad Tanos | 115240 | JFK8 Education Session Part 5 | Class |
| Villegas,Max | 115240 | JFK8 Education Session Part 5 | Class |
| Villegas,Max | 115240 | JFK8 Education Session Part 5 | Class |
| Ruiz,Shawntay | 115240 | JFK8 Education Session Part 5 | Class |
| Shupongpun,Pete | 115240 | JFK8 Education Session Part 5 | Class |
| Coleman,Stacy | 115240 | JFK8 Education Session Part 5 | Class |
| Delcid,Rita | 115240 | JFK8 Education Session Part 5 | Class |
| Selmani,Esma | 115240 | JFK8 Education Session Part 5 | Class |
| Adebayo,Funmilayo | 115240 | JFK8 Education Session Part 5 | Class |
| Hernandez,Juan Jose | 115240 | JFK8 Education Session Part 5 | Class |
| Kimble,Khiry Malik | 115240 | JFK8 Education Session Part 5 | Class |
| Humphery,Brendasia | 115240 | JFK8 Education Session Part 5 | Class |
| Obioha,Victor | 115240 | JFK8 Education Session Part 5 | Class |
| Pina,Anapatricia Carolina | 115240 | JFK8 Education Session Part 5 | Class |
| Rusoff,Vincent Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| Torres,Edwin | 115240 | JFK8 Education Session Part 5 | Class |
| Luna Hernandez,Marcela | 115240 | JFK8 Education Session Part 5 | Class |
| Reddy,Geneva | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Cummins,Jonathan | 115240 | JFK8 Education Session Part 5 | Class |
| Axelrod,Melissa | 115240 | JFK8 Education Session Part 5 | Class |
| Hough,Sakemah | 115240 | JFK8 Education Session Part 5 | Class |
| Pugh,Jason | 115240 | JFK8 Education Session Part 5 | Class |
| Danis,Madonise | 115240 | JFK8 Education Session Part 5 | Class |
| Sempertegui,Paola | 115240 | JFK8 Education Session Part 5 | Class |
| Rosales,Monica | 115240 | JFK8 Education Session Part 5 | Class |
| Sanjose,David | 115240 | JFK8 Education Session Part 5 | Class |
| Lewis,Diamond | 115240 | JFK8 Education Session Part 5 | Class |
| Rodriguez,Betzabeth | 115240 | JFK8 Education Session Part 5 | Class |
| Scott,Tyrell | 115240 | JFK8 Education Session Part 5 | Class |
| Schwartz,Igor | 115240 | JFK8 Education Session Part 5 | Class |
| Damico,Brandon Scott | 115240 | JFK8 Education Session Part 5 | Class |
| Lyubin,Nikita | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,John | 115240 | JFK8 Education Session Part 5 | Class |
| Bayona,Alison | 115240 | JFK8 Education Session Part 5 | Class |
| Shaw,Will | 115240 | JFK8 Education Session Part 5 | Class |
| Alberto,Andres E | 115240 | JFK8 Education Session Part 5 | Class |
| Sedrak,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| S,Zequina N | 115240 | JFK8 Education Session Part 5 | Class |
| S,Zequina N | 115240 | JFK8 Education Session Part 5 | Class |
| Serrano,Connie | 115240 | JFK8 Education Session Part 5 | Class |
| Day,George | 115240 | JFK8 Education Session Part 5 | Class |
| Clack,Deron | 115240 | JFK8 Education Session Part 5 | Class |
| Noel,Mirlande | 115240 | JFK8 Education Session Part 5 | Class |
| Choudhury,Shamsur | 115240 | JFK8 Education Session Part 5 | Class |
| anzures,joshabet | 115240 | JFK8 Education Session Part 5 | Class |
| McNab,Robert Charles | 115240 | JFK8 Education Session Part 5 | Class |
| Waggeh,Mahmudou | 115240 | JFK8 Education Session Part 5 | Class |
| Harris,Tyree | 115240 | JFK8 Education Session Part 5 | Class |
| Ball,Floyd | 115240 | JFK8 Education Session Part 5 | Class |
| hassan,sherif mohamed | 115240 | JFK8 Education Session Part 5 | Class |
| Acosta,Nogleidys | 115240 | JFK8 Education Session Part 5 | Class |
| Pena,Kelvin | 115240 | JFK8 Education Session Part 5 | Class |
| Ragusa,Rosie | 115240 | JFK8 Education Session Part 5 | Class |
| Perry,Shantay | 115240 | JFK8 Education Session Part 5 | Class |
| LaPorta,Lisa | 115240 | JFK8 Education Session Part 5 | Class |
| Rosario,Perla | 115240 | JFK8 Education Session Part 5 | Class |
| Menon,Ja Bawk | 115240 | JFK8 Education Session Part 5 | Class |
| Everett,Robert | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarez,Tamara | 115240 | JFK8 Education Session Part 5 | Class |
| Thomas,Farrd | 115240 | JFK8 Education Session Part 5 | Class |
| Okyere,Joseph | 115240 | JFK8 Education Session Part 5 | Class |
| villa,shakespeare | 115240 | JFK8 Education Session Part 5 | Class |
| villa,shakespeare | 115240 | JFK8 Education Session Part 5 | Class |
| Jimenez,John daniel Alina | 115240 | JFK8 Education Session Part 5 | Class |
| Willis,RoseAnn | 115240 | JFK8 Education Session Part 5 | Class |
| Perkins,Arthur | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Gonzalez,Nowell | 115240 | JFK8 Education Session Part 5 | Class |
| Plata,William | 115240 | JFK8 Education Session Part 5 | Class |
| Martinez,Kaitlin | 115240 | JFK8 Education Session Part 5 | Class |
| Ahouandogbo,Akpedje | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Efren | 115240 | JFK8 Education Session Part 5 | Class |
| Ouoba,Samuel | 115240 | JFK8 Education Session Part 5 | Class |
| cruz,Miko | 115240 | JFK8 Education Session Part 5 | Class |
| Abel,Lisanne | 115240 | JFK8 Education Session Part 5 | Class |
| Chance,John | 115240 | JFK8 Education Session Part 5 | Class |
| Lui,Kenneth | 115240 | JFK8 Education Session Part 5 | Class |
| Hill,Lamya | 115240 | JFK8 Education Session Part 5 | Class |
| Flores,Ana Silvia | 115240 | JFK8 Education Session Part 5 | Class |
| Purpura,Gregory | 115240 | JFK8 Education Session Part 5 | Class |
| Purpura,Gregory | 115240 | JFK8 Education Session Part 5 | Class |
| Jean,Bensh Nahalda | 115240 | JFK8 Education Session Part 5 | Class |
| Romero,Christina | 115240 | JFK8 Education Session Part 5 | Class |
| Hussain,Muhammad | 115240 | JFK8 Education Session Part 5 | Class |
| Nieto,Vanesa | 115240 | JFK8 Education Session Part 5 | Class |
| Florencio,Oscar | 115240 | JFK8 Education Session Part 5 | Class |
| Conteh,Alimamy | 115240 | JFK8 Education Session Part 5 | Class |
| cuccurullo,ashley marie | 115240 | JFK8 Education Session Part 5 | Class |
| Cibelli,Michelle | 115240 | JFK8 Education Session Part 5 | Class |
| Spruill,Alvena | 115240 | JFK8 Education Session Part 5 | Class |
| NESBITT,GAIL | 115240 | JFK8 Education Session Part 5 | Class |
| Weerasinghe,Rayan Rayan | 115240 | JFK8 Education Session Part 5 | Class |
| Le,Khoa Tho | 115240 | JFK8 Education Session Part 5 | Class |
| Reyes,Juan Carlos | 115240 | JFK8 Education Session Part 5 | Class |
| Dejesus,Wilfred R | 115240 | JFK8 Education Session Part 5 | Class |
| Cooney,Justin | 115240 | JFK8 Education Session Part 5 | Class |
| Feldman,Johanna Calumba | 115240 | JFK8 Education Session Part 5 | Class |
| Neri,Adriana | 115240 | JFK8 Education Session Part 5 | Class |
| Keyes,Saequan | 115240 | JFK8 Education Session Part 5 | Class |
| Williams,O-t | 115240 | JFK8 Education Session Part 5 | Class |
| Juarez,Veronica Kimberly | 115240 | JFK8 Education Session Part 5 | Class |
| Perez,David | 115240 | JFK8 Education Session Part 5 | Class |
| reyes,daniela | 115240 | JFK8 Education Session Part 5 | Class |
| Idakwoji,Abu | 115240 | JFK8 Education Session Part 5 | Class |
| Strickland,Enoch | 115240 | JFK8 Education Session Part 5 | Class |
| Vilchis,Rochelle | 115240 | JFK8 Education Session Part 5 | Class |
| Bernard,Kurt | 115240 | JFK8 Education Session Part 5 | Class |
| Scott,Timothy Denzel | 115240 | JFK8 Education Session Part 5 | Class |
| Quezada estevez,Andy | 115240 | JFK8 Education Session Part 5 | Class |
| Cheese,Oholando | 115240 | JFK8 Education Session Part 5 | Class |
| Juarez,Gisselle Roseli | 115240 | JFK8 Education Session Part 5 | Class |
| goubran,Maged | 115240 | JFK8 Education Session Part 5 | Class |
| Collins,Jalisa GAvona | 115240 | JFK8 Education Session Part 5 | Class |
| Hamilton,Shantel | 115240 | JFK8 Education Session Part 5 | Class |
| Jean Louis,Antoine Joachim | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Clarke,Lidea | 115240 | JFK8 Education Session Part 5 | Class |
| McClendon,Deborah | 115240 | JFK8 Education Session Part 5 | Class |
| Tran,TuyenDinh | 115240 | JFK8 Education Session Part 5 | Class |
| Lund,Kenneth | 115240 | JFK8 Education Session Part 5 | Class |
| Sorrentino,Linda | 115240 | JFK8 Education Session Part 5 | Class |
| White,Sierra | 115240 | JFK8 Education Session Part 5 | Class |
| Emsak,Matthew | 115240 | JFK8 Education Session Part 5 | Class |
| Fu,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Fu,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| nish,Jermaine | 115240 | JFK8 Education Session Part 5 | Class |
| Tamay,Evelyn | 115240 | JFK8 Education Session Part 5 | Class |
| Wijesiri,Mithusha | 115240 | JFK8 Education Session Part 5 | Class |
| KHEMIRI,Safia | 115240 | JFK8 Education Session Part 5 | Class |
| Gregoretti,Nick E | 115240 | JFK8 Education Session Part 5 | Class |
| R,Paulie | 115240 | JFK8 Education Session Part 5 | Class |
| wilkerson,Wendy Elaine | 115240 | JFK8 Education Session Part 5 | Class |
| Adeleye,Adebayo | 115240 | JFK8 Education Session Part 5 | Class |
| delcid,Elsy C | 115240 | JFK8 Education Session Part 5 | Class |
| Alvarez,Lizbeth | 115240 | JFK8 Education Session Part 5 | Class |
| McGrier,Christopher | 115240 | JFK8 Education Session Part 5 | Class |
| Resto,Kevin | 115240 | JFK8 Education Session Part 5 | Class |
| Holland-Ellegor,Skye | 115240 | JFK8 Education Session Part 5 | Class |
| Leiba,Kimberly | 115240 | JFK8 Education Session Part 5 | Class |
| Akindutire,Ola | 115240 | JFK8 Education Session Part 5 | Class |
| Rosas,Viridiana | 115240 | JFK8 Education Session Part 5 | Class |
| Sargyous,Marco M | 115240 | JFK8 Education Session Part 5 | Class |
| abdushi,argtim | 115240 | JFK8 Education Session Part 5 | Class |
| abdushi,argtim | 115240 | JFK8 Education Session Part 5 | Class |
| Israel,Garnel | 115240 | JFK8 Education Session Part 5 | Class |
| Merard,Rolando | 115240 | JFK8 Education Session Part 5 | Class |
| Lopez,Lillian | 115240 | JFK8 Education Session Part 5 | Class |
| Bryson,Zahliq | 115240 | JFK8 Education Session Part 5 | Class |
| Nunez,Bilmani | 115240 | JFK8 Education Session Part 5 | Class |
| Nunez,Bilmani | 115240 | JFK8 Education Session Part 5 | Class |
| Ibrahim,Mostafa mahmoud | 115240 | JFK8 Education Session Part 5 | Class |
| Johnson,Akiva | 115240 | JFK8 Education Session Part 5 | Class |
| Webs,Gabriel B | 115240 | JFK8 Education Session Part 5 | Class |
| Garcia,Genesis | 115240 | JFK8 Education Session Part 5 | Class |
| Long,Sue M | 115240 | JFK8 Education Session Part 5 | Class |
| Lawrence,Anneth | 115240 | JFK8 Education Session Part 5 | Class |
| Cortes,Elmer | 115240 | JFK8 Education Session Part 5 | Class |
| Marquez,Ferdinand | 115240 | JFK8 Education Session Part 5 | Class |
| Gonzalez,DEBORA | 115240 | JFK8 Education Session Part 5 | Class |
| kirschbaum,M | 115240 | JFK8 Education Session Part 5 | Class |
| DORSEY,CRAIG | 115240 | JFK8 Education Session Part 5 | Class |
| MAC PHERSON,ALBERTO ALBERTO | 115240 | JFK8 Education Session Part 5 | Class |
| Lucero,Stephanie | 115240 | JFK8 Education Session Part 5 | Class |
| Aybar Guzman,Adrialis | 115240 | JFK8 Education Session Part 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Veilleux Jr,Javier | 115240 | JFK8 Education Session Part 5 | Class |
| Ebisike,Linus A | 115240 | JFK8 Education Session Part 5 | Class |
| Farina,Gianna Marie | 115240 | JFK8 Education Session Part 5 | Class |
| Nieves,Frances | 115240 | JFK8 Education Session Part 5 | Class |
| M,Cat | 115240 | JFK8 Education Session Part 5 | Class |
| Tompkins,Zarya | 115240 | JFK8 Education Session Part 5 | Class |
| Cole,Vinnette L | 115240 | JFK8 Education Session Part 5 | Class |
| Clarke,Dale | 115240 | JFK8 Education Session Part 5 | Class |
| Pritchard,Kerri | 115240 | JFK8 Education Session Part 5 | Class |
| Pritchard,Kerri | 115240 | JFK8 Education Session Part 5 | Class |
| Lue,Michael | 115240 | JFK8 Education Session Part 5 | Class |
| Harper,Zane | 115240 | JFK8 Education Session Part 5 | Class |
| Levine,Jake | 115240 | JFK8 Education Session Part 5 | Class |

Amazon_000558



INSTRUCTIONS TO **PRESENTER:**

Thanks for joining us today..

Introduce yourself by giving your **FIRST name** and how long you have worked at Amazon.

Let the audience know that you're a member of the Amazon Employee Relations Team and you're here to talk about an important topic today.

Amazon_000001

GC-41

EXHIBIT NO._____ RECEIVED _____ REJECTED _____
                                           x

29-CA-280153 ET/AL           Amazon.Com Svs, LLC

CASE NO _____ CASE NAME _____

22         09-20-2022      Barrington Moxie

NO OF PAGES _____ DATE: _____ REPORTER: _____



*READ THE SLIDE ALOUD **INCLUDING THE NOTE AT THE BOTTOM**:*

Our intention is to help you ask, and answer, critical questions about the choice between union representation and continuing with our direct relationship.

Move to next slide.

# Campaign Promises Are Not Guarantees
## All a union can do is propose things in collective bargaining.

- Some people think that if a union is elected here, all of the union's promises automatically come true. That's not how it works.

- When a union is elected, it can't dictate changes at Amazon. The only right it has is to negotiate with the company in good faith. This is called collective bargaining.

- A collective bargaining agreement, or CBA, is a "contract." The ALU may propose items to the company.

- Amazon has no obligation to accept the ALU's proposals. So, the ALU promises can't come true unless Amazon agrees to them.

- A first contract could take months, if not years, to negotiate. There are no guarantees the parties would reach an agreement.

 GET INFORMED AT UNPACKLDJ5.COM    amazon STATEN ISLAND

---

*Presenter to start with:*

During our previous meeting, we talked a little about union promises and to ask HOW they can guarantee them. This issue of promises vs. guarantees is important. The first thing you should know is that the law does not give the company and the union the same rights when it comes to making promises during a union campaign.

It is against the law for Amazon to make promises – or offer you something specific, like a raise – in order to convince you to vote against the union.

We have to keep the "status quo" – that means we have to keep everything the same during the election, and during negotiations if the union is elected to represent you – pay, benefits, and work rules.

And when it comes to union promises, there are no guarantees. Unions really can't guarantee anything, they can only ask….and that process is called collective bargaining.

Neither Party, Not The Company, Not The Union, Has To Agree To Any Proposal They Don't Want To, Nor Are They Required To Change Their Proposals To Reach An Agreement.

**Presenter to read slide starting with the header. Then add:**

For example, the union is claiming that it's going to get everyone a pay increase to $30 an hour. But they can't guarantee that. If they are elected, all they get to do is ask. The company is committed to paying associates competitive wages based on the market. The union can't make the company pay more than that—at most it can ask.

If You Decide to Hire The Union to Represent You,  Amazon will still be committed to using good business judgment, and if Amazon decides that the Union's proposals aren't good for its business, Amazon can just say "no."



**Presenter to read first:**

If you want to know what unions care about most, the best thing to do is look at what they typically ask for at the bargaining table.

Now, we can't do that with the ALU because as you know, it has never represented any employees at Amazon or anywhere else.

And the ALU has never bargained for a contract.

But here's what unions typically ask for right out of the gate:

**Read slide from left to right starting with the union column reading from the top. <u>See notes to support each item:</u>**

Union shop clause – A union shop clause would require Amazon to fire you if you don't pay the union dues.

What is dues check off? The process by which a union can request that their dues be automatically deducted from your paycheck if you provide written authorization for the Company to do so.

We talked previously about dues…unions charge dues and often assessments, special collections or initiations fees, or other fees to pay for salaries, expenses, and anything else they determine they want to spend money on.

Seniority provisions? Unions typically bargain for a seniority system, where you wait your turn to move up and ahead, no matter how hard you work. Unions also can negotiate super seniority for union stewards which allows for the steward to leap ahead of more senior associates on the seniority list simply because they hold a union position.

Now, let's talk about what we care about here at Amazon:

As you know, we are customer-obsessed….that obsession has helped our company grow and create jobs….in turn, creating job security for you.

While the union is thinking about how to collect dues from your paycheck, Amazon is focused on how we can continue to provide great pay, benefits and perks – many of which start Day One.

We are thinking about how we can help you advance your career at Amazon. That's why we have programs like Career Choice.  By the way, did you know that the change last year to make career choice available after 90 days of employment (instead of 1 year) came from the suggestion of an Amazon associate.  Our direct relationship with one of your peers made this change; not a third party who charged you for their services.

We are also thinking about how we can continue to provide flexibility to our associates to build the schedule, and the career, you want.

Simply put - Union contracts don't typically allow for much in the way of flexibility….of schedules, its rules, or anything else.

Amazon_000006

# What Do You Care About?

Collective bargaining is like any negotiation. Sometimes you have to give a little to get a little – and what's important to you may not be important to someone else.

*A UNION CONTRACT COULD:*

- **Leave you with the SAME** things you have now – like vacation, paid parental leave, wages, health benefits, 401(k), Career Choice, and Resources for Living;
- **Give you MORE** than you have now; or
- **Leave you with LESS** than you have now.



*The ALU's Priorities May Not Match Yours.*

 GET INFORMED AT UNPACKLDJ5.COM          amazon STATEN ISLAND

---

**Read the header and the first paragraph of the slide and then add:**

It is important to remember that negotiations are always a give and take – to get something, you give up something. Here is why that matters....

What is important to the ALU may or may not be important to you. They may be willing to trade your priority for one of theirs.

Your #1 issue can be #13 for everyone else – or maybe your issue isn't listed at all. Unions have to balance the wants of all of their members. You have no way of knowing if your issue rises to the top in the balance.

During contract negotiation, sometimes you don't get everything you want. It's a give and take.

All of the benefits you have today - things like vacation, paid parental leave, wages, health benefits, 401(k), Career Choice, and Resources for Living, among others.

Every single one of them would be on the table for negotiation. And the union decides what is important, and what they are willing to give in exchange for something they want.

**Direct attention to remainder of slide and read starting with "A union contract could"**

**Then add:**

I want to make something very clear to you.

Amazon can't predict the outcome of collective-bargaining, and we are not suggesting that you will lose things in a negotiation.  What we are saying is that the union can't guarantee that you will GAIN anything either.

The only guarantee is that, if the ALU is elected, you will have to pay dues regardless of whether you think they are doing a good job.

## There is No Time Limit to Negotiations
### A first contract could take years to secure.



*According to Bloomberg Law (June 1, 2021) the average time it takes to negotiate a first contract is 409 days.*



**UNPACK IT**
GET THE FACTS ABOUT UNIONS

GET INFORMED AT
UNPACKLDJ5.COM

amazon STATEN ISLAND

---

*Presenter to read slide.*

**After reading Bloomberg line on right of slide, add:**

409 days; that's over a year.

## There are No Guarantees that the Parties Will Ultimately Reach a Contract

*What happens when union negotiations fail?*

- When an **impasse** is reached, an employer is permitted to unilaterally implement the terms of its final proposal.

- In other words, if an impasse is reached, an employer may implement any changes to wages, benefits and work rules that it had proposed to the union during negotiations without the union's agreement.

*More than half of all workers who vote to form a union still are without a collective bargaining agreement a year later. Two years after an election, 37% of newly formed private-sector unions still have no labor agreement. (Economic Policy Institute, February 9, 2021)*



UNPACK IT
GET THE FACTS ABOUT UNIONS

GET INFORMED AT
UNPACKLDJ5.COM

amazon STATEN ISLAND

**Before reading the slide:**

And here's something else about the bargaining process you should know. The law does not guarantee or require that, at the end of the bargaining process, a contract will even be reached.

**Read slide and then add:**

A company can implement its last, best and final offer or any other proposal made prior to reaching impasse. So, what is impasse?

Impasse occurs when the parties negotiate to the point where an agreement cannot be reached and further negotiations are fruitless.

At this point, the company is free to implement its "last, best and final" including terms and conditions that the union has rejected.

# What If the Parties Can't Agree On a Contract?

- If the parties can't agree on a contract, the union can call a strike.

- If there is a strike, the union may compel you to participate.

- You would not be paid by Amazon during the time you are on strike.



 GET INFORMED AT **UNPACKLDJ5.COM**    **amazon** STATEN ISLAND

And here's another important thing that can happen if the parties are not able to reach an agreement at the bargaining table.

***Read slide aloud <span style="color:red">then add</span>.***

What is the ALU's plan if Amazon says "no" to the union's demands? Well, strikes are the only real leverage a union has at the bargaining table to try to get the company to agree to the union's proposals. But when a union uses that leverage, they are putting employees' livelihoods at risk.

If a union rejects a contract, they can order a strike and often do. If this occurs, the company can withdraw their last offer and propose even less than what was offered. This means that, once on strike, a company can propose less than the offer that caused the strike.

And, the union may impose fines for union members who disobey the union's strike order and choose to come to work instead.

It's also important to understand that economic strikers can be permanently replaced.

The ALU president has made multiple references to wanting strikes and his Twitter handle is called "Shut Down Amazon" a phrase the ALU and its leaders have used.

# Voting for a Union Contract

- If the parties do agree on the terms of a contract, it is typically put up for a ratification vote among the membership.

- We don't know what the ALU's contract ratification process will look like, because they haven't said anything about it.

- Ratification is typically an all or nothing process. You don't get to pick and choose which parts of the contract you like and which parts you don't like.



**UNPACK IT**
GET THE FACTS ABOUT UNIONS
GET INFORMED AT
UNPACKLDJ5.COM
amazon STATEN ISLAND

*Read slide aloud.*

## What If I Don't Like the Contract or the Union?



- **Everyone** is bound by the union contract, whether you agree with it or not. And whether you voted for it or not.

- With a union, there is **no such thing as a "test drive."** It isn't easy to vote a union out.

 GET INFORMED AT UNPACKLDJ5.COM

**amazon** STATEN ISLAND

**Read the slide aloud and then add:**

So what does this mean for you?

Voting out or "decertifying" a union after it has been elected is often a long, complicated, and difficult legal process. There are lots of rules that the National Labor Relations Board (NLRB) has in order to decertify a union.

First of all, employees can only pursue decertification at certain points in time. Before a contract is reached, employees have to wait at least 1 year before they can try to decertify. Once a contract is reached, employees can only try to decertify once every 3 years, and it can only occur during a 30-day window.

In order to even start the decertification process, the employees must get cards signed by 30% or more of the workforce. At LDJ5, there are over 1600 employees. That means around 500 LDJ5 associates would need to sign cards seeking to decertify the union. That, in and of itself, is a big undertaking.

If there is a sufficient number of cards, an election would then be scheduled, and a majority of associates who vote would need to vote the union out. In other words, we'd have to go right back through the same election process that's going on here now.

As you can tell, it's not easy to kick a union out once they've been elected.

So, before you vote for the union, realize this is a long term commitment even if you are unhappy with the results.

Even if you think you would just quit and go work elsewhere if the union came in and the deal wasn't good, think about your other friends who need this job and work here possibly for pay and benefits for their family. Please remember your dice roll will impact others you care about.

You have nothing to lose by voting NO now and waiting to see what happens at JFK8.

Amazon_000014

## Bound by Union Contracts and Rules

Should a union be elected at LDJ5, you are not only bound by what the union agrees to in a contract, but as a member you would also be bound by the union's rules and constitution.



 GET INFORMED AT
UNPACKLDJ5.COM

**amazon** STATEN ISLAND

*Read Slide Aloud*



**Presenter to open with:**

It's important to understand that as a member of the ALU, an associate would need to abide the ALU's rules and Constitution. The ALU's Constitution is available on the ALU's website.  Let's take a look at some of the direct quotes from that Constitution.

**Read slide – starting with the left side and then the right.**

Amazon_000016



**Presenter to open with:**

Here's another section of the Constitution related to duties of ALU members.

**Read slide – starting with the left side and then the right.**

Then add,

And, with regards to committing or inciting an act or series of acts against the union, as members, you would be a part of the union. Didn't they say they were here to defend your interests?

This language means that you have to put the union's interests ahead of your own.

The ALU Constitution also allows the ALU to charge you with violations and put you on trial for violations. These include violations of member responsibilities or the member oath and things that they feel threatens or impairs the interests of the union. Penalties could include reprimand, fine or expulsion from membership.

If they fine you and you don't pay, the union has the right to sue you in a state court.

Did the ALU tell you what the oath is and what your responsibilities are if you become a member?



# Recap: Three Key Takeaways

With a union, terms and conditions of employment must be negotiated in good faith before changes can be made. **This is called collective bargaining. In negotiations, there are no guarantees.**

While you may have priorities that you want to see in a contract, the union and its negotiating team may **have priorities that may be different from yours.**

Even if you vote against a union contract during ratification, if it passes, **it applies to EVERYONE.** The union also could determine that you need to go out on strike and go without pay from Amazon, even if you personally want to vote a contract in.

UNPACK IT
GET THE FACTS ABOUT UNIONS

GET INFORMED AT
UNPACKLDJ5.COM

14 Privileged & Confidential

amazon STATEN ISLAND

**READ THIS FIRST:**

We know we are sharing a lot of information with you in a short period of time.

**READ THE SLIDE STARTING WITH THE BLUE TEXT**

Amazon_000018

# Make Sure You Vote...And Please Vote NO!

**WHEN:**
**April 25, 27, 28, and 29 from 4:30AM – 8:30AM, 2:00PM – 6:00PM, and 8:00PM – 11:00PM each day.**
You can vote at any time the polls are open.

**WHERE:**
In a tent outside the facility.

**VOTE HERE**


GET INFORMED AT
UNPACKLDJ5.COM

amazon STATEN ISLAND

*Presenter to transition by....*

And finally, we encourage you to vote no after you've gotten the facts.

*Read the slide aloud.*

Amazon_000019



**TO LEARN MORE ABOUT THE UNION ELECTION VISIT:**

**UNPACKLDJ5.COM
ES.UNPACKLDJ5.COM**



 GET INFORMED AT
UNPACKLDJ5.COM

amazon STATEN ISLAND

We also have a Spanish site available at es.unpackldj5.com, or you can navigate to the Spanish site from the English site.

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Hoezadey,Jasmine L | 118815 | SGM4 Informational Session 1 | Class |
| Torres,Samuel | 118815 | SGM4 Informational Session 1 | Class |
| Nicholson,Christopher T | 118815 | SGM4 Informational Session 1 | Class |
| Quick,Rondell | 118815 | SGM4 Informational Session 1 | Class |
| Robinson,Shaquan | 118815 | SGM4 Informational Session 1 | Class |
| Wright,Princess | 118815 | SGM4 Informational Session 1 | Class |
| Gunn,Anton Saxton | 118815 | SGM4 Informational Session 1 | Class |
| Guardiola,Jashua | 118815 | SGM4 Informational Session 1 | Class |
| Kaikai,Mohamed | 118815 | SGM4 Informational Session 1 | Class |
| Hyseni,Arba | 118815 | SGM4 Informational Session 1 | Class |
| Turner,Gary | 118815 | SGM4 Informational Session 1 | Class |
| Akparanta,Gianna-Gail Alexis | 118815 | SGM4 Informational Session 1 | Class |
| Kamara,Saidu | 118815 | SGM4 Informational Session 1 | Class |
| Williams,Alissa I | 118815 | SGM4 Informational Session 1 | Class |
| Fuseyamore,Elianna | 118815 | SGM4 Informational Session 1 | Class |
| Jackson,Esther | 118815 | SGM4 Informational Session 1 | Class |
| Saber,Mark | 118815 | SGM4 Informational Session 1 | Class |
| Mcrae,Malik | 118815 | SGM4 Informational Session 1 | Class |
| Ocasio,Yomayra | 118815 | SGM4 Informational Session 1 | Class |
| Wirts,Jibrail | 118815 | SGM4 Informational Session 1 | Class |
| Rizk,Ireiny | 118815 | SGM4 Informational Session 1 | Class |
| Gruffin,Brenda | 118815 | SGM4 Informational Session 1 | Class |
| Leehr,James | 118815 | SGM4 Informational Session 1 | Class |
| Atkinson,Cheyenne | 118815 | SGM4 Informational Session 1 | Class |
| ivory,chaquita | 118815 | SGM4 Informational Session 1 | Class |
| Morgan,Kemelyn | 118815 | SGM4 Informational Session 1 | Class |
| Sanoh,Joseph | 118815 | SGM4 Informational Session 1 | Class |
| Joof,Keshaunna | 118815 | SGM4 Informational Session 1 | Class |
| Traore,Dado | 118815 | SGM4 Informational Session 1 | Class |
| Smith,hyafa | 118815 | SGM4 Informational Session 1 | Class |
| Balde,Lanzo | 118815 | SGM4 Informational Session 1 | Class |
| Fernandez,Enger | 118815 | SGM4 Informational Session 1 | Class |
| Scarlett,Ryan | 118815 | SGM4 Informational Session 1 | Class |
| Tomaszuk,Urszula | 118815 | SGM4 Informational Session 1 | Class |
| Gornecki,Royce | 118815 | SGM4 Informational Session 1 | Class |
| Rivera,Johnathon | 118815 | SGM4 Informational Session 1 | Class |
| Jones,Terrell | 118815 | SGM4 Informational Session 1 | Class |
| stone,orren | 118815 | SGM4 Informational Session 1 | Class |
| Palmer,Dwight | 118815 | SGM4 Informational Session 1 | Class |
| Hinkson,Burnham | 118815 | SGM4 Informational Session 1 | Class |
| Rodriguez,Joel C | 118815 | SGM4 Informational Session 1 | Class |
| Earps,Flavia S | 118815 | SGM4 Informational Session 1 | Class |
| Guerrero lara,Anthoni | 118815 | SGM4 Informational Session 1 | Class |
| Hou,Yihong | 118815 | SGM4 Informational Session 1 | Class |
| Muhammad,Justice | 118815 | SGM4 Informational Session 1 | Class |
| De Jesus,Jenny | 118815 | SGM4 Informational Session 1 | Class |

EXHIBIT NO. GC-42 _____ RECEIVED ___x____ REJECTED _____

CASE NO 29-CA-280153 ET/AL _____ CASE NAME Amazon.Com Svs, LLC _____

NO OF PAGES 4 _____ DATE: 09-20-2022 _____ REPORTER: Barrington Moxie _____

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Davenport,Emmarald | 118815 | SGM4 Informational Session 1 | Class |
| McCurbin,Jay | 118815 | SGM4 Informational Session 1 | Class |
| Barclay,Kesha | 118815 | SGM4 Informational Session 1 | Class |
| Llorente,C | 118815 | SGM4 Informational Session 1 | Class |
| Soler,Luis | 118815 | SGM4 Informational Session 1 | Class |
| Badmus,Habib | 118815 | SGM4 Informational Session 1 | Class |
| Renoird,Ashley | 118815 | SGM4 Informational Session 1 | Class |
| Harjo,Toni | 118815 | SGM4 Informational Session 1 | Class |
| Lisiewicz,Norbert | 118815 | SGM4 Informational Session 1 | Class |
| Stafford,Lamont | 118815 | SGM4 Informational Session 1 | Class |
| Rojas,Ventura | 118815 | SGM4 Informational Session 1 | Class |
| harvell,Jahnaysia | 118815 | SGM4 Informational Session 1 | Class |
| Vasquez,Taylor | 118815 | SGM4 Informational Session 1 | Class |
| Stanley,Alicia | 118815 | SGM4 Informational Session 1 | Class |
| Hernandez,Anthony Anthony | 118815 | SGM4 Informational Session 1 | Class |
| Copp,Brett | 118815 | SGM4 Informational Session 1 | Class |
| Edwards,Danette | 118815 | SGM4 Informational Session 1 | Class |
| Allen,Allen Keith | 118815 | SGM4 Informational Session 1 | Class |
| Angel-Andres,Charlie | 118815 | SGM4 Informational Session 1 | Class |
| Rao,Joseph A | 118815 | SGM4 Informational Session 1 | Class |
| Castillo,Tania | 118815 | SGM4 Informational Session 1 | Class |
| Morales,Amir | 118815 | SGM4 Informational Session 1 | Class |
| Black,Shawn | 118815 | SGM4 Informational Session 1 | Class |
| Huntley,Christian | 118815 | SGM4 Informational Session 1 | Class |
| Kourkoumelis,Dion | 118815 | SGM4 Informational Session 1 | Class |
| Jean,Darwin | 118815 | SGM4 Informational Session 1 | Class |
| Lauary,Sabrina | 118815 | SGM4 Informational Session 1 | Class |
| Butts,Yolanda | 118815 | SGM4 Informational Session 1 | Class |
| Brennan,Anthony Scott | 118815 | SGM4 Informational Session 1 | Class |
| Brown,Donae Ellen | 118815 | SGM4 Informational Session 1 | Class |
| Pavia,Katlin | 118815 | SGM4 Informational Session 1 | Class |
| Leveque,Kevin | 118815 | SGM4 Informational Session 1 | Class |
| Farias,Martin | 118815 | SGM4 Informational Session 1 | Class |
| Reyes,Jocelyn | 118815 | SGM4 Informational Session 1 | Class |
| Cardinali,Chris Robert | 118815 | SGM4 Informational Session 1 | Class |
| Mabry,Zinyah | 118815 | SGM4 Informational Session 1 | Class |
| Estera,Karla | 118815 | SGM4 Informational Session 1 | Class |
| navarro,giovany | 118815 | SGM4 Informational Session 1 | Class |
| Kujifi,Auba | 118815 | SGM4 Informational Session 1 | Class |
| Thilakarathne,Chamara | 118815 | SGM4 Informational Session 1 | Class |
| Pacheco,Russ | 118815 | SGM4 Informational Session 1 | Class |
| Mignano,Michael | 118815 | SGM4 Informational Session 1 | Class |
| Bradford,Brianna | 118815 | SGM4 Informational Session 1 | Class |
| Reyes,Diego | 118815 | SGM4 Informational Session 1 | Class |
| Dejesus,Jalen | 118815 | SGM4 Informational Session 1 | Class |
| Doni,Michael | 118815 | SGM4 Informational Session 1 | Class |

Amazon_000560

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Bon,Josiah | 118815 | SGM4 Informational Session 1 | Class |
| Trozzo,Josephine | 118815 | SGM4 Informational Session 1 | Class |
| Afaneh,Esra | 118815 | SGM4 Informational Session 1 | Class |
| Gabriel,Omoniyi | 118815 | SGM4 Informational Session 1 | Class |
| Wesley,Madeline | 118815 | SGM4 Informational Session 1 | Class |
| Cruz,Joseph | 118815 | SGM4 Informational Session 1 | Class |
| Raymond,Princezelot | 118815 | SGM4 Informational Session 1 | Class |
| Brown,Jaden | 118815 | SGM4 Informational Session 1 | Class |
| Egerton,Devakl | 118815 | SGM4 Informational Session 1 | Class |
| Young,Kiara | 118815 | SGM4 Informational Session 1 | Class |
| Aquino,Alondra | 118815 | SGM4 Informational Session 1 | Class |
| Abdou Saleh,Daria | 118815 | SGM4 Informational Session 1 | Class |
| Mejia,Rosa | 118815 | SGM4 Informational Session 1 | Class |
| Sandoval,James Jesus | 118815 | SGM4 Informational Session 1 | Class |
| Arthur,Michael | 118815 | SGM4 Informational Session 1 | Class |
| Harden,Dylan | 118815 | SGM4 Informational Session 1 | Class |
| Smith,Colin | 118815 | SGM4 Informational Session 1 | Class |
| Caneda,Ramon | 118815 | SGM4 Informational Session 1 | Class |
| Nimblett,Vanessa A | 118815 | SGM4 Informational Session 1 | Class |
| Carranza Rojas,Giovani | 118815 | SGM4 Informational Session 1 | Class |
| Moses,Marisela Carolina | 118815 | SGM4 Informational Session 1 | Class |
| Adorno,Benny | 118815 | SGM4 Informational Session 1 | Class |
| Mitchell-Israel,Mitch | 118815 | SGM4 Informational Session 1 | Class |
| Traore,Tiangbo | 118815 | SGM4 Informational Session 1 | Class |

**EXHIBIT C**          1151

**My Vision for Us Here at LDJ5; Scott Taylor**

Hi everyone, and welcome. I'm Scott Taylor, the site leader here at LDJ5.

I am husband and a father to a two year old daughter. My wife and I are expecting our second child in the summer. I grew up in third world country of Jamaica and know what it means to fight for everything in your life.

My mom is a huge inspiration in my life, and one of the things she always emphasized was that she wanted every each generation of our family to have a better life than the generation before. She has always been a helper not just to our family but also our community – first as a healthcare worker and later as a teacher.

I am proud to share my Mom's passion for helping others, and I bring that here to my job at Amazon.

Let me give you an example

One of our associates came to me one day feeling frustrated. He had applied for a job on the safety team, and hadn't even gotten to an interview. So he came to my office defeated, we looked at his resume together. I could see that his resume wasn't reflecting his best self. So we worked on it together, and we practiced some interview skills. Because I want him to achieve his goals.

(helping with resume, interview skills advice for advancing career)

I want to help you create the career you want. I don't just want you to have a better job, I want you to have a better life. I want to help you be your best self. To achieve your dreams whether at Amazon or elsewhere. That's why I came to Amazon.

And it is why I love being at LDJ5.

When I came to LDJ5 just 9 months ago, my goal was to create a place where everyone feels valued. Starting here during COVID made that hard – things like masks and social distancing made having regular conversations difficult. COVID-19 really de-personalized the experience here at LDJ5.

As we all know, COVID has also created supply chain challenges – so some things that seem like they should be easy to fix, like issues with the corner restrooms, have taken much longer than I would like.

But please don't mistake that for lack of caring. During COVID, we didn't do a good enough job of fostering an open door or open dialogue with all of you. If you feel your voice hasn't been heard, I am sorry. And I want you to know I am listening. And I care.

EXHIBIT NO. GC-43 _____ RECEIVED ___x____ REJECTED _____

CASE NO 29-CA-280153 ET/AL _____ CASE NAME Amazon.Com Svs, LLC _____

NO OF PAGES 3 _____ DATE: 09-20-2022 _____ REPORTER: Barrington Moxie _____

When I think about my vision for this building, I have 3 priorities,
actively listening to your ideas and concerns,
taking action to remove obstacles and
following up as many times as it takes to get things done.

I'm worried about what will happen to these things if we bring in a middleman like a union.
I'm worried that your concerns will never get to me, or may not be what you intended.  When a
message is relayed by a third party, that message can get muddled.  Like that game of
telephone – the message you start with is many times completely different at the end of the
chain.

I'm also worried that having to work through a union to make changes could make things
slower, especially when bargaining typically only happens once every few years.

And finally, I'm worried because, if the union doesn't follow through on your concerns….they
aren't accountable to me.  I can't make them take care of your problems.  And I will no longer
be able to step in and help the way I do today.

I want to be able to continue to work directly with you, without any middleman.

I know Amazon isn't perfect. I know I am not perfect. But I am here. And I am listening.

Please give me the chance to show you that we can….

Please give me a chance to show that we will thrive together….without a union.

We've made some great progress by working together.  And we have more work to do.  Let's
keep working together.

Now I'd like to welcome Sandy Gordon and invite her to share a few words.

For those of you who didn't meet Sandy when she was here a few weeks ago, she is the human
resources leader responsible for this entire division. You may recognize her from the video
playing on the screens around the building. She shares my vision for what is possible, and cares
about every one of us here at LDJ5.

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Angel Gregorio,Lizbeth | 119379 | LDJ5 Educational Series 5 | Class |
| Day,Lamont | 119379 | LDJ5 Educational Series 5 | Class |
| Poon,Miguel(Felix) | 119379 | LDJ5 Educational Series 5 | Class |
| Leyko,Alaina | 119379 | LDJ5 Educational Series 5 | Class |
| Cincotta,Cory | 119379 | LDJ5 Educational Series 5 | Class |
| Torres,Samuel | 119379 | LDJ5 Educational Series 5 | Class |
| Robinson,Javia | 119379 | LDJ5 Educational Series 5 | Class |
| Henery,Jermaine | 119379 | LDJ5 Educational Series 5 | Class |
| Jarmond,Belinda | 119379 | LDJ5 Educational Series 5 | Class |
| paul,preston | 119379 | LDJ5 Educational Series 5 | Class |
| Rivera,Justin | 119379 | LDJ5 Educational Series 5 | Class |
| Adams,Lamont | 119379 | LDJ5 Educational Series 5 | Class |
| Jean louis,Rodney | 119379 | LDJ5 Educational Series 5 | Class |
| Robinson,Shaquan | 119379 | LDJ5 Educational Series 5 | Class |
| Cocone-Tochimani,Liliana Liliana | 119379 | LDJ5 Educational Series 5 | Class |
| Chavis,Shaquana | 119379 | LDJ5 Educational Series 5 | Class |
| Martinez Guzman,Netzai A | 119379 | LDJ5 Educational Series 5 | Class |
| Gunn,Anton Saxton | 119379 | LDJ5 Educational Series 5 | Class |
| Henriquez,Krystal J | 119379 | LDJ5 Educational Series 5 | Class |
| Velazquez,Axel | 119379 | LDJ5 Educational Series 5 | Class |
| Pagan,Marcos | 119379 | LDJ5 Educational Series 5 | Class |
| Hardman,Doris | 119379 | LDJ5 Educational Series 5 | Class |
| Iqbal,Ifrah | 119379 | LDJ5 Educational Series 5 | Class |
| Gorodetsky,Dylan | 119379 | LDJ5 Educational Series 5 | Class |
| Williams,Benny Levon | 119379 | LDJ5 Educational Series 5 | Class |
| Disla,Angel | 119379 | LDJ5 Educational Series 5 | Class |
| Spencer,Quaneice | 119379 | LDJ5 Educational Series 5 | Class |
| Carbonaro,Marc | 119379 | LDJ5 Educational Series 5 | Class |
| Otaiku,Akeem | 119379 | LDJ5 Educational Series 5 | Class |
| BrockIglesias,Aaron | 119379 | LDJ5 Educational Series 5 | Class |
| Muthugalge,Shalini | 119379 | LDJ5 Educational Series 5 | Class |
| Gonzales,Nelson | 119379 | LDJ5 Educational Series 5 | Class |
| Moore,Jay | 119379 | LDJ5 Educational Series 5 | Class |
| Payne,Nedra | 119379 | LDJ5 Educational Series 5 | Class |
| Rodriguez,Nancy | 119379 | LDJ5 Educational Series 5 | Class |
| Butler,Amonnie | 119379 | LDJ5 Educational Series 5 | Class |
| Novillo,Isabel | 119379 | LDJ5 Educational Series 5 | Class |
| Herrera,Gabriela M | 119379 | LDJ5 Educational Series 5 | Class |
| Gates,John | 119379 | LDJ5 Educational Series 5 | Class |
| Zuccaro,Louis | 119379 | LDJ5 Educational Series 5 | Class |
| Blackburn,Raymond | 119379 | LDJ5 Educational Series 5 | Class |
| booker,dominque | 119379 | LDJ5 Educational Series 5 | Class |
| Hurse,Jillian | 119379 | LDJ5 Educational Series 5 | Class |
| ivory,chaquita | 119379 | LDJ5 Educational Series 5 | Class |
| Carrington,Gary | 119379 | LDJ5 Educational Series 5 | Class |
| Clarke,Ashley | 119379 | LDJ5 Educational Series 5 | Class |

EXHIBIT NO. <u>GC-44</u> RECEIVED <u>x</u> REJECTED _____

CASE NO <u>29-CA-280153 ET/AL</u> CASE NAME <u>Amazon.Com Svs, LLC</u>

NO OF PAGES <u>11</u> DATE: <u>09-20-2022</u> REPORTER: <u>Barrington Moxie</u>

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Phillips,candacey | 119379 | LDJ5 Educational Series 5 | Class |
| Wheeler,Sheree | 119379 | LDJ5 Educational Series 5 | Class |
| Malwana,Pushpa kumara | 119379 | LDJ5 Educational Series 5 | Class |
| Karadzas,Justin | 119379 | LDJ5 Educational Series 5 | Class |
| Avendano,Aldo | 119379 | LDJ5 Educational Series 5 | Class |
| Aturupane Anwmudiyanse Ralaham,Laxmi | 119379 | LDJ5 Educational Series 5 | Class |
| Mckenzie,Alexandria | 119379 | LDJ5 Educational Series 5 | Class |
| Ladino,Dagoberto | 119379 | LDJ5 Educational Series 5 | Class |
| Bradshaw,Maleek Alphonso | 119379 | LDJ5 Educational Series 5 | Class |
| degroat,Laticia | 119379 | LDJ5 Educational Series 5 | Class |
| Sibre,Gabriela Victoria | 119379 | LDJ5 Educational Series 5 | Class |
| Herrera,Nagi | 119379 | LDJ5 Educational Series 5 | Class |
| Rivera,Johnathon | 119379 | LDJ5 Educational Series 5 | Class |
| Jones,Terrell | 119379 | LDJ5 Educational Series 5 | Class |
| Roland,Marceline | 119379 | LDJ5 Educational Series 5 | Class |
| Palmer,Dwight | 119379 | LDJ5 Educational Series 5 | Class |
| Martinez,Guadalupe | 119379 | LDJ5 Educational Series 5 | Class |
| Batts,Shannon | 119379 | LDJ5 Educational Series 5 | Class |
| Appiah,Ebony M | 119379 | LDJ5 Educational Series 5 | Class |
| Guerrero lara,Anthoni | 119379 | LDJ5 Educational Series 5 | Class |
| Velez,Johnny | 119379 | LDJ5 Educational Series 5 | Class |
| Hou,Yihong | 119379 | LDJ5 Educational Series 5 | Class |
| Davenport,Emmarald | 119379 | LDJ5 Educational Series 5 | Class |
| Castro,Esthefany Lizeth | 119379 | LDJ5 Educational Series 5 | Class |
| Llorente,C | 119379 | LDJ5 Educational Series 5 | Class |
| sanders,Earl | 119379 | LDJ5 Educational Series 5 | Class |
| Meighan,Shanna | 119379 | LDJ5 Educational Series 5 | Class |
| Carreno,Ivan | 119379 | LDJ5 Educational Series 5 | Class |
| Legend IV,Obese Uriel | 119379 | LDJ5 Educational Series 5 | Class |
| Anthony,Conganige Miyuki | 119379 | LDJ5 Educational Series 5 | Class |
| Cruz,Caren | 119379 | LDJ5 Educational Series 5 | Class |
| Woodson Jr,Tyrone | 119379 | LDJ5 Educational Series 5 | Class |
| Sala,Joseph | 119379 | LDJ5 Educational Series 5 | Class |
| Hanafee,Mark | 119379 | LDJ5 Educational Series 5 | Class |
| Marcelle,Roshumba-Rose | 119379 | LDJ5 Educational Series 5 | Class |
| Williams,Johnny | 119379 | LDJ5 Educational Series 5 | Class |
| McMillian,Tyshawn | 119379 | LDJ5 Educational Series 5 | Class |
| Campbell,Karen | 119379 | LDJ5 Educational Series 5 | Class |
| Velazquez,Siomara | 119379 | LDJ5 Educational Series 5 | Class |
| Clemente,Michael | 119379 | LDJ5 Educational Series 5 | Class |
| Best,Wesley | 119379 | LDJ5 Educational Series 5 | Class |
| chavez,estefany | 119379 | LDJ5 Educational Series 5 | Class |
| Suarez,Erika | 119379 | LDJ5 Educational Series 5 | Class |
| Gomez,Joshua | 119379 | LDJ5 Educational Series 5 | Class |
| Hudson,Anteaius | 119379 | LDJ5 Educational Series 5 | Class |
| Coke,Gavin | 119379 | LDJ5 Educational Series 5 | Class |

Amazon_000566

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Huntley,Christian | 119379 | LDJ5 Educational Series 5 | Class |
| Brown,Donae Ellen | 119379 | LDJ5 Educational Series 5 | Class |
| Prestovino,Katie M | 119379 | LDJ5 Educational Series 5 | Class |
| Garcia,Jessica | 119379 | LDJ5 Educational Series 5 | Class |
| Birbal jones,Marlene | 119379 | LDJ5 Educational Series 5 | Class |
| Wills,Jay | 119379 | LDJ5 Educational Series 5 | Class |
| Chan,Alex | 119379 | LDJ5 Educational Series 5 | Class |
| Rodriguez,Natalia | 119379 | LDJ5 Educational Series 5 | Class |
| COLLEY,EBRIMA | 119379 | LDJ5 Educational Series 5 | Class |
| Aponte,Joshua | 119379 | LDJ5 Educational Series 5 | Class |
| Reyes,Santa | 119379 | LDJ5 Educational Series 5 | Class |
| Kujifi,Auba | 119379 | LDJ5 Educational Series 5 | Class |
| McGriff,Thomasina | 119379 | LDJ5 Educational Series 5 | Class |
| gallagher,john | 119379 | LDJ5 Educational Series 5 | Class |
| Alade,Stephen | 119379 | LDJ5 Educational Series 5 | Class |
| Campbell Valdez,Alexander Emmanuel | 119379 | LDJ5 Educational Series 5 | Class |
| Islam,Md | 119379 | LDJ5 Educational Series 5 | Class |
| Bedford,Monique | 119379 | LDJ5 Educational Series 5 | Class |
| Prensa,Juice | 119379 | LDJ5 Educational Series 5 | Class |
| FISCHMAN,Robert | 119379 | LDJ5 Educational Series 5 | Class |
| Duvermond,Velemsky | 119379 | LDJ5 Educational Series 5 | Class |
| martinez,bri | 119379 | LDJ5 Educational Series 5 | Class |
| Hawkins,Honesty | 119379 | LDJ5 Educational Series 5 | Class |
| KUMAR,SURESH | 119379 | LDJ5 Educational Series 5 | Class |
| Fernier,Marlene | 119379 | LDJ5 Educational Series 5 | Class |
| Nugent,Mary | 119379 | LDJ5 Educational Series 5 | Class |
| Nwe,Me | 119379 | LDJ5 Educational Series 5 | Class |
| Footman,Caleb | 119379 | LDJ5 Educational Series 5 | Class |
| butts,tiannah | 119379 | LDJ5 Educational Series 5 | Class |
| Holloman,Derrick | 119379 | LDJ5 Educational Series 5 | Class |
| Hussein,Ahmed | 119379 | LDJ5 Educational Series 5 | Class |
| afeef,siraj | 119379 | LDJ5 Educational Series 5 | Class |
| Rosario de Sanchez,Milauy Arlenis | 119379 | LDJ5 Educational Series 5 | Class |
| Edwards,Charmaine | 119379 | LDJ5 Educational Series 5 | Class |
| .,VMOORE | 119379 | LDJ5 Educational Series 5 | Class |
| Jones,Jada | 119379 | LDJ5 Educational Series 5 | Class |
| Lashley,Lewis | 119379 | LDJ5 Educational Series 5 | Class |
| Pavia,Salvador | 119379 | LDJ5 Educational Series 5 | Class |
| Lyttle,Lakyle | 119379 | LDJ5 Educational Series 5 | Class |
| Velez,Brandon | 119379 | LDJ5 Educational Series 5 | Class |
| Butler,Latroy | 119379 | LDJ5 Educational Series 5 | Class |
| Carreras,Chris | 119379 | LDJ5 Educational Series 5 | Class |
| Quilla,Michael | 119379 | LDJ5 Educational Series 5 | Class |
| Radcliffe,Rondell | 119379 | LDJ5 Educational Series 5 | Class |
| Voltaire,Yves | 119379 | LDJ5 Educational Series 5 | Class |
| Espinoza,Casandra | 119379 | LDJ5 Educational Series 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lopez,Charles | 119379 | LDJ5 Educational Series 5 | Class |
| Sow,Alpha | 119379 | LDJ5 Educational Series 5 | Class |
| Paulino,Angelica | 119379 | LDJ5 Educational Series 5 | Class |
| Lincoln,Jordan | 119379 | LDJ5 Educational Series 5 | Class |
| jean,chantal | 119379 | LDJ5 Educational Series 5 | Class |
| Holloman,Thenette | 119379 | LDJ5 Educational Series 5 | Class |
| Carpinelli,Ezra | 119379 | LDJ5 Educational Series 5 | Class |
| Akparanta,Gianna-Gail Alexis | 119379 | LDJ5 Educational Series 5 | Class |
| Rivas,Jimmy Anthony | 119379 | LDJ5 Educational Series 5 | Class |
| Alexander,Neal | 119379 | LDJ5 Educational Series 5 | Class |
| Castaneda,Dulce | 119379 | LDJ5 Educational Series 5 | Class |
| Perales,Michael | 119379 | LDJ5 Educational Series 5 | Class |
| Rizk,Ireiny | 119379 | LDJ5 Educational Series 5 | Class |
| Jackson,Durell | 119379 | LDJ5 Educational Series 5 | Class |
| Leehr,James | 119379 | LDJ5 Educational Series 5 | Class |
| Adaramola,Yemi | 119379 | LDJ5 Educational Series 5 | Class |
| Isabel,Yolanda | 119379 | LDJ5 Educational Series 5 | Class |
| Handy,Talischa | 119379 | LDJ5 Educational Series 5 | Class |
| Jordan,Troy | 119379 | LDJ5 Educational Series 5 | Class |
| Fort,Fatima | 119379 | LDJ5 Educational Series 5 | Class |
| Torres,Isis | 119379 | LDJ5 Educational Series 5 | Class |
| Ukolov,Iurii | 119379 | LDJ5 Educational Series 5 | Class |
| Gunaratna,Sudath | 119379 | LDJ5 Educational Series 5 | Class |
| Tomaszuk,Urszula | 119379 | LDJ5 Educational Series 5 | Class |
| Zorrilla,Edwin | 119379 | LDJ5 Educational Series 5 | Class |
| Buestan,Sonia | 119379 | LDJ5 Educational Series 5 | Class |
| Webb,Shaniqua | 119379 | LDJ5 Educational Series 5 | Class |
| Juarez,Marileysi | 119379 | LDJ5 Educational Series 5 | Class |
| Moscoso,Julio | 119379 | LDJ5 Educational Series 5 | Class |
| James,Esaiah | 119379 | LDJ5 Educational Series 5 | Class |
| Trembone,Kayla | 119379 | LDJ5 Educational Series 5 | Class |
| Danjou,Colin | 119379 | LDJ5 Educational Series 5 | Class |
| La Rocca,Paul | 119379 | LDJ5 Educational Series 5 | Class |
| Duran,Delilah | 119379 | LDJ5 Educational Series 5 | Class |
| Azor,Rayssel | 119379 | LDJ5 Educational Series 5 | Class |
| Sarutto,Christopher | 119379 | LDJ5 Educational Series 5 | Class |
| Thompson,Tyrone Andre | 119379 | LDJ5 Educational Series 5 | Class |
| Trujillo,Amber | 119379 | LDJ5 Educational Series 5 | Class |
| page,cattaleena | 119379 | LDJ5 Educational Series 5 | Class |
| Brito,Alexandra | 119379 | LDJ5 Educational Series 5 | Class |
| Perez,Veronica | 119379 | LDJ5 Educational Series 5 | Class |
| harvell,Jahnaysia | 119379 | LDJ5 Educational Series 5 | Class |
| akpoto,yao | 119379 | LDJ5 Educational Series 5 | Class |
| Gordon,Vay | 119379 | LDJ5 Educational Series 5 | Class |
| ramos,Alberto | 119379 | LDJ5 Educational Series 5 | Class |
| Guerra,Joseph Lawrence | 119379 | LDJ5 Educational Series 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Smith,Hydia Afeni | 119379 | LDJ5 Educational Series 5 | Class |
| Jervis,Ezlyn B | 119379 | LDJ5 Educational Series 5 | Class |
| Perevoznikova,Nadejda | 119379 | LDJ5 Educational Series 5 | Class |
| Espinal Ledesma,Yonelfy | 119379 | LDJ5 Educational Series 5 | Class |
| Lynch-Wood,Kweku | 119379 | LDJ5 Educational Series 5 | Class |
| Rabkina,Flyura | 119379 | LDJ5 Educational Series 5 | Class |
| Duran Herrera,Celena | 119379 | LDJ5 Educational Series 5 | Class |
| MORALES,DAMIAN | 119379 | LDJ5 Educational Series 5 | Class |
| LIANG,ZHICHAO | 119379 | LDJ5 Educational Series 5 | Class |
| eusebio garcia,liz marie | 119379 | LDJ5 Educational Series 5 | Class |
| Cardenas,Dina | 119379 | LDJ5 Educational Series 5 | Class |
| Castillo,Tania | 119379 | LDJ5 Educational Series 5 | Class |
| Morales,Amir | 119379 | LDJ5 Educational Series 5 | Class |
| Howell,Dean | 119379 | LDJ5 Educational Series 5 | Class |
| Conde,Fulgencio | 119379 | LDJ5 Educational Series 5 | Class |
| Feisal,Shahil | 119379 | LDJ5 Educational Series 5 | Class |
| Maceda,Diego | 119379 | LDJ5 Educational Series 5 | Class |
| Roldan,Michelle Angel | 119379 | LDJ5 Educational Series 5 | Class |
| Myrie,George | 119379 | LDJ5 Educational Series 5 | Class |
| Bonilla,Ruby | 119379 | LDJ5 Educational Series 5 | Class |
| Davis,Nicholas | 119379 | LDJ5 Educational Series 5 | Class |
| Mendez,Jose | 119379 | LDJ5 Educational Series 5 | Class |
| Marcial,JJ J | 119379 | LDJ5 Educational Series 5 | Class |
| Medina,Philip | 119379 | LDJ5 Educational Series 5 | Class |
| Goldberg,Alexa | 119379 | LDJ5 Educational Series 5 | Class |
| Concepcion Mejia,Uriel | 119379 | LDJ5 Educational Series 5 | Class |
| Ferone,Tyran | 119379 | LDJ5 Educational Series 5 | Class |
| Leveque,Kevin | 119379 | LDJ5 Educational Series 5 | Class |
| Richardson,Brandon | 119379 | LDJ5 Educational Series 5 | Class |
| Vargas,Andrew | 119379 | LDJ5 Educational Series 5 | Class |
| Alvarez,Juan | 119379 | LDJ5 Educational Series 5 | Class |
| Clay,Rah | 119379 | LDJ5 Educational Series 5 | Class |
| Aguilar,Kristen | 119379 | LDJ5 Educational Series 5 | Class |
| Mignano,Michael | 119379 | LDJ5 Educational Series 5 | Class |
| Leslie,Joel | 119379 | LDJ5 Educational Series 5 | Class |
| Prince,Chana | 119379 | LDJ5 Educational Series 5 | Class |
| AJAYI,SAMUEL | 119379 | LDJ5 Educational Series 5 | Class |
| Eaddy,Corey | 119379 | LDJ5 Educational Series 5 | Class |
| BAYONA,HUGO | 119379 | LDJ5 Educational Series 5 | Class |
| Mendez,Maria | 119379 | LDJ5 Educational Series 5 | Class |
| Tucker,Henry | 119379 | LDJ5 Educational Series 5 | Class |
| McIntyre,Mark | 119379 | LDJ5 Educational Series 5 | Class |
| Robles,Sayra | 119379 | LDJ5 Educational Series 5 | Class |
| NewAir,Dj | 119379 | LDJ5 Educational Series 5 | Class |
| Abdou Saleh,Daria | 119379 | LDJ5 Educational Series 5 | Class |
| Gibson,Jailin | 119379 | LDJ5 Educational Series 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Jackson,Boluwaji | 119379 | LDJ5 Educational Series 5 | Class |
| Gonzalez,Yahaira | 119379 | LDJ5 Educational Series 5 | Class |
| Robinson,Abu | 119379 | LDJ5 Educational Series 5 | Class |
| Harry,Anastasia | 119379 | LDJ5 Educational Series 5 | Class |
| Gonzalez,Alejandra | 119379 | LDJ5 Educational Series 5 | Class |
| Rodriguez,Alexander | 119379 | LDJ5 Educational Series 5 | Class |
| Semper,Laurissa | 119379 | LDJ5 Educational Series 5 | Class |
| OHara,Jack Riley | 119379 | LDJ5 Educational Series 5 | Class |
| Seidenfaden,Trish | 119379 | LDJ5 Educational Series 5 | Class |
| Torres,Monica | 119379 | LDJ5 Educational Series 5 | Class |
| Hickling,Doran Anthony | 119379 | LDJ5 Educational Series 5 | Class |
| Gutierrez,Tommy | 119379 | LDJ5 Educational Series 5 | Class |
| brodie,alex | 119379 | LDJ5 Educational Series 5 | Class |
| Green,Khadijah | 119379 | LDJ5 Educational Series 5 | Class |
| Rivera,Zeth | 119379 | LDJ5 Educational Series 5 | Class |
| Navas,Lucia | 119379 | LDJ5 Educational Series 5 | Class |
| Ibarra Cruz,Jazmin | 119379 | LDJ5 Educational Series 5 | Class |
| Merlin,Guillermo L | 119379 | LDJ5 Educational Series 5 | Class |
| Russo,Angelo | 119379 | LDJ5 Educational Series 5 | Class |
| Ocasio,Yomayra | 119379 | LDJ5 Educational Series 5 | Class |
| Wirts,Jibrail | 119379 | LDJ5 Educational Series 5 | Class |
| Ghirardelli,Bianca Bolatito | 119379 | LDJ5 Educational Series 5 | Class |
| Gruffin,Brenda | 119379 | LDJ5 Educational Series 5 | Class |
| Sandi,Carol | 119379 | LDJ5 Educational Series 5 | Class |
| Akinlabi,Olugbenga Samuel | 119379 | LDJ5 Educational Series 5 | Class |
| Hernandez,Joshua | 119379 | LDJ5 Educational Series 5 | Class |
| Huang,Derek | 119379 | LDJ5 Educational Series 5 | Class |
| Alburquerque,Rolfi | 119379 | LDJ5 Educational Series 5 | Class |
| Balde,Lanzo | 119379 | LDJ5 Educational Series 5 | Class |
| arika,Fatima zahra | 119379 | LDJ5 Educational Series 5 | Class |
| Garcia,Estevon | 119379 | LDJ5 Educational Series 5 | Class |
| Aguilar,Gabriela | 119379 | LDJ5 Educational Series 5 | Class |
| stone,orren | 119379 | LDJ5 Educational Series 5 | Class |
| Mcduffy,Niasia | 119379 | LDJ5 Educational Series 5 | Class |
| Mejia,Jose E | 119379 | LDJ5 Educational Series 5 | Class |
| Murren,Steve | 119379 | LDJ5 Educational Series 5 | Class |
| Garel,Kim | 119379 | LDJ5 Educational Series 5 | Class |
| Brown,Shanay | 119379 | LDJ5 Educational Series 5 | Class |
| mack,Brian | 119379 | LDJ5 Educational Series 5 | Class |
| Arika,Hajar | 119379 | LDJ5 Educational Series 5 | Class |
| Hampton,Racquel | 119379 | LDJ5 Educational Series 5 | Class |
| Nugent,Jennifer | 119379 | LDJ5 Educational Series 5 | Class |
| Taveras,Enlly M | 119379 | LDJ5 Educational Series 5 | Class |
| gonzalez,fabian | 119379 | LDJ5 Educational Series 5 | Class |
| APOLONIO,HECTOR | 119379 | LDJ5 Educational Series 5 | Class |
| Allega,Jessica | 119379 | LDJ5 Educational Series 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Baez,Leonardo | 119379 | LDJ5 Educational Series 5 | Class |
| Charles,Nalitha | 119379 | LDJ5 Educational Series 5 | Class |
| Miho,Irdisa | 119379 | LDJ5 Educational Series 5 | Class |
| Brown,DaNay | 119379 | LDJ5 Educational Series 5 | Class |
| Sumpter,Jerome Lamont | 119379 | LDJ5 Educational Series 5 | Class |
| Vazquez,Abraham | 119379 | LDJ5 Educational Series 5 | Class |
| Sciulla,Vincent | 119379 | LDJ5 Educational Series 5 | Class |
| Del Rosario,Yordalis | 119379 | LDJ5 Educational Series 5 | Class |
| Hernandez,Juan | 119379 | LDJ5 Educational Series 5 | Class |
| Hart,Shevoy | 119379 | LDJ5 Educational Series 5 | Class |
| Gardner,Justyn | 119379 | LDJ5 Educational Series 5 | Class |
| Padmore,Kevin McAllister | 119379 | LDJ5 Educational Series 5 | Class |
| Boone,Shardonnay | 119379 | LDJ5 Educational Series 5 | Class |
| Santiago,Tommy | 119379 | LDJ5 Educational Series 5 | Class |
| Espinoza,Azalea | 119379 | LDJ5 Educational Series 5 | Class |
| Motisi,Dianne | 119379 | LDJ5 Educational Series 5 | Class |
| Rastall,Travis | 119379 | LDJ5 Educational Series 5 | Class |
| Durowaye,Rufus | 119379 | LDJ5 Educational Series 5 | Class |
| bartisiene,jean kathleen | 119379 | LDJ5 Educational Series 5 | Class |
| Lemesheva,Anna | 119379 | LDJ5 Educational Series 5 | Class |
| Montanez,Iris | 119379 | LDJ5 Educational Series 5 | Class |
| Sanchez,Melanie | 119379 | LDJ5 Educational Series 5 | Class |
| Rogers-Mitchell,Alvin | 119379 | LDJ5 Educational Series 5 | Class |
| Williams,Janice Tondalaya | 119379 | LDJ5 Educational Series 5 | Class |
| Horton,Asia | 119379 | LDJ5 Educational Series 5 | Class |
| Bradford,Brianna | 119379 | LDJ5 Educational Series 5 | Class |
| Cotoc-sapon,Esvin | 119379 | LDJ5 Educational Series 5 | Class |
| Maisonet,Ashley Ariel | 119379 | LDJ5 Educational Series 5 | Class |
| Mcgill,Nathaniel Errol | 119379 | LDJ5 Educational Series 5 | Class |
| Marmolejo,Carlos | 119379 | LDJ5 Educational Series 5 | Class |
| Pinney,Stuart Kline | 119379 | LDJ5 Educational Series 5 | Class |
| Haney,Amanda | 119379 | LDJ5 Educational Series 5 | Class |
| Thomas,Earl | 119379 | LDJ5 Educational Series 5 | Class |
| LEVEQUE,TANISHA | 119379 | LDJ5 Educational Series 5 | Class |
| Felix,Gina | 119379 | LDJ5 Educational Series 5 | Class |
| Hasan,Shah | 119379 | LDJ5 Educational Series 5 | Class |
| Cao,Henry | 119379 | LDJ5 Educational Series 5 | Class |
| Carpio,Jonathan | 119379 | LDJ5 Educational Series 5 | Class |
| Nasriu,Azeez | 119379 | LDJ5 Educational Series 5 | Class |
| williams,skia | 119379 | LDJ5 Educational Series 5 | Class |
| De paula,Aridio | 119379 | LDJ5 Educational Series 5 | Class |
| Garcia,Christian | 119379 | LDJ5 Educational Series 5 | Class |
| Kowalski,Anna | 119379 | LDJ5 Educational Series 5 | Class |
| Aquino,Alondra | 119379 | LDJ5 Educational Series 5 | Class |
| Deleon,Isabella | 119379 | LDJ5 Educational Series 5 | Class |
| Sandoval,James Jesus | 119379 | LDJ5 Educational Series 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Lewis,Ioka | 119379 | LDJ5 Educational Series 5 | Class |
| Smith,Colin | 119379 | LDJ5 Educational Series 5 | Class |
| J,Kaira | 119379 | LDJ5 Educational Series 5 | Class |
| Bethea,Steve | 119379 | LDJ5 Educational Series 5 | Class |
| Cole,Kathleen | 119379 | LDJ5 Educational Series 5 | Class |
| baez,willy c | 119379 | LDJ5 Educational Series 5 | Class |
| Toizer,Elad | 119379 | LDJ5 Educational Series 5 | Class |
| Li,Anderson | 119379 | LDJ5 Educational Series 5 | Class |
| Wright,Princess | 119379 | LDJ5 Educational Series 5 | Class |
| Schollianos,Iza | 119379 | LDJ5 Educational Series 5 | Class |
| Stroud,Dom R | 119379 | LDJ5 Educational Series 5 | Class |
| Augustine-Williamson,Sherrill | 119379 | LDJ5 Educational Series 5 | Class |
| Moody,Lavender | 119379 | LDJ5 Educational Series 5 | Class |
| Kamara,Saidu | 119379 | LDJ5 Educational Series 5 | Class |
| Williams,Alissa I | 119379 | LDJ5 Educational Series 5 | Class |
| Endozo,Gilbert T | 119379 | LDJ5 Educational Series 5 | Class |
| Lucero,Jeanette | 119379 | LDJ5 Educational Series 5 | Class |
| Jackson,Esther | 119379 | LDJ5 Educational Series 5 | Class |
| Pavia,Patricia | 119379 | LDJ5 Educational Series 5 | Class |
| De La Cruz,Natalie | 119379 | LDJ5 Educational Series 5 | Class |
| Ortiz,Samir | 119379 | LDJ5 Educational Series 5 | Class |
| Green,Shireen l | 119379 | LDJ5 Educational Series 5 | Class |
| Faison,Cory | 119379 | LDJ5 Educational Series 5 | Class |
| Drewery,Vincent | 119379 | LDJ5 Educational Series 5 | Class |
| Baer,Gregory Hamilton | 119379 | LDJ5 Educational Series 5 | Class |
| fernandez,francisco | 119379 | LDJ5 Educational Series 5 | Class |
| Liz vargas,Luis Arismendy | 119379 | LDJ5 Educational Series 5 | Class |
| Phillips,Justina Jean | 119379 | LDJ5 Educational Series 5 | Class |
| Lubrun,Nashah | 119379 | LDJ5 Educational Series 5 | Class |
| Chukwueke,Obinna | 119379 | LDJ5 Educational Series 5 | Class |
| Cruz,Joseph | 119379 | LDJ5 Educational Series 5 | Class |
| Perez,Robert | 119379 | LDJ5 Educational Series 5 | Class |
| Lin,Leonie | 119379 | LDJ5 Educational Series 5 | Class |
| Thompson,Aydan | 119379 | LDJ5 Educational Series 5 | Class |
| Rodriguez,Michael | 119379 | LDJ5 Educational Series 5 | Class |
| Rosado,Gabriella | 119379 | LDJ5 Educational Series 5 | Class |
| Hines,Andrew | 119379 | LDJ5 Educational Series 5 | Class |
| WIJETUNGE,SHAN | 119379 | LDJ5 Educational Series 5 | Class |
| Mcduffy,Chelsea | 119379 | LDJ5 Educational Series 5 | Class |
| Arroyo,Javier | 119379 | LDJ5 Educational Series 5 | Class |
| Rodriguez,Joel C | 119379 | LDJ5 Educational Series 5 | Class |
| Roberts,Augustine | 119379 | LDJ5 Educational Series 5 | Class |
| Reidinger,Oneida | 119379 | LDJ5 Educational Series 5 | Class |
| Gonzalez,Jeanette | 119379 | LDJ5 Educational Series 5 | Class |
| Lanier,Samuel | 119379 | LDJ5 Educational Series 5 | Class |
| Black,Dwayne | 119379 | LDJ5 Educational Series 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Barclay,Kesha | 119379 | LDJ5 Educational Series 5 | Class |
| Brown,Joshua | 119379 | LDJ5 Educational Series 5 | Class |
| Tobin,Christina | 119379 | LDJ5 Educational Series 5 | Class |
| Cioffi,Frank | 119379 | LDJ5 Educational Series 5 | Class |
| Hunter,Will L | 119379 | LDJ5 Educational Series 5 | Class |
| Guzman-Ramirez,Benito | 119379 | LDJ5 Educational Series 5 | Class |
| Prensa,Elizabeth | 119379 | LDJ5 Educational Series 5 | Class |
| Jackson,Eiesha V | 119379 | LDJ5 Educational Series 5 | Class |
| Bishop,Rose Ann | 119379 | LDJ5 Educational Series 5 | Class |
| Rojas,Ventura | 119379 | LDJ5 Educational Series 5 | Class |
| Marchese,Angela | 119379 | LDJ5 Educational Series 5 | Class |
| Gonzalez,Johnathan | 119379 | LDJ5 Educational Series 5 | Class |
| Vasquez,Taylor | 119379 | LDJ5 Educational Series 5 | Class |
| Croom,John | 119379 | LDJ5 Educational Series 5 | Class |
| Phillips,Sharon | 119379 | LDJ5 Educational Series 5 | Class |
| Scott,Abbie | 119379 | LDJ5 Educational Series 5 | Class |
| Godley Ogbuehi,Lovelyn | 119379 | LDJ5 Educational Series 5 | Class |
| Gonzalez,Butch Jesus | 119379 | LDJ5 Educational Series 5 | Class |
| Lee,Chris H | 119379 | LDJ5 Educational Series 5 | Class |
| Brown-McDowell,Dierdra | 119379 | LDJ5 Educational Series 5 | Class |
| Sutton,Jakari Akeem | 119379 | LDJ5 Educational Series 5 | Class |
| Garcia,Fernando | 119379 | LDJ5 Educational Series 5 | Class |
| Edwards,Danette | 119379 | LDJ5 Educational Series 5 | Class |
| Gomezcoello,Erlan | 119379 | LDJ5 Educational Series 5 | Class |
| Paulino,John | 119379 | LDJ5 Educational Series 5 | Class |
| Jones,Shantel | 119379 | LDJ5 Educational Series 5 | Class |
| Edwards,Kelvin Isaiah | 119379 | LDJ5 Educational Series 5 | Class |
| Garcia Pavia,Ulises | 119379 | LDJ5 Educational Series 5 | Class |
| Woods-Wright,Terry | 119379 | LDJ5 Educational Series 5 | Class |
| Nunez,Bryan | 119379 | LDJ5 Educational Series 5 | Class |
| Carpinelli,Mike | 119379 | LDJ5 Educational Series 5 | Class |
| Uribe Ruiz,Maritza | 119379 | LDJ5 Educational Series 5 | Class |
| Jean,Darwin | 119379 | LDJ5 Educational Series 5 | Class |
| Ballard,Monique S | 119379 | LDJ5 Educational Series 5 | Class |
| Pineda,Leonor | 119379 | LDJ5 Educational Series 5 | Class |
| Pacheco,Daryl | 119379 | LDJ5 Educational Series 5 | Class |
| Lauary,Sabrina | 119379 | LDJ5 Educational Series 5 | Class |
| Martinez,Darnell | 119379 | LDJ5 Educational Series 5 | Class |
| Foster,Jehosheba | 119379 | LDJ5 Educational Series 5 | Class |
| Grey,Elizabeth | 119379 | LDJ5 Educational Series 5 | Class |
| abney,shawn | 119379 | LDJ5 Educational Series 5 | Class |
| Tawdrous,Turki | 119379 | LDJ5 Educational Series 5 | Class |
| Garcia,Alma | 119379 | LDJ5 Educational Series 5 | Class |
| Arthur,Roger | 119379 | LDJ5 Educational Series 5 | Class |
| Berry,Theresa | 119379 | LDJ5 Educational Series 5 | Class |
| Goode,Taniqua | 119379 | LDJ5 Educational Series 5 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Henry,David | 119379 | LDJ5 Educational Series 5 | Class |
| Reyes,Diego | 119379 | LDJ5 Educational Series 5 | Class |
| Wesley,Madeline | 119379 | LDJ5 Educational Series 5 | Class |
| Cruz,Joseph | 119379 | LDJ5 Educational Series 5 | Class |
| whyte,zhane | 119379 | LDJ5 Educational Series 5 | Class |
| Summers,Richard | 119379 | LDJ5 Educational Series 5 | Class |
| Nyesuah,Elizabeth | 119379 | LDJ5 Educational Series 5 | Class |
| Burgos,Luis | 119379 | LDJ5 Educational Series 5 | Class |
| Powell,Dekhi | 119379 | LDJ5 Educational Series 5 | Class |
| Stewart,Delona | 119379 | LDJ5 Educational Series 5 | Class |
| Paul,Guershon Claude | 119379 | LDJ5 Educational Series 5 | Class |
| Carranza Rojas,Giovani | 119379 | LDJ5 Educational Series 5 | Class |
| Soto,Jennifer | 119379 | LDJ5 Educational Series 5 | Class |
| Goodasaul,Roy | 119379 | LDJ5 Educational Series 5 | Class |
| Shelton,Janice | 119379 | LDJ5 Educational Series 5 | Class |
| rickenbacker,corry | 119379 | LDJ5 Educational Series 5 | Class |

Amazon_000574

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Atigbor,john | 118815 | SGM4 Informational Session 1 | Class |
| Day,Lamont | 118815 | SGM4 Informational Session 1 | Class |
| Harry,Anastasia | 118815 | SGM4 Informational Session 1 | Class |
| Henery,Jermaine | 118815 | SGM4 Informational Session 1 | Class |
| Zeferino,Jennifer | 118815 | SGM4 Informational Session 1 | Class |
| Arellano,Johnny | 118815 | SGM4 Informational Session 1 | Class |
| OHara,Jack Riley | 118815 | SGM4 Informational Session 1 | Class |
| Jean louis,Rodney | 118815 | SGM4 Informational Session 1 | Class |
| sun,vincy | 118815 | SGM4 Informational Session 1 | Class |
| Lamb,Devona | 118815 | SGM4 Informational Session 1 | Class |
| Henriquez,Krystal J | 118815 | SGM4 Informational Session 1 | Class |
| Gutierrez,Tommy | 118815 | SGM4 Informational Session 1 | Class |
| Haynes,Issis | 118815 | SGM4 Informational Session 1 | Class |
| Hardman,Doris | 118815 | SGM4 Informational Session 1 | Class |
| Preston,Kimani | 118815 | SGM4 Informational Session 1 | Class |
| aparicio,luis Esteban | 118815 | SGM4 Informational Session 1 | Class |
| Jarrell,Phillip | 118815 | SGM4 Informational Session 1 | Class |
| Ingram,Sarah | 118815 | SGM4 Informational Session 1 | Class |
| Barrios,Eric | 118815 | SGM4 Informational Session 1 | Class |
| Rivera,Zeth | 118815 | SGM4 Informational Session 1 | Class |
| Hassan,Habib Oluwatobi | 118815 | SGM4 Informational Session 1 | Class |
| Rosado,Andy | 118815 | SGM4 Informational Session 1 | Class |
| Uddin,Mohammad | 118815 | SGM4 Informational Session 1 | Class |
| booker,dominque | 118815 | SGM4 Informational Session 1 | Class |
| deprima,Gina | 118815 | SGM4 Informational Session 1 | Class |
| Thompson,Aydan | 118815 | SGM4 Informational Session 1 | Class |
| Wheeler,Sheree | 118815 | SGM4 Informational Session 1 | Class |
| Velez,Chailum Bryant | 118815 | SGM4 Informational Session 1 | Class |
| Rodriguez,Michael | 118815 | SGM4 Informational Session 1 | Class |
| perez,jose luis | 118815 | SGM4 Informational Session 1 | Class |
| Jackson,Synia Regina | 118815 | SGM4 Informational Session 1 | Class |
| Rosado,Gabriella | 118815 | SGM4 Informational Session 1 | Class |
| degroat,Laticia | 118815 | SGM4 Informational Session 1 | Class |
| Misiti,Jacqueline | 118815 | SGM4 Informational Session 1 | Class |
| Rahman,Mohammed | 118815 | SGM4 Informational Session 1 | Class |
| Salgado,Annais | 118815 | SGM4 Informational Session 1 | Class |
| Juarez,Marileysi | 118815 | SGM4 Informational Session 1 | Class |
| Earps,Flavia S | 118815 | SGM4 Informational Session 1 | Class |
| Decker,Eric | 118815 | SGM4 Informational Session 1 | Class |
| roberts,Bruce | 118815 | SGM4 Informational Session 1 | Class |
| Davenport,Emmarald | 118815 | SGM4 Informational Session 1 | Class |
| C0RtEz,YeSeNiA | 118815 | SGM4 Informational Session 1 | Class |
| Ortiz,Hezekiah | 118815 | SGM4 Informational Session 1 | Class |
| Keane,Travis | 118815 | SGM4 Informational Session 1 | Class |
| Rodriguez,Anthony | 118815 | SGM4 Informational Session 1 | Class |
| Tobin,Christina | 118815 | SGM4 Informational Session 1 | Class |

EXHIBIT NO.GC 45 RECEIVED X REJECTED _____

CASE NO 29-CA-280153 CASE NAME Amazon.com Services

NO OF PAGES 4 DATE: 9/21/22 REPORTER: L. Abbott

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Zhen,Jay | 118815 | SGM4 Informational Session 1 | Class |
| Siebo,Ebenezer | 118815 | SGM4 Informational Session 1 | Class |
| Guzman-Ramirez,Benito | 118815 | SGM4 Informational Session 1 | Class |
| Dolganov,Nikolai | 118815 | SGM4 Informational Session 1 | Class |
| Sarutto,Christopher | 118815 | SGM4 Informational Session 1 | Class |
| Wang,Ariel | 118815 | SGM4 Informational Session 1 | Class |
| Moye,Emonica | 118815 | SGM4 Informational Session 1 | Class |
| Thompson,Tyrone Andre | 118815 | SGM4 Informational Session 1 | Class |
| page,cattaleena | 118815 | SGM4 Informational Session 1 | Class |
| Brito,Alexandra | 118815 | SGM4 Informational Session 1 | Class |
| Marchese,Angela | 118815 | SGM4 Informational Session 1 | Class |
| Phillips,Sharon | 118815 | SGM4 Informational Session 1 | Class |
| ramos,Alberto | 118815 | SGM4 Informational Session 1 | Class |
| Leno Montalvo,Paula | 118815 | SGM4 Informational Session 1 | Class |
| Lee,Chris H | 118815 | SGM4 Informational Session 1 | Class |
| Sutton,Jakari Akeem | 118815 | SGM4 Informational Session 1 | Class |
| Barnett,Leslie | 118815 | SGM4 Informational Session 1 | Class |
| Vazquez,Abraham | 118815 | SGM4 Informational Session 1 | Class |
| Khoury,Maggi | 118815 | SGM4 Informational Session 1 | Class |
| Del Rosario,Yordalis | 118815 | SGM4 Informational Session 1 | Class |
| galvin,Adam | 118815 | SGM4 Informational Session 1 | Class |
| Padmore,Kevin McAllister | 118815 | SGM4 Informational Session 1 | Class |
| eusebio garcia,liz marie | 118815 | SGM4 Informational Session 1 | Class |
| Parisien,Angelica | 118815 | SGM4 Informational Session 1 | Class |
| Santiago,Tommy | 118815 | SGM4 Informational Session 1 | Class |
| Howell,Dean | 118815 | SGM4 Informational Session 1 | Class |
| Huntley,Christian | 118815 | SGM4 Informational Session 1 | Class |
| Espinoza,Azalea | 118815 | SGM4 Informational Session 1 | Class |
| Nagbe,Kelvin | 118815 | SGM4 Informational Session 1 | Class |
| Mendez,Jose | 118815 | SGM4 Informational Session 1 | Class |
| Pacheco,Daryl | 118815 | SGM4 Informational Session 1 | Class |
| McLennan,Cyarah | 118815 | SGM4 Informational Session 1 | Class |
| Birbal jones,Marlene | 118815 | SGM4 Informational Session 1 | Class |
| GRANGER,DIONNE | 118815 | SGM4 Informational Session 1 | Class |
| Aponte,Joshua | 118815 | SGM4 Informational Session 1 | Class |
| Berry,Theresa | 118815 | SGM4 Informational Session 1 | Class |
| Sanchez,Melanie | 118815 | SGM4 Informational Session 1 | Class |
| Miranda,Miguel | 118815 | SGM4 Informational Session 1 | Class |
| Mercedes,Sergio | 118815 | SGM4 Informational Session 1 | Class |
| marino,camille | 118815 | SGM4 Informational Session 1 | Class |
| Coleman,Arthur | 118815 | SGM4 Informational Session 1 | Class |
| Cotoc-sapon,Esvin | 118815 | SGM4 Informational Session 1 | Class |
| Charles,Stephanie | 118815 | SGM4 Informational Session 1 | Class |
| Cottle,Acietta L | 118815 | SGM4 Informational Session 1 | Class |
| Lawrence,Mahni | 118815 | SGM4 Informational Session 1 | Class |
| Til,Kai A | 118815 | SGM4 Informational Session 1 | Class |

| Employee Name | Module ID | Module Name | Activity Type |
|---|---|---|---|
| Molley,Odell | 118815 | SGM4 Informational Session 1 | Class |
| Inniss,Chrishaun | 118815 | SGM4 Informational Session 1 | Class |
| Carpio,Jonathan | 118815 | SGM4 Informational Session 1 | Class |
| williams,skia | 118815 | SGM4 Informational Session 1 | Class |
| McIntyre,Mark | 118815 | SGM4 Informational Session 1 | Class |
| Nwe,Me | 118815 | SGM4 Informational Session 1 | Class |
| Brown,Robert | 118815 | SGM4 Informational Session 1 | Class |
| NewAir,Dj | 118815 | SGM4 Informational Session 1 | Class |
| Aquino,Alondra | 118815 | SGM4 Informational Session 1 | Class |
| Amuso,Joe | 118815 | SGM4 Informational Session 1 | Class |
| Waller,Jahmirah | 118815 | SGM4 Informational Session 1 | Class |
| Hussein,Ahmed | 118815 | SGM4 Informational Session 1 | Class |
| Cruz Diaz,Kevin | 118815 | SGM4 Informational Session 1 | Class |
| Wills,Jason | 118815 | SGM4 Informational Session 1 | Class |
| Velez,Brandon | 118815 | SGM4 Informational Session 1 | Class |

# DON'T BE FOOLED BY THE VEST

## Union representatives are approaching Associates wearing Amazon vests to mislead you into thinking they represent or speak for Amazon. Don't be fooled by this!

Union authorization cards are legally binding and authorize the union to act as your exclusive representative.

This means you give up the right to speak for yourself.

### Get the facts. Don't give up the right to speak for yourself.



**ASK HR OR YOUR MANAGER FOR MORE INFORMATION**

EXHIBIT NO. GC-46    RECEIVED    x    REJECTED _____

CASE NO 29-CA-280153    CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 2    DATE: 10-04-2022    REPORTER: Barrington Moxie

# PROTECT YOUR SIGNATURE!

**Know who you are talking to and what you are signing before you sign anything.**

**Make sure you do your research before you decide whether or not to sign a union authorization card.**

**Signing an authorization card may obligate you to pay the union a monthly fee.**

**Authorization cards are legally binding and mean giving up the right to speak for yourself.**



EXHIBIT NO.<u>GC-47</u>    RECEIVED <u>  x  </u> REJECTED _____

CASE NO <u>29-CA-280153</u> CASE NAME <u>Amazon.Com Svs, LLC</u>

NO OF PAGES <u>2</u> DATE: <u>10-04-2022</u> REPORTER: <u>Barrington Moxie</u>

# QUESTIONS TO ASK WHEN YOU'RE APPROACHED BY A UNION REPRESENTATIVE

As you know, union organizers are contacting employees at our facility. It is very important that you get the facts for yourself before deciding whether or not the union is a good value proposition for you and your family.

**REMEMBER:** Signing an authorization card may obligate you to pay the union a monthly fee. Authorization cards are legally binding and mean you give up the right to speak for yourself.

## QUESTIONS TO ASK:

**01** Will the union guarantee in writing that I will get a better deal from Amazon than what I have now without paying dues?

**02** Will the union guarantee in writing that I will not lose a single benefit as a result of collective bargaining negotiations?

**03** Will the union guarantee in writing that my rate of pay will never go down?

**04** Will filing a union grievance for any reason guarantee it will be settled in my favor?

**Take your time. Ask questions. Get the facts.**



EXHIBIT NO. GC-48_____ RECEIVED ___x___ REJECTED _____

CASE NO 29-CA-280153_____ CASE NAME Amazon.Com Svs, LLC_____

NO OF PAGES 2_____ DATE: 10-04-2022_____ REPORTER: Barrington Moxie_____

# Chat with "Tanelli, Mike" <tanellm@amazon.com> and...

Tanelli, Mike and Leonardi, Anna

All Parties: Leonardi, Anna  annaleon@amazon.com  ;  Tanelli, Mike  tanellm@amazon.com

---

### Monday 12 July 2021

**Leonardi, Anna <annaleon@amazon.com>**

Good Morning :)

05 16 40

**Leonardi, Anna <annaleon@amazon.com>**

Ofori is here

05:16:43

**Leonardi, Anna <annaleon@amazon.com>**

Do you think you could jump in to help with 9AM today?

05 17 01

**Tanelli, Mike <tanellm@amazon.com>**

Hey yes I can

05:17:13

**Leonardi, Anna <annaleon@amazon.com>**

ty :)

05 17 24

**Tanelli, Mike <tanellm@amazon.com>**

You got it I'm going to sync with the team at the desk then jump in

05:17:45

**Leonardi, Anna <annaleon@amazon.com>**

okk ty!

05 17 57

**Leonardi, Anna <annaleon@amazon.com>**

THank you :)

06:31:35

**Leonardi, Anna <annaleon@amazon.com>**

So VVOA was kinda rough, not terrible however

06 31 44

**Tanelli, Mike <tanellm@amazon.com>**

Also meeting with Danny to talk through new TT standard work today to roll out wednesday

06:32:02

**Leonardi, Anna <annaleon@amazon.com>**

comments came up that HR is not helpful and not at the desk. He doesn't come down on us specifically for that stuff but can you just make sure there is at least 1 person at the desk at all times

06 32 26

**Leonardi, Anna <annaleon@amazon.com>**

Oh sweet nice! ty

06 32 36

EXHIBIT NO. GC-49 RECEIVED x REJECTED _____

CASE NO 29-CA-280153 CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 7 DATE: 10-04-2022 REPORTER: Barrington Moxie

**Leonardi, Anna <annaleon@amazon.com>**

Are you feeling better?                                                06:32:40

**Tanelli, Mike <tanellm@amazon.com>**

I told the team they need to be out there at all times                 06 32 46

**Leonardi, Anna   annaleon@amazon.com**

ty!                                                                    06:32:53

**Tanelli, Mike <tanellm@amazon.com>**

I will reiterate during my 1:1s with the team this week                06:33:00

**Tanelli, Mike   tanellm@amazon.com**

And yes definitely feeling better                                      06:33:05

**Tanelli, Mike <tanellm@amazon.com>**

The Italy game was nuts yesterday so just a little tired lol were rocking though ! Need anything     06:33:40
from me today?

**Leonardi, Anna <annaleon@amazon.com>**

Hahah good I'm glad!                                                   06:39:08

**Leonardi, Anna <annaleon@amazon.com>**

Actually yes, priority is touching base with Dana                     06 39 19

**Leonardi, Anna <annaleon@amazon.com>**
                                                                       06:39:40
# Privileged

**Leonardi, Anna   annaleon@amazon.com**
                                                                       06:39:51
# Privileged

**Tanelli, Mike <tanellm@amazon.com>**

copy i will connect with him and see what we want to do - I haven't met her yet     06:40:21

**Leonardi, Anna   annaleon@amazon.com**

Hmmm ok                                                               06:41:13

**Leonardi, Anna <annaleon@amazon.com>**

I think it's best to do this ASAP, they're already asking how the convo went lol so the sooner the     06:41:24
better

**Tanelli, Mike <tanellm@amazon.com>**

copy                                                                  06:42:02

**Leonardi, Anna    annaleon@amazon.com**

# Privileged

06:42:06

**Leonardi, Anna <annaleon@amazon.com>**

Is she on site?

06:42:26

**Tanelli, Mike    tanellm@amazon.com**

I'm checking now

06:42:38

**Leonardi, Anna <annaleon@amazon.com>**

Also, I know I'm doing what I preach about not doing lol

06:42:38

**Leonardi, Anna    annaleon@amazon.com**

So I'm sorry about that. I try to do my best to save the 9-1-1 need this now type of things to a few select group of tasks hahah

06:43:04

**Tanelli, Mike <tanellm@amazon.com>**

Its all good haha I'm still in the 9am    she is onsite

06 43 36

**Leonardi, Anna <annaleon@amazon.com>**

Okk great, Felipe's office is open today so you can jump in there with her

06:45:13

**Leonardi, Anna <annaleon@amazon.com>**

I'm just prepping for this call at 10 but you can come in here to talk through it if that helps lol but you're a pro at this

06 46 03

**Tanelli, Mike <tanellm@amazon.com>**

I should be good no problem

06:46:13

**Leonardi, Anna <annaleon@amazon.com>**

Okk :)                       06:47:40

**Tanelli, Mike <tanellm@amazon.com>**

Just finished up the convo             07:37:49

**Leonardi, Anna <annaleon@amazon.com>**

oh wow                      07:41:40

**Leonardi, Anna <annaleon@amazon.com>**

went well?                    07:41:42

**Tanelli, Mike <tanellm@amazon.com>**

Ehh lol                      07:41:46

**Leonardi, Anna <annaleon@amazon.com>**

that was more quick than I thought it would be lol     07:41:58

**Tanelli, Mike <tanellm@amazon.com>**

She wants in writing why this is something she can't do - I told her I would follow up but i'm thinking just providing a copy of the solicitation policy. I told her she can't use the VOA board to invite people to sign up for a union      07:43:44

**Tanelli, Mike <tanellm@amazon.com>**

She said she will put it back up and I explained there will be additional follow up if that happens - we can talk more about it when you're free      07:44:08

**Leonardi, Anna <annaleon@amazon.com>**

Okk                      07:44:33

**Tanelli, Mike <tanellm@amazon.com>**

i had to cut the conversation because she was continuing to press      07:44:48

**Leonardi, Anna <annaleon@amazon.com>**

Let's touch base after this call, I want to hear about it      07:44:58

**Leonardi, Anna <annaleon@amazon.com>**

Also we're looking at the WBR quip rn, we cant find last weeks info      07:45:14

**Leonardi, Anna <annaleon@amazon.com>**

I have your chime but the quip is blank      07:45:26

**Tanelli, Mike <tanellm@amazon.com>**

crap - hold on i updated everything but that      07:45:43

**Leonardi, Anna <annaleon@amazon.com>**

Hi!                                                                    08:03:39

**Tanelli, Mike <tanellm@amazon.com>**

Hello                                                                   08:03:45

**Leonardi, Anna <annaleon@amazon.com>**

Are you in the office? come overrrr lol                                 08:03:45

**Leonardi, Anna <annaleon@amazon.com>**

if youre free                                                          08:03:47

**Tanelli, Mike <tanellm@amazon.com>**

Coming                                                                 08:03:49

**Leonardi, Anna <annaleon@amazon.com>**

Oh forgot to ask, can you send Jenna and I over the latest on your convo with her?          08:25:50

**Tanelli, Mike <tanellm@amazon.com>**

With Dana?                                                             08:26:03

**Tanelli, Mike <tanellm@amazon.com>**

I'm drafting it up now                                                 08:26:07

**Tanelli, Mike <tanellm@amazon.com>**

Also did want to ask how we should approach the in writing piece - I'm sure she will want more          08:26:46
than a copy of the policy so just want to best approach it

**Leonardi, Anna <annaleon@amazon.com>**

Mandi, just following up from Jenna's chime yest                       08:34:32

**Tanelli, Mike <tanellm@amazon.com>**

Got it - she reached out to me saying she wants to work Monday-Friday 9-6          08:34:55

**Leonardi, Anna <annaleon@amazon.com>**

I would tell her at this time she can access that policy on inside Amazon but there is nothing          08:34:55
additional in writing we can provide at this time

**Leonardi, Anna <annaleon@amazon.com>**

Hey                                                                    09:46:51

**Leonardi, Anna <annaleon@amazon.com>**

Are you free at 1 for golden broom by any chance?                      09:47:09

**Tanelli, Mike <tanellm@amazon.com>**

Sure I can take it                                                     09:47:19

**Leonardi, Anna   annaleon@amazon.com**

Ty!!                                                   09:47:32

**Leonardi, Anna   annaleon@amazon.com**

Hey, later on today can you take a look. this looks like it needs a reason change vs eligibility. let me know!     10:57:03

**Leonardi, Anna <annaleon@amazon.com>**

[July 12, 2021, 10:26 AM] Otchet, Erin: Good morning Anna! I know today is probably very busy, but if you can, please take a look at this TT. Last week we had an active AA give their badge to an already terminated AA to enter the building. They both spoke with me at the desk and later the active associate was terminated for violating security protocols by giving someone access to the building. The ask on this TT is to change the rehire eligibility for the terminated associate who entered the building as they were terminated for attendance & would be rehire eligible after 365 days. Please review and escalate, if possible, as they are now asking for Regional HR Manager approval.
https://t.corp.amazon.com/V393637836/overview     10 57 04

**Tanelli, Mike <tanellm@amazon.com>**

Copy I will take a look     11:04:07

**Leonardi, Anna <annaleon@amazon.com>**

Do you have the recap for Dana     12 21 37

**Leonardi, Anna <annaleon@amazon.com>**

she just posted again so I want to make sure we include that     12:22:06

**End Thread**

**Thread Statistics**

Instant Message Count: 70

# Chat with "Tanelli, Mike" <tanellm@amazon.com> and...

Tanelli, Mike and Leonardi, Anna

All Parties:  Leonardi, Anna <annaleon@amazon.com>;   Tanelli, Mike <tanellm@amazon.com>

**Monday 12 July 2021**

**Leonardi, Anna <annaleon@amazon.com>**

Good Morning :)                                                                 05:16:40

**Leonardi, Anna <annaleon@amazon.com>**

Ofori is here                                                                    05:16:43

**Leonardi, Anna <annaleon@amazon.com>**

Do you think you could jump in to help with 9AM today?                          05:17:01

**Tanelli, Mike <tanellm@amazon.com>**

Hey yes I can                                                                    05:17:13

**Leonardi, Anna <annaleon@amazon.com>**

ty :)                                                                           05:17:24

**Tanelli, Mike <tanellm@amazon.com>**

You got it I'm going to sync with the team at the desk then jump in             05:17:45

**Leonardi, Anna <annaleon@amazon.com>**

okk ty!                                                                         05:17:57

**Leonardi, Anna <annaleon@amazon.com>**

THank you :)                                                                    06:31:35

**Leonardi, Anna <annaleon@amazon.com>**

So VVOA was kinda rough, not terrible however                                   06:31:44

**Tanelli, Mike <tanellm@amazon.com>**

Also meeting with Danny to talk through new TT standard work today to roll out wednesday    06:32:02

**Leonardi, Anna <annaleon@amazon.com>**

comments came up that HR is not helpful and not at the desk. He doesn't come down on us    06:32:26
specifically for that stuff but can you just make sure there is at least 1 person at the desk at all
times

**Leonardi, Anna <annaleon@amazon.com>**

Oh sweet nice! ty                                                               06:32:36

EXHIBIT NO. GC-49(a)_____ RECEIVED _____ REJECTED _____   x

CASE NO 29-CA-280153_____ CASE NAME Amazon.Com Svs, LLC_____

NO OF PAGES 7_____ DATE: 10-04-2022_____ REPORTER: Barrington Moxie_____

**Leonardi, Anna <annaleon@amazon.com>**

Are you feeling better?                                                                                  06:32:40

**Tanelli, Mike <tanellm@amazon.com>**

I told the team they need to be out there at all times                                                   06:32:46

**Leonardi, Anna <annaleon@amazon.com>**

ty!                                                                                                      06:32:53

**Tanelli, Mike <tanellm@amazon.com>**

I will reiterate during my 1:1s with the team this week                                                  06:33:00

**Tanelli, Mike <tanellm@amazon.com>**

And yes definitely feeling better                                                                        06:33:05

**Tanelli, Mike <tanellm@amazon.com>**

The Italy game was nuts yesterday so just a little tired lol were rocking though ! Need anything         06:33:40
from me today?

**Leonardi, Anna <annaleon@amazon.com>**

Hahah good I'm glad!                                                                                     06:39:08

**Leonardi, Anna <annaleon@amazon.com>**

Actually yes, priority is touching base with Dana                                                        06:39:19

**Leonardi, Anna <annaleon@amazon.com>**

I will send you what legal sent but I think it would be best for you or Tyler to have the convo          06:39:40
about why we hid the comment

**Leonardi, Anna <annaleon@amazon.com>**

It's very direct so should be pretty straight forward                                                    06:39:51

**Tanelli, Mike <tanellm@amazon.com>**

copy i will connect with him and see what we want to do - I haven't met her yet                          06:40:21

**Leonardi, Anna <annaleon@amazon.com>**

Hmmm ok                                                                                                  06:41:13

**Leonardi, Anna <annaleon@amazon.com>**

I think it's best to do this ASAP, they're already asking how the convo went lol so the sooner the       06:41:24
better

**Tanelli, Mike <tanellm@amazon.com>**

copy                                                                                                     06:42:02

**Leonardi, Anna <annaleon@amazon.com>**

06:42:06

See below on a suggested set of talking points for the follow up with Dana.
- We wanted to connect with you regarding your July 9 post to the VOA. We noted your statement in which you said, "You're invited to come sign the petition for well-deserved holiday pay at the ALU tent."
- We support employees' right to solicit in accordance with our Amazon solicitation policy. However, we don't allow solicitation on VOA boards.  VOA is used for employees to communicate with management.  You've done that many times and we've responded many times.  But Amazon does not allow solicitation of any form (union or non-union) through VOA.
- Because of that, we are going to remove your post from the VOA.
- [Consider adding] - We also want to be clear that this is not a disciplinary meeting. You are not being disciplined for your VOA post.   We just want to reinforce the purpose of the board.
I would not debate her on whether her post was, or was not, solicitation.  Nor would I engage with her on whether posting to the VOA board is a "non-work area, non-work time" action.

**Leonardi, Anna <annaleon@amazon.com>**

06:42:26

Is she on site?

**Tanelli, Mike <tanellm@amazon.com>**

06:42:38

I'm checking now

**Leonardi, Anna <annaleon@amazon.com>**

06:42:38

Also, I know I'm doing what I preach about not doing lol

**Leonardi, Anna <annaleon@amazon.com>**

06:43:04

So I'm sorry about that. I try to do my best to save the 9-1-1 need this now type of things to a few select group of tasks hahah

**Tanelli, Mike <tanellm@amazon.com>**

06:43:36

Its all good haha I'm still in the 9am - she is onsite

**Leonardi, Anna <annaleon@amazon.com>**

06:45:13

Okk great, Felipe's office is open today so you can jump in there with her

**Leonardi, Anna <annaleon@amazon.com>**

06:46:03

I'm just prepping for this call at 10 but you can come in here to talk through it if that helps lol but you're a pro at this

**Tanelli, Mike <tanellm@amazon.com>**

06:46:13

I should be good no problem

**Leonardi, Anna <annaleon@amazon.com>**

Okk :)                             06:47:40

**Tanelli, Mike <tanellm@amazon.com>**

Just finished up the convo               07:37:49

**Leonardi, Anna <annaleon@amazon.com>**

oh wow                        07:41:40

**Leonardi, Anna <annaleon@amazon.com>**

went well?                     07:41:42

**Tanelli, Mike <tanellm@amazon.com>**

Ehh lol                       07:41:46

**Leonardi, Anna <annaleon@amazon.com>**

that was more quick than I thought it would be lol     07:41:58

**Tanelli, Mike <tanellm@amazon.com>**

She wants in writing why this is something she can't do - I told her I would follow up but i'm thinking just providing a copy of the solicitation policy. I told her she can't use the VOA board to invite people to sign up for a union     07:43:44

**Tanelli, Mike <tanellm@amazon.com>**

She said she will put it back up and I explained there will be additional follow up if that happens - we can talk more about it when you're free     07:44:08

**Leonardi, Anna <annaleon@amazon.com>**

Okk                           07:44:33

**Tanelli, Mike <tanellm@amazon.com>**

i had to cut the conversation because she was continuing to press     07:44:48

**Leonardi, Anna <annaleon@amazon.com>**

Let's touch base after this call, I want to hear about it     07:44:58

**Leonardi, Anna <annaleon@amazon.com>**

Also we're looking at the WBR quip rn, we cant find last weeks info     07:45:14

**Leonardi, Anna <annaleon@amazon.com>**

I have your chime but the quip is blank     07:45:26

**Tanelli, Mike <tanellm@amazon.com>**

crap - hold on i updated everything but that     07:45:43

**Leonardi, Anna <annaleon@amazon.com>**

Hi!                                                                                                  08:03:39

**Tanelli, Mike <tanellm@amazon.com>**

Hello                                                                                                08:03:45

**Leonardi, Anna <annaleon@amazon.com>**

Are you in the office? come overrrr lol                                                              08:03:45

**Leonardi, Anna <annaleon@amazon.com>**

if youre free                                                                                       08:03:47

**Tanelli, Mike <tanellm@amazon.com>**

Coming                                                                                              08:03:49

**Leonardi, Anna <annaleon@amazon.com>**

Oh forgot to ask, can you send Jenna and I over the latest on your convo with her?                  08:25:50

**Tanelli, Mike <tanellm@amazon.com>**

With Dana?                                                                                          08:26:03

**Tanelli, Mike <tanellm@amazon.com>**

I'm drafting it up now                                                                              08:26:07

**Tanelli, Mike <tanellm@amazon.com>**

Also did want to ask how we should approach the in writing piece - I'm sure she will want more       08:26:46
than a copy of the policy so just want to best approach it

**Leonardi, Anna <annaleon@amazon.com>**

Mandi, just following up from Jenna's chime yest                                                     08:34:32

**Tanelli, Mike <tanellm@amazon.com>**

Got it - she reached out to me saying she wants to work Monday-Friday 9-6                            08:34:55

**Leonardi, Anna <annaleon@amazon.com>**

I would tell her at this time she can access that policy on inside Amazon but there is nothing        08:34:55
additional in writing we can provide at this time

**Leonardi, Anna <annaleon@amazon.com>**

Hey                                                                                                 09:46:51

**Leonardi, Anna <annaleon@amazon.com>**

Are you free at 1 for golden broom by any chance?                                                   09:47:09

**Tanelli, Mike <tanellm@amazon.com>**

Sure I can take it                                                                                  09:47:19

**Leonardi, Anna <annaleon@amazon.com>**

Ty!!        09:47:32

**Leonardi, Anna <annaleon@amazon.com>**

Hey, later on today can you take a look. this looks like it needs a reason change vs eligibility. let me know!        10:57:03

**Leonardi, Anna <annaleon@amazon.com>**

[July 12, 2021, 10:26 AM] Otchet, Erin: Good morning Anna! I know today is probably very busy, but if you can, please take a look at this TT. Last week we had an active AA give their badge to an already terminated AA to enter the building. They both spoke with me at the desk and later the active associate was terminated for violating security protocols by giving someone access to the building. The ask on this TT is to change the rehire eligibility for the terminated associate who entered the building as they were terminated for attendance & would be rehire eligible after 365 days. Please review and escalate, if possible, as they are now asking for Regional HR Manager approval.
https://t.corp.amazon.com/V393637836/overview        10:57:04

**Tanelli, Mike <tanellm@amazon.com>**

Copy I will take a look        11:04:07

**Leonardi, Anna <annaleon@amazon.com>**

Do you have the recap for Dana        12:21:37

**Leonardi, Anna <annaleon@amazon.com>**

she just posted again so I want to make sure we include that        12:22:06

**End Thread**

**Thread Statistics**

Instant Message Count: 70

**From:** notifications@my-voice.operations.a2z.com [notifications@my-voice.operations.a2z.com]
**Sent:** 7/13/2021 8:49:54 AM
**Subject:** JFK8 - New MyVoice Comment is waiting for your response

Hello!
There is a new comment on the JFK8 MyVoice VOA board:

Comment dated: Tue Jul 13 2021 15:49:54 GMT+0000 (Coordinated Universal Time)

**"Felipe, I was disappointed to hear leadership's response to the petition for Juneteenth recognition, which was a refusal on your part to even advocate for what the workers want. But you all crossed the line by banning Dana Miller from posting about the it on the VOA board. It's unacceptable and disgusting for you to silence a black woman for speaking about the importance of Juneteenth. 1/"**

To reply, visit the MyVoice Board

Thanks!
The MyVoice Team

*You are receiving this email because you are subscribed to receive MyVoice notifications. If you do not wish to receive these emails you can disable email notifications by going to the MyVoice user options page and disabling notifications.*



Amazon_002191

EXHIBIT NO. <u>GC-50</u>         RECEIVED <u>    x    </u> REJECTED <u>         </u>

CASE NO <u>29-CA-280153</u>         CASE NAME <u>Amazon.Com Svs, LLC</u>

NO OF PAGES <u>   2   </u> DATE: <u>10-04-2022</u> REPORTER: <u>Barrington Moxie</u>

# Chat with "Weishalla, Traci" <weishall@amazon.com> a...

JFK8 Leaders

Earliest item: 2021-07-09 06:55:38
Latest item: 2021-07-09 17:57:32

All Parties: Leonardi, Anna <annaleon@amazon.com>; Edwards, Jenna <prenjenn@amazon.com>; Santos, Felipe <sanfelip@amazon.com>; Marc, Zachary <zachmarc@amazon.com>; Weishalla, Traci <weishall@amazon.com>; Grabowski, Tyler <grabtyle@amazon.com>; Viswanath, Neha <nehavisw@amazon.com>

### Friday 09 July 2021

**Marc, Zachary <zachmarc@amazon.com>**

<@57d2f05f-2023-4ce1-8673-e8d42df65eac|Edwards, Jenna> <@84f3601e-f8d3-4848-9f63-cdca7265a759|Leonardi, Anna> happy OLR!

06:55:38

**Marc, Zachary <zachmarc@amazon.com>**

can you guys just brainstorm what if anything we want to do regarding ledjon. we are slotting the PA bench during sr sync today and he is on the inclined list

06:58:11

**Leonardi, Anna <annaleon@amazon.com>**

Do we feel we'll fill every opening we have with other candidates?

07:43:43

**Marc, Zachary <zachmarc@amazon.com>**

i think we may have more openings than bench

07:45:47

**Marc, Zachary <zachmarc@amazon.com>**

plus we will want to try and do seasonals again this quarter so will most likely end up having another pod

07:46:01

**Edwards, Jenna <prenjenn@amazon.com>**

yea I think we need to make a decision on him. There is risk to slotting him based on his comments and tone on the VOA board

07:51:28

**Marc, Zachary <zachmarc@amazon.com>**

do we just communicate that to him?

07:58:41

**Leonardi, Anna <annaleon@amazon.com>**

can we put him somewhere that doesnt lead people

07:58:46

**Leonardi, Anna <annaleon@amazon.com>**

lol I know that's not the norm or need

07:58:57

**Edwards, Jenna <prenjenn@amazon.com>**

lol Anna

07:59:08

**Leonardi, Anna <annaleon@amazon.com>**

07:59:30

EXHIBIT NO.___GC-51_____ RECEIVED ___x____ REJECTED _____

CASE NO ___29-CA-280153_____ CASE NAME ___Amazon.Com Svs, LLC_____

NO OF PAGES ___8_____ DATE: ___10-04-2022_____ REPORTER: ___Barrington Moxie_____

hahhaa i mean ive seen seasonal PA's like do other things

**Leonardi, Anna <annaleon@amazon.com>**

can we make him a seasonal instead                                                    07:59:35

**Leonardi, Anna <annaleon@amazon.com>**

i just dk how you avoid not taking him and then hiring more                          07:59:47

**Marc, Zachary <zachmarc@amazon.com>**

yeah that will be tough but i will have a convo with him on tone and expectations if he wants to    08:04:24
be a leader and let u guys know how it goes

**Edwards, Jenna <prenjenn@amazon.com>**

thanks Zach keep us posted                                                            08:30:13

**Leonardi, Anna <annaleon@amazon.com>**

👍                                                                                     08:35:01

**Marc, Zachary <zachmarc@amazon.com>**

just spoke to Ledjon                                                                  09:26:51

**Marc, Zachary <zachmarc@amazon.com>**

i think we should slot him                                                            09:26:56

**Marc, Zachary <zachmarc@amazon.com>**

<@all|All Members> are we having the 1:30 meeting still today do you know?           09:28:58

**Edwards, Jenna <prenjenn@amazon.com>**

yes we are                                                                            09:43:15

**Edwards, Jenna <prenjenn@amazon.com>**

Tyler, Elliott and Keith prepared. I already spoke to them this morning              09:43:27

**Edwards, Jenna <prenjenn@amazon.com>**

Topics are convo/tweet from yesterday, Parade and cell phone policy..and anything else Tyler has    09:43:55
to add

**Marc, Zachary <zachmarc@amazon.com>**

cool                                                                                  10:13:08

**Marc, Zachary <zachmarc@amazon.com>**

<@all|All Members> anything you have for sr sync?                                    12:26:13

**Edwards, Jenna <prenjenn@amazon.com>**

just the slotting. Juan is going to come if you are good with that?                  12:26:34

**Marc, Zachary <zachmarc@amazon.com>**

yep                                                                                                        12:27:17

**Marc, Zachary <zachmarc@amazon.com>**

my agenda is:                                                                                              12:27:57
FLS adjusting needed for 5 people who are Q3 beyond the people we just promoted VET audit
PA Slotting  Nighthawk Frank weekend POC confirmation

**Edwards, Jenna <prenjenn@amazon.com>**

Are you doing at 4pm or 430p?                                                                             12:28:44

**Marc, Zachary <zachmarc@amazon.com>**

4:30                                                                                                      13:25:56

**Marc, Zachary <zachmarc@amazon.com>**

also i just got this message from an AA                                                                  13:26:02

**Marc, Zachary <zachmarc@amazon.com>**

[July 9, 2021, 3:35 PM] Balan, Sadia: Hi Marc, I currently work the RT shift as a reactive tracker       13:26:03
I have 2 stores in Staten Island
a deli and a grocery. The grocery caters fresh meat and spices and in 2 weeks we will open a
kitchen that serves Indian food.
The deli -  Smiley's bagel 1970 Victory Blvd Staten Island  Grocery- Island Grocery
1791 Victory Blvd  Staten Island
I would like to offer a 5% discount to amazon employees and I'm asking for your help to
promote it. Thank You.

**Marc, Zachary <zachmarc@amazon.com>**

I plan to say:                                                                                           13:29:22
Hi Sadia, thank you for sharing that with me and congrats on expanding your grocery business!
Unfortunately, due to our solicitation policy, promotion of one particular associate's business is
not allowed and would not be fair of me to promote. With that being said however, we did just
partner with a group called Fooda who in turn partners with local food vendors and businesses
to provide meal options here on site. I can recommend you reach out via this link to try and
become a member https://www.fooda.com/restaurant-partners

**Leonardi, Anna <annaleon@amazon.com>**

that looks good to me                                                                                   13:31:08

**Marc, Zachary <zachmarc@amazon.com>**

cool                                                                                                    13:31:14

**Marc, Zachary <zachmarc@amazon.com>**

hey you guys are probably tracking  <@all|All Members>                                                   13:46:29

**Marc, Zachary <zachmarc@amazon.com>**

 image.png     13:46:35



**Leonardi, Anna <annaleon@amazon.com>**

Yes     13:47:33

**Edwards, Jenna <prenjenn@amazon.com>**

Yea we are discussing the draft now     13:48:43

**Marc, Zachary <zachmarc@amazon.com>**

copy     13:50:02

**Leonardi, Anna <annaleon@amazon.com>**

PS I will answer the positive comment as soon as we get the go ahead on the other comment     15:29:57

**Marc, Zachary <zachmarc@amazon.com>**

yeah i figured, haha I caught Frank responding to the positive one and I told him to stop     15:31:01

**Leonardi, Anna <annaleon@amazon.com>**

lol oh good     15:32:22

**Edwards, Jenna <prenjenn@amazon.com>**

I'm shocked Stephanie is suggesting to remove a VOA comment but I am aligned 100%     17:16:32

**Marc, Zachary <zachmarc@amazon.com>**

yeah awesome     17:17:19

**Edwards, Jenna <prenjenn@amazon.com>**

It is not asking any type of question and instead antagonizing and trying to rally a group of people. We should not stand for that

17:17:39

**Marc, Zachary <zachmarc@amazon.com>**

agreed, its definitely not appropriate for VOA and probably violates solicitcation policy

17:18:22

**Marc, Zachary <zachmarc@amazon.com>**

next comment from random AA will be "please come see me if you want to buy my ____" or support my business etc

17:18:47

**Leonardi, Anna <annaleon@amazon.com>**

Yeahh. After reading the user guide too it def falls under that category

17:18:50

**Leonardi, Anna <annaleon@amazon.com>**

Hahaha Zach didn't you basically already get that today

17:19:09

**Marc, Zachary <zachmarc@amazon.com>**

lol yes

17:19:15

**Marc, Zachary <zachmarc@amazon.com>**

also ledjon just viewed my linkedin profile and sent me a request to connect.....

17:19:29

**Marc, Zachary <zachmarc@amazon.com>**

he must have seen the crains article ;)

17:19:54

**Leonardi, Anna <annaleon@amazon.com>**

HAHAH

17:20:42

**Leonardi, Anna <annaleon@amazon.com>**

You guys haven't deleted a post in the past right? Like i have no experience doing that or insight to provide but didn't want to sound not helpful if y'all had

17:21:38

**Marc, Zachary <zachmarc@amazon.com>**

i vaguely remember having to delete one back when colvin was here but idk weve spoken about it but i cant remember for sure if we ever deleted

17:22:19

**Edwards, Jenna <prenjenn@amazon.com>**

lol Zach get over yourself

17:37:46

**Edwards, Jenna <prenjenn@amazon.com>**

I don't think we ever did. I thought we asked derrik a few weeks back and he said no

17:38:04

**Leonardi, Anna <annaleon@amazon.com>**

Okk

17:43:39

OKK

**Edwards, Jenna <prenjenn@amazon.com>**

I can ask him again but prob won't respond lol

17:44:09

**Marc, Zachary <zachmarc@amazon.com>**

i told Sai Ofori was coming

17:51:23

**Marc, Zachary <zachmarc@amazon.com>**

hes definitely freaking out now lol

17:51:31

**Edwards, Jenna <prenjenn@amazon.com>**

ok I am shocked they did not know...

17:51:38

**Marc, Zachary <zachmarc@amazon.com>**

i dont think Ofori told anybody

17:51:45

**Marc, Zachary <zachmarc@amazon.com>**

Rob Joseph did not mention it on the call today or in email

17:51:54

**Edwards, Jenna <prenjenn@amazon.com>**

That's not how it should go. He shouldn't casually mention to a bp

17:52:00

**Marc, Zachary <zachmarc@amazon.com>**

lol give him that feedback

17:52:14

**Marc, Zachary <zachmarc@amazon.com>**

i honestly think its kind of nice, i hate catering to the higher ups. I dont want to be that VP that makes a team put together a tour route and presentation and roll out the red carpet id wanna see the building in its true form

17:53:13

**Edwards, Jenna <prenjenn@amazon.com>**

yea I get that but we also don't have that surprise gotcha culture which is good. Not that I think that's what this is

17:56:53

**Edwards, Jenna <prenjenn@amazon.com>**

Ofori is cool

17:56:59

**Edwards, Jenna <prenjenn@amazon.com>**

And wants to help

17:57:07

**Marc, Zachary <zachmarc@amazon.com>**

yeah i dont think hell play the gotcha game

17:57:12

**Marc, Zachary <zachmarc@amazon.com>**

Derrik will be that VP lol

17:57:22

Derrik will be that VP to.

**Marc, Zachary <zachmarc@amazon.com>**    17:57:32

but Derrik is in the trenches with us a lot too so i dont mind

**End Thread**

**Thread Statistics**

Instant Message Count: 73

# GENERAL COUNSEL
# EXHIBIT GC-52

**(All MP3, MP4, M4A and Excel Exhibits are Located on
a Master USB (when Mailed) and E-Filed Individually)**

EXHIBIT NO.`GC-52`_____ RECEIVED ____`x`____ REJECTED _____

CASE NO `29-CA-280153`_____ CASE NAME `Amazon.Com Svs, LLC`_____

NO OF PAGES `2`_____ DATE: `10-04-2022`_____ REPORTER: `Barrington Moxie`_____

FORM NLRB-31

# SUBPOENA DUCES TECUM

### UNITED STATES OF AMERICA
### NATIONAL LABOR RELATIONS BOARD

To     Custodian of Records     Amazon.com Services LLC.

546 Gulf Avenue     Staten Island, New York 10314

As requested by     Emily Cabrera, Counsel for General Counsel

whose address is     Two Metro Tech Center, Suite 5100, Brooklyn, NY 11201-3838
                                        (Street)                                    (City)                              (State)          (ZIP)

YOU ARE HEREBY REQUIRED AND DIRECTED TO APPEAR BEFORE     an Administrative Law Judge

_____ of the National Labor Relations Board
     by Zoom video conference or at a hearing room located at Region 29 of the NLRB, Two MetroTech
     Center, 5th Floor, Brooklyn, New York – the manner and location of the hearing to be determined and
     ordered by the Administrative Law Judge

in the City of     Brooklyn, NY

on     Monday, September 19, 2022                                    at     10:00 AM               or any adjourned

or rescheduled date to testify in     Amazon.com Services, Inc.  29-CA-280153, 29-CA-286577, 29-CA-287614,
                                                                 29-CA-292392, 29-CA-295663, 29-CA-290880,
                                                                 (Case Name and Number)
     And you are hereby required to bring with you and produce at said time and place the following books, records,
correspondence, and documents:

### SEE ATTACHMENT

If you do not intend to comply with the subpoena, within 5 days (excluding intermediate Saturdays, Sundays, and holidays) after the date the subpoena is received, you must petition in writing to revoke the subpoena. Unless filed through the Board's E-Filing system, the petition to revoke must be received on or before the official closing time of the receiving office on the last day for filing. If filed through the Board's E-Filing system, it may be filed up to 11:59 pm in the local time zone of the receiving office on the last day for filing. Prior to a hearing, the petition to revoke should be filed with the Regional Director; during a hearing, it should be filed with the Hearing Officer or Administrative Law Judge conducting the hearing. See Board's Rules and Regulations, 29 C.F.R. Section 102.31(b) (unfair labor practice proceedings) and/or 29 C.F.R. Section 102.66(c) (representation proceedings) and 29 C.F.R Section 102.111(a)(1) and 102.111(b)(3) (time computation). Failure to follow these rules may result in the loss of any ability to raise objections to the subpoena in court.

**B-1-1GUT50P**

Under the seal of the National Labor Relations Board, and by direction of the Board, this Subpoena is

Issued at     Brooklyn, NY

Dated:     August 26, 2022

*Lauren McFerran*

**Lauren McFerran, Chairman**

**NOTICE TO WITNESS.** Witness fees for attendance, subsistence, and mileage under this subpoena are payable by the party at whose request the witness is subpoenaed. A witness appearing at the request of the General Counsel of the National Labor Relations Board shall submit this subpoena with the voucher when claiming reimbursement.

### PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is mandatory in that failure to supply the information may cause the NLRB to seek enforcement of the subpoena in federal court.

EXHIBIT NO. GC-53  RECEIVED  x  REJECTED _____

CASE NO 29-CA-280153  CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 12  DATE: 10-04-2022  REPORTER: Barrington Moxie

**Case 29-CA-280153**

**B-1-1GUT50P**

## RETURN OF SERVICE

I certify that, being a person over 18 years of age, I duly served a copy of this subpoena

☐ by person

☐ by certified mail

☐ by registered mail

☐ by private delivery service

☐ by any other means of service authorized by law, specifically

**(Check method used.)**

☐ by leaving copy at principal office or place of business at

_____

_____

on the named person on

_____

(Month, day, and year)

_____

(Name of person making service)

_____

(Official title, if any)

## CERTIFICATION OF SERVICE

I certify that named person was in attendance as a witness at

on _____

(Month, day or days, and year)

_____

(Name of person certifying)

_____

(Official title)

# ATTACHMENT

# DEFINITIONS AND INSTRUCTIONS

a. "**Document**" means any existing printed, typewritten or otherwise recorded material of whatever character, records stored on computer or electronically, records kept on microfiche or written by hand or produced by hand and graphic material, including without limitation, checks, cancelled checks, computer hard drives, discs and/or files and all data contained therein, computer printouts, E-mail communications and records, any marginal or "post-it" or "sticky pad" comments appearing on or with documents, licenses, files, letters, facsimile transmissions, memoranda, telegrams, minutes, notes, contracts, agreements, transcripts, diaries, appointment books, reports, records, payroll records, books, lists, logs, worksheets, ledgers, summaries of records of telephone conversations, summaries of records of personal conversations, interviews, meetings, accountants' or bookkeepers' work papers, records of meetings or conference reports, drafts, work papers, calendars, interoffice communications, financial statements, inventories, news reports, periodicals, press releases, graphs, charts, advertisements, statements, affidavits, photographs, negatives, slides, disks, reels, microfilm, audio or video tapes and any duplicate copies of any such material in the possession of, control of, or available to the subpoenaed party, or any agent, representative or other person acting in cooperation with, in concert with or on behalf of the subpoenaed party.

b. "Respondent" means Amazon.com Services Inc.

c. "The Union" means the Amazon Labor Union.

d. "JFK8" means Respondent's facility located at 546 Gulf Avenue, Staten Island, NY. "LDJ5" means Respondent's facility located at 526 Gulf Avenue, Staten Island, NY

e. "Person" or "persons" means natural persons, corporations, limited liability companies, partnerships, sole proprietorships, associations, organizations, trusts, joint ventures, groups of natural persons or other organizations, or any other kind of entity.

f. "Period covered by this subpoena" means the period from January 1, 2021, through the present and the subpoena seeks only documents from that period unless another period is specified. This subpoena request is continuing in character and if additional responsive documents come to your attention after the date of production, such documents must be promptly produced.

g. Any copies of documents that are different in any way from the original, such as by interlineation, receipt stamp, notation, or indication of copies sent or received, are considered original documents and must be produced separately from the originals.

h. If any document covered by this subpoena contains codes or classifications, all documents explaining or defining the codes or classifications used in the document must also be produced.

i. Electronically stored information should be produced in the form or forms in which it is ordinarily maintained or in a reasonably usable form or forms. **Documents produced pursuant to this Subpoena must be produced in electronic format to the extent that the**

**Charged Party maintains those records electronically. ESI responsive to this Subpoena may not be produced in hard copy / paper form.** Only those documents which the Charged Party does not maintain electronically should be re-printed or photocopied for production.

j. Execution of this Subpoena requires a reasonable search of the ESI of all individuals ("custodians") who are most likely to possess information covered by the Subpoena. For all searches of ESI, records should be maintained documenting each "custodian" whose ESI was searched and all hardware and software systems searched. Records should also include who was responsible for the search and the search methodology used including, but not limited to, search terms and software tools.

k. This Subpoena contemplates production of responsive documents in their entirety, without abbreviation or expurgation.

l. This Subpoena seeks production of all documents described, including all drafts and non-identical or distribution copies.

m. All documents produced pursuant to this Subpoena are to be organized according to the Subpoena paragraph to which the document(s) are responsive. Labels referring to that Subpoena paragraph are to be affixed to each document or set of documents.

n. This Subpoena applies to documents in your possession, custody, or control as well as your present or former agents, attorneys, accountants, advisors, investigators, and any other persons or companies directly or indirectly employed by or connected with the Charged Party. You are required to conduct a reasonable and diligent search for all requested evidence within your possession, custody or control and to affirmatively advise Counsel for the General Counsel if no responsive evidence exists.

o. If a claim of privilege is made as to any document which is the subject of this Subpoena, a claim of privilege must be expressly made and you must describe the nature of the withheld document, communication, or tangible thing in a manner that, without revealing information itself privileged or protected, will enable an assessment of the claim to be made. Therefore, if any document responsive to any request made herein is withheld from production on the asserted ground that it is privileged, identify and describe:

> 1) the author;
> 2) the recipient;
> 3) the name of each person to whom the original or a copy was sent;
> 4) the date of the original document; and
> 5) the subject matter of the document.

p. As to any documents not produced in compliance with this Subpoena on any ground or if any document requested was, through inadvertence or otherwise, destroyed or is no longer in your possession, please state:

> 1) the author;
> 2) the recipient;
> 3) the name of each person to whom the original or a copy was sent;

       4)  the date of the document;

       5)  the subject matter of the document; and

       6)  the circumstances under which the document was destroyed, withheld or is no longer in your possession.

q.  This request is continuing in character and if additional responsive documents come to your attention following the date of production, such documents must be promptly produced.

r.  The custodian of records of the subpoenaed entity shall be one or more designated agents of the Charged Party with knowledge concerning the documents to be produced.

s.  All documents produced pursuant to this subpoena should be presented as they are kept in the usual course of business or organized by the subpoena paragraph to which the document or set of documents is responsive.

t.  This subpoena applies to documents in your possession, custody, or control.

u.  If a claim of privilege is made as to any document which is the subject of this subpoena, a claim of privilege must be expressly made and you must describe the nature of the withheld document, communication, or tangible thing in a manner that, without revealing information itself privileged or protected, will enable an assessment of the claim to be made.

v.  Unless otherwise stated, this subpoena does not supersede, revoke or cancel any other subpoena(s) previously issued in this proceeding.

**DOCUMENTS TO BE PRODUCED**

**Case Nos. 29-CA-280153, 29-CA-286577, 29-CA-287614,
29-CA-290880, 29-CA-292392, 29-CA-295663**

1.     Documents, including electronically stored information, that will show all employees' Voice of the Associates ("VOA") posts at JFK8 for the period May 1, 2021, through July 15, 2021.

2.     Documents, including electronically stored information, that will show Respondent's responses to employees' VOA posts at JFK8 for the period May 1, 2021, through July 15, 2021.

3.     Documents, including letters, memoranda, written and electronic communications (including text messages from personal cell phones, "Chime," Microsoft Teams, or any other messaging platform and emails) that will show Respondent's direction to employees, including Dana Miller, to remove any VOA post for the period May 1, 2021, through July 15, 2021.

4.     Documents, including letters, memoranda, written and electronic communications (including text messages from personal cell phones, "Chime," Microsoft Teams, or any other messaging platform and emails) that will show Respondent's revocation of employees', including Dana Miller's, authority to post on the VOA board.

5.     Documents, including letters, memoranda, written and electronic communications (including text messages from personal cell phones, "Chime," Microsoft Teams, or any other messaging platform and emails) by, between, or among Respondent's supervisors, managers, and/or representatives showing:

      a.     Deliberations regarding whether to revoke Dana Miller's VOA posting authority;

      b.     Factors relied upon in determining whether to revoke Dana Miller's VOA posting authority; and

      c.     The identity of the individuals participated in any such deliberations or determinations.

6.     Documents, including but not limited to letters, memoranda, written and electronic communication (including text messages from personal cell phones, "Chime," Microsoft Teams, or any other messaging platform and emails), meeting notes, notes memorializing conversations and reports concerning or mentioning Dana Miller's Juneteenth post, by and between Respondent's supervisors, managers, officers and/or representatives, including, but not limited to:

      a.     Mike Tanelli

      b.     Christine Hernandez

      c.     Jenna Edwards

      d.     Anna Leonardi

     e.     Amanda Holder
     f.     Juan Alvarez
     g.     Tyler Grabowski
     h.     Stephanie Wu
     i.     Elliot Jones

7.     Written and electronic documents, including electronically stored information, that will show all notices posted at JFK8 on the "Green Mile," in bathroom stalls, in breakroom table toppers, on video screens, and/or any other place where Respondent posts notices to employees, for the period May 1, 2021, through May 31, 2021, that mention:

     a.     the Amazon Labor Union;
     b.     "ALU;"
     c.     union authorization cards;
     d.     or unions in general.

8.     Written and electronic documents, including electronically stored information, that will show all messages sent to employees at JFK8 from any platform, including the Amazon "A to Z" app, "Chime," or email, for the period May 1, 2021, through May 31, 2021, that mention:

     a.     the Amazon Labor Union;
     b.     "ALU;"
     c.     union authorization cards;
     d.     or unions in general.

9.     Written and electronic documents showing the name, employer and title of any individuals who led or facilitated a meeting on November 10, 2021 at Respondent's JFK8 facility during which unions in general, the ALU and/or signing union authorization cards was mentioned and/or discussed.

10.     Photographs showing the face of each of the individuals identified in Paragraph 9.

11.     Written and electronic communications, including letters, memoranda, text messages from personal cell phones, "Chime," Microsoft Teams, or any other messaging platform and emails, between and among Respondent officials, managers and/or supervisors and/or each individual identified in Paragraph 9 regarding, mentioning or discussing:

     a.     The purpose of the November 10, 2021, meetings with employees, and/or

     b.     the role of the individuals identified in Paragraph 9, related to the November 10, 2021 meetings.

12.     Written and electronic documents showing, mentioning, discussing and/or documenting employee attendance at employee meetings conducted by Respondent during which unions in general, the ALU, signing union authorization cards, paying union dues, and/or representation elections was mentioned and/or discussed, held on the following dates at the corresponding Respondent facility:

|   | a. | November 10, 2021 | JFK8 |
|---|----|-------------------|------|
|   | b. | November 11, 2021 | JFK8 |
|   | c. | February 16, 2022 | JFK8 |
|   | d. | March 15, 2022    | JFK8 |
|   | e. | April 10, 2022    | LDJ5 |
|   | f. | April 18, 2022    | LDJ5 |
|   | g. | April 19, 2022    | LDJ5 |

13.     Written and electronic documents, including, but not limited to, recordings, scripts, outlines, talking points, notes, and/or instructions including those contained in emails, text messages, other messaging platforms showing the content or the anticipated content of employee meetings discussing unions in general, the ALU, signing union authorization cards, paying union dues, and/or representation elections, held on the following dates at the corresponding Respondent facility:

|   | a. | November 10, 2021 | JFK8 |
|---|----|-------------------|------|
|   | b. | November 11, 2021 | JFK8 |
|   | c. | February 16, 2022 | JFK8 |
|   | d. | March 15, 2022    | JFK8 |
|   | e. | April 10, 2022    | LDJ5 |
|   | f. | April 18, 2022    | LDJ5 |
|   | g. | April 19, 2022    | LDJ5 |

14.     All slide shows, power point presentations, or other visual aids used during employee meetings conducted by Respondent during which unions in general, the ALU, signing union authorization cards, paying union dues, and/or representation elections was mentioned and/or discussed, held on the following dates at the corresponding Respondent facility:

|   | a. | November 10, 2021 | JFK8 |
|---|----|-------------------|------|
|   | b. | November 11, 2021 | JFK8 |
|   | c. | February 16, 2022 | JFK8 |

|   |                   |       |
|---|-------------------|-------|
| d. | March 15, 2022   | JFK8  |
| e. | April 10, 2022   | LDJ5  |
| f. | April 18, 2022   | LDJ5  |
| g. | April 19, 2022   | LDJ5  |

15.     Written and electronic documents, including letters, memoranda, text messages from personal cell phones, "Chime," Microsoft Teams, or any other messaging platform and emails between and among Respondent officers, managers, supervisors, facilitators representatives and agents regarding employee attendance including which employees would be directed and/or invited to attend meetings conducted by Respondent during which unions in general, the ALU, signing union authorization cards, paying union dues, and/or representation elections was mentioned and/or discussed, held on the following dates at the corresponding Respondent facility:

|   |                     |       |
|---|---------------------|-------|
| a. | November 10, 2021  | JFK8  |
| b. | November 11, 2021  | JFK8  |
| c. | February 16, 2022  | JFK8  |
| d. | March 15, 2022     | JFK8  |
| e. | April 10, 2022     | LDJ5  |
| f. | April 18, 2022     | LDJ5  |
| g. | April 19, 2022     | LDJ5  |

16.     Written and electronic communications, including letters, memoranda, text messages from personal cell phones, "Chime," Microsoft Teams, or any other messaging platform and emails between and among Respondent officers, managers, supervisors, facilitators representatives and agents showing, discussing or mentioning guidelines or instructions to Respondent managers and/or supervisors when directing or inviting employees to attend meetings conducted by Respondent, discussing unions in general, the ALU, signing union authorization cards, paying union dues, and/or representation elections held on the following dates at the corresponding Respondent facility:

|   |                      |       |
|---|----------------------|-------|
| a. | November 10, 2021;  | JFK8  |
| b. | November 11, 2021;  | JFK8  |
| c. | February 16, 2022;  | JFK8  |
| d. | March 15, 2022.     | JFK8  |

| | | |
|---|---|---|
| e. | April 10, 2022 | LDJ5 |
| f. | April 18, 2022 | LDJ5 |
| g. | April 19, 2022 | LDJ5 |

17.     Written and electronic communications, including letters, memoranda, text messages from personal cell phones, "Chime," Microsoft Teams, or any other messaging platform and emails by and between Respondent officers, managers, supervisors, facilitators, representatives and/or agents and employees, directing employees to attend meetings conducted by Respondent, discussing unions in general, the ALU, signing union authorization cards, paying union dues, and/or representation elections, held on the following dates at the corresponding Respondent facility:

| | | |
|---|---|---|
| a. | November 10, 2021; | JFK8 |
| b. | November 11, 2021; | JFK8 |
| c. | February 16, 2022; | JFK8 |
| d. | March 15, 2022. | JFK8 |
| e. | April 10, 2022 | LDJ5 |
| f. | April 18, 2022 | LDJ5 |
| g. | April 19, 2022 | LDJ5 |

18.     Such written, electronic and electronically stored records collected and/or maintained by Respondent showing employee attendance at all meetings conducted by Respondent at its JFK8 and LDJ5 facilities discussing unions in general, the ALU, signing union authorization cards, paying union dues and/or representation elections including the name of the employee and the dates and times of the meeting(s) they attended.

19.     Such written, electronic and electronically stored records collected and/or maintained by Respondent showing which employees, if any, failed to attend meetings conducted by Respondent at its JFK8 and LDJ5 facilities discussing unions in general, the ALU, signing union authorization cards, paying union dues and/or representation elections that they were directed or invited to attend, including the employee's name, as well as the date and time of the meeting.

20.     Written and electronic documents, including letters, memoranda, text messages from personal cell phones, "Chime," Microsoft Teams, or any other messaging platform and emails between and among Respondent officers, managers, supervisors, facilitators representatives and agents regarding employees who failed to attend meetings conducted by Respondent during which unions in general, the ALU, signing union authorization cards, paying union dues, and/or

representation elections was mentioned and/or discussed, as well as documents reflecting what, if any, action was taken in response to such failure to attend.

# Chat with "Leonardi, Anna" <annaleon@amazon.com> ...
No Bradley/Derrik

All Parties:  Diamond, Jamie <lazarie@amazon.com>;   Hernandez, Christine <hrnanch@amazon.com>;
Brumfield, Savannah <brumfis@amazon.com>;   Baquero, Lina <linabaqu@amazon.com>;
Edwards, Chad <chdedwa@amazon.com>;   Kidder, Emily <ekkidder@amazon.com>;
Malheiro, Joe <jmalheir@amazon.com>;   Van Ermen, Caitlin <ermenc@amazon.com>;
Edwards, Jenna <prenjenn@amazon.com>;   Assetto, Michael <sstmc@amazon.com>;

---

### Monday 12 July 2021

**Hernandez, Christine <hrnanch@amazon.com>**

Hello Team :)                                                                                                      13:01:51

**Hernandez, Christine <hrnanch@amazon.com>**

QQ - Have any you experienced or know of a situation where AAs were soliciting on the VOA    13:02:48
and we shut down their access to the VOA?

**Hernandez, Christine <hrnanch@amazon.com>**

It does not need to be union related soliciting but anything. Charities, community events, etc...    13:03:33

**Twitty, LaShanta <twittylt@amazon.com>**

nothing at lga9                                                                                                    13:43:53

**Diamond, Jamie <lazarie@amazon.com>**

<@4f6783aa-f51b-4b78-a4a1-e0ad7aa020d9|Hernandez, Christine> i have not had that either    13:45:26

**Geist, Jen <jengeist@amazon.com>**

Not even a VOA in MTN1 yet                                                                                         13:45:30

**Diamond, Jamie <lazarie@amazon.com>**

haha lucky <@904eb085-79e0-45c9-a045-ec1007b69ea7|Geist, Jen>                                13:47:40

**Hernandez, Christine <hrnanch@amazon.com>**

lucky lol                                                                                                         13:48:24

**Hernandez, Christine <hrnanch@amazon.com>**

<@c8eb193e-0b82-4c35-8ae3-4f6f1905084b|Brumfield, Savannah> <@d7099949-786f-465c-    13:49:16
a86f-7f4011f8ca0a|Malheiro, Joe> <@31729e50-1354-4ef1-8e59-da93de277219|Van Ermen,
Caitlin> Anything from your experience?

**Twitty, LaShanta <twittylt@amazon.com>**

/md In reply to message: >Not even a VOA in MTN1 yet                                                 13:50:17
we will be checking in 30-days after you open....LOL

EXHIBIT NO. GC-54 RECEIVED x REJECTED _____

CASE NO 29-CA-280153 CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 3 DATE: 10-04-2022 REPORTER: Barrington Moxie

**Malheiro, Joe <jmalheir@amazon.com>**

I don't have any experience with that.   I've got several other unique experiences, but not that.  I wasn't aware that you could shut down access.

13:51:34

**Geist, Jen <jengeist@amazon.com>**

/md In reply to message: > >>Not even a VOA in MTN1 yet >
>we will be checking in 30-days after you open....LOL
Haha, that's fair. I think I'll need the check in ;)

13:51:59

**Hernandez, Christine <hrnanch@amazon.com>**

/md In reply to message:
>I don't have any experience with that.   I've got several other unique experiences, but not that.
I wasn't aware that you could shut down access.
Thanks <@d7099949-786f-465c-a86f-7f4011f8ca0a|Malheiro, Joe> I don't think  the site can but the VOA team has access to do a lot of things we can't.

13:54:10

**Brumfield, Savannah <brumfis@amazon.com>**

I haven't ever had that one

13:54:16

**Hernandez, Christine <hrnanch@amazon.com>**

Thanks everyone!!! This helps <@84f3601e-f8d3-4848-9f63-cdca7265a759|Leonardi, Anna> and my case a little bit today :)

13:54:52

**Van Ermen, Caitlin <ermenc@amazon.com>**

Havent heard of that situation before

14:10:17

**Leonardi, Anna <annaleon@amazon.com>**

:) Thank you all! It's always Day 1 haha

14:22:01

**Hernandez, Christine <hrnanch@amazon.com>**

LOL

14:24:46

**Diamond, Jamie <lazarie@amazon.com>**

let us know if you find out anything different : )

14:25:23

**End Thread**

**Thread Statistics**

Instant Message Count: 19

# Chat with "Hernandez, Christine" <hrnanch@amazon.com> and 2 more addresses on July 12, 2021

Hernandez, Christine, Sciurba, Stephanie and 1 others
Earliest item: 2021-07-12 09:59:38
Latest item: 2021-07-12 17:26:06

All Parties:
Hernandez, Christine <hrnanch@amazon.com>
Sciurba, Stephanie <sciurba@amazon.com>
Jones, Elliott <ottjones@amazon.com>

## Monday 12 July 2021

**Hernandez, Christine <hrnanch@amazon.com>**

09:59:38

**Hernandez, Christine <hrnanch@amazon.com>**

10:00:54

**Sciurba, Stephanie <sciurba@amazon.com>**

10:03:42

**Jones, Elliott <ottjones@amazon.com>**

:04:12

**Jones, Elliott <ottjones@amazon.com>**

10:04:17

**Hernandez, Christine <hrnanch@amazon.com>**

10:04:38

**Jones, Elliott <ottjones@amazon.com>**

10:04:44

**Hernandez, Christine <hrnanch@amazon.com>**

10:04:51

**Jones, Elliott <ottjones@amazon.com>**

10:04:57

**Hernandez, Christine <hrnanch@amazon.com>**

10:05:01

**Hernandez, Christine <hrnanch@amazon.com>**

10:05:15

**Hernandez, Christine <hrnanch@amazon.com>**

12:11:10

**Hernandez, Christine <hrnanch@amazon.com>**

12:11:17

**Sciurba, Stephanie <sciurba@amazon.com>**
ad

12:13:47

**Hernandez, Christine <hrnanch@amazon.com>**

12:22:56

EXHIBIT NO. GC-55 _____ RECEIVED ___x____ REJECTED _____

CASE NO 29-CA-280153 _____ CASE NAME Amazon.Com Svs, LLC _____

NO OF PAGES 6 _____ DATE: 10-04-2022 _____ REPORTER: Barrington Moxie _____

**Hernandez, Christine <hrnanch@amazon.com>**

[redacted]

**Sciurba, Stephanie <sciurba@amazon.com>**

[redacted]

**Sciurba, Stephanie <sciurba@amazon.com>**

[redacted]

**Hernandez, Christine <hrnanch@amazon.com>**

[redacted]

**Sciurba, Stephanie <sciurba@amazon.com>**

[redacted]

**Sciurba, Stephanie <sciurba@amazon.com>**

[redacted].

**Hernandez, Christine <hrnanch@amazon.com>**
I told you she would do it again after their conversation.

**Hernandez, Christine <hrnanch@amazon.com>**
I just didn't think it would be that quick

**Sciurba, Stephanie <sciurba@amazon.com>**
She is really pushing the line after being told this is in violation of our solicitation policy. Appears to be blatant disregard.

**Hernandez, Christine <hrnanch@amazon.com>**
exactly

**Sciurba, Stephanie <sciurba@amazon.com>**
Have we every changed AA access from any of your experience? I think that might be where it is headed. No live post until approved by a leader if we have that feature.

**Hernandez, Christine <hrnanch@amazon.com>**
I have not however I believe there is that option

**Hernandez, Christine <hrnanch@amazon.com>**
I just don't know if the site has the option to do it

**Sciurba, Stephanie <sciurba@amazon.com>**
It is not discipline however the next conversation should include that that will be considered if she is unwilling to comply

**Sciurba, Stephanie <sciurba@amazon.com>**
we can find that out

**Hernandez, Christine <hrnanch@amazon.com>**
for sure

**Jones, Elliott <ottjones@amazon.com>**
For purposes of getting this approved will need Kurt/Kristen to share legal risk in defending the ULP and hold on their position. This would trigger a ulp.

**Sciurba, Stephanie <sciurba@amazon.com>**
yes

**Hernandez, Christine <hrnanch@amazon.com>**
yes

**Jones, Elliott <ottjones@amazon.com>**
I wonder if there is a way we can research if any AA has ever used the VOA board to solicit other things - personal

charities, etc. - and we've shut it down.

12:57:28

**Sciurba, Stephanie <sciurba@amazon.com>**
I am asking Anna to look into the options I raised above in advance of the call. And yes it would be great to know if/when we addressed any solicitation in the past.
12:58:14

**Jones, Elliott <ottjones@amazon.com>**
We would know about it in NACF, but I'm thinking even other business lines. That may help our position.
12:58:15

**Jones, Elliott <ottjones@amazon.com>**
I'll reach out to a few ERMs in other lines to see if they've ever had this occur.
12:58:50

**Sciurba, Stephanie <sciurba@amazon.com>**
Let's all try and do some digging. I am doing a RP now so will be offline for a bit
12:58:50

**Hernandez, Christine <hrnanch@amazon.com>**
ok
13:00:14

**Hernandez, Christine <hrnanch@amazon.com>**
/md
In reply to message:
>I'll reach out to a few ERMs in other lines to see if they've ever had this occur.
I still have an old chat with different HRMS let me see what they say
13:01:26

**Hernandez, Christine <hrnanch@amazon.com>**
13:35:14

**Jones, Elliott <ottjones@amazon.com>**
13:36:02

**Hernandez, Christine <hrnanch@amazon.com>**
13:36:14

**Hernandez, Christine <hrnanch@amazon.com>**
13:36:45

**Jones, Elliott <ottjones@amazon.com>**
13:37:24

**Hernandez, Christine <hrnanch@amazon.com>**
13:37:46

**Sciurba, Stephanie <sciurba@amazon.com>**
13:39:09

**Sciurba, Stephanie <sciurba@amazon.com>**
13:39:14

**Hernandez, Christine <hrnanch@amazon.com>**
13:39:56

**Jones, Elliott <ottjones@amazon.com>**
13:40:11

**Hernandez, Christine <hrnanch@amazon.com>**
FYI she just dropped another comment
15:30:45

**Jones, Elliott <ottjones@amazon.com>**
The same one?
15:38:00

**Hernandez, Christine <hrnanch@amazon.com>**

Not sure yet

15:38:24

**Sciurba, Stephanie <sciurba@amazon.com>**
If she does they know to remove it right?
15:39:24

**Hernandez, Christine <hrnanch@amazon.com>**
Yes
15:39:47

**Hernandez, Christine <hrnanch@amazon.com>**
Yup same comment and they already hid it
15:45:01

**Sciurba, Stephanie <sciurba@amazon.com>**
I am attempting to track down the main VOA administrator. My last contact does not appear to support, let me know if either of you have a contact as well. I am hoping Akshay will point me in the right direction.
15:54:26

**Hernandez, Christine <hrnanch@amazon.com>**
I will ask Bradley
15:54:45

**Hernandez, Christine <hrnanch@amazon.com>**
He might know
15:54:48

**Sciurba, Stephanie <sciurba@amazon.com>**
Thanks! Also this situation would be a great role play maybe to replace or as an add
15:55:38

**Hernandez, Christine <hrnanch@amazon.com>**
Yes we can replace the TOT RP
15:55:53

**Jones, Elliott <ottjones@amazon.com>**
fyi -- I also put this in the ER/HR P&C chat to give legal and the team awareness.
16:46:46

**Jones, Elliott <ottjones@amazon.com>**
https://twitter.com/amazonlabor/status/1414726351635062784
16:46:49

**Hernandez, Christine <hrnanch@amazon.com>**
Happened faster than I thought
16:47:17

**Sciurba, Stephanie <sciurba@amazon.com>**
█████
16:58:11

**Sciurba, Stephanie <sciurba@amazon.com>**
████████████████████████████████████████
16:58:45

**Hernandez, Christine <hrnanch@amazon.com>**
██████████
16:59:04

**Hernandez, Christine <hrnanch@amazon.com>**
████████████
16:59:12

**Hernandez, Christine <hrnanch@amazon.com>**
████████████
16:59:21

**Sciurba, Stephanie <sciurba@amazon.com>**
█████████
16:59:34

**Hernandez, Christine <hrnanch@amazon.com>**
██████████████████████████████
17:00:06

**Hernandez, Christine <hrnanch@amazon.com>**
Bradley doesn't know anyone on the VOA team anymore. He did refer me to MBA who should know. I am just waiting for her to respond back
17:26:06

**End Thread**

**Thread Statistics**

| |
|---|
| Instant Message Count 73 |

## Chat with "Grabowski, Tyler" <grabtyle@amazon.com> ...

Grabowski, Tyler and Leonardi, Anna

Earliest item: 2021-07-12 06:58:37

Latest item: 2021-07-12 17:14:09

All Parties: Grabowski, Tyler <grabtyle@amazon.com>;  Leonardi, Anna <annaleon@amazon.com>

### Monday 12 July 2021

**Grabowski, Tyler <grabtyle@amazon.com>**

Good morning!

06:58:37

**Grabowski, Tyler <grabtyle@amazon.com>**

are you taking this call too or do you have something at 10?

06:58:54

**Grabowski, Tyler <grabtyle@amazon.com>**

FYI I reached out to Ahmed to get an update on US connect doing a price analysis/adjusting prices because the breakroom is overpriced

08:08:45

📎 image.png



**Leonardi, Anna <annaleon@amazon.com>**

Thank you!

08:12:23

**Leonardi, Anna <annaleon@amazon.com>**

How was the call

08:12:25

**Grabowski, Tyler <grabtyle@amazon.com>**

Sorry just seeing this, you walked in after you sent it!

08:35:09

**Leonardi, Anna <annaleon@amazon.com>**

marcin (rogomarc) - zach just did this one btw lol

08:35:40

**Leonardi, Anna <annaleon@amazon.com>**

after i told him not to hahah

08:35:43

**Grabowski, Tyler <grabtyle@amazon.com>**

Call went ok, not completely sure what the best ways to blast the story out are but she is working on contacting the day 1 blog to see if we can get it featured, then courtney is working on a story from one of the associates that was very moved by the parade as a testimonial and

08:37:31

EXHIBIT NO. GC-56 RECEIVED x REJECTED _____

CASE NO 29-CA-280153 CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 6 DATE: 10-04-2022 REPORTER: Barrington Moxie

on a story from one of the associates that was very moved by the parade as a testimonial and Nikki is going to see the best place to share.  She did mention that since it was almost a week ago there wont be as many places internally at the company but out side of JFK8 to share it aside from the day 1 blog

**Grabowski, Tyler <grabtyle@amazon.com>**

she asked if there was anything else we had in mind but i havent really seen something like that recently

08:38:03

**Leonardi, Anna <annaleon@amazon.com>**

Hmmm okay

08:39:41

**Leonardi, Anna <annaleon@amazon.com>**

Good to know for next time we can get them involved sooner but wherever we can maximize awareness that would be great

08:40:08

**Grabowski, Tyler <grabtyle@amazon.com>**

Yeah exactly definitely good to know for the future but we will blast this as best we can based on timing

08:41:08

**Grabowski, Tyler <grabtyle@amazon.com>**

have you seen anything else work well that i could inquire about

08:41:18

**Grabowski, Tyler <grabtyle@amazon.com>**

[Anna - HRM] Hi Michelle, thank you for bringing this to our attention. We will reach out to the correct team to better understand if there was a change in the process.  A member of the team will be touching base with you on your next shift to answer any other questions you have in the meantime.  Thank you again!

10:07:51

**Grabowski, Tyler <grabtyle@amazon.com>**

Do you remember who was going to follow up with her? I can reach out to them and get details

10:08:23

**Leonardi, Anna <annaleon@amazon.com>**

THank you so much!

10:14:16

**Leonardi, Anna <annaleon@amazon.com>**

It was Edson I checked my chime

10:14:22

**Grabowski, Tyler <grabtyle@amazon.com>**

no problem

10:15:09

**Grabowski, Tyler <grabtyle@amazon.com>**

and sounds good so from square one

10:15:15

**Leonardi, Anna <annaleon@amazon.com>**

Hayden reached out and said he's looking into the email issue for the Flex AAs.

10:15:39

**Leonardi, Anna <annaleon@amazon.com>**

this was his last chime to me about it

10:15:48

**Grabowski, Tyler <grabtyle@amazon.com>**

whos hayden?

10:16:02

**Leonardi, Anna <annaleon@amazon.com>**

Verinder

10:16:19

**Leonardi, Anna <annaleon@amazon.com>**

in the RC chat

10:16:24

**Grabowski, Tyler <grabtyle@amazon.com>**

Ok but we didnt hear anything back after that? I can follow up with Hayden

10:20:19

**Leonardi, Anna <annaleon@amazon.com>**

Correct, that was it

10:20:28

**Leonardi, Anna <annaleon@amazon.com>**

thank you!!

10:20:30

**Grabowski, Tyler <grabtyle@amazon.com>**

No problem

10:20:36

**Grabowski, Tyler <grabtyle@amazon.com>**

!

10:20:37

**Leonardi, Anna <annaleon@amazon.com>**

Hi!

13:18:14

**Leonardi, Anna <annaleon@amazon.com>**

I'm going to add you to this call at 5 for follow up to Dana

13:18:52

**Leonardi, Anna <annaleon@amazon.com>**

In your experience, have we had any of this come up? I assume not, but just checking...

13:19:07

**Leonardi, Anna <annaleon@amazon.com>**

[July 12, 2021, 3:56 PM] Sciurba, Stephanie: In advance of the call it will help to know: 1. Do we have the capability to flag a AA that would first require manager approval prior to publicly posting? 2. If so, who has the ability to do that? 3. Have we ever considered this in the past? I am not saying this is our next step but if this continues and she knowingly chooses to continue to violate our policy at some point we should consider this and have that be part of our discussion today.

13:19:08

[July 12, 2021, 4:05 PM] Sciurba, Stephanie: Also, it would be good to understand if we had any other solicitation on the VOA board in the past? GS cookies.

**Grabowski, Tyler <grabtyle@amazon.com>**

Hi! sounds great, i am looking forward to it

13:26:21

**Grabowski, Tyler <grabtyle@amazon.com>**

and no we dont have that capability/have not considered it in the past this is unprecedented times, i think the most feasible approach in talking through it would be coaching to correct the behavior/violation and continue to escalate if the behavior continues

13:27:40

**Leonardi, Anna <annaleon@amazon.com>**

Ya i agree

13:28:26

**Leonardi, Anna <annaleon@amazon.com>**

Who would have thought this would ever happen lol

13:28:34

**Grabowski, Tyler <grabtyle@amazon.com>**

in terms of solicitation, nothing like this but there was at one point a comment about a block party or something

13:28:54

**Grabowski, Tyler <grabtyle@amazon.com>**

it was like a year and a half ago

13:29:03

**Grabowski, Tyler <grabtyle@amazon.com>**

maybe 2019

13:29:06

**Leonardi, Anna <annaleon@amazon.com>**

Hmm ok

13:36:21

**Grabowski, Tyler <grabtyle@amazon.com>**

The craziness continues, anything i can help with before the call?

13:39:39

**Leonardi, Anna <annaleon@amazon.com>**

THank you! No I think we're okay, might just need your input if they ask about prior examples but that would be it

13:40:47

**Grabowski, Tyler <grabtyle@amazon.com>**

Ok sounds good !

13:44:56

**Leonardi, Anna <annaleon@amazon.com>**

📎 7.12.21 VOA follow up.docx

14:45:25

> 7.12.21 VOA follow up.docx  - This file type is not supported for embedded threading. See attached child.

**Leonardi, Anna <annaleon@amazon.com>**



Thank you for responding to their email :)

**End Thread**

**Thread Statistics**

Instant Message Count: 47

# Chat with "Leonardi, Anna" <annaleon@amazon.com> ...

Leonardi, Anna and Sciurba, Stephanie

Earliest item: 2021-07-12 12:56:21

Latest item: 2021-07-12 13:15:21

---

All Parties:  Sciurba, Stephanie <sciurba@amazon.com>;   Leonardi, Anna <annaleon@amazon.com>

---

### Monday 12 July 2021

**Sciurba, Stephanie <sciurba@amazon.com>**

In advance of the call it will help to know: 1. Do we have the capability to flag a AA that would first require manager approval prior to publicly posting? 2. If so, who has the ability to do that? 3. Have we ever considered this in the past? I am not saying this is our next step but if this continues and she knowingly chooses to continue to violate our policy at some point we should consider this and have that be part of our discussion today.

12:56:21

**Sciurba, Stephanie <sciurba@amazon.com>**

Also, it would be good to understand if we had any other solicitation on the VOA board in the past? GS cookies.

13:05:18

**Leonardi, Anna <annaleon@amazon.com>**

Thank you! Let me see what I can find from prior examples

13:15:21

### End Thread

**Thread Statistics**

Instant Message Count: 3

GC-57

EXHIBIT NO._____ RECEIVED _____ x REJECTED _____

29-CA-280153                          Amazon.Com Svs, LLC

CASE NO _____ CASE NAME _____

2                    10-04-2022          Barrington Moxie

NO OF PAGES _____ DATE: _____ REPORTER: _____



# Owner's Manual
## And Guide to Employment

AMZ-BRY000216

EXHIBIT NO. <u>GC-58</u> RECEIVED <u>x</u> REJECTED _____

CASE NO <u>29-CA-280153</u> CASE NAME <u>Amazon.Com Svs, LLC</u>

NO OF PAGES <u>29</u> DATE: <u>10-05-2022</u> REPORTER: <u>Barrington Moxie</u>



**WELCOME TO AMAZON!**

We're thrilled to have you join us as we work hard, have fun, and make history! We think we've created an exceptional work environment that marries hard-charging intensity with major-league fun. As you get to know the folks at Amazon, you'll discover a group of diverse, world-class associates who treat each other with respect, work together as a team, and act like what they are: true owners of the company.

Our overall mission is simple: we want Amazon.com to be the place where our customers can find, discover, and buy, anything online! Whatever our customers tell us they want, we will find the means to deliver. In doing so, we will create the most customer-centric company in the universe -- a company that customers from all over the globe will recognize, value and trust for both our products and our service. With your help, Amazon will continue to enable people to discover new worlds and create change in a meaningful and lasting way.

Amazon is at the beginning of its history. Already millions of people have shown their faith in our future, through buying from us, through investing in us, and through working with us. Thanks again for joining Amazon and helping us shape the future.

Once again, welcome aboard!

*Jeff Bezos*
Founder & CEO

AMZ-BRY000217

# Table of Contents

Amazon and You ...................................................................................................................5

    About This Document ........................................................................................................5

    Our Leadership Principles ...................................................................................................5

    Getting Started .................................................................................................................7

Employment at Amazon .........................................................................................................8

    At-Will Employment ..........................................................................................................8

    Employment Classifications ................................................................................................8

    Working Hours .................................................................................................................8

    Attendance and Punctuality................................................................................................9

    Corrective Action .............................................................................................................9

    Performance Evaluation .....................................................................................................9

    Internal Transfers and Promotions ......................................................................................9

    Dealing with the Public .....................................................................................................10

    Personnel Information and Records......................................................................................10

    Resignation .....................................................................................................................11

Compensation .......................................................................................................................12

    Compensation .................................................................................................................12

    Pay Periods and Direct Deposit ..........................................................................................12

    Payroll Deductions ...........................................................................................................12

    Overtime Pay ..................................................................................................................12

    Travel Time Pay ...............................................................................................................13

Benefits ...............................................................................................................................14

    Holidays .........................................................................................................................14

    Additional Paid Time Off ...................................................................................................14

    Leaves of Absence ...........................................................................................................15

Company Personnel Policies.....................................................................................................17

    Alternative Work Arrangements..........................................................................................17

    Code of Business Conduct and Ethics ..................................................................................17

    Confidential Information ....................................................................................................18

    Cost Efficiency.................................................................................................................18

    Purchasing and Spending Authorization ...............................................................................18

    Travel and Entertainment ..................................................................................................18

    Amazon Rental Vehicle Policy .............................................................................................19

    Drug and Alcohol Use .......................................................................................................19

    Employees with Disabilities ................................................................................................19

    Employment Outside of Amazon .........................................................................................20

    Employment of Relatives and Friends ..................................................................................20

    Employment References ....................................................................................................20

AMZ-BRY000218

Equal Employment Opportunity ................................................................................................. 20

Health and Safety ...................................................................................................................... 21

Safety Programs and Training .................................................................................................... 21

Reporting Accidents and Concerns about Workplace Safety ..................................................... 21

Information Security ................................................................................................................... 21

Privacy ...................................................................................................................................... 22

Acceptable Use .......................................................................................................................... 22

Reporting Violations .................................................................................................................. 23

Insider Trading .......................................................................................................................... 23

Physical Security ........................................................................................................................ 23

Workplace Emergency Response ................................................................................................ 23

Inspections on Company Premises ............................................................................................. 24

Solicitation ................................................................................................................................. 24

Anti-Sex Buying Policy ............................................................................................................... 24

Workplace Harassment .............................................................................................................. 25

Appendix - Standards of Conduct ................................................................................................. 27

Standards of Conduct ................................................................................................................ 27

AMZ-BRY000219

# Amazon and You

## About This Document

This Owner's Manual and Guide to Employment (the Manual) summarizes Amazon's basic personnel policies and practices and is intended to serve as a resource concerning your employment at Amazon. Other helpful materials and information are distributed during new hire orientation and are made available on the company intranet and from Human Resources.

The Manual is designed to provide you with a brief overview of Amazon's policies, procedures, and benefits. Amazon reserves the right to modify, revoke, suspend, terminate, or change any or all its policies or procedures in whole or in part at any time, with or without notice. This Manual is not intended as a contract and supersedes any previous policy statements, written or oral. As described in the Manual, your employment is not for a fixed term and is "at will," meaning both you and Amazon have the right to end the employment relationship at any time, with or without cause and with or without prior notice or warning.

Unless otherwise stated, the Manual applies to all associates – all regular or temporary full-time and part-time employees – of Amazon.com, Inc. and its wholly owned United States subsidiaries (Amazon or the company) with the exception of Alexa.

Some of Amazon's groups or sites may develop their own specific guidelines, policies, and/or procedures that apply only to their associates. These guidelines, policies, or procedures supplement the information provided in the Manual. If they supersede the Manual, associates will be advised of that.

Remember that both the HR intranet and the Amazon Owner's Manual are living things. They are changed from time to time to keep pace with what's going on around us.

## Our Leadership Principles

Whether you are an individual contributor or a manager of a large team, you are an Amazon leader. These are our leadership principles, unless you know better ones. Please be a leader.

### Customer Obsession

Leaders start with the customer and work backwards. They work vigorously to earn and keep customer trust. Although leaders pay attention to competitors, they *obsess* over customers.

### Ownership

Leaders are owners. They think long term and don't sacrifice long-term value for short-term results. They act on behalf of the entire company, beyond just their own team. They never say "that's not my job."

### Invent and Simplify

Leaders expect and require innovation and invention from their teams and always find ways to simplify. They are externally aware, look for new ideas from everywhere, and are not limited by "not invented here." As we do new things, we accept that we may be misunderstood for long periods of time.

### Are Right, A Lot

Leaders are right a lot. They have strong judgment and good instincts. They seek diverse perspectives and work to disconfirm their beliefs.

AMZ-BRY000220

## Learn and Be Curious

Leaders are never done learning and always seek to improve themselves. They are curious about new possibilities and act to explore them.

## Hire and Develop the Best

Leaders raise the performance bar with every hire and promotion. They recognize exceptional talent, and willingly move them throughout the organization. Leaders develop leaders and take seriously their role in coaching others. We work on behalf of our people to invent mechanisms for development like Career Choice.

## Insist on the Highest Standards

Leaders have relentlessly high standards — many people may think these standards are unreasonably high. Leaders are continually raising the bar and drive their teams to deliver high quality products, services and processes. Leaders ensure that defects do not get sent down the line and that problems are fixed so they stay fixed.

## Think Big

Thinking small is a self-fulfilling prophecy. Leaders create and communicate a bold direction that inspires results. They think differently and look around corners for ways to serve customers.

## Bias for Action

Speed matters in business. Many decisions and actions are reversible and do not need extensive study. We value calculated risk taking.

## Frugality

Accomplish more with less. Constraints breed resourcefulness, self-sufficiency, and invention. There are no extra points for growing headcount, budget size, or fixed expense.

## Earn Trust

Leaders listen attentively, speak candidly, and treat others respectfully. They are vocally self-critical, even when doing so is awkward or embarrassing. Leaders do not believe their or their team's body odor smells of perfume. They benchmark themselves and their teams against the best.

## Dive Deep

Leaders operate at all levels, stay connected to the details, audit frequently, and are skeptical when metrics and anecdote differ. No task is beneath them.

## Have Backbone; Disagree and Commit

Leaders are obligated to respectfully challenge decisions when they disagree, even when doing so is uncomfortable or exhausting. Leaders have conviction and are tenacious. They do not compromise for the sake of social cohesion. Once a decision is determined, they commit wholly.

## Deliver Results

Leaders focus on the key inputs for their business and deliver them with the right quality and in a timely fashion. Despite setbacks, they rise to the occasion and never settle.

AMZ-BRY000221

## Getting Started

New associates will undoubtedly have questions regarding Amazon. We hope that this Manual will satisfy the most frequently asked questions, but please do not hesitate to ask your manager or Human Resources if you have further questions. In Seattle, you may contact the Employee Resource Center. Contact information for your Human Resources Business Partner can be found through the following link on the corporate intranet:
https://contactstool.amazon.com/

## What We Can Expect from Each Other

You've probably figured out by now that this is not an ordinary company, and we have extraordinary people on our team. Accordingly, the company is committed to treating each associate fairly and with respect, and to maintaining an environment of open communication. As an associate, your primary responsibility is to do an outstanding job on your work. The efforts of each person, working individually and as part of the Amazon team, are the means for meeting the overall objectives of the company. We do also expect associates to maintain a high professional standard of behavior and job performance and to adhere to the policies set forth in this Manual.

## Open Door Policy and Conflict Resolution

Amazon believes that candid and constructive communication is essential to the smooth functioning of our workplace and to maintaining an atmosphere of mutual respect. Accordingly, we have an "open door" policy, which means that you are welcome to discuss any suggestion, concern, or other feedback with any member of the company's management. Associates are encouraged to bring their ideas to the attention of management.

The majority of misunderstandings are satisfactorily resolved by a thorough discussion and mutual understanding between the parties involved. In general, it is best to discuss any concerns with your immediate supervisor first. If you are unable to reach a satisfactory resolution with your supervisor or are not comfortable discussing the issue with your supervisor, you are welcome to discuss the matter with the next level of management, with Human Resources, or with any member of senior management. When you bring a concern to Human Resources, it will be reviewed, and if appropriate, action will be taken. Human Resources will communicate with you regarding the outcome.

If you believe that you or another associate has been subject to workplace harassment, pursuant to the provisions of the Workplace Harassment policy in this Manual, you should immediately report this to any manager or member of Human Resources. See the Workplace Harassment policy for more information.

AMZ-BRY000222

# Employment at Amazon

## At-Will Employment

Employment at Amazon is not for any specified length of time, and both the associate and the company have the right to end the employment relationship at any time, with or without cause and with or without prior notice or warning. Only Amazon's general counsel and chief financial officer have authority to bind the company to policies or agreements that conflict with this policy of at-will employment. Any such exception must be in a written agreement signed by Amazon's general counsel or chief financial officer.

## Employment Classifications

Each position at the company is broadly classified by regularly expected work hours and whether the associate is eligible for overtime pay. These classifications are dictated both by the company's business needs and state and federal wage-hour laws.

Each position falls into one of the following employment types:

- Regular full-time: Regular (non-temporary) associate who is regularly expected to work at least 40 hours per week.
- Regular part-time 30+ hours: Regular (non-temporary) associate who is regularly expected to work at least 30, but less than 40, hours per week.
- Regular part-time 20+ hours: Regular (non-temporary) associate who is regularly expected to work at least 20, but less than 30, hours per week.
- Flex associate: Regular (non-temporary) associate who is not regularly expected to work 20 or more hours per week, such as an on-call associate.
- Short-term associate: Hired for employment that is expected to last no more than six months, such as an intern or seasonal associate.

The above employment types only apply to Amazon associates. Outsourced workers such as temporary agency employees placed on assignment at the company, independent contractors, or consultants are not considered Amazon associates.

Associates are also classified as exempt or non-exempt. Non-exempt associates are eligible for overtime pay and are ordinarily paid by the hour and, and exempt associates are not eligible under federal and state laws for overtime pay and are ordinarily paid a salary.

Eligibility for stock-based awards and benefits is based on employment type (such as regular full-time or regular part-time, etc.). Changes to an associate's employment type must be approved the associate's manager and Human Resources.

## Working Hours

Managers are responsible to establish work schedules that accommodate operational priorities, and each associate should be flexible in meeting these priorities. Work schedules for hourly associates may vary from site to site and week by week. This flexibility is critical to Amazon's success as a company. The intense nature of our business and the demands of an e-commerce environment require that associates make a serious commitment of time and energy to Amazon. Salaried associates should clearly understand that they may frequently work extended hours to help the company succeed. Hourly associates may also be required to work varying amounts of overtime, as Amazon's needs require.

Most positions at the company require associates to work full-time. The company recognizes that situations may occur where associates may need to temporarily alter their work schedules in order to better accommodate difficult or demanding periods of their lives, while still meeting the demands of their job. Additionally, associates may sometimes require an alternative work arrangement when medically necessary while recovering from an illness or injury. Towards these ends, Amazon will consider requests for an alternative work arrangement. For further information, please see the Alternative Work Arrangement Policy in this Manual.

AMZ-BRY000223

Hourly associates must report all hours worked, whether at an Amazon building or off-site. No one may allow or ask any hourly associate to work "off the clock" without being paid. Hourly associates working more than five hours are generally required to take a work-free, unpaid 30-minute meal period. The meal period must start no later than five hours or, in some locations, five-and-a half hours after the associate begins working. Additional meal periods are provided in some circumstances. Hourly associates are required to take a minimum ten-minute paid break for every four hours worked or major fraction thereof. Please check with your manager and Human Resources Business Partner regarding your work schedule. For more information, see the complete U.S. Working Hours Policy for non-exempt/hourly associates: Working Hours (Non-Exempt/Hourly) Policy

## Attendance and Punctuality

Regular attendance and punctuality are important parts of your obligations as an Amazon associate. You are to work the hours scheduled by your manager. If you are going to be absent or late to work, we expect to hear from you before the start of your workday. Please be aware that unsatisfactory attendance may be a basis for disciplinary action, up to and including dismissal.

Individual sites or departments may establish specific guidelines for attendance and punctuality, based on the needs of the business. If your site or department has specific guidelines, your manager or Human Resources will review them with you, and it is expected that you will abide by them throughout your employment in that department.

In the event that we have not heard from you for three (3) consecutive workdays, you will be considered to have resigned from your employment.

## Corrective Action

To ensure orderly operations and provide the best possible environment, Amazon expects associates to follow rules and exhibit conduct that will protect the interests and safety of all associates and the organization. The appendix to the Owner's Manual includes the Standards of Conduct, a list of examples of infractions that may result in corrective action, up to and including termination of employment. The Standards of Conduct are only guidelines. It is not possible to list all the forms of behavior that are considered unacceptable in the workplace, and the Standards of Conduct is not intended to be all-inclusive or exhaustive. Abiding by the Standards of Conduct is necessary but is not sufficient for continued and successful employment at Amazon. The bar is much higher, and associates are expected to perform at a very high level in serving our customers. As an at-will employer, Amazon reserves the right in all circumstances to apply any level of corrective action as appropriate, up to and including immediate termination of employment, without prior corrective action or notice for conduct in either category or for conduct not described in the Standards of Conduct.

## Performance Evaluation

Managers and associates are strongly encouraged to discuss job performance and goals on an informal and frequent basis. Formal performance evaluations are typically conducted on an annual basis. Amazon or individual sites or departments may establish more frequent performance review periods. Performance evaluations become a part of your personnel file and may be used for future employment decisions and consideration such as transfers, promotions, compensation decisions, training, salary reviews, and corrective action.

## Internal Transfers and Promotions

Employees may apply for a voluntary internal transfer at any time. Employees who are not currently meeting performance standards must obtain manager approval before interviewing. More information regarding the Internal Transfer process is available from your Human Resources Business Partner or on the intranet at: Job Transfers

At Amazon, we have two types of promotions: Career Development and Open Position. A Career Development Promotion occurs when there is an increase in an associate's current job level within the same job family (for example, a move from Financial Analyst to Sr. Financial Analyst). For an associate to be promoted, the manager (1)

must justify the business need for that position to be one job level above the associate's current level; and (2) must show that the associate has demonstrated the skills and competencies needed to assume the responsibilities of the new position. Career Development Promotions are reviewed on a calendared cycle.

An Open Position Promotion can occur when an associate applies and is hired into an approved, budgeted, and posted position that is one job level higher than the associate's current level. All associates must use the Internal Transfer Process to apply. More information regarding the Promotion process is available from your Human Resources Business Partner or on the intranet at: Promotions

Associates who are transferred or promoted to a new position sometimes receive a compensation adjustment to a level that is appropriate for the new position. A position change may also affect certain benefits (such as vacation accrual and benefit premiums), trading window restrictions, pay periods, and future pay increases or additional stock-based award grants.

# Dealing with the Public

To ensure that Amazon follows all rules applying to a public company regarding disclosure of information, the company has designated certain associates to represent the company to the public. No other associate should speak with media representatives on Amazon's behalf, even to answer apparently innocuous questions. Press inquiries and requests for interviews or public appearances by Amazon should be forwarded to the Strategic Communications department at amazon-pr@amazon.com. Financial inquiries should be directed to the Investor Relations department at ir@amazon.com. It is extremely important that all questions directed to Amazon are forwarded to one of the above departments, who are the company's only designated spokespeople.

Associates must always comply with Amazon's Confidential Information policy (see below in this Owner's Manual) by not revealing, confirming, or discussing confidential information without authorization. Nothing in the Owner's Manual prohibits non-supervisory employees' communications about wages, hours, or working conditions.

# Personnel Information and Records

The company maintains personnel records in personnel files, in payroll, and in several other forms (information stored electronically, etc.). The information the company maintains is needed by the company in conducting its business or is required by federal, state, or local laws.

Personal Information: Human Resources should be notified promptly of any changes in name, residential address, home telephone number, marital status, name of beneficiary, or dependents listed on your insurance policy, number of dependents for withholding tax purposes, or person to notify in case of an emergency. Most associates can make changes to this information by using our PeopleSoft self-service option located on the intranet at: PeoplePortal

Associates who do not have access to the self-service option in PeopleSoft should notify Human Resources with such changes. Additionally, your manager will be provided with your home telephone number in the event he or she needs to contact you for business purposes.

Personnel files: Human Resources will maintain your personnel file. Your personnel file ordinarily will be made available to your manager and others with a need to know, such as a hiring manager if you apply for a new position internally. You may review your personnel file periodically, upon giving written request with reasonable notice to Human Resources. Personnel files are company property and may not be removed from company property. If you believe that certain materials in your personnel file are irrelevant, inaccurate, or obsolete, you may informally request their removal by speaking with HR or submit a written statement that may be included in your personnel file. You may also request copies of specific documents in your file. Seattle employees can contact the Employee Resource Center to schedule a time to review their file.

# Resignation

If you decide to resign from your employment at Amazon, we request that you provide at least two (2) weeks' notice. This will give your manager the opportunity to adjust his or her plans with the least amount of interruption to company work schedules. We encourage associates who resign voluntarily to submit such resignation in writing, with the reason for resigning and the effective date stated.

# Compensation

## Compensation

Hiring, retaining, and motivating talented, versatile, and driven associates are critical success factors for Amazon. Towards this end, Amazon seeks to compensate associates relative to the nature and extent of their contribution to the company's success, their responsibility and commitment to the company, and their skill level, all as measured in the context of market comparables. Amazon views all forms of rewards provided to associates, including cash compensation, equity compensation, health, and other benefits, as part of its total compensation package. If the company does well, associates will be well rewarded through their equity compensation, which is an important component of compensation over the long term.

In determining compensation for our associates, the company strives to attract and retain the best associates, reinforce ownership, emphasize performance and potential as a basis for rewards, recognize the need for global and flexible compensation approaches, and to filter our compensation decisions through our core values. Amazon's compensation philosophy is available from your Human Resources Business Partner or on the intranet at: Compensation

## Pay Periods and Direct Deposit

Hourly associates are paid every other Friday. Hourly associates' workweek starts at 12 a.m. Sunday and ends at 11:59 p.m. Saturday. Salaried associates are paid either monthly or biweekly; however, in some locations, the pay frequency may vary. More information regarding hourly and salaried payroll periods is available from your Human Resources Business Partner or on the intranet at: Getting Paid in the U.S. FAQ

Direct deposit of your paycheck into your bank account is available and encouraged. It is a fast, safe, and dependable way to put your money in the bank and, best of all, it is completely free. Your paycheck will be deposited into your bank account automatically every pay period. If interested, please fill out the appropriate form, which is available from your Human Resources Business Partner or through Employee Self-Service at: https://portal.adp.com/public/index.htm

## Payroll Deductions

Amazon is legally required to take certain deductions from every associate's compensation, including federal income taxes, state and local income taxes (where applicable), Social Security, and other mandatory withholdings. Associates are required to complete and change, as appropriate, a W-4 form indicating the number of allowances claimed for tax withholding purposes. In some cases Amazon may be required by law to make other deductions, such as garnishment and child support. The company will also deduct amounts authorized by an associate in accordance with the associate's benefit elections. Finally, at termination of employment, Amazon may also deduct from associates' last paychecks (where permissible) for items owed to the company, including but not limited to corporate credit card debt, negative vacation balance, lost equipment, or money owed to the company. If you have questions regarding payroll deductions, please contact your Human Resources Business Partner.

## Overtime Pay

Only associates who do not qualify as exempt under federal or state law are eligible for overtime pay. Overtime must be approved in advance and will be paid at the rate of one and one-half times the associate's regular hourly rate of pay for all hours worked in excess of 40 hours during a workweek. Vacation, personal/sick, holiday, or other paid time off hours are not considered "hours worked" in the calculation of overtime pay.

AMZ-BRY000227

## Travel Time Pay

From time to time, employees may be required to travel for work purposes. Non-exempt employees who are required to travel for work purposes are eligible for paid travel time in certain circumstances, consistent with applicable state and federal wage and hour laws. Travel time will be paid at the employee's regular hourly rate and will be used in overtime calculations. Non-exempt employees should refer to the Working Hours (Non-Exempt/Hourly) Policy for detailed information.

Exempt employees are not separately compensated for time spent traveling for business. More information regarding travel time pay is available from your HR Business Partner.

AMZ-BRY000228

# Benefits

Amazon offers a comprehensive benefits package, subject to eligibility requirements. The company reserves the right to alter, amend, or terminate the benefits it provides at any time, at the sole discretion of the company, with or without advance notice.

For more information about your benefits, visit the Benefits Enrollment Tool. From an Amazon computer or network, go to benefits.amazon.com. From any other computer or network, go to amazon.ehr.com. You can also call the Benefits Service Center with questions at 1-866-644-2696. The Benefits Enrollment Tool will be ready for you to view about three days after your start date.

## Holidays

Information about Amazon holidays is found here. All U.S. employees can review each individual holiday policy on the U.S. Employment Policies & Guidelines page on Inside Amazon here.

Please contact the Employee Resource Center (ERC) if you have questions.

You can review your time off balances by accessing ADP at mypay.amazon.com when on the Amazon network or portal.adp.com from any computer outside of the network.

## Additional Paid Time Off

### Vacation

Amazon believes that associates should earn and take vacation on a regular basis for their personal well-being and continued high performance. All regular associates working 20 or more hours per week accrue vacation during each pay period. Accrued vacation may be carried over from year to year up to 160 hours. There may be some limited exceptions for subsidiaries with legacy policies. Managers must approve vacation in advance.

For non-FC/CS employees working in California, and all A100 and Goodreads employees, please refer to the CA PTO policy. Employees working at Fulfillment Centers or in Call Center Operations are excluded from CA PTO.

### Paid Personal Time Off

Amazon will provide all regular associates who are expected to work more than 20 hours per week with paid personal time, to be used in the event of illness or other personal business. All regular associates who are expected to work 20 or more hours per week accrue paid personal time during each pay period, up to a maximum. The maximum amount is equal to the annual accrual corresponding to the associate's scheduled work hours. Accrued paid personal time off may not be carried over from year to year. Associates will lose their remaining paid personal time hours on December 31. In California, paid time off carries over per local law.

Some policies that apply only to Operations, FC or CS sites also exist. Check with your local HR team for other site-specific policies and processes or if you have any questions about any policies at Amazon.

For non-FC/CS employees working in California, and all A100 and Goodreads employees, please refer to the CA PTO policy. Employees working at Fulfillment Centers or in Call Center Operations are excluded from CA PTO.

### Bereavement Time Off

Amazon provides associates up to three days of paid time off to attend a funeral or grieve if an associate suffers a death of an immediate family member. Immediate family members include your spouse, domestic partner, children (including step and foster children), parents (including step and foster parents), parents-in-law, grandparents, brothers and sisters (including step siblings), or special circumstances outside these relationships.

AMZ-BRY000229

## Jury and Witness Duty Time Off

Amazon provides up to ten (10) additional days of paid time off to associates if they are required to serve on a jury or are subpoenaed as a witness in a civil or criminal court case if they provide advance notice of their scheduled appearance date and a copy of the summons to serve as a witness or juror. Any paid time off provided under this policy is in addition to the paid time off regularly accrued by eligible employees.

## Sick and Safe Time Required Notices

City of Saint Paul Earned Sick and Safe Time Ordinance (ESST). This ordinance requires employers to provide employees working in Saint Paul with paid leave that can be used for sick time (an employee or family member's medical or mental condition or preventive care) and safe time (reasons related to domestic violence, sexual assault, stalking, school closures due to inclement weather or public safety issues, for an employee or an employee's family member). Employers must grant at least 1 hour of sick/safe time per 30 hours worked in Saint Paul. Employees can accrue up to 48 hours per year and save unused time and carry over up to 80 unused hour per year. Accrual must begin on the 1st day of employment, and employees may start using sick/safe time after 90 days of employment. Employees must work 80 hours in Saint Paul to be eligible. Amazon may require an employee to provide written certification form a health care provider if use of sick/safe leave will exceed three days. Retaliation against employees for exercising any sick/safe leave rights is illegal. An employee who believes any of these rights have been violated may file a complaint in court and/or with the City of Saint Paul Department of Human Rights and Equal Economic Opportunity Labor Standards Unit. Contact options: 651-266-8900 | laborstandards@stpaul.gov | www.stpau.gov/esst | 15 W. Kellogg Blvd, Suite 280, Saint Paul, MN 55102.

City of Minneapolis Sick and Safe Time Ordinance. This ordinance requires employers to provide employees working in Minneapolis with paid leave that can be used for (a) a medical or mental health condition; (b) to seek services for domestic abuse, sexual assault, or stalking; (c) close of an employee's pace of business for public health reasons; (d) needs related to health, mental health, or physical safety of a child, spouse, domestic partner, parent, grandparent, or member of household; (e)unexpected closure of a family member's school or place of care, including for inclement weather. Employers may require advance notice as soon as practicable (but not more than 7 days), and reasonable explanation of need. Upon request, the employer must provide information stating the employee's then-current amount of accrued sick and safe time and used sick and safe time. An employee who believes any of these rights have been violated may file a report with the City of Minneapolis Labor Standards Enforcement Division. Contact options: 350 S. Fifth St., Rm. 239, Minneapolis, MN 55415 | Call 311 | www.minneapolismn.gov/sicktimeinfo.

A complete overview of all the paid time off policies, including copies of each entire policy, is available from your Human Resources Business Partner or on the intranet at: Paid Time Off Policies

# Leaves of Absence

Amazon recognizes that situations will arise that may require associates to be absent from work for extended periods of time. The company offers a variety of leaves of absences summarized below. An associate must apply for and Human Resources (or designated representative, i.e., MyLeave Services) must approve any leave request before it is authorized.

A complete overview of all the leave of absence policies, including copies of each entire policy and complete information on the effect of each type of leave on benefits and compensation, is available from your Human Resources representative, the Employee Resource Center or on the intranet at: Leave of Absence Policies

## Benefits during a Leave of Absence

Associates do not accrue vacation, holiday, or personal days while on an unpaid leave of absence, unless required by regulation. Associates also will not be provided an annual grant of paid personal time if their leave of absence occurs when such grants are made. Rather, associates will be provided their regular paid personal time grant upon their return to active work. Medical insurance coverage will typically remain in effect during the leave, although the associate may be required to pay the employee portion of the premium, the entire premium amount, or become subject to COBRA coverage, depending on the type and duration of leave. Each complete leave policy provides information as to the effect of the leave on each type of benefit.

AMZ-BRY000230

# Family and Medical (FMLA) Leave

Eligible associates may qualify for a leave of absence under the Family and Medical Leave Act (FMLA). Amazon provides eligible associates who are unable to work due to the reasons listed below up to 12 work weeks of unpaid, job-protected leave in a 12-month period:

- birth and care of your newborn child or adoption/foster care placement of a child in your custody;
- your own serious health condition including sickness or disability associated with pregnancy and/or childbirth;
- to care for your spouse, qualified domestic partner, child, qualified child of a qualified domestic partner, or parent with a serious health condition;
- for qualifying exigencies arising out of the fact that your spouse, qualified domestic partner, child, qualified child of a qualified domestic partner, or parent is on active duty or called to active duty as a member of the U.S. National Guard or Reserves in support of a contingency operation.
- In addition, eligible associates may qualify for up to a total of 26 work weeks of unpaid, job-protected leave during a single 12-month period to care for:
- your spouse, qualified domestic partner, child, qualified child of a qualified domestic partner, parent, or next of kin who is a current member of the U.S. Armed Forces, including the National Guard or Reserves, with a serious injury or illness incurred in the line of duty.

During your FMLA leave, you will receive health insurance benefits. Intermittent leave or a reduced work schedule is also available if it is medically necessary because of your or your family member's serious health condition or for military exigency leave.

You may review the FMLA policy and your Rights and Responsibilities Under FMLA here: Leave of Absence Policies

# Medical Leave

If you are unable to work because of a medical condition affecting you and are not eligible for or have exhausted your leave entitlement under the Family and Medical Leave Act (FMLA), you may be eligible for a medical leave of absence. If you haven't received health benefits coverage for your medical condition during a prior FMLA leave, you're eligible to receive health insurance benefits until the end of the month following 12 weeks of leave.

# Personal Leave

When you need time off, you ordinarily are expected to use paid personal time and vacation. Amazon may provide you an unpaid personal leave of absence when you need extended time off for personal reasons not covered under FMLA or medical leave. Prior to the start of your personal leave, you may elect to apply any or all of your accrued, unused vacation or paid personal time. Your manager or Human Resources representative also must approve any personal leave, and the company reserves the right to decline any request.

# Military Leave

Amazon provides a military leave of absence to associates for military service, for training, and for examinations to determine an associate's fitness for military service in the regular Armed Forces, the Armed Forces Reserves, the National Guard, and the Commissioned Corps of the Public Health Service.

AMZ-BRY000231

# Company Personnel Policies

This section details some important company policies that concern your employment at Amazon. These policies help to define and clarify the company's expectation of you, and they help associates know what to expect from the company. If you have any questions about the policies presented in this handbook or about other employment policies, please feel free to contact the Human Resources department.

## Alternative Work Arrangements

In considering any request for an alternative work arrangement, the company must balance the need to achieve business priorities and objectives with an associate's need to balance personal responsibilities and work demands. In general, an alternative work arrangement is a privilege that may be granted under appropriate circumstances to associates in good standing and whose job responsibilities are suited to such an arrangement. Amazon will evaluate requests for alternative work arrangements on a case-by-case basis and retains discretion to change or discontinue such arrangements at any time. If approved, an associate's compensation, benefits, and other stock-based awards may be affected.

### Types of Alternative Work Arrangements

The following are types of alternative work arrangements that Amazon may consider for an associate. Except for part-time work arrangements, these alternative work arrangements do not change the associates' job expectations or the amount of time an associate is expected to contribute to his or her work for Amazon. Associates on any alternative work arrangement may still be required to work additional hours and work during scheduled time off as necessary to meet business objectives.

- Flextime: An arrangement that permits managers and associates to agree to starting and quitting times within guidelines established by department management. Regardless of the associate's flextime schedule, the associate must be present during department designated "core" hours. An example of such an arrangement would be when an associate regularly works 6 a.m.-3:30 p.m.
- Compressed workweek: An arrangement that allows associates to compress their regular working hours into fewer work days by working longer days for part of the workweek, in exchange for shorter days and/or days off each workweek.
- Telecommuting: An arrangement that allows an associate to work from home or an alternate work site, for all or part of the scheduled workweek, through a formal written agreement with their manager. See Amazon's Telecommuting policy for more information.
- Part-Time Work Arrangement: An arrangement that allows an associate to voluntarily work less than a full-time schedule. See Amazon's part-time work arrangements policy for more information.

The company may determine that some positions, departments, or sites may not be eligible to participate in alternative work arrangements unless it involves a reasonable accommodation of a disability or work-related injury or illness. For instance, alternative work arrangements are generally not available for positions in fulfillment or customer service centers unless it is medically necessary or requested by the company. Check with your Human Resources representative to determine if any alternative work arrangements are available for your position, department, or site.

Because telecommuting and part-time work arrangements typically involve more logistical planning and consideration, each of these alternative work arrangements are described in greater detail in their own policy statement. Flextime and compressed workweeks are described more fully in the Alternative Work Arrangement Policy, which is available from your Human Resources representative or on the intranet at: Alternative Work Policy

## Code of Business Conduct and Ethics

In performing their job duties, Amazon employees should always act lawfully, ethically, and in the best interests of Amazon. To help employees understand and apply these principles, Amazon has developed the Code of Business Conduct and Ethics (the "Code of Conduct") which sets out basic guiding principles for all employees. All employees are expected to review the Code of Conduct and comply with its provisions.

AMZ-BRY000232

Employees who a) have a question about the application of the Code of Conduct, b) believe that a violation of the Code of Conduct has or is about to occur, or c) are in doubt about how to properly act in a particular situation should promptly discuss the issue with their manager, anyone in their management chain or the Legal Department at (206) 266-1742. Employees may also raise questions or report suspected violations through the Amazon Ethics Line. Calls to the Ethics Line are answered by an independent third party and may be anonymous upon request. To access up-to-date phone numbers for the Amazon Ethics Line, go to http://amazon.ethicspoint.com.

More information, including the entire Code of Business Conduct and Ethics, is available from your Human Resources representative and at the following links on the intranet:

- Code of Business Conduct and Ethics
- Code of Conduct Frequently Asked Questions
- Gift Reporting Guidelines
- Gift Reporting Form

# Confidential Information

Customer information and proprietary information concerning the business of Amazon must be protected. Such confidential information or data is not to be discussed within the company or outside, except as the normal course of business makes necessary. Confidential information includes information about new products and services, transactions, financial data, ordering and shipping techniques, volume of shipments, lists of customers or suppliers, and any other proprietary information acquired through your employment with Amazon. The complete Confidential Information Guidelines and Policy is available from your Human Resources representative or on the intranet at: Confidential Information and NDA Guidelines Policy

As a condition of your employment, you are required to sign an employee confidentiality agreement on or before your first day of employment. If, for some reason, you have not yet signed this agreement, please let your Human Resources representative know so that they may provide you with one to sign. This agreement grants Amazon exclusive rights to all proprietary information and inventions developed as a result of your employment with Amazon; requires you to maintain confidentiality of proprietary information; and restricts may restrict your ability to engage in competitive activities for 18 months after you discontinue employment with Amazon.

In some circumstances, the disclosure of employee information can create security or competitive risks. For these reasons, confidential employee information must be maintained with appropriate confidentiality. However, nothing in this policy prohibits non-supervisory employees' communications about their own or their coworkers' wages, hours, or working conditions. For more information, see: Confidential Employee Information FAQ

## Cost Efficiency

One important factor in our long-term success will be our ability to keep costs low. Accordingly, we have developed guidelines for general spending and for travel and entertainment.

## Purchasing and Spending Authorization

All associates should understand and contribute to the company's philosophy of spending money carefully and wisely. Spending should be done conservatively, with the overall goal of spending money only in order to increase the value to our customers. Associates should plan ahead as much as possible, and purchases should be approved in advance of being made. The complete Purchase and Spending Authorization policy is available from your Human Resources representative or on the intranet at: Purchase and Spending Authorization Policy

## Travel and Entertainment

Upon approval, associates will be reimbursed for reasonable travel, entertainment, and other expenses incurred in connection with company business. With manager approval, corporate credit cards may be issued to full-time regular associates strictly for business and travel purposes. Any associate who will travel or entertain for business purposes should review the complete Travel and Entertainment policy, which is available from your Human Resources representative or on the intranet at: Global Travel Entertainment Policy

AMZ-BRY000233

# Amazon Rental Vehicle Policy

The following is intended for all employees while driving in vehicles rented for use on behalf of Amazon. Renters must adhere to the conditions below and any violation of this policy may result in corrective action, up to and including termination of employment.

- ☐ Rental vehicles should be procured through Carlson Wagonlit with one of Amazon's preferred vendors: National/Enterprise or Avis.

- ☐ When operating a rental vehicle, Amazon employees are expected to behave as a reasonable person would under the same or similar circumstances.

- ☐ Vehicle operators must comply with Amazon's Drug & Alcohol Policy and all applicable laws when operating rental vehicles.

- ☐ Negligence or improper conduct leading to damage of the rental vehicles is prohibited. All vehicles must be maintained in accordance with the rental agencies' requirements.

- ☐ Any vehicle accident/injury must be reported immediately to Corporate Risk Management regardless of severity.

- ☐ Possession of dangerous or unauthorized materials, such as explosives or firearms, is prohibited.

- ☐ Drivers must be approved Amazonian business renters. Drivers are responsible for ensuring that all passengers act in accordance with this Rental Vehicle Policy for Amazon business or personal use.

Please reference the following Inside pages to understand Amazon's rental car and corporate travel policies.

- Rental Car
- Corporate Travel Policy

Use this Notice of Loss form for reporting an auto accident.

# Drug and Alcohol Use

Being under the influence of alcohol while at work or while engaged in work-related activities is prohibited. Alcohol may be served on company premises or at work-related events only when authorized by management. On such occasions, associates are expected to act responsibly, drink alcohol only in reasonable quantities, and make plans to avoid driving after drinking alcohol. The use or possession of illegal drugs or inappropriate use of prescription drugs while at work or engaged in work-related activities is also prohibited. Violation of this policy may lead to discipline, up to and including termination. Some departments, organizations, or sites may establish more detailed drug and alcohol policies, including policies pre-employment or other drug and alcohol testing. Some departments, organizations, or sites may prohibit alcohol at all company functions. Check with your Human Resources representative for local drug and alcohol policies.

# Employees with Disabilities

Amazon complies with the Americans with Disabilities Act and applicable state and local laws prohibiting discrimination in employment based on a person's physical, mental or sensory disability. All employment practices, employment decisions, and activities are conducted on a non-discriminatory basis. Amazon also will provide reasonable accommodation for qualified individuals with a disability where medically necessary to perform one's job, except in cases in which the reasonable accommodation would create an undue hardship or a health or safety risk would exist.

If you have a disability that affects your ability to perform your job and you feel you need an accommodation, please contact your manager or Human Resources Business Partner. Amazon will work with you to determine if a reasonable accommodation is necessary and appropriate. The company may request medical certification to verify the

AMZ-BRY000234

existence of a disability or work restrictions, to identify potential reasonable accommodations, or to determine any safety or health risks. In addition, Amazon may contact your healthcare provider(s) in appropriate situations. Amazon will treat information regarding your medical conditions and restrictions as confidential, except to the extent your manager or other individuals need to know about your medical situation to help with the reasonable accommodation process.

# Employment Outside of Amazon

Amazon does not allow outside employment without written approval from your manager. Holding another job may adversely affect job performance, efficiency, and/or attendance. If an associate finds it necessary to seek outside employment, the associate must discuss this matter with his or her manager and gain written approval from a department vice president or fulfillment center general manager. Failure to obtain written approval to hold outside employment may be grounds for discipline, up to and including termination of employment. If approval is granted and your manager later determines that your outside employment conflicts with your performance or company interests, you will be requested to stop such activity immediately as a condition of continued employment. Some sites may permit outside employment for hourly associates during low volume cycles or as business interests dictate.

# Employment of Relatives and Friends

Although preferential treatment in employment of relatives and friends is not permitted, we do encourage associates to refer qualified applicants for any open positions. To minimize the potential for actual or perceived conflicts, Amazon does prohibit direct or indirect supervisory relationships between relatives, except in unusual circumstances.

# Employment References

It is Amazon's policy to provide prospective employers with only the dates of employment and positions held by former associates. An associate may also request that Amazon provide additional information regarding his or her work performance to prospective employers who request such information. Any associate who requests additional information beyond dates of employment and positions held must sign the authorization form attached to the policy before any information will be communicated to a prospective employer. Managers who receive requests for an employment reference must first confirm with Human Resources that an authorization form has been signed by the associate before providing a reference. The complete Employment Reference Policy and authorization form is available from your Human Resources representative or on the intranet at: Employment References

# Equal Employment Opportunity

Amazon firmly believes in equal employment opportunity for all and the importance of each associate as an individual. It is the policy of Amazon that there will be no discrimination against any associate or applicant for employment on the basis of race, religion, creed, color, national origin, citizenship, marital status, sex, age, sexual orientation, gender identity, veteran status, political ideology, ancestry, the presence of any physical, sensory, or mental disabilities, or other legally protected status. This policy pertains to all personnel-related activities, including selection, hiring, benefits, work schedules, promotions, demotions, transfers, recruiting, advertising, reductions-in-force, terminations, and all forms of compensation and training. A strong commitment by each associate is necessary to ensure equal employment opportunity for all.

Any associate who believes that he or she has been discriminated against or has suffered from harassment or retaliation for reporting discrimination or harassment should report it to his or her manager, or to any member of management at Amazon, or to Human Resources. Upon receipt of the complaint, the company will conduct a prompt investigation and will take appropriate corrective action as may be warranted.

Amazon will not tolerate or permit any associate to suffer retaliation of any kind or to suffer any adverse employment action as a result of reporting an unlawful discrimination or harassment claim. Amazon will not discharge or in any other manner discriminate against employees or applicants because they have inquired about, discussed, or disclosed their own pay or the pay of another employee or applicant. However, employees who have access to the compensation information of other employees or applicants as a part of their essential job functions cannot disclose the pay of other employees or applicants to individuals who do not otherwise have

AMZ-BRY000235

access to compensation information, unless the disclosure is (a) in response to a formal complaint or charge, (b) in furtherance of an investigation, proceeding, hearing, or action, including an investigation conducted by the employer, or (c) consistent with the contractor's legal duty to furnish information.

# Health and Safety

Amazon places a high value on the health and safety of its associates. As part of its commitment to providing a safe workplace for all associates, Amazon complies with all applicable regulations and has adopted a core safety policy that no task is so important that an associate must violate a safety rule or put themselves at risk of injury or illness in order to get it done. Ensuring a healthy and safe work environment is a responsibility that must be shared equally by each associate. Associates are encouraged to actively participate in identifying ways to maintain a safe and healthy workplace. All managers are responsible for the safety of their associates and are expected to monitor the workplace for unsafe conditions, procedures, or behaviors and take prompt action to eliminate any hazards.

# Safety Programs and Training

Amazon has developed an extensive safety program that is regularly reviewed and improved. During their orientation, associates receive important information about safety procedures as appropriate for their site. Business groups or separate sites may develop and publish safety procedures, guidelines, or rules specific to their operations or site. The safety policy for our fulfillment centers, for instance, is available from your Human Resources representative or on the intranet at: Safety, Health, & Environmental Policies

Where appropriate, Amazon also provides regularly scheduled safety training that provides guidelines on safe work practices to minimize workplace hazards. Associates are expected to be aware and comply with general safety guidelines, as well as the policies and procedures that pertain to each work site, and to use safe equipment, proper protective equipment, and the proper tools that are appropriate for each job.

# Reporting Accidents and Concerns about Workplace Safety

Associates are responsible to and should immediately report any accidents or unsafe work practices to their immediate manager, Safety manager, Human Resources, or any member of Global Security. In the event of a work-related accident that results in injury or illness, associates must immediately notify their manager, Human Resources, and Global Security. Such reports are necessary to comply with federal and state laws and to initiate insurance and workers' compensation benefits coverage for the associate's medical expenses and lost salary. Associates will be required to complete an "Employee Report of Incident" form and sign a copy of their "Supervisors Incident Investigation Report of Injury" form. These forms are available from your Human Resources representative or on the intranet at: Accident Reports

No retaliation of any kind will be permitted or tolerated against an associate for making a workers' compensation claim or reporting unsafe work practices. If associates believe that they have been retaliated against, they should report this immediately to their manager or to their Human Resources Business Partner.

For more information regarding work place injuries, including state specifics, please follow this link: Workers' Compensation Information

# Information Security

This is a summary of the Amazon Information Security Policy that sets forth the rules that associates must abide by as a condition of being provided access to the company's technology and information assets. The complete Information Security Policy and related policy documents address a wide variety of important, practical issues, including the use of instant messaging and handheld devices, protecting your passwords and the company's network, and other information security issues. You are strongly encouraged to review the complete Information Security Policy, which is available from your Human Resources representative or on the intranet at: https://policy.amazon.com

General Security Questions
Policy Specific Questions

AMZ-BRY000236

# Privacy

All email correspondence and other computer files created, stored, or transmitted on the company systems and all traffic generated on the company's network is the property of the company. While we will attempt to respect an associate's privacy, company management may access or monitor files, keystrokes, network traffic, and communication channels as circumstances warrant. Associates are expected to exercise discretion and good judgment and to demonstrate respect for each other's privacy and for company confidential information. Associates should not access any data beyond what they need to get their job done. Access to data other than that in one's own home directory or a shared department directory should be performed only with the explicit permission of the owner of that directory or when instructed by a manager. Similarly, associates should not sign up for any business-related list whose content is not appropriate for their job.

# Acceptable Use

The company provides some associates with computers and computer accounts for work-related purposes to perform job duties and to assist in intra-company communication. A computer account gives you access to the company's computer and email systems, as well as access to the Internet. Associates may only access the company network from centrally-managed (through "SMS" or "cmf") computers that comply with the *Desktop/Laptop Security Policy* (see: https://infosec.amazon.com/?ComputingDevices). As a condition of this access, associates are expected to respect the obligations and responsibilities associated with having a company computer account. Associates are also responsible for ensuring that electronic communication is effective, ethical, and lawful. The use of abusive, offensive, or profane language is prohibited. Fraudulent and obscene messages, or harassment of any kind, are also prohibited. Please keep in mind that associates' activity on the Internet reflects on the company.

## Protecting Data and Securing Access to the Company Network

Users are responsible for taking all steps to protect information and secure access to the company network, including the following:

- Passwords and Accounts
  - You are responsible for keeping your password private. Don't disclose your passwords to anybody.
  - Don't share your account (e.g., don't allow others use of your account).
- Email and Sharing
  - Never forward your email outside of the company (e.g., using a forward setting).
  - Never store any company data on a computer system outside the administrative control of Amazon (e.g., your home computer). Certain applications (including POP e-mail clients, etc.) store data locally and thus must not be used on personal, non-Amazon-issued computers.
- Computing Devices and Network Access
  - Any new connection or change to the company network (the data network that connects all our locations) must be approved by both Information Security (https://sword.amazon.com) and Network Engineering (network-eng@amazon.com).
  - Never connect an unauthorized modem, wireless card or other network device to any Amazon computer or network.
  - Never download and install unauthorized software (including Java applets and ActiveX controls) on your system. Note: While there is not a single list of authorized software for all users, for the majority of users is recommended to only install software that is approved by IT Support (deskside@amazon.com).
- Customer Data and Security
  - Never circulate customer information in electronic form other than by customer or order id. If you escalate a problem, refer to order nnn-nnnnnnn-nnnnnnn or to customer number nnnnnnn rather than to the purchase of "Item" by customer "CustomerName."
  - Always report unusual patterns in systems or network performance immediately (either to your department escalation point or to the IT operators at (206) 266-2187).
  - Always report a suspected security compromise immediately (see https://w.amazon.com/index.php/Infosec#Report_an_Information_Security_Incident)

AMZ-BRY000237

# Reporting Violations

Violations of the Information Security Policy must always be reported through a secure ticket to Information Security.

Violations should never be discussed with anyone outside Legal and Information Security unless approved by one of them.

Secure Ticket to Information Security

# Insider Trading

Because Amazon is a public company, we are subject to a number of legal requirements, including a prohibition on insider trading. Federal law prohibits any of the company's employees, directors, or consultant's associates, directors, or consultants from trading in Amazon securities based on material, nonpublic information. This means that if you have material information that has not been disclosed to the public by the company, you may not buy, sell, or enter into any other type of transaction involving any Amazon securities, including Amazon common stock. You may not give material nonpublic information to friends or family members or to any other third parties. Nor may you advise friends or family members or any other third parties to trade based on material nonpublic information. Certain associates and members of their households are also prohibited from trading in Amazon securities during certain periods each quarter, generally beginning on the first day of the last month of the company's fiscal quarter and ending on the third day following the quarterly earnings announcement. In addition, there may be other periods that associates are prohibited from trading that the company will announce from time to time. Certain associates are also required to pre-clear all transactions involving Amazon securities with the legal department.

In addition to being against our policy, insider trading is against the law. The federal penalties for insider trading include large fines and jail time. Every associate should review and become familiar with Amazon's complete Insider Trading policy, which is available from your Human Resources representative or on the intranet at: Insider Trading Guidelines

# Physical Security

## Badges and Other Important Information

Associates and other outsourced employees (contractors, vendors, etc.) must wear their ID/access badges in a visible manner at all times on company property and at company events. Visitors must check in with Security or Reception, be issued a visitor badge that should be worn in a visible manner, and be escorted while on company property. If associates see someone on company property without appropriate identification, they should either alert Security or ask the individual to show their identification.

Associates should also safeguard their access cards, codes, keys, passwords, computers, and other valuable property and equipment. Associates should not circumvent ordinary security systems or procedures and should report vulnerabilities to Amazon's security systems. It is the responsibility of each Amazon associate to adhere to all physical Security policies, procedures, processes and instructions given by a member of the Security staff in order to safeguard the relationship of trust with customers and employees alike. Other specific expectations regarding security are available from your Human Resources representative or on the intranet at:
http://globalsecurity.amazon.com/

You are encouraged to review these and other security policies relevant to your workspace at:
https://policy.amazon.com/

# Workplace Emergency Response

Associates are expected to treat each other, contractors, customers, and visitors with courtesy and professionalism. Amazon will not tolerate violence, threats of violence, or other intentional or reckless conduct by anyone that harms or threatens the safety of associates or others. Any associate who observes or

AMZ-BRY000238

experiences conduct that violates this policy or any situation that has a potential risk of workplace violence, should immediately report it to a manager, Human Resources, Safety manager, or any member of Global Security. Global Security can be contacted 24-hours a day by calling (206) 740-SAFE (7233) or visit the Business Assurance Center page on Inside Amazon. Emergencies and imminent threats of harm should be reported immediately to the police or other emergency personnel by dialing 911.

The complete Workplace Emergency Response policy is available from your Human Resources representative or on the intranet at: Workplace Emergency Response

# Inspections on Company Premises

To provide a safe workplace and to protect associate and company property, the company reserves the right to conduct a search of any area on company premises. This includes an associate's office, workspace, or locker. The Company also reserves the right to inspect personal articles carried to or from Company premises.

These articles may be accessed by authorized personnel of the Company, who may enter your office, workspace, or locker in order to do so. Typically, the Company will conduct searches on Company premises when it receives a report of or suspects a violation of the Company's Standards of Conduct. However, the Company reserves the right to inspect for any purpose. The Company also may use various electronic detection devices, such as walk-through or hand-held metal detectors. Refusal to permit the company to conduct the searches identified in this section may lead to disciplinary action, up to and including termination of employment.

# Solicitation

The orderly and efficient operation of Amazon's business requires certain restrictions on solicitation of associates and the distribution of materials or information on company property. This includes solicitation via company bulletin boards or email or through other electronic communication media.

The following activities are prohibited:

- Solicitation of any kind by associates on company property during working time;
- Distribution of literature or materials of any type or description (other than as necessary in the course of your job) by associates in working areas at any time; and
- Solicitation of any type on company premises at any time by non-associates.

Examples of prohibited solicitation include the sale of merchandise, products, or services (except as allowed on forsale@Amazon alias), soliciting for financial contributions, memberships, subscriptions, and signatures on petitions, or distributing advertisements or other commercial materials.

The only exceptions to this policy are communications for company-sponsored activities or benefits, or for company-approved charitable causes, or other specific exceptions formally approved by the company. All communications under these exceptions must also have prior approval of Human Resources. Violation of this policy may result in immediate disciplinary action, up to and including termination of employment.

# Anti-Sex Buying Policy

It is against Amazon's policy for any employee or Contingent Worker to engage in any sex buying activities of any kind in Amazon's workplace or in any work-related setting outside of the workplace, such as during business trips, business meetings or business-related social events. It likewise is prohibited to engage in sex buying activities in using any company property, equipment or software (including, without limitation, company credit cards, expense accounts, buildings, parking lots, grounds, computers, storage devices, websites, social media channels, networks, vehicles, and phones). This prohibition applies regardless of whether the activity is legal or tolerated in a particular jurisdiction, foreign or domestic.

AMZ-BRY000239

# Workplace Harassment

At Amazon.com, we believe that our associates should be treated with respect and dignity. Therefore, we will not tolerate inappropriate conduct, including discriminatory harassment, of any kind based on race, religion, creed, color, national origin, citizenship, marital status, sex, age, sexual orientation, gender identity, veteran status, political ideology, ancestry, or the presence of any physical, sensory, or mental disabilities, or other legally protected status.

Workplace harassment policy

Conduct prohibited by this policy is unacceptable in the workplace and in any work-related setting outside the workplace, such as during business trips, business meetings, or business-related social events. This policy applies to the conduct of all Amazon.com associates as well as to the conduct by or toward non-employees involved in our business, such as subcontractors, consultants, clients, customers, or vendors. This policy is intended to be consistent with federal and state laws that prohibit discriminatory harassment in the workplace. For associates in California, see the Amazon Harassment Policy for California Associates. For associates in New York State, see the New York Sexual Harassment Information Sheet.

## Sexual harassment

One type of harassment prohibited by this policy is sexual harassment. Sexual harassment generally consists of unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when (1) submission to or rejection of such conduct is the basis for employment decisions affecting an applicant or associate, or (2) such conduct has the purpose or effect of creating a sexually offensive, hostile, or intimidating work environment that interferes with a person's ability to perform the job.

Examples of sexual harassment include but are not limited to the following:

- requests or demands of sexual favors in exchange for favorable or preferential treatment;
- sexual jokes or use of sexually explicit language;
- unwelcome or unwanted physical contact;
- sexually degrading words used to describe an individual;
- sexual comments injected into business communications;
- the communication of sexually offensive material via electronic mail or voicemail;
- graphic verbal comments about an individual's body;
- physical or verbal abuse of a sexual nature;
- unwelcome sexual flirtations, advances, or propositions;
- downloading, circulating, or displaying in the workplace, sexually suggestive objects or pictures, including such material from the internet; and
- harassment based on an individual's sex or gender stereotype.

## Other harassment

Workplace harassment prohibited under this policy is not limited to sexual harassment. Statements or actions that offend or demean a person based on their race, religion, creed, color, national origin, citizenship, marital status, age, sexual orientation, gender identity, veteran status, political ideology, ancestry, or the presence of any physical, sensory, or mental disabilities are also inappropriate and are strictly prohibited.

## Work-related exposure to potentially offensive materials

In many areas of our business, we create, market, and distribute products and programming that is adult themed, sexually explicit, or includes images and speech related to personal characteristics such as race, religion, sexual orientation, gender, gender identity, national origin, disability, and age.

Associates may be exposed to materials that some may consider offensive. While this exposure is often unavoidable in our work environment, harassing conduct directed at someone because of any protected personal characteristic is strictly prohibited. Associates should discuss any concerns about the nature of our business or their work environment with their supervisor, a department manager, or Human Resources.

AMZ-BRY000240

## Consensual relationships

At times, consensual, romantic, and/or sexual relationships between co-workers may occur. When such a relationship is between an associate who has supervisory authority and one who does not, an actual or perceived conflict of interest may exist. Therefore, these situations should be avoided. If such relationships arise, they will be considered carefully by Amazon.com, and appropriate action will be taken. Such action may include a change in the responsibilities of the people involved, re-assignment or transfer of location within the Company, or termination of employment.

If applicable, see the Consensual Relationship Policy for Fulfillment Center and Customer Service locations.

## Responding to inappropriate conduct or possible incidents of harassment

All associates, regardless of position, are responsible for ensuring that our workplace is free from offensive behavior and harassment. All associates must avoid any conduct that may be perceived as offensive, harassing, or both.

Associates who observe or experience conduct in the workplace that they believe may be inappropriate or harassing by anyone, including supervisors, coworkers, customers, or visitors, may advise the offender that their behavior is unwelcome and request that it stop. In addition, associates who encounter such behavior should report it immediately to their supervisor, to a department manager, or to Human Resources.

It is important that associates feel comfortable reporting such incidents. Therefore, no retaliation of any kind is permitted or tolerated against an associate for reporting a suspected incident of harassment or participating in an investigation or proceeding related to harassment. If associates believe that they have been retaliated against for making a good faith complaint of harassment or discrimination or participating in an investigation or proceeding related to harassment, they should report this immediately to their supervisor, a department manager, or a Human Resources Business Partner. You can find your Human Resources Business Partner in the Contacts Tool.

Amazon.com will promptly investigate any reports of workplace harassment or inappropriate conduct and will enforce appropriate disciplinary action where necessary. To the extent possible, the privacy of the associate, the alleged harasser, and any witnesses will be protected against disclosure, except as needed to conduct the investigation.

Prompt, corrective action will be taken when appropriate. This action may include disciplinary action such as a warning, reprimand, reassignment, temporary suspension with or without pay, or termination of employment, as Amazon.com believes appropriate under the circumstances. False complaints of harassment, discrimination, or retaliation that are not made in good faith may be the subject of similar appropriate disciplinary action.

AMZ-BRY000241

# Appendix - Standards of Conduct

## Standards of Conduct

The Standards of Conduct are a list of examples of infractions that may result in corrective action, up to and including termination of employment. The Standards of Conduct are only guidelines. It is not possible to list all the forms of behavior that are considered unacceptable in the workplace, and the Standards of Conduct is not intended to be all-inclusive or exhaustive. As an at-will employer, Amazon reserves the right in all circumstances to apply any level of corrective action as appropriate, up to and including immediate termination of employment, without prior corrective action or notice for conduct in either category or for conduct not described in the Standards of Conduct. Employment with Amazon is at the mutual consent of Amazon and the associate, and either party may terminate that relationship at any time, with or without cause, and with or without advance notice.

## Category 1

The following work conduct infractions are regarded as extremely serious, and termination of employment may result following one offense:

- Disrespect or rudeness to an Amazon customer
- Theft or inappropriate removal or possession of property
- Assaulting, threatening, intimidating, coercing, or interfering with supervisors or fellow associates
- Making unauthorized statements on behalf of the company to the press or in any public forum (as only the company's authorized spokespersons may make authorized statements)
- Use or possession of dangerous or unauthorized materials such as hazardous chemicals or explosives, or use or possession of firearms, knives, explosive devices of any kind, or weapons of any kind
- Violation of the company's Health and Safety policy including possession, distribution, sale, transfer, or use of alcohol or illegal drugs in the workplace, while on duty or on breaks, or while operating employer-owned or leased vehicles or equipment
- Fighting or threatening violence in the workplace
- Gross misconduct
- Gross negligence
- Sexual or other unlawful or unwelcome harassment
- Making, publishing, or repeating knowingly or maliciously false statements concerning an associate, the company, or its products
- Discriminating against a fellow associate or prospective associate on the basis of race, religion, creed, color, national origin, citizenship, marital status, sex, age, sexual orientation, gender identity[1], veteran status, political ideology, ancestry, or the presence of any physical, sensory, or mental disabilities or other legally protected status
- Negligence or improper conduct leading to damage of employer-owned, employer-leased, or customer-owned property
- Insubordination or intentional disregard of instructions
- Falsification of personnel or other company documents/records, including employment application
- Unauthorized removal of company documents
- Unauthorized disclosure of business "secrets" or confidential information
- Intentionally making entries on another associate's time card/sheet, or falsely altering a timekeeping document
- Leaving company premises without permission during assigned work hours (unpaid meal periods are not "work hours" for purposes of this policy)
- Failure to fully cooperate with company investigations (except for questions regarding labor organizations or protected concerted activity)
- Violation of safety policies, procedures, standards, regulations, or laws
- Creating a hazardous or dangerous situation
- Engaging in any conduct that places the health and safety of any person at risk
- Violation of personnel policies
- Violation of security policies, procedures, processes, or instructions
- Violation of the Anti-Sex Buying Policy.

AMZ-BRY000242

## Category 2

The following work conduct infractions are considered serious and generally result in corrective action:

- Unauthorized absence, excessive absenteeism, or any absence without notice
- Failure to carry out a work assignment in an efficient, responsible, and acceptable manner
- Abusive, vulgar, or harassing language to a supervisor, fellow associate, or vendor
- Failure to adhere to starting time, quitting time, or break time policies, or wasting time
- Unauthorized use, misuse, or abuse of equipment, products, material, or property belonging to other associates, belonging to the company, or in the company's custody
- Leaving a company-assigned work area during scheduled working hours without permission
- Violations of the no-solicitation, no-distribution policy
- Creating or contributing to disorderly or unsanitary conditions
- Failing to report or remedy any unsafe conditions, procedures, or behaviors
- Failure to immediately report an accident/injury, regardless of severity, when it occurs on company property, or while performing company business

---

[1] Updated on 12.30.08 (EEO, Workplace Harassment, Other Harassment, Category 1 discrimination)

AMZ-BRY000243

| | |
|---|---|
| **From:** | Laughinghouse, Tyler S. |
| **To:** | Cabrera, Emily; Tooker, Lynda |
| **Cc:** | Enjamio, Juan; Powell, Kurtis; Brown, Alyson |
| **Subject:** | Amazon.com Services, LLC - Job Titles |
| **Date:** | Wednesday, October 5, 2022 10:35:38 AM |

---

> **CAUTION:** The sender of this message is external to the NLRB network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to nlrbirc@nlrb.gov.

Emily & Lynda,

Below are the job titles for the individuals you requested.

Christine Hernandez – ER Manager
Joe Malheiro – Sr. HR Manager
LaShanta Twitty - Sr. HR Manager
Jamie Diamond - Sr. HR Manager
Svannah Brumfield – Regional Sr. HR Manager
Caitlin Van Ermen - Sr. HR Manager
Anna Leonardi – HR Manager
Jenna Edwards – Sr. HR Manager
Felipe Santos –General Manager
Zachary Marc – Assistant General Manager
Tracy Weishalla - Director, USNS Central Ops PE
Tyler Grabowski – Sr. HR Business Partner
Neha Viswanath – HR Manager

Thanks.



**Tyler Laughinghouse**
Associate
TLaughinghouse@HuntonAK.com
p 804.788.7309
bio | vCard

Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

HuntonAK.com

EXHIBIT NO. GC-59 RECEIVED x REJECTED _____

CASE NO 29-CA-280153 CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 2 DATE: 10-05-2022 REPORTER: Barrington Moxie

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

AMAZON.COM SERVICES LLC,       Case No.  29-CA-280153

and

DANA JOANN MILLER,
AN INDIVIDUAL,

and                        Case Nos. 29-CA-286577
                                       29-CA-287614
AMAZON LABOR UNION.          29-CA-290880
                                       29-CA-292392
                                       29-CA-295663

———————————————

———————————————

RESPONDENT EXHIBITS

Place: Brooklyn, New York (via Zoom Videoconference)

Dates: October 5, 2022

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885





INSIDE LOOK: How NYC Plans to Defeat Amazon a...

## What is the Amazon Labor Union?

A union is when workers come together and use their collective power to negotiate workplace improvements with their employer. The Amazon Labor Union is a group of amazon workers dedicated to building a strong, effective, and democratic union.

## Why do we need a Union?

EXHIBIT NO. R-1 _____ RECEIVED ___ x ____ REJECTED _____

CASE NO 29-CA-280153 ET/AL _____ CASE NAME Amazon.Com Svs, LLC _____

NO OF PAGES 6 _____ DATE: 09-20-2022 _____ REPORTER: Barrington Moxie _____

company successful.

In the midst of COVID-19, it's become more obvious than ever that the company values profits over people, and will consistently make decisions that harm workers if it means saving money. The goal and purpose of the Amazon Labor Union is to change the relationship between the company and its workers so we can negotiate a better, safer, and more equitable workplace.

## What are the benefits?

An Amazon Labor Union will have the power to enter contract negotiations with the company. In these negotiations, we can secure:

- **Pay Raises:** Higher, more competitive wages that reflect the value Amazon employees create, as well as the return of bonuses such as stock awards, etc. (Union members make roughly $11,000 more per year than non-union members)

- **Time-Off Increases:** A reasonable increase to the amount of distributed Paid Time Off (PTO) and Vacation Time, as well as an end to the Unpaid Time Off (UPT) system.

- **Policy Improvements:** Including, but not limited to:
  - Longer breaks
  - More reasonable rates
  - COVID protections
  - Less mandatory overtime

- Better promotion policies
- Guaranteed holiday time off
- And more. With a union, everything is on the table.

- *A Right to Employee Advocacy:* With union protection, Amazon would no longer be able to fire employees without just cause. Workers deserve to have an advocate in the event of wrongful termination or mistreatment. HR only exists at Amazon to protect the company, not the workers. The only people who will advocate for our rights, interests, and protection are our fellow workers.

## How does the union work?

In order to form a union, we will need to file for an election with the National Labor Relations Board (NLRB). In the election, over 50% of the votes must be YES in order to officially form the union. The ALU will then be federally recognized and the company will be mandated to negotiate with us.

After a successful vote, every worker in the facility becomes a member of the bargaining unit. Union dues will be taken from each paycheck, the cost of which will be decided democratically by union members, but will roughly equal a few dollars each week. Union dues are the membership fees of the union, and the cost is offset by the wage increases and other benefits that our union negotiates for us workers. Dues are crucial to keep the union strong and well-funded, so we can have the resources to give ourselves the fair working conditions we deserve.

## What are my rights? Can Amazon fire me for unionizing?

HOME     ABOUT     CONTACT

forming a union.

Amazon cannot interfere with your rights, threaten or coerce you, discriminate or retaliate against you based on union sentiment, or refuse to bargain with your union once established. Don't let Amazon's greed and scare tactics get in the way of you improving your workplace!

HOME ABOUT CONTACT

# The Amazon Labor Union Solidarity Fund

**$51,350** raised of $60,000 goal



Donate now

© Copyright 2012 - 2021  |  All Rights Reserved




# Message from CEO Dave Clark: New Opportunities to Grow Your Skills and Careers

**Respondent's Ex. 2**

September 9, 2021

♡



Dear Amazonians,

One of the programs I've been most proud of in my time at Amazon is Career Choice. If you're not yet familiar with it, it's a benefit we provide to front-line employees that pays for education in fields that will lead them to in-demand, high-paying jobs—regardless of whether they stay with the company or not.

We launched Career Choice in 2012 and tens of thousands of employees have participated. We love seeing that many of you are thinking about your own goals, and we've been thinking about what else we could do to help. As you know, earlier this year we announced *Strive to be Earth's Best Employer* as a new Leadership Principle and—as part of our journey to getting there—I have an exciting announcement.

As we continue working to support your career advancement at Amazon, or beyond, we are expanding Career Choice so you have more options, available at no cost to you, even if you're new to Amazon.

Career Choice will now fund full college tuition (bachelor's degrees) as well as high school degrees (GED), and English as a Second Language (ESL) proficiency certifications on top of our current offerings. And you don't have to wait to hit 12 months as an Amazon employee to become eligible – you can apply after 90 days, and participate for as many years as you work for Amazon. These changes will go into effect in January. We're also launching three new upskilling programs, for a total investment in our people of $1.2 billion.

We're doing this because, whether you're one of the 400,000 people who has joined us since the pandemic began or a veteran Amazonian, you've made an important contribution to our success. Now, we want to contribute to yours. The past 18 months you have made it clear to us that skills training and education are important to you. Since the pandemic began, we've seen a surge in applications to our upskilling programs, reflecting your interest in bolstering your skills and future-proofing your careers. We've heard you, and we're responding.

I encourage you to check out our Career Choice website and explore our full roster of education and skills training programs on our 2025 Upskilling page, which will be updated soon. I hope many of you will take advantage of these opportunities, whether your journey continues with Amazon (and I hope it does) or leads you to another career.

As always, thank you for everything you do.

—Dave

Amazon_000092

EXHIBIT NO.___R-2_____ RECEIVED ___x____ REJECTED _____

CASE NO ___29-CA-280153_____ CASE NAME ___Amazon.Com Svs, LLC_____

NO OF PAGES ___2_____ DATE: ___10-04-2022_____ REPORTER: ___Barrington Moxie_____

# HOW MUCH COULD YOU BE PAYING THE ALU?
## THE ALU KEEPS CHANGING ITS STORY ABOUT DUES.

| | The ALU Constitution says… "$5 every 2 weeks" | But the ALU Website says… "$5/week Full Time; $2.50/week Part Time; $6.50/week T3" | And an ALU flier says… "1%" of your pay |
|---|---|---|---|
| **WHEN THE ALU SAYS…** | | | |
| **YOU PAY…** | $130/year | $260/year Full Time; $130/year Part Time; $338/year T3 | Up to $447.50/year Full Time T1; Up to $506.48/year Full Time T3 |
| **ALU GETS…** | Apx. $1.1 Million per year | Apx. $1.5 Million per year | Apx. $3.1 Million per year |

**The ALU can't even decide how much they'll charge you in dues.** Are you sure you want them negotiating your pay?



UNPACK IT
GET THE FACTS ABOUT UNIONS

GET INFORMED AT
UNPACKUFR8.COM



SCAN HERE

EXHIBIT NO.___R-3_____ RECEIVED ___x____ REJECTED _____

CASE NO ___29-CA-280153_____ CASE NAME ___Amazon.Com Svs, LLC_____

NO OF PAGES ___2_____ DATE: ___10-04-2022____ REPORTER: ___Barrington Moxie_____

# The Truth About
# PAY



**AMAZON GIVES YOU SCHEDULED
PAY RAISES YOU CAN COUNT ON.**

THE UNION GIVES YOU NOTHING
BUT CAMPAIGN PROMISES.

# La verdad sobre el
# PAGO

**AMAZON LE DA AUMENTOS
DE SUELDO PROGRAMADOS CON
LOS QUE PUEDE CONTAR.**

EL SINDICATO NO LE DA NADA
MÁS QUE PROMESAS DE CAMPAÑA.





**LDJ5**
SC

STATEN ISLAND
amazon.

EXHIBIT NO.___R-4_____  RECEIVED ____x____ REJECTED _____

CASE NO ___29-CA-280153_____ CASE NAME ___Amazon.Com Svs, LLC_____

NO OF PAGES ___3_____ DATE: ___10-04-2022____ REPORTER: ___Barrington Moxie_____



STATEN ISLAND
amazon

—sc—
LDJ5

From Day One at Amazon, you have pre-scheduled raises to $21.50 for T1 or $24.35 for T3 at LDJ5. Our pay increases give you certainty. Amazon also reviews its compensation and benefits regularly to be sure we remain competitive.

Do you know any warehouse that pays what the ALU is promising? Do you know any other job that matches Amazon's Shift Choice and benefits?

**Promises are not guarantees.**
**Amazon guarantees pay increases.**
**The union guarantees nothing.**



**LEARN MORE AT**
**UNPACKLDJ5.COM**

**LDJ5**
526 Gulf Avenue
Staten Island, NY 10314

Desde el primer día en Amazon, tiene aumentos preprogramados a $21.50 para el T1 o $24.35 para el T3 en LDJ5. Nuestros aumentos salariales le dan certeza. Amazon también revisa compensaciones y beneficios regularmente para estar seguros de seguir siendo competitivos.

¿Conoce algún depósito que pague lo que el ALU le promete? ¿Conoce algún otro trabajo que se compare al Shift Choice y los beneficios de Amazon?

**Las promesas no son garantías.**
**Amazon garantiza aumentos salariales.**
**El sindicato no garantiza nada.**





**OBTENGA MÁS INFORMACIÓN EN**
**ES.UNPACKLDJ5.COM**

1275



EXHIBIT NO. R-5 RECEIVED x REJECTED _____

CASE NO 29-CA-280153 CASE NAME Amazon.Com Svs, LLC

NO OF PAGES 2 DATE: 10-05-2022 REPORTER: Barrington Moxie

# VOLUME III

# PLEADINGS

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**DIVISION OF JUDGES**
**NEW YORK BRANCH**

**AMAZON.COM SERVICES INC.**

        **and**                **Case No. 29-CA-280153**

**DANA JOANN MILLER, an Individual**

        **and**                **Case Nos.**   **29-CA-286577**
                                            **29-CA-287614**
**AMAZON LABOR UNION**                     **29-CA-290880**
                                            **29-CA-292392**
                                              **29-CA-295663**

## ORDER ON HEARING

The amended complaint in this case provides that the record will open on September 19, 2022 and the hearing may be conducted remotely by videoconference using Zoom technology. During a conference call, the Respondent requested an in-person hearing while the other parties requested a Zoom hearing. For the reasons discussed below, I am ordering that the hearing be conducted remotely by Zoom technology.

The Centers for Disease Control and Prevention (CDC) has identified the COVID-19 community level in Kings County New York as high. This level triggers a masking requirement under the NLRB field office safety protocols and the masking of witnesses could impact credibility determinations. Further, I am not in a strong position to determine the safety or risk associated with an in-person hearing. I am not a medical expert or an expert in building ventilation. I do not know the age or underlying medical conditions of participants. Ultimately, I do not know the odds that an in-person hearing will result in a participant contracting COVID or that such an illness will have serious consequences (e.g., long COVID, hospitalization, or death).

On the other side of the equation, I find the utility of an in-person hearing and difficulties associated with a virtual hearing less compelling. We have been holding Zoom hearings for over 2 years. Certainly, we have had problems in virtual hearings with audio, connectivity, and electronic documents. However, such problems have not proved insurmountable or particularly difficult to resolve. I have not found credibility determinations more difficult to make in virtual hearings than in-person hearings. Further, in-person hearings are not without inconveniences during as issues of masking, vaccination, testing, air ventilation/filtration, hygiene, and physical distancing must be accounted for. In this case, for example, the General Counsel has represented that Region 29 does not have a hearing room large enough to allow for social distancing.

Ultimately, in my opinion, experience has taught us that virtual technology is a satisfactory method of holding hearings during an ongoing pandemic (particularly when the CDC has designated the community COVID level as high) and I will order the same.

The virtual hearing will be conducted in accordance with the following instructions.

## Zoom Invitations

Before the trial, I will send the parties a Zoom invitation on Microsoft Outlook. The parties may share the invitation with other participants. Participants will be placed in an online waiting room until they are admitted to the meeting.

## Responsibilities of Counsel, Witnesses, Interpreters, Waiting Room, and Breakout Rooms

Counsel will be responsible for ensuring that their witnesses have access to equipment, internet, and training necessary to fully participate in the Zoom video hearing. Although it is possible to access a Zoom meeting by a cellular connection, wi-fi generally provides a more stable connection. Accordingly, counsel and their witnesses should use a wi-fi connection to access the meeting. If counsel anticipates that their witnesses may have problems with equipment and/or an internet connection, the other parties and I should be notified ahead of time.

Subject to a potential sequestration order, the parties are not restricted from inviting individuals of their choosing to access the Zoom hearing. If a sequestration order is in place, counsel will be responsible for administering it.

Only one attorney for each party shall be unmuted at any given time in order to avoid extraneous sound and audio feedback (which occurs when two devices are unmuted and accessing the meeting from the same space). Further, in addition to being muted, the video feed of individuals other than myself, counsel, and the witness should be stopped. The Zoom video settings can be set to "hide non-video participants" (the video box of people who have stopped their video feed will be removed from the gallery view) in order to avoid confusion caused by having too many video participant boxes on the monitor.

Witnesses may not use virtual backgrounds. Other participants may use virtual backgrounds.

Witnesses shall not have any surreptitious communication with anyone or viewnon-exhibit materials while testifying. I will instruct each witness to that effect when I administer the oath.

The other parties and I must be notified in advance of the hearing if interpreters will be used. Interpreters should be prepared to provide consecutive translations as it is unlikely that simultaneous translation will be possible on the Zoom platform.

At my discretion, witnesses may be temporarily removed from the primary hearing room and returned to the waiting room if it is necessary to discuss an issueoutside the presence of the witness.

If counsel desire to consult with each other or speak with clients (other than a client on the witness stand), they may ask to be placed in a private breakout room. Conversations in a breakout room cannot be heard by people outside of it.

**Documents**

A SharePoint page will probably be made available for uploading documents into file folders and accessing those documents. The parties may create and use electronic folders as they deem necessary. Please note that I will not access or review documents before they are marked for use as exhibits. If counsel would like additional people to have access to the SharePoint page, the names and email addresses of those individuals should be emailed to me. Please be advised that some individuals have had difficulty gaining access to case SharePoint pages. Therefore, the parties should be prepared to exchange documents by email or some other form of electronic transmission if necessary.

As it has been our experience that video hearings can be cumbersome with regard to the use and exchange of documents, it will be important for the parties to prepare and exchange documents in advance. Accordingly, I strongly encourage the parties to exchange subpoenaed records and exhibits no later than September 16, 2022. Exhibits need not be produced in advance if the introducing party has any reason to withhold them. The purpose of this direction is to facilitate an efficient hearing and not to exclude documents because they have not been produced in advance of the hearing.

The Zoom "Share Screen" function will likely be used as the primary method of presenting exhibits to witnesses. In doing so, counsel may find it helpful to give the witness control of the shared screen to scroll through the exhibit. If counsel prefers a different method of presenting exhibits other than share screen, arrangements may be made to do so.

**Jencks Statements**

Jencks statements such as affidavits will not be produced by the General Counsel until a witness has been called by the General Counsel and testifies on directexamination. Upon the conclusion of the hearing, Respondent's counsel **MUST** deleteall Jencks statements from their computers and represent that they have done so.

**Advance Notice of Difficulties**

I strongly encourage parties to be proactive in notifying each other and me of any technical difficulties or other issues they may encounter while preparing for trial. In particular, Zoom participants sometimes struggle with connectivity and audio. To establish a stable connection, it may be helpful to remain close to the router (perhaps tethering the computer to the router by wire), close unused applications, and/or limit the number of devices that are using the wireless network. It will also be useful to test your computer speaker and microphone shortly before the trial.

It is so ORDERED.

Dated:      August 25, 2022
New York, New York

S/ *Benjamin W. Green*

_____
Benjamin W. Green
Administrative Law Judge

Served on counsel of the parties by email.

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**DIVISION OF JUDGES**
**NEW YORK BRANCH OFFICE**

**AMAZON.COM SERVICES LLC**

  **and**             **Case No.**  **29-CA-280153**

**DANA JOANN MILLER, an Individual**

  **and**             **Case Nos.**  **29-CA-286577**
                       **29-CA-287614**
**AMAZON LABOR UNION**          **29-CA-290880**
                       **29-CA-292392**
*Emily Cabrera, Esq.* and *Lynda Tooker, Esq.*,    **29-CA-295663**
   for the General Counsel.
*Juan Enjamio, Esq.* and
(Hunton Andrews Kurth LLP, Miami, FL)
*Kurtis Powell, Esq.*
(Hunton Andrews Kurth LLP, Atlanta, GA),
   for the Respondent.
*Retu R. Singla, Esq.* and
(Julien, Mirer & Singla, New York, NY)
*Seth Goldstein, Esq.*,
(Law Office of Seth Goldstein, Cherry Hill, NJ),
   for the Charging Party Union.

## DECISION

### STATEMENT OF THE CASE

  BENJAMIN W. GREEN, Administrative Law Judge.  The Respondent operates, in Staten Island, New York, a fulfillment center designated as JFK8 and a storage center designated as LDJ5.  (Tr. 254)  This case largely concerns alleged unlawful statements made by the Respondent's admitted agents to employees during mandatory meetings held at JFK8 and LDJ5 as part of a campaign to convince employees not to sign union authorization cards and elect union representation.  The complaint further alleges that the Respondent discriminatorily enforced its solicitation policy by removing certain posts of employee Dana Miller from its Voice of Associates Board (VOA) and threatening Miller with discipline for those posts.[1]

  The charges in this case were filed on dates between July 16, 2021[2] and May 12, 2022. An amended consolidated complaint issued on August 11, 2022 and the Respondent filed an answer on August 25, 2022.[3]  This case was tried before me by Zoom virtual technology on September 19-21 and October 4-5, 2022.

---

 [1]  The General Counsel has moved to withdraw complaint paragraph 11(c), which alleged that the Respondent unlawfully revoked Miller's permission to post on the VOA.  I grant that motion.

 [2]  All dates herein refer to 2021 unless stated otherwise.

 [3]  A copy of the complaint which corrects a typographical error (i.e., two paragraphs with the number 18) was entered into evidence as General Counsel Exhibit 26.

In this case, the General Counsel argues that certain Board precedent should be overruled.  In support of complaint paragraphs 7-8 and 20, the General Counsel seeks to overturn Board law in effect since *Tri-Cast Inc.*, 274 NLRB 377 (1985) to the extent it allows
5     employers to misrepresent the law under Section 9(a) of the Act.  In support of complaint paragraph 9-12, the General Counsel seeks to overturn *Guard Publishing Co. d/b/a the Register Guard*, 351 NLRB 1110 (2007) to the extent it narrows the circumstances under which the Board will find that an employer has discriminatorily limited employee solicitation.  In support of paragraph 13-14, the General Counsel seeks to overturn Board law in effect since *Babcock &*
10    *Wilcox Co.*, 77 NLRB 577 (1948) to the extent it allows employers to require employees to attend mandatory anti-union meetings. However, I am required to apply current law.  Accordingly, herein, I will not address arguments that existing precedent be overruled.  And since the General Counsel has relied exclusively on arguments that I reject Board law in support of complaint paragraphs 7(a), 8(a), 13-14, and 20, those allegations are dismissed.
15

Of the remaining allegations, as discussed below, I find that the Respondent violated the Act by discriminatorily enforcing its solicitation policy and threatening to withhold wage increases and improved benefits from employees if they elect a union as their bargaining representative.  (Complaint ¶¶ 11(a), 18(A)(b), 19(a)) The rest of the allegations are dismissed.  (Complaint ¶¶
20    7(b), 8(b), 11(b), 15(a)-(b), 16(a)-(b), 16(c), 17(a)-(b), 18(A)(a), 19(a))

On the entire record, including my observation of the demeanor of the witnesses, and after considering the post-hearing briefs filed by the General Counsel and the Respondent, I render these
25

## FINDINGS OF FACT

### JURISDICTION AND LABOR ORGANIZATION STATUS

30    The Respondent admits that it satisfies the commerce requirements for jurisdiction and has been, at all relevant times, an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.  Accordingly, I find that this dispute affects commerce and the Board has jurisdiction pursuant to Section 10(a) of the Act.

35    In its answer to the complaint, the Respondent denied having sufficient information to admit that the Amazon Labor Union (the Union or ALU) is a labor organization within the meaning of Section 2(5) of the Act.  Section 2(5) states:

The term "labor organization" means any organization of any kind, or any
40    agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

45    The Respondent stipulated to the Union's 2(5) status in prior representation cases and, in briefing this case, the Respondent makes no argument to the contrary.  (G.C. Exh. 32-33) Indeed, the evidence indicates that the Union meets the statutory definition.  In April, a group of the Respondent's employees founded the ALU and began a campaign to organize the Respondent's workers on Staten Island for the purpose of improving working conditions through
50    collective bargaining.  (Tr. 59-60, 187)  The Union's Constitution and By Laws, at Section 1.5, includes the following "Objectives" (G.C. Exh. 9):

(a). To improve the wages, benefits, working conditions, terms of employment, job security, and general welfare of its members and other workers.

5      (b). To organize unorganized workers.

The Respondent's employees have held leadership positions in the Union, obtained authorization cards, circulated petitions, and otherwise engaged in organizing.  (Tr. 59-61, 187-188)  Since employees participate in the Union and the Union exists for the purpose of dealing
10    with an employer concerning employees' wages, hours, and other terms and conditions of employment, the Union is a labor organization within the meaning of Section 2(5) of the Act. See *Alto Plastics Mfg. Corp.*, 136 NLRB 850, 851-852 (1962).

ALLEGED UNFAIR LABOR PRACTICES
15
**The Respondent's Solicitation Policy**

The Respondent's "Owner's Manual and Guide to Employment" (Owner's Manual) summarizes the Respondent's personnel policies and practices, including the following
20    "Solicitation" policy (G.C. Exh. 58, p. 5, 24) (Tr. 359-360, 437):

**Solicitation**

The orderly and efficient operation of Amazon's business requires certain
25    restrictions on solicitation of associates and the distribution of materials or information on company property. This includes solicitation via company bulletin boards or email or through other electronic communication media.

The following activities are prohibited:
30
•  Solicitation of any kind by associates on company property during working time;
•  Distribution of literature or materials of any type or description (other than as necessary in the course of your job) by associates in working areas at
35        any time; and
•  Solicitation of any type on company premises at any time by non-associates.

Examples of prohibited solicitation include the sale of merchandise, products, or
40    services (except as allowed on forsale@Amazon alias), soliciting for financial contributions, memberships, subscriptions, and signatures on petitions, or distributing advertisements or other commercial materials.

The only exceptions to this policy are communications for company-sponsored
45    activities or benefits, or for company-approved charitable causes, or other specific exceptions formally approved by the company. All communications under these exceptions must also have prior approval of Human Resources. Violation of this policy may result in immediate disciplinary action, up to and including termination of employment.
50
The Respondent has also maintained a list of frequently asked questions regarding the solicitation policy, which include the following (G.C. Exh. 29) (Tr. 42):

**Solicitation Policy FAQ**

**1. What are some examples of solicitation that are prohibited, unless legally protected?**

- The sale, advertisement, or marketing of things like merchandise, products, subscriptions, or services (except as allowed on for-sale@ alias).
- Distributing advertisements, marketing communications, or other commercial materials.
- Solicitation for financial or other contributions (e.g., money, time, services) for any cause, including a charity.
- Solicitation for memberships, subscriptions, or signatures on petitions.
- Distribution of literature or materials of any kind.
- Organizing or seeking participation in political, charitable, or protest activities.
- Encouraging others to sign up for a mailing or distribution list used for any of the above purposes.

**2. What is included in company property?**

- All company property including meeting spaces, offices, cafes, lobbies, and outdoor areas.
- All company equipment including bulletin boards, furniture, mail slots, elevators, and posters.
- All company electronic systems including email, Phone Tool, Amazon Wiki, Chime, and calendaring.

**3. What are the exceptions?**

As exceptions to this policy, solicitation is permitted for:

- Company-sponsored benefits (e.g., health plans and employee discount programs).
- Company-sponsored business activities (e.g., internal marketing and advertising, company events, and learning activities).
- Company-approved charitable causes.
- Specific exceptions approved by Human Resources
- All legally protected activity as defined under local law.

**4. In the US, when is solicitation legally protected?**

In the US, solicitation is legally protected if it:

- **Does NOT** use any company electronic systems (e.g., email, Phone Tool, Amazon Wiki, Chime, and calendaring), company equipment (e.g., bulletin boards, furniture, mail slots, elevators, and posters); *and*
- Relates to terms and conditions of employment. Terms and conditions of employment include pay, work hours, benefits, and job duties. They do not include the products we sell, our customers, and non-work related social or political causes; *and*
- Happens during non-working time.

Additionally, if solicitation involves distributing materials or literature, to be legally protected in the US, it must *also* occur outside working areas (spaces where work is done, as opposed to break rooms, cafes, etc.).

**The VOA, Open Door Policy, Gemba Walks, Birthday Roundtables, and Connections**

        The VOA is a digital message board which allows the Respondent's employees at JFK8
5  to post messages for viewing by management and other employees. Employees often post
messages which express concerns about their terms and conditions of employment. (G.C. Exh.
27) Management can respond in writing to a post and employees may indicate their agreement
with a post by adding a thumbs-up emoji. The VOA can be viewed on screens at that facility.
The VOA can also be accessed by employees on the Respondent's "A to Z" app[4] and from
10  kiosks at the facility. (Tr. 75, 81-88, 122-128, 414-418, 441-444) (G.C. Exh. 27)

        The Owner's Manual which was entered into evidence[5] contains the following provision
regarding an "Open Door Policy and Conflict Resolution" (G.C. Exh. 58, p. 7):

15          Amazon believes that candid and constructive communication is essential to the
          smooth functioning of our workplace and to maintaining an atmosphere of mutual
          respect. Accordingly, we have an "open door" policy, which means that you are
          welcome to discuss any suggestion, concern, or other feedback with any
          member of the company's management. Associates are encouraged to bring
20         their ideas to the attention of management.

          The majority of misunderstandings are satisfactorily resolved by a thorough
          discussion and mutual understanding between the parties involved. In general, it
          is best to discuss any concerns with your immediate supervisor first. If you are
25         unable to reach a satisfactory resolution with your supervisor or are not
          comfortable discussing the issue with your supervisor, you are welcome to
          discuss the matter with the next level of management, with Human Resources, or
          with any member of senior management. When you bring a concern to Human
          Resources, it will be reviewed, and if appropriate, action will be taken. Human
30         Resources will communicate with you regarding the outcome.

          If you believe that you or another associate has been subject to workplace
          harassment, pursuant to the provisions of the Workplace Harassment policy in
          this Manual, you should immediately report this to any manager or member of
35         Human Resources. See the Workplace Harassment policy for more information

        The Respondent also conducts "Gemba walks" and holds "birthday roundtables."
Gemba walks are when managers walk the floor of a facility and ask employees what
they like and do not like about the company. (Tr. 216-218, 380-382) Birthday
40  roundtables are monthly meetings held for employees whose birthdays fall within the
month to talk and raise concerns with the general manager or assistant general
manager of the facility. (Tr. 218, 310-311, 317-318)

---

   [4]  The Respondent's A to Z app also allows employees to perform certain human resource
functions such as viewing their schedules, requesting time off, transferring shifts, and receiving
notices from management. (Tr. 75, 81-88)

   [5]  The Owner's Manual which was entered into evidence is dated January 2019. Apparently, a
more recent manual issued in 2021. However, Senior Human Resources Manager Jenna Edwards
testified that she believed the Owner's Manual was last updated in 2019 and has not been changed.
(Tr. 436-437)

Beyond in-person contact, the Respondent uses a computer system called "connections" to ask employees questions when they first sign on for a shift. Employees may raise concerns in response to these questions. (Tr. 312, 317-319)

5 **The Respondent's Career Choice Program**

Since 2012, the Respondent has offered a Career Choice Program (CCP) of refunding employees for certain educational expenses. Prior to September, employees with a year of service were reimbursed for 80 percent of qualifying educational expenses. (Tr. 375-377)

10 In September, the Respondent announced certain company-wide improvements to the CCP which would take effect in January 2022. (R. Exh. 2) These improvements included a reduction in the employment service required to qualify for reimbursement from 1 year to 90 days and an increase in the cost reimbursement from 80 percent to 100 percent. The
15 Respondent also increased the number of educational expenses which qualified for reimbursement, including classes for GED testing and English as a second language. The record contains no indication that the Respondent referenced the Union or the Union's organizing campaign when it announced these improvements to the CCP in September. (Tr. 375-377, 396-399) (R. Exh. 2)
20
**The Respondent's Practice of Providing Wage Increases**

The Respondent provides employees with certain regular wage increases based upon the amount of time they work for the company. (Tr. 234-235, 254-255, 384-385) (R. Exh. 4)
25
**The Union Organizing Campaign and Representation Petitions**

As noted above, the Union was formed and began a campaign to organize employees at JFK8 in April. The Union campaign was based in a tent at a bus stop across the street from the
30 facility. In this tent, the Union distributed literature and authorization cards, collected signed authorization cards, had speakers and cookouts, and the like. (Tr. 59-61) The Respondent responded to the Union's organizing activity with a campaign of its own to dissuade employees from signing union authorization cards and electing union representation. (Tr. 72-80) During the campaign, employees posted VOA messages for and against the Union. (Tr. 82) (G.C. Exh.
35 20)

On October 25, the Union filed its first petition (29-RC-285057) to represent a unit of employees at JFK8. The Union later withdrew that petition and filed another one (29-RC-288020) on December 22. On February 4, 2022, the Union filed a petition to represent a unit of
40 employees at LDJ5. (G.C. Exh. 30(a-c))

**Dana Miller VOA Posts and the Respondent's Response**

Miller is an employee who has posted many messages on the VOA, including pro-union
45 messages and messages critical of the Respondent. (Tr. 163-167) Miller testified that, in June, she saw VOA posts from employees asking if the new Juneteenth paid federal holiday would be recognized by the Respondent. (Tr. 132) On June 18, Miller posted the following VOA message (G.C. Exh. 22, 27):

50          Since Juneteenth is now a federal holiday shouldn't we get holiday pay as we do
           for all the other holidays. It's all over every news channel and in the papers as
           well that June 19 is now a federal holiday.

Senior Human Resources Manager Jenna Edwards posted the following VOA message in response to Miller's post (G.C. Exh. 22, 27):

5           Hi Dayna, thank you for your comment. The news of Juneteenth becoming a federal holiday is very recent, and at this point there has not been communication about whether this will be a paid holiday. We will let you know as more information becomes available. If you have a scheduled shift and choose to take the day to reflect, you can use existing time off options, paid or unpaid, and
10           record that via your normal time off reporting mechanism. Thank you.

On June 18, a different employee posted the VOA message, "[m]ost of your staffs are African American. No acknowledgement of Juneteenth, a federal holiday. Really JFK8???" Edwards posted a response similar to her earlier response to Miller. (G.C. Exh. 22, 27)
15

Miller and Conner Spence, a JFK8 employee and then Union vice president of membership, subsequently circulated a petition among employees which asked the Respondent to recognize Juneteenth as a paid holiday. (Tr. 89)

20           On July 8, Miller and Spence delivered the Juneteenth petition to JFK8 General Manager Felipe Santos and a human resources manager. Santos told the employees he did not know of any company plan to recognize Juneteenth as a paid holiday and that he could not do anything more for employees regarding the issue. (Tr. 89-91, 134-135) (G.C. Exh. 13)

25           On July 9, Miller posted the following VOA message which invited employees to sign the Juneteenth petition at the Union tent (Tr. 136) (G.C. Exh. 13):

          6/21/21: ALU AA's spoke to G.M. for holiday pay on Juneteenth. Dismissed, ALU put together a petition and is gathering signatures, over 50+ now! 7/8/21:
30           Presented again, Felipe confirmed that he wouldn't use any energy/effort to make positive change for workers! So you're invited to come sign the petition for well-deserved holiday pay at the ALU tent, speak up for yourself and help make history.

35           That same day, July 9, certain managers had the following discussion on the Respondent's "Chime" messaging platform regarding Miller's post (G.C. Exh. 51):

**Edwards –** 17:16:32 **–** I'm shocked Stephanie is suggesting to remove a VOA comment but I'm aligned 100%
40

**Assistant General Manager Marc Zachary  –** 17:17:19 **–** Yea awesome

**Edwards –** 17:17:39 **–** It is not asking any type of question and instead antagonizing and trying to rally a group of people. We should not stand for that
45

**Zachary –** 17:18:22 **–** agreed, it's definitely not appropriate for VOA and probably violates the solicitation policy

**Zachary –** 17:18:22 **–** next comment from random AA will be "please come see me if you
50           want to buy my ____" or support my business etc

**HR Manager Anna Leonardi  –** 17:18:50 **–** Yeahh. After reading the user guide too it

def falls under that category

On July 12, Miller was called into a meeting with Human Resources Business Partner
John Tanelli.  (Tr. 137-142)  (G.C. Exh. 28)  The conversation was recorded and entered into
5    evidence.  (G.C. Exh. 52)  During the conversation, Tanelli told Miller that her July 9 post would
be removed from the VOA because it violated the Respondent's solicitation policy.  The
exchange included the following comments (G.C. Exh. 52 - [2:47-3:20]):[6]

10   **Tanelli:**  Just on one of the comments made on the VOA board regarding the ALU and
going… going to the tent to sign up for holiday pay, things like that.

**Miller:**  Yea for the petition, yea.

15   **Tanelli:**  So Amazon solicitation policy clearly is defined that you can have every right to
do that on nonworking time, in break areas.  The VOA board is actually not a mechanism
you can use that on.

**Miller:**  But why not?

20   **Tanelli:**  That's a mechanism for you to talk directly to management, right?

Tanelli later made the following additional comments regarding VOA posts that violate
the solicitation policy (G.C. Exh. 52 - [3:38-4:02]):

25   **Tanelli:**  Anything related, like, to the ALU, and the tent, things like that like for
going and signing up, unfortunately, that's something that we cannot have on the
board. . . . It's against the policy, but this is not like . . . you're not in trouble or
anything like that, right?  I just did want to follow up with you, let you know that
the comment will be removed.  And that that's not something that you can
30   leverage for the VOA board, right?

Tanelli assured Miller she could communicate with her peers on nonworking time in
break areas.  Miller asked for a written copy of the solicitation policy, indicated that she believed
the policy was illegal, and said she would contact her attorney.  Tanelli stated that "the VOA
35   board is not something that you can leverage for that specific comment that you made, right,
asking people to go there to sign up like for additional holiday pay, that's unfortunately,
something that is not going to be able to be on the board."  (G.C. Exh. – [4:50-5:02])  Miller
denied that the post was an invitation to sign up for additional holiday pay and said she originally
posted the message on her break.  Miller also said she would repost it.  Tanelli responded as
40   follows (G.C. Exh. 52 - [5:22-5:37]):

**Tanelli:**   Okay, well, I'm telling you now, like, this is not a conversation for you to
be reprimanded. Right? This is me to educate you on the solicitation policy.  You
cannot put that on the board, unfortunately. And there will be additional follow up
45   if a comment like that goes back up again.

After Miller met with Tanelli, on July 12, the Union organizing committee advised her to
repost the Juneteenth message and she did so.  The Respondent removed that post as well.  At
5:59 p.m., after her shift ended, Miller tried to repost her message, but was unable to access the

---

[6]  Herein, references to time ranges within audio recordings are in brackets (e.g. [2:47-3:20]).

VOA.  (Tr. 141-143, 418-421, 437, 441-446, 450-452) (G.C. Exh. 23)

On July 13, Miller was able to gain access to the VOA and reposted the message soliciting signatures for the Juneteenth petition.  Again, the Respondent removed it.  (Tr. 437)

5      Miller also posted the following message, which was not removed (G.C. Exh. 24) (Tr. 143-145):

I put a petition up and was told it was solicitation and against policy.  It wasn't.  I wasn't shown that in writing (though requested), I was unfairly targeted and disciplined (as a black woman; they apologized to my white male comrade), and I

10      wasn't made aware of the illegal repercussions they enforced (I tried to post it again and my permissions were taken away).  HR silences voices, not the ALU.

That same day, July 13, Leonardi posted the following response (G.C. Exh. 25) (Tr. 143-145):

15      Hi Dana.  The VOA Board is available for employees to communicate with site leadership to ask questions and raise concerns.  It is not a forum for solicitation. We support employees' right to solicit in according with Amazon policy, which prohibits solicitation via Company electronic communication methods.  This

20      includes the VOA boards.  A copy of the policy can be found within the Amazon.com Owner's Manual accessed through the Code of Conduct link or Inside Amazon.  Leadership explained this to you in person on July 12th. We have not and will not revoke anyone's ability to post on the VOA board however, we will continue to ensure that comments comply with Company policy. If you have additional questions about this we would [happy to] discuss.

25

The Respondent did not discipline Miller for her VOA Juneteenth posts.  (Tr. 176)

The evidence did not indicate that, before Miller's July 9 post, the VOA had been used by an employee to solicit signatures.  (Tr. 104)

30

The Respondent has not maintained a practice, before and after Miller's Juneteenth petition posts, of removing messages from the VOA.[7]  Thus, the Respondent has not removed posts in favor of a paid Juneteenth holiday or posts encouraging employees to vote for or against the Union.  In March 2022, the Respondent did not remove a post announcing that an

35      employee had given out "VOTE NO" T-shirts and another post encouraging employees to "come get one" in the break room.  (G.C. Exh. 20)  Likewise, the Respondent has not removed employee posts concerning their terms and conditions of employment, including concerns about health and safety.  (Tr. 81-88, 103, 122-131, 163-168) (G.C. Exhs. 17-20, 22, 24-25, 27)

40      **The Respondent's Response to the Union Organizing Campaign**

*Distribution of Materials*

The Respondent initially campaigned against union organizing by distributing materials

45      on breakroom tables, in bathrooms, and in electronic formats.  In May or June, the Respondent

---

[7]  Miller initially testified that the Respondent removed a VOA post from someone at the ALU who was offering services to employees with questions, but later testified that she was only aware of her own post being removed.  (Tr. 166-167)  Edwards testified that she never heard of a VOA post being removed before Miller's Juneteenth posts.  (Tr. 428-429)  I find that no posts other than Miller's were removed from the VOA.

left flyers on JFK8 breakroom tables which stated, in part (G.C. 10, 16) (72-75, 119-122):

What does signing a card mean?
Union authorization cards are legally binding and authorize the union to act as
5      your exclusive representative.  You may be asked to physically sign a card or
click a link that asks for your signature online.  This means you give up the right
to speak for yourself.  Signing a union authorization card may also obligate you
to pay the union a monthly fee.

10          In May or June, the Respondent sent JFK8 employees a message on the A to Z app
which stated, in part (G.C. 11) (Tr. 76-77):

**Speak For Yourself:**  Union authorization cards are **legally binding** and
authorize the union to act as your exclusive representative.  This means you give
15      up the right to speak for yourself.

**Don't Sign Away Your Choices:**  Signing a union authorization card may also
obligate you to pay the union a monthly fee out of your paycheck.

20      **Protect Your Signature and Your Privacy:**  Ask questions, do the research,
and don't sign anything without reading it closely.

*Statements in Mandatory Meetings*

25          The Respondent stipulated, for this case only, that it required employees to attend
meetings in which its admitted agents made statements in opposition to union representation
and the Union.  (Tr. 339)[8]  Managers generally went in person to notify employees that they
were scheduled to attend mandatory meetings and escorted them to the meeting rooms.
Managers also scanned the ID badges of employees in order to digitally record that those
30  employees attended the meeting.  Some of the managers who performed these functions
worked at the Staten Island facilities (JFK8 or LDJ5) and some managers were brought in from
other facilities.  (Tr. 78-81, 103-105, 114-119, 179, 190-195, 204, 214-216, 229-230, 237-247,
250, 255-260, 278-279, 292, 296, 305, 315, 369-371, 385-396, 401-404)  Certain employees
recorded the meetings in which the Respondent allegedly made unlawful statements and those
35  recordings were entered into evidence.  (G.C. Exh. 2-7)

**November 10 Meeting at JFK8**

On November 10, Michael Williams held a mandatory meeting with employees at JFK8.
40  (Tr. 10-11, 231-232, 305-310)  (G.C. Exh. 2)  During the meeting, Williams made the following
comments regarding the CCP (G.C. Exh. 2):

[1:00-2:15] - At JFK8 we have an amazing team, and we truly believe that by
working together with our associates and direct interaction with our associates,
45  allows us to make rapid improvement, course correct, and improve our
workplace.  And we are able to do that because of our relationship we have
formed with our associates.  Having your voice, alright, listening to you,
responding to you, what you say, when you express your concerns about

---

[8]  The transcript incorrectly transcribed the stipulation as referring to statements in opposition to
the "Union by presentation." The actual stipulation referred to "Union representation."

whatever issue may be. . . . Again, we value that relationship.   That relationship also allows us . . . to provide programs and create opportunities for you guys. . . .  And that is important because it's not all about work.  We have to have your best interest at hand as well, in terms of your development.  And that's why
5      Amazon, effective January 1st, we will be paying 100% tuition, college tuition, education tuition.  You guys have heard of that?  If you haven't, if you don't have a social degree or you don't have bachelor's degree, and that's what you want, that's at your disposal.  That is something Amazon is going to implement because we have listened to our associates.
10

Williams also made the following comments regarding the open door policy and the right of employees to raise concerns to the attention of management (G.C. Exh. 2 - [2:15-3:42]):

[2:15-3:42] - That Open door policy we talk about all the time.   It gives you direct
15     access not just to your AM, but also to your DM, right?   Even if you have an issue and someone in HR is not resolving your issue, don't settle for that.  Take it to the next level.  Go see a VP.  If that VP is not resolving your issue, go see the HRM, and so on and so forth.  That's the freedom of having open door direct communication and that relationship that we have.  Here are some of the
20     mechanisms that we utilize, which affords you the opportunity to voice your concerns, and these are no strangers to you.  You know all of these. But I want to focus on the one - connections.  I realize that some people don't get an answer the connections questions because they feel that leadership, management knows who answers what question and how they answer that
25     question. I'm here to tell you that that's not true. I will tell you though, we rely on your feedback, through connections, to make adjustments, to make modifications to improve the workplace. That is one mechanism where you have direct access to tell your leadership team what issues, what concerns you have.

30     [3:42-4:29] - I've been in meetings, where the entire meeting is focused on connections. Yes, the associate that's wondering what are we doing . . . to improve the workplace based on the feedback that we've received. So, I say all that to tell you that the leadership team takes connections very seriously. So, when it pops up on your screens, I encourage you to take the time out to answer
35     the questions. Be honest. Be totally honest. Be brutally honest. If you see something that you believe is unsafe, answer the question that way. If you think you have a fantastic manager, answer the question that way. We can't make improvements, if we don't know what you're thinking, if we don't know your concerns.
40

[4:30-5:52] - GEMBA walks. You've seen leadership walking around doing GEMBA walks. Tell your manager – "Hey, I want to be a part of that because, I want them know what I have to say." Yeah, I've seen you all including Michael. Michael is not going to really tell them what's going on. I'm going to tell them
45     what's going on, so be a part of that. Okay? And, again, if you put something on the VOA board because your AM or your OM has not responded, before you put it up there, the first thing I would do is say, "Hey, I need to see the GM or I need to see Senior Ops." It's the open door communication. Yeah, you can put it on the VOA board, but some people don't like using the VOA board because they
50     don't want everyone to know  they're thinking, right? So escalate.  That's the truth.  Escalate. There's nothing wrong with that. You have a voice, we want you to use that voice. Okay.  We respect your opinions. I've said this and I'm going to

say it again, I truly believe this and I'm not up here just speaking the company line. I truly believe this. I've been with Amazon for nine years, I truly believe this. We have a dynamic workforce and that direct relationship that we have with our associates allows us to take care of customers globally, worldwide.

[7:48-8:35] - So I want to make sure that there is no confusion about where Amazon stands and where that group stands. Two opposing sides, and like I said earlier, that's okay … that's okay. But, we're really here to make sure you understand and have the facts, right? Because it's your choice. Regardless of what you decide to do or don't do, it is your choice, it is your right. I'm not here to tell you what to do. Okay? But, I will tell you that that group may promise you anything and they may. I won't, I can't, I'm not allowed [inaudible].

[15:51-15:58] - Our job, every day, yea, our job every day is to listen to associates' concerns and try to remove barriers. That's our job.

Williams made the following statements regarding the Union and employees' decisions to unionize (G.C. Exh. 2):

[7:02-7:13] - Some third parties don't agree with our goings on, our relationship, that direct relationships with our associates, right, and one of those third parties is ALU.

[10:18-11:16] - So, what should you do if you're approached? I'm going to be totally transparent, totally honest with you. That's entirely up to you. I'm not here to tell you what to do. That's up to you. It is your right. Okay. I just want you to make an informed decision. That's it. I'm not telling you to go this way or that way. Again, that is your right, your decision, and we respect that. We're only here to provide you with the facts, as we see it. We're not promising you anything. We're not telling you to go left or go right. That's up to you. But, if you don't have all of the information, you can make the wrong decision. Okay? If you've got questions, talk to your leadership, speak with HR. Just gain as much insight into the process as you possibly can. Okay?

[11:25-12:23] - Protecting your rights is important to us. Right? Protecting your signature is important to us. Make sure you understand what it is you're signing and what does that means, because signing something you can potentially be obligated to that. Okay? Listen, I'm a tell you, we're not perfect. [inaudible]. Some things we do right and some things we do wrong, and sometimes we don't always get that totally right. Listen careful now, right. It doesn't mean you stop talking. It doesn't mean you stop trying to get your voice across. Respect you more than anything. That's what I told you from the beginning. It is your decision, your opinion. We just want you to have and make an informed decision.

## November 11 Meeting at JFK8

On November 11, Mike Rebell and Ron Edison held a mandatory meeting with employees at JFK8. (Tr. 191-202) (G.C. Exh. 3) During the meeting, Rebell made the following comments regarding the CCP (G.C. Exh. 3):

[2:35-3:46] - So who here has heard of the Career Choice Program? A couple

right? So you have a lot of benefits right now. I'm just going to dive in a little bit to that one because we're constantly looking at ways to improve those type of programs. For instance, Career Choice today, you have to be employed with Amazon for a year and then it would pay roughly about 80% of that tuition. Come
5    January that benefit is getting better. It's going to go down to only being here 90 days before you can take advantage of that and it's going to pay 100% of that tuition. And that's for programs . . . that help you stay here with Amazon or something that's just needed in the community. I've seen things like from CDL licensing that maybe you stay with Amazon and work with the transportation or
10   the TOM team or maybe you could go to an outside business or heck even start your own business for trucking but also things like medical billing and coding and into the health field. From IT different things and getting those certificates or degrees. I've seen HVAC. Many different programs that are offered at that. And again that's a benefit that you have right now for free that is also getting better
15   come January. So that's just one thing.

       Edison and Rebell also made the following comments about employees raising concerns to the attention of management and "open door avenues" (G.C. Exh. 3):

20     **Edison -** [1:53-2:23] - We have an amazing team and we believe working directly together is the best way to improve the workplace and respond to your feedback. Working directly together allows us to focus on our one team approach because it makes improvement happen quickly. Providing the programs and opportunities you care about most. Open door avenues that give you direct access to
25     management and HR.

     **Rebell -** [4:43-5:11] - That open door avenue, directly access management. That's kind of that direct working relationship that open door policy. We continue to strive that if you are going to your AM or maybe on the floor HR, if they are not
30     able to answer your questions and get it resolved, escalate that up, go to the next level. Maybe it's the Ops Manager, maybe it's an HR Manager. But currently you have that direct working relationship all the way up to the GM and honestly even above and outside of the building if you choose to do that.

35     **Edison -**  [5:15-7:30] - Alright let's talk about the ways we work directly together. We want to hear from you. Here's how we can help make our team better. Speak with your manager. There should be an open door of communication with you and your manager so feel free first line to talk directly to your direct process path manager. If there is ever a barrier with your managers you immediately have
40     operations managers that are in the process path as well and then it goes up from there. But that should be your direct line of contact, is directly with your direct process path manager. Connections. Is everybody familiar with the connections system? So as you go into your process path, you work or log onto your machines and computers if you have tasks that require that. You get the
45     daily connections. It's asking you about your experiences, asking you things about the safety of the building, et cetera. And these are the opportunities for us to really get some true feedback that take those as opportunities for job improvements or find out what we are doing really well at and continue that on. GEMBA walks. So the senior team comes around on a weekly basis. You will
50     see them coming through your process path and they are talking to the leadership and they are talking to associates to find out what are the barriers in those process paths? You are working those jobs every single day. You are

putting your hands on the process. What are the barriers in those processes and how can we correct those when we go back in action against those so GEMBA walks are another. Birthday roundtables. Birthday roundtables is another way that we pull associates in during your birthday month and it's your chance to get
5    a nice treat, do a fun activity, but it's also a communication time where we can talk about hey, again, what's going well? What are some opportunities? What do you want to see some more of? What can we do to create a good culture? So again birthday roundtables is something we also will continue.

10    **Edison** - [8:01-8:33] - Then the last part is the VOA or the voice of the associate board. Is everybody familiar with the VOA board? Have you seen it before? If you have an electronic board you can go in through your A to Z app, find my voice and this is where you can enter feedback if you like. It's used for something you
15    can seek opportunities with but I've also seen it where people use it to point out some things that they think are going well. But again, this is your voice. This is another opportunity for you to speak and….

**Rebell** - [8:37-9:19] - And on the VOA board I just want to add to what Ron is saying. Obviously you can access it through your A to Z app, you can access it
20    on some kiosks around, but also if you feel that you are not getting the response that you want or feel that you deserve, you can also escalate that, if you are not getting that response you can go request a meeting with…whether it's a senior leader that responded to that…depending on what it is, like if it's a safety thing, maybe it's you're requesting a meeting with the safety manager to get more
25    information. If it's operations, maybe it's requesting a meeting with the AGM, Assistant General Manager or maybe an Ops Manager. But if you are not getting that response you want currently you have that direct working relationship with all the way to the GM, get the answer, continue to escalate that so you can get the answer.

30    Rebell made the following comments about the Union as a third party unfamiliar with the Respondent's philosophy (G.C. Exh. 3):

[9:22-9:50] - So let's talk about Amazon and third parties. You have an amazing
35    workforce and our direct relationship with Associates like you has been a key factor to our ability to deliver the best possible services globally to our customers. We continue to be a target for third parties that do not understand our pro-employee philosophy, and seek to disrupt the direct relationship between Amazon and our Associates.

40

An employee interjected and argued that the Union is not a third party because it was created by and consists exclusively of the Respondent's employees.  Rebell maintained that the Union is a third party organization which would be representing employees and is not affiliated with Amazon.  (G.C. Exh. 3 - [9:53-13:55])  Later, Rebell and Edison made the following
45    comments (G.C. Exh. 3):

**Edison -** [17:20-18:03] - So let's talk about our commitment to you. We are proud of the relationship that we have established at JFK8 and we don't believe the ALU would make us more successful or stronger as a team so here is what we
50    are committing. Protecting your rights, listening to you, respecting your opinions and being open and honest with you. Take the time to check facts, keep an open mind, ask questions of your leadership and do your own research.

**Rebell –** [18:03-18:56] - I want to hit a little bit more on the do your own research, alright? Ron and I, you have heard us for a half hour, you don't know us from anybody. Right? Who are we? Nobody to you right? When we say do
5   your own research that also goes with if you are hearing something outside from whoever, maybe a coworker, make sure you are doing your own research as well and going to like unbiased type of websites. Go straight to the National Labor Relation Board's website is a great one. Unionfacts.org is a great one to go to where you can make a decision for yourself whether before or after you sign the
10  card, whatever it is. Just do some research so that you can help inform and if we do go to a vote you can make the best decision for you and your family. Alright? That's really…the purpose of it is make sure you are doing your own research. That's the most important thing that you can do.

15  Rebell made the following comments regarding money the Union would charge employees (G.C. Exh. 3):

[13:32-15:12] - Alright just to further clarify that ALU is not part of Amazon, it is not authorized to speak for Amazon. The ALU is a newly formed third party group
20  that wants to represent all Associates at all four Staten Island campuses even though it has no experience. It will charge its members dues, fees, fines and assessments in exchange for their representation. So we will dive into some of the cards that may have been signed, maybe Associates asked about the cards. Whether it's a physical card like the right side or an electronic card right? And the
25  purpose of this slide is really to make sure that you are protecting your signature. Before you sign something just read the fine print. You have every legal right to sign it, to listen to what's being said. 100%. But make sure that you are reading the fine print of what is on that card alright? You may be approached by an ALU organizer or an associate wearing a vest who is going to ask you to sign
30  something. That's perfectly fine. They are legally able to do that but make sure that you are just reading the fine print of what that authorization card is applying. By signing either you could be authorizing the ALU to speak on your behalf or you could also be obligated to pay union dues and it's important you read everything closely but just make sure that you are reading the fine print whether
35  it's on a QR code that you click, just make sure that you are reading what you are putting your information on first.

## February 16 Meeting at JFK8

40  On February 16, Charlotte Bowers held a mandatory meeting with employees at JFK8. (Tr. 191-202)  (G.C. Exh. 4)  During the meeting, Bowers made the following comments regarding union dues (G.C. Exh. 4):

[0:50-1:41] - There could be a hundred people on this site vote, and 51 vote yes,
45  all 8,000 plus associates will then be represented by the union. So what that means is everyone's terms and conditions of employment will be up for negotiation, and you will also be liable to pay what's called "union dues" which are a representation fee that will be taken straight out of your paycheck and given to the ALU. They haven't told us how much they're going to charge yet and
50  they haven't told us how often they're going to take that out, but, in New York, there is no cap as to how much they can charge. So that's why it's incredibly important that you go out and have your voice heard and make sure that you

vote. Because this election has significant and binding consequences and if the union wins, not just for yourselves, but for future associates, for your co-workers and potentially for your family if the paycheck and your budget is going to change.

[10:05-10:31] - If the ALU wins, they'll represent you whether you voted for them or not or whether you voted at all.  Even if you didn't vote they will be your representative, and as I mentioned before, you will be liable to pay union dues or another representation fee, even if you voted no or you didn't vote at all, everyone is liable to pay those union fees. You can't opt out and everyone will follow a contract once it gets negotiated even if you don't like what's in it. So, electing a union is not like trying out my Netflix subscription for thirty days. It's very difficult to unelect the union once you elected them. You have to go through the transfer but in reverse. That's why it's really, really important that you have all the facts and, you consult various resources before you make a decision. So what I would recommend, consult Amazon, consult the ALU, go on the NLRB government website. You make sure you're doing all that due diligence to make a decision that's right for you. It can have binding consequences.

Bowers also had the following exchange with JFK8 employee and Union Vice Present Derrick Palmer regarding terms and conditions of employment potentially getting worse as a result of negotiations (G.C. Exh. 4):

**Bowers** - [12:18-12:53] - So, with a union, terms and conditions of employment must be negotiated before changes can be made and they must be negotiated in good faith. Now good faith means that neither party can come to the table and say, "I want this or it's nothing." Both parties have to  compromise, both parties have to give and take and… until changes can be made. So, the negotiations process is called collective bargaining and, in negotiations, there are no guarantees. Nobody can predict these results from the good faith bargaining process. And you can end up with better, the same, or worse than you currently have. There are no guarantees as to what the outcome will be.

**Palmer –** [12:53-12:58] - So, wait, you're saying we could end up with worse? What does that mean by that?

**Bowers** – [12:58-13:19] So, there are no guarantees as to what will happen, right? So, we can't make any promises that things will get better or stay the same. Cause it could get worse. We can't promise what's going to happen. Amazon can't promise you that they're going to walk into negotiations and the negotiations will start from the same.  It could start from minimum wage for instance.  I'm not saying that that will happen but it is a possibility.

At the time these statements were made, all JFK8 and LDJ5 employees earned more than minimum wage.  (Tr. 384-385)

### March 15 Meeting at JFK8

On March 15, Eric Warrior held a mandatory meeting with employees at JFK8.  (Tr. 191-202)  (G.C. Exh. 5)  During the meeting, Warrior made the following comments regarding employees' terms of employment during negotiations (G.C. Exh. 5):

[3:45-3:58] - You have to keep the status quo. That means we have to keep everything the same during the election and during negotiations if the union is voted in, pay… benefits, and work rules.

5

[5:05- 5:17] - There is no time limit to negotiations. Sometimes it could take months, even years, to complete this process. Sometimes the two sides can never agree.

[9:22-9:40] - Negotiating a contract, particularly the first contract, can take a long
10    time, months and sometimes years.  And during negotiations there are typically no changes to wages, benefits, or work rules, and what happens if the parties can't agree to a contract?

Warrior also made the following comments regarding union shop clauses (G.C. Exh. 5):

15

[5:17-5:51]  - The union comes to the table with things that it wants. Union shop clauses. Clause. The union shop clause is not a check-off clause. So, when a union shop clause… and why do unions ask for it? A union shop clause would require Amazon to fire you if you don't want to join the union and pay union dues.
20    I'll repeat that again. So, a union shop clause would require Amazon to fire you if you do not want to join the union.

## April 10 Meeting at LDJ5

25    On April 10, Rebecca Smith held a meeting with employees at LDJ5.  Smith made the following comments (G.C. Exh. 6):

**Smith** - [9:40-10:27] - The sticking point about all of this though is there is nothing in federal law that is gonna force the employer or the union into an
30    agreement they don't want to make. Okay? Nothing in federal law forces either the employer or the union into an agreement they do not want to make, and that's very important. There is no time limit on this process. Okay? The federal law doesn't say "Hey, you could get a contract in six months. Hey, you'll get a contract in a year." Federal law says, "however long it takes." Okay. "We're not
35    putting a time limit on it." So, while you're going through this process though, does everybody understand what status quo is? No? Okay. You know what status quo is, don't you?

**Employee** - [10:27-10:32] - Yeah, status quo means everything remains the
40    same.

**Smith** - [10:32-11:36] - Okay, so once the union files a petition, and she's correct, once the union files a petition, okay, everything must remain the same. I can't give you anything and I can't take anything away. There's actually a logic
45    behind it although a lot of times employees don't like the law. . . . This law was written in 1935.  Logic behind it was if you guys have a union election coming up and I give you things, I might be bribing you into voting no or if I take things away from you, I might be punishing you for bringing in a union, right? Neither of those things are legal. So you stay at status quo. The problem comes in with status
50    quo, a lot of employees feel, is that when they vote a union in and they expect changes to happen right away, status quo says nothing can change until and if

you reach an agreement, and I use the word "if" because actually there is nothing in federal law that guarantees you a contract at the end of the process. Okay. So that's why this law is important, and I know we didn't push it enough and I'm sure nobody in here is saying "oh yeah I can't wait to go home and read this thing"

5      Right?   But it dictates how this thing is gonna go down.

## April 18 Meeting at LDJ5

On April 18, Katie Lev held a mandatory meeting with employees at LDJ5.  (Tr. 293-294)
10   (G.C. Exh. 7)  During the meeting, Lev talked extensively about union dues, union security clauses, and dues check off.  Lev's comments including the following statements regarding union security clauses (G.C. Exh. 7)

[14:45-16:58] - So the parties are going to ask for different things that they want.
15   The union has things that they want that are different from what you guys want.
For example, union shop clause. Anybody know what happens if you don't pay dues in the State of New York, you're covered by the union contract with a shop clause. So I've been in a union. If I didn't pay my dues I was terminated. Not paying your dues isn't an option, you are fired. So when I was in the union, I
20   didn't think the union… I was in a union here as a room service girl for a large hotel, when I was a room service girl, if I didn't pay my dues I was terminated, so I paid my dues. My frustration with that and it's part of my opinion this is an organization that's supposed to be helping me, I did not think they were helping me but I still had to pay. So my little way of thinking about things is if I hire a
25   plumber to fix my toilet and he doesn't fix my toilet, I don't want to pay them. So if they're not fixing things for me, they're making things worse for me, I don't want to pay them. If I didn't pay them, I would be terminated. That didn't make sense to me in the whole hiring someone to do something for you and not having to pay them if they don't actually do anything. So that's what union shop clause is. It is
30   not an option not to pay your dues, you are terminated. If you are having this conversation in Florida, I'd be like, don't worry about it. If you don't like the contract, if the union is not helping you, just don't pay them. The State of Florida said, that is not okay to fire someone for something that has nothing to do with your performance at your job.   They're not allowed to fire people because of
35   that. Michigan, Florida, Texas, 28 states have said that's illegal. But in the State of New York to pay dues is a condition of employment, that's the law permits that. So that's the union shop clause.

Lev also made the following comments regarding employee increases and
40   improvements while a contract is being negotiated with a union representative (G.C. Exh. 7):

**Lev** - [27:20-28:04] - Okay, so, less I be accused again of being a liar, this is from Bloomberg law. So they did a study.  The average contract takes 409 days to reach an agreement. So over at JFK8, a year goes by and other places have
45   gotten increases, and other changes and improvements have been made at other buildings, but JFK8, they're in a collective bargaining process, that's frozen, and if employees are standing up going, "it's been a year, we haven't gotten anything, I thought we were going to do this." Maybe their picture gets taken, maybe they dig up something in their past, this is what they do if you disagree
50   with them. They put a little "wanted" poster out for you. Yes?

**Employee -** [28:04-28:06] - Is that why I can't change my schedule?

**Lev -** [28:10-28:49] - Yeah, they are not allowed to make any changes. You guys
are in the same status quo as they are. The difference is, you guys are in the
5   preelection status quo, they are in the pre-collective bargaining status quo.
Exactly the same impact. So if you ask to make a change now, your managers is
like "Oh, I can't, we'll talk to you about it later." Because while this process is
going on, everything is frozen. So, 409 days, if they're on average, they will not
have a contract a year from now. …  I would expect 8,000 would be longer, but
10   maybe it's shorter, nobody knows.

**Employee -** [28:49-28:54] - If the Union is voted in, I would have to wait the
average, like that much days to fix my schedule?

15   **Lev -** [28:54-30:22] - Yeah. That's the average but again, it could be much
shorter, it could be much shorter. Like I'm trying to say, like, both sides. I know I
sound so negative, but it could be more, it could be less, it could be the same.
That's not negative. I know reading this sounds negative, but like I'm sorry but it's
raining outside. That's negative. But that's not fear mongering. I've never said
20   anything that's fear mongering. This is just a fact. If this frightens you, then you
should vote no, if it doesn't frighten you, then you could vote yes. But telling
someone the truth shouldn't be scary. I'm not saying anyone's going to lose
anything, but I'm also saying I don't know if anyone is going to gain anything. You
can decide whether you want to roll the dice and be bound by this. So, 409 days
25   on average, some other data, this comes from the Economic Policy Institute, this
is from 2021, more than half of all workers who vote to form a union are still
without a collective bargaining agreement a year later, 37% are without an
agreement over two years later. Does that mean you should vote no? Of course
not, it just means that expect to be really, really patient because it's a long
30   process. That doesn't mean the ALU is bad, it doesn't mean unions are bad, it
just means this is the data on how long it takes.

**ANALYSIS**

35   **Discriminatory Enforcement of the Solicitation Policy**

The complaint alleges that the Respondent violated Section 8(a)(1) by discriminatorily
enforcing its solicitation policy when it removed messages that Miller posted on the VOA inviting
employees to sign a Juneteenth petition at the Union tent and by threatening Miller with
40   discipline for those postings.  (Complaint ¶ 11)  The General Counsel concedes that "an
employer does not violate the Act by restricting the nonbusiness use of its IT resources absent
proof that employees would otherwise be deprived of any reasonable means of communicating
with each other, or proof of discrimination."  *Caesars Entertainment*, 368 NLRB No. 143, slip op.
8 (2019).  Nevertheless, the General Counsel, relying exclusively on *Guard Publishing Co. d/b/a*
45   *The Register Guard*, 351 NLRB 1110 (2007), contends that the Respondent discriminatory
enforced its solicitation policy along Section 7 lines.

*Removal of Miller's Post*

50   In *Register Guard*, the Board found lawful an employer's enforcement of a policy
prohibiting the use of its email system for "non-job related solicitations" by issuing written
warnings to an employee for emails urging other employees to support the union by wearing

green and participating in a union entry in a parade.  Id. at 1119-1120.  The Board refused to find the warnings discriminatory even though the employer allowed employees to send personal e-mail messages (i.e., emails concerning social gatherings, jokes, baby announcements, offers of sports tickets, and requests for services such as dog walking) because the employer did not have a practice of permitting emails which solicited support for groups, causes, or organizations.  Id. at 1117, 1119.  The union-related emails were found to be "unprotected" because they violated a lawful solicitation policy in the absence of evidence that other email "solicitations" were allowed.  Conversely, the Board found unlawful a warning issued to an employee that simply clarified facts about the union rally and "was not a solicitation."  Id. 1119.  Since the Respondent allowed other non-solicitation emails, the only difference between the prohibited and permitted emails "was union-related."  Id. 1119.

In describing the appropriate analysis regarding the alleged discriminatory enforcement of a solicitation policy, the Board stated as follows:

> We find that the Seventh Circuit's analysis, rather than existing Board precedent, better reflects the principle that discrimination means the unequal treatment of equals.  Thus, in order to be unlawful, discrimination must be along Section 7 lines.  In other words, unlawful discrimination consists of disparate treatment of activities or communications of a similar character because of their union or other Section 7-protected status. See, e.g., *Fleming, supra, 349 F.3d at 975* ("[C]ourts should look for disparate treatment of union postings before finding that an employer violated *Sec. 8(a)(1).*"); *Lucile Salter Packard Children's Hospital at Stanford v. NLRB, 321 U.S. App. D.C. 126, 97 F.3d 583, 587 (D.C. Cir. 1996)* (charging party must demonstrate that "the employer treated nonunion solicitations differently than union solicitations").
>
> For example, an employer clearly would violate the Act if it permitted employees to use e-mail to solicit for one union but not another, or if it permitted solicitation by antiunion employees but not by prounion employees. In either case, the employer has drawn a line between permitted and prohibited activities on Section 7 grounds. However, nothing in the Act prohibits an employer from drawing lines on a non-Section 7 basis. That is, an employer may draw a line between charitable solicitations and noncharitable solicitations, between solicitations of a personal nature (e.g., a car for sale) and solicitations for the commercial sale of a product (e.g., Avon products), between invitations for an organization and invitations of a personal nature, between solicitations and mere talk, and between business-related use and nonbusiness-related use. In each of these examples, the fact that union solicitation would fall on the prohibited side of the line does not establish that the rule discriminates along Section 7 lines. For example, a rule that permitted charitable solicitations but not noncharitable solicitations would permit solicitations for the Red Cross and the Salvation Army, but it would prohibit solicitations for Avon and the union.

Id. at 1117-1118

Here, the General Counsel initially contends that all "Section 7-protected" VOA posts are of a similar character and, therefore, once the Respondent permits some Section 7-protected posts it must allow all Section 7-protected posts, including Miller's messages inviting employees to sign a Juneteenth petition at the Union tent.  However, in *Register Guard*, the Board found that an employer may prohibit solicitation while permitting communications that do not rise to the level of solicitation.  Id. at 1119.  Thus, currently, the Board does not consider a solicitation

versus non-solicitation distinction to be the "unequal treatment of equals" or the disparate treatment of communications of a "similar character." This rationale would logically apply even if the prohibited solicitation and allowed non-solicitation were both union-related or concertedly related to wages, hours, and other terms and conditions of employment.[9]

5

The General Counsel does identify as "solicitation" certain VOA messages which were not removed by the Respondent even though they were posted in support of a group, cause, or organization. Employees routinely posted VOA messages which sought other employees to "vote yes" or "vote no" in the union election. One employee posted a message asking other employees to "come get" a "VOTE NO" shirt in the breakroom. Employees posted concerted messages about safety and health concerns. Employees posted concerted messages in support of Juneteenth as a paid holiday, including this post by Miller on June 18:

10

15

Since Juneteenth is now a federal Holiday shouldn't we get holiday pay as we do for all the other holidays. It's all over every news channel and in the papers as well that June 19 is now a federal holiday.

The Respondent argues that it did not discriminatorily enforce its solicitation policy along Section 7 lines, but simply enforced a Section 7-neutral policy which prohibits solicitation for "signatures on petitions." As noted in *Register Guard*, "an employer clearly would violate the Act if it permitted employees to use e-mail to solicit for one union but not another, or if it permitted solicitation by antiunion employees but not by prounion employees." Id. at 1118. Although such posts are all union-related, by enforcing a policy in a manner that takes the side of one union over another or one union over no union, "the employer has drawn a line between permitted and prohibited activities on Section 7 grounds." Id. Until July, the Respondent did not remove union-related posts and did not remove posts promoting Juneteenth as a paid holiday. Accordingly, it is not so obvious that the Respondent drew a line between prohibited and permitted solicitations along Section 7 lines.

20

25

The issue presented here is a difficult one and I look to the totality of the circumstances to answer it. The Respondent essentially maintained the VOA as an open forum and did not, until July, remove any posts. In a Chime exchange, Edwards said, "I'm shocked Stephanie is suggesting to remove a VOA comment but I'm aligned 100%" because "[i]t is not asking any type of question and instead antagonizing and trying to rally a group of people."[10] The VOA post which sticks out as particularly similar to Miller's message inviting employees to sign a Juneteenth petition at the Union tent is another VOA post which invited employees to come get a "VOTE NO" shirt in the breakroom. The post regarding "vote no" shirts appears to violate the solicitation policy (as clarified by FAQ number 1) against distribution in the same way Miller's post violated the policy against the solicitation of signatures for petitions. The Respondent removed posts from the VOA for the first time during a union organizing campaign it opposed and the removed posts referenced a petition available for signing at the Union tent. At the time,

30

35

40

---

[9] The General Counsel also claims that the Respondent's application of its solicitation policy to remove Miller's post is "fallacious" because the policy exempts communication that "relates to terms and conditions of employment." However, solicitation policy FAQ number 4 echoes the law in *Register Guard* by prominently noting that solicitation is legally protected only if it "**Does NOT**" use company electronic equipment "*and*" relates to terms and conditions of employment. The VOA is an electronic system and, therefore, VOA posts are not exempt from the solicitation policy.

[10] The General Counsel did not allege that the employer's enforcement of the solicitation policy was motivated by a discriminatory purpose and I do not address the same herein. (Tr. 428-430) See *Kroger Ltd. Partnership*, 368 NLRB No. 64 slip op. 11-12 (2019).

the Respondent was already circulating literature designed to dissuade employees from signing union authorization cards which were available at the Union tent.  On July 12, when Tanelli told Miller her post would be removed as a violation of the solicitation policy, he said the policy prohibited "anything related, like, to the ALU, and the tent, things like that like for going and signing up."  Although it is a close question under current law, the context could reasonably cause an employee to believe that the Respondent was discriminatorily enforcing its solicitation policy by prohibiting posts regarding the signing of documents at the Union tent along Section 7 lines while allowing other solicitations of a similar character to remain.

Accordingly, I find that the Respondent violated Section 8(a)(1) of the Act by discriminatorily enforcing its solicitation policy when it removed Miller's VOA messages inviting employees to sign a Juneteenth petition at the Union tent.  (Complaint ¶ 11(a))

*Threat of Discipline*

The General Counsel contends that Tanelli unlawfully threated Miller with discipline for reposting the VOA message which invited employees to sign a Juneteenth petition at the Union tent.  (Complaint ¶ 11(b))

I do not find the alleged violation because Tanelli did not threaten Miller with discipline during their July12 meeting.  Tanelli specifically told Miller she was not in trouble and was not being disciplined for violating the solicitation policy.  Tanelli told Miller the meeting was just for the purpose of educating her about the solicitation policy.  Tanelli did tell Miller that there would be "additional follow up" if she reposted the message.  However, "additional follow up" does not necessarily imply anything more than another educational meeting.  Tanelli's comment did not dissuade Miller from reposting the message and Miller was not disciplined for doing so.  The lack of an disciplinary "follow up" would tend to confirm that there had been no threat of discipline in the first place.[11]  Accordingly, I will dismiss the allegation that the Respondent violated Section 8(a)(1) of the Act by threatening Miller with discipline for reposting her July 9 VOA message. (Complaint ¶ 11(b))

## Promises to Improve the Career Choice Program

The General Counsel contends that, on November10 and 11, the Respondent violated Section 8(a)(1) by promising employees improved benefits for rejecting the Union.  (Complaint ¶¶ 15(a), 16(a))  More specifically, the General Counsel contends that the Respondent unlawfully promised to improve the CCP.

"An employer violates Section 8(a)(1) when it promises, either explicitly or impliedly, improved benefits contingent on employees giving up union representation."  *Unifirst Corp.*, 346 NLRB 591, 593 (2006), citing *Bakersfield Memorial Hospital*, 315 NLRB 596, 600 (1994).  However, employers may make truthful statements to employees concerning benefits available to their unrepresented employees and ask those employees not to unionize on that basis.  *Unifirst Corp.*, 346 NLRB at 593 (2006), citing *TCI Cablevision of Washington*, 329 NLRB 700 (1999).  Further, an employer may reference, during an organizing campaign, a benefit which was announced before the union campaign as a reason for employees not to unionize.

---

[11] The General Counsel relies on certain evidence that the Respondent did, in fact, consider disciplining Miller.  (G.C. Exhs. 55-56)  However, the General Counsel concedes that the 8(a)(1) threat analysis is an objective one from the perspective of a "reasonable employee."  The Respondent's disciplinary deliberations are irrelevant because they were not communicated to Miller.

*Horseshoe Bossier City Hotel & Casino*, 369 NLRB No. 80 (2020), citing *Hampton Inn NY-JFK Airport*, 348 NLRB 16, 17-18 (2006). Thus, the Board makes a distinction between (1) an employer referencing its existing or lawfully announced benefits as a reason not to unionize and (2) the promise of new benefits as a reason not to unionize. Only the latter is unlawful.

Here, in about April, the Union conspicuously began its organizing campaign at JFK8. In September, the Respondent announced company-wide improvements to the CCP. At a mandatory meeting held on November 10, Williams made the following comments:

> At JFK8, we have an amazing team, and we truly believe that by working together with our associates and direct interaction with our associates, allows us to make rapid improvement, course correct, and improve our work place.
> . . .
> And that's why Amazon, effective January 1, we will be paying 100% tuition, college tuition, education tuition. You guys have heard of that? [unidentified voice answers "yea."] Yeah? If you haven't, if you don't have an associate degree or bachelor's degree, and that's what you want, that's at your disposal. That is something that Amazon is going to implement because we've listened to our associated.

At a mandatory meeting held on November 11, Rebell made the following comments regarding changes to the CCP:

> So who here has heard of the Career Choice program? A couple right? So you have a lot of benefits right now. I'm just going to dive in a little bit to that one because we're constantly looking at ways to improve those type of programs. For instance, Career Choice today, you have to be employed with Amazon for a year and then it would pay roughly about 80% of that tuition. Come January that benefit is getting better. It's going to go down to only being here 90 days before you can take advantage of that and it's going to pay 100% of that tuition. And that's for programs . . . that help you stay here with Amazon or something that's just needed in the community. I've seen things like from CDL licensing that maybe you stay with Amazon and work with the transportation or the TOM team or maybe you could go to an outside business or heck even start your own business for trucking but also things like medical billing and coding and into the health field. From IT different things and getting those certificates or degrees. I've seen HVAC. Many different programs that are offered at that. And again that's a benefit that you have right now for free that is also getting better come January. So that's just one thing.

The General Counsel cites *Manor Care Health Services-Easton*, 356 NLRB 202, 219-223 (2010) and *MEMC Electronic Materials, Inc.*, 342 NLRB 1172, 1175 (2004) for the proposition that the Board will presumptively infer interference with Section 7 rights when an employer announces or grants benefits during a union organizing campaign, unless the employer can show it had a legitimate business reason for the change.

In *Manor Care*, 356 NLRB 202, 219-223 (2010), a union began a multistate organizing campaign of an employer's facilities in September 2007. In October 2007, the employer unlawfully solicited employee grievances regarding pay and promised to remedy them "without a second party involved." 356 NLRB at 220-221. In November 2007, the employer granted employee wage increases and lump sum payments. Id. at 222. The Board affirmed the judge's ruling that the pay increases violated Section 8(a)(1). Id. at 202, fn. 3. The complaint alleged

that the wage increases also violated Section 8(a)(3), but the judge found it unnecessary to reach that allegation as the remedy would be the same as the 8(a)(1) violation. Id. at 223.

In *MEMC Electronic Materials, Inc.*, 342 NLRB 1172, 1174-1176 (2004), wage cuts became a key issue in a union campaign. Just 4 days after the employer and union entered into a stipulated election agreement, the employer reversed course and announced to employees that half the wage cuts would be restored shortly before the scheduled election and the other half would be paid out thereafter in monthly lump payments. Id. at 1173. The employer made subsequent remarks to employees implying that the pay restoration was intended to quell worker anger which caused the union campaign. The Board found that the employer violated Section 8(a)(1)[12] by announcing and implementing the wage restorations, and stated:

> In conferral-of-benefits cases, the board has consistently inferred a violation of Section 8(a)(1) from nothing more than conferral itself during the pendency of an election, leaving it to the employer to make an affirmative showing that the grant of benefits was governed by factors other than the impending election. See, e.g., *Speco Corp.,* 298 NLRB 439, 443 (1990); *Brooks Bros.,* 261 NLRB 876, 882 (1982); *Gordonsville Industries,* 252 NLRB 563, 575 (1980).
>
> . . .
>
> One way in which an employer may explain the conferral of benefits during the pendency of an election is to establish that the grant of benefits "had been conceived and implemented prior to the union's arrival, and that the preelection announcement simply made known to employees a predetermined and existing benefit, legitimately processed and unveiled in accordance with the dictates of business constraints, not union considerations." *Gordonsville Industries*, 252 NLRB at 575.

The instant case is significantly different than *Manor Care* and *MEMC Electronic Materials* in that the complaint does not allege that the Respondent unlawfully, as a violation of Section 8(a)(1) or 8(a)(3), announced changes to the CCP program in September or implemented unlawful CCP changes in January 2022. Unlike in those cases, here, the September company-wide announcement was not made at a time or in a manner which would dissuade employees' from supporting the Union.[13] Absent such an allegation, the Respondent's references in November to CCP changes legally announced two months earlier effectively functioned as a reminder of a lawful predetermined benefit. As noted above, employers may ask employees not to unionize based upon their current benefits. It would make little sense if an employer's decision and announcement of a change in benefits was lawful but a subsequent reference to that change was not.[14] Accordingly, I will dismiss the allegations that the Respondent violated Section 8(a)(1) of the Act by promising employees improvements to the CCP to discourage them from electing a union representative. (Complaint ¶¶ 15(a), 16(a))

---

[12] The Board found it unnecessary to pass on an 8(a)(3) allegation in the complaint.

[13] That CCP changes were announced 5 months after organizing began and before representation petitions were filed on a company-wide basis without any reference to union organizing would tend to negate an inference that it was a coercive promise to convince employees not to unionize. See *Nalco Chemical Co.*, 163 NLRB 68, 70-71 (1967).

[14] As the General Counsel did not allege that the September announcement of CCP changes was unlawful, I do not believe it is appropriate to initially infer that the announcement interfered with employees' Section 7 rights (even though it occurred during an organizing campaign). Regardless, the Respondent had a legitimate business reason to reference the predetermined changes in opposition to union organizing.

<u>**Solicitation of Grievances and Implied Promises to Remedy Them**</u>

The General Counsel contends that, on November 10 and 11, the Respondent violated
5    Section 8(a)(1) by soliciting the grievances of employees and impliedly promising to remedy
them to discourage Union support. (Complaint ¶¶ 15(b), 16(b))

The Board has held that the solicitation of employee grievances during a union
organizing campaign "raises an inference that the employer is promising to remedy the
10    campaign," particularly when "an employer has not previously had a practice of soliciting
employee grievances." *Garda CL Great Lakes, Inc.*, 359 NLRB 1334 (2013), citing *Amptech
Inc.*, 342 NLRB 1131, 1137 (2004). However, "an employer with a past practice of soliciting
employee grievances through an open door or similar-type policy may continue such a policy
during a union's organizational campaign." *Wal-Mart Stores, Inc.*, 340 NLRB 637, 640 (2003)
15    citing *Kingsboro Medical Group*, 270 NLRB 962, 963 (1984). Ultimately, "it is not the solicitation
of grievances itself that violates the Act, but rather the employer's explicit or implicit promise to
remedy the solicited grievances that impresses upon employees the notion that representation
is unnecessary." *Wal-Mart Stores, Inc.*, 340 NLRB 637, 640 (2003) citing *Maple Grove Health
Care Center*, 330 NLRB 775 (2000) and *Uarco, Inc.*, 216 NLRB 1, 2 (1974). Thus, an
20    employer's statement to employees that it can make no promises tends to work against the
finding of a violation. See *Southern Monterey County Hospital*, 348 NLRB 327, 329 (2006)
citing *Uarco, Inc.*, 216 NLRB 1, 2 (1974). Likewise, an employer's failure to offer any solution to
a grievance tends to work against the finding of a violation. Id.

25    Here, I do not find that the Respondent, by Williams on November 10, violated the Act.
Williams twice told employees he could not promise them anything.[15] Williams did not actually
solicit employee grievances at the meeting and, therefore, was not in a position to offer any
specific solutions.[16] Rather, Williams urged employees to direct their complaints to
management at various levels pursuant to an open door policy and in forums that were already
30    available.[17] These factors tend to diminish any inference of coercion and weigh against the
finding of a violation. See *Southern Monterey County Hospital*, 348 NLRB 327, 329 (2006).

The General Counsel asserts that the Respondent failed to present evidence of an open
door policy or establish that employees had an existing right to escalate complaints to higher
35    management if those complaints were not remedied at a lower level. However, the Owner's
Manual which was entered into evidence includes a provision titled "Open Door Policy and

---

[15] Compare *ManorCare Health Services-Easton*, 356 NLRB 202, 220 (2010), cited by the General
Counsel, in which the employer specifically told employees that they "had heard there was a lot of
complaints and concern. And that they're here to try to fix it without a second party involved."

[16] Compare *Aldworth Company, Inc.*, 338 NLRB 137, 179 (2002), cited by the General Counsel, in
which the employer made notes of employee grievances during a meeting and responded by
issuing a letter with specific remedies.

[17] Compare *Edward A. Utlaut Foundation, Inc.*, 249 NLRB 1153, 1156 (1980), cited by the
General Counsel, in which the employer changed its method of solicitating grievances from a
generally neglected suggestion box to an announcement that complaints about sick leave policy
could be changed and "taken care of."

Conflict Resolution."[18] That policy indicates that employees "are welcome to discuss any suggestion, concern, or other feedback with any member of the company's management. Associates are encouraged to bring their ideas to the attention of management." (G.C. Exh. 58 p. 7) The policy further states (G.C. Exh. 58 p. 7):

> The majority of misunderstandings are satisfactorily resolved by a thorough discussion and mutual understanding between the parties involved. In general, it is best to discuss any concerns with your immediate supervisor first. If you are unable to reach a satisfactory resolution with your supervisor or are not comfortable discussing the issue with your supervisor, you are welcome to discuss the matter with the next level of management, with Human Resources, or with any member of senior management.

The remainder of Williams' comments did not establish a context which implied that he was soliciting grievances and promising to remedy them if employees rejected the Union. Williams stated that it is "our job every day to listen to associates' concerns and try to remove barriers." In so stating, Williams gave no indication that the Respondent would do less for employees if they unionized or more for employees if they did not. Williams said he was "not here to bash anybody, I'm just giving you my opinion," and there are "two opposing sides" and "that's okay." Williams assured employees that, "regardless of what you decide to do or don't do, it is your choice, it is your right." In talking about what employees should do if they were approached by the Union, Williams stated:

> I'm going to be totally transparent, totally honest with you. That's entirely up to you. I'm not here to tell you what to do. That's up to you. It is your right. Okay. I just want you to make an informed decision. That's it. I'm not telling you to go this way or that way. Again, that is your right, your decision, and we respect that. We're only here to provide you with the facts, as we see it. We're not promising you anything. We're not telling you to go left or go right. That's up to you. But, if you don't have all of the information, you can make the wrong decision.

In my opinion, Williams' comments never spilled over into an implied promise that, if employees did not unionize, their complaints would be presented in new forums, processed in a different way, be taken more seriously, or be remedied more favorably than they had been in the past. Under current law, the Respondent was not forbidden from campaigning against unionization by asserting that employees already have the ability to approach management at all levels and in various forums to present their grievances. Under current law, the Respondent is entitled to tell employees that it wants to maintain a direct relationship with employees that does not include what it perceives to be the intervention of a third party union. Certainly, employees might not agree with the Respondent and take issue with a characterization of a union as a "third party," but that does not render the comments unlawful.

Similarly, I do not find that the comments of Rebell and Edison, on November 11, were unlawful. Their presentation largely concerned an explanation of existing policies and forums for

---

[18] Although not entirely clear, the General Counsel perhaps asserts that the Respondent presented no evidence about its open door policy because the 2019 Owner's Manual was entered into evidence and the 2021 version was not. However, Edwards testified that she believed the 2019 Owner's Manual was not changed. Further, we are concerned, here, with the Respondent's policy that has historically been in effect. There was an open door policy in effect in 2019 and there is no evidence that it changed before the Respondent's agents made reference to it in November.

employees to express and resolve complaints.  Like Williams, Rebell and Edison did not solicit particular grievances or offer to resolve them.  While Rebell and Edison did not expressly state that the Respondent could not promise employees anything, Rebell did suggest that employees do research and "go straight to the National Labor Relations Board's website."  I do not find that Rebell and Edison ever moved beyond a recitation of the Respondent's existing policies and practices, and into an implied promise to remedy complaints in a new or different way.

Based upon the foregoing, I will dismiss the allegations that the Respondent violated Section 8(a)(1) of the Act by soliciting employee grievances and impliedly promising to remedy them to discourage union support.  (Complaint ¶¶ 15(b), 16(b))

## Threats to Reduce Employees' Wages as a Result of Union Dues

The General Counsel contends that in anti-union literature and in mandatory meetings held on November 11, February 16, and April 18, the Respondent violated Section 8(a)(1) by threatening to withhold employees' wages if they chose to be represented by the Union. (Complaint ¶¶ 7(b), 8(b), 16(c), 17(a), 19(a))  More specifically, the General Counsel contends that the Respondent unlawfully threatened employees with reduced wages by stating that the Union would charge them certain monetary amounts, including dues and fees.

In *Office Depot*, 330 NLRB 640, 642 (2000), the Board stated as follows in rejecting an allegation that the employer violated Section 8(a)(1) by telling employees they would need to pay union dues if the union were elected:

> We find nothing unlawful in the Respondent's statement that the employees would have to pay [u]nion dues if they selected the [u]nion. It is an economic reality that unions may collect dues from the employees they represent. The Respondent's statement about dues simply conveys to employees this reality. It does not convey any explicit or implicit threat of reprisal against employees for exercising their statutory right to select a union as their exclusive collective-bargaining representative. Even if the Respondent's statement could be considered untruthful, in that not all employees in union-represented units "have" to pay union dues, it is still nothing more than a misrepresentation about unions' ability to enforce payment of dues and not a threat of adverse action by the Respondent. We, therefore, find that the Respondent's statement about Union dues does not violate Section 8(a)(1) of the Act.  *New Process Co.*, 290 NLRB 704, 707 enfd. Mem.  872 F.2d 413 (3d Cir. 1989).

Similarly, in *Syncor International Corp.*, 324 NLRB  8, 8 (1997), the Board found lawful the statement, "if the Union should come in, then [employees] would be making less money after [they] paid dues to the Union."  The Board explained:

> Viewed in context, [the employer's] remark about "making less money" cannot reasonably be interpreted as a threat to reduce employees' wages because of their union support. Rather, the clear implication of his remark was to serve as a reminder that the payment of union dues would result in an expense not currently borne by the employees.

Id.  See also *Southern Monterey County Hospital*, 348 NLRB 327, 328 (2006) (supervisor's statement that unions just want employees' money and that employees would have to pay union dues without a guarantee of receiving benefits in return is lawful).

Here, in distributed literature, the Respondent advised employees that signing a union authorization card may obligate them to pay the Union a monthly fee out of their paychecks. On November 11, Rebell told employees the Union "will charge it's members dues, fees, fines, and assessments in exchange for representation." Rebell also told employees that, by signing an authorization card, "you could be authorizing the ALU to speak on your behalf or you could also be obligated to pay the union dues." On February 16, Bowers told employees that, if the Union is elected, "everyone's terms of employment will be up for negotiation and you will also be liable or payable for union does which are a representation fee that they take straight out of your pay check and give it to the ALU." Bowers also said that, as a result, employees' paychecks and budgets would change. On April 18, Lev told employees that, as an employee previously represented by a union, "if I didn't pay may dues, I was terminated. Not paying your dues isn't an option, you are fired." These statements are no more unlawful as threats of reduced wages than employer statements deemed legal in the cases cited above.

The cases relied upon by the General Counsel are inapposite.[19] In *Shamrock Foods*, 366 NLRB No. 17 (2018) and *Reno Hilton*, 319 NLRB 154 (1995), the employers made generalized assertions that employees would suffer harm as a result of organizing in the context of other unlawful threats of plant closure, termination, and the reduction of benefits. As noted by the Board in *Shamrock Foods*, while discussing the decision in *Reno Hilton*, the "numerous other unfair labor practices, including threats of closure, discharge, and loss of benefits, . . . gave the [general] assertion 'both specificity and force.'" *Shamrock Foods*, 366 NLRB at slip op. 14. The statements at issue here were not generalized threats, but specific statements about the impact of union dues, which the Board has found to be lawful.[20] Further, the alleged unlawful statements were not made in a context rife with unfair labor practices.

Based upon the foregoing, I will dismiss the allegations that the Respondent violated Section 8(a)(1) of the Act by threatening the reduction of employees' wages as a result of the assessment of union dues or fees. (Complaint ¶¶ 7(b), 8(b), 16(c), 17(a), 19(a))

## Threats of Loss of Existing Wages and Benefits as a Result of Bargaining

The General Counsel contends that, on February 16, the Respondent violated Section 8(a)(1) by threatening to withhold employees' existing wages if they chose to be represented by the Union. (Complaint ¶ 17(b))

The Board has noted that "[a]n employer can tell employees that bargaining will begin from 'scratch' or 'zero' but the statements cannot be made in a coercive context or in a manner designed to convey to employees a threat that they will be deprived of existing benefits if they vote for the union." *Somerset Welding & Steel, Inc.*, 314 NLRB 829, 832 (1994), citing *Belcher Towing Co.*, 265 NLRB 1258 (1982). "Additionally, employees can be told that bargaining will start from zero but they cannot be threatened with the loss of benefits and left with the impression that all they will 'get' is what the union can restore to them." *Somerset Welding &*

---

[19] In their brief, the General Counsel essentially concedes that statements regarding the payment of union dues, alone in isolation, might not be unlawful. (G.C. Brf. pp. 41, 82)

[20] In *Clements Wire & Mfg. Co.*, 257 NLRB 206, 213 (1981), cited by the General Counsel, the employer unlawfully told employees they would be "making less money, not more." Although the employer also discussed union dues, the employer did not tell employees they would make less money *because* they paid union dues. The statement about making less money and paying dues were separate. The General Counsel also relies on the dissent in *Tesla, Inc.*, 370 NLRB No. 101 (2021), but I am bound to apply current Board law, including majority opinions.

*Steel, Inc.*, 314 NLRB at 832, citing P*lastronics, Inc.*, 233 NLRB 155 (1977). Thus, the Board distinguishes "between (1) a lawful statement that benefits could be lost through the bargaining process and (2) an unlawful threat that benefits will be taken away and the union will have to bargain to get them back." *So-Lo Foods, Inc.*, 303 NLRB 749, 750 (1991).

The Board has recognized that "'bargaining from scratch' is a dangerous phrase which carries within it the seed of a threat that the employer will become punitively intransigent in the event the union wins the election." *Coach and Equipment Sales Corp.*, 228 NLRB 440, 440 (1977). In *Coach and Equipment Sales*, 228 NLRB at 440-441, the Board explained the evaluation of such statements as follows:

> [W]here a bargaining-from-scratch statement can reasonably be read in context as a threat by the employer either to unilaterally discontinue existing benefits prior to negotiations, or to adopt a regressive bargaining posture designed to force a reduction of existing benefits for the purpose of penalizing employees for choosing collective represent, the Board will find a violation. Where, on the other hand, the clearly articulated thrust of the bargaining-from-scratch statement is that the mere designation of a union will not automatically secure increases in wages and benefits, and that all such items are subject to bargaining, no violation will be found. A close question sometimes exists whether bargaining-from-scratch statements constitute a threat of economic reprisal or instead constitute an attempt to portray the possible pitfalls of the collective bargaining process. The presence of contemporaneous threats or unfair labor practices is often a critical factor in determining whether there is a threatening color to employer's remarks.

In *Tufts Brothers Inc.*, 235 NLRB 808, 808 (1978), an employer was found to have unlawfully told employees that the law required him to freeze all benefits and start from scratch if the union were elected. The Board observed as follows in finding the comments unlawful:

> It is permissible to inform employees of the realities of collective bargaining, which include the possibility the Union, in order to secure some other benefits, might trade away some existing benefits. However, in this case the totality of the circumstances surrounding the bargaining-from-scratch statements demonstrated that the risk of loss stems not from the give and take of good-faith bargaining, but from a regressive bargaining posture predetermined by the employer.

Id.

On February 16, Bowers had the following exchange with a JFK8 employee:

**Bowers:** So, with a union, terms and conditions of employment must be negotiated before changes can be made and they must be negotiated in good faith. Now good faith means that neither party can come to the table and say, "I want this or it's nothing." Both parties have to compromise, both parties have to give and take and… until changes can be made. So, the negotiations process is called collective bargaining and, in negotiations, there are no guarantees. Nobody can predict these results from the good faith bargaining process. And you can end up with better, the same, or worse than you currently have. There are no guarantees as to what the outcome will be.

**Palmer:** So, wait, you're saying we could end up with worse? What does that mean by that?

**Bowers**: So, there are no guarantees as to what will happen, right? So, we can't make any promises that things will get better or stay the same. Cause it could get worse. We can't promise what's going to happen. Amazon can't promise you that they're going to
5    walk into negotiations and the negotiations will start from the same. It could start from minimum wage for instance. I'm not saying that that will happen but it is a possibility.

I note first that this is not clearly a case, like those cited by the General Counsel,[21] in which the Respondent unlawfully threatened to reduce employees' wages and require the union
10    to bargain to get them back. Bowers initially noted that "terms and conditions of employment must be negotiated before changes can be made and they must be negotiated in good faith." From that premise (i.e., wages would not be reduced before negotiations occur), although perhaps stated somewhat clumsily, Bowers indicated that the Respondent might start with the bargaining position that employees should receive a pay reduction to the minimum wage
15    (employees currently earn more than the minimum wage).

Bowers did, however, raise the possibility that the Respondent would take a regressive bargaining posture. Presumably, the Respondent has an economic reason (i.e., hiring and keeping employees) for paying employees their current wages and benefits. The Board has
20    tended to find employer statements lawful when they include at least some indication that wages or benefits might be reduced as a result of "trading" or the give-and-take of negotiations. See e.g., *Sunbelt Mfg., Inc.*, 308 NLRB 780, 791 (1992) aff'd 996 F.2d 305 (5th Cir. 1993); *Lear-Siegler Management Service*, 306 NLRB 393 (1992); *Bi-Lo*, 303 NLRB 749, 750 (1991); *Uarco*, 286 NLRB 55 (1987). Bowers did so in telling employees, "[b]oth parties have to compromise,
25    both parties have to give and take . . . until changes can be made." In *Mediplex of Connecticut, Inc.*, 319 NLRB 281, 281 (1995), the Board stated that employees are "capable of evaluating" such "campaign propaganda" that union representation "might result in less desirable benefits." The comments by Bowers seem to fall within the scope of precedent finding such comments to be lawful. Finally, as noted above, Bowers did not make her comments in a context rife with
30    other unfair labor practices.[22]

Accordingly, I will dismiss the allegation that the Respondent violated Section 8(a)(1) of the Act by threatening employees with the loss of existing wages as a result of collective bargaining. (Complaint ¶ 17(b))
35

**Threat of Unlawful Discharge Pursuant to a Union Security Clause**

The General Counsel contends that, on March 15, the Respondent violated Section 8(a)(1) by threatening employees with discharge if they chose to be represented by the Union.
40    (Complaint ¶ 18(A)(a)) More specifically, the General Counsel contends that the Respondent unlawfully threatened employees with discharge pursuant to a union security clause.

On March 15, Warrior told JFK8 employees that a "union shop clause would require Amazon to fire you if you don't want to join the union and pay union dues."
45

---

[21] *Taylor-Dunn Manufacturing Co.*, 252 NLRB 799, 800 (1980); *Noah's New York Bagels*, 324 NLRB 266, 266-267 (1997); *Noah's Bay Area Bagels, LLC*, 331 NLRB 188, 188 (2000); *Coach and Equipment Sales Corp.*, 228 NLRB 440 (1977).

[22] In so finding, I note that the statements I have found to be unlawful were not made by Bowers on February 16.

The General Counsel and Respondent both cite *Didlake, Inc.*, 367 NLRB No. 125 (2019). In that case, an employer told employees that, if the union wins, "[f]irst thing they will require you to do is join the union. . . . And if you don't, you will not be able to work here." Id. slip op. at 2. The employer also told employees that, if the union wins, "you have to join as a condition of your employment to be here, and you will be paying the union dues." The Board majority acknowledged that the employer's comments "misstated the law when they characterized union membership and the payment of dues as a 'condition of employment if the [u]nion won the election." Nevertheless, the Board majority found that "the employer's statements to employees respecting their dues obligation are not coercive . . . even if they contain misstatements of law." Id. slip op. at 2, citing *Midland National Life Insurance Co.*, 263 NLRB 127 (1982).

The General Counsel invites me to rely on the dissent in *Didlake* rather than the majority decision. The dissent reasoned that the employer's misstatements of law were objectionable because they "threatened employees that if they chose the [u]nion, the [e]mployer certainly would require them to join the [u]nion and pay dues or be fired." Id. at 5. While this reasoning might command a majority in the instant case, I must apply current Board law, including majority decisions. Accordingly, I will dismiss the allegation that the Respondent violated Section 8(a)(1) of the Act by threatening employees with unlawful discharge pursuant to a union security clause if they chose to be represented by the Union. (Complaint ¶ 18(A)(a))

## Threats to Withhold Improved Wage and Benefits while Bargaining Takes Place

The General Counsel contends that on March 15, April 10, and April 18, the Respondent violated Section 8(a)(1) by threatening to withhold improvements in wage and benefits from employees if they chose to be represented by the Union. (Complaint ¶¶ 18(A)(b), 18(B), 19(b)) More specifically, the General Counsel contends that the Respondent told employees their terms of employment would be frozen and not improve while lengthy bargaining takes place.

The Board has found that an employer violates Section 8(a)(1) by advising employees that their wages would be frozen or put on hold during negotiations and that they would not share in traditional wage increases which may be received by nonunion employees. *DHL Express, Inc.*, 355 NLRB 1399, 1399-1400 (2010); *California Gas Transport, Inc.*, 347 NLRB 1314, 1314, 1349 (2006); *Jensen Enterprises*, 339 NLRB 877, 877-878 (2003); *Teksid Aluminum Foundry, Inc.*, 311 NLRB 711, 717 (1993). In *DHL Express*, the Board distinguished certain cases – *Mantrose-Haeuser Co.*, 306 NLRB 377 (1992) and *Uarco*, 286 NLRB 55 (1987)[23] – in which the employer lawfully referenced a potential freeze in employees' terms of employment while contemporaneously assuring them that the status quo would require that union represented employees share in wage increases of a type they previously enjoyed.

The Respondent has a practice of granting regular wage increases based upon time of service. On April 18, Lev told LDJ5 employees, "[t]he average time to reach an agreement is 409 days. A year goes buy and other guys have received increases and improvements." Threats that the pay of unionized employees would be frozen in place during lengthy negotiations while nonunion employees receive regular increases and improvements is a violation of Section 8(a)(1). *DHL Express, Inc.*, 355 NLRB 1399, 1399-1400 (2010); *California Gas Transport, Inc.*, 347 NLRB 1314, 1314, 1349 (2006); *Superior Emerald Park Landfill, LLC*, 340 NLRB 449, 261 (2003); *Jensen Enterprises*, 339 NLRB 877, 877-878 (2003); *Teksid Aluminum Foundry, Inc.*, 311 NLRB 711, 717 (1993).

---

[23] Both cases are relied upon by the Respondent.

Conversely, I do not find Smith's April 10 comments to LDJ5 unlawful. Smith told employees that federal law imposes no time limit on collective bargaining or guarantee that union represented employees would obtain a contract in 6 months or year. Smith also explained the law as it pertains to the "status quo" as follows:

> Okay, so once the union files a petition, and she's correct, once the union files a petition, okay, everything must remain the same. I can't give you anything and I can't take anything away. This law was written in 1935. Logic behind it was if you guys have a union election coming up and I give you things, I might be bribing you into voting no or if I take things away from you, I might be punishing you for bringing in a union, right? Neither of those things are legal. So you stay at status quo. The problem comes in with status quo, a lot of employees feel, is that when they vote a union in and they expect changes to happen right away, status quo says nothing can change until and if you reach an agreement, and I use the word "if" because actually there is nothing in federal law that guarantees you a contract at the end of the process.

Although Smith did not expressly tell employees they would continue to receive regular wage increases, she did assure them that they would not be punished for unionizing. In my opinion, Smith's comments fall within the scope of statements the Board has found to be lawful. See *Mantrose-Haeuser Co.*, 306 NLRB 377 (1992); *Uarco*, 286 NLRB 55 (1987).

Warrior's March 15 comments to JFK8 employees fall between those of Lev and Smith. Warrior told employees that "contracts typically take months or years and typically there are no changes in wages or benefits, and what happens if the parties can't agree to a contract?" Warrior did not expressly state that union represented employees would not share in improvements of unrepresented employees, but impliedly raised the prospect without offering any contemporaneous reassurance to the contrary. Thus, Warrior's comments come within the scope of cases the Board finds unlawful. *DHL Express, Inc.*, 355 NLRB 1399, 1399-1400 (2010); *California Gas Transport, Inc.*, 347 NLRB 1314, 1314, 1349 (2006); *Jensen Enterprises*, 339 NLRB 877, 877-878 (2003); *Teksid Aluminum Foundry, Inc.*, 311 NLRB 711, 717 (1993).

Based upon the foregoing, I find that the Respondent, by Warrior and Lev, on March 15 and April 18, respectively, violated Section 8(a)(1) of the Act by threatening to withhold improvements in employees' wages and benefits during negotiations. (Complaint ¶¶ 18(A)(b), 19(b)) I will dismiss the allegation that the Respondent, by Smith on April 10, did the same. (Complaint ¶ 18(B))

## CONCLUSIONS OF LAW

1. The Respondent, Amazon.Com Services LLC, is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

2. The Union, Amazon Labor Union, is a labor organization within the meaning of Section 2(5) of the Act.

3. The Respondent violated Section 8(a)(1) of the Act by discriminatorily enforcing its solicitation policy along Section 7 lines.

4. The Respondent violated Section 8(a)(1) of the Act by threatening to withhold employee improvements in wages and benefits while collective bargaining takes place.

5.   The unfair labor practices committed by the Respondent affect commerce within the meaning of Section 2(6) and (7) of the Act.

6.   The remainder of the complaint allegations are dismissed.

THE REMEDY

Having found that the Respondent, Amazon.com Services LLC, engaged in unfair labor practices, I shall order the Respondent to cease and desist therefrom and to take certain affirmative action designed to effectuate the policies of the Act.

The Respondent will be ordered to post, in English and Spanish, at its Staten Island JFK8 and LDJ5 facilities, the notice attached hereto as "Appendix."

As a remedy to the unlawful disparate enforcement of the Respondent's solicitation policy, the General Counsel argues that *AT&T Mobility*, 370 NLRB No. 121 (2021) be overruled and the solicitation policy be rescinded. However, I am not at liberty to overrule Board precedent.

The General Counsel has requested certain atypical remedies, including a notice reading and supervisor training by a Board agent.  I deny these requests.  I have not found many unfair labor practices and the ones I did find were not entirely obvious or clear cut.  Accordingly, I find that the Board's traditional remedies are sufficient to effectuate the policies of the Act in this matter.

On these findings of fact and conclusions of law, and on the entire record, I issue the following recommended order[24]

ORDER

The Respondent, Amazon.Com Services LLC, Staten Island, New York, its officers, agents, successors, and assigns, shall

1.   Cease and desist from

(a) Discriminatorily enforcing its solicitation policy along Section 7 lines.

(b) threatening to withhold employee improvements in wages and benefits while collective bargaining takes place.

(c)  In any like or related manner interfering, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2.   Take the following affirmative action necessary to effectuate the policies of the Act.

---

[24]  If no exceptions are filed as provided by Section 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommended Order shall, as provided in Section 102.48 of the Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes.

(a)  Within 14 days after service by the Region, post in English and Spanish at its JFK8 and LDJ5 facilities in Staten Island, New York, copies of the attached notice marked "Appendix."[25]  Copies of the notice, on forms provided by the Regional Director for Region 29, after being signed by the Respondent's authorized  representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted.  In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means.  Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material.  In the event that, during the pendency of these proceedings, the Respondent has gone out of business or closed one or both of the facilities involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, copies of the notice to all current employees and former employees employed by the Respondent at any time since July 12, 2021.

(b)  Within 21 days after service by the Region, file with the Regional Director for Region 29 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

Dated: Washington, D.C., January 30, 2023.

_____
Benjamin W. Green
Administrative Law Judge

[25] If the facilities involved in these proceedings are open and staffed by a substantial complement of employees, the notices must be posted within 14 days after service by the Region.  If the facilities involved in these proceedings are closed or not staffed by a substantial complement of employees due to the Coronavirus Disease 2019 (COVID-19) pandemic, the notices must be posted within 14 days after the facilities reopen and a substantial complement of employees have returned to work.  If, while closed or not staffed by a substantial complement of employees due to the pandemic, the Respondent is communicating with its employees by electronic means, the notice must also be posted by such electronic means within 14 days after service by the Region.  If the notice to be physically posted was posted electronically more than 60 days before physical posting of the notice, the notice shall state at the bottom that "This notice is the same notice previously [sent or posted] electronically on [date]."  If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

**APPENDIX**

**NOTICE TO EMPLOYEES**

**POSTED BY ORDER OF THE NATIONAL LABOR RELATIONS BOARD**

**An Agency of the United States Government**

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

**WE WILL NOT** discriminatorily enforce our solicitation policy by removing messages posted on the Voice of Associates Board which are protected under Section 7 of the National Labor Relations Act.

**WE WILL NOT** threaten to withhold employee improvements in wages and benefits while collective bargaining takes place.

<u>**Amazon.Com Services LLC**</u>
(Employer)

Dated: _____  By: _____
                                                     (Representative)              (Title)

The National Labor Relations Board is an independent Federal agency created in 1935 to enforce the National Labor Relations Act. It conducts secret-ballot elections to determine whether employees want union representation and it investigates and remedies unfair labor practices by employers and unions. To find out more about your rights under the Act and how to file a charge or election petition, you may speak confidentially to any agent with the Board's Regional Office set forth below.  You may also obtain information from the Board's website: www.nlrb.gov

100 Myrtle Avenue, Suite 5100, Brooklyn, NY 11201-4201
(212) 264-0300, Hours: 9 a.m. to 5:30 p.m. ET

The Administrative Law Judge's decision can be found at www.nlrb.gov/case/29-CA-280153 or by using the QR code below.  Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273-1940.



**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE**
THIS NOTICE MUST REMAIN POSTED FOR 60 CONSECUTIVE DAYS FROM THE DATE OF POSTING AND MUST NOT BE ALTERED, DEFACED, OR COVERED BY ANY OTHER MATERIAL. ANY QUESTIONS CONCERNING THIS NOTICE OR COMPLIANCE WITH ITS PROVISIONS MAY BE DIRECTED TO THE ABOVE REGIONAL OFFICE'S COMPLIANCE OFFICER (212) 264-0300.

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

| | |
|---|---|
| **AMAZON.COM SERVICES LLC** | |
| **and** | Cases  **29-CA-280153** |
| **DANA JOANN MILLER, an Individual** | |
| **and** | **29-CA-286577** |
| | **29-CA-287614** |
| **AMAZON LABOR UNION** | **29-CA-290880** |
| | **29-CA-292392** |
| | **29-CA-295663** |

**ORDER TRANSFERRING PROCEEDING TO
THE NATIONAL LABOR RELATIONS BOARD**

A hearing in the above-entitled proceeding having been held before a duly designated Administrative Law Judge, and the decision of that judge, a copy of which is attached, having been filed with the Board in Washington, D.C.,

**IT IS ORDERED,** pursuant to Section 102.45 of the National Labor Relations Board's Rules and Regulations, that the above-entitled matter be transferred to and continued before the Board.

Dated, Washington, D.C., January 30, 2023.

By direction of the Board:

　　　　　　　　　　　　　　　　 /s/  Roxanne L. Rothschild
　　　　　　　　　　　　　　　　　　Executive Secretary

NOTE: Communications concerning compliance with the Administrative Law Judge's decision should be with the Regional Director of the Regional Office that issued the complaint.

Exceptions to the decision of the Administrative Law Judge must be received by the Board's Office of the Executive Secretary, 1015 Half Street SE, Washington, DC 20570, on or before **February 27, 2023.**

Please refer to Section 102 of the Board's Rules and Regulations ("Rules") with regard to the procedure for filing exceptions to the Administrative Law Judge's decision,

or any responsive documents. Attention is specifically directed to the Rules concerning requests for extension of time to file documents (Rule 102.2(c)); the style and format of documents (Rule 102.5(a)); limitations on the length of briefs (Rules 102.5(a), 102.46(a)(1)(i)(D), & 102.46(h)); methods of filing with the Board's Office of the Executive Secretary (Rules 102.5(c)-(e)); and service on the other parties (Rules 102.5(c), 102.5(f)-(i), & 102.46(h)).

| | |
|---|---|
| Confirmation Number | 1072534098 |
| Date Submitted | Friday, February 24, 2023 2:42 PM (UTC-05:00) Eastern Time (US & Canada) |
| Case Name | Amazon.com Services, Inc. |
| Case Number | 29-CA-280153 |
| Filing Party | Counsel for GC / Region |
| Name | Emily Cabrera |
| Email | emily.cabrera@nlrb.gov |
| Address | 2 Metro Tech Center, 5th Floor Brooklyn, New York 11201 Brooklyn NY 11201 |
| Telephone | 7187656184 |
| Fax | 7183307579 |
| Original Due Date | 2/27/2023 |
| Date Requested | 3/31/2023 |
| Reason for Extension of Time | The Region is short staffed and the attorneys require additional time to draft these complex exceptions. The attorneys are currently involved in other litigations as well including litigations involving the same parties herein. Respondent does not oppose the request. The Charging Party has not provided a position on the current request. |
| What Document is Due | Exceptions to ALJD |
| Parties Served | Juan Enjamio- jenjamio@hunton.com, Kurt Powell-kpowell@hunton.com; Retu Singla- Retu Singla <rsingla@workingpeopleslaw.com> Jeanne Mirer-Jeanne Mirer <jmirer@julienmirer.com> Ria Julien- Ria Julien <rjulien@julienmirer.com> Seth Goldstein- Seth Goldstein <sgold352002@icloud.com> |



UNITED STATES GOVERNMENT
**OFFICE OF THE EXECUTIVE SECRETARY**
**NATIONAL LABOR RELATIONS BOARD**
**1015 Half Street SE**
**Washington, DC 20570**

February 24, 2023

Re:  Amazon.com Services, Inc.
     Cases 29-CA-280153, et al.

**EXTENSION OF TIME TO FILE EXCEPTIONS AND**
**BRIEF IN SUPPORT OF EXCEPTIONS**

The request for an extension of time in the above-referenced cases is granted. The due date for the receipt in Washington, D.C. of Exceptions to the Administrative Law Judge's Decision and Brief in Support of Exceptions is extended to **March 31, 2023**.  This extension of time to file exceptions and briefs in support of exceptions applies to all parties. In granting this extension of time, the fact that *no parties oppose the request* was considered.

/s/ Elizabeth M. Tafe
Associate Executive Secretary

cc:  Parties
     Region

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

| | |
|---|---|
| **AMAZON.COM SERVICES INC.** | |
| **and** | |
| **DANA JOANN MILLER, an Individual** | **Case No. 29-CA-280153** |
| **and** | |
| **AMAZON LABOR UNION** | **Case Nos. 29-CA-286577**<br>**29-CA-287614**<br>**29-CA-290880**<br>**29-CA-292392**<br>**29-CA-295663** |

**RESPONDENT AMAZON.COM SERVICES LLC'S REQUEST FOR**
**AN EXTENSION OF THE TIME TO FILE CROSS-EXCEPTIONS**
**AND ANSWERING BRIEF TO EXCEPTIONS**

Pursuant to Section 102.2(c), 102.46(b)-(c), and 102.47 of the Board's Rules and Regulations, Respondent Amazon.com Services LLC ("Amazon" or "Respondent"), respectfully moves to extend the time for filing and serving its cross-exceptions and briefs in support of cross-exceptions, as well as the time for filing and serving answering briefs to any exceptions. In support of this request, Amazon states the following:

1.      Administrative Law Judge Benjamin W. Green issued his written decision in the above-captioned case on January 30, 2023. The decision addressed six consolidated unfair labor practice cases, each with multiple allegations subsumed within, and thus is expansive in scope and length.

2.      With the consent of Respondent, the Counsel for the General Counsel requested an extension of the time for filing exceptions in this case, which was granted on February 24, 2023. The due date for exceptions was extended to March 31, 2023, a 35-day extension.

3.    Given the arguments made in its post-hearing brief, the Counsel for General Counsel intends to ask the Board to overrule its precedent related to several allegations in the Complaint, and also with regard to the remedy requested therein. Respondent therefore anticipates that its answer to the Counsel for the General Counsel's exceptions will require extensive briefing.

4.    Additionally, counsel for all parties to this matter are scheduled for a two-week hearing in another case before an administrative law judge of the Board, from April 17, 2023 to April 28, 2023. Without the requested extension, the cross-excepting parties' ability to adequately prepare its cross-exceptions and answering briefs—as well as its case for hearing—will be severely hampered.

5.    Respondent has notified Counsel for the General Counsel and counsel for the Charging Parties of its intent to file the instant motion, as well as the length of the extension sought. Both the Counsel for the General Counsel and Charging Parties consent to the filing of this motion and the extension of time requested herein.

6.    In light of the foregoing, Respondent respectfully requests that the Board grant its motion to extend the time for filing and serving cross-exceptions and briefs in support thereof, as well as the time for filing answers to exceptions to Friday, May 5, 2023.

Respectfully submitted this 30th day of March, 2023.

**HUNTON ANDREWS KURTH LLP**

*/s/ Kurt A. Powell*

Juan C. Enjamio
333 SE 2nd Ave., Suite 2400
Miami, FL 33131
(T): (305) 810-2511
(E): jenjamio@huntonAK.com

Kurt A. Powell
600 Peachtree Street, N.E., Suite 4100
Atlanta, GA 30308
(P): (404) 888-4015
(E): kpowell@huntonAK.com

**ATTORNEYS FOR AMAZON.COM
SERVICES LLC**

**CERTIFICATE OF SERVICE**

I certify that on this 30th day of March, 2023, I caused the foregoing to be electronically filed with the National Labor Relations Board at http://nlrb.gov and a copy of same to be served via e-mail on the following parties of record:

Retu Singla
rsingla@workingpeopleslaw.com
Jeanne Mirer
JMirer@julienmirer.com
Ria Julien
RJulien@julienmirer.com
Julien, Mirer & Singla, PLLC
1 Whitehall Street, 16th Floor
New York, NY 10004

Seth Goldstein
Sgold352002@icloud.com
217 Hadleigh Avenue
Cherry Hill, NJ 08003

Emily Cabrera
Emily.Cabrera@nlrb.gov
National Labor Relations Board
Region 29
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201

Lynda Tooker
Lynda.Tooker@nlrb.gov
National Labor Relations Board, Region 29
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201

/s/ Kurt A. Powell
Kurt A. Powell

**UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 29**

**AMAZON.COM SERVICES INC.**

   **and**         **Case No. 29-CA-280153**

**DANA JOANN MILLER, an Individual**

   **and**         **Case Nos. 29-CA-286577**
                 **29-CA-287614**
**AMAZON LABOR UNION**      **29-CA-290880**
                 **29-CA-292392**
                 **29-CA-295663**

## GENERAL COUNSEL'S EXCEPTIONS TO THE ADMINISTRATIVE LAW JUDGE'S DECISION

Pursuant to Section 102.46 of the Rules and Regulations of the National Labor Relations

Board, Counsel for the General Counsel files the following exceptions to the Decision of

Administrative Law Judge Benjamin Green, which issued on January 30, 2023.

| Exception No. | Page | Line(s) | Exception |
|---|---|---|---|
| 1 | 2 | 11-14 | The Board should overturn the ALJ's dismissal of the alleged threats of loss of benefits contained in Complaint paragraphs 7(a), 8(a) and 20, and overrule its decision in *Tri-Cast Inc.,* 274 NLRB 377 (1985). |
| 2 | 2 | 11-14 | The Board should overturn the ALJ's dismissal of the allegations that Respondent held certain unlawful mandatory meetings contained in Complaint paragraphs 13 and 14, and overrule its decision in *Babcock & Wilcox Co.,* 77 NLRB 577 (1948). |
| 3 | 2 | 11-12 | The Board should overturn the ALJ's denial of the CGC's request to overturn *The Guard Publishing d/b/a The Register Guard,* 351 NLRB 1110 (2007), and should overturn that decision since the facts herein demonstrate how the narrow discrimination standard set forth in that case interferes with employees' Section 7 rights. |

| 4 | 2 | 11-12 | The Board should overturn the ALJ's denial of the CGC's request to overturn *AT&T Mobility,* 370 NLRB No.121, slip op. at 7 (May 3, 2021), and should overturn that decision since the facts herein show that Respondent's unlawfully applied Solicitation Policy must be rescinded to fully remedy the violation and restore employees' rights. |
| 5 | 2 | 19-20 | The Board should overturn the ALJ's dismissal of the allegations in Complaint Paragraphs 11(b), 15(a)-(b), 16(a)-(b) |
| 6 | 6 | 37-38 | The Board should correct the ALJ's mistaken statement that the petition filed in 29-RC-285057 was limited to employees at JFK8, rather than all of the Employer's Gulf Avenue Staten Island facilities. |
| 7 | 17 | 25 | The Board should overturn the ALJ's failure to find that the April 10, 2022 meeting held by Rebecca Smith at Respondent's LDJ5 facility was mandatory. |
| 8 | 22 | 20-30 | The Board should overturn the ALJ's dismissal of the allegation contained in Complaint paragraph 11(b) that Respondent unlawfully threatened Dana Miller because the ALJ failed to consider key facts establishing Respondent's unlawful threat and failed to apply follow extant Board law. |
| 9 | 24 | 27-39 | The Board should overturn the ALJ's dismissal of the allegations contained in Complaint paragraphs 15(a) and 16(a) that Respondent unlawfully promised employees benefits to discourage them from electing a union representative because the ALJ did not appropriately apply extant Board law and relied upon facts not in evidence. |
| 10 | 24 | fn 14 | The Board should overturn the ALJ's conclusion that Respondent had a legitimate business reason to reference changes to the Career Choice Program because it is not supported by record evidence. |
| 11 | 25 | 25-28 | The Board should overturn the ALJ's conclusion that Respondent agent Williams did not violate the Act by soliciting grievances at the November 10, 2021 meeting. (Complaint ¶ 15(b)) |
| 12 | 26 | 14-15, 32-35 | The Board should overturn the ALJ's conclusion that William's comments did not establish a context that implied that he was soliciting grievances and promising to remedy them. |

| | | | |
|---|---|---|---|
| 13 | 26-27 | 43-44, 1-6 | The Board should overturn the ALJ's conclusion that Respondent agents Rebell and Edison did not violate the Act by soliciting grievances at the November 11, 2021 meeting. (Complaint ¶ 16(b)) |
| 14 | 27 | 8-10 | The Board should overturn the ALJ's dismissal of the allegations contained in Complaint paragraphs 15(b) and 16(b) that Respondent solicited employees' grievances and impliedly promised to remedy them to discourage union support because the ALJ did not appropriately apply extant Board law. |
| 15 | 33 | 4 | The Board should overturn the ALJ's Conclusion of Law dismissing the allegations in Complaint paragraphs 7(a), 8(a), 11(b), 13, 14, 15(a)-(b), 16(a)-(b) and 20. |
| 16 | 33 | 15-18 | The Board should overturn the ALJ's refusal to overturn *AT&T Mobility, supra,* and order the recission of Respondent's solicitation policy. |
| 17 | 33 | 20-24 | The Board should overturn the ALJ's refusal to order Respondent to post the Notice to Employees on its VOA Board and to read it to employees, which are necessary to fully remedy Respondent's unfair labor practices. |
| 18 | | | The ALJ erred by failing to make factual conclusions related to Complaint paragraph 14 and 20 alleging that the mandatory meeting held by General Manager Scott Taylor and statements made therein violated Section 8(a)(1) of the Act. |



UNITED STATES GOVERNMENT
**OFFICE OF THE EXECUTIVE SECRETARY**
**NATIONAL LABOR RELATIONS BOARD**
**1015 Half Street SE**
**Washington, DC 20570**

April 4, 2023

Re:    <u>Amazon.com Services, Inc.</u>
       Cases 29-CA-280153, 29-CA-286577,
       29-CA-287614, 29-CA-290880,
       29-CA-292392, 29-CA-295663

**EXTENSION OF TIME TO FILE**
**ANSWERING BRIEFS AND CROSS-EXCEPTIONS**

       The request for an extension of time in the above-referenced cases is granted. The due date for the receipt in Washington, D.C. of an Answering Brief to Exceptions to the Administrative Law Judge's Decision, Cross-Exceptions, and a Brief in Support of Cross-Exceptions, is extended to **May 5, 2023**.  This extension of time for filing answering briefs, cross-exceptions, and briefs in support of cross-exceptions applies to all parties.

/s/ Diane Bridge
Counsel

cc:  Parties
     Region

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

| | |
|---|---|
| **AMAZON.COM SERVICES INC.** | |
| **and** | |
| **DANA JOANN MILLER, an Individual** | **Case No. 29-CA-280153** |
| **and** | |
| **AMAZON LABOR UNION** | **Case Nos. 29-CA-286577**<br>**29-CA-287614**<br>**29-CA-290880**<br>**29-CA-292392**<br>**29-CA-295663** |

**RESPONDENT AMAZON.COM SERVICES LLC'S REQUEST TO EXCEED PAGE LIMITS FOR ITS ANSWERING BRIEF TO EXCEPTIONS**

Pursuant to Section 102.5(b) of the Board's Rules and Regulations, Amazon.com Services LLC ("Respondent"), respectfully requests permission to exceed the 50 page limit for its Answering Brief to the Counsel for General Counsel's Exceptions. Specifically, Respondent requests permission to file an Answering Brief that is no longer than seventy (70) pages.

1.      Administrative Law Judge Benjamin W. Green issued his written decision in the above-captioned case on January 30, 2023 (the "Decision"). The Decision addressed six consolidated unfair labor practice cases, each with multiple allegations subsumed within, and thus is expansive in scope and length.

2.      On March 29, 2023, the Counsel for General Counsel filed a motion (the "Motion") with the Board requesting that it be permitted an additional 20 pages for its Brief, citing the need to "devote a significant portion of her exceptions brief to the arguments for overturning [] four [Board] cases." *See* Motion at p. 2. The Counsel for General Counsel stated that the 50-page limit "would make it impossible to fully present the arguments for overturning these cases in addition

to fully and fairly presenting the arguments in support of reversing the ALJ's Decision on other dismissed allegations." *Id.*

3.     The Counsel for General Counsel's Motion was denied on timeliness grounds, specifically because the Counsel for General Counsel filed the Motion two days before it was due in violation of Section 102.5(b).

4.     The next day, on March 31, 2023, the Counsel for General Counsel filed Exceptions to the Decision ("Exceptions") and an accompanying brief in support of the Exceptions ("Brief"). The Counsel for General Counsel's Exceptions and Brief, among other things, requests that the Board overrule its long standing precedent related to several allegations in the Complaint, and also with regard to the remedy requested therein.  Specifically, the Counsel for General Counsel asks the Board to overturn *Tri-Cast Inc.,* 274 NLRB 377 (1985) (to find unlawful misrepresentations of employee rights under Section 9(a)), *Babcock & Wilcox Co.,* 77 NLRB 577 (1948) (legality of captive audience meetings), *AT&T Mobility,* 370 NLRB No.121, slip op. at 7 (2021) (rescission of disparately enforced rules), and *The Guard Publishing d/b/a the Register Guard,* 351 NLRB 1110 (2007) (discrimination standard for finding disparate enforcement of work rules).

5.     While the Brief is 50 pages long, it also contains over 300 lines of single spaced, ten point font footnotes.  Furthermore, the majority of the cases upon which the Counsel for General Counsel relies are cited and argued within these footnotes as opposed to the body of the Brief.  Indeed, the Counsel for General Counsel cites over 90 cases in these footnotes.

6.     Respondent submits that the 50-page limit on answering briefs would preclude it from being able to fully and fairly address the Brief, which includes substantial and lengthy arguments for overturning longstanding Board precedent in addition to its many other challenges to the Decision.

7.     Respondent has notified Counsel for the General Counsel and counsel for the Charging Parties of its intent to file the instant motion, as well as the amount of additional pages

sought.  The Counsel for the General Counsel consents to the filing of this motion and to the 20 page extension requested herein.  Counsel for the Charing Parties has not responded to Respondent's notice as of the time of filing.

8.     In light of the foregoing, Respondent respectfully requests that the Board grant it permission to exceed the 50 page limit for answering briefs and allow it to file an Answering Brief that is no longer than 70 pages.

Respectfully submitted this 24th day of April, 2023.

**HUNTON ANDREWS KURTH LLP**

*/s/ Kurt A. Powell*
Juan C. Enjamio
333 SE 2nd Ave., Suite 2400
Miami, FL 33131
(T): (305) 810-2511
(E): jenjamio@huntonAK.com

Kurt A. Powell
600 Peachtree Street, N.E., Suite 4100
Atlanta, GA 30308
(P): (404) 888-4015
(E): kpowell@huntonAK.com

**ATTORNEYS FOR AMAZON.COM SERVICES LLC**

## **CERTIFICATE OF SERVICE**

I certify that on this 24th day of April, 2023, I caused the foregoing to be electronically filed

with the National Labor Relations Board at http://nlrb.gov and a copy of same to be served via e-

mail on the following parties of record:

Retu Singla
rsingla@workingpeopleslaw.com
Jeanne Mirer
JMirer@julienmirer.com
Ria Julien
RJulien@julienmirer.com
Julien, Mirer & Singla, PLLC
1 Whitehall Street, 16th Floor
New York, NY 10004

Seth Goldstein
Sgold352002@icloud.com
217 Hadleigh Avenue
Cherry Hill, NJ 08003

Emily Cabrera
Emily.Cabrera@nlrb.gov
National Labor Relations Board
Region 29
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201

Lynda Tooker
Lynda.Tooker@nlrb.gov
National Labor Relations Board, Region 29
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201

/s/ Kurt A. Powell
Kurt A. Powell



UNITED STATES GOVERNMENT
**OFFICE OF THE EXECUTIVE SECRETARY**
**NATIONAL LABOR RELATIONS BOARD**
**1015 Half Street SE**
**Washington, DC 20570**

April 24, 2023

Re:   Amazon.com Services LLC
      Cases 29-CA-280153, et al.

## REQUEST TO EXCEED THE 50-PAGE LIMIT FOR
## ANSWERING BRIEFS TO EXCEPTIONS

The request for permission to exceed the 50-page limit for answering briefs to exceptions in the above-referenced cases is granted.  The answering briefs to exceptions are not to exceed **70 pages** in length, exclusive of cover page, table of contents, and table of authorities.

This permission to exceed the 50-page limit for answering briefs to exceptions applies to all parties.  Please note that this extension of the page limit does not apply to any other briefs that may be filed in this matter.  All other briefs to be filed in this matter must conform to the page limits set forth in the Board's Rules and Regulations.

/s/ Diane Bridge
Counsel

cc:  Parties
     Region

**UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD**

| | |
|---|---|
| **AMAZON.COM SERVICES LLC** | |
| **and** | |
| **DANA JOANN MILLER, an Individual** | **Case No. 29-CA-280153** |
| **and** | |
| **AMAZON LABOR UNION** | **Case Nos. 29-CA-286577**<br>**29-CA-287614**<br>**29-CA-290880**<br>**29-CA-292392**<br>**29-CA-295663** |

---

**AMAZON.COM SERVICES LLC'S CROSS
EXCEPTIONS TO THE ADMINISTRATIVE LAW
JUDGE'S DECISION**

---

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

Juan C. Enjamio
*jenjamio@huntonak.com*
305.810.2511
Wells Fargo Center
333 SE 2nd Avenue, Suite 2400
Miami, FL 33131

Kurtis A. Powell
*kpowell@huntonak.com*
404.888.4015
Bank of America Plaza
600 Peachtree Street N.E., Suite 4100
Atlanta, GA 30308

**ATTORNEYS FOR AMAZON.COM
SERVICES LLC**

## CROSS EXCEPTIONS

Pursuant to Section 102.46 of the Board's Rules and Regulations, Series 8, as amended, Amazon.com Services, LLC ("Amazon" or "Respondent") makes the following cross exceptions to the January 30, 2023 Decision and Order ("Decision") of the Honorable Administrative Law Judge Benjamin Green (the "ALJ") in the above-captioned case:

### Cross Exceptions Regarding Findings of Fact

1. Amazon excepts to the ALJ's finding that Warrior "impliedly raised the prospect" that unionized employees would not share in the improvements of non-unionized employees, without offering any contemporaneous assurances to the contrary. Decision at 32:27-28.

### Cross Exceptions Regarding Analysis

2. Amazon excepts to the ALJ's finding that Amazon violated the Act by discriminatorily enforcing its solicitation policy and threatening to withhold wage increases and improved benefits from employees if they elect a union as their bargaining representative. Decision at 2:16-20.

3. Amazon excepts to the ALJ's failure to find that that the Voice of the Associates ("VOA") post regarding "vote no" shirts was an isolated incident, and thus an improper comparator to Miller's removed post. Decision at 21:6-11.

4. Amazon excepts to the ALJ's finding that the VOA post regarding "vote no" shirts is "particularly similar" to Miller's removed VOA post. Decision at 21:34-37.

5.  Amazon excepts to the ALJ's finding that the VOA post regarding "vote no" shirts violates Amazon's solicitation policy against distribution in the same way Miller's post violated the policy against the solicitation of signatures for petitions.  Decision at 21:37-39.

6.  Amazon excepts to the ALJ's finding that the VOA post regarding "vote no" shirts is of a "similar character" to Miller's removed post.  Decision at 22:5-8.

7.  Amazon excepts to the ALJ's finding that Amazon's removal of Miller's VOA post "while allowing other solicitations of a similar character to remain" could "reasonably cause an employee to believe that [Amazon] was discriminatorily enforcing its solicitation policy." Decision at 22:5-8.

8.  Amazon excepts to the ALJ's finding that Amazon enforced its solicitation policy "along Section 7 lines while allowing other solicitations of a similar character to remain." Decision at 22:7-8.

9.  Amazon excepts to the ALJ's finding that Amazon violated Section 8(a)(1) of the Act by discriminatorily enforcing its solicitation policy when it removed Miller's VOA posts inviting employees to sign a Juneteenth petition at the Union tent.  Decision at 22:10-12.

10. Amazon excepts to the ALJ's finding that on April 18, Lev told LDJ5 employees, "[t]he average time to reach an agreement is 409 days. A year goes buy [sic] and other guys have received increases and improvements." Decision at 31:41-45.

11. Amazon excepts to the ALJ's characterization that Warrior's March 15 comments to JFK8 employees fall between those of Lev and Smith.  Decision at 32:23.

12. Amazon excepts to the ALJ's finding that, on March 15, Warrior told JFK8 employees "contracts typically take months or years and typically there are no changes in wages or benefits, and what happens if the parties can't agree to a contract?" Decision at 32:24-25.

13. Amazon excepts to the ALJ's finding that Warrior's comments come within the scope of cases the Board finds unlawful. Decision at 32:28-29.

14. Amazon excepts to the ALJ's finding that Amazon, by Warrior and Lev, on March 15 and April 18 respectively, violated Section 8(a)(1) of the Act. Decision at 32:33-35.

**Cross Exceptions Regarding the Conclusions of Law**

15. Amazon excepts to the ALJ's conclusion of law that Amazon violated Section 8(a)(1) of the Act by discriminatorily enforcing its solicitation policy along Section 7 lines. Decision at 32:47-48.

16. Amazon excepts to the ALJ's conclusion of law that Amazon violated Section 8(a)(1) of the Act by threatening to withhold employee improvements in wages and benefits while collective bargaining takes place. Decision at 32:50-51.

17. Amazon excepts to the ALJ's conclusion of law that Amazon committed unfair labor practices that affect commerce within the meaning of Section 2(6) and (7) of the Act. Decision at 33:1-2.

**Cross Exceptions Regarding the Remedy and Order**

18. Amazon excepts to the ALJ's finding that Amazon engaged in unfair labor practices and his order that Amazon cease and desist therefrom and take certain affirmative action. Decision at 33:8-10.

19. Amazon excepts to the ALJ's order that Amazon post, in English and Spanish, at its Staten Island JFK8 and LDJ5 facilities, the notice attached to the Decision as "Appendix." Decision at 33:12-13; 35-36.

20. Amazon excepts to the ALJ's finding that Amazon unlawfully enforced its solicitation policy. Decision at 33:15-16.

21. Amazon excepts to the ALJ's Order. Decision at 33:24-34:18.

Respectfully submitted this 5th day of May, 2023.

**HUNTON ANDREWS KURTH LLP**

*Kurt A. Powell*
Juan C. Enjamio
333 SE 2nd Ave., Suite 2400
Miami, FL 33131
(T): (305) 810-2511
(E): jenjamio@huntonAK.com

Kurt A. Powell
600 Peachtree Street, N.E., Suite 4100
Atlanta, GA 30308
(P): (404) 888-4015
(E): kpowell@huntonAK.com

**ATTORNEYS FOR AMAZON.COM SERVICES LLC**

**CERTIFICATE OF**
**SERVICE**

I certify that on this 5th day of May, 2023, I caused the foregoing to be electronically filed with the Office of the Executive Secretary of the National Labor Relations Board at http://www.nlrb.gov and a copy of same to be served via e-mail on the following parties of record:

Retu Singla
rsingla@workingpeopleslaw.com
Jeanne Mirer
JMirer@julienmirer.com
Ria Julien
RJulien@julienmirer.com
Julien, Mirer & Singla, PLLC
1 Whitehall Street, 16th Floor
New York, NY 10004

Seth Goldstein
Sgold352002@icloud.com
217 Hadleigh Avenue
Cherry Hill, NJ 08003

Emily Cabrera
Emily.Cabrera@nlrb.gov
National Labor Relations Board
Region 29
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201

Lynda Tooker
Lynda.Tooker@nlrb.gov
National Labor Relations Board, Region 29
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201

*Kurt A. Powell*
Kurt A. Powell

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

| AMAZON.COM SERVICES LLC | |
|---|---|
| **and** | |
| **DANA JOANN MILLER, an Individual** | **Case No. 29-CA-280153** |
| **and** | |
| **AMAZON LABOR UNION** | **Case Nos. 29-CA-286577**<br>**29-CA-287614**<br>**29-CA-290880**<br>**29-CA-292392**<br>**29-CA-295663** |

**AMAZON.COM SERVICES LLC'S RESPONSE TO**
**THE GENERAL COUNSEL'S BRIEF IN SUPPORT OF**
**ITS EXCEPTIONS TO THE ADMINISTRATIVE LAW**
**JUDGE'S DECISION**

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

Juan C. Enjamio
*jenjamio@huntonak.com*
305.810.2511
Wells Fargo Center
333 SE 2nd Avenue, Suite 2400
Miami, FL 33131

Kurtis A. Powell
*kpowell@huntonak.com*
404.888.4015
Bank of America Plaza
600 Peachtree Street N.E., Suite 4100
Atlanta, GA 30308

**ATTORNEYS FOR AMAZON.COM**
**SERVICES LLC**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

I.    STATEMENT OF THE CASE.................................................................1

    A.    Amazon Did Not Unlawfully Threaten Dana Miller With Discipline....................4

        1.    Amazon Lawfully Prohibits Solicitation on the VOA Board. ....................4

        2.    Amazon Removed Dana Miller's VOA Post Because it Violated Amazon's Solicitation Policy. ....................5

        3.    Amazon Did Not Discipline or Threaten to Discipline Miller. .................6

        4.    The "Vote No" VOA Post.......................................................7

    B.    Amazon Conducted a Lawful Communications Campaign at its JFK8 and LDJ5 Facilities. .......................................8

        1.    Amazon Held Small Group Meetings to Provide Associates with Factual Information Regarding the Upcoming Election..........................8

            a.    November 10, 2021 and November 11, 2021 Small Group Meetings..................10

            b.    April 19, 2022 Small Group Meeting ............................12

        2.    Amazon Provided Associates with Factual Information Regarding the Upcoming Election Through Written Campaign Materials......................13

            a.    "Know the Facts" Table Topper ....................13

            b.    "Know Before You Sign" Poster ....................14

            c.    A to Z Notification ....................14

II.    ANALYSIS.................................................................................15

    A.    Amazon Did Not Unlawfully Threaten Miller with Discipline and the ALJ Properly Dismissed the Allegation.  (General Counsel Exceptions 5, 8, and 15) .15

    B.    The Discrimination Standard Set Forth in Register Guard Should Not Be Disturbed.  (General Counsel's Exceptions 3 and 15).........................19

    C.    The Board Should Not Overturn AT&T Mobility, And Should Not Require Amazon to Rescind Its Company-Wide Solicitation Policy.  (General Counsel Exceptions 4 and 16).........................24

    D.    Amazon's Small Group Meetings Held On Company Time Are Lawful. (General Counsel Exceptions 2 and 15).........................26

        1.    The General Counsel's Attempt to Expand the Act's Protection to Include an Employee's Right To Refrain from Listening To Employer Speech is Contrary to Basic Principles of Statutory Construction..........................30

        2.    The First Amendment Protects Employers' Right to Hold Captive Audience Meetings. .......................................35

3.       The General Counsel's Proposed Rule Regarding Captive Audience Meetings Would Violate the First Amendment and Therefore Must be Rejected ................................................................................... 39

4.       Amazon Did Not Violate the "Legislation" Proposed by the General Counsel. ........................................................................................ 41

    a.     Amazon's Small Group Meeting Presentations Were Not Anti-Union ................................................................................ 41

    b.     Amazon's Small Group Meetings Further the Purpose of the Act. ................................................................................. 43

    c.     Attendance at Amazon's Small Group Meetings Was Not Coercive. .......................................................................... 44

    d.     Even if Attendance at Amazon's Small Group Meetings Were Mandatory, "Listening" Was Not. ................................. 44

5.       If the Board Chooses to Overturn Preexisting Law, It Should Not Do So Retroactively. .................................................................... 45

E.     Amazon's Communications Are Lawful Under Existing Board Law. ................. 48

1.       The ALJ Correctly Dismissed The Allegations that Amazon Made Unlawful Promises of Benefits In Violation of Section 8(a)(1).  (General Counsel Exceptions 5, 9, 10, and 15) .......................................... 49

2.       The ALJ Correctly Dismissed The Allegations that Amazon Solicited Grievances and Promised to Remedy Them In Violation of Section 8(a)(1).  (General Counsel Exceptions 11, 12, 13, 14, and 15) ................. 51

3.       The ALJ Correctly Dismissed The Allegations That Amazon Threatened Employees With Loss of Benefits In Violation of Section 8(a)(1). (General Counsel Exceptions 1 and 15) ....................................... 54

    a.     It is Lawful for Amazon to Explain How a Union Could Impact Their Relationship with Management. .......................................... 55

    b.     Amazon's Written Communications Were Lawful and the ALJ Properly Dismissed the Allegations. ............................................. 55

    c.     Amazon's Statements During the April 19, 2022 Small Group Meeting Were Lawful and the ALJ Properly Dismissed the Allegations. ................................................................................. 57

F.     The Tri-Cast, Inc. Doctrine Should Not Be Disturbed. (General Counsel Exceptions 1 and 15) ............................................................................... 58

G.    Special Remedies are Not Warranted. (General Counsel Exceptions 16 and 17) . 61

III.    CONCLUSION ............................................................................................. 62

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Addressograph-Multigraph Corp.*,
 228 NLRB 6 (1977) ....................................................................................29

*Aggregate Industries*,
 371 NLRB No. 78, slip op. (Mar. 17, 2022) ........................................18

*Aldworth Company, Inc.*,
 338 NLRB 137 (2002) ............................................................................54

*Amptech, Inc.*,
 342 NLRB 1131 (2004), *enfd.* 165 F. App'x. 435 (6th Cir. 2006) ..............27, 48, 52

*Anaconda Copper Mining Co.*,
 110 NLRB 1925 (1954) ..........................................................................32

*AT&T Mobility*,
 370 NLRB No. 121 (2021) ..........................................................24, 25, 26

*Autoworkers (Kawasaki Motors) v. NLRB.*,
 834 F.2d 816 (9th Cir. 1987) ................................................................58

*Babcock & Wilcox Co.*,
 77 NLRB 577 (1948) ....................................................26, 28, 29, 30, 37, 41

*Beth Israel Hosp. v. NLRB*,
 437 U.S. 483 (1978) ...............................................................................22

*Beverly Enterprises-Hawaii, Inc.*,
 326 NLRB 335 (1998) ............................................................................29

*Bostich Division of Textron*,
 176 NLRB 377 (1969) ........................................................................55, 59

*Bostock v. Clayton County, Ga.*,
 140 S. Ct. 1731 (2020) ...........................................................................21

*Burlington N. & S. F. R. Co. v. White*,
 548 U.S. 53 (2006) .................................................................................21

*C.I.R. v. Gordon*,
 391 U.S. 83 (1968) .................................................................................31

*Carey v. Brown*,
447 U.S. 455 (1980) ........................................................................................37

*In Re Chapman*,
166 U.S. 661 (1897) ........................................................................................33

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ........................................................................................30

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ........................................................................................33

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) ........................................................................................39

*Clark Bros.*,
70 NLRB 802 (1946) ..................................................................................27, 28

*Climatrol, Inc.*,
329 NLRB 946 (1999) ................................................................................33, 34

*Coates v. Cincinnati*,
402 U.S. 611 (1971) ........................................................................................30

*Consolidated Bus Transit, Inc.*,
350 NLRB 1064 (2007), *enfd.* 577 F.3d 467 (2d Cir. 2009) ................................16

*Container Corp.*,
244 NLRB 318 (1979), *enfd. in part* 649 F.2d 1213 (6th Cir. 1981) ....................22

*CP Anchorage Hotel 2, LLC*,
370 NLRB No. 83, slip op. (Feb. 10, 2021) ........................................................15

*David Saxe Prods., LLC*,
364 NLRB 1427 (2016) ....................................................................................16

*Dealers Mfg. Co.*,
320 NLRB 947 (1996) ......................................................................................18

*Dole v. United Steelworkers*,
494 U.S. 26 (1990) ......................................................................................23, 33

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) ........................................................................................39

*Eastex, Inc. v. NLRB*,
437 U.S. 556, 570 (1978) ..................................................................................34

*Edward A. Utlaut Foundation, Inc. v. NLRB*,
657 F.2d 272 (7th Cir.) (1981) .................................................................... 54

*Edward A. Utlaut Memorial Hospital*,
249 NLRB 1153, 1156 (1980) *enfd. in part sub nom.* ............................... 54

*Electrolux Home Products, Inc.*,
368 NLRB No. 34, slip op. (Aug. 2, 2019) .................................................. 29

*Emporium Capwell Co. v. W. Addition Cmty. Org.*,
420 U.S. 50 (1975) ...................................................................................... 32

*Engquist v. Or. Dep't of Agr.*,
553 U.S. 591 (2008) ..................................................................................... 21

*Epilepsy Found. of Ne. Ohio v. NLRB*,
268 F.3d 1095 (D.C. Cir. 2001) ................................................................. 46

*Federated Logistics & Operations*,
340 NLRB 255 (2003) ................................................................................ 61

*First National Maintenance Corp. v. NLRB*,
452 U.S. 666 (1981) ..................................................................................... 25

*Fleming Cos.*,
336 NLRB 192 (2001), *enf. denied in relevant part* 349 F.3d 968 (7th Cir.
2003) ............................................................................................... 19, 20, 21

*Fontaine Converting Works, Inc.*,
77 NLRB 1386 (1948) ................................................................................ 28

*Gertz*,
197 NLRB 718 (1972) ................................................................................ 59

*Greenbrier Rail Servs.*,
364 NLRB No. 30, slip op. (June 23, 2016) .............................................. 58

*Guard Publishing v. NLRB*,
571 F.3d 53 (D.C. Cir. 2009) ..................................................................... 19

*Guardian Industries*, 49 F.3d 317, 319 (7th Cir. 1995) ................................ 19

*Hammary Mfg. Corp.*,
265 NLRB 57 (1982) .................................................................................. 22

*Hendrickson USA, LLC*,
366 NLRB No. 7, slip op. (2018), *enf. denied on other grounds* 932 F.3d 465
(6th Cir. 2019) .................................................................................. 56, 58, 60

*Holy Cross Health*,
    370 NLRB No. 16, slip op. (Sept. 11, 2020) ...................................................................48, 60

*Honeywell, Inc.*,
    262 NLRB 1402 (1982), *enfd.* 722 F.2d 405 (8th Cir. 1983) .................................................22

*Hosp. Workers' Union, Local 250*,
    255 NLRB 502 (1981) ........................................................................................................31

*Hudgens v. NLRB*,
    424 U.S. 507 (1976)...........................................................................................................36

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995)...........................................................................................................40

*Johnson Tech., Inc.*,
    345 NLRB 762, 764 (2005) ................................................................................................52

*Johnson v. United States*,
    576 U.S. 591 (2015)...........................................................................................................30

*Keene Corp. v. United States*,
    508 U.S. 200 (1993)......................................................................................................31, 35

*Kinney Drugs, Inc. v. NLRB*,
    74 F.3d 1419 (2d Cir. 1996)........................................................................................27, 29, 48

*Koronis Parts, Inc.*,
    324 NLRB 675 (1997) ........................................................................................................49

*L.A. Times Comms., LLC*,
    357 NLRB 645 (2011) ........................................................................................................31

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
    507 U.S. 163 (1993)...........................................................................................................32

*Litton Sys., Inc.*,
    173 NLRB 1024 (1968) ......................................................................................................37

*Livingston Shirt Corp.*, 107 NLRB 400 (1953) ................................................................29, 37, 43

*Longview Fibre Paper & Packaging, Inc.*,
    356 NLRB 796 (2011) ........................................................................................................53

*Lush Cosms., LLC*,
    372 NLRB No. 54, slip op. (Feb. 10, 2023)...........................................................................16

*Lutheran Heritage*,
    343 NLRB 646 (2004) ........................................................................................................24

*ManorCare Health Services-Easton*,
   356 NLRB 202 (2010) ..................................................................54

*Marina Del Rey Hospital*,
   363 NLRB 231 (2015) ..................................................................25

*Meese v. Keene*,
   481 U.S. 465 (1987) ......................................................................35

*Mid-Mountain Foods*,
   332 NLRB 229 (2000) ..................................................................22

*Morse Operations, Inc.*,
   353 NLRB 436 (2008) ..................................................................18

*N. Telecom, Inc.*,
   233 NLRB 1104 (1977) ................................................................50

*Nalco Chem. Co.*,
   163 NLRB 68 (1967) ....................................................................50

*Nat'l Rural Letter Carriers Ass'n (USPS)*, 372 NLRB No. 52, slip op. at 3 (Feb.
   13, 2023) ......................................................................................17

*National Bookbinding Co.*,
   171 NLRB 219 (1968) ..................................................................59

*NBC Universal Media LLC*,
   369 NLRB No. 134, slip op. (July 29, 2020)................................47

*NLRB v. Gissel Packing Co.*,
   395 U.S. 575 (1969)................................................................27, 48

*NLRB v. Sacramento Clinical Lab., Inc.*,
   623 F.2d 110 (9th Cir. 1980) ..................................................55, 57

*NLRB v. Steelworkers (Nutone)*,
   357 U.S. 357 (1958)................................................................21, 23

*Pekowski Enterprises, Inc.*,
   327 NLRB 413 (1999) ..................................................................32

*Pepsi-Cola Co.*,
   307 NLRB 1378 (1992) ................................................................56

*Phillips-Van Heusen Corp.*,
   165 NLRB 1 (1967) ......................................................................50

*Purple Communications, Inc.*,
   361 NLRB 1050 (2014) .................................................................................52

*Readyjet, Inc.*,
   365 NLRB No. 120, slip op. (Aug. 16, 2017) ....................................................16, 17

*Reed v. Town of Gilbert, Az.*,
   576 U.S. 155 (2015) ................................................................................36, 37

*Republic Aviation Corp. v. NLRB*,
   324 U.S. 793 (1945) ................................................................................22, 23

*Retail, Wholesale & Dep't Store Union v. NLRB*,
   466 F.2d 380 (D.C. Cir. 1972) .........................................................................46

*River City Asphalt*,
   Case 18-CA-280068, 2022 WL 2870797 (July 21, 2022) ......................................62

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) ................................................................................36, 37

*Ross v. Moffitt*,
   417 U.S. 600 (1974) .......................................................................................21

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947) ................................................................................45, 46

*SNE Enterprises, Inc.*,
   344 NLRB 673 (2005) ....................................................................................46

*Stanley Smith Sec.*,
   270 NLRB 225 (1984) ....................................................................................50

*Starbucks Corp.*,
   371 NLRB No. 154, slip op. (Sept. 29, 2022) ....................................................46

*Stern Produce Co., Inc.*,
   368 NLRB No. 31, slip op. (July 31, 2019) ...................................................48, 60

*Stoddard-Quirk Mfg. Co.*,
   138 NLRB 615 (1962) ....................................................................................24

*Studebaker Corp.*,
   110 NLRB 1307 (1954) ..................................................................................33

*Suburban Elec. Eng'rs/Contractors, Inc.*,
   351 NLRB 1 (2007) .........................................................................................17

*T-Mobile USA, Inc.*,
  369 NLRB No. 50 (2020) ................................................................25

*Tesla, Inc.*,
  371 NLRB No. 131, slip op. (Aug. 29, 2022) ................................................47, 60

*The Heath Co.*,
  196 NLRB 134 (1972) ................................................................22

*The Kroger Co.*,
  284 NLRB 663 (NLRB 1987), *enf. granted* 859 F.2d 927 (11th Cir. 1988) ........................56

*The Register Guard*,
  351 NLRB 1110 (2007), *enfd. in relevant part and remanded sub nom* ................................19

*Thomas v. Collins*,
  323 U.S. 516 (1945) ................................................................35, 37, 41

*TNT Logistics N. Am., Inc.*,
  345 NLRB 290 (2005) ................................................................53

Tri-Cast Inc., 274 NLRB 377 (1985) ................................................................48, 50, 55, 58

*Trinity Services Group v. NLRB*,
  998 F.3d 978 (D.C. Cir. 2021) ................................................................36

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001) ................................................................31

*In Re Ugl-Unicco Serv. Co.*,
  357 NLRB 801 (2011) ................................................................46

*Union Carbide Corp. v. NLRB*,
  714 F.2d 657 (1983) ................................................................22, 34, 38

*Valley Hosp. Med. Ctr., Inc.*,
  371 NLRB No. 160, slip op. (Sept. 30, 2022) ................................................46, 47

*In Re Wal-Mart Stores, Inc.*,
  340 NLRB 637, 640 (2003), *enfd. as modified* 400 F.3d 1093 (8th Cir. 2005) ........................52

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ................................................................31, 36

*Westside Plumbing LLC*,
  Case 28-RC-263057, 2021 WL 2314860 (June 4, 2021) ................................................50, 58

*Williams Nat. Gas Co. v. FERC*,
  3 F.3d 1544 (D.C. Cir. 1993) ................................................................47

*Williams-Yulee v. Florida Bar*,
575 U.S. 433 (2015).........................................................................................37, 38

*Wynn Las Vegas, LLC*,
369 NLRB No. 91 (May 29, 2020) ...........................................................16, 24, 53

**Statutes**

National Labor Relations Act, 29 U.S.C. § 151...........................................................43

National Labor Relations Act, 29 U.S.C. § 157.......................................31, 33, 38, 43

National Labor Relations Act, 29 U.S.C. § 158(a) ....................................................38

National Labor Relations Act, 29 U.S.C. § 158(a)(1) ...............................................32

National Labor Relations Act, 29 U.S.C. §158(c) ............................................8, 27, 48

National Labor Relations Act, 29 U.S.C. § 159(a) ....................................................59

## I.     INTRODUCTION

The Administrative Law Judge's January 30, 2023 decision in this case was a clear rebuke of General Counsel overreach.  The ALJ dismissed 19 of the 22 baseless allegations litigated on behalf of the Amazon Labor Union ("ALU"), but the General Counsel has now chosen to double down.  In challenging the vast majority of the ALJ's Decision, the General Counsel urges the Board to upend well-established Board law, overturn factual findings that are wholly supported by the record evidence, and find Amazon.com Services LLC ("Amazon") liable for conduct which was absolutely lawful at the time Amazon acted.  First, the General Counsel asks the Board to overturn longstanding principles of settled law concerning so-called "captive audience" meetings, discrimination standards, and alleged misstatements made during union campaigns.  Second, the General Counsel argues that, once the Board has abandoned decades of precedent, it should then overturn the ALJ's substantiated and well-reasoned factual findings so that it can find in favor of the General Counsel on its spurious allegations.  Finally, despite clear precedent to the contrary, the General Counsel asks the Board to hold Amazon retroactively liable and impose extreme remedies *for actions that were entirely and unequivocally lawful at the time they were taken.*

For the reasons set forth more fully below, the Board should decline the General Counsel's invitation to overturn extant law and retroactively convert Amazon's lawful communications and conduct into unlawful threats and coercion.  Accordingly, Amazon respectfully requests that the Board deny the General Counsel's Exceptions, uphold the ALJ's findings with respect to Paragraphs 7(a), 8(a), 11(b), 13, 14, 15(a)-(b), 16(a)-(b), and 20 of the Amended Complaint, and dismiss the Amended Complaint in its entirety.

## I.     STATEMENT OF THE CASE

Amazon is a Delaware limited liability company engaged in the retail sale of consumer products throughout the United States.  *See* GC Ex. 1.  Amazon operates a large fulfillment center

located at 546 Gulf Avenue, Staten Island, New York, informally known as JFK8 ("JFK8" or

"JFK8 facility"). *See id.* Amazon also operates a sortation center located at 526 Gulf Avenue,

Staten Island, New York, informally known as LDJ5 ("LDJ5" or "LDJ5 facility"). *See id.* The

hourly employees at JFK8 and LDJ5 consist of Tier 1 and Tier 3 employees, and are referred to as

"Associates." *See* Tr. 383:14-384:11.

On October 25, 2021, the ALU filed a petition in Case 29-RC-285057 seeking to represent

all "[A]ssociates employed at the Employer's Gulf Avenue, Staten Island, NY Facility."[1]

Approximately three weeks later, when it became clear the ALU did not have sufficient support

amongst the Associates, the ALU withdrew its petition in Case 29-RC-285057.[2] Approximately

five weeks after withdrawing its first petition, the ALU filed a petition in Case 29-RC-288020 on

December 22, 2021, seeking to represent Associates at the JFK8 facility.[3] Subsequently, on

February 3, 2022, the ALU filed a separate petition in Case 29-RC-290053 seeking to represent

Associates at the LDJ5 facility.[4]

This case arises out of (1) statements, both verbal and written, made by Amazon to

Associates during the ALU's separate organizing campaigns during 2021 and 2022; and (2)

Amazon's decision to hide a single post on its Voice of the Associates ("VOA") electronic bulletin

board in July 2021. On May 31, 2022, the Regional Director for Region 29 issued an Order

---

[1] *See* NLRB Case Search Results, Amazon.com, Inc., 29-RC-285057, https://www.nlrb.gov/case/29-RC-285057 (last visited May 4, 2023).

[2] *See id.*

[3] *See* NLRB Case Search Results, Amazon.com, Inc., 29-RC-288020, https://www.nlrb.gov/case/29-RC-288020 (last visited May 4, 2023).

[4] *See* NLRB Case Search Results, Amazon.com, Inc., 29-RC-290053, https://www.nlrb.gov/case/29-RC-290053 (last visited May 4, 2023).

Consolidating Cases, Consolidated Complaint and Notice of Hearing ("Complaint") for the above captioned charges, and set a hearing date for September 19, 2022. *See* GC Ex. 1(V). Amazon filed a timely Answer denying the allegations. *See* GC Ex. 1(W).[5] The Complaint was later amended by the Region on August 11, 2022 ("Amended Complaint"). *See* GC Ex. 1(X). On August 25, 2022, Amazon filed an Answer to the Amended Complaint denying the allegations. *See* GC Ex. 1(Z). On September 19, 2022, the hearing commenced before The Honorable Benjamin Green (the "ALJ") and the record closed on October 5, 2022. The ALJ issued his Decision on January 30, 2023 ("Decision") finding in favor of Amazon on the vast majority of the allegations. On March 31, 2023, Counsel for the General Counsel (the "General Counsel") filed Exceptions to the Decision with respect to the ALJ's findings regarding Paragraphs 7(a), 8(a), 11(b), 13, 14, 15(a)-(b), 16(a)-(b), and 20 ("General Counsel Exceptions") and an accompanying brief ("General Counsel Brief").

Specifically, the General Counsel's Exceptions fall within four general categories. First, the General Counsel argues that the Board should find that Amazon unlawfully threatened Dana Miller with discipline for a comment she posted on an electronic bulletin board, even though undisputed facts show that she was told repeatedly that she was not "in trouble" or being "reprimanded" in any way. Second, the General Counsel argues that the Board should overturn over seventy-five years of Board precedent and find that so-called "captive audience" meetings are inherently coercive and that Amazon violated the Act by conducting such meetings in accordance with longstanding Board precedent. Third, the General Counsel argues that the Board should overturn the ALJ's well supported factual findings and hold that Amazon unlawfully

---

[5] The General Counsel did not include a table of contents entry for Amazon's Answer to the Order Consolidating Cases, Consolidated Complaint and Notice of Hearing issued on May 31, 2022, but the Answer appears in GC Ex. 1 at p. 83.

promised Associates improved benefits and unlawfully solicited grievances when it simply reminded Associates of Amazon's existing benefits and mechanisms for obtaining employee feedback. Further, the General Counsel argues that Amazon violated the Act by informing Associates of the effect that unionization could have on the direct employer-employee relationship. In so arguing, the General Counsel advocates that the Board should overturn *Tri-Cast* and its progeny so that it can hold Amazon retroactively liable for statements that have been deemed lawful by the Board for decades. Finally, the General Counsel excepts to the ALJ's appropriate refusal to impose the excessive remedies sought by the General Counsel – remedies which are clearly not warranted in this matter.

For the reasons set forth more fully below, Amazon respectfully requests that the Board deny the General Counsel's Exceptions, uphold the ALJ's findings with respect to Paragraphs 7(a), 8(a), 11(b), 13, 14, 15(a)-(b), 16(a)-(b), and 20 of the Amended Complaint, and dismiss the Amended Complaint in its entirety.

### A. Amazon Did Not Unlawfully Threaten Dana Miller With Discipline.

### 1. Amazon Lawfully Prohibits Solicitation on the VOA Board.

Amazon maintains a lawful Solicitation Policy that prohibits solicitation on Amazon's various electronic systems, including Amazon's VOA board.[6] *See* Tr. 415:9-16; GC Ex. 58 at p. 24. Associates can review the Solicitation Policy at any time through their A to Z application or through Amazon's intranet site. *See* Tr. 156:12-157:9, 416:9-16. Amazon also disseminates a "Frequently Asked Questions" ("FAQ") document that explains the Solicitation Policy in greater detail and provides answers to commonly asked questions. *See* GC Ex. 29.

---

[6] Amazon's VOA board is an electronic platform where Associates can "ask questions, provide feedback, and provide recognition to their managers or peers." *See* Tr. 414:12-18; *see also* Tr. 121:25-122:6.

The Solicitation Policy expressly prohibits Associates from soliciting on the VOA board for "signatures on petitions."  The Solicitation Policy states:

> Examples of prohibited solicitation include the sale of merchandise, products, or services (except as allowed on forsale@Amazon alias), soliciting for financial contributions, memberships, subscriptions, ***and signatures on petitions***, or distributing advertisements or other commercial materials.

*See* GC Ex. 58 at p. 24 (emphasis added); *see also* Tr. 416:5-8.  Amazon's FAQ document further explains these restrictions.  *See* GC Ex. 29 at p. 1 ("1. What are some examples of solicitation that are prohibited, unless legally protected? . . . Solicitation for memberships, subscriptions, or signatures on petitions.").

### 2. Amazon Removed Dana Miller's VOA Post Because it Violated Amazon's Solicitation Policy.

On July 9, 2021, Associate Dana Miller posted a message to the VOA board that expressly violated Amazon's Solicitation Policy.  Miller wrote:

> 6/21/21: ALU AA's spoke to G.M. about holiday pay for Juneteenth.  Dismissed, ALU put together a petition and is gathering signatures, over 50+ now! 7/8/21: Presented again, Felipe confirmed that he wouldn't use any energy/effort to make positive change for workers! ***So you're invited to come sign the petition for well-deserved holiday pay*** at the ALU tent, speak up for yourself & help make history.

*See* GC Ex. 13 (emphasis added).  Miller's invitation for other Associates to "sign the petition" violated the plain language of Amazon's Solicitation Policy and was, therefore, hidden on July 12, 2021.[7]  *See* Tr. 419:6-15, 155:14-19; *see also* GC Ex. 58 at p. 24 (prohibiting Associates from soliciting for "signatures on petitions").

---

[7] Miller's post was not technically "removed" from the VOA board.  As Edwards explained, Amazon "hid" Miller's post so that it would not be visible on the board.  *See* Tr. 417:8-19.

As Jenna Edwards, the then-Senior Human Resources Manager at JFK8, explained, Miller's post was hidden because "it violated [Amazon's] solicitation policy by asking Associates to sign a petition." Tr. 419:6-10. Edwards confirmed that Miller's post was not hidden for any other reason and had nothing to do with the underlying subject matter of Miller's post. *See* Tr. 419:6-15. Indeed, Edwards and Miller both testified that Amazon did *not* hide dozens of other VOA posts about Juneteenth or posts in support of the ALU, including Miller's other posts. *See* Tr. 167:5-168:5, 421:15-422:15. General Counsel's Exhibit Number 27, which contains all of the VOA posts at JFK8 from May 1, 2021 through July 15, 2021 (the time period requested by the General Counsel's subpoena), shows that Miller posted 35 times during this period and none of her other posts were hidden, except for her attempts to re-post the same post (or substantially similar posts) asking Associates to sign the Juneteenth petition. *See* GC Ex. 27. This exhibit likewise confirms that there were over 35 posts from numerous other Associates expressing support for the ALU during this time frame—none of which were removed or hidden. *See* GC Ex. 27.

### 3. Amazon Did Not Discipline or Threaten to Discipline Miller.

On July 12, 2021, Human Resources Business Partner Mike Tanelli met with Miller to explain Amazon's decision to hide her post. *See* Tr. 155:20-156:11. Tanelli explained to Miller that her post violated Amazon's Solicitation Policy because it invited Associates to sign a petition. *See* Tr. 156:4-9; *see also* GC Ex. 52 at 4:55-5:00 (audio recording of meeting between Tanelli and Miller in which Tanelli explained that "asking people to go there to sign up for additional holiday pay" is not permissible on the VOA board); GC Ex. 49(a) (Chime message in which Human Resources Manager Anna Leonardi shared suggested talking points with Tanelli for his meeting

with Miller).[8]  At the meeting, Tanelli clearly communicated to Miller that she was not being

disciplined.  *See* GC Ex. 52 at 3:38-4:02 ("It's against the policy, but this is not like . . . you're not

in trouble or anything like that, right? I just did want to follow up with you, let you know that the

comment will be removed.").  In fact, throughout the conversation with Miller, Tanelli emphasized

that the sole purpose of the conversation was to educate Miller on Amazon's Solicitation Policy

and the reasons her post was hidden.  *See* GC Ex. 52 at 5:22-5:37.  In response, Miller stated that,

if Amazon removed her post, she would "put it back up." *See* GC Ex 52 at 5:22-5:24; *see also* Tr.

421:2-14; GC Ex. 27(b).  Tanelli replied:

> Okay, well, I'm telling you now, like, this is not a conversation for
> you to be reprimanded. Right? This is me to educate you on the
> solicitation policy. You cannot put that on the board, unfortunately.
> And there will be additional follow up if a comment like that goes
> back up again.

GC Ex. 52 at 5:22-5:37.  Amazon's VOA records show that Miller reposted substantially the same

post on five separate occasions between July 12 and July 15, 2021 and that Amazon hid the post

each time.  *See* GC Ex. 27(b).[9]  These posts were hidden because they continued to violate

Amazon's Solicitation Policy by soliciting Associates to sign a petition.  *See* Tr. 421:2-15; GC Ex.

27(b) (showing Amazon hid the post each time).  Miller was never disciplined for her original post

or for any of the subsequent posts.  *See* Tr. 176:15-25.

### 4. The "Vote No" VOA Post

Amazon employees regularly posted on the VOA board at JFK8 and continued to do so

after Amazon lawfully enforced its Solicitation Policy to hide Miller's posts.  *See, e.g.,* GC Ex.

---

[8] Tanelli was not involved in the decision to hide Miller's post.  Only senior leaders in the building—which Tanelli was not—are involved in the decision whether to hide a particular VOA post.  *See* Tr. 416:25-418:8.

[9] A "Y" in the "Suppressed Comment? Y/N" column indicates that the comment was hidden.  *See* GC. Ex. 27(b).

27(b); Tr. 143:14-144:4, 162:24-163:1, 165:23-166:1, 167:25-168:2, 414:19-25, 443:16-445:16.

Any Associate is permitted to post on the VOA board and Associates frequently did so. *See* Tr.

414:19-25. For example, during a 45-day period, from May 1, 2021 through July 15, 2021, 388

messages were posted to the VOA board by Associates. *See* GC Ex. 27.

In March 22, 2022, more than eight months after Miller's post was hidden, an Associate

posted a message on the VOA board stating that "Vote No" shirts were available for Associates if

they wanted them (hereinafter referred to as the "Vote No" post). *See* GC Ex. 20 at p. 2. The

"Vote No" post stated:

> Good morning JFK8 Fam! I have more VOTE NO T Shirts in sizes
> L, XL & 2X today. Please come get one on the 1st floor South,
> break room during both breaks & represent YOUR VOICE. Thank
> you!

The post was not hidden. *See id.* No Amazon management witness testified that they were even

aware of the "Vote No" post.[10]

## B. Amazon Conducted a Lawful Communications Campaign at its JFK8 and LDJ5 Facilities.

### 1. Amazon Held Small Group Meetings to Provide Associates with Factual Information Regarding the Upcoming Election.

Consistent with its rights under Section 8(c) of the NLRA, Amazon conducted lawful

communications campaigns at the JFK8 and LDJ5 facilities that were designed to respect

employee choice, encourage all employees to vote, and to be educational in content. *See* Tr. 368:7-

369:5. As part of these campaigns, Amazon held small group meetings in both the JFK8 and LDJ5

facilities. During these meetings, Amazon lawfully provided Associates with basic information

---

[10] Miller testified that she saw a VOA message posted in March 2022 that advertised ALU "pins and buttons and lanyards" and "shirts" available at the ALU tent. *See* Tr. 129:17-24, 131:11-21. Like the "Vote No" post, this post was not hidden. *See* Tr. 131:22-24, 421:21-25, 422:3-11.

about the upcoming elections, their employment with Amazon, the ALU, and the potential impact of unionization on the Associates and their relationship with Amazon. *See* Tr. 368:20-369:5; GC Exs. 2 through 8(a). Although the General Counsel contends that such meetings and certain statements made at these meetings violated Section 8(a)(1) of the Act, the undisputed evidence shows that the meetings and the statements made therein were consistent with decades of Board precedent permitting such communications.

These small group meetings were held during the working time of the Associates attending the meetings but those who failed or refused to attend were neither disciplined nor threatened with discipline. *See* Tr. 268:20-269:1, 373:2-9, 401:18-23. Associates who did attend the small group meetings were not forced to listen or pay attention to the presentations, and many Associates spent the meetings distracted on their phones, talking to other Associates, watching videos, and even sleeping. *See* Tr. 229:4-10, 301:5-8, 315:9-20, 369:19-370:5, 315:18-20, 403:16-404:9. Likewise, Amazon did not administer any test or quiz to assess or evaluate whether Associates were paying attention during the small group meetings. *See* Tr. 104:25-105:3, 229:15:19, 251:15-18, 281:19-24, 301:9-12, 315:21-24, 370:6-9, 404:10-13.[11]

Amazon's small group meetings were typically hosted by members of its Employee Relations Team, who would identify themselves as such and who had no direct supervisory or decision-making responsibility over Associates at the JFK8 and LDJ5 facilities. *See* Tr. 191:10-

---

[11] During the hearing, the parties stipulated that attendance at the small group meetings was mandatory, but Amazon specifically reserved the right to put on evidence showing that there was no discipline or threat of discipline issued to any Associates who did not attend these meetings— thus, the meetings, even if "mandatory," could not have been coercive. *See* Tr. 339:18-21. Indeed, the record contains no evidence that any Associate who did not attend these meetings was disciplined or threatened with discipline. Moreover, as established during trial, Associates were free to explore their views during these meetings and did so frequently. *See* Tr. 260:2-8, 268:20-269:1, 278:21-279:16, 300:14-24, 315:25-316:24, 370:10-23, 402:20-403:15. Thus, the evidence in this case does not support a finding that these meetings created a coercive environment.

15, 230:2-6, 251:2-5, 314:8-15, 368:20-369:2; GC Ex. 34 at p. 1. The meetings were carefully scripted and the presenters were provided with PowerPoint presentations and written talking points to discuss during the small group meetings. *See* Tr. 292:7-23; GC Ex. 34, GC Ex. 37, GC Ex. 39, GC Ex. 41, GC Ex. 43.

During these meetings, Associates were permitted to respectfully share their opinions and challenge Amazon's positions. *See* Tr. 260:2-8, 268:20-269:1, 278:21-279:16, 315:25-316:24. Amazon also allowed Associates to openly discuss their views on unionization and their views on the small group meetings themselves. *See* Tr. 260:2-8, 278:21-279:16, 300:14-24, 315:25-316:16, 370:10-23, 402:20-403:15.[12] Throughout these meetings, the facilitators repeatedly encouraged Associates to seek out their own facts, double check Amazon's statements, and ask the ALU questions. *See* Tr. 316:16-24; GC Ex. 34 at p. 14 ("Take your time to check the facts . . . Do your own research."); GC Ex. 36 at p. 6 ("Get all the facts before you decide how to vote."). All of this evidence is undisputed.

The General Counsel excepts to the ALJ's findings with regard to certain statements made by Amazon representatives during small group meetings held on November 10, 2021, November 11, 2021, and April 19, 2022. *See* General Counsel Exceptions 9, 11, 12, 13, 14, 15. The statements at issue are undisputed because the record evidence contains audio recordings of each of the challenged meetings. *See* GC Exs. 2 through 8(a).

> a. ***November 10, 2021 and November 11, 2021 Small Group Meetings***

Amazon began the November 10, 2021 and November 11, 2021 small group meetings at JFK8 by highlighting the direct working relationship that Associates have with management and

---

[12] The General Counsel witnesses, and ALU supporters, Madeline Wesley, Mani Lawrence, and Janet Olmedo confirmed these facts. *See, e.g.,* Tr. 260:2-8 (Madeline Wesley); 300:14-24 (Mani Lawrence); 315:25-316:22 (Janet Olmedo).

how this relationship gives Associates a voice and allows managers to quickly respond to their concerns. *See* GC Ex. 2 at 1:00-1:32 ("[W]e believe that working together and that also the direct interaction allows us to make rapid improvements, course correct, and improve our workspace. We are able to do that because of the relationships that we form with the Associates. Having your voice, listening to you, responding to you and what you say when you express your concerns about whatever the issue may be in this site."), GC Ex. 3 at 2:01-10 ("Working directly together allows us to focus on our one team approach because it makes improvement happen quickly."), GC Ex. 34 at 5 ("Working directly together allows us to focus on . . . [o]ur one team approach because it makes improvements happen quickly.").

During these meetings, Amazon reminded Associates of the preexisting avenues available to them to raise their workplace concerns, such as: (1) encouraging direct manager communication; (2) Connections[13]; (3) Gemba Walks[14]; (4) Birthday Roundtables[15]; and (5) the VOA Board[16]. *See* GC Ex. 2 at 1:00-5:21, GC Ex. 3 at 5:26-9:20 ,GC Ex. 34 at pp. 5, 6. The **undisputed** evidence establishes that these mechanisms for seeking employee feedback had been utilized long before

---

[13] Connections is an application Associates are encouraged to use, which allows Associates to anonymously answer survey questions regarding what Amazon is doing well, and areas where Amazon needs to improve. *See* Tr. 312:4-13, 317:5-7, 318:14-20.

[14] Gemba Walks are when members of management walk the floor and engage with Associates regarding which Amazon processes are working and which processes need improvement. *See* Tr. 380:25-382:1.

[15] Birthday Roundtables occur monthly. Associates whose birthdays fall within a given month are invited to sit down with the facility manager and share ideas, thoughts, and concerns with the facility manager. *See* Tr. 310:24-311:3.

[16] Amazon's VOA board is an electronic platform where Associates can "ask questions, provide feedback, and provide recognition to their mangers or peers." *See* Tr. 414:12-18; *see also* Tr. 121:25-122:6.

the ALU began its organizing campaign at the Staten Island facilities. *See* Tr. 216:11-217:7, 373:21-374:25.

Amazon also reminded Associates about their current Career Choice benefits and the upcoming changes to this nationwide program, which Amazon had previously announced on September 9, 2021, long before the ALU filed its first petition for an election.[17] *See* Tr. 375:1-14, 377:3-15, 396:17-398:7; R. Ex. 2; GC Ex. 2 at 1:47-2:15, GC Ex. 3 at 2:22-3:44. The changes discussed at these November meetings were exactly the same as those previously announced in September: (1) Associates would be eligible to participate after completion of 90 days of employment (instead of one year of employment); (2) the program would cover more degree options; and (3) the tuition reimbursement portion of the program would cover up to 100% of Associates' tuition. *See* R. Ex. 2.

Finally, the November presentations concluded with multiple reminders for the Associates to "take your time to get the facts before deciding whether or not to sign anything the ALU gives you," to "[t]ake your time to check the facts" and "[d]o your own research." *See* GC Ex. 34 at pp. 11, 13.

### b. *April 19, 2022 Small Group Meeting*

On April 19, 2022, Scott Taylor, general manager of LDJ5, spoke to LDJ5 Associates during a small group meeting. *See* Tr. 264:14-265:10. Relying on prepared talking points, s*ee* GC Ex. 43, Taylor gave a speech in which he expressed his opinions and concerns that having to work

---

[17] The Amended Complaint does not challenge the lawfulness of the changes made to the Career Choice program, yet the General Counsel still makes the claim that it was somehow unlawful for Amazon to discuss with its Associates previously announced and lawful changes to its Career Choice program. *See, e.g.,* General Counsel Brief at 41 ("The ALJ erred by finding that Respondent's November 2021 statements to employees during captive audience meetings promising improvements to the career choice program were not unlawful promises of benefits.").

through a third party, like the ALU, could make it more difficult for him to address Associates' ideas and concerns. *See* GC Ex. 8(a) at 10:43-12:34. Specifically, he stated: "But I am worried. I am worried what a middle man can do to this vision. When you have a third party, communication can often times be muddled." *Id.* at 10:41-10:54 Taylor stated that he was also "worried about trying to make changes through the union" and that "this will likely slow things up." *Id.* at 11:04-14. Taylor then stated: "And finally, I am worried that the union may not care about your individual concerns." *Id.* at 11:23-30. He summed his speech up by saying: "I want to continue working with each of you directly. Amazon is not perfect. I am not perfect but I am here and I'm listening . . . And it will be my pleasure if you would continue working directly with me and the rest of the LDJ5 team." *Id.* at 11:44-12:23.

> **2.      Amazon Provided Associates with Factual Information Regarding the Upcoming Election Through Written Campaign Materials.**

In addition to holding small group meetings, Amazon communicated its campaign messaging to Associates in writing through various means such as Amazon's A to Z app, table toppers (small flyers that sit on top of tables), installments (flyers that are posted inside bathroom stalls), and posters. *See* Tr. 368:13-19. These written communications were designed to provide factual information to Associates on topics such as union organization, union authorization cards, and union dues. *See* Tr. 369:5-7; GC Ex. 10, GC Ex. 11, GC Ex. 16. The General Counsel takes issue with three specific written communications: the "Know the Facts" table topper, *see* GC Ex. 10; "Know Before You Sign" poster, *see* GC Ex. 16; and a communication sent out on Amazon's A to Z app, *see* GC Ex. 11. *See* General Counsel Exception 15.

> ### a.      *"Know the Facts" Table Topper*

Amazon presented factual information in a "Know the Facts" table topper, which is being challenged by the General Counsel. *See* General Counsel Exceptions 15.

**What does signing a card mean?**

**Union authorization cards are legally binding and authorize the union to act as your exclusive representative.  You may be asked to physically sign a card or click a link that asks for your signature online.  This means you give up the right to speak for yourself.  Signing a union authorization card may also obligate you to pay the union a monthly fee.**

GC Ex. 10 (emphasis in original).

### b.        *"Know Before You Sign" Poster*

Amazon presented factual information in a "Know Before You Sign" poster, which was posted inside the JFK8 bathroom stalls sometime in June 2021.  The General Counsel challenges the lawfulness of the poster's messaging.  *See* General Counsel Exceptions 15;  *see also* Tr. 120:23-25, 121:9-15.  This poster read as follows:

**KNOW**
**BEFORE**
**YOU SIGN**
**MAKE SURE YOU KNOW THE FACTS**

**before you decide whether or not to sign a union card.**

Signing an authorization card may obligate you to pay the union a monthly fee. Authorization cards are legally binding and mean you give up the right to speak for yourself.

GC Ex. 16 at p. 2 (emphasis in original).

### c.        *A to Z Notification*

Amazon also communicated this information to JFK8 Associates via it's A to Z application sometime in May or June of 2021.  The General Counsel challenges the lawfulness of this message.

*See* General Counsel Exceptions 15;  *see also* Tr 76:4-21, 77:25-78:6.

**Speak for Yourself:** Union authorization cards are legally binding and authorize the union to act as your exclusive representative.  This means you give up the right to speak for yourself.

**Don't Sign Away Your Choices:**  Signing a union authorization card may also obligate you to pay the union a monthly fee out of your paycheck

**Protect Your Signature and Your Privacy:** Ask questions, do the research, and don't sign anything without reading it closely.

GC Ex. 11 (emphasis in original).

## II.     ANALYSIS[18]

### A.     Amazon Did Not Unlawfully Threaten Miller with Discipline and the ALJ Properly Dismissed the Allegation.  (General Counsel Exceptions 5, 8, and 15)

Contrary to the arguments made by the General Counsel, the ALJ correctly concluded that

Miller was neither disciplined nor threatened with future discipline during the July 12, 2022

meeting with Tanelli.[19]  *See* Decision at 22:20-21.  Specifically, after reviewing the totality of the

evidence, the ALJ correctly found that:

> Tanelli specifically told Miller she was not in trouble and was not being disciplined for violating the solicitation policy. Tanelli told Miller the meeting was just for the purpose of educating her about the solicitation policy. Tanelli did tell Miller that there would be "additional follow up" if she reposted the message.

Decision at 22:21-24.  The General Counsel concedes that Miller was not disciplined, but

challenges the ALJ's finding that Tanelli did not threaten Miller with future discipline.  *See*

General Counsel Brief at 14-17.  The General Counsel's exception lacks any support in the record.

When determining if a remark amounts to a threat, the Board applies an objective standard,

assessing whether, in the totality of circumstances, a statement would reasonably tend to interfere

---

[18] The General Counsel excepts to two of the ALJ's factual findings but improperly fails to support the exceptions in its Brief.  *See* General Counsel Exceptions 6 and 7.  Procedurally, these Exceptions should be rejected as the General Counsel's Brief fails to explain the Exception or provide specific supporting page citations to the record.  *See* Board's Rules and Regulations § 102.46(a)(2)(iii)(A) (supporting brief must provide "[t]he argument, presenting clearly the points of fact and law relied on in support of the position taken on each question, with specific page citations to the record and the legal or other material relied on"); *see also, e.g., CP Anchorage Hotel 2, LLC*, 370 NLRB No. 83, slip op. at 1 fn. 2 (Feb. 10, 2021).

[19]  Amazon has filed Cross Exceptions to the ALJ's erroneous finding that Amazon violated the Act by discriminately enforcing its solicitation policy regarding Miller.  *See* Amazon's Cross Exceptions 2-9, 15.

with an employee's free exercise of Section 7 rights. *See Consolidated Bus Transit, Inc.*, 350 NLRB 1064, 1066 (2007), *enfd.* 577 F.3d 467 (2d Cir. 2009) (per curium); *Readyjet, Inc.*, 365 NLRB No. 120, slip op. at 15 (Aug. 16, 2017). "The actual intent of the speaker or the effect on the listener is immaterial." *David Saxe Prods., LLC*, 364 NLRB 1427, 1445 (2016).

The recording of the July 12, 2022 meeting shows that Tanelli repeatedly stated to Miller that she was not "in trouble" or being "reprimanded" in any way for her VOA post. To the contrary, Tanelli explicitly stated to Miller that she was "not in trouble or anything like that" and explained that he just wanted to follow-up to let her "know that the comment [would] be removed." *See* GC Ex. 52 at 3:50-4:00. He further explained that "this is not a conversation for you to be reprimanded . . . this is for me to educate you about the solicitation policy." GC Ex. 52 at 5:24-5:31. As the recording makes clear, Tanelli never threatened Miller with future discipline. He only referenced additional "follow up" in response to Miller's statement that she would continue to repost the same post if it were removed. *See* GC Ex. 52 at 5:30-5:35 (informing Miller that there might be "additional follow-up if a comment like that goes back up again.").

Tanelli's suggestion that there might be "additional follow-up" after Miller stated she would repost the same VOA post was not a threat of future discipline.[20] Rather, as the ALJ properly concluded, Tanelli's reference to "additional follow-up" suggested nothing "more than another educational meeting," *see* Decision at 22:25-26, and was not some veiled threat as the General Counsel suggests. *See* General Counsel Brief at 15; *compare Lush Cosms., LLC*, 372 NLRB No. 54, slip op. at 2-4 (Feb. 10, 2023) (warning that continued Section 7 communication posted on internal message board would be deemed "misconduct" unlawful) *with Wynn Las Vegas,*

---

[20] Furthermore, the lack of any threat was confirmed almost immediately after Tanelli's meeting with Miller when Miller repeatedly reposted the same message without any adverse consequences. *See* GC Ex. 27.

*LLC*, 369 NLRB No. 91, slip op. at 7 (May 29, 2020) (meeting to inform employee that conversation violated solicitation policy was not coercive, and was merely intended to put employee "on notice" of violation of policy); *see also Suburban Elec. Eng'rs/Contractors, Inc.*, 351 NLRB 1, 3 (2007) (ambiguous statement containing neither explicit nor implicit threat of discipline was insufficient to establish violation). Indeed, the General Counsel's argument ignores what Tanelli actually said in the meeting and instead rests on some vague and unsupported suggestion that the meeting itself was somehow "coercive." In doing so, the General Counsel ignores what the meeting really was: a meeting led by a member of human resources (not a high ranking management official) on the employee's paid working time (as opposed to the employee's-own time such as a break) to explain a policy to an employee in a private management office (as opposed to on the floor in front of her coworkers) in which a human resources representative repeatedly stated to the employee that she was not being disciplined. *Cf. Readyjet, Inc*, 365 NLRB No. 120, slip op. at 11 (threats made by general manager, "a man who possessed the power not only to threaten but also to turn threat into reality," unlawful) (citations omitted); *see Nat'l Rural Letter Carriers Ass'n (USPS)*, 372 NLRB No. 52, slip op. at 3 (Feb. 13, 2023) (despite "undeniably tense" environment, alleged threatening union agent "did not allude to, invoke, or otherwise gesture to consequences" for failure to cease protected activity).

The General Counsel also ignores other context and circumstances surrounding the meeting between Tanelli and Miller. In the weeks leading up to the meeting, Associates had posted dozens of pro-union and anti-Amazon messages. *See* GC Ex. 27(b). None of those posts were hidden. None of the Associates who posted those comments were threatened with discipline, much less disciplined. Miller herself posted numerous anti-Amazon posts with no consequences. *See id.* Thus, the totality of the circumstances indicate that Tanelli's conversation with Miller—devoid of

any threats of future discipline, containing specific reassurances of no discipline, and simply explaining why only one post violated an explicit prohibition in the Solicitation Policy—would not be interpreted by a reasonable employee to be a coercive threat. *Cf. Aggregate Industries*, 371 NLRB No. 78, slip op. at 1 (Mar. 17, 2022) (repeated use of phrase "troublemakers" and "backstabbers" could reasonably be understood as threatening unspecified reprisals); *Dealers Mfg. Co.*, 320 NLRB 947, 948 (1996) (questioning by high-level manager in his office without legitimate purpose, and *without* assurances against reprisals, inherently coercive). Indeed, if this type of ordinary meeting is somehow seen as "coercive," then human resources could never meet with an employee to educate them about an employer's policies without violating the Act.

Without any evidence that Tanelli actually threatened Miller with future discipline, the General Counsel incorrectly suggests that the ALJ improperly relied on the fact that Respondent did not discipline Miller in concluding that Tanelli's statement of possible "additional follow-up" was not a threat of future discipline. *See* General Counsel Brief at 15-16. Contrary to the General Counsel's suggestion, however, the ALJ did not base his decision on any evidence other than what Tanelli actually said during the meeting and what actually occurred. Indeed, the ALJ acknowledged and applied the correct objective standard to reach his conclusion, which is fully supported by the record. *See* Decision at 22, fn. 11. If anything, it is the General Counsel who is suggesting its subjective interpretation of events that occurred after and outside the meeting should be considered—none of which are relevant to whether Tanelli threatened Miller with future discipline during the meeting. *See* General Counsel Brief at 16, fn. 15; *cf. Morse Operations, Inc.*, 353 NLRB 436, 437 fn. 14 (2008) (citing cases where other coercive statements made or referenced *in the same conversation* were sufficient to infer ambiguous statement's coerciveness).

Put simply, the evidence fails to establish that a reasonable employee would feel coerced by Tanelli's benign comment that there might be "additional follow-up" if Miller reposted the same VOA post. Accordingly, the ALJ's correctly dismissed Paragraphs 11(b) of the Amended Complaint and the General Counsel's Exceptions 5, 8, and 15 should be overruled.

**B.**      **The Discrimination Standard Set Forth in *Register Guard* Should Not Be Disturbed. (General Counsel's Exceptions 3 and 15)**

Recognizing that Amazon's conduct was lawful under existing Board law, the General Counsel asserts that the Board should abandon the discrimination standard set forth in *Register Guard* and retroactively apply a new standard to the facts of this case. *See The Register Guard*, 351 NLRB 1110 (2007), *enfd. in relevant part and remanded sub nom. Guard Publishing v. NLRB*, 571 F.3d 53 (D.C. Cir. 2009). Specifically, the General Counsel seeks adoption of the rejected *Fleming Cos.* standard under which "an employer violates Section 8(a)(1) by allowing employees to use its equipment or other resources for nonwork-related purposes while prohibiting Section 7-related uses." General Counsel Brief at 19 (citing *Fleming Cos.,* 336 NLRB 192, 193-94 (2001) (internal quotations omitted), *enf. denied in relevant part* 349 F.3d 968, 968 (7th Cir. 2003)).

The General Counsel's request is misguided. In *Register Guard*, the Board established a workable standard that balances an employer's property rights with employees' Section 7 rights. *See Register Guard*, 351 NLRB at 1110. The Board in *Register Guard* defined unlawful discrimination as the "disparate treatment of activities or communications of a similar character because of their union or other Section 7-protected status." *Id.* at 1118. As the Board explained, "the concept of discrimination involves the unequal treatment of equals." *Id.* at 1117 (citing *Guardian Industries*, 49 F.3d 317, 319 (7th Cir. 1995)). This standard is based on sound legal principles and should not be disturbed to advance the General Counsel's agenda.

In *Register Guard,* the Board held that an employer would violate the Act "if it permitted employees to use e-mail to solicit for one union but not another, or if it permitted solicitation by antiunion employees but not by prounion employees." *Id.* at 1118. In contrast, the Board held that it is permissible for an employer to draw policy distinctions along non-Section 7 related lines, such as "between charitable solicitations and noncharitable solicitations, between solicitations of a personal nature (e.g., a car for sale) and solicitations for the commercial sale of a product (e.g., Avon products), between invitations for an organization and invitations of a personal nature, between solicitations and mere talk, and between business-related use and nonbusiness-related use." *Id.* In crafting this well-reasoned approach, the Board in *Register Guard* relied on past precedent and Circuit Court holdings. *See, e.g., Fleming Cos.,* 349 F.3d at 968; *Guardian Industries*, 49 F.3d at 317.

Here, the General Counsel argues that the Board should return to the standard in *Fleming Cos.*—a standard that the Seventh Circuit explicitly rejected. *See* General Counsel Brief at 19; *Fleming Cos.,* 349 F.3d at 975. In *Fleming Cos.*, the Board held that the employer violated the Act by removing union organizational postings from its bulletin board while simultaneously allowing employees to post personal notices. *Id.* at 975. The Seventh Circuit refused to enforce the Board's ruling, holding that the employer's prohibition on all organizational notices (union and non-union alike) was not discriminatory just because the employer allowed personal postings. *See id.* As the Seventh Circuit reasoned, "a rule banning *all* organizational notices . . . is impossible to understand as disparate treatment of unions." *Id.* (citing *Guardian Indus.,* 49 F.3d at 319-20) ("We therefore must ask in what sense it might be discriminatory to distinguish between for-sale notes and meeting announcements")). The Board in *Register Guard* properly relied on the Seventh

Circuit's guidance in *Fleming Cos.* to develop the appropriate standard for proving discrimination under the Act. *See Register Guard,* 351 NLRB at 1117-1118.

The Board's holding in *Register Guard* also aligns with how federal courts routinely analyze the concept of discrimination in the context of other statutes. As the Supreme Court reiterated in *Bostock v. Clayton County, Ga.*, to discriminate means "treating that individual worse than others who are similarly situated." 140 S. Ct. 1731, 1740 (2020) (citing *Burlington N. & S. F. R. Co. v. White*, 548 U.S. 53, 59 (2006)); *see also Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 601 (2008) (holding in the context of Section 1983 equal protection claims that "equal protection . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable") (quoting *Ross v. Moffitt*, 417 U.S. 600, 609 (1974)) (internal quotations omitted). These cases illustrate that discrimination must be evaluated by comparing the treatment of similarly situated cases: that is, unequal treatment of equals. The standard that the General Counsel urges the Board to adopt would, in effect, treat any and all communications contained on an employer's electronic systems as equals, having a "similar character" to a Section 7 communication. *See* General Counsel Brief at 17. Such a standard would be illogical and contrary to well established legal principles governing discrimination analyses. Simply put, there is no logical reason for viewing an employer's allowing advertisement for Girl Scout cookies and the same employer's prohibiting solicitation for signatures on a petition to change working conditions as having a "similar character." *NLRB v. Steelworkers (Nutone)*, 357 U.S. 357, 364 (1958) ("[T]here must be some basis, in the actualities of industrial relations for [a finding of discrimination]."). The standard urged by the General Counsel elevates Section 7 activity to a plane of protection above even that of the same employees' rights to be free from race, sex, age,

national origin, or religious discrimination. Not only is such a standard improper, but it is unworkable given the actualities of industrial relations.

The General Counsel's "all or nothing" approach - i.e., employers may either ban *all* non-business electronic communications or must allow *all* non-business electronic communications[21]—is entirely too restrictive and incompatible with both Board precedent and industrial realities. It is well-established that employers have fundamental property rights, including the right to "regulate and restrict employee use of company property." *Union Carbide Corp. v. NLRB,* 714 F.2d 657 (1983). *Register Guard* correctly recognizes that an employer's fundamental property rights extend to its electronic systems and balances those rights against the employees' Section 7 rights.[22] Tellingly, the General Counsel does not even address this required balance in its Brief, advocating, instead, for a standard that entirely dislocates an employer's basic property rights to regulate its electronic systems. *See Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 802 fn. 8 (1945); *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 504 (1978).

An employer's right to regulate its electronic systems necessarily includes the right to carve out limitations and restrictions of its electronic systems—so long as those limitations do not discriminate on the basis of Section 7 activities. *See Register Guard,* 351 NLRB at 1115. The General Counsel's wholesale approach is an overreach and would require an employer to either

---

[21] The General Counsel even goes a step further by requesting that the Board remove a previously utilized exception that allowed for an employer to lawfully ban all solicitations, except for a "small number of isolated 'beneficent acts.'" General Counsel Brief at 20, fn. 25 (citing *Hammary Mfg. Corp.*, 265 NLRB 57, 57, fn. 4, 58 (1982)). Even if the Board overturns the *Register Guard* standard it should not remove the exception set forth in *Hammary Mfg. Id.*

[22] The Board has long found that employers have the right to restrict access to other property and systems. *See, e.g., Mid-Mountain Foods*, 332 NLRB 229, 230 (2000) (video equipment); *Honeywell, Inc.*, 262 NLRB 1402 (1982), *enfd.* 722 F.2d 405 (8th Cir. 1983) (bulletin boards); *Container Corp.*, 244 NLRB 318 fn. 2 (1979), *enfd. in part* 649 F.2d 1213 (6th Cir. 1981) (per curium) (bulletin boards); *The Heath Co.*, 196 NLRB 134 (1972) (public address system).

cede all of its property rights by allowing all types of non-work related content on its electronic systems, or require the employer to erect a complete and total ban on all non-work related uses of its electronic system. The General Counsel's suggested standard ignores the legitimate reasons why an employer would want to regulate its electronic systems while still allowing employees to use it for some non-work related reasons. For example, employers may want to avoid clutter and minimize employee distraction based on the type of communication while also bolstering employee cohesiveness and morale by allowing incidental personal emails or charitable solicitations. An employer should not be required to open its entire electronic system if it allows limited and incidental personal use on its electronic systems. Moreover, employees today have access to many information channels and streams in which to communicate with fellow workers, including social media, a consideration even more relevant today than to the four-member majority in *Register Guard*. *See* 351 NLRB at 1115 (citing *Steelworkers (Nutone)*, 357 U.S. at 363-364) (The Act "does not command that labor organizations as a matter of law, under all circumstances, be protected in the use of every possible means of reaching the minds of individual workers, nor that they are entitled to use a medium of communications simply because the Employer is using it."); *Republic Aviation Corp.*, 324 U.S. at 801 fn. 6. Accordingly, there is no compelling need to carve out the employer's electronic systems specifically for Section 7 purposes.

In sum, the *Register Guard* standard does not provide a vehicle to discriminate, as the General Counsel alleges, but, instead, properly balances employees' Section 7 rights with an employer's property rights by allowing an employer to create and enforce neutral rules—as Amazon did here. It also accords with the long-accepted, common sense standard used by the courts to determine discriminatory conduct. Accordingly, the Board should not overrule *Register Guard*.

### C. The Board Should Not Overturn *AT&T Mobility*, And Should Not Require Amazon to Rescind Its Company-Wide Solicitation Policy. (General Counsel Exceptions 4 and 16)

The General Counsel also urges the Board to overrule *AT&T Mobility*, 370 NLRB No. 121 (2021), and require Amazon to rescind its facially lawful, company-wide, Solicitation Policy despite the fact that the Complaint does not allege that the Solicitation Policy is unlawful and based solely on the removal of just one VOA post in June 2021.[23]  In *AT&T Mobility,* the Board held that an employer may continue to maintain a facially-lawful rule even if the rule was previously unlawfully applied.  *See id.* slip op. at 7.  In doing so, the Board overruled the third prong of the *Lutheran Heritage* test, which had previously held that a facially-lawful rule would become automatically unlawful if it was previously used by the employer to restrict Section 7 rights.  *See id.* (citing *Lutheran Heritage,* 343 NLRB 646, 647 (2004)).

The Board's decision in *AT&T Mobility* is well-supported.  As an initial matter, the Board noted that the *Lutheran Heritage* decision never adequately explained why a facially lawful policy should automatically be deemed unlawful based on one misapplication of the otherwise lawful policy.  *See AT&T Mobility,* 370 NLRB No. 121, slip op. at 7.  Indeed, such a rule ignores the legitimate and compelling reasons why an employer would want to maintain such lawful work rules.  *See id.*  Moreover, as the Board explained in *AT&T Mobility*, the prior *Lutheran Heritage* standard also failed to comport with long-standing Board precedent.  *See id.* slip op. at 8 (citing *Wynn Las Vegas, LLC*, 369 NLRB No. 91 (2020)) (finding a rule prohibiting employees from engaging in solicitation on worktime remains lawful even after it was applied to discipline an employee for engaging in union solicitation);  *see also Stoddard-Quirk Mfg. Co.,* 138 NLRB 615

---

[23] Amazon filed Cross Exceptions to the ALJ's erroneous finding that Amazon violated the Act by discriminately enforcing its solicitation policy.  *See* Amazon's Cross Exceptions 2-9, 15.

(1962) (finding a lawful no-distribution rule remains lawful after it has been applied to discipline an employee for distributing union literature in a working area); *Marina Del Rey Hospital*, 363 NLRB 231 (2015) (finding a lawful off-duty access rule remains lawful after it has been applied to exclude an off-duty employee seeking access to confer with union representatives); *T-Mobile USA, Inc.*, 369 NLRB No. 50 (2020), *supplemented* 369 NLRB No. 90 (2020) (finding a lawful rule that prohibits employees from using company-provided information-technology resources for nonbusiness purposes remains lawful after it has been applied to discipline an employee for using a the systems for unionization). Finally, the Board also noted the meaningless nature of the remedy, which would require an employer to essentially revise an already lawful rule. *See AT&T Mobility,* 370 NLRB No. 121, slip op. at 9. This requirement would inevitably create undue confusion and improperly undermine the certainty and predictability of Board policy. *Id.* at 9. (citing *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 678-679 (1981)). The General Counsel advances no legitimate arguments as to why the Board should revert back to this problematic standard.

The General Counsel also asks the Board to go one step further to require an employer who wishes to reinstate such a rule to include a disclaimer that the rule will not be applied to restrict Section 7 rights. *See* General Counsel Brief at 20-21. As the majority in *AT&T Mobility* aptly concluded, this suggested remedy is "tantamount to *a perpetual* notice-posting." *AT&T Mobility*, 370 NLRB No. 121, slip op. at 10 fn. 21 (emphasis in the original). Such a rule would be confusing to employees who may understand that only that particular rule would not be applied to restrict Section 7 activity, and then by the absence of disclaimers on other rules, those rules would be

applied discriminatorily. Accordingly the Board should not overturn the ruling in *AT&T Mobility*, and even if it does, should not require a disclaimer.[24]

### D. Amazon's Small Group Meetings Held On Company Time Are Lawful. (General Counsel Exceptions 2 and 15)

In an ill-advised attempt to change over 75 years of Board precedent, the General Counsel argues that the Board should overrule *Babcock & Wilcox Co.,* 77 NLRB 577 (1948), and find that so-called "captive audience" meetings—nothing more than typical employee workplace meetings—are inherently coercive and that Amazon violated the Act by conducting such meetings in accordance with longstanding Board precedent. The General Counsel's Exceptions in this regard should be rejected as contrary to Board precedent, the statutory language of Section 7 and the First Amendment of the United States Constitution.

Here, the ALJ correctly found that Amazon's small group meetings, which were held on company time, were lawful under current Board precedent. *See* Decision at 2:8-14. On this there can be no dispute. Since 1947, when the Taft-Hartley Act was passed to amend the Act and add Section 8(c), employers have had the right to express their views, argument, and opinion, so long as such expressions do not contain unlawful threats of reprisal or force, promises of benefits, or solicitations of grievances. Indeed, the language of Section 8(c) goes to great lengths to protect employers' ability to communicate with employees:

> The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual

---

[24] Lastly, even if the Board adopts the General Counsel's proposal, it should not be applied retroactively. *See supra* Section III.D.5. Even if the Board agrees with the ALJ's finding that the solicitation policy was disparately applied, it is an inappropriate vehicle to apply this special remedy. *See also, infra* Section III.G. Although Amazon disagrees with the ALJ's few merit-findings, he was correct that even if Amazon violated the Act in the ways he described, enhanced remedies are not warranted. *See* Decision at 33:20-24. Specifically, he noted that the few violations he found were "not entirely obvious or clear cut." Decision at 33:22-24. Accordingly, additional remedies should not be instituted here.

> form, shall not constitute or be evidence of an unfair labor practice
> under any of the provisions of this subchapter, if such expression
> contains no threat of reprisal or force or promise of benefit.

29 U.S.C. § 158(c). *See also NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969); *Amptech, Inc.*, 342 NLRB 1131, 1137 (2004), *enfd.* 165 F. App'x. 435 (6th Cir. 2006); *Kinney Drugs, Inc. v. NLRB*, 74 F.3d 1419, 1427-28 (2d Cir. 1996).

Moreover, one of the expressed legislative purposes of the Taft-Hartley Act was to dispense with the prior Board precedent that had prohibited employers from holding captive audience meetings:

> The Board has . . . [held] such speeches by employers to be coercive . . . if
> the speech was made in the plant on working time. The committee believes
> these decisions to be too restrictive and, in this section, provides that if,
> under all the circumstances, there is neither an express or implied threat of
> reprisal, force, or offer of benefit, the Board shall not predicate any finding
> of unfair labor practice upon the statement.

Sen. Rep. No. 105, 80th Cong. 1st Sess. 23-24 (1947) (citing *Clark Bros.*, 70 NLRB 802, 802 (1946)).[25]

---

[25] The Taft-Hartley Act supplemented Section 7 of the Act to grant employees the right to refrain from participating in union activities or other concerted activities for the purpose of collective bargaining or other mutual aid or protection in 1947. Also included in the Taft-Hartley Act was Section 8(c), which, as confirmed by the Senate Report, was included for the specific purpose of repudiating the holding in *Clark Bros.* and related cases that imposed conditions on employer-speech, particularly speech uttered in captive audience meetings. The General Counsel's position would require the adoption of two contradictory propositions: (1) that Congress added the "right to refrain" language to Section 7 to permit employees to "refrain" from attending captive audience meetings; while (2) simultaneously adding Section 8(c) to the Act, which specifically granted employers the right to require attendance at captive audience meetings. While the General Counsel may be comfortable accepting this blatant inconsistency to advance her agenda, the Board should not accept such an illogical conclusion.

Soon after Section 8(c) was added to the Act, the Board itself confirmed that the purpose of the Taft-Hartley Act was to protect employers' ability to communicate with employees, including by conducting captive audience meetings[26]:

> However, the language of Section 8(c) of the amended Act, and its legislative history, make it clear that the doctrine of the *Clark Bros.* case no longer exists as a basis for finding unfair labor practices in circumstances such as this record discloses. Even assuming, therefore, without deciding, that the respondent ***required its employees to attend and listen to the speeches***, we conclude that it did not thereby violate the Act.

*Babcock & Wilcox Co.*, 77 NLRB at 578 (emphasis added).

Thereafter, the Board has repeatedly recognized that the addition of Section 8(c) represented an inflection point in the Board's captive audience doctrine. *See Fontaine Converting Works, Inc.*, 77 NLRB 1386, 1387 (1948) ("Nor, on this record and for the reasons stated in *Babcock & Wilcox Co.*, do we find that this Respondent violated the *amended* Act by compelling its employees to attend and listen to speeches on company time and property.") (emphasis added). Thus, in *Fontaine Converting Works, Inc.*, the Board reversed the ALJ, and found that the company did not violate the *amended* Act, and noted that the ALJ had erroneously relied on the prior caselaw set forth in *Clark Bros. See id.* at 1387. Likewise, in *Livingston Shirt Corp.*, the Board confirmed the rule that employers may lawfully hold captive audience meetings (1) for the purpose of expressing its anti-union position and (2) on the employer's time and premises. In doing so, the Board further acknowledged that the *Clark Bros.* doctrine was "short lived" and that "Congress ***specifically repudiated it*** . . . when it enacted Section 8(c) of the Act", which "was intended to

---

[26] The Board's own website acknowledges the purpose of the Taft-Hartley Act: "The new law contained a 'free speech clause,' providing that the expression of views, arguments, or opinions shall not be evidence of an unfair labor practice absent the threat of reprisal or promise of benefit." *See* NLRB, 1947 Taft-Hartley Substantive Provisions, https://www.nlrb.gov/about-nlrb/who-we-are/our-history/1947-taft-hartley-substantive-provisions (last viewed April 28, 2023).

overrule the 'compulsory audience' doctrine [] set forth in . . . *Clark Bros*[.]").  107 NLRB 400, 414 (1953) (emphasis added).

Since that time, the law with regard to captive audience meetings has remained the same—such meetings are lawful under the Act.  *See id.* at 405-06;  *Electrolux Home Products, Inc.*, 368 NLRB No. 34, slip op. at 5 (Aug. 2, 2019) (employers are afforded broad latitude to hold captive audience meetings and express their views, argument, opinions, and "persuade employees not to unionize");  *see also Kinney Drugs, Inc.*, 74 F.3d at 1428 (holding that employer communications not only affirm the employer's free speech rights, but also "aids the workers by allowing them to make informed decisions.");  *Beverly Enterprises-Hawaii, Inc.*, 326 NLRB 335, 357 (1998) (same);  *Addressograph-Multigraph Corp.*, 228 NLRB 6, 8-9 (1977) (because the meeting was held on the employer's premises during normal working time, the employer "was at liberty to determine the use to which it wished to put the time for which it was paying the employees, and the employees were not free to make a choice in favor of working") (internal quotation marks omitted).

Importantly, the General Counsel does not dispute the lawfulness of Amazon's small group meetings under current Board precedent.  *See* General Counsel Brief at 26-27.  Instead, the General Counsel requests that the Board overturn *Babcock* and 75 years of established precedent and find that, under a newly established framework, Amazon's small group meetings violated Section 8(a)(1) of the Act.  Specifically, the General Counsel seeks the following:

> [T]he Board should hold that, as a matter of law, reasonable employees will perceive an implicit, if not explicit, threat of reprisal for exercising their right to refrain from listening to their employer's communications concerning their exercise of Section 7 rights in two circumstances: when they are (1) convened on paid time or (2) cornered while performing their job duties.

General Counsel Brief at 33. At its core, the General Counsel's request advances two untenable positions: (1) Section 7, which protects certain concerted activities, also includes a right to refrain from listening; and (2) employer speech that concerns a certain topic—Section 7 rights—contains an inherent threat of reprisal.[27] The first is inconsistent with basic principles of statutory construction. The second is a unabashed assault on the First Amendment.

> 1. **The General Counsel's Attempt to Expand the Act's Protection to Include an Employee's Right To Refrain from Listening To Employer Speech is Contrary to Basic Principles of Statutory Construction.**

The General Counsel's effort to overturn *Babcock* rests on its novel contention that Section 7 of the Act grants employees the right to refrain from listening to employer speech on company time. However, this argument hinges on the General Counsel's misinterpretation of the Act and is contrary to basic principles of statutory construction. Because the Board does not have the authority or discretion to ignore the statutory language of the Act, the General Counsel's request to change the law must be rejected.

"If the intent of Congress is clear, that is the end of the matter; for the court, *as well as the agency*, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A.,*

---

[27] The General Counsel's veiled "limitation" of the request to instances when employees are "convened" or "cornered" is in reality no limitation at all. What does "convened" mean? How about "cornered"? And when does an employer's communication "concern[]" Section 7 rights? There is no clear answer to these questions as the proposed rule is unquestionably vague. Thus, the General Counsel asks the Board to grant an unlimited license to crush any employer speech that contains viewpoints with which the General Counsel disagrees. Setting aside the myriad of constitutional problems with the General Counsel's request, the proposed rule is brazen in its vagueness and fails even the most elementary of legal tests. *See Johnson v. United States*, 576 U.S. 591, 602–03 (2015) (the void for vagueness doctrine operates to bar laws that are indefinite in their interpretation ever where "some" interpretations are clear); *see also Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) (law prohibiting people on sidewalks from "conduct[ing] themselves in a manner annoying to persons passing by" was void for its vagueness despite some reasonable interpretations because those "of common intelligence must necessarily guess at its meaning") (internal quotation marks omitted).

*Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984) (emphasis added).  Indeed, the basic principles of statutory construction demand that, when interpreting a statute, the starting point is the language employed by Congress, and effect must be given, when possible, to every word, clause, and sentence found in the relevant statute.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001);  *L.A. Times Comms., LLC*, 357 NLRB 645, 647 (2011);  *see also Hosp. Workers' Union, Local 250*, 255 NLRB 502, 504 (1981) ("It is axiomatic, of course, that statutory construction must begin with the language of the statute itself" and "[a]s a general rule of statutory construction, the language of a statute controls when sufficiently clear in its context") (internal quotation marks omitted).  The Board "is not free to disregard [congressionally imposed requirements] simply because it considers them redundant or unsuited to achieving" the Board's goals.  *C.I.R. v. Gordon*, 391 U.S. 83, 93 (1968).

Accordingly, the Board is not free to read into the statute language that is not there.  *See Keene Corp. v. United States*, 508 U.S. 200, 200-01 (1993) (recognizing the Court's duty to refrain from reading into the statute a phrase that Congress has left out).  Yet this is *exactly* what the General Counsel endeavors to do with its contention that Section 7 guarantees employees the right not to listen to their employer's otherwise non-coercive anti-union speech.  Section 7 is unambiguous in that it grants employees the right to "refrain" only from certain activities.  The text establishes a panoply of specific employee rights: "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection", but none of the rights expressed in Section 7 relate to employer speeches, informational meetings, or other communications advocating ***against*** unionization.  *See* 29 U.S.C. § 157.  Instead, Section 7 ***explicitly*** limits employees' right to refrain "from any or all of ***such***

activities." *See id.* (emphasis added). This limiting reference establishes that an employee's right to "refrain" necessarily corresponds only to those rights actually expressed in Section 7. As such, the General Counsel's effort to shoehorn unexpressed rights into Section 7 is improper. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (canon of *expressio unius est exclusio alterius* governs statutory interpretation and operates to bar interpretation that would include in a statute a right not expressed where the statute expresses other rights).

Moreover, none of the rights enumerated in Section 7 are even tangentially related to the actions of an employer. Indeed, employer rights and obligations are set forth separately in Section 8 of the statute. As relevant here, Section 8(a)(1) provides that an employer shall not "interfere with, restrain or coerce employees **in the exercise of rights guaranteed in section 7**." *See* 29 U.S.C. § 158(a)(1) (emphasis added). This reference is also limiting in scope; it means that Section 8(a)(1) creates no other or additional employee rights *not already enumerated in the express text of Section 7. See Leatherman*, 507 U.S. at 168.

Taken together, Section 7's reference to the right to refrain from "such" rights set forth in that Section of the Act, and Section 8(a)(1)'s prohibition of employer interference in an employee's right to refrain from "rights guaranteed in Section 7" make clear that Section 7 grants employees the right to refrain from engaging in concerted activity with other ***employees or labor organizations; it does not grant*** employees any right to refrain with respect to the actions of ***an employer***. *See, e.g.*, *Emporium Capwell Co. v. W. Addition Cmty. Org.*, 420 U.S. 50, 62 (1975) (the Act guarantees employees collective rights "to act in concert with [their] fellow *employees*") (emphasis added); *Pekowski Enterprises, Inc.*, 327 NLRB 413, 432 fn. 13 (1999) (clarifying that the right "to refrain" applies to concerted activities with other *employees or labor organizations*);

*Anaconda Copper Mining Co.*, 110 NLRB 1925, 1926 (1954) (Section 7 is intended to guarantee employees the right to "refrain from participating . . . in *union activities*") (emphasis added); *cf. Studebaker Corp.*, 110 NLRB 1307, 1307, 1317 (1954) (adopting finding that the Act does not confer a right on "employees . . . as consumers to refrain from supporting their employer's product without impairment to their job status").[28]

The General Counsel similarly seeks to expand Section 7 to cover individual, not just concerted activities. As a definitional matter, "listening" is an individual, not concerted, activity, and is thus outside Section 7's ambit—which applies only to an enumerated list and "***other*** concerted activities." *See* 29 U.S.C. §157 (emphasis added). But even if Section 7 did grant a right to "listen" or to refrain from "listening," the case law cited by the General Counsel in support of its position undermines its own argument, as such case law makes clear that any right to "listen" or refrain from "listening" must invoke some sort of group or concerted activity, and is limited solely to union or employee-speech, not employer-speech.[29]

---

[28] The General Counsel's position advocates – presumably inadvertently – that Section 7 protections should be extended to *employers*. By arguing that the "right to refrain" encompasses a right to refrain from engaging with employers, the necessary implication is that the enumerated list of protections guaranteed by Section 7 (to engage with other employees and labor organizations), from which employees have the right to refrain, would extend to employers. *See* 29 U.S.C. § 157 (setting forth an express, limited list of protections and limiting the right to refrain to the expressly enumerated protections); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001) ("[W]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.") (internal quotation marks omitted); *see also Dole v. United Steelworkers*, 494 U.S. 26, 36 (1990) ("[W]ords grouped in a list should be given *related* meaning.") (internal quotation marks omitted) (emphasis added). This is an absurd result, and one that would be entirely inconsistent with the purposes of the Act. *See supra* Section III.D; *see also In Re Chapman,* 166 U.S. 661, 667 (1897) ("[N]othing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion.").

[29] It is unclear why the General Counsel cites to *Sunbelt Mfg., Inc.*, as that case involved unlawful surveillance and does nothing to advance her argument. 308 NLRB 780, 780 fn. 3 (1992).

For example, in *Climatrol, Inc.*, 329 NLRB 946 (1999), the Board explicitly limited any right to "listen" to the listening of "a union organizer's arguments in favor of the union when the employee is on his own time." *Id.* at 956. Similarly, in *Meyers Industries*, the Board explicitly limited any right to listen/refrain from listening to instances where: (1) "individual employees seek to initiate or to induce or to prepare for group action" and (2) "individual employees bring[] truly group complaints to the attention of management." 281 NLRB 882, 887 (1986) (clarifying that "concertedness" requires a group, not merely an individual, component). Likewise, the General Counsel characterizes *Eastex, Inc. v. NLRB*, as a case where the mere distribution of a newsletter was protected concerted activity; yet the General Counsel fails to clarify that the reason such distribution was protected was because the newsletter comprised "[t]he ***union's*** call" for employees to back certain individuals. 437 U.S. 556, 570 (1978) (emphasis added).[30]

The General Counsel's argument ignores the fact that, in every case on which it relies, the protected activity is limited to (1) group or (2) union and/or employee activity. But this argument is directly at odds with the plain language in Section 7, and expanding Section 7 rights to include individual activities, or a right to listen to or refrain from listening to employer speech, far exceeds the power conferred on the ALJ, the Board, or the General Counsel.[31] *See Meese v. Keene*, 481

---

[30] The same is true of the General Counsel's other cases. In *Roxanna of Texas, Inc.*, an employee engaged in protected concerted activity by "taking union handbills when they were passed out" precisely because it was a ***union*** handbill. 98 NLRB 1151, 1165 (1952). In *Smyrna Ready Mix Concrete, LLC*, an employee engaged in protected concerted activity by attending a ***union*** meeting. 371 NLRB No. 73, slip op. at 2-3 (Mar. 8, 2022). The confidentiality right referenced in *Guess?, Inc.*, pertained solely to "***union*** activities" and "attendance at ***union*** meetings." 339 NLRB 432, 434 (2003) (emphasis added). And in *Foothill Sierra Pest Control, Inc.*, the protected activity was comprised of contacting a ***union***, talking to other employees about the ***union***, and hosting a ***union*** meeting. 350 NLRB 26, 29 (2007).

[31] As additional point of reason, the General Counsel's position that the Act grants employees the right to "listen" and to refrain from "listening" is at odds with basic natural truths—how exactly does one force another to "listen"? As the evidence in this case illustrates, required "attendance" does not mean mandatory "listening," as, in fact, many of Amazon's Associates ***did not*** "listen"

U.S. 465, 484 (1987) (judges are duty-bound to "construe legislation as it is written, not as it might be read"); *Keene Corp.*, 508 U.S. at 200-01 (courts are not to read into statutes language Congress specifically left out). For these reasons, the statutory language of Section 7 prohibits the interpretation being advanced by the General Counsel and therefore the Board must reject it.

### 2. The First Amendment Protects Employers' Right to Hold Captive Audience Meetings.

In addition to violating the express language of the Act, the General Counsel's position, if accepted, would violate the First Amendment of the United States Constitution. The United States Supreme Court has recognized that "employers' attempts to persuade to action with respect to joining *or not joining unions* are within the First Amendment's guaranty." *Thomas v. Collins*, 323 U.S. 516, 537 (1945) (emphasis added). Nevertheless, the General Counsel asks the Board to violate this guarantee and infringe on employers' rights to express themselves in a non-coercive manner by concluding that the mere expression of views on a certain topic by an employer is inherently coercive and threatening. As such, Paragraphs 13 and 14 of the Amended Complaint represent a blatant attempt to regulate the content—and specific *viewpoint*—of Amazon's speech. *See* Amended Complaint ¶¶ 13-14 (taking issue with mandatory meetings only where statements were allegedly made "in opposition to the Union"). Indeed, during the hearing, the General Counsel confirmed that the pivotal issue here is not the "mandatory" nature of the at-issue meetings—the General Counsel takes no issue with Amazon's mandatory meetings wherein unions were not discussed—but the fact that the "information . . . delivered [at those meetings was] in opposition to the [u]nion." Tr. 339:8-12; *cf.* Tr. 301:14-302:5 (Associates were required to attend other mandatory training in conjunction with their employment); General Counsel Brief at

during the challenged small group meetings and were not punished for their failure to listen. *See infra* Section II.D.4.d.

35 ("But it is a different matter if the employer uses the meeting to dissuade employees from unionizing . . . .").

The type of viewpoint-based regulation being pursued by the General Counsel is at odds with the First Amendment to the United States Constitution, which prevents government actors from "restrict[ing] expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Az.*, 576 U.S. 155, 163 (2015); *see also Trinity Services Group v. NLRB*, 998 F.3d 978, 980 (D.C. Cir. 2021) ("[A]bsent threats . . . Section 8(c) unambiguously protects any views, argument or opinion – even those that the [NLRB] finds misguided, flimsy, or daft.") (internal quotation marks omitted). Moreover, "[w]hen the government targets not subject matter, *but particular views taken by speakers on a subject*, the violation of the First Amendment is all the more blatant."[32] *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (emphasis added).

Historically, the Board has recognized this fundamental principle in holding that Section 8(c) of the Act "specifically prohibits [it] from finding that an uncoercive speech, whenever delivered by the employer, constitutes an unfair labor practice." *Livingston Shirt Corp.*, 107 NLRB at 405. This is especially true when such speech occurs on "an employer's premises" as such are "the natural forum" for employer-speech, "just as the union hall is the inviable forum for"

---

[32] Should the General Counsel argue that the "time, place, and manner" First Amendment jurisprudence permits the regulation of speech during captive audience meetings, such an argument would stumble out of the gate. "Time, place, and manner" restrictions are *never* permissible if they seek to regulate "the content of . . . speech." *See Ward v. Rock Against Racism*, 491 U.S. 781, 791, (1989); *see also Hudgens v. NLRB*, 424 U.S. 507, 520 (1976) ("[T]ime, place, and manner regulations [are impermissible if] the regulation [is aimed at] the content of . . . expression."). Here, the General Counsel seeks to implement not just a content-based regulation, but the most egregious subset of content-based regulations: a *viewpoint-based* regulation aimed at speech that is "in opposition to [u]nion representation and the [u]nion." *See* General Counsel Brief at 5; Amended Complaint, ¶¶ 13-14; Tr. 339:8-12. Thus, the "time, place, manner" jurisprudence does not help the General Counsel.

union-speech. *Id.* at 406. Likewise, mandatory employer-speech, such as speech uttered during captive audience meetings, is equally protected. *See Babcock & Wilcox Co.*, 77 NLRB at 578 (employer-speech protected even when "employees [are required] to attend [meetings] and listen to speeches"); *see also Litton Sys., Inc.*, 173 NLRB 1024, 1024, 1030 (1968) (adopting trial examiner's order wherein it recognized that "[a]n employee has no statutorily protected right to leave a meeting which the employees were required by management to attend on company time and property to listen to management's non-coercive anti-union speech designed to influence the outcome of a union election.").

Here, the General Counsel makes no distinction between coercive and non-coercive speech, and seeks to prohibit all speech that is merely "in opposition to the [u]nion," thereby exposing the General Counsel's efforts to impose a pure viewpoint-based speech regulation—an anathema to the First Amendment. *See* Amended Complaint ¶¶ 13-14; Tr. 339:8-12; *cf. Reed*, 576 U.S. at 163; *Rosenberger*, 515 U.S. at 829; *Thomas*, 323 U.S. at 537.

But even more egregious, the General Counsel is seeking a viewpoint-based restriction that is under-inclusive because it seeks to restrict employers' anti-union speech but leaves unimpeded unions' right to engage in pro-union speech, thus undermining any justification the General Counsel may seek to present in defense of this draconian position.[33] *See Williams-Yulee v. Florida Bar*, 575 U.S. 433, 448 (2015) (under-inclusive regulations undermine government's justification

---

[33] The General Counsel's underinclusive position also creates an equal protection problem, as it restricts employers' speech but not the speech of employees or of unions. This type of restriction requires "fine[] tailor[ing]" to "substantial . . . interests" and the "justifications offered for [the discriminatory application] must be carefully scrutinized." *See Carey v. Brown*, 447 U.S. 455, 461-62 (1980). Yet the General Counsel provides *no* justification for her underinclusive, discriminatory rule, much less one that is tailored, finely or otherwise, to any purported interest she may have (which, judging by the discriminatory nature of her position, appears to be the "interest" of the union business).

for viewpoint-based regulations and expose the underlying "disfavor[] [of] a particular speaker or viewpoint"). For example, the General Counsel's proposal does not seek to quell a union's right to obtain private, personal information of employees and engage those employees in pro-union speech, even when those employees do not wish to listen to such speech. *Cf.* Rules and Regulations of the National Labor Relations Board, Section 102.62(d), 102.67(l). Accordingly, the under-inclusiveness of the General Counsel's proposal undermines any justification the General Counsel may have for seeking to quash employers' right to hold captive audience meetings and speak "in opposition to [a] [u]nion".[34] *See* Tr. 339:8-12; *cf. Williams-Yulee*, 575 U.S. at 448.

Finally, the General Counsel makes no effort to define what speech "in opposition to [u]nion representation and the [u]nion" actually means.[35] *See* General Counsel Brief at 5; Amended Complaint ¶¶ 13-14; Tr. 339:8-12; *see also supra* note 27. Here, the General Counsel challenges statements of pure fact and claims that these statements are in opposition to the union. Perhaps the General Counsel's aim is to stamp out all statements—whether fact, expression, or opinion—that do not cast unions in a favorable light. Whatever the case, "in opposition to the [u]nion" is an entirely unworkable standard due to its sheer breadth, and its chilling effect will eviscerate the First Amendment. *See Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) (breadth and uncertainty of speech regulation leads to pernicious chilling effect on the exercise of First

---

[34] Further cementing the under-inclusive nature of the General Counsel's interpretation of Section 7 (*supra* note 33), had the General Counsel truly wished to create and protect employees' right to refrain from "listening," she would have advocated for employees' rights to refrain from listening to *union* speech, particularly in instances where employees have directly asked unions to refrain from contacting them. Her failure to do so illuminates the true purposes of her recommendation in GC 22-04, which has nothing to do with protecting *employees'* rights, but to grant new rights to labor organizations without regard to employers' free speech rights or employees' rights to refrain from engaging with labor organizations. *See* 29 U.S.C. § 157.

[35] Whatever speech "in opposition to [u]nion representation and the [u]nion" means, it is certainly not prohibited by the Act itself. *See* 29 U.S.C. § 158(a); *cf.* Section III.A.2.

Amendment rights); *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 324 (2010) (recognizing improper chilling effect on speech where "[p]eople of common intelligence must necessarily guess at [the law's] meaning and differ as to its application") (internal quotation marks omitted) (alterations in original).

### 3. The General Counsel's Proposed Rule Regarding Captive Audience Meetings Would Violate the First Amendment and Therefore Must be Rejected.

The General Counsel's position is overbroad, discriminates on the basis of viewpoint, and is under-inclusive in contravention of the First Amendment.

The General Counsel's position is overbroad in that it defines the operative words "convened" and "cornered" as follows:

- **Convened**: any instance when an employer "asks employees to attend a meeting on paid time." *Id.*

- **Cornered**: any instance when an employer "approaches [an employee] while the[] [employee is] performing job duties." *Id.*

General Counsel Brief at 33. These definitions encompass virtually every interaction in which an employer engages with an employee on working time, whether or not the engagement is in a group or individual setting or is formal or informal. *See id.* at 33, fn. 69 (confirming that, in the few instances when an employer engages an employee not covered by the broad definitions of "convened" and "cornered", such as during an "after-work meeting or approached on break time," a "totality of the circumstances" test should be employed). The General Counsel further specifies that the **only** instance when "convened" or "cornered" employees are **not** subject to an implicit and unlawful threat of reprisal is when the employer provides assurances to the employee "that participation is voluntary." *Id.* at 36-37; *see also id.* at 33-34 (confirming that express assurance

is required even if an employer does not communicate to employees that a meeting is mandatory). Thus, in virtually every interaction where an employer engages an employee, should matters arise that merely "concern" Section 7 rights (whatever that means, *see supra* note 27), the employer would be compelled to provide a disclaimer in order to prevent an unwarranted assumption that it is unlawfully threatening its employees with reprisal.

But this compulsory disclaimer is yet another First Amendment violation the General Counsel ignores. By requiring an employer to provide the disclaimer as the only means by which the employer can avoid the all-encompassing application of the General Counsel's proposed rule, the General Counsel seeks to compel employer-speech. Indeed, this would run afoul of compelled speech jurisprudence and must be rejected. *See, e.g.*, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 573 (1995) (compelled speech is inconsistent with principles of free speech because a "speaker has the right to tailor [its] speech, [and such right] applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid"); *see also Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208 (2015) (the First Amendment constrains government from compelling private persons to convey government-preferred messaging).

Further, as discussed above, the General Counsel's position blatantly discriminates on the basis of viewpoint because nowhere does the General Counsel assert that unlawfulness is determined simply by the allegedly "captive" nature of interactions where employees are "convened" or "cornered," but that unlawfulness is determined *only* when an employer tries to "dissuade employees from unionizing or engaging in concerted activity to improve job training or

safety."[36]  *Id.* at 35.  Thus, the General Counsel advances a position that places a restriction on employers (1) in virtually every type of interaction in which an employer could engage with its employees in the workplace, (2) when matters "concerning" Section 7 "rights" are discussed, but (3) **only if** the employer expresses "hostility"—in whatever capacity, be it fact, opinion, or experiences—toward such rights, or otherwise seeks to "dissuade" employees from, unionizing or engaging in concerted activity.  This type of under-inclusive, viewpoint-focused regulation of employer-speech is entirely inconsistent with the First Amendment and should therefore be rejected as unconstitutional.  *See supra* Section III.A.3.a; *see also supra* note 27.

### 4.  Amazon Did Not Violate the "Legislation" Proposed by the General Counsel.

The General Counsel asks the Board to ignore the U.S. Constitution, overturn 75 years of Board precedent, and effectively amend the Act through decisional fiat, under an absurd interpretation of the Act.  However, setting this aside, even if the Board overturns *Babcock* (which it should not, *see supra* Sections III.D.1-3), the facts of this case would not violate the General Counsel's proposed framework even if the Board decides to breathe life into the General Counsel's gambit.

#### a.  *Amazon's Small Group Meeting Presentations Were Not Anti-Union.*

The content of Amazon's small group meeting presentations was not anti-union.  To the contrary, the information presented was *factual*.  The content shared in Amazon's small group

---

[36] It should be noted that the General Counsel fails to define "hostility" or "dissuade," but such terms would broadly prohibit an employer from sharing facts with employees that may cast unions in an unfavorable light, or from simply asking employees to vote "no" – this would be in direct conflict with the United States Supreme Court's holding in *Thomas v. Collins*.  323 U.S. at 537 ("[E]mployers' attempts to persuade to action with respect to joining or not joining unions are within the First Amendment's guaranty.").

meetings is set forth in PowerPoint presentations contained in General Counsel Exhibits 34, 36, 39, and 41. *See* Tr. 321:6-11 (recognizing that the small group meeting presenters followed the PowerPoint).

Amazon's presenters began each meeting by introducing themselves as members of Amazon's Employee Relations Team—a group that consists of individuals who travel to Amazon facilities throughout the country to engage Associates and enhance their work experience. *See* GC Exs. 34, 36, 39, and 41. Amazon's presenters were not managers or Human Resources representatives with authority over JFK8 or LDJ5 Associates. *See* Tr. 191:10-6, 230:2-6, 251:2-5, 314:8-15; GC Ex. 34 at p. 1.

After identifying themselves as members of Amazon's Employee Relations Team, the presenters provided Associates with the information contained in General Counsel Exhibits 34, 36, 39, and 41. This information is **not** anti-union; rather, it merely shares facts on the election process, unions, and the negotiations process,[37] and informs Associates of Amazon's preference to have a direct relationship with Associates. *See* Tr. 256:13-23 (Wesley asserting that Amazon tried to discourage Associates from signing authorization cards, but admitting that her basis for her opinion is that, in small group meetings, presenters "discussed what unions are . . . the process of collective bargaining . . . [and told] people to quote/unquote protect [their] signature"); GC Exs. 34, 36, 39, and 41. Similarly, if the General Counsel takes issue with the mere fact that presenters expressed Amazon's desire that Associates vote "no" in the election, the General Counsel's trampling of the First Amendment is extraordinarily egregious—she would not only

---

[37] Contrast the facts set forth in General Counsel Exhibits 34, 36, 39, and 41 with misrepresentations made by the ALU's agents, when they informed employees that the purpose of a union authorization card was to enable employees to cast a vote in a union election, implying that employees could not cast votes in the election if they did not sign authorization cards. *See* Tr. 225:9-14.

endeavor to regulate the content of speech, but to also regulate an employer's ability *to convey its own preferences* to its employees. *See* s*upra* Section III.A.3.a

Accordingly, the facts of this case do not violate the General Counsel's newly proposed standard because the information shared in Amazon's small group meeting was limited to facts, including Amazon's preferences, and was not anti-union.

### b.    *Amazon's Small Group Meetings Further the Purpose of the Act.*

One of the stated policies of the Act is to "protect[]…workers…full freedom of association, self-organization, and designation of representatives of their own choosing." 29 U.S.C.§ 151.  This is built into the very language of Section 7, which grants employees the right to "self-organiz[e], to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."  29 U.S.C. § 157.  In addition to providing factual information to Associates consistent with the Act's policy, Amazon's small group meetings served as a forum for Associates to dialogue with each other about their views on unionization.  For example:

- Amazon's presenters would point Associates to the Board's Guide to the National Labor Relations Act and the Board's website.  *See* Tr. 402:12-19.

- Amazon permitted Associates to openly discuss their views on unionization and their views on the small group meetings themselves. *See, e.g.*, Tr. 260:2-8, 278:21-279:16, 300:14-24, 315:25-316:16, 370:10-23, 402:20-403:15.

- Amazon permitted the ALU to share its views and challenge Amazon's positions— which the ALU had *no right* to do.  *See, e.g.*, Tr. 260:2-8, 268:20-269:1, 278:21- 279:16;  *see also Livingston Shirt Corp.*, 107 NLRB at 409.

- Amazon encouraged Associates to seek out their own facts and ask the ALU questions. *See, e.g.*, Tr. 316:16-24; GC Ex. 34 at p. 14, GC Ex. 36 at p. 10.

Accordingly, the facts of this case would not violate the General Counsel's proposed standard because Amazon, in its small group meetings, furthered the purposes of the Act by (1) providing Associates a platform to discuss their views on organizing, (2) providing Associates

facts about organizing and unionization, and (3) encouraging Associates to do their own research and dialogue directly with the union.

### c. Attendance at Amazon's Small Group Meetings Was Not Coercive.

While small group meetings may have been "mandatory" in the sense that Amazon instructed Associates to attend, there is no evidence showing that attendance was coercive in any way because Amazon did not threaten or subject any Associate to any adverse action for failing to attend these small group meetings. Indeed, the General Counsel failed to introduce any evidence that a single Associate was subject to discipline or even a threat of discipline for declining to attend a small group meeting. In contrast, there is ample record evidence showing that Amazon did not discipline Associates for failing to attend (or for leaving) small group meetings. *See, e.g.*, Tr. 268:20-269:1, 373:2-9, 401:18-23; *see also* Tr. 265:24-266:1 (Wesley acknowledging that she was informed that it was Amazon's preference that Associates attend small group meetings), 280:25-281:2 (ALU agent admitting that she continued to attend small group meetings despite being aware attendance was voluntary).

Accordingly, the facts of this case would not violate the General Counsel's proposed standard because Amazon's small group meetings were not "mandatory" in any real sense of the word.

### d. Even if Attendance at Amazon's Small Group Meetings Were Mandatory, "Listening" Was Not.

Even if attendance at Amazon's small group meetings were mandatory, "listening" was *not* mandatory. For example:

- Amazon did not take any action to ensure Associates were paying attention during the meetings. *See* Tr. 315:18-20, 403:25-404:3.

- Amazon did not prohibit or punish Associates for using their phones to text or watch videos during the meetings, or for talking amongst themselves during the meetings. *See* Tr. 301:5-8, 315:9-20, 369:19-370:5, 404:6-9.

- Amazon permitted Associates to sleep during the meetings. *See* Tr. 229:4-10, 403:16-21, 404:4-5.

- Amazon did not administer any test or quiz to assess or evaluate whether Associates were paying attention to the content presented during the meetings. *See* Tr. 104:25-105:3, 229:15-19, 251:15-18, 281:19-24, 301:9-12, 315:21-24, 370:6-9, 404:10-13.

Accordingly, the facts of this case would not violate the General Counsel's proposed standard because Amazon's Associates were not required to "listen" and ample evidence from the hearing establishes that many Associates in fact *did not* listen. Thus, any alleged "right" to refrain from "listening" was not infringed upon during Amazon's small group meetings.

### 5. If the Board Chooses to Overturn Preexisting Law, It Should Not Do So Retroactively.

Even if the Board uses this case to overturn its longstanding precedent and to institute the General Counsel's new proposal for captive audience meetings, it should not apply such a change retroactively. Indeed, it would work a manifest injustice if the revised rule were applied retroactively to find that Amazon committed an unfair labor practice because Amazon relied on, and conducted itself in accordance with, the Board's preexisting rule.

In 1947, the same year the Taft-Hartley Act amended the Act, the United States Supreme Court established the framework under which administrative agencies may apply new standards retroactively. *See SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947). "[R]etroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." *Id.* The Board has recognized that "the propriety of retroactive application is determined by balancing any ill effects of retroactivity against the mischief" discussed in *Chenery*, and the Board "will apply an *arguably new* rule retroactively to the parties in the case in which the new rule is announced . . . so long as this does not work a manifest

injustice." *SNE Enterprises, Inc.*, 344 NLRB 673, 673 (2005) (internal quotation marks omitted) (emphasis added); *see also In Re Ugl-Unicco Serv. Co.*, 357 NLRB 801, 810 fn. 28 (2011). "In determining whether the retroactive application of a Board rule will cause manifest injustice, the Board will consider *the reliance of the parties on preexisting law*, the effect of retroactivity on accomplishment of the purposes of the Act, and any particular injustice arising from retroactive application." *SNE Enterprises, Inc.*, 344 NLRB at 673 (emphasis added); *see also Valley Hosp. Med. Ctr., Inc.*, 371 NLRB No. 160, slip op. at 21 (Sept. 30, 2022).

As a general rule, retroactive application of a Board rule will cause a manifest injustice when the rule to be retroactively applied overturns a preexisting rule or Board precedent. *See, e.g.*, *Starbucks Corp.*, 371 NLRB No. 154, slip op. at 6 (Sept. 29, 2022) ("[W]e find that retroactive application of the [rule at issue] would be manifestly unjust . . . [because the preexisting rule] has been existing law for nearly 2 years now . . . ."); *Epilepsy Found. of Ne. Ohio v. NLRB*, 268 F.3d 1095, 1097 (D.C. Cir. 2001) ("The Board [in retroactively applying *Weingarten* rights] erred . . . [because] [e]mployees and employers alike must be able to rely on clear statements of the law by the NLRB. Because, at the time of [the employee's] scheduled interview, employees in nonunion workplaces possessed no right to have a coworker present, the [employer's] decision to discharge [the employee] for refusing to meet alone with his supervisors was not unlawful under the NLRA."); *Retail, Wholesale & Dep't Store Union v. NLRB*, 466 F.2d 380, 390 (D.C. Cir. 1972) (retroactive application inappropriate because "[t]he standard to which the [c]ompany attempted to conform its conduct . . . was well established and long accepted by the Board" and "the Board had confronted the problem before, had established an explicit standard of conduct, and now [is] attempt[ing] to punish conformity to that standard under a new standard subsequently adopted"); *see also Williams Nat. Gas Co. v. FERC*, 3 F.3d 1544, 1554 (D.C. Cir. 1993) ("[I]t may be

necessary to deny retroactive effect to a rule announced in an agency adjudication in order to protect the settled expectations of those who had relied on the preexisting rule.").

In cases where the Board has applied a rule retroactively despite preexisting precedent, it has done so only in very limited circumstances. For example, it will do so when "the Board's precedent . . . has been inconsistent." *NBC Universal Media LLC*, 369 NLRB No. 134, slip op. at 9 (July 29, 2020). Or when the preexisting rule presented a recent conflict to longstanding, clear precedent. *Tesla, Inc.*, 371 NLRB No. 131, slip op. at 23 (Aug. 29, 2022) (applying rule retroactively because "the [preexisting precedent, in effect for only two years] was contrary to . . . *almost 75 years of Board and court precedent* applying [the former precedent] and unnecessarily introduced uncertainty into what was until that point a well-settled area of Board law.") (emphasis added). Or because retractive application "better advances the policies of the Act" and better "accomplish[es] . . . the purposes of the Act." *Valley Hosp. Med. Ctr., Inc.*, 371 NLRB No. 160, slip op. at 21.

In this case, none of those limited circumstances are present. To the contrary, as established above, Board precedent has been unwaveringly consistent for *75 years*: captive audience meetings are lawful. *See supra* Section III.A.2; *see also* Tr. 371:22-372:1; *cf. Tesla, Inc.*, 371 NLRB, slip op. at 23 (retroactively applying rule only to bring Board law in-line with 75 year precedent brought into question by case decided only two years prior). Likewise, should the ALJ or Board overrule existing Board precedent and deem captive audience meetings unlawful, *that ruling* that would be the one in conflict with longstanding and clear precedent. *See supra* Section III.A.2; *see also* Tr. 371:22-372:1.

In sum, Amazon relied on longstanding Board precedent and the Act itself in deciding to hold the small group meetings at issue in this matter. Punishing Amazon for conforming its

conduct to Board precedent that has been consistently applied for seventy-five years would work a manifest injustice against Amazon and serve as a testament to the Board's capriciousness and lack of deference for its own rules and precedent.

### E.  Amazon's Communications Are Lawful Under Existing Board Law.

An employer has a well-established right to express views, arguments, and opinions, so long as they do not contain unlawful threats of reprisal or force, promises of benefits, or solicitations of grievances.  *See* 29 U.S.C.A. § 158 (c);  *Gissel Packing Co.*, 395 U.S. at 617; *Amptech, Inc.*, 342 NLRB at 1137;  *Kinney Drugs, Inc.,*, 74 F.3d at 1427-28.  The Board's longstanding *Tri-Cast* doctrine further provides that employers may lawfully communicate with employees regarding the impact of unionization on employees' direct relationship with management.  274 NLRB 377 (1985);  *see also Holy Cross Health*, 370 NLRB No. 16, slip op. at 1 fn. 3 (Sept. 11, 2020) ("statements that union representation might limit direct access to management . . . are not threats; rather, they factually advise that representation will change employees' relationship with their employer.");  *Stern Produce Co., Inc.*, 368 NLRB No. 31, slip op. at 4 (July 31, 2019) ("the Board will find no threat, either explicit or implicit, in a statement that explains to employees that, when they select a union to represent them, the relationship that existed between the employees and the employer will not be as before") (internal quotation marks omitted).

All of the challenged statements Amazon made during the organizing campaign – whether in writing or made during the small group meetings – are lawful under Section 8(c) of the Act and the *Tri-Cast* doctrine.  Accordingly, the ALJ applied the correct facts and legal standard in his decision to dismiss the allegations contained in Paragraphs 7, 8, 15, 16, 17, 18, 18(A)(a), 19(a) and

20 of the Amended Complaint.[38]  *See* Decision at 2:16-20.  The General Counsel only excepts to the ALJ's finding as to Paragraphs 15, 16(a) and (b), and 20, and asks the Board to overturn decades of precedent under the *Tri-Cast* doctrine.  For the reasons outlined below, the Decision should be upheld and the General Counsel's arguments should be dismissed.

     1.       **The ALJ Correctly Dismissed The Allegations that Amazon Made Unlawful Promises of Benefits In Violation of Section 8(a)(1).  (General Counsel Exceptions 5, 9, 10, and 15)**

The ALJ correctly found that, during the November 10th and 11th small group meetings, Amazon did not promise Associates improved benefits if they voted against the union.  *See* Decision at 24:34-40.  The uncontradicted evidence establishes that Amazon has maintained its Career Choice Program since 2012 and announced several companywide changes to the program in September 2021 that were scheduled to take place in January 2022.  *See* Decision at 6:7-16. Further, none of these changes were alleged as unlawful in the Complaint and nothing in the record even suggests that these nationwide changes were related to the ALU's organizing campaign.  *See* Decision at 6:14-19.

As the ALJ properly noted, Board precedent is clear on this issue: it was not unlawful for Amazon to remind Associates of their preexisting benefits that had been previously and legally announced on September 9. 2021.  *See* Decision at 24: 32-34;  *see Koronis Parts, Inc.*, 324 NLRB 675, 697 (1997) ("[I]t is settled that, even during a pre-election period, an employer may announce benefit improvements which have become concretized as a result of an already initiated and ongoing process.");  *Nalco Chem. Co.*, 163 NLRB 68, 71 (1967) (implementing improved vacation policy company-wide undermined contention that the policy was improved "for the purpose of

---

[38] Amazon submits that the ALJ erred in finding merit to the allegations contained at Paragraphs 18(A)(b) and 19(b) of the Amended Complaint, as addressed in Amazon's Cross Exceptions.

influencing the [union] election"); *Phillips-Van Heusen Corp.*, 165 NLRB 1, 11 (1967) (wage and benefit increases did not violate Act where granted to employees at 10 plants); *see also Stanley Smith Sec.*, 270 NLRB 225 (1984) (declining to set aside election results where challenged benefit increase "result[ed] from a corporatewide decision and [was] implemented corporatewide"); *N. Telecom, Inc.*, 233 NLRB 1104, 1105 (1977) ("The Board has long held that, where an increase in benefits is part of an established company policy or pattern, a grant of those benefits or announcement of them prior to the election is not grounds for setting aside an election.").

During the November 10th and 11th small group meetings, Amazon simply reminded Associates of a previously and lawfully announced benefit. Moreover, the meeting presenters did not tell Associates that Amazon was able to improve the Career Choice program because of its direct employer-employee relationship, open door policy, or otherwise; they merely reminded Associates of the upcoming changes to the program. Nevertheless, even if such statements had been made, it is not unlawful for an employer to inform employees that an improvement was the result of its direct relationship with employees—this merely identifies the benefits of a direct employer-employee relationship. *See Westside Plumbing LLC*, Case 28-RC-263057, 2021 WL 2314860, at *1 fn. 1 (June 4, 2021) (not reported in Board volumes) (it is not unlawful for an employer to explain the advantages and disadvantages of unionization); *see also Tri-Cast, Inc.*, 274 NLRB at 378 (employer permitted to identify how unionization changes the employer employee relationship).

The General Counsel's Brief engages in a wholly improper attempt to shift focus away from the allegations made in the Amended Complaint to the September 2021 announcement itself. As the ALJ aptly notes, the General Counsel did not allege that the September 2021 announcement

was unlawful, and it is therefore inappropriate to infer that it was unlawful.[39]  *See* Decision at 24, fn. 14.  Amazon had no duty or burden to put on evidence with regard to this September announcement because it was never challenged as unlawful in the Amended Complaint. Regardless, the ALJ correctly found that the September company-wide announcement was not made at a time or in a manner that would dissuade Associates from supporting the Union *and* that Amazon had a legitimate business reason to enact the change.[40]  *See* Decision at 24:30-34, fn. 14. Thereafter, the ALJ properly differentiated the cases cited by the General Counsel in dismissing the allegations.  *See* Decision at 23:41-24-39.  Accordingly, the ALJ's correctly dismissed Paragraphs 15(a) and 16(a) of the Amended Complaint and the General Counsel's Exceptions 5, 9, 10, and 15 should be overruled.

> **2.** **The ALJ Correctly Dismissed The Allegations that Amazon Solicited Grievances and Promised to Remedy Them In Violation of Section 8(a)(1).  (General Counsel Exceptions 11, 12, 13, 14, and 15)**

The ALJ properly concluded that Amazon did not unlawfully solicit grievances or promise to remedy them by reminding Associates of Amazon's existing mechanisms to obtain employee feedback during the November 10th and 11th small group meetings.  *See* Decision at 25:8-10.

---

[39] The General Counsel's claim that Amazon's evidence was insufficient to establish the September 2021 announcement fails.  First, the General Counsel does not except to the ALJ's finding of fact as to this point, which renders the claim moot.  Under Section 102.46(a)(1)(ii) of the Board's Rules and Regulations, any exception to a ruling, finding, conclusion, or recommendation not specifically urged is deemed waived.  Moreover, Amazon presented testimony and documentary evidence to establish the manner and timing of the announcement upon which the ALJ properly relied.  *See* Decision at 6:5-19;  Tr. 375-377, 396-399;  R. Ex. 2.  In contrast the General Counsel did not present a shred of evidence to call the September 2021 announcement or its disbursement into question.

[40] Because the General Counsel did not challenge the legitimacy of the September 2021 announcement either in the Consolidated Charges, Amended Complaint or during the trial, Amazon has no legal duty to prove a legitimate business reason for the implementation of the benefit change.  Regardless, the September 2021 announcement of the *nationwide benefit* change does not reference the Union whatsoever and instead explains that the change was based on post-pandemic considerations.  *See* R. Ex. 2.

Although the General Counsel excepts to the ALJ's conclusions of law, the General Counsel did not file any exceptions to the factual findings underpinning them.[41] Therefore, the General Counsel's Exceptions are limited to the legal ruling the ALJ made based on those facts. *See* General Counsel Brief at 45-48.

It is a well-settled principle that, "in the absence of a previous practice of doing so, the solicitation of grievances by an employer during an organizational campaign violates the Act when the employer promises to remedy those grievances." *Amptech, Inc.*, 342 NLRB at 1137 (2004). However, the actual solicitation of a grievance is not unlawful, rather it is the promise to remedy such grievance that violates the Act. *See id.* Any inference that the mere solicitation of grievances creates an implied promise to remedy those grievances evaporates when an employer has a practice of soliciting grievances in place prior to an organizational campaign. *See id.*; *see also Johnson Tech., Inc.*, 345 NLRB 762, 764 (2005), *overruled on other grounds by Purple Communications, Inc.*, 361 NLRB 1050 (2014). Indeed, '[i]t is well established that an employer with a past practice of soliciting employee grievances . . . may continue such a policy during a union's organizational campaign." *In Re Wal-Mart Stores, Inc.*, 340 NLRB 637, 640 (2003), *enfd. as modified* 400 F.3d 1093 (8th Cir. 2005), *overruled on other grounds by, Wynn Las Vegas, LLC*, 369 NLRB No. 91 (May 29, 2020).

Further, it is not unlawful for an employer to encourage its employees to utilize existing avenues of communication to express concerns, provide suggestions, or solicit grievances. *See, e.g.*, *In Re Wal-Mart Stores, Inc.*, 340 NLRB at 640 (encouraging employees to utilize pre-existing avenues to report grievances is not unlawful); *Longview Fibre Paper & Packaging, Inc.*, 356

---

[41] Under Section 102.46(a)(1)(ii) of the Board's Rules and Regulations, any exception to a ruling, finding, conclusion, or recommendation not specifically urged is deemed waived.

NLRB 796, 805 (2011) (implying same); *TNT Logistics N. Am., Inc.*, 345 NLRB 290, 292 (2005) (implying same); *cf. Johnson Tech., Inc.*, 345 NLRB at 764 (dispositive effect of past practices applies regardless of whether the employer or employee initiates the challenged communication).

Here, the ALJ cited record evidence and made appropriate factual findings, to which the General Counsel does not except, and applied the correct legal standard to conclude that neither Williams, Edison, and Rebell solicited specific grievances nor did they offer to resolve grievances during their respective small group meetings. *See* Decision at 25:25-28; 27:1-2.

Regarding Williams, the ALJ determined that he did not actually solicit grievances during the meeting and therefore was in no position to offer solutions. *See* Decision at 25:26-28. To the contrary, Williams twice told Associates that he could not promise them anything, directed them to management channels outlined in Amazon's existing Open Door Policy, and gave no indication that Amazon would do less for a unionized population than a non-unionized population. *See* Decision at 25:25-31, 26:14-3. The ALJ similarly found that Rebell and Edison did not promise, nor imply a promise, to remedy complaints in a new or different way, but instead advised Associates to visit the National Labor Relations Board's website. *See* Decision at 27:1-6. Further, the ALJ accurately found that Amazon had in place numerous avenues for seeking out employee concerns long before the advent of any union activity, as evidenced in Amazon's Open Door Policy in the Owner's Manual, and that Williams, Rebell, and Edison lawfully directed Associates to those previously established channels. *See* Decision at 25:27-30; 25:35-26:12; 26:43-27:2. These factual findings were not challenged by the General Counsel in its Exceptions and the Board must therefore accept them and overrule the General Counsel's Exceptions as to the legal conclusions which necessarily depend on the underlying factual findings.

Given these unchallenged factual findings, the ALJ properly distinguished cases that the General Counsel relied upon in support of its position. *See* Decision at 25, fn. 15, 16, 17; *ManorCare Health Services-Easton*, 356 NLRB 202, 220 (2010) (employer specifically told employees that they "had heard there was a lot of complaints and concern. And that they're here to try to fix it without a second party involved."); *Aldworth Company*, *Inc.*, 338 NLRB 137, 179 (2002) (employer made notes of employee grievances during a meeting and responded by issuing a letter with specific remedies); *Edward A. Utlaut Memorial Hospital,* 249 NLRB 1153, 1156 (1980) *enfd. in part sub nom. Edward A. Utlaut Foundation, Inc. v. NLRB,* 657 F.2d 272 (7th Cir.) (1981) (employer changed its method of solicitating grievances from a generally neglected suggestion box to an announcement that complaints about sick leave policy could be changed and "taken care of").

Accordingly, the ALJ correctly dismissed Paragraphs 15(b) and 16(b) of the Amended Complaint and the General Counsel's Exceptions 11 through 15 should be overruled.

### 3.    The ALJ Correctly Dismissed The Allegations That Amazon Threatened Employees With Loss of Benefits In Violation of Section 8(a)(1).  (General Counsel Exceptions 1 and 15)

The General Counsel excepts to the ALJ's dismissal of paragraphs 7(a), 8(a), and 20 of the Amended Complaint. These paragraphs allege that Amazon violated the Act by informing Associates of the effect that unionization would have on the direct employer-employee relationship. The General Counsel admits that the alleged statements are lawful under current Board law, and bases Exceptions 1 and 15 solely on its request that the Board overturn nearly 40 years of precedent following *Tri-Cast Inc.*, 274 NLRB 377 (1985). *See* Decision at 2:1-14; General Counsel Brief at 21. The ALJ refused to do so and the Board should do the same. *See* Decision at 2:13-14.

The General Counsel mischaracterizes Amazon's statements, and then draws untenable inferences that belie the actual context, meaning, and impact of these statements. As evident from the recording and documents themselves, absent any gloss or characterization attributed by the parties, the communications at issue fell far short of the threats, coercion, and impermissible promises required to conclude that the statements violated the Act.

### a. It is Lawful for Amazon to Explain How a Union Could Impact Their Relationship with Management.

An employer has the right to make statements concerning how unionization changes the employer-employee relationship from a direct to an indirect relationship. *See* Section 8(c) of the Act; *Tri-Cast, Inc.*, 274 NLRB at 378. Specifically, the *Tri-Cast* Board found the following statement lawful:

> We have been able to work on an informal and person-to-person basis. If the union comes in this will change. We will have to run things by the book, with a stranger, and will not be able to handle personal requests as we have been doing.

*Id*. Indeed, "it is a 'fact of industrial life' that, when a union represents employees they will deal with the employer indirectly, through a shop steward." *NLRB v. Sacramento Clinical Lab., Inc.*, 623 F.2d 110, 112 (9th Cir. 1980) (quoting *Bostich Division of Textron*, 176 NLRB 377, 379 (1969)).

### b. Amazon's Written Communications Were Lawful and the ALJ Properly Dismissed the Allegations.

Amazon's written communications concerning this topic are, in all material respects, identical to employer statements that the Board has previously found lawful under the *Tri-Cast* doctrine. *See Hendrickson USA, LLC*, 366 NLRB No. 7, slip op. at 1 (2018), *enf. denied on other grounds* 932 F.3d 465, 476 (6th Cir. 2019); *Pepsi-Cola Co.*, 307 NLRB 1378, 1378, 1383-84

(1992); *The Kroger Co.*, 284 NLRB 663, 673 (NLRB 1987), *enf. granted* 859 F.2d 927 (11th Cir. 1988).

The General Counsel alleges that Amazon's written materials were unlawful even though they truthfully informed Associates that authorization cards are legally binding and that, by signing a card, the Associates "authorize the union to act as [their] exclusive representative" and it "means you give up the right to speak for yourself."  GC Ex. 10; *see also* GC Ex. 11; GC Ex. 16.  The chart set forth below illustrates how longstanding legal principles deem this comment lawful:

| Amazon's Communication | Hendrickson USA | Pepsi-Cola | The Kroger Co. |
|---|---|---|---|
| by signing an authorization card, Associates "authorize the union to act as [their] exclusive representative" and "give up the right to speak for [themselves]." GC Exs. 10, 11 & 16 | by signing an authorization card, employees "no longer have a voice," have "signed [their voice] away to some third-party," and "forfeit [their] right to represent [themselves]." 366 NLRB No. 7, slip op. at 1. | authorization cards ask employees "to surrender [their] right to speak for [themselves]" 307 NLRB at 1383. | "by signing an authorization card [employees] were signing away their right and ability to deal directly with [the employer]." 284 NLRB at 673. |

Accordingly, because the Board has previously found nearly identical language to be lawful, these allegations lack merit.[42]

---

[42] For the same reasons as set forth above, if the Board chooses to overturn preexisting law regarding an employer's right to make statements about the effect that unionization has on the employer-employee relationship, it should not do so retroactively.  *See supra*, Section III.D.5.

### c.  Amazon's Statements During the April 19, 2022 Small Group Meeting Were Lawful and the ALJ Properly Dismissed the Allegations. [43]

On April 19, 2022, Amazon held a small group meeting at LDJ5 during which Taylor lawfully discussed his concerns regarding the effects unionization would have on the direct employer-employee relationship.  During his speech, Taylor lawfully expressed his opinions and "worries" about having a third party inserted into the employee-employer relationship.  At no point did he ever say or suggest that managers would be unable to assist Associates with workplace issues, but instead simply acknowledged the legal reality that most changes to the terms and conditions of employment would require bargaining with the union.  *See NLRB v. Sacramento Clinical Lab., Inc.*, 623 F.2d at 112.

Taylor's comments fall directly in line with the type of lawful statements approved in *Tri-Cast* and its progeny.  Taylor merely expressed his concern that the direct employer-employee relationship that Associates enjoyed with Amazon could change if the Associates voted to be represented by the ALU.  Taylor's comments were entirely lawful and consistent with decades of existing Board's law.  Accordingly, these allegations lack merit.[44]

---

[43] The General Counsel excepted to the ALJ failure to make express factual findings regarding the April 19, 2022 small group meeting held by Taylor.  *See* General Counsel Exception 18.  However, as the ALJ properly noted, the General Counsel's theory regarding that meeting is based entirely on the premise that the Board should overrule *Tri-Cast, Inc.*, and thereby find Taylor's statements, which are lawful under current precedent, unlawful.  *See* Decision at 2:1-6.  As argued herein, the Board should not overrule *Tri-Cast, Inc.  See infra¸* Section III.F.  Even if the Board does decide to depart from *Tri-Cast, Inc.*, the holding should apply prospectively only.  *See supra*, Section III.D.5.  Accordingly, the ALJ's factual findings regarding Taylor's April 19, 2022 statements are irrelevant and the Decision should not be disturbed.

[44] For the same reasons as set forth above, if the Board chooses to overturn preexisting law regarding an employer's right to make statements about the effect that unionization has on the employer-employee relationship, it should not do so retroactively.  *See supra*, Section III.D.5.

**F.      The *Tri-Cast, Inc.* Doctrine Should Not Be Disturbed. (General Counsel Exceptions 1 and 15)**

The Board should not discard nearly four-decades of precedent by overturning *Tri-Cast* and its progeny.  274 NLRB 377 (1985).  It is well-established by both the Board and the Courts that employers may lawfully communicate with employees regarding the impact of unionization on employees' direct relationship with management.  *See, e.g.*, *Westside Plumbing LLC,*  Case 28-RC-263057, 2021 WL 2314860, at *1 fn. 1 (June 4, 2021) (not reported in Board volumes) (recognizing employer's ability under *Tri-Cast* to explain the advantages and disadvantages of unionization); *Greenbrier Rail Servs.*, 364 NLRB No. 30, slip op. at 1 fn. 1 (June 23, 2016) (same); *see also Autoworkers (Kawasaki Motors) v. NLRB.*, 834 F.2d 816, 821 (9th Cir. 1987); *Hendrickson USA*, 932 F.3d at 477.

In *Tri-Cast,* the Board found that the following statements constituted a lawful explanation of the employer's opinion of how its relationship with employees would change if they unionized: "[w]e have been able to work on an informal and person-to-person basis.  If the union comes in this will change," and "[w]e will have to run things by the book, with a stranger, and will not be able to handle personal requests as we have been doing."  *Tri-Cast*, 274 NLRB at 378 (discussing *Midland National Life Insurance*, 263 NLRB 127, 133 (1982)).  In so finding, the Board expressly rejected the notion that the statements were threats to withdrawal rights preserved by Section 9(a) and separately noted that, even if the statements were misrepresentations, the Board no longer considers the truth or falsity of a parties' campaign statements.  *See id.*

The General Counsel argues that *Tri-Cast* should be overturned because it wrongly permits an employer to misrepresent the edict of Section 9(a) and because its precedent has been interpreted too broadly in subsequent cases.  Both of these arguments fail to pass muster.

First, the Section 9(a) proviso states that a selected union "shall be the exclusive bargaining representative of the unit. " 29 U.S.C. § 159(a). It also provides an extremely limited opportunity for employees to present grievances directly to management—only if the resolution sought is consistent with the negotiated collective bargaining agreement, and the union has the opportunity to be present for the grievance meeting. *See id.* Despite the General Counsel's grandstanding, it is clear that, once the union becomes the employees' bargaining representative, the employment relationship *changes* by adding the union to the decision-making process regarding the terms and conditions of employment. Informing employees of this fact is not a threat. *See Tri-Cast,* 274 NLRB at 377. Examining the employer's statements in *Tri-Cast* in conjunction with the Section 9(a) proviso establishes that *Tri-Cast* was decided correctly and should not be disturbed 40-plus years later. The statements at issue are merely a recitation of the realities of unionization: that the informal and direct employee to employer relationship *will change*, and the employer will have to run things by "the book" (*i.e.*, the collective bargaining agreement), and will "not be able to handle personal requests as we have been doing." *Id*. All of these statements are accurate under Section 9(a).[45]

Further, although the General Counsel argues that the Board has applied *Tri-Cast* so broadly as to find nearly any misrepresentation of the Section 9(a) proviso as lawful, the General Counsel fails to cite any cases to support this argument. *See* General Counsel Brief at 24. However, in a footnote, the General Counsel does cite two cases that purportedly support its

---

[45] The General Counsel also fails to reflect on the many cases during earlier eras that treat statements regarding changes to the direct employee-employer relationship as no more than lawful predictions that unionized employees would have to work through their union to present grievances to management. *See, e.g., Gertz*, 197 NLRB 718, 723 (1972); *Bostitch Div. of Textron, Inc.*, 176 NLRB 377, 379 (1969); *National Bookbinding Co.*, 171 NLRB 219, 220 (1968) (overruling election objection).

argument that, since *Tri-Cast*, the Board has failed to distinguish between mere predictions of change in the employer/employee relationship and express statements that employees will not have the rights afforded to them under Section 9(a). *See* General Counsel Brief at 24-25. Yet, neither of these cases advance the General Counsel's argument. In *Tesla,* the statement at issue was "you don't really have a voice. The [union] is a . . . two-class system where [the union] is the only one that has a voice and not the workers." 370 NLRB No. 101, slip op. at 7 (March 25, 2021). As properly analyzed by the Board, this statement is nothing more than a fair representation of Section 9(a), which states that the union is the ***exclusive*** representative of unit employees. Simply explaining that the union speaks on behalf of all employees as their exclusive representative does not misrepresent the Section 9(a) proviso. Similarly, the statement in *Hendrickson USA,* that "you'll be giving up the right to speak for and represent yourself" again lawfully and accurately reminds employees that they are will be represented by someone other than themselves. *Hendrickson USA,* 932 F.3d at 477.

Further, the Board has also already addressed and dispensed with the General Counsel's arguments that certain alleged statements were threatening. *See Holy Cross Health*, 370 NLRB No. 16, slip op. at 1 fn. 3 (Sept. 11, 2020) (citing *Tri-Cast* for the principle that an employer's "statements that union representation might limit direct access to management . . . are not threats; rather, they factually advise that representation will change employees' relationship with their employer."); *Stern Produce Co., Inc.*, 368 NLRB No. 31, slip op. at 4 (July 31, 2019) (citing *Tri-Cast* for the principle that "the Board will find no threat, either explicit or implicit, in a statement that explains to employees that, when they select a union to represent them, the relationship that existed between the employees and the employer will not be as before."). *Tri-Cast* should not be disturbed and statements reminding employees that the employee-employer relationship will

change in an unionized environment, and that the union will have the express authority to speak on behalf of the bargaining unit should remain lawful.

Regardless of the General Counsel's broad sweeping proposal, the facts of this case do not support overturning *Tri-Cast*. As discussed above, Amazon merely explained to workers how unionization could impact the direct relationship between management and Associates, including their lines of communication with management. *See supra* Section III.E.3. Amazon told Associates that they would "authorize the union to act as [their] exclusive representative" and "give up the right to speak for [themselves]." GC Exs. 10, 11, 16. This statement is not a misrepresentation of Section 9(a), and wields no threat. Moreover, contrary to the General Counsel's false narrative, Amazon did not run an unlawful and coercive anti-union campaign. Indeed, the ALJ properly dismissed the vast majority of these allegations *and* the General Counsel did not except to the ALJ's findings underpinning the allegations, implicitly conceding that there was no legal basis to do so. Accordingly, this case is not the appropriate vehicle to overturn *Tri-Cast*, and the General Counsel's related Exceptions should be dismissed.

### G. Special Remedies are Not Warranted. (General Counsel Exceptions 16 and 17)

The General Counsel excepts to the ALJ's denial of a notice reading and also requests that the Board order Amazon to post the requested notice on its VOA Board. *See* General Counsel Brief at 48. However, as the General Counsel notes, special remedies are appropriate when the labor practice violations are "so numerous, pervasive, and outrageous that such remedies are necessary to dissipate fully the coercive effects of the unfair labor practices found." *Federated Logistics & Operations*, 340 NLRB 255, 256 (2003). As recently articulated in *River City Asphalt*, Case 18-CA-280068, 2022 WL 2870797 (July 21, 2022) (not reported in Board volumes), special remedies are appropriate only "where a normal remedy is inadequate."

As the ALJ correctly found, this is not such a case. As an initial matter, the ALJ correctly found that Amazon engaged in almost none of the alleged unfair labor practices, and thus there is no "pervasive" unlawful conduct. Furthermore, even the misconduct alleged does not rise to the level of "outrageous" as the ALJ correctly notes that the three minor violations he did find were "not entirely obvious or clear cut." Decision at 33:21-22. Finally, while the General Counsel urges the Board to overturn the ALJ's findings with respect to most of the alleged unfair labor practices, its request for special remedies is based almost entirely upon its request for the Board to overturn the ALJ's findings by changing bedrock principles of settled law concerning captive audience meetings, discrimination standards, and misstatements made during union campaigns. Even if the Board adopts the General Counsel's viewpoint and choses to overturn longstanding Board precedent, Amazon's conduct at the time was lawful under decades of settled precedent, and therefore cannot be considered a "serious" or "outrageous" labor violation that would warrant imposition of the special remedies requested here. Accordingly, the ALJ correctly denied the General Counsel's request for special remedies and Exception 17 should be overruled.

## III.   CONCLUSION

For the reasons set forth above, Amazon respectfully requests that the Board reject the General Counsel's attempts to overturn longstanding Board precedent and deny the General Counsel's Exceptions, uphold the ALJ's findings with respect to Paragraphs 7(a), 8(a), 11(b), 13, 14, 15(a)-(b), 16(a)-(b), and 20 of the Amended Complaint, and dismiss the Amended Complaint in its entirety.

Respectfully submitted this 5th day of May, 2023.

**HUNTON ANDREWS KURTH LLP**

*Kurt A. Powell*

Juan C. Enjamio
333 SE 2nd Ave., Suite 2400
Miami, FL 33131
(T): (305) 810-2511
(E): jenjamio@huntonAK.com

Kurt A. Powell
600 Peachtree Street, N.E., Suite 4100
Atlanta, GA 30308
(P): (404) 888-4015
(E): kpowell@huntonAK.com

**ATTORNEYS FOR AMAZON.COM
SERVICES LLC**

## **CERTIFICATE OF SERVICE**

I certify that on this 5th day of May, 2023, I caused the foregoing to be electronically filed with the Office of the Executive Secretary of the National Labor Relations Board at http://www.nlrb.gov and a copy of same to be served via e-mail on the following parties of record:

| | |
|---|---|
| Retu Singla | Seth Goldstein |
| rsingla@workingpeopleslaw.com | Sgold352002@icloud.com |
| Jeanne Mirer | 217 Hadleigh Avenue |
| JMirer@julienmirer.com | Cherry Hill, NJ 08003 |
| Ria Julien | |
| RJulien@julienmirer.com | |
| Julien, Mirer & Singla, PLLC | |
| 1 Whitehall Street, 16th Floor | |
| New York, NY 10004 | |
| | |
| Emily Cabrera | Lynda Tooker |
| Emily.Cabrera@nlrb.gov | Lynda.Tooker@nlrb.gov |
| National Labor Relations Board | National Labor Relations Board, Region 29 |
| Region 29 | 2 MetroTech Center, 5th Floor |
| 2 MetroTech Center, 5th Floor | Brooklyn, NY 11201 |
| Brooklyn, NY 11201 | |

*Kurt A. Powell*
Kurt A. Powell

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 29

AMAZON.COM SERVICES LLC

        Respondent

   and

DANA JOANN MILLER, an individual        Case No. 29-CA-280153

    AND

AMAZON LABOR UNION        Case Nos. 29-CA-286577
                            29-CA-287614
                            29-CA-290880
                            29-CA-292392
                            29-CA-295663

---

### COUNSEL FOR THE GENERAL COUNSEL'S
### REPLY TO RESPONDENT'S ANSWERING BRIEF TO EXCEPTIONS

---

Emily A. Cabrera, Esq.
Jaime Rucker, Esq.
Counsel for the General Counsel
National Labor Relations Board
Region 29
Two MetroTech Center, 5th Floor
Brooklyn, New York 11201-4201

# Table of Contents

I.    **PRELIMINARY STATEMENT** ........................................................................ 1

II.    **ARGUMENT** ....................................................................................................... 1

   A.   **The Totality of the Circumstance Surrounding Respondent's Threat to Dana Miller Support a Finding of a Violation and the Cases Cited by Respondent Do Not Support Its Defense.**................................................................................................................... 1

      *a.*   *Respondent Failed To Overcome The CGC's Showing That The Totality Of The Circumstances Surrounding The Threat Establish An 8(A)(1) Violation.*............................... 1

      b.   *The Cases Cited by Respondent Support a Violation.*...................................... 4

   B.   **Respondent Failed to Prove that it had a Legitimate, Non-Section 7 Related Reason for the Improvements to the Career Choice Program and the November Announcements of the Improvements.** ................................................................................................. 6

   C.   **Conclusion** ................................................................................................................. 8

## Cases

*AT&T Mobility,* 370 NLRB No.121 (2021).............................................................................. 1, 9

*Babcock & Wilcox Co.,* 77 NLRB 577 (1948)......................................................................... 1, 9

*Hampton Inn NY—JFK Airport,* 348 NLRB 16 (2006)............................................................. 6

*Heartshare Human Servs. of N.Y.,* 339 N.L.R.B. 842 (2003) ................................................. 3

*Kanawha Stone Co.,* 334 NLRB 235 (2001) ........................................................................ 6, 7

*Koronis Parts, Inc.,* 324 NLRB 675 (1997)............................................................................. 7

*Lush Cosmetics, LLC,* 372 NLRB No. 54 (2023) ................................................................. 2, 4

*Mariposa Press,* 273 NLRB 528 (1984) .................................................................................. 6

*Morse Operations, Inc. ,* 353 N.L.R.B. 436 (2008).................................................................. 4

*Nalco Chemical,* 163 NLRB 68 (1967) ................................................................................... 7

*Network Cabling Dynamics,* 351 NLRB 1423 (2007).............................................................. 6

*Northern Telecom, Inc.,* 233 NLRB 1104 (1977).................................................................... 7

*Phillips-Van Heusen Corp.,* 165 NLRB 1 (1967)..................................................................... 7

*Stanley Smith Security,* 270 NLRB 225 (1984) ...................................................................... 7

*Suburban Elec. Engineers/Contractors, Inc.,* 351 N.L.R.B. 1 (2007)...................................... 5

*The Guard Publishing d/b/a The Register Guard,* 351 NLRB 1110 (2007) ........................... 1, 9

*Tri-Cast Inc.,* 274 NLRB 377 (1985)..................................................................................... 1, 9

*Wynn Las Vegas, LLC,* 369 NLRB No. 91 (2020) ................................................................... 5

## Federal Cases

*NLRB v. Exchange Parts,* 375 U.S. 405 (1964)........................................................................ 8

# I.  PRELIMINARY STATEMENT

Counsel for the General Counsel ("CGC") takes this opportunity to respond to certain arguments and cases cited by Respondent in their "Response to General Counsel's Brief in Support of Exceptions" ("Resp. Brf.")[1] and to demonstrate that Respondent's objections to CGC's Exceptions are without merit.  Specifically, CGC respectfully asserts that Respondent has failed to overcome CGC's showing that a totality of the circumstances surrounding the threat made to Dana Miller supports the finding of a violation, and that Respondent has failed to prove that it had a legitimate business justification for the announcement of the changes made to the Career Choice Program.[2]

# II.  ARGUMENT[3]

**A.  The Totality of the Circumstance Surrounding Respondent's Threat to Dana Miller Support a Finding of a Violation and the Cases Cited by Respondent Do Not Support Its Defense.**

> *a.  Respondent Failed To Overcome The CGC's Showing That The Totality Of The Circumstances Surrounding The Threat Establish An 8(A)(1) Violation.*

Respondent objects to CGC's exception to Tanelli's threat to Dana Miller and argues that Tanelli "repeatedly" told Miller that she was not "in trouble" or being "reprimanded" for her VOA post. (Res. Brf. Pg. 16)   Respondent's argument is without merit and is not supported by Board

---

[1] Respondent baselessly claimed that the CGC failed to support Exceptions #6 and 7. (See Resp. Brf. Pg. 15, fn. 18) that is not true. CGC set forth its arguments regarding these exceptions at page 2, footnote 4 of its Brief in Support of Exceptions, and at page 5, footnote 8 of the Brief.

[2] The CGC will not reply to Respondent's arguments regarding CGC's request to overturn *Tri-Cast Inc.,* 274 NLRB 377 (1985), *Babcock & Wilcox Co.,* 77 NLRB 577 (1948), *AT&T Mobility,* 370 NLRB No.121 (2021), and *The Guard Publishing d/b/a The Register Guard,* 351 NLRB 1110 (2007). Rather, the CGC rests on the arguments set forth in its Brief in Support of Exceptions dated March 31, 2023. Similarly, this Reply will not address Respondent's arguments regarding the Notice Reading and VOA Posting remedies. CGC stands on the arguments already set forth in its March 31st Brief.

[3] A full recitation of the facts has already been set forth in CGC's Brief in Support of Exceptions.

law.  Even the case relied upon by Respondent makes plain that Tanelli's self-serving remark that Miller was not being reprimanded does not save the otherwise coercive comment from being unlawful. In *Lush Cosmetics, LLC*, 372 NLRB No. 54, 3 (N.L.R.B. February 10, 2023), the Board found a statement similar to that by Tanelli to be an unlawful threat, despite the manager's self-serving qualification.  In a letter from a high-level manager to an employee who had made protected, concerted posts on an employer-sponsored electronic messaging platform the manager warned that if the employee continued "… such inappropriate conduct, the Company may consider your actions to amount to misconduct." Although the employer added in that the letter did not constitute discipline, the Board ruled that the manager's addendum did not change the finding of a violation because the manager's initial statement clearly warned that future discipline could result if the employee continued engaging in protected conduct.[4] As in *Lush Cosmetics*, the fact that Tanelli qualified his threat by claiming that Miller was not being reprimanded does not save the comment from being coercive because similar to the employer in *Lush*, Tanelli warned Miller that continued "inappropriate conduct" (re-posting) could result in future discipline (additional follow-up). It is also implausible to believe that if Miller continued to re-post the Juneteenth post, Respondent would just keep "educating" her as opposed to disciplining her.

Secondly, Respondent attempts to minimize the coercive nature of the Tanelli's statement by misrepresenting the record evidence. Respondent, without any support, claimed that Tanelli was not a high-level manager. (Res. Brf. Pg. 17) However, the record evidence established that Tanelli was a Human Resource Business Partner - privy to all high-level communications amongst Respondent's managerial staff, including the General Manager Felipe Santos. (See e.g., GC-49(a): HR Manager Anna Leonardi considered only Tanelli or Senior HR Business Partner Tyler

---

[4] *Lush Cosmetics, LLC,* 372 NLRB No. 54, at 12-13.

Grabowski to conduct the conversation with Miller; and GC-28, 59: Tanelli reported his conversation with Miller directly to Amazon's highest-level managers at the facility, including GM Felipe Santos and AGM Marc Zachary.) Moreover, Tanelli was granted access to GM Santos' office to conduct his meeting with Miller. (Tr. 137) Thus, the record evidence shows that Tanelli was a high-level HR employee with access to the highest-level managers at the facility. Respondent's unsupported assertion that Tanelli was not a high-level manager flies in the face of overwhelming evidence to the contrary and must be rejected.

Next, Respondent claims the fact that the meeting took place on Miller's work time somehow made the meeting less coercive. (Res. Brf. Pg. 17) Such a claim is farcical since the seriousness of the meeting was made plain to Miller by the fact that Respondent was willing to have Miller miss work and pay her for the time that she met with Tanelli -alone - in the General Manager's office. Next, Respondent incredibly claims that since the meeting took place in a private office as opposed to the work floor somehow the meeting was less coercive. Such a claim is contrary Board law since the Board commonly finds solo meetings between managers and employees that take place in a manager's private office to be coercive. See e.g. *Heartshare Human Servs. of N.Y.*, 339 N.L.R.B. 842, 845 (N.L.R.B. July 29, 2003) (Interrogation found to be coercive and in violation of 8(a)(1) where questioning occurred in highest-ranking official's office.)

Finally, Respondent claims that the CGC has somehow injected events that occurred "outside the meeting" to establish a violation. (Resp. Brf. Pg. 18) This is simply not true. The ALJ found that by removing Miller's post from the VOA board, Respondent violated Section 8(a)(1) of the Act. (ALJD pg. 22) Miller was informed of Respondent's removal of her post on July 12th during the meeting with Tanelli. (GC-52; Tr. 138) Thus, during this same meeting with Miller in which Tanelli threatened her with future discipline (additional "follow-up"), Respondent engaged

in another 8(a)(1) violation, the disparate enforcement of Respondent's solicitation policy. Thus, the case cited by Respondent, *Morse Operations, Inc.*, 353 N.L.R.B. 436, 437 (N.L.R.B. October 30, 2008) and its findings that statements made in the context of other unlawful conduct do violate the Act, is applicable herein. Overall, Respondent has not provided any evidence or argument to overcome the CGC's showing that the totality of circumstances supports the conclusion that Tanelli threatened Miller on July 12th and CGC's exception to the ALJ's dismissal of this allegation should be sustained.

> b. *The Cases Cited by Respondent Support a Violation.*

In *Lush Cosmetics, LLC,* 372 NLRB No. 54, 2-3 (N.L.R.B. February 10, 2023), the Board found that the employer's ambiguous comment, "In the future, we ask you to refrain from making unsubstantiated allegations . . . on the hive. If you elect to continue such inappropriate conduct, the Company may consider your actions to amount to misconduct," was unlawful because the comment could "easily be understood as a warning against communicating with fellow employees about terms and conditions of employment on the Hive." The Board noted that even "milder" comments than the employer's therein such as "be careful," "watch out," and "watch your back," have been found to constitute unlawful threats. *Id*. Similarly, Tanelli's comment to Miller that a re-posting of her Juneteenth post could result in "additional follow-up" could easily be understood as a warning against any continued efforts to post about pay for the Juneteenth holiday. The threat of "additional follow up" is on par with the comments "be careful," "watch out," and "watch your back" which the Board has found to violate the Act. Accordingly, a violation should be found.

Lastly, Respondent cites two cases in support of its claim that Tanelli's comment suggested nothing more than "another educational meeting." However, both cases are distinguishable and actually support the conclusion that a violation be found. First, Respondent cites *Wynn Las Vegas,*

*LLC,* 369 NLRB No. 91, 7 (N.L.R.B. May 29, 2020), where the Board found lawful a comment that the employer wished to put the employee "on notice" that she had violated the solicitation policy. *Wynn* is clearly distinguishable from the facts of the instant case. In *Wynn*, the employer notified the employees that she *had* - in the past tense – committed an infraction of a rule. The employer's statement was devoid of any reference to possible future discipline and was devoid of other violations of 8(a)(1). In the instant case, Tanelli's instruction to Miller that she violated the solicitation policy was an 8(1) violation. After committing this 8(a)(1) violation, Tanelli then warned Miller that any additional posting of the Juneteenth post would lead to "additional follow-up"- a clear reference to future disciplinary action. Thus, the instant case is factually distinct from *Wynn* and constitutes a clear threat of future disciplinary action.

The facts of *Suburban Elec. Engineers/Contractors, Inc.*, 351 N.L.R.B. 1, 3 (N.L.R.B. September 20, 2007), are also distinguishable. The alleged threat therein was made while the employer and employees were walking in the parking lot and not in the context of a one-on-one meeting. In fact, after making the comment ("Dave did you take care of the union problem") the employer claimed that he thought he was talking to someone else and proceeded to walk away. In that context, the Board found the comment too ambiguous to find a violation particularly where the comment did not occur in the context of other ULPs. In Miller's case, the allegedly ambiguous comment was directed at her, in a one-on-one meeting with a high-level manager, in the GM's office, in the context of other ULPs, with one ULP occurring at the meeting itself. Both of these cases are distinguishable and actually support the finding of a violation since the facts of those cases involve much weaker and more ambiguous commentary than Tanelli's threat and do not involve contemporaneous ULPs.

**B. Respondent Failed to Prove that it had a Legitimate, Non-Section 7 Related Reason for the Improvements to the Career Choice Program and the November Announcements of the Improvements.**

Respondent's argument that its November 2021 announcements of changes to its Career Choice Program (CCP) were lawful simply adopts and repeats the basic error made by the ALJ, to wit, the erroneous claim that Respondent's September announcement of those changes to the CCP was lawful because the General Counsel did not allege that September announcement violated the Act. The General Counsel's failure to bring such an allegation, however, is irrelevant to the proper legal analysis and improperly shifts the burden of proof. Respondent was required to prove that it had a legitimate business-related purpose for the improvement to the CCP and it failed to do so.

The proper test for whether "an employer has violated Section 8(a)(1) by making a promise of benefits in response to union organizational activity is analyzed under *NLRB v. Exchange Parts*, 375 U.S. 405 (1964), regardless of whether the union has filed a petition for an election." *Network Cabling Dynamics*, 351 NLRB 1423, 1424 (2007) (citing *Hampton Inn NY—JFK Airport*, 348 NLRB 16, 17 (2006)). "Although 8(a)(1) allegations are typically analyzed under an objective standard, and motive is irrelevant…the 8(a)(1) analysis under *Exchange Parts* is motive-based." *Network Cabling*, 351 NLRB at 1424 (internal citation omitted). Where an employer announces or grants a benefit during an organizing drive, the Board infers an unlawful motive unless the employer establishes it had a legitimate business reason for the announcement or grant. *Kanawha Stone Co.*, 334 NLRB 235, n.2 (2001) ("Absent a legitimate business reason, it is sufficient to show that the benefit was granted during an organizing campaign") (citing *Mariposa Press*, 273 NLRB 528 (1984)). There is no requirement under Board law that CGC must allege all iterations of a promise of benefit to establish a violation.

Here, the ALJ found that Respondent's changes to the CCP were announced during an

organizing drive of which Respondent was aware, (ALJD at 22:6–8), and Respondent does not

except to that finding. Further, Respondent has not offered any business justification for the

September or November announcements, claiming only (and incorrectly) that it has no legal duty

to do so. (See Res. Brf. Pg. 50, n.40.) However, under the Board law described above, Respondent

had a duty to prove that it had a legitimate business reason for the announcement of benefit, and it

failed to meet that burden. *Kanawha Stone Co.*, 334 NLRB 235, n.2 (2001). Consequently, a

violation must be found: the record evidence conclusively establishes that the CCP improvements

were promised during the Union campaign and Respondent has not rebutted that fact or provided

evidence regarding when or why it decided to improve the CCP.[5] Whether the CGC alleged the

September announcement of CCP improvements was unlawful is irrelevant to the analysis because

---

[5] The cases cited by Respondent in the paragraph spanning pages 49–50 of its answering brief are either statements of general legal principles or distinguishable. Thus, *Koronis Parts, Inc.,* 324 NLRB 675, 697 (1997) simply stands for the proposition that a process initiated and ongoing before the onset of organizing activity is obviously not started in response to the organizing. *Northern Telecom, Inc*., 233 NLRB 1104, 1105 (1977), *Stanley Smith Security*, 270 NLRB 225 (1984) (relying upon *Northern Telecom*), *Nalco Chemical*, 163 NLRB 68, 70–71 (1967), and *Phillips-Van Heusen Corp*., 165 NLRB 1, 11 (1967), which found employers acted lawfully where the announced benefit was granted much more widely than to just the employees engaged in the relevant organizing effort, are readily distinguishable from the present case, since Amazon has been facing organizing pressures nationwide. For instance, the Board may properly take judicial notice that Respondent (i) had been battling against unionization at its Bessemer, Alabama facility for all of 2021 and was facing the prospect of a rerun election in late November 2021 (in case 10-RC-269250), (ii) was in the process of negotiating a nationwide settlement with the NLRB regarding Amazon's access policies in the fall of 2021, which settlement was announced in late December 2021 (in cases 13-CA-275270, 13-CA-276695, 13-CA- 279376, 29-CA-278982, 29-CA-282693, and 29- CA-28441), and (iii) settled, in late September 2021, with a pair of Seattle, Washington employees who alleged they had been fired for engaging in concerted action (in case 19-CA-266977). In light of the nationwide unionization pressures Amazon faced, the nationwide scope of its improvement to the CCP does not constitute evidence those improvements were unrelated to organizing efforts. Indeed, Amazon's failure to explain the purpose and provenance of the CCP improvements leaves the inference of anti-union purpose unchallenged.

the September announcement[6] does not satisfy Respondent's burden of proving it had a legitimate business reason for the institution of this benefit during the Union campaign, much less for its November face-to-face announcement to employees.[7]

In short, the CGC's failure to allege the September announcement violated the Act does not render that announcement lawful nor does it constitute a waiver of CGC's ability to prosecute other promises of benefit. Rather, the inquiry is whether Respondent proved at trial that it had a legitimate business justification for the announcement of the improvement to the CCP in November during captive audience meetings. It did not. Consequently, a violation should be found.

## C. Conclusion

In sum, Respondent's objections to our exceptions regarding the threat to Dana Miller and the promise of improvements to the CCP are not supported by the record evidence or Board law. As demonstrated, the totality of the circumstances establishes that Tanelli's threat to Miller was coercive. With respect to the CCP, the evidenced established that Respondent failed to prove that it had a legitimate business justification for the announcement of the improved benefit in November 2022. Consequently, for all the foregoing reasons, it is respectfully submitted that

[6] The evidence is that Respondent's September "announcements" amounted only to passive publication of the changes on Respondent's A to Z portal and website, without even any physical posting at the JFK8 facility. (Tr. 396:17–397:16.)

[7] While Respondent provided the alleged September announcement in Exhibit R-2, Respondent offered no testimony or other evidence regarding when the decision to improve the CCP was made, who made the decision, or why the decision was made.

CGC's Exceptions to the ALJ's Decision on these two allegations be sustained and violations be found.[8]

Dated at Brooklyn, New York this 19th day of May, 2023.

Respectfully,

*Emily A. Cabrera*

Emily Cabrera, Esq.
Jamie Rucker, Esq.
Counsel for the General Counsel
National Labor Relations Board Region 29 Two
MetroTech Center, Suite 5100
Brooklyn, New York  11201

---

[8] In addition, as noted above, for the reasons outlined in the CGC's Brief in Support of Exceptions, CGC also respectfully requests that the Board sustain its exceptions to the ALJ's dismissal of CGC's request to overturn *Tri-Cast Inc.,* 274 NLRB 377 (1985), *Babcock & Wilcox Co.,* 77 NLRB 577 (1948), *AT&T Mobility,* 370 NLRB No.121 (2021), and *The Guard Publishing d/b/a The Register Guard,* 351 NLRB 1110 (2007). In addition, CGC asks that the Board overturn the ALJ's refusal to order a Notice Reading and posting on the VOA board.

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

| | |
|---|---|
| **AMAZON.COM SERVICES INC.** | |
| **and** | |
| **DANA JOANN MILLER, an Individual** | **Case No. 29-CA-280153** |
| **and** | |
| **AMAZON LABOR UNION** | **Case Nos. 29-CA-286577** |
| | **29-CA-287614** |
| | **29-CA-290880** |
| | **29-CA-292392** |
| | **29-CA-295663** |

---

**AMAZON.COM SERVICES LLC'S REPLY TO
COUNSEL FOR THE GENERAL COUNSEL'S
ANSWERING BRIEF TO RESPONDENT'S CROSS
EXCEPTIONS TO THE ADMINISTRATIVE LAW
JUDGE'S DECISION**

---

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

Juan C. Enjamio
*jenjamio@huntonak.com*
305.810.2511
Wells Fargo Center
333 SE 2nd Avenue, Suite 2400
Miami, FL 33131

Kurtis A. Powell
***kpowell@huntonak.com***
404.888.4015
Bank of America Plaza
600 Peachtree Street N.E., Suite 4100
Atlanta, GA 30308

**ATTORNEYS FOR AMAZON.COM
SERVICES LLC**

## **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ........................................................................................1

II.  ANALYSIS...................................................................................................................2

    A.  The ALJ (and CGC) Misapply the Board's Disparate Enforcement Analysis to the Removal of Miller's VOA Post. ..............................................................................2

        1.  The ALJ's and CGC's Reliance on Amazon's Alleged Motivation for Removing Miller's Post is an Incorrect Application of *Register Guard*. ....2

        2.  The ALJ and the CGC Ignore Record Evidence Demonstrating the Lack of Disparate Treatment.....................................................................................4

    B.  Eric Warrior Sufficiently Reassured Associates That They Would Enjoy the Same Benefits As Unrepresented Employees................................................................5

    C.  Katie Lev's Statements Fell Within the Bounds of Lawful Communications.........8

III.  CONCLUSION.............................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Caesars Ent.*,
   368 NLRB No. 143 (Dec. 16, 2019) ......................................................................4

*California Gas Transport, Inc.*,
   347 NLRB 1314 (2006) ...............................................................................................8

*DHL Express, Inc.*,
   355 NLRB 1399 ...........................................................................................6, 7, 8, 9

*Eaton Techs., Inc.*,
   322 NLRB 848 (1997) .................................................................................................4

*Hendrickson USA, LLC v. NLRB*,
   932 F.3d 465 (6th Cir. 2019) .....................................................................................7

*Jensen Enterprises*,
   339 NLRB 877 (2003) .................................................................................................8

*Mantrose-Haeuser Co.*,
   306 NLRB 377 (1992) ....................................................................................5, 6, 7, 8

*Mercy Health Partners*,
   358 NLRB 566 (2012) .................................................................................................5

*Register Guard*,
   351 NLRB 1110 (2007) ................................................................................1, 2, 3, 4

*In Re Starbucks Corp.*,
   354 NLRB 876 (2009) ..............................................................................2, 3, 7, 9

*Starbucks*,
   19-CA-290905, JD(SF)-02-23 (Jan. 31, 2023) ....................................................7, 9

*Superior Emerald Park Landfill, LLC*,
   340 NLRB 449 (2003) ...........................................................................................6, 8

*T-Mobile USA, Inc.*,
   369 NLRB No. 50 (Apr. 2, 2020) .............................................................................2

*Teksid Aluminum Foundry*,
   311 NLRB 711 (1993) .................................................................................................8

*Uarco, Inc.*,
    286 NLRB 55 (1987) ..........................................................................................................5, 8

**Other Authorities**

29 C.F.R. § 102.46(f) .................................................................................................................4

## I.     PRELIMINARY STATEMENT

The Counsel for the General Counsel (the "CGC"), like the ALJ in his Decision, applies the wrong legal standard and ignores the uncontroverted testimony of its own witness to conclude erroneously that Respondent, Amazon.com Services LLC ("Amazon"), treated Dana Miller's VOA Board post disparately. The CGC glosses over the undisputed evidence demonstrating that Amazon permitted a plethora of Section 7 activity on its electronic VOA Board, including posts almost identical to the invalid comparator put forth by the ALJ. The CGC's argument in support of the ALJ's erroneous consideration of Amazon's alleged "pretext" for the removal of Miller's post is also inconsistent with the disparate enforcement analysis laid out in *Register Guard*.[1]

Additionally, the CGC, again like the ALJ in his Decision, ignores the context of Eric Warrior's and Katie Lev's statements and analogous Board decisions to conclude erroneously that Warrior's and Lev's statements were somehow unlawful. Similarly, the CGC, in its Answering Brief to Respondent's Cross Exceptions ("Answer"), fails to consider the full context of the statements, relying only on isolated fragments to jump to its unsupported conclusions. The CGC also relies on cases that are not analogous or persuasive, ignoring the Board precedents more applicable to the letter and context of Warrior's and Lev's statements.

Therefore, for the reasons set forth in Amazon's Brief in Support of Cross Exceptions to the Administrative Law Judge's Decision ("Brief in Support of Cross Exceptions"), and below, the Board must dismiss the allegations contained in Paragraphs 11(a), 18(A)(b) and 19(b) of the General Counsel's Amended Complaint pertaining to Miller, Warrior, and Lev.

---

[1] 351 NLRB 1110, 1118 (2007).

## II.    ANALYSIS

### A.    The ALJ (and CGC) Misapply the Board's Disparate Enforcement Analysis to the Removal of Miller's VOA Post.

1. The ALJ's and CGC's Reliance on Amazon's Alleged Motivation for Removing Miller's Post is an Incorrect Application of *Register Guard.*

The CGC continues to ignore the Board's test for analyzing claims of disparate enforcement of an employer's lawful policy, improperly arguing that Amazon's intent for removing Miller's post proves it discriminatorily enforced its Solicitation Policy. *See* CGC's Answer at 9-15. The ALJ in his Decision erred by considering the "totality of the circumstances," which implicitly and explicitly included consideration of Amazon's motive and intent for removing Miller's post. The GCG relies on this same erroneous analysis. Considerations of motive or intent, however, have no place in a disparate enforcement analysis.[2] *See Register Guard*, 351 NLRB at 1118 (rejecting the dissent's argument that discrimination is not the essence of an 8(a)(1) violation, and setting forth a pure a disparate treatment analysis; "discrimination is the unequal treatment of equals"); *T-Mobile USA, Inc.*, 369 NLRB No. 50, slip op. at *3-*4 (Apr. 2, 2020) (analyzing only the types of communications permitted by the employer, but not the intent or motivation of the employer); *In Re Starbucks Corp.*, 354 NLRB 876, 888 (2009) (the test for violation of Section 8(a)(1) does not turn on an employer's motivation or intent in enforcement of its policy, but is instead an objective standard) (citations omitted). Therefore, the only relevant analysis is whether Amazon permitted non- or anti-union solicitations on the VOA Board, while prohibiting Miller's pro-union solicitation. *Id.* The CGC provided no such evidence. For this

---

[2] The ALJ noted that the CGC did not allege that Amazon's enforcement of its Solicitation Policy was motivated by a discriminatory purpose, and disclaimed his consideration of the same, while at the same time quoting an Amazon HR Manager's deliberations of how to address Miller's post. *See* ALJD at 21:34, fn. 10. This is a clear contradiction, and is in error. *See* Amazon's Brief in Support of Cross-Exceptions at 19, fn. 15.

reason, the CGC did not meet its burden of proof, and the ALJ's finding of an 8(a)(1) violation was in error.

The ALJ improperly relied on Miller's post's reference to an ALU tent to find Amazon's removal of her post unlawful, and the CGC takes it even further by arguing that Amazon's *motivation* behind the post's removal was that it "sought group action" to go to the ALU tent. *See* ALJD at 22:5-8; CGC's Answer at 9-10. Specifically, the CGC argues in its Answer that Edwards' and Tanelli's discussions of how to address Miller's post are evidence that the post's *clear* violation of Amazon's solicitation policy was not the real reason for its removal, but rather was pretext for Amazon's true motivation.[3] *See* CGC's Answer at 9-11 (discussing the various deliberative statements by Amazon HR managers regarding Miller's post). The CGC cites no case law for its argument because no case law supports the proposition that a disparate enforcement analysis involves consideration of an employer's motive or pretext. *See id.*; *In Re Starbucks Corp.*, 354 NLRB at 888. By emphasizing the post's *content*—that is, the cursory reference to a petition available at the ALU tent—the ALJ and the CGC ignore what *is* relevant to the analysis: unequal treatment of equals. *Register Guard*, 351 NLRB 1110 at 1118. The CGC's discussion of Tanelli's and Edward's statements in its Answer is a red herring meant to distract from the logical result of a proper disparate enforcement analysis: that there is no evidence Amazon permitted any other non- or anti-union posts calling for signatures on a petition.[4]

---

[3] The ALJ and the CGC both apparently take issue with Edward's comment that Miller's post "is not asking any type of question and instead antagonizing and trying to rally a group of people," as evidence of Amazon's "pretext," but ignore that the Board described solicitation as a "call for action" in *Register Guard*. 351 NLRB at 1119.

[4] Even assuming *arguendo*, that Miller's post's reference to the ALU tent was the proper Section 7 "character" upon which to base a disparate enforcement analysis, the CGC has offered exactly zero evidence that Amazon permitted any other posts asking employees *not* to go to the ALU tent to remain on the VOA Board, while removing Miller's. In fact, Amazon permitted

The ALJ and the CGC also argue that Amazon's enforcement of its Solicitation Policy for the first time to remove Miller's post is somehow evidence of disparate treatment. *See* ALJD at 21:31-32, 39-41; CGC's Answer at 12-13. This is another improper consideration of Amazon's motive for removing Miller's post.[5] *Register Guard*, 351 NLRB at 1118; *In Re Starbucks Corp.*, 354 NLRB at 888. Critically, there is no evidence that any post prior to Miller's violated Amazon's Solicitation Policy. Therefore, like the CGC's discussions of Tanelli's and Edward's internal deliberations, the ALJ's finding with regard to the timing of Amazon's enforcement of its Solicitation Policy is of no relevance to the discrimination standard set forth in *Register Guard*.

2. The ALJ and the CGC Ignore Record Evidence Demonstrating the Lack of Disparate Treatment.

The ALJ relied exclusively on a single post, among thousands, during an eight-month span—a post informing employees that they could pick up a "Vote No" t-shirt on their break—as the basis for his finding of disparate treatment. *See* ALJD 21:34-39. However, as noted in Amazon's Brief in Support of Cross Exceptions, the ALJ ignored that Miller testified that she saw a post advertising "pins and buttons and lanyards by the Union [to] vote yes" at the ALU tent, which was permitted to remain on the VOA Board. *See* Respondent's Brief in Support of Cross Exceptions at 18, fn. 14 (citing Tr. 129:17-24, 131:11-21). The CGC attempts to gloss over this fact in its Answer by apparently attempting to discredit Miller, its own witness, in noting that

---

another post advertising ALU pins, buttons, and lanyards available at the ALU tent to remain on the VOA Board. *See* Tr. 129:17-24, 131:11-21.

[5] Adoption of an argument that an employer cannot enforce its solicitation policy for the first time during a union campaign leads to an absurd result: that an employer's work rules are "use it or lose it." This is obviously not so, as it is indeed well-settled that employers "may uniformly enforce a rule prohibiting the use of its bulletin boards by employees for all purposes." *Eaton Techs., Inc.*, 322 NLRB 848, 853 (1997); *Caesars Ent.*, 368 NLRB No. 143, slip op. at *10 (Dec. 16, 2019) (applying *Eaton* to IT resources).

Amazon did not provide documentary evidence of this post.[6] *See* CGC's Answer at 13, fn. 7.

Unfortunately for the CGC, the ALJ did not make a credibility determination as to Miller's

testimony, nor did any party except to such non-finding, so Miller's testimony that she saw another

pro-union post advertising ALU materials at the ALU tent is a fact of this case. 29 C.F.R. §

102.46(f); *Mercy Health Partners*, 358 NLRB 566, 569 fn. 1 (2012) (argument not raised before

ALJ waived as untimely).

Therefore, the undisputed evidence shows that Amazon permitted two posts advertising

union-related materials—one pro-union and one anti-union—to remain on the VOA Board, but

did not allow *any* other posts like Miller's, that explicitly called for signatures on a petition. The

CGC's "pretext" argument is not supported by the record and there is simply no evidence that

Amazon disparately enforced its Solicitation Policy.

**B. Eric Warrior Sufficiently Reassured Associates That They Would Enjoy the Same Benefits As Unrepresented Employees.**

Both the ALJ and the CGC focus on a single dissected line from Warrior's entire

presentation, completely ignoring the context of Warrior's statements as well as the numerous and

repeated reassurances that Warrior gave that Associates' terms and conditions of employment

would not change unless agreed to during bargaining. When context is properly considered,

Warrior's statements are more analogous to *Uarco, Inc.*[7] and *Mantrose-Haeuser Co.*[8] than the

cases cited by the ALJ and CGC, and are therefore lawful.

---

[6] Miller testified that she saw the "pins, buttons, and lanyards" post sometime in March
2021, but the CGC's Subpoena *Duces Tecum* only requested VOA posts at JFK8 from May 1,
2021 through July 15, 2021. *See* Tr. 131:11-17.

[7] 286 NLRB 55 (1987).

[8] 306 NLRB 377 (1992)

First, it is undisputed that Warrior *never* stated that *existing* regular step increases in pay or benefits would not be honored, only that they would remain in the status quo—that is, Amazon's past practice of step increases would continue, since that would be the status quo. *See* ALJD at 32:26; GC Ex. 5 at 3:45-3:58 (Warrior explaining that Amazon must maintain the status quo during the election and bargaining); *see Uarco, Inc.*, 286 NLRB at 84 (describing wages as "frozen" meant to maintain the status quo, which was lawful). The ALJ, and the CGC in support, rely solely on an unstated implication based on a purported hypothetical by Warrior about what would happen if the "parties can't agree to a contract[.]" *See* ALJD at 32:24-25. However, it is clear by reviewing GC Ex. 5 (audio recording of Warrior's presentation) in conjunction with GC Ex. 39 (Warrior's PowerPoint), that Warrior was *reading* from the PowerPoint presentation, and the answer to his hypothetical is supplied by the text: "If the parties can't agree on a contract, the union can call a strike." *See* GC Ex. 5 at 9:22-9:40; GC 39 at p. *11. Given this context, it would be clear to any audience-member that Warrior was *not* implying that Amazon would discontinue its past practice of regular step increases, but was *only* making a point that Amazon cannot make any changes to their pay practices during negotiations, which could be lengthy, and lead to a strike. *Superior Emerald Park Landfill, LLC*, 340 NLRB 449, 461 (2003) (consideration of companion literature relevant to context).

Second, the ALJ and the CGC ignored the repeated, contemporaneous reassurances Warrior gave to the Associates that Amazon would not unilaterally change the terms and conditions of their employment. *See Mantrose-Haeuser Co.*, 306 NLRB at 378; *DHL Express, Inc.*, 355 NLRB 1399, 1399 (distinguishing that case from *Mantrose-Haeuser* because contemporaneous reassurances were not given). For example:

- Warrior stated that "a Union contract could leave you with the same things you have now – like vacation, paid parental leave, wages, health benefits, 401(k), Career

Choice, and Resources for Living. Or it could give you more, or less, of what you have right now." GC Ex. 5. at 7:00-7:19.

- Warrior stated, "I want to make something clear to you guys, Amazon cannot predict the outcome of bargaining, and we are not suggesting that you will lose things in negotiations." *Id.* at 8:43-8:56.

- Warrior concluded his presentation by making the express reassurance that "with a union, terms and conditions must be negotiated in good faith **before** changes can be made," (*Id.* at 11:30-11:38) a statement expressed verbatim in the PowerPoint presentation simultaneously displayed to the audience. *See* GC 39 at p. *15.

So, contrary to the ALJ's findings and the CGC's argument, Warrior did, in fact, provide contemporaneous reassurances that the Associates' terms and conditions of employment, such as step increases, would *not* change during negotiations. *See Mantrose-Haeuser Co.*, 306 NLRB at 377.

Third, Warrior's comments were not made within the context of other unlawful statements or practices. *See Mantrose-Haeuser Co.*, 306 NLRB at 377 (allegedly threatening statement was "devoid of any additional unlawful or objectionable statements," and thus lawful)*; see also Starbucks*, 19-CA-290905, JD(SF)-02-23, at 34:29-37 (Jan. 31, 2023) ("[W]hen the question is close, a critical factor in determining whether the statement has a threatening color is whether the context of the statement includes contemporaneous threats or unfair labor practices.") (citing *Hendrickson USA, LLC v. NLRB*, 932 F.3d 465, 472 (6th Cir. 2019)). The ALJ found no other part of Warrior's statements to be unlawful, or to contain any other threats or unfair labor practices. *See* ALJD at 30:36-31:19.

Finally, Lev's statements—which Amazon maintains were lawful—are not relevant to the context of Warrior's statements. *See Starbucks*, 19-CA-290905, JD(SF)-02-23, at 34:29-37. Lev's statements occurred at an entirely different facility, weeks apart, pursuant to an entirely different petition for election, and the audiences for Warrior's and Lev's presentations were mutually exclusive. *See* ALJD at 18:9-12; Tr. 292:25-293:11. Thus, contrary to the CGC's specious

argument, there is no evidence that Warrior's comments occurred in the context of other unlawful statements or practices. *See DHL Express, Inc.*, 355 NLRB at 1399; CGC's Answer at 18. For all of these reasons, the CGC is wrong in its assertions, and Respondent's exceptions as to Warrior should be upheld.[9]

### C.  Katie Lev's Statements Fell Within the Bounds of Lawful Communications.

Following the CGC's insistence on examining the "plain language" of Lev's commentary, one need only review the audio recording of her presentation to understand that at no time did Lev state or imply that LDJ5 Associates' *existing* pay and benefits would not be continued. *See UARCO Inc.*, 286 NLRB at 84; *see also Mantrose-Haeuser Co.*, 306 NLRB at 377. The relevant portions of Lev's presentation occur within Lev's explanation of the concept of the "status quo," which by

---

[9]The ALJ, and the CGC rely on a series of inapposite cases and ignore the express reassurances above. ALJD at 31:43-48; CGC's Answer at 16. In fact, the cases relied upon by the CGC show that Warrior's comments did not violate Section 8(a)(1). *See DHL Express, Inc.*, 355 NLRB at 1399-1400 (distinguishing the respondent's comments from *Mantrose-Haeuser* and analogizing them to *Jensen* because the respondent committed additional unfair labor practices during the organizational campaign); *California Gas Transport, Inc.*, 347 NLRB 1314, 1314, 1349 (2006) (wherein employer's agent directly referenced a 10-percent bonus given to employees at unrepresented facilities following filing of petition for representation at facility at which threats made); *Superior Emerald Park Landfill, LLC*, 340 NLRB 449, 461 (2003) (employer stated that wages would be "frozen at *current* wage policy levels" during negotiations, and ALJ considered context of company's written campaign literature); *Jensen Enterprises*, 339 NLRB 877, 877-878 (2003) (employer stated that wages would be "frozen" and employees should not expect "*any* increases in wages or benefits" until bargaining concluded); *Teksid Aluminum Foundry*, 311 NLRB 711, 711 fn. 2 (1993) (threat occurred in "an atmosphere of pervasive unfair labor practices, and without the requisite assurances against future unlawful conduct by the Respondent"). Warrior's comments are easily distinguishable from the facts of these cases. First it is undisputed that Warrior *never* used the term "frozen" when describing Associates' wages. ALJD at 16:47—17:21. Second, Warrior repeatedly acknowledged the duty to bargain in good faith, and properly examined how that process would work if the union was elected—that no changes in terms and conditions could be made unless first agreed to during negotiations. Warrior's comments are unlike those at issue in the cases cited by the CGC—*i.e.*, they do not specifically reference "current," "any" or "all" wages, nor did his presentation occur within the context of other threats or unfair labor practices. Therefore, the ALJ erred in finding Warrior's comments unlawful.

its *plain language* means that things would stay as they are, including existing step increases. *See* GC Ex. 7 at 27:20-28:49. The CGC puts words in Lev's mouth through its comparison of JFK8 and other facilities, but again, the *plain language* of Lev's statement demonstrates that she's speaking in terms of "changes" or "improvements" *to* that status quo, and not *all* "changes" or "improvements," such as those to which Associates were previously entitled. *Id.* By referring to employees at other facilities, it is clear from the context that Lev was explaining that those employees could receive "changes" which were *not* the result of bargaining, changes which could only mean deviations from the status quo. It is in fact the ALJ and the CGC that make the conclusory leap that Lev meant *all* benefits—including existing benefits—when such language appears nowhere in the audio recording of the presentation admitted into the record.

Not only is the CGC asking the Board to ignore that Lev never stated that existing benefits would be "frozen" or unchanged, the CGC is itself ignoring the viewpoint of the employees listening to Lev's statements. During Lev's comments, there was a PowerPoint presentation displayed *contemporaneously* to employees which stated in relevant part that "terms and conditions must be negotiated in good faith before changes can be made." *See* GC Ex. 41 at p. *14. What's more, as the ALJ correctly held, the remainder of Lev's lengthy presentation contained no other unlawful statements, and there exists no evidence of other contemporaneous threats or unfair labor practices.[10] *See DHL Express, Inc.*, 355 NLRB at 1399 (a distinguishing factor is whether additional unfair labor practices were committed during the organizational campaign)*; see also Starbucks*, 19-CA-290905, JD(SF)-02-23, at 34:29-37. The ALJ, and the CGC in support, rely

---

[10]Amazon has filed exceptions to the ALJ's finding that Warrior's comments were unlawful, but even if the Board affirms the ALJ's Decision with regard to Warrior, his comments did not occur in the context of the LDJ5 campaign, nor even at that facility, nor to the same audience of Associates. In fact, the ALJ did not find *any* other unlawful conduct by Amazon at the LDJ5 facility.

only on isolated, ambiguous statements by Lev, and ignore the entirety of the presentation, which encompassed Amazon's legal duty to keep employees' terms and conditions of employment in the status quo, rather than making unilateral changes. Given this lawful context, the ALJ erred in finding that Lev's statements constituted an unlawful threat to withhold *existing* wages and benefits during bargaining.

## III.  CONCLUSION

The undisputed evidence demonstrates that Amazon did not enforce its Solicitation Policy along Section 7 lines with respect to Miller's post, and the ALJ's and CGC's insistence that Amazon's motivation and intent be considered is not supported by the Board's precedent. With regard to Warrior's and Lev's comments, the CGC's Answer makes the same mistake as the ALJ in his Decision by failing to consider the context of their respective statements, instead relying on imputation and innuendo. In sum, the ALJ erred in his findings with respect to the Miller post, and Warrior's and Lev's comments, and Amazon again urges the Board to dismiss those respective allegations.

Respectfully submitted this 2nd day of June, 2023.

**HUNTON ANDREWS KURTH LLP**
*Kurt A. Powell*
Juan C. Enjamio
333 SE 2nd Ave., Suite 2400
Miami, FL 33131
(T): (305) 810-2511
(E): jenjamio@huntonAK.com

Kurt A. Powell
600 Peachtree Street, N.E., Suite 4100
Atlanta, GA 30308
(P): (404) 888-4015
(E): kpowell@huntonAK.com

**ATTORNEYS FOR AMAZON.COM SERVICES LLC**

## **CERTIFICATE OF SERVICE**

I certify that on this 2nd day of June, 2023, I caused the foregoing to be electronically filed with the Office of the Executive Secretary of the National Labor Relations Board at http://www.nlrb.gov and a copy of same to be served via e-mail on the following parties of record:

Retu Singla
rsingla@workingpeopleslaw.com
Jeanne Mirer
JMirer@julienmirer.com
Ria Julien
RJulien@julienmirer.com
Julien, Mirer & Singla, PLLC
1 Whitehall Street, 16th Floor
New York, NY 10004

Seth Goldstein
Sgold352002@icloud.com
217 Hadleigh Avenue
Cherry Hill, NJ 08003

Emily Cabrera
Emily.Cabrera@nlrb.gov
National Labor Relations Board
Region 29
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201

Lynda Tooker
Lynda.Tooker@nlrb.gov
National Labor Relations Board, Region 29
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201

*Kurt A. Powell*
Kurt A. Powell

NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.

**Amazon.com Services LLC *and* Dana Joann Miller *and* Amazon Labor Union.** Cases 29–CA–280153, 29–CA–286577, 29–CA–287614, 29–CA–290880, 29–CA–292392, and 29–CA–295663

November 13, 2024

DECISION AND ORDER

By Chairman McFerran and Members Kaplan, Prouty, and Wilcox

This case presents several issues arising from employer opposition to a union organizing campaign, including the important question of whether an employer violates Section 8(a)(1) of the National Labor Relations Act (the Act or NLRA) by compelling its employees, on pain of discipline or discharge, to attend a meeting during which it expresses its views concerning unionization.[1]

In April 2021,[2] a group of employees founded the Amazon Labor Union and began organizing at two of the Respondent's locations in Staten Island, New York. During the campaign, the Respondent held a series of mandatory meetings urging the employees to reject union representation. Such meetings are commonly referred to as captive-audience meetings, a term we also use here. Most of the

unfair labor practices alleged in this case grow out of statements made by the Respondent's agents at those meetings. The others concern the alleged discriminatory enforcement of the Respondent's Solicitation Policy and an alleged threat to employee Dana Miller.

The judge found that the Respondent violated Section 8(a)(1) of the Act by threatening employees that it would withhold benefits during the mandatory meetings.[3] The judge also found that the Respondent violated Section 8(a)(1) by discriminatorily enforcing its solicitation policy.[4] However, applying the Board's decision in *Babcock & Wilcox Co.*, 77 NLRB 577 (1948), the judge found that requiring employees to attend the meetings or face discipline or discharge was lawful.[5]

On exception, the General Counsel argues that the Board should overturn *Babcock & Wilcox* and find that an employer violates Section 8(a)(1) by mandating employee attendance at a meeting where it expresses its views concerning unionization. As explained in greater detail below, we find that the largely unexplained holding of *Babcock & Wilcox* is not compelled by the text or the legislative history of the Act; rather, it is flawed as a matter of statutory policy. We therefore overrule *Babcock & Wilcox* and hold that an employer interferes with employees' decision whether to exercise their Section 7 rights within the meaning of Section 8(a)(1) of the Act when it compels

---

[1] On January 30, 2023, Administrative Law Judge Benjamin W. Green issued the attached decision. The General Counsel filed exceptions and a supporting brief, the Respondent filed an answering brief, and the General Counsel filed a reply brief. In addition, the Respondent filed cross-exceptions and a supporting brief, the General Counsel filed an answering brief, and the Respondent filed a reply brief.

The Board has considered the decision and the record in light of the exceptions and briefs and has decided to affirm the judge's rulings, findings, and conclusions only to the extent consistent with this Decision and Order.

We have amended the judge's conclusions of law and remedy consistent with our findings herein. We shall modify the judge's recommended Order and substitute a new notice to conform to our findings and to the Board's standard remedial language.

The Respondent has excepted to some of the judge's credibility findings. The Board's established policy is not to overrule an administrative law judge's credibility resolutions unless the clear preponderance of all the relevant evidence convinces us that they are incorrect. *Standard Dry Wall Products*, 91 NLRB 544 (1950), enfd. 188 F.2d 362 (3d Cir. 1951). We have carefully examined the record and find no basis for reversing the findings.

No party has excepted to the judge's dismissal of the allegation that the Respondent violated Sec. 8(a)(1) by its agent Rebecca Smith's statements during an April 10, 2022 meeting.

Member Prouty would grant the General Counsel's request for a notice-reading remedy for the reasons stated in his concurrence in *CP Anchorage Hotel 2 d/b/a Hilton Anchorage*, 371 NLRB No. 151 (2022), enfd. 98 F.4th 314 (D.C. Cir. 2024).

[2] All dates refer to 2021 unless otherwise indicated.

[3] For the reasons stated by the judge, we agree that the Respondent violated Sec. 8(a)(1) of the Act by threatening employees, through the statements of Workforce Staffing Manager Eric Warrior on March 15, 2022, and Respondent agent Katie Lev on April 18, 2022, that it would withhold improvements in wages and benefits during bargaining and/or the preelection period. The judge erroneously indicated that these meetings occurred in 2021, and we have corrected this error consistent with the record evidence.

[4] As discussed further below, we agree with the judge that the Respondent violated Sec. 8(a)(1) by discriminatorily enforcing its Solicitation Policy against Miller, but we rely on a different rationale than the judge.

[5] Applying *Tri-Cast, Inc.*, 274 NLRB 377 (1985), the judge dismissed allegations that the Respondent threatened employees with a loss of existing benefits by misrepresenting employee rights under Sec. 9(a). In *Siren Retail d/b/a Starbucks*, 373 NLRB No. 135 (2024), the Board overruled *Tri-Cast*, but it did so prospectively only. As the General Counsel conceded that the statements at issue here were lawful under *Tri-Cast*, we affirm the judge's dismissal of those allegations.

The judge also dismissed allegations that the Respondent violated Sec. 8(a)(1) by threatening Miller, promising employees improvements to the Career Choice Program, and soliciting and impliedly promising to remedy employees' grievances. For the reasons set forth below and contrary to our dissenting colleague, we reverse the judge's dismissal of the allegations regarding the threat and the solicitation of grievances. In addition, having duly considered the matter, we find it appropriate to sever and retain the allegations regarding promised improvements to the Career Choice Program for further consideration. As explained in his dissent, Member Kaplan agrees with the judge's dismissal of this complaint allegation.

employees to attend a captive-audience meeting on pain of discipline or discharge.

## I. FACTUAL BACKGROUND

The Respondent operates fulfillment and storage centers including, as relevant here, in Staten Island, New York. As noted above, in April 2021, a group of employees founded the Union and began a campaign to organize the Respondent's JFK8 fulfillment center. Thereafter, the Union also began organizing the Respondent's nearby LDJ5 storage center. The Union conducted its campaign from a tent at a bus stop across the street from the JFK8 facility. During the campaign, some employees posted messages on the Respondent's Voice of Associates, or "VOA," digital message boards.

The Respondent responded to the Union's organizing effort with its own campaign to dissuade employees from signing union-authorization cards and selecting union representation. The Respondent's campaign included a series of meetings that the Respondent stipulated it required employees to attend.[6] As discussed further below, between November 2021 and April 2022, the Respondent conducted these mandatory meetings at both the JFK8 and LDJ5 facilities.[7]

## II. DISCRIMINATORY APPLICATION OF SOLICITATION POLICY AND ALLEGED THREAT TO EMPLOYEE DANA MILLER

### FACTS

As noted above, both the Respondent's JFK8 and LDJ5 facilities have a number of VOA digital message boards. Employees can post messages for viewing by, and possible responses from, management and other employees on the boards. The Respondent's Solicitation Policy applies to electronic communication, such as the VOA boards. It prohibits, in relevant part, "soliciting for financial contributions, memberships, subscriptions, and signatures on petitions . . . . " The accompanying FAQs list as "some examples of solicitation that are prohibited, unless legally protected": "Solicitation for . . . signatures on petitions[;] Distribution of literature or materials of any kind . . . . "

On July 8, employees Dana Miller and Connor Spence delivered a petition to General Manager Felipe Santos and Senior Human Resources Manager Jenna Edwards that sought to have the company declare Juneteenth a paid holiday. Santos told them that he did not know of any company plans to do so and that he could not do anything further to help them.

On July 9, Miller posted the following message on the VOA board:

> 6/21/21: ALU [Amazon Labor Union] AA's [Amazon Associates] spoke to G.M. for holiday pay on Juneteenth. Dismissed. ALU put together a petition and is gathering signatures, over 50+ now! 7/8/21: Presented again, Felipe [Santos] confirmed that he wouldn't use any energy/effort to make positive changes for workers! So you're invited to come sign the petition for well-deserved holiday pay at the ALU [Amazon Labor Union] tent, speak up for yourself and help make history.

The Respondent's managers reacted to the post, as demonstrated by the following exchange later that day between Senior HR Manager Edwards and Assistant General Manager Marc Zachary on the Respondent's "Chime" electronic messaging platform:

> Edwards: I'm shocked Stephanie is suggesting to remove a VOA comment but I'm aligned 100%
>
> Zachary: Yea awesome
>
> Edwards: It is not asking any type of question and instead antagonizing and trying to rally a group of people. We should not stand for that
>
> Zachary—agreed, it's definitely not appropriate for VOA and probably violates the solicitation policy[.]

Three days later, on July 12, a human resources representative pulled Miller from her position and told her to report to a meeting with Human Resources Business Partner Mike Tanelli in GM Santos' office. According to the

---

[6] The Respondent's stipulation was solely for the purposes of this case.

[7] On October 25, the Union filed a petition to represent a unit of the Respondent's employees at the JFK8 facility. The Union later withdrew that petition and filed another on December 22. On February 4, 2022, the Union filed a petition to represent a unit of the Respondent's employees at the LDJ5 facility. The Union ultimately won the election at JFK8 and lost the election at LDJ5.

Amazon filed objections to the election at JFK8. See Case 29–RC–288020. The Regional Director overruled those objections, and the Union was certified as employees' representative on January 11, 2023. On August 29, 2024, the Board denied Amazon's Request for Review and its Motion to Reopen the Record. See *Amazon.com Services LLC*, 373

NLRB No. 93 (2024). No objections have been filed regarding the LDJ5 election.

Amazon has in the meantime refused to bargain with the Union at JFK8, and a test-of-certification case involving that facility is pending before the Board. See Case 29–CA–310869. On September 5, 2024, Amazon filed a complaint for declaratory and injunctive relief with the United States District Court for the Western District of Texas raising constitutional challenges related to the pending test-of-certification case. On September 30, 2024, in an unpublished order, the United States Court of Appeals for the Fifth Circuit granted Amazon's motion for an administrative stay of the test-of-certification case. See *Amazon.com Services LLC v. NLRB*, No. 24-50761 (5th Cir. Sept. 30, 2024). The test-of-certification case currently is stayed pursuant to the Fifth Circuit's order.

recording of the meeting made by Miller, the ensuing exchange occurred:

> Tanelli: Just on one of the comments made on the VOA board regarding the ALU and . . . going to the tent to sign up for holiday pay, things like that . . . . So Amazon solicitation policy clearly is defined that you can have every right to do that on nonworking time, in break areas. The VOA board is actually not a mechanism you can use that on.
>
> Miller: But why not?
>
> Tanelli: That's a mechanism for you to talk directly to management, right? . . . Anything related, like, to the ALU, and the tent, things like that like for going and signing up, unfortunately, that's something that we cannot have on the board . . . . It's against the policy, but . . . . you're not in trouble or anything like that, right? I just did want to follow up with you, let you know that the comment will be removed.

Miller said she would repost her message, whereupon Tanelli responded:

> Tanelli: Okay, well, I'm telling you now, like, this is not a conversation for you to be reprimanded. Right? This is [for] me to educate you on the solicitation policy. You cannot put that on the board, unfortunately. And there will be additional followup if a comment like that goes back up again.

Miller reposted the message later that day, but it was taken down. She tried again at the end of her shift but was denied access to the system. By the next morning, she had regained access and posted her message again, but it was again taken down. Miller was never disciplined for any of her postings.

As Edwards' Chime post suggests, the Respondent had never removed any posts other than Miller's Juneteenth post from the VOA board. Miller testified that during the campaign she saw "hundreds of" vote yes and vote no posts on the VOA board and that none of them were taken down. In response to a General Counsel subpoena, the

Respondent turned over a list of all VOA postings between May 1 and July 15, which totaled 388. During this period, Miller posted 35 times, and none of the posts were removed other than the ones seeking signatures on the Juneteenth petition. There is no evidence that any other employee had attempted to use the VOA board to solicit signatures. However, there was a posting in March 2022 telling employees that there were "VOTE NO" t-shirts available in the break room and inviting them to come by and get one. The Respondent did not remove this post despite the Respondent's Solicitation Policy prohibiting "[d]istribution of . . . materials of any kind."[8]

<center>ANALYSIS</center>

### A. Discriminatory Enforcement of Solicitation Policy

The judge found that the Respondent discriminatorily enforced its Solicitation Policy in removing Miller's post and thereby violated Section 8(a)(1). The judge found that because the Respondent "prohibit[ed] posts regarding the signing of documents at the Union tent . . . while allowing solicitations of a similar character to remain," the Respondent discriminatorily enforced its policy along Section 7 lines under *Register Guard*, 351 NLRB 1110, 1118 (2007), enfd. in relevant part and remanded sub nom. *Guard Publishing v. NLRB*, 571 F.3d 53 (D.C. Cir. 2009).

The Respondent excepts to the judge's finding that it discriminatorily enforced its Solicitation Policy. The Respondent's chief argument on exception rests on the fact that it allowed voluminous numbers of posts that constituted union or other Section 7 activity: prounion and antiunion posts, posts about safety conditions, even other posts arguing that Juneteenth should be made a paid holiday. Our dissenting colleague advances a similar argument.

We adopt the judge's finding of a violation for the reasons that follow. Under existing Board law, as reflected in *Register Guard*, 351 NLRB at 1118, to be unlawful, discrimination must be "along Section 7 lines." That is, unlawful discrimination within the meaning of Section 8(a)(1) consists of "disparate treatment of activities or communications of a similar character because of their union or other Section 7-protected status." Id.[9] It is well

---

[8] Miller testified that she had also seen a post in March 2022 advertising Union pins, buttons, lanyards and shirts available for pickup at the Union tent. However, there is no documentary evidence regarding such a posting.

[9] Although the judge quoted the correct legal standard under *Register Guard*, supra, he misstated the test when applying it. He found a violation because "the context could reasonably cause an employee to believe that the Respondent was discriminatorily enforcing its solicitation policy[.]" In finding a violation, we do not rely on this aspect of the judge's decision.

The General Counsel requests that we overrule *Register Guard*'s discrimination standard in this case. Having found that the Respondent's removal of Miller's posting is unlawful even under *Register Guard*, we decline to revisit that standard at this time. However, we would be willing to reconsider it in a future appropriate case.

We also decline the General Counsel's request to overrule *AT&T Mobility, LLC,* 370 NLRB No. 121 (2021), at this time. Under *AT&T Mobility,* the remedy for unlawfully applying a facially neutral rule to restrict Sec. 7 activity is an order to cease and desist. Chairman McFerran dissented in *AT&T Mobility* and adheres to the views stated there. She nevertheless applies it for institutional reasons for the purpose of

established that discrimination on the basis of the Section 7-protected content of a speaker's message is not a legally permissible ground of action. See, e.g., *Gallup American Coal Co.*, 32 NLRB 823, 829 & fn. 4 (1941) (employer violated Section 8(a)(1) through its "interference" with Section 7 activity by its "singling out of only the union signs" painted on boulders on its premises "for obliteration" while "the other signs thereon were permitted to remain"), enfd. 131 F.2d 665 (10th Cir. 1942).

Here, contrary to our dissenting colleague, we find that the Respondent's singling out of Miller's Juneteenth post for removal while permitting the "VOTE NO" post constitutes such impermissible discrimination under its Solicitation Policy. See *Communications Workers v. NLRB*, 6 F.4th 15, 23 (D.C. Cir. 2021) (finding discriminatory enforcement where respondent "singled out [employee's] email for condemnation because of its union-related content"). The Respondent took down Miller's post inviting employees to come to the Union tent to sign the Union's petition to make Juneteenth a paid holiday while leaving up a post that invited employees to come to the breakroom to get a VOTE NO t-shirt, although both actions clearly violated the policy. This is discrimination along Section 7 lines in its most obvious form. See *Register Guard*, 351 NLRB at 1118. By only invoking the Solicitation Policy to restrict prounion conduct while allowing the antiunion conduct to remain, the Respondent treated the posts in a disparate manner based on the content of the posts. Such disparate treatment of Miller's post based on its protected message encouraging her coworkers to join together to urge the Respondent to make Juneteenth a paid holiday "interfere[d] with" Section 7 rights. Id. at 1123.[10]

As it argues on exception, the Respondent did indeed allow Section 7-related posts that did not fall within the ambit of its Solicitation Policy to stay up: the pro- and antiunion posts, the safety-related post, and the other Juneteenth posts that it references. But as to Section 7-related posts that fell within the scope of the policy, one was permitted (the post about the distribution of VOTE NO t-shirts) while another was not (the post endeavoring to get other employees to combine their efforts with those of 50 of their coworkers by signing a petition in support of a paid holiday).[11] Here, the Respondent impermissibly took it upon itself to pick and choose which Section 7 activity it would permit and which it would not.

Therefore, we affirm the judge's finding that the Respondent violated Section 8(a)(1) by selectively and disparately enforcing its Solicitation Policy.

*B. Threat to Miller*

The judge found that HR Business Partner Tanelli's statement that "there will be additional followup if a comment like that goes up again" was not an unlawful threat. He noted that Tanelli had specifically told Miller that she was not in trouble and that the purpose of the meeting was to educate her about the Solicitation Policy. As to the "additional followup" if she reposted the message, the judge reasoned that "'additional followup' does not necessarily imply anything more than another educational meeting." He then noted that Tanelli's statement did not dissuade Miller from reposting her message and that she was not disciplined for doing so and stated that the lack of disciplinary followup "tend[s] to confirm that there had been no threat of discipline in the first place." Therefore, he declined to find a threat and dismissed the allegation.

On exception, the General Counsel argues that the judge failed to consider that Tanelli's statement "was made in the context of the Respondent's aggressive anti-union response" to the campaign, and that Tanelli engaged in another 8(a)(1) violation during this meeting—i.e., the disparate enforcement of the Respondent's Solicitation Policy in removing Miller's post. She also relies on the Board's subsequent decision in *Lush Cosmetics, LLC*, 372 NLRB No. 54 (2023), where the Board found an unlawful

---

determining the remedy in this case. Members Prouty and Wilcox did not participate in *AT&T Mobility* and express no view as to whether it was correctly decided. They apply it here as extant Board precedent for institutional reasons.

[10] The dissent makes much of the fact that the solicitation policy affirmatively assured employees that they had a right to solicit during nonworking time. We do not find that argument relevant as this case concerns discriminatory enforcement rather than the facial validity of the rule.

[11] The dissent's and the Respondent's arguments regarding the Respondent's tolerance of the "VOTE NO" t-shirt post are grounded on assertions that the post was not of a "similar character" to Miller's post because it did not seek signatures on a petition. However, "Distribution of literature or materials of any kind" was clearly defined in the FAQs to the Solicitation Policy as an example of activity that was prohibited under the policy. Thus, issues of solicitation versus distribution are a distinction without a difference here. Indeed, the Respondent and the dissent would draw such fine distinctions here between protected actions so

as to make it difficult for such actions to ever be found to be "of a similar character," and hence essentially impossible to find discrimination. We do not construe the Act or the *Register Guard* standard so narrowly, recognizing that employees must be given breathing room to fully exercise their Sec. 7 rights.

In addition, the Respondent and the dissent assert that even if the "VOTE NO" t-shirt post *was* of a similar character, it was an "isolated instance of digression" from its Solicitation Policy, relying on *Wal-Mart Stores*, 350 NLRB 879, 881 (2007). We disagree. In *Wal-Mart*, the Board discounted a single incident that occurred 7 years prior to its decision. By contrast, here, the Respondent permitted the "VOTE NO" posting mere months after it removed Miller's posting regarding the Juneteenth petition. Further, when Miller attempted to repost her message, the Respondent repeatedly removed it. And as noted above, there is testimonial evidence that the Respondent also permitted a posting regarding buttons and lanyards that was contrary to the plain terms of its Solicitation Policy. Therefore, we reject the Respondent's and the dissent's argument regarding an "isolated instance of digression."

threat on facts similar to those presented here and rejected many of the factors relied upon by the judge. We find merit in the General Counsel's arguments, and we reverse the judge and find that Tanelli made an unlawful threat to Miller.

Whether a statement alleged to violate Section 8(a)(1) is unlawful turns on whether, under the totality of the circumstances, it has a reasonable tendency to coerce employees in the exercise of their Section 7 rights. Id., slip op. at 3; see also, e.g., *KSM Industries,* 336 NLRB 133, 133 (2001) (citing cases). The employer's motive is immaterial.

Contrary to the dissent, we find that Tanelli's message about "additional followup" would have reasonably been understood by Miller to mean that further postings about the employees' terms and conditions of employment would result in discipline or other future reprisals. The judge concluded, and the dissent agrees, that "'additional follow up' does not necessarily imply anything further than another educational meeting." However, that implicit standard is contrary to established law, which, as explained, requires only that a statement have a reasonable tendency to coerce, not that a coercive interpretation of the statement is the only possible reasonable interpretation. Here, Miller had directly been told that her Juneteenth petition posting violated the company's Solicitation Policy. Thus, she could easily have understood the reference to "additional followup" as meaning future discipline and not merely further, superfluous "education."

Additionally, the employees here, including Miller herself, had posted a great number of prior messages criticizing the Respondent's employment policies and arguing for unionization in the previous weeks and months, and not one post had ever been removed. Thus, the removal of Miller's post was a highly unusual action, as Edwards' Chime message indicated, and a reasonable employee certainly could have perceived it as signaling a change in the Respondent's willingness to tolerate such posts. To be called in and told that her post would be removed and that there would be "additional follow up" if she posted her

message again would have a reasonable tendency to make an employee in her place fearful of future discipline.

Finally, as we noted above, the Board's decision in *Lush Cosmetics*, supra, which issued 3 weeks after the judge's decision, rejected much of the reasoning used by the judge here, and strongly supports finding a violation.[12] First, in *Lush,* the Board discounted the fact that the employee was told that they were not being disciplined. *Lush,* supra, slip op. at 3. Second, citing well-established precedent, the Board explained that whether or not the employee changed their behavior in response to the statement is not dispositive, nor is the employee's subjective interpretation of the statement. Id. Third, the absence of later discipline was deemed irrelevant by the Board. In short, and contrary to our dissenting colleague's contention, *Lush* contradicts numerous bases of the judge's rationale for finding Tanelli's statement to be lawful.

For all these reasons, we find that the judge erred in analyzing Tanelli's statement that "there will be additional follow up if a comment like that goes up again." We therefore reverse his dismissal of the allegation, and find that the Respondent, through Tanelli, unlawfully threatened Dana Miller in violation of Section 8(a)(1).

### III. SOLICITATION OF AND IMPLIED PROMISE TO REMEDY GRIEVANCES

### FACTS

On November 10, Respondent agent Michael Williams held a mandatory meeting with about 50 employees at JFK8. In this meeting, Williams talked at length about the Respondent's "open door" policy and how much the Respondent valued the "direct relationship" it had with its employees. He told them that "we rely on your feedback . . . to improve the workplace," and that "[w]e can't make improvements if we don't know what you're thinking, if we don't know your concerns."

Williams also urged the employees to take their concerns further up the chain of command if they were not getting a satisfactory resolution of their problem, stating as follows:

Your conduct in posting unsubstantiated allegations . . . is not acceptable . . . In the future, we ask you to refrain from making unsubstantiated allegations . . . on the [company intranet site]. *If you elect to continue such inappropriate conduct, the Company may consider your actions to amount to misconduct.*

Id., slip op. at 2 (emphasis added). The employee posted two subsequent messages critical of the company. He was not disciplined for any of his posts. The *Lush* Board rejected the respondent's contention that its message "was merely of a coaching nature," and found an unlawful threat. Id., slip op. at 2–3.

---

[12] The facts of *Lush* are as follows. In *Lush,* an employee posted a message about the employer's wage policies on a company intranet site similar to the VOA board. The message, citing the company's touting of its support for an organization that defended immigrants' rights, stated that: "Y'all should find a[n] org that supports Canadian immigrants that work in warehouses . . . . Before you stand on your soap box, pay your workers a livable wage. STARTING with your immigrant workers in your own company." Id., slip op. at 1. The employer deemed the message a violation of its "zero-tolerance [policy] for defamatory and/or personal attacks," and an HR representative sent the employee a letter stating that he had implied without support that the respondent was mistreating its manufacturing employees, and continuing:

That Open door policy we talk about all the time. It gives you direct access not just to your [Area Manager], but also to your [District Manager], right? Even if you have an issue and someone in HR is not resolving your issue, don't settle for that. Take it to the next level. Go see a [Vice President]. If that VP is not resolving your issue, go see the [Human Resources Manager], and so on and so forth.

Later in the presentation, Williams said:

[I]f you put something on the VOA board because your [Area Manager] or your [Operations Manager] has not responded, before you put it up there, the first thing I would do is say, "Hey, I need to see the [General Manager] or I need to see Senior [Operations] . . . . Yeah, you can put it on the VOA board, but some people don't like using the VOA board . . . . So escalate. That's the truth. Escalate. There's nothing wrong with that. You have a voice, we want you to use that voice.

At a November 11 meeting, Respondent agent Mike Rebell, like Williams, urged employees to take their complaints and concerns up the chain of command:

[I]f you are going to your [Area Manager] or maybe on the floor HR, if they are not able to answer your questions and get it resolved, escalate that up, go to the next level. Maybe it's the [Operations] Manager, maybe it's an HR Manager. But currently you have that direct working relationship all the way up to the GM and honestly even above and outside of the building if you choose to do that.

. . . .

[I]f you feel that you are not getting the response that you want or feel that you deserve, you can also escalate that if you are not getting that response you can go request a meeting with . . . depending on what it is, . . . maybe it's . . . the safety manager . . . [or] maybe it's requesting a meeting with the AGM, Assistant General Manager or maybe an [Operations] Manager. But if you are not getting that response you want currently you have that direct working relationship . . . all the way to the [General Manager], get the answer, continue to escalate that so you can get the answer.

At the same meeting, Respondent agent Ron Edison mentioned employees' ability to take their concerns to

Operations Managers and "up from there" if employees felt there was a barrier with their direct process manager but

emphasized "that should be your direct line of contact, is directly with your direct process path manager." He focused primarily on various existing means of management-employee communication such as "Connections," "Gemba walks," "birthday roundtables," and the VOA board, and he urged employees to use these mechanisms for "working directly together" with management.[13]

The judge found that none of the statements at issue contained an unlawful solicitation of grievances. He found Williams did not actually solicit employee grievances at the meeting and therefore was not in a position to offer any specific solutions. Rather, he found, Williams merely urged employees to direct their complaints to management at various levels pursuant to an open-door policy and in forums that were already available. His assessment of Rebell and Edison's presentations, which he considered together, was similar. Specifically, he found that their presentations largely explained existing forums for employees to express and resolve complaints and that they did not solicit particular grievances or offer to resolve them.

On exception, the General Counsel points to Williams' statements that the Respondent could not make improvements if it did not know what employees are thinking and that it is the managers' job to listen to employee concerns and improve working conditions as evidence that the Respondent solicited grievances and impliedly promised to remedy them. She also disputes the judge's reasoning that Williams, Rebell, and Edison were merely urging employees to direct their complaints to management in forums that were already available, arguing that employees were being sent a message that "the grievances they raised now were going to be remedied, and if they were not immediately remedied by raising them with their direct supervisors or on the VOA board, then they would be remedied if the employees escalated them to higher management, all in order to discourage employees from joining the Union." Unlike our dissenting colleague, we agree with the General Counsel that, contrary to the judge's finding, the Respondent unlawfully solicited and impliedly promised to remedy employee grievances.

### ANALYSIS

The principles regarding solicitation of grievances are well established. The solicitation of grievances during an

---

[13] Connections is a program that greets employees when they log into their computer. It asks them a few brief workplace questions, and employees may raise concerns in response to these questions. Gemba walks involve managers walking the floor of the facility and asking employees what they like and do not like about the company. Birthday roundtables are monthly meetings held for employees whose birthdays fall within the month. At the meetings, employees can talk with and raise concerns with the general manager or assistant general manager of the facility.

organizing campaign, if accompanied by a promise, express or implied, to remedy those grievances, violates Section 8(a)(1). *Mek Arden, LLC d/b/a Arden Post Acute Rehab*, 365 NLRB 1065, 1066 (2017) (citing *Maple Grove Health Care Center*, 330 NLRB 775, 775 (2000), enfd. 755 Fed.Appx. 12 (D.C. Cir. 2018)). It is the promise to remedy the grievance rather than the solicitation that constitutes the violation. Id. However, solicitation of grievances in the midst of a union campaign creates a rebuttable presumption of an implied promise to remedy the grievances. Id. The employer may rebut this presumption by, for instance, establishing that it had a past practice of soliciting grievances "in a like manner" prior to the campaign, or by clearly establishing that the statements at issue were not promises. Id. (citing *Mandalay Bay Resort & Casino,* 355 NLRB 529, 529 (2010)).

Here, we reverse the judge and find a violation.[14] Williams did indeed solicit grievances when he stated: "We can't make improvements if we don't know what you're thinking, if we don't know your concerns." Plainly, there is no way to interpret this other than Williams asking employees to express their grievances—or stated another way, their "concerns"—to management. That statement, in itself, gives rise to an inference that the Respondent was promising to remedy those grievances. See *Arden Post Acute Rehab*, 365 NLRB at 1066 (citing *Maple Grove Health Care Center*, 330 NLRB at 775) (solicitation in a preelection setting creates rebuttable presumption of promise to remedy). In a similar vein, Williams told the employees, "You have a voice, we want you to use that voice." Moreover, Williams' language went further, strongly suggesting that the Respondent intended to make "improvements" based on employees' concerns.

And there was much more. The employees were told over and over to seek out managers with their concerns. Williams stated: "[I]f you have an issue and someone in HR is not resolving your issue, . . . go see a vice president. If that VP is not resolving your issue, go see the [HR Manager], and so on and so forth." And Rebell stated: "If you feel that you are not getting the response that you want or feel that you deserve, . . . you can go request a meeting with . . . the safety manager [or] maybe it's requesting a meeting with the AGM, Assistant General manager or maybe an [Operations] Manager." The Respondent made numerous such solicitations of grievances, again giving rise to a presumption of an implied promise to remedy

them. See *Arden Post Acute Rehab*, supra at 1066; *Maple Grove Health Care*, supra at 775.

The basis for presuming an implied promise to remedy is clear here. Williams told the employees that if the manager they talked to "is not resolving your issue, don't settle for that. Take it to the next level." Similarly, Rebell told them that "if you are going to your [Area Manager] or maybe on the floor HR, if they are not able to . . . get it resolved, escalate that, go to the next level . . . [take it] all the way up to the GM and honestly, even above and outside of the building if you choose to do that." The message was clear: by taking their complaints or requests – that is, their "grievances"—from one person to another, up the managerial chain ("escalate . . . . escalate"), they will get the resolution they are seeking.

The Respondent argues that "[a]ny inference that the mere solicitation of grievances creates an implied promise to remedy those grievances evaporates when an employer has a practice of soliciting grievances in place prior to an organizational campaign." It is not unlawful, it argues, for an employer with a past practice of soliciting employee grievances to continue such a policy during an organizing campaign, nor is it unlawful to encourage employees to use preexisting avenues to voice their concerns, provide suggestions, or solicit grievances. Our dissenting colleague likewise argues that an employer can "tout its existing Open Door policy *as part of its campaign.*" (emphasis in original). In applying these principles, the Respondent and the dissent largely echo the judge. The essence of their argument is that the pertinent presentations simply reminded employees of preexisting avenues for raising their concerns, including its open-door policy and "encouraging direct manager communication."

We reject the Respondent's argument that any practice of soliciting grievances in place prior to a union campaign is sufficient to rebut the inference of an implied promise to remedy grievances. The Board has held that an employer cannot rely on its past practice if it "'significantly alters its past manner and methods of solicitation during the union campaign.'" *Mandalay Bay Resort & Casino,* 355 NLRB at 530 (quoting *House of Raeford Farms*, 308 NLRB 568, 569 (1992), enfd. mem. 7 F.3d 223 (4th Cir. 1993), cert. denied 511 U.S. 1030 (1994)).[15]

Here, there was no past practice of large meetings held by unknown agents of the Respondent telling employees that "[w]e can't make improvements if we don't know . . . your concerns," going on at length about the "open door

---

[14] In finding a violation, we rely on the remarks of Williams and Rebell. We find it unnecessary to pass on the remarks of Edison, as any finding of a violation would be cumulative and would not affect the remedy.

[15] In addition, the Board has relied upon employer references to unionization efforts during grievance solicitation meetings, which were present here, to show a deviation from a past practice of grievance solicitation. *Manor Care Health Services—Easton*, 356 NLRB 202, 221 (2010).

policy," and urging employees to ratchet things up until they (implicitly) got what they wanted. The fact that the Respondent referenced existing management-employee communication methods such as "Connections," "Gemba walks," "birthday roundtables," and the VOA board in the course of these comments signifies little. Contrary to its contention that it was simply following past practice by encouraging employees to use preexisting procedures, the Respondent was emphatically urging employees to scale the entire chain of command as they saw fit[16] until they got what they wanted. This is not soliciting grievances "in a like manner" as prior to the campaign.[17] Nor did the Respondent "clearly establish[]" that the statements in dispute were not promises. *Arden Post Acute Rehab*, 365 NLRB at 1066 (citing *Mandalay Bay*, 355 NLRB at 529).

Finally, in arguing that the Respondent's communications at the November meetings were protected by Section 8(c), our dissenting colleague views the Open Door policy in a vacuum. But our task in examining an allegation of unlawful solicitation of grievances is not to look solely at the policy, but instead to consider the overall context, including the coercive manner in which it was presented to employees. Here, as explained, the Respondent's remarks at the November meetings conveyed a sea change in its approach. Employees were now repeatedly urged to "escalate" their concerns as high in the chain of command as they needed to go to get the result they desired. Thus, the Respondent's remarks were not in fact consistent with its past practice.[18]

As the Respondent failed to demonstrate that its solicitation of grievances was in accord with its past practice or to establish that its statements were not promises, it failed to rebut the presumption arising from its solicitation of grievances in the midst of the union campaign. See *Arden Post Acute Rehab*, 365 NLRB at 1066; *Maple Grove Health Care Center*, 330 NLRB at 775. Accordingly, we reverse the judge and find that the Respondent violated

Section 8(a)(1) by soliciting and impliedly promising to remedy grievances.

### IV. CAPTIVE-AUDIENCE MEETINGS

In *Babcock & Wilcox Co.,* 77 NLRB 577 (1948), the Board held, without explanation, that the "language" and "legislative history" of Section 8(c) of the Act preclude the Board from holding that an employer violates Section 8(a)(1) when it requires employees to attend a captive-audience meeting. The Respondent stipulated that the employees here were required to attend many captive-audience meetings, during which the Respondent's agents made statements opposing union representation generally and the Union specifically. At one point in the campaign, the Respondent held meetings at its JFK8 facility every 45 minutes from 9 a.m. to p.m. and 7 p.m. to 4 a.m. 6 days a week. Managers personally notified employees that they were scheduled to attend, escorted them to the meetings, and scanned their ID badges to digitally record attendance. Pursuant to *Babcock & Wilcox*, the judge dismissed the General Counsel's allegations that these meetings were unlawful. The General Counsel argues that we should overrule *Babcock & Wilcox* and hold that captive-audience meetings and other similar mandatory employer-employee encounters violate Section 8(a)(1). The Respondent disagrees, contending that such meetings do not violate Section 8(a)(1) and are affirmatively protected under free speech principles, including those embodied in Section 8(c).

Consistent with "the authority to develop and apply fundamental national labor policy" that Congress has conferred upon us, *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 500 (1978), and informed by our "[c]umulative experience" doing so, *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 266 (1975) (quotations omitted), as well as a careful examination of the language and legislative history of Section 8(c), we have decided to overrule *Babcock & Wilcox*. For the reasons explained below, we conclude that captive-audience meetings violate Section 8(a)(1) because

---

[16] Indeed, Williams seemed to encourage employees to skip the VOA Board, instead calling on them to "escalate," including by requesting a meeting with the Assistant General Manager or the Operations Manager, while Rebell encouraged employees to go "all the way up to the General Manager and . . . even above and outside the building if you choose to do that."

[17] Building on the fact that employees "had the ability" to communicate with senior management under the Open Door policy, the dissent attempts to make the case that the November meetings marked no change from the Respondent's past practice regarding employee communication with higher-ups. That is distinctly not the case; there is a huge difference between telling employees that it is permissible for them to reach out to senior management and urging them over and over to escalate their concerns until they got what they wanted.

[18] There is also no merit to the dissent's contention that the combined effect of our decision here and in *Siren Retail d/b/a Starbucks*, 373

NLRB No. 135 (2024), will effectively silence employers' expression of their views on open-door policies in contravention of Sec. 8(c) and the First Amendment. In *Siren Retail*, we held that an employer violates Sec. 8(a)(1) by stating "that it will end its existing open-door policy if employees organize" because such a statement constitutes a threat of the loss of a benefit. Id., slip op. at 12 fn. 23. Here, contrary to our dissenting colleague's contention, we do not "find that it is also unlawful for employers to remind employees of long-standing open-door policies." Rather, as explained, we find that this Respondent violated Sec. 8(a)(1) because it went well beyond merely "reminding" employees of its existing policy—it repeatedly encouraged employees to escalate their concerns until they received the resolution they wanted—which constitutes an unlawful solicitation of grievances. Thus, our decision today does not require employers "to sit silently on the sidelines."

they have a reasonable tendency to interfere with and coerce employees in the exercise of their Section 7 right to freely decide whether or not to unionize, including the right to decide whether, when, and how they will listen to and consider their employer's views concerning that choice. Section 8(c) permits an employer to hold and express its views on unionization to employees, but only if no "threat of reprisal or force or promise of benefit" is made. Thus, Section 8(c) does not license employers to *compel* employees, on pain of discipline or discharge, to attend meetings where they are forced to listen to the employer's views, for such compulsion amounts to a "threat of reprisal" and is "without the protection of the First Amendment." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969).

Below, we first describe the legal background of the captive-audience meeting issue. We then provide the Board's first comprehensive analysis of that issue. That analysis leads to two conclusions. The first is that captive-audience meetings interfere with and coerce employees in the exercise of their Section 7 rights, in violation of Section 8(a)(1). The second is that free-speech principles, including those embodied in Section 8(c) and the First Amendment, do not insulate employers from liability for such violations. We do not, however, broadly prohibit employers from holding workplace meetings with their employees to express their lawful views on unionization in a noncoercive manner. Thus, we specify straightforward steps that employers may take to avoid violating Section 8(a)(1) when they wish to hold such a meeting, including by informing employees, in advance, of the subject matter and the voluntary nature of the meeting.[19]

## A. Background

In the years immediately following the 1935 enactment of the Act, the Board took the position that it required employers to maintain strict neutrality concerning unionization. See, e.g., *Nebel Knitting Co.*, 6 NLRB 284, 293–294 (1938), enfd. 103 F.2d 594 (4th Cir. 1939); *Virginia Ferry Corp.*, 8 NLRB 730, 736 (1938), enfd. 101 F.2d 103 (4th Cir. 1939). However, within a few years, the Supreme Court clarified that employers and unions are free to express their views on unionization, while also making clear that they may not interfere with, restrain, or coerce employees in the course of expressing those views.

In *NLRB v. Virginia Electric & Power Co.*, 314 U.S. 469 (1941), the Court reviewed a Board decision finding unfair labor practices based in part on the employer's speeches and written materials presented to employees. Id. at 476–477. In light of the employer's First

Amendment challenge, the Court remanded the case for the Board to explain whether its findings were based on the substance of the employer's statements alone or rather on the employer's entire course of conduct. Id. at 477–480. The Court distinguished between the expression of views, which was permitted, and coercive conduct "evidenced in part by speech," which was not permitted, observing:

> Neither the Act nor the Board's order here enjoins the employer from expressing its view on labor policies or problems, nor is a penalty imposed upon it because of any utterances which it has made. The sanctions of the Act are imposed not in punishment of the employer but for the protection of the employees. The employer in this case is as free now as ever to take any side it may choose on this controversial issue. But certainly conduct, though evidenced in part by speech, may amount in connection with other circumstances to coercion within the meaning of the Act. If the total activities of an employer restrain or coerce [its] employees in their free choice, then those employees are entitled to the protection of the Act. And in determining whether a course of conduct amounts to restraint or coercion, pressure exerted vocally by the employer may no more be disregarded than pressure exerted in other ways.

Id. at 477; see also *NLRB v. American Tube Bending Co.*, 134 F.2d 993, 994–995 (2d Cir. 1943) (applying *Virginia Electric & Power* and holding that the substance of an employer's letter and speech to employees "that a union would be against the employees' interests as well as the employer's" was not unlawful).

A few years later, in *Thomas v. Collins*, 323 U.S. 516 (1945), the Supreme Court held that the application of a Texas statute that required union organizers to register with the state and to obtain an "organizer's card" before soliciting union members violated the First Amendment. Under the Texas statute, a union organizer who had failed to register was enjoined from soliciting members and then was held in criminal contempt after he addressed a meeting of employees in connection with an upcoming union representation election. Id. at 520–524. The Court observed that the Act protects "workers' right to organize freely for collective bargaining" and further observed that included within this broader right is the "right fully and freely to discuss and be informed" concerning their organizational choice. Id. at 533–534. The Court also noted the distinction between protected "persuasion" and prohibited "coercion," observing:

---

[19] We decline at this time the General Counsel's request that we address circumstances other than those presented in this case (mandatory meetings with assembled employees), such as unscheduled one-on-one encounters between an agent of the employer and an employee.

[D]ecision here has recognized that employers' attempts to persuade to action with respect to joining or not joining unions are within the First Amendment's guaranty. *National Labor Relations Board v. Virginia Electric Power Co.*, 314 U.S. 469 [(1941)]. Decisions of other courts have done likewise. When to this persuasion other things are added which bring about coercion, or give it that character, the limit of the right has been passed. Cf. *National Labor Relations Board v. Virginia Electric & Power Co.*, supra. But short of that limit the employer's freedom cannot be impaired. The Constitution protects no less the employees' converse right.

Id. at 537–538 (footnotes omitted).

With this guidance from the Supreme Court in mind, in *Clark Bros. Co.*, 70 NLRB 802 (1946), the Board considered the legality under the Act of an employer's antiunion campaign speeches "made on the [employer's] premises during working hours." Id. at 804. The Board first held that making such a speech on work premises during working hours was unlawfully coercive because the employer "paid its employees for listening" and had "exclusive access to [them] in a matter relating to their organizational activities." Id. But the Board also separately held that "the conduct of the respondent in compelling its employees to listen to a speech on self-organization . . . independently constitutes interference, restraint, and coercion within the meaning of the Act." Id. As to this second holding, the Board reasoned that the Act guarantees employees the right to freely receive aid, advice, and information from others concerning their organizational rights and that that "freedom is meaningless . . . unless the employees are also free to determine whether or not to receive such aid, advice, and information." Id. at 805. The Board concluded that the employer's use of "its superior economic power"—its mandate that the employees attend a meeting where it would express its antiunion views—thus "independently violated Section 8(1) of the Act." Id. In response to the dissent of Member Reilly—who took the view, "as a matter of policy as well as established judicial precedent," that the employer had not committed a violation, id. at 813—the Board noted that the case involved "coercive acts," and "not mere expressions of opinions," such that its decision was consistent with the Supreme Court's guidance. Id. at 806.[20]

The Second Circuit enforced the Board's order. *NLRB v. Clark Bros. Co.*, 163 F.2d 373 (2d Cir. 1947). The court reasoned that the particular facts of the case did "not call for laying down so broad a rule" as the Board had, but it

noted that an employer should only be able to hold a captive-audience meeting "provided a similar opportunity to address [employees] were accorded representatives of the union." Id. at 376. Given that the employer had not provided such an equivalent opportunity, and had mounted an aggressive antiunion campaign that culminated in the captive-audience meeting soon before voting in a representation election was to begin, the court concluded that "the Board was justified in finding that the respondent's conduct was coercive and an interference with the employees' right to self-organization[.]" Id.

In 1947, Congress passed the Labor Management Relations Act, commonly referred to as the Taft-Hartley Act. It amended the National Labor Relations Act in many respects, including by making explicit that Section 7—which guarantees employees the right to self-organize, form, join, or assist unions, bargain collectively, and engage in other concerted activities—also protects employees' "right to refrain from any or all of such activities." As Senator Taft explained, this right to refrain "was always implicit" in the Act. 93 Cong. Rec. 7001 (June 12, 1947), reprinted in 2 NLRB, Legislative History of the Labor Management Relations Act, 1947 (hereinafter "2 LMRA Hist.") at 1623; see also *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 67 (2008) (explaining that the Taft-Hartley Act "emphasized" the right to refrain). In all other respects, Section 7 and Section 8(a)(1) of the Act remained unchanged. See H.R. Rep. No. 80-510 (hereinafter "Conference Report"), at 38-40 (1947), reprinted in 1 NLRB, Legislative History of the Labor Management Relations Act, 1947 (hereinafter "1 LMRA Hist.") at 542-544. Thus, the amendments did not narrow statutory protections for employees in any way.

With relatively little debate, Congress also included, among the Taft-Hartley Act's provisions, Section 8(c), which equally "protects speech by both unions and employers." *Brown*, 554 U.S. at 67. Section 8(c) provides:

> The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

29 U.S.C. § 158(c). This provision largely codifies the Supreme Court's decisions in *Virginia Electric & Power* and *Thomas*, as, in the Court's words, it "implements the First Amendment." *Gissel*, 395 U.S. at 617. As repeatedly reflected in the Taft-Hartley Act's legislative history and

---

[20] Member Reilly later served as a senior staff member of the Senate Committee that considered the Taft-Hartley Amendments and was one of two authors of the Senate Committee report accompanying that

legislation. See Gerard D. Reilly, *The Legislative History of the Taft-Hartley Act*, 29 GEO. WASH. L. REV. 285 (1960).

subsequently confirmed by the Supreme Court, Section 8(c) also "prevent[s] the Board from attributing antiunion motive to an employer on the basis of [its] past statements"—as relevant, for instance, to an allegation of an employer's unlawful retaliation against employees in violation of Section 8(a)(3) of the Act. *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 62 fn. 5 (1966) (citing Conference Report at 45, reprinted in 1 LMRA Hist. at 549); see also, e.g., H.R. Rep. No. 80-245 (hereinafter "House Report"), at 33 (1947), reprinted in 1 LMRA Hist. at 324; 93 Cong. Rec. 7002 (June 12, 1947) (statement of Senator Taft), reprinted in 2 LMRA Hist. at 1624. Senator Taft explained that, consistent with the text of Section 8(c), "the privilege of this subsection is limited to expression of 'views, arguments, or opinion,'" such that "[i]t has no application to statements which are acts in themselves or contain directions or instructions." 93 Cong. Rec. 7002 (June 12, 1947), reprinted in 2 LMRA Hist. at 1624.

The legislative history of the Taft-Hartley Act reflects little consideration of the issue of captive-audience meetings. Such meetings are not mentioned, for instance, in the House Report or the Conference Report. However, the report of the Senate Committee on Labor and Public Welfare characterized the Board's first holding in *Clark Bros.*—that, independent of the mandatory nature of the meeting, it is an unfair labor practice for an employer to make a speech concerning unionization "in the plant on working time"—as "too restrictive" and therefore recommended overruling that holding. S. Rep. No. 80-105 (hereinafter "Senate Report"), at 23–24 (1947), reprinted in 1 LMRA Hist. at 429–430. The Senate Report's single reference to *Clark Bros.* is the only one in the Taft-Hartley Act's voluminous legislative history.

In 1948, in *Babcock & Wilcox*, the Board again considered the scenario in which an employer had "compel[led] its employees" to attend a meeting during which it expressed its antiunion views. 77 NLRB at 578. Overruling *Clark Bros.* in its entirety, the Board found that the captive-audience meeting was not unlawful on the ground that "the language of Section 8(c) of the amended Act, and its legislative history, make it clear that the doctrine of the *Clark Bros.* case no longer exists as a basis for finding unfair labor practices in circumstances such as this record discloses." Id. The Board offered no further analysis beyond this statement. Rather, it treated the meaning of Section 8(c) as self-evident. It did not explain how the language of Section 8(c) or its legislative history permits employers not only to express their views on unionization, but also to compel employees, on pain of discipline or discharge, to attend meetings where those views are expressed.

Three years later, in *Bonwit Teller, Inc.*, 96 NLRB 608 (1951), the Board found that an employer violated Section 8(a)(1) and committed objectionable conduct sufficient to set aside an election when it held a captive-audience meeting but failed to grant the union's request to hold an equivalent meeting on the employer's premises under similar conditions. Id. at 611. The Board found that the employer's conduct—actively campaigning against the union, including by holding a captive-audience meeting while rejecting the union's request for its own captive-audience meeting—constituted discriminatory enforcement of a no-solicitation rule. Id. at 611–612. The Board further found that "an even more fundamental consideration" for deeming the employer's conduct unlawful was that "the right of employees, guaranteed by Section 7 of the Act, freely to select or reject representation by a labor organization necessarily encompasses the right to hear both sides of the story under circumstances which reasonably approximate equality." Id. at 612. Accordingly, in the Board's view, "an employer who chooses to use [its] premises to assemble [its] employees and speak against a union may not deny that union's reasonable request for the same opportunity to present its case, where the circumstances are such that only by granting such request will the employees have a reasonable opportunity to hear both sides." Id. The Board rejected the dissent's view that its findings were barred by Section 8(c), as it noted that an employer is "free to exercise fully its right of free speech" as protected by that provision. Id. at 615. The Second Circuit affirmed the Board's order in relevant part, on the ground that the employer had discriminatorily applied its no-solicitation rule. *Bonwit Teller, Inc. v. NLRB*, 197 F.2d 640, 645–646 (2d Cir. 1952).

Just 2 years later, the Board again changed the applicable legal framework in a pair of cases issued the same day, *Livingston Shirt Corp.*, 107 NLRB 400 (1953), and *Peerless Plywood Co.*, 107 NLRB 427 (1953). In *Livingston Shirt*, the Board overruled *Bonwit Teller*, concluding that an employer did not commit an unfair labor practice when, after holding its own captive-audience meetings, it barred the union seeking to represent its employees from holding similar meetings on its premises. 107 NLRB at 404-409. The Board reasoned that Section 8(c)'s protection of free speech does not have "real meaning" if it "gives rise to an obligation on the part of the employer to accord an equal opportunity for the union to reply" to an employer's captive-audience meeting with an equivalent meeting of its own. Id. at 405–406. The *Livingston Shirt* Board admitted, however, that in the companion case, *Peerless Plywood*, it was "deviating from the strict logic" of its decision. Id. at 408. In *Peerless Plywood*, the Board concluded, in the context of a representation case in which the

Board assesses allegations of objectionable campaign conduct, that "employers and unions alike will be prohibited from making election speeches on company time to massed assemblies of employees within 24 hours before the scheduled time for conducting an election." 107 NLRB at 429. The Board reasoned that "the combined circumstances of (1) the use of company time for preelection speeches and (2) the delivery of such speeches on the eve of the election tend to destroy freedom of choice and establish an atmosphere in which a free election cannot be held." Id. at 429–430.

In the years since, the Board has permitted employers to strictly control employees during captive-audience meetings conducted more than 24 hours in advance of an election. To be sure, in some cases, the Board has found that an employer violated the Act when it imposed discipline on employees who made statements or asked questions during a captive-audience meeting.[21] More recently, however, the Board has found that while an employer cannot discharge an employee for making statements or asking questions at a captive-audience meeting, it may still lawfully take other disciplinary measures short of discharge to "refus[e] to allow others to express their opposing, pro-union viewpoints during the meeting." *Electrolux Home Products*, 368 NLRB No. 34, slip op. at 4 & fns. 13–14 (2019); see also *Eagle-Picher Industries*, 331 NLRB 169, 169 (2000). The Board has also found that employers can effectively preempt employee statements or questions by excluding certain employees—like known union supporters—from meetings that are mandatory for other employees.[22]

## B. Analysis

Congress conferred on the Board "the authority to develop and apply fundamental national labor policy," *Beth Israel Hospital*, 437 U.S. at 500, including the authority to change its view on issues presented under the Act. See *J. Weingarten, Inc.*, 420 U.S. at 265–266; see also *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 786–787 (1990).[23] Today we do what the *Babcock & Wilcox* Board

failed to do in 1948: carefully examine the issues presented by captive-audience meetings and provide a reasoned explanation for a change in the Board's view. We explain both how such meetings infringe on employees' freedom to exercise their rights under Section 7 of the Act and why, contrary to *Babcock & Wilcox*, Section 8(c) does not insulate employers from unfair labor practice liability in this context. While the Board's approach to captive-audience meetings has been fixed for decades, it has never been fully or persuasively explained. Captive-audience meetings are now a common feature of campaigns.[24] Given the importance of the issue, we believe a reexamination is long overdue. That reexamination leads us to overrule *Babcock & Wilcox* and its progeny, for the reasons that follow.

Under the legal status quo, an employer can compel employees, under the threat of discipline or discharge, to attend meetings where they are required to listen to the employer's views on whether they should unionize or not. As just noted, employers frequently opt to do so. An employer can hold these meetings repeatedly, for whatever length of time it wants, and whenever it wants, with the sole exception, pursuant to *Peerless Plywood*, that it cannot do so within 24 hours of a representation election. An employer can observe employees at these meetings, seeing, among other things, with whom they associate and how they react to what they hear. An employer can silence, or even banish, employees who would express their own views or even just ask questions. It should be clear, then, that a captive-audience meeting is an extraordinary exercise and demonstration of employer power over employees in a context where the Act envisions that employees will be free from such domination. We thus prohibit captive-audience meetings.

Neither Section 8(c) nor the First Amendment precludes the Board from finding captive-audience meetings unlawful. The plain meaning of Section 8(c)'s statutory text is that employers and unions may *noncoercively* express their views concerning unionization and that the substance

---

[21] See, e.g., *F.W. Woolworth Co.*, 251 NLRB 1111, 1111, 1113–1115 (1980), enfd. 655 F.2d 151 (8th Cir. 1981); *Howell Metal Co.*, 243 NLRB 1136, 1137 (1979); *J.P. Stevens & Co.*, 219 NLRB 850, 850 (1975), enfd. 547 F.2d 792 (4th Cir. 1976); *Prescott Industrial Products Co.*, 205 NLRB 51, 51–52 (1973), enf. denied in relevant part 500 F.2d 6 (8th Cir. 1974).

[22] See, e.g., *Mueller Brass Co.*, 220 NLRB 1127, 1127, 1138–1139 (1975), enf. denied on other grounds 544 F.2d 815 (5th Cir. 1977); *Spartus Corp.*, 195 NLRB 134, 134, 141 (1972), enfd. on other grounds 471 F.2d 299 (5th Cir. 1973); *Luxuray of New York*, 185 NLRB 100, 100 & fn. 1 (1970), enfd. in part on other grounds 447 F.2d 112 (2d Cir. 1971).

[23] The Supreme Court has made clear that administrative agencies may change their legal rules consistent with the Administrative Procedure Act, so long as they as they provide a reasoned explanation for doing so. See *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–222

(2016); see also *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514–516 (2009); *National Cable & Telecommunications Assn. v. Brand X Internet Services*, 545 U.S. 967, 981–982 (2005).

[24] One study of about 1,000 Board-supervised representation elections showed that 89 percent of employers held captive-audience meetings, and over half of employers held more than five captive-audience meetings in the runup to an election. See Kate Bronfenbrenner, *No Holds Barred: The Intensification of Employer Opposition to Organizing*, Economic Policy Institute Briefing Paper #235 at 10 Tbl. 3 (2009), available at https://www.epi.org/publication/bp235/. The facts of this case similarly illustrate how frequently employers may hold captive-audience meetings during representation campaigns. As mentioned above, at one point in the campaign, the Respondent was holding meetings at its JFK8 facility every 45 minutes, 6 days a week.

of those views cannot be held against them. That unambiguous text does not suggest that, in addition to protecting their speech, Section 8(c) also permits employers to *compel* employees to listen to their speech. Such permission would be out of keeping with the First Amendment, which protects the right to free expression but does not grant the right to a captive audience nor authorize employer coercion in the labor relations setting. The Taft-Hartley Act's legislative history confirms as much. It makes clear, as the Supreme Court has explained, that the purpose of Section 8(c) is to permit employers and unions to noncoercively express their views on unionization and to prohibit those views from being used against them as evidence of an unlawful motive for other challenged actions. The single congressional report that briefly addresses the Board's decision in *Clark Bros.* references only one of the holdings there—that employers may not hold meetings to express their views during "working time"—and not the decision's independent condemnation of the practice of *compelling* employees to attend those meetings. In any case, that report's origins caution against relying on it to support a broad reading of Section 8(c).

### 1. Section 8(a)(1)

Section 7 of the Act provides, in most relevant part, that employees "shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities." 29 U.S.C. § 157. Section 8(a)(1) enforces Section 7 by making it unlawful for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7]." Id. §

158(a)(1). "The broad purpose of [Section] 8(a)(1) is to establish 'the right of employees to organize for mutual aid without employer interference.'" *Exchange Parts*, 375 U.S. at 409 (quoting *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 798 (1945)). Accordingly, "[t]he basic test for an 8(a)(1) violation . . . is whether—regardless of intent—the employer engaged in conduct that reasonably tends to interfere with the free exercise of employee rights under the Act." *MEI-GSR Holdings, LLC d/b/a Grand Sierra Resort & Casino/HG Staffing, LLC*, 365 NLRB 751, 752 (2017).[25]

The Board's traditional interpretation of the statutory phrase "interfere with" is consistent with its ordinary meaning. See, e.g., *Standard-Coosa-Thatcher Co.*, 85 NLRB 1358, 1360 (1949) ("Inherent in the very nature of the rights protected by Section 7 is the concomitant right of privacy in their enjoyment—'full freedom' from employer intermeddling, intrusion, or even knowledge."). Accordingly, with judicial approval, the Board has long and consistently found that employers violate Section 8(a)(1) when they intrude on the privacy and autonomy of employees by, for instance, surveilling, interrogating, or polling them with regard to their exercise of Section 7 rights.[26] These protections for employees' privacy and autonomy are necessary to make Section 7 rights meaningful, given the power that employers have over employees in the workplace—power that the Act and the Supreme Court explicitly recognize.[27]

Captive-audience meetings intrude on this protected sphere of employee privacy and autonomy and reasonably tend to interfere with employees' exercise of Section 7 rights in at least three distinct ways. First, captive-audience meetings impinge on an employee's "Section 7 right to choose, free from any employer coercion, the degree to

---

[25] See also *American Freightways Co.*, 124 NLRB 146, 147 (1959) ("It is well settled that the test of interference, restraint, and coercion under Section 8(a)(1) of the Act does not turn on the employer's motive or on whether the coercion succeeded or failed. The test is whether the employer engaged in conduct which, it may reasonably be said, tends to interfere with the free exercise of employee rights under the Act.").

[26] See, e.g., *McCullough Environmental Services*, 306 NLRB 345, 345, 347–348 (1992) (interrogation and impression of surveillance), enfd. in relevant part 5 F.3d 923 (5th Cir. 1993); *Beretta U.S.A. Corp.*, 298 NLRB 232, 232 (1990) (impression of surveillance), enfd. mem. 943 F.2d 49 (4th Cir. 1991); *Belcher Towing Co.*, 265 NLRB 1258, 1258, 1266–1267 (1982) (surveillance), enfd. in relevant part 726 F.2d 705 (11th Cir. 1984) (per curiam); *Price's Pic-Pac Supermarkets, Inc.*, 256 NLRB 742, 742, 745–748 (1981) (interrogation, impression of surveillance, and polling), enfd. 707 F.2d 236 (6th Cir. 1983); *Presbyterian/St. Luke's Medical Center*, 258 NLRB 93, 93, 102 (1981) (interrogation), enfd. 723 F.2d 1468 (10th Cir. 1983); *Rich's Precision Foundry, Inc.*, 250 NLRB 1317, 1317, 1319 (1980) (interrogation and impression of surveillance), enfd. 667 F.2d 613 (7th Cir. 1981); *Interthern, Inc.*, 235 NLRB 693, 693–694 (1978) (interrogation and surveillance), enfd. in relevant part 596 F.2d 267 (8th Cir. 1979); *P.S.C. Resources, Inc.*, 231

NLRB 233, 233, 236 (1977) (interrogation), enfd. 576 F.2d 380 (1st Cir. 1978); *Head Ski Division, AMF, Inc.*, 222 NLRB 161, 161, 171 (1976) (interrogation and polling), enfd. sub nom. in relevant part *Midwest Regional Joint Bd., Amalgamated Clothing Workers of America, AFL–CIO v. NLRB*, 564 F.2d 434 (D.C. Cir. 1977); *Historic Smithville Inn*, 169 NLRB 78, 78–84 (1968) (interrogation, surveillance, and polling), enfd. 414 F.2d 1358 (3d Cir. 1969); *Miller Redwood Co.*, 164 NLRB 389, 389 (1967) (interrogation and impression of surveillance), enfd. 407 F.2d 1366 (9th Cir. 1969); *Cold Spring Granite Co.*, 101 NLRB 786, 786–787 (1952) (interrogation and surveillance), enfd. 208 F.2d 163 (8th Cir. 1953).

[27] See 29 U.S.C. § 151 (describing the "inequality of bargaining power between employees . . . and employers"); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 240 (1978) (describing employees as persons "over whom the employer, by virtue of the employment relationship, may exercise intense leverage"); *Gissel*, 395 U.S. at 617 (describing "the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear").

which [they] will participate in the debate concerning representation,"[28] which is an aspect of the employee's more fundamental right to be let alone with respect to the exercise of rights under the Act. Second, captive-audience meetings can readily serve as a mechanism for employers to observe and surveil employees as they address the exercise of employees' Section 7 rights. Finally, because the employer has compelled employees to attend captive-audience meetings on pain of discipline or discharge, the employer's message in the meeting urging rejection of or support for the union is reasonably likely to take on a similarly coercive character. Just as employees may reasonably conclude that they have no real choice but to attend the meeting, so may employees reasonably conclude that, in fact, they do not have free choice concerning union representation. The employer's ability to require attendance at the meeting demonstrates the employer's economic power over the employees and reasonably tends to inhibit them from acting freely.

To begin, when employers compel employees to attend captive-audience meetings under threat of discipline or discharge, they force them to participate, at least as listeners, in the debate concerning union representation. The power to compel attendance at captive-audience meetings is not an incident of Section 8(c)'s protection of employers' speech. Instead, exercising the power to compel attendance is quintessentially conduct by which employers "interfere with" employees' exercise of their own Section 7 rights. To be sure, an employer generally has the prerogative to dictate the work tasks and activities that fill its employees' working time, see, e.g., *Peyton Packing Co.*, 49 NLRB 828, 843 (1943) ("Working time is for work."), enfd. 142 F.2d 1009 (5th Cir. 1944), but when an employer compels its employees to attend a captive-audience meeting, it is not exercising that prerogative. Rather, it is meddling in the decision-making sphere that, under the Act, belongs exclusively to employees: namely, whether, when, and how employees choose to exercise their Section 7 rights or to refrain from doing so. It is well established that an employer may not "condition[] an employee's continued employment on the employee's abandonment of [their] Section 7 rights." *Intercon I (Zercom)*, 333 NLRB 223, 223 fn. 4 (2001). To hold otherwise would be to eviscerate the rights granted by the Act. Compelling employees to attend a captive-audience meeting effectively

conditions their employment on the abandonment of their Section 7 rights.

As the Supreme Court has explained, Section 7 guarantees "workers' right to organize freely for collective bargaining," and that right "comprehends whatever may be appropriate and lawful to accomplish and maintain such organization," including the "right fully and freely to discuss and be informed concerning this choice." *Thomas*, 323 U.S. at 533–534. A captive-audience meeting overrides employees' right to *freely* be informed about unionization—or not. In the context of a political election, being compelled to attend a party's campaign meeting would rightly be denounced as antithetical to voters' freedom of choice. The same should be true in the context of union representation elections, not least because, as the Supreme Court has recognized, employees are vulnerable in a way that typical independent voters are not, given employees' economic dependence on the employer. See, e.g., *Gissel*, 395 U.S. at 617–618.

The compelled participation that the Act specifically protects against is also irreconcilable with American law's more general focus on protecting the "unwilling listener's interest in avoiding unwanted communication," despite the communicators' wish to express their views. *Hill v. Colorado*, 530 U.S. 703, 716–717 (2000) (upholding state law preventing protesters from approaching entrants to health clinic). That interest "is an aspect of the broader 'right to be let alone'" that Justice Brandeis characterized as "'the most comprehensive of rights and the right most valued by civilized men.'" Id. at 717 (quoting *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting)). Thus, while the "right to persuade" is an essential right "protected by the First Amendment, as well as by federal statutes," id. at 717–718 (internal citation omitted), like the Act's Section 8(c), it remains the case that "'no one has a right to press even 'good' ideas on an unwilling recipient,'" id. at 718 (quoting *Rowan v. U.S. Post Office Dept.*, 397 U.S. 728, 738 (1970)). Accordingly, where "'the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure,'" the need to protect such unwilling listeners is at its zenith. Id. (citing *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975); *Lehman v. Shaker Heights*, 418 U.S. 298 (1974)). By contrast, when a person is not captive—like the pedestrian who can readily walk away or the television viewer who can easily change the channel—"the burden

---

[28] *Allegheny Ludlum Corp.*, 333 NLRB 734, 741 (2001) (addressing employer's antiunion campaign video), enfd. 301 F.3d 167 (3d Cir. 2002); accord *First American Enterprises d/b/a Heritage Lakeside*, 369 NLRB No. 54, slip op. at 4–5 (2020) (addressing employer's request that an employee encourage another employee to vote against union representation); *Smithfield Packing Co.*, 344 NLRB 1, 3–5 (2004) (addressing

employer handing employee a "Vote No" stamp to mark employer's product), enfd. sub nom. *United Food & Commercial Workers Local 204 v. NLRB*, 447 F.3d 821 (D.C. Cir. 2006); *Dawson Construction Co.*, 320 NLRB 116, 117 (1995) (addressing employer ordering employee to hold "reserve gate" sign indicating employer's view concerning jobsite picket of another employer).

normally falls upon the [person] to 'avoid further bombardment.'" *Erznoznik*, 422 U.S. at 210–211 (quoting *Cohen v. California*, 403 U.S. 15, 21 (1971)). In light of Section 7's guarantees, employees in the workplace have a legitimate interest in avoiding unwanted communication concerning the exercise of their Section 7 rights. Captive-audience meetings are particularly powerful tools to force a message onto unwilling listeners. Employees summoned by their employer to such meetings cannot simply walk away to avoid hearing views that they would rather not hear, unless they are prepared to lose their jobs or suffer other discipline. Under the Act and the First Amendment, employers undoubtedly have the right to persuade, but that right must accommodate employees' right to be left alone in the sphere protected by the Act, just as in other settings the right of a speaker does not override the right of an unwilling listener. Employers may express their views on unionization, but they may not compel employees to listen to them.

Captive-audience meetings intrude on employees' private sphere surrounding Section 7 rights in a second way by enabling employers to observe and monitor employees in a series of employer-structured events.[29] To begin, employees directed to attend a captive-audience meeting must choose whether or not to comply with the employer's order. This puts employees to the sort of employer-compelled "observable choice" concerning union support that the Board has prohibited in a variety of settings.[30] Next, captive-audience meetings let employers observe the behavior of employees in an employer-controlled setting that will reasonably tend to reveal their sentiments concerning unionization. Obviously, employees who speak out in opposition to the employer's views—perhaps because they feel pressure to do so[31]—will be noticed by the employer, as will employees who ask questions. In turn, employees who speak might well fear that they have exposed themselves to reprisal because they have frustrated the employer's expression of its own views, to which employees have been compelled to listen. But even employees who do not speak are subject to observation at the meeting—a meeting they must attend. An employer might monitor where employees sit (for instance, whether someone sits and talks with known union supporters or opponents) and other nonverbal behaviors (like raised eyebrows, rolled eyes, or darting glances) in response to the employer's statements. In sum, captive-audience meetings subject employees to the employer's scrutiny, as employees surely understand. Such scrutiny tends to interfere with the exercise of Section 7 rights.[32]

Finally, the Supreme Court's recognition in *Gissel*, 395 U.S. at 617, that a realistic appraisal of an employer's communications about unionization must account for "the economic dependence of the employees on their employers" and "the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear" applies with particular force to statements made during a captive-audience meeting. The directive to attend the meeting, on pain of discipline or discharge, necessarily drives home to employees that the employer controls their participation in the election campaign by means of its economic power over them. The captive-audience context, in turn, clearly communicates to employees that they lack the genuine freedom to choose whether, when, and how to participate in the choice concerning union representation, just as they lacked the freedom to choose whether to attend the meeting. This context, then, implicates the Supreme Court's distinction between free speech and coercive speech in the labor context. As the Court has observed, an employer's expression of views is not protected when to "persuasion other things are added which bring about coercion, or give it that character." *Thomas*,

---

[29] For an example of such observation and monitoring, see *Sysco Grand Rapids, LLC*, 367 NLRB No. 111, slip op. at 14 (2019) (employer "convened mandatory small group meetings every week or every other week" and "[e]mployees' reactions at these meetings"—including "employee demeanor and reactions to supervisors' statements"—"were recorded in a Company database"), enfd. in part mem. 825 Fed.Appx. 348 (6th Cir. 2020).

[30] See, e.g., *Allegheny Ludlum*, 333 NLRB at 740 (employers' request that employees participate in antiunion campaign videotape); *Smithfield Packing*, 344 NLRB at 3–4 (employee handed "Vote No" stamp to mark employer's product); *Dawson Construction*, 320 NLRB at 117 (employee ordered by employer to hold "reserve gate" sign indicating employer's view concerning jobsite picket of another employer); *Scientific Atlanta, Inc.*, 278 NLRB 467, 467 (1986) (employer required employees to disseminate antiunion literature).

[31] As already observed, a captive-audience meeting effectively forces employees to participate in the debate over unionization, under terms

dictated by the employer. The pressures created by a captive-audience meeting are not hard to grasp.

First, the employer's expression of views might be provocative, even deliberately so, to supporters of the union, and so they may reactively speak out. The desire to speak may be especially strong because employees have no comparable power to summon their coworkers to a meeting, at work or otherwise. Thus, the occasion created by an employer's captive-audience meeting might be viewed by union supporters as a rare opportunity to rebut the employer's views in the workplace. Meanwhile, a supporter's silence might be seen by coworkers as reflecting a lack of courage or conviction, creating pressure on supporters to speak out. In these respects, it is the employer's decision to compel attendance at the meeting that tends to interfere with employees' ability to choose when, how, and to what degree to exercise their Sec. 7 rights.

[32] As noted, the Board's decisions have long prohibited employers from surveilling employees or giving employees the impression that they are under surveillance, because this intrusive practice inhibits employees from freely exercising their Sec. 7 rights.

323 U.S. at 537. Compelling employees to listen to the employer's views adds coercion to persuasion.[33]

For each of these reasons, captive-audience meetings violate Section 8(a)(1) of the Act. They impermissibly demonstrate to employees that their employer's power over them in the workplace extends to the denial of the exercise of the rights guaranteed by Section 7.

### 2. Free-speech principles

A careful examination of Section 8(c) of the Act—which the *Babcock & Wilcox* Board failed to do—demonstrates that it does not immunize employers who conduct captive-audience meetings. The Supreme Court has repeatedly held that "people are entitled to rely on the law as written," such that "when the meaning of the statute's terms is plain," the analysis "is at an end." *Bostock v. Clayton County*, 590 U.S. 644, 673–674 (2020).[34] Below, we first explain that the analysis here appropriately starts and ends with the text of Section 8(c). Its plain meaning is that employers may noncoercively express their views on unionization, but they may not coerce employees to listen to them. We then explain that even if Section 8(c)'s legislative history is consulted, it confirms that Section 8(c) was not intended to shield employers from liability under Section 8(a)(1) for compelling attendance at a captive-audience meeting. Instead, it was intended to prevent the Board from using the content of an employer's lawful expression of its views as evidence of an unlawful motive in connection with an unfair labor practice, like unlawful retaliation under Section 8(a)(3) that, unlike unlawful interference under Section 8(a)(1), requires proof of motive. Last, we explain that, like Section 8(c), the First Amendment does not shield employers from liability under Section 8(a)(1) for compelling attendance at a captive-audience meeting. As the Supreme Court has explained, "[a]ny assessment of the precise scope of employer expression, of course, must be made in the context of its labor relations setting," and, "[t]hus, an employer's rights cannot outweigh the equal rights of the employees to associate freely." *Gissel*, 395 U.S. at 617. Prohibiting

captive-audience meetings ensures the proper balance by not interfering with employers' right to express their views on unionization, while protecting employees' right to decide, for themselves, whether, when, and how to engage with those views.

#### a. Section 8(c)'s text

Section 8(c), as noted, provides:

> The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

29 U.S.C. § 158(c). Section 8(c)'s unambiguous meaning is that employers may noncoercively *express* their views on unionization, but they may not *compel* employees to listen to them. On its face, Section 8(c) does not address captive-audience meetings. That fact is telling. When an employer compels its employees to attend a meeting, it is not "expressing" or "disseminating" any "views, argument, or opinion" in the "ordinary, contemporary, common meaning" of those words. *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotation marks omitted).[35] As the Supreme Court's cases in the free speech context illustrate, expressing or disseminating a view is distinct from compelling someone to listen to it. Prohibiting compulsion does not impermissibly interfere with expression or dissemination. Had Congress intended not only to protect employers' freedom to express their views, but also to immunize them from unfair labor practice liability for compelling employees to listen to their views, it surely would have said so specifically.

An employer's act of compelling employees to attend a captive-audience meeting is thus not Section 8(c)-protected expressive speech. This distinction between coercive conduct prohibited by Section 8(a)(1) and speech protected by Section 8(c) has been explicitly or implicitly drawn by the Board in analogous contexts, with judicial

---

[33] In this regard, the subjective reactions of employees to being compelled to attend a captive-audience meeting are irrelevant under the established standard, which considers only whether the challenged conduct reasonably tends to interfere with, restrain, or coerce employees in the exercise of their Sec. 7 rights. See, e.g., *American Freightways Co.*, 124 NLRB at 147.

[34] See also, e.g., *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013) ("[W]hen [a] statute's language is plain," the statute "is to [be] enforce[d] . . . according to its terms."); *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) (same); *Dodd v. United States*, 545 U.S. 353, 359 (2005) (same); *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (same).

[35] The ordinary meaning of the words used in Sec. 8(c) supports our understanding of what that section protects and what it does not. A

"view" is a "[m]ode of looking at anything; esp., manner of regarding any subject of thought; conception; opinion; judgment; as, to state one's *views* of a debated policy." *View*, Webster's New International Dictionary 2842 (2d ed. 1934). An "argument" is "[a] reason or reasons offered in proof, to induce belief, convince the mind, or persuade to action; reasoning expressed in words; as, an *argument about, concerning*, or *regarding* a proposition, *for* or *in favor of* it, or *against* it." *Argument*, Webster's New International Dictionary 147 (2d ed. 1934). An "opinion" is "[t]hat which is opined; belief stronger than impression, less strong than positive knowledge; settled judgment in regard to any point; a notion or conviction founded on probable evidence; a belief; a view; a judgment; as, based only on *opinion*; imprisoned for one's *opinions*." *Opinion*, Webster's New International Dictionary 1708 (2d ed. 1934).

approval.[36] In *Allegheny Ludlum*, for instance, the employer, as part of its antiunion campaign, prepared a video "as to why employees should vote against representation." 333 NLRB at 735. Under Section 8(c), the Board observed, "employers have the right to present noncoercively their position regarding a union organizing campaign, including through the use of antiunion campaign videotapes[.]" Id. at 738. But the employer crossed the line when it coerced employees, including by individually soliciting them, to appear in the video. Id. at 740–743. This was a straightforward manifestation of the Supreme Court's rule that "[a]ny assessment of the precise scope of employer expression . . . must be made in the context of its labor relations setting," such that "an employer's rights cannot outweigh the equal rights of the employees to associate freely[.]" *Gissel*, 395 U.S. at 617. Accordingly, the Third Circuit, in affirming the Board's decision, found that it "reasonably balance[d] the rights created under sections 8(a)(1) and 8(c)." *Allegheny Ludlum*, 301 F.3d at 179. We strike that same balance in prohibiting captive-audience meetings.

Finding a violation of Section 8(a)(1) based on compelling employees to attend a captive-audience meeting does not require the Board to rely on the employer's expression of views, argument, or opinion as "evidence of" the unfair labor practice.[37] That prohibition, as the Supreme Court has explained, is intended "to prevent the Board from attributing antiunion motive to an employer based on [its] past statements." *Linn*, 383 U.S. at 62 fn. 5 (citing Conference Report at 45, reprinted in 1 LMRA Hist. at 549). Such a motive is required to prove only certain violations, like an employer's retaliation, in violation of Section 8(a)(3), for an employee's exercise of Section 7 rights. The test for interference and coercion under Section 8(a)(1), by contrast, "does not turn on the employer's motive." *American Freightways*, 124 NLRB at 147. Accordingly, in cases such as *Allegheny Ludlum*, the violation of Section 8(a)(1) is based not on the employer's expression of views—whether in a video, literature, or paraphernalia—but rather on its pressuring and coercing

employees to participate in or accept the expression. In the captive-audience context, similarly, the Section 8(a)(1) violation turns not on the substance of the employer's views, but rather on the employer's use of compulsion: the threat, whether explicit or implicit, that employees will suffer discipline, discharge, or some other adverse consequence if they fail to attend the meeting. Employers retain full freedom to express their views on unionization to employees in the workplace, provided that they do not compel employees to listen to them.

Moreover, for the reasons articulated above, an employer's message in a captive-audience meeting cannot meet the explicit requirement of Section 8(c) that, to be protected, an employer's views must "contain[] no threat of reprisal." As explained, by compelling employees to attend a captive-audience meeting and communicating its own message there, the employer creates a reasonable tendency that economically dependent employees will feel inhibited from exercising free choice as to whether, when, and how to participate in the decision concerning union representation. This tendency is eliminated if the employer expresses its views to employees who voluntarily choose to attend such a meeting, because such a meeting does not carry the threat of discipline or discharge for not attending.

#### b. Section 8(c)'s legislative history

Because the language of Section 8(c) is unambiguous, as we have shown, there is no need to consider its legislative history. See *Bostock*, 590 U.S. at 673–674. But even if we were to consider the legislative history, as a whole it confirms that Section 8(c) was *not* intended to shield employers from liability under Section 8(a)(1) for compelling attendance at a captive-audience meeting. Rather, Section 8(c) was intended to prevent the Board from using the content of an employer's lawful expression of views as evidence of an unlawful motive in connection with an unfair labor practice that, unlike unlawful interference under Section 8(a)(1), requires proof of motive. The sole piece of legislative history that even mentions *Clark Bros.*

---

[36] See, e.g., *Allegheny Ludlum Corp.*, 333 NLRB at 739–745 (holding that soliciting individual employees to appear in employer's campaign videos was unlawfully coercive conduct); *Reno Hilton*, 319 NLRB 1154, 1156 (1995) (holding that requiring employees to wear employer's campaign T-shirts was unlawfully coercive conduct); *Fieldcrest Cannon, Inc.*, 318 NLRB 470, 470, 496 (1995) (same), enfd. in relevant part 97 F.3d 65 (4th Cir. 1996); *House of Raeford Farms, Inc.*, 308 NLRB 568, 570 (1992) (holding that requiring employees to refrain from displaying prounion apparel and sign a list to receive employer's campaign T-shirts was unlawfully coercive conduct), enfd. 7 F.3d 223, 1993 WL 362053, at *4 (4th Cir. 1993) (mem.); *Scientific Atlanta, Inc.*, 278 NLRB at 467 (holding that requiring employees to disseminate employer's campaign literature was unlawfully coercive conduct); *Kurz-Kasch, Inc.*, 239 NLRB 1044, 1044 (1978) (holding that requesting that employees wear

employer's campaign buttons was unlawfully coercive conduct); *Florida Steel Corp.*, 224 NLRB 587, 587–589, 594 (1976) (holding that compelling employees to pose for employer's campaign photographs was unlawfully coercive conduct), enfd. mem. 552 F.2d 368 (5th Cir. 1977); *The Paymaster Corp.* 162 NLRB 123, 133–134 (1966) (holding that requiring employee to read antiunion notice aloud at meeting with other employees was unlawfully coercive conduct).

[37] Cf. *IBEW, Local 501 v. NLRB*, 341 U.S 694, 704–705 (1951) (rejecting argument that Sec. 8(c) and First Amendment prevented Board from finding violation of Sec. 8(b)(4)(A) based on peaceful picketing that induced or encouraged unlawful secondary boycott, and observing that the "general terms of [Sec.] 8(c) appropriately give way to the specific provisions of [Sec.] 8(b)(4)").

suggests only an intent to overrule that case in part unrelated to the issue of compelling attendance at captive-audience meetings.

The Conference Report, which "next to the statute itself [] is the most persuasive evidence of congressional intent," *Demby v. Schweiker*, 671 F.2d 507, 510 (D.C. Cir. 1981), does not mention captive-audience meetings. Instead, it describes what Section 8(c) *was* designed to address: "The practice which the Board has had in the past of using speeches and publications of employers concerning labor organizations and collective-bargaining agreements as evidence, no matter how irrelevant or immaterial, that some later act of the employer had an illegal purpose gave rise to the necessity for this change in the law." Conference Report at 45, reprinted in 1 LMRA Hist. at 549. In other words, Section 8(c) was intended to prevent the Board from ascribing an antiunion motive to an employer in connection with an alleged unfair labor practice that requires proof of motive—such as a retaliatory discharge of employees for union activities, in violation of Section 8(a)(3)—based on the substance of the employer's earlier lawful statement of opposition to unionization. The Supreme Court has thus observed that the "congressional intent" was "to prevent the Board from attributing antiunion motive to an employer on the basis of [its] past statements." *Linn*, 383 U.S. at 62 fn. 5 (citing Conference Report at 45, reprinted in 1 LMRA Hist. at 549).

Moreover, the Conference Report makes clear that Section 8(c) was principally derived from the free speech provision of the House bill rather than from the corresponding provision in the Senate bill. Conference Report at 45, reprinted in 1 LMRA Hist. at 549. The House Report accompanying that House bill, like the Conference Report, makes no mention of captive-audience meetings. Instead, like the Conference Report, it describes the type of Board decisions that Section 8(c) was intended to "correct[]," such as when the Board infers from an employer's past criticism of a union that a foreman's later discharge of a union official for gross misconduct "was for union activity." House Report at 33, reprinted in 1 LMRA Hist. at 324.

Senator Taft, the principal sponsor of the legislation, placed a statement in the Congressional Record, which, with reference to the Section 8(c) that emerged from the Conference, expressed a substantially similar view to that of the Conference and House Reports:

> The conferees had in mind a number of Board decisions in which because of the fact that an employer has at some time committed an unfair labor practice a speech by him, innocuous in itself, has been held not to be privileged . . . . There have also been a number of decisions

by the Board in which discharges of employees, even though there was no evidence in the surrounding circumstances of discrimination, have been deemed unfair labor practices simply because at one time or another the employer has expressed himself as not in favor of unionization of his employees. The object of this section, therefore, is to make it clear that decisions of this sort cannot be made under the conference bill.

93 Cong. Rec. 7002 (June 12, 1947), reprinted in 2 LMRA Hist. at 1624. Senator Taft also confirmed what is plain from the statutory text: "[T]he privilege of this subsection is limited to expression of 'views, arguments, or opinion,'" such that "[i]t has no application to statements which are acts in themselves or contain directions or instructions." Id. An employer's directive to employees requiring them to attend a captive-audience meeting clearly falls into this category of statements to which Section 8(c) does *not* apply.

The Senate Report accompanying the Senate bill is the only piece of legislative history that even mentions *Clark Bros.* It states:

> Another amendment to this section would insure both to employers and labor organizations full freedom to express their views to employees on labor matters, refrain from threats of violence, intimation of economic reprisal, or offers of benefit. The Supreme Court in *Thomas v. Collins* (323 U.S. 516) held, contrary to some earlier decisions of the Labor Board, that the Constitution guarantees freedom of speech on either side in labor controversies and approved the doctrine of the *American Tube Bending* case (134 F. (2d) 993). The Board has placed a limited construction upon these decisions by holding such speeches by employers to be coercive if the employer was found guilty of some other unfair labor practice, even though severable or unrelated (*Monumental Life Insurance*, 69 N. L. R. B. 247) or if the speech was made in the plant on working time (*Clark Brothers*, 70 N. L. R. B. [No.] 60). The committee believes these decisions to be too restrictive and, in this section, provides that if, under all the circumstances, there is neither an expressed or implied threat of reprisal, force, or offer of benefit, the Board shall not predicate any finding of unfair labor practice upon the statement. The Board, of course, will not be precluded from considering such statements as evidence.

Senate Report at 23–24, reprinted in 1 LMRA Hist. at 429–430.

The reference to *Clark Bros.* having been "too restrictive" would seem to be the unspecified "legislative history" that the *Babcock & Wilcox* Board relied on—along with the equally unexamined "language of Section

8(c)"—to conclude that Section 8(c) gives employers a right to hold captive-audience meetings. See *Babcock & Wilcox*, 77 NLRB at 578. The *Babcock & Wilcox* Board ignored that Section 8(c) was principally derived from the House bill, not the Senate's bill discussed in the Senate Report, and ignored the rest of the legislative history, which, as explained, nowhere suggests that Congress intended to address the captive-audience issue.

In any event, the Senate Report itself does not demonstrate a clear intention to immunize employers who hold captive-audience meetings. Although it refers to the Board's decision in *Clark Bros.* as "too restrictive," the Report's description of that decision suggests that the Senate Committee intended simply to ensure that employers were free to express their constitutionally protected views on Section 7 activity in a "speech" "made in the plant on working time." Senate Report at 23, reprinted in 1 LMRA Hist. at 429. *Clark Bros.*, as noted, had broadly held such a speech to be unlawful. 70 NLRB at 804. But that decision had "also" and "independently" held that "the conduct of the [employer] in compelling its employees to listen to a speech on self-organization" was *separately* unlawful. Id. The Senate Report does not address this second, separate holding. For the Board to hold that an employer may not *compel* employees to attend a captive-audience meeting does not prevent the employer from making the type of speech that the Senate Report actually addressed—one that is "in the plant" and "on working time," provided that attendance is voluntary. In the case of the compelled meeting, the unfair labor practice is in no sense "predicate[d]" on any employer "statement" made in the speech, see Senate Report at 24, reprinted in 1 LMRA Hist. at 430, but rather is based entirely on the employer's requirement that employees attend the speech on pain of discipline or discharge. Moreover, there is no suggestion in the sole Supreme Court decision cited by the Senate Report, *Thomas v. Collins*, that the free speech rights of employers and unions entail a right to compel others to listen. In fact, as we have pointed out, *Thomas* strongly suggests the opposite. In light of these considerations, the Senate Report simply cannot bear the weight that *Babcock & Wilcox* apparently placed on it.[38]

### c. First Amendment

The First Amendment likewise does not entitle employers to hold captive-audience meetings. Not only would such a constitutional entitlement conflict with the general rule that the First Amendment gives "'no one . . . a right

[38] Indeed, it is noteworthy in evaluating the weight due the Senate Report that, as indicated above, one of the two Senate staffers authoring the Report was former Board Member Reilly, the dissenting Board Member in *Clark Bros.* See *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005) (cautioning against "judicial reliance on

to press even 'good' ideas on an unwilling recipient,'" *Hill*, 530 U.S. at 718 (quoting *Rowan*, 397 U.S. at 738), it would also ignore the Supreme Court's admonition that "[a]ny assessment of the precise scope of employer expression . . . must be made in the context of its labor relations setting," such that "an employer's rights cannot outweigh the equal rights of the employees to associate freely." *Gissel*, 395 U.S. at 617. In the "labor relations setting," the First Amendment comfortably accommodates an employer's robust right to express its views on unionization with an employee's right to decline to listen to those views.

### 3. Lawful voluntary meetings

For the reasons explained above, we hold that an employer violates Section 8(a)(1) of the Act if it requires employees to attend a meeting at which the employer expresses its views on unionization. Importantly, requiring employees to attend such meetings is unlawful regardless of whether the employer expresses support for or opposition to unionization. Such captive-audience meetings violate Section 8(a)(1) and prohibiting them does not infringe employer speech protected by Section 8(c) and the First Amendment. The violation turns on the employer's use of its power to compel employees to attend such a meeting. Thus, a voluntary meeting, held in the workplace on work time, does not violate the Act.

To provide clear guidance for employers, we have decided to establish a safe harbor from liability for employers who wish to express their views concerning unionization in a workplace, work-hours meeting with employees. Thus, an employer will not be found to have violated Section 8(a)(1) if, reasonably in advance of the meeting, it informs employees that:

> 1. The employer intends to express its views on unionization at a meeting at which attendance is voluntary;
>
> 2. Employees will not be subject to discipline, discharge, or other adverse consequences for failing to attend the meeting or for leaving the meeting; and
>
> 3. The employer will not keep records of which employees attend, fail to attend, or leave the meeting.

An employer may avail itself of this "safe harbor" by giving employees these assurances. Then, of course, the employer must also follow through on these assurances to stay on the right side of the law. When an employer both gives these assurances and follows through on them, it

legislative materials like committee reports, which . . . may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history").

may lawfully hold voluntary meetings with its employees on company time in order to noncoercively express its views on unionization. We do not hold, however, that the failure to give these assurances will itself result in a violation of Section 8(a)(1).

We add a few additional points of clarification. An employer will be found to have compelled attendance at a meeting concerning the employer's union views if, under all the circumstances, employees could reasonably conclude that attendance at the meeting is required as part of their job duties or could reasonably conclude that their failure to attend or remain at the meeting could subject them to discharge, discipline, or any other adverse consequences. An express order from a supervisor, manager, or other agent of the employer to attend such a meeting is sufficient, but not always necessary, to establish a violation. Moreover, attendance at a meeting that is included on employees' work schedules, as communicated by a supervisor, manager, or other agent of the employer, will be considered to be compelled. Compliance with the steps outlined above will ensure that the holding of the meeting itself is lawful, but it does not, of course, otherwise immunize employer and employee conduct or statements made during that meeting.

### C. Prospective Application

The Board's usual practice is to apply new policies and standards retroactively to all pending cases, including the case in which the new rule is announced, unless doing so would amount to a manifest injustice. *SNE Enterprises, Inc.*, 344 NLRB 673, 673 (2005). To determine whether retroactive application amounts to a manifest injustice, we consider the reliance of the parties on preexisting law, the effect of retroactivity on accomplishment of the purposes of the Act, and any particular injustice arising from retroactive application. Id. Here, on balance and in the circumstances of this particular case, we find that application is warranted on a prospective basis only.

First, we recognize the reliance interest of the parties on preexisting law. In 1948, the *Babcock & Wilcox* Board found that captive-audience meetings are lawful. Accordingly, however thin the reasoning undergirding that conclusion might have been, it has been the law for more than 75 years. We think it is clear that employers have reasonably come to rely on the fact they could lawfully hold captive-audience meetings, however anomalous that may have been under the Section 8(a)(1) standards otherwise governing their conduct. Thus, there are strong employer reliance interests weighing against retroactive application.

Second, and on the other hand, employees have a strong interest in the Board applying the more carefully reasoned approach that we adopt today, which more effectively accomplishes the Act's purposes by prohibiting captive-

audience meetings. As noted, captive-audience meetings undermine the Act's core principles of employee autonomy with respect to exercising (or refraining from the exercise of) Section 7 rights. Retroactive application of today's prohibition in all extant cases would thus help accomplish the Act's purposes.

Third, and last, it would be an injustice to apply our new rule in the instant case because the Respondent would likely be judged to have committed an unfair labor practice based on conduct that was clearly lawful at the time it was undertaken.

After carefully considering the particular circumstances of this case, we conclude that, on balance and weighing each of these three factors, prospective application is the more appropriate course. We think that future application of the rule we announce today will sufficiently promote the policies of the Act by placing employers on notice that captive-audience meetings are no longer permissible while giving appropriate weight in this case and in other pending cases to the reliance employers have reasonably placed on the long-standing holding of *Babcock & Wilcox.*

### D. Response to the Dissent

Our dissenting colleague argues that the Board must continue to permit employers to use captive-audience meetings, which he views as promoting free discussion and debate in the workplace, even though employees are compelled by the employer to attend and may be silenced by the employer while there. He rejects our view that captive-audience meetings violate Section 8(a)(1) by interfering with employees' freedom to decide whether, when, and how to exercise their Section 7 rights or to refrain from doing so. Finally, our colleague contends that prohibiting captive-audience meetings raises serious constitutional questions, implicating the doctrine of constitutional avoidance—even though we permit employers to express their views freely, so long as they do not compel employees to listen to them, a balance consistent with the *Gissel* Court's view of how the First Amendment operates in the workplace. As we will explain, our dissenting colleague's arguments are unpersuasive. They reflect a misunderstanding of our position here, of the Board's jurisprudence under Section 8(a)(1), of Section 8(c) and the Supreme Court's relevant decisions, and of the Act's legislative history, among other key considerations. Our colleague, in short, does not supply the reasoned basis for concluding that captive-audience meetings must be permitted that the Board failed to provide in *Babcock &*

*Wilcox* many years ago.[39]  We cannot agree that the Board's perfunctory decision there demonstrates the "considered judgment" that our colleague claims for it.

We start with the dissent's repeated claim that permitting captive-audience meetings promotes the Act's policy of encouraging free debate in the workplace.  By definition, captive-audience meetings are unfree.  They demonstrate, to employees, the power of the employer to *control* the debate.  Not only are employees forced to assemble and listen to their employer's views, but they may also be prevented from expressing their own views—all on pain of discipline or discharge.  Indeed, our dissenting colleague himself cites a Board decision he joined, which found that "[i]t is lawful for an employer to conduct a captive-audience meeting to persuade employees not to unionize while refusing to allow others to express their opposing, prounion viewpoints during the meeting," including by ordering the assembled employees to "shut up" and having that order followed.  *Electrolux Home Products*, 368 NLRB No. 34, slip op. at 4 & fns. 13–14.  Our holding today, of course, permits employers to express their view at voluntary meetings in the workplace—and such meetings do a much better job fostering the uninhibited and free debate that our dissenting colleague purports to champion.

Our colleague's contention that captive-audience meetings comport with Section 8(a)(1) is similarly untenable.  He insists that if captive-audience meetings are prohibited,

"then there would appear to be no principled basis for not similarly prohibiting *any* mandatory meeting at which an employer states its position on *any* term or condition of employment—such as a new safety rule or work process—or, indeed, any subject that affects employees' interests as employees."  (Emphasis in dissent; internal quotations omitted.)  But the meetings he refers to—which fall outside the definition of a captive-audience meeting used here—do not implicate the Section 7 concerns we address.  Our colleague does not persuasively explain how, when an employer conducts an everyday workplace meeting and "states its position on [a] term or condition of employment" (whatever this may mean), the Section 7 rights of employees are implicated in any way, much less interfered with.[40]  As explained, our decision today prohibits only mandatory meetings where an employer expresses its views for or against unionization to its employees.

The dissent relatedly argues that because "an employer has the right to determine what work employees will be required to perform during working time . . . [i]t follows that, during working time, an employer may lawfully require employees to attend meetings about unionization as well."  This argument is circular.  It assumes that a captive-audience meeting may be regarded as "working time" consistent with the Act simply because the employer has imposed a requirement on employees to attend.[41]  Certainly, attending a captive-audience meeting is distinct from an employee's ordinary work duties, for which the

[39] Our dissenting colleague also argues that our decision not to seek *amicus* briefing is "indefensible."  But he has repeatedly joined Board majorities rejecting the need for such briefing and observing that "[t]he Board has broad discretion with respect to whether to invite briefing prior to adjudicating a major issue" and that "[n]either the Act, the Board's Rules, nor the Administrative Procedure Act requires the Board to invite amicus briefing before reconsidering precedent."  *Hy-Brand Industrial Contractors, Ltd.*, 365 NLRB 1554, 1585 (2017); see, e.g., *Apogee Retail, LLC*, 368 NLRB No. 144, slip op. at 10 fn. 19 (2019); *MV Transportation, Inc.*, 368 NLRB No. 66, slip op. at 13 fn. 30 (2019); *PCC Structurals, Inc.*, 365 NLRB 1696, 1706, 1707 (2017); *The Boeing Co.*, 365 NLRB 1494, 1514 (2017).  As in these decisions, which our colleague endorsed, we have determined that it is not necessary to invite *amicus* briefing here in order for the Board to decide this case appropriately.

[40] The Board decisions our dissenting colleague cites—which are not based on the Board's traditional view that captive-audience meetings are lawful—demonstrate as much.  In *Daisy's Originals, Inc., of Miami*, the employer had convened a mandatory meeting to announce its position that it had a basis to withdraw recognition from the incumbent union.  187 NLRB 251, 253–255 (1970).  In *Addressograph-Multigraph Corp.*, the employer had convened a mandatory meeting to announce a new work procedure for certain union-represented employees.  228 NLRB 6, 6–9 (1977).  The Board's conclusion in both cases—that the mandatory meetings did not constitute unlawful retaliation against protected activity in violation of Sec. 8(a)(3) of the Act—would be unaffected by our decision today.  That a captive-audience meeting interferes with and is coercive as to employees' Sec. 7 right to decide whether, when, and how to engage with their employer's union views has no bearing on the

legality of a meeting announcing withdrawal of union recognition or changes in work procedures.

[41] Our dissenting colleague is incorrect when he insists that a "captive-audience meeting . . . is . . . a routine application of the longstanding rule that 'working time is for work.'"  Neither the Board, nor the courts, have ever deemed captive-audience meetings to be "work."  Our colleague's view, in turn, illustrates the threat posed by captive-audience meetings to the goals of the Act.  If such meetings are lawful, for the reasons our colleague insists, then there can be no limiting principle on their use.  An employer would be free to require employees to attend captive-audience meetings for the entire workday, over a period as long as the employer wishes, until the employer was satisfied that employees had adopted its view as their own—and this, of course, has been the law until today.  See, e.g., *International Baking Co.*, 342 NLRB 136, 138 (2004) (employer's "managers and supervisors held approximately 80 meetings" with petitioned-for unit of 331 employees and "during each week of the campaign a particular subject or subjects were covered in all the meetings held that week"), enfd. mem. 185 Fed.Appx. 691 (9th Cir. 2006); *Andel Jewelry Corp.*, 326 NLRB 507, 507 (1998) (Member Fox, dissenting) (employer "repeatedly held captive audience meetings with employees," including "daily meetings during working time with employees in each of the Employer's departments"); *Giant Eagle, Inc.*, 06–CA–188991, 2018 WL 1325594, slip op. at 1, 3–4 (NLRB Div. of Judges 2018) (in three-week period before election for a petitioned-for unit of just seven employees, employer held meetings that "generally lasted three hours" in both the morning and the afternoon on five different days); *Rugby Manufacturing Co.*, 18–CA–15802-1, 2002 WL 2029505 (NLRB Div. of Judges 2002) (employer gave "daily anti-union speeches" at its facility).

employee was hired. Nor may an employer create work duties that infringe on Section 7 rights. We do not understand our colleague to argue that an employer lawfully could determine that a nonsupervisory employee's work duties included wearing an antiunion button, soliciting other employees to oppose the union, distributing the employer's campaign literature, or reporting on other employees' union activity—and then direct the employee to do so or be fired. The fundamental purpose of the Act, rather, is to limit the traditional power of employers to command and control their employees by carving out a space for employees to engage in protected concerted activity—even at work, during the workday. An employer's authority over its employees must be balanced against employees' Section 7 rights.[42] Our decision today strikes such a balance.

Our dissenting colleague also unpersuasively argues that there is "no meaningful difference" between "the distribution of employer campaign literature," which the Board has held does not violate Section 8(a)(1), and "attendance at a captive-audience speech." We disagree. Distribution merely requires employees "to *receive* the [employer's] campaign literature." (Emphasis added by dissent, quoting *Intermet Stevensville*, 350 NLRB 1349, 1356 (2007).) Once employees have received the literature—which takes but an instant—they are free to read it or not, as and when they choose, consistent with their Section 7 rights. A captive-audience meeting is very different. It is a time-consuming affair, which employees are compelled to attend and where they must listen to their employer's views on unionization. The more apt analogy with employer distribution of campaign literature is provided by the *voluntary* meetings that our decision today expressly authorizes and protects.

Our dissenting colleague's arguments related to Section 8(c) are no more persuasive. To begin, his position on the text's meaning is inconsistent.[143] At one point he argues that Section 8(c) narrowly "focus[es] on the content of the employer['s] or union['s] 'expression' itself rather than on the circumstances surrounding it." But elsewhere, he says, instead, that a captive-audience meeting "is, by its very nature, 'the dissemination' of the employer's views" that Section 8(c) explicitly protects. Neither of these

interpretations advances his position here. We *agree* that Section 8(c) protects the content of an employer's speech, but not the circumstances surrounding the speech. As we have explained, our prohibition of captive-audience meetings is based not on the employer views expressed at the meeting—whether for or against unionization—but on the surrounding circumstances: that employees are compelled to attend the meeting, on pain of discipline or discharge. We disagree, however, with our colleague's suggestion that an employer's order to attend a meeting is itself a protected "dissemination" of the employer's views under Section 8(c). As we have explained, such a directive does not communicate a view. Neither does the directive—which, of course, comes *before* the meeting—disseminate the employer's view to be communicated at the meeting, consistent with the ordinary meaning of "dissemination" as the spreading of a view.[44] But even if one could view an employer's directive as "dissemination" in the statutory sense, Section 8(c) protects only a "dissemination" that "contains no threat of reprisal." 29 U.S.C. § 158(c). A directive to attend a captive-audience meeting, on pain of discipline or discharge, obviously contains a "threat of reprisal."

Our dissenting colleague's assessment of Section 8(c)'s legislative history is similarly unconvincing. He concedes that neither the Conference Report nor the House Report addresses captive-audience meetings. He emphasizes that the House Report indicates an intent to allow the Board to only prohibit a statement that "by its own express terms" constitutes a threat, House Report at 33, reprinted in 1 LMRA Hist. at 324, but he ignores that that language was *not included* in the enacted text of Section 8(c). And he draws from the Conference Report that the "purpose [of Section 8(c)] is to protect the right of free speech," Conference Report at 45, reprinted in 1 LMRA Hist. at 549, but points to nothing in the Conference Report suggesting that compelling employees to listen to the employer's views is encompassed within that right, contrary to general free-speech principles. At bottom, what our dissenting colleague has engaged in is an exercise of "looking over a crowd and picking out [his] friends." *Exxon Mobil*, 545 U.S. at 568 (internal quotations omitted). He has found just one "friend"—the Senate Report—but, for the

---

[42] See *Republic Aviation Corp.*, 324 U.S. at 797–798.

[43] Meanwhile, our colleague's claim that compelled attendance at a captive-audience meeting does not implicate the Sec. 7 right to refrain from protected concerted activity is meritless. Our colleague says that employees are not engaged in protected activity "when they are required to sit in a room while an employer gives a speech opposing unionization,"" but surely he would agree that an employer could not fire employees for sitting and listening to a speaker advocate for the union, instead of getting up and walking away. Just as mistaken is our colleague's statement that a captive-audience meeting somehow furthers employees'

right to receive antiunion information. Sec. 7, rather, grants employees the right to choose whether, when, and how to receive information related to unionization: they may not be coerced to receive it. Recall that Sec. 8(c) provides that: "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."

[44] *Disseminate*, Webster's New International Dictionary 753 (2d ed. 1934).

reasons we have explained, that Report is not friendly to his position.

Finally, our dissenting colleague contends that a prohibition on captive-audience meetings raises "serious constitutional problems" under the First Amendment and so, under the doctrine of constitutional avoidance, the Board must interpret the Act to permit such meetings. We are not persuaded. As explained, our focus is on the employer's requirement that employees attend the meeting and listen to the employer's views. An employer's implicit or explicit statement to employees that they must attend a captive-audience meeting or face job consequences is plainly a threat of reprisal. Such threats explicitly fall outside the protection of Section 8(c), and Section 8(c), as the Supreme Court has observed, "implements the First Amendment." *Gissel*, 395 U.S. at 617.

We see no serious constitutional problem, then, in prohibiting captive-audience meetings while permitting employers to express their views in voluntary meetings. We do not understand our colleague to argue that employers even arguably have the First Amendment right to threaten employees at a captive-audience meeting or to promise them benefits. He fails to see, however, that an employer's use of coercion to compel attendance at a captive-audience meeting is not immunized because the meeting involves the employer's expression of views.[45] Rather, in the Supreme Court's words, the First Amendment permits the Board to find an unfair labor practice when "to this persuasion other things are added which bring about coercion, or give it that character." *Thomas*, 323 U.S. at 537–538. Of course, the Supreme Court has made clear that the Board has the authority to find unfair labor practices that are based on speech itself, if the speech amounts to a threat of reprisal, as in *Gissel*, or a promise of benefit, as in *Exchange Parts*, 375 U.S. at 408. Finding captive-audience meetings unlawful does not turn on the employer's speech at the meeting, or on the viewpoint expressed there, but rather on the employer's directive to attend the meeting—which may be speech, but which is undeniably coercive as well. An employer's First Amendment rights are not meaningfully diminished if the employer is forbidden from using its power over employees to compel them to listen to its views, while retaining the ability to express those views to employees willing to listen to them.

Relying principally on the Eleventh Circuit's recent decision in *Honeyfund.com Inc. v. Governor, State of Florida*, 94 F.4th 1272 (11th Cir. 2024), the dissent contends that prohibition of captive-audience meetings raises serious First Amendment questions because it "singles out captive-audience speeches about unionization for prohibition while permitting mandatory meetings on other subjects" and, as such, is an impermissible content-based restriction. We have carefully considered the *Honeyfund.com* decision but conclude that it is distinguishable. Nor does our colleague's assertion that we are impermissibly "singling out" captive-audience speeches from all other employer-mandated subjects have any merit.

In *Honeyfund.com*, the Eleventh Circuit granted a preliminary injunction against enforcement of a newly enacted Florida statute—the Stop W.O.K.E. Act, also known as the Individual Freedom Act—under the First Amendment. The court observed that Florida sought

> to bar employers from holding mandatory meetings for their employees if those meetings endorse viewpoints the state finds offensive. But meetings on those same topics *are* allowed if speakers endorse viewpoints the state agrees with, or at least does not object to. This law, as Florida concedes, draws its distinctions based on viewpoint—the most pernicious of dividing lines under the First Amendment.

94 F.4th at 1275 (emphasis in original). The court went on to hold that "[b]y limiting its restrictions to a list of ideas designated as offensive, the [Stope W.O.K.E.] Act targets speech based on its content" and "by barring only speech that endorses any of those ideas, it penalizes certain viewpoints—the greatest First Amendment sin." Id. at 1277.[46]

Our holding today makes no distinctions based on viewpoint.[47] An employer may not require employees to attend a captive-audience meeting regardless of the view that the

---

[45] In a similar regard, the fact that a speaker intends to communicate a message protected by the First Amendment does not entitle them to use the threat of violence to force others to listen to them. In the labor relations setting, a coercive threat of discipline or discharge is similarly unprotected.

[46] It was in this context that the Eleventh Circuit rejected Florida's argument that the Stop W.O.K.E. Act was regulating conduct, not speech. The court observed that the "fact that only mandatory meetings *that convey a particular message and viewpoint* are prohibited makes quick work of Florida's conduct-not-speech defense." 94 F.4th at 1278 (emphasis in original). As the court explained:

If Florida disapproves of the message, the meeting cannot be required. This is a direct penalty on certain viewpoints—because the conduct and the speech are so intertwined, regulating the former means restricting

the latter. In short, the disfavored "conduct" cannot be identified apart from the disfavored speech.

Id. Here, in contrast, our holding does not reflect disapproval of the employer's message, but of the employer's coercion of employees as a means of ensuring that they will listen to the employer's message.

[47] The contrast between the Act and the Florida statute is not limited to this crucial distinction. The Florida statute communicated the State's disapproval of one viewpoint by imposing monetary remedies for violation of the law: backpay, compensatory damages, punitive damages, and attorney's fees awards. 94 F.4th at 1276. None of those remedies is available under the Act if an employer unlawfully holds a captive-audience meeting; rather, the employer simply will be ordered to cease and desist from holding such meetings. The employer will remain free, of course, to conduct voluntary meetings at which it expresses its views.

employer expresses—whether it urges employees to vote against the union, to vote for the union, or simply to refrain from exercising their Section 7 rights altogether. None of these viewpoints is "offensive" to the Act. What is offensive to the Act, rather, is the employer's use of its power to require employees to listen to its views—whatever they are. The Act is intended to protect employee free choice from precisely such coercion.

Contrary to our dissenting colleague's assertion, no serious First Amendment issue is posed here because we prohibit captive-audience meetings (as defined) and not all employer-mandated meetings in the workplace. This distinction is entirely a function of the Act's protection of Section 7 rights—and the *Gissel* Court has made clear that the First Amendment must be understood in the "context of [the] labor relations setting" in which the Board regulates. *Gissel*, 395 U.S. at 617.[48] Where an employer-mandated meeting does not impinge on employees' Section 7 rights, the Board has no basis to regulate it. If our colleague's criticism of our holding were valid, in turn, it would undermine the Board's ability to effectively administer and enforce the Act. The Board necessarily "singles out" employer statements and actions that implicate Section 7, while ignoring others.[49] An employer's threat of reprisal for supporting a union violates the Act; a threat for supporting a political candidate does not. An employer's statement prohibiting employees from talking about wages violates the Act; a statement prohibiting discussion about foreign policy does not. An employer's promise of benefits if employees vote against the union violates the Act; a promise of benefits for attending religious services does not. An employer's requirement that employees wear t-shirts communicating its anti-union message violates the Act; an employer's requirement that employees wear t-shirts communicating a message opposing climate change does not. These distinctions reflect the provisions of the Act, not the Board's impermissible content-based regulation of employer speech. In straining to find serious constitutional issues presented here, our colleague turns the doctrine of constitutional avoidance into its opposite, a doctrine of "constitutional collision." *United States v. Hansen*, 599 U.S. 762, 781 (2023).[50] The Supreme Court, however, has made clear that "[w]hen

legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict." Id.

### AMENDED CONCLUSIONS OF LAW

1. Amazon.com Services LLC (the Respondent) is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

2. Amazon Labor Union (the Union) is a labor organization within the meaning of Section 2(5) of the Act.

3. The Respondent has violated Section 8(a)(1) of the Act by selectively and disparately enforcing its Solicitation Policy by removing messages that Dana Miller posted on its VOA board inviting employees to come to the Union tent to sign a petition in support of making Juneteenth a paid holiday while permitting other Section 7-protected messages to remain.

4. The Respondent has violated Section 8(a)(1) by threatening Dana Miller that she will be subject to discipline if she reposts her Section 7-protected message inviting employees to come to the Union tent to sign a petition in support of making Juneteenth a paid holiday.

5. The Respondent has violated Section 8(a)(1) by soliciting grievances and impliedly promising to remedy them in order to discourage the Union support in the presentations by Michael Williams on November 10, 2021, and by Mike Rebell on November 11, 2021.

6. The Respondent has violated Section 8(a)(1) by threatening employees, through the statements of Eric Warrior on March 15, 2022, and Katie Lev on April 18, 2022, that it would withhold improvements to wages and benefits during bargaining and/or the preelection period.

7. The above unfair labor practices affect commerce within the meaning of Section 2(6) and (7) of the Act.

### ORDER

The National Labor Relations Board orders that the Respondent, Amazon.com Services LLC, Staten Island, New York, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a) Selectively and disparately enforcing its Solicitation Policy against employees engaging in protected concerted activity.

---

[48] The context in which this case arises, of course, differs dramatically from the context of *Honeyfund.com*, in which (as the Eleventh Circuit pointed out) Florida was unable to demonstrate any legitimate interest, predicated on some other existing statute or policy, for prohibiting and penalizing the meetings targeted by the Stop W.O.K.E. Act. 94 F.4th at 1280-1282.

[49] For example, as discussed above, the Board's discrimination standard under *Register Guard*, 351 NLRB at 1118, requires the Board to distinguish between statements and actions that implicate Sec. 7 and those that do not.

[50] In any event, even if our prohibition were to trigger strict scrutiny, this should be the rare case where the regulation would withstand such scrutiny because it is "narrowly tailored to serve a compelling interest." See *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015). Ensuring employees' full freedom to decide whether, when, and how to exercise their organizational rights is a compelling interest given our Congressional charge of "protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." 29 U.S.C. § 151.

(b) Threatening employees with discipline if they engage in protected concerted activities.

(c) Soliciting grievances from employees and impliedly promising to remedy them in order to discourage employees from supporting the Union.

(d) Threatening employees that it will withhold improvements in wages and working conditions if they engage in activities on behalf of the Union and/or if they select the Union as their bargaining representative.

(e) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the purposes of the Act.

(a) Post at its facilities in Staten Island, New York copies of the attached notice marked "Appendix."[51] Copies of the notice, on forms provided by the Regional Director for Region 29, after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means. The Respondent shall take reasonable steps to ensure that the notices are not altered, defaced, or covered by any other material. If the Respondent has gone out of business or closed the facilities involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the Respondent at any time since July 12, 2021.

(b) Within 21 days after service by the Region, file with the Regional Director for Region 29 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

---

[51] If the facilities involved in these proceedings are open and staffed by a substantial complement of employees, the notice must be posted within 14 days after service by the Region. If the facilities involved in these proceedings are closed or not staffed by a substantial complement of employees due to the Coronavirus Disease 2019 (COVID-19) pandemic, the notice must be posted within 14 days after the facilities reopen and a substantial complement of employees has returned to work. If, while closed or not staffed by a substantial complement of employees due to the pandemic, the Respondent is communicating with its employees by electronic means, the notice must also be posted by such electronic means within 14 days after service by the Region. If the notice to be physically posted was posted electronically more than 60 days before physical posting of the notice, the notice shall state at the bottom that

IT IS FURTHER ORDERED that complaint paragraphs 15(a) and 16(a) are severed and retained for further consideration.

IT IS FURTHER ORDERED that the complaint is dismissed insofar as it alleges violations of the Act not specifically found.

Dated, Washington, D.C. November 13, 2024

_____
Lauren McFerran,                    Chairman

_____
David M. Prouty,                    Member

_____
Gwynne A. Wilcox,                   Member

(SEAL)        NATIONAL LABOR RELATIONS BOARD

MEMBER KAPLAN, dissenting in part.

The National Labor Relations Act embodies a Congressional policy "'favoring uninhibited, robust, and wide-open debate in labor disputes.'"[1] As the Supreme Court has repeatedly stressed, "'freewheeling use of the written and spoken word . . . . has been expressly fostered by Congress.'"[2] Consistent with this policy, the Union "aggressively" communicated its position that employees should choose union representation during its 2021-2022 organizing campaign at the Respondent's JFK8 fulfillment center and LDJ5 storage center.[3] And the Respondent also vigorously communicated its position that employees should choose to remain unrepresented. No one disputes that the Respondent had the right to communicate its position to the employees. Instead, the General Counsel contends that the Respondent violated the Act because it required employees to attend meetings at which it

---

"This notice is the same notice previously [sent or posted] electronically on [date]."

If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

[1] *Chamber of Commerce v. Brown,* 554 U.S. 60, 68 (2008) (quoting *Letter Carriers v. Austin,* 418 U.S. 264, 272–273 (1974)).

[2] Id.

[3] *Amazon.com Services LLC,* 373 NLRB No. 92, slip op. at 8–13 (2024) (Member Kaplan, dissenting).

campaigned against the Union. Substantially agreeing with the General Counsel, the majority holds that an employer violates Section 8(a)(1) of the Act "if it requires employees to attend a meeting at which the employer expresses its views on unionization," though my colleagues decline to apply their newly-fashioned standard retroactively to this case.

But Section 8(c) of the Act plainly states that "[t]he expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit." As the Board correctly recognized more than three-quarters of a century ago in *Babcock & Wilcox Co.*, the text of Section 8(c) and its legislative history make it clear that an employer does not violate the Act by requiring employees to attend a meeting at which it campaigns against unionization.[4] While my colleagues contend that *Babcock* was wrongly decided, none of their arguments withstand scrutiny.

To the contrary, the majority's attempt to ban so-called "captive-audience speeches" harkens back to an earlier era when the Board sought to impose on employers a policy of strict neutrality regarding unionization.[5] This flagrantly unconstitutional overreach was decisively rejected by the Supreme Court as a violation of the First Amendment guarantee of freedom of speech. When the Board sought to evade those rulings by, among other things, banning captive-audience speeches, Congress responded by enacting Section 8(c) for the specific purpose of nullifying those evasions. I believe the Board should learn from that experience. Instead, the majority seems determined to repeat it. But their effort to prohibit captive-audience speeches today is just as indefensible as it was in 1948, when *Babcock* was decided.

---

[4] 77 NLRB 577, 578 (1948).

[5] Although the term "captive-audience speech" is obviously a pejorative label, it is one that has been used in prior Board decisions as well as in the majority's decision in this case. I use it here for the sake of clarity.

[6] *Bethany College,* 369 NLRB No. 98, slip op. at 4 (2020).

[7] The majority defends their failure to allow public briefing all the same, citing *Apogee Retail, LLC*, 368 NLRB No. 144, slip op. at fn. 19 (2019) (overruling four-year old precedent regarding investigative confidentiality rules); *MV Transportation, Inc.*, 368 NLRB No. 66, slip op. at 13 fn. 30 (2019) (overruling waiver standard that has been rejected by several circuit courts of appeals); *PCC Structurals, Inc.*, 365 NLRB 1696, 1706, 1707 (2017) (overruling 6-year old precedent regarding unit determinations); and *Boeing Co.*, 365 NLRB 1494, 1514 (2017) (overruling 13-year old precedent for determining whether work rules violated the Act), as precedent for overruling *Babcock* without public briefing. My colleagues are mistaken in their view that because amicus briefing was not solicited in those cases it should not have been solicited here. None of those cases involved the confluence of factors present in this

In fact, subsequent First Amendment jurisprudence has made it even clearer that the Board simply does not have the power to prohibit captive-audience speeches. Nor may the rights guaranteed by the Constitution properly be regarded as obstacles to be evaded in the service of some other goal. The Constitution is the ultimate source of authority for the entire Federal Government, including the Board. While the rights set forth in the National Labor Relations Act are undeniably important, "those rights are subordinate to those enshrined in the Constitution where there is a potential conflict between the two."[6] Here, the conflict between the majority's prohibition of captive-audience speeches and the Constitution is manifest and irreconcilable.

Making matters worse, my colleagues take this momentous step without first issuing a notice and invitation to file briefs so that interested amici could present their views. Public briefing and input are particularly warranted here because *Babcock* has been the law for more than 75 years, no court has ever questioned its holding, overruling it is a sea change in the legal landscape governing union election campaigns, and because of the impact of today's decision on the First Amendment guarantee of free speech. Especially under those circumstances, today's decision will be of immense significance to every employer, union, employee, member of the labor-management community, and to many others as well. The individuals and entities who will be affected by today's decision deserved the opportunity to speak to the important issues it raises before it was decided. For all of these reasons, the majority's failure to allow public briefing is indefensible.[7]

My colleagues compound their error by unjustifiably finding that the Respondent independently violated the Act when it mentioned, during some of its captive-audience speeches, its existing Open Door policy.[8] Like the majority's unfounded ban on captive-audience speeches,

---

case: a 75-year-old precedent that had never been questioned by any court whose overruling implicates serious First Amendment concerns.

[8] As discussed further below, I also dissent from the majority's finding that the Respondent violated Sec. 8(a)(1) of the Act by prohibiting a posting by employee Dana Joann Miller that violated its internal digital message board policy or by telling Miller that further violations would lead to "additional follow-up."

I agree with my colleagues that, under extant precedent, the Respondent unlawfully told employees that wages would be "frozen" if the Union became their representative. That violation is properly remedied by the issuance of a cease-and-desist order and the posting of an appropriate remedial notice. But the fact that some employers may make unlawful statements at captive-audience speeches, or even that the Respondent did so in this case, does not and cannot justify prohibiting all such meetings, regardless of what is said in them.

Finally, I concur in dismissing the complaint allegation that the Respondent violated the Act when it told employees that by signing a union authorization card they gave up the right to speak for themselves. For the reasons stated in my dissent in *Siren Retail d/b/a Starbucks*, 373

this finding also impermissibly chokes off the "uninhibited, robust, and wide-open debate in labor disputes" that Congress intended to foster.[9] And I also dissent from the majority's decision to sever the allegation that the Respondent unlawfully mentioned its existing educational benefits during some of its speeches. As explained below, I would affirm the judge's dismissal of this allegation. Whether or not my colleagues would agree with that result, the judge carefully analyzed this issue in his decision and the parties have fully briefed it. There is no valid justification for the majority to refuse to resolve it now.

### I. CAPTIVE-AUDIENCE SPEECHES ARE LAWFUL

The complaint alleges, in relevant part, that the Respondent violated Section 8(a)(1) of the Act by holding seven mandatory meetings regarding unionization at its Staten Island JFK8 and LDJ5 facilities. The meetings were held at the Respondent's facility during employees' working time. The Respondent stipulated that attendance at the meetings was mandatory and that at those meetings it described its existing benefits, the process of collective bargaining, including the fact that wages and benefits can be increased or decreased as a result of bargaining, and urged employees to reject the Union. During several meetings, employees challenged some of the Respondent's statements. There is no indication that the Respondent took any action against any of those employees.

Employers regularly hold mandatory meetings to train employees on a new work process or equipment, human resources issues, safety standards, and the like.[10] The Respondent also regularly holds such meetings.[11] Indeed, the Respondent maintains a Learning Department at the facilities at issue in this case as well as a training room. Some employees working at Staten Island JFK8 and LDJ5 were assigned by the Respondent to be learning ambassadors, charged with training new hires and other employees in the skills required for their jobs. In short, mandatory meetings on a wide variety of job-related issues are a common and accepted feature of the American workplace.

### A. Congress and the Courts Have Consistently Rejected Efforts by the Board to Restrict Non-Coercive Speech

The Board initially tried to enforce a policy of strict employer neutrality towards unions.[12] The Supreme Court decisively rejected this blatant overreach in *NLRB v. Virginia Electric & Power Co.*[13] Shortly thereafter, the Court reaffirmed in *Thomas v. Collins*

> that employers' attempts to persuade to action with respect to joining or not joining unions are within the First Amendment's guaranty. . . . When to this persuasion other things are added which bring about coercion, or give it that character, the limit of the right has been passed. But, short of that limit, the employer's freedom cannot be impaired. The Constitution protects no less the employees' converse right. Of course, espousal of the cause of labor is entitled to no higher constitutional protection than the espousal of any other lawful cause. It is entitled to the same protection.[14]

Undeterred, the Board thereafter sought to limit employer speech by prohibiting captive-audience speeches in *Clark Brothers Co.*[15] and by finding otherwise lawful employer statements unlawful based on unrelated unfair labor practices in *Monumental Life Ins. Co.*[16] Congress responded in 1947 by adding Section 8(c) to the Act. In doing so, it explicitly disapproved of *Clark Brothers* and *Monumental Life Ins. Co.* as "too restrictive" of the intended "full freedom" of both employers and labor organizations "to express their views to employees on labor matters" if they refrain from threats of violence, intimidation, economic reprisal, or offers of benefit.[17] Responding to this clear Congressional command, the Board shortly thereafter repudiated the *Clark Brothers* ban on captive-audience speeches in *Babcock.*

A few years later, the Board once again targeted captive-audience speeches, this time by holding that they were unlawful unless the union was granted the opportunity to reply.[18] This doctrine was roundly rejected by reviewing courts as an impermissible attempt to nullify

---

NLRB No. 135 (2024), those statements were lawful. See also *Henrickson, USA LLC*, 366 NLRB No. 7, slip op. at 3 (2018) (finding that it is lawful for an employer to state that by, signing a union authorization card, "you no longer have a voice, you've signed that away to some third-party"), enf. denied other grounds 932 F3d 465 (6th Cir. 2019).

[9] *Chamber of Commerce v. Brown,* 554 U.S. at 68 (internal quotations omitted).

[10] Flowtrace, Average Time in Meetings and its Impact, https://www.flowtrace.co/collaboration-blog/average-time-in-meetings-its-impact.

[11] Tr. 301.

[12] See, e.g., *Southern Colorado Power Co.,* 13 NLRB 699 (1939) (finding that employer unlawfully "express[ed] opposition to the proposed formation of a labor organization of its office employees"), enfd. 111 F.2d 539 (10th Cir. 1940).

[13] 314 U.S. 469, 477 (1941) (holding that the National Labor Relations Act does not "enjoin[] the employer from expressing its view on labor policies or problems").

[14] 323 U.S. 516, 537–538 (1945) (citations and footnotes omitted).

[15] 70 NLRB 802, 804–805 (1946) (finding captive-audience speech during working time on plant premises unlawful), enfd. other grounds 163 F.2d 373 (2d Cir. 1947)

[16] 67 NLRB 244 (1946) (finding statement that employer was against the union unlawful because employer committed other unfair labor practices).

[17] Senate Report No. 105 on S. 1126, I Leg. History of LMRA 1947 429-430.

[18] *Bonwit Teller, Inc.*, 96 NLRB 608 (1951), enfd. other grounds 197 F.2d 640, 645–646 (2d Cir. 1952), cert. denied 345 U.S. 905 (1953).

Section 8(c).[19] Rightly so, as subsequent Supreme Court First Amendment decisions have made clear.[20] A few years after adopting the right-of-reply standard, the Board abandoned it.[21]

Thereafter, the Board abandoned its fruitless efforts to restrict captive-audience speeches and instead repeatedly reaffirmed that they were lawful. Until today.

### B. Captive-Audience Speeches Do Not Violate the Act

#### 1. Captive-audience speeches are lawful under Section 8(c)

Consistent with the Congressional policy of encouraging "free debate on issues dividing labor and management,"[22] the Board has long held that the Act permits employers to hold captive-audience speeches.[23] This is so in part because captive-audience speeches are protected by Section 8(c). As noted above, Section 8(c) provides that "[t]he expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit." By its terms, Section 8(c) permits the Board to find that "[t]he expressing of any views, argument, or opinion, *or the dissemination thereof*" is an unfair labor practice if, and only if, "*such expression*" contains a threat of reprisal or force or promise of benefit. (Emphasis added). The text of Section 8(c) makes clear that Congress intended that the inquiry into the lawfulness under the Act of the "expressing of any views, argument, or opinion," or the "dissemination" of those views, focus on the content of the employer or union "expression" itself rather than on the circumstances surrounding it. Condemning an otherwise lawful speech on the basis that attendance was mandatory contravenes that principle.

This interpretation of Section 8(c) is reinforced by its legislative history. As noted above, the legislative history of the Taft-Hartley Act plainly shows that Congress intended to repudiate the holding of *Monumental Life Ins. Co.,* under which the Board held "speeches by employers to be coercive if the employer was found guilty of some other unfair labor practice, even though severable or unrelated."[24] It is further reinforced by the fact that the only reference to *Clark Brothers* anywhere in the legislative history of the Taft-Hartley Act is its repudiation as a decision that was "too restrictive."[25]

As the Supreme Court subsequently recognized in *NLRB v. Gissel Packing Co.*, Section 8(c) means that "an employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as *the communications* do not contain a 'threat of reprisal or force or promise of benefit.'"[26] Simply put, a captive-audience speech is an exercise of the freedom to communicate that the Supreme Court endorsed in *Gissel.* And Section 8(c) of the Act prevents the Board from condemning a captive-audience speech, if the speech itself does not contain a threat of reprisal or force or promise of benefit, simply because employees are required to attend.

#### 2. Captive-audience speeches do not interfere with Section 7 Rights

Even apart from Section 8(c), captive-audience speeches are lawful because they do not interfere with the exercise of employees' Section 7 rights, properly understood. Section 7 of the Act guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," as well as "the right to

---

[19] See, e.g., *NLRB v. F. W. Woolworth Co.,* 214 F.2d 78 (6th Cir. 1954).

[20] See, e.g., *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974) (holding that state right of reply law constituted unconstitutionally compelled speech).

[21] *Livingston Shirt Corp.*, 107 NLRB 400 (1953).

[22] *Linn v. Plant Guard Workers*, 383 U.S. 53, 62 (1966).

[23] See, e.g., *Electrolux Home Products, Inc.,* 368 NLRB No. 34, slip op. at 5 (2019) ("It is lawful for an employer to conduct a captive-audience meeting to persuade employees not to unionize while refusing to allow others to express their opposing, prounion viewpoints during the meeting."); see also *NCRNC v. NLRB,* 94 F.4th 67, 74 (D.C. Cir. 2024) (holding that employer's individual distribution of campaign leaflets, observation of employee responses, and associated one-on-one persuasion efforts were protected speech under the Act); *NLRB v. Pratt & Whitney Air Craft Div., United Technologies Corp.*, 789 F.2d 121, 134 (2d Cir. 1986) ("Granting an employer the opportunity to communicate with its employees does more than affirm its right to freedom of speech; it also aids the workers by allowing them to make informed decisions . . . .").

[24] Senate Report No. 80-105 on S. 1126 at 23–24, reprinted in 1 NLRB, Legislative History of the Labor Management Relations Act, 1947 at 429 (hereafter "1 LMRA Hist.").

[25] Id.; see also *NLRB v. Golub Corp.,* 388 F.2d 921, 926 (2d Cir. 1967) ("*Virginia Electric & Power Co.*, and the Board's rather halting response to it, see, e.g., *A. J. Shawalter Co.*, 64 NLRB 573 (1945); *Clark Bros*, 70 NLRB 802 (1946), enforced on a limited basis in 163 F.2d 373 (2d Cir. 1947), constituted the background for § 8(c) of the Taft-Hartley Act, 61 Stat. 142 (1947).").

[26] 395 U.S. 575, 618 (1969) (emphasis added); accord *Chamber of Commerce v. Brown,* 554 U.S. at 68 ("Sections 8(a) and 8(b) demonstrate that when Congress has sought to put limits on advocacy for or against union organization, it has *expressly set forth the mechanisms for doing so*. . . . [T]he addition of [Sec.] 8(c) *expressly* precludes regulation of speech about unionization so long as *the communications* do not contain a threat of reprisal or force or promise of benefit." (emphasis added; quotation omitted)).

refrain from any or all of such activities."[27]  Among other things, Section 7 guarantees employees the right to express their own views concerning unionization.  But requiring employees to attend a captive-audience speech does not interfere with those Section 7 rights.  To the contrary, the Act protects employees who express their views concerning unionization during a captive-audience speech to the same extent as in any other setting.[28]

The Board has held that an employer interferes with employee Section 7 rights when it compels employees to express opposition to unionization by, for example, including an employee in a campaign video that reasonably indicates that the employee is against the union without the employee's consent,[29] directing an employee to wear a "Vote No" t-shirt,[30] or requiring employees to pose for photographs while holding "Vote No" signs prepared by and given to the employees by the employer.[31]  But requiring employees to attend a meeting at which the employer expresses *its* views about unionization cannot reasonably be likened to these unlawful actions.  To the contrary, mere attendance at a captive-audience meeting does not suggest that the employees in the audience hold any position on unions, much less compel them to express a position, any more than mere attendance at any meeting indicates that the listener necessarily agrees with the speaker.[32]  That is especially true when, as is the case with captive-audience speeches, attendance is mandatory.

Nor is attendance at a captive-audience speech remotely comparable to situations where employers distribute campaign paraphernalia in a manner that forces employees to make an observable choice whether or not to display it.[33]  The Board has repeatedly made clear that the strictures applicable to the distribution of paraphernalia intended to be displayed by an employee do not apply to the distribution of literature that is not intended to be displayed by employees.[34]  Employers may distribute literature directly to individual employees, in keeping with the established principle that "employers are entitled to distribute campaign literature during a campaign."[35]  Such distributions do not coerce employees in the exercise of their Section 7 rights even if the employee has not consented in advance, as the Board has long held.[36]  Nor does an employer representative "violate[] Section 8(a)(1) by injecting himself into a conversation [among employees about the union] in order to express an 8(c) opinion."[37]  There is no meaningful difference, for Section 7 purposes, between the distribution of employer campaign literature or the interruption of a prounion conversation to present the employer's side and attendance at a captive-audience speech.  All "require" the employee to receive a presentation of the employer's position on unionization and none involve the distribution of anything that employees are expected to display.[38]  It cannot be the case that requiring employees to attend a captive-audience speech unlawfully interferes with Section 7 rights when requiring employees to receive campaign literature containing the same message, or to pause their own union-related conversation to hear the employer's side, does not.

---

[27] 29 U.S.C. § 157.

[28] See *Prescott Industrial Products Co.*, 205 NLRB 51 (1973) (finding statements by employees during captive-audience speech expressing support for union protected unless "the misconduct is so violent or of such character as to render the employee unfit for further service"), enf. denied in relevant part 500 F.2d 6 (8th Cir. 1974).  Accordingly, I cannot agree with my colleagues that, under existing precedent, employees lawfully may "be prevented from expressing their own views [during a captive-audience speech]—all on pain of discipline or discharge."  As noted above, employees were not prevented from expressing their views during the Respondent's captive-audience speech in this case.

[29] *Allegheny Ludlum Co.*, 333 NLRB 734, 744 (2001), enfd. 301 F.3d 167 (3d Cir. 2002).

[30] *Fieldcrest Cannon*, 318 NLRB 470, 496 (1995), enfd. in pert. part 97 F.3d 65, 72, 74 (4th Cir. 1996).

[31] *Florida Steel Corp.*, 224 NLRB 587, 588–589, 594 (1976), enfd. mem. 552 F.2d 368 (5th Cir. 1977).

[32] See *Johanns v. Livestock Marketing Assn.*, 544 U.S. 550, 557 ("We have sustained First Amendment challenges to allegedly compelled expression in two categories of cases: true 'compelled-speech' cases, in which an individual is obliged personally to express a message he disagrees with, imposed by the government; and 'compelled-subsidy' cases, in which an individual is required by the government to subsidize a message he disagrees with, expressed by a private entity."); *Cresman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015) ("[I]n order to make out a valid compelled-speech claim, a party must establish (1) speech; (2) to which he objects; that is (3) compelled by some governmental action.").  Plainly, requiring attendance at a meeting at which a speaker expresses the speaker's opinion on a topic is not "compelled speech," on the part of attendees, as the courts have defined it.

Likewise, requiring employees to attend a captive-audience speech cannot reasonably be likened to the coercive interrogations about union activity at issue in *Standard-Coosa-Thatcher Co.*, 85 NLRB 1358, 1360 (1949).

[33] Cf. *A.O. Smith Automotive Products Co.*, 315 NLRB 994, 994 (1994).

[34] *Intermet Stevensville*, 350 NLRB 1349, 1355–1356 (2007) (finding that supervisor lawfully handed literature directly to employees at the timeclock); *Jefferson Stores*, 201 NLRB 672, 673, 676–677 (1973) (finding that employer's assistant manager lawfully distributed "vote no" cards directly to employees at the doors of the plant); see also *Alladin Gaming, LLC*, 345 NLRB 585, 586 (2005) (holding that employer lawfully interrupted prounion solicitation to give its perspective on unionization: "employees may listen to the employer representative while he speaks, and, to this extent, stop their Section 7 conversation.  But, this is the essence of the exchange of ideas.  After the employer representative has spoken, the employees can respond, or ignore him and continue[] their conversation."), rev. denied 515 F.3d 942 (9th Cir. 2008).

[35] *Intermet Stevensville*, 350 NLRB at 1355–1356.

[36] *Jefferson Stores*, 201 NLRB at 673.

[37] *Alladin Gaming, LLC*, 345 NLRB at 587.

[38] *Intermet Stevensville*, 350 NLRB at 1356 (finding that distribution of literature directly to employees lawful because "all that was *'required'* of [the employees], and all that they did, was to *receive* the Respondent's campaign literature, the content of which is not alleged to be unlawful" (emphasis added)).

The majority does not dispute that an employer has the right to require employees to attend meetings on safety, training on new equipment or work processes, or the like during working time. As the Board recognized long ago, "[t]he Act, *of course,* does not prevent an employer from making and enforcing reasonable rules covering the conduct of employees on company time. Working time is for work."[39] Absent any collectively-bargained agreement to the contrary, an employer has the right to determine what work employees will be required to perform during working time.[40] Nor can it reasonably be disputed that attending a mandatory meeting during regular working hours, regardless of the subject, is part of an employee's "work."[41] It follows that, during working time, an employer may lawfully require employees to attend meetings about unionization as well.

This is true even though unions do not have the same ability to compel employees to attend their meetings. As the Supreme Court has held, the Act "does not command that labor organizations as a matter of abstract law, under all circumstances, be protected in the use of every possible means of reaching the minds of individual workers, nor that they are entitled to use a medium of communication simply because the employer is using it."[42] Consistent with that principle, an employer's use of captive-audience speeches may not be restricted on the premise that the method of communication is not available to unions or to employees.

In sum, the right of employees to form, join, or assist unions is not unlawfully infringed when they are required to attend a captive-audience speech at which the employer presents its views regarding unionization. Accordingly, the Board does not have the power to prohibit them.[43]

### 3. Response to the majority

The majority contends that captive-audience speeches interfere with employee Section 7 rights for several reasons, but none of them withstand the slightest scrutiny. To begin, the majority implies that the Board's decision in *Babcock* was poorly reasoned because it did not provide a detailed explanation for the holding that "the language of Section 8(c) of the amended Act, and its legislative history, make it clear that the doctrine of the *Clark Bros.* case no longer exists as a basis for finding unfair labor practices" when employees are required to attend a captive-audience speech.[44] But this ignores the fact that *Babcock* was decided by a *unanimous* panel that included Member Houston, who was part of the *Clark Brothers* majority.[45] It is absurd to suppose that he would have repudiated a decision he had authored only a few years earlier unless he was absolutely sure that the intervening Taft-Hartley Act compelled it. Although the other member of the *Clark Brothers* majority, Chairman Herzog, chose not to participate in *Babcock,* he surely would have protested the overruling of *Clark Brothers* if he thought he had any basis for doing so.[46] As the Board's "contemporaneous construction" of Section 8(c), *Babcock* "is entitled to very great respect."[47] For these reasons, the majority errs in failing to give the considered judgment of the *Babcock* Board the weight it is due.

Nor is it the case that the Board has never examined the issue of mandatory attendance at meetings that implicate Section 7 activity between the issuance of *Babcock* and

---

[39] *Peyton Packing Co.,* 49 NLRB 828, 843 (1943) (emphasis added), enfd. 142 F.2d 1009 (5th Cir. 1944), cert. denied 323 U.S. 730 (1944).

[40] Id.; see also *Daisy Originals Inc., of Miami,* 187 NLRB 251, 255 (1971) (employer lawfully required employees to attend meeting to discuss its decision to withdraw recognition from the union or clock out, and lawfully refused to pay employees who clocked out early), enfd. in part other grounds 468 F.2d 493 (5th Cir. 1972).

[41] See 29 CFR Secs. 785.27-785.28 (holding that attendance at meetings during regular working hours or where attendance is required by the employer is compensable working time).

[42] *NLRB v. United Steelworkers of America, CIO (NuTone, Inc.),* 357 U.S. 357, 364 (1958) (finding that employer lawfully enforced solicitation rule even though it was at the same time engaged in solicitation that would have violated the rule if engaged in by an employee).

[43] In arguing for *Babcock* to be overruled, the General Counsel asserted that required attendance at a captive-audience speech interferes with the statutory right to refrain from Sec. 7 activities. The majority seemingly endorses the General Counsel's position in this regard, though the only analysis they provide in support is to posit by way of analogy that "an employer could not fire employees for sitting and listening to a speaker advocate for the union, instead of getting up and walking away." But the analogy fails. As noted above, Sec. 7 protects an employee's right to form, join, or support a union, to engage in other concerted activities for mutual aid or protection, or to refrain from engaging in any of those activities. An employee who chooses to listen to a speaker "advocate for the union" during nonworking time is exercising their Sec. 7 right to engage in forming, joining, or assisting a union. Likewise, an employee who chooses to "get[] up and walk[] away" from a speaker "advocat[ing] for the union" during nonworking time is exercising their Sec. 7 right to refrain from forming, joining, or assisting a union. But employees are not engaged in forming, joining, or assisting a union when they are required to sit in a room while an employer gives a speech opposing unionization. Nor does the analogy shed any light on whether the listening employees in either scenario are engaged in concerted activity for mutual protection. As I have explained, that is not the case.

[44] 77 NLRB at 578.

[45] Chairman Herzog and Member Houston constituted the *Clark Brothers* majority, while Member Reilly dissented.

[46] Moreover, Chairman Herzog, who vehemently opposed the Taft-Hartley Act, was intimately involved with the legislative process that led to its enactment. See NLRB 80th Anniversary at 37 (Chairman Herzog "opposed the Taft-Hartley amendments and testified against the legislation. He continued to oppose Taft-Hartley after passage . . . ."), https://www.nlrb.gov/sites/default/files/attachments/basic-page/node-1536/NLRB 80th Anniversary.pdf (last visited 11/12/2024); Legislative History of the Labor Management Relations Act, 1947: P.L. 80-101: Ch. 120, 1st Sess. (1947) at 1847-1937 (Covington & Burling) (testimony and statement of Chairman Herzog opposing Taft-Hartley Act).

[47] *Edwards' Lessee v. Darby,* 12 Wheat. 206, 210 (1827) (quoted in *Loper Bright Enterprises v. Raimondo,* 144 S.Ct. 2244, 2257 (2024)).

today's decision. To the contrary, the Board noted in *Livingston Shirt Co.* that there is nothing in the Act "which even hints at any congressional intent to restrict an employer in the use of his own premises for the purpose of airing his views."[48]  As the Board there explained, no such restriction is needed because the "time-honored and traditional means by which unions have conducted their organizational campaigns . . . are fully adequate to accomplish unionization and accord employees their rights under the Act to freely choose a bargaining agent."[49]  Or as the Supreme Court would put it, "the remedy to be applied is more speech, not enforced silence."[50]

The Board has also repeatedly explained that an employer may compel employees to attend meetings on the employer's premises during normal working time, even when the meeting implicates Section 7 activity, because the employer is "at liberty to determine the use to which it wishe[s] to put the time for which it [is] paying the employees, and the employees [are] not free to make a choice in favor of working."[51]  Contrary to the majority, then, a captive-audience meeting is not an "extraordinary exercise of and demonstration of employer power over employees" but is instead a routine application of the longstanding rule that "working time is for work."  My colleagues may wish that the world did not work that way, but the Act does not empower the Board to make it so.

My colleagues question whether attendance at a captive-audience speech constitutes "working time" though they studiously avoid taking a clear position on the issue.  As noted above, Department of Labor wage and hour regulations (which my colleagues do not address) clearly define time spent at meetings as work and recognize no exception when the subject is unionization.  My colleagues also do not acknowledge the Board's prior holdings that time spent at a meeting about changes in working conditions, or a meeting called for the purpose of informing employees that the employer was withdrawing recognition from the union, i.e., expressing its position on whether the employees were "unionized," is working time as well.[52]  If

the majority is of the view that mandatory meetings are not "work" only when an employer discusses unionization with unrepresented employees, the burden is on them to say so and support it.  This my colleagues have failed to do.

The majority implies that if mandatory meetings about unionization are "work" then an employer could necessarily also define as work "wearing an antiunion button, soliciting other employees to oppose the union, distributing the employer's campaign literature, or reporting on other employees' union activity."  As I have already explained, requiring employees to support the employer's position on unionization is clearly distinguishable from requiring employees to receive information about it.  Our precedent recognizes that distinction; the majority's decision does not.

The majority also raises the specter of endless captive-audience speeches if captive-audience speeches are lawful, positing that "[a]n employer would be free to require employees to attend captive-audience meetings for the entire workday, over a period as long as the employer wishes, until the employer was satisfied that employees had adopted its view as their own."  As my colleagues admit, the law has permitted employers to do that for the last 75 years, yet they cannot cite a single case where it has ever happened.[53]

This should come as no surprise.  After all, employers do have a business to run, and an employer that ceases operations for the purpose of holding captive-audience meetings "for the entire workday," day after day, won't stay in business for long.  Such heavy-handed tactics are likely to backfire in any event, increasing support for the union among employees who resent being pushed around.  Here, as in other contexts, I have confidence in the backbone of American workers.[54]

Further in this regard, it bears emphasis that Section 7 of the Act does not only protect the decision whether to be represented by a union: as noted above, it also protects employees' right to engage in "other concerted activities

---

[48] 107 NLRB at 405–406 ("[A]n employer's premises are the natural forum for him just as the union hall is the inviolable forum for the union to assemble and address employees.").

[49] Id.

[50] *Linmark Associates, Inc. v. Willingboro Township*, 431 U.S. 85, 97 (1977) (quoting *Whitney v. California*, 274 U.S. 357, 377 (1927) (Justice Brandeis, concurring)).

[51] *Addressograph-Multigraph Corp.*, 228 NLRB 6, 8–9 (1977) (finding employer lawfully suspended employees who refused to attend meeting to discuss change in work process opposed by union even though the employees continued production work during the meeting) (quoting *Daisy Originals Inc, of Miami*, 187 NLRB at 255).

[52] *Addressograph-Multigraph Corp.*, 228 NLRB at 8–9 (change in working conditions); *Daisy Originals Inc., of Miami*, 187 NLRB at 255 (employees no longer unionized).

[53] None of the Board cases my colleagues cite demonstrates the "nightmare" scenario they imagine. Cf. *International Baking Co.*, 342 NLRB 136, 138 (2004) (observing that during an 11-week campaign, the respondent held approximately 80 meetings of varying sizes, ranging from groups of 25-50 employees to groups of 150 employees, in a petitioned-for unit of 331 employees), enfd. mem. 185 Fed.Appx. 691 (9th Cir. 2006); *Andel Jewelry Corp.*, 326 NLRB 507, 507 (1998) (Member Fox, dissenting) (observing that employer held daily meetings with groups of employees for two-and-a-half weeks prior to the election).

[54] Cf. *Stericycle, Inc.*, 368 NLRB No. 93, slip op. at 17 (2019) (Member Kaplan, dissenting) (noting that the majority's "reasonable employee" is the "labor-law equivalent of tort law's 'eggshell skull' plaintiff"); *LA Specialty Produce Co.*, 368 NLRB No. 93, slip op. at 8 (2019) (recognizing "the self-reliance, common sense, and team spirit that have always characterized America's workers").

for mutual aid or protection." If an employer may not lawfully require employees to attend a meeting at which the employer states its position on unionization, as the majority posits, then there would appear to be no principled basis for not similarly prohibiting *any* mandatory meeting at which an employer states its position on *any* term or condition of employment—such as a new safety rule or work process—or, indeed, any subject that affects "employees' interests as employees."[55] Under the majority's (faulty) reasoning, being required to attend a meeting about one of those subjects would interfere with the (supposed) Section 7 right of employees "to choose whether, when, and how to receive information" about that working condition too.

Nor is this merely a theoretical issue. Prior Board decisions have addressed claims that employees could not be compelled to attend a meeting to discuss a new work process or a meeting at which the employer notified employees that it was withdrawing recognition from the union.[56] Similar claims have been advanced under Title VII with respect to mandatory implicit bias training.[57] If the

[55] *Eastex, Inc. v. NLRB*, 437 U.S. 556, 563 (1978) (holding that Sec. 7 protects employees when they act concertedly for the purpose of improving working conditions). Considering how broadly my colleagues define the scope of protected concerted activity, it is hard to see how any mandatory meeting could survive scrutiny. See, e.g., *Home Depot USA, Inc.*, 373 NLRB No. 25, slip op. at 21–32 (2024) (Member Kaplan, dissenting); *Miller Plastic Products, Inc.*, 372 NLRB No. 134, slip op. at 9-15 (2023) (Member Kaplan, concurring in the result).

[56] *Addressograph-Multigraph Corp.*, 228 NLRB at 8–9 (change in work process); *Daisy Originals Inc., of Miami*, 187 NLRB at 255 (withdrawal of recognition).

[57] See, e.g., *Vavra v. Honeywell International, Inc.*, 2023 WL 5348764 (N.D. Ill. 2023), aff'd. 106 F.4th 702 (7th Cir. 2024).

[58] The majority denies that this is the case, but their reasoning is wholly unpersuasive. My colleagues affirm that their decision today singles out mandatory meetings about unionization for prohibition while expressly permitting employers to require employees to attend meetings about any other subject as a condition of employment and to discipline employees who refuse to attend. But they fail to explain how that result can be reconciled with the precedent I have cited. In *Addressograph-Multigraph Corp.*, for example, the Board held that forcing represented employees to listen to the employer's position on a new work procedure *that the union opposed* (a fact in that case that my colleagues do not address) did not unlawfully interfere with those employees' Sec. 7 rights. Rather than reconcile their selective treatment of employer speech with such precedent, my colleagues simply declare that mandatory meetings about changes to any term or condition of employment that employees might concertedly support or oppose "do not implicate the Sec[.] 7 concerns we address."

[59] The majority contends that employees will feel compelled to respond, essentially because their coworkers will judge them if they don't. In support, the majority cites *Allegheny Ludlum*, 333 NLRB 734, where an employer presented a campaign video that depicted employees as opposing the union. As explained above, that situation is materially different because, unlike the video at issue in *Allegheny Ludlum*, attending a captive-audience speech does not indicate anything about the views of the audience. As the Board explained in *Allegheny Ludlum*, "[e]mployees depicted as opposing union representation may be inhibited from subsequently expressing support for the union, as they may be required

majority's reasoning for condemning captive-audience speeches were valid, then the Act would prohibit employers from requiring employees to attend meetings about any of those subjects as well.[58]

But the majority's reasoning is not valid: captive-audience meetings do not unlawfully impinge on an employee's Section 7 right to choose the degree to which they will participate in the debate concerning representation. As shown above, employees are not compelled to express a view on union representation simply because they are required to attend a meeting at which someone else expresses their views on that subject.[59] Nor does the Act confer on employees an unbounded right to be "let alone with respect to the exercise of rights under the Act."[60] To the contrary, longstanding precedent draws a clear line between efforts to compel employees to express support for the employer's campaign position, which are prohibited, and requiring employees to receive information about the employer's position, which is permitted regardless of whether employees wish to hear it.[61] The majority's ban

to explain the discrepancy between their position as shown on the videotape and their subsequent statements." Id. at 744. Attendance at a captive-audience speech, in contrast, does not "depict" employees as opposing union representation. It is simply not the case that employees are impermissibly compelled to respond in those circumstances. See *Alladin Gaming, LLC*, 345 NLRB at 586 (recognizing that, "[a]fter the employer representative has spoken, the employees can respond, *or ignore him and continue[] their conversation*" (emphasis added)).

At the same time, the majority complains that extant precedent permits employers to direct employees *not* to speak during a captive-audience speech. See *Electrolux Home Products*, 368 NLRB No. 34, slip op. at 4. With all due respect to my colleagues, they are trying to have it both ways.

My colleagues also contend that, "[b]y definition, captive-audience meetings are unfree" and, as a result, that "captive-audience meetings [do not] promote[] the Act's policy of encouraging free debate in the workplace." In advancing this position, my colleagues seem to be peddling a modern-day variant of the "right to reply" doctrine rejected in *Livingston Shirt*, supra. A debate is not "unfree" because the parties have the opportunity to speak at different times and in different ways. See generally *NLRB v. United Steelworkers of America, CIO (NuTone, Inc.)*, supra; *Alladin Gaming, LLC*, supra. Nor can the Board prohibit certain forums for speaking simply because *the Board thinks* other forums will "do a better job of fostering" debate.

[60] The "right to be let alone" cited by the majority is derived from First Amendment principles, and their appeal to it is addressed more fully below in the analysis of the First Amendment problems raised by the majority's decision.

[61] Cf. *Internet Stevensville*, 350 NLRB at 1349 (employer lawfully required employees to receive its literature); *Scientific Atlanta, Inc.*, 278 NLRB 467, 467 (1986) (employer engaged in objectionable conduct by requiring employees to disseminate its antiunion literature).

My colleagues vainly attempt to distinguish *Internet Stevensville* on the basis that receiving literature "takes but an instant" while a captive-audience meeting is "a time-consuming affair." Of course, this rationale appears nowhere in the Board's decision in *Internet Stevensville* (or in *Jefferson Stores*). Even taken at face value, the majority's purported distinction makes little sense. How long is "too long?"

on captive-audience speeches impermissibly obliterates that line.

The majority's assertion that captive-audience meetings "can readily serve as a mechanism for employers to observe and surveil employees as the exercise of their Section 7 rights is addressed" provides no valid basis for their prohibition either. Section 8(c) guarantees employers and unions alike the right to discuss unionization with employees. To state the obvious, the ability of a speaker to observe how a listener responds is inherent in the communication process. Accordingly, it would nullify the right of free speech granted by Section 8(c) to hold that those communications may be prohibited on that basis.[62] That is equally true whether the discussion is held one-on-one or in a meeting attended by many employees. Moreover, the same opportunity to observe employee reactions exists for posters placed on the wall of the workplace, the presentation of a campaign video, or the distribution of leaflets directly to individual employees. Those communications are lawful all the same,[63] and it follows that captive-audience speeches may not be restricted on this basis either.

The majority's claim that employees' interpretation of what is said during a captive-audience speech will necessarily be colored by the fact that attendance is mandatory is wholly unpersuasive as well. That claim flies in the face of Section 8(c), which indisputably "limits the extent to which context can be used to impart sinister meanings to innocuous words."[64] As discussed above, Section 8(c) prohibits the Board from condemning noncoercive communications simply because they are made in a meeting that employees are required to attend. The majority's arguments to the contrary are wholly unpersuasive.

After noting that Section 8(c) does not specifically address captive-audience meetings, the majority concludes that Section 8(c) does not apply to them on the premise that when an employer compels its employees to attend a meeting, it is not "expressing" or "disseminating" any "views, argument, or opinion" in the "ordinary, contemporary, common meaning," of those words. But this analysis disregards the text of Section 8(c), which, as noted above, prohibits the Board from finding that the expression of any views, argument or opinion, "or the dissemination thereof" is an unfair labor practice if "such expression contains no threat of reprisal or force or promise of benefit." A captive-audience speech is, by its very nature, "the dissemination" of the employer's views, and Section 8(c) prohibits the Board from finding that "dissemination" to be an unfair labor practice unless "such expression" contains a "threat of reprisal or force or promise of benefit."[65] The majority's textual analysis fails to grapple with the ordinary meaning of *those* terms in any meaningful way.

To be sure, the Supreme Court stated in *Thomas v. Collins* that the First Amendment's protection for an employer's attempts to persuade employees not to support a union do not apply "[w]hen to this persuasion other things are added which bring about coercion, or give it that character."[66] But this holding provides no support for the majority's view that Section 8(c) therefore does not apply to captive-audience speeches because the requirement to attend is coercive even if the content of the speech is not. First, *Thomas v. Collins* predates the enactment of Section 8(c) and thus says nothing about how that provision is to be interpreted. And the Supreme Court has subsequently made clear that Section 8(c) not only "implements the First Amendment," it "*also* manifest[s] a 'congressional intent to *encourage* free debate on issues dividing labor and management.'"[67] The majority's cramped reading of Section 8(c) stands that policy on its head. Second, requiring employees to attend meetings during working time is not coercive within the meaning of Section 8(a)(1) of the Act in any event, for the reasons stated above.

The majority's argument that it may lawfully prohibit captive-audience speeches because the required attendance is a "threat" outside the protection of Section 8(c) fails for another reason as well. As the majority emphatically notes, their holding is limited to required attendance at meetings about unionization and applies even if the discussion itself was noncoercive. Requiring employees to attend a meeting that addresses any other subject on pain

---

[62] *NCRNC v. NLRB,* 94 F. 4th at 74–75 (citing *NCRNC, LLC, dba Northeast Center for Rehabilitation,* 372 NLRB No. 35, slip op. at 17 (2022) (Member Ring, dissenting in pert. part)); see also *Intertape Polymer Corp. v. NLRB*, 801 F.3d 224, 240 (4th Cir. 2015) (same).

[63] Or perhaps I should say that those communications are lawful *for now*. My colleagues' rationale would seemingly permit a blanket ban on posters, videos, and the distribution of leaflets directly to employees, as well as many other contexts in which an employer communicates with an employee. One cannot help but wonder then whether they would find that the opportunity to observe employees' reactions in these scenarios is an unfair labor practice in need of remedying. Only time will tell just how far my colleagues will curtail employer free speech, but I fear that this is not the last we have heard from them on this subject.

[64] *NLRB v. Golub Corp.,* 388 F.2d at 927.

[65] My colleagues claim that this statement is inconsistent with my statement elsewhere that Congress intended the inquiry into Sec. 8(c) to focus on the content of the employer or union "expression" itself rather than on the circumstances surrounding it. Of course, there is no tension between these two statements. The captive-audience speech is a long-approved method of disseminating an employer's views. If there is no threat or coercion contained within that speech, the Board should not declare it unlawful.

[66] 323 U.S. at 537–538.

[67] *Chamber of Commerce v. Brown,* 554 U.S. at 67 (emphasis added); id. at 73 ("The question, however, is not whether [the disputed speech restriction] violates the First Amendment, but whether it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the NLRA." (internal quotation omitted)).

of discipline (a "threat," in the majority's parlance) is, and remains, lawful. As such, it is not the "threat" that sets these different meetings apart, but the subject matter. The fact that a meeting non-coercively addressed unionization is not only used as "evidence of an unfair labor practice," under the majority's holding today, it is an essential element of the unfair labor practice finding. And Section 8(c), by its terms, plainly prohibits that.[68]

The majority's treatment of the legislative history of Section 8(c) is unpersuasive as well.[69] My colleagues acknowledge, as they must, that the only reference to *Clark Brothers* in the legislative history is the statement in the Senate Labor Committee report disapproving of it as "too restrictive."[70] They also correctly observe that *Clark Brothers* held that the captive-audience speech at issue in that case was unlawful. But my colleagues go too far when they infer that the Senate Report disapproved of *Clark Brothers* simply because the speech was made on working time and not because attendance was compelled. In *Clark Brothers*, the Board observed that "the employees were compelled by the respondent to assemble at the plant during working time to listen to [anti-Union] campaign speeches of the respondent's officials." 70 NLRB at 804. The Board further observed that "[t]he only way the employees could have avoided hearing the speeches would have been for them to leave the premises, which they were not at liberty to do during working hours." Id.

The Board concluded that "the conduct of the respondent in compelling its employees to listen to a speech on self-organization under the circumstances hereinabove outlined . . . independently constitutes interference, restraint, and coercion within the meaning of the Act." Id. It is clear, then, that the Board found the conduct unlawful based on the totality of the circumstances, not for two independently unlawful reasons, as my colleagues contend. And it was this overall holding—i.e., finding the speech unlawful because it "was made in the plant on working time"—of which the Senate disapproved.

To be sure, the House Report for the Taft-Hartley Act does not specifically address captive-audience speeches. It does, however, state that the House version of Section 8(c) was intended to prohibit the Board "from using as evidence against an employer, an employee, or a union any statement that *by its own terms* does not threaten force or economic reprisal."[71] The majority's captive-audience speech ban certainly finds no support there.

For its part, the Conference Committee Report affirms that the "*purpose* [of Section 8(c) as enacted] is to protect the right of free speech when what the employer says or writes is not of a threatening nature or does not promise a prohibited favorable discrimination."[72] Prohibiting captive-audience speeches when "what the employer says" in the speech contains no threat or promise of benefit hardly furthers that purpose either.

---

[68] *United Site Services of California, Inc.*, 369 NLRB No. 137, slip op. at 14 fn. 68 (2020) (holding that "Sec. 8(c) precludes reliance on statements of opinion that neither threaten nor promise as evidence in support of any unfair labor practice finding"); accord *Sasol North America Inc. v. NLRB*, 275 F.3d 1106, 1112 (D.C. Cir. 2002); *Medeco Security Locks, Inc. v. NLRB*, 142 F.3d 733, 744 (4th Cir. 1998); *BE & K Construction Co. v. NLRB*, 133 F.3d 1372, 1375–1377 (11th Cir. 1997) (per curiam); *Holo-Krome Co. v. NLRB*, 907 F.2d 1343, 1345–1347 (2d Cir. 1990).

[69] My colleagues cite to *Linn v. Plant Guard Workers* to suggest that Sec. 8(c) is limited to cases involving employer motive. *Linn* raised the question whether the Act preempts state libel laws when potentially libelous statements are made during a union organizing campaign. As my colleagues acknowledge, the Supreme Court observed in that case that Sec. 8(c) was adopted "to prevent the Board from attributing antiunion motive to an employer on the basis of his past statements." 383 U.S. at 62 fn.5. But the Court made that observation in the course of rejecting the view that Sec. 8(c) was intended to "immuniz[e] all statements made in the course of a labor controversy" and, therefore, preempted state law. Id. Plainly, Sec. 8(c) generally prevents statements and the dissemination thereof from being held to be an unfair labor practice even in cases where, as here, employer motivation is not at issue.

[70] Even so, the majority implies that it should be given less weight because a co-author of the report was a member of the Senate Committee staff named Gerard Reilly, who had previously served as a Board member and dissented in *Clark Brothers*. See Gerard D. Reilly, The Legislative History of the Taft-Hartley Act, 29 GEO. WASH. L. REV. 285, 297 (1960). But the law review article itself states that the Senate Report reflected "the committee's intent." Id. As noted above, Chairman Herzog and Member Houston, who knew former Member Reilly and were

intimately familiar with the legislative process that led to the Taft-Hartley Act, clearly believed that the Senate Report reflected the Senate's views as well.

[71] H.R. Rep. No. 80-245 (hereinafter "House Report"), at 8 (1947), reprinted in 1 LMRA Hist. at 299 (emphasis added). The version passed by the House stated that "The following shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act: (1) Expressing any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, if it does not by its own terms threaten force or economic reprisal."

The House Report also states that, under Sec. 8(c), "nothing that anyone says shall constitute or be evidence of an unfair labor practice unless it, by its own express terms, threatens force or economic reprisal. This means that a statement may not be used against the person making it unless it, standing alone, is unfair within the express terms of Sections 7 and 8 of the amended act." Id. at 324. The majority's captive-audience ban finds no support there either.

[72] See H.R. Rep. No. 80-510 (hereinafter "Conference Report"), at 45 (1947), reprinted in 1 NLRB, Legislative History of the Labor Management Relations Act, 1947 at 549. (emphasis added). Rather than meaningfully grappling with this portion of the Conference Report, the majority simply chooses to rely on another section of that report stating that Sec. 8(c) was *necessitated* by the Board's practice "of using speeches and publications of employers concerning labor organizations and collective bargaining arrangements as evidence, no matter how irrelevant or immaterial, that some later act of the employer had an illegal purpose." They also fault me for not pointing to anything in the Conference Report that authorizes captive-audience speeches. But of course, they effectively write off the one statement in the legislative history that does expressly speak to this issue.

In these circumstances, my colleagues go too far when they infer from the fact that the House and Conference Committee reports do not specifically address captive-audience speeches that Congress did not intend that Section 8(c) address them. After all, the driving consideration behind Section 8(c) was to reject prior Board decisions that had gone too far in restricting employer speech. The Senate Report's condemnation of *Clark Brothers* is consistent with that purpose. And the specific reference to captive-audience speeches in the Senate Report outweighs the fact that the House and Conference Reports do not specifically address them under established interpretive principles.[73]

In sum, taking into account the fact that, as noted above, the only mention of *Clark Brothers* in the legislative history is its condemnation as "too restrictive," the related rejection of *Monumental Life Ins. Co.* as improperly relying on context to "impart sinister meanings to innocuous words,"[74] and the considered views of the *Babcock* Board on the subject, the most reasonable interpretation of the legislative history as a whole is that Congress intended to prevent the Board from condemning captive-audience speeches on the basis that attendance was mandatory as well.

### C. The Majority's Captive-Audience Speech Ban is Also Impermissible on First Amendment Constitutional Avoidance Grounds

Even if the majority's prohibition of captive-audience speeches were an otherwise permissible interpretation of the Act, which it is not, that interpretation would still be precluded on First Amendment constitutional avoidance grounds. This is so because the majority's decision today, by its terms, singles out captive-audience speeches about unionization for prohibition while permitting mandatory meetings on other subjects. On its face, then, the

prohibition "target[s] speech based on its communicative content—that is, it applies to particular speech because of the topic discussed or the idea or message expressed."[75] As such, it plainly constitutes a content-based regulation of speech.[76] Content-based restrictions on speech, in turn, "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."[77]

The Eleventh Circuit recently applied this principle in *Honeyfund v. Governor, State of Florida.* The Florida law at issue in that case prohibited employers from holding any mandatory employee meeting that endorsed belief in certain topics related to race, color, sex, or national origin.[78] The court found that the Florida law was unconstitutional on two independent bases: (1) it was a content-based regulation of speech; and (2) it also discriminated on the basis of viewpoint.[79] Here, the majority prohibits mandatory meetings in which an employer "expresses its views on unionization." Even assuming that this prohibition does not discriminate on the basis of viewpoint, it is plainly a content-based speech restriction for the same reasons that the Florida law was.[80]

My colleagues disagree but their reasons are unpersuasive. According to the majority, requiring employees to attend a captive-audience speech or face job consequences is a threat of reprisal that the First Amendment does not protect. But this ignores the fact that their decision today expressly permits compelled attendance at meetings about any other subject. The majority contends that this is a function of the Act's scope, but under their interpretation of the Act that is simply not true as I have already explained. In short, the majority is either wrong in their interpretation of the Act or wrong under the First Amendment.

---

[73] See *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153 (1976) (holding that "[i]t is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum").

There is, therefore, no merit to the majority's invocation of the oft-quoted phrase that, in relying on the Senate Report, I have "engaged in an exercise of looking over a crowd and picking out [my] friends . . . . [and] found just one 'friend'—the Senate Report." Rather, it seems from my colleagues' perspective that the room is not crowded at all. They infer from this low attendance that Congress thereby gave the Board carte blanche to outlaw captive-audience speeches. I, on the other hand, see no harm in speaking to the one "person" in the room who has something to say on this very subject. But setting their flawed analogy aside, the House and Conference Committee reports, when read in their full context, support my position too. And, as noted above, my "friends" also include Chairman Herzog and Member Houston, who obviously knew far more than the majority or I do about the legislative process that led to the Taft-Hartley Act, as well as decades of precedent since *Babcock* was decided.

[74] *NLRB v. Golub Corp.,* 388 F.2d at 927.

[75] *City of Austin v. Reagan,* 596 U.S. 61, 69 (2022) (cleaned up).

[76] Id.; see also *Honeyfund.com, Inc. v. Governor, State of Florida,* 94 F.4th 1272, 1278 (11th Cir. 2024) (finding that restrictions are content-based if "enforcement authorities must examine the content of the message that is conveyed to know whether the law has been violated" (internal quotation omitted)).

[77] *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015).

[78] *Honeyfund v. Governor, State of Florida,* 94 F.4th at 1275–1276.

[79] Id. at 1277 ("By limiting its restrictions to a list of ideas designated as offensive, the Act targets speech based on its content. And by barring only speech that endorses any of those ideas, it penalizes certain viewpoints—the greatest First Amendment sin.").

[80] The majority vainly attempts to distinguish *Honeyfund* by noting that the Florida law at issue there discriminated on the basis of viewpoint and by citing the financial remedies that law provided in the case of violations. None of those factors was relevant to the court's determination that the law also was a content-based speech restriction, however, nor does their absence preclude a finding that the majority's captive-audience ban is content-based as well. And the remedy for violating the Act, a cease-and-desist order enforceable through contempt proceedings, is certainly sufficient to trigger First Amendment scrutiny.

Accordingly, the majority's ban on captive-audience speeches is nothing like the permissible content-neutral speech regulation at issue in *Hill v. Colorado.*[81] There, the Supreme Court upheld a Colorado law that limited the ability of protesters to approach health facility patrons within 100 feet of the facility. The Court held that the Colorado law was a permissible, content-neutral speech regulation because it applied equally to all protests regardless of the subject. In so holding, moreover, the Court contrasted its prior decision in *Carey v. Brown* regarding an Illinois law that generally prohibited residential picketing but contained an exemption for peaceful picketing a place of employment involved in a labor dispute. In *Carey v. Brown,* the Court held that the Illinois law was unconstitutional because it impermissibly discriminated based on the content of the picketers' messages that is, between labor-related picketing and picketing related to other subjects.[82] That is precisely what we have here: the majority's ban on captive-audience speeches prohibits meetings where the subject is unionization while permitting mandatory meetings about other subjects.

For the purpose of the First Amendment analysis, it is immaterial that the majority's ban only applies to mandatory meetings. As the *Honeyfund* court aptly noted in rejecting the same voluntary versus mandatory attendance argument advanced by the majority here, "another way of putting it would be that the Act's prohibitions apply only when an employer wants to communicate a message badly enough to make meeting attendance mandatory. Stripping this argument down to the essentials thus reveals its infirmity."[83] Nor does it matter that employers remain free to present their message by means other than captive-audience speeches. "The First Amendment protects speech itself, and lawmakers may no more silence unwanted speech by burdening its utterance than by censoring its content."[84] The fact that other avenues of expression exist does not excuse the "constitutional problem posed by speech bans."[85]

The majority gains no ground by citing the "right to be let alone." Insofar as the First Amendment itself guarantees a right to be "let alone," that right only applies to restrictions imposed by the government.[86] It has no application to actions by private entities, like the Respondent, or to any other private employer. When used in the broader sense employed by the majority, this "right" is more accurately characterized as an "interest" that the government can choose to protect in certain situations.[87] As explained above, Congress has not protected that interest by proscribing captive-audience speeches. And the Board is without power to go beyond the limits Congress has set. Moreover, governmental efforts to protect the "right to be let alone," or any other interest, through content-based speech restrictions, are presumptively unconstitutional for the reasons stated above. As shown, the majority's ban on mandatory unionization meetings fails that test.[88]

Under these circumstances, the Board is required to apply the doctrine of constitutional avoidance, under which the Act must be construed so as to avoid "serious constitutional problems . . . unless such construction is plainly contrary to the intent of Congress."[89] In other words, even if the Act *could* be read to prohibit captive-audience speeches, "must it be so read?"[90] Applying that standard here, the answer is clear: The Board is not required to interpret the Act to prohibit captive-audience speeches.

---

[81] 530 U.S. 703 (2000).

[82] *Carey v. Brown*, 447 U.S. 457, 460 (1980) ("[I]n exempting from its general prohibition only the peaceful picketing of a place of employment involved in a labor dispute, the Illinois statute discriminates between lawful and unlawful conduct based upon the content of the demonstrator's communication."). Notably, the Illinois law was held unconstitutional even though the exemption for labor picketing applied regardless of which side of the labor dispute the picketing supported.

[83] 94 F.4th at 1281-1282.

[84] Id. at 1282 (internal citations and quotations omitted).

[85] Id.

[86] As a result, my colleagues err by stating that, "[u]nder the Act and the First Amendment, employers undoubtedly have the right to persuade, but that right must accommodate employees' right to be left alone in the sphere protected by the Act, just as in other settings the right of a speaker does not override the right of an unwilling listener." Employees have no First Amendment rights vis-à-vis their employer. And as discussed in this opinion, my colleagues fail to persuade that there is any such right under the Act.

[87] *Hill v. Colorado*, 530 U.S. at 717 fn. 24 (citing *Katz v. United States*, 389 U.S. 347, 350–351 (1967)).

[88] The Supreme Court has recognized a limited exception to the general prohibition of content-based speech restrictions "when the speaker intrudes on the privacy of the home or the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975) (citing *Rowan v. U.S. Post Office Dept.*, 397 U.S. 728, 738 (1970) (allowing postal patrons to opt out of delivery of junk mail to their homes); see also *Lehman v. Shaker Heights*, 418 U.S. 298 (1974) (concerning ban on political advertisements in city-owned buses)). This exception, however, is rooted in the need to balance the competing interests of free speech and privacy. *Erznoznik v. City of Jacksonville*, 422 U.S. at 208. As explained above, employees do not have a comparable right to privacy in the workplace during working time. See also *Honeyfund v. Governor, State of Florida,* supra (holding unconstitutional content-based restriction on mandatory meetings in the workplace).

[89] *DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988); see also *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979) (observing that, where an interpretation of the Act "would give rise to serious constitutional questions," there must be an "affirmative intention of the Congress clearly expressed" to permit it (internal quotation omitted)).

[90] *International Union of Operating Engineers Local 150 (Lippert Components)*, 371 NLRB No. 8, slip op. at 5 (2021) (Members Kaplan and Ring, concurring).

The Act unquestionably *could* be read in a way that permits captive-audience speeches, for all the reasons stated above. The legislative history of Section 8 (c) confirms that Congress plainly intended that it *should* be read that way. At the very least, my colleagues cannot reasonably argue that interpreting the Act to permit captive-audience speeches is "plainly contrary to the intent of Congress."[91] Nor is there any "affirmative intention of the Congress clearly expressed" to prohibit captive-audience speeches.[92] Far from it. In these circumstances, the doctrine of constitutional avoidance compels the Board to interpret the Act in a way that avoids the Constitutional issue, by finding that captive-audience speeches are lawful.

The Board recently applied this principle to union speech in *Lippert Components.*[93] There, a majority of the Board held that Section 8(b)(4) of the Act did not prohibit a union from displaying stationary banners and an inflatable rat in support of its secondary boycott activities by applying the doctrine of constitutional avoidance.[94] I participated in *Lippert Components*, and I adhere to the views stated in that case. It should go without saying that the Board should accord employer Constitutional rights the same respect that it has shown for union Constitutional rights in the past.

If anything, the case for applying constitutional avoidance is even stronger here than it was in *Lippert Components*. There, the *absence* of any indication in the legislative history that Congress intended for Section 8(b)(4) to apply to the disputed conduct was the basis for the Board's determination.[95] Here, in contrast, the legislative history affirmatively shows that Congress did not intend that the *Clark Brothers* prohibition of captive-audience speeches should survive the enactment of Section 8(c). There is no valid basis for refusing to apply constitutional avoidance principles under these circumstances. For this reason as well, the majority's prohibition of captive-audience speeches cannot stand.

## II. THE RESPONDENT LAWFULLY PROHIBITED A POSTING BY EMPLOYEE DANA JOANN MILLER ON ITS INTERNAL ELECTRONIC MESSAGE BOARD SOLICITING SIGNATURES ON A JUNETEENTH HOLIDAY PAY PETITION

The Respondent maintains a digital message board called Voice of Associates (VOA) that employees use to

post messages for viewing by other employees and by management. It also maintains a policy that prohibits "[s]olicitation of any kind by associates on company property during working time" and "[d]istribution of literature or materials of any type or description (other than as necessary in the course of your job) by associates in working areas at any time." An accompanying FAQ lists as examples of solicitation that are "prohibited unless legally protected:"

- Solicitation for memberships, subscriptions, or signatures on petitions.
- Distribution of literature or materials of any kind.

Notably, the FAQ also specifically informs U.S. employees that solicitation is not prohibited by the policy and instead is legally protected if it does not use company electronic systems, is related to terms and conditions of employment, and happens during nonworking time. The FAQ also states that "solicitation involv[ing] distributing materials or literature" is protected and not prohibited if it also occurs outside working areas.

On June 18, 2021,[96] Miller posted a message on VOA requesting holiday pay for the Juneteenth federal holiday. Senior Human Resources Manager Jenna Edwards replied that Juneteenth was a new holiday and no decision had been made to offer holiday pay for it at that time. Another employee echoed the request for holiday pay and received a similar response. Miller and employee Conner Spence thereafter circulated a petition for Juneteenth holiday pay that other employees signed and was delivered to JFK8 General Manager Felipe Santos and a human resources manager on July 8. On July 9, Miller posted on VOA that Santos had not endorsed the holiday pay request and solicited employees to sign the petition at the Union's tent outside the facility.

On July 12, Miller was called into a meeting with Human Resources Business Partner Mike Tanelli, who informed her that the July 9 posting violated the Respondent's solicitation policy and would be removed from VOA. Tanelli took pains to make clear that it was only the solicitation to sign the petition using VOA that was at issue and that Miller had every right to solicit signatures for the petition on nonworking time in break areas of the

[91] *DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. at 575.

[92] *NLRB v. Catholic Bishop of Chicago,* 440 U.S. at 500.

[93] 371 NLRB No. 8.

[94] Id., slip op. at 5 (Members Kaplan and Ring, concurring); see also slip op. at 2-3 (Chairman McFerran, concurring).

[95] *Lippert Components* principally relied on *DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, which interpreted Sec. 8(b)(4) to impose no prohibition on the circulation of leaflets

in support of a secondary boycott based on constitutional avoidance. 485 U.S. at 575. *DeBartolo*, in turn, was based largely on the *absence* of any evidence that Congress intended that Sec. 8(b)(4) proscribe handbilling. Id. at 583–584, 588 (observing that "we [do not] find any clear indication in the relevant legislative history that Congress intended § 8(b)(4)(ii)(B) to proscribe peaceful handbilling" and "interpreting § 8(b)(4) as not reaching the handbilling involved in this case is not foreclosed either by the language of the section or its legislative history").

[96] All dates hereafter are in 2021 unless otherwise noted.

Respondent's facility: "Just on one of the comments made on the VOA board regarding the ALU and . . . going to the tent to sign up for holiday pay, things like that. . . . Amazon solicitation policy clearly is defined that you can have every right to do that on nonworking time, in break areas. The VOA board is actually not a mechanism you can use that on."[97] Tanelli also assured Miller that she was not being reprimanded, but that "there will be additional follow up if a comment like that goes back up again."

The record includes 388 VOA posts between May 1 and July 15, by many different employees. These included 35 posts by Miller, many of which expressed support for the Union and/or criticized the Respondent. Apart from the posting soliciting signatures on the Juneteenth petition, none of those posts were removed. The record also includes 35 VOA posts by other employees expressing support for the Union. None of those posts were removed either, nor is there any evidence that the Respondent took any action against the employees who posted them. In March 2022, the Respondent did not remove a post announcing that an employee had given out "VOTE NO" t-shirts and another post encouraging employees to "come get one" in the break room. According to Miller's uncontradicted testimony, another posting in March 2022 encouraged employees to pick up prounion t-shirts and pins at the Union tent. That posting was not removed either.

There is no allegation that the Respondent's solicitation policy is unlawful. Nor would there be any basis for alleging that it was. The prohibition of solicitation using VOA is lawful.[98] And it is indisputably lawful for an employer to prohibit solicitation during working time.[99] Rather, the sole question presented is whether the Respondent discriminatorily enforced the policy by removing the Juneteenth petition-signing post while allowing other posts. As the Board held in *Guard Publishing Co. d/b/a The Register Guard*, "discrimination means the unequal treatment of equals. Thus, in order to be unlawful, discrimination must be along Section 7 lines. In other words, unlawful discrimination consists of disparate treatment of activities or communications of a similar character

because of their union or other Section 7-protected status."[100] No such discrimination has been shown here.

First, it is undisputed that the Respondent allowed employees to freely post messages on VOA expressing support for the Union that did not solicit employee signatures. There is no evidence that any post of that character was ever removed. Second, the Respondent affirmatively assured employees that they had a legal right to solicit during nonworking time. This assurance was prominently stated in the solicitation policy FAQ and was explicitly reiterated by Tanelli when he met with Miller on July 12. Indeed, Tanelli also specifically assured Miller that she could solicit employees to sign petitions, during nonworking time in break areas, as well. Third, the only time that the Respondent is alleged to have discriminatorily departed from the policy of prohibiting the use of VOA to solicit signatures on petitions was the "VOTE NO" t-shirt posting in March 2022. Of course, that post was unlike Miller's because it did not solicit employees to sign anything. Instead, it informed employees that they could pick up a shirt in a breakroom, at a time when the employee presumably would be on break. The Respondent's contention that the posting therefore did not violate the solicitation policy is confirmed by its failure to remove a pro-union posting encouraging employees to pick up Union paraphernalia at the Union's tent. Fourth, even if the "VOTE NO" t-shirt posting were an instance in which solicitation of "a similar character" to Miller's solicitation of signatures on the Juneteenth petition was permitted, this single instance of tolerated solicitation would be "insufficient to show that the Respondent enforced its no-solicitation rule disparately against union activity."[101]

My colleagues find the violation all the same, based on their view that "the Respondent's singling out of Miller's Juneteenth post for removal while permitting the 'VOTE NO' post constitutes [] impermissible discrimination under its Solicitation Policy." But this finding fails to grapple with the fact that the "VOTE NO" t-shirt posting did not solicit employees to sign anything while Miller's post did, or the fact that the Respondent also did not remove a March 2022 pro-Union posting encouraging employees to

---

[97] Tanelli later reiterated these points as follows:

Anything related, like, to the ALU, and the tent, things like that like for going and signing up, unfortunately, that's something that we cannot have on the board. . . . It's against the policy, but this is not like . . . you're not in trouble or anything like that, right? I just did want to follow up with you, let you know that the comment will be removed. And that that's not something that you can leverage for the VOA board, right?

[98] *Caesars Entertainment d/b/a Rio All-Suites Hotel and Casino*, 368 NLRB No. 143 (2019) (holding that employees generally do not have a statutory right to use employer equipment, including IT resources, for Sec. 7 purposes).

[99] *Peyton Packing Co.,* 49 NLRB at 843.

[100] 351 NLRB 1110, 1117 (2007), enf. denied in part other grounds 571 F.3d 53 (D.C. Cir. 2009).

[101] *Wal-Mart Stores, Inc.,* 350 NLRB 879, 881 (2007) ("It is well settled that 'isolated incidents of digression from a no-solicitation rule . . . do not reflect the type of widespread worktime solicitation indicative of disparate application of the rule.'" (quoting *Albertson's Inc*., 289 NLRB 177, 191 (1988)). In *Wal-Mart,* a single instance of tolerated solicitation by one employee in a store that employed more than 400 workers was insufficient to show discrimination. The single alleged instance of tolerated solicitation in this case, in a facility with more than 8000 employees, is therefore insufficient as well.

pick up Union paraphernalia at the Union's tent.[102] Even if the "VOTE NO" t-shirt posting did violate the Respondent's policy, moreover, it is precisely the sort of isolated departure from policy that fails to establish discriminatory enforcement under long-standing precedent.[103] For all of these reasons, the majority's violation finding cannot stand.

### III. THE RESPONDENT LAWFULLY TOLD MILLER THAT FURTHER VIOLATIONS WOULD LEAD TO "ADDITIONAL FOLLOW-UP"

Because the Respondent lawfully enforced its solicitation policy against Miller by prohibiting the Juneteenth petition posting, it necessarily follows that the statement warning of "additional follow-up" if she continued to violate the policy was lawful as well. But that statement was too vague to constitute a threat of discipline in any event. As the judge noted, the reference to "additional follow-up" could mean additional education on the scope of the Respondent's policy. This interpretation is supported by the fact that Tanelli specifically assured Miller that she was not being reprimanded and that the purpose of the July 12 meeting was to educate her on the Respondent's solicitation policy. Under these circumstances, I agree with the judge that the evidence presented is insufficient to show that Miller reasonably would have understood the reference to additional follow-up to mean that she would be disciplined.

*Lush Cosmetics, LLC,* cited by the General Counsel and my colleagues, is readily distinguishable.[104] There, the employer addressed an employee's internal intranet postings critical of the employer and its managers by informing the employee that the posts were "not acceptable" and that if the employee continued "such inappropriate conduct, the Company may consider your actions to amount to misconduct." Although the employer's letter stated that it "does not constitute discipline," the Board found that the employer "strongly suggested" that future postings of the same type would result in discipline based on the specific language used in the letter, which termed the protected postings "not acceptable" and threatened to treat repetitions as "misconduct." But no such facts are present here. The Respondent never characterized Miller's posting as "misconduct" or any similar term. And Tanelli specifically affirmed that Miller had "every right to do that [solicit signatures for the petition] on nonworking time, in break areas." In reversing the judge and finding this violation, the majority unjustifiably fails to give these circumstances the weight they are due.

### IV. THE RESPONDENT LAWFULLY MENTIONED ITS EDUCATIONAL BENEFITS AT ITS CAPTIVE-AUDIENCE SPEECHES

The Respondent has offered employees educational benefits through its Career Choice program since 2012. In September, the Respondent announced improvements to its program. These included a reduction in the service time required to qualify for reimbursement from one year to 90 days and an increase in the cost reimbursement from 80 percent to 100 percent. The Respondent also increased the number of educational expenses that qualified for reimbursement, including classes for GED testing and

---

[102] The majority grudgingly acknowledges the March 22 prounion posting, in a footnote, but dismisses it on the pretext that "there is no documentary evidence regarding such a posting." By doing so, my colleagues have effectively discredited Miller, who is one of the Charging Parties in this case, on this point. However, Miller's testimony regarding the March 22 prounion posting was uncontradicted. Unlike my colleagues, I would not discredit this testimony simply because it was not bolstered by documentary evidence.

The majority also argues that the distinction between solicitation and distribution is too "fine," terming it "a distinction without a difference here." But the distinction does make a difference, as decades of precedent attest. Compare *Stoddard-Quirk Manufacturing Co.,* 138 NLRB 615, 620 (1962) (holding that restrictions on the distribution of literature during working time and in working areas are presumptively lawful), with *Peyton Packing Company, Inc.,* 49 NLRB at 843 (holding restrictions on oral solicitation during working time are presumptively lawful).

My colleagues also find it irrelevant that "the solicitation policy affirmatively assured employees that they had a right to solicit during nonworking time." But this and the other evidence on which I rely bolster my view that the Respondent was not discriminating against Miller's posting based on its pro-union content.

My colleagues additionally criticize me for drawing "such fine distinctions here between protected actions so as to make it difficult for such actions to ever be found to be 'of a similar character,' and hence essentially impossible to find discrimination." What my colleagues find

"impossible," I find quite possible. To offer but one example: If the Respondent had routinely removed solicitations to sign pro-union petitions from its VOX system while routinely allowing solicitations to sign anti-union petitions, it would clearly have violated the Act. But of course, there is no record evidence that the Respondent did so (or otherwise discriminate along Sec. 7 lines). Accordingly, I cannot find that it violated the Act.

[103] The majority distinguishes *Wal-Mart* on its facts, noting that there the permitted solicitation took place seven years before the events at issue in that case. But this disregards the Board's holding in the case that "the General Counsel showed no more than that one employee engaged in one act of tolerated solicitation. As more than 400 people worked at the South Rainbow store, we find that this quantum of proven nonunion solicitation is insufficient to show that the Respondent enforced its no-solicitation rule disparately against union activity." Accord *Albertson's Inc.,* 289 NLRB 177, 191 (1988) ("[I]solated incidents of digression from a no-solicitation rule, when known to management, do not reflect the type of widespread worktime solicitation indicative of disparate application of the rule."); *Uniflite, Inc.,* 233 NLRB 1108, 1111 (1977) ("[T]wo isolated incidents involving low-level supervisors whose digressions from work were for a beneficent cause on the one hand, and an act of employee welfare on the other [do not reflect] the type of widespread worktime solicitation indicative of disparate application of the rule."). My colleagues utterly fail to justify their failure to apply the same principle here.

[104] 372 NLRB No. 54 (2023).

English as a second language. It appears that these improvements were to take effect on January 1, 2023. There is no allegation that the September announcement of the changes, or the implementation of the changes in January, were unlawful.

On October 25, the Union filed a petition to represent a unit of employees at JFK8 in Case 29–RC–285057. On November 10 and 11, the Respondent mentioned the planned improvements to Career Choice during two of its captive-audience speeches as changes that the Respondent was going to implement "because we've listened to our associate[s]" and "a benefit that you have right now for free that is also getting better come January." On November 12, the Union withdrew the petition in Case 29–RC–285057. On December 22, the Union filed a second petition for an election at JFK8 in Case 29–RC–288020. On February 4, 2022, the Union filed a petition to represent a unit of employees at LDJ5.

Granting benefits while a representation petition is pending has a tendency to coerce employees' free exercise of their rights.[105] The conferral of a benefit during the pendency of an election warrants an inference that it violates Section 8(a)(1), which the employer may rebut by showing that the grant of benefits was governed by factors other than the impending election.[106]

> One way in which an employer may explain the conferral of benefits during the pendency of an election is to establish that the grant of benefits "had been conceived and implemented prior to the union's arrival, and that the preelection announcement simply made known to employees a predetermined and existing benefit, legitimately processed and unveiled in accordance with the dictates of business constraints, not union considerations."[107]

And that is precisely what happened here. The Respondent announced the benefit changes in September and it bears emphasis that there is no claim that this announcement was unlawful. The changes were to take effect in January 2022, and there is no allegation that the implementation of the changes in January was unlawful either. In these circumstances, the Respondent's references in November to the forthcoming changes were nothing more than a lawful reminder of "a

predetermined and existing benefit."[108] As the judge correctly found, there is no valid basis for finding an unlawful promise of benefits on these facts.

I therefore dissent from the majority's decision to sever this issue, leaving it unresolved. The alleged unfair labor practices took place in 2021, the judge addressed this issue in a carefully reasoned decision, the parties have thoroughly briefed this issue in good faith, and they have been waiting for the Board to decide it *for the last 3 years*. There is nothing complicated about this issue, which involves the application of well-settled legal principles to undisputed facts. Under these circumstances, it is a disservice to the parties and the public for the Board to force them to wait even longer for the issue to be resolved, without any valid justification.

V. THE RESPONDENT LAWFULLY REMINDED EMPLOYEES OF ITS EXISTING OPEN-DOOR POLICY

The Respondent has a long-standing Open Door policy, under which employees are "welcome to discuss any suggestion, concern, or other feedback with any member of the company's management. Associates are encouraged to bring their ideas to the attention of management." The policy further encourages employees to first discuss concerns with their immediate supervisor. If the concern is not resolved, employees are encouraged to discuss it with the next level of management, Human Resources, or "any member of senior management."[109]

The Respondent reminded employees of its Open Door policy at captive-audience meetings held on November 10 and 11. On November 10, manager Michael Williams stated:

> That Open door policy we talk about all the time. It gives you direct access not just to your AM, but also to your DM, right? Even if you have an issue and someone in HR is not resolving your issue, don't settle for that. Take it to the next level. Go see a VP. If that VP is not resolving your issue, go see the HRM, and so on and so forth. That's the freedom of having open door direct communication and that relationship that we have.

Williams also repeatedly said that he was not making any promises.

---

[105] *NLRB v. Exchange Parts Co.*, 375 U.S. 405 (1964). For the sake of argument, I will assume that this principle applies here even though the only petition that was pending on November 10 and 11 was voluntarily withdrawn by the Union the following day.
[106] *MEMC Electronic Materials, Inc.*, 342 NLRB 1172, 1174 (2004).
[107] Id. (quoting *Gordonsville Industries*, 252 NLRB 563, 575 (1980)).
[108] Id.
[109] The policy relevantly states:

> The majority of misunderstandings are satisfactorily resolved by a thorough discussion and mutual understanding between the parties

involved. In general, it is best to discuss any concerns with your immediate supervisor first. If you are unable to reach a satisfactory resolution with your supervisor or are not comfortable discussing the issue with your supervisor, you are welcome to discuss the matter with the next level of management, with Human Resources, or with any member of senior management. When you bring a concern to Human Resources, it will be reviewed, and if appropriate, action will be taken. Human Resources will communicate with you regarding the outcome.

On November 11, Mike Rebell stated:

> That open door avenue, directly access management. That's kind of that direct working relationship that open door policy. We continue to strive that if you are going to your AM or maybe on the floor HR, if they are not able to answer your questions and get it resolved, escalate that up, go to the next level. Maybe it's the Ops Manager, maybe it's an HR Manager. But currently you have that direct working relationship all the way up to the GM and honestly even above and outside of the building if you choose to do that.
>
> . . . .
>
> [I]f you feel that you are not getting the response that you want or feel that you deserve, you can also escalate that, if you are not getting that response you can go request a meeting with . . . whether it's a senior leader that responded to that . . . depending on what it is, like if it's a safety thing, maybe it's you're requesting a meeting with the safety manager to get more information. If it's operations, maybe it's requesting a meeting with the AGM, Assistant General Manager or maybe an Ops Manager. But if you are not getting that response you want currently you have that direct working relationship with all the way to the GM, get the answer, continue to escalate that so you can get the answer.

The Board has held that the solicitation of employee grievances during a union organizing campaign "raises an inference that the employer is promising to remedy the grievances," particularly when "an employer has not previously had a practice of soliciting employee grievances."[110] However, "an employer with a past practice of soliciting employee grievances through an open door or similar-type policy may continue such a policy during a union's organizational campaign."[111] Once again, that is

precisely what happened here. The Respondent's Open Door policy long predated the Union's organizing campaign, and none of the Respondent's statements during the campaign indicated that it planned to change that policy in any way. To the contrary, the entire point of the Respondent's remarks on November 10 and 11 was that employees already had the ability to use the Open Door policy to communicate with any level of management they chose. Those remarks, in turn, accurately described the Respondent's policy, which said just that. Nor is there any evidence that the Respondent actually changed the policy. Under these circumstances, the statements about the policy on November 10 and 11 were lawful, as the judge properly found.

The majority reverses the judge all the same, but their justification for doing so is wholly unpersuasive. My colleagues claim that "there was no past practice of large meetings held by unknown agents of the Respondent telling employees that '[w]e can't make improvements if we don't know . . . your concerns,'" but this, of course, simply reflects the fact that the Respondent was touting its existing Open Door policy *as part of its campaign*.[112] An employer is entitled to campaign against representation and in doing so it is entitled to remind employees of existing benefits. An employer is also entitled to campaign through representatives of its own choosing, regardless of whether they have appeared at the facility before, just as a union is entitled to campaign through representatives of its choosing, some or all of whom may be strangers to the employees as well. The majority's reliance on the fact that the Respondent exercised those rights as a basis for finding that it violated the Act is yet another blatant violation of Section 8(c).[113] Nor did the Respondent change its past practice by "urging employees to scale the entire chain of command as they saw fit until they got what they wanted."[114] To the contrary, the Open Door policy by its

---

[110] *Garda CL Great Lakes, Inc.*, 359 NLRB 1334, 1334 (2013) (citing *Amptech Inc.*, 342 NLRB 1131, 1137 (2004), enfd. 165 Fed.Appx. 435 (6th Cir. 2006)).

[111] *Wal-Mart Stores, Inc.*, 340 NLRB 637, 640 (2003) (citing *Kingsboro Medical Group*, 270 NLRB 962, 963 (1984), enfd. 400 F.3d 1093 (8th Cir. 2005)).

[112] My colleagues emphasize the "coercive manner in which [the Open Door policy] was presented to employees"—i.e., through captive-audience meetings. But as I have explained above, these meetings are not inherently coercive, as my colleagues hold.

[113] See *Intertape Polymer Corp. v. NLRB*, 801 F.3d at 240 (observing that the Board's finding that supervisors "had never leafleted employees prior to the union campaign" adds nothing to the coerciveness inquiry because the union campaign itself was "out of the ordinary").

[114] At bottom, my colleagues seem to see something sinister about reminding employees that, pursuant to a long-standing policy, they have the right to appeal inaction or what they perceive to be the incorrect action by a less senior manager to a more senior manager. But of course,

the right to appeal to a higher authority is deeply ingrained in our system of government, including the NLRA itself, and in many collective-bargaining agreements through grievance-arbitration clauses.

I note as well that my colleagues went to great lengths in *Siren Retail*, 373 NLRB No. 135, slip op. at 12 fn. 23, to hold, over my dissent, that an employer's statement "that it will end its existing open-door policy if employees organize" is inconsistent with Sec. 9(a) and, therefore, amounts to a threat of loss of benefit. (As a reminder, Sec. 9(a) provides that "any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment.") Today, they find that it is also unlawful for employers to remind employees of long-standing open-door policies allowing employees to seek such individual adjustments. It would seem then that, from my colleagues' perspective, the only way for an employer

terms encouraged employees to discuss their concerns "with any member of senior management" if the employee was "unable to reach a satisfactory resolution with [his or her] supervisor." The Respondent's communications on November 10 and 11 were entirely consistent with that provision. Under these circumstances the majority's claim that they were instead a "sea change" in the Respondent's approach is wholly unfounded.

## CONCLUSION

Since its creation in 1935, the Board has repeatedly attempted to restrict the ability of employers to express their views concerning representation. Those past efforts have consistently been condemned by Congress and by the Supreme Court. And I think that my colleagues' decision today will fare no better. The majority's idea of good labor policy may include suppressing captive-audience speeches, but the policy established by Congress is "to encourage free debate on issues dividing labor and management."[115] The reason for encouraging a "free debate" on labor issues, as with any other issue, is that "right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly; but we [Americans] have staked upon it our all."[116] The Board should strive to advance *that* policy. Today's decision contradicts it, and I must therefore respectfully dissent.

Dated, Washington, D.C. November 13, 2024

_____

Marvin E. Kaplan,                    Member

NATIONAL LABOR RELATIONS BOARD

## APPENDIX

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

## FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT selectively and disparately enforce our Solicitation Policy against you for engaging in protected concerted activity.

WE WILL NOT threaten you with discipline if you engage in protected concerted activities.

WE WILL NOT solicit grievances from you and impliedly promise to remedy them in order to discourage you from supporting the Union.

WE WILL NOT threaten you that we will withhold improvements in wages and working conditions if you engage in activities on behalf of the Union and/or if you select the Union as your bargaining representative.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

AMAZON.COM SERVICES LLC

The Board's decision can be found at www.nlrb.gov/case/29-CA-280153 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273-1940.



*Emily Cabrera, Esq.* and *Lynda Tooker, Esq.,* for the General Counsel.
*Juan Enjamio, Esq. (Hunton Andrews Kurth LLP)* of Miami, Florida *Kurtis Powell, Esq. (Hunton Andrews Kurth LLP),* of Atlanta, Georgia, for the Respondent.
*Retu R. Singla, Esq. (Julien, Mirer & Singla)* of New York, New York and *Seth Goldstein, Esq. (Law Office of Seth Goldstein*), of Cherry Hill, New Jersey, for the Charging Party Union.

[115] *Linn v. Plant Guard Workers,* 383 U.S. at 62.
[116] *United States v. Associated Press,* 52 F.Supp. 362, 372 (S.D.N.Y. 1943), affd. 326 U.S. 1 (1945).

*not* to violate the Act is for it to sit silently on the sidelines. But this view was categorically rejected by Congress in Sec. 8(c) and is precisely the type of speech-stifling regulation that the First Amendment is meant to prevent.

## DECISION

### STATEMENT OF THE CASE

BENJAMIN W. GREEN, Administrative Law Judge. The Respondent operates, in Staten Island, New York, a fulfillment center designated as JFK8 and a storage center designated as LDJ5. (Tr. 254.) This case largely concerns alleged unlawful statements made by the Respondent's admitted agents to employees during mandatory meetings held at JFK8 and LDJ5 as part of a campaign to convince employees not to sign union authorization cards and elect union representation. The complaint further alleges that the Respondent discriminatorily enforced its solicitation policy by removing certain posts of employee Dana Miller from its Voice of Associates Board (VOA) and threatening Miller with discipline for those posts.[1]

The charges in this case were filed on dates between July 16, 2021,[2] and May 12, 2022. An amended consolidated complaint issued on August 11, 2022, and the Respondent filed an answer on August 25, 2022.[3] This case was tried before me by Zoom virtual technology on September 19-21 and October 4–5, 2022.

In this case, the General Counsel argues that certain Board precedent should be overruled. In support of complaint paragraphs 7–8 and 20, the General Counsel seeks to overturn Board law in effect since *Tri-Cast Inc.*, 274 NLRB 377 (1985), to the extent it allows employers to misrepresent the law under Section 9(a) of the Act. In support of complaint paragraph 9–12, the General Counsel seeks to overturn *Guard Publishing Co. d/b/a Register Guard*, 351 NLRB 1110 (2007), to the extent it narrows the circumstances under which the Board will find that an employer has discriminatorily limited employee solicitation. In support of paragraph 13–14, the General Counsel seeks to overturn Board law in effect since *Babcock & Wilcox Co.*, 77 NLRB 577 (1948), to the extent it allows employers to require employees to attend mandatory antiunion meetings. However, I am required to apply current law. Accordingly, herein, I will not address arguments that existing precedent be overruled. And since the General Counsel has relied exclusively on arguments that I reject Board law in support of complaint paragraphs 7(a), 8(a), 13–14, and 20, those allegations are dismissed.

Of the remaining allegations, as discussed below, I find that the Respondent violated the Act by discriminatorily enforcing its solicitation policy and threatening to withhold wage increases and improved benefits from employees if they elect a union as their bargaining representative. (Complaint ¶¶ 11(a), 18(A)(b), 19(a).) The rest of the allegations are dismissed. (Complaint ¶¶ 7(b), 8(b), 11(b), 15(a)-(b), 16(a)-(b), 16(c), 17(a)-(b), 18(A)(a), 19(a).)

On the entire record, including my observation of the demeanor of the witnesses, and after considering the post-hearing briefs filed by the General Counsel and the Respondent, I render these

---

[1] The General Counsel has moved to withdraw complaint par. 11(c), which alleged that the Respondent unlawfully revoked Miller's permission to post on the VOA. I grant that motion.

[2] All dates herein refer to 2021 unless stated otherwise.

## FINDINGS OF FACT

### JURISDICTION AND LABOR ORGANIZATION STATUS

The Respondent admits that it satisfies the commerce requirements for jurisdiction and has been, at all relevant times, an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act. Accordingly, I find that this dispute affects commerce and the Board has jurisdiction pursuant to Section 10(a) of the Act.

In its answer to the complaint, the Respondent denied having sufficient information to admit that the Amazon Labor Union (the Union or ALU) is a labor organization within the meaning of Section 2(5) of the Act. Section 2(5) states:

> The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

The Respondent stipulated to the Union's 2(5) status in prior representation cases and, in briefing this case, the Respondent makes no argument to the contrary. (GC Exh. 32–33.) Indeed, the evidence indicates that the Union meets the statutory definition. In April, a group of the Respondent's employees founded the ALU and began a campaign to organize the Respondent's workers on Staten Island for the purpose of improving working conditions through collective bargaining. (Tr. 59–60, 187.) The Union's Constitution and By Laws, at Section 1.5, includes the following "Objectives" (GC Exh. 9):

> (a). To improve the wages, benefits, working conditions, terms of employment, job security, and general welfare of its members and other workers.

> (b). To organize unorganized workers.

The Respondent's employees have held leadership positions in the Union, obtained authorization cards, circulated petitions, and otherwise engaged in organizing. (Tr. 59–60, 187.) Since employees participate in the Union and the Union exists for the purpose of dealing with an employer concerning employees' hours, and other terms and conditions of employment, the Union is a labor organization within the meaning of Section 2(5) of the Act. See *Alto Plastics Mfg. Corp.*, 136 NLRB 850, 851–852 (1962).

### ALLEGED UNFAIR LABOR PRACTICES

#### The Respondent's Solicitation Policy

The Respondent's "Owner's Manual and Guide to Employment" (Owner's Manual) summarizes the Respondent's personnel policies and practices, including the following "Solicitation" policy (GC Exh. 58, p. 5, 24) (Tr. 359–360, 437):

---

[3] A copy of the complaint which corrects a typographical error (i.e., two paragraphs with the number 18) was entered into evidence as GC Exh. 26.

Solicitation

The orderly and efficient operation of Amazon's business requires certain restrictions on solicitation of associates and the distribution of materials or information on company property. This includes solicitation via company bulletin boards or email or through other electronic communication media.

The following activities are prohibited:

- Solicitation of any kind by associates on company property during working time;
- Distribution of literature or materials of any type or description (other than as necessary in the course of your job) by associates in working areas at any time; and
- Solicitation of any type on company premises at any time by non-associates.

Examples of prohibited solicitation include the sale of merchandise, products, or services (except as allowed on for-sale@Amazon alias), soliciting for financial contributions, memberships, subscriptions, and signatures on petitions, or distributing advertisements or other commercial materials.

The only exceptions to this policy are communications for company-sponsored activities or benefits, or for company-approved charitable causes, or other specific exceptions formally approved by the company. All communications under these exceptions must also have prior approval of Human Resources. Violation of this policy may result in immediate disciplinary action, up to and including termination of employment.

The Respondent has also maintained a list of frequently asked questions regarding the solicitation policy, which include the following (GC Exh. 29) (Tr. 42):

Solicitation Policy FAQ

1. What are some examples of solicitation that are prohibited, unless legally protected?

- The sale, advertisement, or marketing of things like merchandise, products, subscriptions, or services (except as allowed on for-sale@ alias).
- Distributing advertisements, marketing communications, or other commercial materials.
- Solicitation for financial or other contributions (e.g., money, time, services) for any cause, including a charity.
- Solicitation for memberships, subscriptions, or signatures on petitions.
- Distribution of literature or materials of any kind.
- Organizing or seeking participation in political, charitable, or protest activities.
- Encouraging others to sign up for a mailing or distribution list used for any of the above purposes.

2. What is included in company property?

- All company property including meeting spaces, offices, cafes, lobbies, and outdoor areas.
- All company equipment including bulletin boards, furniture, mail slots, elevators, and posters.
- All company electronic systems including email, Phone Tool, Amazon Wiki, Chime, and calendaring.

3. What are the exceptions?

As exceptions to this policy, solicitation is permitted for:

- Company-sponsored benefits (e.g., health plans and employee discount programs).
- Company-sponsored business activities (e.g., internal marketing and advertising, company events, and learning activities).
- Company-approved charitable causes.
- Specific exceptions approved by Human Resources
- All legally protected activity as defined under local law.

4. In the US, when is solicitation legally protected?

In the US, solicitation is legally protected if it:

- **Does NOT** use any company electronic systems (e.g., email, Phone Tool, Amazon Wiki, Chime, and calendaring), company equipment (e.g., bulletin boards, furniture, mail slots, elevators, and posters); *and*
- Relates to terms and conditions of employment. Terms and conditions of employment include pay, work hours, benefits, and job duties. They do not include the products we sell, our customers, and non-work related social or political causes; *and*
- Happens during non-working time.

Additionally, if solicitation involves distributing materials or literature, to be legally protected in the US, it must *also* occur outside working areas (spaces where work is done, as opposed to break rooms, cafes, etc.).

The VOA, Open Door Policy, Gemba Walks, Birthday Roundtables, and Connections

The VOA is a digital message board which allows the Respondent's employees at JFK8 to post messages for viewing by management and other employees. Employees often post messages which express concerns about their terms and conditions of employment. (GC Exh. 27) Management can respond in writing to a post and employees may indicate their agreement with a post by adding a thumbs-up emoji. The VOA can be viewed on screens at that facility. The VOA can also be accessed by

employees on the Respondent's "A to Z" app[4] and from kiosks at the facility. (Tr. 75, 81–88, 122–128, 414–418, 441–444) (GC Exh. 27.)

The Owner's Manual which was entered into evidence[5] contains the following provision regarding an "Open Door Policy and Conflict Resolution" (GC Exh. 58, p. 7):

> Amazon believes that candid and constructive communication is essential to the smooth functioning of our workplace and to maintaining an atmosphere of mutual respect. Accordingly, we have an "open door" policy, which means that you are welcome to discuss any suggestion, concern, or other feedback with any member of the company's management. Associates are encouraged to bring their ideas to the attention of management.
>
> The majority of misunderstandings are satisfactorily resolved by a thorough discussion and mutual understanding between the parties involved. In general, it is best to discuss any concerns with your immediate supervisor first. If you are unable to reach a satisfactory resolution with your supervisor or are not comfortable discussing the issue with your supervisor, you are welcome to discuss the matter with the next level of management, with Human Resources, or with any member of senior management. When you bring a concern to Human Resources, it will be reviewed, and if appropriate, action will be taken. Human Resources will communicate with you regarding the outcome.
>
> If you believe that you or another associate has been subject to workplace harassment, pursuant to the provisions of the Workplace Harassment policy in this Manual, you should immediately report this to any manager or member of Human Resources. See the Workplace Harassment policy for more information

The Respondent also conducts "Gemba walks" and holds "birthday roundtables." Gemba walks are when managers walk the floor of a facility and ask employees what they like and do not like about the company. (Tr. 216–218, 380–382.) Birthday roundtables are monthly meetings held for employees whose birthdays fall within the month to talk and raise concerns with the general manager or assistant general manager of the facility. (Tr. 218, 310–311, 317–318.)

Beyond in-person contact, the Respondent uses a computer system called "connections" to ask employees questions when they first sign on for a shift. Employees may raise concerns in response to these questions. (Tr. 312, 317–319.)

### The Respondent's Career Choice Program

Since 2012, the Respondent has offered a Career Choice Program (CCP) of refunding employees for certain educational expenses. Prior to September, employees with a year of service were reimbursed for 80 percent of qualifying educational expenses. (Tr. 375–377.)

In September, the Respondent announced certain company-wide improvements to the CCP which would take effect in January 2022. (R. Exh. 2) These improvements included a reduction in the employment service required to qualify for reimbursement from 1 year to 90 days and an increase in the cost reimbursement from 80 percent to 100 percent. The Respondent also increased the number of educational expenses which qualified for reimbursement, including classes for GED testing and English as a second language. The record contains no indication that the Respondent referenced the Union or the Union's organizing campaign when it announced these improvements to the CCP in September. (Tr. 375–377, 396–399) (R. Exh. 2).

### The Respondent's Practice of Providing Wage Increases

The Respondent provides employees with certain regular wage increases based upon the amount of time they work for the company. (Tr. 234–235, 254–255, 384–385) (R. Exh. 4).

### The Union Organizing Campaign and Representation Petitions

As noted above, the Union was formed and began a campaign to organize employees at JFK8 in April. The Union campaign was based in a tent at a bus stop across the street from the facility. In this tent, the Union distributed literature and authorization cards, collected signed authorization cards, had speakers and cookouts, and the like. (Tr. 59–61.) The Respondent responded to the Union's organizing activity with a campaign of its own to dissuade employees from signing union authorization cards and electing union representation. (Tr. 72–80.) During the campaign, employees posted VOA messages for and against the Union. (Tr. 82) (GC Exh. 20).

On October 25, the Union filed its first petition (29-RC–285057) to represent a unit of employees at JFK8. The Union later withdrew that petition and filed another one (29–RC–288020) on December 22. On February 4, 2022, the Union filed a petition to represent a unit of employees at LDJ5. (GC Exh. 30(a-c).)

### Dana Miller VOA Posts and the Respondent's Response

Miller is an employee who has posted many messages on the VOA, including prounion messages and messages critical of the Respondent. (Tr. 163–167) Miller testified that, in June, she saw VOA posts from employees asking if the new Juneteenth paid federal holiday would be recognized by the Respondent. (Tr. 132) On June 18, Miller posted the following VOA message (GC Exh. 22, 27):

> Since Juneteenth is now a federal holiday shouldn't we get holiday pay as we do for all the other holidays. It's all over every news channel and in the papers as well that June 19 is now a federal holiday.

Senior Human Resources Manager Jenna Edwards posted the following VOA message in response to Miller's post (GC Exh. 22, 27):

---

[4] The Respondent's A to Z app also allows employees to perform certain human resource functions such as viewing their schedules, requesting time off, transferring shifts, and receiving notices from management. (Tr. 75, 81–88)

[5] The Owner's Manual which was entered into evidence is dated January 2019. Apparently, a more recent manual issued in 2021. However, Senior Human Resources Manager Jenna Edwards testified that she believed the Owner's Manual was last updated in 2019 and has not been changed. (Tr. 436–437.)

Hi Dayna, thank you for your comment. The news of Juneteenth becoming a federal holiday is very recent, and at this point there has not been communication about whether this will be a paid holiday. We will let you know as more information becomes available. If you have a scheduled shift and choose to take the day to reflect, you can use existing time off options, paid or unpaid, and record that via your normal time off reporting mechanism. Thank you.

On June 18, a different employee posted the VOA message, "[m]ost of your staffs are African American. No acknowledgement of Juneteenth, a federal holiday. Really JFK8???" Edwards posted a response similar to her earlier response to Miller. (GC Exh. 22, 23.)

Miller and Conner Spence, a JFK8 employee and then Union vice president of membership, subsequently circulated a petition among employees which asked the Respondent to recognize Juneteenth as a paid holiday. (Tr. 89.)

On July 8, Miller and Spence delivered the Juneteenth petition to JFK8 General Manager Felipe Santos and a human resources manager. Santos told the employees he did not know of any company plan to recognize Juneteenth as a paid holiday and that he could not do anything more for employees regarding the issue. (Tr. 89–91, 134–135) (GC Exh. 13).

On July 9, Miller posted the following VOA message which invited employees to sign the Juneteenth petition at the Union tent (Tr. 136) (GC Exh. 13):

6/21/21: ALU AA's spoke to G.M. for holiday pay on Juneteenth. Dismissed, ALU put together a petition and is gathering signatures, over 50+ now! 7/8/21: Presented again, Felipe confirmed that he wouldn't use any energy/effort to make positive change for workers! So you're invited to come sign the petition for well-deserved holiday pay at the ALU tent, speak up for yourself and help make history.

That same day, July 9, certain managers had the following discussion on the Respondent's "Chime" messaging platform regarding Miller's post (GC Exh. 51):

Edwards – 17:16:32 – I'm shocked Stephanie is suggesting to remove a VOA comment but I'm aligned 100%

Assistant General Manager Marc Zachary – 17:17:19 – Yea awesome

Edwards – 17:17:39 – It is not asking any type of question and instead antagonizing and trying to rally a group of people. We should not stand for that

Zachary – 17:18:22 – agreed, it's definitely not appropriate for VOA and probably violates the solicitation policy

Zachary – 17:18:22 – next comment from random AA will be "please come see me if you want to buy my ____" or support my business etc

HR Manager Anna Leonardi – 17:18:50 – Yeahh. After reading the user guide too it def falls under that category

---

[6] Herein, references to time ranges within audio recordings are in brackets (e.g. [2:47-3:20]).

On July 12, Miller was called into a meeting with Human Resources Business Partner John Tanelli. (Tr. 137–142) (GC Exh. 28). The conversation was recorded and entered into evidence. (GC Exh. 52.) During the conversation, Tanelli told Miller that her July 9 post would be removed from the VOA because it violated the Respondent's solicitation policy. The exchange included the following comments (GC Exh. 52 - [2:47-3:20]):[6]

Tanelli: Just on one of the comments made on the VOA board regarding the ALU and going… going to the tent to sign up for holiday pay, things like that.

Miller: Yea for the petition, yea.

Tanelli: So Amazon solicitation policy clearly is defined that you can have every right to do that on nonworking time, in break areas. The VOA board is actually not a mechanism you can use that on.

Miller: But why not?

Tanelli: That's a mechanism for you to talk directly to management, right?

Tanelli later made the following additional comments regarding VOA posts that violate the solicitation policy (GC Exh. 52–[3:38-4:02]):

Tanelli: Anything related, like, to the ALU, and the tent, things like that like for going and signing up, unfortunately, that's something that we cannot have on the board. . . . It's against the policy, but this is not like . . . you're not in trouble or anything like that, right? I just did want to follow up with you, let you know that the comment will be removed. And that that's not something that you can leverage for the VOA board, right?

Tanelli assured Miller she could communicate with her peers on nonworking time in break areas. Miller asked for a written copy of the solicitation policy, indicated that she believed the policy was illegal, and said she would contact her attorney. Tanelli stated that "the VOA board is not something that you can leverage for that specific comment that you made, right, asking people to go there to sign up like for additional holiday pay, that's unfortunately, something that is not going to be able to be on the board." (GC Exh.—[4:50-5:02].) Miller denied that the post was an invitation to sign up for additional holiday pay and said she originally posted the message on her break. Miller also said she would repost it. Tanelli responded as follows (GC Exh. 52—[5:22-5:37]):

Tanelli: Okay, well, I'm telling you now, like, this is not a conversation for you to be reprimanded. Right? This is me to educate you on the solicitation policy. You cannot put that on the board, unfortunately. And there will be additional follow up if a comment like that goes back up again.

After Miller met with Tanelli, on July 12, the Union

organizing committee advised her to repost the Juneteenth message and she did so. The Respondent removed that post as well. At 5:59 p.m., after her shift ended, Miller tried to repost her message, but was unable to access the VOA. (Tr. 141–143, 418–421, 437, 441–446, 450–452) (GC Exh. 23).

On July 13, Miller was able to gain access to the VOA and reposted the message soliciting signatures for the Juneteenth petition. Again, the Respondent removed it. (Tr. 437.) Miller also posted the following message, which was not removed (GC Exh. 24) (Tr. 143-145):

> I put a petition up and was told it was solicitation and against policy. It wasn't. I wasn't shown that in writing (though requested), I was unfairly targeted and disciplined (as a black woman; they apologized to my white male comrade), and I wasn't made aware of the illegal repercussions they enforced (I tried to post it again and my permissions were taken away). HR silences voices, not the ALU.

That same day, July 13, Leonardi posted the following response (GC Exh. 25) (Tr. 143–145):

> Hi Dana. The VOA Board is available for employees to communicate with site leadership to ask questions and raise concerns. It is not a forum for solicitation. We support employees' right to solicit in according with Amazon policy, which prohibits solicitation via Company electronic communication methods. This includes the VOA boards. A copy of the policy can be found within the Amazon.com Owner's Manual accessed through the Code of Conduct link or Inside Amazon. Leadership explained this to you in person on July 12th. We have not and will not revoke anyone's ability to post on the VOA board however, we will continue to ensure that comments comply with Company policy. If you have additional questions about this we would [happy to] discuss.

The Respondent did not discipline Miller for her VOA Juneteenth posts. (Tr. 176.)

The evidence did not indicate that, before Miller's July 9 post, the VOA had been used by an employee to solicit signatures. (Tr. 104.)

The Respondent has not maintained a practice, before and after Miller's Juneteenth petition posts, of removing messages from the VOA.[7] Thus, the Respondent has not removed posts in favor of a paid Juneteenth holiday or posts encouraging employees to vote for or against the Union. In March 2022, the Respondent did not remove a post announcing that an employee had given out "VOTE NO" T-shirts and another post encouraging employees to "come get one" in the break room. (GC Exh. 20) Likewise, the Respondent has not removed employee posts concerning their terms and conditions of employment, including concerns about health and safety. (Tr. 81–88, 103, 122–131, 163–168) (GC Exhs. 17–20, 22, 24–25, 27.)

The Respondent's Response to the Union Organizing

[7] Miller initially testified that the Respondent removed a VOA post from someone at the ALU who was offering services to employees with questions, but later testified that she was only aware of her own post being removed. (Tr. 166–167.) Edwards testified that she never heard of a VOA post being removed before Miller's Juneteenth posts. (Tr. 428–

Campaign

*Distribution of Materials*

The Respondent initially campaigned against union organizing by distributing materials on breakroom tables, in bathrooms, and in electronic formats. In May or June, the Respondent left flyers on JFK8 breakroom tables which stated, in part (GC 10, 16) (72–75, 119–122):

> What does signing a card mean?
> Union authorization cards are legally binding and authorize the union to act as your exclusive representative. You may be asked to physically sign a card or click a link that asks for your signature online. This means you give up the right to speak for yourself. Signing a union authorization card may also obligate you to pay the union a monthly fee.

In May or June, the Respondent sent JFK8 employees a message on the A to Z app which stated, in part (GC 11) (Tr. 76–77):

> **Speak For Yourself:** Union authorization cards are **legally binding** and authorize the union to act as your exclusive representative. This means you give up the right to speak for yourself.

> **Don't Sign Away Your Choices:** Signing a union authorization card may also obligate you to pay the union a monthly fee out of your paycheck.

> **Protect Your Signature and Your Privacy:** Ask questions, do the research, and don't sign anything without reading it closely.

*Statements in Mandatory Meetings*

The Respondent stipulated, for this case only, that it required employees to attend meetings in which its admitted agents made statements in opposition to union representation and the Union. (Tr. 339.)[8] Managers generally went in person to notify employees that they were scheduled to attend mandatory meetings and escorted them to the meeting rooms. Managers also scanned the ID badges of employees in order to digitally record that those employees attended the meeting. Some of the managers who performed these functions worked at the Staten Island facilities (JFK8 or LDJ5) and some managers were brought in from other facilities. (Tr. 78–81, 103–105, 114–119, 179, 190–195, 204, 214–216, 229–230, 237–247, 250, 255–260, 278–279, 292, 296, 305, 315, 369–371, 385–396, 401–404.) Certain employees recorded the meetings in which the Respondent allegedly made unlawful statements and those recordings were entered into evidence. (GC Exh. 2–7.)

November 10 Meeting at JFK8

On November 10, Michael Williams held a mandatory meeting with employees at JFK8. (Tr. 10–11, 231–232, 305–310) (GC Exh. 2). During the meeting, Williams made the following

429.) I find that no posts other than Miller's were removed from the VOA.

[8] The transcript incorrectly transcribed the stipulation as referring to statements in opposition to the "Union by presentation." The actual stipulation referred to "Union representation."

comments regarding the CCP (GC Exh. 2):

[1:00-2:15] - At JFK8 we have an amazing team, and we truly believe that by working together with our associates and direct interaction with our associates, allows us to make rapid improvement, course correct, and improve our workplace. And we are able to do that because of our relationship we have formed with our associates. Having your voice, alright, listening to you, responding to you, what you say, when you express your concerns about whatever issue may be. . . . Again, we value that relationship. That relationship also allows us . . . to provide programs and create opportunities for you guys. . . . And that is important because it's not all about work. We have to have your best interest at hand as well, in terms of your development. And that's why Amazon, effective January 1st, we will be paying 100% tuition, college tuition, education tuition. You guys have heard of that? If you haven't, if you don't have a social degree or you don't have bachelor's degree, and that's what you want, that's at your disposal. That is something Amazon is going to implement because we have listened to our associates.

Williams also made the following comments regarding the open door policy and the right of employees to raise concerns to the attention of management (GC Exh. 2 - [2:15-3:42]):

[2:15-3:42] - That Open door policy we talk about all the time. It gives you direct access not just to your AM, but also to your DM, right? Even if you have an issue and someone in HR is not resolving your issue, don't settle for that. Take it to the next level. Go see a VP. If that VP is not resolving your issue, go see the HRM, and so on and so forth. That's the freedom of having open door direct communication and that relationship that we have. Here are some of the mechanisms that we utilize, which affords you the opportunity to voice your concerns, and these are no strangers to you. You know all of these. But I want to focus on the one - connections. I realize that some people don't get an answer the connections questions because they feel that leadership, management knows who answers what question and how they answer that question. I'm here to tell you that that's not true. I will tell you though, we rely on your feedback, through connections, to make adjustments, to make modifications to improve the workplace. That is one mechanism where you have direct access to tell your leadership team what issues, what concerns you have.

[3:42-4:29] - I've been in meetings, where the entire meeting is focused on connections. Yes, the associate that's wondering what are we doing . . . to improve the workplace based on the feedback that we've received. So, I say all that to tell you that the leadership team takes connections very seriously. So, when it pops up on your screens, I encourage you to take the time out to answer the questions. Be honest. Be totally honest. Be brutally honest. If you see something that you believe is unsafe, answer the question that way. If you think you have a fantastic manager, answer the question that way. We can't make improvements, if we don't know what you're thinking, if we don't know your concerns.

[4:30-5:52] - GEMBA walks. You've seen leadership walking around doing GEMBA walks. Tell your manager – "Hey, I want to be a part of that because, I want them know what I have to say." Yeah, I've seen you all including Michael. Michael is not going to really tell them what's going on. I'm going to tell them what's going on, so be a part of that. Okay? And, again, if you put something on the VOA board because your AM or your OM has not responded, before you put it up there, the first thing I would do is say, "Hey, I need to see the GM or I need to see Senior Ops." It's the open door communication. Yeah, you can put it on the VOA board, but some people don't like using the VOA board because they don't want everyone to know they're thinking, right? So escalate. That's the truth. Escalate. There's nothing wrong with that. You have a voice, we want you to use that voice. Okay. We respect your opinions. I've said this and I'm going to say it again, I truly believe this and I'm not up here just speaking the company line. I truly believe this. I've been with Amazon for nine years, I truly believe this. We have a dynamic workforce and that direct relationship that we have with our associates allows us to take care of customers globally, worldwide.

[7:48-8:35] - So I want to make sure that there is no confusion about where Amazon stands and where that group stands. Two opposing sides, and like I said earlier, that's okay … that's okay. But, we're really here to make sure you understand and have the facts, right? Because it's your choice. Regardless of what you decide to do or don't do, it is your choice, it is your right. I'm not here to tell you what to do. Okay? But, I will tell you that that group may promise you anything and they may. I won't, I can't, I'm not allowed [inaudible].

[15:51-15:58] - Our job, every day, yea, our job every day is to listen to associates' concerns and try to remove barriers. That's our job.

Williams made the following statements regarding the Union and employees' decisions to unionize (GC Exh. 2):

[7:02-7:13] - Some third parties don't agree with our goings on, our relationship, that direct relationships with our associates, right, and one of those third parties is ALU.

[10:18-11:16] - So, what should you do if you're approached? I'm going to be totally transparent, totally honest with you. That's entirely up to you. I'm not here to tell you what to do. That's up to you. It is your right. Okay. I just want you to make an informed decision. That's it. I'm not telling you to go this way or that way. Again, that is your right, your decision, and we respect that. We're only here to provide you with the facts, as we see it. We're not promising you anything. We're not telling you to go left or go right. That's up to you. But, if you don't have all of the information, you can make the wrong decision. Okay? If you've got questions, talk to your leadership, speak with HR. Just gain as much insight into the process as you possibly can. Okay?

[11:25-12:23] - Protecting your rights is important to us. Right? Protecting your signature is important to us. Make sure you understand what it is you're signing and what does that means, because signing something you can potentially be obligated to that. Okay? Listen, I'm a tell you, we're not perfect. [inaudible]. Some things we do right and some things we do wrong, and sometimes we don't always get that totally right. Listen careful now, right. It doesn't mean you stop talking. It doesn't mean you stop trying to get your voice across. Respect you more than anything. That's what I told you from the beginning. It is your decision, your opinion. We just want you to have and make an informed decision.

### November 11 Meeting at JFK8

On November 11, Mike Rebell and Ron Edison held a mandatory meeting with employees at JFK8. (Tr. 191–202) (GC Exh. 3). During the meeting, Rebell made the following comments regarding the CCP (GC Exh. 3):

[2:35-3:46] - So who here has heard of the Career Choice Program? A couple
right? So you have a lot of benefits right now. I'm just going to dive in a little bit to that one because we're constantly looking at ways to improve those type of programs. For instance, Career Choice today, you have to be employed with Amazon for a year and then it would pay roughly about 80% of that tuition. Come January that benefit is getting better. It's going to go down to only being here 90 days before you can take advantage of that and it's going to pay 100% of that tuition. And that's for programs . . . that help you stay here with Amazon or something that's just needed in the community. Things like from CDL licensing that maybe you stay with Amazon and work with the transportation or the TOM team or maybe you could go to an outside business or heck even start your own business for trucking but also things like medical billing and coding and into the health field. From IT different things and getting those certificates or degrees. I've seen HVAC. Many different programs that are offered at that. And again that's a benefit that you have right now for free that is also getting better come January. So that's just one thing.

Edison and Rebell also made the following comments about employees raising concerns to the attention of management and "open door avenues" (GC Exh. 3):

Edison - [1:53-2:23] - We have an amazing team and we believe working directly together is the best way to improve the workplace and respond to your feedback. Working directly together allows us to focus on our one team approach because it makes improvement happen quickly. Providing the programs and opportunities you care about most. Open door avenues that give you direct access to management and HR.

Rebell - [4:43-5:11] - That open door avenue, directly access management. That's kind of that direct working relationship that open door policy. We continue to strive that if you are going to your AM or maybe on the floor HR, if they are not able to answer your questions and get it resolved, escalate that up, go to the next level. Maybe it's the Ops Manager, maybe it's

an HR Manager. But currently you have that direct working relationship all the way up to the GM and honestly even above and outside of the building if you choose to do that.

Edison - [5:15-7:30] - Alright let's talk about the ways we work directly together. We want to hear from you. Here's how we can help make our team better. Speak with your manager. There should be an open door of communication with you and your manager so feel free first line to talk directly to your direct process path manager. If there is ever a barrier with your managers you immediately have operations managers that are in the process path as well and then it goes up from there. But that should be your direct line of contact, is directly with your direct process path manager. Connections. Is everybody familiar with the connections system? So as you go into your process path, you work or log onto your machines and computers if you have tasks that require that. You get the daily connections. It's asking you about your experiences, asking you things about the safety of the building, et cetera. And these are the opportunities for us to really get some true feedback that take those as opportunities for job improvements or find out what we are doing really well at and continue that on. GEMBA walks. So the senior team comes around on a weekly basis. You will see them coming through your process path and they are talking to the leadership and they are talking to associates to find out what are the barriers in those process paths? You are working those jobs every single day. You are putting your hands on the process. What are the barriers in those processes and how can we correct those when we go back in action against those so GEMBA walks are another. Birthday roundtables. Birthday roundtables is another way that we pull associates in during your birthday month and it's your chance to get a nice treat, do a fun activity, but it's also a communication time where we can talk about hey, again, what's going well? What are some opportunities? What do you want to see some more of? What can we do to create a good culture? So again birthday roundtables is something we also will continue.

Edison - [8:01-8:33] - Then the last part is the VOA or the voice of the associate board. Is everybody familiar with the VOA board? Have you seen it before? If you have an electronic board you can go in through your A to Z app, find my voice and this is where you can enter feedback if you like. It's used for something you can seek opportunities with but I've also seen it where people use it to point out some things that they think are going well. But again, this is your voice. This is another opportunity for you to speak and….

Rebell - [8:37-9:19] - And on the VOA board I just want to add to what Ron is saying. Obviously you can access it through your A to Z app, you can access it on some kiosks around, but also if you feel that you are not getting the response that you want or feel that you deserve, you can also escalate that, if you are not getting that response you can go request a meeting with…whether it's a senior leader that responded to that…depending on what it is, like if it's a safety thing, maybe it's you're requesting a meeting with the safety manager to get more information. If it's operations, maybe it's requesting a

meeting with the AGM, Assistant General Manager or maybe an Ops Manager. But if you are not getting that response you want currently you have that direct working relationship with all the way to the GM, get the answer, continue to escalate that so you can get the answer.

Rebell made the following comments about the Union as a third party unfamiliar with the Respondent's philosophy (GC Exh. 3):

[9:22-9:50] - So let's talk about Amazon and third parties. You have an amazing workforce and our direct relationship with Associates like you has been a key factor to our ability to deliver the best possible services globally to our customers. We continue to be a target for third parties that do not understand our pro-employee philosophy, and seek to disrupt the direct relationship between Amazon and our Associates.

An employee interjected and argued that the Union is not a third party because it was created by and consists exclusively of the Respondent's employees. Rebell maintained that the Union is a third party organization which would be representing employees and is not affiliated with Amazon. (GC Exh. 3 – [9:53-13:55]) Later, Rebell and Edison made the following comments (GC Exh. 3):

Edison - [17:20-18:03] - So let's talk about our commitment to you. We are proud of the relationship that we have established at JFK8 and we don't believe the ALU would make us more successful or stronger as a team so here is what we are committing. Protecting your rights, listening to you, respecting your opinions and being open and honest with you. Take the time to check facts, keep an open mind, ask questions of your leadership and do your own research.

Rebell – [18:03-18:56] - I want to hit a little bit more on the do your own research, alright? Ron and I, you have heard us for a half hour, you don't know us from anybody. Right? Who are we? Nobody to you right? When we say do your own research that also goes with if you are hearing something outside from whoever, maybe a coworker, make sure you are doing your own research as well and going to like unbiased type of websites. Go straight to the National Labor Relation Board's website is a great one. Unionfacts.org is a great one to go to where you can make a decision for yourself whether before or after you sign the card, whatever it is. Just do some research so that you can help inform and if we do go to a vote you can make the best decision for you and your family. Alright? That's really…the purpose of it is make sure you are doing your own research. That's the most important thing that you can do.

Rebell made the following comments regarding money the Union would charge employees (GC Exh. 3):

[13:32-15:12] - Alright just to further clarify that ALU is not part of Amazon, it is not authorized to speak for Amazon. The ALU is a newly formed third party group that wants to represent all Associates at all four Staten Island campuses even

though it has no experience. It will charge its members dues, fees, fines and assessments in exchange for their representation. So we will dive into some of the cards that may have been signed, maybe Associates asked about the cards. Whether it's a physical card like the right side or an electronic card right? And the purpose of this slide is really to make sure that you are protecting your signature. Before you sign something just read the fine print. You have every legal right to sign it, to listen to what's being said. 100%. But make sure that you are reading the fine print of what is on that card alright? You may be approached by an ALU organizer or an associate wearing a vest who is going to ask you to sign something. That's perfectly fine. They are legally able to do that but make sure that you are just reading the fine print of what that authorization card is applying. By signing either you could be authorizing the ALU to speak on your behalf or you could also be obligated to pay union dues and it's important you read everything closely but just make sure that you are reading the fine print whether it's on a QR code that you click, just make sure that you are reading what you are putting your information on first.

### February 16 Meeting at JFK8

On February 16, Charlotte Bowers held a mandatory meeting with employees at JFK8. (Tr. 191-202) (GC Exh. 4). During the meeting, Bowers made the following comments regarding union dues (GC Exh. 4):

[0:50-1:41] - There could be a hundred people on this site vote, and 51 vote yes, all 8,000 plus associates will then be represented by the union. So what that means is everyone's terms and conditions of employment will be up for negotiation, and you will also be liable to pay what's called "union dues" which are a representation fee that will be taken straight out of your paycheck and given to the ALU. They haven't told us how much they're going to charge yet and they haven't told us how often they're going to take that out, back in, in New York, there is no cap as to how much they can charge. So that's why it's incredibly important that you go out and have your voice heard and make sure that you vote. Because this election has significant and binding consequences and if the union wins, not just for yourselves, but for future associates, for your co-workers and potentially for your family if the paycheck and your budget is going to change.

[10:05-10:31] - If the ALU wins, they'll represent you whether you voted for them or not or whether you voted at all. Even if you didn't vote they will be your representative, and as I mentioned before, you will be liable to pay union dues or another representation fee, even if you voted no or you didn't vote at all, everyone is liable to pay those union fees. You can't opt out and everyone will follow a contract once it gets negotiated even if you don't like what's in it. So, electing a union is not like trying out my Netflix subscription for thirty days. It's very difficult to unelect the union once you elected them. You have to go through the transfer but in reverse. That's why it's really, really important that you have all the facts and, you consult various resources before you make a decision. So what I would recommend, consult Amazon, consult the ALU, go on the

NLRB government website. You make sure you're doing all that due diligence to make a decision that's right for you. It can have binding consequences.

Bowers also had the following exchange with JFK8 employee and Union Vice Present Derrick Palmer regarding terms and conditions of employment potentially getting worse as a result of negotiations (GC Exh. 4):

**Bowers** - [12:18-12:53] - So, with a union, terms and conditions of employment must be negotiated before changes can be made and they must be negotiated in good faith. Now good faith means that neither party can come to the table and say, "I want this or it's nothing." Both parties have to compromise, both parties have to give and take and… until changes can be made. So, the negotiations process is called collective bargaining and, in negotiations, there are no guarantees. Nobody can predict these results from the good faith bargaining process. And you can end up with better, the same, or worse than you currently have. There are no guarantees as to what the outcome will be.

**Palmer** – [12:53-12:58] - So, wait, you're saying we could end up with worse? What does that mean by that?

**Bowers** – [12:58-13:19] So, there are no guarantees as to what will happen, right? So, we can't make any promises that things will get better or stay the same. Cause it could get worse. We can't promise what's going to happen. Amazon can't promise you that they're going to walk into negotiations and the negotiations will start from the same. It could start from minimum wage for instance. I'm not saying that that will happen but it is a possibility.

At the time these statements were made, all JFK8 and LDJ5 employees earned more than minimum wage. (Tr. 384-385)

March 15 Meeting at JFK8

On March 15, Eric Warrior held a mandatory meeting with employees at JFK8. (Tr. 191–202) (GC Exh. 5). During the meeting, Warrior made the following comments regarding employees' terms of employment during negotiations (GC Exh. 5):

[3:45-3:58] - You have to keep the status quo. That means we have to keep everything the same during the election and during negotiations if the union is voted in, pay… benefits, and work rules.

[5:05- 5:17] - There is no time limit to negotiations. Sometimes it could take months, even years, to complete this process. Sometimes the two sides can never agree.

[9:22-9:40] - Negotiating a contract, particularly the first contract, can take a long time, months and sometimes years. And during negotiations there are typically no changes to wages, benefits, or work rules, and what happens if the parties can't agree to a contract?

Warrior also made the following comments regarding union shop clauses (GC Exh. 5):

[5:17-5:51] - The union comes to the table with things that it wants. Union shop clauses. Clause. The union shop clause is not a check-off clause. So, when a union shop clause… and why do unions ask for it? A union shop clause would require Amazon to fire you if you don't want to join the union and pay union dues. I'll repeat that again. So, a union shop clause would require Amazon to fire you if you do not want to join the union.

April 10 Meeting at LDJ5

On April 10, Rebecca Smith held a meeting with employees at LDJ5. Smith made the following comments (GC Exh. 6):

**Smith** - [9:40-10:27] - The sticking point about all of this though is there is nothing in federal law that is gonna force the employer or the union into an agreement they don't want to make. Okay? Nothing in federal law forces either the employer or the union into an agreement they do not want to make, and that's very important. There is no time limit on this process. Okay? The federal law doesn't say "Hey, you could get a contract in six months. Hey, you'll get a contract in a year." Federal law says, "however long it takes." Okay. "We're not putting a time limit on it." So, while you're going through this process though, does everybody understand what status quo is? No? Okay. You know what status quo is, don't you?

**Employee** - [10:27-10:32] - Yeah, status quo means everything remains the same.

**Smith** - [10:32-11:36] - Okay, so once the union files a petition, and she's correct, once the union files a petition, okay, everything must remain the same. I can't give you anything and I can't take anything away. There's actually a logic behind it although a lot of times employees don't like the law. . . . This law was written in 1935. Logic behind it was if you guys have a union election coming up and I give you things, I might be bribing you into voting no or if I take things away from you, I might be punishing you for bringing in a union, right? Neither of those things are legal. So you stay at status quo. The problem comes in with status quo, a lot of employees feel, is that when they vote a union in and they expect changes to happen right away, status quo says nothing can change until and if you reach an agreement, and I use the word "if" because actually there is nothing in federal law that guarantees you a contract at the end of the process. Okay. So that's why this law is important, and I know we didn't push it enough and I'm sure nobody in here is saying "oh yeah I can't wait to go home and read this thing" Right? But it dictates how this thing is gonna go down.

April 18 Meeting at LDJ5

On April 18, Katie Lev held a mandatory meeting with employees at LDJ5. (Tr. 293–294) (GC Exh. 7). During the meeting, Lev talked extensively about union dues, union security clauses, and dues check off. Lev's comments including the following statements regarding union security clauses (GC Exh. 7).

[14:45-16:58] - So the parties are going to ask for different things that they want. The union has things that they want that are different from what you guys want. For example, union shop clause. Anybody know what happens if you don't pay dues in the State of New York, you're covered by the union contract with a shop clause. So I've been in a union. If I didn't pay my dues I was terminated. Not paying your dues isn't an option, you are fired. So when I was in the union, I didn't think the union… I was in a union here as a room service girl for a large hotel, when I was a room service girl, if I didn't pay my dues I was terminated, so I paid my dues. My frustration with that and it's part of my opinion this is an organization that's supposed to be helping me, I don't think they were helping me but I still had to pay. So my little way of thinking about things is if I hire a plumber to fix my toilet and he doesn't fix my toilet, I don't want to pay him. So if they're not fixing things for me, they're making things worse for me, I don't want to pay them. If I didn't pay them, I would be terminated. That didn't make sense to me in the whole hiring someone to do something for you and not having to pay them if they don't actually do anything. So that's what union shop clause is. It is not an option not to pay your dues, you are terminated. If you are having this conversation in Florida, I'd be like, don't worry about it. If you don't like the contract, if the union is not helping you, just don't pay them. The State of Florida said, that is not okay to fire someone for something that has nothing to do with your performance at your job. They're not allowed to fire people because of that. Michigan, Florida, Texas, 28 states have said that's illegal. But in the State of New York to pay dues is a condition of employment, that's the law permits that. So that's the union shop clause.

Lev also made the following comments regarding employee increases and improvements while a contract is being negotiated with a union representative (GC Exh. 7):

**Lev** - [27:20-28:04] - Okay, so, less I be accused again of being a liar, this is from Bloomberg law. So they did a study. The average contract takes 409 days to reach an agreement. So over at JFK8, a year goes by and other places have gotten increases, and other changes and improvements have been made at other buildings, but JFK8, they're in a collective bargaining process, that's frozen, and if employees are standing up going, "it's been a year, we haven't gotten anything, I thought we were going to do this." Maybe their picture gets taken, maybe they dig up something in their past, this is what they do if you disagree with them. They put a little "wanted" poster out for you. Yes?

**Employee** - [28:04-28:06] - Is that why I can't change my schedule?

**Lev** - [28:10-28:49] - Yeah, they are not allowed to make any changes. You guys are in the same status quo as they are. The difference is, you guys are in the preelection status quo, they are in the pre-collective bargaining status quo. Exactly the same impact. So if you ask to make a change now, your managers are like "Oh, I can't, we'll talk to you about it later." Because while this process is going on, everything is frozen. So,

409 days, if they're on average, they will not have a contract a year from now. … I would expect 8,000 would be longer, but maybe it's shorter, nobody knows.

**Employee** - [28:49-28:54] - If the Union is voted in, I would have to wait the average, like that much days to fix my schedule?

**Lev** - [28:54-30:22] - Yeah. That's the average but again, it could be much shorter, it could be much shorter. Like I'm trying to say, like, both sides. I know I sound so negative, but it could be more, it could be less, it could be the same. That's not negative. I know reading this sounds negative, but like I'm sorry but it's raining outside. That's negative. But that's not fear mongering. I've never said anything that's fear mongering. This is just a fact. If this frightens you, then you should vote no, if it doesn't frighten you, then you could vote yes. But telling someone the truth shouldn't be scary. I'm not saying anyone's going to lose anything, but I'm also saying I don't know if anyone is going to gain anything. You can decide whether you want to roll the dice and be bound by this. So, 409 days on average, some other data, this comes from the Economic Policy Institute, this is from 2021, more than half of all workers who vote to form a union are still without a collective bargaining agreement a year later, 37% are without an agreement over two years later. Does that mean you should vote no? Of course not, it just means that expect to be really, really patient because it's a long process. That doesn't mean the ALU is bad, it doesn't mean unions are bad, it just means this is the data on how long it takes.

<div align="center">ANALYSIS</div>

Discriminatory Enforcement of the Solicitation Policy

The complaint alleges that the Respondent violated Section 8(a)(1) by discriminatorily enforcing its solicitation policy when it removed messages that Miller posted on the VOA inviting employees to sign a Juneteenth petition at the Union tent and by threatening Miller with discipline for those postings. (Complaint ¶ 11) The General Counsel concedes that "an employer does not violate the Act by restricting the nonbusiness use of its IT resources absent proof that employees would otherwise be deprived of any reasonable means of communicating with each other, or proof of discrimination." *Caesars Entertainment*, 368 NLRB No. 143, slip op. 8 (2019). Nevertheless, the General Counsel, relying exclusively on *Guard Publishing Co. d/b/a The Register Guard*, 351 NLRB 1110 (2007), contends that the Respondent discriminatory enforced its solicitation policy along Section 7 lines.

<div align="center">*Removal of Miller's Post*</div>

In *Register Guard*, the Board found lawful an employer's enforcement of a policy prohibiting the use of its email system for "non-job related solicitations" by issuing written warnings to an employee for emails urging other employees to support the union by wearing green and participating in a union entry in a parade. Id. at 1119–1120. The Board refused to find the warnings discriminatory even though the employer allowed employees to send personal e-mail messages (i.e., emails concerning social

gatherings, jokes, baby announcements, offers of sports tickets, and requests for services such as dog walking) because the employer did not have a practice of permitting emails which solicited support for groups, causes, or organizations. Id. at 1117, 1119. The union-related emails were found to be "unprotected" because they violated a lawful solicitation policy in the absence of evidence that other email "solicitations" were allowed. Conversely, the Board found unlawful a warning issued to an employee that simply clarified facts about the union rally and "was not a solicitation." Id. 1119. Since the Respondent allowed other non-solicitation emails, the only difference between the prohibited and permitted emails "was union-related." Id. 1119.

In describing the appropriate analysis regarding the alleged discriminatory enforcement of a solicitation policy, the Board stated as follows:

> We find that the Seventh Circuit's analysis, rather than existing Board precedent, better reflects the principle that discrimination means the unequal treatment of equals. Thus, in order to be unlawful, discrimination must be along Section 7 lines. In other words, unlawful discrimination consists of disparate treatment of activities or communications of a similar character because of their union or other Section 7-protected status. See, e.g., *Fleming, supra, 349 F.3d at 975* ("[C]ourts should look for disparate treatment of union postings before finding that an employer violated *Sec. 8(a)(1).*"); *Lucile Salter Packard Children's Hospital at Stanford v. NLRB, 321 U.S. App. D.C. 126, 97 F.3d 583, 587 (D.C. Cir. 1996)* (charging party must demonstrate that "the employer treated nonunion solicitations differently than union solicitations").

> For example, an employer clearly would violate the Act if it permitted employees to use e-mail to solicit for one union but not another, or if it permitted solicitation by antiunion employees but not by prounion employees. In either case, the employer has drawn a line between permitted and prohibited activities on Section 7 grounds. However, nothing in the Act prohibits an employer from drawing lines on a non-Section 7 basis. That is, an employer may draw a line between charitable solicitations and noncharitable solicitations, between solicitations of a personal nature (e.g., a car for sale) and solicitations for the commercial sale of a product (e.g., Avon products), between invitations for an organization and invitations of a personal nature, between solicitations and mere talk, and between business-related use and nonbusiness-related use. In each of these examples, the fact that union solicitation would fall on the prohibited side of the line does not establish that the rule discriminates along Section 7 lines. For example, a rule that permitted charitable solicitations but not noncharitable solicitations would permit solicitations for the Red Cross and the Salvation Army, but it would prohibit solicitations for Avon and the union.

Id. at 1117–1118

Here, the General Counsel initially contends that all "Section 7-protected" VOA posts are of a similar character and, therefore, once the Respondent permits some Section 7-protected posts it must allow all Section 7-protected posts, including Miller's messages inviting employees to sign a Juneteenth petition at the Union tent. However, in *Register Guard*, the Board found that an employer may prohibit solicitation while permitting communications that do not rise to the level of solicitation. Id. at 1119. Thus, currently, the Board does not consider a solicitation versus non-solicitation distinction to be the "unequal treatment of equals" or the disparate treatment of communications of a "similar character." This rationale would logically apply even if the prohibited solicitation and allowed non-solicitation were both union-related or concertedly related to wages, hours, and other terms and conditions of employment.[9]

The General Counsel does identify as "solicitation" certain VOA messages which were not removed by the Respondent even though they were posted in support of a group, cause, or organization. Employees routinely posted VOA messages which sought other employees to "vote yes" or "vote no" in the union election. One employee posted a message asking other employees to "come get" a "VOTE NO" shirt in the breakroom. Employees posted concerted messages about safety and health concerns. Employees posted concerted messages in support of Juneteenth as a paid holiday, including this post by Miller on June 18:

> Since Juneteenth is now a federal Holiday shouldn't we get holiday pay as we do for all the other holidays. It's all over every news channel and in the papers as well that June 19 is now a federal holiday.

The Respondent argues that it did not discriminatorily enforce its solicitation policy along Section 7 lines, but simply enforced a Section 7-neutral policy which prohibits solicitation for "signatures on petitions." As noted in *Register Guard*, "an employer clearly would violate the Act if it permitted employees to use e-mail to solicit for one union but not another, or if it permitted solicitation by antiunion employees but not by prounion employees." Id. at 1118. Although such posts are all union-related, by enforcing a policy in a manner that takes the side of one union over another or one union over no union, "the employer has drawn a line between permitted and prohibited activities on Section 7 grounds." Id. Until July, the Respondent did not remove union-related posts and did not remove posts promoting Juneteenth as a paid holiday. Accordingly, it is not so obvious that the Respondent drew a line between prohibited and permitted solicitations along Section 7 lines.

The issue presented here is a difficult one and I look to the totality of the circumstances to answer it. The Respondent essentially maintained the VOA as an open forum and did not, until

---

[9] The General Counsel also claims that the Respondent's application of its solicitation policy to remove Miller's post is "fallacious" because the policy exempts communication that "relates to terms and conditions of employment." However, solicitation policy FAQ number 4 echoes the law in *Register Guard* by prominently noting that solicitation is

legally protected only if it "**Does NOT** use company electronic equipment *and*" relates to terms and conditions of employment. The VOA is an electronic system and, therefore, VOA posts are not exempt from the solicitation policy.

July, remove any posts. In a Chime exchange, Edwards said, "I'm shocked Stephanie is suggesting to remove a VOA comment but I'm aligned 100%" because "[i]t is not asking any type of question and instead antagonizing and trying to rally a group of people."[10] The VOA post which sticks out as particularly similar to Miller's message inviting employees to sign a Juneteenth petition at the Union tent is another VOA post which invited employees to come get a "VOTE NO" shirt in the breakroom. The post regarding "vote no" shirts appears to violate the solicitation policy (as clarified by FAQ number 1) against distribution in the same way Miller's post violated the policy against the solicitation of signatures for petitions. The Respondent removed posts from the VOA for the first time during a union organizing campaign it opposed and the removed posts referenced a petition available for signing at the Union tent. At the time, the Respondent was already circulating literature designed to dissuade employees from signing union authorization cards which were available at the Union tent. On July 12, when Tanelli told Miller her post would be removed as a violation of the solicitation policy, he said the policy prohibited "anything related, like, to the ALU, and the tent, things like that like for going and signing up." Although it is a close question under current law, the context could reasonably cause an employee to believe that the Respondent was discriminatorily enforcing its solicitation policy by prohibiting posts regarding the signing of documents at the Union tent along Section 7 lines while allowing other solicitations of a similar character to remain.

Accordingly, I find that the Respondent violated Section 8(a)(1) of the Act by discriminatorily enforcing its solicitation policy when it removed Miller's VOA messages inviting employees to sign a Juneteenth petition at the Union tent. (Complaint ¶ 11(a).)

### Threat of Discipline

The General Counsel contends that Tanelli unlawfully threated Miller with discipline for reposting the VOA message which invited employees to sign a Juneteenth petition at the Union tent. (Complaint ¶ 11(b).)

I do not find the alleged violation because Tanelli did not threaten Miller with discipline during their July12 meeting. Tanelli specifically told Miller she was not in trouble and was not being disciplined for violating the solicitation policy. Tanelli told Miller the meeting was just for the purpose of educating her about the solicitation policy. Tanelli did tell Miller that there would be "additional follow up" if she reposted the message. However, "additional follow up" does not necessarily imply anything more than another educational meeting. Tanelli's comment did not dissuade Miller from reposting the message and Miller was not disciplined for doing so. The lack of an disciplinary "follow up" would tend to confirm that there had been no threat of discipline in the first place.[11] Accordingly, I will dismiss the allegation that the Respondent violated Section 8(a)(1)

of the Act by threatening Miller with discipline for reposting her July 9 VOA message. (Complaint ¶ 11(b).)

### Promises to Improve the Career Choice Program

The General Counsel contends that, on November10 and 11, the Respondent violated Section 8(a)(1) by promising employees improved benefits for rejecting the Union. (Complaint ¶¶ 15(a), 16(a).) More specifically, the General Counsel contends that the Respondent unlawfully promised to improve the CCP.

"An employer violates Section 8(a)(1) when it promises, either explicitly or impliedly, improved benefits contingent on employees giving up union representation." *Unifirst Corp.*, 346 NLRB 591, 593 (2006), citing *Bakersfield Memorial Hospital*, 315 NLRB 596, 600 (1994). However, employers may make truthful statements to employees concerning benefits available to their unrepresented employees and ask those employees not to unionize on that basis. *Unifirst Corp.*, 346 NLRB at 593 (2006), citing *TCI Cablevision of Washington*, 329 NLRB 700 (1999). Further, an employer may reference, during an organizing campaign, a benefit which was announced before the union campaign as a reason for employees not to unionize. *Horseshoe Bossier City Hotel & Casino*, 369 NLRB No. 80 (2020), citing *Hampton Inn NY-JFK Airport*, 348 NLRB 16, 17–18 (2006). Thus, the Board makes a distinction between (1) an employer referencing its existing or lawfully announced benefits as a reason not to unionize and (2) the promise of new benefits as a reason not to unionize. Only the latter is unlawful.

Here, in about April, the Union conspicuously began its organizing campaign at JFK8. In September, the Respondent announced company-wide improvements to the CCP. At a mandatory meeting held on November 10, Williams made the following comments:

> At JFK8, we have an amazing team, and we truly believe that by working together with our associates and direct interaction with our associates, allows us to make rapid improvement, course correct, and improve our work place.
> . . .
> And that's why Amazon, effective January 1, we will be paying 100% tuition, college tuition, education tuition. You guys have heard of that? [unidentified voice answers "yea."] Yeah? If you haven't, if you don't have an associate degree or bachelor's degree, and that's what you want, that's at your disposal. That is something that Amazon is going to implement because we've listened to our associated.

At a mandatory meeting held on November 11, Rebell made the following comments regarding changes to the CCP:

> So who here has heard of the Career Choice program? A couple right? So you have a lot of benefits right now. I'm just going to dive in a little bit to that one because we're constantly looking

---

[10] The General Counsel did not allege that the employer's enforcement of the solicitation policy was motivated by a discriminatory purpose and I do not address the same herein. (Tr. 428–430) *See Kroger Ltd. Partnership*, 368 NLRB No. 64 slip op. 11–12 (2019).

[11] The General Counsel relies on certain evidence that the Respondent did, in fact, consider disciplining Miller. (GC Exhs. 55–56.) However,

the General Counsel concedes that the 8(a)(1) threat analysis is an objective one from the perspective of a "reasonable employee." The Respondent's disciplinary deliberations are irrelevant because they were not communicated to Miller.

at ways to improve those type of programs. For instance, Career Choice today, you have to be employed with Amazon for a year and then it would pay roughly about 80% of that tuition. Come January that benefit is getting better. It's going to go down to only being here 90 days before you can take advantage of that and it's going to pay 100% of that tuition. And that's for programs . . . that help you stay here with Amazon or something that's just needed in the community. I've seen things like from CDL licensing that maybe you stay with Amazon and work with the transportation or the TOM team or maybe you could go to an outside business or heck even start your own business for trucking but also things like medical billing and coding and into the health field. From IT different things and getting those certificates or degrees. I've seen HVAC. Many different programs that are offered at that. And again that's a benefit that you have right now for free that is also getting better come January. So that's just one thing.

The General Counsel cites *Manor Care Health Services-Easton*, 356 NLRB 202, 219–223 (2010), and *MEMC Electronic Materials, Inc.*, 342 NLRB 1172, 1175 (2004), for the proposition that the Board will presumptively infer interference with Section 7 rights when an employer announces or grants benefits during a union organizing campaign, unless the employer can show it had a legitimate business reason for the change.

In *Manor Care*, 356 NLRB 202, 219–223 (2010), a union began a multistate organizing campaign of an employer's facilities in September 2007. In October 2007, the employer unlawfully solicited employee grievances regarding pay and promised to remedy them "without a second party involved." 356 NLRB at 220-221. In November 2007, the employer granted employee wage increases and lump sum payments. Id. at 222. The Board affirmed the judge's ruling that the pay increases violated Section 8(a)(1). Id. at 202, fn. 3. The complaint alleged that the wage increases also violated Section 8(a)(3), but the judge found it unnecessary to reach that allegation as the remedy would be the same as the 8(a)(1) violation. Id. at 223.

In *MEMC Electronic Materials, Inc.*, 342 NLRB 1172, 1174–1176 (2004), wage cuts became a key issue in a union campaign. Just 4 days after the employer and union entered into a stipulated election agreement, the employer reversed course and announced to employees that half the wage cuts would be restored shortly before the scheduled election and the other half would be paid out thereafter in monthly lump payments. Id. at 1173. The employer made subsequent remarks to employees implying that the pay restoration was intended to quell worker anger which caused the union campaign. The Board found that the employer violated Section 8(a)(1)[12] by announcing and implementing the wage restorations, and stated:

---

[12] The Board found it unnecessary to pass on an 8(a)(3) allegation in the complaint.

[13] That CCP changes were announced 5 months after organizing began and before representation petitions were filed on a company-wide basis without any reference to union organizing would tend to negate an inference that it was a coercive promise to convince employees not to unionize. See *Nalco Chemical Co.*, 163 NLRB 68, 70–71 (1967).

---

In conferral-of-benefits cases, the board has consistently inferred a violation of Section 8(a)(1) from nothing more than conferral itself during the pendency of an election, leaving it to the employer to make an affirmative showing that the grant of benefits was governed by factors other than the impending election. See, e.g., *Speco Corp.,* 298 NLRB 439, 443 (1990); *Brooks Bros.,* 261 NLRB 876, 882 (1982); *Gordonsville Industries,* 252 NLRB 563, 575 (1980).

. . .

One way in which an employer may explain the conferral of benefits during the pendency of an election is to establish that the grant of benefits "had been conceived and implemented prior to the union's arrival, and that the preelection announcement simply made known to employees a predetermined and existing benefit, legitimately processed and unveiled in accordance with the dictates of business constraints, not union considerations." *Gordonsville Industries*, 252 NLRB at 575.

The instant case is significantly different than *Manor Care* and *MEMC Electronic Materials* in that the complaint does not allege that the Respondent unlawfully, as a violation of Section 8(a)(1) or 8(a)(3), announced changes to the CCP program in September or implemented unlawful CCP changes in January 2022. Unlike in those cases, here, the September company-wide announcement was not made at a time or in a manner which would dissuade employees' from supporting the Union.[13] Absent such an allegation, the Respondent's references in November to CCP changes legally announced two months earlier effectively functioned as a reminder of a lawful predetermined benefit. As noted above, employers may ask employees not to unionize based upon their current benefits. It would make little sense if an employer's decision and announcement of a change in benefits was lawful but a subsequent reference to that change was not.[14] Accordingly, I will dismiss the allegations that the Respondent violated Section 8(a)(1) of the Act by promising employees improvements to the CCP to discourage them from electing a union representative. (Complaint ¶¶ 15(a), 16(a).)

Solicitation of Grievances and Implied Promises to Remedy Them

The General Counsel contends that, on November 10 and 11, the Respondent violated Section 8(a)(1) by soliciting the grievances of employees and impliedly promising to remedy them to discourage union support. (Complaint ¶¶ 15(b), 16(b).)

The Board has held that the solicitation of employee grievances during a union organizing campaign "raises an inference that the employer is promising to remedy the campaign," particularly when "an employer has not previously had a practice of soliciting employee grievances." *Garda CL Great Lakes, Inc.*, 359 NLRB 1334 (2013), citing *Amptech Inc.*, 342 NLRB 1131, 1137 (2004). However, "an employer with a past practice of

---

[14] As the General Counsel did not allege that the September announcement of CCP changes was unlawful, I do not believe it is appropriate to initially infer that the announcement interfered with employees' Section 7 rights (even though it occurred during an organizing campaign). Regardless, the Respondent had a legitimate business reason to reference the predetermined changes in opposition to union organizing.

soliciting employee grievances through an open door or similar-type policy may continue such a policy during a union's organizational campaign." *Wal-Mart Stores, Inc.*, 340 NLRB 637, 640 (2003), citing *Kingsboro Medical Group*, 270 NLRB 962, 963 (1984). Ultimately, "it is not the solicitation of grievances itself that violates the Act, but rather the employer's explicit or implicit promise to remedy the solicited grievances that impresses upon employees the notion that representation is unnecessary." *Wal-Mart Stores, Inc.*, 340 NLRB 637, 640 (2003), citing *Maple Grove Health Care Center*, 330 NLRB 775 (2000), and *Uarco, Inc.*, 216 NLRB 1, 2 (1974). Thus, an employer's statement to employees that it can make no promises tends to work against the finding of a violation. See *Southern Monterey County Hospital*, 348 NLRB 327, 329 (2006), citing *Uarco, Inc.*, 216 NLRB 1, 2 (1974). Likewise, an employer's failure to offer any solution to a grievance tends to work against the finding of a violation. Id.

Here, I do not find that the Respondent, by Williams on November 10, violated the Act. Williams twice told employees he could not promise them anything.[15] Williams did not actually solicit employee grievances at the meeting and, therefore, was not in a position to offer any specific solutions.[16] Rather, Williams urged employees to direct their complaints to management at various levels pursuant to an open door policy and in forums that were already available.[17] These factors tend to diminish any inference of coercion and weigh against the finding of a violation. See *Southern Monterey County Hospital*, 348 NLRB 327, 329 (2006).

The General Counsel asserts that the Respondent failed to present evidence of an open door policy or establish that employees had an existing right to escalate complaints to higher management if those complaints were not remedied at a lower level. However, the Owner's Manual which was entered into evidence includes a provision titled "Open Door Policy and Conflict Resolution."[18] That policy indicates that employees "are welcome to discuss any suggestion, concern, or other feedback with any member of the company's management. Associates are encouraged to bring their ideas to the attention of management." (GC Exh. 58 p. 7). The policy further states (GC Exh. 58 p. 7):

> The majority of misunderstandings are satisfactorily resolved by a thorough discussion and mutual understanding between the parties involved. In general, it is best to discuss any concerns with your immediate supervisor first. If you are unable to reach a satisfactory resolution with your supervisor or are not comfortable discussing the issue with your supervisor, you are

welcome to discuss the matter with the next level of management, with Human Resources, or with any member of senior management.

The remainder of Williams' comments did not establish a context which implied that he was soliciting grievances and promising to remedy them if employees rejected the Union. Williams stated that it is "our job every day to listen to associates' concerns and try to remove barriers." In so stating, Williams gave no indication that the Respondent would do less for employees if they unionized or more for employees if they did not. Williams said he was "not here to bash anybody, I'm just giving you my opinion," and there are "two opposing sides" and "that's okay." Williams assured employees that, "regardless of what you decide to do or don't do, it is your choice, it is your right." In talking about what employees should do if they were approached by the Union, Williams stated:

> I'm going to be totally transparent, totally honest with you. That's entirely up to you. I'm not here to tell you what to do. That's up to you. It is your right. Okay. I just want you to make an informed decision. That's it. I'm not telling you to go this way or that way. Again, that is your right, your decision, and we respect that. We're only here to provide you with the facts, as we see it. We're not promising you anything. We're not telling you to go left or go right. That's up to you. But, if you don't have all of the information, you can make the wrong decision.

In my opinion, Williams' comments never spilled over into an implied promise that, if employees did not unionize, their complaints would be presented in new forums, processed in a different way, be taken more seriously, or be remedied more favorably than they had been in the past. Under current law, the Respondent was not forbidden from campaigning against unionization by asserting that employees already have the ability to approach management at all levels and in various forums to present their grievances. Under current law, the Respondent is entitled to tell employees that it wants to maintain a direct relationship with employees that does not include what it perceives to be the intervention of a third party union. Certainly, employees might not agree with the Respondent and take issue with a characterization of a union as a "third party," but that does not render the comments unlawful.

Similarly, I do not find that the comments of Rebell and Edison, on November 11, were unlawful. Their presentation largely concerned an explanation of existing policies and forums for

---

[15] Compare *ManorCare Health Services-Easton*, 356 NLRB 202, 220 (2010), cited by the General Counsel, in which the employer specifically told employees that they "had heard there was a lot of complaints and concern. And that they're here to try to fix it without a second party involved."

[16] Compare *Aldworth Company, Inc.*, 338 NLRB 137, 179 (2002), cited by the General Counsel, in which the employer made notes of employee grievances during a meeting and responded by issuing a letter with specific remedies.

[17] Compare *Edward A. Utlaut Foundation, Inc.*, 249 NLRB 1153, 1156 (1980), cited by the General Counsel, in which the employer changed its method of soliciting grievances from a generally neglected

suggestion box to an announcement that complaints about sick leave policy could be changed and "taken care of."

[18] Although not entirely clear, the General Counsel perhaps asserts that the Respondent presented no evidence about its open door policy because the 2019 Owner's Manual was entered into evidence and the 2021 version was not. However, Edwards testified that she believed the 2019 Owner's Manual was not changed. Further, we are concerned, here, with the Respondent's policy that has historically been in effect. There was an open door policy in effect in 2019 and there is no evidence that it changed before the Respondent's agents made reference to it in November.

employees to express and resolve complaints. Like Williams, Rebell and Edison did not solicit particular grievances or offer to resolve them. While Rebell and Edison did not expressly state that the Respondent could not promise employees anything, Rebell did suggest that employees do research and "go straight to the National Labor Relations Board's website." I do not find that Rebell and Edison ever moved beyond a recitation of the Respondent's existing policies and practices, and into an implied promise to remedy complaints in a new or different way.

Based upon the foregoing, I will dismiss the allegations that the Respondent violated Section 8(a)(1) of the Act by soliciting employee grievances and impliedly promising to remedy them to discourage union support. (Complaint ¶¶ 15(b), 16(b).)

#### Threats to Reduce Employees' Wages as a Result of Union Dues

The General Counsel contends that in anti-union literature and in mandatory meetings held on November 11, February 16, and April 18, the Respondent violated Section 8(a)(1) by threatening to withhold employees' wages if they chose to be represented by the Union. (Complaint ¶¶ 7(b), 8(b), 16(c), 17(a), 19(a)) More specifically, the General Counsel contends that the Respondent unlawfully threatened employees with reduced wages by stating that the Union would charge them certain monetary amounts, including dues and fees.

In *Office Depot*, 330 NLRB 640, 642 (2000), the Board stated as follows in rejecting an allegation that the employer violated Section 8(a)(1) by telling employees they would need to pay union dues if the union were elected:

> We find nothing unlawful in the Respondent's statement that the employees would have to pay [u]nion dues if they selected the [u]nion. It is an economic reality that unions may collect dues from the employees they represent. The Respondent's statement about dues simply conveys to employees this reality. It does not convey any explicit or implicit threat of reprisal against employees for exercising their statutory right to select a union as their exclusive collective-bargaining representative. Even if the Respondent's statement could be considered untruthful, in that not all employees in union-represented units "have" to pay union dues, it is still nothing more than a misrepresentation about unions' ability to enforce payment of dues and not a threat of adverse action by the Respondent. We, therefore, find that the Respondent's statement about Union dues does not violate Section 8(a)(1) of the Act. *New Process Co.*, 290 NLRB 704, 707 enfd. Mem. 872 F.2d 413 (3d Cir. 1989).

Similarly, in *Syncor International Corp.*, 324 NLRB 8, 8 (1997), the Board found lawful the statement, "if the Union should come in, then [employees] would be making less money after [they] paid dues to the Union." The Board explained:

> Viewed in context, [the employer's] remark about ''making less money'' cannot reasonably be interpreted as a threat to reduce employees' wages because of their union support. Rather, the clear implication of his remark was to serve as a reminder that the payment of union dues would result in an expense not currently borne by the employees.

Id. See also *Southern Monterey County Hospital*, 348 NLRB 327, 328 (2006) (supervisor's statement that unions just want employees' money and that employees would have to pay union dues without a guarantee of receiving benefits in return is lawful).

Here, in distributed literature, the Respondent advised employees that signing a union authorization card may obligate them to pay the Union a monthly fee out of their paychecks. On November 11, Rebell told employees the Union "will charge it's members dues, fees, fines, and assessments in exchange for representation." Rebell also told employees that, by signing an authorization card, "you could be authorizing the ALU to speak on your behalf or you could also be obligated to pay the union dues." On February 16, Bowers told employees that, if the Union is elected, "everyone's terms of employment will be up for negotiation and you will also be liable or payable for union does which are a representation fee that they take straight out of your pay check and give it to the ALU." Bowers also said that, as a result, employees' paychecks and budgets would change. On April 18, Lev told employees that, as an employee previously represented by a union, "if I didn't pay may dues, I was terminated. Not paying your dues isn't an option, you are fired." These statements are no more unlawful as threats of reduced wages than employer statements deemed legal in the cases cited above.

The cases relied upon by the General Counsel are inapposite.[19] In *Shamrock Foods*, 366 NLRB No. 17 (2018), and *Reno Hilton*, 319 NLRB 154 (1995), the employers made generalized assertions that employees would suffer harm as a result of organizing in the context of other unlawful threats of plant closure, termination, and the reduction of benefits. As noted by the Board in *Shamrock Foods*, while discussing the decision in *Reno Hilton*, the "numerous other unfair labor practices, including threats of closure, discharge, and loss of benefits, . . . gave the [general] assertion 'both specificity and force.'" *Shamrock Foods*, 366 NLRB at slip op. 14. The statements at issue here were not generalized threats, but specific statements about the impact of union dues, which the Board has found to be lawful.[20] Further, the alleged unlawful statements were not made in a context rife with unfair labor practices.

Based upon the foregoing, I will dismiss the allegations that the Respondent violated Section 8(a)(1) of the Act by threatening the reduction of employees' wages as a result of the assessment

---

[19] In their brief, the General Counsel essentially concedes that statements regarding the payment of union dues, alone in isolation, might not be unlawful. (GC Br. pp. 41, 82)

[20] In *Clements Wire & Mfg. Co.*, 257 NLRB 206, 213 (1981), cited by the General Counsel, the employer unlawfully told employees they would be "making less money, not more." Although the employer also discussed union dues, the employer did not tell employees they would make less money *because* they paid union dues. The statement about making less money and paying dues were separate. The General Counsel also relies on the dissent in *Tesla, Inc.*, 370 NLRB No. 101 (2021), but I am bound to apply current Board law, including majority opinions.

of union dues or fees. (Complaint ¶¶ 7(b), 8(b), 16(c), 17(a), 19(a).)

Threats of Loss of Existing Wages and Benefits as a Result of Bargaining

The General Counsel contends that, on February 16, the Respondent violated Section 8(a)(1) by threatening to withhold employees' existing wages if they chose to be represented by the Union. (Complaint ¶ 17(b).)

The Board has noted that "[a]n employer can tell employees that bargaining will begin from 'scratch' or 'zero' but the statements cannot be made in a coercive context or in a manner designed to convey to employees a threat that they will be deprived of existing benefits if they vote for the union." *Somerset Welding & Steel, Inc.*, 314 NLRB 829, 832 (1994), citing *Belcher Towing Co.*, 265 NLRB 1258 (1982). "Additionally, employees can be told that bargaining will start from zero but they cannot be threatened with the loss of benefits and left with the impression that all they will 'get' is what the union can restore to them." *Somerset Welding & Steel, Inc.*, 314 NLRB at 832, citing P*lastronics, Inc.*, 233 NLRB 155 (1977). Thus, the Board distinguishes "between (1) a lawful statement that benefits could be lost through the bargaining process and (2) an unlawful threat that benefits will be taken away and the union will have to bargain to get them back." *So-Lo Foods, Inc.*, 303 NLRB 749, 750 (1991).

The Board has recognized that "'bargaining from scratch' is a dangerous phrase which carries within it the seed of a threat that the employer will become punitively intransigent in the event the union wins the election." *Coach and Equipment Sales Corp.*, 228 NLRB 440, 440 (1977). In *Coach and Equipment Sales*, 228 NLRB at 440–441, the Board explained the evaluation of such statements as follows:

> [W]here a bargaining-from-scratch statement can reasonably be read in context as a threat by the employer either to unilaterally discontinue existing benefits prior to negotiations, or to adopt a regressive bargaining posture designed to force a reduction of existing benefits for the purpose of penalizing employees for choosing collective represent, the Board will find a violation. Where, on the other hand, the clearly articulated thrust of the bargaining-from-scratch statement is that the mere designation of a union will not automatically secure increases in wages and benefits, and that all such items are subject to bargaining, no violation be found. A close question sometimes exists whether bargaining-from-scratch statements constitute a threat of economic reprisal or instead constitute an attempt to portray the possible pitfalls of the collective bargaining process. The presence of contemporaneous threats or unfair labor practices is often a critical factor in determining whether there is a threatening color to employer's remarks.

In *Tufts Brothers Inc.*, 235 NLRB 808, 808 (1978), an employer was found to have unlawfully told employees that the law required him to freeze all benefits and start from scratch if the union were elected. The Board observed as follows in finding the comments unlawful:

> It is permissible to inform employees of the realities of collective bargaining, which include the possibility the Union, in order to secure some other benefits, might trade away some existing benefits. However, in this case the totality of the circumstances surrounding the bargaining-from-scratch statements demonstrated that the risk of loss stems not from the give and take of good-faith bargaining, but from a regressive bargaining posture predetermined by the employer.

Id.

On February 16, Bowers had the following exchange with a JFK8 employee:

> **Bowers:** So, with a union, terms and conditions of employment must be negotiated before changes can be made and they must be negotiated in good faith. Now good faith means that neither party can come to the table and say, "I want this or it's nothing." Both parties have to compromise, both parties have to give and take and… until changes can be made. So, the negotiations process is called collective bargaining and, in negotiations, there are no guarantees. Nobody can predict these results from the good faith bargaining process. And you can end up with better, the same, or worse than you currently have. There are no guarantees as to what the outcome will be.

> **Palmer:** So, wait, you're saying we could end up with worse? What does that mean by that?

> **Bowers:** So, there are no guarantees as to what will happen, right? So, we can't make any promises that things will get better or stay the same. Cause it could get worse. We can't promise what's going to happen. Amazon can't promise you that they're going to walk into negotiations and the negotiations will start from the same. It could start from minimum wage for instance. I'm not saying that that will happen but it is a possibility.

I note first that this is not clearly a case, like those cited by the General Counsel,[21] in which the Respondent unlawfully threatened to reduce employees' wages and require the union to bargain to get them back. Bowers initially noted that "terms and conditions of employment must be negotiated before changes can be made and they must be negotiated in good faith." From that premise (i.e., wages would not be reduced before negotiations occur), although perhaps stated somewhat clumsily, Bowers indicated that the Respondent might start with the bargaining position that employees should receive a pay reduction to the minimum wage (employees currently earn more than the minimum wage).

Bowers did, however, raise the possibility that the Respondent

---

[21] *Taylor-Dunn Mfg. Co.*, 252 NLRB 799, 800 (1980); *Noah's New York Bagels*, 324 NLRB 266, 266–267 (1997); *Noah's Bay Area Bagels, LLC*, 331 NLRB 188, 188 (2000); *Coach and Equipment Sales Corp.*, 228 NLRB 440 (1977).

would take a regressive bargaining posture. Presumably, the Respondent has an economic reason (i.e., hiring and keeping employees) for paying employees their current wages and benefits. The Board has tended to find employer statements lawful when they include at least some indication that wages or benefits might be reduced as a result of "trading" or the give-and-take of negotiations. See e.g., *Sunbelt Mfg., Inc.*, 308 NLRB 780, 791 (1992) aff'd 996 F.2d 305 (5th Cir. 1993); *Lear-Siegler Management Service*, 306 NLRB 393 (1992); *Bi-Lo*, 303 NLRB 749, 750 (1991); *Uarco*, 286 NLRB 55 (1987). Bowers did so in telling employees, "[b]oth parties have to compromise, both parties have to give and take . . . until changes can be made." In *Mediplex of Connecticut, Inc.*, 319 NLRB 281, 281 (1995), the Board stated that employees are "capable of evaluating" such "campaign propaganda" that union representation "might result in less desirable benefits." The comments by Bowers seem to fall within the scope of precedent finding such comments to be lawful. Finally, as noted above, Bowers did not make her comments in a context rife with other unfair labor practices.[22]

Accordingly, I will dismiss the allegation that the Respondent violated Section 8(a)(1) of the Act by threatening employees with the loss of existing wages as a result of collective bargaining. (Complaint ¶ 17(b).)

### Threat of Unlawful Discharge Pursuant to a Union-Security Clause

The General Counsel contends that, on March 15, the Respondent violated Section 8(a)(1) by threatening employees with discharge if they chose to be represented by the Union. (Complaint ¶ 18(A)(a).) More specifically, the General Counsel contends that the Respondent unlawfully threatened employees with discharge pursuant to a union security clause.

On March 15, Warrior told JFK8 employees that a "union shop clause would require Amazon to fire you if you don't want to join the union and pay union dues."

The General Counsel and Respondent both cite *Didlake, Inc.*, 367 NLRB No. 125 (2019). In that case, an employer told employees that, if the union wins, "[f]irst thing they will require you to do is join the union. . . . And if you don't, you will not be able to work here." Id. slip op. at 2. The employer also told employees that, if the union wins, "you have to join as a condition of your employment to be here, and you will be paying the union dues." The Board majority acknowledged that the employer's comments "misstated the law when they characterized union membership and the payment of dues as a 'condition of employment if the [u]nion won the election." Nevertheless, the Board majority found that "the employer's statements to employees respecting their dues obligation are not coercive . . . even if they contain misstatements of law." Id. slip op. at 2, citing *Midland National Life Insurance Co.*, 263 NLRB 127 (1982).

The General Counsel invites me to rely on the dissent in *Didlake* rather than the majority decision. The dissent reasoned that the employer's misstatements of law were objectionable because they "threatened employees that if they chose the [u]nion, the [e]mployer certainly would require them to join the [u]nion and

pay dues or be fired." Id. at 5. While this reasoning might command a majority in the instant case, I must apply current Board law, including majority decisions. Accordingly, I will dismiss the allegation that the Respondent violated Section 8(a)(1) of the Act by threatening employees with unlawful discharge pursuant to a union security clause if they chose to be represented by the Union. (Complaint ¶ 18(A)(a).)

### Threats to Withhold Improved Wage and Benefits while Bargaining Takes Place

The General Counsel contends that on March 15, April 10, and April 18, the Respondent violated Section 8(a)(1) by threatening to withhold improvements in wage and benefits from employees if they chose to be represented by the Union. (Complaint ¶¶ 18(A)(b), 18(B), 19(b)) More specifically, the General Counsel contends that the Respondent told employees their terms of employment would be frozen and not improve while lengthy bargaining takes place.

The Board has found that an employer violates Section 8(a)(1) by advising employees that their wages would be frozen or put on hold during negotiations and that they would not share in traditional wage increases which may be received by nonunion employees. *DHL Express, Inc.*, 355 NLRB 1399, 1399–1400 (2010); *California Gas Transport, Inc.*, 347 NLRB 1314, 1314, 1349 (2006); *Jensen Enterprises*, 339 NLRB 877, 877–878 (2003); *Teksid Aluminum Foundry, Inc.*, 311 NLRB 711, 717 (1993). In *DHL Express*, the Board distinguished certain cases—*Mantrose-Haeuser Co.*, 306 NLRB 377 (1992) and *Uarco*, 286 NLRB 55 (1987)[23]—in which the employer lawfully referenced a potential freeze in employees' terms of employment while contemporaneously assuring them that the status quo would require that union represented employees share in wage increases of a type they previously enjoyed.

The Respondent has a practice of granting regular wage increases based upon time of service. On April 18, Lev told LDJ5 employees, "[t]he average time to reach an agreement is 409 days. A year goes buy and other guys have received increases and improvements." Threats that the pay of unionized employees would be frozen in place during lengthy negotiations while nonunion employees receive regular increases and improvements is a violation of Section 8(a)(1). *DHL Express, Inc.*, 355 NLRB 1399, 1399–1400 (2010); *California Gas Transport, Inc.*, 347 NLRB 1314, 1314, 1349 (2006); *Superior Emerald Park Landfill, LLC*, 340 NLRB 449, 261 (2003); *Jensen Enterprises*, 339 NLRB 877, 877–878 (2003); *Teksid Aluminum Foundry, Inc.*, 311 NLRB 711, 717 (1993).

Conversely, I do not find Smith's April 10 comments to LDJ5 unlawful. Smith told employees that federal law imposes no time limit on collective bargaining or guarantee that union represented employees would obtain a contract in 6 months or year. Smith also explained the law as it pertains to the "status quo" as follows:

> Okay, so once the union files a petition, and she's correct, once the union files a petition, okay, everything must remain the

---

[22] In so finding, I note that the statements I have found to be unlawful were not made by Bowers on February 16.

[23] Both cases are relied upon by the Respondent.

same. I can't give you anything and I can't take anything away. This law was written in 1935. Logic behind it was if you guys have a union election coming up and I give you things, I might be bribing you into voting no or if I take things away from you, I might be punishing you for bringing in a union, right? Neither of those things are legal. So you stay at status quo. The problem comes in with status quo, a lot of employees feel, is that when they vote a union in and they expect changes to happen right away, status quo says nothing can change until and if you reach an agreement, and I use the word "if" because actually there is nothing in federal law that guarantees you a contract at the end of the process.

Although Smith did not expressly tell employees they would continue to receive regular wage increases, she did assure them that they would not be punished for unionizing. In my opinion, Smith's comments fall within the scope of statements the Board has found to be lawful. See *Mantrose-Haeuser Co.*, 306 NLRB 377 (1992); *Uarco*, 286 NLRB 55 (1987).

Warrior's March 15 comments to JFK8 employees fall between those of Lev and Smith. Warrior told employees that "contracts typically take months or years and typically there are no changes in wages or benefits, and what happens if the parties can't agree to a contract?" Warrior did not expressly state that union represented employees would not share in improvements of unrepresented employees, but impliedly raised the prospect without offering any contemporaneous reassurance to the contrary. Thus, Warrior's comments come within the scope of cases the Board finds unlawful. *DHL Express, Inc.*, 355 NLRB 1399, 1399–1400 (2010); *California Gas Transport, Inc.*, 347 NLRB 1314, 1314, 1349 (2006); *Jensen Enterprises*, 339 NLRB 877, 877–878 (2003); *Teksid Aluminum Foundry, Inc.*, 311 NLRB 711, 717 (1993).

Based upon the foregoing, I find that the Respondent, by Warrior and Lev, on March 15 and April 18, respectively, violated Section 8(a)(1) of the Act by threatening to withhold improvements in employees' wages and benefits during negotiations. (Complaint ¶¶ 18(A)(b), 19(b)) I will dismiss the allegation that the Respondent, by Smith on April 10, did the same. (Complaint ¶ 18(B).)

## Conclusions of Law

1. The Respondent, Amazon.Com Services LLC, is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

2. The Union, Amazon Labor Union, is a labor organization within the meaning of Section 2(5) of the Act.

3. The Respondent violated Section 8(a)(1) of the Act by

discriminatorily enforcing its solicitation policy along Section 7 lines.

4. The Respondent violated Section 8(a)(1) of the Act by threatening to withhold employee improvements in wages and benefits while collective bargaining takes place.

5. The unfair labor practices committed by the Respondent affect commerce within the meaning of Section 2(6) and (7) of the Act.

6. The remainder of the complaint allegations are dismissed.

## The Remedy

Having found that the Respondent, Amazon.com Services LLC, engaged in unfair labor practices, I shall order the Respondent to cease and desist therefrom and to take certain affirmative action designed to effectuate the policies of the Act.

The Respondent will be ordered to post, in English and Spanish, at its Staten Island JFK8 and LDJ5 facilities, the notice attached hereto as "Appendix."

As a remedy to the unlawful disparate enforcement of the Respondent's solicitation policy, the General Counsel argues that *AT&T Mobility*, 370 NLRB No. 121 (2021), be overruled and the solicitation policy be rescinded. However, I am not at liberty to overrule Board precedent.

The General Counsel has requested certain atypical remedies, including a notice reading and supervisor training by a Board agent. I deny these requests. I have not found many unfair labor practices and the ones I did find were not entirely obvious or clear cut. Accordingly, I find that the Board's traditional remedies are sufficient to effectuate the policies of the Act in this matter.

On these findings of fact and conclusions of law, and on the entire record, I issue the following recommended order[24]

## ORDER

The Respondent, Amazon.Com Services LLC, Staten Island, New York, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a) Discriminatorily enforcing its solicitation policy along Section 7 lines.

(b) Threatening to withhold employee improvements in wages and benefits while collective bargaining takes place.

(c) In any like or related manner interfering, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Within 14 days after service by the Region, post in English and Spanish at its JFK8 and LDJ5 facilities in Staten Island, New York, copies of the attached notice marked "Appendix."[25]

---

[24] If no exceptions are filed as provided by Section 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommended Order shall, as provided in Section 102.48 of the Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes.

[25] If the facilities involved in these proceedings are open and staffed by a substantial complement of employees, the notices must be posted within 14 days after service by the Region. If the facilities involved in these proceedings are closed or not staffed by a substantial complement

of employees due to the Coronavirus Disease 2019 (COVID-19) pandemic, the notices must be posted within 14 days after the facilities reopen and a substantial complement of employees have returned to work. If, while closed or not staffed by a substantial complement of employees due to the pandemic, the Respondent is communicating with its employees by electronic means, the notice must also be posted by such electronic means within 14 days after service by the Region. If the notice to be physically posted was posted electronically more than 60 days before physical posting of the notice, the notice shall state at the bottom that

Copies of the notice, on forms provided by the Regional Director for Region 29, after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material. In the event that, during the pendency of these proceedings, the Respondent has gone out of business or closed one or both of the facilities involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, copies of the notice to all current employees and former employees employed by the Respondent at any time since July 12, 2021.



(b) Within 21 days after service by the Region, file with the Regional Director for Region 29 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

Dated, Washington, D.C., January 30, 2023.

APPENDIX

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union
Choose representatives to bargain with us on your behalf
Act together with other employees for your benefit and protection
Choose not to engage in any of these protected activities.

WE WILL NOT discriminatorily enforce our solicitation policy by removing messages posted on the Voice of Associates Board which are protected under Section 7 of the National Labor Relations Act.

WE WILL NOT threaten to withhold employee improvements in wages and benefits while collective bargaining takes place.

AMAZON.COM SERVICES LLC

The Administrative Law Judge's decision can be found at www.nlrb.gov/case/29-CA-280153 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273-1940.

---

"This notice is the same notice previously [sent or posted] electronically on [date]." If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."