# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### AMAZON.COM SERVICES,LLC

**Petitioner/Cross-Respondent**

**v.**

### NATIONAL LABOR RELATIONS BOARD

**Respondent/Cross-Petitioner**

**and**

### AMAZON LABOR UNION NO. 1, INTERNATIONAL BROTHERHOOD OF TEAMSTERS

**Intervenor**

_____

## ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

_____

## BRIEF FOR THE NATIONAL LABOR RELATIONS BOARD

_____

**KIRA DELLINGER VOL**
*Supervisory Attorney*

**MICAH P.S. JOST**
*Attorney*

**JOEL A. HELLER**
*Attorney*

**National Labor Relations Board**
**WILLIAM B. COWEN**          1015 Half Street, SE
    *Acting General Counsel*          **Washington, DC 20570**
**STEPHANIE CAHN**          (202) 273-0656
    *Acting Deputy General Counsel*          (202) 273-0264
**PETER SUNG OHR**          (202) 273-1042
    *Associate General Counsel*
**RUTH E. BURDICK**
    *Deputy Associate General Counsel*
**MEREDITH JASON**
    *Assistant General Counsel*

**National Labor Relations Board**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————————————————

| | |
|---|---|
| AMAZON.COM SERVICES, LLC ) | |
| ) | No. 24-13819 |
| Petitioner/Cross-Respondent ) | |
| ) | |
| v. ) | Board Case Nos. 29-CA-280153, |
| ) | 29-CA-286577, 29-CA-287614, |
| NATIONAL LABOR RELATIONS BOARD ) | 29-CA-290880, 29-CA-292392 |
| ) | and 29-CA-295663 |
| Respondent/Cross-Petitioner ) | |
| ) | |

———————————————————————

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rule 26.1-1, the National Labor Relations

Board (NLRB), by its Deputy Associate General Counsel, certifies that the

persons and entities listed below have an interest in the outcome of this case:

1. Amazon.com, Inc. (NASDAQ: AMZN)

2. Amazon.com Sales, Inc.

3. Amazon.com Services LLC

4. Amazon Labor Union – Charging Party

5. Burdick, Ruth E. – Counsel for the NLRB

6. Cabrera, Emily – Regional Attorney, Region 29, NLRB

7. Cahn, Stephanie – Acting Deputy General Counsel, NLRB

8. Cowen, William B. – Acting General Counsel, NLRB

9.      Elliker, Kevin of HAK – Counsel for Amazon

10.      Enjamio, Juan C. of HAK – Counsel for Amazon

11.      Green, Benjamin – Administrative Law Judge

12.      Goldstein, Seth Lewis – Counsel for Charging Parties

13.      Heller, Joel – Counsel for the NLRB

14.      Hunton Andrews Kurth LLP ("HAK") – Counsel for Amazon

15.      Jason, Meredith – Assistant General Counsel, NLRB

16.      Jost, Micah – Counsel for the NLRB

17.      Julien Mirer & Singla, PLLC – Counsel for Charging Parties

18.      Kaplan, Marvin E. – Board Member, NLRB

19.      Larkin, Kurt of HAK – Counsel for Amazon

20.      Law Office of Seth Goldstein – Counsel for Charging Parties

21.      Lin, Elbert of HAK – Counsel for Amazon

22.      McFerran, Lauren M. – Chairman, NLRB

23.      Miller, Dana Joanne – Charging Party

24.      Mirer, Jeanne – Counsel for Charging Parties

25.      National Labor Relations Board (NLRB) – Respondent/Cross-Petitioner

26.      Ohr, Peter Sung – Associate General Counsel, NLRB

27.      Poor, Teresa – Regional Director, NLRB Region 29

28.      Prouty, David M. – Board Member, NLRB

29.      Region 29 of the NLRB

30. Rogers, Amber of HAK – Counsel for Amazon

31. Singla, Retu – Counsel for Charging Parties

32. Spence, Connor – Charging Party

33. Tooker, Lynda – Regional Attorney, Region 29, NLRB

34. Vol, Kira Dellinger – Counsel for the NLRB

35. Wilcox, Gwynne A. – Board Member, NLRB

/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, SE
Washington, DC 20570-0001
(202) 273-2960

Dated at Washington, DC
this 29th day of September 2025

**STATEMENT REGARDING ORAL ARGUMENT**

The National Labor Relations Board submits that oral argument is unnecessary as to the unfair-labor-practice findings that the Court has jurisdiction to review, which involve the Board's application of established, uncontested legal principles to factual findings that are well supported by the record evidence. The Board, however, believes that oral argument may assist the Court in understanding why the Board's captive-audience-meeting rule is not properly before the Court, and why Amazon's challenges to that rule are meritless in any event.

# TABLE OF CONTENTS

**Headings**                                                              **Page(s)**

Jurisdictional statement ................................................................................1

Statement of issues ......................................................................................1

Statement of the case ...................................................................................2

  I.  The Board's findings of fact ..................................................................2

      A.  Amazon takes down Dana Miller's pro-union VOA post and
          threatens "additional follow up" ...............................................3

      B.  Amazon encourages employees to escalate their concerns until they
          get resolution ...........................................................................5

      C.  Amazon threatens to withhold wage and benefit improvements ..............7

  II.  Procedural history ..............................................................................7

 III.  The Board's conclusions and Order ....................................................7

Summary of argument ...................................................................................9

Standard of review .....................................................................................11

Argument...................................................................................................12

  I.  The Board is entitled to summary enforcement as to Amazon's
     uncontested violation ......................................................................13

  II.  Substantial evidence supports the Board's findings that Amazon violated
     Section 8(a)(1) of the Act ...............................................................13

      A.  Amazon solicited and impliedly promised to remedy grievances ..........13

# **TABLE OF CONTENTS**

**Headings**                                                                    **Page(s)**

   B.  Amazon disparately enforced its solicitation policy against Miller's
       pro-union VOA post .................................................................17

   C.  Amazon threatened Miller .....................................................23

III. Amazon's challenges to the Board's captive-audience-meeting analysis,
     which the Court lacks jurisdiction to consider, are meritless ......................28

   A.  Captive-audience meetings violate Section 8(a)(1) by coercing
       employes in the exercise of their Section 7 rights ..................................31

   B.  Section 8(c) does not privilege employers to coerce ...........................35

   C.  Employers have no first amendment right to coerce employees in
       relation to unionization ..........................................................45

       1.  The Act regulates economic conduct ................................46

       2.  This Court's *HoneyFund* decision is not to the contrary .................51

       3.  The Board's standard is narrowly tailored to achieve a
           compelling goal...............................................................56

Conclusion .............................................................................59

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*520 S. Michigan Ave. Assocs. v. Unite Here Loc. 1*,
760 F.3d 708 (7th Cir. 2014) ...................................................................56

*800 River Rd. Operating Co. LLC v. NLRB*,
784 F.3d 902 (3d Cir. 2015) ....................................................................37

*Allegheny Ludlum Corp.*,
333 NLRB 734 (2001), *enforced*,
301 F.3d 167 (3d Cir. 2002) ................................................... 32, 34, 42

*Assoc. Rubber Co. v. NLRB*,
296 F.3d 1055 (11th Cir. 2002) .............................................................33

*Babcock & Wilcox*,
77 NLRB 577 (1948) ........................................................... 29, 44, 57

*Belcher Towing Co. v. NLRB*,
726 F.2d 705 (11th Cir. 1984) ...............................................................36

*Beth Israel Hosp. v. NLRB*,
437 U.S. 483 (1978) ...............................................................................30

*Boar's Head Provisions Co.*,
370 NLRB No. 124 (2021) .....................................................................25

*Bonner v. City of Prichard*,
661 F.2d 1206 (11th Cir. 1981) .............................................................11

*Booth v. Pasco Cnty.*,
757 F.3d 1198 (11th Cir. 2014) ................................................ 56, 57, 58

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) ...............................................................................54

*Cadillac of Naperville, Inc. v. NLRB*,
14 F.4th 703 (D.C. Cir. 2021) ...............................................................37

*Cal. Motor Trans. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) ...............................................................................47

**Cases**                                                                  **Page(s)**

*Cayuga Med. Ctr. at Ithaca, Inc.*,
    365 NLRB 1873 (2017), *enforced*,
    748 F. App'x 341 (D.C. Cir. 2018)....................................................23

*Cayuga Med. Ctr. at Ithaca, Inc.*,
    367 NLRB No. 21 (2018) ........................................................20

*Cent. Hardware Co. v. NLRB*,
    407 U.S. 539 (1972)..............................................................32

*Chamber of Com. of U.S. v. Brown*,
    554 U.S. 60 (2008)................................................................44

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
    596 U.S. 61 (2022)................................................................49

*Clark Brothers Co.*,
    70 NLRB 802 (1946), *enforced*,
    163 F.2d 373 (2d Cir. 1947)....................................... 28, 29, 32, 38, 44

*Conair Corp.*,
    261 NLRB 1189 (1982), *enforced in pertinent part*,
    721 F.2d 1355, 1386 (D.C. Cir. 1983)............................................16

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*,
    447 U.S. 530 (1980)..............................................................55

*Con-Way Cent. Exp.*,
    333 NLRB 1073 (2001) ...........................................................21

*Cordua Rests., Inc. v. NLRB*,
    985 F.3d 415 (5th Cir. 2021) ....................................................37

*CWA v. NLRB*,
    6 F.4th 15 (D.C. Cir. 2021) ......................................................19

*Dixon v. Int'l Bhd. of Police Officers*,
    504 F.3d 73 (1st Cir. 2007) ......................................................48

**Cases**                                                          **Page(s)**

*EEOC v. Beverage Canners, Inc.*,
    897 F.2d 1067 (11th Cir. 1990) ............................................54

*Elec. Prods. Div. of Midland-Ross Corp. v. NLRB*,
    617 F.2d 977 (3d Cir. 1980) ...............................................20

*Erznoznik v. City of Jacksonville*,
    422 U.S. 205 (1975) ..........................................................55

*Expressions Hair Design v. Schneiderman*,
    581 U.S. 37 (2017) ............................................................49

*Ga. Power Co. v. NLRB*,
    427 F.3d 1354 (11th Cir. 2005) ..........................................31

*Garten Trucking LC v. NLRB*,
    139 F.4th 269 (4th Cir. 2025)............................................45

*Giboney v. Empire Storage & Ice Co.*,
    336 U.S. 490 (1949)..........................................................47

*Guard Publ'g Co. v. NLRB*,
    571 F.3d 53 (D.C. Cir. 2009)................................. 12, 18, 19

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993)............................................................54

*Hendrix Mfg. Co. v. NLRB*,
    321 F.2d 100 (5th Cir. 1963) .............................................41

*Hill v. Colorado*,
    530 U.S. 703 (2000)................................................... 34, 55

*HoneyFund.com Inc. v. Gov. of Fla.*,
    94 F.4th 1272 (11th Cir. 2024)...................... 51, 52, 53, 54, 55

*Hudson Inst. of Process Rsch. Inc. v. NLRB*,
    117 F.4th 692 (5th Cir. 2024) ............................................31

**Cases**                                                                      **Page(s)**

*IBEW, Loc. 501 v. NLRB,*
    341 U.S. 694 (1951) ........................................................ 36, 42, 50

*Insight Commc'ns Co.,*
    330 NLRB 431 (2000) ...................................................................16

*Kovacs v. Cooper,*
    336 U.S. 77 (1949) ..........................................................................55

*Lehman v. Shaker Heights,*
    418 U.S. 298 (1974) ........................................................................56

*Linn v. United Plant Guard Workers, Loc. 114,*
    383 U.S. 53 (1966) ..........................................................................43

*Loper Bright Enterprises v. Raimondo,*
    603 U.S. 369 (2024) ........................................................................31

*Lush Cosmetics, LLC,*
    372 NLRB No. 54 (2023) ............................................. 24, 25, 26, 27

*Mandalay Bay Resort & Casino,*
    355 NLRB 529 (2010) ...................................................................14

*Manor Care of Easton,*
    356 NLRB 202 (2010), *enforced,*
    661 F.3d 1139 (D.C. Cir. 2011) ................................................ 14, 17

*Mead Corp. v. NLRB,*
    697 F.2d 1013 (11th Cir. 1983) ...................................... 12, 24, 27, 41

*Mek Arden, LLC,*
    365 NLRB 1065 (2017), *enforced,*
    755 F. App'x 12, 17 (D.C. Cir. 2018) ....................................... 13, 14

*NLRB v. A-1 King Size Sandwiches, Inc.,*
    732 F.2d 872 (11th Cir. 1984) ......................................................40

**Cases**                                                          **Page(s)**

*NLRB v. Allied Med. Transp., Inc.*,
   805 F.3d 1000 (11th Cir. 2015) ............................................................11

*NLRB v. Austal USA, LLC*,
   343 F. App'x 448 (11th Cir. 2009) ......................................................24

*NLRB v. Birdsall Const. Co.*,
   487 F.2d 288 (5th Cir. 1973) ...............................................................42

*NLRB v. Contemp. Cars, Inc.*,
   667 F.3d 1364 (11th Cir. 2012) ............................................................11

*NLRB v. Curtin Matheson Sci., Inc.*,
   494 U.S. 775 (1990)............................................................... 30, 31

*NLRB v. Denver Bldg. & Const. Trades Council*,
   341 U.S. 675 (1951).............................................................................43

*NLRB v. Erie Resistor Corp.*,
   373 U.S. 221 (1963).............................................................................31

*NLRB v. Exch. Parts Co.*,
   375 U.S. 405 (1964).............................................................................50

*NLRB v. Gate City Cotton Mills*,
   167 F.2d 647 (5th Cir. 1948) ...............................................................36

*NLRB v. Gaylord Chem. Co.*,
   824 F.3d 1318 (11th Cir. 2016) ............................................................41

*NLRB v. Gissel Packing Co.*,
   395 U.S. 575 (1969)...................................... 11, 12, 35, 36, 38, 48, 50, 52, 53, 57

*NLRB v. Glades Health Care Ctr.*,
   257 F.3d 1317 (11th Cir. 2001) ............................................................29

*NLRB v. Henriksen, Inc.*,
   481 F.2d 1156 (5th Cir. 1973) .............................................................11

**Cases**                                                                    **Page(s)**

*NLRB v. Ironworkers, Loc. 229*,
    941 F.3d 902 (9th Cir. 2019), *cert. denied*,
    141 S. Ct. 2671 (2021) ..........................................................................50

*NLRB v. Ironworkers, Loc. 433*,
    891 F.3d 1182 (9th Cir. 2018) ...............................................................48

*NLRB v. J. Weingarten, Inc.*,
    420 U.S. 251 (1975) ...............................................................................39

*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937) .......................................................................... 48, 57

*NLRB v. Laredo Coca Cola Bottling Co.*,
    613 F.2d 1338 (5th Cir. 1980) ....................................................... 33, 35

*NLRB v. Mangurian's, Inc.*,
    566 F.2d 463 (5th Cir. 1978) .................................................................41

*NLRB v. McClain of Ga., Inc.*,
    138 F.3d 1418 (11th Cir. 1998) ................................................11, 12, 13

*NLRB v. Pope Maint. Corp.*,
    573 F.2d 898 (5th Cir. 1978) .................................................................13

*NLRB v. Red Top Cab & Baggage Co.*,
    383 F.2d 547 (5th Cir. 1967) .................................................................38

*NLRB v. Riley-Beaird, Inc.*,
    681 F.2d 1083 (5th Cir. 1982) ...............................................................36

*NLRB v. Southwire Co.*,
    801 F.2d 1252 (11th Cir. 1986) .............................................................18

*NLRB v. Va. Elec. & Power Co.*,
    314 U.S. 469 (1941) ...............................................................11, 40, 47

*Norwegian Cruise Line Holdings Ltd. v. State Surgeon Gen., Fla. Dep't of Health*,
    50 F.4th 1126 (11th Cir. 2022) .............................................................46

**Cases**                                                                 **Page(s)**

*Ohralik v. Ohio State Bar Ass'n*,
    436 U.S. 447 (1978) ................................................................ 48, 49

*Otto v. City of Boca Raton, Fla.*,
    981 F.3d 854 (11th Cir. 2020) ...............................................49

*Pac. Molasses Co. v. NLRB Reg'l Off. No. 15*,
    577 F.2d 1172 (5th Cir. 1978) .......................................... 33, 55

*Piggly Wiggly, Tuscaloosa Div. v. NLRB*,
    705 F.2d 1537 (11th Cir. 1983) ..............................................25

*Publix Super Mkts., Inc.*,
    347 NLRB 1434 (2006) ...........................................................27

*Purolator Armored, Inc. v. NLRB*,
    764 F.2d 1423 (11th Cir. 1985) ..............................................13

*Reeves v. C.H. Robinson Worldwide, Inc.*,
    594 F.3d 798 (11th Cir. 2010) ................................................54

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ............................................................ 49, 50

*Register Guard*,
    351 NLRB 1110 (2007), *enforced in relevant part*,
    571 F.3d 53 (D.C. Cir. 2009) ........................................ 17, 18, 19, 24

*Republic Aviation Corp. v. NLRB*,
    324 U.S. 793 (1945)............................................................. 31, 49

*Ridgewood Health Care Ctr., Inc. v. NLRB*,
    8 F.4th 1263 (11th Cir. 2021) ........................................... 28, 41

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984)................................................................57

*Rockwell Int'l Corp. v. NLRB*,
    814 F.2d 1530 (11th Cir. 1987) ..............................................26

**Cases**                                                                **Page(s)**

*Roxanna of Texas, Inc.*,
   98 NLRB 1151 (1952) ........................................................................33

*S. Bakeries, LLC v. NLRB*,
   871 F.3d 811 (8th Cir. 2017) .............................................................26

*Saxe v. State Coll. Area Sch. Dist.*,
   240 F.3d 200 (3d Cir. 2001) ....................................................... 48, 56

*Sec. Walls, LLC v. NLRB*,
   80 F.4th 1277 (11th Cir. 2023) ..........................................................32

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) .................................................................... 46, 49

*Southwire Co. v. NLRB*,
   820 F.2d 453 (D.C. Cir. 1987)...........................................................41

*St. Margaret Mercy Healthcare Ctrs. v. NLRB*,
   519 F.3d 373 (7th Cir. 2008) .............................................................19

*Stride Rite Corp.*,
   228 NLRB 224 (1977) .......................................................................16

*Sturgis Newport Bus. Forms, Inc. v. NLRB*,
   563 F.2d 1252 (5th Cir. 1977) .................................................... 36, 43

*Sysco Food Servs. of Cleveland, Inc.*,
   347 NLRB 1024 (2006) .....................................................................21

*Thomas v. Collins*,
   323 U.S. 516 (1945)...........................................................................45

*Traction Wholesale Ctr. Co. v. NLRB*,
   216 F.3d 92 (D.C. Cir. 2000)...................................................... 14, 17

*Transit Connection, Inc. v. NLRB*,
   887 F.3d 1097 (11th Cir. 2018) .........................................................11

**Cases**                                                                     **Page(s)**

*TRW-United Greenfield Div. v. NLRB*,
637 F.2d 410 (5th Cir. 1981) .......................................................41

*Uniflite, Inc.*,
233 NLRB 1108 (1977) ...............................................................22

*United States v. Hansen*,
599 U.S. 762 (2023)......................................................................47

*United States v. Pugh*,
90 F.4th 1318 (11th Cir. 2024), *cert. denied,*
145 S. Ct. 236 (2024) ...................................................................53

*Universal Camera Corp. v. NLRB*,
340 U.S. 474 (1951)......................................................................11

*Va. Elec. & Power Co. v. NLRB*,
319 U.S. 533 (1943) ............................................................... 40, 49

*Valley Hosp. Med. Ctr., Inc.*,
371 NLRB No. 160 (2022), *enforced,*
100 F.4th 994 (9th Cir. 2024), *cert. denied,*
145 S. Ct. 1425 (2025) .................................................................57

*Veritas Health Servs., Inc. v. NLRB*,
671 F.3d 1267 (D.C. Cir. 2012)....................................................33

*Wacko's Too, Inc. v. City of Jacksonville*,
134 F.4th 1178 (11th Cir. 2025) ...................................................50

*Wal-Mart Stores, Inc.*,
350 NLRB 879 (2007) ..................................................................22

*Williams-Yulee v. Fla. Bar*,
575 U.S. 433 (2015)......................................................................56

**Cases**                                                                                     **Page(s)**

*Wisconsin v. Mitchell*,
   508 U.S. 476 (1993) .......................................................................54

*Wollschlaeger v. Governor of Fla.*,
   848 F.3d 1293 (11th Cir. 2017) .................................................. 51, 58

*Wright Elec., Inc. v. NLRB*,
   200 F.3d 1162 (8th Cir. 2000) .......................................................55

*Wynn Las Vegas, LLC*
   369 NLRB No. 91(2020) ...............................................................26


**Statutes**                                                                                  **Page(s)**

National Labor Relations Act, as amended
  (29 U.S.C. § 151 et seq.)

29 U.S.C. § 151 .................................................................................46
29 U.S.C. § 157 ................................ 12, 17, 23, 29-35, 37-39, 42, 45, 47, 52-54, 57
29 U.S.C. § 158(a) .................................................................. 36, 46, 53
29 U.S.C. § 158(a)(1)....... 1, 7-9, 12-13, 23, 29-32, 34-38, 40, 42, 47-50, 52, 54, 57
29 U.S.C. § 158(b) .............................................................................47
29 U.S.C. § 158(c) ........................................... 10, 12, 17, 28-30, 35-38, 40, 42-45
29 U.S.C. § 160(a) ...............................................................................1
29 U.S.C. § 160(e) .....................................................................1, 11, 28
29 U.S.C. § 160(f).......................................................................... 1, 28


**Other Authorities**                                                                         **Page(s)**

1 Smolla & Nimmer on Freedom of Speech § 13:14 ............................55
93 Cong. Rec. 7002.............................................................................43
H.R. Rep. No. 80-510 .........................................................................43
S. Rep. No. 80-105.............................................................................44

## JURISDICTIONAL STATEMENT

Amazon.com Services LLC petitions to review, and the National Labor Relations Board cross-applies to enforce, a Board Order against Amazon. 373 NLRB No. 136 (Nov. 13, 2024). Amazon Labor Union No. 1, International Brotherhood of Teamsters intervened.

The Board had jurisdiction over the unfair-labor-practice proceeding under Section 10(a) of the National Labor Relations Act. 29 U.S.C. § 160(a). The Court has jurisdiction to enforce, modify, or set aside the Board's Order under Section 10(e) and (f) of the Act. The application and petition are timely, as the Act provides no time limit for them. As explained in the Board's pending motion to strike (ECF.50) and reply (ECF.61), the Court lacks jurisdiction to review the Board's analysis of captive-audience meetings, which relates to no contested provision in the Board's Order. *Id.*

## STATEMENT OF ISSUES

1.      Whether the Board is entitled to summary enforcement of the portion of its Order remedying Amazon's uncontested violation of Section 8(a)(1) of the Act by threatening to withhold improvements in wages and benefits if employees chose union representation.

2.      Whether substantial evidence supports the Board's findings that Amazon violated Section 8(a)(1) by soliciting grievances and impliedly promising

to remedy them; disparately enforcing its solicitation policy against statutorily protected pro-union activity; and threatening an employee with discipline for engaging in protected activity.

3.     Whether Amazon's arguments concerning the Board's captive-audience analysis, which the Court lacks jurisdiction to consider, are otherwise meritless.

## STATEMENT OF THE CASE

## I.     The Board's Findings of Fact

In April 2021, Amazon employees founded the Amazon Labor Union and started organizing at JFK8 and LDJ5, two Amazon warehouses in Staten Island, New York. The union-campaign headquarters was a tent outside JFK8. (AR.1444; AR.59-61.) The Union petitioned for elections to represent JFK8 and LDJ5 employees, which the Board scheduled for March and April 2022. (AR.1444 n.7; AR.724-28, 734-38.)

In response, Amazon rolled out a comprehensive antiunion campaign. Between November 2021 and April 2022, it required employees to attend numerous antiunion meetings. (AR.1444; AR.71, 78, 114, 339, 385-89.) Those meetings, Amazon stipulated, were mandatory. (AR.1444, 1489; AR.339.)

In addition, Amazon saturated the workplace with antiunion messages on breakroom-table-top displays, bathroom-stall posters, and large "Voice of Associates" ("VOA") displays. (AR.1444; AR.71-73, 119-24, 368.) VOA is a digital message board where employees can post messages, and management and co-workers can respond. Employees can view VOA on screens throughout the facility and on an internal app. (AR.1486; AR.81-82.) Amazon also allowed employees to post pro-union and antiunion VOA messages. (AR.1444; AR.82-84, 128-29, 655-56.)

## A. Amazon Removes Dana Miller's Pro-Union VOA Post and Threatens "Additional Follow Up"

On July 9, 2021, employee Dana Miller posted a VOA message inviting employees to come to the union tent to sign a petition urging Amazon to make Juneteenth a paid holiday. The post read:

> 6/21/21: ALU AA's spoke to G.M. about holiday pay for Juneteenth. Dismissed, ALU put together a petition and is gathering signatures, over 50+ now! 7/8/21: Presented again, [JFK8 General Manager] Felipe confirmed that he wouldn't use any energy/effort to make positive change for workers! So you're invited to come sign the petition for well-deserved holiday pay at the ALU tent, speak up for yourself & help make history.

(AR.1444; AR.134-36, 636.)

Employee-relations manager Stephanie Sciurba recommended to other managers that Amazon remove Miller's post. One replied that she was "shocked that Stephanie is suggesting to remove a VOA comment" but was "aligned 100%,"

because the post was "antagonizing and trying to rally a group of people," and Amazon "should not stand for that." (AR.1444; AR.454, 1195-96.) Another agreed: "it's definitely not appropriate for VOA and probably violates the solicitation policy." (AR.1444; AR.1196.) Amazon removed Miller's post. (AR.1445; AR.418.)

On July 12, Amazon summoned Miller to a meeting with human-resources partner Mike Tanelli in the general manager's office. Tanelli told Miller that her post was "against the policy" concerning solicitation and was "something that we cannot have on the board." He said Miller was not in trouble, but that her post would be removed. (AR.1444-45; AR.136-41, 342-43, 1199 at 3:38-4:02.) When Miller said she would repost it, Tanelli responded:

> [T]his is not a conversation for you to be reprimanded. Right? This is me to educate you on the solicitation policy. You cannot put that on the board, unfortunately. And there will be additional follow up if a comment like that goes back up again.

(AR.1445; AR.1199 at 5:20-5:37.)

Miller reposted her VOA message later that day. Amazon took it down again. When she tried at the end of her shift, she was denied system access. She posted the message the next morning, but it was removed again. (AR.1445; AR.141-43, 170-74, 421, 437, 663.)

Amazon has never removed any other VOA post. (AR.1445; AR.428-29, 1196, 1218-19.) In March 2022, an employee who opposed unionization posted on

4

VOA that he had "VOTE NO" t-shirts and invited coworkers to "please come get one" from the breakroom and "represent YOUR VOICE." (AR.1445; AR.658.) Amazon did not remove that post. (AR.1445; AR.130-31.)

Amazon's solicitation policy prohibits "soliciting for financial contributions, memberships, subscriptions, and signatures on petitions." (AR.1444; AR.1254.) As "examples of solicitation that are prohibited," Amazon lists "[s]olicitation for … signatures on petitions" and "[d]istribution of literature or materials of any kind." (AR.1444; AR.711.)

### B. Amazon Encourages Employees To Escalate Their Concerns Until They Get Resolution

At two antiunion meetings in November 2021, Amazon representatives Michael Williams and Mike Rebell urged employees to raise workplace concerns to Amazon and to escalate until the concerns were resolved. (AR.1447-48; AR.10, 231-32.) Before the union campaign, Amazon had never held similar meetings encouraging employee feedback. (AR.1449; AR.218, 248, 311.)

At the first meeting, Williams discussed existing avenues for raising concerns. (AR.1447; AR.305-09, 587.) He said, "[w]e can't make improvements if we don't know what you're thinking, if we don't know your concerns." (AR.1447; AR.587 at 4:22-4:29.)

Williams urged employees to take their concerns up the chain of command if they were not satisfied. He said Amazon's open-door policy "gives you direct

access not just to your [Area Manager], but also to your [District Manager]."

(AR.1448; AR.587 at 2:15-2:42.) He continued:

> [I]f you have an issue and someone in HR is not resolving your issue, don't
> settle for that. Take it to the next level. Go see a [Vice President]. If that
> [Vice President] is not resolving your issue, go see the [Human Resources
> Manager], and so on and so forth.

(AR.1448; AR.587 at 2:15-3:42.) Later in the presentation, Williams said:

> [I]f you put something on the VOA board because your [Area Manager] or
> your [Operations Manager] has not responded, before you put it up there, the
> first thing I would do is say, "Hey, I need to see the [General Manager] or I
> need to see Senior [Operations]…. Yeah, you can put it on the VOA board,
> but some people don't like using the VOA board…. So escalate. That's the
> truth. Escalate. There's nothing wrong with that. You have a voice, we
> want you to use that voice.

(AR.1448; AR.587 at 4:50-5:25.)

At the second meeting, Rebell similarly urged employees to escalate

complaints:

> [I]f you are going to your [Area Manager] or maybe on the floor HR, if they
> are not able to answer your questions and get it resolved, escalate that up, go
> to the next level. Maybe it's the [Operations] Manager, maybe it's an HR
> Manager. But currently you have that direct working relationship all the
> way up to the [General Manager] and honestly even above and outside of the
> building if you choose to do that.
>
> ….
>
> [I]f you feel that you are not getting the response that you want or feel that
> you deserve, you can also escalate that if you are not getting that response
> you can go request a meeting with … depending on what it is, … maybe it's
> … the safety manager … [or] maybe it's requesting a meeting with the
> AGM, Assistant General Manager or maybe an [Operations] Manager. But
> if you are not getting that response you want currently you have that direct

working relationship … all the way to the [General Manager], get the
answer, continue to escalate that so you can get the answer.

(AR.1448; AR.589 at 4:43-5:11, 8:37-9:19.)

### C.   Amazon Threatens To Withhold Wage and Benefit Improvements

At a March 2022 antiunion meeting, an Amazon representative told JFK8
employees that if they unionized, Amazon would freeze wages and benefits during
negotiations, which could take years—or never result in an agreement.  (AR.1493;
AR.241-42, 593 at 3:45-3:58, 5:05-5:17, 9:22-9:40.)  In April, another
representative conveyed the same message to LDJ5 employees.  (AR.1493;
AR.293-94, 597 at 27:20-30:22.)

## II.   Procedural History

Acting on charges filed by the Union (AR.458-525), the Board's General
Counsel issued a consolidated complaint against Amazon alleging several unfair
labor practices (AR.526-70).  Following a hearing, an administrative law judge
issued a recommended decision and order against Amazon, finding several Section
8(a)(1) violations and dismissing other allegations.  (AR.1485-1503.)  The General
Counsel and Amazon filed exceptions.

## III.   The Board's Conclusions and Order

The Board (Chairman McFerran and Members Prouty and Wilcox; Member
Kaplan, dissenting in part) found, in agreement with the judge, that Amazon
violated Section 8(a)(1) by threatening to withhold improved wages and benefits

7

and discriminatorily applying its solicitation policy to Miller's post.  (AR.1443 nn.3-4.)  Reversing the judge, the Board found that Amazon also violated Section 8(a)(1) by threatening Miller with discipline and soliciting and implicitly promising to remedy grievances.  (AR.1445-50, 1466.)

The Board's Order requires Amazon to cease and desist from the violations found and from violating the Act in any like or related manner.  It also requires Amazon to post a remedial notice.  (AR.1467.)  In the Order, the Board severed and retained for further consideration allegations that Amazon unlawfully promised certain improvements.  (AR.1443 n.5, 1467.)  The Board otherwise dismissed the complaint, including allegations that Amazon violated the Act by holding captive-audience meetings—that is, by compelling employees to attend meetings where it expressed its views concerning unionization.  (AR.1443, 1467.)

In its decision, the Board also announced that, in future cases, it will find a Section 8(a)(1) violation if an employer holds captive-audience meetings. (AR.1461-62.)  The Board emphasized that while captive-audience meetings are unlawful, noncoercive employer speech is protected by Section 8(c) of the Act and the First Amendment and outlined steps employers may take to eliminate coercion and hold voluntary meetings concerning unionization.  (AR.1461-62.)

## SUMMARY OF ARGUMENT

The Act gives employees the right to decide for themselves whether to be represented by a union, free of employer interference or coercion. The Board found that Amazon violated that right repeatedly during its antiunion campaign.

1.     The Board is entitled to summary enforcement of the uncontested portions of its Order, which remedy Amazon's threats to withhold wage and benefit improvements in violation of Section 8(a)(1).

2.     Substantial evidence supports the Board's findings that Amazon violated Section 8(a)(1) in three additional ways. As to each violation, Amazon accepts the legal rules the Board applied and disagrees only with the Board's factual findings. Those findings are reasonable and well supported by the record, and Amazon provides no basis for overturning them under the applicable standard of review.

First, Amazon discouraged unionization by soliciting and impliedly promising to remedy employees' grievances when, during antiunion meetings, it repeatedly exhorted them to escalate their complaints internally until they got a resolution. Amazon fails to show it had ever solicited grievances in that way before the union campaign began. Employees reasonably would have understood Amazon to be promising it would fix their problems without a union.

Second, Amazon discriminatorily applied its solicitation policy against Dana Miller's VOA post inviting employees to sign a union petition. Amazon had never taken down a VOA post before. And it did not take down an antiunion solicitation posted soon thereafter. Thus, Amazon plainly discriminated between prounion and antiunion posts that violated the same policy. That it allowed other prounion posts that did not violate the policy does not redeem that unlawful discrimination.

Third, Amazon threatened Miller with reprisal by warning her of "additional follow up" if she reposted her message. In context, a reasonable employee would have understood Amazon to be threatening additional consequences—not a duplicate counseling—if she deliberately broke the policy again. Because that threat would tend to coerce employees in the exercise of their statutory rights, it was unlawful.

3.     In an analysis that was not applied to Amazon and that the Court lacks jurisdiction to review, the Board rationally formulated a rule that will prospectively bar employers from compelling employees, on pain of discipline or discharge, to attend meetings where the employer expresses its views concerning unionization. Amazon's challenges to that rule, based on Section 8(c) and the First Amendment, are meritless under settled law.

## STANDARD OF REVIEW

The standard of review in this case is "exceedingly narrow." *NLRB v. Contemp. Cars, Inc.*, 667 F.3d 1364, 1370 (11th Cir. 2012). The Court upholds the Board's factual findings if they are supported by "substantial evidence on the record considered as a whole." *NLRB v. Allied Med. Transp., Inc.*, 805 F.3d 1000, 1005 (11th Cir. 2015) (quoting 29 U.S.C. § 160(e)). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quotation omitted). The Court accepts the Board's "plausible inference[s] from the record evidence," even if it "would have made different findings" *de novo*. *Transit Connection, Inc. v. NLRB*, 887 F.3d 1097, 1102 (11th Cir. 2018) (quotation omitted). Where violations involve speech, the courts must "recognize the Board's competence in the first instance to judge the impact of utterances made in the context of the employer-employee relationship." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 620 (1969) (citing *NLRB v. Va. Elec. & Power Co.*, 314 U.S. 469, 476 (1941)); *accord NLRB v. Henriksen, Inc.*, 481 F.2d 1156, 1161-62 (5th Cir. 1973).[1]

Here, substantial-evidence review governs each of the violations the Board found. *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422-23 (11th Cir. 1998)

---

[1] Decisions of the former Fifth Circuit issued through September 30, 1981, are binding. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

28(solicitation of grievances and promises of benefits); *Guard Publ'g Co. v. NLRB*, 571 F.3d 53, 54-55 (D.C. Cir. 2009) (disparate policy enforcement); *Mead Corp. v. NLRB*, 697 F.2d 1013, 1025-26 (11th Cir. 1983) (threat of reprisal for union activity).

## ARGUMENT

Section 7 of the Act guarantees employees the right to "self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing," and to refrain from such activities. 29 U.S.C. § 157. Section 8(a)(1) makes it unlawful for an employer "to interfere with, restrain, or coerce employees" in the exercise of those rights. 29 U.S.C. § 158(a)(1). "An employer violates [Section] 8(a)(1) when its actions would reasonably tend to coerce employees in the exercise of protected [Section] 7 rights." *McClain*, 138 F.3d at 1421. "In making this determination, the employer's conduct must be considered in light of all of the surrounding facts and circumstances." *Mead*, 697 F.2d at 1025. Under Section 8(c), which "implements the First Amendment," an employer may state "'views, argument, or opinion,' … so long as such expression contains 'no threat of reprisal or force or promise of benefit' in violation of [Section] 8(a)(1)." *Gissel*, 395 U.S. at 617 (quoting 29 U.S.C. § 158(c)).

# I. The Board Is Entitled to Summary Enforcement as to Amazon's Uncontested Violation

In its opening brief, Amazon does not contest the Board's finding (AR.1443 n.3) that Amazon violated Section 8(a)(1) by threatening employees that it would withhold improvements in wages and benefits during bargaining. (Amazon.14 n.2.) The Board is therefore entitled to summary enforcement of the portions of its Order remedying that violation. *Purolator Armored, Inc. v. NLRB*, 764 F.2d 1423, 1427-28 (11th Cir. 1985).

# II. Substantial Evidence Supports the Board's Findings that Amazon Violated Section 8(a)(1) of the Act

Substantial evidence supports the Board's findings that Amazon further violated Section 8(a)(1) with a series of actions that interfered with employees' statutory rights.

## A. Amazon Solicited and Impliedly Promised to Remedy Grievances

An employer violates Section 8(a)(1) by soliciting and impliedly promising to remedy employee grievances during a union campaign. *McClain*, 138 F.3d at 1422; *NLRB v. Pope Maint. Corp.*, 573 F.2d 898, 905 (5th Cir. 1978). When an employer responds to employees' organizing efforts by asking them what is wrong, they understand the employer's implicit promise to make it right—if they reject the union. *Mek Arden, LLC*, 365 NLRB 1065, 1066 (2017), *enforced*, 755 F. App'x 12 (D.C. Cir. 2018). That message coercively "suggests that union representation is

unnecessary." *Traction Wholesale Ctr. Co. v. NLRB*, 216 F.3d 92, 103 (D.C. Cir. 2000) (quotation and brackets omitted).

Under the Board's burden-shifting framework, which Amazon accepts, solicitation of grievances during a union campaign "creates a rebuttable presumption of an implied promise" that violates the Act. (AR.1449.) An employer may rebut that presumption by establishing a past practice of soliciting grievances "in a like manner." (AR.1449 (quoting *Mek Arden*, 365 NLRB at 1066).) But it "cannot rely on past practice if it significantly alters its past manner and methods of solicitation during the union campaign." *Mandalay Bay Resort & Casino*, 355 NLRB 529, 530 (2010) (quotation omitted). The question is whether the solicitation "would be expected to have occurred without regard to the union campaign." *Manor Care of Easton*, 356 NLRB 202, 221 (2010), *enforced*, 661 F.3d 1139 (D.C. Cir. 2011). If not, it will "reasonably be perceived [by employees] as a change in practice and policy designed to interfere with employees' choice of whether or not to select union representation." *Id.*

Substantial evidence supports the Board's application of that framework. As the Board found, Amazon held large meetings at which representatives unknown to the employees tried to convince them that union representation was unnecessary. (AR.1449-50; AR.192, 306.) Amazon concedes that Williams and Rebell "encouraged" employees to use existing feedback mechanisms, including an open-

door policy, "Connections," and the VOA board, to bring their complaints to Amazon's attention. (Amazon.7.) Encouraging employees to raise concerns to management is the definition of soliciting grievances.

And Amazon did much more: it repeatedly urged employees to escalate complaints to increasingly higher levels until they obtained satisfaction. (AR.1449-50.) For example, Williams said, if human resources fails to resolve an issue, "don't settle for that. Take it to the next level." After a VOA post, he recommended going to ever higher levels of management, concluding: "So escalate. That's the truth. Escalate." (AR.1448; AR.587 at 2:30-2:40, 5:13-5:18.) Rebell likewise exhorted employees: "escalate that up, go to the next level" if lower-level management was "not able to answer your questions and get it resolved." (AR.1448; AR.589 at 4:50-5:00.) Employees would reasonably understand that Amazon was telling them unionization was unnecessary because if they escalated their complaints, it would resolve them. (AR.1449.)

Amazon had the burden of proving that it merely continued practices from before the campaign, and it failed to do so. (AR.1449-50.) Amazon points to pre-existing employee-feedback mechanisms (Amazon.6-7, 45), claiming it merely "tout[ed]" them (Amazon.47). But the Board reasonably found (AR.1449-50) Amazon did more than simply maintain an existing policy that employees were "welcome to discuss" concerns "with any member of the company's management."

(AR.1237.)  Amazon pushed employees to "escalate" their grievances and to refuse

to "settle" for anything short of a favorable resolution.  (AR.1449-50 & n.17.)  *See*

*Insight Commc'ns Co.*, 330 NLRB 431, 456 (2000) (distinguishing between

preexisting "open-door pledge" and employer "affirmatively soliciting employee

grievances or complaints" in antiunion meeting).

　　As the Board found, employees reasonably would have perceived Amazon's

solicitations as novel when unknown agents addressed mass meetings, speaking

against unionization while repeatedly and "emphatically urging employees to scale

the entire chain of command as they saw fit until they got what they wanted."

(AR.1450 (footnote omitted).)  *See Conair Corp.*, 261 NLRB 1189, 1191 n.15,

1264-65 (1982) (employer unlawfully emphasized, at antiunion meetings, that if

employees' complaints "could not be rectified by their immediate supervisors,"

they could approach "top-level management representatives personally"), *enforced*

*in pertinent part*, 721 F.2d 1355, 1386 (D.C. Cir. 1983); *Stride Rite Corp.*, 228

NLRB 224, 224-25 (1977) ("mass meetings" with "high-level corporate officer"

stood in "marked contrast to the casual questioning of employees by local

officials").  Amazon concedes that it had never done anything of the sort before

(Amazon.48), which ample testimony confirms (AR.218, 248, 311).  Amazon

claims that it had no "prior occasion" before the union campaign.  (Amazon.48.)

But that only underscores that employees would have understood Amazon was

promising something new to prevent the campaign from succeeding, which "goes to the very heart of what the Board is trying to prevent." *Manor Care*, 356 NLRB at 221. Section 8(c), which Amazon falls back on, expressly does not privilege such a "promise of benefit." 29 U.S.C. § 158(c).

In sum, the Board reasonably found that Amazon solicited grievances in a different manner. *See Traction Wholesale*, 216 F.3d at 103 (deferring to Board's "plausible" interpretation of grievance solicitation). None of Amazon's cases (Amazon.44-45) suggests that an employer follows a past practice when it "encourage[s] employees to use existing avenues of communication" in a way and to a degree it never has before. (Amazon.44-45.) Because Amazon did not show that its solicitations fell within its past practice, the Board reasonably found that Amazon impliedly promised that grievances would be resolved without the union if employees would just "rachet [them] up." (AR.1450.)

## B. Amazon Disparately Enforced Its Solicitation Policy Against Miller's Pro-Union VOA Post

An employer may prohibit employee use of employer equipment for solicitation, but may not do so in a discriminatory manner. *Register Guard*, 351 NLRB 1110, 1118 (2007), *enforced in relevant part*, 571 F.3d 53 (D.C. Cir. 2009). Specifically, an employer cannot engage in "unequal treatment of equals" such as "disparate treatment of activities or communications of a similar character because of their union or other Section 7-protected status." *Id.* at 1117-18. When it allows

other similar messages, an employer may not "discriminatorily refuse[] to allow the posting of union notices or messages." *NLRB v. Southwire Co.*, 801 F.2d 1252, 1256 (11th Cir. 1986). Likewise, an "employer clearly would violate the Act if it … permitted solicitation by antiunion employees but not by prounion employees." *Register Guard*, 351 NLRB at 1118. Under those established principles, an otherwise "valid no-solicitation rule applied in a discriminatory manner … may not be enforced against union solicitation." *Guard Publ'g*, 571 F.3d at 58 (quotation omitted).

Substantial evidence supports the Board's finding that Amazon unlawfully singled out Miller's VOA post for removal based on its pro-union content. (AR.1445.) Amazon repeatedly removed Miller's post asking co-workers to sign the Juneteenth petition at the Union's tent for violating the solicitation policy, even though it had not previously removed any other VOA post. Indeed, Amazon's own managers acknowledged the unprecedented nature of removing Miller's post. One said she was "shocked" that they would do so. (AR.1195.)

In contrast to its approach to Miller's post, Amazon failed to remove a different employee's anti-union post that also violated Amazon's solicitation policy. Specifically, it took no action regarding the VOA post that invited co-workers to "come get" "VOTE NO" shirts from the breakroom and "represent YOUR VOICE" (AR.658), even as it removed Miller's post to "come sign" the

union petition and "speak up for yourself" (AR.636). In addition to "[s]olicitation for … signatures on petitions," Amazon's solicitation policy also prohibits "[d]istribution of literature or materials of any kind." (AR.711.) Because the "VOTE NO" post invited employees to participate in the "[d]istribution of … materials," the Board properly found that it "clearly violated the policy." (AR.1446.) Miller's post and the "VOTE NO" post were thus "communications of a similar character" in that both violated the solicitation policy, but Amazon removed only the former. *Register Guard*, 351 NLRB at 1118.

Amazon's efforts (Amazon.50) to distinguish soliciting employees to sign a petition and soliciting employees to pick up a shirt is thus inconsistent with Amazon's own policy. It "is a post hoc invention," because the policy itself "made no distinction" between the two types of solicitation. *Guard Publ'g*, 571 F.3d at 60. The Court should give no credence to that argument, because "the consistency of an employer's responses" must be "measured … by reference to the policies the employer actually had in place." *CWA v. NLRB*, 6 F.4th 15, 24 (D.C. Cir. 2021). A proper focus on the record evidence in this case reveals that "the only solicitations that have ever drawn a rebuke from management are … those in support of union activities." *St. Margaret Mercy Healthcare Ctrs. v. NLRB*, 519 F.3d 373, 375 (7th Cir. 2008).

Contrary to Amazon (Amazon.50-51), it does not matter that the anti-union post came after Miller's post. The Board has considered an employer's subsequent responses to other employee messages when finding unlawful disparate treatment of union messages. *See, e.g.*, *Cayuga Med. Ctr. at Ithaca, Inc.*, 367 NLRB No. 21, 2018 WL 5801413, at *3 (2018) (employer permitted anti-union flyer several weeks after removing pro-union flyer). The cases Amazon cites (Amazon.51) questioning the probative value of evidence that arose after the challenged action involved the motive-based violation of retaliatory discipline. In that context, the question is the employer's mindset when it decided to issue the discipline, and evidence subsequent to the decision is not always relevant. *See Elec. Prods. Div. of Midland-Ross Corp. v. NLRB*, 617 F.2d 977, 985 (3d Cir. 1980) ("Normally, the proper moment of time at which an employer's motive is assessed is the time at which the alleged unfair labor practice is committed."). By contrast, employer motive is not an element of the violation here, where the interference with employee rights stems from disparate enforcement rather than retaliatory motive. Indeed, the Board expressly declined to address Amazon's motivation for removing the post, because the unfair-labor-practice complaint "did not allege that

the employer's enforcement of the solicitation policy was motivated by a discriminatory purpose." (AR.1496 n.10.)[2]

Nor does Amazon advance its case by referencing testimony that an unidentified VOA post offering pro-union paraphernalia was not removed. (Amazon.10.) The Board explained that "there is no documentary evidence regarding such a posting" (AR.1445 n.8), and the record contains no further details about it—despite the nearly 400 VOA posts that Amazon produced at the hearing.

Amazon also does not rehabilitate its selective allowance of the anti-union post by characterizing it as an "isolated incident of missed enforcement." (Amazon.51.) The record contains no other examples of solicitation on VOA. Accordingly, there is no evidence of Amazon regularly policing its solicitation policy that could suggest its failure to remove the "VOTE NO" post was a one-off occurrence or an oversight. As such, "this is not a case where the evidence of disparate treatment is insignificant or anomalous in light of preponderant evidence consistent with past practice." *Con-Way Cent. Express*, 333 NLRB 1073, 1073 n.3 (2001). Instead, the evidence consists of "two recent incidents"—one posting that was removed and one posting that remained up. *Id.*

---

[2] In any event, even with motive-based violations, post-discipline evidence may sometimes be relevant. *See, e.g.*, *Sysco Food Servs. of Cleveland, Inc.*, 347 NLRB 1024, 1037 n.33 (2006).

Moreover, as the Board explained, the two postings were "mere months" apart during the same unionization campaign. (AR.1446 n.11.) That temporal proximity renders Amazon's differing treatment stark, and further undermines any suggestion that Amazon simply "missed" (Amazon.51) the anti-union post after removing Miller's pro-union one. Also, they were both VOA posts and "the content of the posts" contained directly opposing messages regarding union activity. (AR.1446.) By contrast, the Board has found incidents of failure to enforce a solicitation policy too "isolated" to support a disparate-enforcement violation when the permitted actions were not only small in number but also contrasted less directly with, and were different in nature or location from, the disallowed actions. In *Wal-Mart Stores, Inc.*, for example, the Board found no violation when an employer enforced its policy against union solicitation but had allowed solicitations to buy makeup and candy. 350 NLRB 879, 881 (2007); *see also Uniflite, Inc.*, 233 NLRB 1108, 1111 & n.10 (1977) (no violation based on "two isolated incidents" of permitting solicitation for Little League raffle and donations for deceased co-worker's family).

Finally, Amazon does not undercut the Board's disparate-enforcement finding by noting that it allowed other pro-union VOA posts (Amazon.49-50). Those posts were not solicitations. That Amazon did not selectively target pro-union messages outside the solicitation context does not change the fact that it did

so in the solicitation context.  This distinction matters because, again, unlawful discrimination in this context consists of "the unequal treatment of equals." *Register Guard*, 351 NLRB at 1117.  As the Board explained, Board law "does not consider a solicitation versus non-solicitation distinction to be the 'unequal treatment of equals' … even if the prohibited solicitation and allowed non-solicitation were both union-related."  (AR.1446, 1495.)  That an employer permits pro-union posts that do not constitute solicitation does not empower it to target pro-union solicitations while allowing anti-union solicitations.

More generally, Amazon cannot excuse its unlawful interference with employee rights merely by pointing out that it did not always so interfere. Amazon's "violations are not remedied in any way by [its] failure to interfere with future exercise of rights … by [Miller] and other employees."  *Cayuga Med. Ctr. at Ithaca, Inc.*, 365 NLRB 1873, 1885 (2017), *enforced*, 748 F. App'x 341 (D.C. Cir. 2018).  Similarly, by allowing some pro-union activity on VOA but removing others, Amazon "impermissibly took it upon itself to pick and choose which Section 7 activity it would permit and which it would not."  (AR.1446.)

## C.    Amazon Threatened Miller

Substantial evidence likewise supports the Board's finding that Amazon threatened Miller with discipline if she continued to post VOA messages inviting co-workers to sign the Union's Juneteenth petition.  A Section 8(a)(1) violation

"has clearly occurred when an employer has threatened employees with …

reprisals for engaging in union activities." *Mead*, 697 F.2d at 1025. Whether an

employer has made an unlawful threat is an objective standard, which does not

depend on the employer's subjective motivations or the employee's subjective

reactions. *Id.* And "the employer's conduct must be considered in light of all of

the surrounding facts and circumstances." *Id.* Unlawful threats need not be

explicit; they may be "implicit" or "unspecified," *e.g.*, *NLRB v. Austal USA, LLC*,

343 F. App'x 448, 449 (11th Cir. 2009); *Boar's Head Provisions Co.*, 370 NLRB

No. 124, 2021 WL 1854735, at *4 (2021), including if "veiled" or part of "an

ambiguous statement," *Lush Cosmetics, LLC*, 372 NLRB No. 54, 2023 WL

1986802, at *4 (2023).

The Board reasonably concluded that Tanelli telling Miller she would face

"additional follow up" if she continued posting about the Juneteenth petition

constituted a threat of reprisal. As the Board found, an employee in Miller's

situation "could easily have understood the reference to 'additional follow up' as

meaning future discipline." (AR.1447.) Tanelli had made clear that Miller's

postings were "against … policy" and "something that we cannot have" and that,

although she was not currently facing discipline, any more such conduct would be

met with an "additional" response. (AR.1199 at 3:38-4:02, 5:20-5:37.) Tanelli

thus coupled informing Miller that she had violated the solicitation policy with an

admonition that Amazon would take further action if she persisted. In those circumstances, an employee reasonably would understand Tanelli as suggesting escalation beyond Amazon's current response. As the Board explained, it is unlikely that Tanelli was telling Miller that she would face "merely further, superfluous 'education'" about the solicitation policy that Tanelli already told Miller she had violated. (AR.1447.) More generally, reasonable employees in Miller's position would expect their employer to back up its rule with discipline, especially after reminding them of the rule and explaining their violation of it.

That Amazon might interpret Tanelli's words differently is insufficient to overturn the Board's decision under substantial-evidence review. The standard is not whether "a coercive interpretation of the statement is the only possible reasonable interpretation" (AR.1447), but whether that interpretation is "a plausible inference from the evidence." *Piggly Wiggly, Tuscaloosa Div. v. NLRB*, 705 F.2d 1537, 1541 (11th Cir. 1983) (quotation omitted). Thus, the Board's finding should stand even if Amazon can come up with some other reasonable interpretation of what Tanelli said.

Moreover, both the circumstances and the language here are similar to *Lush Cosmetics*, where the Board found an employer unlawfully threatened an employee by stating that her posts on an internal message board were "not acceptable" and that it "may consider your actions to amount to misconduct" if she continued.

25

2023 WL 1986802, at *2.  Like Amazon, the *Lush Cosmetics* employer warned the employee to expect a further response for persisting in activity it told her was prohibited.  That Tanelli told Miller she could solicit petition signatures elsewhere (Amazon.55) does not distinguish this case from *Lush Cosmetics*, where the employer likewise assured the employee that she otherwise "may continue to express your views concerning unionization" on the message board.  *Id.*

Tanelli's statement that Miller would face "additional follow up" for union-related solicitation is also analogous to an employer telling employees it would "address the problem" of employees soliciting their co-workers about a union drive, which could "reasonably be understood as a threat of reprisal."  *S. Bakeries, LLC v. NLRB*, 871 F.3d 811, 822-23 (8th Cir. 2017).  Tanelli's reference to future, additional steps also distinguishes this case from *Wynn Las Vegas, LLC* (Amazon.54), where the Board found no violation from an employer saying an employee was "on notice" she had violated the solicitation policy without mentioning possible future action.  369 NLRB No. 91, 2020 WL 2992411, at *10-11 (2020).

Amazon's contention that "[t]here is no evidence that any Associate was coerced" (Amazon.56) is beside the point, because "[a]ctual coercion is not necessary" to find a violation.  *Rockwell Int'l Corp. v. NLRB*, 814 F.2d 1530, 1534 (11th Cir. 1987).  Its observation that Miller continued posting to VOA about the

Juneteenth petition after Tanelli warned of additional follow up is inapt for the same reason. The issue is "not whether [Miller] w[as] in fact coerced." *Mead*, 697 F.2d at 1025. Accordingly, "[w]hether or not the employee changed their behavior in response is not dispositive" to whether Amazon made an unlawful threat. *Lush Cosmetics*, 2023 WL 1986802, at \*4. Nor is it relevant that Amazon did not make good on its threats (Amazon.53), because "the absence of later discipline is not dispositive of whether, at the time of issuance, the [statement] would reasonably be understood to constitute a threat of unspecified reprisals for engaging in protected activity." *Id.* at \*5 n.8; *see also Publix Super Mkts., Inc.*, 347 NLRB 1434, 1436 (2006) (finding violation "[a]lthough no discipline resulted").

Finally, the encounter's context buttresses the Board's finding of a threat. Tanelli's promise of "additional follow up" accompanied Amazon's removal of Miller's VOA post—the first time it had removed any post, including other pro-union posts. The unprecedented removal could be seen as "signaling a change in [Amazon's] willingness to tolerate such posts." (AR.1447.) Employees reasonably could believe that this change in approach also could manifest in a shift from reminders of the solicitation policy to discipline for violating it. Employees also would interpret Tanelli's statement against the backdrop of Amazon's aggressive response to the union campaign. (AR.1446-47.) Their knowledge that Amazon opposed union activity makes it more likely that they would interpret the

promise of "additional follow up" for such activity as indicating future discipline for supporting it, as an employer's "opposition to a union … may shed light on whether other statements would have been perceived as threats." *Ridgewood Health Care Ctr., Inc. v. NLRB*, 8 F.4th 1263, 1282 n.24 (11th Cir. 2021). Amazon's contention (Amazon.56-57) that Section 8(c) of the Act bars the Board from considering such evidence as part of its threat analysis is contrary to precedent discussed below (pp. 40-42).

## III. Amazon's Challenges to the Board's Captive-Audience-Meeting Analysis, Which the Court Lacks Jurisdiction To Consider, Are Meritless

In its Order, the Board dismissed allegations that Amazon violated the Act by holding captive-audience meetings—that is, by compelling employees, under threat of discipline or discharge, to attend meetings where Amazon expressed its views concerning unionization. The Court has no jurisdiction to review the Board's underlying analysis, which changed the legal standard governing captive-audience meetings prospectively but did not apply to Amazon. 29 U.S.C. § 160(e), (f). (*See* Board Mot. to Strike (ECF.50), and Reply (ECF.61).) In any event, Amazon's challenges are meritless.

In formulating its prospective rule, the Board comprehensively examined the relevant authorities. (AR.1450-55.) Two Board decisions are particularly significant. In *Clark Brothers Co.*, the employer required employees to assemble

on working time to hear speeches urging them to select one union over another. 70 NLRB 802, 803-04 (1946), *enforced*, 163 F.2d 373 (2d Cir. 1947). That conduct, the Board found, unlawfully interfered with employees' statutory freedom to decide how to inform themselves concerning unionization. *Id.* at 805. Two years later, the Board overruled *Clark Brothers* in *Babcock & Wilcox*, 77 NLRB 577 (1948). *Babcock* stated, with "no further analysis" (AR.1453), that the language and legislative history of the newly enacted Section 8(c)—which protects unions' and employers' noncoercive expression of views and opinions—foreclosed *Clark Brothers*' holding. *Id.* at 578. *Babcock* did not explain how Section 8(c) altered *Clark Brothers*' conclusion that an employer engages in "coercive acts," and "not mere expressions of opinions," by holding captive-audience meetings. 70 NLRB at 806.[3]

Here, the Board supplied the comprehensive analysis of how Section 7, Section 8(a)(1), and Section 8(c) apply to captive-audience meetings that *Babcock* did not. It overruled *Babcock* and announced that it will find that an employer

---

[3] Five years later, *Peerless Plywood Co.* held that speeches about unionization to groups of employees, on paid time, within 24 hours of a representation election "tend to destroy freedom of choice and establish an atmosphere in which a free election cannot be held." 107 NLRB 427, 429-30 (1953). The Board may set aside an election following such speeches. *Id.* "The key to the decision [i]s that the employees' attendance at the election speech [i]s not voluntary." *NLRB v. Glades Health Care Ctr.*, 257 F.3d 1317, 1319 (11th Cir. 2001). That rule remains in effect, and Amazon does not challenge it.

violates Section 8(a)(1) by holding captive-audience meetings. (AR.1461-62.) At the core of the rule is the Board's determination that Section 7 protects employees' right to freely decide whether or not to listen to their employer's views on unionization. (AR.1451.) As the Board found, an employer patently coerces and interferes with employees' exercise of that right—which Section 8(a)(1) forbids— when it forces them to attend meetings where it disseminates those views. (AR.1455-58.)

It is immaterial that the employer's speech, by itself, may be protected by Section 8(c) and the First Amendment. As the Board emphasized, "the violation turns on the employer's use of its power to compel employees to attend such a meeting." (AR.1461.) "Thus, a voluntary meeting, held in the workplace on work time, does not violate the Act." (AR.1461.) The Board accordingly provided guidance for holding lawful meetings: an employer will not violate the Act if it notifies employees of the nature of the meeting and assures them that they will not be subject to discipline for failing to attend, and that it will not keep a record of attendees. (AR.1461-62.)

The captive-audience rule represents an exercise of the Board's congressionally delegated "responsibility for developing and applying national labor policy." *NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775, 786 (1990). (AR.1450.) That statutory responsibility includes "authority to formulate rules to

fill the interstices of the [Act's] broad statutory provisions." *Id.* (quoting *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 500-01 (1978)); *accord NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236 (1963); *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 798 (1945); *Ga. Power Co. v. NLRB*, 427 F.3d 1354, 1357-58 (11th Cir. 2005). *Loper Bright Enterprises v. Raimondo*, which Amazon cites (Amazon.15), recently reaffirmed the validity of such a delegation. 603 U.S. 369, 395 (2024).

When an aggrieved party seeks review of a rule the Board has applied to it, a court must uphold the rule "as long as it is rational and consistent with the Act, even if [the judges] would have formulated a different rule had [they] sat on the Board." *Curtin Matheson*, 494 U.S. at 787 (citations omitted). The "rule is entitled to deference even if it represents a departure from the Board's prior policy." *Id. Accord Hudson Inst. of Process Rsch. Inc. v. NLRB*, 117 F.4th 692, 700 (5th Cir. 2024) (stating, after *Loper*, that Board legal conclusions should be affirmed unless "inconsistent with the Act").

## A. Captive-Audience Meetings Violate Section 8(a)(1) by Coercing Employees in the Exercise of Their Section 7 Rights

The Board's captive-audience-meeting rule is a common-sense, well-supported application of the Act. As the Board explained, Section 7 protects employees' "right to decide whether, when, and how they will listen to and consider their employer's views concerning" unionization. (AR.1451.) And as it further detailed, requiring employees to attend a meeting on that subject under

threat of discipline interferes with and coerces their exercise of that right in violation of Section 8(a)(1).  (AR.1451.)

A full appreciation of the rights Section 7 protects is central to understanding the Board's rule.  "Section 7 is broadly worded—deliberately so."  *Sec. Walls, LLC v. NLRB*, 80 F.4th 1277, 1286 (11th Cir. 2023) (quotation omitted).  The rights it protects—including "the right to self-organization" and "the right to refrain" from organization-related activities—necessarily encompass autonomy and privacy regarding unionization.  (AR.1455.)

As to autonomy, court-approved Board precedent recognizes employees' Section 7 "right to choose, free from any employer coercion, the degree to which [they] will participate in the debate concerning representation."  *Allegheny Ludlum Corp.*, 333 NLRB 734, 741 (2001), *enforced*, 301 F.3d 167 (3d Cir. 2002).  For example, an employer unlawfully coerces employees by pressuring them to display, distribute, or appear in campaign materials.  (AR.1456 n.28 (collecting cases).)  Free choice requires "freedom of communication," through which employees "learn the advantages and disadvantages of organization."  *Cent. Hardware Co. v. NLRB*, 407 U.S. 539, 543 (1972).  And as the Board recognized here (AR.1456) and in *Clark Brothers*, that "freedom to receive aid, advice, and information from others" includes the freedom "to determine *whether or not* to receive such aid, advice, and information."  70 NLRB at 805 (emphasis added).

*Compare Roxanna of Texas, Inc.*, 98 NLRB 1151, 1165 (1952) (employee engaged in union activity by "taking union handbills when they were passed out"), *with Assoc. Rubber Co. v. NLRB*, 296 F.3d 1055, 1058 (11th Cir. 2002) (employee "showed his opposition to the union by refusing to accept some literature" from a union supporter).

As to privacy, Section 7 "gives employees the right to keep confidential their union activities." *Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012) (Kavanaugh, J.) (quotation omitted). That "right to privacy" is "necessary to full and free exercise of the organizational rights guaranteed by the [Act]." *Pac. Molasses Co. v. NLRB Reg'l Off. No. 15*, 577 F.2d 1172, 1182 (5th Cir. 1978). Without it, employees cannot "exercise a full and free choice on whether to select the Union or not, uninfluenced by the employer's knowledge or suspicion about [their] views and the [employer's] possible reaction." *NLRB v. Laredo Coca Cola Bottling Co.*, 613 F.2d 1338, 1342 n.7 (5th Cir. 1980) (quotation omitted).

In sum, the Board reasonably found that employees have a Section 7 right to choose their degree of involvement or noninvolvement in the debate concerning unionization, and to reveal or keep confidential their position regarding unionization. (AR.1455-58.) As the Board explained, captive-audience meetings

coerce and interfere with these core rights, in violation of Section 8(a)(1), in three distinct ways.

First, "when employers compel employees to attend captive-audience meetings under threat of discipline or discharge, they force them to participate, at least as listeners, in the debate concerning union representation." (AR.1456.) Employers thereby "meddl[e] in the decision-making sphere that, under the Act, belongs exclusively to employees," dictating "whether, when, and how employees choose to exercise their Section 7 rights or to refrain from doing so." (AR.1456.) That compulsion "overrides employees' right to *freely* be informed about unionization—or not." (AR.1456.) And it "effectively conditions their employment on the abandonment of their Section 7 rights." (AR.1456.) Prohibiting such coercion accords with the Supreme Court's observation, in the First-Amendment context, that "no one has a right to press even 'good' ideas on an unwilling recipient." (AR.1456, 1461 (quoting *Hill v. Colorado*, 530 U.S. 703, 718 (2000).)

Second, captive-audience meetings interfere with employees' right to privacy because they "let employers observe the behavior of employees in an employer-controlled setting that will reasonably tend to reveal their sentiments concerning unionization." (AR.1457.) *See Allegheny Ludlum Corp. v. NLRB*, 301 F.3d 167, 176 (3d Cir. 2002) (employees coerced when "forced to make an

observable choice that demonstrates their support for or rejection of the union"). An employer can continuously monitor whether specific employees speak up, stay silent, or otherwise react. Employees are left to wonder how the employer may wield the "knowledge or suspicion" thus gathered regarding their Section 7-protected opinions on unionization. *Laredo Coca Cola*, 613 F.3d at 1342 n.7. (AR.1457 & n.31.)

Finally, given "the economic dependence of the employees on their employers," employees "pick up intended implications of the [employer] that might be more readily dismissed by a more disinterested ear." *Gissel*, 395 U.S. at 617. Forcing employees to hear their employer's views regarding unionization, even if they prefer to refrain, conveys that they "lack the genuine freedom" to exercise their Section 7 right "to choose whether, when, and how to participate in the choice concerning union representation." (AR.1457.) For all those reasons, captive-audience meetings violate Section 8(a)(1).

## B. Section 8(c) Does Not Privilege Employers To Coerce

Amazon's argument that Section 8(c) shields captive-audience meetings misconstrues the Act. (Amazon.18-28.) As the Board noted (AR.1452), the Supreme Court long ago made clear that Section 8(c) "merely implements the First Amendment by requiring that the expression of 'any views, argument, or opinion' shall not be 'evidence of an unfair labor practice,' so long as such expression

contains 'no threat of reprisal or force or promise of benefit' in violation of [Section] 8(a)(1)." *Gissel*, 395 U.S. at 617 (quoting 29 U.S.C. § 158(c)). It thus functions "to protect noncoercive speech by employer and labor organization alike in furtherance of a lawful object." *IBEW, Loc. 501 v. NLRB*, 341 U.S. 694, 704 (1951). But as the Fifth Circuit confirmed shortly after Section 8(c) was enacted, "[e]mployers still may not, under the guise of merely exercising their right of free speech, pursue a course of conduct designed to restrain and coerce their employees in the exercise of rights guaranteed them by the Act." *NLRB v. Gate City Cotton Mills*, 167 F.2d 647, 649 (5th Cir. 1948).

As this Court has recognized, Section 8(a)(1) and Section 8(c) are two sides of one coin: "an employer's free speech rights end where a [Section] 8(a) violation begins." *Belcher Towing Co. v. NLRB*, 726 F.2d 705, 708 (11th Cir. 1984). Therefore, an employer "can find no comfort in Section 8(c)" if its "actions ha[ve] a tendency to coerce." *Sturgis Newport Bus. Forms, Inc. v. NLRB*, 563 F.2d 1252, 1258 (5th Cir. 1977). As the Fifth Circuit explained in rejecting Section 8(c) and First Amendment arguments, the issue "is not where to draw the line separating protected from unprotected speech." *NLRB v. Riley-Beaird, Inc.*, 681 F.2d 1083, 1086 (5th Cir. 1982). "That line is settled." *Id.* "The only issue is whether the Board correctly determined that [the employer]'s conduct constituted a violation of [S]ection 8(a)(1)." *Id.* Amazon's argument that Section 8(c) protects captive-

audience meetings thus necessarily fails because, as shown, such meetings violate Section 8(a)(1) by coercing employees in the exercise of their Section 7 right not to listen to their employer's views on unionization. (AR.141458, 1465.) [4]

Amazon's argument is that Section 8(c) nevertheless does not permit the Board, when adjudicating an unfair labor practice, to consider views and opinions that are not, "standing alone," threatening. (Amazon.18.) But expression at a captive-audience meeting does not stand alone. It is inextricably tied to the "employer's implicit or explicit statement to employees that they must attend a captive-audience meeting or face job consequences," which "is plainly a threat of reprisal." (AR.1465. *See also* AR.1459.)

That threat is undeniable. Because, as the Board held (AR.1451, 1455-58), employees have the right to refrain from attending a captive-audience meeting, disciplining or discharging employees for nonattendance would constitute unlawful coercion. *See Cordua Rests., Inc. v. NLRB*, 985 F.3d 415, 423 (5th Cir. 2021) ("[A]n employer violates Section 8(a)(1) when it discharges an employee for engaging in protected activities…."). And as the Board recognized, the order to attend inherently threatens such consequences. (AR.1456.) Even when the threat

---

[4] Accordingly, the canon of constitutional avoidance (Amazon.28) has no application here. *Cadillac of Naperville, Inc. v. NLRB*, 14 F.4th 703, 719 (D.C. Cir. 2021); *800 River Rd. Operating Co. LLC v. NLRB*, 784 F.3d 902, 906 (3d Cir. 2015).

is not explicit, employees reasonably understand that disobeying an employer directive may jeopardize their employment. *See NLRB v. Red Top Cab & Baggage Co.*, 383 F.2d 547, 554 n.8 (5th Cir. 1967) (collecting cases). Section 8(c) expressly does not protect such a threat of reprisal. *Gissel*, 395 U.S. at 619-20.[5]

Even if the employer's speech is protected by Section 8(c), requiring employees to listen under the threat of reprisal is not privileged "any more than might be the act of a speaker in holding physically the person whom he addresses in order to assure his attention." *Clark Bros.*, 70 NLRB at 805. The act of expressing opinions to employees held under threat "contains" a threat, within the meaning of Section 8(c), whether the employee is immobilized by physical restraint or fear of job loss.

Amazon incorrectly asserts that under the Board's reasoning "*all* mandatory meetings about any subject should be unlawful," including meetings about "safety rules, working conditions, [or] dress code." (Amazon.24 & n.3. *See also* Amici.20.) As the Board emphasized (AR.1463-64, 1466), while coercion is inherent in the employment relationship, only coercion of employees in the exercise of their Section 7 rights violates Section 8(a)(1). And when an employer

---

[5] Whether individual employees pay attention at a captive-audience meeting is irrelevant. (*Contra* Amazon.25.) What violates the Act is not the message employees hear at the meeting, but the threat of discharge if they choose not to attend.

calls a meeting to express its views concerning unionization, as shown above (pp. 31-35), an employee's choice whether *or not* to attend is protected by Section 7.

The Board has not held that employees have a Section 7 right to decline to listen to their employer's speech about terms and conditions of employment generally. Employees may exercise their Section 7 rights in relation to various workplace matters, including those Amazon references. But unlike captive-audience meetings, mandatory meetings about employees' terms and conditions of employment are ordinarily *about those terms*—e.g., describing new safety procedures. They do not necessarily involve Section 7-protected activity—that is, they are not about how the employer would have employees *exercise* their Section 7 rights in relation to them.[6]

Naturally, the Board must examine speech to learn a meeting's topic if it is to distinguish between the unlawful threat that convenes employees for a meeting to hear employer views concerning unionization, in violation of their Section 7 right to not attend, and the lawful threat underlying meetings on other matters.

---

[6] Here, the Board rationally addressed only the allegations before it, which involved mandatory group meetings necessarily implicating the exercise of employees' Section 7 rights concerning unionization. The Board explicitly declined to opine on facts not before it. (AR.1451 n.19.) *See NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 265 (1975) (endorsing Board's "evolutional approach" to developing labor law). If it is alleged in a future case that mandatory meetings on other subjects similarly "impinge[d] on employees' Section 7 rights," the Board will address the issue. (AR.1466.)

Amazon, however, argues that Section 8(c) requires the Board to surgically separate the threat under which employees attend from the speech they are made to hear.  (Amazon.22-23.)  According to Amazon, no matter what an employer does to force employees into the room, the Board cannot consider what is said after the door closes unless the words themselves are threatening.  (Amazon.23.)  That has never been the law.

As the Supreme Court long ago recognized, conduct that Section 8 regulates may be "evidenced in part by speech." *Va. Elec.*, 314 U.S. at 477.  Indeed, language is integral to practically every violation. *See, e.g.*, *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 538-39 (1943) (employer domination of union through course of conduct including speeches); *NLRB v. A-1 King Size Sandwiches, Inc.*, 732 F.2d 872, 874, 877 (11th Cir. 1984) (bad-faith bargaining based on content of employer's bargaining proposals).  Thus, "[i]n determining whether [an employer] actually interfered with, restrained, and coerced its employees the Board has a right to look at what the [employer] has said as well as what it has done." *Va. Elec.*, 314 U.S. at 478.  "If the total activities of an employer restrain or coerce [its] employees in their free choice, then those employees are entitled to the protection of the Act." *Id.* at 477.

Words are not "taken in isolation" because the question under Section 8(a)(1) is whether they "tend to coerce in the context in which they are made."

40

*NLRB v. Mangurian's, Inc.*, 566 F.2d 463, 466 (5th Cir. 1978). "Remarks that may not appear coercive when considered in isolation may take on a different meaning when evaluated with respect to the totality of the circumstances." *TRW-United Greenfield Div. v. NLRB*, 637 F.2d 410, 416 (5th Cir. 1981) (quotation omitted). *Accord, e.g.*, *Mead*, 697 F.2d at 1025 ("[A]n interrogation in which the words themselves or the context in which they are used suggest an element of coercion or interference is unlawful." (quotation and ellipsis omitted)); *Southwire Co. v. NLRB*, 820 F.2d 453, 458 (D.C. Cir. 1987) ("surrounding circumstances" may "transform otherwise 'sound advice' into an implicit threat").

Thus, the Court recently reaffirmed that "a company's lawful expression of opposition to a union [i]s appropriate background against which to measure [other] statements, conduct, and the like." *Ridgewood Health*, 8 F.4th at 1282 n.24 (quoting *Hendrix Mfg. Co. v. NLRB*, 321 F.2d 100, 103 (5th Cir. 1963)) (quotation marks omitted). That background "bear[s] on the question whether, from the listeners' point of view," other statements "constituted forbidden coercion, threats, or intimidation." *Id.* (quotation omitted). *See also, e.g.*, *NLRB v. Gaylord Chem. Co.*, 824 F.3d 1318, 1333 (11th Cir. 2016) ("surrounding circumstances" include "history of the employer's attitude toward its employees" (quotation omitted)); *TRW-United Greenfield*, 637 F.2d at 417 (letter in which employer "implicitly indicated its opposition to the Union" properly "considered as background when

determining whether a conversation tends to be coercive"); *NLRB v. Birdsall Const. Co.*, 487 F.2d 288, 291 (5th Cir. 1973) (Board properly considers Section 8(c)-protected statements in evaluating whether employees would tend to be coerced by questioning about union activities).

Under that settled law, the Board appropriately considers the subject matter of a mandatory meeting to determine whether coercing employees to attend violates Section 8(a)(1). As the Board noted (AR.1458-59), it does the same in other analogous circumstances. An employer's campaign video may be privileged by Section 8(c), but Section 8(a)(1) forbids coercing employees to appear in it. *Allegheny Ludlum*, 333 NLRB at 738-43. Because the Act does not prohibit coercing employees to appear in safety or training videos, the Board must know the video's subject to determine whether the coercion was unlawful. The same goes for Section 8(c)-protected employer shirts, signs, literature, and announcements that are not independently threatening. (AR.1456 n.28, 1459 n.16 (collecting cases).) If the employer coerces employees to wear, hold, distribute, or speak its words, the Board must consider the message to determine whether Section 7 rights are affected. To fashion Section 8(c) into blinders that hide such critical context from the Board would devastate Section 7 and Section 8(a)(1). *See IBEW, Loc. 501*, 341 U.S. at 704-05 (refusing to read Section 8(c) to prevent effectuation of another provision of Section 8).

Amazon and the Board agree that the Court need not consider legislative history. (AR.1459; Amazon.26.) But if it does, the Board highlighted three points. (AR.1459-61.)

First, based on the Conference Report, the "narrow[] purpose" of Section 8(c) was to preclude the Board from "attributing antiunion motive to an employer on the basis of his past statements." *Linn v. United Plant Guard Workers, Loc. 114*, 383 U.S. 53, 62 n.5 (1966) (citing H.R. Rep. No. 80-510, at 45 (1947)). Motive is not at issue here, as the Board explained. (AR.1459.) Amazon suggests (Amazon.27) that Congress could have achieved the Conference Report's goal by cataloging the specific Section 8 violations that involve motive and precluding the consideration of noncoercive speech in only those cases. But the wording Congress chose was perfectly clear to the former Fifth Circuit: employer opposition to unionization "is not proof of anti-union animus," but it "may be considered as background when determining whether conversations tend to be coercive." *Sturgis*, 563 F.2d at 1257.

Second, the principal sponsor of Section 8(c) explained that it "has no application to statements which are acts in themselves or contain directions or instructions." (AR.1460 (quoting 93 Cong. Rec. 7002 (June 12, 1947)).) And the Supreme Court has so held. *See NLRB v. Denver Bldg. & Const. Trades Council*, 341 U.S. 675, 690-91 (1951) (Section 8(c) does not privilege picket-sign

expression "tantamount to directions and instructions to [union] members"). So the directive to attend a meeting about unionization is unprotected. (AR.1464.)

Third, as Amazon notes, the legislative history "makes no explicit mention of mandatory meetings." (Amazon.26.) A solitary reference to *Clark Brothers*, which found captive-audience meetings unlawful, speaks only to one holding in that case, based on employers' exclusive access to employees during paid time. 70 NLRB at 804. According to the Senate Report, employers should be permitted to speak to employees about unionization "in the plant" and "on working time." (AR.1461 (quoting S. Rep. No. 80-105, at 23-24 (1947)).) Employers remain free to do that under the Board's holding here—provided they do not compel employees to listen. But as the Board explained (AR.1452, 1461), *Clark Brothers* also held that the compulsion to attend captive-audience meetings "independently constitutes interference, restraint, and coercion" under the Act, "wholly apart from the fact that the speech itself may be privileged under the Constitution." *Id.* at 804-05. The legislative history says nothing about that holding and, as noted (p. 29), *Babcock* did not discuss it. (AR.1453.)

Amazon also points out that Section 8(c) promotes "free debate on issues dividing labor and management." (Amazon.20 (quoting *Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 67 (2008)).) But it fails to appreciate that the Board's rule also expressly furthers that goal. Employers and unions may freely express their

views.  Indeed, the Board took pains to establish a "safe harbor" so that employers can speak freely without fear of unfair-labor-practice charges.  (AR.1461-62.) Employees, however, have a Section 7 right to listen or refrain from listening.  And an employer's Section 8(c)-protected right to speak does not encompass the right to interfere with employees' exercise of those Section 7 rights by compelling them to listen.

What Amazon demands is not free debate but forced listening.  But a debate in which employees must silently listen to one side under threat of discipline or discharge is not free.  (AR.1463.)  In the political arena, "being compelled to attend a party's campaign meeting would rightly be denounced as antithetical to voters' freedom of choice."  (AR.1456.)  "[N]either the NLRA nor traditional campaign-speech doctrine protects" a speaker's "attempt[] to secure a particular course of [voter] action not by mere persuasion, but by intimidation and coercion."  *Garten Trucking LC v. NLRB*, 139 F.4th 269, 281 (4th Cir. 2025).

### C.  Employers Have No First Amendment Right To Coerce Employees in Relation to Unionization

As the Board recognized (AR.1465), the First Amendment protects employers' right to "persuade" employees "with respect to joining or not joining unions."  *Thomas v. Collins*, 323 U.S. 516, 537 (1945).  But "[w]hen to this persuasion other things are added which bring about coercion, or give it that character, the limit of the right has been passed."  *Id.* at 537-38.  The First

Amendment does not protect captive-audience meetings because they use coercion to make employees listen rather than using speech to persuade. Amazon and its amici cannot show otherwise, so they mischaracterize the Board's rule as a content-based regulation of speech warranting strict scrutiny. (Amazon.29-36; Amici.19-24.) Their arguments misunderstand the Act and misapply First Amendment precedent.

### 1. The Act regulates economic conduct

It is settled that "restrictions on protected expression are distinct from restrictions on economic activity." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). No heightened scrutiny applies to a law that "regulates non-expressive economic conduct." *Norwegian Cruise Line Holdings Ltd. v. State Surgeon Gen., Fla. Dep't of Health*, 50 F.4th 1126, 1141 (11th Cir. 2022). Speech restrictions cannot be reframed as conduct regulations. But neither may free-speech arguments "be used as the means or the pretext for achieving substantive evils which the legislature has the power to control." *Cal. Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972) (quotation omitted).

The Act regulates economic conduct. Its express purpose is to protect the national economy by guaranteeing employees "full freedom of association, self-organization, and designation of representatives of their own choosing." 29 U.S.C. § 151. Section 8(a) defines and prohibits employer practices that are inimical to

that freedom because they interfere with or coerce employees in the exercise of their organizational rights. 29 U.S.C. § 158(a). Section 8(b) likewise forbids unions from restraining or coercing employees or employers, and from other unfair practices, such as encouraging employees to participate in secondary boycotts. 29 U.S.C. § 158(b). The Board's captive-audience-meeting rule applies Section 8(a)(1)'s prohibition on coercive conduct, just as the Board and courts have always applied Section 8 to employers and unions in the countless factual circumstances covered by the Act's broad framework regulating labor relations.

As noted above (p. 40), language is almost invariably key to identifying conduct Section 8(a)(1) proscribes. But "[i]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *United States v. Hansen*, 599 U.S. 762, 783 (2023) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)). "The mere fact that language merges into a course of conduct does not put that whole course without the range of otherwise applicable administrative power." *Va. Elec.*, 314 U.S. at 478.

Captive-audience meetings coerce employees under Section 8(a)(1) by threatening discipline or discharge if they exercise the right, protected by Section 7, to not attend. In barring that coercion, the Board's holding restricts only a threat

that Congress has properly prohibited. (AR.1465.) *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937) ("[C]oercion to prevent the free exercise of the right of employees to self-organization and representation is a proper subject for condemnation by competent legislative authority."); *NLRB v. Ironworkers, Loc. 433*, 891 F.3d 1182, 1187 (9th Cir. 2018) (the Act "regulates conduct rather than content" by prohibiting unions from "threatening, coercing, or restraining"); *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 83 (1st Cir. 2007) (outlawing retaliation in employment prohibits "conduct that can, and often does, include speech" without violating First Amendment). And under *Gissel*, the "threat of retaliation" that violates Section 8(a)(1) is "without the protection of the First Amendment." 395 U.S. at 618. Courts have consistently reaffirmed *Gissel* on that point. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) (*Gissel* "illustrates that the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity"); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 208 (3d Cir. 2001) (Alito, J.) (employer's statement "may be proscribed not on the ground of any expressive idea that the statement communicates, but rather because it facilitates the threat of discriminatory conduct").

Contrary to Amazon's argument (Amazon.29), strict scrutiny is not triggered by the Board's consideration of speech to determine whether a mandatory meeting

violates Section 8(a)(1). Under *Reed v. Town of Gilbert*, on which Amazon relies, strict scrutiny applies to laws that "target speech based on its communicative content." 576 U.S. 155, 163 (2015). But where the law's "primary effect" is on conduct and the effect on speech is "only incidental," strict scrutiny is inapplicable. *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017). "That is why a ban on race-based hiring may require employers to remove 'White Applicants Only' signs" and "antitrust laws can prohibit 'agreements in restraint of trade.'" *Sorrell*, 564 U.S. at 567 (citations omitted). *Accord Otto v. City of Boca Raton*, 981 F.3d 854, 865 (11th Cir. 2020).[7]

The Board's captive-audience-meeting rule touches speech only incidentally. Just as other regulators must read signs or agreements to know they are about race-based hiring or monopolization, the Board must learn "the topic discussed" (Amazon.29 (quoting *Reed*, 576 U.S. at 163)) in myriad circumstances to know whether coercive conduct implicates the Act. Otherwise, the Board could not protect employees from employer domination of a union, *Va. Elec.*, 319 U.S. at 538-39, discriminatory work rules, *Republic Aviation*, 324 U.S. at 803, or coercive

---

[7] Other examples of "communications that are regulated without offending the First Amendment" include "the exchange of information about securities, corporate proxy statements, [and] the exchange of price and production information among competitors." *Ohralik*, 436 U.S. at 456 (citations omitted). *See also City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 79 (2022) (Breyer, J., concurring) (collecting "regulatory laws that turn, often necessarily, on the content of speech").

promises of benefits, *NLRB v. Exch. Parts Co.*, 375 U.S. 405, 409 (1964). (AR.1466.)  Nor could it protect employers from unions' "inducement or encouragement" of secondary boycotts.  *IBEW, Loc. 501*, 341 U.S. at 705.  Indeed, the topic defined the violation in *Gissel*:  it was unlawful for the employer to imply that plant closing would result from unionization.  395 U.S. at 618-20.  To suggest closure for another reason—say, the rising cost of materials—would have been lawful.  As the Board explained (AR.1466), the same principle applies to mandatory meetings:  whether the compulsion to attend violates Section 8(a)(1) depends on whether the meeting concerns employer views on unionization, which employees have a right not to hear.

Amazon's expansive interpretation of *Reed* would turn *Gissel* on its head and invalidate nearly a century of labor-law precedent.  Nothing in *Reed* supports that extreme result.  "*Reed* involved content-based restrictions in a municipal ordinance regulating signs directed toward the general public."  *NLRB v. Ironworkers, Loc. 229*, 941 F.3d 902, 906 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 2671 (2021).  *Reed* did not cite cases applying the Act or address the "highly regulated contours" of labor relations.  *See id.* (*Reed* did not implicitly overrule precedent governing "communications addressed to neutral employees").  *See also, e.g.*, *Wacko's Too, Inc. v. City of Jacksonville*, 134 F.4th 1178, 1187 (11th Cir. 2025) (*Reed* did not overrule precedent involving special context of adult

entertainment). It certainly did not overrule longstanding precedent approving the Board's consideration of the context—including the subject of related speech—in which employer conduct occurs.

### 2. This Court's *HoneyFund* decision is not to the contrary

In attacking the Board's regulation of conduct through its rule, Amazon and its amici heavily rely on *Honeyfund.com Inc. v. Gov. of Fla.*, 94 F.4th 1272 (11th Cir. 2024). That case superficially resembles this one only in that it involved mandatory workplace meetings. But the Board explained why this case is materially different. (AR.1465-66.) And the Court's analysis, in fact, undermines Amazon's position.

In *HoneyFund*, Florida's "Stop W.O.K.E. Act" prohibited employers from requiring employees to hear enumerated viewpoints. *Id.* at 1275-77. The state did not claim to regulate "traditionally unprotected speech." *Id.* at 1278. Instead, it characterized its law as barring the "conduct" of holding mandatory meetings to express views it deemed offensive. *Id.* The Court rejected that argument as "clever framing" of a transparent effort to penalize disfavored speech. *Id.* But it reaffirmed that "the government *does* have broad authority to regulate [conduct]— just not as a smokescreen for regulating speech." *Id.* at 1278. *Accord Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1314 (11th Cir. 2017) (en banc).

Here, in contrast to the law in *HoneyFund*, and as the Board explained,

Section 8(a)(1) and the Board's captive-audience-meeting rule regulate

"quintessential[] conduct by which employers 'interfere with' employees' exercise

of their own Section 7 rights." (AR.1456.) Applying Section 8(a)(1), the rule

proscribes a threat that the Supreme Court long ago held to be unprotected.

(AR.1451.) And unlike the Stop W.O.K.E. Act, the captive-audience-meeting rule

does not rely on a novel manipulation of labels. Rather, it applies settled principles

to campaign activities that have always been within the scope of the Board's

regulatory authority. *See Gissel*, 395 U.S. at 617-18 (distinguishing workplace

expression concerning "the establishment of a nonpermanent, limited relationship

between the employer, his economically dependent employee and his union agent"

from core political speech about "the election of legislators or the enactment of

legislation whereby th[e] [employer-employee] relationship is ultimately defined");

*Peerless Plywood*, 107 NLRB at 429 (banning mandatory campaign speeches to

groups of employees within 24 hours of an election).

The Board's consideration of speech to identify coercion that falls within its

legitimate authority is nothing like Florida's targeted restraint of speech conveying

a single viewpoint. As the Board explained, its rule "makes no distinctions based

on viewpoint." (AR.1465.) To argue otherwise, amici misleadingly quote the

Board's description of *Amazon's own captive-audience meetings*, which urged

employees to reject unionization.  (Amici.22.)  The Board's rule applies

"regardless of whether the employer expresses support for or opposition to

unionization."  (AR.1461.)  *See United States v. Pugh*, 90 F.4th 1318, 1331-32

(11th Cir. 2024), *cert. denied,* 145 S. Ct. 236 (2024) (law prohibiting interference

with law enforcement is content neutral because it "does not distinguish between

acts that are critical of law enforcement and acts that are neutral toward, or favor,

law enforcement").  So too for employer support of one union over another.[8]

   *HoneyFund* is not merely distinguishable.  In the end, it undermines

Amazon's position by its endorsement of Title VII—another federal statute that

regulates workplace conduct—as a law that "may have an incidental effect on

speech," but "is not directed at it."  94 F.4th at 1282.  Unlike the Stop W.O.K.E.

Act, which furthered only Florida's desire to silence disfavored messages, both

Title VII and Section 8(a) protect substantive, longstanding employee rights:  to be

---

[8]  Amazon and its amici also complain that the Board's decision governs only
employers.  (Amazon.30; Amici.22-23.)  But as explained above (p. 39 n.6), the
Board limited its holding in this adjudicatory proceeding to the Section 8(a)
allegations—to which only employers are subject—that were before it.  As
explained, however, Section 8 prohibits both employers and unions from coercing
employees as to Section 7 rights, and neither Amazon nor its amici even suggest
that Board law would permit a union to compel employees to attend its
organizational meetings.  Amazon's claim that the Board engaged in content
discrimination by "singling out" the issue presented in litigation (Amazon.32) is
misguided for the same reason.  Under that reasoning, *Gissel* also discriminated by
failing to provide a comprehensive guide for workplace speech outside of union
campaigns.

free from employment discrimination based on certain characteristics, and to freely decide how and whether to exercise the right to self-organization, respectively. Title VII "stands silent" if an employer discharges an employee "for tardiness or incompetence or simply supporting the wrong sports team." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020). It is triggered only by conduct relating to certain subjects—"race, color, religion, sex, or national origin." *Id.* at 650. As discussed above (p. 42), the Board explained that the Act operates in precisely the same way. (AR.1466 & n.49.) Section 8(a)(1) is triggered only by conduct relating to Section 7 rights.

Just as evaluating coercion under the Act requires consideration of the full context, "whether an environment is 'hostile' or 'abusive' [under Title VII] can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *accord Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc); *see also, e.g.*, *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1070 (11th Cir. 1990) (hostile environment involving "numerous racial epithets"). The Supreme Court has nonetheless recognized Title VII as a "permissible content-neutral regulation of conduct." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993). *Accord Honeyfund*, 94 F.4th at 1282. Under both laws, any limitation on what an employer may tell its employees "is merely an incident to a larger surrender that has already been upheld by the Supreme Court

against a First Amendment challenge—the surrender of the right to refuse to hire or treat equally those employees in the first place." 1 Smolla & Nimmer on Freedom of Speech § 13:14.

Finally, as Amazon and its amici note (Amazon.33; Amici.18), *HoneyFund* rejected Florida's argument that it could ban speech to protect unwilling listeners. 94 F.4th at 1281 n.5. But employees had no privacy interest in avoiding "woke" speech that Florida deemed offensive. *Id.* Under the Act, "employees have a strong privacy interest in their personal sentiments regarding union representation." *Pac. Molasses*, 577 F.2d at 1182. That interest is especially strong at work, "in the particular place" (Amici.17) where the employer is best able to monitor employees' union sentiments and retaliate. *See Wright Elec., Inc. v. NLRB*, 200 F.3d 1162, 1165 (8th Cir. 2000) (Board "zealously seeks to protect the confidentiality interests of employees because of the possibility of intimidation by employers who obtain the identity of employees engaged in organizing").

The "right to be let alone," *Hill*, 530 U.S. at 717, is not effectively limited to the privacy of the home, as amici suggest. (Amici.15-19.) Rather, the Supreme Court's solicitude encompasses circumstances where the "degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975). That captivity applies to listeners "in the homes *or business houses*" who cannot walk away. *Kovacs v.*

*Cooper*, 336 U.S. 77, 89 (1949) (plurality op.) (emphasis added).  *Cf. Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 542 (1980) ("Passengers on public transportation … may well be unable to escape an unwanted message." (citing *Lehman v. Shaker Heights*, 418 U.S. 298, 307-08 (1974) (Douglas, J., concurring in judgment)).  There can be no question that "[t]he freedom of an unwilling listener to avert one's eyes or ears is considerably lessened when she is required to be on the job."  *520 S. Michigan Ave. Assocs. v. Unite Here Loc. 1*, 760 F.3d 708, 724 (7th Cir. 2014).  Thus, "speech may be more readily subject to restrictions when a school or workplace audience is 'captive' and cannot avoid the objectionable speech."  *Saxe,* 240 F.3d at 210.

### 3.   The Board's standard is narrowly tailored to achieve a compelling goal

Because the Board's holding properly regulates economic conduct, not speech, it is not subject to strict scrutiny.[9]  In any event, as the Board explained, its holding is narrowly tailored to serve a compelling interest.  (AR.1466 n.50 (quoting *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015)).)  For First Amendment purposes, the Court has recognized that the Act is "analogous to civil rights laws governing the workplace."  *Booth v. Pasco Cnty.*, 757 F.3d 1198, 1213 (11th Cir. 2014).  And "it is absolutely clear that there is a compelling government

---

[9]  Amazon does not argue that the Board's rule fails rational-basis review.

interest" in protecting employees from threats of retaliation for availing themselves of anti-discrimination laws. *Id.* at 1212. *Cf. Roberts v. U.S. Jaycees*, 468 U.S. 609, 628-29 (1984) ("[A]cts of invidious discrimination in the distribution of publicly available goods, services, and other advantages cause unique evils that government has a compelling interest to prevent—wholly apart from the point of view such conduct may transmit."). The federal government has the same compelling interest in protecting employees' "fundamental right" to self-organization, which is "essential to give laborers opportunity to deal on an equality with their employer." *Jones & Laughlin*, 301 U.S. at 33. *See also Gissel*, 395 U.S. at 617 ("[A]n employer's rights cannot outweigh the equal rights of the employees to associate freely….").

There is no more targeted way to eliminate an unlawful threat than to prohibit it. Amazon's appeal to *Babcock* as a workable alternative makes no sense because, as the Board held, *Babcock* permitted employers to violate Section 8(a)(1) by using threats to hold captive-audience meetings that employees have a Section 7 right not to attend. (Amazon.41.) As the Board emphasized, *Babcock*'s rule has never been explained. (AR.1443, 1450, 1453-54, 1458, 1460-62.) And it is inconsistent with basic labor-law principles. *See Valley Hosp. Med. Ctr., Inc.*, 371 NLRB No. 160, 2022 WL 5179877, at *2 (2022) (overruling precedent that

"cannot be reasonably harmonized with" broader Board law), *enforced*, 100 F.4th 994 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1425 (2025).

Any order applying the Board's holding will "narrow[ly]" focus on unlawful threats by requiring the employer to cease and desist from requiring employees to attend captive-audience meetings. *Booth*, 757 F.3d at 1213. Meanwhile, the Board's guidelines ensure that employees remain free to hear employers' views voluntarily. (AR.1461-62.) *Cf. Wollschlaeger*, 848 F.3d at 1313.

**CONCLUSION**

The Board respectfully requests that the Court deny Amazon's petition for review and enforce the Board's Order in full.

Respectfully submitted,

/s/Kira Dellinger Vol
KIRA DELLINGER VOL
*Supervisory Attorney*

/s/Micah P.S. Jost
MICAH P.S. JOST
*Attorney*

/s/Joel A. Heller
JOEL A. HELLER
*Attorney*

WILLIAM B. COWEN
    *Acting General Counsel*

STEPHANIE CAHN
    *Acting Deputy General Counsel*

PETER SUNG OHR
    *Associate General Counsel*

RUTH E. BURDICK
    *Deputy Associate General Counsel*

MEREDITH JASON
    *Assistant General Counsel*

National Labor Relations Board

September 2025

National Labor Relations Board
1015 Half St. SE
Washington, DC 20570
(202) 273-0656
(202) 273-0264
(202) 273-1042

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____
                                              )

AMAZON.COM SERVICES, LLC        )
                                              )  No. 24-13819

     Petitioner/Cross-Respondent    )

                                              )

         v.                            )  Board Case Nos. 29-CA-280153,
                                              )  29-CA-286577, 29-CA-287614,

NATIONAL LABOR RELATIONS BOARD  )  29-CA-290880, 29-CA-292392
                                              )  and 29-CA-295663

     Respondent/Cross-Petitioner    )
_____ )

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the Board

certifies that its brief contains 12,999 words of proportionally-spaced,

14-point type, and the word processing system used was Microsoft Office 365.

                                        /s/ Ruth E. Burdick
                                        Ruth E. Burdick
                                        Deputy Associate General Counsel
                                        NATIONAL LABOR RELATIONS BOARD
                                        1015 Half Street, SE
                                        Washington, DC 20570-0001
                                        (202) 273-2960

Dated at Washington, DC
this 29th day of September 2025

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

|  |  |  |
|---|---|---|
| AMAZON.COM SERVICES, LLC | ) | |
| | ) | |
| | ) | No. 24-13819 |
| Petitioner/Cross-Respondent | ) | |
| | ) | |
| v. | ) | Board Case Nos. 29-CA-280153, |
| | ) | 29-CA-286577, 29-CA-287614, |
| NATIONAL LABOR RELATIONS BOARD | ) | 29-CA-290880, 29-CA-292392 |
| | ) | and 29-CA-295663 |
| Respondent/Cross-Petitioner | ) | |

_____

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2025, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for the

Eleventh Circuit by using the appellate CM/ECF system.  I further certify that the

foregoing document was served on all parties or their counsel of record through the

CM/ECF system.

Respectfully submitted,


/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 29th day of September 2025